# EXHIBIT 31

## DECLARATION OF LORA E. MACDONALD

I, Lora E. MacDonald, hereby declare, under penalty of perjury, as follows:

1. I am over the age of 18 years. I have personal knowledge of the facts set forth below, and if called upon to do so, I could and would competently testify thereto.

2. I am an attorney licensed to practice law in the State of Maryland and in the District of Columbia. I am an associate in the law firm of Gibson, Dunn & Crutcher, LLP, and counsel for Amazon.com, Inc. and Amazon Data Services, Inc. in this matter. If called as a witness, I could and would testify to the same as stated herein.

3. Amazon received in February 2020 a recording from outside counsel for IPI which was, on information and belief, provided to IPI by Informant 2. On information and belief, the recording was made at the direction of Brian Watson and reflects a conversation between, at different times in the course of the recording, Watson and four other then-Northstar employees. On information and belief, the recording was made, and records a conversation that took place on, September 27, 2019 on Northstar's premises. I have listened to the entire recording. This declaration discusses certain parts of the entire recording made by Watson to which Amazon has access.

4. The recording reflects the confrontation by Watson of two different Northstar employees (for the purposes of this declaration, "Northstar Employee 1" and "Northstar Employee 2," respectively). Watson's confrontation of each of Northstar Employee 1 and Northstar Employee 2 took place separately, and each confrontation was attended by another then-Northstar Employee (respectively, "Northstar Employee 3" and "Northstar Employee 4"). It is not clear if Northstar Employee 1 and/or Northstar Employee 2 were aware that the conversation was being

recorded. The recording suggests that Northstar Employee 1 may have also been separately recording the portion of the discussion in which he participated.

5. On information and belief, the recorded discussion between each of Watson and Northstar Employee 1 and Northstar Employee 2 concerned the respective participation of Northstar Employee 1 and Northstar Employee 2 in the Direct Purchase Enterprise detailed at length in the Verified Complaint.

6. The first part of the recorded conversation occurs between Watson and Northstar Employee 1, and is attended by Northstar Employee 3. In the recording, Watson accuses Northstar Employee 1 of having engaged in a "side deal[]" related to Amazon, asserting that he has become aware that a Colorado-registered entity associated with Northstar Employee 1 "went under contract for $98.7 million of a piece of land" and "did a simultaneous closing to Amazon, which is one of our clients, our largest client, for $116.4 million." After Watson asks Northstar Employee 1 to confirm whether he "did this," Northstar Employee 1 responds that Watson's question should be addressed in the context of "a bigger question and conversation we should have with other people." When asked by Watson to "tell [him] who got paid the 17.8 million in profit," Northstar Employee 1 responds, "That's a bigger conversation. How bad—how far do you want to take this?"

7. In his conversation with Northstar Employee 1, Watson repeatedly presses Northstar Employee 1 to "pay [Northstar] the money immediately," at one point stating that "[a]nything that comes from [Amazon deals] should be Northstar." Northstar Employee 1 responds that he is "[p]otentially" willing to pay monies to Northstar, but that he and Watson "ha[d] to have a bigger conversation with people involved in this." Northstar Employee 1 suggests that this conversation should occur "over a drink" with the former Amazon real estate transaction manager whose sibling is understood to be the sole Trustee of the Villanova Trust.

8.  Watson describes the actions he attributes to Northstar Employee 1 in this discussion as "like federal, FBI-type stuff," "huge," and states that although he is "not an attorney," it "scare[s] the bejeebers out of [him]."

9.  Northstar Employee 1 comments to Watson that, as a separate matter, "you and I . . . what we did for Amazon—that's FBI. You have two corporate real estate people for the largest tenant in the world that if you trace the money, it will get out of hand." The employee continues that "Colorado is a one party . . . consent for voice—for recordings," and that "[w]e all know what we did." The employee states that, "to protect all of us, the company, you and I can work something out, guaranteed—look me in the eyes. If I say something to the wrong person, and it gets out, the whole Amazon things shuts down and we will never do another deal . . . ."

10. Watson's confrontation of Northstar Employee 1 concludes after he tells Northstar Employee 1 that Watson is "willing to suspend [Northstar Employee 1] until we have this conversation and we get to the bottom of this." Northstar Employee 1 agrees, and Watson responds that "we'll suspend until next week."

11. Watson next confronts Northstar Employee 2, in a conversation attended by Northstar Employee 4. During the conversation, Northstar Employee 2 states that the, as Watson describes it, "side deal" was "a culmination of . . . actions and [Watson's] treatment of [Northstar Employee 1] and his contract." Watson asks Northstar Employee 2 if he "would [also] . . . like to be temporarily suspended until such time as we have this conversation together, or should I just go ahead and fire you right now and be done?" Northstar Employee 2 replies that "[i]t's definitely a conversation that we need to have so I will . . . take [the suspension.]"

3

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on April 27, 2020.

Lora E. MacDonald