UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division



AMAZON.COM, INC., et al.

Plaintiffs,

v.

WDC HOLDINGS LLC., *et al.*,

Defendants.

CIVIL ACTION No. 1:20cv484

UNDER SEAL

**REQUEST FOR CONTINUANCE AND OPPOSITION OF BRIAN WATSON TO PLAINTIFF'S MOTION FOR EX PARTE TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE**

Defendant Brian Watson responds to Plaintiff's Motion for Ex Parte Temporary Restraining Order and Order to Show Cause Why A Preliminary Injunction Should Not Issue. Because the Defendants have not been provided any meaningful notice of the preliminary injunction hearing, the hearing should be continued to a future date so that Defendants can more fulsomely brief the legal factual issues involved in the multiple real estate transactions and claims at issue in this case. Even though Defendant has been deprived of an opportunity to develop facts and arguments, Amazon's motion fails to satisfy the standards for issuance of an injunction as a matter of law. Further, the requested injunction violates the Supreme Court's proscription on prejudgment attachment injunctions.

## INTRODUCTION AND SUMMARY OF FACTS

Defendant Brian Watson is the founder and principal of Defendant WDC Holdings LLC dba Northstar Commercial Partners ("Northstar") a Colorado Limited Liability Company. Northstar is a privately held, full-service real estate investment and asset management company, specializing in the development, acquisition, and redevelopment of commercial real estate assets throughout the United States. Since its founding in 2000, Northstar has developed over 100 properties comprising more than 3,000,000 square feet on more than 300 acres. Northstar currently has 35 employees based in Denver, Colorado.

Undersigned counsel has just been retained for this matter and is reviewing the underlying facts and claims made by the Plaintiff. Even a preliminary review, however, reveals that Amazon has several facts wrong. For example, and because it features prominently in the Verified Complaint, but is grossly mischaracterized, the so-called "direct purchase enterprise" deserves brief mentioned here. On September 27, 2019, Watson became aware, because of open source reporting, that two entities, White Peaks Capital LLC and NOVA WPC LLC, both defendants in the present suit, were involved in the same day purchase and sale of a parcel in the Dulles area during July of 2019. This "flip" took place on July 30, 2019 with NOVA WPC LLC paying $98.67 million to an entity known as "41992 John Mosby Highway LLC," and then selling the parcel to Amazon Data Services for $116.4 million, for a one day profit of almost $18 million. Watson's public records research revealed that the principals behind this deal were two of his own (now former) employees, Kyle Ramstetter and Will Camenson. Ramstetter and Camenson had known about and/or were involved with Northstar's business relationship with Amazon and knew something about how these deals were done. Watson, knowing that the opportunity to purchase this parcel and sell it to Amazon was a potential opportunity that belonged to Northstar, believed that Ramstetter and Camenson had wrongfully usurped a corporate opportunity and - on

September 28, 2019 – confronted each of them with the facts he had discovered. Neither denied that they were behind this "side" deal, but both refused to share the details with Watson. Following this, Watson suspended each from Northstar while waiting for them to provide the details behind this deal. When neither came forward with any such information, they were both terminated as Northstar employees. Watson believed that both former employees had wrongfully usurped a potential opportunity belonging to Northstar and, in so doing, had committed tortious acts. Upon Northstar's threat of legal action, the parties agreed to a mediation with a former Colorado Supreme Court Justice, and the matter was resolved in or about October of 2019. Despite certain characterizations in the Verified Complaint, at no time did Watson believe that Ramstetter and Camenson or the entities they created had "gauged" or otherwise took advantage of Amazon. Indeed, it appears that Amazon had negotiated for the property at arms-length. In its push to support a preliminary injunction, Amazon somehow attributes the self-dealing activities of Ramstetter and Camenson to Watson, regardless of the fact that Watson terminated them from employment and threatened a lawsuit against them.

The Complaint similarly appears to distort and misstate Watson's long-standing business relationship with Christian Kirschner and uses those distortions to imply involvement in a kickback scheme. Watson's business dealings with Mr. Kirschner were all contractual and above-board. No agreement between them provided for, or in any way contemplated, that any payments made by Northstar to Villanova would be passed on to any third parties, including Amazon employees. Significantly, the contracts between Amazon and Northstar were the result of a competitive bidding process, with Northstar winning several of the bids. To date, Northstar consistently has completed its obligations under these contracts on schedule and under budget.

On April 2, 2020, Northstar received a series of "termination" letters from Dulles NCP, LLC and other leasing entities, each purporting to notify Northstar that because the "Property Manager," (Northstar) engaged in "activities that constitute cause to terminate the Property Management Agreement, Owner is hereby terminating the Property Management Agreement for cause...." Counsel for Northstar has been in communication with counsel for these parties about to learn what alleged "cause" would justify the noticed terminations.

Not coincidentally, on that exact same day of those termination notices, the FBI came to Watson's home unannounced, purportedly to talk about a situation in which Northstar was the victim of a fraud scheme. Soon, the FBI inquired about its actual topic for discussion, the various deals between Northstar and Amazon. The agents agreed, served Watson with a copy of a search warrant, a "target letter" which identifies him as a target of a federal grand jury investigation, and a grand jury subpoena, and also seized two laptop computers and a cell phone. The agents did not search Watson's house, and most certainly did not "raid" it as repeatedly suggested in Plaintiffs' Verified Complaint.

Counsel for Watson have since been in touch with the U.S. Attorney's Office for the Eastern District of Virginia, and have confirmed that he is, in fact, a target of an ongoing investigation. The prosecutors have not shared the details of the evidence, if any, against Watson, but have confirmed that the subject matter of the criminal investigation is essentially the same as the subject matter of the allegations contained in the Verified Complaint. Consequently, it appears that the FBI investigation likely is based on the same misimpressions and/or incorrect reports that are behind Amazon's Complaint.

## ARGUMENT

### I. Defendants Have Not Received Adequate Notice

The Court should refuse to enter a preliminary injunction and should continue any hearing on Amazon's request for a hearing for at least ten days after Amazon provides proper notice of its motion. Watson has counsel in connection with the ongoing investigation. Upon receiving information of this action, that counsel promptly requested copies of the TRO and all pleadings. Rather than provide that information, Amazon took the position that the documents were sealed and that it could not share the claims against Watson. Eventually, Amazon provided a copy of the Complaint. Less than forty-eight hours before the May 7, 2020 hearing at which Amazon is seeking a mandatory injunction over tens of millions of dollars, Amazon finally provided Watson with a copy of the motion seeking an injunction requiring him to deposit millions of dollars into an escrow to secure any eventual judgment. The Court's TRO requires Watson to file with the Court and serve any responsive materials two days prior to the hearing. Thus, Watson's counsel is required to review Amazon's claims and respond within a single day. Watson cannot adequately respond to Amazon's motion given the lack of notice and Amazon's dilatory tactics.

Federal Rule 65(b) requires that Amazon put forward "specific facts" that "clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard" to justify the issuance of TRO. Further, Amazon's attorney must have certified in writing "any efforts made to give notice and the reasons why it should not be required." None of that has been provided to Watson.

Amazon's tactics are a violation of Watson's right to due process and the federal rules. Rule 65(a) provides that a "court may issue a preliminary injunction only on notice to the adverse party." Although Watson learned of the Complaint and TRO on or about May 1, 2020, Amazon only produced its motion to Defendant on May 5, 2020. The undersigned counsel was retained in

5

this matter that same day and has had little time to evaluate the facts or allegations. The notice provided is insufficient to satisfy the procedural due process requirements of adequate notice. *Mora v. City of Gaithersburg, Md.*, 519 F.3d 216, 230 (4th Cir.2008) ("procedural due process is simply a guarantee" that there is notice and an opportunity to be heard). Accordingly, Watson requests that any hearing be continued for a sufficient period of time to allow him to respond to Plaintiff's demand for an injunction more fulsomely.

## II. The TRO Should be Dissolved

In addition to the lack of notice and other deficiencies set forth above, the TRO should be dissolved pursuant to Rule 65(b)(4) because it is facially defective. Federal Rule 65(d) requires that every injunction or restraining order describe in reasonable detail the act or acts restrained or required. The Rules specifically proscribe injunction terms that refer "to the complaint or other document." That is exactly what the TRO issued here does. *See* Dkt 16 at ¶¶ 1-4, 7. Because the requested injunction is not self-contained, it cannot be maintained or entered.

It also is impossible for Watson to comply with many portions of the TRO because it requests that Watson place into escrows funds in accounts as to which Watson does not have access. Those accounts generally are controlled by IPI.

## III. Substantial Factual And Legal Issues Exist that Preclude Entry of a Preliminary Injunction

Although Watson requests that the hearing be moved so that he might have adequate notice to review and respond to the issues raised by Amazon's motion, even a preliminary review of the Complaint reveals numerous flaws in Amazon's factual allegations and legal theories.[1] Those deficiencies preclude entry of a preliminary injunction.

---

[1] For example, Amazon's central premise that Watson was a party to a kickback scheme is false.

6

Determining whether a preliminary injunction should be granted requires the consideration of four factors. These factors are: 1) the likelihood of irreparable harm to the plaintiff if the preliminary injunction is not granted; 2) the likelihood of harm to the defendant if the preliminary injunction is granted; 3) the likelihood that plaintiff will succeed on the merits; and 4) the public interest. *Hughes Network Systems, Inc. v. InterDigital Comm. Corp.*, 17 F.3d 691 (4th Cir. 1994); *Amoco Production Co. v. Gambell*, 480 U.S. 531, 542 (1987). Granting a preliminary injunction requires that a district court, acting on an incomplete record, order a party to act, or refrain from acting, in a certain way. "[T]he danger of a mistake" in this setting "is substantial." *American Hosp. Supply Corp. v. Hospital Prods., Ltd.*, 780 F.2d 589, 593 (7th Cir.1986).

### A.    There is No Irreparable Harm

This case involves a commercial dispute in which Amazon believes it relied upon dishonest employees in approving various commercial real estate deals. Amazon does not contend that it had other offers with a lower price than offered by Defendants. Moreover, Amazon has the right to cancel the leases they have for the assets, approved all costs and expenses already, and the lased properties are still being operated or developed by IPI, which who now controls the development, tenant needs, and relevant bank accounts. Consequently, whether Amazon has even suffered harm is, minimally, an open question.

As to whether any such harm is irreparable, the answer is "no." The Complaint and supporting declaration contain no evidence that Watson has dissipated assets, threatened to do so, spoliated evidence, or done anything else justifying emergency relief.[2] Amazon simply attaches newspaper articles concerning an FBI investigation of Watson. Despite its dramatic contentions,

---

[2] Further, although the Court's TRO Order requires Amazon to post a $2 million bond, it is not clear whether Amazon posted that security as required by Federal Rule 65(c).

Amazon's motion shows that it seeks injunctive relief solely to secure funds to pay any final judgment. *See* TRO Motion at 3 (good cause to believe that immediate and irreparable damage to this Court's ability to grant effective final relief will result from the destruction, sale, transfer, or other disposition or concealment by Defendants or those acting in concert with them of otherwise discoverable evidence and assets...").

Courts have insisted, however, that the harm necessary to justify issuance of a preliminary injunction be irreparable. The Supreme Court has stated:

> "The key word in this consideration is irreparable. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm."

*Sampson v. Murray*, 415 U.S. 61, 90 (1974) (*quoting Virginia Petroleum Jobbers Assoc. v. Federal Power Comm'n*, 259 F.2d 921, 925 (D.C. Cir. 1958)). There is no irreparable harm here. Amazon seeks an award of money damages. Even if Amazon contends that Defendants cannot pay a money judgment, they have provided no evidence of that. Nor have they presented any evidence of dissipation of assets or spoliation of evidence. No such evidence exists.

### B.     The Balance of Harms Weighs in Favor of Watson

There is no risk of ongoing harm to Amazon. Even if there were a scheme involving Amazon's employees, Amazon admits that it already has discharged those employees. Injunctive relief will do nothing further to protect Amazon – financially or reputationally. In contrast, requiring Watson to deposit substantial assets in advance of any adjudication of liability would seriously impair his ability to defend against the unfounded charges against him. There is not a likelihood of harm to Watson; there is a certainty.

8

### C. Plaintiff is Unlikely to Succeed on the Merits

Amazon's claims lack legal and factual merit. While counsel for Watson have had nearly no time to review and evaluate Amazon's claims, defects are obvious. Chiefly among these are Amazon's RICO claim, which completely fails to allege a RICO violation. To state a claim for a violation of the RICO statute, a plaintiff must allege a pattern of predicate acts and show either open-ended or closed continuity. *Whitney, Bradley & Brown, Inc. v. Kammermann*, 463 F. App'x 257, 257 (4th Cir. 2011) (citing *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985)). Amazon has conspicuously failed to do so.

There is no evidence of any mail or wire fraud. Rather, Amazon simply states that funds were wired in connection with various commercial contracts. While Amazon alleges that there was impropriety in the making of those contracts, it does not connect Watson to that and does not make more than generic allegations of predicate acts. The Fourth Circuit urges special caution when the alleged predicate racketeering acts involve mail and wire fraud, as Plaintiffs have alleged here. That court has observed that "it will be the unusual fraud that does not enlist the mails and wires in its service at least twice....This caution is designed to preserve a distinction between ordinary or garden-variety fraud claims better prosecuted under state law and cases involving a more serious scope of activity." *Al-Abood v. El-Shamari*, 217 F. 3d 225 at 238 – 239 (4th Cir. 2000). That court correspondingly concluded that RICO treatment was not appropriate where the main predicate acts, those being mail and wire fraud, involved one victim, even though there was more than one scheme over a period of several years. *See also Anderson v. Foundation for Advancement, Education, & Employment of American Indians*, 155 F.3d 500 at 506 (4th Cir. 1998) (continuity element of RICO's pattern requirement not satisfied where telephone and mail services

9

used to defraud one party.). Here, there is one alleged scheme involving one defendant. This is insufficient to support a RICO claim.

### D. The Public Interest Does Not Support an Injunction

The public interest is not served by an injunction in this case. An injunction to prevent dissipation of assets in civil litigation does not serve the public interest – it serves only Amazon. The Supreme Court has resoundingly rejected the proposition that such injunctions support the public interest (or, indeed, are legal at all). *See Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund Inc.*, 527 U.S. 308 (1999).

## IV. The Court Lacks Authority To Issue the Requested Injunction

The Court lacks authority to issue a mandatory injunction that is, in effect, a prejudgment attachment. In *Grupo Mexicano*, the Supreme Court held that in an action for money damages, the district court does not have the power to issue a preliminary injunction preventing the defendant from transferring assets in which no lien or equitable interest is claimed. *See Id.* In that case, which sought only money damages, investors purchased notes issued by Grupo Mexicano, a Mexican holding company involved in toll road construction. When Grupo Mexicano came into serious financial difficulties and defaulted on its notes, the investors sought a preliminary injunction restraining Grupo Mexicano from assigning its assets so that it would be able to pay its debts. The district court, finding that Grupo Mexicano was at risk of insolvency and that it planned to use its assets to satisfy other creditors, frustrating any judgment the investors might obtain, granted a preliminary injunction restraining Grupo Mexicano from transferring its assets, and the Second Circuit affirmed. Reversing the Second Circuit, the Supreme Court stated that general equitable authority does not authorize prejudgment injunctions in actions at law. Rather, "a general creditor (one without a judgment) ha[s] no cognizable interest, either at law or in equity, in the property of his debtor, and therefore could not interfere with the debtor's use of that property" prior to

10

obtaining a judgment. Id. at 319-20. The Court observed that "[t]he law of fraudulent conveyances and bankruptcy was developed to prevent [debt avoidance or preference]; an equitable power to restrict a debtor's use of his unencumbered property before judgment was not." *Id.* at 322.

To avoid this law, Amazon attempts to plead a cause of action for equitable relief in the form of the imposition of a constructive trust over unidentified assets. Aside from the fact that the constructive trust claim is a thinly disguised effort to obtain a prejudgment attachment in connection with money damages, that claim is facially deficient.

Virginia law defines the tort of conversion as any distinct act of dominion or control wrongfully exerted over the property of another, either inconsistent with, or in denial of, the owner's rights. *Hairston Motor Co. v. Newsome*, 253 Va. 129, 135, 480 S.E.2d 741, 741 (1997). The elements of a conversion claim are (i) the ownership or right to possession of the property at the time of the conversion and (ii) the wrongful exercise of dominion or control by the defendant over the plaintiff's property, thus depriving him of possession. *See Simmons v. Miller*, 261 Va. 561, 582, 544 S.E.2d 666, 679 (2001). Indeed, absent an allegation that the plaintiff is entitled to immediate possession of the property at issue, no conversion claim lies. *Economopoulos v. Kolaitis*, 259 Va. 806, 814, 528 S.E.2d 714, 719 (2000). *See also Jones v. Bank of America, Inc.*, 2010 WL 6605789 (E.D. Va. August 24, 2010) (because plaintiff "failed to plead a plausible claim that she has the right to immediate possession" of the property at issue, plaintiff could not state a claim for conversion).To maintain a claim for conversion, the plaintiff must have a property interest in the item allegedly converted and be "entitled to the immediate possession of the item." *Economopoulos v. Kolaitis*, 259 Va. 806, 528 S.E.2d 714, 719 (Va.2000).

Because of this, Virginia courts have repeatedly recognized that a "cause of action for conversion does not encompass claims for interference with undocumented intangible property

11

rights." *United Leasing Corp. v. Thrift Insurance Corp.*, 247 Va. 299, 306 (1994). The general rule in Virginia is that "money cannot be the subject of conversion, only tangible personal property may be converted." *Jones v. Bank of Am. Corp.*, 2010 WL 6605789 (E.D. Va. Aug. 24, 2010); *Arias v. Jokers Wild*, 73 Va. Cir. 281, 301 (Va. Cir. Ct. 2007). Plaintiff's conversion claim is for money from a variety of co-mingled bank accounts and a future payment yet to be made. Amazon has not shown an immediate entitlement to any of those funds.

## CONCLUSION

For the above reasons, Defendant Watson respectfully requests that the Court vacate its May 1, 2020 Temporary Restraining Order, continue the hearing on the preliminary injunction to May 21, 2020 or later, or – alternatively – deny the request for a preliminary injunction.

DATED: May 5, 2020

Respectfully submitted

/s/ Jeffrey R. Hamlin
Jeffrey R. Hamlin (Va. Bar No. 46932)
George R. Calhoun (pro hac pending)
James Trusty (pro hac pending)
IFRAH PLLC
1717 Pennsylvania Avenue NW
Suite 650
Washington, DC 20006-2004
(202) 524-4140 – Tel.
(202) 524-4141 – Fax
jhamlin@ifrahlaw.com
george@ifrahlaw.com
jtrusty@ifrahlaw.com

*Counsel for Defendant Brian Watson*

12

## CERTIFICATE OF SERVICE

I hereby certify that on May 5, 2020, I emailed the Request for Continuance and Opposition of Brian Watson to Plaintiff's Motion for Ex Parte Temporary Restraining Order and Order to Show Cause Why A Preliminary Injunction Should Not Issue to:

Elizabeth P. Papez

Patrick F. Stokes

Gibson Dunn & Crutcher LLP

1050 Connecticut Ave., NW

Washington, DC  20036-5306

epapez@gibsondunn.com

pstokes@gibsondunn.com

Respectfully submitted,
/s/ *James M. Trusty*
James M. Trusty (Bar No. 198359)
IFRAH PLLC
1717 Pennsylvania Ave. NW, Suite 650
Washington, DC 20006
(202) 524-4140 – Tel.
(202) 524-4141 – Fax
*Attorney for Defendant Brian Watson*