**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**



AMAZON.COM, INC. and AMAZON
DATA SERVICES, INC.,

   Plaintiffs,

v.

WDC HOLDINGS LLC dba NORTHSTAR
COMMERCIAL PARTNERS; BRIAN
WATSON; STERLING NCP FF, LLC;
MANASSAS NCP FF, LLC; NSIPI
ADMINISTRATIVE MANAGER; NOVA
WPC LLC; WHITE PEAKS CAPITAL LLC;
VILLANOVA TRUST; JOHN DOES 1-20,

   Defendants.

CASE NO. 1:20-CV-484

**FILED UNDER SEAL PURSUANT TO
LOCAL RULE 5**

**PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF SHOW CAUSE
ORDER AND PLAINTIFFS' APPLICATION FOR PRELIMINARY INJUNCTION**

Legally Privileged & Confidential
DRAFT 5/18/2020 12:07 PM

## TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................................................... 1

SUMMARY OF ARGUMENT AND RELIEF REQUESTED .................................... 2

ARGUMENT ................................................................................................................... 6

I.      PLAINTIFFS ARE LIKELY TO SUCCEED ON ALL OF THEIR
        CLAIMS ............................................................................................................. 7

        A.      Plaintiffs Are Likely to Succeed on Equitable Claims for Relief
                Under *Grupo* ...................................................................................... 7

        B.      Amazon Is Likely To Succeed on Its Civil RICO Claims ........................... 9

        C.      Amazon Is Likely to Succeed on Its Common Law Tort and
                Contract Claims ...................................................................................... 14

II.     AMAZON WILL SUFFER IRREPARABLE HARM ABSENT AN
        INJUNCTION ................................................................................................. 17

III.    THE BALANCE OF HARMS FAVORS INJUNCTIVE RELIEF ...................... 18

IV.     A PRELIMINARY INJUNCTION SERVES THE PUBLIC INTEREST ........... 20

CONCLUSION ............................................................................................................. 20

Legally Privileged & Confidential
DRAFT 5/18/2020 12:07 PM

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Al-Abood ex rel. Al-Abood v. El-Shamari,*
   217 F.3d 225 (4th Cir. 2000) ................................................................................13

*American Can Co. v. Mansukhani,*
   742 F.2d 314 (7th Cir. 1984) ................................................................................18

*Anderson v. Found For Advancement, Educ. Emp't of Am. Indians,*
   155 F.3d 500 (4th Cir. 1998) ................................................................................13

*B2Gold Corp. v. Christopher,*
   2019 WL 4934969 (E.D. Va. July 10, 2019) ........................................................10

*Bethesda Softworks, L.L.C. v. Interplay Entm't Corp.,*
   452 F. App'x 351 (4th Cir. 2011) .........................................................................17

*Blackwelder Furniture Co. v. Seilig Mfg. Co., Inc.,*
   550 F.2d 189 (4th Cir. 1977) ................................................................................17

*Cromer v. Kraft Foods North America, Inc.,*
   390 F.3d 812 (4th Cir. 2004) ................................................................................20

*Dacotah Mktg. & Research, L.L.C. v. Versatility, Inc.,*
   21 F. Supp. 2d 570 (E.D. Va. 1998) .......................................................................5

*Devine v. Buki,*
   289 Va. 162 (2015) .........................................................................................14, 15

*Dunn Const. Co. v. Cloney,*
   278 Va. 260 (2009) ................................................................................................14

*Economopoulos v. Kolaitis,*
   528 S.E.2d 714 (Va. 2000) .....................................................................................9

*Edmonson v. Eagle Nat'l Bank,*
   922 F.3d 535 (4th Cir. 2019) ................................................................................17

*Flip Mortg. Corp. v. McElhone,*
   841 F.2d 531 (4th Cir. 1988) ................................................................................14

*Fred Hutchinson Cancer Research Ctr. v. Biopet Vet Lab, Inc.,*
   768 F. Supp. 2d 872 (E.D. Va. 2011) ...................................................................18

## TABLE OF AUTHORITIES
(continued)

Page(s)

*G.G. ex rel. Grimm v. Gloucester Cty. Sch. Bd.,*
    822 F.3d 709 (4th Cir. 2016), *vacated and remanded on other gds.,*
    137 S. Ct. 1239 (2017)..................................................................................................6

*Grupo Mexicano de Desarrollo, S. A. v. Alliance Bond Fund, Inc.,*
    527 U.S. 308 (1999)......................................................................................................7

*Henderson v. Former City Sheriff of Richmond, Va.,*
    2016 WL 6804882 (E.D. Va. Nov. 16, 2016)............................................................20

*Hughes Network Sys., Inc. v. InterDigital Commc'ns Corp.,*
    17 F.3d 691 (4th Cir. 1994) ...................................................................................17, 18

*Instant Air Freight, Co. v. C.F. Air Freight, Inc.,*
    882 F.2d 797 (3d Cir. 1989) ......................................................................................18

*Janvey v. Alguire,*
    647 F.3d 585 (5th Cir. 2011) ....................................................................................21

*Jones v. Bank of Am. Corp.,*
    2010 WL 6605789 (E.D. Va. Aug. 24, 2010)..............................................................8

*L-3 Services, Inc. v. Szekely,*
    2010 WL 11579457 (E.D. Va. Sept. 24, 2010)..........................................................13

*Langadinos v. Am. Airlines, Inc.,*
    199 F.3d 68 (1st Cir. 2000).........................................................................................6

*Lee v. Bickell,*
    292 U.S. 415 (1934)...................................................................................................21

*Levi Strauss Co. v. Sunrise Intern. Trading,*
    51 F.3d 982 (11th Cir. 1995) ..................................................................................5, 18

*Menasco, Inc. v. Wasserman,*
    886 F.2d 681 (4th Cir. 1989) ....................................................................................13

*Merrill Lynch, Pierce, Fenner and Smith v. Bradley,*
    756 F.2d 1048 (4th Cir. 1985) ..................................................................................17

*Metrocall of Delaware, Inc. v. Cont'l Cellular Corp.,*
    437 S.E.2d 189 (1993) ..............................................................................................15

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Microsoft Corp. v. John Does 1-2,*
    No. 1:17-cv-01224, Dkt. 36 (Oct. 27, 2017)............................................................1, 2

*Navient Sols., LLC v. Krohn & Moss, Ltd,*
    WL 6790654 (E.D. Va. July 26, 2018) ........................................................................10

*Ortiz v. Panera Bread Co.,*
    2011 WL 3353432 (E.D. Va. Aug. 2, 2011)................................................................19

*In re Paysage Bords de Seine, 1879 Unsigned Oil Painting on Linen by Pierre-*
*Auguste Renoir,*
    991 F. Supp. 2d 740 (E.D. Va. 2014) ..........................................................................9

*PIG, Inc. v. Rathe Prods., Inc.,*
    576 S.E.2d 438 (Va. 2003)...........................................................................................8

*Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations,*
    413 U.S. 376 (1973)...................................................................................................20

*U.S. ex rel. Rahman v. Oncology Assocs.,*
    198 F.3d 489 (4th Cir. 1999) ...................................................................................7, 8

*Raleigh Radiology, Inc. v. Eggleston & Eggleston, P.C.,*
    2009 WL 3764092 (W.D. Va. Nov. 10, 2009) ............................................................8

*Richmond Metro. Auth. v. McDevitt St. Bovis, Inc.,*
    256 Va. 553 (1998) ....................................................................................................14

*Salinas v. United States,*
    522 U.S. 52 (1997)............................................................................................4, 9, 10

*Sarsour v. Trump,*
    245 F. Supp. 3d 719 (E.D. Va. 2017) ..........................................................................2

*SAS Inst., Inc. v. World Programming Ltd.,*
    874 F.3d 370 (4th Cir. 2017) .....................................................................................20

*SecureInfo Corp. v. Telos Corp.,*
    387 F. Supp. 2d 593 (E.D. Va. 2005) ..........................................................................9

*Staples v. Guardian Auto,*
    No. 1:12-cv-477, 2012 WL 2192235 (E.D. Va. June 14, 2012)...................................2

## TABLE OF AUTHORITIES
### (continued)

Page(s)

*Tudor Assocs., Ltd. v. AJ & AJ Servicing, Inc.*,
    36 F.3d 1094 (4th Cir. 1994) .................................................................................14

*U.S. v. First Nat. City Bank*,
    379 U.S. 378 (1965).............................................................................................7

*UBS Fin. Servs. Inc. v. Carilion Clinic*,
    880 F. Supp. 2d 724 (E.D. Va. 2012) ...............................................................21

*United States v. Abed*,
    203 F.3d 822 (4th Cir. 2000) ...............................................................................9

*United States v. Cohan*,
    988 F. Supp. 2d 323 (E.D.N.Y. 2013), *aff'd*,
    798 F.3d 84 (2d Cir. 2015)..................................................................................20

*United States v. Cornell*,
    780 F.3d 616 (4th Cir. 2015) ...............................................................................9

*United States v. Pescatore*,
    637 F.3d 128 (2d Cir. 2011).................................................................................20

*Van Deusen v. Snead*,
    247 Va. 324 (1994) .............................................................................................15

*Whitney, Bradley & Brown, Inc. v. Kammermann*,
    2010 WL 2696648 (E.D. Va. July 7, 2010), *aff'd*,
    436 F. App'x 257 (4th Cir. 2011) ......................................................................13

**Statutes**

21 U.S.C.A. § 853...................................................................................................20

28 U.S.C. § 1651(a) ...............................................................................................20

Va. Code § 8.01-114 ...............................................................................................9

Va. Code § 8.01-144(A)..........................................................................................9

**Other Authorities**

5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*
    § 1224 (3d ed. 2019) .............................................................................................6

# TABLE OF AUTHORITIES
### (continued)

<u>Page(s)</u>

Legally Privileged & Confidential
DRAFT 5/18/2020 12:07 PM

## INTRODUCTION

On April 28, 2020, this Court granted the Amazon Plaintiffs' request for a sealed Temporary Restraining Order ("TRO"). The Order required the named Defendants to preserve evidence and assets related to the fraud and kickback scheme they utilized to misappropriate at least $40 million from Amazon's development of several Northern Virginia real estate sites. *See* Dkt. 16 ("Order"). The Order provides that the injunction is justified under applicable laws and the evidence in Plaintiffs' sworn filings, that the requested "TRO is reasonable and necessary to protect Plaintiffs' interests and those of the public," and that Defendants must "show cause why a preliminary injunction should not issue." *Id.* 1-4. Defendants have not made that showing. In fact, their response confirms the need for continued injunctive and other relief.

Four of the Defendants—Sterling, Manassas, Administrative Manager, and Villanova— "have not responded to the Court's order to show cause," which supports immediate entry of a preliminary injunction against those entities. *E.g., Microsoft Corp. v. John Does 1-2*, No. 1:17-cv-01224, Dkt. 36, at 1 (Nov. 17, 2017). The same applies to Defendants NOVA WPC and White Peaks, who do not oppose the Order. *See id.* These two Defendants have advised through counsel that they will "comply" with all "non-monetary aspects of the TRO."[1]  And on the monetary conditions, they have cooperated on an escrow agreement but claim that, "[a]t present, no monetary assets remain in the possession or control of White Peaks LLC or NOVA WPC LLC" to fund the $17,730,000 in Paragraph 3 of the Order. They say that is so because a "portion of" those funds was "paid to an entity under [Defendant] Watson's control" before the Order was entered, and because the remaining funds "have been forfeited to the federal government" as a result of their "controlling manager['s]" cooperation "with the government in its criminal investigation." *Id.*

---

[1] *See* Letter from White Peaks and NOVA WPC counsel Jamie Hubbard, attached to Supplemental Declaration of Lora E. MacDonald ("Supp. MacDonald Decl.").

Accordingly, the Court should enter the unopposed injunction against the NOVA and White Peaks Defendants as proposed in the attached order. *See Staples v. Guardian Auto Glass, LLC*, 2012 WL 2192235, at *3 (E.D. Va. June 14, 2012).

That leaves only the two Defendants—Brian Watson and WDC Holdings LLC dba Northstar Commercial Partners (collectively the "Watson/WDC Defendants")—who have defied the Court's Order. Their May 14 opposition filing ("Opp.") supports immediate entry of a preliminary injunction as well as expedited discovery and other potential enforcement relief.

## SUMMARY OF ARGUMENT AND RELIEF REQUESTED

"The standard for granting either a TRO or a preliminary injunction is the same." *Sarsour v. Trump*, 245 F. Supp. 3d 719, 728 (E.D. Va. 2017). This Court found that standard "satisfied" in directing Defendants to "show cause" why a preliminary injunction should not issue. Order 4. Watson and WDC do not come close to meeting their burden. Instead, they admit that:

i.  Watson is the target of a criminal investigation into "essentially the same . . . subject matter" that prompted the FBI raid addressed in Plaintiffs' TRO request, Opp. 8;

ii. Watson sent the email—which he does not attach to his brief but is appended to this filing—that alerted his accomplices to the FBI raid at his home and explicitly urged the responsible FBI agents, one of whom he admits he copied on the email, Opp. 13, to "place any blame on [him]" and "let [his co-conspirators] Casey and Carl be"; and

iii. Watson secretly recorded his self-serving confrontation of the former Northstar employees (principals of the NOVA and White Peaks Defendants here) involved in the Direct Purchase Enterprise, and has now filed an incomplete transcript of that recording that omits the audio file's reference to "Casey," Watson's co-conspirator who deleted from an Amazon laptop files documenting his Northstar-funded kickbacks.

These and other concessions detailed below confirm that continuing injunctive relief is necessary and justified, including the imminent need to secure assets sufficient to satisfy a judgment for at least the $40 million in fraud proceeds the Court ordered into escrow. Order 2-3. The Watson/WDC Defendants' response has shifted over time, but is as unavailing now as it was last month. Their May 14 filing properly abandons their prior notice objections to the Order, and

now complains that "[n]o Amazon employee and no 'confidential informant' submitted evidence in support of the complaint or application." Opp. 2. But as their own cases establish, injunctions are permitted and routinely granted based on confidential information including hearsay. *See* Opp. 14. Nevertheless, in response to Defendants' criticism, Plaintiffs submit with this brief confirmatory affidavits from: (i) Amazon's Corporate Counsel D. Matthew Doden, who supervised the whistleblower investigation that gave rise to this suit; (ii) "Informant 2"— Northstar's own Chief Operating Officer Timothy Lorman, who departed the company in April 2020; and (iii) IPI Partners' Vice President Luke Gilpin, to whom Lorman, in an effort to protect Northstar's legitimate corporate interests, reported the misconduct by Watson and other former Northstar employees that led to the IPI-Northstar contract terminations, Opp. 6-8.

The Watson/WDC Defendants are thus left to challenge the need for injunctive relief as some combination of moot and substantively unsupported. Specifically, they say the need for injunctive relief is "mooted," at least in part, Opp. 13, 28, by the fact that the "United States has seized the accounts identified" as repositories for the $3 million-plus payment addressed in Paragraph 1 of the Court's Order, *id.* 11 & n.3. But they refuse to provide any further information about these accounts, the $16,250,000 in undisputed lease transaction fees the Court ordered them to place in escrow, or their "portion" (Hubbard Ltr.; *see also* Opp. 4 n.2), of the $17,730,000 in White Peaks funds addressed in Paragraph 3 of the Order. They simply say that Plaintiffs must bear any dissipation risk on these assets that is not "mooted" by the federal seizures, Opp. 28, because the Court cannot secure funds based on "hearsay" from Plaintiffs' lawyers. Opp. 1-2. These arguments are meritless, at a minimum warrant expedited discovery (which Plaintiffs will request by separate motion), and raise conflict and enforcement issues that may merit further relief.

The Watson/WDC Defendants' evidentiary challenge to the Court's Order throws stones

from a glass house (their sole affidavit is from their counsel). It also contravenes their own cases upholding preliminary injunctions based on precisely the type of "hearsay" and other evidence in Plaintiffs' sworn pleadings. Opp. 14. And it inverts Defendants' burden to "show cause" why a preliminary injunction should *not* issue. Order 5. The Watson/WDC Defendants' May 14 filing does not rebut any facts in Plaintiffs' filings, much less establish them as "demonstrably incorrect." Opp. 2. Indeed, Defendants' brief concedes that the relevant purchase and lease transactions were tainted by fraud and kickbacks. It merely asserts—in legal arguments not verified by either defendant—that Watson and WDC/Northstar were unaware of their employees' White Peaks transaction until after it closed, and were similarly unaware that their referral fees to Defendant Villanova and its Trustee, Watson's longtime friend Christian Kirschner, were used to pay kickbacks to Christian's brother Casey, the former Amazon employee who handpicked WDC/Northstar for the transactions at issue in this suit and the parallel criminal case. Opp. 8, 28.

    None of these implausible assertions rebuts Plaintiffs' established likelihood of success on the claims that support injunctive relief here. First, the Watson/WDC Defendants' argument that they did not know of specific fraud or kickback payments ignores that a civil RICO "conspirator" can be liable for "agreeing to facilitate only some of the acts leading to the substantive offense." *Salinas v. United States*, 522 U.S. 52, 65 (1997). Second, the Watson/WDC Defendants' own papers corroborate their knowledge of these specific RICO predicates, as well as their role in the overall conspiracy and commission of common law fraud, contract, and equitable violations that independently support the Court's Order. The Freimann Exhibits alone illustrate the point.

    As detailed below, Exhibit C contains a copy of Northstar's 2016 referral agreement with Christian Kirschner that differs from the 2018 referral agreement with his trust (Villanova) in ways that confirm the Watson/WDC Defendants' knowledge that the agreement would facilitate the

undisputed kickbacks from Villanova to Christian's brother Casey and his Amazon colleague Carl Nelson.  The Watson/WDC Defendants offer no contrary evidence for the features or timing of the 2018 agreement, or for their failure to disclose it to Plaintiffs in keeping with undisputed Amazon RFP and contract requirements.  Freimann Exhibits A and B in turn foreclose the Watson/WDC Defendants' fallback claim that their hidden referral payments to Villanova are "irrelevant" because they did not cause actionable "harm" to Plaintiffs.  Opp. 2, 11-12.  In these exhibits, Watson and WDC/Northstar denounce conduct by former Northstar employees as "blatant" legal and equitable violations.  Ex. B at 2.  Specifically, they condemn former Northstar employees' conversion of a company deal opportunity as "Federal FBI type stuff," Ex. A 5, "an inherent conflict of interest" and "stealing," *id.* 8, and a "breach of loyalty" and "usurpation of a corporate opportunity" warranting "a constructive trust on the proceeds," Ex. B at 2.  These statements alone belie—if not estop—the Watson/WDC Defendants' denial of the inherently harmful nature of the parallel (but far more extensive) unlawful scheme against Plaintiffs and potentially other victims.

Moreover, in making these arguments, their May 14 filing emphasizes WDC/Northstar interests and obligations to "employees" and "investors," Opp. 2, 6 & Ex. A, that could be harmed by Watson's misconduct.  These references raise serious questions about counsel's representation of both defendants in light of "the nondelegable duty of the Court to ensure high standards of professional conduct in the management of cases before it and to prevent even the appearance of impropriety." *Dacotah Mktg. & Research, L.L.C. v. Versatility, Inc.*, 21 F. Supp. 2d 570, 582 (E.D. Va. 1998) (citing circuit directive to "resolve all doubts in favor of disqualification").

For the foregoing and other reasons elaborated below, the Watson/WDC Defendants fail to "show cause" why a preliminary injunction should not issue "pending a final ruling on the allegations and claims in Plaintiffs' Verified Complaint."  Order 4; *Levi Strauss & Co. v. Sunrise*

*Int'l Trading, Inc.*, 51 F.3d 982, 984 (11th Cir. 1995) (affirming grant of preliminary injunction in racketeering case where "appellants argued against the preliminary injunction, [but] they presented no opposing evidence"). Accordingly, Plaintiffs respectfully request that the Court enter the proposed order and escrow form attached to this filing, and set a schedule for (1) unsealing the case, (2) expedited discovery, and (3) briefing on defense counsel's apparent conflict of interest and the grounds and proper relief for Watson and WDC's failure to comply with the Court's Order.

## ARGUMENT

The Watson/WDC Defendants' failure to carry their "show cause" burden is apparent from the controlling law their brief misstates. They assert that preliminary injunctive relief should not be based on "hearsay and innuendo," Opp. 1, 8, 14. But their own cases, *id.* 14, hold that "[p]reliminary injunctions," which occur at the pleadings stage, are necessarily "governed by less strict rules of evidence," which is why "district courts may look to, and indeed in appropriate circumstances rely on, hearsay or other inadmissible evidence when deciding whether a preliminary injunction is warranted." *E.g.*, *G.G. ex rel. Grimm v. Gloucester Cty. Sch. Bd.*, 822 F.3d 709, 725-26 (4th Cir. 2016), *vacated and remanded on other grounds*, 137 S. Ct. 1239 (2017). The same conclusion applies to allegations based on "information and belief," Opp. 14-16, which Plaintiffs are "entitled to include" in their "complaint as long as [they] ha[ve] a good faith basis for doing so." *E.g.*, *Langadinos v. Am. Airlines, Inc.*, 199 F.3d 68, 73 (1st Cir. 2000).[2] These points alone dispose of the Watson/WDC Defendants' opposition, which does not overcome the weight of the evidence in the Verified Complaint, much less the confirmatory affidavits and direct evidence attached to this response. *See* Supp. MacDonald Decl.; Declaration of D. Matt Doden (Amazon); ("Doden Decl."); Declaration of Luke Gilpin (IPI) ("Gilpin Decl.").

---

[2] This pleading rule is a "practical necessity" where, as here, corporate plaintiffs must allege facts "received from subordinate[s]." 5 Fed. Prac. & Proc.§ 1224 (3d ed. 2020) (citing cases).

## I.   PLAINTIFFS ARE LIKELY TO SUCCEED ON ALL OF THEIR CLAIMS

The Watson/WDC Defendants concede that preliminary injunctive relief is proper where the plaintiff "(1) [is] likely to succeed on the merits, (2) [is] likely to suffer irreparable harm [in the absence of an injunction], (3) the balance of hardships tips in [its] favor, and (4) the injunction is in the public interest." Opp. 8. Their challenge to the first prong of this test boils down to two arguments. First, Plaintiffs are not entitled to an injunction against "transferring assets in which no lien or equitable interest is claimed." Opp. 10 (citing *Grupo Mexicano de Desarrollo, S. A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 333 (1999)). Second, Plaintiffs are unlikely to prevail on any of their legal claims because the Watson/WDC Defendants were not aware of the White Peaks fraud or Villanova kickbacks, and absent such knowledge their conduct was "not inconsistent with the lease transactions." Opp. 16. Both arguments fail.

### A.   Plaintiffs Are Likely to Succeed on Equitable Claims for Relief Under *Grupo*

Defendants' claim that the Court cannot secure "assets in which no lien or equitable interest is claimed," Opp. 10, is contradicted by *Grupo* as well as the Fourth Circuit's ensuing decision in *Rahman*, both of which Plaintiffs' motion addressed. TRO Br. 13, 16-17, 23-26. As Defendants note, the plaintiff in *Grupo* "sought only money damages" on claims that were *not* actionable in equity. Opp. 10. Accordingly, the case as pled was subject to the prohibition on "prejudgment injunctions in actions at law," and could not support a TRO against the defendant's asset transfers. *Id*. In sharp contrast, this case pleads both an "interest in the defendant's assets (by way of lien *or an equitable interest*)" and claims for "a money judgment." *U.S. ex rel. Rahman v. Oncology Assocs.*, 198 F.3d 489, 497 (4th Cir. 1999) (citing *Grupo*, *supra*). Accordingly, this Court properly issued a pre-judgment order "to freeze or otherwise interfere with the defendant's assets," because Plaintiffs "seek cognizable relief in equity involving assets of the defendant." *Id*.

For the reasons in Plaintiffs' sworn filings and the Court's Order, such relief is proper here because it "is a reasonable measure to preserve the *status quo* in aid of the ultimate equitable relief claimed." *Rahman*, 198 F.3d at 497 (citing *United States v. First Nat'l City Bank*, 379 U.S. 378, 385 (1965)). The Watson/WDC Defendants' effort to establish otherwise by attacking Plaintiffs' equitable claims, Opp. 24-25, fails for three reasons. First, it challenges only Plaintiffs' "conversion and detinue claims," *id.*, and thus concede likelihood of success on the unjust enrichment count that alone provides an equitable basis for the relief Plaintiffs seek. *See* TRO Br. 16 (explaining that Plaintiffs' "claims against the Defendants sound in both law and equity for purposes of pre-judgment relief," Compl. ¶¶ 170-73; 196-204, and that their "'unjust enrichment count is recognized as equitable'" (quoting *Rahman*, 198 F.3d at 497)).

Second, their challenge to Plaintiffs' conversion claim fails under their own authorities. Opp. 24-25. Their primary argument is that "money cannot be the subject of conversion." Opp. 25 (quoting *Jones v. Bank of Am. Corp.*, 2010 WL 6605789 (E.D. Va. Aug. 24, 2010)). But this argument is foreclosed by their own statements in Freimann Exhibit B that "usurpation" of a corporate opportunity constitutes a conversion warranting "a *constructive trust on the proceeds*." Freimann Ex. B at 2. Their argument is also wrong under Virginia law. The *Jones* case they cite, Opp. 25, says that "money *can* be the basis of a conversion claim" if the money is "an identifiable fund, such as a bag of money or identifiable settlement proceeds." 2010 WL 6605789, at *5 (stating that in such circumstances the plaintiff "may maintain an action for the conversion"); *Raleigh Radiology, Inc. v. Eggleston & Eggleston, P.C.*, 2009 WL 3764092, at *4 (W.D. Va. Nov. 10, 2009) (same, citing *PGI, Inc. v. Rathe Prods., Inc.*, 576 S.E.2d 438, 443 (Va. 2003)). That is precisely the situation here. In this case, as in *Raleigh*, Plaintiffs pled that Defendants "wrongly exercised authority over [] funds by improperly charging [plaintiff] for [associated] [s]ervices,"

8

and that the "funds over which [defendant] wrongly exercised its authority were deposited into [defendants'] bank account[s]." *Id.* at \*3-\*4 (quotation marks omitted)  Plaintiffs have thus pled a classic conversion claim on which they are highly likely to succeed.  Opp. 25; TRO Br. 23-24.

The Watson/WDC Defendants' challenge to Plaintiffs' detinue claim, Opp. 24, is similarly unavailing.  Defendants say this claim is unlikely to succeed because it applies only where "a party unlawfully withholds the personal property of another," *SecureInfo Corp. v. Telos Corp.*, 387 F. Supp. 2d 593, 620 (E.D. Va. 2005) (citing Va. Code § 8.01-114), and that property is located "in Virginia."  Opp. 24.  Plaintiffs' filings address all of these points.  *See* Compl. ¶¶ 170-72; TRO Memo at 22-23; *In re "Paysage Bords de Seine," 1879 Unsigned Oil Painting on Linen by Pierre-Auguste Renoir*, 991 F. Supp. 2d 740, 744 (E.D. Va. 2014)).  As detailed in the Verified Complaint and Gilpin Declaration, the Watson/WDC Defendants used fraud and kickbacks unlawfully to secure control of, and harm, Amazon funds and other personal property (including shell facilities and equipment) in Virginia.  *See, e.g.*, Compl. ¶¶ 55-60; TRO Br. 22-23; Gilpin Decl. ¶¶ 3-26.

## B.   Amazon Is Likely To Succeed on Its Civil RICO Claims

The Watson/WDC Defendants similarly twist law and facts in challenging Plaintiffs' likelihood of success on their RICO claims.  Their challenge turns on the Watson/WDC Defendants' purported ignorance of their own employees' misconduct on the White Peaks sale, and of specific lease kickbacks they funded with the Villanova "brokerage" payments they deliberately concealed from Amazon.  Opp. 22.  Defendants' arguments fail on all counts.

The Watson/WDC Defendants' RICO arguments fail, first and foremost, because they ignore the Supreme Court's admonition that "[o]ne can be a [RICO] conspirator by agreeing to facilitate only some of the acts leading to the substantive offense."  *Salinas v. U.S.*, 522 U.S. 52, 65 (1997); *U.S. v. Abed*, 203 F.3d 822 (4th Cir. 2000) (rejecting that prosecutors "needed to prove that the defendant himself committed or agreed to commit the two predicate acts required for a

substantive RICO offense"); *U.S. v. Cornell*, 780 F.3d 616, 624 (4th Cir. 2015) ("government is *not* required to allege or prove the actual completion of a single racketeering act by the defendant"). It is enough that "Defendants knew of and agreed to the overall objective of the RICO offense." *B2Gold Corp. v. Christopher*, 2019 WL 4934969, at *12 (E.D. Va. July 10, 2019).

Plaintiffs are likely to succeed on their civil RICO claims because it is undisputed that: (i) the Watson/WDC Defendants "knew of and agreed to the overall objective of the RICO offense," *B2Gold*, 2019 WL 4934969, at *12; and (ii) "agree[d] to facilitate" at least "some of the acts leading to the substantive offense[s]" against Plaintiffs, which go well beyond the specific kickbacks the Watson/WDC Defendants say—in arguments unverified by either client—they did not know they funded with their secret "brokerage" payments to Villanova. *Salinas*, 522 U.S. at 65. The evidence on these points is detailed in Plaintiffs' filings, and nothing in Defendants' submission refutes it. Indeed, and as noted, the defense submissions to date corroborate Watson and Northstar's knowledge even of the kickbacks and purchase fraud they purport to disclaim.

The May 15 Hubbard letter states that the White Peaks Defendants have forfeited to federal prosecutors the proceeds of the land sale in which Amazon paid them $116 million for a parcel they purchased the same day for $96 million with no improvements since the seller bought it for $20 million a year earlier. *See* Lorman Decl. ¶ 9. The transcript appended to the Watson/WDC Defendants' May 14 filing shows that they condemned this sale on terms—namely as a conversion of corporate opportunity warranting a "constructive trust on the proceeds," Freimann Ex. B—that apply with equal or greater force to their own conduct against Amazon. But instead of reporting this malfeasance on the sale that cost Amazon $116 million—a price they do not attempt to justify—they covered it up in exchange for a "portion" of the proceeds. (Hubbard Ltr.) Against

this backdrop, the argument that Plaintiffs are unlikely to succeed on their White Peaks claims, particularly on the ground that they do not involve "harm" to Amazon, Opp. 11, is baseless.

The Watson/WDC Defendants' transcript and other exhibits provide even stronger corroboration of the Lease Transaction claims against them, including with respect to the specific kickback knowledge they implausibly deny. The audio file submitted with this brief confirms that the transcript the Watson/WDC Defendants filed on May 14 omits as "unintelligible" the audio file's reference to their RICO co-conspirator "Casey" Kirschner, who received the undisputed kickbacks paid from their undisputed "brokerage" payments to Villanova.[3]

| Ramstetter: | It's a you- me- [unintelligible] me Casey conversation over a drink. |
|---|---|

Supp. MacDonald Aff. Ex. 2. The audio recording goes on to document former Northstar employee (and White Peaks principal Kyle Ramstetter) reminding Watson that if "you trace the money, it will get out of hand" because "we all know what we did," so he, Watson, and "Casey" should try to "work something out" before someone "say[s] something . . . [and] the whole Amazon thing shuts down." *Id.* Days after this conversation, Casey Kirschner told Watson, in a call overheard by Northstar COO Tim Lorman, that Casey never liked Ramstetter because Ramstetter had "figured out what you [Brian] and I [Casey] are doing." Lorman Decl. ¶¶ 12 (recounting Watson's personal relationships with Christian and Casey Kirschner, who Watson hosted for lavish trips during Casey's tenure with Amazon but never disclosed to the company). Further, the April 2 email Watson admits he "copied *to* the FBI," Opp. 13, but does not attach to

---

[3] *See, e.g.*, Ex. 41 (detailing $16,250,000 in lease transaction fees allocated to the Contempt Defendants in a spreadsheet recovered from the Recycle Bin of Casey's Amazon laptop for three Virginia Lease Transactions—"Shaw Rd.," "Quail Ridge," and "Manassas"—on which they paid Casey's brother undisclosed "brokerage" fees through Villanova); Ex. 24 (detailing $5,112,983.84 in kickbacks derived from at least nine Villanova Trust payments involving Lease Transactions).

his filing, urges the agents who searched his home to "place any blame on [Watson]" and "let Casey and [his co-conspirator] Carl [Nelson] be," Supp. MacDonald Decl. Ex. 2.

These communications alone suggest the Watson/WDC Defendants knew that their payment of part of their Amazon deal proceeds to Casey's brother's trust (Villanova) would fund kickbacks to Casey and Carl. And their unsworn assertions otherwise, Opp. 3, cannot overcome the evidence above or Informant 1's statement that it was known within Northstar that Casey had withdrawal privileges from the family trust the Watson/WDC Defendants handpicked for payments on the Amazon deals he approved for them. Doden Decl. ¶ 6.

The Watson/WDC Defendants' knowledge of (or at least willful blindness to) the kickback funding is further evidenced by the differences between the 2016 referral agreement they attach to their filing and their 2018 agreement with Villanova. They downplay the Villanova Agreement as "irrelevant" because it simply "replaced [this] previous agreement between Northstar and [Villanova Trust]" executed in 2016 (Opp. 6, 16). But that is like saying the Constitution is irrelevant because it simply replaced the Articles of Confederation. The timing and differences between the two agreements confirm the Villanova contract was not only used, but specifically intended, as a vehicle for enterprise kickbacks to co-conspirators at Amazon. The 2016 agreement paid Christian a fee of "$4,000 . . . per month" for deal referrals unconnected to any Amazon business. (Ex. C at ¶ 2.4.) The 2018 agreement, which the Watson/WDC Defendants executed after they submitted their RFP to Christian's brother Casey at Amazon but before their first Amazon contract, made Christian's trust the recipient of "brokerage" fees the agreement specifically ties to the Watson/WDC Defendants' proceeds on the Amazon Lease Transactions. MacDonald Decl. Ex. 14. The Watson/WDC Defendants admit that they used the tens of millions they earned on the Amazon deals to pay the Trust at least $5.11 million in such "brokerage" fees,

which they concealed from Amazon despite Lease provisions requiring their disclosure. *See, e.g.,* Exs. 7, 20, 21, 23, 24; Doden Decl. at ¶¶ 3-8. Against this and other undisputed evidence, the Watson/WDC Defendants' unsworn claim that they did not know they were funding kickbacks, Opp. 6-7, does nothing to diminish the likelihood of success on the RICO claims.

The same is true of the Watson/WDC Defendants' remaining RICO challenges. Their assertion that Plaintiffs' claims are unlikely to succeed because they involve only a "single victim," Opp. 22-23, misstates the Verified Complaint (which alleges multiple victims), and circuit law, which holds that "[t]here is no per se rule against a RICO claim involving only one victim." *Al-Abood ex rel. Al-Abood v. El-Shamari*, 217 F.3d 225, 238 (4th Cir. 2000). It also disregards precedents rejecting Defendants' myopic view of civil RICO liability. *See, e.g., L-3 Servs., Inc. v. Szekely*, 2010 WL 11579457, at *13 (E.D. Va. Sept. 24, 2010) (there are many "other factors besides the number of putative victims"); *Whitney, Bradley & Brown, Inc. v. Kammermann*, 2010 WL 2696648 (E.D. Va. July 7, 2010) (similar), *aff'd*, 436 F. App'x 257 (4th Cir. 2011).

The same authorities dispose of the criticism that Plaintiffs' claims allege only "mail and wire" predicates for "a (single) scheme to defraud" a single "victim." Opp. 21-22. That is not true. *See* Compl. ¶¶ 93-169 (alleging mail, wire, criminal misuse (including honest services fraud), and Travel Act violations). And even if it were, "[p]redicate acts which arise under a single scheme, [] may be a pattern for RICO purposes if they are continuous and related." *Menasco, Inc. v. Wasserman*, 886 F.2d 681, 684 (4th Cir. 1989). That is precisely the case here. *See* TRO Br. 18, 20. And the precedents Defendants cite, Opp. 22-23, are inapposite and involve nothing approaching the complex kickback enterprise rackets at issue here.[4]

---

[4] *Al-Abood* rejected an attempt to apply RICO mail and wire predicates to "essentially a dispute between formerly close family friends." *Al-Abood*, 217 F.3d at 238. *Anderson* failed to allege "that the predicate acts" had any "relationship to each other or to any external organizing

**C.**    **Amazon Is Likely to Succeed on Its Common Law Tort and Contract Claims**

Preliminary injunctive relief against the Watson/WDC Defendants is independently supported by Plaintiffs' strong likelihood of success on the common law claims against them.

***Common Law Fraud and Breach of Contract.*** The Watson/WDC Defendants assert that their concealed payments to Villanova do not support the common law fraud and breach of contract claims against them. They are wrong. They first argue that their decision to conceal the Villanova agreement could not fraudulently induce the Lease transactions because any disclosure duty arose solely from the Leases themselves. Opp. 18. But as their own cases explain, *id.*, "[a] single act or occurrence can, in certain circumstances, support causes of action both for breach of contract and for breach of a duty arising in tort," *Dunn Const. Co. v. Cloney*, 278 Va. 260, 266 (Va. 2009), including where the latter claim is grounded in a "common law duty," *Richmond Metro. Auth. v. McDevitt St. Bovis, Inc.*, 256 Va. 553, 558 (Va. 1998). That is precisely the case where, as here, "a party conceals a fact that is material to the transaction, knowing that the other party is acting on the assumption that no such fact exists." *Devine v. Buki*, 289 Va. 162, 176 (Va. 2015).

Plaintiffs' sworn pleadings, confirmed by the attached Doden Declaration, establish that the Watson/WDC Defendants' failure to disclose their relationship with Nelson and the Kirschner brothers and Villanova Trust was material to their RFP response.[5] In such circumstances, "the

---

principle." *Anderson v. Found for Advancement, Educ. Emp't of Am. Indians*, 155 F.3d 500, 506 (4th Cir. 1998). *Flip Mortgage* eschewed RICO liability for an "ordinary business contract or fraud dispute." *Flip Mortg. Corp. v. McElhone*, 841 F.2d 531, 533, 538 (4th Cir. 1988). And *Tudor* involving only a "single scheme to inflict a single injury on a single victim." *Tudor Assocs., Ltd. v. AJ & AJ Servicing, Inc.*, 36 F.3d 1094 (4th Cir. 1994).

[5] As Mr. Doden, Corporate Counsel for Amazon, confirms in his declaration, Plaintiffs would not have approved the challenged transactions with the Contempt Defendants had they disclosed their relationship with the Kirschners and Villanova. Further, and contrary to the cases the opposition cites, Opp. 21, the conspiracy with corrupt former Amazon personnel precluded Amazon from discovering this material conflict and fraud until a confidential informant affiliated with Northstar reported the scheme. Doden Decl. ¶¶ 3-16; Gilpin Decl. ¶¶ 10-21.

concealment is as much a fraud as if the existence of the fact were expressly denied, or the reverse of it expressly stated." 289 Va. At 466; *Van Deusen v. Snead*, 247 Va. 324, 328 (1994) ("concealment of a material fact may constitute the element of misrepresentation"). Defendants' assertion that this settled law does not apply to "sophisticated" parties like Amazon, Opp. 19-21, is baseless. A "defrauded party [must] demonstrate[] the right to reasonably rely upon the misrepresentation." *Metrocall of Del., Inc. v. Cont'l Cellular Corp.*, 437 S.E.2d 189, 194 (1993). But there is not a shred of evidence that it was unreasonable for Amazon to rely on the express representations of its employees and business partners here, particularly when they colluded to conceal facts that would have exposed his fraud on the company. *See* Doden Decl. ¶¶ 3-16.

The Watson/WDC Defendants' attack on Plaintiffs' breach of contract claims is even weaker. It attempts to disclaim express prohibitions on undisclosed "broker" arrangements as "irrelevant" because some of the prohibitions appear in an unsigned lease "exhibit" describing an "optional" purchase right of first refusal ("ROFR"). Opp. 16-17. This argument fails for two reasons. First, the Watson/WDC Defendants breached the Leases themselves in concealing the Kirschner/Villanova payments. In signing each Lease they warranted that "[n]o . . . agreements, oral or written, have been made by Landlord [Defendants] . . . which are not contained in the . . . Lease Documents." MacDonald Decl. Ex. 14 ¶ 33. And the immediately ensuing paragraph, titled "Brokers," states that "Each party represents and warrants that *it has dealt with no broker, agent or other person in connection with this transaction and that no broker, agent or other person brought about this transaction, other than the brokers, if any, set forth [at the start of the] Lease*." *Id.* at ¶ 34. In all of Defendants' Leases, the "Brokers" line on page 1 states "N/A," *id.* at 1, even though the 2018 Villanova Agreement expressly designates as "Brokerage Fees," MacDonald Decl. Ex. 19 at 2, ¶ 2.5, the multi-million dollar payments the Watson/WDC Defendants made to

Villanova from their Amazon deal funds. Order 2-4; MacDonald Decl. ¶ 24 & Ex. 41.

Second, even the "ROFR" language the Watson/WDC Defendants improperly dismiss as "optional" is expressly incorporated in all of their Leases through a clause that states this "Deed of Lease, *including its accompanying addenda and exhibits . . .* constitute[s] the complete agreement of Landlord and Tenant," and *"[a]ll exhibits and addenda attached hereto are hereby incorporated into this Deed of Lease and made a part hereof."* MacDonald Ex. 14 ¶ 33.

*Tortious Interference and Civil Conspiracy.* Defendants argue that Plaintiffs are unlikely to succeed on their claim for tortious interference with contractual or business relations because they do not "specify with which contracts [the Watson/WDC Defendants] have interfered or how they have done so." Opp. 25. The Verified Complaint details all of these points, which are confirmed in the Gilpin Declaration that details Northstar torts, breaches, and related misconduct that harmed Amazon and innumerable partners, and that Amazon and IPI addressed at great expense by replacing Watson and Northstar as contract partners. *See* Compl. ¶¶ 36-92; Gilpin Decl. ¶¶ 5-9. The Watson/WDC Defendants do not cite any evidence that remotely undermines Plaintiffs' likelihood of success on their claims. Nor do they even address the common law civil conspiracy counts that support injunctive relief based on their collusion with corrupt Amazon insiders independent of the RICO claims in the Verified Complaint. *See* TRO Br. 20 (citing cases).

*Alter Ego and Veil Piercing.* The Watson/WDC Defendants conspicuously fail to address Plaintiffs' *alter ego* and veil piercing claims, and thus confirm Plaintiffs' likelihood of success on both. These counts thus support continued injunctive relief against all Defendants, *see* TRO Memo 23-24; Dkt. 16, and counsel's failure to challenge them raises the conflict questions noted above.

For all the foregoing reasons, Plaintiffs are highly likely to succeed on all of their claims.

## II.   AMAZON WILL SUFFER IRREPARABLE HARM ABSENT AN INJUNCTION

Plaintiffs' April 27 filings satisfied their burden of showing an imminent risk of irreparable harm absent preliminary injunctive relief.  Order 2; TRO Memo 25-29 (citing, *e.g.*, Compl. ¶¶ 1, 3, 5-6, 13, 71-73, 79-85, 208).  Defendants' filings confirm this risk is as imminent today as it was in April.  *See* Opp. 9-14.  The opposition quotes the Fourth Circuit's directive in *Hughes* that injunctions may issue "to ensure that a defendant's assets are not so dissipated that a monetary judgment will be frustrated." *Hughes Network Sys., Inc. v. InterDigital Commc'ns Corp.*, 17 F.3d 691, 696 (4th Cir. 1994).  And it concedes that, "when the failure to grant preliminary relief creates the possibility of . . . the loss of goodwill, the irreparable injury prong is satisfied." *Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 22 F.3d 546, 552 (4th Cir. 1994); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bradley*, 756 F.2d 1048, 1055 (4th Cir. 1985).  The opposition simply argues that this case is governed by an unpublished decision in which the Fourth Circuit "clarified" that *Hughes* "does not support the conclusion that a defendant's potential insolvency warrants a finding of irreparable harm." Opp. 10 (citing *Bethesda Softworks, L.L.C. v. Interplay Entm't Corp.*, 452 F. App'x 351, 354 (4th Cir. 2011)).

This argument profoundly misses the mark.  Neither Plaintiffs' filings nor the Court's Order ties the injunctive relief here merely to "defendant[s'] potential insolvency." Opp. 10.  The Order rests on two categories of unrebutted evidence.  First, it is based on evidence of the imminent threat that the Watson/WDC Defendants pose to the real estate sites they formerly managed.  *See* TRO Br. 25-29; Gilpin Decl. ¶¶ 5-9.  Second, it is based on undisputed evidence that Watson's mounting financial pressures and malfeasance, including his tip-offs to co-conspirators like Casey who have already deleted relevant kickback files, justify an injunction to secure evidence and "preserve [their] assets such that [they] could satisfy a judgment in the event [Amazon] prevails

on the merits." *Bethesda Softworks, L.L.C. v. Interplay Entm't Corp.*, 452 F. App'x 351, 354 (4th Cir. 2011); *see* Compl. at ¶¶ 1, 6, 13, 76, 84, 86, 87, 127; TRO Memo at 1-3, 25-28.

The need to secure these assets is as urgent now as it was in April due to the recent government seizures the opposition describes as "exacerbat[ing]" the "financial burden" on the Watson/WDC Defendants, but they refuse to detail, thus warranting immediate discovery into their purported "$1.3 Billion in assets under ownership and management," as well as a private jet and other property. MacDonald Decl. Ex. 6. The Watson/WDC Defendants' insistence that they can dispose of any assets not covered by a "lien," Opp. 10, coupled with their contempt of the Court's escrow order on unverified grounds, simply underscores that Plaintiffs face an imminent threat of irreparable harm from asset dissipation before this case is adjudicated. *See* Order 2-4; Compl. ¶¶ 3-5, 6, 13, 39, 61-86; MacDonald Decl. ¶ 13; *Levi Strauss & Co.*, 51 F.3d at 984. Now, as on April 27, an injunction can and should issue to (1) "ensure that a defendants' assets are not so dissipated that a monetary judgment will be frustrated," *Hughes Network*, 17 F. 3d at 696; (2) "preserve evidence," *Am. Can Co. v. Mansukhani*, 742 F.2d 314, 323 (7th Cir. 1984), and (3) prevent the "loss of goodwill and reputation," *Fred Hutchinson Cancer Research Ctr. v. Biopet Vet Lab, Inc.*, 768 F. Supp. 2d 872, 881 (E.D. Va. 2011). Absent such relief, Plaintiffs will suffer "harm which cannot be redressed by a legal or an equitable remedy following a trial." *E.g.*, *Instant Air Freight, Co. v. C.F. Air Freight Inc.*, 882 F.2d 797, 801 (3d Cir. 1989).

## III. THE BALANCE OF HARMS FAVORS INJUNCTIVE RELIEF

The Watson/WDC Defendants next argue that the "balance" of harms does not support continuing injunctive relief against them. Opp. 28. This argument boils down to the assertion that the Order's "harm to Defendants' speech rights is irreparable*," id.* at 26, while government seizures of some of the Watson/WDC Defendants' assets has either mooted their need for injunctive relief, or increased the "financial burden" of compliance to a point that should preclude

it especially given Amazon's "net income," *id*. 28. These arguments fail under controlling law.

The opposition's "First Amendment" claim, Opp. 26-27, is a red herring. It baselessly equates the Order with a "prior restraint" or "presuit injunction" that "violat[es] [Defendants'] First Amendment and due process rights" to contest—"in court, if need be"—the termination of their Lease contracts in this District. Opp. 26. The Order does no such thing. The only provision that could possibly relate to the Watson/WDC Defendants' misplaced "First Amendment" claim says they "are enjoined from disrupting any ongoing business transactions or relationships related to Plaintiffs' real estate developments in this District and elsewhere." Dkt. 16, at 5.

This provision in no way prohibits Defendants from challenging, "in court if need be," Opp. 26, their Lease terminations, as Plaintiffs have indicated in the attached proposed preliminary injunction order. Of course Defendants' termination challenge would have to overcome all of the facts in Plaintiffs' Verified Complaint and the Gilpin Declaration.[6] And Defendants' response confirms that any claims they may wish to bring relate to this case, and must therefore be brought here under the first-filed rule. *See Ortiz v. Panera Bread Co.*, 2011 WL 3353432, at *2 (E.D. Va. Aug. 2, 2011) ("The first to file rule states that in cases of federal concurrent jurisdiction, the court which first has possession of the subject should decide it."). Neither the current Order nor proposed preliminary injunction forbids that, or otherwise concerns the First Amendment.[7]

---

[6] The Gilpin Declaration confirms the Contempt Defendants' misconduct that forced IPI to terminate its relationship with them based on evidence of "gross negligence, willful misconduct and fraud." Gilpin Decl. ¶¶ 5-11, 13, 15-21.

[7] Even where—*unlike* here—injunctions actually implicate First Amendment rights, are permissible where they are "clear and swee[p] no more broadly than necessary." *E.g.*, *Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations*, 413 U.S. 376, 390 (1973). That is what the April Order does on terms that do not remotely approach a "prior restraint" on speech or a "presuit injunction" that must satisfy All Writs Act requirements, 28 U.S.C. § 1651(a), for "restrict[ing] access to federal courts [by] parties who repeatedly file frivolous litigation." *Henderson v. Former City Sheriff of Richmond, Va.*, 2016 WL 6804882, at *2 (E.D. Va. Nov. 16, 2016).

The Watson/WDC Defendants' claim that unspecified government seizures have "mooted" the need for injunctive relief in this case, Opp. 28, is similarly unavailing, and simply underscores the need for expedited discovery Plaintiffs will address by separate motion.  Civil plaintiffs are not guaranteed to receive assets forfeited from criminal defendants, 21 U.S.C. § 853; *United States v. Pescatore*, 637 F.3d 128, 137 (2d Cir. 2011), and the Government may decline to make such assets available where the civil "defendant has the means to independently satisfy his restitution obligation."  *United States v. Cohan*, 988 F. Supp. 2d 323, 329 (E.D.N.Y. 2013), *aff'd*, 798 F.3d 84 (2d Cir. 2015).  Accordingly, civil injunctive relief should issue where, as here, it is necessary to "ensure that assets currently held by the defendant, but likely to become unavailable before damages can be collected, will remain available following trial," including as a result of criminal forfeitures.  *E.g.*, *SAS Inst., Inc. v. World Programming Ltd.*, 874 F.3d 370, 386-87 (4th Cir. 2017).  An injunction against a civil defendant is proper, and a judgment "remedy at law is inadequate," where the plaintiff can collect the judgment "only by pursuing a multiplicity of actions."  *Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011) (citing *Lee v. Bickell*, 292 U.S. 415, 421 (1934)).

## IV.    A PRELIMINARY INJUNCTION SERVES THE PUBLIC INTEREST

The Court's April Order holds that preliminary injunctive relief in this case serves  the public interest, by, among other things, protecting the legitimate expectations of parties to a contract and ensuring full vindication of illegal conduct. Dkt. 16.  Nothing has changed.

## CONCLUSION

For the foregoing reasons, the Court should enter the attached proposed preliminary injunction order and escrow form against all Defendants, unseal the case, and set a schedule for expedited discovery and briefing on the Watson/WDC Defendants' apparent conflict of interest as well as the grounds and appropriate relief for their refusal to comply with the Court's Order.

Dated:  May 18, 2020                    Respectfully submitted,

*TJAndrews*
_____

Elizabeth P. Papez (*pro hac vice*)
Patrick F. Stokes (*pro hac vice*)
Travis S. Andrews (Va. State Bar No. 90520)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
Telephone:  (202) 955-8500
Facsimile:  (202) 467-0539
epapez@gibsondunn.com
pstokes@gibsondunn.com
tandrews@gibsondunn.com

*Counsel for Plaintiffs Amazon.com, Inc. and Amazon Data Services, Inc.*

## CERTIFICATE OF SERVICE

I certify that on May 18, 2020, I caused hard copies of the foregoing PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR *EX PARTE* TEMPORARY RESTRAINING ORDER & ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE to be served via prepaid first class mail on:

Jeffrey R. Hamlin
George R. Calhoun
James Trusty
IFRA PLLC
1717 Pennsylvania Avenue NW
Suite 650
Washington, DC 20006

Stanley L. Garnett
Brownstein Hyatt Farber Schreck, LLP
410 Seventeenth Street
Denver, CO 80202

Gregory A. Brower
Brownstein Hyatt Farber Schreck, LLP
100 North City Parkway
Las Vegas, Nevada 89106
*Counsel for Defendants Watson and WDC Holdings LLC*

Jamie Hubbard
Stimson Stancil LaBranche Hubbard
1652 Downing Street
Denver, CO 80218
*Counsel for Defendants White Peaks Capital LLC and NOVA WPC LLC*

NSIPI Administrative Manager
1999 Broadway, Suite 3500
Denver, CO 80202

Sterling NCP FF, LLC
1999 Broadway, Suite 3500
Denver, CO 80202

Manassass NCP FF, LLC
1999 Broadway, Suite 3500
Denver, CO 80202

Villanova Trust
c/o Christian Kirschner, Trustee
3924 Wallace Lane
Nashville, TN 37215

Respectfully submitted,
*s/ Travis S. Andrews*
Travis S. Andrews