

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

AMAZON.COM, INC. and AMAZON
DATA SERVICES, INC.,

        Plaintiffs,

v.

WDC HOLDINGS LLC dba NORTHSTAR
COMMERCIAL PARTNERS; BRIAN
WATSON; STERLING NCP FF, LLC;
MANASSAS NCP FF, LLC; NSIPI
ADMINISTRATIVE MANAGER; NOVA
WPC LLC; WHITE PEAKS CAPITAL LLC;
VILLANOVA TRUST; JOHN DOES 1-20,

        Defendants.

CASE NO. 1:20-CV-484

**FILED UNDER SEAL PURSUANT TO
LOCAL RULE 5**

---

**DECLARATION OF D. MATTHEW DODEN IN SUPPORT OF
PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF SHOW CAUSE
ORDER AND PLAINTIFFS' APPLICATION FOR PRELIMINARY INJUNCTION**

I, D. Matthew Doden, hereby declare, under penalty of perjury, as follows:

1.    I am over the age of 18 years. I have personal knowledge of the facts set

forth below, and if called upon to do so, I could and would competently testify thereto.

2.    I am an attorney licensed to practice law in the State of Washington. I am

a member of the Business Conduct & Ethics team at Amazon.com, Inc., and have been

employed by Amazon as Corporate Counsel for over a year. I make this declaration in

support of Amazon.com, Inc. and Amazon Data Services, Inc.'s (collectively "Plaintiffs",

"Amazon", or the "Company") Supplemental Memorandum in Support of Show Cause

Order and Plaintiffs' Application for Preliminary Injunction in the above-referenced case.

## I.    ALLEGATIONS BY AND INTERACTION WITH INFORMANT 1

3.      On December 2, 2019, a former employee and director of Northstar Commercial Partners ("Informant 1") sent an email to Amazon CEO and President Jeff Bezos's publicly-available email address alleging that "a couple of your employees . . . have taken kick backs [sic] in excess of $8,000,000, maybe as high as $50,000,000," and asserting that his "knowledge and evidence will lead you to the others that have empirical evidence."

4.      The December 2, 2019 email was forwarded to Amazon's Business Conduct & Ethics ("BCE") team, which promptly began an investigation into these claims (the "BCE Investigation"). The December 2, 2019 email is attached as Exhibit 5 to the Declaration of Lora E. MacDonald in Support of Plaintiffs' Motion for *Ex Parte* Temporary Restraining Order and Order to Show Cause Re Preliminary Injunction ("MacDonald Decl."). I was, and have remained, closely involved in the BCE Investigation.

5.      As part of the BCE Investigation, I participated in four telephone conversations with Informant 1. These conversations took place on December 20, 2019; December 30, 2019; January 7, 2020; and January 16, 2020. I understand that my colleague, Yousri Omar (Senior Corporate Counsel, BCE), also had a preliminary call with Informant 1 on December 12, 2019.

6.      Informant 1 alleged in his conversations with me that Northstar Commercial Partners ("Northstar"), at the direction of its CEO Brian Watson, had caused payments to be made to two now-former Amazon employees—Casey Kirschner and Carleton Nelson— in return for those employees directing certain lease transactions to Northstar, under which Northstar would act as Amazon's commercial real estate development partner for those transactions. The total Amazon-approved spend for the nine transactions where Northstar

acted as a development partner is approximately $415.5 million, as detailed in Exhibit 9 attached to the MacDonald Declaration. Informant 1 alleged to me that the kickback payments were made by Defendants Watson and Northstar through a trust called "Villanova Trust," and that the Trustee of the Villanova Trust is Christian Kirschner, the brother of Casey Kirschner. Informant 1 alleged to me that Christian Kirschner, Casey Kirschner, and Carleton Nelson could all withdraw monies from the Villanova Trust. This scheme is described in greater detail as the "Lease Transaction Enterprise" in Plaintiffs' Verified Complaint at ¶ 9 *et seq*.

7.      Informant 1 also alleged to me that another former employee at Northstar, Kyle Ramstetter, worked with Casey Kirschner and Carleton Nelson to funnel kickback payments to them in connection with the purchase by Amazon of a property in Northern Virginia. Informant 1 alleged that Kyle Ramstetter worked with another former Northstar employee, Will Camenson, to purchase the subject property and then resell it to Amazon at a price apparently inflated by at least $17 million. This scheme is described in greater detail as the "Direct Purchase Enterprise" in Plaintiffs' Verified Complaint at ¶ 10 *et seq*. Informant 1 claimed in his conversations with me that Kyle Ramstetter had recorded conversations related to this transaction and that after Watson learned of the transaction, he eventually terminated the employment with Northstar of both Kyle Ramstetter and Will Camenson. Informant 1 further claimed that Northstar entered into some form of dispute resolution with Kyle Ramstetter and Will Camenson over the matter and executed nondisclosure agreements as part of a settlement.

8.      On January 24, 2020, Informant 1 provided to the BCE team, including me, five documents:

a.  An unexecuted version of a January 8, 2018 referral agreement between Northstar and Christian Kirschner, as "trustee" of the "Villanova Trust" (MacDonald Decl. Ex. 22);

b.  A spreadsheet showing seven separate entries of payments to "Villanova Trust." The first entry lists an "Amount" of 50,000.00 for "Referral Fee Sterling." The second entry lists an "Amount" of 382,500.00 for "Quail Ridge Lease Commission." The third entry lists an "Amount" of 281,350.00 for "Dulles Lease Commission." The fourth entry lists an "Amount" of 1,447,614.50 for "Quail and Dulles Paid in Full." The fifth entry lists an "Amount" of 1,297,011.18 for "Quail Development & Leasing fee." The sixth entry lists an "Amount" of 122,319.64 for "Manassas Development Fee." The seventh entry lists an "Amount" of 1,061,160.08 for "Dulles Leasing Fee/Manassas Leasing-Dev Fee." (MacDonald Decl. Ex. 23). The "Account" for each entry is "Citywide Banks - WDC Holdings."

c.  A December 2018 email exchange in which Watson requests that a Northstar employee provide to him "the template referral agreement" and itemized referral fees for Northstar's "top 10 referral partners," including fees paid to Christian Kirschner. The Northstar employee informed Watson that "V illanova [sic] Trust" had received "$50,000." Watson then requested "the total amount of fees we have paid to Villanova, or ALL fees . . . . Leasing, sales, development, etc." A Northstar employee responded that Northstar had paid $4,641,955.40 to "Villanova." (MacDonald Decl. Ex. 25);

   d.      Wire transfer instructions dated October 31, 2016, documenting a payment of $4,000 from "WDC Holdings LLC dba Northstar Commercial Partners" and listing a "Checking" "Account Number" of "********4" (redaction added), an address of "1999 Broadway, Suite 770, Denver, Colorado," and a phone number of "303-893-9500" (MacDonald Decl. Ex. 38); and

   e.      A "Buyer's Final Settlement Statement" memorializing Northstar's purchase of certain property in Northern Virginia subsequently leased by Amazon.

## II.    AMAZON BCE INVESTIGATION

9.      On receipt of Informant 1's allegations, I as a member of the BCE team assisted in a multi-pronged investigation to determine the validity of these allegations. Our investigation included the review of data sent, received, or otherwise created by Casey Kirschner and Carleton Nelson to which Amazon had access; limited background checks on certain individuals; the review of relevant financial and real estate records available to Amazon; the review of material provided through IPI Partners ("IPI"), Northstar's former primary equity investor in the Lease Transactions; and limited discussions with persons such as Informant 1, representatives from IPI, and other employees at Amazon with potential knowledge of the affected transactions.

10.     The BCE Investigation involved a focused review of data collected from four Amazon employees, both current and former, and one Amazon contractor. I requested the collection of this data in connection with the BCE Investigation. Custodians for the data review included Casey Kirschner and Carleton Nelson.

11.     In addition to our collection of email and instant messaging data, I arranged on or around January 3, 2020, for Amazon's local information technology ("IT") department to image the laptop of Casey Kirschner.  In the course of imaging the laptop on or around January 7, 2020, our IT department identified that Casey Kirschner had on or around 6 p.m. CST on January 6, 2020, the night prior to surrendering his laptop, copied 375 documents from the laptop onto a USB device.  I reviewed the data provided by our IT department and found that the file names of the copied documents indicate that many of these documents contain confidential business data belonging to Amazon, including regarding lease transactions involving Northstar.

12.     The BCE Investigation also involved the review of documents and information provided to Amazon through IPI, addressed in the Declaration of Luke Gilpin in support of Plaintiffs' Supplemental Memorandum in Support of Show Cause Order and Plaintiffs' Application for Preliminary Injunction.

13.     As part of the BCE Investigation, we obtained LexisNexis background reports on both Casey Kirschner and Carleton Nelson.  We also obtained a LexisNexis background report on Christian Kirschner.  I identified in my review of the background checks that Casey and Christian Kirschner had at some point both been associated with a house on "E Villanova Drive" in Aurora, Colorado, 80014-1914.

14.     Our data review identified indicia of impropriety as between defendants Watson and Northstar and Casey Kirschner and Carleton Nelson.

15.     For example, the data review identified a document remnant file from the Recycle Bin of Casey Kirschner.  The latter part of the remnant file name read

"Downloads\Villanova Trust Executed.pdf." A metadata inspection indicates that the file was saved to the laptop Downloads folder on or about May 8, 2019, but was subsequently deleted from the laptop.

16.     The data review also identified a spreadsheet in the same Recycle Bin with what appear to be the calculation of various fees on at least six Amazon transactions, including those involving "Shaw Rd.," "Quail Ridge," "Manassas," "Lerner," "Route 50," and "DTC." The referenced fees on these transactions total $37.1 million, and the spreadsheet indicates that a total "Share" to its author was expected to be approximately $14.5 million. (MacDonald Decl. Ex. 41). Several of these names, including "Quail Ridge," "Manassas," and "Shaw Rd.," relate to Northstar-affiliated Amazon lease transactions in Northern Virginia. The fees associated with "Quail Ridge," "Manassas," and "Shaw Rd." total $16,250,000.

17.     Another spreadsheet was recovered from the laptop's Outlook back-end AppData folder that appears to have been created by Northstar to itemize Northstar costs on its Manassas Lease Transaction deals with Amazon. The lower right-hand side of the spreadsheet includes a figure for a "Leasing Fee" of $1,656,148. (MacDonald Decl. Ex. 37). This figure approximates the $1.6 million Leasing "Commission" projected for the same deal in the spreadsheet attached to the MacDonald Declaration as Exhibit 41.

18.     The review of data collected from Casey Kirschner and Carleton Nelson indicated that Casey Kirschner sent to Brian Watson on September 8, 2017, a request for proposal ("RFP") soliciting terms on which Northstar could partner with Amazon to expand

Amazon's build-to-suit facilities in Northern Virginia. (MacDonald Decl. Ex. 12). The review did not indicate that this RFP had been sent to any developers other than Northstar.

19.     The Amazon Code of Business Conduct and Ethics (MacDonald Decl. Ex. 36) explains that "[i]n performing their job duties, Amazon.com employees should always act lawfully, ethically, and in the best interests of Amazon.com" and defines a "conflict of interest" as a situation that "exists when an employee's personal interest interferes with the best interests of Amazon.com. For example, a conflict of interest may occur when an employee or a family member receives a personal benefit as a result of the employee's position with Amazon.com. A conflict of interest may also arise from an employee's business or personal relationship with a customer, supplier, competitor, business partner, or other employee, if that relationship impairs the employee's objective business judgment."

20.     Amazon would not, under any circumstances, have approved the real estate transactions it entered into with Northstar organized by Casey Kirschner and Carleton Nelson had Amazon been aware of the undisclosed conflicts of interest and "referral" agreement arrangement between Northstar and Christian Kirschner/Villanova Trust described in detail as the "Lease Transaction Enterprise" in Plaintiffs' Verified Complaint at ¶ 9 *et seq.*

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on May 18, 2020.

*David Matthew Doden*
D. Matthew Doden

RECEIVED

2020 JUN 10 P 4: 52

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA