UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| AMAZON.COM, INC., et al.<br><br>Plaintiffs,<br><br>v.<br><br>WDC HOLDINGS LLC., et al.,<br><br>Defendants. | CIVIL ACTION No. 1:20cv484 |

**DEFENDANTS BRIAN WATSON AND WDC HOLDINGS LLC'S MOTION FOR STAY PENDING APPEAL AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

Pursuant to Federal Rule 62(d), and for the reasons explained below, Defendants Brian Watson ("Watson") and WDC Holdings LLC, dba Northstar Commercial Partners ("Northstar" and collectively with Watson, "Defendants") respectfully move the Court for an order staying its June 5, 2020 Preliminary Injunction Order pending appeal.

## I.   INTRODUCTION

On or about April 27, 2020, Plaintiffs filed their Complaint under seal and simultaneously sought an *ex parte* temporary restraining order. See Dkt. 1. On April 28, 2020, the Court entered a Temporary Restraining Order ("TRO") requiring Defendants to return certain allegedly confidential information to Amazon, refrain from dissipating unspecified evidence and assets, and deposit over $16 million into escrow. Dkt. 16.

1

On May 5, 2020, Defendants moved to dissolve the TRO and requested a brief continuance to permit a substantive response to the Plaintiffs' request for a preliminary injunction. The Court maintained the TRO, but granted Defendants' request for a continuance.

On May 18, 2020, after Defendants filed their opposition to the Plaintiffs' Motion for a Preliminary Injunction (Dkt. 39), the Plaintiffs filed not a reply brief, but a substantive memorandum attaching four new substantive affidavits. Dkt. 41-44. Plaintiffs offered no explanation for why they withheld this information until after Defendants' deadline to oppose the motion for a preliminary injunction had passed.

On May 21, 2010, the Court held a telephonic hearing concerning the requested preliminary injunction. Defendants raised numerous substantive defenses, and also challenged the late filing of the affidavits, but the Court allowed them over Defendants' objection. Ultimately, the Court indicated that it would grant the preliminary injunction, but held the order in abeyance for 10 days so Defendants could seek a bond or other security in light of counsel's representations to the Court that the Defendants could not comply with the order requiring deposit of $21.25 million in cash. *See* Dkt. 49. While the parties attempted to reach alternative arrangements on security, the Court again continued the order. *See* Dkt. # 51.

The Court entered the Preliminary Injunction Order on June 5, 2020. *See* Dkt. 57. Defendants filed a timely notice of appeal on July 6, 2020. Dkt. 72.

On June 26, 2020, Defendants moved to dismiss the Complaint, detailing many of the glaring legal deficiencies that mandate dismissal.

## II.     ARGUMENT

### A.     Legal Standard

Federal Rule of Civil Procedure 62(c) permits the Court to stay a preliminary injunction pending appeal upon considering the following factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of a stay will substantially injure other parties interested in the proceeding; and (4) where the public interest lies." *Microstrategy, Inc. v. Bus. Objects, S.A.*, 661 F. Supp. 2d 548, 558 (E.D. Va. 2009); *see also, e.g., Davis v. Lukhard*, 106 F.R.D. 317, 318 (E.D. Va. 1984) (*citing Long v Robinson*, 432 F.3d 977, 979 (4th Cir. 1970)) (reciting same factors).   This Court has noted that the first two factors are the most important. *See Realvirt, LLC v. Lee*, 220 F. Supp. 3d 704, 706 (E.D. Va. 2016) (*citing Nken v. Holder*, 556 U.S. 418, 434 (2009). Because "the traditional stay factors contemplated individualized judgments in each case, the formula cannot be reduced to a set of rigid rules." *Northrop Grumman Tech. Serv., Inc. v. DynCorp Int'l, LLC,* No. 1:16-cv-534, 2016 WL 3346349, *2 (E.D. Va. 2016) (*quoting Hilton v. Braunskill*, 481 U.S. 770, 777 (1987)).  Indeed, when *Long* was decided, obtaining an injunction was considerably easier than it is today.  There is an open issue in the Fourth Circuit concerning the application of the factors to motions seeking a stay pending appeal. *See Rose v. Logan*, 2014 WL 3616380, * 1 (D. Md., July 21, 2014):

> Both a stay pending an appeal and preliminary injunctions are forms of preliminary equitable relief, and as such courts often regarded the two standards as analogous. *See Blackwelder Furniture Co. of Statesville, Inc.*, 550 F.2d at 193 (4th Cir. 1997) (The four part test established in *Blackwelder* to grant preliminary injunctions evolved from the same "fourfold equitable rule of thumb" as the one laid out in *Long* for granting a stay pending appeal.). However, after the United States Court of Appeals for the Fourth Circuit adopted a more rigid standard for granting preliminary injunctions in *The Real Truth About Obama ("Real Truth" )*, 575 F.3d 342 [*rev'd on other grounds*], the district courts in this circuit have considered stays pending appeal under both the *Long* test and the *Real Truth* test."

3

Under the *Long* analysis cited with approval by this District, "an independent showing on each prong does not apply directly to stays pending appeal." *See Ohio Valley Coalition, Inc.*, 890 F.Supp.2d 688, 690 ((citations omitted)); see also *In re Carroll*, No. 09–01177–8–JRL, 2012 WL 6115709, at *2 (Bankr. E.D.N.C. Dec.3, 2012) ("[T]he standard adopted by the Fourth Circuit for preliminary injunctions, which requires an independent showing on each prong, does not apply to a motion for stay pending appeal."). Because the courts in this District follow *Long*, but have noted that some factors are more important than others, it appears that the Eastern District of Virginia falls in line with the courts in this Circuit applying the more flexible test for stays pending appeal.

Regardless of the test used, however, the relevant factors strongly weigh in favor of granting Defendants a stay of the preliminary injunction pending appeal or, in the alternative, a stay pending disposition of Defendants' application to the Circuit Court.

**B.  Likelihood of Success on the Merits**

Defendants are likely to prevail on their appeal. A preliminary injunction is an extraordinary remedy never awarded as of right. *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008). In each case, courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Amoco Production Co. v. Gambell*, 480 U.S. 531, 542 (1987).

Here, in granting the preliminary injunction, the Court (i) failed to consider the harm to Watson and Northstar, (ii) inappropriately discounted the Fourth Circuit's precedent with respect to the viability of RICO claims, (iii) overlooked the significant defects in the claims alleged by the Plaintiffs, (iv) violated the Supreme Court's *Grupo Mexicano* holding, and (v) permitted untimely and unfair submission of evidence to which Defendants had no opportunity to test or

respond in violation of their due process rights. Regardless of this Court's views on the underlying merits, which it announced in deciding the preliminary injunction request in the first instance, the issues presented by Defendants are serious and have a more than fair likelihood of prevailing in front of a panel of Circuit Court judges. Defendants need prevail on only one of these material defects in order to obtain a reversal of the preliminary injunction ruling.

Although Plaintiffs seek only money damages, the Court concluded that the possibility that Defendants might be unable to pay an award at the end of the litigation was sufficient to constitute a likelihood of irreparable injury. That conclusion violated the Fourth Circuit and Supreme Court precedent on the availability of injunctive relief to secure potential awards. Perhaps more significantly, however, it created a potentially self-fulfilling prophecy in that the outsized escrow deposit required by the Court, an amount which bears no relationship to any cognizable damages theory, far exceeds the Defendants' available cash assets. As such, compliance is impossible and would impair—and likely end —Northstar's ability to do business. As discussed below with respect to irreparable harm, the Court's failure to balance the harms appropriately makes reversal in the Circuit Court likely.

The Court also erred in concluding that Plaintiffs' RICO claims were viable. To prevail on a RICO claim, Plaintiffs must allege—and then prove—a pattern of RICO predicates and continuity. *See Whitney, Bradley & Brown, Inc. v. Kammermann*, 436 F. App'x 257, 258 (4th Cir. 2011) (unpublished) (citing *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)); *see also United States v. Pinson*, 860 F.3d 152, 161 (4th Cir. 2017) ("To constitute or threaten continued [racketeering] activity, racketeering acts may either be close-ended, i.e., a closed period of repeated conduct, or open-ended, i.e., naturally projecting into the future with a threat of repetition."). Similarly, in *Tudor Associates, Ltd., II, et al. v. AJ and AJ Servicing*

5

*Incorporated*, the fraudulent scheme lasted over ten years and involved millions of dollars, but the Fourth Circuit upheld the trial court's summary judgment as the alleged conduct constituted a single scheme to inflict a single injury on a single victim—ruling it did "not rise to the level of conduct necessary to support a RICO recovery." 36 F.3d 1094, at *4 (4th Cir. Sept. 20 1994) (unpublished table op.); *see also Aggarwal v. Sikka*, No. 1:12cv60, 2012 WL 12870349, at *4 (E.D. Va. June 12, 2012) ("The Fourth Circuit has repeatedly held that continuity is not established, even where there are multiple acts of mail or wire fraud, if there is only a narrow scheme for a limited time with few victims and an inherent end-point") (citing *Menasco, Inc v. Wasserman*, 886 F.2d 681, 684 (4th Cir. 1989)).

The Fourth Circuit's civil RICO case law, including cases in this particular District, has consistently reflected judicial reluctance to elevating financial disputes into the treble-damage framework of RICO. For example, in *Arnold v. Moran*, the court noted that, "[t]he Fourth Circuit has recently issued a stern warning that 'this circuit will not lightly permit ordinary business contract or fraud disputes to be transformed into federal RICO claims.'" 687 F. Supp. 232, 236 (E.D. Va. 1988) (quoting *Flip Mortgage Corp. v. McElhone,* 841 F.2d 531, 538 (4th Cir. 1988). In dismissing the RICO complaint before it on grounds of inadequately established closed continuity, the court noted that the case boiled down to a series of events constituting a single scheme by a corporation, its officers and directors, against a single victim. *Id.* Consequently, the court found that the *Flip Mortgage* opinion clearly rejects this kind of complaint as inadequate to show a "pattern of racketeering activity" under RICO. *Id.*

Here, Amazon's case is equally limited and deserves the same result: dismissal. Because the RICO claims are the sole source of this Court's jurisdiction, Plaintiffs' claims are dependent upon the survival of those claims. As set forth in Defendants' Motion to Dismiss (Dkt. 65), the

RICO claims do not satisfy Fourth Circuit precedent for pattern or continuity and thus cannot form the basis of an injunction.

In considering the merits of the state law claims, the Court also overlooked significant defects in those claims that should have led the Court to conclude that Plaintiffs will not prevail on the merits. As described in more detail in Defendants' opposition to the Plaintiffs' Motion for a Preliminary Injunction (Dkt. 39) and Motion to Dismiss (Dkt. 65)[1], the Plaintiffs have attempted to manufacture claims against Watson and Northstar, but have not sued their actual contract counterparties and, moreover, are retaining the benefits of all of the contracts they allege to have been the product of fraud. Each of the representations they purport to rely upon was not made in a contract or does not say what Plaintiffs claim.

As to the amount of the injunction order, Plaintiffs' counsel clarified at the May 21 hearing that it was seeking to escrow the "kickbacks." *See* Tr. at 47 ("We did allege that the kickbacks were an injury to us. That's the only money we're claiming in escrow."). But Defendants were, indisputably, not the recipients of any alleged kickbacks. To the contrary, Plaintiffs contend that Defendants *paid* kickbacks. Thus, the Defendants would not be in possession or receipt of any alleged kickback funds to place into escrow. Plaintiffs then went on to describe a case for damages against the landlord for failing to meet certain contractual obligations that are not even alleged in the Complaint. *See id.* Neither Northstar nor Watson is in contractual privity with the Plaintiffs and Plaintiffs have not sued their contract counter-parties. In short, the escrow ordered by the Court has no relationship to any viable theory of damages, but is instead a punitive measure intended by Plaintiffs to cripple the Defendants' ability to defend themselves.

---

[1] Defendants will not repeat those arguments at length here, but incorporate them by reference.

The Court appears to have been swayed by the seriousness of the allegations and not by a dispassionate review of the actual facts alleged and demonstrated in the documents attached to Plaintiffs' filings. Defendants are likely to prevail on their appeal because the Fourth Circuit will necessarily look closely at the allegations of fraudulent misrepresentation and reliance (upon which the fraud, breach of contract and RICO claims all depend) and see that those allegations lack merit.

In addition, Defendants are likely to prevail on their appeal because the preliminary injunction granted by the Court violates the Supreme Court's *Grupo Mexicano* decision. *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 333 (1999) (holding that in an action for money damages, the district court does not have the power to issue a preliminary injunction preventing the defendant from transferring assets in which no lien or equitable interest is claimed.). The only equitable claims brought by Plaintiffs here are contrived; the Complaint expressly seeks only money damages. Nonetheless, the Plaintiffs brought unjust enrichment, conversion and constructive trust claims, purporting to assert that they have a direct interest in fees that they paid to a third party—not to any Defendant. Rather, those third parties (the property landlords) made certain payments to Northstar. Under those undisputed facts, Plaintiffs cannot have any lien or direct property interest in any property of Defendants. Because the Court nonetheless entered an injunction in which only money damages are sought (regardless of how the relief was couched), the injunction is tantamount to an impermissible prejudgment attachment. To rule otherwise would have the equitable relief exception swallow the rule of *Grupo Mexicano.*

Finally, Plaintiffs are likely to prevail because the Court violated their due process rights in permitting Plaintiffs to submit substantive affidavits as part of a reply brief, in effect denying

Defendants the opportunity to respond to the claims against them. Pursuant to Rule 6(c)(2), "[a]ny affidavit supporting a motion must be served with the motion… any opposing affidavit must be served at least 7 days before the hearing, unless the court permits service at another time." The purpose of Rule 6 is to prevent unfair surprise by eleventh hour filings. *Orsi v. Kirkwood,* 999 F.2d 86 (4th Cir. 1993). A party may not file a motion unsupported by any evidence only to spring the evidence on the opposing party on a later date. Rule 6(c) requires the supporting affidavits be filed simultaneously with the motion it supports, affording the opposing party an opportunity to address the motion fully and squarely on its merits. In this case, Plaintiffs chose not to do so, but the Court nonetheless denied Defendants' request to strike those affidavits (Tr. at 43), thereby allowing Plaintiffs to file four substantive, not reply, affidavits on the eve of the hearing after Defendants pointed out the lack of evidence in support of Plaintiffs' motion. The Court commented that it relied on these late-filed affidavits. Defendants are likely to prevail on the merits of its appeal because the Court should have stricken the affidavits filed in violation of the rules rather than relying upon them.

      C.      **The Balance of the Harms Favors a Stay**

Plaintiffs seek only monetary damages, which is not normally a sufficient basis for injunctive relief. The Fourth Circuit has held that "mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough." *Alexander v. Chesapeake, Potomac & Tidewater Books, Inc.*, 190 F.R.D. 190, 193 (E.D. Va. 1999) (citing *Long v. Robinson*, 432 F.2d 977, 980 (1970)). Ironically, it was exactly this sort of financial harm that lead the Court to enter the preliminary injunction in the first instance. This Court concluded that injunctive relief was appropriate in this case because of the possibility that the Defendants might become insolvent. See Tr. at 50 (*citing U.S. ex Rel. Rahman v. Oncology*

*Associates,* 198 F.3d 489 (4th Cir. 1999)).[2]  There is no question, however, that Plaintiffs face only monetary harm.  Similarly, there is no question that—as alleged in the Complaint—Plaintiffs have the properties for which they contracted and which they intend to keep.  There is, however, serious dispute as to the merits of any damages claim by Plaintiffs.  Defendants focused multiple arguments on those issues in their opposition to the preliminary injunction and in their motion to dismiss.  As discussed above, the harms described by Amazon are not even alleged in their Complaint.[3]  To the extent it can prove it has been harmed, Amazon, one of the largest companies in the world, will not be seriously impacted if some portion of any judgment is unrecoverable from these Defendants (there are, of course, others), especially as it has not even sued its contract counter-parties.

In contrast, this case is a make or break proposition for Defendants.  As alleged, Defendants do not have the financial wherewithal to defend and pay the exorbitant demands made by Plaintiffs in this case.  Defendants have attempted to work with Plaintiffs to agree to some lesser security that is within Defendants' means, but the Plaintiffs have refused at every step. Locking up all of their assets will prevent Northstar from doing business, including many projects and properties that have nothing to do with Amazon.  The collateral impact of that threatens the jobs of Northstar's employees.  Similarly, Watson will be unable to defend this case effectively.  The balance of the harms is overwhelmingly in Defendants' favor.

---

[2] Notably, *Rahman* is not on point because it involved a claim for constructive trust over Medicare payments paid to the Defendant.  Here, there is no such contractual privity or direct relationship.

[3] The "facts showing the fraud and the resulting damage must be alleged…" *Brown v. Gilner*, No. 1:10-cv-00980 (AJT/IDD), 2012 WL 4473086 (E.D. Va. Sept. 25, 2012). Virginia law, like federal civil law, however, follows the "actual loss" rule for fraud and requires damages as an element of the fraud*.  ITT Hartford Grp., Inc. v. Va. Fin. Assocs., Inc.*, 520 S.E.2d 355, 361 (Va. 1999) (to support a claim of fraud, the plaintiff must prove resulting damage to the complaining party).

### D. A Stay Will Not Substantially Injure Other Parties

A stay will not harm any other parties. Defendants are willing to agree to the injunctive provisions but for the escrow deposit. The only issue is whether they must comply with a ruinous prejudgment escrow requirement. Delaying determination of that issue will not harm any other party. This is a private dispute brought by Amazon and its subsidiary concerning real estate transactions. Whether Defendants post security, in any amount, will not impact the merits of that dispute or the operation of the properties. As Amazon is seeking extraordinary relief with which Defendants cannot possibly comply, a brief stay while Defendants challenge the imposition of that impossibility will not cause any harm. To the contrary, Defendants' financial situation will likely be better with a stay than without it. If Amazon ever desires to collect a judgment, an operating Northstar should be preferable to a defunct one. But if what Amazon really wants is to drive Northstar out of business, that goal is inappropriate for preliminary relief and further demonstrates the imbalance of harms.

### E. The Public Interest Favors a Stay

As discussed above, this is a private commercial dispute. There is no overwhelming public interest involved. To the extent there is a public interest, the public has an interest in ensuring that injunctions comply with the law and that all parties are provided a fair opportunity to litigate on the merits.

### III. CONCLUSION

The Court should grant a stay pending resolution of Defendants' appeal. Doing so will allow this case to proceed on a fair basis and protect Defendants from an order with which it cannot possibly comply.

Dated: July 8, 2020                         Respectfully submitted

*/s/ Jeffrey R. Hamlin*
Jeffrey R. Hamlin (Va. Bar No. 46932)
George R. Calhoun (pro hac vice)
James Trusty (pro hac vice)
IFRAH PLLC
1717 Pennsylvania Avenue NW
Suite 650
Washington, DC 20006-2004
(202) 524-4140 – Tel.
(202) 524-4141 – Fax
jhamlin@ifrahlaw.com
george@ifrahlaw.com
jtrusty@ifrahlaw.com

Stanley L. Garnett (pro hac vice)
Brownstein Hyatt Farber Schreck, LLP
410 Seventeenth Street
Denver, Colorado 80202-4432
(303) 223-1100 – Tel.
(303) 223-1111 – Fax
Sgarnett@bhfs.com

Gregory A. Brower (pro hac vice)
Brownstein Hyatt Farber Schreck, LLP
100 North City Parkway
Las Vegas, Nevada 89106-4614
(702) 382-2101 – Tel.
(702) 382-8135 – Fax
gbrower@bhfs.com

*Counsel for Defendants Brian Watson and WDC Holdings LLC*