UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

| | | |
|---|---|---|
| **AMAZON.COM AND AMAZON DATA SERVICES, INC.,** | ) | |
| | ) | Civil Action |
| Plaintiffs, | ) | No. 1:20-CV-484 |
| | ) | |
| v. | ) | July 17, 2020 |
| | ) | 10:45 a.m. |
| **WDC HOLDINGS, et al.** | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

*TRANSCRIPT OF MOTION HEARING PROCEEDINGS*
*(Via Teleconference)*
*BEFORE THE HONORABLE LIAM O'GRADY,*
*UNITED STATES DISTRICT COURT JUDGE*

APPEARANCES:

For the Plaintiffs:       **Elizabeth Petrela Papez, Esq.**
                          Gibson Dunn & Crutcher LLP (DC)
                          1050 Connecticut Avenue, NW
                          Washington, DC 20036-5306
                          202-955-8500
                          Fax: 202-831-6055
                          Email: Epapez@gibsondunn.com

                          **Travis Stuart Andrews, Esq.**
                          Gibson Dunn & Crutcher LLP (DC)
                          1050 Connecticut Avenue, NW
                          Washington, DC 20036-5306
                          202-955-8500
                          Fax: 202-831-6055
                          Email: Tandrews@gibsondunn.com

                          **Patrick Friel Stokes, Esq.**
                          Gibson Dunn & Crutcher LLP (DC)
                          1050 Connecticut Avenue, NW
                          Washington, DC 20036-5306
                          202-955-8500
                          Fax: 202-467-0539
                          Email: Pstokes@gibsondunn.com

APPEARANCES:  (Cont.)

For Plaintiffs:                **Lora MacDonald, Esq.**
                              Gibson Dunn & Crutcher LLP (DC)
                              1050 Connecticut Avenue, NW
                              Washington, DC 20036-5306
                              202-955-8500
                              Email: Lmacdonald@gibsondunn.com

                              **Claudia Barrett, Esq.**
                              Gibson Dunn & Crutcher LLP (DC)
                              1050 Connecticut Avenue, NW
                              Washington, DC 20036-5306
                              202-955-8500
                              Email: Cbarrett@gibsondunn.com

For the Defendants:           **Stanley L. Garnett, Esq.**
                              Brownstein Hyatt Farber Schreck, LLP
                              410 Seventeenth Street
                              Suite 2200
                              Denver, CO 80202
                              303-223-1100
                              Fax: 303-223-1111
                              Email: Sgarnett@bhfs.com

                              **James M. Trusty, Esq.**
                              Ifrah, PLLC
                              1717 Pennsylvania Avenue, NW
                              Suite 650
                              Washington, DC 20006
                              202-524-4140
                              Fax: 202-524-4141
                              Email: Jtrusty@ifrahlaw.com

                              **Gregory A. Brower, Esq.**
                              Brownstein Hyatt Farber Schreck, LLP
                              100 North City Parkway
                              Suite 1600
                              Las Vegas, NV 89106-4614
                              702-382-2101
                              Fax: 702-382-8135
                              Email: Gbrower@bhfs.com

```
    APPEARANCES:   (Cont.)

Court Reporter:              Scott L. Wallace, RDR, RMR, CRR
                             Official Court Reporter
                             United States District Court
                             401 Courthouse Square
                             Alexandria, VA 2231-5798
                             703.549.4626
                             scottwallace.edva@gmail.com



Proceedings reported by machine shorthand, transcript produced
by computer-aided transcription.
```

1        <u>**MORNING SESSION, JULY 17, 2020**</u>

2        THE COURT:  Hi.  This is Judge O'Grady.  Good morning.

3        THE COURTROOM CLERK:  Good morning, Judge.  I am here, as

4    well as counsel.

5        THE COURT:  All right.  Good morning.  Let's call the

6    case, then, Amanda.  Thank you.

7        THE COURTROOM CLERK:  The Court calls case 1:20-CV-484,

8    *Amazon.com, Inc., et al. versus WDC Holdings, LLC, et al.* for a

9    motion hearing.

10        May I have the appearances, please, first for the

11    plaintiff.

12        MS. PAPEZ:  Good morning, Your Honor.  May it please the

13    Court, this is Elizabeth Papez of Gibson, Dunn & Crutcher, and

14    I'm appearing today with my colleagues, Patrick Stokes, Travis

15    Andrews, Lora MacDonald, and Claudia Barrett on behalf of

16    plaintiffs, Amazon.com, Inc. and Amazon VA Data Services.

17        THE COURT:  Good morning to all of you.

18        MS. PAPEZ:  Good morning.

19        THE COURT:  And for defendant.

20        MR. GARNETT:  Good morning, Your Honor.  Stan Garnett and

21    Greg Brower with the law firm of Brownstein Hyatt Farber Schreck,

22    together with James Trusty from the Ifrah law firm.

23        I'm appearing this morning on behalf of Brian Watson and

24    WDC Holdings.

25        THE COURT:  All right.  Good morning to each of you.  This

1    comes on for plaintiffs' motion for an order to show cause why

2    the defendants shouldn't be held in contempt of the June 5th

3    preliminary injunction.

4         I read the parties' position papers, and I thank you for

5    the detailed analysis that you all brought.  And I've read the

6    cases, and I guess I have a couple of questions first, and that

7    is, what's the -- first I would like to know the status of the

8    appeal of the TRO and PI at the Fourth Circuit, and I would

9    invite whoever would like to to respond.

10        MR. GARNETT:  Your Honor, this is Stan Garnett on behalf

11   of the defendants, Watson and WDC.  That appeal was filed, I

12   believe, by the Ifrah law firm, and Mr. Trusty may have the

13   details better than I do, but I believe it was filed on July 6th,

14   a week ago this last Monday, and I don't believe we have received

15   any further communications from the Fourth Circuit since the

16   filing of the notice of appeal, and, of course, we followed that

17   up by a motion to stay this case during the pendency of the

18   appeal.  But perhaps if I can ask Mr. Trusty, is there anything

19   that I've missed here, Jim, that's been recently received from

20   the Fourth Circuit?

21        MR. TRUSTY:  No.  I think the only thing we've got back

22   from the Fourth Circuit is just an acknowledgment of the case,

23   but not any sort of briefing schedule or anything yet.

24        THE COURT:  And did you request an expedited briefing

25   schedule?

1          MR. GARNETT:  We have not -- go ahead, Jim.

2          MR. TRUSTY:  I was going to say I don't think we did, but

3     maybe that's something we should try to consider.

4          THE COURT:  Well, okay.  In my experience, that's

5     something that the Fourth Circuit is looking for, and so -- all

6     right.  Well, keep me abreast of that, if you would.

7          So, my question really was as to whether I have

8     jurisdiction at this stage over the order that I issued, and

9     whether, in fact, the show cause is properly before me while the

10    Fourth Circuit considers the appeal.  And I guess neither of the

11    parties were really focused on that in their briefing, but it's

12    obviously something that the Court looks at, and so I want to

13    know what your -- Ms. Papez, what's your position on whether or

14    not I have the jurisdiction to move forward on your show cause?

15         MS. PAPEZ:  Yes, Your Honor.  Thank you.  Our position is

16    the Court does have jurisdiction.  We have, in fact, researched

17    this issue, and we have filed the current papers with a view to

18    complying both with the Fourth Circuit appeal and the defendants'

19    motion to stay that's pending before Your Honor and was entered

20    last week for a hearing on August 21, preceded by some briefing

21    earlier in August.

22         On the jurisdictional point, Your Honor, we're happy to

23    put in papers if it would aid the Court.  We filed our show cause

24    motion on July 2nd, so before defendants filed their notice of

25    appeal.  And unlike a 1291 appeal as a right, an interlocutory

1    appeal from an injunction under 1292(a) does not divest the Court

2    automatically, the District Court, of jurisdiction once the

3    appeal notice is filed.

4        So, the Court has discretion to continue proceedings

5    subject to a request to stay, which defense counsel has filed and

6    is noted in its schedule for hearing in August.  The proceedings

7    that we request on the show cause, we thought, might help

8    efficiently address both the stay request that the defense

9    counsel has filed with Your Honor and also potentially inform,

10   maybe even moot the Fourth Circuit appeal.

11       It appears that the primary provision that the defendants

12   contest on appeal is paragraph 2 on the judgment security.  What

13   we had hoped to do, and we've today proposed a schedule on the

14   show cause that would allow some discovery that would be complete

15   before Your Honor hears the stay motion on the PI on August 21,

16   and if it turns out that the discovery shows that compliance with

17   this provision is impossible or there are issues with it that we

18   didn't anticipate, you know, we're certainly open to modifying

19   the order or taking whatever steps are necessary to save this

20   Court time and certainly the Fourth Circuit while protecting all

21   parties' rights.

22       THE COURT:  Okay.  All right.  Thank you.  All right,

23   then, I don't know whether the defendant wants to respond to

24   that, but why don't -- instead, why don't we just allow argument

25   on the motion itself, and, Ms. Papez, if you want to move forward

1    on that and any other additional matters to the show cause

2    request.  As I said, I've read the briefs, and, you know, we've

3    got the three areas that Amazon would like to focus my attention

4    on, and I understand that.  I guess I have a question about the

5    property that was sold that concerns paragraph 7.  Was that sold

6    and the money was disbursed before any lis pendens could have

7    been put on the property?  Is that what happened?

8         MS. PAPEZ:  I'm sorry, Your Honor, is that question

9    directed at plaintiffs, or is that something that you

10   were {indiscernible} to you?

11        So, our understanding, although the defendants have not

12   responded to our inquiries about what happened to the proceeds,

13   our understanding -- we just found this from public records

14   searches -- is that the property sale closed on June 19th of

15   2020.  We were not aware that the property was being sold.  We

16   had asked defendants some questions about the disposition of

17   various assets on June 15th.  They didn't respond.

18        So, all we know thus far, despite some inquiries to

19   defendants about the sale and the proceeds, is that the property

20   was sold on June 19.  The record says it was sold for

21   $1.85 million.  The asset statement that the defendants filed in

22   connection with our current papers list an unencumbered equity

23   interest in that property of $688,000.  So, as far as we know,

24   they may have netted anywhere between 6 and $700,000 of proceeds

25   from that sale, but we don't know where they went.

1     As to your question about lis pendens, we weren't aware

2  that the property was up for sale and, frankly, Your Honor, we

3  weren't pursuing an attachment during any lis pendens proceeding

4  on that property precisely because we had the preliminary

5  injunction that says the defendant shall not be disposing of

6  assets subject to the PI.

7     If they thought there was an exception, we wish they would

8  have brought it to our attention.  We asked about this specific

9  issue on June 15.  And the other issue is they have an obligation

10  on paragraph 2, wholly apart from paragraph 7, that says they're

11  supposed to put up the 21 million in judgment security, including

12  through substitute assets that they requested and the Court

13  granted at their request in May.

14     And so, even if they could dispose of the asset, we think

15  they should have contacted us and offered to put the proceeds of

16  the sale into an escrow or toward a bond, and they did neither.

17     THE COURT:  Okay.  All right.  Thank you.  Go ahead and

18  make the rest of your argument this morning.

19     MS. PAPEZ:  Sure, Your Honor.  I know you're familiar with

20  the papers.  I had a couple of preliminary points I was going to

21  highlight, how we might achieve a path forward, subject to the

22  Court's questions, and if the Court has anything else that I

23  should address, I'd be happy to do so.

24     Obviously, we're here, you know, for the Court's

25  assistance on facilitating compliance with the PI.  We have spent

1    enormous time and efforts since May trying to resolve these

2    issues without burdening the Court.

3          The reason we're here and the problem we have is that now,

4    three months into this case since the TRO and over a month after

5    the PI, the defendants, who claim at least 60 million in net

6    assets in their current filings and who signed confidentiality

7    agreements on the property transactions at issue in this suit,

8    have not produced one penny of the judgment security that the

9    Court has ordered, nor have they provided any of the confidential

10   information inventory that paragraph 5 requires.

11         And so, instead, they've been doing things like

12   liquidating the real estate and not responding to the questions.

13   And so we wanted to do this by agreement.  We're trying to be

14   judicious, Your Honor, in responding to this problem.  And I

15   would highlight that we are not currently seeking contempt

16   sanctions at this time.  We're moving for the order to show cause

17   why the defendants purportedly can't comply with these

18   provisions.  And because -- and I think they agree that the

19   appropriate step is some discovery.  They say this on page 13 of

20   their reply brief.  We want to work with them to discern these

21   issues and also inform the Court for precisely the reasons the

22   Court identified at the outset of this hearing.  There's a

23   pending appeal.  There seems to be certain provisions at issue

24   driving the appeal.  If the issue is paragraph 2 and the 21

25   million and it's truly impossible for them to comply, we're not

1    looking to get blood from a stone, we're not looking to waist

2    litigation time pursuing things that aren't enforceable, but

3    candidly, at this point, we can't take defendants' word for it.

4    They've got to provide some proof.  And that's actually the legal

5    standard that the parties agreed upon, if you look at pages 8 and

6    9 of their brief, the *Ali* case and the *Rylander* case, they say,

7    where there's been a violation of an order, which they admit

8    here, and they say they have a justification, namely that they

9    made all good efforts and it's impossible, they simply don't have

10   the assets, the burden is on them to prove it.  And what they've

11   provided in their July 10th filing doesn't meet the bar.

12          So, respectfully, we would just suggest that the way

13   forward is to do the discovery.  We submitted some targeted

14   requests with our response this week.  The defendants agree on

15   page 13 of their brief, as the Court noted in May, that that's

16   the next step.  It's a reasonable solution.  And we've put it on

17   the schedule where by August 21 we could have all of that wrapped

18   up so the Court can consider the benefit of that information in

19   hearing defendants' motion to stay the PI pending appeal.  We

20   think that would be efficient.  If the Court doesn't have

21   questions, I'm happy to touch briefly on a couple of key points

22   on each of the three paragraphs in issue.

23          THE COURT:  No, go ahead.

24          MS. PAPEZ:  Paragraph 2, again this is the judgment

25   security, I just want to stress this was a provision that was

1   based on an extraordinary record that the defendants don't engage

2   in their briefing.

3        We initially moved to escrow the funds because we wanted

4   to target the specific corpus of funds that we identify in our

5   preliminary injunction and verified complaint papers as tied to

6   the fraudulent scheme at issue.  It was at the defendants'

7   request over liquidity concerns that we and the Court agreed to

8   modify that provision as entered to allow for the pursuit of a

9   bond or other substitute assets.

10       And I stress that because we did, you know, take, again,

11  extraordinary steps.  We filed four different sets of pleadings

12  and then ultimately modified that provision to allow for the bond

13  or substitute assets that they requested, and that's why I think

14  it's difficult to reconcile their position of impossibility.

15       If you read their brief closely, their July 10th brief, it

16  makes much of the fact that they can't put $21 million in an

17  escrow or they can't secure a bond for that total amount, but we

18  and the Court went out of our way to say in that provision you

19  can use a combination of the two.

20       And what's really striking, I think, when one reads

21  between the lines in the July 10th filing, is that these

22  defendants, of the 60 million in net assets that they proffer --

23  we did some additional diligence -- you'll see it's a very large

24  villa, a ranch, private airplanes, you know, enumerable real

25  estate holdings that we haven't verified, this undisclosed

1   financial statement, there are assets available to these

2   defendants.  What we're struggling with is why haven't we been

3   able to get to a point where we can talk about what they can do?

4   You know, they're very careful and calibrated in saying we can't

5   give you $21 million in cash or we haven't been able to get a

6   bond for 21 million, not including it's their burden on that.

7         But what we would like to do, Your Honor, is take

8   advantage of some of the assets and admissions and profits they

9   concede, like the discovery to find out what we can do and,

10  perhaps, make this order make sense in a way that protects our

11  clients' interests that the Court, I think, rightly found on the

12  record requires protection in this case.  The record further

13  bears that out while also respecting the defendants' position.

14        So, on paragraph 2, I think we can find a way forward if

15  we engage in the discovery that they concede is appropriate on

16  page 13 of their brief.

17        With respect to paragraphs 5 and 7, Your Honor, I think

18  paragraph 5 literally speaks for itself.  If you look at their

19  page 5 of their brief, they actually leave off and don't quote

20  the portion in issue which says we asked them, as a condition of

21  a privilege they requested -- they signed agreements with us, we

22  cited them in our reply brief; they're also cited in our

23  complaint -- where, as a business partner, they agree to keep our

24  Amazon business information confidential.  They know what we

25  meant by that.  They signed the contracts.

1       When we talked about the PI on May 21, they said they'd be

2  happy to comply, but then afterward they said to us, you know, we

3  really would like to retain some of the information so we can

4  defend the case.  We said no problem.  But because it's our

5  business information and we're only allowing them to retain it

6  now for purposes of defending this litigation, we asked them and

7  actually put into the agreed paragraph 5 that the Court entered a

8  provision that says, please give us an inventory that you,

9  defendants, think is confidential and that you need to retain for

10  your defense.  It's black and white.  Seven days after the PI was

11  entered they were supposed to give us that inventory as a

12  condition of the privilege they requested.  They didn't do it.

13  They never corresponded with us, even after we pointed it out in

14  our July 7th filing.  They never told us why they can't give us

15  this information, and now they come to the Court and say, well,

16  we can't do it because we don't know what Amazon means.

17       Respectfully, Your Honor, paragraph 5 is clear.  It's what

18  they think is confidential that they want to retain for purposes

19  of this case.  They can do that.  They should do it.  All we're

20  asking is they provide us the inventory.  We're still willing to

21  allow that use for the case, but they have to tell us what they

22  have and how they want to use it.

23       I will point out to the Court, this is an issue because we

24  have a cease and desist issue from our business partner.  This is

25  Exhibit 7 to our reply brief this week where apparently some

1    brokers on behalf of the defendants in this case may be using

2    confidential information about these properties that are subject

3    to the PI to market or try to value them.  That's not a permitted

4    use.

5         Again, we're happy to work with them, but we need to

6    understand what's going on here.  So, we need an inventory and we

7    would like an order just directing them to give us the inventory

8    of what they have, what they want to keep for the litigation, and

9    end it there.

10        On paragraph 7, I think it's the same issue.  The

11   anti-dissipation is critical.  I think that the lawsuit that was

12   filed against the defendants, the new lawsuit in Colorado earlier

13   this month and some of the criminal seizures that they've

14   admitted, are further record evidence that the assets they

15   have -- and there are substantial assets -- are in jeopardy.  We

16   could all be moving toward a merits judgment that we can never

17   collect.  We have to protect our clients' right on that.  They

18   have not met their burden of explaining why that condominium sale

19   did not violate paragraph 7, number one, and I'll get to the

20   evidence in a moment.

21        But I want to point out that their statement in their

22   opposition brief that the condo has no relevance to the

23   preliminary injunction -- that's page 8 of their brief -- they

24   say the condo has no relevance to the preliminary injunction,

25   goes well beyond paragraph 7.  It's obviously relevant to

1   paragraph 2.  If they're selling real estate and taking large

2   amounts of cash and not giving one penny of the money due under

3   paragraph 2, that's a problem under the preliminary injunction,

4   regardless of paragraph 7.

5       And on paragraph 7, the anti-dissipation, the point that

6   the condo was purchased in 2017 is irrelevant.  We lay it out in

7   our brief, and it's in the defendants' own documents.  They have

8   a mortgage, a construction mortgage on that condo that far

9   exceeds the condominium's value.  It's a $3.3 million what's

10  called a construction loan secured by the condo, and the lender

11  is listed as Patricia Watson, who is the same individual that the

12  defendants accuse in the April 2nd e-mail attached to our brief

13  as being involved with the Amazon White Peaks transactions in

14  this case.

15      So there's a direct connection.  They haven't rebutted it.

16  We really think we have to come to ground on what happened to

17  those sale proceeds, whether they're disposing of any other

18  assets, and, you know, come to terms on some way to satisfy the

19  provisions of these injunctions that will protect both parties'

20  rights.  I'm happy to answer any further questions that the Court

21  may have.

22      THE COURT:  No, I don't have any at this time.  All right.

23  Who's going to respond on behalf of WDC?

24      MR. GARNETT:  Stan Garnett, G-A-R-N-E-T-T, on behalf of

25  the defendants.

```
 1          THE COURT:  Go ahead, Mr. Garnett.

 2          MR. GARNETT:  Thank you, Your Honor.  I was just noting

 3   that during counsel's argument I missed about 45 seconds of it

 4   because the Governor of Colorado issued an emergency order that

 5   went to everybody's cell phone, and I was trying to figure out

 6   how to get rid of that so I could get back to the hearing, so if

 7   I missed something that counsel mentioned that I need to respond

 8   to, please let me know.  That's certainly not my intent, to not

 9   respond to appropriate issues.

10          THE COURT:  Okay.

11          MR. GARNETT:  It's more of the excitement, I guess, of

12   practicing law and everything remotely these days.

13          Your Honor, there are a number of issues that are raised

14   by what's in front of the Court today.  I do think that we did a

15   good and thorough job of responding to the issues about

16   compliance with the preliminary injunction, and I'm not intending

17   to go into great detail on those unless the Court has questions.

18   I do think the one thing that's important to keep in mind, given

19   the position that we're at in the case, is that this is an

20   incredibly complicated case.  The relationship between these

21   parties, these commercial real estate transactions, were very

22   complicated and involved a number of layered and different types

23   of fees that were paid to different parties involved, and it's

24   not the kind of thing that one can quickly come in and summarize

25   for the Court what was happening to these parties for these
```

1    complex transactions.

2         However, it was very important to Mr. Watson and WDC that

3    we respond to the allegation that we have not complied -- that

4    they have not complied with the Court's order, and I think that's

5    why the response to the motion on the merits was filed.  I do

6    think there's an issue about the nature of the appeal that's

7    being filed and about what impact there is on the jurisdiction of

8    the Court.

9         We did not think that that was an issue that was

10   appropriate to raise in the pleadings, but we wanted the Court to

11   know that we took the Court's order seriously and intended to

12   respond to that on the merits, but if the Court wanted us to

13   provide prompt briefing on the issue of jurisdiction, we would

14   certainly be happy to do that.

15        One of the things that's very interesting about the papers

16   that were filed a little more than 24 hours ago by the plaintiffs

17   is that the plaintiffs provide a very confusing and, frankly,

18   inaccurate portrayal of what the nature of these transactions

19   were in the {indiscernible}.

20        One of the things we mentioned in the hearing back on May

21   21st was that the plaintiffs far overestimated the amount of

22   money that Northstar, which is WDC Holdings, and Brian Watson

23   actually received from Amazon, and that continues in the latest

24   filings.  They're asking for an escrow of $21 million and, as we

25   noted in that hearing, these defendants never received anywhere

1   near that amount of money in connection with the transactions,

2   and if the Court were to order discovery of Mr. Watson's assets,

3   we do think one appropriate remedy also would be to order that

4   the defendants are able to conduct expedited discovery of

5   Amazon's actual payments to the defendants so we can clarify that

6   issue and some of the confusion around that.

7          But where we end up, Your Honor, frankly, given what's in

8   front of the Court at this point, is we think it would be

9   appropriate to hold off on ruling on these issues until August

10  21st when the Court has an opportunity to consider the motion for

11  stay that we filed.  There will be more clarification of what the

12  impact has been of the notice of the appeal, of the injunctive

13  order which, of course, is an appeal of right, but I think

14  counsel is correct that there's some uncertainty as to what the

15  implication is of the pending matter in the trial court.

16         And rather than moving headlong into discovery in a case

17  in which there's a motion to dismiss pending and the pleadings

18  are not close to being closed, we think that holding off until

19  the 21st, get clarification with regard to the issues of appeal,

20  and then the Court can consider the stay at that time, that would

21  be an appropriate approach at this point.

22         With regard to the documents, the confidentiality of the

23  documents, I'm frankly surprised by the position that's being

24  taken.  There's no reason in the world that we can't figure this

25  out.  However, the documents that we have are documents that we

1   are going to need to defend and represent Mr. Watson and WDC

2   Holdings as the case proceeds.

3        So, even if certain documents are returned to Amazon,

4   we'll have to continue to maintain copies of those documents,

5   which is why we felt that dealing with this proposed order was an

6   appropriate way to address the issues.

7        And then finally, Your Honor, with regard to the sale of

8   the condominium, I think there may be some confusion about what

9   the Court actually ordered.  We have been very careful to comply

10  with the wording of the Court's order and the Court's injunction.

11       The issue here was, as counsel just indicated, asking us

12  to turn over a corpus of funds that they believe was received by

13  Mr. Watson and by WDC, which, of course, we contest and we've

14  dealt with that in the past with the Court.  The issue was not to

15  appoint a receiver for WDC or for Northstar or to close them down

16  or to force Mr. Watson or WDC not to do any business, it was to

17  issue a specific order that had specific provisions which we've

18  complied with.

19       So, again, Your Honor, I believe we covered the factual

20  issues thoroughly in our filing.  We haven't had a chance to

21  respond to the -- in writing to the pleading that was filed by

22  the plaintiffs Wednesday night.  We could do that if you wanted

23  us to, but I think that this presents the Court with some pretty

24  clear options of how to approach it at this point.

25       THE COURT:  All right.  Thank you, Mr. Garnett.

1             Ms. Papez, short reply.

2             MS. PAPEZ:  Of course, Your Honor, of course.

3             First, just a couple of things.  Mr. Garnett just

4    represented that the defendants were careful to comply with the

5    injunction.  It's undisputed that they have not complied in any

6    respect with paragraph 2's judgment security.  They haven't

7    posted a bond, a partial bond, a dollar, a penny, escrow, any

8    substitute assets.  I refer the Court to docket 82-3.  That's the

9    financial statement they submitted to the Court claiming over

10   $60 million in net assets.

11            If the Court looks on page 1 alone, it lists over a

12   quarter million dollars in cash.  We still don't know.  They

13   still haven't answered what happened to the condo receipts from

14   the sale in June.  And then it lists, I would note, personal real

15   estate equity net of encumbrances of over $5 million.

16            Your Honor, respectfully, we would submit, if they would

17   work with us in good faith, which is what the law requires under

18   the standards in both briefs, we could come to some agreement to

19   put something up by means of judgment security, under this

20   preliminary injunction and on paragraph 5 on the information.

21   Mr. Garnett just said he's well aware of what his client

22   possesses of our confidential information that they intend to use

23   for their case.  All we ask and all the PI requires on that is

24   for them to send us a list, write us an e-mail, send us a note,

25   say what you've got in your possession and that you intend to use

1    it for the case, and, you know, we'll go from there, but they

2    haven't done that.

3         The last point I want to stress, because I think there are

4    ways forward here that would advance and protect the interests of

5    both sides, is that it makes no sense to hold off on the

6    discovery that every -- I think everyone agrees; they agree, we

7    agree, and the Court countenanced on May 21, would help us come

8    to ground on some of these issues.  We proposed a schedule and

9    some discreet requests with our filing this week that would allow

10   us to ferret out any genuine problems with the PI by May 21st, so

11   the Court could have an informed discussion on whether to stay

12   the current injunction or, and I submit -- I mean, you know, we

13   haven't discussed this with our client because we don't have the

14   information from the defendants to get authorization on this

15   provision, but we are not looking to get blood from a stone.

16   We're not looking to enforce or persist in an injunctive order

17   that is truly impossible to comply with or that has a flaw that

18   they can actually prove, and we don't think it's necessary to

19   waste the Fourth Circuit's time on that either.

20        If they would cooperate, while the Court absolutely has

21   jurisdiction and we can get this done by August 21, we can all

22   come before the Court, maybe with a proposal on an agreed

23   modification that will save everyone a lot of time and headache.

24        So, we would respectfully submit, Your Honor, and we're

25   happy to put on papers on the jurisdictional point, the Court has

1    jurisdiction to entertain and rule on today's motion, to

2    authorize the discovery that we've proposed and defendants agree

3    on page 13 of their brief may help us all come to an agreeable

4    position on these open issues, and we can do so by the time the

5    Court hears the stay motion on August 21st, or maybe we can

6    resolve some of these issues and, perhaps, even, moot the appeal.

7         THE COURT:  All right.  Thank you.

8         MR. GARNETT:  Your Honor --

9         THE COURT:  Yes, sir.

10        MR. GARNETT:  Would you consider a very brief response

11   from the defense, Your Honor?

12        THE COURT:  Go ahead.

13        MR. GARNETT:  Thank you.

14        THE COURT:  All right.

15        MR. GARNETT:  Again, this is Stan Garnett.  I'll be very

16   brief.  First of all, Your Honor, with regard to the financial

17   statement that was submitted which we wanted the Court to have a

18   complete picture of Mr. Watson's assets, Mr. Watson is a Colorado

19   commercial real estate developer, and not unusual for this kind

20   of businessperson -- and I, frankly, have been representing him

21   now for almost -- this kind of businessperson in Colorado for

22   almost 40 years -- virtually everything that he owns is leveraged

23   or is co-owned by other investors.

24        For example, there is an indication on the financial

25   statement of $45 million in value and assets, but every one of

1    those is also co-owned with other investors.  He's been trying to

2    explore whether he can liquidate those and has been unable to do

3    so.  And this financial statement and these assets were not

4    sufficient for the three different bonding companies that we went

5    to to try to get bond.

6         And then finally, with regard to the confidential

7    information, because this seems like an issue that we absolutely

8    should not have to waste the Court's time on, if the Court wanted

9    us to provide to the Court, to counsel, an inventory of the

10   documents that we have from Amazon and then Amazon can tell us

11   which ones they think are confidential, which is what we've asked

12   them for several times, we can certainly do that, and I think

13   that would provide compliance on that issue.

14        THE COURT:  Aren't the documents themselves identified as

15   being confidential or not?

16        MR. GARNETT:  They're not, Your Honor, because they were

17   documents that were generated and produced in the course of these

18   very complex real estate transactions.  So, some of them may, but

19   many of them simply were the kind of documents that were

20   created -- and counsel and the plaintiffs now believe in

21   hindsight that they're confidential and want protection, which is

22   why we thought a protective order would be sufficient to provide

23   that.

24        THE COURT:  All right.  Ms. Papez, why doesn't it solve

25   the problem to have an inventory of the documents produced by WDC

1   and then Amazon can go back and look at what they believe needs

2   to be protected?

3        MS. PAPEZ:  Your Honor, it would, and that is literally

4   what is in paragraph -- of the PI and that they didn't do on June

5   16.  I'm pointing to page 2 of our reply brief.  We quoted it.

6   It's docket 57 at 5, the PI.  It says, quote, "the defendants

7   have to provide 'copies and/or a description' of the information

8   that defendants, Mr. Garnett's clients, consider to be Amazon

9   confidential and necessary for defendants to retain for the

10  case."

11       That's all we asked, and the Court actually entered it,

12  and Mr. Garnett commented, "if the Court would require it."  It's

13  been required since June 5th, and it was due on June 16th.  So,

14  we'd love to have it.  I think, if they would provide it, I think

15  we could resolve that issue.

16       And with respect to the other assets, Your Honor, we

17  respectfully refer the Court to our reply brief this week where

18  everything that Mr. Garnett says today doesn't meet the burden of

19  proof under the controlling standard on our motion because

20  they're representing that they couldn't get a bond.  They're

21  representing that investors precluded them from pledging assets.

22  There are no investors involved in his personal real estate

23  equity.  He could go get a home equity line or a line of credit

24  on those, put some money up on paragraph 2 of the PI, if they

25  were to work with us on that, and we would be happy to do so,

1    maybe we could come to a satisfactory place where we have some

2    judgment security that the Court ordered, but they haven't

3    verified any of this for literally months now.  They just come

4    with counsel's assertion, but they haven't provided any proof,

5    any evidence.  The discovery that we attached to our brief, Your

6    Honor, would get at all of that.  If they will cooperate with us

7    on it, by the time we come back to the Court on August 21, I

8    think we could maybe have all of this resolved, but we need the

9    cooperation on the documents.

10        THE COURT:  Okay.  All right.  Well, I think that

11   discovery is the answer, and there's no reason to delay that

12   discovery.  And, you know, this -- the issue of a TRO is an

13   extraordinary relief.  I believed it was appropriate then, and I

14   believe it's appropriate today, given the facts of the case.  And

15   although the defendant, Mr. Garnett, has argued that now that

16   it's on appeal, the issue as to whether money damages would

17   satisfy this -- any judgment and therefore the injunctive relief

18   was inappropriate, I found that there was sufficient reason to

19   believe that injunction was necessary given the liquidity of the

20   assets of the defendants.  And Amazon, I think, has still

21   diligently pursued trying to identify those assets and why

22   defendant has been unable to satisfy paragraph 2.

23        So I think that discovery is the answer, and we'll enable

24   Amazon to determine whether or not WDC and Mr. Watson have the

25   assets to comply with paragraph 2.  And I don't think that even

1  the -- I don't think there's any issue of jurisdiction based on

2  the case being on appeal, because discovery can be ordered at any

3  juncture of a case.  And when there's a question as to whether

4  assets are being dissipated or not and the judgment, if it

5  ultimately is found couldn't be satisfied, then the Court can

6  always advance discovery, and I think this is an appropriate case

7  where discovery should begin, not withstanding the posture of the

8  case here.

9        So, let's move forward with discovery as you had

10  identified, Ms. Papez, and add a request for WDC to identify the

11  information that it has from Amazon, and you can break that out

12  as to whether you want a complete inventory of all the documents

13  and information that they have or you can try and identify

14  subsequently independently what you -- what WDC believes is

15  confidential.

16        And I think the issue of paragraph 7 is probably subsumed

17  by your request for the financial information pursuant to

18  paragraph 2, but let's prepare those discovery requests and get

19  them -- whether they're an interrogatory or document requests --

20  get that rolling with a response date prior to the hearing on

21  August 21.  If there are issues that arise in the discovery

22  requests and there's an issue that needs to be raised before the

23  magistrate judge, let's do so expeditiously so we can try to have

24  answers to some of these questions before August 21st.  I think

25  the time is now to pursue these issues and get them resolved

1    before the August 21st hearing.

2          I encourage you to continue to cooperate in that endeavor,

3    and hopefully the picture will be much clearer in a month.  So,

4    let's work on that, and we'll issue an order to that effect.

5          Are there any other issues that the parties would like to

6    address this morning?

7          MS. PAPEZ:  Your Honor, it's Elizabeth Papez.  Just one

8    thing to ease the Court's burden.  We actually did put a proposed

9    order in on Wednesday -- it's docket 84-1 -- that outlines the

10   schedule, and we actually also attached and included at docket

11   84-2 the specific expedited discovery request we have already

12   prepared and the schedule that we propose in the proposed order.

13   Docket 84-1 would give defendants the 30 days, the normal 30 days

14   under the federal rules to respond to the request and still allow

15   time for the parties to put in a brief before the August 21

16   hearing for the Court's benefit.

17         THE COURT:  Okay.  I looked at that.  I didn't recall

18   whether it fit in here.  Sitting here now, I didn't recall

19   whether it included the request for inventory of information that

20   WDC possessed, but maybe I missed that.

21         MS. PAPEZ:  Thank you, Your Honor.

22         MR. GARNETT:  Sorry, counsel.

23         MS. PAPEZ:  No, please, go ahead.

24         MR. GARNETT:  No, no, it's fine.  I had one matter I

25   wanted to raise, but it's slightly different, so go ahead,

1   counsel.

2        MS. PAPEZ:  Your Honor, I was going to say you're exactly

3   right, there's no separate request on the inventory because it's

4   already in paragraph 5 of the PI, but to Your Honor's point, we

5   believe it would be subsumed in the draft discovery request we

6   put in at docket 84.2.  So we, of course, defer to the Court on

7   whether it's necessary to add a line to the order on that or not.

8        THE COURT:  Okay.  Well, let's make sure that the

9   discovery requests include all information that you're pursuing

10  pursuant to paragraphs 2, 5 and 7.

11       And if you're satisfied with the requests as they stand

12  today, that's fine, but, you know, you should -- what I'm -- what

13  I want to make sure we're doing is making these requests

14  independent of the preliminary injunction, which is on appeal,

15  and I don't think that -- so I want to make your discovery

16  request discreet, I guess is the way I'm saying it, from the PI

17  information because it's all relevant for purposes of pursuing

18  the litigation.

19       And so, if you're satisfied with that -- I'll go back and

20  look in a minute, but if you're satisfied with the 84-1 and 84-2

21  on the docket now, then that's fine.  If you revise it, then

22  please submit those revisions.

23       MS. PAPEZ:  Your Honor, thank you.  We understand

24  completely.  I do think, in light of the Court's instructions

25  now, we'll review them.  There were a few requests that are tied

1    to the injunction.  We will review and endeavor to revise those

2    in accordance with the guidance just now and resubmit.

3              THE COURT:  Okay, great.  Mr. Garnett, you had a matter?

4              MR. GARNETT:  Yes, Your Honor.  Thank you.  And first of

5    all, we understand the Court's order, and we will work with

6    counsel, and hopefully we'll be able to comply with this without

7    having to bring matters back either to Your Honor or to the

8    magistrate.

9              Your Honor, the one additional matter I wanted to raise, I

10   do think, as I mentioned in the beginning of my argument, part of

11   what's driving some of the difficulty here and some of the

12   confusion is the confusing factual nature and complicated factual

13   nature of what happened and, particularly, this continued

14   assertion that the defendants who seek $21 million through

15   various things and that that should be put into escrow, we do

16   think it would be helpful and we think it would be appropriate,

17   given the Court's order about discovery for the plaintiffs, to

18   permit the defendants to have similarly focused and limited

19   discovery to ask the plaintiffs to establish their record of

20   payments of what was paid from either Amazon plaintiff to Watson

21   or to WDC.

22             And we think, if we can get that clarified through

23   discovery, that will also, I think, streamline some of these

24   issues and avoid some of this confusion in the future.  So we

25   would be asking the Court to also permit that limited discovery

1   from the defendants to the plaintiffs.

2         THE COURT:  All right.  And Ms. Papez, what's your

3   response to that?

4         MS. PAPEZ:  I guess my response is -- you know, we'll

5   obviously defer to the Court's judgment and cooperate as needed

6   to advance the case.  I will say procedurally that request

7   strikes me as premature, perhaps unprecedented in the sense that

8   we are the plaintiffs, we're at the pleadings stage, and the

9   question in issue about what Northstar or the defendants have

10   received on our property, this information is in their

11   possession, custody and control.  They should know what payments

12   they received.  When you look at their brief, their reply brief,

13   their July 10 brief at page 6, they admit they received a number

14   of funds, and they say they spent them in the ordinary course.

15   So, their own books and records will show what they received.

16         I think, Your Honor, respectfully, what they are asking is

17   a premature discovery request about our damages case.  And again,

18   we're at the pleadings stage, so this is not the time or the

19   place for us to be producing damages discovery, and it doesn't

20   strike me as at all necessary, respectfully, to the issues before

21   the Court today.

22         THE COURT:  Well --

23         MR. BROWER:  Your Honor, this is Greg Brower.  If I could

24   respond to that quickly on behalf of the defendants.  In a normal

25   case, counsel, of course, would be exactly right.  We're at the

1   pleadings stage, and it would take discovery to get to the ground

2   truth about what damages really are.  The problem in this case,

3   as Your Honor well knows, is that a preliminary injunction was

4   entered in large part based upon a presumption, we believe an

5   erroneous presumption, of what the damages in this case would be

6   for plaintiffs to prevail.  And so we struggled with that.

7         As Your Honor knows, we argued against it.  Your Honor,

8   nevertheless, entered the order that Your Honor did, but before

9   we continue to operate under what we believe is kind of a false

10  reality that there is really $21 million at stake here, is --

11  $21 million of payments to our clients, we think we ought to be

12  able to clarify that, and it would benefit the Court and the case

13  immensely to get to the ground truth about that issue at the very

14  outset, because many, many other decisions and orders, perhaps,

15  are going to be based upon what we think is an allegation without

16  merit, and plaintiffs, frankly, should be forced to prove that up

17  at this preliminary stage, even though that would be unusual in

18  the normal case.

19        THE COURT:  Yeah.  Well, Amazon did identify where the

20  $21 million number came from in their pleadings previously, and

21  so you have that information, correct?  And what else do you need

22  to analyze that?

23        MR. BROWER:  Your Honor, we seek evidence of actual

24  payment.  It's one thing to throw out a number; it's a whole

25  nother thing for the plaintiffs to actually demonstrate to the

1   defendants and to the Court that the payments in that amount were

2   actually made.  If they were made, as the plaintiffs have alleged

3   repeatedly, it ought to be awfully easy for them to demonstrate

4   that by way of responding to a limited discovery request.  If

5   they can do that, we can move on, but they simply have not done

6   that.  Again, I think it's an essential threshold issue, given

7   the unique nature of this case.

8          THE COURT:  I guess I'm missing something.  Payments made?

9   You're talking about these lease agreements and purchase

10  agreements of different properties by Amazon to these third

11  parties, and then the money flowing to a couple of these brokers

12  that -- is that what you're talking about?  I think I'm missing

13  the point.

14         MR. BROWER:  No, Your Honor.  Thank you for asking for the

15  clarification.  No, we're simply talking about, at bottom,

16  evidence -- whether there is evidence that the plaintiffs

17  actually made payments of -- $21 million in payments that were

18  received by these defendants, Watson and WDC, because, of course,

19  the injunction requires those defendants to put into escrow that

20  amount based upon the premise, the allegation that they received

21  it, but no evidence has been offered.

22         THE COURT:  Okay.  I think I understand.

23         MR. BROWER:  We simply seek to make plaintiffs show the

24  evidence.  We don't think that that's happened, and we've seen no

25  evidence that it did.

1          THE COURT:  Okay.  Ms. Papez, do you want to respond?

2          MS. PAPEZ:  Sure.  I mean, I think, you know, Your Honor

3    correctly identified the position.  We put in evidence in the

4    verified complaint and in the PI papers that ties expressly

5    $21 million, and it's not 21 million just in fees, right; the 21

6    million two-five-zero in the PI comes from, number one, the

7    $5 million payment that the defendants concede they received from

8    the former Northstar employees who conducted the White Peaks sale

9    transaction at issue in this case.  Those were the individuals

10   who were cooperating with the government and who have disgorged

11   their own proceeds, the White Peaks defendants, as we've notified

12   the Court.

13         So part of the 21-two-five-zero is that five million.

14   There's no contest that the defendants received that money,

15   number one.

16         Number two, with respect to the remaining, I think it's

17   $12,250,000, that is the money that Your Honor correctly

18   identified as the subject of the evidence we put in at the PI

19   stage and in our verified complaint tying that specific corpus of

20   funds to a document that Amazon discovered in its own internal

21   investigation.  It was a document that was recovered from the

22   recycle bin of an individual who interacted with these defendants

23   and expressly designated his own internal share, which is the

24   kickback.  There is no world in which an Amazon individual,

25   Amazon personnel approving these deals could ever have a, quote,

1    "share" in broker proceeds of a deal.  It's against our company

2    policy.  It was the reason for this investigation, the

3    informants, the parallel criminal investigation.  I just want to

4    be very clear about that.  And we put in a document saying that

5    the rest of the money ordered in paragraph 2 of the PI was --

6    were funds that this insider document specifically designated as

7    his share of these proceeds or the fees to these defendants.

8         And then my last point, Your Honor, is we met our burden

9    on that.  If they want to come back and say they never actually

10   received all of that money, which, frankly, that ship has sailed

11   on the five million because they admit they took that money, and

12   they still have never accounted to us for where it is or why they

13   can't put it up for paragraph 2.  But on the rest of it, if they

14   want to say they never actually got that money, that is

15   information within their possession, custody and control.  They

16   don't need discovery from us, Your Honor, to prove that point or

17   that defense.

18        THE COURT:  Yeah, and so --

19        MR. BROWER:  It sounds like -- I'm sorry, Your Honor.  I

20   was going to say it sounds like the plaintiffs are not confident

21   they can actually prove that $21 million were paid to our

22   defendants, not paid in total to a variety of parties, perhaps,

23   relating to all of these transactions, but to these defendants.

24   And, of course, the preliminary injunction is premised again on

25   the allegation that these defendants received that amount of

1    money and, as a result, should put it into escrow, and we're

2    saying that that didn't happen, and we're saying that the

3    plaintiffs have not offered any evidence.  And so, if we're going

4    to do some limited discovery, it would make sense to satisfy that

5    threshold issue.

6         Just one other minor point and I'll stop talking.  This

7    so-called White Peaks transaction that plaintiffs repeatedly

8    bring up in their complaint and throughout this process, this

9    case so far, that transaction, whatever it was, had nothing to do

10   whatsoever with these defendants, with our clients.  That was a

11   transaction in which the seller apparently was an entity called

12   White Peaks Capital, LLC or something to that effect.  That was

13   an entity that our client, Mr. Watson, had nothing to do with.

14        The five million that has been referenced was, long story

15   short, Your Honor, was the result of when our client discovered

16   that the principals behind White Peaks usurped the corporate

17   opportunity to do that transaction with Amazon and a dispute

18   erupted which resulted in a settlement and a payment of that

19   money.  But our client had nothing to do with that transaction

20   with Amazon.  So we from the outset see that as a red herring

21   that continues to confuse and cloud the issues in this case.

22        THE COURT:  Well, I understand that's your theory, that's

23   your defense, and, of course, the pleadings that have preceded

24   that have identified a different theory on who's really involved

25   and whether they have worked together or not, and those are

1    issues that will be resolved down the road, but I don't think

2    that discovery on Amazon's losses at this stage are appropriate,

3    and I am certainly of the opinion that the $21 million that I

4    identified, that there's got to be evidence of that, but I think

5    there's evidence of that in the record already, and whether

6    Amazon actually paid out all of that money or whether the losses

7    were arrived at by different calculations is a matter that we're

8    going to save for down the road.

9         So, I'm not going to order reciprocal discovery on the

10   $21 million.  All right.  Well, thank you, all, for getting on

11   the line today, and we'll -- Ms. Papez, if you'll look at your

12   84-1 and 84-2 and let us know whether you're going to revise it

13   or not, then we'll proceed accordingly.

14        MS. PAPEZ:  We will do that.  Thank you, Your Honor.

15        THE COURT:  All right.

16        MR. GARNETT:  Your Honor, thank you very much for your

17   time this morning.

18        THE COURT:  All right.  All right.  Thank you, all.

19        (Proceedings adjourned at 11:41 a.m.)

20

21

22

23

24

25

1

2

3

## C E R T I F I C A T E

4

          I, Scott L. Wallace, RDR-CRR, certify that
the foregoing is a correct transcript from the record of
5     proceedings in the above-entitled matter.

6

    /s/ Scott L. Wallace                7/20/20
7   ---------------------------        ----------------
        Scott L. Wallace, RDR, CRR              Date
8         Official Court Reporter

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25