# EXHIBIT 6

# INDEPENDENT CONTRACTOR AGREEMENT
## Northstar Development, LLC with "Business Development Associate"

This independent contractor agreement (the "**Agreement**") is made effective as of <u>January 8, 2018</u> (the "**Effective Date**") between **WDC Holdings, LLC** ("**WDC**") **dba Northstar Commercial Partners**, and its affiliates (the "**Company**"), a Colorado limited liability company, and Villanova Trust, a trust existing in the state of Tennessee (the "**Contractor**") (collectively, the "**Parties**").

The Company requests the Contractor to perform services for it and may request the Contractor to perform other services in the future; and

The Parties therefore agree as follows:

### 1.0. Term and Termination.

    1.1. This Agreement takes effect immediately as of the Effective Date, and remains in full force and effect until the Contractor has completed the Services (the "**Term**"), unless earlier terminated under this Section 1.

    1.2. Either Party may terminate this Agreement for cause by providing the other Party written notice if the other Party: (i) is in material breach of this Agreement and has failed to cure such breach within five (5) days after its receipt of written notice of such breach provided by the non-breaching Party; (ii) engages in any unlawful business practice related to that Party's performance under the Agreement; or (iii) files a petition for bankruptcy, becomes insolvent, acknowledges its insolvency in any manner, ceases to do business, makes an assignment for the benefit of its creditors, or has a receiver, trustee or similar party appointed for its property.

    1.3 Contractor may terminate this Agreement for any project by Contractor by providing Company 15 days written notice. Should Contractor terminate the Agreement for any reason except for cause as described in paragraph 1.2, Contractor forfeits its claim for any future Development Fees and its claim for any profit participation amounts for any deals that have not been consummated prior to such notice. Notwithstanding the foregoing, Contractor shall retain 100% of its fee participation amounts, as defined in the most current Exhibit A, for any referrals for projects that are completed subsequent to termination.



CK

## 2.0. Contractor Services.

2.1. During the Term, the Company may engage the Contractor to provide the following services as needed (the "**Services**"), or other such services as mutually agreed upon in writing by the Parties (email is acceptable):

a. Business Development for Development Management Services
b. Other services as may be required to bring about the successful conclusion of assigned development projects

2.2. The Contractor shall provide the necessary equipment and transportation to perform the Services. If the Contractor has obtained employees or agents (the "**Contractor Personnel**"), the Contractor shall be solely responsible for all costs associated with the Contractor Personnel.

2.3 As a result of providing the Services, the Contractor or Contractor Personnel may create certain work product (the "**Work Product**"). Subject to paragraph 4 of this Agreement, such Work Product shall immediately become property of the Company when completed.

2.5. Compensation: Compensation to the Contractor for the work performed by the Contractor shall be in the following forms:

a. Participation/Sharing in the Development Fees generated by the individual developments Contractor is assigned to.

b. Participation/Sharing in the net managers profits (MP Profits) that is received by individual developments Contractor is assigned to.

c. Referral fees for acquisition of Land for development transactions that Contractor introduces to the Company and has been agreed to in advance by the company.

d. Leasing referral fee's received by the Company for the individual developments Contractors is assigned to.

Contractor's participation/sharing and referral fee percentages in the Development Fees, MP Profits Interest, Brokerage Fees and Leasing Fees are defined in the attached Exhibit A. Such Exhibit A shall be modified from time-to-time as Contractor adds or subtracts individual developments from its responsibility and/or assignment from the Company. The Parties agree to execute such modified Exhibit A at such time for such modification to be valid. Modifications may be formal or informal including statements made in email messages or text messages.

*Payment of Development Fee Participation/Sharing:* Contractor will receive its proportionate share of any Development Fees within fifteen (15) days and only upon

*[handwritten initials] ok*

receipt of such funds from lenders/partners to the Company as WDC receives its share of the Development Fees. For example, Contractor will be paid X% of the initial Development Fee paid to the Company out of the initial 25% Construction Loan draw (e.g., X% of the 25% development fee payment).

*Payment of Managers Profits Interest Participation/Sharing:* Contractor will receive its proportionate share of any MP Profits Interest Fees within fifteen (15) days and only upon receipt of such funds from a sale or other capital event wherein MP Profits are received by the Company. Contractor's Profits Interest on all strictly Company investments where Contractor is working with the Company's approval and under a written agreement between the Company and Contractor. To earn the Profits Interest Contractor must continue working on the development of these projects through the receipt of the Certificate of Occupancy and all punch list items for the various projects.

*Payment of Brokerage Fees:* Contractor will receive as a referral fee, 100% of any Buy-Side Brokerage fees received by Company from an outside broker involved in acquiring land for development and shall be paid within fifteen (15) days and only upon receipt a successful closing of an investment. Contractor shall not participate or have rights to any Acquisition fees that the Company is paid internally to acquire such land parcels.

*Payment of Leasing Fees:* Contractor will receive a referral fee equal to 1.25% of the Initial Lease Value received by Company and shall be paid within fifteen (15) days and only upon receipt a successful closing of an investment. Contractor will not receive a Leasing fee for the development commonly referred to as Shaw Rd.

Further, Company may request from time to time Contractor to complete certain functions relative to underwriting new transactions or investments. Such duties may include assisting with financial modeling, site tours, conversations and meetings with governing bodies, and other functions necessary to determine the viability of an investment opportunity.

2.6. The Company shall not be responsible for federal, state and local taxes derived from the Contractor's net income or for the withholding and/or payment of any federal, state and local income and other payroll taxes, workers' compensation, disability benefits or other legal requirements applicable to the Contractor.

3.0. **Independent Contractor Status.**

3.1. The Parties intend that the Contractor and any Contractor Personnel be engaged as independent contractors of Company. Nothing contained in this Agreement will be construed to create the relationship of employer and employee, principal and agent, partnership or joint venture, or any other fiduciary relationship.

*[initials: KW / CK]*

3.2. The Contractor may not act as agent for, or on behalf of, the Company, or to represent the Company, or bind the Company in any manner.

3.3. The Contractor will not be entitled to worker's compensation, retirement, insurance or other benefits afforded to employees of the Company.

4.0. **Ownership.** The Parties intend that, to the extent the Work Product or a portion of the Work Product qualifies as a "work made for hire," within the definition of Section 101 of the Copyright Act of the United States (17 U.S.C. § 101), it will be so deemed a work made for hire. If the Work Product or any portion of the Work Product does not qualify as work made for hire, and/or as otherwise necessary to ensure the Company's complete ownership of all rights, titles and interest in the Work Product, the Contractor shall transfer and assign to the Company all rights, titles and interests throughout the world in and to any and all Work Product. This transfer and assignment includes, but is not limited to, the right to publish, distribute, make derivative works of, edit, alter or otherwise use the Work Product in any way the Company sees fit.

5.0. **Representations.** Both Parties represent that they are fully authorized and empowered to enter into this Agreement, and that the performance of the obligations under this Agreement will not violate or infringe upon the rights of any third-party, or violate any agreement between the Parties and any other person, firm or organization or any law or governmental regulation.

6.0. **Indemnification.** Each Party shall indemnify and hold harmless the other Party, its affiliates, and its respective officers, directors, agents and employees from any and all claims, demands, losses, causes of action, damage, lawsuits, judgments, including attorneys' fees and costs, arising out of, or relating to, the each Party's responsibilities and services under this Agreement.

8.0 **Confidential Information.**

8.1 Each Party (on its behalf and on behalf of its subcontractors, employees or representatives, or agents of any kind) agrees to hold and treat all confidential information of the other Party, including, but not limited to, trade secrets, sales figures, employee and customer information and any other information that the receiving Party reasonably should know is confidential ("**Confidential Information**") as confidential and protect the Confidential Information with the same degree of care as each Party uses to protect its own Confidential Information of like nature.

8.2 Confidential Information does not include any information that (i) at the time of the disclosure or thereafter is lawfully obtained from publicly available sources generally known by the public (other than as a result of a disclosure by the receiving Party or its representatives); (ii) is available to the receiving Party on a non-confidential basis from a source that is not and was not bound by a

CK

confidentiality agreement with respect to the Confidential Information; or (iii) has been independently acquired or developed by the receiving Party without violating its obligations under this Agreement or under any federal or state law.

9.0. **Liability.** EXCEPT WITH RESPECT TO THE PARTIES' INDEMNIFICATION OBLIGATIONS, NEITHER PARTY SHALL BE LIABLE TO THE OTHER FOR ANY SPECIAL, INDIRECT, INCIDENTAL, PUNITIVE, OR CONSEQUENTIAL DAMAGES ARISING FROM OR RELATED TO THIS AGREEMENT, INCLUDING BODILY INJURY, DEATH, LOSS OF REVENUE, OR PROFITS OR OTHER BENEFITS, AND CLAIMS BY ANY THIRD PARTY, EVEN IF THE PARTIES HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. THE FOREGOING LIMITATION APPLIES TO ALL CAUSES OF ACTION IN THE AGGREGATE, INCLUDING WITHOUT LIMITATION TO BREACH OF CONTRACT, BREACH OF WARRANTY, NEGLIGENCE, STRICT LIABILITY, AND OTHER TORTS.

10.0. **Disclaimer of Warranty.** THE WARRANTIES CONTAINED HEREIN ARE THE ONLY WARRANTIES MADE BY THE PARTIES HEREUNDER. EACH PARTY MAKES NO OTHER WARRANTY, WHETHER EXPRESS OR IMPLIED, AND EXPRESSLY EXCLUDES AND DISCLAIMS ALL OTHER WARRANTIES AND REPRESENTATIONS OF ANY KIND, INCLUDING ANY WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, TITLE, AND NON-INFRINGEMENT. THE COMPANY DOES NOT PROVIDE ANY WARRANTY THAT OPERATION OF ANY SERVICES HEREUNDER WILL BE UNINTERRUPTED OR ERROR-FREE.

11.0 **Miscellaneous Provisions.**

11.1. This Agreement, and any accompanying appendices, duplicates, or copies, constitutes the entire agreement between the Parties with respect to the subject matter of this Agreement, and supersedes all prior negotiations, agreements, representations, and understandings of any kind, whether written or oral, between the Parties, preceding the date of this Agreement.

11.2. This Agreement may be amended only by written agreement duly executed by an authorized representative of each party (email is acceptable).

11.3. If any provision or provisions of this Agreement shall be held unenforceable for any reason, then such provision shall be modified to reflect the parties' intention. All remaining provisions of this Agreement shall remain in full force and effect for the duration of this Agreement.

11.4. This Agreement shall not be assigned by either party without the express consent of the other party.

CK

11.5. A failure or delay in exercising any right, power or privilege in respect of this Agreement will not be presumed to operate as a waiver, and a single or partial exercise of any right, power or privilege will not be presumed to preclude any subsequent or further exercise, of that right, power or privilege or the exercise of any other right, power or privilege.

11.6. This Agreement is be governed by and construed in accordance with the laws of the State of Colorado without reference to any principles of conflicts of laws, which might cause the application of the laws of another state. Any action instituted by either party arising out of this Agreement will only be brought, tried and resolved in the applicable federal or state courts having jurisdiction in the State of Colorado. EACH PARTY HEREBY CONSENTS TO THE EXCLUSIVE PERSONAL JURISDICTION AND VENUE OF THE COURTS, STATE AND FEDERAL, HAVING JURISDICTION IN THE STATE OF COLORADO.

The Parties are signing this Agreement on the date stated in the introductory clause.

**WDC Holdings, LLC dba Northstar Commercial Partners ("Company")**

By: _____

Name: Brian Watson
Title:  Manager


**Business Development Associate ("Contractor")**

By: _____

**Villanova Trust**
Christian Kirschner, Trustee
Title: Business Development Associate

## Exhibit A

| Project Name | *Referral Fee based on Brokerage Commission | Lease Commission Rate (For Initial Term Only) Exclusive of Shaw Rd Development. | Development Fee Percentage | Manager's Net Profits Interest Percentage |
|---|---|---|---|---|
| | | Exhibit A Villanova Trust Referral Fee Participation Schedule January 8, 2018 | | |
| Sterling NCP I, LLC | 100% to Contractor | 1.25% | 20% | 15% |

*In the event there is a Buy side brokerage fee paid by an outside third-party brokerage firm (exclusive of W.D.C. Holdings, LLC dba Northstar Commercial Partners), 100% of fee shall be received by NCP and Paid as a referral fee to Contractor. This is exclusive of any acquisition fee that NCP receives internally as a part of its investment entity.

CK