**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

AMAZON.COM, INC. and AMAZON DATA SERVICES, INC.,

Plaintiffs,

v.

WDC HOLDINGS LLC dba NORTHSTAR COMMERCIAL PARTNERS; BRIAN WATSON; STERLING NCP FF, LLC; MANASSAS NCP FF, LLC; NSIPI ADMINISTRATIVE MANAGER; NOVA WPC LLC; WHITE PEAKS CAPITAL LLC; VILLANOVA TRUST; CARLETON NELSON; CASEY KIRSCHNER; ALLCORE DEVELOPMENT LLC; FINBRIT HOLDINGS LLC; CHESHIRE VENTURES LLC; JOHN DOES 1-20,

Defendants.

CASE NO. 1:20-CV-484

**DECLARATION OF LORA E. MACDONALD IN SUPPORT OF PLAINTIFFS' VERIFIED SECOND AMENDED COMPLAINT**

I, Lora E. MacDonald, hereby declare, under penalty of perjury, as follows:

1. I am over the age of 18 years. I have personal knowledge of the facts set forth below, and if called upon to do so, I could and would competently testify thereto.

2. I am an attorney licensed to practice law in the State of Maryland and in the District of Columbia. I am an attorney at the law firm of Gibson, Dunn & Crutcher, LLP ("Gibson Dunn"), and counsel for Amazon.com, Inc. and Amazon Data Services, Inc. (collectively "Plaintiffs" or "Amazon"). I make this declaration in support of Plaintiffs' Verified Second Amended Complaint. If called as a witness, I could and would testify to the same as stated herein.

3. Amazon was alerted to the misconduct detailed in Plaintiffs' Verified Second Amended Complaint on or about December 2, 2019, when an individual formerly affiliated with Northstar Commercial Partners ("Northstar") ("Informant 1") emailed an Amazon executive asking whether Amazon "[w]ould . . . care to hear about a couple of [Amazon] employees who have taken kick backs in excess of $8,000,000, maybe as high as $50,000,000." On information and belief, in-house counsel for Amazon participated in multiple phone calls with Informant 1 between December 2019 and January 2020 to better understand this and other allegations. Informant 1 substantiated these allegations in January 2020 by providing to Amazon several documents, including a spreadsheet purporting to itemize payments made by Northstar to Villanova Trust.

4. Following receipt of the allegations made by Informant 1, Amazon began an internal investigation that identified suspicious activity by two now-former Amazon real estate transaction managers ("TM"), Carleton Nelson and Casey Kirschner. For example, an internal information technology ("IT") examination of Casey Kirschner's Amazon-issued laptop indicated that he had copied approximately 375 documents onto a personal USB device the night before surrendering the laptop to IT. Many of these documents referenced confidential Amazon business transactions—including transactions relating to several Northstar-affiliated Amazon Virginia Lease Transaction sites.

5. On information and belief, the examination of Casey Kirschner's laptop also identified a spreadsheet recovered from the laptop's Recycle Bin. The spreadsheet appears to be a rough calculation of the kickback payments the author was expecting to receive from transactions referred to as "Shaw Rd.," "Quail Ridge," "Manassas," "Lerner," "Route 50," and "DTC." The referenced fees on these transactions totaled $37.1 million, and the

spreadsheet indicates that a total "Share" to its author was expected to be approximately $14.5 million. Several of these names relate to Northstar-affiliated Amazon Virginia Lease Transaction sites.

6. The examination also identified additional indicia of impropriety. For example, on information and belief, Amazon identified an Outlook back-end AppData folder containing a Northstar spreadsheet that itemized purported Northstar costs on its Manassas Lease Transaction deals with Amazon. On the lower right-hand side of the spreadsheet, someone had calculated a "Leasing Fee" of $1,656,148, which approximates the $1.6 million Leasing "Commission" the author of the previously-referenced document had projected for the Manassas Lease Transaction deals.

7. The information Amazon obtained from Informant 1 and the resulting internal investigation were further corroborated in early February 2020, when, on information and belief, IPI Partners ("IPI"), Northstar's primary equity investor in the Lease Transactions, informed Amazon that Timothy Lorman, Northstar's then-COO, had approached IPI about potential misconduct by Brian Watson and others. This prompted related discussions between Amazon, IPI, and counsel for both parties.

8. Communications between outside counsel for Amazon and IPI in February and March 2020 produced further evidence and information corroborating the misconduct that is the subject of this case and additional indicia of misconduct by Northstar and Brian Watson. For example, outside counsel for IPI informed Gibson Dunn attorneys that Kyle Ramstetter, a former Northstar employee who had reported to Watson, had signed without authorization multiple change orders related to work done at Northstar-affiliated Virginia Lease Transaction properties. Counsel for IPI also informed Gibson Dunn attorneys

regarding discussions with Lorman concerning how multiple Northstar employees apparently oversaw Watson's personal finances, and that Watson may have commingled his own finances with Northstar's finances. Further, outside counsel for IPI informed Gibson Dunn attorneys based on information provided by Lorman that after an acrimonious disagreement between Brian Watson, Kyle Ramstetter, and former Northstar employee Will Camenson, one of those employees (or an entity associated with that employee) had apparently deposited $5 million into a Watson-associated bank account following a confidential settlement.

9. Attached hereto as **Exhibit 1** is a true and correct redacted copy of an email sent by Brian Watson on April 2, 2020 to more than thirty individuals, including business associates and law enforcement personnel. This email is referenced as an exhibit to the Amended Complaint filed on April 9, 2020 in the case captioned *Ann Arbor Senior Living, LLC v. Watson et al.*, No. 2020cv031099 (Colo.). Non-relevant personal and/or sensitive information has been redacted from the document. On information and belief, this email is the same email referenced in press reports attached as **Exhibit 3** and **Exhibit 4**. The undersigned received a copy of the email on the same day that it was sent by Watson.

10. Attached hereto as **Exhibit 2** is a true and correct redacted copy of a December 2, 2019 email that the individual whom Plaintiffs' Verified First Amended Complaint refers to as Informant 1 sent to an Amazon executive asking whether Amazon "[w]ould . . . care to hear about a couple of [Amazon] employees who have taken kick backs in excess of $8,000,000, maybe as high as $50,000,000."

11. Attached hereto as **Exhibit 3** is a true and correct copy of an April 7, 2020 article by Shelly Bradbury published on the website of The Denver Post, updated on April 8, 2020,

entitled *FBI seizes computer, cell phone from home of Denver businessman*, available at https://www.denverpost.com/2020/04/07/fbi-search-warrant-denver-businessman-brian-watson/.

12. Attached hereto as **Exhibit 4** is a true and correct copy of an April 7, 2020 article by Thomas Gounley published on the website of BusinessDen, entitled *Real estate CEO, former GOP nominee, says he's being investigated by FBI*, available at https://businessden.com/2020/04/07/real-estate-ceo-former-gop-nominee-says-hes-being-investigated-by-fbi/.

13. Attached hereto as **Exhibit 5** is a true and correct copy of a September 8, 2017 email sent by former Amazon TM Casey Kirschner to Brian Watson attaching a Request For Proposal ("RFP") soliciting terms on which Northstar might partner with Amazon to expand Amazon's build-to-suit facilities in Northern Virginia.

14. Attached hereto as **Exhibit 6** is a true and correct copy of the executed version of a January 8, 2018 referral agreement between Northstar and Villanova Trust provided by, on information and belief, Tim Lorman to IPI in or around February 2020.

15. Attached hereto as **Exhibit 7** is a true and correct copy of a spreadsheet provided by, on information and belief, Tim Lorman to IPI in or around February 2020. The spreadsheet includes a column titled "Referal [sic] - Villanova Owed" with four separate entries totaling $1,447,614.50. The first entry lists $250,000.00 as owed for a "Leasing Fee" associated with the "Dulles" "Project." The second entry lists $225,642.60 as owed for a "Development Fee (20%)" also associated with the "Dulles" "Project." The third entry reflects $760,210.50 as owed for a "Leasing Fee (25%)" associated with the "Quail" "Project." The fourth entry reflects $211,761.40 as owed for a "Development Fee (20%)" also associated with the "Quail" "Project."

16. Attached hereto as **Exhibit 8** is a true and correct copy of a letter sent on May 15, 2020, by Jamie Hubbard, an attorney at Stimson Stancil LaBranche Hubbard, LLC, and counsel for Defendants White Peaks Capital, LLC and NOVA WPC, LLC, to Elizabeth Papez and Patrick Stokes, counsel for Plaintiffs. In the letter, Hubbard writes that her "client Kyle Ramstetter (controlling manager of White Peaks Capital and NOVA WPC LLC) is cooperating with the government in its ongoing investigation of the events referenced in [Plaintiffs'] complaint." Hubbard also writes that "a portion of the proceeds from the White Peaks transaction"—described in Plaintiffs' Verified First Amended Complaint as the "Direct Purchase Enterprise"—"was paid to an entity under Mr. [Brian] Watson's control."

17. Attached hereto at **Exhibit 9** is a true and correct informal/draft transcript of a recorded discussion between Brian Watson and two former Northstar employees, Kyle Ramstetter and Will Camenson, that occurred, on information and belief, on September 27, 2019, and concerns, among other matters, the NOVA WPC, LLC purchase of 89.797 acres of land located in Loudoun County, Virginia, described in Plaintiffs' Verified Second Amended Complaint as the "Direct Purchase Enterprise." The informal transcript was prepared by Gibson Dunn's word-processing department, "GDCIP." On May 18, 2020, Plaintiffs filed a motion requesting the Court's leave to file an .M4A file of the recording (Dkt. 45), which the Court granted on May 19, 2020 (Dkt. 47).

18. Attached hereto as **Exhibit 10** is a true and correct copy of a spreadsheet recovered from the Recycle Bin of the work laptop Amazon had issued to former Amazon TM Casey Kirschner. The spreadsheet references transactions described "Shaw Rd.," "Quail Ridge," "Manassas," "Lerner," "Route 50," and "DTC." The referenced fees on these transactions total $37.1 million, and the spreadsheet indicates that a total "Share" to its

author was expected to be approximately $14.5 million. Several of the names of the transactions referenced on the spreadsheet relate to Northstar-affiliated Amazon Virginia Lease Transaction sites.

19. Attached hereto as **Exhibit 11** is a true and correct copy of a spreadsheet sent by, on information and belief, Tim Lorman to IPI in or around February 2020 showing nine separate entries of payments to "Villanova Trust" that substantially corroborates **Exhibit 31**, the spreadsheet sent by Informant 1 to Amazon in January 2020. The amounts, dates, and descriptions of the first seven entries in **Exhibit 11** are identical to the amounts, dates, and descriptions of the seven payment entries in **Exhibit 31**. The eighth entry in **Exhibit 11** lists an "Amount" of 150,000.00 for "Final Dulles Leasing Fee." The ninth entry lists an "Amount" of 321,028.44 for "Manassas Leasing Fee." The amounts and dates of the eighth and ninth entries are identical to the amounts and dates reflected in the wire payments of June 7, 2019, and August 7, 2019, respectively. *See* **Exhibit 14**; **Exhibit 30**.

20. Attached hereto as **Exhibit 12** is a true and correct copy of a complaint the United States filed in this District and Division on June 1, 2020 in *United States v. Real Property and Improvements Known as 35 Queensland Lane North, Plymouth, Minnesota 5547*, Case No. 1:20-cv-613 (E.D.V.A. June 10, 2020). The complaint explains that the United States "brings th[e] action *in rem* seeking the forfeiture of all right, title, and interest in real property and improvements known as 35 Queensland Lane North, Plymouth, Minnesota 5547."

21. Attached hereto as **Exhibit 13** is a true and correct copy of the "About Us" page on Northstar's website, available at https://www.northstarcommercialpartners.com/about/. The website page was downloaded on April 22, 2020.

22. Attached hereto as **Exhibit 14** is a true and correct copy of an August 7, 2019 wire receipt provided by, on information and belief, Tim Lorman to IPI in or around February 2020, and on information and belief reveals where Villanova Trust assets were at some point likely located, at least in part. As with the wire receipt attached as **Exhibit 30** hereto, the instant wire receipt lists the "Originator Name" as "W D C HOLDINGS LLC," the "Beneficiary Bank" as "First Tennessee Bank," and the "Beneficiary" as "Villanova Trust" at "16 Compton Trace Nashville, TN," although this address may be outdated. The wire receipt lists a total "Amount" of $321,028.44 and lists as "Beneficiary Info" "Manassas Leasing Fee."

23. Attached hereto as **Exhibit 15** is a true and correct copy of an October 2017 email exchange between former Amazon TM Casey Kirschner and Brian Watson documenting facts that further support personal jurisdiction.

24. Attached hereto as **Exhibit 16** is a true and correct copy of a July 26, 2017 email exchange between former Amazon TM Casey Kirschner and Brian Watson in which Kirschner tells Watson: "I look forward to seeing you out here as well. Carl [Nelson] and I will be ready for you."

25. Attached hereto as **Exhibit 17** is a true and correct redacted copy of a Northstar spreadsheet itemizing purported Northstar costs on its Manassas Lease Transaction deals with Amazon. On the lower right-hand side of the spreadsheet is calculated a "Leasing Fee" of $1,656,148, which approximates the $1.6 million Leasing "Commission" the author of **Exhibit 10** had projected for the Manassas Lease Transaction deals.

26. Attached hereto as **Exhibit 18** is a true and correct copy of Amazon's Code of Business Conduct and Ethics, which on information and belief is current as of the date of this declaration, and bears a last-revised date of last revised on January 15, 2019.

27. Attached hereto as **Exhibit 19** is a true and correct copy of an August 2017 email exchange between former Amazon TM Casey Kirschner and Brian Watson in which the two individuals discuss plans to meet in Seattle, Washington on August 24, 2017.

28. Attached hereto as **Exhibit 20** is a true and correct copy of an August 2017 email exchange between former Amazon TM Casey Kirschner and Brian Watson's Executive Assistant, showing that the Executive Assistant made dinner reservations for Casey Kirschner and Brian Watson for 6:30 p.m. PST, August 24, 2017, at Daniel's Broiler, a restaurant in Seattle, Washington.

29. Attached hereto as **Exhibit 21** is a true and correct copy of the Declaration of Timothy Lorman in support of Plaintiffs' Supplemental Memorandum in Support of Show Cause Order and Plaintiffs' Application for Preliminary Injunction, which Plaintiffs filed in this case on May 18, 2020 in support of Plaintiffs' Application for Preliminary Injunction that the Court granted on June 5, 2020 (Dkt. 57).

30. Attached hereto as **Exhibit 22** is a true and correct redacted copy of a spreadsheet created by Amazon in or around February 2020 documenting details of the following nine Lease Transactions Amazon has executed with Northstar-affiliated landlords:

| Lease # | Landlord Entity | Date Executed |
|---|---|---|
| 1 | Dulles NCP LLC | February 27, 2018 |
| 2 | Dulles NCP LLC | February 27, 2018 |
| 3 | Quail Ridge NCP, LLC | April 6, 2018 |
| 4 | Quail Ridge NCP, LLC | April 6, 2018 |
| 5 | Quail Ridge NCP, LLC | April 6, 2018 |
| 6 | Quail Ridge NCP, LLC | April 6, 2018 |
| 7 | Manassas NCP LLC | November 1, 2018 |
| 8 | Manassas NCP LLC | November 1, 2018 |
| 9 | Dulles NCP II | January 13, 2020 |

31. Attached hereto as **Exhibit 23** is a true and correct redacted copy of Northstar's response to the September 8, 2017 RFP attached as **Exhibit 5**.

32. Attached hereto as **Exhibit 24** is a true and correct redacted copy of the agreement for Lease #9, executed between Amazon and Northstar-affiliated landlord Dulles NCP II, LLC on January 13, 2020. On information and belief, the agreements for Leases #1, 2, 3, 4 5, 6, 7, and 8—referenced herein and in Plaintiffs' Verified First Amended Complaint—are substantially similar in relevant respects to **Exhibit 24**.

33. Attached hereto as **Exhibit 25** is a true and correct copy of the unexecuted version of the January 8, 2018 referral agreement between Northstar and Villanova Trust provided by, on information and belief, Informant 1 to Amazon in January 2020.

34. Attached hereto as **Exhibit 26** is a true and correct copy of a January 2018 email exchange discussing the formation of Dulles NCP, LLC.

35. Attached hereto as **Exhibit 27** is a true and correct copy of a public record indicating that Quail Ridge NCP, LLC was incorporated in Delaware on January 17, 2018. The copy was obtained from the website of the Delaware Department of State's Division of Corporations, https://icis.corp.delaware.gov/Ecorp/EntitySearch/NameSearch.aspx.

36. Attached hereto as **Exhibit 28** is a true and correct copy of a public record indicating that Manassas NCP, LLC was incorporated in Delaware on May 16, 2018. The copy was obtained from the website of the Delaware Department of State's Division of Corporations, https://icis.corp.delaware.gov/Ecorp/EntitySearch/NameSearch.aspx.

37. Attached hereto as **Exhibit 29** is a true and correct copy of a public record indicating that Dulles NCP II, LLC was incorporated in Delaware on June 6, 2018. The copy was obtained from

the website of the Delaware Department of State's Division of Corporations, https://icis.corp.delaware.gov/Ecorp/EntitySearch/NameSearch.aspx.

38. Attached hereto as **Exhibit 30** is a true and correct copy of a June 7, 2019 wire receipt provided by, on information and belief, Tim Lorman to IPI in or around February 2020 and on information and belief reveals where Villanova Trust assets were at some point likely located, at least in part. The wire receipt lists the "Originator Name" as "W D C HOLDINGS LLC," the "Beneficiary Bank" as "First Tennessee Bank," and the "Beneficiary" as "Villanova Trust" at "16 Compton Trace Nashville, TN," although this address may be outdated. The wire receipt lists a total "Amount" of $150,000 and lists as "Beneficiary Info" "Dulles Final Leasing Payment."

39. Attached hereto as **Exhibit 31** is a true and correct copy of a spreadsheet provided by, on information and belief, Informant 1 to Amazon in January 2020 showing seven separate entries of payments to "Villanova Trust." The first entry lists an "Amount" of 50,000.00 for "Referral Fee Sterling." The second entry lists an "Amount" of 382,500.00 for "Quail Ridge Lease Commission." The third entry lists an "Amount" of 281,350.00 for "Dulles Lease Commission." The fourth entry lists an "Amount" of 1,447,614.50 for "Quail and Dulles Paid in Full." The fifth entry lists an "Amount" of 1,297,011.18 for "Quail Development & Leasing fee." The sixth entry lists an "Amount" of 122,319.64 for "Manassas Development Fee." The seventh entry lists an "Amount" of 1,061,160.08 for "Dulles Leasing Fee/Manassas Leasing-Dev Fee."

40. Attached hereto as **Exhibit 32** is a true and correct copy of the Declaration of Luke Gilpin in support of Plaintiffs' Supplemental Memorandum in support of Show Cause Order and Plaintiffs' Application for Preliminary Injunction, which Plaintiffs filed in this case on May 18, 2020 (Dkt. 46) in support of Plaintiffs' Application for Preliminary Injunction that the Court granted on June 5, 2020 (Dkt. 57).

41. **Exhibit 33** has been intentionally left blank.

42. Attached hereto as **Exhibit 34** are true and correct copies of the following documents referenced in Plaintiffs' Verified First Amended Complaint:

a. Termination Notices by Dulles NCP LLC, Quail Ridge NCP LLC, Manassas NCP LLC, and Dulles NCP II LLC to Northstar Healthcare Development terminating their respective development agreements;

b. Termination Notices by Dulles NCP LLC, Quail Ridge NCP LLC, Manassas NCP LLC, and Dulles NCP II LLC to Northstar Commercial Partners Management terminating their respective management agreements;

c. Written Consent of the Board of Managers of Dulles NCP LLC, Dulles NCP II LLC, Quail Ridge NCP LLC, and Manassas NCP LLC to remove all Northstar officers; and

d. Notices to Amazon of Change of Landlord by Dulles NCP LLC, Dulles NCP II LLC, Manassas NCP LLC, and Quail Ridge NCP LLC.

43. Attached hereto as **Exhibit 35** is a true and correct copy of an April 2, 2020 letter from IPI NSIPI Data Center Holdings, LLC ("IPI NSIPI") to Brian Watson, NSIPI Administrative Manager, LLC, Sterling NCP FF, LLC, and Manassas NCP FF, LLC. The letter states, among other things, that IPI NSIPI had "identified conduct of NSIPI Administrative Manager and the Principal," Brian Watson, "constituting gross negligence, willful misconduct, and/or fraud, which have resulted in, and continue to result in, material damages to the Company and its Subsidiaries, including the Principal's causing of the gross negligence, willful misconduct, and/or fraud of NSIPI Administrative Manager." The letter also states that "NSIPI Administrative Manager and its applicable affiliates are in breach of the Management and Services Agreements between the subsidiaries of the Company and

NSIPI Administrative Manager (or such affiliates) as a result of its gross negligence, willful misconduct, and/or fraud thereunder, for which no cure period is available under the Management and Services Agreements." The letter states that "IPI NSIPI hereby immediately removes NSIPI Administrative Manager as the Administrative Manager of the Company" and "Elect[s] Additional Remedies."

44. Attached hereto as **Exhibit 36** is a true and correct copy of a December 2018 email exchange provided, on information and belief, by Informant 1 to Amazon in or around January 2020, in which Brian Watson requests that an employee of Northstar provide "the template referral agreement" and itemized referral fees for Northstar's "top 10 referral partners," including Christian Kirschner, trustee of Villanova Trust. The Northstar employee informs Watson that "V illanova [sic] Trust" had received "$50,000." Watson then requests "the total amount of fees we have paid to Villanova, or ALL fees . . . . Leasing, sales, development, etc." A Northstar employee responds that Northstar had paid $4,641,955.40 to "Villanova."

45. Attached hereto as **Exhibit 37** is a true and correct redacted copy of the Purchase Agreement Amazon executed with NOVA WPC, LLC for the purchase of 89.797 acres of land located in Loudoun County, Virginia purchased by White Peaks Capital LLC from 41992 John Mosby Highway LLC. The Purchase Agreement reflects a purchase price of $116,389,000.00.

46. Attached hereto as **Exhibit 38** is a true and correct copy of an August 20, 2019 article by Michael Neibauer published on the *Washington Business Journal*'s website, updated on August 21, 2019, entitled, *How do you turn $20M into $100M in one year? It's not complicated, but it involves Amazon.*, available at https://www.bizjournals.com/washington/news/2019/08/20/how-do-you-turn-20m-into-100m-in-one-year-its-not.html.

47. Attached hereto as **Exhibit 39** is a true and correct redacted copy of a Special Warranty Deed executed between Amazon and NOVA WPC, LLC stating that NOVA WPC, LLC "does hereby grant, bargain, sell and convey in fee simple" a parcel of land "comprising 89.797 acres of land" to Amazon.

48. Attached hereto as **Exhibit 40** is a true and correct copy of wire transfer instructions dated October 31, 2016, which on information and belief reveal where Northstar assets are likely located, at least in part. The instructions document a payment of $4,000 from "WDC Holdings LLC dba Northstar Commercial Partners" and lists a "Checking" "Account Number" of "********4" (redaction added), an address of 1999 Broadway, Suite 770, Denver, Colorado, and a phone number of 303-893-9500. Furthermore, **Exhibits 14** and **30** indicate that payment was made from "W D C Holdings LLC," aka Northstar, from a bank account number whose last four digits are identical to those identified in **Exhibit 40**. **Exhibits 14** and **30** also list "Citywide Banks P.O. Box 128 Denver CO 80202" in their margins.

49. Attached hereto as **Exhibit 41** is a true and correct redacted copy of "Wire Instructions," which on information and belief reveal bank account information for Manassas NCP FF, LLC. Counsel for Amazon received the instructions in April 2020 after Tim Lorman sent them to IPI. The instructions (redaction added) provide as follows:

> Citywide Banks
> 1801 Larimer, Suite 100
> Denver, CO 80202
> ABA/Routing: ********3
> Account Name: **Manassas NCP FF, LLC**
> Address: 1999 Broadway, Suite 770, Denver, CO 80202
> Account #: **********2**
> Phone: 303-365-3808 Citywide Banks
> Fax: 303-365-3801 Citywide Banks
> RE: (*investor your name*)

50. Attached hereto as **Exhibit 42** is a true and correct redacted copy of wire transfer instructions, which on information and belief reveal bank account information for Sterling NCP FF, LLC. Counsel for Amazon received the instructions in April 2020 after Tim Lorman sent them to IPI. The instructions (redaction added) provide as follows:

> Citywide Banks
> 1801 Larimer, Suite 100
> Denver, CO 80202
> ABA/Routing: ********3
> Account Name: **Sterling NCP FF, LLC**
> Address: 1999 Broadway, Suite 770, Denver, CO 80202
> Account #: **********7**
> Phone: 303-365-3808 Citywide Banks
> Fax: 303-365-3801 Citywide Banks
> RE: (*investor your name*)

51. Attached hereto as **Exhibit 43** is a true and correct copy of a March 10, 2020 email from Carleton Nelson to an individual associated with Amazon in which Nelson tells the individual to "find attached site proposal for your review" and identifies himself as "Principal" of "Cheshire Ventures."

52. Attached hereto as **Exhibit 44** is a true and correct copy of the attachment to the email referenced in **Exhibit 43**. The attachment is a five-page flyer titled "Site Proposals KNOXVILLE, TN" that contains the stamp "ALLCORE Acquisitions & Development" on the top-right corner of each page.

53. Attached hereto as **Exhibit 45** is a true and correct copy of a letter sent on May 26, 2020, by Chris Flood, an attorney at Flood & Flood, and counsel for Christian Kirschner (trustee of the Villanova Trust), to Elizabeth Papez and Patrick Stokes, counsel for Plaintiffs. In the letter, Flood writes that "Christian Kirschner . . . is cooperating with the government in its ongoing investigation into the events referenced in your complaint." Flood also writes that "Villanova Trust is not in

possession of any Amazon confidential or non-public proprietary information" and "has no monetary assets in its possession or control."

54. Attached hereto as **Exhibit 46** is a true and correct copy of "Settlement Instructions" for White Peaks Capital LLC's purchase of land from 41992 John Mosby Highway LLC. The Instructions direct funds to be disbursed "by wire for placement in [a] qualified exchange escrow account."

55. Attached hereto as **Exhibit 47** is a true and correct redacted copy of an April 22, 2019 contract of sale between White Peaks Capital LLC and 41992 John Mosby Highway LLC for the purchase of 89.797 acres of land located in Loudoun County, Virginia at a price of $98,670,000.00.

56. Attached hereto as **Exhibit 48** is a true and correct copy of an amendment to the contract of sale identified in **Exhibit 47** "amend[ing] and extend[ing]" the closing date "so that the Closing will occur on or before July 31, 2019."

57. Attached hereto as **Exhibit 49** is a true and correct copy of a January 16, 2020 email Carleton Nelson sent from an email account associated with "Cheshire Ventures" to Casey Kirschner.

58. Attached hereto as **Exhibit 50** is a true and correct copy of Rodney C. Atherton's Bar license information including disciplinary actions arising from ethics violations. This information states that Atherton was previously suspended from practice from November 15, 2013, to February 25, 2014, due to violations of five separate Colorado Rules of Professional Conduct in connection with financial transactions.

59. Attached hereto as **Exhibit 51** is a true and correct copy of *People v. Rodney C. Atherton*, 13PDJ037, November 7, 2013: Atherton's admission of misconduct. Atherton admitted to

"represent[ing] clients with conflicting interests" and failing to disclose his conflicts. Atherton also "structured a company managed by his brother, but intentionally did not inform the investors, one of whom was also a client, that this brother had previously been accused of mismanaging" and that he suspected his brother had stolen money from the company.

60. Attached hereto as **Exhibit 52** is a true and correct copy of public notices of forfeiture by the FBI of property owned by Atherton that was seized pursuant to federal forfeiture laws.

61. **Exhibit 53** has been intentionally left blank.

62. **Exhibit 54** has been intentionally left blank.

63. Attached hereto as **Exhibit 55** is a true and correct copy of Amazon's Spending and Transaction Policy, which was [REDACTED] This document is Confidential and subject to Protective Order and so has been filed under seal.

64. Attached hereto as **Exhibit 56** is a true and correct copy of the Confidentiality, Noncompetition, and Invention Assignment Agreement ("CNIAA"), which [REDACTED]. This agreement states that [REDACTED] and that [REDACTED] For example, [REDACTED]

65. Attached hereto as **Exhibit 57** is a true and correct copy of the Confidentiality, Noncompetition and Invention Assignment Agreement ("CNIAA"), which Carl Nelson, as an

employee, and Amazon.com, Inc., as the employer, signed on April 2, 2012. The agreement states that Nelson is "entering into this Agreement . . . as a condition of [his] employment" with Amazon, that his employment constitutes "consideration" for the "mutual promises" in the Agreement, and that he "recognizes that the restrictions set forth in Sections 2 and 3 of t[he] Agreement may seriously limit [his] future flexibility in many ways," including by "mak[ing] it impossible for ]him] to seek or accept certain opportunities for a period of 18 months after [his] Termination Date."

66. Attached hereto as **Exhibit 58** is a true and correct copy of a Receipt for Deposit received from Blueridge Group, LLC, and what appears to be the cover email to the same. The cover email copies "Carleton Nelson" who is associated in an earlier email in the chain with the email address, "Cheshireventures@outlook.com".

67. Attached hereto as **Exhibit 59** is a true and correct copy of email correspondence addressed to Casey Kirschner, among others, attaching the scanned document at **Exhibit 58**.

68. Attached hereto as **Exhibit 60** is a true and correct copy of public notices of forfeiture by the FBI of property owned by Casey Kirschner, Carl Nelson, and Cheshire Ventures that was seized pursuant to federal forfeiture laws.

69. Attached hereto as **Exhibit 61** is a true and correct copy of the Confidential Settlement Agreement and General Release between [redacted] . This agreement [redacted] . In the Agreement, [redacted] . This document has been marked as Confidential by Defendants and so has been filed under seal pursuant to Protective Order.

70. Attached hereto as **Exhibit 62** is a true and correct copy of an Assignment of Membership Interest [REDACTED] [REDACTED]. This document has been marked as Confidential by Defendants and so has been filed under seal pursuant to Protective Order.

71. Attached hereto as **Exhibit 63** is a true and correct copy of a Due Diligence report for the Blueridge Property. The report was sent to Casey Kirschner by Johnny Lim on May 14, 2019, and submits a "Proposal to provide engineering services" for that property.

72. Attached hereto as **Exhibit 64** is a true and correct copy of an e-mail chain starting on November 27, 2018, and ending on November 28, 2018, with the subject line "Arcola Site." The e-mail chain includes Kyle Ramstetter, Casey Kirschner, and Johnny Lim. This e-mail chain discusses the Blueridge Transaction located in Loudon County, VA. The e-mail indicates that Ramstetter used his Northstar e-mail address to communicate with Casey Kirschner to discuss the deal.

73. Attached hereto as **Exhibit 65** is a true and correct copy of the executed Right Of First Offer/Right of First Refusal Agreement between [REDACTED] [REDACTED]. The document [REDACTED] [REDACTED] This document is Confidential and subject to Protective Order and so has been filed under seal.

74. Attached hereto as **Exhibit 66** is a true and correct copy of the executed Memorandum of Right Of First Offer/Right of First Refusal [REDACTED] [REDACTED]. The document [REDACTED] [REDACTED]. This document is Confidential and subject to Protective Order and so has been filed under seal.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on September 18, 2020.

Lora E. MacDonald