# EXHIBIT 24

# PART 1

CONFIDENTIAL

# DEED OF LEASE

[IAD175]
[Sterling, VA]

THIS DEED OF LEASE (this "Deed of Lease") is entered into as of the Effective Date (defined below), between DULLES NCP II, LLC, a Delaware limited liability company ("Landlord"), and AMAZON DATA SERVICES, INC., a Delaware corporation ("Tenant").

| | |
|---|---|
| **Premises:** | All of that certain building, to be constructed, consisting of approximately 170,000 square feet (the "Building"), as depicted on **Exhibit A** hereto, together with the land where the Building is to be located, said land also being depicted on **Exhibit A** hereto and legally described on **Exhibit A-1** hereto (the "Land"), and all other improvements located on the Land. |
| **Park:** | N/A |
| **Tenant's Proportionate Share:** | 100% |
| **Deed of Lease Term:** | Beginning on the Commencement Date (defined below) and ending on the last day of the 180th full calendar month after the Commencement Date, subject to Tenant's rights to extend or terminate the Deed of Lease Term as provided herein; provided that if the Deed of Lease Term is set to expire between October 1 and March 30, the Deed of Lease Term will extend through March 31 (the "Optional Holiday Extension") unless Tenant opts out of the Optional Holiday Extension by providing notice to Landlord within the same period of time Tenant would have had to provide its Extension Notice as defined and further described in **Extension Options, Addendum 3**. Base Rent for the Optional Holiday Extension will be the Base Rent for the then-current Deed of Lease Term, increased by the annual percentage increase as shown on **Base Rent, Addendum 1**. |
| **Base Rent:** | See **Addendum 1** |
| **Initial Annual Estimated Operating Expense Payments:** (estimates only and subject to adjustment to actual costs and expenses according to the provisions of this Deed of Lease) | ■ |
| **Brokers:** | N/A |
| **Landlord Work and Tenant Improvements** | As defined in **Addendum 4** |
| **Permitted Exceptions:** | The conditions, restrictions, easements and encumbrances affecting the Land and filed of record on the date of this Deed of Lease in Loudoun County, Virginia as identified in **Exhibit B** hereto, and any additional matters permitted by Tenant pursuant to Section 1(a) below. |
| **Addenda:** | 1. Base Rent<br>2. Intentionally Omitted<br>3. Extension Options<br>4. Work Letter |

1

42554309.16

CONFIDENTIAL

**Exhibits:**
|   |   |
|---|---|
| A. | Site Plan for Premises |
| A-1. | Legal Description of Land |
| B. | Permitted Exceptions |
| C. | Form of Notice of Deed of Lease Term Dates |
| D. | Form of Estoppel Certificate |
| E. | Form of Memorandum of Deed of Lease |
| F. | Form of Right of First Offer/Right of First Refusal Agreement |
| G. | Form of Amended and Restated Declaration |
| H. | Form of Parent Guaranty |
| I. | Tenant Competitors |
| J. | Data Center Equipment |
| K. | Maintenance Obligations |
| L. | Form of Completion Guaranty |
| M. | Form of SNDA |

1. **Granting Clause; Commencement Date; Notice of Deed of Lease Term.**

   (a) <u>Grant</u>. In consideration of the obligation of Tenant to pay rent as herein provided and in consideration of the other terms, covenants, and conditions hereof, Landlord leases to Tenant, and Tenant takes from Landlord, the Premises, to have and to hold for the Deed of Lease Term, including an exclusive right to use all parking, yard and other areas associated with the Premises and all easements and rights benefiting the Premises, all subject to the Permitted Exceptions and the terms, covenants and conditions of this Deed of Lease. Landlord shall promptly provide Tenant with copies of all notices received by Landlord pursuant to the Permitted Exceptions. Landlord shall neither permit nor voluntarily further encumber the Premises or modify any of the Permitted Exceptions, which would materially affect Tenant's use or business operations or increase Tenant's costs without Tenant's prior consent.

   (b) <u>Commencement Date; Notice of Deed of Lease Term</u>. The "<u>Commencement Date</u>" shall be the earlier of (i) date of Substantial Completion (as defined in Addendum 4) or (ii) the Early Access Date (as defined in Addendum 4). Within ten (10) business days following the Commencement Date, Landlord and Tenant shall execute a Notice of Deed of Lease Term Dates memorandum in the form attached hereto as **Exhibit C**, setting forth the Commencement Date, the rentable square footage of the Building and expiration date of this Deed of Lease. If the Premises are remeasured as provided for in Section 4 below, Landlord and Tenant agree to execute an amendment to the Notice of Deed of Lease Terms Dates to reflect the new measurement of the Premises within ten (10) Business Days of receipt of such information. The Deed of Lease Term for purposes of Section 365(h)(1)(A)(ii) of Chapter 11 of the United States Bankruptcy Code or any similar federal or state legislation shall commence upon complete execution of this Deed of Lease but measurement of its duration and the time for the performance of the obligations of the parties hereto shall be governed by the other provisions of this Deed of Lease.

2. **Acceptance of Premises; Acquisition Contingency; Subdivision**.

   (a) <u>Acceptance of Premises</u>. Without limiting any of Landlord's obligations, representations or warranties under this Deed of Lease, Tenant shall accept the Premises in its condition as of the final completion of the Landlord Work by Landlord (the "<u>Acceptance Date</u>"), provided that Landlord shall cause the Premises to conform to the delivery obligations as set forth in <u>Addendum 4</u> and to be in good order and good operating condition and in compliance with all applicable Legal Requirements (as defined below) as of the Acceptance Date. Landlord represents and warrants to Tenant as of the date of this Deed of Lease that (a) it has the full right and power to execute this Deed of Lease and to perform this Deed of Lease and to grant and convey the estate demised herein, (b) it owns the Building and the Land in fee simple, subject only to the Permitted Exceptions, (c) the Building is not and will not be located on a tax parcel with any other building (or any other land other than the Premises), (d) there are no zoning, title or other restrictions which in any way prohibit or limit the use of the Premises for the Permitted Uses and that such uses are permitted at the Premises under applicable zoning regulations, (e) to Landlord's actual knowledge, the Premises are not located in a 100-year or 500-year flood plain, (f) the Land constitutes a single legal lot incompliance with all applicable subdivision laws, (g) Loudoun County, Virginia is the

2

CONFIDENTIAL

only jurisdiction having permitting authority over the Landlord Work, (h) upon completion of the Landlord Work, there will be no alterations, improvements, or additions to the Building or the Land required for the issuance of a certificate of occupancy for the Premises, (i) Landlord is not aware of and has not received notice of any newly enacted, pending, proposed or threatened Legal Requirements, condemnation, proceeding or litigation which would in any way prevent or inhibit the use of the Premises by Tenant as contemplated by this Deed of Lease or that the Premises is not in compliance with Legal Requirements or Permitted Exceptions, (j) pursuant to local codes, Tenant may use up to 113,464 gallons per day of water without the need to pay any additional "tap fee," "access fee" or other similar charge other than the utility's ordinary usage charges, and (k) no Restricted Party (defined in Section 17(e) below) or individual or entity that has a direct or indirect controlling interest in a Restricted Party, has a direct or indirect controlling interest in Landlord or any entity that controls Landlord.   During the Deed of Lease Term, Landlord will not take, or permit any of its employees, agents, contractors or affiliates to take, any action that would result in (w) the Building being located on a tax parcel with any other building without Tenant's consent, (x) the Land not constituting a single legal lot in compliance with all applicable subdivision laws on and after the Effective Date, (y) any law, code, regulation or ordinance prohibiting or limiting use of the Premises for the Permitted Uses, and/or (z) any reduction in the gallons per day of water that Tenant may use without the need to pay any tap fee, access fee or other similar charge other than the utility's ordinary usage charges. Landlord shall notify Tenant within ten (10) days of Landlord becoming aware that any representation or warranty is no longer true and correct. Landlord shall execute a title company owner's affidavit in a form reasonably acceptable to Landlord in connection with any leasehold title insurance obtained by Tenant. Landlord represents and warrants to Tenant that it has delivered to Tenant complete copies of any zoning reports relating to the Premises or the Land in Landlord's possession or control, Landlord's most recent title policy or commitment for the Premises and copies of all Permitted Exceptions. Landlord represents and warrants to Tenant that it has delivered complete copies of the following documents and materials, to the extent they are in Landlord's possession, if any: (a) all environmental reports, geotechnical studies, soil reports, utility letters, site plans and surveys relating to the Land within Landlord's possession or control, (b) all documents evidencing the zoning classification of the Land and any parts thereof, and all conditions and restrictions with respect to such zoning, (c) a complete copy of Landlord's title insurance policy for the Land and any parts thereof, including documents evidencing the exceptions set forth in such policy, (d) a complete copy of Landlord's most current land survey(s) of the Land and any parts thereof, (e) ad valorem tax bills, notices, appraised valuations, protests, to the extent within Landlord's possession or control, (f) any access rights or easements with respect to the Land, whether recorded or unrecorded, (g) any notices or correspondence from or to public authorities regarding the Land, and renderings for the past three years with respect to the Land, (h) all licenses, permits, and approvals affecting the Premises (together with any proposed license, permits or approvals affecting the Premises submitted by Landlord or, to the extent in Landlord's possession, any other party, to any governmental entity with jurisdiction over the Premises and any comments or correspondence with such entity pertaining thereto).

(b)     Amended and Restated Declaration.  Landlord and Tenant acknowledge that the Premises are subject to that certain Declaration of Easements, Use Restriction and Related Agreements recorded in the real property records of Loudoun County, Virginia on March 8, 2018 at Reception No. 20180308-0012967 (the "Original Declaration"), as amended by that certain First Amendment to Declaration of Easements, Use Restriction and Related Agreements recorded in the real property records of Loudoun County, Virginia on August 3, 2018 at Reception No. 20180803-0045301 (the "First Amendment to Declaration"). Landlord and Tenant acknowledge that the following parcels also are subject to the Original Declaration and the First Amendment to Declaration: (i) the real property and improvements described in that certain Deed of Lease dated February 28, 2018 between Dulles NCP, LLC and Tenant related to IAD 144 (as amended, the "IAD 144 Premises") and (ii) the real property and improvements described in that certain Deed of Lease dated February 28, 2018 between Dulles NCP, LLC and Tenant related to IAD 145 (as amended, the "IAD 145 Premises"). Following the date of this Lease but prior to Substantial Completion, Landlord and Dulles NCP, LLC shall record an Amended and Restated Declaration of Easements, Use Restriction and Related Agreements with regard to the Premises, the IAD 144 Premises and the IAD 145 Premises (the "Declaration"), in form reasonably approved by Tenant, which will (A) provide for easements for access, utilities, storm water facilities and other necessary uses in order for Tenant to operate the Premises, the IAD 144 Premises and the IAD 145 Premises; and (B) provide that the Declaration may not be amended or modified without Tenant's prior written consent, which shall not be unreasonably withheld or delayed. Landlord shall deliver a copy of the draft Declaration to Tenant for Tenant's prior approval, not to be

3

42554309.16

CONFIDENTIAL

unreasonably withheld or delayed. Upon the recording of the Declaration with Tenant's approval given pursuant to this Section, the Declaration shall constitute a Permitted Exception hereunder.

   (c) <u>Declaration Terms</u>. Landlord agrees as follow with regard to the Declaration:

    (i) The "Tenant" under the Declaration shall mean a tenant of Parcel A-2A1, Parcel A-2B1 and/or Parcel A-2C (as said parcels are defined in the Declaration), and their respective successors and assigns;

    (ii) So long as this Lease is in effect, Landlord will not designate any other party besides the Tenant under this Lease as "Tenant" under the Declaration;

    (iii) At Tenant's written request, Tenant will be the designated Owner pursuant to Section 2.3(a) of the Declaration;

    (iv) Landlord will not amend or modify the Declaration without Tenant's consent, which consent shall not be unreasonably withheld, conditioned or delayed, if the amendment or modification would affect Tenant's rights or obligations under the Declaration other than in a *de minimis* manner;

    (v) Landlord will not exercise or waive any of its rights under the Declaration (including making any rules or regulations per the Declaration and approving the budgets) without the prior written consent of Tenant, which consent shall not be unreasonably withheld, conditioned or delayed;

    (vi) Landlord will enforce this Agreement at Tenant's request so long as such request is reasonable under the circumstances;

    (vii) Tenant is a third party beneficiary of the rights under the Declaration;

    (viii) Landlord will give Tenant copies of any notices given or received under the Declaration; and

    (ix) Landlord will cooperate with Tenant in locating the location of the easement area referenced in Section 3.4(b) of the Declaration in an area reasonably required by Tenant.

   (d) <u>Access Easement Agreement</u>. Following the date of this Lease but prior to Substantial Completion, Landlord, Dulles NCP, LLC and DIP Building One, LLC (as the owner of property adjacent to the Land) shall enter into and record a Deed of Vacation and Easement and Maintenance Agreement (the "<u>Access Easement Agreement</u>"), in form reasonably approved by Tenant, which will, among other things, (A) vacate and release an existing easement over ███████████ (B) confirm, grant and convey easements for ingress and egress and the installation and maintenance of underground utilities for the benefit of the parcels subject to the Access Easement Agreement, and (C) provide for the future maintenance, repair and upkeep of a certain portion of ███████ as relocated and reestablished in the Access Easement Agreement. Landlord shall deliver a copy of the draft Access Easement Agreement to Tenant for Tenant's prior approval, not to be unreasonably withheld or delayed. Upon the recording of the Declaration with Tenant's approval given pursuant to this Section, the Access Easement Agreement shall constitute a Permitted Exception hereunder.

  3. <u>Use</u>.

   (a) <u>Permitted Uses</u>. The Premises shall be used for the operation of a network operations center and computer data center, including (i) the storage, assembly, installation, operation, maintenance and repair of equipment used in a networking operations and computer data center, including the equipment listed on **Exhibit J** ("<u>Data Center Equipment</u>"), (ii) general office use, and (iii) other ancillary and related uses and for any other use in compliance with Legal Requirements (all of the above being individually a "<u>Permitted Use</u>" and collectively "<u>Permitted Uses</u>"). Nothing herein will require Tenant to conduct any business from the Premises. Subject to Legal Requirements, Tenant shall be permitted to have trucks and trailers used in Tenant's business operations enter, operate in and/or drive through the Building for the purpose of loading and unloading Tenant's Property. Tenant's use of the Premises shall be in a safe and proper manner and will not commit waste, overload the floor or structure of the Building or subject the Premises to any use that would damage the Premises beyond reasonable wear and tear. Subject to Legal Requirements, Tenant shall be permitted to park trucks and trailers used in Tenant's business operations at the truck docks and in Tenant's Parking Areas (as defined in Section 14), provided such trucks and trailers are at all times in operable condition. Subject to Legal Requirements, storage of Tenant's Property is permitted in any location upon the Premises for a period not to exceed forty-five (45) consecutive days. Subject to

4

CONFIDENTIAL

Legal Requirements, Tenant may install and operate modular data center equipment in or adjacent to the Building within the exterior portions of the Premises depicted on **Exhibit A** ("Equipment Area") or in Tenant's Parking Areas. Tenant may use the Premises, the Equipment Area and the Tenant Parking Areas twenty-four (24) hours a day, seven (7) days a week, fifty-two (52) weeks a year.

(b)   Compliance with Legal Requirements. Subject to Landlord's obligations under this Deed of Lease, Tenant's use of the Premises shall be, at its sole expense, in compliance with all applicable federal, state, county and municipal statutes, ordinances, codes, rules, regulations and requirements (the "Legal Requirements") that are applicable only by reason of Tenant's particular use of and operations at the Premises (as opposed to Legal Requirements applicable generally to projects in the area); provided, that (i) compliance with Legal Requirements does not obligate Tenant to perform Landlord's maintenance obligations as set forth in Section 10 or undertake any structural changes or structural improvements to the Premises and (ii) Tenant's obligations with respect to Hazardous Materials (as defined below) shall be governed by Section 30. Subject to the immediately preceding sentence, Landlord shall promptly comply with all Legal Requirements applicable to the Premises, regardless of whether compliance necessitates structural changes or structural improvements; provided that Landlord may contest, by appropriate legal proceedings, the validity or applicability of any Legal Requirements and Tenant shall reasonably cooperate in such contest; provided that such contest will not interfere (except to a de minimis extent) with Tenant's access to or use of the Premises. Tenant may contest, by appropriate legal proceedings, the validity or applicability of any Legal Requirements and Landlord shall reasonably cooperate in such contest.

4.   **Base Rent**. Tenant shall pay Base Rent in the amount set forth in the schedule of Base Rent attached hereto as Addendum 1. Notwithstanding anything to the contrary contained herein, with respect to the first payment of Base Rent, Landlord shall send Tenant an invoice on or after the Commencement Date specifying the amount of Base Rent then due, and Tenant shall pay the first payment of Base Rent ten (10) days after Tenant's receipt of Landlord's invoice. Landlord represents and warrants that the Building will be measured using the BOMA ANSI Z65.2 2012 for Industrial Buildings standard, which measurement Landlord shall cause to occur as part of Substantial Completion. Tenant may, within ninety (90) days after the Acceptance Date, elect to have Tenant's architect remeasure the Building; and, if Tenant disputes the results of Landlord's measurement of the Building, then Tenant shall notify Landlord of such objection within such ninety (90) day period, or Landlord's architect's measurement shall be deemed correct. Should Landlord and Tenant not agree with respect to the results of such measurement they shall jointly appoint an independent firm or person who is experienced in making such measurements whose determination as to the measurement of the Premises shall be final and binding upon the parties. If Landlord and Tenant are unable to agree on an independent firm or person to determine the measurement of the Premises, then each party will appoint an independent firm or person and those two firms or people will appoint a third firm or person to make the determination as to the measurement of the Premises. Landlord and Tenant shall share equally in the fees of such firm or person. Upon resolution of the measurement of the Building, all terms of this Deed of Lease dependent upon such measurement (e.g., Base Rent, Tenant's Proportionate Share) shall be amended to reflect the actual measurement of the Premises, retroactive to the Commencement Date, and any underpayment (or overpayment, as the case may be) resulting from any term of this Deed of Lease subject to adjustment pursuant to this Section shall be paid by the party owing the amount to the other party within thirty (30) days thereafter. Tenant promises to pay to Landlord in advance, without demand, deduction or set-off except as otherwise specifically provided under this Deed of Lease, monthly installments of Base Rent on or before the first Business Day of each calendar month beginning with the month in which Tenant's obligation to pay Base Rent commences as provided in Addendum 1. Payments of Base Rent for any fractional calendar month shall be prorated. All payments required to be made by Tenant to Landlord hereunder (or to such other party as Landlord may from time to time specify in a written notice to Tenant, which notice will not be effective until the thirtieth (30th) day after Tenant's receipt of such notice) shall be made by Electronic Funds Transfer of immediately available federal funds at such place within the continental United States as Landlord may from time to time designate to Tenant in writing in a written notice to Tenant (which notice will not be effective until the thirtieth (30th) day after Tenant's receipt of such notice. Tenant shall have no right at any time to abate, reduce, or set-off any rent due hereunder except as may be expressly provided in this Deed of Lease. "Rent" means Base Rent and any other amounts payable by Tenant under this Deed of Lease. Notwithstanding anything to the contrary contained herein, in no event during the initial Deed of Lease Term (but not subsequent extensions thereof) shall the annual Base Rent for any year be less than the annual Base Rent for such year as set forth on *Addendum 1*.

42554309.16

CONFIDENTIAL

If any installment of Rent actually due from Tenant to Landlord shall not be received by Landlord or Landlord's designee within five (5) days after Landlord gives Tenant notice that such Rent was not paid when due, Tenant shall pay Landlord a late charge equal to two and one-half percent (2½ %) of the delinquent installment of Rent actually due from Tenant. The parties agree that such late charge represents a fair and reasonable estimate of the costs Landlord will incur by reason of late payment by Tenant. Acceptance of such late charge by Landlord shall in no event constitute a waiver of Tenant's default with respect to such overdue amount, nor prevent Landlord from exercising any of the other rights and remedies granted hereunder.

5. **Intentionally Deleted.**

6. **Operating Expenses.**

(a) Payment of Operating Expenses. During each month of the Deed of Lease Term, on the same date that Base Rent is due, Tenant shall pay Landlord an amount equal to 1/12 of the annual cost, as reasonably estimated by Landlord (which estimate Landlord may revise not more than two times per calendar year and for which Landlord shall provide at least thirty (30) days' notice before such revision becomes effective), of Tenant's Proportionate Share of Operating Expenses (as defined below) payable for the Premises for the applicable calendar year. Payments thereof for any fractional year or calendar month shall be prorated. The first month's installment of the Initial Annual Estimated Operating Expense Payments shall be due and payable together with the first payment of Base Rent. Landlord shall apply such amount against Tenant's obligation to pay Operating Expenses in accordance with this Deed of Lease. The term "Operating Expenses" means, subject to the restrictions or specific allocations of cost set forth in this Section 6 and elsewhere in this Deed of Lease, all costs and expenses actually incurred by Landlord with respect to the maintenance of the Premises and the common area and other expenses and obligations payable by, or imposed upon, Landlord with respect to the Premises under the Declaration (including but not limited to those items listed on **Exhibit K** as "Landlord Maintenance Obligations – Operating Expenses (Recoverable)" consistent with maintenance that is commercially standard for similar type buildings in Loudoun County, VA, but excluding those items listed on **Exhibit K** as "Landlord Maintenance Obligations – Capital Improvements (Non-Recoverable)"); the Taxes (as defined below) and reasonable fees payable to tax consultants and attorneys for consultation and contesting Taxes; insurance (consistent with insurance for properties similar to the Premises in Loudoun County, Virginia); and property management fees payable to a property manager, including any affiliate of Landlord, not to exceed one percent (1%) of Base Rent.

(b) Operating Expense Exclusions. Notwithstanding anything to the contrary in this Deed of Lease, in no event shall Tenant have any obligation to perform, pay directly, or reimburse Landlord for any of the following items: (1) costs incurred in connection with the original construction or subsequent reconfiguration or upgrade of the Building or the Premises; (2) costs of correcting defects in the design or construction of the Building or the material used in the construction of the Building or Building systems (including latent defects), provided that for the purposes of this clause (2) conditions (not occasioned by design or construction defects) resulting from ordinary wear and tear and use shall not be deemed defects; (3) real estate brokers' commissions, renovations or tenant improvements, or other costs incurred for attracting tenants or with respect to other rentable area; (4) costs resulting from the gross negligence or willful misconduct of any Landlord Party (as defined below) or the default of Landlord under this Deed of Lease or any other agreement affecting Landlord or the Premises; (5) legal, accounting or professional fees and costs incurred in connection with lease negotiations, the audit of any Landlord financial materials and requests related to any assignment or sublease; (6) interest and principal payments or other amortization or depreciation charges on the Premises (including the Building systems and equipment) or the indebtedness of Landlord; (7) overhead and profit paid to subsidiaries or affiliates of Landlord for management or other services for supplies or other materials to the extent the amounts incurred are in excess of those which would have been reasonably incurred if such supplies or services were obtained from unrelated third parties; (8) voluntary contributions to any political or charitable persons or entities; (9) costs for the acquisition of sculpture, paintings or other art objects; (10) advertising, marketing and promotion costs; (11) costs associated with the operation of the corporation or other entity which constitutes Landlord, as distinguished from costs of operation of the Premises; (12) costs for which Landlord is entitled to reimbursement under warranties or by insurance companies, other tenants, or other third parties; (13) reserves; (14) costs incurred to investigate, remove, remediate, or respond to any claim related to Hazardous Materials (but Tenant's responsibility for Hazardous Materials brought onto the Premises by any Tenant Party (as defined below) shall be governed by Section 30); (15) costs of capital repairs or replacements (except for (i) the Base F/LS System Capital Costs and the HVAC Capital Costs (each as defined below)), except for (i) costs of repairing or replacing Building systems if necessary in order to comply with Legal

CONFIDENTIAL

Requirements adopted after the Commencement Date of this Deed of Lease and (ii) costs of repairs or replacements of Building systems that result in savings in other Operating Expenses, but only to the extent that the amortized annual amount of the cost of the repairs or replacements does not exceed the resulting savings in any calendar year; provided, that the costs of any capital repairs or replacements that are permitted to be included in Operating Expenses shall be amortized in equal monthly installments over their useful lives in accordance with generally accepted accounting principles, consistently applied; (16) the costs and expenses incurred in leasing equipment or systems that would ordinarily constitute a capital expenditure if such equipment or systems were purchased, to the extent such rental charges exceed the amortization charge, if any, that would have been permitted had the item been purchased; (17) costs of repairs or other work necessitated by fire, windstorm or other casualty and/or costs of repair or other work necessitated by the exercise of the right of eminent domain; (18) the cost of insurance coverages not generally carried by landlords of similar buildings in the area; (19) insurance deductibles and co-insurance payments in excess of $50,000; (20) interest or penalties due to the late payment of taxes, utility bills or other costs except to the extent such late payment arose as a result of Tenant's failure to promptly make payments of taxes as required hereunder; (21) any cost for overtime or other expenses to Landlord in curing its default; (22) the costs, including fines, penalties, and legal fees incurred, due to violations by any Landlord Party of Legal Requirements; (23) any amount paid to an owners' association of which the Premises is a part or paid in connection with any covenants, conditions, and restrictions or other title matters affecting the Premises if such costs would be excluded from Operating Expenses pursuant to other provisions of this Section 6; (24) rent under any ground lease or master lease; (25) costs incurred in connection with the financing or transfer of the Building or the Premises (including the cost of any lender's policy of title insurance) or any interest therein; (26) the cost of any action that is specifically Landlord's responsibility under this Deed of Lease and for which Tenant has no reimbursement requirement hereunder or any costs for which Landlord is required to pay or reimburse Tenant (including the cost of any repairs or replacements covered by Landlord's express warranties set forth in this Deed of Lease); (27) expenses which are separately metered or calculated for the Premises, which are billed separately to Tenant or one or more other tenant(s), as applicable; (28) wages, salaries and other compensation paid to personnel above the grade of property manager (but not to exceed an aggregate of $2.00 per square foot of space within the Building for all such wages, salaries and other compensation); provided, however, all such wages, salaries and other compensation otherwise allowed to be included in Operating Expenses shall also exclude any portion of such costs related to any personnel's time devoted to other efforts unrelated to the maintenance of the Premises; (29) rates paid on service or other contracts to the extent the cost thereof exceeds average market costs for such services of comparable quality in comparable buildings and any termination fees related to any such contracts; (30) Landlord's general overhead and any other expense not directly related to the Premises; (31) costs incurred in contesting Taxes or Legal Requirements except to the extent the costs do not exceed the resulting savings or (i) such contest is undertaken by Tenant or by Landlord at the direction or request of Tenant, and (ii) Tenant has pre-approved the costs of such contest; (32) property management fees in excess of one percent (1%) of Base Rent; (33) to the extent not already covered above, any maintenance obligations of Landlord listed as "Landlord Maintenance Obligations – Capital Improvements (Non-Recoverable)" on **Exhibit K**; (34) any items that Landlord is obligated to repair pursuant to Section 10 and are expressly stated to be done at the sole expense of Landlord; and (35) any cost that is not documented by reasonable or customary backup documentation. Landlord will not retain or be entitled to retain more than one hundred percent (100%) of the Operating Expenses actually paid by Landlord in connection with the operation of the Premises in any calendar year. Furthermore, Tenant shall not be obligated to pay for (i) Operating Expenses in the calendar year in which the Commencement Date occurs to the extent that Tenant's Proportionate Share of Operating Expenses for such year exceeds (on an annualized basis) one hundred three percent (103%) of the estimated amounts set forth in Initial Annual Estimated Operating Expense Payments on the first page of this Deed of Lease or (ii) Controllable Operating Expenses in any subsequent year to the extent Tenant's Proportionate Share of Controllable Operating Expenses for such year exceeds one hundred three percent (103%) of the Controllable Operating Expenses payable by Tenant for the immediately preceding year. For purposes of this Section, Controllable Operating Expenses shall mean all Operating Expenses as set forth in this Section 6 of this Deed of Lease, except for Taxes, utility costs, costs for snow and ice removal except to the extent set forth as Tenant's obligation in **Exhibit K**. Controllable Operating Expenses shall be determined on an aggregate, non-cumulative and non-compounded basis and not on an individual basis.

(c)     Reconciliation of Operating Expenses. On or before ninety (90) days following the end of each calendar year, Landlord shall deliver to Tenant a detailed reconciliation statement (the "Reconciliation") showing the calculation of the actual Operating Expenses for the prior calendar year along with reasonable supporting documentation, including a detailed general ledger. If Tenant's total payments of Operating

CONFIDENTIAL

Expenses for any year are less than Tenant's Proportionate Share of actual Operating Expenses for such year, then Tenant shall pay the difference to Landlord within thirty (30) days after demand, and if more, then Landlord shall retain such excess and credit it against Tenant's next payments or, if Tenant so requests, refund it to Tenant within thirty (30) days after demand, which obligation shall survive the expiration or termination of the Deed of Lease Term. For purposes of calculating Tenant's Proportionate Share of Operating Expenses, a year shall mean a calendar year except the first year, which shall begin on the Commencement Date (except that Tenant's obligation to pay Operating Expenses shall not commence until payments of Base Rent commence pursuant to Addendum 1), and the last year, which shall end on the expiration of this Deed of Lease.

(d) <u>Right to Audit</u>. Tenant, at its expense, will be entitled from time to time to audit and verify the Reconciliation to assure that the Operating Expenses from time to time reported by Landlord are in keeping with the provisions of this Section 6. Upon Tenant's request to audit the Reconciliation (which request must be made within one hundred eighty (180) days following Tenant's receipt of the Reconciliation or any correction thereof), Landlord shall make available to Tenant electronically, or at Tenant's election, at the Premises or Landlord's designated office, for photocopying by Tenant (or Tenant's employee or designated representative), invoices of expenditures, as well as other standard Landlord reports, for the expenses as provided in the Reconciliation (as well as for prior years, for purposes of evaluating compliance with the limitations on increases in Controllable Operating Expenses). Landlord's books and records shall be kept in accordance with generally accepted accounting principles, consistently applied. Landlord may correct any Reconciliation within one hundred and eighty days (180) after it is initially issued, but may not further correct it thereafter, except in the event that the correction would result in a credit to Tenant or that the Reconciliation of Taxes may occur at any time within three hundred and sixty-five (365) days following the final determination of the Taxes owed. Tenant's right to receive the Reconciliations and perform the audit shall survive the termination or expiration of this Deed of Lease. In the event of any errors the appropriate party will make a correcting payment in full to the other party within thirty (30) days after the determination and communication to all parties of the amount of such error. In the event of any errors on the part of Landlord costing Tenant in excess of three percent (3%) of Tenant's actual Operating Expense liability for any calendar year, Landlord will also, within the above thirty (30) day period, reimburse Tenant for the costs of an audit reasonably incurred by Tenant.

(e) <u>Annual Estimates</u>. On or before December 1 of each year during the Deed of Lease Term, Landlord shall deliver to Tenant a detailed statement showing the calculation of the estimated Operating Expenses for the subsequent calendar year, along with a detailed explanation in the event of an increase in any line item relative to the previous year's estimate. At a minimum, such statement shall contain a separate line item estimate of each general ledger account estimated to contain Operating Expenses for the subsequent year.

7. **Utilities**. Tenant shall pay for all water, gas, electricity, telephone, sewer, sprinkler services, refuse and trash collection used on the Premises by Tenant during the Deed of Lease Term, together with any taxes, penalties, surcharges or the like on such utility charges. Landlord shall cause the normal and customary utility services (electricity, gas, telephone, fiber optics, water and sewer) to be stubbed into the Building at a location determined by Tenant and otherwise in accordance with the plans and specifications delivered to Landlord in accordance with the Work Letter. Landlord shall cause the Premises to be separately metered for all utilities prior to the Commencement Date at Landlord's cost and expense. Subject to Legal Requirements, Tenant shall further be entitled to alter, increase, upgrade, remove or reconfigure any utilities as reasonably necessary for Tenant's use of the Premises. Any incentives or rebates related to any utilities corresponding to Tenant's occupancy of the Premises shall be fully payable to Tenant or immediately remitted to Tenant if received directly by Landlord. In the event of an interruption of utilities to the Premises which is not the result of the actions, omissions or negligence of any Landlord Party or any Tenant Party, Rent shall abate in proportion to the square footage of the Premises affected by the interruption as of the date that is ten (10) days after the interruption begins and shall continue until the problem is corrected. The deadlines set forth in this paragraph shall not be extended for Force Majeure.

8. **Taxes**. Landlord shall pay all real estate taxes, assessments and governmental charges (except to the extent of any Economic Development Incentives as defined in Section 44(b)) (collectively referred to as "<u>Taxes</u>") that are payable with respect to the Premises during the Deed of Lease Term, which shall be included as part of the Operating Expenses charged to Tenant. Landlord shall forward to Tenant a copy of all notices, invoices and statements relating to the Premises' Taxes. Upon notice to Landlord, which must be provided no later than five (5) days prior to the applicable deadline, Tenant (acting on behalf of Landlord) shall have the right to contest by

8

CONFIDENTIAL

appropriate legal proceedings the amount, validity, or application of any Taxes or liens thereof. If Tenant exercises its rights under the preceding sentence, (i) Tenant shall have the exclusive right (at Tenant's sole cost and expense) to select any counsel or consultants to effect such contest and to control the institution and prosecution of such contest (including any settlement or withdrawal of the contest), (ii) Landlord shall have no right to settle or withdraw such contest or otherwise control Tenant's prosecution of such contest, and (iii) Landlord shall reasonably cooperate, at Tenant's expense, with Tenant's institution and prosecution of any such Tax contest and will execute any documents reasonably required therefor. If Tenant does not exercise its rights under the first sentence of this Section to contest any Taxes, Landlord may contest such Taxes. If Landlord exercises its rights under the preceding sentence, it shall notify Tenant as soon as reasonably practicable that it has undertaken to contest such Taxes. All reductions, refunds, or rebates of Taxes paid by Tenant as an Operating Expense shall be refunded by Landlord to Tenant (less reasonable, actual, out-of-pocket costs or expenses incurred by Landlord to obtain such reduction, refund or rebate) whether as a consequence of a Tenant proceeding or otherwise. For the avoidance of doubt, nothing in this Section is intended to cause Tenant to be treated as an agent of Landlord for any purpose. In no event shall Tenant be liable for any estate taxes, inheritance taxes, transfer, gift or franchise taxes, gross receipts taxes of Landlord, "roll-back" or similar taxes attributable to periods before the Deed of Lease Term, federal, state or local income taxes, tax in lieu of net income tax, penalties or interest other than those attributable to Tenant's failure to comply timely with its obligations pursuant to this Deed of Lease, nor any tax that is or may be imposed upon Landlord's income or profits. If any tax for which Tenant is liable hereunder is levied or assessed directly against Tenant, then Tenant shall be responsible for and shall pay the same at such times and in such manner as the taxing authority shall require. Tenant shall be liable for all taxes levied or assessed against any personal property of Tenant placed in the Premises, whether levied or assessed against Landlord or Tenant. Landlord shall pay (and such amounts shall not be included in Operating Expenses) any transfer taxes or recording fees imposed by any governmental agency or municipality with respect to (a) this Deed of Lease, any memorandum of this Deed of Lease, any amendment, modification or extension of this Deed of Lease, any transfer occurring with regard to this Deed of Lease, any financing of Landlord's interest in the Premises, or the exercise of any options granted under this Deed of Lease; or (b) any transfer of any interest in the Premises or direct or indirect interests in Landlord. If any Taxes may be paid in installments, Landlord shall pay the Taxes in the maximum number of installments permitted by law, and Tenant's obligation to pay such Taxes as part of Operating Expenses shall be limited to each installment or prorated share thereof due and payable during the Deed of Lease Term.

9. **Insurance.**

(a) <u>Landlord's Insurance</u>. Landlord shall maintain all risk (also known as "special causes of loss form") property insurance covering the full replacement cost of the Building and the Premises (including any Tenant-Made Alterations (as defined below)) and including ordinance or law coverage and commercial general liability insurance including Tenant as an additional insured, and meeting the requirements for commercial general liability insurance set forth in Section 9(c) below. All such insurance shall be included as part of the Operating Expenses charged to Tenant, to the extent permitted by Section 6. Landlord may satisfy its obligations under this Section 9(a) through one or more blanket policies, in which case the cost of such insurance allocable to the Premises will be reasonably determined by Landlord based upon the insurer's cost calculations. Tenant will not use or permit the Premises to be used for any purpose or in any manner that would void Landlord's insurance and Landlord shall provide Tenant with notice if Landlord becomes aware that any such use will void Landlord's insurance; provided that this sentence shall not be deemed to prohibit the Permitted Uses. Tenant shall also reimburse Landlord for any increased premiums or additional insurance which Landlord reasonably deems necessary as a result of Tenant's use of the Premises for other than the Permitted Uses.

(b) <u>Tenant's Insurance</u>. Tenant, at its expense, shall maintain from and after the Commencement Date or any earlier date upon which Tenant enters or occupies the Premises or any portion thereof: all risk (or "special causes of loss form") property insurance covering the full replacement cost of all Tenant's Property (as defined below) installed or placed in the Premises by Tenant at Tenant's expense; worker's compensation insurance with no less than the minimum limits required by law; employer's liability insurance with limits of no less than $1,000,000 each accident for bodily injury by accident, $1,000,000 each employee for bodily injury by disease, and $1,000,000 policy limit for bodily injury by disease; and commercial general liability insurance covering liability arising out of Tenant's operations with respect to the Premises, which commercial general liability insurance shall include Landlord and the Landlord Indemnitees (as defined below) as additional insureds. The workers' compensation insurance and employer's liability insurance shall include a waiver of subrogation in

CONFIDENTIAL

favor of Landlord and the Landlord Indemnitees. Landlord may from time to time require reasonable increases in any such limits consistent with the insurance being required by institutional owners of similar projects in the area.

(c) <u>Insurance Generally</u>. The commercial general liability policies required of each party shall provide coverage on an occurrence basis with a per occurrence limit of not less than $5,000,000, which limit may be satisfied by any combination of primary and excess or umbrella policies, and shall insure on an occurrence and not a claims-made basis and provide contractual liability coverage. All insurance policies shall be issued by insurance companies which are authorized to do business in the state in which the Premises are located and have a Best's rating not less than A-/XI. Landlord shall deliver to Tenant certificates evidencing such policies, upon Tenant's request, at the commencement of the Deed of Lease Term and at each renewal of said insurance. For Tenant's evidence of policies and insurance certificates required hereunder, Landlord is hereby directed to Tenant's memorandum of insurance at www.amazon.com/insurance and Landlord acknowledges that such memorandum of insurance shall satisfy all delivery requirements under this section.

(d) <u>Waiver of Subrogation</u>. Notwithstanding any other provision of this Deed of Lease, Landlord and Tenant each hereby waives its right against the other party (the "<u>Benefitted Party</u>") for any loss of, or damage to, any of the waiving party's property located within the Building or upon, or constituting all or a part of, the Building, in each case to the extent the loss or damage is or would be covered by the ISO special causes of loss form (CP 10 30) with the property in question insured for the full replacement cost, whether or not the waiving party actually carries such insurance, recovers under such insurance, or self-insures the loss or damage, and whether or not the loss is due to the negligent acts or omissions of the Benefited Party, or its members, partners, managers, affiliates, contractors or subcontractors or its or their officers, directors, employees, agents or invitees, except the waiver in this sentence will not apply to the extent the loss or damage arises from the gross negligence or willful misconduct of the Benefited Party or its members, partners, managers, affiliates, contractors or subcontractors or its or their officers, directors, employees, agents or invitees. Each party's waiver in this Section 9(d) includes a waiver of the right to recover any deductibles and self-insured retentions incurred by such waiving party in connection with a loss to which the waiver in this Section 9(d) applies. The mutual waivers in this Section 9(d) shall be in addition to, and not in limitation or derogation of, any other waiver or release contained in this Deed of Lease with respect to any loss of, or damage to, property of the parties hereto. Each party shall ensure that its property insurance policy required under this Deed of Lease permits the waiver in this Section, so that such party's waiver will not invalidate or impair any of its coverage, and shall upon request provide the other party with evidence of such arrangements.

(e) <u>Right to Self-Insure</u>. Notwithstanding anything in this Section 9 or otherwise in this Deed of Lease to the contrary, so long as the originally named Tenant or a permitted Transferee (as defined below) is the tenant-in-possession, Tenant may elect to self-insure some or all of the risks covered by the insurance that it is otherwise obligated to maintain under the terms of this Deed of Lease, and upon such election Tenant will be excused from its obligation to obtain third-party insurance for the self-insured risks. All amounts which are paid or are required to be paid and all loss or damages resulting from risks for which Tenant has elected to self-insure shall be subject to the waiver of subrogation provisions of this Section 9 as to property insurance and shall not limit Tenant's indemnification obligations set forth in Section 18. Notwithstanding anything in this Section 9 to the contrary, Tenant shall have the right at any time, on reasonable prior notice to Landlord, to terminate its self-insurance program and provide third-party insurance as otherwise required by this Section 9 so long as evidence of such third-party policies are delivered to Landlord prior to termination of Tenant's self-insurance program. At any time when Tenant elects to self-insure any required coverage, Tenant shall provide Landlord and Landlord's lender, if any, with certificates of self-insurance specifying the extent of self-insurance coverage hereunder.

10. **Landlord's Maintenance and Repairs.**

(a) <u>Landlord Obligations Generally</u>. Subject to Section 15, Landlord shall, at its sole cost and expense and subject to reasonable wear and tear, maintain, repair and/or replace, as necessary, the structure of the Building, the loading docks, the structural elements of the roof, the roof membrane (provided, however, that routine preventative maintenance and repair of the roof membrane may be included as part of Operating Expenses to the extent permitted under Section 6), slab, foundation, and exterior walls of the Building, and those items listed on **Exhibit K** as "Landlord Maintenance Obligations – Capital Improvements (Non-Recoverable)". In addition, as part of Operating Expenses to the extent permitted under Section 6, Landlord shall maintain, repair and/or replace, as necessary, in good repair, reasonable wear and tear excluded, all portions of the Premises not required to be maintained

10

CONFIDENTIAL

by Tenant pursuant to Section 11, including those items listed on **Exhibit K** as "Landlord Maintenance Obligations – Operating Expenses (Recoverable)"; Building systems, except to the extent listed on **Exhibit K** as "Landlord Maintenance Obligations – Capital Improvements (Non-Recoverable)" or "Tenant Maintenance Obligations"; systems for drainage of water from the roof, the underground or behind wall or otherwise concealed; termite eradication; any pipes, ducts, wires, mains and conduits that do not serve the Premises exclusively; and the parking areas and other exterior portions of the Premises, including driveways, alleys, landscape and grounds surrounding the Building, except to the extent listed on **Exhibit K** as "Landlord Maintenance Obligations – Capital Improvements (Non-Recoverable)" or "Tenant Maintenance Obligations". In addition, Landlord shall perform any capital repair or replacement of the existing fire/life safety systems (or the fire/life safety systems that were installed as part of the Base Building Specifications as described in **Addendum 3**) (in either event, the "Base F/LS System"), the cost of which is reasonably expected to be $10,000 or more, and such costs may be passed through to Tenant as part of Operating Expenses provided that such costs shall be amortized in equal monthly installments over their useful lives in accordance with generally accepted accounting principles, consistently applied (the "Base F/LS System Capital Costs"). Landlord's maintenance, repair and replacement activities shall be at a level substantially similar to the level of maintenance, repair and replacement standards that are typical in other similar class buildings that are located in the market in which the Premises are located. Further, Landlord warrants the operation of the entire Premises, including all Building systems, including the existing HVAC owned by Landlord, the Base F/LS System, electrical, plumbing and lighting (but excluding Tenant's Property) until the end of the twenty-fourth (24th) full calendar month of the Deed of Lease Term, and any repairs and replacements (other than routine maintenance, which shall be performed by Tenant if such maintenance is within the scope of Tenant's responsibilities pursuant to Section 11) during such period shall be performed by Landlord at Landlord's sole expense; provided, however, that such warranty shall not be effective for any maintenance, repairs or replacements necessitated due to the misuse of, or damages caused by, Tenant or any Tenant Party. Nothing contained in this Section 10(a) shall be construed to establish a period of limitation with respect to other obligations the Landlord has under the Work Letter or otherwise at law. Establishment of the 24-month period for correction of Landlord's Work as described herein relates only to the specific obligation of Landlord to correct the Landlord's Work, and has no relationship to the time within which the obligation to comply with the other provisions of this Lease or the Work Letter may be sought to be enforced, nor to the time within which proceedings may be commenced to establish Landlord's liability with respect to Landlord's obligations other than specifically to correct the Landlord's Work. With respect to any Landlord repair and maintenance work performed by Landlord as provided in this Section, Landlord shall use commercially reasonable efforts not to interfere with Tenant's use of the Premises, perform such work in a good and workmanlike manner, in compliance with all safety and other Legal Requirements, and diligently prosecute such work to completion (including the restoration of any portion of the Premises, or any Tenant-Made Alterations, Tenant's Property and fixtures that were disturbed by Landlord to complete such work). Additionally, Landlord shall not locate any new ducts, pipes, mains, wires or conduits in any part of the Premises without Tenant's consent. In addition to the foregoing obligations, Landlord shall be responsible, at its expense, for correcting latent and structural defects throughout the Deed of Lease Term. Any access by Landlord or Landlord's contractors, subcontractors, representatives and agents will be subject to the terms of Section 19.

   (b) <u>Safety Issues</u>. Landlord shall be solely responsible for initiating, maintaining and supervising all safety precautions and programs as may be prudent under the circumstances to ensure the safe completion of any work performed by Landlord hereunder and compliance with all applicable health and safety regulations. Landlord is solely responsible for and has control over the means, methods, techniques, sequences, and procedures used ("<u>Techniques</u>") by Landlord's personnel, contractors, and subcontractors to perform such work. Specific instructions concerning Techniques as may be provided by Tenant, if any, do not discharge Landlord's responsibility. Landlord will evaluate the safety of any such instructions and ensure that reasonable precautions are undertaken for the safety of persons or property at the Premises in all areas where such work is performed. If Landlord determines that any Techniques may not be safe or may not be in compliance with applicable health and safety regulations, Landlord shall give timely written notice to Tenant and shall not proceed with the applicable portion of such work making use of such Techniques. Services and Techniques shall be performed in strict accordance with all Legal Requirements, including Occupational Health and Safety Administration regulations, bearing on the health and safety of persons or their protection from injury.

   (c) <u>Interruption of Tenant's Operations</u>. If Landlord desires to do any work (for maintenance or repairs or otherwise) that would require an interruption of power or any other utility to the Premises or cause any interference with Tenant's operations or access to the Premises, the following requirements shall apply (except in

11

CONFIDENTIAL

the event of any emergency that precludes compliance with one or more of the following requirements, in which case Landlord shall comply with the requirements to the extent reasonably possible):  (i) no such work may occur during the period from November 15 through January 15 or June 15 through July 31 (the "Holiday Season") without Tenant's consent, (ii) Landlord shall give Tenant not less than thirty (30) days' advance notice of such planned work, (iii) such work may only occur during times reasonably approved by Tenant (and the parties agree it shall be reasonable for Tenant to require that such work occur outside of normal business hours), (iv) any such interruption may not be for more than four (4) hours in length, and (v) in the case of a power interruption, if requested by Tenant, Landlord shall, at its sole expense, provide a source of back-up power for the Premises to allow Tenant to continue its normal business operations during such interruption (and the fuel costs and other related charges shall not be included in Operating Expenses).

(d)     Tenant's Right to Maintain.  Notwithstanding anything to the contrary contained herein, Tenant may elect, upon at least thirty (30) days' prior notice to Landlord, to take over any maintenance obligation of Landlord, including, without limitation, any of Landlord's obligations that are structural in nature and/or otherwise at Landlord's sole cost and expense, in which case (i) for those obligations in which the costs were recoverable by Landlord as part of Operating Expenses, such costs shall be at Tenant's sole cost and expense, (ii) Landlord shall not have any obligation to maintain such matters after the date set forth in Tenant's notice, and (iii) any costs incurred by Landlord in connection with any matters taken over by Tenant after the date set forth in Tenant's notice shall be excluded from Operating Expenses.  Landlord shall not enter into any maintenance or service contracts that are not terminable within ninety (90) days at no cost.  Additionally, upon ninety (90) days' notice to Landlord, Tenant shall have the right to self-manage the Premises, in which case no property management fee would be included in the calculation of Operating Expenses. Notwithstanding anything to the contrary contained herein, the property management fee payable to a property manager designated by Landlord, including any affiliate of Landlord, will continue to be included in the calculation of Operating Expenses at its then current rate even if Tenant exercises its right to self-manage the Premises; provided that such property management fee shall be no greater than one percent (1%) of the then-current Base Rent. In the event Tenant elects to take over any maintenance obligations relating to the structure of the Building, the loading docks, the structural elements of the roof, the roof membrane, or any of those items listed on **Exhibit K** as "Landlord Maintenance Obligations – Capital Improvements (Non-Recoverable) (collectively, the "Non-Recoverable Elements"), Tenant shall obtain Landlord's prior consent to any contractors Tenant proposes to use for maintenance, repair or replacement activities of the Non-Recoverable Elements.  Landlord shall reimburse Tenant for costs incurred in such activities within thirty (30) days of Landlord's receipt of invoices and reasonably sufficient supporting documentation.  Tenant shall assign to Landlord any warranties for such work upon expiration or earlier termination of the Deed of Lease.

11.    **Tenant's Repairs**.  Subject to Landlord's obligation in Section 10 and subject to Sections 9 and 15, Tenant shall, at its sole cost and expense, maintain, repair and/or replace as necessary all interior non-structural portions of the Premises, the HVAC system and any Tenant HVAC (in accordance with manufacturer's recommended standards but subject to the warranty period described in Section 10(a) and provided that during the last two (2) years of the Deed of Lease Term, Tenant may elect not to perform a capital repair or replacement of such HVAC system(s) if such work is reasonably expected to cost in excess of $10,000; provided that Landlord may elect to perform such work and such costs may be passed through to Tenant as part of Operating Expenses provided that such costs shall be amortized in equal monthly installments over their useful lives in accordance with generally accepted accounting principles, consistently applied (the "HVAC Capital Costs")), and those items listed on **Exhibit K** as "Tenant Maintenance Obligations."  Tenant shall also, at its sole cost and expense, maintain the Base F/LS System, and perform any capital repairs or replacements to the Base F/LS System, the cost of which is reasonably expected to be less than $10,000 (but subject to the warranty period described in Section 10(a)).  Tenant shall also, at its sole cost and expense, maintain, repair and/or replace as necessary any modifications or additions to the Base F/LS System that were made by or paid for by Tenant.  Landlord acknowledges that items within, and components of, the Premises that Tenant must maintain will be subject to reasonable wear and tear and, subject to Section 9, non-casualty damage caused by Landlord, its agents and contractors, and Tenant is not required to maintain the Premises in a "like new" condition.  If Tenant fails to perform any repair or replacement for which it is responsible, and does not cure such failure within any applicable cure period, Landlord may, upon ten (10) days' advance notice to Tenant, perform such work and shall be reimbursed by Tenant for the reasonable cost of such work within thirty (30) days after demand therefor (which demand shall be accompanied by reasonable supporting documentation for such costs).  Subject to Sections 9 and 15, Tenant shall bear the full cost of any repair or replacement to any part of the Premises that results from non-casualty damage caused by Tenant or any Tenant