# Exhibit 24 – Part 10

Agreement covering such Offered Property, and Grantee shall have a new right, pursuant to Sections 4 and 5 above, to purchase such Offered Property.

7.    Tenant Rights to Purchase Binding Upon Successors and Assigns.  Grantee's Right of First Offer and its Right of First Refusal shall not be extinguished by Grantee's election not to, or failure to, exercise any such right in the event of a proposed sale of the Property, but shall instead be continuing rights throughout the Deed of Lease Term (including any Extension Terms) binding upon Grantor and its successors and assigns.  Notwithstanding the foregoing, the Right of First Offer and Right of First Refusal shall not apply in the event of the following transfers of all or any portion of the Property:

(a)    transfers to affiliates of Grantor; or

(b)    collateral security transfers in connection with any debt or equity financing, or transfers pursuant to a foreclosure or a deed in lieu thereof.

8.    Memorandum of ROFO/ROFR. Concurrently with the execution of this Agreement, Grantor, at its expense, shall execute and promptly record a memorandum of ROFO/ROFR in the form of Exhibit D hereto.

9.    Confidentiality.   Neither Grantor nor any member, partner, manager, affiliate, contractor or subcontractor of Grantor or its or their officers, directors, employees or agents, or of any invitee or licensee of Grantor (collectively, the "Grantor Parties") shall make public announcements regarding this Agreement without Grantee's prior consent, which Grantee may withhold in its sole and absolute discretion, and Grantor shall instruct its lenders, investors, attorneys, accountants, brokers, developers, contractors, subcontractors, agents and consultants to not make or issue any public announcement regarding this Agreement.  In addition, all information specifically labeled as "confidential" or that would reasonably be presumed to be confidential, including this Agreement, all nonpublic information relating to Grantee's technology, operations, customers, business plans, promotional and marketing activities, finances and other business affairs ("Confidential Information"), that is learned by or disclosed to any Grantor Parties with respect to Grantee's business in connection with this Agreement shall be kept strictly confidential by such Grantor Parties and shall not be used (except for Grantor's confidential internal purposes or as otherwise required by all applicable federal, state, county and municipal statutes, ordinances, codes, rules, regulations and requirements (collectively, the "Legal Requirements") or disclosed to others by Grantor, or any other Grantor's Parties, without the express prior consent of Grantee, which Grantee may withhold in its sole and absolute discretion. The provisions of this Section shall survive the expiration or termination of this Agreement and shall continue to bind Grantor after Grantor's conveyance of the Premises or any portion thereof.

10.    Miscellaneous.

(a)  If any clause or provision of this Agreement is determined to be illegal, invalid or unenforceable under present or future Legal Requirements, then and in that event, it is the intention of the parties hereto that the remainder of this Agreement shall not be affected thereby.  It is also the intention of the parties to this Agreement that in lieu of each clause or provision of this Agreement that is illegal, invalid or unenforceable, there be added, as a part of this Agreement, a clause or provision as similar in terms to such illegal, invalid or unenforceable clause or provision as may be possible and be legal, valid and enforceable.

(b)  If and when included within the term "Grantee," as used in this instrument, there is more than one person, firm or corporation, each shall be jointly and severally liable for the obligations of Grantee. If and when included within the term "Grantor," as used in this instrument, there is more than one person, firm or corporation, each shall be jointly and severally liable for the obligations of Grantor.

(c)  All notices, approvals, consents, requests or demands required or permitted to be given or served by either party to this Agreement shall be in writing (unless otherwise expressly set forth herein to the contrary) and shall be delivered: (i) personally, (ii) by depositing with the United States Postal Service, postage prepaid, by registered or certified mail, return receipt requested, (iii) by a nationally recognized overnight delivery service providing proof of delivery, or (iv) by email or facsimile delivery provided for delivery pursuant to this clause (iv) a copy is also sent

pursuant to either clause (i), (ii) or (iii) above, and in all such events, properly addressed to the addresses set forth on the signature pages to this Deed of Lease.  A copy of any such notice, approval, consent, request or demand made to Grantee shall also be sent to global-lease-abstraction@amazon.com, legal-us-realestate@amazon.com, and NADC-Rent@amazon.com, using the subject line—Re: IAD175.  Either party may by notice given aforesaid change its address for all subsequent notices.  Except where otherwise expressly provided to the contrary, notice shall be deemed given upon delivery or when delivery is refused.

(d)   Except as otherwise provided in this Agreement, Grantor shall not unreasonably withhold, condition, or delay any consent or approval to be given pursuant to this Agreement.

(e)   Any law, usage, or custom to the contrary notwithstanding, each party shall have the right at all times to enforce the provisions of this Agreement in strict accordance with the terms hereof; and the failure of either party at any time to enforce its rights under this Agreement strictly in accordance with same shall not be construed as having created a custom in any way or manner contrary to the specific terms, provisions, and covenants of this Agreement or as having modified the same, or a waiver by either party to enforce its rights pursuant to this Agreement or at law or in equity, shall not be a waiver of such party's right to enforce one or more of its rights in connection with any subsequent default.  A receipt by either party of rent or other payment with knowledge of the breach of any covenant hereof shall not be deemed a waiver of such breach, and no waiver by either party of any provision of this Agreement shall be deemed to have been made unless expressed in writing and signed by such party.

(f)   Words of any gender used in this Agreement shall be held and construed to include any other gender, and words in the singular number shall be held to include the plural, unless the context otherwise requires.  The captions inserted in this Agreement are for convenience only and in no way define, limit or otherwise describe the scope or intent of this Agreement or any provision hereof, or in any way affect the interpretation of this Agreement. The words "includes" or "including" are used in this Agreement to provide information that is illustrative or exemplary, and not exclusive or exhaustive.

(g)   Grantor and Grantee each acknowledge that it has had the opportunity to review this Agreement with legal counsel of its choice, and there will be no presumption that ambiguities will be construed or interpreted against the drafter.

(h)   Construction and interpretation of this Agreement shall be governed by the Legal Requirements of the state in which the Premises are located, excluding any principles of conflicts of laws.

(i)   Time is of the essence as to the performance of each party's obligations under this Agreement.

(j)   Neither Grantor or Grantee shall be liable to the other for consequential damages, such as lost profits or interruption of either party's business, except that this sentence shall not apply to Grantor's breach of its confidentiality obligations under this Agreement.  Any liability of Grantor under this Grantor shall be limited solely to its interest in the Premises and to the rents and proceeds therefrom (including insurance proceeds), and in no event shall any recourse be had to any other property or assets of Agreement.

(k)   "Business Day" means any day that is not a Saturday, Sunday, or federal holiday.

(l)   Grantor and Grantee may deliver executed signature pages to this Agreement by electronic means to the other party, and the electronic copy shall be deemed to be effective as an original.  This Agreement may be executed in any number of counterparts, each of which shall be deemed an original and all of which counterparts together shall constitute one agreement with the same effect as if the parties had signed the same signature page.

(m)   Each party represents to the other that it has the full right and authority to bind itself without the consent or approval of any other person or entity and that it has full power, capacity, authority and legal right to execute and deliver this Agreement and to perform all of its obligations hereunder.

*42554309.16*

(n)  Nothing in this Agreement (including its accompanying addenda and exhibits) shall be construed as creating a joint venture, partnership, tenancy-in-common, joint tenancy, financing, agency, or any relationship other than a landlord-tenant relationship between Grantor and Grantee, express or implied, including for federal and state tax purposes.

11.     Entire Agreement.  This Agreement constitutes the complete agreement of Grantor and Grantee with respect to the subject matter hereof.  All exhibits and addenda attached hereto are hereby incorporated into this Agreement and made a part hereof.  In the event of any conflict between such exhibits or addenda and the terms of this Agreement, such exhibits or addenda shall control.  Any capitalized terms used but not defined in any exhibit or addenda to this Agreement shall have the same meaning ascribed to such term in the body of this Agreement.  No representations, inducements, promises or agreements, oral or written, have been made by Grantor or Grantee, or anyone acting on behalf of Grantor or Grantee, which are not contained in this Agreement, and any prior agreements, promises, negotiations, or representations are superseded by this Agreement.  This Agreement may not be amended except by an instrument in writing signed by both parties hereto.

12.     Anti-Corruption. Grantor acknowledges that Grantee's Code of Business Conduct and Ethics (the "Code") prohibits the paying of bribes to anyone for any reason, whether in dealings with governments or the private sector. Grantor will not violate or knowingly permit anyone to violate the Code's prohibition on bribery or any applicable anti-corruption laws. Grantor will maintain true, accurate and complete books and records concerning any payments made to another party by Grantor under this Agreement, including on behalf of Grantee.  Grantee and its designated representative may inspect Grantor's books and records to verify such payments and for compliance with this section. Grantor will promptly provide written notice to Grantee regarding all pertinent facts relating to any improper solicitation, demand or other request for a bribe, improper gift or anything of value, made by any party in connection with any activities performed by Grantor pursuant to this Agreement. Grantee may immediately terminate or suspend performance under this Agreement if Grantor breaches its obligations under this section.

13.     ROFO in Equity Transaction. Landlord will provide prior notice to Tenant of the terms of a proposed Change in Control Transaction, which notice will include the proposed purchase price and percentage interest in Landlord that is to be conveyed (a "Change in Control ROFO Purchase Notice"). At the time Landlord delivers a Change in Control ROFO Purchase Notice, Landlord will also deliver to Tenant a ROFO and ROFR Purchase Agreement executed by Landlord for Tenant's potential purchase of the Premises, with the purchase price determined by dividing the purchase price shown on the Change in Control ROFO Purchase Notice by the percentage interest in Landlord proposed to be conveyed. A "Change in Control Transaction" is defined as any proposed transaction that would result in at least a 50% interest in Landlord being conveyed. For example, if the Change in Control ROFO Purchase Notice references a proposed transaction whereby a 50% interest in Landlord is to be conveyed for consideration of $25,000,000, the Purchase Price for the Offered Property under the ROFO and ROFR Purchase Agreement would be $50,000,000. A Change in Control ROFO Purchase Notice will be deemed a ROFO Purchase Notice and Sections 5, 6 and 7 of this Exhibit F apply.

[signature and notary pages follow]

42554309.16

Landlord and Tenant have executed this Agreement on the dates set forth below, to be effective as of the later of the dates shown below (the "Effective Date").

.

                                                        **GRANTOR:**

                                                        DULLES NCP II, LLC, a Delaware limited liability company

                                                        By:        _____
                                                        Name:    _____
                                                        Title:     _____
                                                        Date Signed:    _____

                                                        Address:

                                                        1999 Broadway, Suite 3500
                                                        Denver, Colorado 80202

                                                        With a copy to:

                                                        Jones & Keller P.C.
                                                        1999 Broadway, Suite 3150
                                                        Denver, Colorado 80202
                                                        Attn: Kerri P. Assell, Esq.

STATE OF _____

COUNTY OF _____

        Before me, the subscribers, a notary public in and for said county, personally appeared _____, the _____ of Dulles NCP II, LLC, the Grantor in the foregoing instrument who acknowledged the signing of the foregoing instrument to be his free act and deed on behalf of the Grantor for the uses and purposes set forth therein.

        IN WITNESS WHEREOF, I have hereunto signed my name and affixed my official seal on the _____ day of _____, 2020.

                                                        _____

                                                        NOTARY PUBLIC, STATE OF _____

*42554309.16*

**TENANT:**

AMAZON DATA SERVICES, INC., a Delaware corporation

By: _____
Name: _____
Title: _____
Date Signed: _____

Address:
c/o Amazon.com, Inc.
Attention:  Real Estate Manager (AWS) (IAD175)
410 Terry Ave. N
Seattle, WA 98109-5210

With copy to:
c/o Amazon.com, Inc.
Attention:  General Counsel (Real Estate) (IAD175)
410 Terry Ave. N
Seattle, WA 98109-5210

With copies to:

global-lease-abstraction@amazon.com, Legal-us-realestate@amazon.com, and NADC-Rent@amazon.com,

using the subject line – Re: IAD175

STATE OF_____

COUNTY OF_____

    Before me, the subscribers, a notary public in and for said county, personally appeared _____; the _____ of AMAZON DATA SERVICES, INC., a Delaware corporation, the Grantee in the foregoing instrument who acknowledged the signing of the foregoing instrument to be his free act and deed on behalf of the Grantee for the uses and purposes set forth therein.

    IN WITNESS WHEREOF, I have hereunto signed my name and affixed my official seal on the _____ day of _____, 2020.

_____
NOTARY PUBLIC, STATE OF_____

42554309.16

Exhibit A to EXHIBIT F

**Exhibit A-1 to  EXHIBIT F**

Legal Description of Premises





Exhibit B to EXHIBIT F


RESERVED

Exhibit C to EXHIBIT F

**FORM OF ROFO/ROFR PURCHASE AGREEMENT**

<u>PURCHASE AGREEMENT</u>
(IAD175)

<u>(Loudoun County, Virginia)</u>

THIS PURCHASE AGREEMENT (this "<u>Agreement</u>") is entered into as of the Effective Date (defined below), by and between _____, a _____ _____ ("<u>Landlord</u>"), and _____, a _____ ("<u>Tenant</u>"). This Agreement shall be effective upon its mutual execution and delivery by Landlord and Tenant (the "<u>Effective Date</u>").

**RECITALS:**

A.      Landlord and Tenant are parties to that certain Deed of Lease dated as of _____, 20__ (the "<u>Deed of Lease</u>") pursuant to which Landlord leases to Tenant all of that certain building known as _____ ("<u>Building</u>") consisting of approximately _____ rentable square feet located at _____, as depicted on <u>Exhibit A</u> hereto, together with the exclusive right to use all portions of the land other than the Building, said land also being depicted on <u>Exhibit A</u> hereto and legally described on <u>Exhibit B</u> hereto ("<u>Land</u>"). The Building and the Land are collectively referred to herein as the "<u>Project</u>").

B.      Pursuant to the terms of the Deed of Lease, Landlord wishes to sell to Tenant and Tenant wishes to acquire the Project upon the terms and conditions set forth in this Agreement.

**AGREEMENT:**

NOW THEREFORE, in consideration of the covenants set forth herein and other good and valuable consideration, the receipt and sufficiency of which the parties hereby acknowledge, Landlord agrees to sell to Tenant and Tenant agrees to purchase from Landlord the Project, together with and including all hereditaments, appurtenances, easements and rights of way thereunto belonging or in any way appertaining and also the right, title and interest (if any) of Landlord in and to the bounding and abutting streets, alleys and highways, subject to and upon the following terms and conditions:

1.      **Sale**. On and subject to the terms and conditions of this Agreement, Landlord agrees to sell to Tenant, and Tenant agrees to purchase from Landlord, the Project, together with:  (a) all easements and rights benefiting or appurtenant to the Project including any right, title or interest in the bed of any adjoining street, road, highway or alley; (2) Landlord's interests in all certificates, permits, variances, licenses and approvals that benefit or relate to the Project and its current use ("<u>Permits</u>"); (3) all blueprints, shop drawings, surveys, studies, plans and specifications that are in the possession of or readily available to Landlord or its agents (the "<u>Plans</u>"); (4) any warranties and guaranties given to, assigned to or benefiting Landlord or the Project, regarding the acquisition, construction, design, use, operation, management or maintenance thereof ("<u>Warranties</u>"); and (5) all records regarding ownership, maintenance and repair of the Project and all studies of any kind regarding the condition of any element of the Project ("<u>Records</u>") that are in possession or under control of Landlord, or its manager (as such items collectively the "**Materials**").

2.      **Purchase Price**. The "<u>Purchase Price</u>" for the Project shall be _____ [INSERT AFTER RECEIPT OF ROFO PURCHASE NOTICE OR THE ROFR PURCHASE NOTICE, AS APPLICABLE]. Tenant and Landlord shall each file, in accordance with Section 1060 of the Internal Revenue Code of 1986, as amended, and the regulations thereunder, an Asset Allocation Statement on form 8594 that conforms with the agreed upon allocation of the Purchase Price between the Land and the Building, with their respective federal income tax returns for the tax year in which the Closing occurs, and shall contemporaneously provide the other party with a copy of the form 8594 being

filed. Each party agrees not to assert, in connection any with tax return, audit or other similar proceeding, any allocation of the Purchase Price that differs from the allocation agreed to by the parties.

3.      **Closing**.   Closing of the transfer of title and payment contemplated by this Agreement (the "Closing") shall occur on _____ or on such earlier or later date as may be mutually agreed upon by the parties (the "Closing Date").   The Closing shall take place at the office of _____[INSERT NATIONALLY RECOGNIZED TITLE COMPANY] (the "Title Company") or at such other place as may be agreed to mutually by the parties.   Landlord agrees to deliver possession of the Project and Materials to Tenant on the Closing Date.

A.      Landlord's Closing Documents.   On the Closing Date, Landlord shall execute and/or deliver to Tenant the following:

(1)      Deed.   A customary-form special warranty deed (with statement regarding no wells), in form reasonably satisfactory to Tenant, conveying good and marketable title to the Project to Tenant, free and clear of all encumbrances, except the "Permitted Encumbrances" determined pursuant to Section 5 hereof.

(2)      Bill of Sale.   A Bill of Sale, in limited warranty form, conveying all fixtures comprising part of the Project to Tenant, free and clear of all encumbrances, except the Permitted Encumbrances.

(3)      Business Records.   Originals of full and complete copies of the Permits, Plans, Warranties and Records.

(4)      General Assignment.   An Assignment of the Permits, Plans, Warranties, and Records, in form reasonably satisfactory to Tenant.

(5)      Landlord's Affidavit.   An Affidavit of Landlord indicating that on the Closing Date there are no outstanding, unsatisfied judgments, tax liens or bankruptcies against or involving Landlord or the Project; that there has been no labor or material furnished to the Project for which payment has not been made or for which mechanics' liens could be filed; that there are no other unrecorded interests in the Project; and that there are no encroachment or survey issues of which Landlord is aware; together with whatever standard owner's affidavit and/or indemnity which may be reasonably required by the Title Company to issue owner's and lenders' policies of title insurance.

(6)      Settlement Statement.   A customary settlement statement (the "Settlement Statement") prepared in conjunction with the Title Company accounting for all sources and uses of funds at the Closing.

(7)      Other Requirements. Any other document or instrument reasonably required by the Title Company or any municipal body or agency to evidence or complete the transfer of title as contemplated in this Agreement.

B.      Tenant's Closing Obligations.   On the Closing Date, Tenant will execute the Settlement Statement and deliver to Landlord the Purchase Price pursuant to Section 3.A., above.

4.      **Inspection**.   Within the initial five (5) days after the Effective Date, Landlord shall make available to Tenant the following, to the extent the same are in Landlord's possession or control:  (1) any and all "Environmental Reports" relating to the Project (defined below); (2) all historical title work, title policies, past real estate tax records, tax returns, surveys, engineering reports and physical inspection reports; and (3) the Permits, Plans, Warranties and Records.

5.      **Title Examination**.   Title examination will be conducted as follows:

A.      Landlord's Title Evidence.   Landlord shall, within ten (10) days after the Effective Date, furnish to Tenant: (1) a commitment  for an ALTA owner's policy of title insurance ("Title Commitment"), issued by the Title

42554309.16

Company, committing the Title Company to insure good and marketable title to the Project, free and clear of liens, mortgages, charges or encumbrances, subject only to the "Permitted Encumbrances" listed in Exhibit C attached hereto [PERMITTED ENCUMBRANCES MAY ONLY INCLUDE THOSE LISTED ON EXHIBIT B OF THE LEASE AND OTHERS PUT OF RECORD IN ACCORDANCE WITH THE PROVISIONS OF THE LEASE]; (2) UCC searches regarding any fixtures comprising part of the Project ("UCC Searches").  In addition, Landlord shall within two (2) days after the Effective Date, furnish to Tenant Landlord's most current, "as built" survey of the Project, meeting all ALTA/ASCM requirements, showing all easements of record and all improvements and encroachments and certified to Tenant, the Title Company and such other parties as Tenant may reasonably request ("Survey").

B.     Tenant's Objections.  Within ten (10) days after receiving the last of the Title Commitment, copies of any documents listed in Schedule B of the Title Commitment, the UCC Searches and the Survey, Tenant will make any written objections it may have ("Objections") provided that Tenant shall have no right to object to any Permitted Encumbrances.  Tenant's failure to make Objections within such time period will constitute a waiver of Objections with respect to matters disclosed in Schedule B of the Title Commitment, the UCC Searches and/or the Survey.  Any specific matter shown in Schedule B of the Title Commitment, the UCC Searches or in the Survey and not objected to by Tenant shall also be deemed "Permitted Encumbrances" hereunder.  Landlord will have sixty (60) days after receipt of the Objections to cure the Objections (the "Cure Period"), during which period the Closing will be postponed as necessary and Landlord shall use all commercially reasonable efforts to correct any Objections or, alternatively, to cause the Title Company affirmatively to insure over the Objections, provided that Landlord shall be obligated to remove any Objections related to any mortgages, other monetary liens or items which are not "Permitted Exceptions" pursuant to the Deed of Lease, and failure to remove same shall be a default by Landlord hereunder.  In the event that, on the Closing Date Landlord cannot deliver, and Tenant cannot obtain without extra payment, a final title insurance policy consistent with the foregoing terms and requirements, Tenant may, at its option, subject to Section 16 below:

(1)     Terminate this Agreement, or

(2)     Waive the Objections and proceed to Closing.

6.     **Conditions to Tenant's Obligations**.

A.     Inspection Period.  Tenant shall have until 5:00 PM Pacific Time on the day that is thirty (30) days following the Effective Date (the "Inspection Period") to perform its investigation of the Project.  At any time prior to the expiration of the Inspection Period, Tenant shall have the right to terminate this Agreement by sending written notice thereof to Landlord, and upon delivery of such notice, this Agreement shall terminate and thereafter neither party hereto shall have any further rights, obligations or liabilities hereunder except for those matters that expressly survive termination of this Agreement.  During the Inspection Period, Tenant may conduct, among others, a Phase I environmental site assessment and such other investigations as Tenant deems appropriate.

B.     Material Adverse Change.  If there should occur a Material Adverse Change in the condition of the Project between the Effective Date and the Closing Date, Tenant shall have the right to accept a conveyance of the Project subject to the Material Adverse Change (which matter shall thereafter be deemed to be a Permitted Exception), with the right at Closing to receive a credit for the reasonably estimated amount of the cost to cure or loss resulting from the update in excess of Five Hundred Thousand Dollars ($500,000.00), but in an amount not to exceed five percent (5%) of the Purchase Price, provided that if the parties are unable to agree on the amount of the reasonably estimated amount of the cost to cure or loss resulting from such Material Adverse Change, the dispute shall be resolved by arbitration following the procedures set forth in Section 14 of Addendum 4 of the Deed of Lease and in the event the arbitration is not concluded by the Closing, the disputed amount of the purchase price credit shall be held in escrow until the final arbitration order is issued; or (b) to terminate this Agreement by sending written notice thereof to Landlord, and upon delivery of such notice of termination, this Agreement shall terminate and the Earnest Money shall be returned to Tenant, and thereafter neither party hereto shall have any further rights, obligations, or liabilities hereunder except for those matters that expressly survive termination of this Agreement.  "**Material Adverse Change**" for purposes of this Agreement shall mean a substantial change, or group of changes when aggregated together, and which are not caused by, through or under Tenant or its affiliates, that has an adverse impact on the

Project's use or operation and such impact has a monetary value equal to at least Five Hundred Thousand Dollars ($500,000.00).

7.      **Prorations**.  Landlord and Tenant agree to the following prorations and allocation of Closing and related costs:

A.      <u>Title Insurance and Closing Fee</u>.  The cost of the Title Commitment and any title policy shall be allocated according to prevailing custom or practice in the county in which the Project is located.  Landlord and Tenant will each pay one-half of any reasonable and customary closing fee or charge imposed by the Title Company.

B.      <u>Survey</u>.  Tenant shall pay the cost of the Survey.

C.      <u>Deed Tax</u>.  Any state deed or similar recordation tax related to the recording of the deed shall be allocated according to prevailing custom or practice in the county in which the Project is located.

D.      <u>Real Estate Taxes and Special Assessments</u>.  Real estate taxes and installments of special assessments payable therewith payable in the year prior to the year of Closing and all prior years will be paid by Landlord.  Real estate taxes and installments of special assessments payable in the year of Closing shall be prorated on a daily basis by Landlord and Tenant as of the Closing Date based upon a calendar year. Tenant shall be responsible for all real estate taxes and installments of special assessments payable in years following the year of Closing.

E.      <u>Recording Costs</u>.  Tenant will pay the cost of recording the warranty deed.  Landlord shall pay the cost of recording any documents necessary to perfect its own title or which release encumbrances other than Permitted Encumbrances.

F.      <u>Rents/Operating Expenses</u>.  All rents and operating expenses related to the Project shall be allocated between the parties in accordance with their respective periods of ownership.

G.      <u>Charges</u>.  All other charges relating the Project will be paid or prorated according to prevailing custom or practice in the county in which the Project is located.

H.      <u>Professional Fees</u>.  Each of the parties will pay its own attorneys', accountants' and consultants' fees.

8.      **Landlord's Warranties**. As of the Effective Date, Landlord hereby represents and warrants to Tenant and agrees as follows:

A.      Landlord has not entered into any other agreements, or options or first refusals, which give any third party any right or option to purchase or lease any part of the Project.

B.      Landlord has disclosed and made available to Tenant all reports and investigations in Landlord's possession relating to Hazardous Substances and the Project (collectively, the "<u>Environmental Reports</u>").  The term "<u>Hazardous Substance</u>," in the singular and plural form, means any "hazardous substance" as defined in the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended from time to time (42 U.S.C. §§ 9601 et. seq.), any substances or materials which are classified or considered to be hazardous, contaminants, toxic or pollutants, or otherwise regulated under the laws of the State of in which the Project is located (collectively the "<u>Environmental Requirements</u>"), and crude oil and gasoline, and any fraction thereof, asbestos in any form or condition, area-formaldehyde insulation, and polychlorinated biphenyls in any form or condition.

C.      Except as disclosed in the Environmental Reports, to Seller's actual knowledge, there is no environmental condition, situation or incident on, at, or concerning the Project, that could give rise to an action or liability under any law, rule, ordinance, or common law theory.

D.      Landlord has paid for, or will pay for on or before the Closing Date (or will provide Tenant with a credit at Closing therefore), all work, supplies and materials, performed upon and supplied to the Project at the request of Landlord or any of its contractors.

E.      Landlord has not received written notice of any litigation affecting or calling into question the Project or any part or component thereof, or Landlord's interest therein.

F.      Landlord has not received written notice of any condemnation proceeding pending or threatened with respect to any part of the Project.

G.      Except as to those liens of record with respect to the Project which shall be released on or before the Closing Date, Landlord is the owner of, and there exists no lien, encumbrance or adverse claim with respect to any fixtures comprising part of the Project.

H.      There are no management agreements, service, maintenance or other contracts or equipment or capital leases relating to the Project entered into by or on behalf of Landlord or its affiliates or contractors other than those which can and, at Tenant's option and Landlord's expense, will be cancelled on or before the Closing Date; and Landlord has disclosed in writing to Tenant all such contracts and equipment and capital leases, if any.

I.      Except for the Deed of Lease, there are no leases or other occupancy or use agreements related to the Project, and, except as set forth in the Permitted Encumbrances, no party, other than Tenant, shall have any right to use or occupy the Project from and after the Closing Date.

J.      The Key Individuals are the individuals within Landlord and its affiliates that have the most knowledge of the subject matter of the representations and warranties set forth herein.

As used herein, the term "Seller's actual knowledge," and like phrases, means to the actual direct present knowledge of Seller's Manager and Brian Watson (collectively, the "Key Individuals") without inquiry or investigation, and such person shall not have any personal liability or be obligated to perform any due diligence investigations in connection with making any representations or warranties herein.

All representations and warranties of Landlord in this Agreement (the "Landlord Representations") shall survive the Closing Date and the delivery of the Deed for a period of six (6) months (the "Limitation Period") and Landlord shall have no liability thereafter with respect to such representations and warranties except to the extent Tenant has filed a lawsuit in a court of law against Landlord during such six (6) month period for breach of any representation or warranty.  No claim for a breach of any Landlord shall be actionable or payable (a) if that breach results from or is based on a condition, state of facts or other matter that was disclosed to Tenant in writing prior to the Closing or in any due diligence document delivered to Tenant prior to the Closing or the Title Commitment, (b) unless the valid claims for all such breaches collectively aggregate at least Twenty-Five Thousand Dollars ($25,000), and (c) unless written notice containing a description of the specific nature of such breach is given by Tenant to Landlord prior to the expiration of the Limitation Period and an action is commenced by Tenant against Landlord with respect to any such claims on or before the expiration of the Limitation Period.  In no event shall Landlord's aggregate liability to Tenant for any and all breaches of the representations in Section 8 of this Agreement exceed the amount $350,000.00.  In no event shall Landlord be responsible for any punitive, exemplary, extraordinary, or any other damages except actual damages.

9.      **Landlord's Disclaimer**. EXCEPT AS EXPRESSLY SET FORTH IN THIS AGREEMENT, THE LEASE OR IN ANY CLOSING DOCUMENTS, TENANT ACKNOWLEDGES AND AGREES THAT LANDLORD HAS NOT MADE, DOES NOT MAKE AND SPECIFICALLY NEGATES AND DISCLAIMS ANY REPRESENTATIONS, WARRANTIES, PROMISES, COVENANTS, AGREEMENTS OR GUARANTIES OF ANY KIND OR CHARACTER WHATSOEVER, WHETHER EXPRESS OR IMPLIED, ORAL OR WRITTEN, PAST, PRESENT OR FUTURE, OF, AS TO, CONCERNING OR WITH RESPECT TO (A) THE VALUE, NATURE, QUALITY OR CONDITION OF THE PROPERTY, INCLUDING, WITHOUT LIMITATION, THE WATER, SOIL AND GEOLOGY, (B) THE INCOME TO BE DERIVED FROM THE PROPERTY, (C) THE

SUITABILITY OF THE PROPERTY FOR ANY AND ALL ACTIVITIES AND USES WHICH BUYER OR ANY TENANT MAY CONDUCT THEREON, (D) THE COMPLIANCE OF OR BY THE PROPERTY OR ITS OPERATION WITH ANY LAWS, RULES, ORDINANCES OR REGULATIONS OF ANY APPLICABLE GOVERNMENTAL AUTHORITY OR BODY, (E) THE HABITABILITY, MERCHANTABILITY, MARKETABILITY, PROFITABILITY OR FITNESS FOR A PARTICULAR PURPOSE OF THE PROPERTY, (F) THE MANNER OR QUALITY OF THE CONSTRUCTION OR MATERIALS, IF ANY, INCORPORATED INTO THE PROPERTY, (G) THE MANNER, QUALITY, STATE OF REPAIR OR LACK OF REPAIR OF THE PROPERTY, OR (H) COMPLIANCE WITH ANY ENVIRONMENTAL PROTECTION, POLLUTION OR LAND USE LAWS, RULES, REGULATIONS, ORDERS OR REQUIREMENTS, INCLUDING THE EXISTENCE IN OR ON THE PROPERTY OF HAZARDOUS MATERIALS OR (I) ANY OTHER MATTER WITH RESPECT TO THE PROPERTY; AND, EXCEPT AS PROVIDED BY THIS AGREEMENT, THE LEASE OR ANY CLOSING DOCUMENTS, TENANT HEREBY WAIVES ANY RIGHT TO MAKE ANY CLAIM BASED ON ANY OF THE FOREGOING, INCLUDING, WITHOUT LIMITATION, ANY RIGHT TO MAKE ANY CLAIM AGAINST LANDLORD BASED ON THE VIOLATION OF ANY ENVIRONMENTAL LAWS.  ADDITIONALLY, NO PERSON ACTING ON BEHALF OF LANDLORD IS AUTHORIZED TO MAKE, AND BY EXECUTION HEREOF OF BUYER ACKNOWLEDGES THAT, EXCEPT AS PROVIDED BY THE AGREEMENT, THE LEASE OR THE CLOSING DOCUMENTS,  NO PERSON HAS MADE, ANY REPRESENTATION, AGREEMENT, STATEMENT, WARRANTY, GUARANTY OR PROMISE REGARDING THE PROPERTY OR THE TRANSACTION CONTEMPLATED HEREIN; AND NO SUCH REPRESENTATION, WARRANTY, AGREEMENT, GUARANTY, STATEMENT OR PROMISE IF ANY, MADE BY ANY PERSON ACTING ON BEHALF OF LANDLORD SHALL BE VALID OR BINDING UPON SELLER UNLESS EXPRESSLY SET FORTH HEREIN, OR IN THE LEASE OR IN ANY CLOSING DOCUMENTS.  TENANT FURTHER ACKNOWLEDGES AND AGREES THAT HAVING BEEN GIVEN THE OPPORTUNITY TO INSPECT THE PROPERTY, BUYER IS RELYING SOLELY ON ITS OWN INVESTIGATION OF THE PROPERTY AND NOT ON ANY INFORMATION PROVIDED OR TO BE PROVIDED BY LANDLORD EXCEPT AS EXPRESSLY SET FORTH IN THIS AGREEMENT, THE LEASE AND/OR THE CLOSING DOCUMENTS, AND AGREES TO ACCEPT THE PROPERTY AT THE CLOSING AND WAIVE ALL OBJECTIONS OR CLAIMS AGAINST LANDLORD (INCLUDING, BUT NOT LIMITED TO, ANY RIGHT OR CLAIM OF CONTRIBUTION) ARISING FROM OR RELATED TO THE PROPERTY OR TO ANY HAZARDOUS MATERIALS ON THE PROPERTY EXCEPT AS EXPRESSLY SET FORTH IN THIS AGREEMENT.  TENANT FURTHER ACKNOWLEDGES AND AGREES THAT ANY INFORMATION PROVIDED OR TO BE PROVIDED WITH RESPECT TO THE PROPERTY WAS OBTAINED FROM A VARIETY OF SOURCES AND THAT LANDLORD HAS NOT MADE ANY INDEPENDENT INVESTIGATION OR VERIFICATION OF SUCH INFORMATION AND MAKES NO REPRESENTATIONS AS TO THE ACCURACY, TRUTHFULNESS OR COMPLETENESS OF SUCH INFORMATION EXCEPT AS EXPRESSLY SET FORTH IN THIS AGREEMENT, THE LEASE OR ANY CLOSING DOCUMENTS. EXCEPT AS EXPRESSLY SET FORTH IN THIS AGREEMENT, THE LEASE OR ANY CLOSING DOCUMENT, LANDLORD IS NOT LIABLE OR BOUND IN ANY MANNER BY ANY VERBAL OR WRITTEN STATEMENT, REPRESENTATION OR INFORMATION PERTAINING TO THE PROPERTY, OR THE OPERATION THEREOF, FURNISHED BY ANY REAL ESTATE BROKER, CONTRACTOR, AGENT, EMPLOYEE, SERVANT OR OTHER PERSON. EXCEPT AS EXPRESSLY SET FORTH IN THIS AGREEMENT, THE LEASE OR ANY CLOSING DOCUMENTS, TEANNT FURTHER ACKNOWLEDGES AND AGREES THAT TO THE MAXIMUM EXTENT PERMITTED BY LAW, THE SALE OF THE PROPERTY AS PROVIDED FOR HEREIN IS MADE ON AN "AS IS" CONDITION AND BASIS WITH ALL FAULTS.  IT IS UNDERSTOOD AND AGREED THAT THE PURCHASE PRICE HAS BEEN ADJUSTED BY PRIOR NEGOTIATION TO REFLECT THAT ALL OF THE PROPERTY IS SOLD BY LANDLORD AND PURCHASED BY TENANT SUBJECT TO THE FOREGOING. THE PROVISIONS OF THIS SUBSECTION SHALL SURVIVE THE CLOSING OR ANY TERMINATION HEREOF.

10.    **Release of Landlord**. Except as otherwise provided herein, the Deed of Lease and/or any Closing documents, Tenant, for itself and its agents, affiliates, successors and assigns, hereby releases and forever discharges

Landlord, its agents, affiliates, successors, assigns, Landlord's managers, members, partners, shareholders, officers, and directors, from any and all rights, claims and demands at law or in equity, whether direct or indirect, foreseen or unforeseen, or known or unknown at the time of this Agreement, which Tenant has or may have in the future, arising out of, or in any way connected with the waivers set forth above.  Tenant hereby specifically waives the provisions of any law of any state, territory or jurisdiction that provides that a general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor. Tenant hereby specifically acknowledges that Tenant has carefully reviewed this Section 10 and discussed its import with legal counsel and that the provisions of this Section 10 are a material part of the Agreement.  The disclaimer and release contained in this Section 10 shall not merge with the transfer of title and shall survive recordation of the Deed.

11.   **Broker's Commission**.  Landlord and Tenant represent and warrant to each other that they have dealt with no brokers, finders or the like in connection with this transaction. Landlord and Tenant otherwise agree that each is solely responsible for all fees and charges which may become due and payable to their respective brokers, and further agree to indemnify each other and to hold each other harmless against all claims, damages, costs or expenses of or for any other such fees or commissions resulting from their actions or agreements regarding the execution or performance of this Agreement, and will pay all costs of defending any action or lawsuit brought to recover any such fees or commissions incurred by the other party, including reasonable attorneys' fees.

12.   **Assignment**.  Tenant shall have an unconditional right to assign this Agreement; provided that no such assignment will relieve the assigning party of its obligations under this Agreement.  Landlord shall not have a right to assign this Agreement or its interest in the Project.

13.   **Survival**.  The respective covenants, agreements, indemnifications, warranties and other terms of this Agreement will survive and be in full force and effect for a period of twenty-four (24) full calendar months after the Closing, and shall not be deemed to have merged into any of the closing documents.

14.   **Notices**.  All notices, approvals, consents, requests or demands required or permitted to be given or served by either party to this Agreement shall be in writing (unless otherwise expressly set forth herein to the contrary) and shall be delivered: (a) personally, (b) by depositing with the United States Postal Service, postage prepaid, by registered or certified mail, return receipt requested, or (c) by a nationally recognized overnight delivery service providing proof of delivery, in all event such events, properly addressed to the addresses set forth below. Either party may by notice given aforesaid change its address for all subsequent notices.  Except where otherwise expressly provided to the contrary, notice shall be deemed given upon delivery or when delivery is refused.

Landlord's Address:  c/o Northstar Commercial Partners

1999 Broadway, Suite 3500
Denver, Colorado 80202

With copy to:

Jones & Keller, P.C.
1999 Broadway, Suite 3150
Denver, Colorado 80202
Attn: Kerri P. Assell

Tenant's Address:

Address:
c/o Amazon.com, Inc.
Attention:  Real Estate Manager (AWS) (IAD175)

42554309.16

410 Terry Ave. N
Seattle, WA 98109-5210

With copy to:
c/o Amazon.com, Inc.
Attention:  General Counsel (Real Estate) (IAD175)
410 Terry Ave. N
Seattle, WA 98109-5210

With copies to:

global-lease-abstraction@amazon.com,
Legal-us-realestate@amazon.com, and
NADC-Rent@amazon.com,

using the subject line – Re: IAD175

15.    **Captions**.  The section headings or captions appearing in this Agreement are for convenience only, are not a part of this Agreement and are not to be considered in interpreting this Agreement.

16.    **Entire Agreement; Modification**.  This written Agreement constitutes the complete agreement between the parties and supersedes any prior oral or written agreements between the parties regarding the Project.  There are no oral agreements that change this Agreement and no waiver of any of its terms will be effective unless in a writing executed by the parties.

17.    **Binding Effect**.  This Agreement binds and benefits the parties and their successors and assigns, and heirs and personal representatives.

18.    **Controlling Law**.  This Agreement shall be governed by the laws of the State where the Project is located without regard to any conflicts of law provisions.

19.    **Remedies**.  If Tenant defaults under this Agreement, Landlord may terminate this Agreement by giving notice to Tenant.  If Tenant fails to cure such default within thirty (30) days of the date of such notice, this Agreement will terminate and Tenant will be liable to Landlord for all costs and expenses incurred by Landlord in connection with this sale in an amount not to exceed $50,000. Termination of this Agreement will be the sole remedy available to Landlord for such default by Tenant, and Tenant will not be liable for damages or subject to equitable relief. If Landlord defaults under this Agreement, Tenant may terminate this Agreement upon ten (10) days' notice to Landlord (Landlord having cure rights during the 10-day period).  Nothing in this Section 16 precludes Tenant from seeking and recovering specific performance of this Agreement or damages upon Landlord's default, so long as any such action is commenced within one hundred and eighty (180) days of the alleged default by Landlord.

20.    **Counterparts**.  This Agreement may be executed in counterparts, each of which shall be deemed an original, and which together shall constitute a single, integrated contract.

[signature page follows]

The properly authorized representatives of the parties set forth below, have executed this Agreement on the dates set forth below, to be effective as of the later of the dates shown below (the "Effective Date").

Landlord:

DULLES NCP II, LLC,
a Delaware limited liability company

By: _____
Name: _____
Title: _____
Date: _____

Tenant:

AMAZON DATA SERVICES, INC.,
a Delaware corporation

By:
Name: _____
Title: _____
Date: _____

42554309.16

**EXHIBIT A to ROFO/ROFR PURCHASE AGREEMENT**

Depiction of the Project

**EXHIBIT B to ROFO/ROFR PURCHASE AGREEMENT**

<u>Legal Description of Project</u>





**EXHIBIT C to ROFO/ROFR PURCHASE AGREEMENT**

<u>Permitted Encumbrances</u>

1.      Real estate taxes due and payable in the year of Closing (subject to proration) and subsequent years.

2.      Building and zoning laws and ordinances, and state and federal regulations.

3.      Matters shown on the Title Commitment and Survey and not objected to by Tenant.

**Exhibit D to EXHIBIT F**

**FORM OF MEMORANDUM OF ROFO/ROFR AGREEMENT**

Prepared Outside the Commonwealth of Virginia

**RETURN ADDRESS:**

_____

_____

_____

---

**MEMORANDUM OF RIGHT OF FIRST OFFER/RIGHT OF FIRST REFUSAL**

REFERENCE #:

GRANTOR:        **DULLES NCP II, LLC**

GRANTEE:        **AMAZON DATA SERVICES, INC.**

TAX MAP NOS.:     **[INSERT]**

      This Memorandum of Right of First Offer/Right of First Refusal ("**Memorandum**") is dated as of the Effective Date (defined below), with respect to the Right of First Offer/Right of First Refusal contained in that certain Right of First Offer and Right of First Refusal Agreement dated _____, 2020, as amended ("**ROFO/ROFR Agreement**"), between **DULLES NCP II, LLC**, a Delaware limited liability company ("**Grantor**"), and **AMAZON DATA SERVICES, INC.**, a Delaware corporation ("**Grantee**"), relating to the property legally described on Exhibit A hereto ("**Property**"), for purposes of memorializing and recording certain terms thereof, and to give record notice of the Right of First Offer/ Right of First Refusal contained in the ROFO/ROFR Agreement and the rights created thereby. The summarized terms provided herein are not intended to fully or completely set forth the provisions of the Right of First Offer/Right of First Refusal or the ROFO/ROFR Agreement, for an understanding of which reference must be made to the ROFO/ROFR Agreement, and nothing in this Memorandum shall have the effect of in any way modifying, supplementing or abridging the Right of First Offer/Right of First Refusal or the ROFO/ROFR Agreement or any of its provisions as the same now or may hereafter be in force and effect. The Right of First Offer/Right of First Refusal includes a right of first offer to purchase the Property and a right of first refusal to purchase the Property.

      In addition to those terms referred to hereinabove, the Right of First Offer/Right of First Refusal and ROFO/ROFR Agreement contain numerous other terms, covenants and conditions, and notice is hereby given that reference should be made to the document directly with respect to the details of such terms, covenants and conditions. In the event of any conflict between the provisions of this instrument and the

42554309.16

ROFO/ROFR Agreement, the provisions of the ROFO/ROFR Agreement shall control over the Memorandum.

The parties have executed this Memorandum on the dates set forth below, to be effective as of the later of the dates shown below (the "Effective Date").

**GRANTEE: AMAZON DATA SERVICES, INC.,** a Delaware corporation

By:_____

Name:_____

Title:_____

Date Signed:_____

STATE OF WASHINGTON

COUNTY OF KING

      Before me, the subscribers, a notary public in and for said county, personally appeared _____, the _____ of AMAZON DATA SERVICES, INC., a Delaware corporation in the foregoing instrument who acknowledged the signing of the foregoing instrument to be his/her free act and deed on behalf of the company for the uses and purposes set forth therein.

      IN WITNESS WHEREOF, I have hereunto signed my name and affixed my official seal on the _____ day of _____, 2020.

_____

NOTARY PUBLIC,

STATE OF WASHINGTON

42554309.16

**GRANTOR: DULLES NCP II, LLC**

By:_____

Name:_____

Title:_____

Date Signed:_____

STATE OF _____

COUNTY OF _____

Before me, the subscribers, a notary public in and for said county, personally appeared _____, the _____ of Dulles NCP II, LLC in the foregoing instrument who acknowledged the signing of the foregoing instrument to be his free act and deed on behalf of the company for the uses and purposes set forth therein.

IN WITNESS WHEREOF, I have hereunto signed my name and affixed my official seal on the _____ day of _____, 2020.

_____

NOTARY PUBLIC,

STATE OF _____

42554309.16

**EXHIBIT G**

**FORM OF AMENDED AND RESTATED DECLARATION**

[Attached]



Loudoun County, VA          Pgs:32
12/23/2019 1:16:15 PM
Gary M. Clemens, Clerk



Document Prepared By
Thomas J. Colucci, Esq. (VBN 12596)
Walsh, Colucci, Lubeley & Walsh, P.C.
2200 Clarendon Blvd., Suite 1300
Arlington, Virginia 22201

## AMENDED AND RESTATED DECLARATION OF
## EASEMENTS, USE RESTRICTIONS AND
## RELATED AGREEMENTS

Dated: December 6, 2019
Location: As set forth on Exhibit A attached hereto.
Tax Parcel Numbers:

When Recorded Return To: Holley
First American Title Insurance Company
National Commercial Services
14150 Newbrook Drive, Suite 250
Chantilly, VA 20151
File No: NCS 477326 - 1
(52)