IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

---

AMAZON.COM, INC. AND AMAZON DATA
SERVICES, INC.,

    *Plaintiffs,*

  v.

WDC HOLDINGS LLC DBA NORTHSTAR
COMERCIAL PARTNERS; BRIAN
WATSON; STERLING NCP FF, LLC;
MANASSAS NCP FF, LLC; NSIPI
ADMINSITRATIVE MANAGER; NOVA
WPC LLC; WHITE PEAKS CAPTIAL LLC;
VILLANOVA TRUST; CARLETON NELSON;
CASEY KRISCHNER; ALLCORE
DEVELOPMENT LLC; FINBRIT HOLDINGS
LLC; CHESHIRE VENTURES LLC; JOHN
DOES 1-20,

    *Defendants.*

Civil Action No.
1:20-cv-00484-LO-TCB

---

## **DEFENDANT CASEY KIRSCHNER'S BRIEF IN SUPPORT OF MOTION TO DISMISS**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................................iii

INTRODUCTION .............................................................................................................. 1

COMPLAINT ALLEGATIONS ......................................................................................... 2

ARGUMENT AND CITATION OF AUTHORITY ........................................................... 4

    I.      Legal Standard .................................................................................................... 4

    II.    Amazon Fails to Sufficiently Plead the Existence of a Kickback
         or Bribery Scheme. ............................................................................................. 5

          1.     There are insufficient allegations to demonstrate that Mr.
                Kirschner took any specific action to benefit the Northstar
                Defendants. ............................................................................................ 6

          2.     There are insufficient allegations to demonstrate that Mr.
                Kirschner took any specific action to benefit the White
                 Peaks Defendants or the Blueridge Group............................................ 9

          3.     All of Amazon's claims based on the existence of Mr.
                Kirschner's participation in a "pay-to-play," kickback, or
                 bribery scheme must be dismissed. ..................................................... 10

    III.   Amazon Fails to Plead an Actionable Claim Under RICO. .......................... 10

          1.     Amazon fails sufficiently to allege claims under 18 U.S.C.
                 § 1962(a) or § 1962(b). .................................................................... 11

          2.     Amazon fails sufficiently to allege a claim under 18
                 U.S.C. § 1962(b). ............................................................................... 13

           3.     Amazon fails to allege a continuous pattern of
                racketeering......................................................................................... 13

          4.     The Complaint fails to allege an enterprise. ....................................... 15

    IV.   Amazon has failed to plead its fraud and RICO claims with
         particularity .................................................................................................... 16

    V.    Plaintiff's Common Law Claims Fail ............................................................ 20

          1.     Plaintiff Has Failed to State a Claim for Detinue ............................. 20

2.     Amazon Has Failed to State a Claim for Tortious
       Interference ............................................................................. 21

3.     Amazon Has Failed to Sufficiently Allege a Civil
       Conspiracy ............................................................................... 22

4.     Amazon Has Failed to State a Claim for Breach of
       Contract ................................................................................... 23

5.     Amazon Has Failed to State a Claim for Unjust
       Enrichment ............................................................................... 24

6.     Amazon's Claim for Conversion Must Be Dismissed ...................... 25

7.     Amazon Has No Claim Under Robinson-Patman ............................ 25

8.     Without a RICO Claim, the Court Does Not Have
       Supplemental Jurisdiction Over the Remaining Claims ................... 26

CONCLUSION ............................................................................................ 27

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Aggarwal v. Sikka*,
    No. 12-cv-60, 2012 U.S. Dist. LEXIS 199038 (E.D. Va. June 12, 2012) ...............................12

*Airlines Reporting Corp. v. Mundo Travel Corp.*,
    No. 1:10cv1119, 2012 U.S. Dist. LEXIS 202667 (E.D. Va. May 8, 2012)............................23

*Akira Techs., Inc. v. Conceptant, Inc.*,
    No. 1:17-cv-412, 2018 U.S. Dist. LEXIS 234788 (E.D. Va. Apr. 12, 2018) ........................27

*Alex v. Mabus*,
    No. 1:11cv1207, 2012 WL 2366151 (E.D. Va. June 20, 2012)................................................4

*Almy v. Grisham*,
    273 Va. 68 (2007) ...............................................................................................................22

*Arnlund v. Smith*,
    210 F. Supp. 2d 755 (E.D. Va. 2002) ...................................................................................17

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).........................................................................................................4, 5

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).........................................................................................................4, 5

*Boyle v. U.S.*,
    556 U.S. 938 (2009)...........................................................................................................16

*Busby v. Crown Supply*,
    896 F.2d 833 (4th Cir. 1990) ..............................................................................................11

*CGI Fed. Inc. v. FCI Fed., Inc.*,
    295 Va. 506 (2018) .............................................................................................................24

*Citibank, N.A. v. TPI Grp, Inc.*,
    No. 13CV1007, 2014 WL 2579984 (E.D. Va. June 9, 2014)..................................................5

*Dealers Supply Co., Inc. v. Cheil Indus., Inc.*,
    348 F. Supp. 2d 579 (M.D.N.C. 2004) ................................................................................17

*Dunlap v. Cottman Transmission Sys., LLC*,
    754 S.E.2d 313 (Vir. 2014)..................................................................................................22

*Ewig v. Dutrow*,
    128 Va. 416, 104 S.E. 791 (1920)........................................................................................24

*Export Liquor Sales, Inc. v. Ammex Warehouse Co.*,
    426 F.2d 251 (6th Cir. 1970), *cert. denied*, 400 U.S. 1000 (1971)........................................26

*Flip Mortg. Corp. v. McElhone*,
    841 F.2d 531 (4th Cir. 1988) ...........................................................................................14

*Freeman v. Chicago Title & Trust Co.*,
    505 F.2d 527 (7th Cir. 1974) ...........................................................................................26

*GE Inv. Private Placement Partners II*,
    247 F. 3d 543, 550-551 (4th Cir. 2001) ...........................................................................14

*Girgis v. Salient Sols., Inc.*,
    No. 1:11-cv-1287, 2012 U.S. Dist. LEXIS 94764 (E.D. Va. July 9, 2012)............................18

*Guerrero v. Katzen*,
    571 F. Supp. 714 (D.D.C. 1983) ......................................................................................12

*H.J. Inc. v. Northwestern Bell Tel. Co.*,
    492 U.S. 229 (1989)...................................................................................................13, 14

*Harrison v. Westinghouse Savannah River Co.*,
    176 F.3d 776 (4th Cir. 1999), *rev'd sub nom. on other grounds*, *Janus Capital
    Grp., Inc. v. First Derivative Traders*, 131 S. Ct. 2296 (2011) ...............................17

*In re Mut. Funds Inv. Litig.*,
    566 F.3d 111 (4th Cir. 2009) ...........................................................................................17

*Jarvis v. K2 Inc.*,
    No. C03-1265Z, 2004 U.S. Dist. LEXIS 33246 (W.D. Wash. Sept. 30, 2004)......................23

*Johnson v. MBA Consulting Servs.*,
    97 Va. Cir. 176 (Va. Cir. Ct. 2017)...................................................................................25

*Lokhova v. Halper*,
    441 F. Supp. 238 (E.D. VA 2020) ....................................................................................22

*Lyon v. Campbell*,
    No. 93-1570, 1994 U.S. App. LEXIS 17388 (4th Cir. July 15, 1994) ...................................14

*Mackey v. McDannald*,
    842 S.E.2d 379 (Va. 2020)...............................................................................................25

*McDonnell v. United States*,
    136 S. Ct. 2355 (2016).......................................................................................................5

*Park Ave. Condo. Owners Ass'n v. Buchan Devs., L.L.C.*,
    117 Wn. App. 369 (2003) .................................................................................................23

*Patterson v. Ford Motor Credit Co.*,
  No. 98-2774, 2000 U.S. App. LEXIS 1303 (4th Cir. Feb. 2, 2000) ..................................25, 26

*Republican Party of N.C. v. Martin*,
  980 F.2d 943 (4th Cir. 1992) ...................................................................................................4

*Rivera v. Wells Fargo Bank, N.A.*,
  No. 1:15-cv-1703, 2016 WL 1271038 (E.D. Va. Mar. 29, 2016).......................................4, 5

*Robertson v. Sea Pines Real Estate Cos.*,
  679 F.3d 278 (4th Cir. 2012) ...................................................................................................5

*S. Auburn, L.P. v. Old Auburn Mills, L.P.*,
  68 Va. Cir. 145 (Cir. Ct. 2005) .............................................................................................23

*Schaecher v. Bouffault*,
  772 S.E.2d 589 (Va. 2015).....................................................................................................21

*Secureinfo Corp. v. Telos Corp.*,
  387 F. Supp. 2d 593 (E.D. Va. 2005) ..............................................................................20, 21

*Shanaghan v. Cahill*,
  58 F.3d 106 (4th Cir. 1995) ...................................................................................................27

*State Analysis, Inc. v. Am. Fin. Servs. Assoc.*,
  621 F. Supp. 2d 309 (E.D. Va. 2009) ......................................................................................4

*Stephen Jay Photography, Ltd. v. Olan Mills, Inc.*,
  903 F.2d 988 (4th Cir. 1990) .................................................................................................26

*Synergy Greentech Corp. v. Magna Force, Inc.*,
  No. C12-5543 BHS, 2013 U.S. Dist. LEXIS 102333 (W.D. Wash. July 18,
  2013) ......................................................................................................................................23

*Talley v. Drumheller*,
  135 Va. 186 (1923) ................................................................................................................21

*TV Signal Co. v. American Tel. & Tel. Co.*,
  462 F.2d 1256 (8th Cir. 1972) ...............................................................................................26

*U.S. v. Cohen*,
  152 F.3d 321 (4th Cir. 1998) .................................................................................................21

*U.S. v. Hopson*,
  754 Fed. App'x. 153 (4th Cir. 2018) ......................................................................................16

*U.S. v. Mathis*,
  932 F.3d 242 (4th Cir. 2019) .................................................................................................16

*Union City Barge Line, Inc. v. Union Carbide Corp.*,
  823 F.2d 129 (5th Cir. 1987) ...........................................................................26

*United Leasing Corp. v. Thrift Ins. Corp.*,
  247 Va. 299 (1994) .........................................................................................25

*United Mine Workers of Am. v. Gibbs*,
  383 U.S. 715 (1966).......................................................................................27

*United States ex rel. Carter v. Halliburton Co.*,
  No. 1:08cv1162 (JCC), 2009 U.S. Dist. LEXIS 63649 (E.D. Va. 2009) ...............17

*United States v. Burfoot*,
  No. 2:16cr6, 2017 U.S. Dist. LEXIS 59833 (E.D. Va. Apr. 19, 2017) ..................6

*United States v. Conrad*,
  760 F. App'x 199 (4th Cir. 2019) ......................................................................5

*United States v. Jefferson*,
  674 F.3d 332 (4th Cir. 2012) ............................................................................6

*United States v. Jennings*,
  160 F.3d 1006 (4th Cir. 1998*)* ........................................................................5

*United States v. Pinson*,
  860 F.3d 152 (4th Cir. 2017) .............................................................14, 15, 16

*United States v. Vogt*,
  910 F.2d 1184 (4th Cir. 1990) .........................................................................12

*Van Vleck v. Sallyport Global Holdings, Inc.*,
  No. 1:19-cv-60, 2019 WL 2273845 (E.D. Va. May 28, 2019)................................4

*Vicars v. Atlantic Discount Co.*,
  205 Va. 934 (1965) .........................................................................................21

*Walsh v. Mitchell*,
  No. DKC 08-1897, 2010 U.S. Dist. LEXIS 97759 (D. Md. Sept. 17, 2010) .........15

*Want v. St. Martins Press LLC*,
  No. 1:12-cv-908, 2012 WL 5398887 (E.D. Va. Nov. 1, 2012) ..............................5

*Winn v. Aleda Construction Co.*,
  227 Va. 304, 315 S.E.2d 193 (Va. 1984)...........................................................20

*Zander v. Saxon Mortg. Serv.*,
  No. 1:13CV1141, 2014 U.S. Dist. LEXIS 183739 (M.D.N.C. Nov. 6, 2014) ........22

*Zaremski v. Keystone Title Assocs.*,
No. 88-2569, 1989 U.S. App. LEXIS 21428 (4th Cir. 1989) ..................................20

## RULES

Fed. R. Civ. P. 9(b) ..................................................................................17, 18, 19

Fed. R. Civ. P. 12(b)(6)........................................................................................4

## STATUTES

18 U.S.C. § 1961 ....................................................................................13, 15

18 U.S.C. § 1962(a) ....................................................................10, 11, 12, 13

18 U.S.C. § 1962(b) ............................................................................11, 13

18 U.S.C. § 1962(c) ....................................................................11, 13, 15

18 U.S.C. § 1962(d) ....................................................................................11

VA. Code § 8.01-114 ............................................................................20

## OTHER AUTHORITIES

*Ballentine's Law Dictionary*,
Chattels (3d ed. 2010) ........................................................................20

# INTRODUCTION

In its Verified Second Amended Complaint and Demand for Jury Trial ("the SAC" or "the Complaint"), Amazon weaves a fictional tale of "kickbacks," "bribes," and self-dealing real estate transactions allegedly done to benefit the defendants and to harm Amazon. While the SAC may make an interesting story, it is not grounded in sufficient facts and as a result, repeatedly relies on baseless inferences and innuendo to arrive at its false conclusions. With respect to Casey Kirschner, Amazon's vague, conclusory, and at times simply false allegations fall far short of stating any legally cognizable claim. The SAC should therefore be dismissed in its entirety as to Casey Kirschner.

At its core, Amazon's allegation against Mr. Kirschner appears to be that, while he was an Amazon employee, he misrepresented or failed to disclose his connections to one or more of the other defendants and used his position to "steer" business opportunities, including real estate development deals, to such defendants and their businesses. Notably, however, Amazon has failed to allege even a single specific instance in which Mr. Kirschner made a false statement or other misrepresentation to Amazon in connection with any of the business dealings or real estate transactions at issue. Even more glaringly, the Complaint is utterly devoid of any allegation of *how* Mr. Kirschner did *anything* to benefit any of the co-defendants in any business opportunity or transaction. Instead, Amazon improperly relies on conclusory allegations that Mr. Kirschner and/or Carleton Nelson—it is in many instances impossible to tell which of the two Amazon is making allegations against due to its consistent grouping of the two together—"steered" or "rigged" business opportunities or transactions without any further detail. However, Amazon does not allege that Mr. Kirschner had the *ability* to steer business or business opportunities to any particular entity. To the contrary, Amazon's own allegations confirm that dozens of other individuals within and outside Amazon helped negotiate the transactions at issue.

Further, the SAC repeatedly, consistently, and improperly attempts to lump the defendants together in groups, rather than making allegations as to what any particular individual has done. These repeated attempts to attribute the activities of one defendant to all or some of the other defendants is particularly glaring with respect to the allegations against Mr. Kirschner and Mr. Nelson. Rather than articulating what Amazon contends each individual did that was legally actionable, Amazon simply lumps them together as the "TM Defendants" and in virtually all instances seeks to impute the alleged actions of one to both. This grouping is improper, as even Amazon acknowledges that Mr. Nelson was not employed with Amazon for a significant portion of the relevant time period. As a result, Amazon has failed to allege in any non-conclusory way that Mr. Kirschner himself did anything improper that could form the basis of a legally cognizable claim. This is a critical failure given that alleged fraud forms the basis for a substantial number of claims. And, as this Court is aware, fraud must be pled with particularity. Amazon's failures in this respect are all the more surprising and inexcusable given that, by its own admission, Amazon has been investigating this matter since December 2019 with full access to discovery in its own files.

For all of these reasons, and as fully articulated below, the complaint should be dismissed in its entirety as to Casey Kirschner.

## COMPLAINT ALLEGATIONS

Casey Kirschner was a Real Estate Transaction Manager at Amazon from 2015 to 2020. SAC ¶¶ 17, 72.[1] In this role, his responsibilities included overseeing the development of AWS data centers in Northern Virginia. *Id.* ¶ 70. He reported directly to Mr. Nelson until Mr. Nelson's

---

[1] By citing to the Complaint, Mr. Kirschner neither accepts the accuracy of the allegations in the Complaint nor concedes the allegations.

departure from Amazon in June 2019. *Id.* ¶ 69. The terms of Mr. Kirschner's employment with Amazon was governed by his employment contract, which notably includes an exclusive forum selection and choice of law clause that requires all disputes between Mr. Kirschner and Amazon to be resolved in Washington state under Washington state's laws. *Id.* ¶ 222. This clause is currently the subject of a pending motion to transfer, Dkt # 164.

All real estate proposals, those involving the co-defendants, White Peaks and Northstar, were subject to Amazon's internal review and approval processes. *Id.* ¶¶ 62, 63 ("Amazon has a multi-step process for selecting suitable land for both lease and purchase transactions.").[2]

In his role selecting development partners for future data center sites in Northern Virginia, Mr. Kirschner sent Northstar and defendant Brian Watson a Request for Proposal ("RFP"). *Id.* ¶ 178. During that process, Northstar was vetted by multiple Amazon employees who ultimately determined that Northstar was a potentially valuable business partner for Amazon. *Id.* ¶ 63.

Following Northstar's approval as a business partner, Northstar submitted competitive bids for several build-to-suit real estate development transactions for Amazon in Northern Virginia. *Id.* ¶ 169. Amazon ultimately awarded Northstar several of these development projects, which Amazon has styled the "Lease Transaction Enterprise." *Id.* ¶ 4, 169. Indeed, Amazon awarded a contract to Northstar as recently as January 2020, well after Amazon itself acknowledges that it had been notified of and begun to investigate the alleged "kickback scheme" that forms the basis of Amazon's complaint. *Id.* In addition to these lease transactions, Amazon also directly purchased land from White Peaks and certain of the defendants in July 2019, a deal which Amazon

_____

[2] Defendant Carl Nelson explains in his Motion to Dismiss the details of Amazon's extensive and exhaustive approval process. Memorandum of Law in Support of Defendant Carleton Nelson's Motion to Dismiss, § II. "Amazon's Process for Approving Real Estate Transactions."

has styled the "Direct Purchase Enterprise." *Id.* ¶ 298. Finally, Amazon directly purchased land it refers to as the "Blueridge Property" for $83 million in late 2019. *Id.* ¶ 315. As with the other transactions at issue in the complaint, Amazon approved these purchases through its ordinary internal approval process, which included review and approval of the transaction by multiple Amazon employees more senior than Mr. Kirschner.

**ARGUMENT AND CITATION OF AUTHORITY**

I.    <u>**Legal Standard**</u>

A motion to dismiss tests the sufficiency of the complaint. *Van Vleck v. Sallyport Global Holdings, Inc.*, No. 1:19-cv-60, 2019 WL 2273845, at *2 (E.D. Va. May 28, 2019) (citing *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). In deciding a Rule 12(b)(6) motion, courts must accept all well-pleaded facts as true and construe those facts in a light most favorable to the claimant. *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). However, the foregoing requirement applies only to facts, not to legal conclusions. *Alex v. Mabus*, No. 1:11cv1207 (LMB/IDD), 2012 WL 2366151, at *2 (E.D. Va. June 20, 2012) (citing *Iqbal*, 556 U.S. at 678). A court need not accept legal conclusions drawn from the facts, or unwarranted references, unreasonable conclusions, or arguments. *State Analysis, Inc. v. Am. Fin. Servs. Assoc.*, 621 F. Supp. 2d 309, 315 (E.D. Va. 2009).

The pleader must plead facts sufficient to raise a right of relief above the speculative level, on the assumption that all well-pleaded allegations in the complaint are true. *Alex*, 2012 WL 2366151 at *2 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). If the well-pleaded facts do not allow the court to infer more than the mere possibility of misconduct, the complaint has alleged—but not shown—that the pleader is entitled to relief. *Id.* (quoting *Iqbal*, 556 U.S. at 678). "Although a plaintiff 'need not forecast evidence sufficient to prove the elements of the claim,' the complaint must 'allege sufficient facts to establish those elements.'" *Rivera v. Wells*

4

*Fargo Bank, N.A.*, No. 1:15-cv-1703, 2016 WL 1271038, at *2 (E.D. Va. Mar. 29, 2016) (quoting *Robertson v. Sea Pines Real Estate Cos.*, 679 F.3d 278, 291 (4th Cir. 2012) (internal quotation marks omitted)). "[A] formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Twombly*, 550 U.S. at 555).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the pleader pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Want v. St. Martins Press LLC*, No. 1:12-cv-908, 2012 WL 5398887, at *1 (E.D. Va. Nov. 1, 2012). To determine whether allegations are plausible, a court may draw on context, judicial experience, and common sense. *Citibank, N.A. v. TPI Grp, Inc.*, No. 13CV1007, 2014 WL 2579984, at *6 (E.D. Va. June 9, 2014).

## II.     Amazon Fails to Sufficiently Plead the Existence of a Kickback or Bribery Scheme.

Amazon relies on the theory that Mr. Kirschner engaged in a kickback or bribery scheme as the foundation for the majority of its claims. A kickback or bribery scheme requires the existence of a "quid pro quo," which courts in this Circuit have interpreted as requiring an exchange of a thing of value in return for a specific action. *See McDonnell v. United States*, 136 S. Ct. 2355, 2372 (2016) ("quid pro quo" requires "the exchange of a thing of value for an 'official act.'"); *see also United States v. Conrad*, 760 F. App'x 199, 206 (4th Cir. 2019) ( "the quid pro quo requirement is satisfied so long as the evidence shows a course of conduct of favors and gifts flowing to a public official in exchange for a pattern of official actions favorable to the donor.") (quoting *United States v. Jennings*, 160 F.3d 1006, 1014 (4th Cir. 1998*)*). Here, however, the Complaint fails to sufficiently allege that Mr. Kirschner took any improper action to benefit either

the Northstar Defendants or the White Peaks Defendants.   *See United States v. Jefferson*, 674 F.3d 332, 358 (4th Cir. 2012) (the quid pro quo element of bribery requires that the official intended to perform acts benefiting the payor at the payor's request).   Because Amazon has not sufficiently pleaded the existence of a quid pro quo, any claim predicated on Mr. Kirschner's alleged receipt of a kickback or participation in a bribery scheme, must be dismissed.

1. <u>There are insufficient allegations to demonstrate that Mr. Kirschner took any specific action to benefit the Northstar Defendants.</u>

While the SAC repeatedly alleges, in sweeping and conclusory fashion, that Mr. Kirschner engaged in a "pay-to-play scheme" for the purpose of "steer[ing] lucrative company contracts, business opportunities, and proprietary or otherwise competitively sensitive business information to third parties who provided or agreed to provide the TM Defendants with personal benefits in exchange thereof," SAC ¶ 73, it fails to adequately allege facts demonstrating ***what*** Mr. Kirschner purportedly did to benefit the Northstar Defendants and ***how*** those actions improperly steered business to Northstar.   Without sufficient allegations of these critical elements, a kickback or bribery scheme cannot exist.   *United States v. Burfoot*, No. 2:16cr6, 2017 U.S. Dist. LEXIS 59833, at *17 (E.D. Va. Apr. 19, 2017) (requiring the jury to find that "defendant obtained a thing of value not due him or his office" and did so "knowing that the thing of value was given in return for official action").   And without sufficient facts to allege the existence of a kickback or bribery scheme, all of Amazon's claims that rely upon such a scheme must be dismissed.

Amazon's attempts to provide these facts in the SAC are unavailing.   Amazon alleges that the TM Defendants abused their positions of trust within the organization to "conspire with third parties on site diligence inputs" and then "manipulated the site presentations within Amazon to secure approval for steering contracts, transactions, and business opportunities to co-conspirators." SAC ¶ 80.   As an example of this, Amazon alleges that the TM Defendants' "presentations on

several of the Northstar sites represented that the proposed prices were 'below market' based on data points the TM Defendants selected, including what they described as 'recent site acquisitions made by [Amazon] competitors and other [relevant] developers.'" *Id.* ¶ 81. These allegations fail for a number of reasons.

First, Amazon summarily claims that the TM Defendants "conspire[d] with third parties on site diligence inputs," but fails to plead any facts to support this conclusory statement. Among other things, the SAC fails to allege which third parties Mr. Kirschner purportedly conspired with, what site diligence inputs Mr. Kirschner supposedly manipulated, and how that conduct would have "secure[d] approval" within Amazon. *Id.* ¶ 80. These deficiencies are highlighted by the allegation two paragraphs later that claims that the Northstar transactions involved "no less than 50 different parties involved in project development, project finance, tenancy, and miscellaneous project support services . . . over a multi-year period." *Id.* ¶ 85. The SAC alleges no facts to support how Mr. Kirschner purportedly conspired with these 50 different parties and what each of these parties' roles were in carrying out the "pay-to-play" scheme. For Amazon to claim the existence of a massive, multi-year conspiracy involving over 50 parties—without alleging any facts to support that conclusion—is simply incredible.

Second, the SAC alleges that the TM Defendants' "presentations on several of the Northstar sites represented that the proposed prices were 'below market' based on data points the TM Defendants selected." *Id.* ¶ 81. But Amazon does not—and cannot—allege that the representation that the proposed prices for the Northstar sites were "below market" was false.

Third, the SAC summarily alleges that the TM Defendants were able to perpetrate their scheme "because the lease and purchase transactions involved in their scheme are complex and involve months of diligence and a multitude of data points, contracts, and fee structures linked to

dynamic markets and business needs the TM Defendants were in a position to manipulate based on their inside knowledge of Amazon's business records, controls, and processes." *Id.* ¶ 82. But as with their other allegations, Amazon supports this statement with no facts. They claim that there were a "multitude of data points, contracts, and fee structures" that the "TM Defendants were in a position to manipulate," but cannot identify a single example among those "multitudes" that Mr. Kirschner actually did manipulate. The SAC's absence of any examples in this regard speaks volumes, showing that Amazon has no such examples to provide.

The SAC also alleges that Brian Watson, Carl Nelson, and Mr. Kirschner conspired "to submit a rigged Request for Proposal ('RFP') for certain Virginia real estate development projects." *Id.* ¶ 163. But as with their other conclusory and factually unsupported allegations regarding manipulation of site diligence data, Amazon provides no factual basis for their claim that Mr. Kirschner rigged an RFP in Northstar's favor. At most, the SAC alleges that "Casey Kirschner sent Watson an RFP soliciting terms on which Northstar could partner with Amazon to expand Amazon's build-to-suit facilities in Northern Virginia" and that "[o]n information and belief, the RFP Watson received was simply a pretext the TM Defendants used to justify steering contracts to Northstar on which Northstar would provide kickbacks and other benefits to the TM Defendants." *Id.* ¶ 177, 178. But these statements are not facts, they are only conclusions, which Amazon readily admits by its allegation "on information and belief." As a result, these statements are insufficient to demonstrate that Mr. Kirschner engaged in a scheme to rig bids in Northstar's favor.

At most, the supposed "facts" that Amazon alleges in support of a bid rigging scheme were that: (1) "Casey Kirschner sent Watson an RFP soliciting terms on which Northstar could partner with Amazon"; and (2) "Northstar had no prior business history with Amazon." *Id.* 177, 180.

These allegations, however, in no way plead sufficiently the existence of a bid rigging scheme. Nothing in those allegations plead any of the necessary particulars of a bid rigging scheme—they do not allege what other companies, if any, were bidding for the contracts that Northstar ultimately won; what information, if any, was passed to Northstar in violation of the competitive process; nor how the scheme was carried out. For Mr. Kirschner to have sent an RFP to the CEO of a company that had no prior business relationship with Amazon would not only be appropriate, it would make good business sense for Amazon—it is pro-competitive. Amazon's threadbare allegations do not plead sufficient facts to establish that Mr. Kirschner's actions harmed Amazon.

2. <u>There are insufficient allegations to demonstrate that Mr. Kirschner took any specific action to benefit the White Peaks Defendants or the Blueridge Group.</u>

Amazon's allegations related to Mr. Kirschner's purported improper involvement with the White Peaks transaction are even more deficient than those related to Northstar. Incredibly, the SAC contains no allegation whatsoever of anything that Mr. Kirschner supposedly did to improperly benefit the White Peaks Defendants. Among other things, there is no allegation that Mr. Kirschner provided confidential information belonging to Amazon to the White Peaks Defendants, no allegation that he had any involvement in changing the transaction from a build-to-suit to a direct purchase, and no allegation that he had any involvement in coordinating with the White Peaks Defendants how much premium would be realized from the sale.

At most, the SAC references a second-hand recollection that Northstar COO Timothy Lorman had of a conversation with Mr. Kirschner and Brian Watson, in which Mr. Kirschner allegedly commented that "he had never liked Kyle Ramstetter" and that Kyle Ramstetter had "'figured out what [Watson] and [Kirschner] were doing,' or words to similar effect." SAC ¶ 312. But there are at least two problems with this allegation. First, Mr. Lorman's choice to qualify his recollection with the phrase "or words to similar effect," puts into substantial doubt whether he

accurately remembers what Mr. Kirschner said. Second, even Mr. Lorman's quoted words do not provide facts to demonstrate that Mr. Kirschner did anything improper to benefit the White Peaks Defendants on the land sale transaction.

Additionally, Amazon has offered no facts to support its allegation Mr. Kirschner "facilitated" any other land acquisition for his personal benefit. *Id.* ¶ 314. Amazon only alleges that the purchase occurred due to the "machinations of TM Defendant Casey Kirschner," *id.* ¶ 321, but offers no allegations of actual specific facts to support that conclusory allegation.

What is a fact is that Amazon benefitted from the White Peaks transaction—it was not harmed—and the baseless accusations that are now being lobbed against Mr. Kirschner with respect to White Peaks are nothing more than effort to strong-arm Mr. Kirschner and his so-called co-conspirators to help Amazon realize a windfall to which it is not entitled.

3. All of Amazon's claims based on the existence of Mr. Kirschner's participation in a "pay-to-play," kickback, or bribery scheme must be dismissed.

Because Amazon has failed to adequately allege that Mr. Kirschner did anything to improperly benefit the Northstar Defendants or the White Peaks Defendants, the Complaint, by logical extension, fails to allege that Mr. Kirschner engaged in a "pay-to-play," kickback, or bribery scheme. As a result, any cause of action against Mr. Kirschner that rests upon his participation in such a scheme must be dismissed, including the RICO claim (Count I); Detinue (Count II); Fraud (Count III); Civil Conspiracy (Count V); Unjust Enrichment (Count VII); and Conversion and Constructive Trust (Count VIII).

## III. Amazon Fails to Plead an Actionable Claim Under RICO.

Amazon's RICO claims in Count I are deficient for additional reasons. *First*, as to the 1962(a) and 1962(b) claims, Amazon fails to adequately allege that Mr. Kirschner invested any income derived from a pattern of racketeering activity into an enterprise, *see* 18 U.S.C. § 1962(a),

or that he acquired or maintained any interest or control in an enterprise through a pattern of racketeering activity, *see* 18 U.S.C. § 1962(b).  ***Second***, the SAC fails to properly allege a "pattern of racketeering activity" or the existence of an "enterprise" for purposes of 18 U.S.C. § 1962(c). ***Third***, because Amazon has failed to state a claim for 1962(a), 1962(b), or 1962(c), any claim that Mr. Kirschner conspired to violate those provisions must also fail, *see* 18 U.S.C., § 1962(d).

      1.   <u>Amazon fails sufficiently to allege claims under 18 U.S.C. § 1962(a) or § 1962(b).</u>

18 U.S.C. § 1962(a) prohibits any person who has received income from a pattern of racketeering activity "to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." To allege a violation of Section 1962(a), "a plaintiff must show (a) receipt of income from a pattern of racketeering activity, and (b) the use or investment of this income in an enterprise."  *Busby v. Crown Supply*, 896 F.2d 833, 837 (4th Cir. 1990).  The SAC fails adequately to plead either of these elements.

First, for reasons discussed below, *see infra*, Section III. 3., Amazon has failed to plead facts sufficient to demonstrate a "pattern of racketeering activity."  Because no such pattern of racketeering has been adequately plead, Amazon cannot, as a logical matter, allege that Mr. Kirschner received income ***from*** such a pattern of activity.

Second, the SAC fails to plead facts sufficient to demonstrate that Mr. Kirschner used or invested any income in an enterprise.  The SAC alleges that the entity into which any income was invested was Northstar.  *See* SAC ¶ 422 ("The unlawful proceeds from the RICO Enterprise were used in part to operate defendant Northstar, which defendant Brian Watson converted as a vehicle and *alter ego* for the unlawful activities of the RICO Defendants' racketeering activities.").  But Amazon does not allege—nor can it allege—that Mr. Kirschner invested any income into

Northstar. At best, the Complaint alleges that Brian Watson invested in the Northstar entity. *Id.* ¶ 423 ("On information and belief, Watson commingled his personal finances with Northstar funds and assets.").

Moreover, to the extent that Amazon relies upon Villanova Trust as the entity into which Mr. Kirschner invested ill-gotten income, that argument also fails. Amazon alleges merely that funds were "laundered through" Villanova Trust. *Id.* ¶ 6. Amazon further alleges that "Villanova Trust is not in possession of any Amazon confidential or non-public proprietary information" and that "Villanova Trust has no monetary assets in its possession or control." *Id.* ¶ 350. Amazon, in short, alleges that Villanova Trust was merely a pass-through vehicle by which supposedly ill-gotten proceeds were able to flow from Northstar to Mr. Kirschner and Mr. Nelson. Putting aside Mr. Kirschner's view that these allegations are patently false, these allegations make clear that Amazon has failed to allege that any income—either legitimate or not—was "invested" into Villanova Trust by Mr. Kirschner. "The gravamen of Section 1962(a) is not the receipt of funds or benefits from a pattern of racketeering activity; rather, it is the investment of such funds to acquire an interest in, establish, or operate an 'enterprise.'" *Guerrero v. Katzen*, 571 F. Supp. 714, 721 (D.D.C. 1983); *see Aggarwal v. Sikka*, No. 12-cv-60, 2012 U.S. Dist. LEXIS 199038, at *11-12 (E.D. Va. June 12, 2012) ("To state a claim under § 1962(a), plaintiffs must allege (i) that defendants derived income from a pattern of racketeering activity, (ii) then used or invested, directly or indirectly, some part of that income in the establishment or operation, (iii) of an enterprise, (iv) which was engaged in or affected interstate commerce.") (citing *United States v. Vogt*, 910 F.2d 1184, 1194 (4th Cir. 1990)). Amazon alleges, at most, that Villanova Trust was used as a vehicle to receive funds or benefits and then merely passed those on to the TM Defendants. The Complaint does not allege that Mr. Kirschner invested those funds to acquire an

interest in, to establish, or to operate Villanova Trust.  To the contrary, the SAC alleges that Villanova Trust, for which the trustee was Christian Kirschner, was established "specifically to facilitate the concealed transfer to the TM Defendants of their 'referral' payments from Northstar on the Amazon lease projects."  SAC ¶ 174.  Amazon's own Complaint therefore demonstrates that Villanova Trust cannot properly be alleged to have been an enterprise into which Mr. Kirschner invested any income from a pattern of racketeering activity.

Finally, the property that is named in the government's forfeiture action—Mr. Kirschner's home in Minnesota, SAC ¶ 282—is not even alleged by Amazon to be the enterprise into which Mr. Kirschner invested income derived from a pattern of racketeering activity.  Because Amazon cannot plead that Mr. Kirschner invested any alleged proceeds into any of the named entities, Amazon's claim under Section 1962(a) fails and must be dismissed.

2. <u>Amazon fails sufficiently to allege a claim under 18 U.S.C. § 1962(b).</u>

18 U.S.C. § 1962(b) makes it unlawful for a person "to acquire or maintain, directly or indirectly, any interest in or control of any enterprise" through a pattern of racketeering activity. The entities that Amazon alleges for this claim are the same as those alleged as to its 1962(a) claim. And just as Amazon failed to allege properly that Mr. Kirschner invested income into those entities, Amazon also fails to allege that Mr. Kirschner acquired or maintained any interest in or control over those entities.  Its claim under Count I should therefore be dismissed.

3. <u>Amazon fails to allege a continuous pattern of racketeering.</u>

A defendant can only be found liable under 18 U.S.C. § 1962 (c) for a "pattern" of unlawful activities, not a single instance or several unrelated instances.  To demonstrate a pattern—which must contain at a minimum two separate acts of unlawful behavior, 18 U.S.C § 1961(5)—a plaintiff must show both "relatedness" and "continuity" between the various alleged unlawful acts. *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 241 (1989).  To establish continuity, a

plaintiff must sufficiently plead either closed-end continuity, "a series of related predicates [that] extend over a substantial period of time," or open-ended continuity, "past conduct that by its nature projects into the future with a threat of repetition." *Id*. at 241; *see also United States v. Pinson*, 860 F.3d 152, 161 (4th Cir. 2017). Amazon cannot satisfy the continuity requirement in either its closed-ended or its open-ended form for the alleged "RICO Enterprise."

Although Amazon alleges six instances of allegedly illegal activity to plead its pattern for the "RICO Enterprise," it still cannot meet the continuity requirement, either under the closed-ended theory or the open-ended theory. In attempting to establish continuity under the closed-ended theory, Amazon pleads that the alleged enterprise lasted less than two years—from September 2017 to August 2019. SAC ¶¶ 163, 369. But the Fourth Circuit has held numerous times that a scheme must last longer than two years to establish continuity under the closed-ended theory. *See Pinson*, 860 F.3d at 163 (two and a half years was insufficiently long to establish closed-ended continuity); *GE Inv. Private Placement Partners II*, 247 F. 3d 543, 550-551 (4th Cir. 2001) (17 months was insufficiently long to establish closed-ended continuity); *Flip Mortg. Corp. v. McElhone*, 841 F.2d 531, 538 (4th Cir. 1988) (seven years was insufficiently long to establish closed-ended continuity against a single victim); *Lyon v. Campbell*, No. 93-1570, 1994 U.S. App. LEXIS 17388, at *11 (4th Cir. July 15, 1994) (holding that a seven month scheme with a "limited purpose" of defrauding one entity was not sufficiently continuous). Thus, under clear Fourth Circuit case law, the "Lease Transaction Enterprise" cannot qualify as a closed-ended RICO enterprise as a matter of law.

Similarly, the temporal stopping point of the RICO Enterprise means it cannot qualify as an open-ended RICO enterprise. Amazon asserts—without factual support—that if it had "not discovered the actions of the RICO Defendants, the RICO Enterprise would have continued and

expanded undetected into new transactions and markets." SAC ¶ 370. But according to the factual allegations in Amazon's own complaint, this cannot be the case. According to the SAC, Carl Nelson was terminated by Amazon in June 2019 for ethics violations, apparently unrelated to this matter. SAC ¶ 29. And Amazon transitioned Mr. Kirschner's responsibilities to other team members starting in late 2019, before terminating his employment in April 2020. SAC ¶ 72. Thus, under Amazon's own version of the story, the RICO enterprise necessarily terminated as of "late 2019." After that point, neither of the TM Defendants, including Mr. Kirschner, was in any position to carry on with the alleged scheme. Courts have held that in such circumstances, a RICO claim cannot lie under an open-ended theory of continuity. *See US Airline Pilots Ass'n*, 615 F.3d at 319 (holding that a conspiracy with a "built-in ending point" could not qualify for RICO) (citation omitted); *Pinson*, 860 F.3d 153 (kickback and bribery schemes did not establish open-ended continuity under RICO); *Walsh v. Mitchell*, No. DKC 08-1897, 2010 U.S. Dist. LEXIS 97759, at *28 (D. Md. Sept. 17, 2010) ("Courts considering schemes that were of short duration, involving a narrow focus, a single victim, and posing no threat of continuing future criminal activity, have consistently found that that no pattern of racketeering activity was established") (collecting cases). Here, because Amazon has pleaded no threat of continuing future activity, and instead has attempted to plead a standard-issue fraud scheme of short duration, narrow focus, and a single victim, its claims under RICO in Count I should be dismissed.

### 4. The Complaint fails to allege an enterprise.

Even if Amazon could successfully plead a pattern of allegedly unlawful activity—which it cannot—it still could not successfully plead a RICO "enterprise" as required by 18 U.S.C. § 1962(c)(4). For both of its RICO claims in Counts I and II, Amazon must plausibly plead that a series of individuals with no discernable structure or hierarchy constituted an "enterprise," as that term is defined in 18 U.S.C. § 1961. The Supreme Court has enumerated three requirements

plaintiffs must prove—and therefore must plead—to establish that an "association of individuals" was an "enterprise" for purposes of RICO: a purpose, relationship among those participating in the alleged enterprise, and sufficient longevity to carry out the alleged purpose. *Boyle v. U.S.*, 556 U.S. 938, 946 (2009); *see also U.S. v. Hopson*, 754 Fed. App'x. 153 (4th Cir. 2018) (to qualify as a RICO enterprise, the organization must "at least consist of an ongoing organization that functions as a continuing unit") (*citing Pinson*, 860 F. 3d at 162 (dismissing claims for insufficient evidence of a RICO enterprise). In this Circuit, the enterprise in successful RICO actions is typically a gang, or gang-like criminal enterprise. *See e.g.*, *U.S. v. Mathis*, 932 F.3d 242, 259 (4th Cir. 2019) (evidence that members wore the same colors, met in the same location, and followed the same rules was sufficient to find a RICO enterprise).

Here, Amazon has fallen woefully short of the type of pleading the Fourth Circuit requires to establish a RICO enterprise. At best, Amazon has only alleged that a small, loosely affiliated group of individuals acted together in connection with legitimate business activities. It has not alleged an ongoing organization that attempts to defraud other entities. Nor has it alleged that the "enterprise" has an organization, hierarchy, rules, rituals, or indeed any organizational structure at all. And Amazon has not alleged that the supposed enterprise continued in any meaningful way after ceasing business relationships with Amazon. In short, Amazon only alleges, at most, two instances of supposed fraud—one involving lease transactions, and one involving purchase transactions. Amazon's pleading fails to plausibly establish a RICO enterprise, and so Counts I and II should be dismissed.

## IV. Amazon has failed to plead its fraud and RICO claims with particularity

The SAC is full of vague allegations of misconduct by the "Defendants" as a group, without alleging with particularity the actions that Amazon claims each individual defendant took, how

Amazon reasonably relied on such actions, or how it was harmed as a result. Amazon's fraud and RICO claims should therefore be dismissed on that basis as well.

Rule 9(b) imposes a heightened pleading standard for fraud and the fraud element of RICO claims. Fed. R. Civ. P. 9(b). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To satisfy the heightened pleading standard of Rule 9(b), a plaintiff must state with particularity "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *In re Mut. Funds Inv. Litig.*, 566 F.3d 111, 120 (4th Cir. 2009) (quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999), *rev'd sub nom. on other grounds*, *Janus Capital Grp., Inc. v. First Derivative Traders*, 131 S. Ct. 2296 (2011)).

The courts have recognized that pleading fraud claims with particularity is especially critical in cases involving multiple defendants. "The identity of the person making the misrepresentation is particularly important where there are multiple defendants." *United States ex rel. Carter v. Halliburton Co.*, No. 1:08cv1162 (JCC), 2009 U.S. Dist. LEXIS 63649, *43 (E.D. Va. 2009) (quoting *Dealers Supply Co., Inc. v. Cheil Indus., Inc.*, 348 F. Supp. 2d 579, 589-90 (M.D.N.C. 2004). Courts "often 'reject pleadings in which multiple defendants are 'lumped together' and in which 'no defendant can determine . . . which of the alleged representations it is specifically charged with having made . . . .'" *Id.*; *see also Arnlund v. Smith*, 210 F. Supp. 2d 755, 760 (E.D. Va. 2002) ("A plaintiff must identify, with particularity, each individual defendant's culpable conduct; defendants cannot be grouped together without specification of which defendant committed which wrong." (alterations and internal quotation marks omitted)). Amazon's fraud

claims fail because they are utterly devoid of specific allegations as to the time, place, and contents of any purported misrepresentations or omissions by Mr. Kirschner.

The fundamental flaw in Amazon's pleading is perhaps best highlighted by the allegations in paragraphs 90 through 95 of the SAC. Those paragraphs purport to lay out the alleged misrepresentations or material omissions made by Mr. Kirschner and Carl Nelson. Notably, however, in those paragraphs, Amazon does not make a single allegation as to what either Ms. Kirschner or Mr. Nelson did individually. Instead, Amazon consistently and repeatedly lumps the two together, and alleges that the "TM Defendants" engaged in acts or omissions without any effort to identify which defendant purportedly engaged in such acts or omissions. This is precisely the sort of pleading that Rule 9(b) is designed to prevent and that courts have consistently found to warrants dismissal. *Girgis v. Salient Sols., Inc.*, No. 1:11-cv-1287, 2012 U.S. Dist. LEXIS 94764, at *23 (E.D. Va. July 9, 2012) ("grouping defendants together in a pleading fails to satisfy the requirement that the 'who, what, when, where, and how' be pled with specificity") (citation omitted).While those paragraphs are representative examples of Amazon's vague and conclusory pleading style, they are far from the only instances. For example, in paragraph 161, Amazon alleges without any specificity that the "TM Defendants" perpetuated their alleged "scheme" after they were no longer employees at Amazon. SAC ¶ 161. The defendants are left to guess which of the "TM Defendants" Amazon alleges engaged in acts to perpetuate such alleged "scheme," what the alleged actions were, when such actions allegedly occurred, and with respect to what Amazon project or projects the actions allegedly relate. The SAC is littered with similar examples of Amazon lumping the defendants, particularly the "TM Defendants," together without any effort to specify which of the defendants engaged in which purported misconduct constituting a fraudulent misrepresentation or omission. *See, e.g.*, SAC ¶¶ 4, 6, 7, 10-12, 25, 27, 28, 38, 41, 44,

65, 66, 68, 72, 73, 75-77, 80-84, 86, 87, 89-91, 97, 98, 100-103, 106, 107, 114, 117, 123, 129, 130, 132, 135, 138, 139, 151, 156 158, 159, 161-163, 166, 167, 173-175, 179, 180, 190, 193, 212, 214, 215, 219, 220, 222, 224, 229, 235, 239, 264, 281, 282, 289, 292, 293, 295, 300, 301, 314, 324, 326, 341-344, 348.[3]

Upon close examination, the SAC alleges virtually nothing as to specific misrepresentations or omissions made by Mr. Kirschner. The one instance in which Amazon makes allegations specific to Mr. Kirschner is the conclusory statement that "Defendant Casey Kirschner made material false statements or omissions, including but not limited to, the failure to disclose his personal interest in the transactions he promoted with Defendants Northstar and Watson." *Id.* ¶ 385. But general allegations of "false statements or omissions" coupled with a vague reference to a failure to disclose a "personal interest" in certain unspecified transactions fall far short of satisfying the heightened pleading standard required by Rule 9(b).

It is telling that in its fraud allegations under Count III, there is not a single instance in which Amazon alleges that Mr. Kirschner made *any* misrepresentation or omission. Instead, as it does elsewhere in the SAC, Amazon simply relies on group pleading of vague allegations that the "RICO Defendants" engaged in certain conduct. *See id.* ¶¶ 463-475. Amazon's effort to allege reliance and resulting damages in its fraud count is even more tepid, amounting to nothing more than an allegation that "Plaintiffs' justifiable and reasonable reliance on the RICO Defendants'

_____

[3] This is particularly true with regard to Amazon's allegation that Mr. Kirschner "certified compliance with Amazon's Code of Conduct during" the time at issue. SAC ¶ 134. But Amazon does not mention the where, how, or when of such a certification, as opposed to its similar allegation for Mr. Nelson, which is supported by reference to a blank exhibit. *Id.* ¶ 133; Dkt. 162, Ex. 53.

misrepresentations and/or omissions resulted in damages to Plaintiffs."[4]  *Id.* ¶ 2475.  Based on

such vague allegations, Mr. Kirschner cannot reasonably determine what purported

misrepresentation or omission—if any— Amazon allegedly relied upon or how Amazon claims to

have been damaged by such reliance.

Amazon's fraud claims in Count III, and the fraud claims underlying its RICO claim in

Count I, should therefore be dismissed.[5]

## V.    Plaintiff's Common Law Claims Fail

### 1.    Plaintiff Has Failed to State a Claim for Detinue

Amazon has failed in Count II to state a claim for detinue against Mr. Kirschner under VA.

Code § 8.01-114.  In order to do so, a plaintiff in Virginia must allege that they "own the chattel

and that the defendant unlawfully withholds it."  *Secureinfo Corp. v. Telos Corp.*, 387 F. Supp. 2d

593, 620 (E.D. Va. 2005).  Here, Amazon does not allege, nor can it, that Mr. Kirschner unlawfully

withholds any "chattel" or "personal property" of Amazon, as is required to state a claim for

detinue.  *Id*.  Amazon merely alleges that Mr. Kirschner owes Amazon a sum of money. SAC ¶

448.  Money owed as a debt is not "chattel."  *Ballentine's Law Dictionary*, Chattels (3d ed. 2010)

("Property which is movable and not so connected with the ground as to become a part of the real

estate . . . visible, tangible, movable, personal property.") (citation omitted).  Successful claims

under the Virginia detinue statute all involve physical property, and not simply money damages

---

[4] Under Virginia law, a fraud claim requires the plaintiff to plead "(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to misled, (5) reliance by the party misled, and (6) resulting damage to the party misled."  *See Zaremski v. Keystone Title Assocs.*, No. 88-2569, 1989 U.S. App. LEXIS 21428, *6-7 (4th Cir. 1989) (quoting *Winn v. Aleda Construction Co.*, 227 Va. 304, 315 S.E.2d 193, 195 (Va. 1984)).

[5] Mr. Kirschner hereby incorporates by references Mr. Nelson's argument that Amazon has failed to plead any RICO predicate with sufficient particularity.  Memorandum of Law in Support of Defendant Carleton Nelson's Motion to Dismiss, § I.B. "B. Amazon Has Not Pled Any Predicate Act with the Required Specificity."

for other common-law claims. *See e.g.*, *Talley v. Drumheller*, 135 Va. 186, 191 (1923) (detinue for fence rails); *Secureinfo Corp.*, 387 F. Supp 2d at 620 (detinue for physical hard drives or disks containing copies of copyright-protected software); *U.S. Bank Nat'l Ass'n v. Leesburg Pizza Buffet, LLC*, 1:12cv1514 (GBL/JFA), 2013 U.S. Dist. LEXIS 111509 at *23 (E.D. Va. June 14, 2013) (detinue for physical collateral securing a loan); *Vicars v. Atlantic Discount Co.*, 205 Va. 934, 937 (1965) (detinue for an automobile).

Here, Amazon does not and cannot allege that Mr. Kirschner has some physical property of Amazon's that may require repossession or protection. Instead, Amazon merely alleges that Mr. Kirschner owes Amazon some "corpus" of money as damages for alleged fraud and breach of contract. SAC ¶ 443. Under Virginia law, Amazon cannot recover the same money for both detinue and damages for breach of contract. *U.S. Bank Nat'l Ass'n*, 2013 U.S. Dist. LEXIS 111509 at *25. Because Amazon has failed to allege that Mr. Kirschner has possession of any chattels belonging to Mr. Kirschner, its detinue claim in Count II against Mr. Kirschner must be dismissed.

While Amazon cites *United States v. Cohen* in the SAC, that case does nothing to establish a claim for detinue. In *Cohen*, the United States sued for a preliminary injunction under the Financial Institutions Reform and Recovery Act. *U.S. v. Cohen*, 152 F.3d 321, 323 (4th Cir. 1998). That case has no relationship to a claim for detinue or the Virginia detinue statute and is inapplicable to Amazon's claim for detinue. This Court should ignore the references to *Cohen* in the Complaint and dismiss Amazon's claims under Count II against Mr. Kirschner.

2.  Amazon Has Failed to State a Claim for Tortious Interference

To state a claim for tortious interference in Virginia, a plaintiff must allege "the existence of a valid contract." *Schaecher v. Bouffault*, 772 S.E.2d 589, 602 (Va. 2015) (dismissing tortious interference claims for failure to sufficiently allege harm). In describing their claim for tortious interference, Amazon relies heavily on group pleading and vague allegations of group activity that

do not mention specific contracts.  SAC ¶ 482.  In the midst of all of this improper group pleading,

Amazon fails to allege intentional interference, or indeed any interference, on Mr. Kirschner's part

against any of the many contracts described in the SAC  Amazon has therefore failed to plead even

the most basic elements of a tortious interference claim—what contract was interfered with, and

how.  *See Lokhova v. Halper*, 441 F. Supp. 238, 265 (E.D. VA 2020) (dismissing claim for tortious

interference because "[a]part from vague and conclusory language, the complaint has failed to

allege . . .that any defendant . . . was aware of any specific contracts or business expectancies").

Accordingly, Amazon's claims in Count IV should be dismissed.

### 3.  Amazon Has Failed to Sufficiently Allege a Civil Conspiracy

Amazon fails in its attempts to allege both common-law and statutory claims for civil

conspiracy.  As an initial matter, it does not distinguish between the two different causes of action

in the same Count—indeed the same paragraph—and instead conflates common law and statutory

claims of civil conspiracy.  SAC ¶ 486.  Such sloppy pleading is reason enough for dismissal for

failure to put defendants sufficiently on notice as to the claims against them.  *See Zander v. Saxon

Mortg. Serv.*, No. 1:13CV1141, 2014 U.S. Dist. LEXIS 183739, at *8 (M.D.N.C. Nov. 6, 2014)

(dismissing plaintiff's claims for conflating different causes of action).

Even if Amazon had alleged the conspiracy claims separately, they should still be

dismissed.  Both the common-law conspiracy claim and the statutory claim cannot stand, because

Amazon cannot adequately allege an underlying tort and therefore cannot allege a conspiracy

based on that cause of action.  *See Dunlap v. Cottman Transmission Sys., LLC*, 754 S.E.2d 313,

317 (Vir. 2014) (holding that, for both common-law and statutory claims of conspiracy, the

plaintiff must show an underlying tort); *see also Almy v. Grisham*, 273 Va. 68, 80 (2007) ("[I]n

Virginia, a common law claim of civil conspiracy generally requires proof that the underlying tort

was committed."). Because Amazon's other claims should be dismissed for the reasons described herein, its conspiracy claims in Count V should also be dismissed.

### 4. Amazon Has Failed to State a Claim for Breach of Contract

Count VI, the Breach of Contract claim, relies on two agreements as the basis for the claim: the Lease Agreements between Amazon and the Northstar Defendants and Mr. Kirschner's Confidentiality, Noncompetition, and Invention Assignment Agreement (the "CNIAA"). Mr. Kirschner was not a party or signatory to the Lease Agreements and therefore they cannot serve as a basis for a breach of contract action against Mr. Kirschner. *Airlines Reporting Corp. v. Mundo Travel Corp.*, No. 1:10cv1119, 2012 U.S. Dist. LEXIS 202667 at *8 (E.D. Va. May 8, 2012) ("The first element of a breach of contract claim requires the defendant to have a legally enforceable obligation — in other words, the defendant must be a party to the contract"); *see also Jarvis v. K2 Inc.*, No. C03-1265Z, 2004 U.S. Dist. LEXIS 33246 at *22-24 (W.D. Wash. Sept. 30, 2004) (dismissing claims for breach because defendant was not party to the contract).

Nor does the CNIAA support a claim for breach. To sustain a breach of contract claim, Amazon must prove a breach of material terms of the parties' agreement. *S. Auburn, L.P. v. Old Auburn Mills, L.P.*, 68 Va. Cir. 145, 154 (Cir. Ct. 2005) ("The breach must be material"); *see also Synergy Greentech Corp. v. Magna Force, Inc.*, No. C12-5543 BHS, 2013 U.S. Dist. LEXIS 102333, at *11 (W.D. Wash. July 18, 2013) ("The breach must be material") (*citing Park Ave. Condo. Owners Ass'n v. Buchan Devs.*, L.L.C., 117 Wn. App. 369, 383 (2003)). Amazon lays out the provisions of the CNIAA on which its claim is based in paragraphs 500 and 502 of the SAC. As to the allegations in paragraph 500, which alleges that Mr. Kirschner breached a provision requiring him to "hold all Confidential Information in strictest confidence," SAC ¶ 500, Amazon has not identified a single instance in which Mr. Kirschner did not hold confidential information in confidence. Indeed, the gravamen of Amazon's complaint against Mr. Kirschner is not that he

disclosed information to others, but that he failed to disclose information to Amazon.  *Id.* ¶ 385 ("Defendant Casey Kirschner made material false statements or omissions, including but not limited to, the failure to disclose his personal interest in the transactions he promoted with Defendants Northstar and Watson.").  As to the allegations in paragraph 502, that paragraph simply states a list of future non-compete provisions that Mr. Kirschner agreed to with Amazon.  *Id.* ¶ 385.  Amazon alleges nowhere in the SAC that Mr. Kirschner did anything after his termination from the company, which Amazon acknowledges occurred in April 2020, *id.* ¶ 20, months after the end of the alleged RICO enterprise ended in "late 2019."  *Id.* ¶¶ 116, 315.  Therefore, Amazon has not successfully alleged that Mr. Kirschner violated any of the provisions listed in paragraph 502.  Because Amazon has not identified an applicable contract provision that has been breached by Mr. Kirschner, Amazon has not stated a claim for breach of contract and Count VI should be dismissed.

### 5.  Amazon Has Failed to State a Claim for Unjust Enrichment

Amazon's claim for unjust enrichment in Count VII against Mr. Kirschner should be dismissed because this dispute is governed by Mr. Kirschner's employment agreement.  In Virginia, when a party elects to affirm a contract, sues under, and consents to be bound by its provisions, a cause of action for unjust enrichment will not lie.  *CGI Fed. Inc. v. FCI Fed., Inc.*, 295 Va. 506, 520 (2018) (holding that, even though the contract was procured by fraud, the plaintiff's decision to sue for breach barred its claim for unjust enrichment) (citing *Ewig v. Dutrow*, 128 Va. 416, 424, 104 S.E. 791, 793 (1920)).  Under black-letter Virginia law, Amazon's decision to affirm and sue under its employment agreements with Mr. Kirschner bars an equitable claim for unjust enrichment.

6. <u>Amazon's Claim for Conversion Must Be Dismissed</u>

In Virginia, a claim for conversion generally applies "only to tangible property," and does not encompass "***undocumented*** intangible property rights." *United Leasing Corp. v. Thrift Ins. Corp.*, 247 Va. 299, 305 (1994) (emphasis in original). "Only 'a clear, definite, undisputed, and obvious property right in a thing to which [the plaintiffs] are entitled to immediate possession [is] sufficient to support a claim for conversion.'" *Mackey v. McDannald*, 842 S.E.2d 379, 387 (Va. 2020) (quoting *United Leasing Corp.*, 247 Va. at 306). Amazon has come nowhere close to pleading such a "clear, definite, undisputed, and obvious property right." *Id.*

Instead, Amazon pleads that it is entitled to funds it paid Northstar under valid contracts, and for which it received ample and valid consideration. SAC ¶ 534. Amazon also pleads that it is entitled to money that it exchanged for land in a valid purchase agreement. *Id.* ¶¶ 536, 537. In neither case does Amazon have a "clear" or "undisputed" property right to money that is used to pay for goods and services. Indeed, Amazon is only entitled to those funds if it succeeds on its fraud or breach claims. Without a "right of immediate possession," which Amazon has not plead, Amazon has no claim for conversion against Mr. Kirschner. *Johnson v. MBA Consulting Servs.*, 97 Va. Cir. 176, 187 (Va. Cir. Ct. 2017) (dismissing claims for conversion when the plaintiff did not properly plead an immediate right of possession). Accordingly, Count VIII should be dismissed as to Mr. Kirschner.

7. <u>Amazon Has No Claim Under Robinson-Patman</u>

Amazon's "throw everything at the wall and see what sticks" style of pleading has led it to section 2(c) of the Robinson-Patman Act, 15 U.S. Code § 13 (c). SAC ¶ 336-345.[6] It is well

_____

[6] The Fourth Circuit has never held that commercial bribery, as alleged by Amazon in the SAC, is actionable under section 2(c). *See Patterson*, 2000 U.S. App. LEXIS 1303 at *8 ("Whether commercial bribery comes within the scope of this section remains an open question in this

established in most Circuits, including this Circuit, that a violation of section 2(c) must "involve the sale of tangible goods." *See e.g.*, *Patterson v. Ford Motor Credit Co.*, No. 98-2774, 2000 U.S. App. LEXIS 1303, at *8 (4th Cir. Feb. 2, 2000) (affirming dismissal of claims under section 2(c) because they do not involve the sale of tangible goods); *Union City Barge Line, Inc. v. Union Carbide Corp.*, 823 F.2d 129, 140-41 (5th Cir. 1987); *Freeman v. Chicago Title & Trust Co.*, 505 F.2d 527, 529-31 (7th Cir. 1974) (per curiam). Commercial leases and sales of real estate do not involve tangible goods for purposes of Robinson-Patman. *Export Liquor Sales, Inc. v. Ammex Warehouse Co.*, 426 F.2d 251, 252 (6th Cir. 1970), *cert. denied*, 400 U.S. 1000 (1971) (affirming dismissal of claims under section 2(c) because a lease of realty is not a sale of goods); *TV Signal Co. v. American Tel. & Tel. Co.*, 462 F.2d 1256 (8th Cir. 1972) ("Although the nature of an agreement for pole space or for a pole attachment is not precisely described in the pleadings, it is more akin to a real estate transaction than anything else. As such it is not a commodity within Robinson-Patman.") (citing *Export Liquor Sales*, 426 F. 2d at 252)). Because the allegations involve only commercial leases and sales of real estate, Amazon cannot state a claim under section 2(c) of Robinson-Patman, and therefore its claims in Count XI should be dismissed.

8. <u>Without a RICO Claim, the Court Does Not Have Supplemental Jurisdiction Over the Remaining Claims</u>

Once this Court dismisses Amazon's claims against Mr. Kirschner under RICO and the Robinson-Patman Act, it should decline to exercise supplemental jurisdiction over Amazon's extensive state-law claims and dismiss those claims as well. Courts in this Circuit "consider convenience and fairness to the parties and issues of federal policy, comity, and judicial economy" when deciding to exercise supplemental jurisdiction after dismissal of the claims giving rise to

_____

circuit.") (citing *Stephen Jay Photography, Ltd. v. Olan Mills, Inc*., 903 F.2d 988, 991-993 (4th Cir. 1990)).

original jurisdiction. *Akira Techs., Inc. v. Conceptant, Inc.*, No. 1:17-cv-412, 2018 U.S. Dist. LEXIS 234788, at *12 (E.D. Va. Apr. 12, 2018) (citing *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995)). In this case, because of the extensive and complicated nature of Amazon's state-law claims, there is a "compelling comity interest" in having a Virginia – or Washington – court decide these claims. *Id.* (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)). Therefore, once this Court has dismissed Amazon's claims under federal law, it should decline to exercise supplemental jurisdiction and dismiss Amazon's state common law claims.

## CONCLUSION

For the foregoing reasons, Amazon's claims in the SAC against Mr. Kirschner should be dismissed with prejudice.

Dated this 9th day of October, 2020.     Respectfully submitted,


*/s/ Scott J. Pivnick*
Scott J. Pivnick (Va. Bar No. 48022)
Edward Kang (*admitted pro hac vice*)
Kelley C. Barnaby (*admitted pro hac vice*)
ALSTON &BIRD LLP
The Atlantic Building
950 F Street, NW
Washington, DC  20004-1404
Phone: 202-239-3300
Fax:    202-239-3333
scott.pivnick@alston.com
edward.kang@alston.com
kelley.barnaby@alston.com

*Attorneys for Defendant CASEY KIRSCHNER*

## CERTIFICATE OF SERVICE

I certify that on October 9, 2020, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system.

Dated this 9th day of October, 2020.

Respectfully submitted,

/s/ Scott J. Pivnick
Scott J. Pivnick (Va. Bar No. 48022)
Edward Kang (*admitted pro hac vice*)
Kelley C. Barnaby (*admitted pro hac vice*)
ALSTON &BIRD LLP
The Atlantic Building
950 F Street, NW
Washington, DC 20004-1404
Phone: 202-239-3300
Fax: 202-239-3333
scott.pivnick@alston.com
edward.kang@alston.com
kelley.barnaby@alston.com

*Attorneys for Defendant CASEY KIRSCHNER*