**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

|  |  |
|---|---|
| AMAZON.COM, INC. and AMAZON DATA SERVICES, INC., <br><br>       Plaintiffs, <br><br>       v. <br><br> WDC HOLDINGS LLC dba NORTHSTAR COMMERCIAL PARTNERS; BRIAN WATSON; STERLING NCP FF, LLC; MANASSAS NCP FF, LLC; NSIPI ADMINISTRATIVE MANAGER; NOVA WPC LLC; WHITE PEAKS CAPITAL LLC; VILLANOVA TRUST; CASEY KIRSCHNER; ALLCORE DEVELOPMENT LLC; FINBRIT HOLDINGS LLC; CHESHIRE VENTURES LLC; CARLETON NELSON; JOHN DOES 1-20, <br><br>       Defendants. | CASE NO. 1:20-CV-484-LO-TCB |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL
PRODUCTION OF DOCUMENTS AND INTERROGATORY RESPONSES**

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................... 1

BACKGROUND ..................................................................................................... 3

LEGAL STANDARD.............................................................................................. 9

ARGUMENT ........................................................................................................ 10

I.      DEFENDANTS VIOLATED THE FEDERAL RULES AND THIS COURT'S ORDERS IN REFUSING TO RESPOND TO 10 OF THE 22 JULY REQUESTS............................................................................... 12

      A.     Plaintiffs' Requests Are Facially Relevant and Proportional to the Case................................................................................................ 12

      B.     The Court's July Orders Foreclose Defendants' Scope Objections.......... 19

      C.     Defendants' Privilege Objections Are Unsubstantiated and Waived ....... 20

II.     DEFENDANTS' REMAINING RESPONSES ARE INEXCUSABLY DEFICIENT.................................................................................... 22

      A.     The Discovery Responses Defendants Did Provide Are Incomplete ....... 22

      B.     Defendants' Incomplete Responses Require Immediate Supplementation ................................................................................ 23

CONCLUSION.................................................................................................... 25

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Addax Energy SA v. M/V Yasa H. Mulla*,
No. 2:17cv641, 2018 WL 10470917 (E.D. Va. Nov. 13, 2018) ............................................10

*Anderson v. School Board of Gloucester County*,
2020 WL 4719091 (E.D. Va. Aug. 13, 2020) ..................................................................19, 20

*BASF Plant Sci., LP v. Commonwealth Sci. & Indus. Rsch. Org.*,
No. 2:17-cv-503, 2019 WL 8108060 (E.D. Va. July 3, 2019) ......................................9, 10, 12

*Byrnes v. Jetnet Corp.*,
111 F.R.D. 68 (M.D.N.C. 1986) ..........................................................................................20

*Doe v. Old Dominion Univ.*,
289 F. Supp. 3d 744 (E.D. Va. 2018) ...................................................................................10

*Flame Glory Wealth Shipping Pts Ltd. v. Industrial Carriers, Inc.*,
2014 WL 12547264 (E.D. Va. Apr. 30, 2014) .......................................................................20

*In re Grand Jury Subpoena*,
341 F.3d 331 (4th Cir. 2003) ...............................................................................................20

*RLI Ins. Co. v. Conseco, Inc.*,
477 F. Supp. 2d 741 (E.D. Va. 2007) ...................................................................................20

*Sectek Inc. v. Diamond*,
2016 WL 5897763, at *3 (E.D. Va. Oct. 6, 2016) .................................................................21

*United States v. One Tract of Real Property*,
107 F.3d 868, 1997 WL 71719 (4th Cir. 1997) .....................................................................25

*United States v. (Under Seal)*,
748 F.2d 871 (4th Cir. 1984) ...............................................................................................20

*Zhou Jie Plant, et al. v. Merrifield Town Ctr. Ltd. P'ship*,
2009 WL 6082878 (E.D. Va., Dec. 23, 2009), *aff'd*
2010 WL 11561170 (E.D.Va., May 24, 2010) .......................................................................21

**Rules**

Fed. R. Civ. P. 26(b)(1)................................................................................................10, 23

Fed. R. Civ. P. 37(a) ...................................................................................................10, 22

**TABLE OF AUTHORITIES**
*(continued)*

Page(s)

Fed. R. Civ. P. 37(a)(3)(B) ................................................................................22

Fed. R. Civ. P. 37(a)(4) ....................................................................................25

Fed. R. Civ. P. 37(a)(5) ....................................................................................25

Fed. R. Civ. P. 37(a)(5)(A) ...........................................................................3, 10

Fed. R. Civ. P. 37(d)(1)(A)(ii) ..........................................................................22

Fed. R. Evid. 401 ..............................................................................................12

Local Civ. R. 37(A) ...........................................................................................10

Plaintiffs Amazon.com, Inc. and Amazon Data Services, Inc. ("Amazon") hereby respectfully move to compel Defendants Brian Watson and WDC Holdings, LLC ("Defendants") to respond to the discovery requests the Court ordered on July 22, 2020 (Dkt  95.)

## INTRODUCTION

Defendants are two of several commercial real estate parties that conspired with corrupt former Amazon managers to execute the fraud and kickback scheme at issue in this suit.  The scheme targeted over $500 million of Amazon real estate development projects in Virginia, including nine lease sites that Defendants were supposed to develop for Amazon until their contracts were terminated for cause in April of this year.  The termination was based on evidence that Defendants paid kickbacks and engaged in other illegal activity in connection with these and other Amazon development sites.  (*E.g.*, Dkts. 1, 10.)  Defendants' conduct is the subject of an ongoing criminal investigation in this District, which involved the FBI's execution of a search warrant at Watson's home this spring and government seizure of certain payments to Defendants on the leases in issue.  Defendants took steps to jeopardize evidence and assets central to this case after the FBI executed the April warrants.  (Dkt. 10.)  In response, Amazon filed the claims and successful request for preliminary injunctive relief that gave rise to the discovery requests at issue in this motion.  (Dkt. 16, 57.)

Amazon respectfully seeks an order compelling Defendants to respond to these requests, which the Court has already ordered—twice (Dkts 91, 95)—on factual issues Defendants have raised in connection with their ongoing contempt of the Court's June 5 injunction and requests to dismiss the liability and remedy claims in this suit. (Dkts. 39, 75, 82, 91, 95.)  At a telephonic hearing on July 17, the Court directed Amazon to "move forward with discovery and prepare th[e] requests" at issue in this motion.  Andrews Decl. Ex. 2 at 27:9, 18.  Amazon filed the requests on

1

July 21, (Dkts. 94-1, 94-2), and on July 22 the Court found the requests "warranted" and ordered Defendants to respond.  (Dkt. 95).

Defendants subsequently objected on grounds directly foreclosed by the Court's orders. Specifically, they asserted that nearly half the requests had "little to nothing to do" with the preliminary injunction because they requested "case in chief discovery" unrelated to Amazon's show cause motion on the injunction.  Exs. 1, 5.  But at the July 17 hearing, the Court expressly stated that "the Court can always advance discovery, and I think *this is an appropriate case where discovery should begin, notwithstanding the posture of the case here*."  Ex. 2 at 27:6–8.[1] Specifically, the Court's July 22 order directed Defendants to respond to the discovery "*as relief unrelated to the pending motion for an order to show cause*" on the injunction.  (Dkt. 95 at 1.) Further, and critically, the June 22 order stated that "the instant requests for document production and initial interrogatories *are warranted independent of the preliminary injunction*."  *Id.*

Notwithstanding the Court's directives and Amazon's efforts to negotiate a solution, Defendants refuse to respond to 10 of the 22 requests (six of fifteen Requests for Production, and four of seven Interrogatories).  Further, Defendants' responses to the remaining requests were all late and inexcusably deficient.  Defendants produced a total of less than 200 documents, many of which are simply copies of documents Plaintiffs already have, including their own contracts and complaint.  Those productions do not contain basic information about Defendants' assets and interaction with Amazon transactions; Defendants also conclusorily assert "attorney-client" privilege over a handful of redactions but refuse to log or otherwise justify withholding otherwise responsive documents.

---

[1] All emphasis in this brief is supplied unless otherwise noted.

Plaintiffs repeatedly conferred with Defendants in an effort to advance the disputed discovery without Court intervention, but to no avail. Nearly three months after the Court ordered the requests, Defendants still refuse to answer approximately half of them, refuse to supplement their deficient responses to the other half, and refuse to produce a log of any responsive documents withheld on privilege grounds. As detailed below, this discovery misconduct is simply the latest chapter in the ongoing story of Defendants' disregard for the Court's rules and orders, the cost and prejudice of which is increasing by the day. The discovery Defendants have forced Plaintiffs to raise in this motion is even more important now than it was when the Court ordered it in July. Since then, Defendants have continued to defy the Court's injunction, both by refusing to post a penny of judgment security even after the Court denied their motion for a stay pending appeal, (Dkt. 137), and by engaging in new and prohibited asset dissipation. Further, Defendants presently seek relief from this Court and the Fourth Circuit on factual grounds the pending discovery could negate or otherwise efficiently resolve.

For these and other reasons elaborated below, Defendants' continued stonewalling is both unjustified and highly prejudicial. Accordingly, Plaintiffs respectfully request an order compelling Defendants to: (i) produce all documents and information responsive to Requests 5, 7, 8, 11, 14, and 15, and Interrogatories 3, 4, 5 and 7; (ii) supplement their responses to the remaining Requests and Interrogatories, including with information improperly withheld under privilege objections that Defendants failed to log and have now waived; and (iii) pay Plaintiffs' reasonable expenses incurred in making the motion, including attorney's fees, pursuant to Fed. R. Civ. P. 37(a)(5)(A).

## BACKGROUND

Defendants' defiance of this Court's orders goes back to the very beginning of this case. Defendants never complied with the escrow or confidentiality provisions of the TRO the Court

3

entered on April 28.  (Dkt. 16.)  They then opposed preliminary injunctive relief on factual grounds they never substantiated, and went so far as to misrepresent in filing an inaccurate transcript of a surreptitious audio recording of a former employee now cooperating with prosecutors.  (Dkts. 41 & 42 Ex. 3.)  Although the Court granted Plaintiffs' request for injunctive relief on May 21, the Court indulged Defendants' request to delay entry of the order so they could seek a security bond. (Dkts. 49-51.)  But after wasting weeks of time and accommodation, Defendants refused to provide a bond in any amount, so the Court entered the June 5 injunction with the TRO's escrow provision and the bond option Defendants requested.  (Dkt. 57.)  Defendants have continued to defy the injunction even as modified.  They have refused to post a penny of judgment security in any form, and in mid-June liquidated a multi-million dollar property and disposed of the proceeds without notice to Plaintiffs or the Court.  (Dkt. 84 at 2.)

In reaction to these and other abuses, Plaintiffs moved in July for an order to show cause why Defendants should not be held in contempt of the injunction.  (Dkts. 67, 68, 84.)  Defendants responded by appealing the injunction to the Fourth Circuit, (Dkt. 72), and opposing Plaintiffs' enforcement motion pending the outcome of the appeal, (Dkt. 82.)  At the July 17 hearing on Plaintiffs' show cause motion, Defendants specifically asked the Court to "hold off on ruling" on Plaintiffs' enforcement request until "the Court has an opportunity to consider [Defendants'] motion for stay [of the injunction pending appeal]."  Ex. 2 at 19:9–11.  The Court denied that stay motion on September 4, so the injunction remains fully enforceable.  (Dkt. 137.)  Nevertheless, the Court has accommodated Defendants by deferring enforcement action and instead ordering the discovery at issue in this motion.  Ex. 2 at 18–19, 26–28.

The discovery requests the Court ordered as filed on July 21, (Dkts. 94, 95), are narrowly tailored to address core liability and remedy issues Defendants have raised in this Court for months,

and have now invoked as grounds for interlocutory appellate relief.  Specifically, the 22 requests (15 document requests and 7 interrogatories) speak directly to unsubstantiated factual assertions Defendants have pressed from the time the TRO was filed through months of injunction litigation and two motions to dismiss.  Indeed, they target the very issues Defendants raised at the July 17 hearing that prompted the Court to order the discovery.

At that hearing, Defendants asserted that the "complicated . . . and different types of fees that were paid" on the transactions at issue in this suit are "not the kind of thing that one can quickly come in and summarize for the Court," Ex. 2 at 17:22–25, but that will prove that the Court and Plaintiffs misunderstand Defendants' role in the schemes at issue, and "far overestimate[] the amount of money that Northstar, which is WDC Holdings, and Brian Watson actually received from Amazon," *id*. at 18:21–23.  The Court responded to these claims by holding that "discovery is the answer, and there's no reason to delay that discovery."  *Id*. at 26:10–12; *id*. 27:23–24 (the discovery should be "expeditious").  Plaintiffs promptly complied with the Court's order, and on July 21 submitted the specific requests the Court approved in the July 22 order requiring Defendants to "respond" under "Federal Rules of Civil Procedure 26, 33, and 34." (Dkt. 95 at 1.)

On August 5, 2020, Defendants served boilerplate objections that, among other things, asserted that:  (i) the requests "exceed[ed] the limited scope of the Court-ordered purpose," which Defendants said was solely to "assess the sufficiency of Defendants' showing and/or to address the extent of any contempt injury to Plaintiffs," Ex. 3 at 2; (ii) the requests were "overly broad, unduly burdensome, and oppressive," *id*. at 3; and (iii) the requests sought "information protected by the attorney-client privilege or work product doctrine," *id*. at 3; *see also* Ex. 4, 5.  Plaintiffs immediately responded by contesting Defendants' unduly narrow view of this Court's July orders. Ex. 5.  But on August 10, 2020, Defendants responded that:

> [I]nterrogatories 2-5 and 7 are case in chief discovery that have little to nothing to do with Defendants' financial conditions (which is the subject of the limited discovery ordered by the court). Similarly, Doc Requests 5-8 and 14-15 appear to go to case in chief issues and would entail enormous review time to produce even if the documents did pertain to a proper subject of discovery. It should not be so complicated to ascertain Defendants' financial condition.

*Id.*

In compliance with the Local Civil Rules, the parties met and conferred on August 12, 2020, to discuss Defendants' objections, and Defendants agreed to revisit several of them with a view to producing responsive information.  Ex. 6.  On August 20, 2020, however, Defendants served further written responses and objections again refusing to respond to Requests 5, 7, 8, 11, 14, and 15, as well as Interrogatories 3, 4, 5 and 7.  Exs. 7, 8.  At a subsequent meet and confer on August 28, 2020, Defendants confirmed their refusal to respond to these requests, but promised to produce information responsive to others.  Defendants confirmed this commitment on August 29, stating that their "document management team is continuing to process the remaining non-objectionable documents in the production and we intend to produce them, with appropriate redactions and privilege logs, as soon as possible."  Ex. 9.

On September 1, 2020, Plaintiffs sent Defendants a letter memorializing:  (i) the parties' "Impasse on Defendants' Refusal to Respond to Any of RFPs 5,7, 8, 11, 14 and 15 and Interrogatories 3, 4, 5, and 7"; and (ii) Defendants' "Production Delays and Deficiencies on the Remaining RFPs and Interrogatories."   Ex. 1.   On September 3, 2020, Defendants sent an electronic link to another round of production of documents.  Ex. 9.  In response to Plaintiffs' inquiry about the status of any remaining productions, Defendants wrote on September 4 that they "received a few more documents this week, which we are processing and will produce shortly." *Id.*  On September 9, Defendants produced just one more document and a four-line redaction log asserting "attorney client" privilege over redactions in four documents, Ex. 13, and advised

Plaintiffs "that is all you will be receiving," Ex. 9.  On September 10, Plaintiffs asked if any responsive documents were withheld from production based on privilege and, if so, when Defendants would provide a privilege log for any such documents.  *Id.*  Defendants never responded.[2]

Plaintiffs have since reviewed all of Defendants' belated and piecemeal productions, and identified the many deficiencies addressed below in addition to Defendants' wholesale refusal to answer approximately half the requests.  This discovery misconduct is highly prejudicial because the importance of the requested information has increased since the Court ordered it in July.  Defendants' contempt for the injunction the Court refused to stay on September 4, (Dkt. 137), is ongoing, and has actually expanded since Plaintiffs' enforcement filings this summer.  Defendants still refuse to post one penny of judgment security even though they admit they have assets sufficient to satisfy at least part of the ordered amount.  They also refuse to account for the proceeds of the real estate liquidation in June.  (Dkt. 84 at 2.) ███████████████████████ ████████████████████████████████████████████████████ And an updated public records search this month revealed that Defendants appear to be actively seeking to hide or dispose of affiliates and assets.  The efforts include:  (i) an ongoing effort to sell the aircraft Plaintiffs identified in their July enforcement filings, (Dkt. 68 at 23–24)[3]; (ii) the July 2020 sale by Northstar affiliate (4400 S Quebec LLC) of a property at 5500 South Quebec Street, Greenwood Village, Colorado to another LLC with which Northstar announced a partnership in

---

[2]    Plaintiffs emailed Defendants prior to filing this motion to confirm their position. Other than to acknowledge receipt of Plaintiffs' email, Defendants have not responded and have yet to produce any log for documents they have withheld based on privilege.  Ex. 9.

[3]    Defendants appear to have listed the jet for sale through a broker that is actively soliciting a buyer.    *See*    https://www.controller.com/listing/for-sale/197016665/2001-cessna-citation-excel-jet-aircraft; 60 https://www.qspartners.com/inventory/citation-excel-0.

April 2019, and the subsequent release in September 2020 of a $21,439,841 loan on the property[4]; (iii) the September 14, 2020 dissolution of the Brian Watson Foundation, which Watson publicly identified as the beneficiary of royalties from at least one of the publications identified in Plaintiffs' July enforcement filings, (Dkt. 68 at 24)[5]; and (iv) the October 2, 2020 change of domain registration on Fresh Fit Go Healthy Foods, LLC, an entity registered in Colorado on August 5, 2020 with Watson's wife as the agent and a principal office address at the mansion Defendants purchased earlier this year as detailed in Amazon's enforcement filings, (Dkt. 68 at 22).[6]  Public documents also indicate the roll-up of certain Northstar-affiliated business operations.   For example, on July 29, 2020, the U.S. Securities and Exchange Commission terminated the registration of a Delaware LLC that conducted investment advisory services under the name of Defendant "Northstar Commercial Partners."[7]

All of the foregoing information is directly relevant to the injunction and merits issues addressed in the discovery requests.  The requests are also directly relevant to Defendants' recent appellate and Rule 12 filings seeking merits relief in this case based on factual assertions the discovery responses could negate or otherwise efficiently resolve.  For example, Defendants ask the Fourth Circuit to vacate this Court's injunction based on precisely the claims of erroneous accounting and irreparable harm that Plaintiffs and this Court have repeatedly asked Defendants to substantiate, and the discovery in issue could resolve.  *See, e.g.*, *Amazon.com, Inc. v. WDC*

---

[4]   *See* Arapahoe County Clerk and Recorder File No. 202001597281; https://www.northstarcommercialpartners.com/insights/news/northstar-launches-125-million-fund/.

[5]   *See* https://myappstore.biz/?p=89472.

[6]   *See* https://www.recolorado.com/listing/263797847-151082055/8-churchill-drive-cherry-hills-village-co-80113/.

[7]   *See* https://adviserinfo.sec.gov/firm/summary/298031.

*Holdings LLC*, No. 20-1743 (4th Cir.), Appellants' Opening Br. at 4, 16 (seeking reversal of the injunction because it "will cost Watson and Northstar their business" and this Court "improperly concluded that Amazon faced irreparable harm based on a misimpression of its damages claim"); *Amazon.com, Inc. v. WDC Holdings, LLC*, No. 20-1743 (4th Cir.), Appellants' Reply Br. at 1–2 (asserting that this Court improperly entered the injunction provision requiring Defendants to secure assets that "exceed[] the amount paid to Defendants or [Amazon's] own damages" and "erred in its consideration of the relative harms to the parties"). Defendants' recent Rule 12 motion likewise reiterates that they "strenuously dispute many of the material factual underpinnings of the Complaint"—including those addressed in the discovery requests—and insists that the evidence Plaintiffs submitted on the "$16.25 million" in the injunction "does not represent sums that have been paid or of 'kickbacks' to any third party." (Dkt. 176 at 1, 39.)

If any of the above claims are true, Defendants should produce the discovery proving them, because they are the only ones presently in a position to do so. The discovery at issue here is necessary precisely because Amazon does *not* know the full extent of the kickbacks and other unlawful payments Defendants have received, laundered and/or facilitated as part of the alleged conspiracy. Amazon recovered documentation of the $16.25 million in anticipated kickback-related payments from the laptop of co-defendant and former Amazon manager Casey Kirschner, and offered it as conservative evidence of the amount Defendants must secure for judgment in this case. (Dkt. 57.)

## LEGAL STANDARD

The Federal Rules of Civil Procedure entitle parties "to discover any material that is relevant to any party's claim or defense, is nonprivileged, and is proportional to the needs of the case." *BASF Plant Sci., LP v. Commonwealth Sci. & Indus. Rsch. Org.*, No. 2:17-cv-503, 2019

WL 8108060, at *2 (E.D. Va. July 3, 2019) (citing Fed. R. Civ. P. 26(b)(1)).  "The Federal Rules contemplate the broadest discovery possible in the search of the truth."  *Doe v. Old Dominion Univ.*, 289 F. Supp. 3d 744, 749 (E.D. Va. 2018) (quotation marks omitted).

Under Federal Rule of Civil Procedure 37(a) and Local Civil Rule 37(A), a party may "move for an order compelling disclosure of discovery," Fed. R. Civ. P. 37(a), "[a]fter a discovery request is objected to, or not complied with, within time, and if not otherwise resolved," Local Civ. R. 37(A).  The burden rests on the party resisting discovery "to prove why the requested evidence is not discoverable."  *BASF*, 2019 WL 8108060, at *2.  "District courts generally have broad discretion in managing discovery, including whether to grant or deny a motion to compel." *Addax Energy SA v. M/V Yasa H. Mulla*, No. 2:17-cv-641, 2018 WL 10470917, at *3 (E.D. Va. Nov. 13, 2018) (quotation marks omitted).  The Federal Rules of Civil Procedure further provide that "[i]f the motion is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion . . . to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."  Fed. R. Civ. P. 37(a)(5)(A).

## ARGUMENT

The Court's September 4 order refusing to stay the June 5 injunction (Dkt. 137) states that Defendants have failed to substantiate their attacks on the liability and remedy claims in this case, including their assertion of "material defects" in the injunction's judgment security provision.  *Id*. at 3.  The order also states that Defendants have "failed to answer" fundamental questions about the "actual injury" they say they would "suffer" if the injunction is enforced.  *Id*. at 4.  The discovery at issue in this motion addresses all of these claims, and provides an opportunity for Defendants to substantiate their assertion that Plaintiffs and the Court misunderstand their role in

the unlawful enterprise scheme at issue in this suit.  Yet Defendants refuse to answer the requests as ordered.

They have no excuse for this failure.  As noted, Defendants have raised three categories of objections to the requests in issue:  (i) relevance and burden under the federal rules; (ii) scope under this Court's July orders; and (iii) privilege.  All are baseless.  *First*, the 15 document requests and 7 interrogatories the Court ordered in July (Dkts. 94, 95) are specifically targeted to the issues Defendants raised at the July 17 hearing and throughout the injunction and merits proceedings in this case.  They are thus facially relevant and proportional to the core issues in suit, and any arguments otherwise should have been addressed through scope negotiations Defendants rejected in favor of wholesale refusals to respond to nearly half the requests, and to which they served "evasive" and "incomplete" responses to the rest.   Fed. R. Civ. P. 37(a)(B)(4).   *Second*, Defendants' fallback assertion that the requests go beyond what the Court ordered (Ex. 1 at 1), is foreclosed by the July 17 transcript (Ex. 2 at 27–29), and the plain text of the Court's July 22 order (Dkt. 95 at 1.)   *Third*, Defendants waived any privilege objections to withholding documents beyond the very limited redactions addressed in the four-line redaction log they sent last month because they refused to produce a privilege log despite Amazon's repeated requests that they do so.

For the foregoing reasons, Defendants should be compelled to produce immediately all documents and information responsive to the outstanding requests, and to compensate Plaintiffs for the costs and fees incurred in bringing this motion.  If Defendants cannot substantiate their objections to the injunction and its underlying merits and remedy claims, they should stop wasting Court and party time and withdraw the affected arguments and requests for relief.

11

I.     **DEFENDANTS VIOLATED THE FEDERAL RULES AND THIS COURT'S ORDERS IN REFUSING TO RESPOND TO 10 OF THE 22 JULY REQUESTS**

Despite months of accommodation and multiple conferences, Defendants refuse to produce any documents responsive to Requests 5, 7, 8, 11, 14, and 15, and refuse to answer Interrogatories 3, 4, 5, and 7.   Defendants' primary basis for these refusals is that the affected requests are irrelevant or beyond the scope of the Court's July 22 Order because they seek documents that, in Defendants' view, go "beyond identifying whether Defendants can afford to put $21,250,000 into escrow, the identification and return of 'Amazon confidential or otherwise non-public' information, and the spoliation or disposal of documents or assets relating to Defendants' real property transactions with Amazon in Virginia."   *See, e.g.*, Ex. 3 at 7–8.   These objections are foreclosed by controlling law including the Court's orders.

A.     **Plaintiffs' Requests Are Facially Relevant and Proportional to the Case**

"Relevance is a low standard," and even "[i]n the admissibility context, information is relevant if it has 'any tendency' to make a material fact more or less likely.'"   *BASF*, 2019 WL 8108060, at *5 (quoting Fed. R. Evid. 401).   The "test for relevance in discovery is even broader than that."   *Id*.   The Requests and Interrogatories to which Defendants refuse to respond are facially relevant to core liability and remedy issues Defendants have been litigating in this Court for months, and now also raise in the Fourth Circuit.   Following is the text of each request Defendants refuse to answer, along with relevant history from Plaintiffs' efforts to address Defendants' unfounded objections:

- **RFP 5** (*documents sufficient to show payments or other benefits received or expected on Plaintiffs' transactions*).   The text of this request calls for "[d]ocuments sufficient to show all fees, commissions, equity allocations, capital funding, investments, or other forms of remuneration, compensation, payments, or other financial benefits of any kind" that your clients "received or expected to receive, either directly or indirectly, from Plaintiffs" from "January 1, 2017" forward "relating to any real estate" projects, contracts, or other

"business opportunity" associated with Plaintiffs, including the Leased Transactions and White Peaks Purchase at issue in this action.

This request directly addresses the "financial condition" Defendants concede as a proper subject of the current discovery. Ex. 1. Further, it is directly relevant and proportional to the injunction and merits challenges Defendants have raised in this Court and the Fourth Circuit over the last five months. Among other things, it calls for documents sufficient to show payments received or expected from Amazon from January 1, 2017 to the present and, therefore, directly addresses claims that Defendants made during the July 17 hearing. *See* Ex. 2 at 35:19–36:19. Defendants' scope and burden objections are meritless as detailed below, and regardless do not justify their refusal to produce any documents responsive to this request.

- **RFP 7** (*documents relating to various co-defendants and other persons of interest*). The text of this request seeks "[a]ll Documents relating to, including all Communications with or concerning, any of Villanova Trust, Christian Kirschner, Casey Kirschner, Carlton Nelson, Kyle Ramstetter, Will Camenson, White Peaks Capital LLC, NOVA WPC, LLC, Sterling NCP FF, LLC, Manassas NCP FF, LLC, NSIPI Administrative Manager, Todd Meldahl, KBC Advisors, IPI Partners, NVC Development LLC, JK Moving and Storage, Chuck Kuhn, Kevin Goeller, Stephen Chiles, La Jolla Capital Partners, Patricia Watson, Cheshire Ventures, Allcore Acquisitions and Development, Donald Tennant, Axis Realty, Jennifer Clampert, and/or any of their principals, members, trustees, investors, agents, affiliates, brokers, contract partners, beneficiaries, or other designees or assigns, from January 1, 2017 through the present."

This request is narrowly tailored to Defendants' communications with co-conspirators, kickback recipients, and other parties identified in email correspondence and asset records in support of the complaint and June 5 injunction. At the August 12 meet and confer, Defendants agreed to run the names listed in the request against electronic documents and communications to identify responsive material and share the search report with Plaintiffs in an effort to address any scope and burden issues. Defendants never provided the results of those searches, and after several discussions refused to produce responsive documents.

- **RFP 8** (*documents relating to efforts to market or sell interests in properties and other assets*). The text of this request calls for "[a]ll Documents relating to any efforts by You

to market, value, sell, shop, advertise, assess, compare, or otherwise obtain financial information, either directly or indirectly through brokers, intermediaries, agents, or affiliates including but not limited to 'Donald Tennant' and 'Axis Realty,' concerning any properties, partnerships, ventures, developments, or other assets in which you possessed or have asserted that you possessed any interest, right, or claim, from January 1, 2017 through the present."

This request is narrowly tailored to address Defendants' claims that they cannot comply with the injunction's judgment security provision, and that they have not violated the quiet enjoyment provision prohibiting them from interfering with the Virginia properties at issue in this suit. Specifically, the request seeks information about Defendants' efforts this spring to market the Amazon properties after Defendants were terminated for cause and enjoined from interfering with property operations. At the August 12 meet and confer, Defendants agreed to search for documents relating to Donald Tennant and Axis Realty, but they never produced any such documents, and on August 20 reverted to a wholesale refusal to respond to this request.

- **RFP 11** (*documents relating to asset transfers or other financial arrangements*). The text of this request seeks "[a]ll Documents relating to your contractual or other financial arrangements or obligations with, concerning, or for the direct or indirect benefit, interest, or control of the following individuals, including but not limited to any divorce settlement(s), prenuptial agreement(s), direct or indirect asset transfers, and mortgage or other loans or gifts, however described or titled: (a) Patricia Lee Watson (Uhrig); or (b) Tiffany Mai Watson."

This request is directly addressed to specific evidence of Defendants' efforts to jeopardize evidence central to this case, and to dispose of assets in violation of the June 5 injunction. Notably, it seeks information about Defendants' financial arrangements or obligations with individuals Watson named in the email he sent after the FBI searched his home, many of whom are also named in public records and communications concerning assets that Defendants have dissipated or otherwise tried to shield from the June 5 injunction.

- **RFP 14** (*documents related to Northstar website claims of $1.3 billion in assets under ownership and management and Watson leadership*). The text of this request seeks "[a]ll documents relating to any changes to the form, content, programming, disclosures, or other content      or      features      of      Your      website,      located      at

14

https://www.northstarcommercialpartners.com/, or any other advertising, solicitations, investor communications, or other disclosures or statements regarding Your business operations from April 2, 2020 through the present, including but not limited to changes to Your leadership and management structure, investor disclosures, financial statements, or regulatory status."

This request directly addresses recent changes to claims on Northstar's website of $1.3 billion in assets under management,[8] which Defendants have never addressed in asserting that they cannot comply with the judgment security provisions of the June 5 injunction, and in claiming that the injunction will put Northstar out of business. It also addresses Watson's status as Northstar's *alter ego*, and the status of services or affiliates Northstar advertised on its website, including certain advisory services that may be impacted by the SEC registration revocation detailed above. These issues are undeniably relevant to Defendants' attacks on the injunction and claims underlying it.

- **RFP 15** (*documents related to Defendants' Lease Transactions with Amazon and the White Peaks Purchase or other transactions relating to Amazon*). The text of this requests seeks "[a]ll documents relating to Your proposals, negotiations, contracts, or other rights or interests in the Leased Transactions, the White Peaks Purchase, or any other transaction or potential transaction relating to Plaintiffs, including all Documents and Communications relating to your efforts to obtain fees or payments from IPI Partners or their affiliates on the Lease Transactions, and any statements, plans, or efforts to place a lien or other attachment or security interest on any of the properties or other assets involved in the Lease Transactions."

This request goes to the heart of the injunction and liability arguments Defendants have raised in this Court since May. Notably, it seeks information about Defendants' role in the Amazon Lease Transactions and White Peaks Purchase that Defendants have placed in issue in every one

---

[8]  *Compare* Dkt. 68 at 21 (noting that, as of June 30, 2020, Northstar's website claimed "more than $1.3 Billion in assets under ownership and management," *with* https://www.northstarcommercialpartners.com/investor-information/ (last visited Oct. 16, 2020) (contending that Northstar has "raised and invested over $300 Million in equity")). By arguing that they lack sufficient assets to comply with the PI, Defendants made the value of their assets an issue in this action.

of their filings in this Court and the Fourth Circuit, as well as in counsel affidavits and inaccurate

transcripts of audio recordings reflecting discussions about the White Peaks sale.  But despite its

obvious relevance to injunction and merits issues they have raised, Defendants reconfirmed last

month their refusal to produce documents responsive to this request on the same baseless scope

grounds they raised in August.

### Interrogatories

- **Interrogatory No. 1** (*inventory of all confidential information*).  This interrogatory asks
  Defendants to "[p]rovide an inventory of all Documents and other information within
  [their] possession, custody, or control that constitutes or includes confidential or otherwise
  non-public information relating to the Lease Transactions, the White Peaks Purchase,
  and/or Plaintiffs or Plaintiffs' business operations, partnerships, customers, contracts, or
  other assets or interests of any kind, including but not limited to information that is labeled
  "Confidential" or that would reasonably be presumed to be confidential, such as the
  contracts for each Lease Transaction, all nonpublic information relating to Plaintiffs'
  technology, operations, customers, business plans, promotional and marketing activities,
  finances and other business affairs, and all information relating to Plaintiffs' acquisition,
  future use, or development of the Lease Transaction properties, the White Peaks Purchase
  property, or any other real estate sites, developments, or properties."

This interrogatory seeks information the Court ordered, and Defendants agreed to provide,

in paragraph 5 of the injunction.  (Dkt. 57.)  At the August 12 meet and confer, Defendants agreed

to produce this information pursuant to the injunction and the definitions of "confidential

information" in Defendants' own Leases.  But they provided only seven broad categories of

documents without any detail about what documents fall within each category.  Defendants were

ordered to provide this information months ago under the injunction provision allowing them to

retain Amazon confidential information for purposes of litigating this case.  Their continued

refusal to provide it is inexcusable, and Amazon reserves all enforcement rights beyond the current

motion to compel production.

- **Interrogatory No. 2** (*transfers over $10,000*).  This interrogatory asks Defendants to
  "[d]escribe in detail each transfer or other disposition of any assets or financial interests of
  any kind within Your possession, custody, or control that had an amount or estimate value
  of $10,000 or more and occurred from April 2, 2020 through the present, including the

16

amount, estimated amount or value, details of and reasons for the transfer or disposition, as well as the current or last known location of the asset(s) or interest(s)."

This interrogatory is addressed directly to Defendants' claims that they spent funds from the Amazon transactions on legitimate business expenses, did not make kickback or other improper payments, and cannot comply with the injunction's judgment security provision. At the August 12 meet and confer, Defendants agreed to discuss this interrogatory internally with a view to providing responsive information. But Defendants subsequently refused to provide the information requested, and simply referred Plaintiffs to Defendants' response to Request for Production 3. That response, however, consists of only two documents referencing two particular transfers. This information does not respond to the Court-ordered request for transfer records sufficient to assess Defendants' claims that they used funds obtained from the Amazon transactions to pay legitimate business expenses, did not pay or launder kickbacks, and cannot comply with the injunction.

- **Interrogatory No. 3** (*description of fees or financial benefits received or entitled to receive in connection with the Amazon transactions*). This interrogatory asks Defendants to "describe in detail the amount(s) and all factual and legal bases for all fees or other financial benefits of any kind that You have received or contend You are entitled to receive in connection with Leased Transactions, the White Peaks Purchase, or any other transaction with Plaintiffs or their agents."

This interrogatory goes to the heart of Defendants' claim that Plaintiffs and the Court fundamentally misunderstand the benefit to Defendants from the Amazon transactions, and the value Defendants' provided in return. Indeed, this claim is a primary basis for Defendants' ongoing contempt of the June 5 injunction and pending Fourth Circuit appeal. It focuses directly on Defendants' statement that there is no evidence "that $21 million were paid to [them]" in connection with the Amazon transactions. *See* July 17 Mot. Hearing Tr. at 35:19–36:19 (Defendants' counsel stating that "the preliminary injunction is premised again on the allegation that these defendants received that amount of money [*i.e.*, the $21 million]"). Plaintiffs have stated

17

that this figure is an approximated amount of their harm based on the information currently available to them, and have repeatedly invited Defendants to substantiate their position. The interrogatory thus concerns the very information that Defendants have put at issue: both the "financial condition" Defendants concede as a legitimate subject of the current discovery requests, Ex. 1, as well as a primary basis on which Defendants seek merits relief in this Court and on appeal. Defendants' refusal to answer it thus has no support in relevance or proportionality rules, and their remaining objections are baseless as detailed below.

- **Interrogatory No. 6** (*identify and describe investors who had had interests relating to your involvement in Amazon-related transactions*). This interrogatory asks Defendants to "identify and describe in detail, including by name and location, all investors of any kind who have or had interests relating to your investments, contracts, or involvement of any kind in or concerning the Lease Transactions, the White Peaks Purchase, or any other real estate sale, lease, development, contract, or other business opportunity involving Plaintiffs. Your response to this Interrogatory should include detailed descriptions of all investors in Sterling NCP FF, LLC, Manassas NCP FF, LLC, NSIPI Administrative Manager, and all the investors YOU contend are "involved in [Your] real estate ventures" and rendered You "unable to pledge those assets" in any form as judgment security in this Action, (Dkt. 82 at 7)."

As evidenced by its citations to the case docket, this interrogatory is directed at specific representations Defendants made to the Court about investor constraints on their assets and their purported inability to comply with the June 5 injunction. At the August 12 meet and confer, Defendants agreed to respond to this interrogatory, but all they provided was a list of names with none of the details or other information the interrogatory requires. Further, their list is improperly confined only to IPI, Sterling NCP FF, and Manassas NCP FF, LLC. In response to Amazon's follow up inquiries last month, Defendants stated that they would not provide a fulsome answer to this interrogatory.

The foregoing points alone support immediate relief on this motion. An order compelling discovery is appropriate where, as here, a party refuses to produce materials "pertain[ing] directly

to the expedited discovery this Court ordered."  *E.g.*, *Anderson v. Sch. Bd. of Gloucester Cnty.*, 2020 WL 4719091, at *3 (E.D. Va. Aug. 13, 2020).

### B.     The Court's July Orders Foreclose Defendants' Scope Objections

Defendants' generalized objection that approximately half the requests are outside the bounds of the Court's July orders is equally meritless.  Ignoring the Court's plain language and Amazon's explanation of the requests, Defendants maintain that "interrogatories 2-5 and 7 are case in chief discovery that have little to nothing to do with Defendants' financial conditions (which is the subject of the limited discovery ordered by the court)," and "[s]imilarly, Doc Requests 5-8 and 14-15 appear to go to case in chief issues and would entail enormous review time" that is not necessary to ascertain Defendants' "financial condition."  Ex. 1.  Responses to these requests are certainly necessary to ascertain Defendants' financial condition, but also to determine the veracity of the liability and remedy defenses Defendants have raised throughout the case and the Court expressly encompassed in its discovery orders.

During the July 17 hearing, the Court observed that "*this is an appropriate case where discovery should begin, notwithstanding the posture*" and pending appeal.  Tr. at 27:6–8 .  The Court went on to stress that such discovery was *not* limited to Defendants' non-compliance with the injunction, stating, "what I want to make sure we're doing is making these requests *independent of the preliminary injunction*, which is on appeal," and instead directing the discovery at issues that are "*relevant for purposes of pursuing the litigation*."  Tr. at 29:11–18.  The Court's July 22 Order reinforced these points in stating that:

> At the July 17 hearing, the Court granted Plaintiffs' motion for expedited discovery *as relief unrelated to the pending motion for an order to show cause*.  Upon consideration of the posture of the case and the Parties' arguments, the instant requests for document production and initial interrogatories *are warranted independent of the preliminary injunction*.

19

Dkt. 95 at 1.

These statements, coupled with the Court's broad power over discovery matters, independently foreclose Defendants' objections and support immediate relief on this motion. Indeed, an order compelling production is particularly appropriate where, as here, it addresses discovery that the Court has *already* ordered and, accordingly, has *already* determined to be relevant and proper under Federal Rule of Civil Procedure 26. *See Anderson*, 2020 WL 4719091, at *3 (compelling the production of discovery that "pertain[ed] directly to the expedited discovery this Court ordered"); *Flame Glory Wealth Shipping Pte Ltd. v. Indust. Carriers, Inc.*, 2014 WL 12547264, at *2–4 (E.D. Va. Apr. 30, 2014) (compelling production of discovery addressed in prior court order).

### C.    Defendants' Privilege Objections Are Unsubstantiated and Waived

Defendants' broad and repetitive assertions of privilege are unsubstantiated by any privilege log, affidavit, or other evidence. "The proponent of the attorney-client privilege has the burden to demonstrate its applicability." *RLI Ins. Co. v. Conseco, Inc.*, 477 F. Supp. 2d 741, 750 (E.D. Va. 2007). "Specifically, the proponent must establish not only that an attorney-client relationship existed, but also that the particular communications at issue are privileged and that the privilege was not waived." *Id.* (quoting *In re Grand Jury Subpoena*, 341 F.3d 331, 335 (4th Cir. 2003)) (quotation marks omitted). In this circuit, both the attorney-client privilege and the work-product doctrine are strictly construed. *United States v. (Under Seal)*, 748 F.2d 871, 875 (4th Cir. 1984). Therefore, "[i]t is incumbent upon the proponent to specifically and factually support his claim of privilege, usually by an affidavit," for "an improperly asserted privilege is the equivalent of no privilege at all." *Byrnes v. Jetnet Corp.*, 111 F.R.D. 68, 71 (M.D.N.C. 1986). Defendants do not come close.

Defendants make only four conclusory assertions of "attorney-client" privilege in connection with redactions to four specific documents. The four-line redaction log they served on September 9 does not properly substantiate these claims. ████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████ But Defendants provide no justification for redacting this information on privilege or other grounds. Further, Defendants produced two additional documents in redacted form that do not even appear on their redaction log: ████████████████████████

████████████████████████████ Plaintiffs assume the redacted text may involve counsel communications, but Defendants have not logged or substantiated this or any other valid ground for the redactions.   They have therefore waived those defenses as they have any privilege assertion over responsive documents they have withheld from production but refused to log. *Sectek Inc. v. Diamond*, No. 1:15-cv-1631, 2016 WL 5897763, at *3 (E.D. Va. Oct. 6, 2016) ("Because SecTek failed to file a privilege log in a timely manner, the Court finds that SecTek's privilege claim . . . is waived.").

"Federal Rule of Civil Procedure 37(d) governs the consequences for a party's failure to respond to interrogatories and document requests."  *E.g.*, No. 1:08-cv-374, *Zhou Jie Plant, et al. v. Merrifield Town Ctr. Ltd. P'ship*, 2009 WL 6082878, at *5 (E.D. Va. Dec. 23, 2009), *report and recommendation adopted as modified*, 711 F. Supp. 2d 576 (E.D. Va. 2010).  Specifically, "Rule

37(d)(1)(A)(ii) provides that the court may order sanctions if 'a party, after being properly served with interrogatories under Rule 33 or a request for inspection under Rule 34, fails to serve its answers, objections, or written response.'" *Id.* (quoting Fed. R. Civ. P. 37(d)(1)(A)(ii)). "Rule 37(d)(3) provides that sanctions may include any of the orders listed in Rule 37(b)(2)(A)(i)-(vi)," and that "the court must require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." *Id.* (affirming cost order and dismissal sanctions under Rule 37 and Fourth Circuit precedent). An order compelling discovery and cost reimbursement is necessary here under Rule 37.

## II.   DEFENDANTS' REMAINING RESPONSES ARE INEXCUSABLY DEFICIENT

### A.   The Discovery Responses Defendants Did Provide Are Incomplete

Rule 37(a) permits a "party seeking discovery" to "move for an order compelling an answer, designation, production, or inspection" not only where an opponent refuses after consultation to provide any response at all, Fed. R. Civ. P. 37(a)(3)(B), but also where the opponent serves "an evasive or incomplete disclosure, answer, or response," *id.* at (a)(4). The extent to which Defendants' belated productions violate the latter rule is clear. The Court ordered Defendants to respond to the requests by August 21. Defendants did not produce any documents by that deadline. Instead, they made four belated productions: (i) 92 documents on August 22; (ii) 82 documents on August 28; (iii) 11 documents on September 3; and (iv) one document on September 9. These productions together totaled 186 documents and 2,117 pages, and included copies of documents Plaintiffs already have (such as ███████████████).[9] The substantive

---

[9]   For example, Defendants produced the following seven documents, totaling 119 pages, that Plaintiffs already possess and/or Defendants have already filed with the Court: ████████████
██████████████████████████████████████████████████████████████

deficiencies in the productions are evident from the fact that the documents Plaintiffs received do not provide even basic information on the key topics addressed in the requests, notably:

- **Bond Efforts:** Defendants produced a total of 21 emails ███████████████████ ████████████. These emails are highly duplicative in that Defendants produced copies of prior emails every time they produced a later email in the same chain. Further, and critically, the emails do not substantiate Defendants' claim that they were unable to obtain a judgment bond for some or all of the amount the injunction requires. ███████████████████████████████ ██████████████████████████████

- **Assets:** Defendants' produced only two documents concerning the private ranch addressed in Plaintiffs' July enforcement filings, (Dkts. 82, 84); no documents regarding the corporate aircraft also addressed in the enforcement papers and that public records show Defendants actively trying to sell in violation of the injunction; and no other information sufficient to substantiate their attacks on the injunction and the liability and remedy claims underlying it.

- **Government Seizures:** Defendants produced only one document responsive to Request 12, which sought documents concerning "the seizure of any of [Defendants'] assets, payments, funds, or other interests by the United States Attorney or any other governmental person from April 2, 2020 through the present." That document was simply ████████████

This production is evidently incomplete because Defendants have conceded the government's seizure of the lease termination payments identified in Paragraph 1 of the TRO and June 5 injunction.

### B. Defendants' Incomplete Responses Require Immediate Supplementation

Federal Rule of Civil Procedure 26 provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). Defendants claim that Plaintiffs' Requests for Production are "overly broad, unduly burdensome, and oppressive" because, among other things,



they "would require the location, analysis, and review of hundreds, perhaps thousands, of documents."  Ex. 3.  Defendants fail to support this objection despite multiple opportunities to do so.  That is not surprising, because each Request Defendants oppose on this ground is facially and reasonably calculated to lead to the discovery of evidence.

As a threshold matter, many of the requests seek only documents "sufficient to show" facially relevant information, including the financial benefits that Defendants received from Amazon transactions.  *See, e.g.*, Request 5; Interrogatory 3.   The "sufficient to show" language establishes that Plaintiffs are not asking Defendants to pull and review "hundreds, perhaps thousands, of documents."  They are simply asking for documents sufficient to show the financial benefits from Amazon transactions that Defendants insist Plaintiffs and the Court misunderstand.  The same is true of the information necessary to satisfy discovery requests, such as Requests 4, 5, 7, 8, 11, 14 and 15, regarding transactions, assets, and relationships that Defendants have affirmatively represented to Plaintiffs, the public, and the Court.  Defendants put the information in these and other requests directly at issue when they attacked Plaintiffs' liability and remedy claims, refused to comply with the injunction, filed an unverified personal financial statement for Watson but nothing for WDC/Northstar, and appealed the injunction to the Fourth Circuit on grounds that this Court abused its discretion in assessing Plaintiffs' assets and role in the transactions in suit.  Particularly where, as here, Defendants declare that they have already reviewed the information requested, the burden of producing the information and substantiating their representations to the Court is not undue.

Further, and regardless, Defendants' burden objections are entirely unsupported by evidence.  In complex cases, reviewing hundreds of communications is routine.  And Defendants' contrary contentions required them to provide evidence of their claimed undue burden.  They have

not even purported to do so.  For example, at the August 12 meet and confer, they agreed to run searches for the individuals listed in Request No. 7 to identify the type and volume of any responsive documents.  And they further agreed to provide Amazon with a document count and other information on the search hits.  But they have never produced such information, or otherwise substantiated their burden objections, on this or any other request at issue in this motion.

For the foregoing and other reasons, Defendants' belated productions and responses to the requests in issue are all "evasive" and "incomplete."  Fed. R. Civ. P. 37(a)(4).  They fail to provide critical information that the Court ordered in July, Defendants undeniably possess, and cite in support of persistent and unsubstantiated attacks on the liability and remedy claims in this case. An order compelling Defendants to serve complete responses to these requests is necessary, as is an order to pay Plaintiffs' reasonable costs and fees in bringing this motion, which Plaintiffs will support with appropriate time and cost records if granted.  *See* Fed. R. Civ. P. 37(a)(5).  Plaintiffs reserve all further rights and remedies with respect to Defendants' discovery violations, which on the record here may support additional sanctions under Fourth Circuit precedent addressing "repeated refusals to comply" with "legitimate discovery requests, despite court orders to the contrary."  *E.g.*, *United States v. One Tract of Real Property*, 107 F.3d 868, 1997 WL 71719, at *3 (4th Cir. 1997) (table op.).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court compel Defendants to produce all documents and information responsive to the 22 requests the Court approved in July (Dkt. 95), and direct Defendants to pay Plaintiffs' reasonable costs and fees incurred in bringing this motion.

Dated: October 20, 2020

Respectfully submitted,

*s/ Travis S. Andrews*
Elizabeth P. Papez (*pro hac vice*)
Patrick F. Stokes (*pro hac vice*)
Claudia M. Barrett (*pro hac vice*)
Travis S. Andrews (Va. State Bar No. 90520)
Luke M. Sullivan (Va. State Bar No. 92553)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
Telephone:  (202) 955-8500
Facsimile:  (202) 467-0539
epapez@gibsondunn.com
pstokes@gibsondunn.com
cbarrett@gibsondunn.com
tandrews@gibsondunn.com
lsullivan@gibsondunn.com

*Counsel for Plaintiffs Amazon.com, Inc. and Amazon Data Services, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 20, 2020, I will electronically file the foregoing with the

Clerk of Court using the CM/ECF system.  I will send then send the document and a notification

of such filing (NEF) to the following parties via U.S. mail to their last-known address:

Jamie Hubbard
Stimson Stancil LaBranche Hubbard
1652 Downing Street
Denver, CO 80218
*Counsel for Defendants White Peaks Capital*
*LLC and NOVA WPC LLC*

Villanova Trust
c/o Christian Kirschner, Trustee
3924 Wallace Lane
Nashville, TN 37215

Finbrit Holdings LLC
6870 W 52nd Avenue, Suite 203
Arvada, Colorado 80002

NSIPI Administrative Manager
1999 Broadway, Suite 3500
Denver, CO 80202

Sterling NCP FF, LLC
1999 Broadway, Suite 3500
Denver, CO 80202

Manassas NCP FF, LLC
1999 Broadway, Suite 3500
Denver, CO 80202

Allcore Development LLC
6870 W 52nd Avenue, Suite 203
Arvada, CO 80002

*s/ Travis S. Andrews*
Travis S. Andrews (Va. State Bar No. 90520)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
Telephone:  (202) 955-8500
Facsimile:  (202) 467-0539
tandrews@gibsondunn.com

*Counsel for Plaintiffs Amazon.com, Inc. and Amazon*
*Data Services, Inc.*

27