**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

|  |  |
|---|---|
| AMAZON.COM, INC. and AMAZON DATA SERVICES, INC.,<br><br>          Plaintiffs,<br><br>    v.<br><br>WDC HOLDINGS LLC dba NORTHSTAR COMMERCIAL PARTNERS; BRIAN WATSON; STERLING NCP FF, LLC; MANASSAS NCP FF, LLC; NSIPI ADMINISTRATIVE MANAGER; NOVA WPC LLC; WHITE PEAKS CAPITAL LLC; VILLANOVA TRUST; CARLETON NELSON; CASEY KIRSCHNER; ALLCORE DEVELOPMENT LLC; FINBRIT HOLDINGS LLC; CHESHIRE VENTURES LLC; JOHN DOES 1-20,<br><br>          Defendants. | CASE NO. 1:20-CV-484-LO-TCB |

**AMAZON PLAINTIFFS' OPPOSITION TO MOTION OF DEFENDANTS**
**CARLETON NELSON AND CASEY KIRSCHNER TO TRANSFER VENUE**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .......................................................................................... iii

INTRODUCTION ..................................................................................................... 1

BACKGROUND ........................................................................................................ 4

ARGUMENT ............................................................................................................ 11

    I.    THE TRANSFER MOTION FAILS ON JURISDICTIONAL GROUNDS ............... 12

    II.   THE TRANSFER MOTION MISAPPLIES *ATLANTIC MARINE* ............................. 12

    III.  THE TRANSFER MOTION FAILS ON ALL SECTION 1404(a) FACTORS .......... 14

        A.    Step One:  Private Interests Under the Forum Clauses Favor Virginia ................ 16

        B.    Step Two:  Interests of Parties Not Bound by Forum Clauses Favor

            Virginia ...................................................................................................... 21

        C.    Step Three:  Procedural Considerations Do Not Support Transfer ...................... 26

        D.    Step Four:  Efficiency and All Other Factors Favor Virginia ............................... 29

CONCLUSION ......................................................................................................... 30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Artech Info. Sys., LLC v. ProTek Consulting*,
   2018 WL 3575054 (D. Md. July 25, 2018)......................................................23, 25

*Ashley Furniture Indus., Inc. v. Packaging Corp.*,
   275 F. Supp. 3d 957 (W.D. Wis. 2017) ..........................................................22, 26

*Atlantic Marine Construction Co. v. U.S. District Court for W.D. Texas*,
   571 U.S. 49 (2013).........................................................................2, 3, 11, 13, 20

*B&O Mfg., Inc. v. Home Depot*,
   2007 WL 3232276 (N.D. Cal. Nov. 1, 2007) ...........................................................28

*BAE Sys. Tech. Sol. & Servs., Inc. v. Republic of Korea's Def. Acquisition
   Program Admin.*,
   884 F.3d 463 (4th Cir. 2018) .......................................................................14, 16

*Bartels by and through Bartels v. Saber Healthcare Grp., LLC*,
   880 F.3d 668 (4th Cir. 2018) ............................................................................20

*Bd. of Trs., Sheet Metal Workers Nat'l Fund v. Baylor Heating & Air
   Conditioning, Inc.*,
   702 F. Supp. 1253 (E.D. Va. 1988) ...................................................................30

*Behimer v. Sullivan*,
   261 F.2d 467 (7th Cir. 1958) .......................................................................12, 30

*Bigland v. FCA N. Am. Holdings, LLC*,
   2019 WL 493512 (E.D. Mich. Oct. 7, 2019) ..........................................................20

*Blixseth v. Disilvestri*,
   2013 WL 12063940 (S.D. Fla., Jan. 31, 2013) ........................................................20

*Builders Mut. Ins. Co. v. Parallel Design & Dev. LLC*,
   2010 WL 11470405 (E.D. Va. June 17, 2010) .......................................................12

*Clark-Alonso v. Southwest Airlines Co.*,
   440 F. Supp. 3d 1089 (N.D. Cal. 2020) ..............................................................21

*Continental Grain Co. v. Barge FBL-585*,
   364 U.S. 19 (1960)......................................................................................29

*Corsentino v. Meyer's RV Ctrs. LLC*,
   2020 WL 4199744 (D.N.J. July 22, 2020).......................................17, 21, 23, 26, 28

*Crescent International Inc. v. Avatar Communities, Inc.*,
    857 F.2d 943 (3d Cir. 1988)......................................................................19, 20

*Friedman v. World Transp., Inc.*,
    636 F. Supp. 685 (N.D. Ill. 1986) ........................................................................20

*Gen. Env't'l Sci. Corp. v. Horsfall*,
    753 F. Supp. 664 (N.D. Ohio 1990)......................................................................20

*Greenwich Life Settlements, Inc. v. Viasource Funding Group, LLC*,
    742 F. Supp. 2d 446 (S.D.N.Y. 2010)...................................................................28

*Guadalupe v. Am. Campus Comtys. Servs., Inc.*,
    2016 WL 11535823 (E.D. Va. Aug. 12, 2016).....................................................30

*Hoffman v. Blaski*,
    363 U.S. 335 (1960)....................................................................................2, 12

*In re: Howmedica Osteonics Corp.*,
    867 F.3d 390 (3d Cir. 2017)..............................................13, 14, 15, 21, 28, 29

*Hugel v. Corp. of Lloyd's*,
    999 F.2d 206 (7th Cir. 1993) ...............................................................................19

*Jon Feingersh Photography, Inc. v. Pearson Educ., Inc.*,
    978 F. Supp. 2d 463 (E.D. Pa. 2013) .............................................................11, 28

*Jones v. Custom Truck & Equip., LLC*,
    2011 WL 250997 (E.D. Va. Jan. 25, 2011) ...............................................16, 17, 28

*Joseph v. Amazon.com, Inc.*,
    2013 WL 4806462 (N.D. Cal. Sept. 9, 2013) .................................................18, 19

*JTH Tax, Inc. v. Lee*,
    482 F. Supp. 2d 731 (E.D. Va. 2007) ...................................................................11

*King v. Corelogic Credco LLC*,
    2018 WL 2977393 (E.D. Va., June 13, 2018) ......................................................11

*Lewis v. Jayco, Inc.*,
    2019 WL 3797357 (E.D. Va. Aug. 12, 2019).............................................15, 17, 27

*Marsh v. Curran*,
    362 F. Supp. 3d 320 (E.D. Va. 2019) ...................................................................24

*One Beacon Ins. Co. v. JNB Storage Trailer Rental Corp.*,
    312 F. Supp. 2d 824 (E.D. Va. 2004) ...................................................................27

*Pegasus Transp., Inc. v. Lynden Air Freight, Inc.*,
   152 F.R.D. 574 (N.D. Ill. 1993) ..................................................................28

*Primary Color Sys. Corp. v. Agfa Corp.*,
   2017 WL 8220729 (C.D. Cal. July 13, 2017) ...........................................17

*In re Rolls Royce Corp.*,
   775 F.3d 671 (5th Cir. 2014) ....................................................................23

*Samuels v. Medytox Sols., Inc.*,
   2014 WL 4441943 (D.N.J. Sept. 8, 2014) ...........................................16, 17

*SEC v. National Student Marketing Corp.*,
   360 F. Supp. 284 (D.D.C. 1973) ...............................................................28

*Snider v. Lone Star Art Trading Co.*,
   672 F. Supp. 977 (E.D. Mich. 1987) .........................................................21

*Stewart Org., Inc. v. Ricoh Corp.*,
   810 F.2d 1066 (11th Cir. 1987) .................................................................19

*Trs. of Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*,
   791 F.3d 436 (4th Cir. 2015) ....................................................................15

*Tsai v. Karlik*,
   2014 WL 3687201 (E.D. Mo. July 24, 2014) ............................................27

*United States v. Douglas*,
   626 F. Supp. 621 (E.D. Va. 1985) .......................................................27, 28

*Warnaco Inc. v. VF Corp.*,
   844 F. Supp. 940 (S.D.N.Y. 1994) ............................................................18

*Waterman v. Thor Motor Coach, Inc.*,
   2020 WL 1290595 (W.D. Va. Mar. 18, 2020)....................................15, 16, 26, 29

*Yei A. Sun v. Advanced China Healthcare, Inc.*,
   901 F.3d 1081 (9th Cir. 2018) ..................................................................13

**Statutes**

28 U.S.C. § 1404(a) ...................................................2, 11, 12, 13, 14, 15, 20, 21, 29, 30

**Rules**

Fed. R. Civ. P. 12(b) .............................................................................11, 20, 28

Fed. R. Civ. P. 13(a) .............................................................................28, 29, 30

**Other Authorities**

7 Fed. Prac. & Proc. Civ. § 1625 (3d ed. 2020).............................................................................28

15 Fed. Prac. & Proc. Juris. § 3841 (4th ed.)..............................................................................11

**INTRODUCTION**

Two individual defendants, Carleton Nelson and Casey Kirschner, seek to transfer this case to a federal court in Washington State. Dkt. 165. They do so in an effort to distance themselves from this Court and related criminal proceedings in this District. But their own documents and authorities confirm that this action belongs in Virginia, and that their motion should be denied.

The transfer request is based entirely on the "Confidentiality, Noncompetition, and Invention Assignment Agreements" ("CNIAAs") that Nelson and Kirschner signed in connection with their former employment at Amazon. Dkt. 165 at 2. These agreements are irrelevant to 11 of the 12 civil counts that Amazon has alleged against the ring of RICO conspirators in this case, whose scheme targeted over $500 million of real estate development in this District alone. Before Amazon even added its CNIAA claim, this Court had already found that Amazon adequately alleged "conduct that supported law enforcement's finding of probable cause," and "support[ed] a likelihood of success on [Amazon's] RICO claims." *See* Dkt. 99 at 8, 11. Accordingly, the law of this case is that it is a viable federal and Virginia action regardless of the CNIAAs.

In its First Amended Complaint, Amazon added a count for breach of the CNIAAs in addition to at least 11 real estate contracts that are central to Defendants' fraud and kickback scheme. Amazon did so principally because it anticipated that at least Nelson might attempt to rely on his CNIAA as a defense to this action. And indeed he does. *See* Dkts. 165; 182. But the notion that the CNIAAs allowed Nelson or Kirschner to engage in their fraudulent kickback scheme is patently meritless. These agreements are relevant only because Nelson and Kirschner breached them in the course of violating various independent federal and other laws. Amazon thus concluded that the CNIAA claims can and should be litigated with the related claims in this conspiracy case.

On that point Nelson and Kirschner agree. They refuse to sever their CNIAA claims, and insist that this "entire matter" must go to Seattle. Dkt. 165 at 15. To further this improper bid,

Nelson recently filed a lawsuit in state court in Seattle, Dkt. 196-1, that raises the same CNIAA "breach" and "venue" claims Amazon first asserted here, Dkts. 100; 150; 165 at 1–2. Nelson's complaint asks the state court to usurp this Court's role in deciding forum and choice of law not only for Nelson's CNIAA claims, but also for every other claim in this action, all of which Nelson and Kirschner are simultaneously asking this Court to transfer to *federal* court in Washington. *Compare* Dkt. 165 at 26 *with* Dkt. 196-1 at 1–3. There is only one proper solution to this blatant abuse of process: This Court should deny transfer, and require Nelson and Kirschner to litigate their CNIAA claims here. Indeed, the transfer motion itself compels that result for three reasons.

*First*, the motion rests solely on 28 U.S.C. § 1404(a). That alone requires denial, because Section 1404(a) permits transfer only to a forum in which the suit "might have been brought" originally. *Id*. This test requires a showing that the transferee court would have had personal jurisdiction over all defendants at the start of the case. *Hoffman v. Blaski*, 363 U.S. 335, 344 (1960). Nelson and Kirschner do not—and cannot—make this showing with respect to all defendants, many of which have little or no connection to Washington, and some of which signed leases (Northstar) or purchase contracts (White Peaks) that expressly provide for jurisdiction in Virginia. The Northstar Defendants' tactical "consent to transfer" (Dkt. 165 at 26) does not change this, because Section 1404(a) focuses on whether jurisdiction would have been proper "*independent*[] of the wishes of [the] defendant[s]" when the "suit [wa]s *commenced*." *Hoffman*, 363 U.S. at 344.[1] It is thus "immaterial that [a] defendant subsequently makes himself subject, by consent [or] waiver . . . to the jurisdiction of some other forum." *Id.*

*Second*, Defendants' motion fails under their leading Section 1404(a) case: *Atlantic Marine Construction Co. v. U.S. District Court for W.D. Texas*, 571 U.S. 49 (2013). Dkt. 165 at 1.

---

[1] Unless otherwise indicated, all emphasis is added.

Nelson and Kirschner insist that the CNIAA's "exclusive" Seattle venue provision requires transfer of this entire suit under *Atlantic*'s directive that "a forum-selection clause be given controlling weight in all but the most exceptional cases." *Id.* at 1 (quoting *Atlantic*, 571 U.S. at 59–60)). This is an exceptional case. But the Court need not reach that issue because *Atlantic*'s transfer presumption does not even apply to suits involving the independent claims and competing venue provisions at issue here. The transfer motion concedes that this suit "principally focuses on nine lease transactions [between] Amazon and Northstar." *Id.* at 5. Many of those leases, as well as a key purchase agreement, provide for venue in Virginia. On this record, the CNIAAs do not "compel transfer" of any claims under *Atlantic*. Instead, as Nelson and Kirschner ultimately admit, transfer is governed by "the four-step test that other courts have employed when considering the application of *Atlantic Marine* in cases involving multiple defendants." Dkt. 165 at 15.

*Third*, every prong of the "four-step" test favors this District. Defendants' illegal enterprise targeted over half a billion dollars in development projects for at least 11 Virginia properties. As detailed below, Defendants' own documents confirm their persistent illegal activities in Virginia, which were observed by multiple witnesses here and in other jurisdictions closer to Virginia than to Washington State. *See* Dkt. 165 at 6–7. Further, this action overlaps with a parallel criminal investigation and government forfeiture proceedings in this District, *United States v. 35 Queensland North*, No. 1:20-cv-613 (E.D.Va.), as well as forfeitures from banks in Arizona, Colorado, Illinois, Minnesota, and Texas, (Dkt. 163-3). The transfer motion ignores all of these facts, *none* of which results from "choices [Amazon] made" to "escape its contractual obligations," Dkt. 165 at 2, or to "join[]" parties in an "effort to defeat" venue in Seattle, *id*. at 19. All of the factors that preclude transfer of this suit are a direct result of *Defendants'* "choice" to engage in illegal activities targeting property and business interests in this District. Accordingly, their motion fails.

## BACKGROUND

Amazon was forced to file this action for emergency injunctive relief in April 2020 because Defendant Brian Watson jeopardized evidence and assets central to the case after the FBI executed a search warrant at his home. Dkts. 1, 16, 57. Amazon's initial complaint pled conduct by Nelson and Kirschner in their capacities as former Amazon Transaction Mangers, but did not name them as individual (rather than "Doe") defendants for several reasons. First, Amazon's internal investigation into their misconduct was at an early and sensitive stage. Second, the allegations against Watson and other co-conspirators amply supported the temporary restraining order, Dkt. 16, and preliminary injunction, Dkt. 57, Amazon requested against those Defendants, Dkts. 68, 84, 190. By late July, however, matters had progressed to a point that supported naming Nelson and Kirschner as defendants in the First Amended Complaint, Dkt. 100, which detailed conduct publicly addressed in parallel government forfeiture actions against Kirschner. *See, e.g.*, 1:20-cv-613; Dkt. 163-3. Now, as then, Amazon's primary claims against Nelson and Kirschner do *not* depend on the CNIAA breaches incidental to their role in the RICO scheme. This case arises out of Defendants' fraud, kickbacks and price manipulation in this District, as well as their commission of several RICO predicates to conceal their illicit gains from Amazon's real estate investments here.[2]

***Nelson and Kirschner CNIAAs***. Amazon employees in certain positions sign CNIAAs as one of many conditions of employment. Nelson and Kirschner signed their CNIAAs in 2012 and 2015, respectively. Dkt. 150 ¶¶ 142, 145. These agreements complement other legal commitments, including in Amazon's Code of Business Code and Outside Activity Policy, by imposing

---

[2] The transfer motion misrepresents Amazon's RICO predicates as only wire fraud and honest services fraud. Dkt. 165 at 5. Amazon's RICO claims also assert predicates of money laundering, and Travel Act violations. Dkt. 150 ¶¶ 392–432.

specific commitments on signatory employees regarding the use of confidential information, business competition during and after the signatory's tenure with Amazon, and rights relating to inventions and intellectual property.  Dkt. 150 ¶¶ 146–50, 500–01.

Nelson's CNIAA states that "venue of any suit arising out of or related to this agreement shall be exclusively in the state and federal courts of King County, Washington."  Dkt. 162-10 at 8.  Kirschner's CNIAA states that "[e]ach party irrevocably consents to exclusive jurisdiction and venue in the state and federal courts located in King County, Washington with respect to any action, claim, or proceeding arising out of or in connection with this Agreement," with certain exceptions.  Dkt. 162-9 at 4.  The CNIAAs govern only the specific confidentiality, competition, and intellectual property matters they address.  Other aspects of Nelson's and Kirschner's employment with Amazon are addressed elsewhere, including the Amazon Code of Conduct ████████ ████████.  *See* Declaration of Lora E. MacDonald ¶¶ 3–4 (Nov. 9, 2020) ("11/9/20 MacDonald Decl.") Exs. 1 & 2; Dkt. 150 ¶¶ 130–38.

***Virginia Lease and Purchase Agreements***.  Amazon's breach of contract claim in this suit covers several defendants under several agreements that have nothing to do with Nelson and Kirschner's CNIAAs.  Dkt. 150 ¶ 492.  Specifically, the breach count covers at least nine Virginia Leases, the White Peaks Purchase Agreement, and the Blueridge Transaction Agreement, *id*. ¶ 495, all of which contemplate Virginia law and a Virginia forum for this suit.  Notably:

- ***Leases 7–9***.  These Leases, which govern the Northstar-affiliated landlord entities of Manassas (lease numbers 7–8), and Dulles NCP II (lease number 9) (Dkt. 150 ¶ 234) each contain choice-of-law and forum provisions stating that:

  ████████████████████████████████
  ████████████████████████████████
  ████████████████████████.  *See, e.g.*, Dkts. 158-3 at 4, 163-8 at 4.

- ***Leases 1–6***.  These Leases, which govern the Northstar-affiliated landlord entities of Dulles NCP (lease numbers 1–2) and Quail Ridge (lease numbers 3–6), each contain a provision stating that the ███████████████████████████████████████████████████████

  ███████████████████████████████████████████████████████████

  ███████████████████████████   11/9/20 MacDonald Decl. ¶¶  7–12, Exs. 5–10 at ¶ 35(k).

- ***Blueridge and White Peaks Contracts***.  The Blueridge Assignment Agreement addressed in the complaint states that ███████████████████████████████████████████

  ███████████████████████████████████████████████████████████

  11/9/20 MacDonald Decl. ¶ 13, Ex. 11 § 12).  And the White Peaks Agreement states that:

  > [T]he *State of Virginia has a substantial relationship to the parties and to the Transaction*, and in all respects (including, without limiting the generality of the foregoing, matters of construction, validity and performance) this Agreement and the obligations arising hereunder shall be governed by, and construed in accordance with, the laws of the State of Virginia . . . .

  > Any legal suit, action or proceeding against either party *arising out of or relating to this Agreement* may be instituted in *any federal or state court sitting in the State of Virginia*, and the parties *waive any objection which it may now or hereafter have to the laying of venue of any such suit, action or proceeding in the State of Virginia*, and each party hereby expressly and *irrevocably submits* to the jurisdiction of any such court in any suit, action or proceeding**.**

Dkt. 160-8 at 4.

These agreements confirm that this suit belongs in Virginia, and that Watson's belated assertion of "improper venue" is contractually (as well as procedurally) barred.  Dkt. 176 at 5.

***Amazon's Claims***.  As this Court has explained, the crux of this case is a "widespread scheme of kickbacks and fraudulent transactions among all defendants . . . amounting to tens of millions of dollars on real property transactions with Amazon in the northern Virginia Dulles corridor."  Dkt. 99 at 3.  Defendants Nelson and Kirschner were ringleaders of this unlawful enterprise, Dkt. 150 ¶ 1, and face 11 counts independent of the CNIAAs.  *See* Dkt. 150 at 74 (RICO),

92 (RICO), 96 (fraud), 99 (tortious interference), 101 (civil conspiracy), 107 (unjust enrichment), 112 (conversion), 115 (*alter ego* and piercing the corporate veil), 115 (agency and *respondeat superior*), 118 (Robinson-Patman).  The transfer motion ignores this record in asserting that "the potential factors Amazon might cite against transfer—including Amazon's decision to name other defendants—were all choices [Amazon] made."  Dkt. 165 at 2.  This District is the only proper venue for adjudicating all of the independent counts against the 13 named defendants in this suit, eleven of whom are *not* bound by the CNIAAs, and several of whom consented to venue in this District in controlling real estate contracts and prior proceedings, Dkts. 16, 57, that the transfer motion ignores, Dkt. 165.  The CNIAA claims against Nelson and Kirschner are part of this suit solely because of *their* "choices."  Nelson and Kirschner chose to violate a host of statutory, contract, and common law obligations during and after their tenure with Amazon.  They chose to engage in these unlawful acts despite—not "because of," Dkt. 165 at 13—their CNIAA and other legal obligations to the company.  And they chose to commit these violations through a RICO enterprise that targeted substantial real estate and business interests in this District.  They cannot now avoid accountability for these "choices" by transferring even their CNIAA claims to Seattle.

**Defendants' Virginia-Focused Conduct**.  Venue in this District is appropriate in light of the claims and contracts in suit and Nelson and Kirschner's extensive activities in this District.  Dkt. 150 at ¶¶ 49, 52, 66, 70–71, 158.  The record before the Court documents these activities,

██████████████████████████████████████████████████████

████████████████.  *See* 11/9/20 MacDonald Decl. ¶ 20, Ex. 18.  And they are further confirmed in recently-obtained communications among Nelson, Watson, and White Peaks principal Kyle Ramstetter while Ramstetter was at Northstar.  *See id*. ¶¶ 14–19, Exs. 12–17.

As a threshold matter, these communications confirm Watson's payment of unlawful kick-backs to Nelson and Kirschner on the Virginia Lease Transactions through Defendant Villanova Trust. Dkt. 150 ¶¶ 6, 162, 349–51. For example, in a 2019 discussion following Ramstetter's recent trip to Virginia on the "Manassas" and "Quail Ridge" leases, Watson states that the "first tier that I've got to pay off is . . . Villanova." 11/9/20 MacDonald Decl. ¶ 16, Ex. 15 at 2, 19. Watson then agrees with Ramstetter that "first priorit[y] should be Casey and Carl . . . [n]o matter what," and that Ramstetter understood Watson would "take away . . . or pay and honor Casey and Carl, because we clearly know what's gonna come." *Id.* at 21. Watson then confirms that "Villa-nova's first and foremost and they get their share," *id.* at 28, and that he had "already talked to Casey" about leveraging his position at Amazon to keep Northstar involved in the Virginia prop-erties over any objection from what Ramstetter identified as its "JV partner" (IPI), *id.* at 33. Wat-son also stated that there would be "3 million total to them [Nelson and Kirschner]" in the refer-enced kickbacks, *id.* at 35.

Other conversations range beyond the Northstar leases to Defendants' broader scheme. For example, Nelson told Ramstetter that "I've [Nelson] put enough of the f***ing money I made on the Brian deals in the, you know, couple different investment and savings accounts" that they could split illicit proceeds on new transactions, including the White Peaks sale in this District:

> **Nelson**: [Y]ou [Ramstetter] signed a PSA [Purchase and Sale Agreement] with your name on it, for a piece of dirt in Virginia. . . . [C]ome on.
> **Ramstetter**: What's the risk there?
> **Nelson**: I think the risk there is that somebody from Amazon picks up that it's Kyle Ram-stetter, and it's also a guy we're working with at NorthStar. What's going on? Now it's explainable . . . .
> **Ramstetter**: I took all the f***ing risk. . . .
> **Nelson**: Well, no, that's not true. . . . But what I'm saying is, look it's one thing to take on buying a piece of property, tying a piece of property down, it's another *when you've got people like Casey or myself saying, we've got this*. . . . So from a risk perspective, this is arbitrage, pure arbitrage. Now I'm not saying you don't have to put together the pieces. That's that's why you're getting paid 33 percent. We said f***, Kyle's doing a lot of work

out there in the field.  If you think normally, we'd pay somebody that just tied up a piece of dirt 33 percent?  Like that's a lot of money.

11/9/20 MacDonald Decl. ¶ 14, Ex. 13 at 6–8, 17.

In the recordings, Nelson references other individuals involved in the Virginia misconduct addressed in the complaint, including Virginia-based "Johnny" Lim and Blueridge principal "Herb" Glimcher, whose firm orchestrated the Blueridge Assignment in this District, *id.* at 18, 22, 23, 25; Dkt. 150 ¶¶ 6, 10, 301, and Rodney Atherton, a previously suspended attorney who organized Villanova and other entities used to carry out the scheme in this district, Dkt. 150 ¶¶ 6–8, 37–44, 98–106, 174, 214, 219, 344.  Nelson tells Ramstetter that "Rod's job is to make us invisible," and admits that the "first couple distributions we took . . . through Casey's brother . . . . that was some sketchy ass sh*t."  11/9/20 MacDonald Decl. ¶ 14, Ex. 13 at 8–9.  Nelson also addresses Defendants' schemes to conceal conduct on the Virginia transactions that raised "anti-bribery," "Code of Business conduct," "tax" and "non-compete" concerns, *id.* at 1, 26, 29, derides his former Amazon colleagues as "f***ing idiot[s]," *id.* at 19, and describes plans to keep "getting deals approved" at Amazon to perpetuate the RICO enterprise notwithstanding his termination and Kirschner's planned departure, *id.* at 20, 22–24.  Indeed, Nelson and Kirschner misled Amazon regarding two Virginia acquisitions concluded after this conversation.  Dkt. 150 ¶¶ 296, 298, 322.

Communications from 2018 through early 2019 also confirm Nelson's extensive activities in this District in furtherance of the misconduct in suit.  In chats between June 6 and September 3, 2018, Nelson confirms he has "been in Nova," and is planning further trips including a "whole week" in September 2018.  11/9/20 MacDonald Decl. ¶ 18, Ex. 16 at 1, 3, 4.  Chats from November and December 2018 confirm additional meetings in Virginia, *see id.* at 7, including on the Shaw Road transaction with Amazon:

> ***December 10, 2018, 7:20:43 PM – 7:30:04 PM:***
> **Ramstetter**: *In VA? Yes sir*!

9

**Nelson**: I'm at bar - where you at? . . . . Westin or out? Can hook up whenever . . .
**Ramstetter**: Let's chat tomorrow? Small group (you, me Casey and Johnny). . . .
**Nelson**: Solid - *let's keep the group to you me and Casey - JCL is inner circle not inner workings.*

**December 11, 2018, 2:18:48 PM – December 12, 2018, 8:36:14 AM:**
**Nelson**: Hey man running into a meeting - where you staying? . . . .
**Ramstetter**: I'm at the *Sheraton Reston. Casey is here too* . . . .
**Nelson**: Lunch today at Johnnys office?
**Ramstetter**: We have the Shaw road oac at 1, but we could make it work
**Nelson**: Let's do 11:45 at Johnnys office. 14441 Brookfield Tower Dr Chantilly, VA 20151.

**January 28, 2019, 8:33:37 – 8:59:06 AM:**
**Ramstetter**: Want to get together in VA on the 5th or 6th?
**Nelson**: Had to rearrange schedule - coming out the following week

**February 12, 2019, 1:55:28 – 1:56:28 PM:**
**Nelson:** Are you back tonight?
**Ramstetter**: Yeah, at airport now. Let's chat later this week following our chat at Jackson's![3] Pumped man
**Nelson**: Hell yeah man - good looking out . . . .

11/9/20 MacDonald Decl. ¶ 18, Ex. 16 at 7–9.

*Convenience and Public Interest Factors.*  In addition to the Defendants' extensive conduct and parallel government proceedings here, several known witnesses reside either in this District or closer to Virginia than to Washington State, including Johnny Lim and E2M Properties in Virginia and Luke Gilpin in Chicago.  Dkt. 165 at 18.  The only person for whom venue in Washington would be more convenient than Virginia is Nelson, who resides in Seattle.  Kirschner resides in Minnesota and will have to travel regardless.  The same is true for the Northstar Defendants, all of which are in Colorado, and all of which "irrevocably submit[ted]" to venue here in their contracts and prior pleadings.  *See, e.g*., Dkts. 158-3 at 4; 163-8 at 4.[4]

---

[3] This refers to a restaurant in Reston, Virginia.  https://jacksonva.com/.

[4] Defendants' claim that Seattle would be more convenient for witnesses in Chicago than Virginia, Dkt. 165 at 18, is unsupported.  A flight from Chicago to Reagan National Airport, the closest airport to this Court, is 1 hour 45 minutes, while a flight from Chicago to Seattle is 4 hours and 20

**ARGUMENT**

The sole basis for Defendants' transfer motion is 28 U.S.C. § 1404(a), which permits transfer only upon a showing that "the interest of justice" and "convenience of parties and witness" override the plaintiff's forum choice.  28 U.S.C. § 1404(a).  Transfer under Section 1404 "is not routine," and should be granted only where the movant proves that "another proper venue is the 'center of gravity' for the dispute."  15 Fed. Prac. & Proc. Juris. § 3841 (4th ed.) (quoting *King v. Corelogic Credco LLC*, 2018 WL 2977393, at *2 (E.D. Va., June 13, 2018)).  Nelson and Kirschner cannot make this showing because the "center of gravity" for this suit is Virginia.  They attempt to overcome this problem by arguing that this case is not one in which "[t]he movant bears the burden of showing that transfer is proper."  *JTH Tax, Inc. v. Lee*, 482 F. Supp. 2d 731, 736 (E.D. Va. 2007).  Instead, they say Amazon has the "burden of showing" that transfer to Seattle is "unwarranted" because Amazon is "the party defying the forum-selection clause" in their CNI-AAs.  Dkt. 165 at 2 (quoting *Atlantic*, 571 U.S. at 63).  But their argument fails under *Atlantic* itself, which endorses this burden shift only where a mandatory forum clause binds *all parties* to the case.  *See* 571 U.S. at 52–53, 63.  Where, as here, the action covers independent claims and defendants as well as contracts governed by competing forum provisions, the burden remains on the Section 1404 movants—here just Nelson and Kirschner[5]—to establish the grounds for transfer.  *See, e.g.*, *Jon Feingersh Photography, Inc. v. Pearson Educ., Inc.*, 978 F. Supp. 2d 463, 467 (E.D. Pa. 2013).  They do not come close to meeting this standard.

---

minutes and two time zones away.  Seattle is also nearly twice as far (2,000 miles, two time zones) from Chicago as Virginia is from Chicago (1,100 miles, one time zone).  As a result, even remote video or teleconference proceedings would be less convenient in Washington State.

[5]  Notably, the transfer motion is not signed by the Northstar Defendants or by Cheshire Ventures, which joined Nelson's Rule 12 motion, Dkt. 182.

## I.  THE TRANSFER MOTION FAILS ON JURISDICTIONAL GROUNDS

The first requirement for a Section 1404(a) transfer is that the transferee court—here the Western District of Washington—is a forum in which the suit "might have been brought" originally. *Hoffman v. Blaski*, 363 U.S. 335, 344 (1960).  As the Supreme Court explained:

> If when a suit is commenced, plaintiff has a right to sue in that district, independently of the wishes of defendant, it is a district 'where (the action) might have been brought.'  If he does not have that right, independently of the wishes of the defendant, it is not a district 'where it might have been brought' and it is immaterial that the defendant subsequently []makes himself subject, by consent, waiver of . . . personal jurisdiction defenses or otherwise, to the jurisdiction of some other forum[].

*Id.* at 344 (quoting and adopting holding of *Behimer v. Sullivan*, 261 F.2d 467, 469 (7th Cir. 1958)); *see also Builders Mut. Ins. Co. v. Parallel Design & Dev. LLC*, 2010 WL 11470405, at *2 (E.D. Va. June 17, 2010) (Section 1404(a) requires that transferee court "could have exercised personal jurisdiction over the defendants . . . *without waiver or consent by the defendants*").

The transfer motion fails this first requirement because it makes no attempt to show the suit could "have been brought" against all defendants in Seattle.  Nelson and Kirschner fail even to address this issue.  Their motion simply states in passing that the Northstar Defendants "consent to transfer."  Dkt. 165 at 1, 26.  That is not enough under *Hoffman*.  *See* 363 U.S. at 344; *Builders Mut.*, 2010 WL 11570405, at *3 (consent to transfer does not satisfy the personal jurisdiction and other original filing requisites under Section 1404(a)).  Nelson and Kirschner's failure to establish that a Seattle court could have exercised personal jurisdiction over all defendants when this suit was "commenced," *Hoffman*, 363 U.S. at 344, alone forecloses their transfer request.

## II.  THE TRANSFER MOTION MISAPPLIES *ATLANTIC MARINE*

Even if Nelson and Kirschner could overcome the jurisdictional barrier above (they cannot), their motion fails on the remaining Section 1404(a) factors.  Their transfer request depends entirely on the argument that their CNIAAs make "Washington—not Virginia—the 'exclusive'

venue for any dispute 'related to' or 'in connection with'" those contracts, and that "§ 1404(a) requires that [this] forum-selection clause be given controlling weight in all but the most exceptional cases.'"  Dkt. 165 at 1 (quoting *Atlantic*, 571 U.S. at 59–60)); *id.* at 7–8.  But their own motion contains two admissions fatal to this argument.  First, they admit that the "Fourth Circuit has *never* applied *Atlantic Marine* in the present context, where a forum-selection clause governs the claims against some, *but not all*, defendants."  *Id*. at 15.  Second, they admit that this suit "principally focuses on nine lease transactions [between] Amazon and Northstar," *id.* at 5, many of which contain Virginia forum clauses their motion ignores, and thus waive the right to contest.

These admissions preclude transfer under their own cases because they take this suit outside *Atlantic's* presumption of forum clause enforcement.  *Atlantic* was a two-party case in which *all* litigants agreed to the *only* forum clause in issue.  Accordingly, as the Third Circuit recently observed, *Atlantic* "did *not* have occasion to address how" contractual venue clauses "should apply where non-contracting parties are present," much less against the backdrop of 11 non-contract claims involving the collusive conduct and overlapping government proceedings at issue here.  *In re: Howmedica Osteonics Corp*., 867 F.3d 390, 401 (3d Cir. 2017).[6]  The same is true of the other cases Nelson and Kirschner cite.  *See* Dkt. 165 at 9–14; Part III.A *infra*.

This case is fundamentally different.  It does *not* "arise out of" the CNIAAs even under Ninth Circuit law.  *See, e.g.*, *Yei A. Sun v. Advanced China Healthcare, Inc*., 901 F.3d 1081, 1086 (9th Cir. 2018) (limiting "arising under" venue only to contract causes of action, because "forum-

---

[6]  The transfer motion concedes that the "parcels of land at issue [in this suit] are located in Virginia," but insists that is irrelevant to venue because "there is no reason to think that 'view of premises' is 'appropriate to the action.'"  Dkt. 165 at 18 n.12 (quoting *Atlantic,* 571 U.S.  at 62 n.6).  This argument is wrong for at least two reasons.  First, a "view of premises" might well be necessary to assess Amazon's claims of site-related malfeasance.  *See, e.g.*, Dkt. 150 ¶¶ 267–69, 272–80.  Second, and regardless, venue turns on site contracts the transfer motion entirely ignores.

selection clauses covering disputes 'arising out of' a particular agreement apply only to disputes 'relating to the interpretation and performance of *the contract itself*'"). And here the CNIAAs' "related to" language does not support transfer even of the claims against Nelson and Kirschner, much less "compel" transfer of the entire suit to Seattle. Dkt. 165 at 15. As detailed below, Defendants' own cases confirm as much. They acknowledge Fourth Circuit law directing courts to "'enforce forum selection clauses *unless it would be unreasonable to do so*.'" Dkt. 165 at 7–8 (quoting *BAE Sys. Tech. Sol. & Servs., Inc. v. Republic of Korea's Def. Acquisition Program Admin.*, 884 F.3d 463, 470 (4th Cir. 2018)).[7] They "[a]dmit[]" that "the Fourth Circuit has *never* applied *Atlantic Marine* in the present context, where a forum-selection clause governs the claims against some, but not all, defendants." Dkt. 165 at 15. And their primary case addressing this situation holds that a district court "clearly and indisputably *err*[*s*] in transferring [a multi-defendant] case in its entirety to" a forum prescribed by a contract binding only *some* of the parties. *Howmedica*, 867 F.3d at 411. Indeed, even their decisions "transfer[ring] only the claims" subject to a venue contract involve none of the competing forum contacts present here. *Id.*

For all of these reasons, *Atlantic* does *not* "compel[] transfer" of any claims here. Dkt. 165 at 15. Instead, venue for all claims must be assessed under the four-part test addressed in the latter half of the transfer motion, *id.* at 15–26, which confirms that transferring any claims would be "unreasonable" under Defendants' own case law. Dkt. 165 at 7–8 (quoting *BAE*, 884 F.3d at 470).

## III. THE TRANSFER MOTION FAILS ON ALL SECTION 1404(a) FACTORS

As noted, Defendants concede that the "Fourth Circuit has *never* applied *Atlantic Marine* in the present context," but that courts in this District *have* adopted the "four-step test" the Third

---

[7] Defendants' other Fourth Circuit cases are equally unavailing. *See* Dkt. 165 at 9 (citing *Cara's Nation* and *May*, both of which addressed arbitration clauses under the Federal Arbitration Act).

and Fifth Circuits "employ[] when considering the application of *Atlantic Marine* in cases involving multiple defendants." Dkt. 165 at 15. These decisions recognize three possible options: "(1) transfer the case in its entirety; (2) leave the case in the Eastern District of Virginia; or (3) sever the claims . . . and enforce the forum-selection clause as to [the severed] claims." *Waterman v. Thor Motor Coach, Inc.*, 2020 WL 1290595, at *5 (W.D. Va. Mar. 18, 2020).[8] To decide among these options, courts look to the following "four-step framework." *Id.*; *Lewis v. Jayco, Inc.*, 2019 WL 3797357, at *3 (E.D. Va. Aug. 12, 2019).

*First*, courts consider the private interests "of the parties who have signed a forum-selection agreement." *Waterman*, 2020 WL 1290595, at *5. *Second*, they "consider[] the public and private interests relevant to non-contracting parties, just as [they] would in an independent § 1404(a) analysis involving those parties in the absence of any forum-selection clause." *Id.*; *Trs. of Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015) (addressing traditional Section 1404(a) factors of "plaintiff's choice of venue," party and "witness convenience," and the "interest of justice"). *Third*, if there is a conflict between the first two steps, the court must consider "issues relating to severance of the claims, including the presence of indispensable parties and diversity jurisdiction, personal jurisdiction, venue, or joinder defects." *Waterman*, 2020 WL 1290595, at *6. *Fourth*, "a court may exercise its discretion in choosing the most appropriate course of action considering efficiency interests in avoiding duplicative litigation and any other private interests that may weigh against enforcing a forum-selection clause," *id.* (quoting *Lewis*, 2019 WL 3797357, at *3), as well as related "public interests," *Howmedica*, 867 F.3d at 405. Here, all four steps support litigation of this entire action in this District.

---

[8] The transfer motion cites *Waterman* as dictating transfer here. Dkt. 165 at 24. *Waterman* does no such thing. It involved only three parties, two of which were bound by the forum clause that governed the standard contract claims in dispute. *See* 2020 WL 1290595, at *2.

A.        **Step One:  Private Interests Under the Forum Clauses Favor Virginia**

The first step of the post-*Atlantic* inquiry here favors this District because this case involves several forum-selection clauses that expressly prescribe venue in Virginia.  As noted, the Manassas and Dulles NCP II Leases state that ███████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████ and that ████████████████████████████████████ ████████████████████████████████ 11/9/20 Macdonald Decl. ¶¶ 5–6, Exs. 3–4 at ¶ 35(k); Dkt. 158-3 at 4.  The White Peaks Agreement goes even further and says "Virginia has a substantial relationship to the parties and to the Transaction, and in all respects . . . this Agreement and the obligations arising hereunder shall be governed by, and construed in accordance with, the *laws of the State of Virginia*," and any "*legal suit, action or proceeding against either party arising out of or relating to this Agreement* may be instituted in any *federal or state court sitting in the State of Virginia* . . . ."  Dkt. 160-8 at 4.

These competing forum clauses alone take this case outside *Atlantic's* presumption, *contra* Dkt. 165 at 1, and outside precedents discussing "exclusive" forum language that binds all parties to the *same* forum contract, *see, e.g.*, *BAE*, 884 F.3d at 468–72.  They also conclusively resolve *Howmedica*'s "Step One" in favor of this District by establishing that the interests "of the parties who have signed a forum-selection agreement" do *not* support transfer.  *Waterman*, 2020 WL 1290595, at *5 (applying *Howmedica*).  "As a general matter, when faced with two or more con-flicting forum selection clauses, federal courts are loathe to enforce all of them 'out of concern for wasting judicial and party resources.'"  *Samuels v. Medytox Sols., Inc.*, 2014 WL 4441943, at *4 (D.N.J. Sept. 8, 2014) (quoting *Jones v. Custom Truck & Equip., LLC*, 2011 WL 250997, at *4 (E.D. Va. Jan. 25, 2011)).  Indeed, courts faced with conflicting clauses "governing separate claims raised in a single action often decline to enforce both clauses out of concern for wasting judicial

and party resources." *Jones*, 2011 WL 250997, at *4. That is because "enforcement of all of the conflicting forum selection clauses would result in litigation of identical claims and issues in multiple forums." *Samuels*, 2014 WL 4441943, at *4. Accordingly, where, as here, there are competing forum clauses and "many, if not most, of the primary operative facts" in suit occurred in the original forum, courts will retain the litigation in that forum to avoid the "'waste of judicial and party resources'" on "'[p]iecemeal litigation.'" *Lewis*, 2019 WL 3797357 at *4 (quoting *Primary Color Sys. Corp. v. Agfa Corp.*, 2017 WL 8220729, at *6 (C.D. Cal. July 13, 2017)).

The facts that preclude transfer here are even stronger than those in *Lewis*. In that case, the plaintiff sued in the Western District of Virginia on claims arising out of the purchase of an allegedly defective motor home. One defendant moved to transfer the case to the Northern District of Indiana based on a forum-selection clause in the limited warranty governing the relevant purchase and another defendant moved to transfer to the Eastern District of Virginia based on the forum-selection clause in his purchase agreement. While both clauses covered the dispute, the Court decided to transfer to the Eastern District of Virginia because that was where "many, if not most, of the primary operative facts, including the sale of the Motorhome, the oral representations made prior to the sale, and the production of the Virginia State Inspection Certification, occurred." *Lewis*, 2019 WL 3797357, at *4. Similarly, *Corsentino* held on similar facts that the case should remain in New Jersey because that forum was the "center of gravity of the dispute, its events and transactions"; it offered "judges familiar with the applicable law"; and litigation there would further the overriding interest in avoiding wasteful parallel litigation. *Corsentino v. Meyer's RV Ctrs. LLC*, 2020 WL 4199744, at *1, *5, *6–7 (D.N.J. July 22, 2020) (applying *Howmedica and* collecting cases). The same analysis forecloses transfer here.

Amazon's complaint and the CNIAAs' plain terms rebut Defendants' claim that "'the alleged conduct [in this suit] was made possible only or principally *because of*'" the CNIAAs. Dkt. 165 at 13 (quoting *Warnaco Inc. v. VF Corp.*, 844 F. Supp. 940, 949 (S.D.N.Y. 1994)). The record is clear that the misconduct here occurred despite—*not* "because of"—these agreements. *See, e.g.*, 11/9/20 MacDonald Decl. ¶ 14, Ex. 13 at 1, 26. The Court's preliminary injunction opinion confirms that the conduct in this suit is independently actionable under multiple statutes and laws *unrelated* to the CNIAAs, Dkt. 99, which is why just *one* of Amazon's twelve claims asserts breach of those contracts. *See* Dkt. 162-10 at 8, 162-9 at 5.[9] Further, the CNIAA provisions in the complaint address only certain (confidentiality and non-competition) duties that Nelson and Kirschner breached in the course of committing the independently unlawful acts at issue in this suit and the parallel government proceedings. Dkt. 150 ¶¶ 141–57. These CNIAA provisions do not even purport to govern the "'entire . . . relation' between Amazon and Mr. Nelson [or] Mr. Kirschner." Dkt. 165 at 13 (quoting *Warnaco*). Thus, the transfer motion's claim that "[t]he alleged conduct was made possible *only or principally because of* the" CNIAAs, *id.* at 13, is unsupported and fundamentally distinguishes this case from *Warnaco* and every other transfer precedent Defendants cite in their improper bid to avoid accountability for their actions in this District,[10] *id.* at 11.

Defendants insist that transfer is nonetheless warranted under a handful of decisions starting with *Joseph v. Amazon.com, Inc.*, 2013 WL 4806462 (N.D. Cal. Sept. 9, 2013), which "enforce[d] [a] similarly worded forum-selection clause with respect to claims going beyond breach

---

[9] Paragraph 12 of Nelson's CNIAA states that the contract "contains the entire agreement of the parties . . . *relating to the subject matter hereof*." Dkt. 162-10 at 8. And Section 7.8 of Kirschner's CNIAA similarly states that it "contains the entire understanding between Employee and Amazon *with respect to the subject matter of this Agreement*." Dkt. 162-9 at 5.

[10] The portions of the transfer motion that improperly challenge Amazon's well-pled factual allegations on the merits, Dkt. 165 at 5 n.2, should be disregarded under the presumption of truth accorded to the complaint. *See, e.g.*, Dkt. 150 ¶¶ 5, 7, 10, 83, 355, 429, 442, 449, 483, 489, 516.

of contract, including antitrust violations, fraud, and defamation, slander, and trade libel," Dkt. 165 at 13. *Joseph* is inapposite. It did not involve any competing forum clauses or non-signatory parties. And it addressed only claims that flowed *directly* from the contracts that uniformly included the relevant forum clause. 2013 WL 4806462, at *2–4. Specifically, in *Joseph*, the plaintiff author's contracts to sell books on Amazon Marketplace and promote them through Amazon's website all contained the operative forum clause, and the "gravamen of [the] complaint" concerned Amazon's treatment of "independent authors and publishers" subject to those contracts. *Id.* at *4. "Each of plaintiff's claims" thus "flow[ed] from [the plaintiff's] dissatisfaction with Amazon's alleged business practices" under the agreements containing the forum clause. *Id*.

Here, by contrast, "each of [Amazon's] claims" does *not* flow from the CNIAAs. Amazon's claims arise from what this Court described as a "widespread scheme of kickbacks and fraudulent transactions among all defendants . . . amounting to tens of millions of dollars on real property transactions with Amazon in the northern Virginia Dulles corridor." Dkt. 99 at 3. Those transactions are governed by contracts with Virginia forum clauses, and relate to ongoing government proceedings here. Nelson and Kirschner cite no authority for granting transfer on such facts. In *Hugel v. Corp. of Lloyd's*, a non-binding, pre-*Atlantic Marine* decision, the Seventh Circuit held that a forum-selection clause in the plaintiff's membership agreement covered certain non-contract claims only because their resolution depended on conduct governed by the membership agreement. *See* 999 F.2d 206, 208–09 (7th Cir. 1993). The Eleventh Circuit applied the same logic in *Stewart*, another two-party, pre-*Atlantic* case that enforced the only relevant forum clause with respect to "all causes of action arising directly or indirectly from the business relationship evidenced by the contract." *Stewart Org., Inc. v. Ricoh Corp.*, 810 F.2d 1066, 1070 (11th Cir. 1987). And in *Crescent International Inc. v. Avatar Communities, Inc.*, 857 F.2d 943 (3d Cir. 1988) (*per curiam*), *see*

19

Dkt. 165 at 10–11—yet another two-party, pre-*Atlantic Marine* case—the Third Circuit applied a forum clause to a RICO claim only because the plaintiff "cite[d] no case law" to the contrary. 857 F.2d at 944.[11]  These decisions are anything but on "all fours" with the record here.  Dkt. 165 at 11.  And the decisions in footnote 8 of the transfer motion are equally inapposite.[12]

This case is different.  It involves several independent legal claims, multiple contracts with Virginia forum clauses, and enterprise conduct and related government proceedings in this District. Unlike Defendants' outdated and irrelevant citations, post-*Atlantic* cases recognize that the type of forum provisions in the CNIAAs do *not* control on the record here.  The reason is simple.  When Nelson and Kirschner signed the CNIAAs, it was neither "logical" nor "foreseeable" for Amazon to believe that those agreements would dictate the forum for any—much less all—of the federal statutory and other claims this suit alleges for a broad RICO conspiracy directed at property and transactions that implicate significant private and government interests in this District.  *See, e.g.*, *Bigland v. FCA N. Am. Holdings, LLC*, 2019 WL 493512, at *5 (E.D. Mich. Oct. 7, 2019) ("Where a dispute does not 'arise directly' from the four corners of a contract containing a forum selection clause and the parties 'could not have foreseen being bound by its forum selection clause,' it will not bind the parties." (quoting *Gen. Env't'l Sci. Corp. v. Horsfall*, 753 F. Supp. 664, 668 (N.D.

---

[11]  *Warnaco*, like *Stewart* and *Crescent*, was a two-party case involving a single contract and was decided before *Atlantic Marine*.  844 F. Supp. at 944–45.  That case did not even involve transfer or Section 1404(a); rather the defendant "combine[d] and confuse[d] arguments addresse[d] to subject matter jurisdiction, personal jurisdiction, and venue" in a motion inappropriately brought under Rule 12(b)(6).  *Id.* at 945.  It thus provides no relevant guidance for this dispute.

[12]  *See Bartels by and through Bartels v. Saber Healthcare Grp., LLC*, 880 F.3d 668, 671 (4th Cir. 2018) (class action removal case applying forum clause to defendants who were all related—"Saber is the sole member of each of the other defendant LLCs"—and bound by the clause in issue); *Friedman v. World Transp., Inc.*, 636 F. Supp. 685, 686 (N.D. Ill. 1986) (similar); *Blixseth v. Disilvestri*, 2013 WL 12063940, at *1, *15 (S.D. Fla., Jan. 31, 2013) (emphasizing that the "crux of this lawsuit is the alleged breach of an Indemnity Agreement" and that *all* parties had agreed to the venue clause except for one individual whose interests were "completely derivative of, and therefore, directly related to, the interests of the signatories").

Ohio 1990)); *Clark-Alonso v. Southwest Airlines Co.,* 440 F. Supp. 3d 1089, 1094 (N.D. Cal. 2020) ("Forum-selection clauses covering disputes 'relating to' an agreement 'apply to any disputes that reference the agreement or have some "logical or causal connection" to the agreement.'").

Here, the transfer motion's unprecedented argument that the CNIAAs dictate venue of this entire action violates more than just the settled Section 1404(a) law above.  It inexcusably disregards this Court's preliminary injunction ruling that the statutory and common law claims in this case are viable *independent* of the contract claims.  *See* Dkt. 99.  And it disregards decades of precedent holding that forum provisions in contracts must be reconciled with the RICO statute's venue provision, which "evinces Congress' desire to give to a plaintiff the authority to bring suit [wherever] the transaction occurred."  *Snider v. Lone Star Art Trading Co.*, 672 F. Supp. 977, 981 (E.D. Mich. 1987).  For all of these reasons, "Step One" of the Section 1404(a) transfer inquiry— focused on the interests of the parties that "executed the forum-selection clause" relevant to this case, Dkt. 165 at 15—favors this District.

**B.      Step Two:  Interests of Parties Not Bound by Forum Clauses Favor Virginia**

"Step Two" of the four-part *Howmedica* inquiry in the transfer motion, Dkt. 165 at 15, likewise favors this District.  Step Two focuses on the "private and public interests of the parties who have *not* signed" forum clauses relevant to the case.  *Howmedica*, 867 F.3d at 404 (emphasis in original)).  Here, this inquiry excludes all of the parties that are subject to one or more relevant forum clauses.  *See Corsentino*, 2020 WL 4199744, at *4 (parties subject to a competing forum clause are not "non-contracting parties" whose private interests should be considered under *Howmedica* step two).  Accordingly, "Step Two" of the transfer inquiry is not about the interests of Amazon, Kirschner, and Nelson under the CNIAAs, or the interests of Amazon, Nova WPC

LLC, White Peaks LLC, Brian Watson, WDC Holdings, Northstar,[13] and Doe defendants subject to the competing forum provisions in their leases and purchase agreements.  Step Two of the *Howmedica* inquiry is about the private interests of Villanova Trust and the LLC and Doe defendants that are *not* bound by forum clauses, and the public interest in adjudicating the claims against these defendants and their co-conspirators here rather than in Seattle.

Both aspects of this "Step Two" inquiry strongly favor Virginia.  The relevant defendants engaged in activities in or deliberately directed at the Commonwealth in order to conceal illicit gains on over $500 million in property sales and related business transactions here.  *See* Dkt. 150 ¶¶ 162–326, 349–51.  Villanova and the LLC defendants have no presence in Washington, but were formed in Tennessee and Wyoming to launder Defendants' kickbacks and other unlawful proceeds from transactions in this District.  *See id*.  Again Defendants' own conversations and documents admit as much.  *See, e.g.*, 11/9/20 MacDonald Decl. ¶¶  14–16, Exs. 12–15.

Relevant public interests also heavily favor this District.  This District is home to a criminal investigation and public forfeiture proceedings that the transfer motion fails even to mention, and that overlap directly with the civil RICO and other joint and several claims alleged in this suit and addressed in the Court's preliminary injunction and related orders.  Dkts. 16, 57, 95.  In such circumstances, forum clauses applicable only a minority of claims and defendants should yield to "public interest factors favoring all members of an alleged conspiracy" being "judged in one lawsuit."  *Ashley Furniture Indus., Inc. v. Packaging Corp.*, 275 F. Supp. 3d 957, 964 (W.D. Wis. 2017).  This public interest factor "weigh[s] strongly against severance, and, consequently, against the transfer of [even a subset] of claim[s]" relevant to the conspiracy.  *Id.*

---

[13]  Because "Northstar and its affiliates," including the Dulles, Manassas and Quail Ridge entities, "served as Watson's *alter ego*[s]," Dkt. 150 ¶¶ 232, 234, 238, 544, his signature on the Leases binds them.

The same is true of the public interests in "having localized controversies decided" in a "forum that is at home with the law" applicable to the claims in suit. *In re Rolls Royce Corp.*, 775 F.3d 671, 678 n.30 (5th Cir. 2014). Amazon pleads causes of action based primarily on Virginia law, Dkt. 150 ¶¶ 436–37, 465, 478, 486, 493, 508, 532, 541, and Defendants admit that this suit focuses "principally" on Virginia property transactions in this District, Dkt. 165 at 5. As the White Peaks Agreement expressly recognizes, *see* Dkt. 160-8 at 4, courts in Virginia have an obvious interest in adjudicating these claims, some of which actually *require* the presence of property or assets in the Commonwealth. Dkt. 150 ¶ 462 ("The property for which Plaintiffs now seek attachment is Virginia property recoverable in detinue under Virginia law.").

Nelson and Kirschner try to convert the foregoing considerations to their advantage by arguing that the public interest in applying local law "points towards Washington" because their CNIAAs "are governed by Washington law." Dkt. 165 at 20. This argument fails for many reasons, including its complete disregard for the complaint's 11 other counts against all defendants that are governed by federal and Virginia law, as well as Virginia real estate agreements with Virginia venue provisions. Dkt. 150 ¶¶ 358–590. The transfer motion's focus on Washington law also ignores that Amazon's primary claims are governed by multiple federal statutes, Dkt. 150 ¶¶ 358–433 (RICO counts and predicates), 569–79 (Robinson-Patman Act), and that even Amazon's state law counts allege several Virginia causes of actions against Nelson and Kirschner with Washington law only "[*i*]n the alternative," *id.* ¶¶ 466, 479, 490, 494, 509, 533.

Defendants' own cases thus support venue in this District under the private and public interest factors that drive "Step Two" of the *Howmedica* inquiry. Dkt. 165 at 15–26. And here, these factors are decisive because this District is also the "center of gravity of the dispute, its events and transactions." *Corsentino*, 2020 WL 4199744, at *5; *see also Artech Info. Sys., LLC v. ProTek*

23

*Consulting*, 2018 WL 3575054, at *3 (D. Md. July 25, 2018) (declining to transfer a case to Washington state because Maryland was the center of gravity for many relevant "events" and "witnesses"). The center of gravity in this case is Virginia. This District is home to *all* of the properties and contracts the transfer motion identifies as the "principal[]" focus of the suit. Dkt. 165 at 5. This District is the primary forum for the transactions and business relationships that were harmed by Defendants' RICO scheme. And this District is home to the projects that generated Defendants' illicit gains, the parallel criminal investigation, and related government forfeiture proceedings.

Desperate to distract from these controlling facts, the transfer motion asserts that "the vast majority of [*Nelson's*] allegedly deceptive representations and omissions"—and thus "most of the issues and events" relevant to venue—occurred in Washington State. Dkt. 165 at 19–20. First, this argument concedes that the commission of some unlawful acts in Seattle does *not* dictate the venue of this suit. Second, the law and record foreclose the transfer motion's attempt to rewrite Amazon's complaint to fit Nelson and Kirschner's Seattle-focused transfer narrative. *See, e.g.*, *Marsh v. Curran*, 362 F. Supp. 3d 320, 326 (E.D. Va. 2019). The transfer motion correctly cites the complaint's allegation that Nelson and Kirschner's RICO and other unlawful acts also breached their CNIAAs. Dkt. 165 at 12 (citing Dkt. 150 ¶ 347). But the motion then twists this claim into the assertion that this entire suit "spring[s] from [Nelson and Kirschner's] duties, actions, and responsibilities as Amazon employees," and thus from the CNIAAs that "govern[ed]" those duties. Dkt. 165 at 12–13. There is no support in the law or record for these arguments. The injunction proceedings before this Court, as well as Amazon's factual allegations and Defendants' own documents, establish that the RICO scheme giving rise to this case is centered in this District. Dkt. 99 at 3. And the record further confirms that Nelson and Kirschner personally executed it here.

███████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████. 11/9/20 MacDonald Decl.

¶ 20, Ex. 18. ████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████. *See id*. Internal records, as

well as the communications detailed above, confirm that Nelson and Kirschner made these trips

and developed their contacts here to further their illegal scheme against Amazon interests in this

District. *See id*. Exs. 12–18. This record alone rebuts the transfer motion's assertion that "most

of the issues and events" in this action occurred in Washington State. Dkt. 165 at 19–20.

The transfer motion's anticipatory response that Seattle is nonetheless the most important

location because that is where Nelson and Kirschner "worked" for Amazon, Dkt. 165 at 5, 18, 20,

completely misses the mark. Nelson and Kirschner performed significant work for Amazon in

Seattle and Virginia. But Virginia is where they and their co-defendants generated tens of millions

of dollars in illicit gains from Amazon real property and business transactions. That is why the

transfer motion itself concedes that Virginia properties governed by Virginia contracts are the

"*principal*" focus of this suit, Dkt. 165 at 5, and admit that many relevant parties have *no* connec-

tion to Washington State, *see id*. at 6–7, 18 (citing defendants and witnesses in Tennessee, Minne-

sota, Illinois, Wyoming and Colorado). Further, the transfer motion's argument that the RICO

scheme depended on Nelson's work in Seattle crumbles on his own recorded statement that he and

Kirschner had plans to keep "getting deals approved" at Amazon and otherwise perpetuate the

RICO enterprise after they were no longer employed by Amazon. *See* 11/9/20 MacDonald Decl.

¶ 14, Ex. 13 at 20, 22–24. All of these factors support venue here. *See Artech*, 2018 WL 3575054,

at *3; *Ashley Furn. Indus.*, 275 F. Supp. 3d at 964.

For the foregoing reasons, the "Step Two" considerations in the transfer motion support venue in this District, and Defendants' contrary arguments fail with respect to their own conduct and that of "[t]he only other defendants to have appeared in this case, Northstar and Mr. Watson." Dkt. 165 at 17.  Watson and Northstar are bound by the *Virginia* forum clauses addressed above because Watson signed the relevant Leases, and the Northstar Defendants have in any event waived through their development work and prior litigation of this action all of their newly-minted venue objections to this Court.  *See, e.g.*, *Corsentino*, 2020 WL 4199744, at *4.

C.     **Step Three:  Procedural Considerations Do Not Support Transfer**

Defendants are correct that the transfer inquiry here need not "progress to Step Three" of *Howmedica* because the "Step One and Step Two analyses point to the same forum." Dkt. 165 at 21.  That forum is Virginia.  But the Step Three "issues relating to severance of the claims, including the presence of indispensable parties and diversity jurisdiction, personal jurisdiction, venue, or joinder defects," confirm that the case should remain here.  *Waterman*, 2020 WL 1290595, at *6.

First, the jurisdictional considerations relevant to Step Three all favor venue in this District.  As detailed above, several defendants have "irrevocably" consented to personal jurisdiction here.  And others—including Villanova Trust and the LLCs that Nelson and Kirschner formed to launder their kickbacks from the RICO violations in Virginia, Dkt. 165 at 22—have no connection to Washington State, but several connections to this District.  As the complaint explains, Villanova, AllCore, Finbrit, and Cheshire were all formed "for the benefit of the TM Defendants and to facilitate and conceal their illicit gains" from Virginia transactions.  Dkt. 150 ¶¶ 38, 41, 44.  These LLCs had extensive contacts with this District as vehicles for the Lease Transaction and Direct Purchase schemes at issue in this action and the parallel government proceedings here.  *See id*. ¶¶ 6, 7, 10, 36–44, 52, 95–108, 157, 217–19, 281–92, 316–19, 341–48.  Indeed, Defendants' own

documents expressly identify "Villanova" and the LLCs created by "Rod" Atherton as devices for making Nelson and Kirschner "invisible" on kickback and other illicit transactions that would trigger at least "anti-bribery," "code of business conduct," "tax" and "non-compete" concerns on multiple Virginia property transactions.  MacDonald Decl. ¶ 15, Ex. 13 at 1, 20.  Accordingly, personal jurisdiction over all defendants is proper here but may not be proper in Washington State.

Second, the Step Three "venue" considerations all favor this District for the reasons above.  *See* Part II.A *supra*; *Tsai v. Karlik*, 2014 WL 3687201, at *4 (E.D. Mo. July 24, 2014) ("[T]here is no question that plaintiff's dispute with defendants centers around property located in Illinois, and that Illinois has a strong interest in preventing the type of fraudulent activity alleged in this case.").  The same cannot be said for Washington State, where most of the Defendants have no contractual, business, or other connections to the forum.  *See* Dkt. 165 at 6–7.

Third, the peripheral nature of the CNIAAs in relation to Nelson and Kirschner's role in the Virginia-focused RICO enterprise make "severance and transfer [of the CNIAA claims a] wholly unappealing alternative" to proceeding with all claims in this District.  *United States v. Douglas*, 626 F. Supp. 621, 625 (E.D. Va. 1985).  Amazon's federal statutory claims against all defendants are viable independent of the CNIAAs that Nelson and Kirschner cite as the sole basis for transfer.  Dkts. 99, 100, 150, 165.  Further, the CNIAAs do not control even Amazon's contract count, which alleges that multiple defendants breached *Virginia* agreements that are central to this suit but unrelated to the CNIAAs.  *See, e.g.*, Dkt. 150 ¶ 495.  On this record, the entire case should proceed in the forum specified in the real estate contracts, which is also where "many, if not most, of the primary operative facts . . . occurred."  *Lewis*,  2019 WL 3797357, at *4 (W.D. Va. Aug. 12, 2019); *see also One Beacon Ins. Co. v. JNB Storage Trailer Rental Corp.*, 312 F. Supp. 2d 824, 828 n.1 (E.D. Va. 2004) (transfer "would be inappropriate because the issue of Global's negligence

is central to the amended complaint, counterclaims, third-party claims, and cross-claim").

Adjudicating all of Amazon's claims in this District is by far the most efficient approach because in this case, as in *Beacon*, "severance" even of just the CNIAA claims "would result in 'unwarranted duplication and complications in discovery.'" *United States v. Douglas*, 626 F. supp. 621, 625 (E.D. Va. 1985) (quoting *SEC v. Nat'l Student Mktg. Corp.*, 360 F. Supp. 284, 296 (D.D.C. 1973)).  Nelson and Kirschner respond that this concern should be resolved in favor of sending the whole case to Seattle because Amazon's initial complaint did not identify them as "indispensable parties under Rule 19(c)."  Dkt. 165 at 22–23.  Their motion provides no authority for this argument, *see id.*, and Amazon is aware of none.  Amazon has always pled Nelson and Kirschner's conduct as part of the RICO conspiracy.[14]  And they agree that all the claims against them belong together.  *See* Dkts. 165, 196.  Accordingly, the only proper way to reconcile the parties' competing views on the CNIAAs is to keep Amazon's breach claims in this District with the related statutory and other counts, and require Nelson and Kirschner to litigate their CNIAA arguments as affirmative defenses or compulsory counterclaims here.  *See* Fed. R. Civ. P. 13(a); *Jon Feingersh Photography*, 978 F. Supp. 2d at 468 (rejecting severance and transfer of claims that would require duplicative litigation as an "immense waste of judicial and party resources"); *Corsentino*, 2020 WL 4199744, at *7 (same, collecting cases); *Howmedica*, 867 F.3d at 405 (explaining that transfer is proper only where the movant shows that it is "clearly warranted").[15]

---

[14]  In general, "a plaintiff who honestly believes that there are no outsiders who need to be joined will not be penalized [by] . . . fail[ing] to comply with Rule 19(c)." *Greenwich Life Settlements, Inc. v. Viasource Funding Group, LLC*, 742 F. Supp. 2d 446, 457 (S.D.N.Y. 2010); *see also* 7 Fed. Prac. & Proc. Civ. § 1625 (3d ed. 2020).  Amazon's original complaint here went far beyond this baseline test for addressing indispensable parties by pleading factual allegations against Nelson and Kirschner in their capacity as both "TM" and "Doe" Defendants.  Dkt. 1 ¶ 21.

[15]  *See also B&O Mfg., Inc. v. Home Depot*, 2007 WL 3232276, at *3 (N.D. Cal. Nov. 1, 2007) (parallel litigation "unreasonable"); *Pegasus Transp., Inc. v. Lynden Air Freight, Inc.*, 152 F.R.D. 574, 577 (N.D. Ill. 1993) ("pointless"); *Jones*, 2011 WL 250997, at *6 ("patently wasteful").

### D.     Step Four:  Efficiency and All Other Factors Favor Virginia

The last step of the post-*Atlantic* analysis addressed in the transfer motion, Dkt. 165 at 16, requires this Court to exercise its broad "discretion in choosing the most appropriate course of actions."  *Waterman*, 2020 WL 1290595, at *7.  This choice is guided by "two key sets of interests."  *Howmedica*, 867 F.3d at 405.  First, "efficiency interests in avoiding duplicative litigation" and "other public interests that may weigh against enforcing a forum-selection clause."  *Id.*  Second, "the non-contracting parties' private interests and any prejudice that a particular transfer decision would cause with respect to those interests."  *Id.*  Here the question is not close:  the interests favoring venue in this District "overwhelmingly outweig[h]" the party and "public interest[s] in upholding" the CNIAA forum clauses.  *Waterman*, 2020 WL 1290595, at *7.

As detailed above, many public interests support venue in this District, and settled law condemns the inefficiency that would attend transferring any claims involving Nelson and Kirschner to Washington State.   Indeed, Nelson's own pleadings confirm that transferring just the CNIAA claims would violate Section 1404(a)'s core purpose.  *See* Dkts. 165, 182, 196.  As the Supreme Court has explained, "to permit a situation in which two cases involving precisely the same issues are simultaneously pending in different [courts] leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent."  *Continental Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26 (1960).  In an apparent attempt to manipulate this factor, Nelson filed the recent Washington state complaint on the same CNIAA claims Amazon filed here first, and Nelson had already asked this Court to send to a *federal* forum in Seattle.  But the Seattle complaint simply underscores Nelson's procedurally improper response to the claims before this Court, as well as his abuse of the Seattle court's docket in disregard of the comity, efficiency, and fairness principles addressed in Federal Rule of Civil Procedure 13, 28 U.S.C. § 1404(a), and *Continental Grain*.

The only proper response is for this Court to deny the transfer motion and require Nelson

to pursue his CNIAA claims as defenses or compulsory counterclaims here.  *See* Fed. R. Civ. P. 13(a).  Any other result would reward procedural abuse and ignore all of the Section 1404(a) factors that favor this District, notably:  "(1) Plaintiff's choice of venue; (2) witness convenience and access; (3) the convenience of the parties; and (4) the interest of justice," which includes "such circumstances as the pendency of a related action, the Court's familiarity with the applicable law, docket conditions, access to premises that might have to be viewed, the possibility of an unfair trial, the ability to join to other parties, and the possibility of harassment."  *Sullivan*, 508 F. Supp. 2d at 476; *see also Guadalupe v. Am. Campus Comtys. Servs., Inc.*, 2016 WL 11535823, at *6 (E.D. Va. Aug. 12, 2016) (examining whether allegations "have a substantial nexus" with the original forum).  *See Bd. of Trs., Sheet Metal Workers Nat'l Fund v. Baylor Heating & Air Conditioning, Inc.*, 702 F. Supp. 1253, 1260 n.25 (E.D. Va. 1988).

In sum, the Virginia center of gravity for this suit is evident from the complaint, preliminary injunction proceedings, controlling contracts, and a rapidly growing collection of Defendants' own incriminating documents, audio recordings, bank records, and pleadings.  On this record, the transfer motion does not come close to carrying its burden under Section 1404(a).  It is simply a blinkered and unprecedented interpretation of *Atlantic* that ignores express limitations in *Atlantic* itself, as well as all of the Section 1404(a) "convenience" factors that post-*Atlantic* courts have applied to suits involving multiple defendants, forum clauses, and legal claims.  Dkt. 165 at 14.  Accordingly, this Court should exercise its substantial discretion to proceed with all claims in this District.

## CONCLUSION

The Court should deny the motion to send this case to the Western District of Washington.

Dated: November 9, 2020

Respectfully submitted,

*s/ Travis S. Andrews*
Elizabeth P. Papez (*pro hac vice*)
Patrick F. Stokes (*pro hac vice*)
Claudia M. Barrett (*pro hac vice*)
Travis S. Andrews (Va. State Bar No. 90520)
Luke Sullivan (Va. State Bar No. 92553)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
Telephone:  (202) 955-8206
Facsimile:  (202) 831-6074
epapez@gibsondunn.com
pstokes@gibsondunn.com
cbarrett@gibsondunn.com
tandrews@gibsondunn.com
lsullivan@gibsondunn.com

*Counsel for Plaintiffs Amazon.com, Inc. and Amazon Data Services, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 9, 2020, I will electronically file the foregoing with the

Clerk of Court using the CM/ECF system.  I will then send the document and a notification of such

filing (NEF) to the following parties via U.S. mail to their last-known address:

Jamie Hubbard
Stimson Stancil LaBranche Hubbard
1652 Downing Street
Denver, CO 80218
*Counsel for Defendants*
*White Peaks Capital LLC and*
*NOVA WPC LLC*

Villanova Trust
c/o Christian Kirschner, Trustee
3924 Wallace Lane
Nashville, TN 37215

Finbrit Holdings LLC
Paracorp Inc.
1920 Thomes Ave., Ste. 610
Cheyenne, WY 82001

AllCore Development LLC
6870 W 52nd Ave.
Suite 203
Arvada, CO 80002

Casey Kirschner
635 N. Alvarado Lane
Plymouth, MN 55447
Email: casey.kirschner@gmail.com

*s/ Travis S. Andrews*
Travis S. Andrews (Va. State Bar No. 90520)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
Telephone:  (202) 955-8296
Facsimile:  (202) 831-6074
lsullivan@gibsondunn.com

*Counsel for Plaintiffs Amazon.com, Inc. and Amazon*
*Data Services, Inc.*