**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

AMAZON.COM, INC. and AMAZON
DATA SERVICES, INC.,

        Plaintiffs,

    v.

WDC HOLDINGS LLC dba NORTHSTAR
COMMERCIAL PARTNERS; BRIAN
WATSON; STERLING NCP FF, LLC;
MANASSAS NCP FF, LLC; NSIPI
ADMINISTRATIVE MANAGER; NOVA
WPC LLC; WHITE PEAKS CAPITAL LLC;
VILLANOVA TRUST; CASEY
KIRSCHNER; ALLCORE DEVELOPMENT
LLC; FINBRIT HOLDINGS LLC;
CHESHIRE VENTURES LLC; CARLETON
NELSON; JOHN DOES 1-20,

        Defendants.

CASE NO. 1:20-CV-484-LO-TCB

**AMAZON PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO COMPEL**
**PRODUCTION OF DOCUMENTS AND INTERROGATORY RESPONSES**

**CONTENTS**

TABLE OF AUTHORITIES ......................................................................................................... iii

INTRODUCTION ....................................................................................................................... 1

ARGUMENT ............................................................................................................................... 4

    I.    PLAINTIFFS' REQUESTS ARE EXACTLY WHAT THE COURT
        ORDERED ..................................................................................................................... 4

    II.   ALL OF DEFENDANTS' RESPONSES VIOLATE THE COURT'S JULY
        ORDERS ....................................................................................................................... 5

    III.  PLAINTIFFS' REQUESTS ARE IN SCOPE AND NOT UNDULY
        BURDENSOME .......................................................................................................... 8

    IV.  DEFENDANTS HAVE WAIVED PRIVILEGE ON THE RELEVANT
        REQUESTS ............................................................................................................... 12

    V.   PLAINTIFFS' MOTION AMPLY SATISFIES THE REQUIREMENTS OF
        FEDERAL RULE OF CIVIL PROCEDURE 37(a)(1) AND LOCAL CIVIL
        RULE 37(E) .............................................................................................................. 13

CONCLUSION ......................................................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*BASF Plant Sci., LP v. Commonwealth Sci. & Indus. Research. Org.*,
No. 2:17-cv-503, 2019 WL 8108060 (E.D. Va. July 3, 2019)....................................................6

*Big Apple Pyrotechnics v. Sparktacular, Inc.*,
No. 05 Civ. 9994, 2006 WL 587331 (S.D.N.Y. Mar. 8, 2006) .............................................11

*Byrnes v. Jetnet Corp.*,
111 F.R.D. 68 (M.D.N.C. 1986) ...........................................................................................13

*Reed v. Beverly Hills Porsche*,
No. 6:17-cv-59, 2017 WL 11495243 (W.D. Va. Nov. 22, 2017) .....................................11, 12

*RLI Ins. Co. v. Conseco, Inc.*,
477 F. Supp. 2d 741 (E.D. Va. 2007) ...............................................................................12, 13

*SecTek Inc. v. Diamond*,
No. 1:15-cv-1631, 2016 WL 5897763 (E.D. Va. Oct. 6, 2016) ............................................13

*In re Subpoena Duces Tecum to AOL, LLC*,
550 F. Supp. 2d 606 (E.D. Va. 2008) .....................................................................................7

*United States v. One Tract of Real Prop.*,
107 F.3d 868, 1997 WL 71719 (4th Cir. 1997) ....................................................................13

**Rules**

Fed. R. Civ. P. 26(c) ..............................................................................................................3, 7

Fed. R. Civ. P. 26(d) ...................................................................................................................3

Fed. R. Civ. P. 37(a) .............................................................1, 3, 4, 6, 7, 11, 13, 14

Loc. Civ. R. 37(E)......................................................................................................................13

## INTRODUCTION

Plaintiffs Amazon.com, Inc. and Amazon Data Services, Inc. seek an order compelling Defendants Brian Watson and WDC Holdings LLC (hereinafter "Defendants") to produce the discovery this Court ordered in July, and to pay appropriate costs under Federal Rule of Civil Procedure 37(a)(5)(A). Defendants' response (Dkt. 207) confirms that such relief is the minimum remedy the law requires for Defendants' ongoing contempt of this Court's orders.

Defendants concede that the Court ordered the discovery at issue here after they refused to comply with the April 28 Temporary Restraining Order (Dkt. 16), and June 5 Preliminary Injunction (Dkt. 57). *See* Dkt. 207 at 8. Defendants also admit that they offered to "'conduct [this] expedited discovery'" to avoid—or least defer—a contempt ruling on Plaintiffs' July show cause motion. *Id*. (quoting Dkt. 193 Ex. 2 (7/17/20 Tr.) at 19:4). At the July 17 hearing on that motion, the Court endorsed discovery as an interim solution and directed Plaintiffs to "prepare th[e] discovery requests" discussed on the hearing record. Dkt. 193, Ex. 2 at 27:9, 18. Plaintiffs responded by filing the targeted requests (Dkts. 94-1, 94-2) that the Court's July 22 order expressly endorses as "warranted" and requires Defendants to answer under the federal rules, (Dkt. 95 at 1). Yet to this day Defendants refuse to provide any response to nearly half the requests, or to supplement their admittedly deficient productions on the remaining ones. Dkts. 192, 207.

Plaintiffs' motion to compel addresses each of these violations in detail. Dkts. 190–94. Defendants respond with an unsupported broadside. They disparage the motion as based on "false assumptions and a misunderstanding of this Court's [July 22] order," Dkt. 207 at 1–2, which they say is "limited to [their] compliance with the Court's Preliminary Injunction" as distinct from the "merits of [Plaintiffs'] claims," *id*. at 3. This argument is foreclosed by the Court's orders and Defendants' own pleadings. The July 22 order says point blank that "the instant requests for doc-

ument production and initial interrogatories are warranted *independent of the preliminary injunction*." Dkt. 95 at 1[1]. Accordingly, the order itself disposes of Defendants' claim that the Court "limited discovery" to Defendants' "good faith compliance with the Preliminary Injunction." Dkt. 207 at 2. Further, even this misstatement (which Defendants base on the order's "spirit" rather than text, *id.* at 4, 7–8), does not excuse their wholesale "'refus[al] to respond to 10 of the 22" of the requests, or their failure to complete production on the others. *Id.* at 2 (capitalization omitted) (quoting Dkt. 191). The reason is that even discovery directed solely at "compliance with the Preliminary Injunction," *id.*, would implicate the "merits" discovery they facetiously oppose. Defendants have been litigating the "merits" issues underlying the Preliminary Injunction since April, as they admit in stating that they have "never addressed the merits of Plaintiffs' claims *outside of* the Preliminary Injunction context." *Id.* at 7. Accordingly, their "objection" to Plaintiffs' requests as improperly requesting "case in chief" or "merits" discovery, Dkt. 192 Exs. 1 & 5, is unsupported even by their own tortured view of the July 22 order.

The remainder of their response simply confirms the lack of any good faith basis for their contempt of this order. They insist that because "this case is in its infancy," they need not respond to "unfettered discovery into the merits of [Plaintiffs'] claims." Dkt. 207 at 3. But there is nothing "unfettered" about Plaintiffs' requests. They are "narrowly tailored" to fact issues that Defendants have raised since April, *id.*, and that Defendants concede are properly subject to pre-Rule 26(f) discovery where, as here, they are "authorized by court order." *Id.* at 4; Dkt. 95. Defendants thus retreat to the argument that they "complied" with the Court's order by responding to all "*non-objectionable*" requests. Dkt. 207 at 5, 9-13. That argument also collapses on the law and record.

---

[1] Unless otherwise indicated, all emphasis is added.

The July 22 order requires Defendants to "respond" to Plaintiffs' requests under "Federal Rules of Civil Procedure 26, 33, and 34." Dkt. 95 at 1. None of these rules allows Defendants to withhold responsive discovery simply because Defendants deem the requests "objectionable." Dkt. 207 at 5–13. To justify withholding responsive information pursuant to their objections, Defendants should have moved for a protective order under Rule 26(c) and logged their privilege claims. They did neither, and have thus waived both options for avoiding the relief Plaintiffs now seek under the Court's orders and controlling law. *See* Dkt. 192 at 20-22.

That relief should issue immediately because Plaintiffs have already "prov[ed] their case" for the Preliminary Injunction (Dkt. 207 at 3), and the Court has already ordered Defendants to answer the challenged discovery requests pursuant to the broad Rule 26(d)(1) authority Defendants cite in their brief. *Id.* at 4. The July 22 order expressly exercises this authority "independent of the preliminary injunction." Dkt. 95 at 1. But the requests it approves are equally proper with respect to the injunction "compliance" Defendants say warrants discovery now. Dkt. 207 at 1–4. Indeed, Defendants stress that the requests were originally intended to allow Defendants to "'substantiate their assertion that Plaintiffs and the Court misunderstand [Northstar's] role in'" the RICO scheme giving rise to the injunction. *Id*. at 6 (quoting Dkt. 191 at 10–11). They are thus improperly withholding information that is directly responsive to the Court's July 22 order as written, Dkt. 95, and as rewritten in their brief, Dkt. 207. This misconduct violates the Court's discovery and injunction orders, as well as negates the grounds for Defendants' injunction appeal.

For these and other reasons addressed in Plaintiffs' motion, Dkts. 190–94, an order compelling Defendants to produce all responsive information and pay Rule 37 costs is the minimum relief the law requires for the ongoing contempt and discovery abuses on the record here.

3

**ARGUMENT**

**I.     PLAINTIFFS' REQUESTS ARE EXACTLY WHAT THE COURT ORDERED**

Unable to contend with the actual text of the July 22 order or Plaintiffs' motion, Defendants rewrite the issue before the Court as a "simple" question:  "Did this Court order limited discovery into WDC Defendants' good faith compliance with the Preliminary Injunction, or did this Court grant Plaintiffs full, unfettered discovery into the merits of Plaintiffs' Complaint."  Dkt. 207 at 2 (footnote omitted).  The answer is neither under the plain terms of the Court's orders, which speak for themselves in requiring Defendants to respond to the 22 specific requests at issue here.  Dkt. 95.  The only question now is whether Defendants' admitted non-compliance warrants an order compelling production and the payment of Rule 37 costs.  The answer is yes, as Defendants con-firm in basing their entire response brief on the false dichotomy above.

Defendants answer the question they invent on page 2 of their brief by stating that the early stage of this case makes it "unlikely the Court's order permitted Plaintiffs *unfettered discovery* into the merits of their claims."  Dkt. 207 at 3.  Defendants then rely on this reasoning to argue that they properly objected to Plaintiffs' requests for "*full, unfettered discovery* into the merits of Plaintiffs' Complaint," including the substantive "merits, 'core liability', and 'remedy issues.'" *Id.* at 6, 9 (citation omitted).[2]  These arguments do not withstand scrutiny.

As noted, the discovery this Court authorized is not "unfettered."  It is confined to the 22 specific requests the Court endorsed as "warranted" to address several unsupported factual argu-ments Defendants have raised in this Court and the Fourth Circuit.  Specifically, the discovery addresses Defendants' argument that Amazon and the Court "misunderstand Defendants' role in

---

[2]  Plaintiffs respectfully refer the Court to their motion and exhibits, Dkts. 190–94, for an accurate and undisputed summary of the proceedings and issues relevant to the discovery requests in issue.

the [RICO] schemes" and "'far overestimate[] the amount of money that Northstar, which is WDC Holdings, and Brian Watson actually received from Amazon'" on the transactions in suit. Dkt. 192 at 5 (second alteration in original; citation omitted).[3]  Accordingly, and as Defendants concede, the requests seek information "necessary to ascertain Defendants' 'financial condition'" and "to determine the veracity of the liability and remedy defenses Defendants have raised" since this case began. Dkt. 192 at 19.[4]

On this record, Defendants' assertion that Plaintiffs are "attempting to manipulate this Court's order in their favor," Dkt. 207 at 8, is outrageous.  It is *Defendants* who ignore and "manipulate" the Court's unequivocal statements that: (i) "this is an appropriate case where discovery should begin" (Dkt. 193-2 at 27:6–8); (ii) Plaintiffs' specific requests are "warranted" under the federal rules (Dkt. 95 at 1, 15); and (iii) the requests are proper "independent of the preliminary injunction" (Dkt. 193-2 at 29:13–15) because they are generally "relevant for purposes of pursuing the litigation," (*id*. at 29:11–18).

## II.    ALL OF DEFENDANTS' RESPONSES VIOLATE THE COURT'S JULY ORDERS

Plaintiffs' motion explains why each Interrogatory and Request for Production requires information that Defendants have not provided, and why Defendants' objections are invalid.  *See* Dkt. 191 at 12–19; *see also* Dkts. 75 at 10; 82 at 5–6, 9–11, 13.  In response, Defendants criticize the motion as "long-winded and unfocused," Dkt. 207 at 2, but identify no valid basis for their deficient responses.  Nor can they.  Their primary argument is that they "have dutifully and carefully complied with Plaintiffs' requests" to the extent Defendants find them "non-objectionable."

---

[3]  Again, it was Defendants' failure to comply with the Preliminary Injunction that resulted in the "expedited discovery" at issue here, which the Court granted at Defendants' urging.  Dkt. 82 at 13.

[4]  Defendants' concession that the Court ordered the challenged discovery before Amazon filed its Second Amended Complaint (Dkt. 207 at 7) is further proof that the requests address only the "limited" merits issues Defendants raised in the preliminary injunction proceedings this year.

*Id.* at 9–10 (citing only a topline page count and description of their production with no specific references to individual requests). This claim rings hollow for the reasons above, and because Defendants admit that they have *not* produced *any* documents responsive to Requests 5, 7, 8, 11, 14, and 15 and Interrogatories 3, 4, 5, and 7, *see* Dkt. 94-1; Dkt. 207 at 9–13, and that their responses to the remaining requests are "evasive" and "incomplete," Fed. R. Civ. P. 37(a)(4); Dkt. 207 at 9–13. Indeed, they confine their "compliance" argument to just three of what they term "non-objectionable" requests. Dkt. 207 at 4, 9-13 (citing Requests 1, 4, and 12). But Defendants fail to establish compliance even with these requests, much less "prove why the requested evidence" Plaintiffs seek in their motion "is not discoverable." *BASF Plant Sci., LP v. Commonwealth Sci. & Indus. Research. Org.*, No. 2:17-cv-503, 2019 WL 8108060, at *2 (E.D. Va. July 3, 2019).

Request 1 seeks documents "sufficient to show" the assets and payments that Defendants have repeatedly asserted in defiance of Amazon's claims and the Court's injunction orders. Defendants' "response" to Request 1 provides only a high-level summary of assets and liabilities that reprises the type of information in the unaudited financial statement Watson filed in May, but does *not* show the "identity, location, and estimated value" of *each* of Defendants' assets as required by the Court-ordered request. Dkt. 94-1 at 8. Defendants do not deny this. Indeed, the documents they cite "concerning" their corporate aircraft, Dkt. 207 at 11, confirm the deficiency. These documents reference the existence of the jet identified in Plaintiffs' show cause motion this summer, Dkts. 68, 84, but do *not* reference the public records that Plaintiffs independently discovered this fall regarding Defendants' efforts to sell the jet in violation of this Court's injunction. *See* Dkt. 192 at 7 n.3. Defendants likewise fail to account for the proceeds of the multi-million dollar Denver property they liquidated just two weeks after the Court entered the Preliminary Injunction. Dkts. 68, 84. Nor do they provide documents "sufficient to show" the "identity, location, and

estimated value" of the "$1.3 billion in assets under ownership or management" Northstar claimed at the outset of this case. Dkt. 192 at 14 (emphasis omitted).

Defendants have no valid excuse for any of these deficiencies. They simply assert that they have produced documents sufficient to satisfy the portions of Request 1 they deem "non-objectionable." Dkt. 207 at 4. Again, that is not how discovery works. The federal rules provide no basis for withholding information based on contested objections, particularly when the requests have already been ordered by the Court. If Defendants wanted to stand on their objections as a basis for not producing otherwise responsive information, they should have requested a Rule 26(c) order "limiting discovery" and "protecting [them] from . . . 'undue burden or expense.'" *In re Subpoena Duces Tecum to AOL, LLC*, 550 F. Supp. 2d 606, 613 (E.D. Va. 2008) (quoting Fed. R. Civ. P. 26(c)). They did not. Instead, they waived this right and forced Plaintiffs to spend substantial resources negotiating the requests and pursuing this motion to compel. It is this misconduct, not the Court-ordered requests, that "cause[s] a massive burden on . . . finite resources." Dkt. 207 at 13. Accordingly, Defendants should be compelled to supplement their response even to Request 1, as well as pay all relevant motion costs under Rule 37.

The same conclusion applies to Defendants' deficient response to Request 4, which seeks information substantiating their ongoing contempt of the judgment security provisions this Court entered on June 5. Dkt. 57. Defendants' response to Request 4 contains only 21 documents, many of which consist of duplicative emails because Defendants produced each message multiple times in a developing thread instead of just producing the most inclusive email. Defendants assert that there are "very few" documents responsive to Request 4 "because WDC Defendants' efforts to obtain judgment security were flatly denied." Dkt. 207 at 10. But the "few" documents they

7

produced refute that claim.  These documents merely highlight Defendants' willful refusal to com-ply, in whole or in part, with the Court's order.  *See* Dkt. 193-11 (filed under seal).  Further, De-fendants' production on Request 4 contains only emails with a single surety company.  This pro-duction does not come close to providing "all" documents *relating to* Defendants' purported ina-bility to obtain any of the judgment security the Court ordered.  Nor does it explain why the in-junction should not be based on the preliminary injunction record itemizing specific illicit gains from the RICO enterprise, and documenting Watson's claim of over $60 million in "personal" net worth and Northstar's claim of "$1.3 billion in assets under ownership or management."

Defendants' purported justification for their deficient response to Request 12, which seeks information relating to government seizures of Defendants' assets, is similarly unavailing.  De-fendants claim that their production of *one* document is sufficient to satisfy this request, even though it calls for "all documents relating to" government forfeitures of their assets.  This argument is meritless.  The sole document Defendants produced is a list of bank accounts the government may seize in connection with Defendants' role in the RICO scheme at issue in this suit.  This document is responsive to—but in no way fully satisfies—Request 12.  Accordingly, and because Defendants cite no valid basis for this deficiency, they must be compelled to supplement their responses even on the three requests (1, 4, and 12) with which they purport to "comply."

## III.    PLAINTIFFS' REQUESTS ARE IN SCOPE AND NOT UNDULY BURDENSOME

Unable to show a sufficient response to *any* of the 22 requests the Court ordered,  Defend-ants resort to a sweeping claim that all of them are "overly broad and unduly burdensome" because they are "incredibly fact-intensive" and would "demand the review of hundreds of thousands of documents." Dkt. 207 at 12.  This claim goes beyond their meritless scope arguments above, *see supra*, to disregard and misrepresent several aspects of the case record.

Defendants' argument that all of the July 22 requests are "over broad" and "unduly burdensome," Dkt. 207 at 12-13, fails, first and foremost, under the plain terms of the Court's orders. As noted, it is Defendants who "are attempting to manipulate this Court's order[s] in their favor," *id*. at 8, by subordinating the Court's express directives to their self-serving view of the orders' "spirit" and "purpose," *id*. at 4, 7–8. Even the July 17 transcript excerpts Defendants quote on the initial scope of the requests, *id*. at 7-8 & n.6, *precede* the Court's determination later in the hearing that "the Court can always advance discovery," and that "this is an appropriate case where discovery should begin, not withstanding the posture of the case." Dkt. 193, Ex. 2 at 27:6–8.1. Defendants' cherry-picked quotes, Dkt. 207 at 7–8, also *precede* Plaintiffs' filing of the relevant requests on July 21, and the Court's July 22 order expressly endorsing all of them as "warranted" and requiring Defendants to "respond" to them "as relief *unrelated* to the pending motion for an order to show cause" on the injunction. Dkt. 95 at 1.

Defendants' sweeping scope and "burden" objections, Dkt. 207 at 12–13, also fail under the plain text of several specific requests that seek only information that Defendants have "repeated[ly] represent[ed]" they have already collected. *Id.* at 10. For example, Interrogatory 3 simply asks Defendants to identify the basis for their statements to the Court that there is no evidence "that $21 million were paid to [them]" in connection with the Amazon transactions, Dkt. 193-2 at 35:19–36:19, and that the Court has "far overestimated the amount of money [they] actually received from Amazon," *id*. at 18:21–23.[5] Defendants provide no basis for finding such requests "overbroad" or "unduly burdensome." Nor could they, because the record and Defendants'

---

[5]  *See also, e.g.*, Request 5 (seeking documents sufficient to show Defendants' financial benefits from Amazon transactions); Request 15 (seeking documents related to Defendants' Leases or other transactions with Amazon); Interrogatory 6 (requesting a description of the investors who have interests in Defendants' Amazon transactions and allegedly prevented Defendants from obtaining any of the judgment security the Court ordered).

own pleadings state that Defendants have this information, and are in a unique position to provide it.  *See* Dkts. 190–94.  Indeed, recently-obtained audio recordings and chats attached to Plaintiffs' opposition to Defendants' newly-minted request to transfer this entire case to Seattle, Dkt. 210, confirm that Defendants had specific knowledge of the kickbacks and other illicit gains that support Plaintiffs' claims and the Preliminary Injunction, Dkts. 212, 212-13, 212-15 (11/9/20 Mac-Donald Decl. ¶¶ 14–19 & Exs. 13, 15).

Defendants' scope and burden objections also fail even with respect to requests that require more than just producing information Defendants have already assembled.  Defendants' contrary argument boils down to the claim that such requests would require them to review "hundreds of thousands of documents."  Dkt. 207 at 12.  Setting aside their failure to substantiate this claim,[6] large-scale document reviews are typical in complex civil cases.  That is why the Federal and Local Civil Rules do not permit parties to rely on vague assertions of "undue" burden to avoid responding even to routine requests, much less specific requests they have already been ordered to answer.  *See* Dkt. 95 at 1 ("Defendants *shall* respond to *these* discovery requests . . . .").

Defendants' unjustified defiance of this Court's orders alone warrants the discovery relief in Plaintiffs' motion.  And an immediate order for production and costs is especially appropriate here given Defendants *rejection* of Plaintiffs' repeated attempts to narrow the parties' dispute. Dkt. 207 at 12–13.  For example, and as detailed in Plaintiffs' motion (Dkt. 191 at 25), Defendants agreed to run searches for the individuals listed in Request No. 7 and provide a document count and other information on the search hits.  But Defendants failed to do so.

---

[6] The reference to 172,367 documents in Defendants' brief, (Dkt. 207 at 12) is the first reference to document volume Defendants have ever provided on the July requests.  Setting aside the waiver issues with this proffer, it is impossible to assess for accuracy because Defendants associate it with four custodians they refuse to identify, and fail to address whether it excludes duplicates.

Again Defendants' response does not deny this.  Instead, it asserts that Plaintiffs did not "*meaningfully* confer" despite holding "two telephone conferences and exchang[ing] several emails."  Dkt. 207 at 13 (asserting without support that "Plaintiffs' 'conferrals' simply demanded compliance with Plaintiffs' Requests'").  This statement is demonstrably false.  As detailed in Plaintiffs' motion, the parties met and conferred by telephone on August 12 and again on August 28, Dkt. 191 at 6; Dkt. 193-1, and Plaintiffs thereafter continued to confer with Defendants via email regarding their deficient productions.  *See* Dkt. 191 at 6–7; Dkts. 193-9, 193-13.  In these discussions, Plaintiffs did not simply "lectur[e]" Defendants on "why they were wrong."  Dkt. 207 at 13.  As documented in Plaintiffs' motion and supporting exhibits, Plaintiffs attempted to address Defendants' objections by, among other things, proposing "searches" for documents relevant to particular requests in order to "identify the type and volume of any responsive documents," and agreed to discuss resulting "document count[s]" and "search hits."  Dkt. 192 at 25.  But Defendants never produced such information or otherwise substantiated their objections.  *Id.*

This extensive back and forth more than satisfies Rule 37 standards and even the inapposite cases in Defendants' brief.  Dkt. 207 at 13.  As *Reed* explains, "[t]he meet and confer obligation requires a personal or telephonic consultation during which the parties engage in meaningful negotiations or otherwise provide legal support for their position."  *Reed v. Beverly Hills Porsche*, No. 6:17-cv-59, 2017 WL 11495243, at *1 (W.D. Va. Nov. 22, 2017) (quotation marks omitted).  That is precisely what Plaintiffs did.  *See* Dkt. 191 at 6–7.  They discussed "'(a) what the[y] [were] actually seeking, (b) what [Defendants were] reasonably capable of producing that is responsive to the request, and (c) what specific genuine issues, if any, [could] not be resolved, without judicial information.'"  *Reed*, 2017 WL 11495243, at *1 (quoting *Big Apple Pyrotechnics v. Sparktacular, Inc.*, No. 05 Civ. 9994, 2006 WL 587331, at *1 (S.D.N.Y. Mar. 8, 2006)).  But after wasting

11

months of time and significant resources, Defendants still have not responded to requests that seek information only they possess, and that would substantiate factual positions they continue to litigate in this Court and the Fourth Circuit.  They have thus squandered and waived their opportunity to justify their ongoing contempt of multiple court orders.

## IV.    DEFENDANTS HAVE WAIVED PRIVILEGE ON THE RELEVANT REQUESTS

Defendants' two-sentence argument that they "have not waived any privilege," Dkt. 207 at 12, likewise fails on the law and record.  Defendants say they did not waive privilege because they did "not withh[o]ld any *in-scope*, responsive documents on the basis of privilege," and because "a privilege log was produced to Plaintiffs documenting [their] redactions."  *Id.* (emphasis added). Both arguments fail.  *See, e.g.*, *RLI Ins. Co. v. Conseco, Inc.*, 477 F. Supp. 2d 741, 750 (E.D. Va. 2007).

Defendants' first argument fails because it improperly conflates their obligation to assert and timely log privilege objections with their opinion of which documents fall outside "the scope and spirit of this Court's order."  Dkt. 207 at 4.  For the reasons above, the Court's June 22 order required Defendants to respond to the 22 requests at issue here in accordance with the federal rules. Dkt. 95 at 1.  Those rules required Defendants to produce all responsive and non-privileged documents to Plaintiffs, and to log all responsive documents withheld on a claim of privilege by the relevant production dates.  Defendants did neither based on scope objections they did not validate in a protective order.  Accordingly, they have now waived all objections, including privilege, to all responsive documents not timely produced or logged.  Dkt. 192 at 20–22 (citing authorities).

Defendants' preservation argument also fails because the record shows that they did *not* produce "a privilege log . . . documenting [their] redactions."  Dkt. 207 at 12.  On September 9, after weeks of delay, Defendants produced a four-line table purporting to assert "attorney client" privilege over redactions in four documents.  Dkts. 193-9, 193-13.  The next day, Plaintiffs asked

12

if Defendants would provide a privilege log, but Defendants never responded.  Dkt. 193-9.  Plaintiffs reiterated their request for a privilege log before moving to compel, but again received no response. *Id.*  The September 9 redaction log is not a privilege log because it does not substantiate Defendants' conclusory privilege assertions, which are facially invalid for the reasons in Plaintiffs' motion.  Dkt. 192 at 21-22; *Byrnes v. Jetnet Corp.*, 111 F.R.D. 68, 71 (M.D.N.C. 1986) (proponent must "specifically and factually support his claim of privilege, usually by an affidavit" because "an improperly asserted privilege is the equivalent of no privilege at all").  Further, and regardless, this "log" would at most preserve Defendants' privilege claims only as to the four documents it cites.  Accordingly, and at a minimum, Defendants have waived privilege as to any responsive documents that do not appear on the redaction table.  *See, e.g.*, *SecTek Inc. v. Diamond*, No. 1:15-cv-1631, 2016 WL 5897763, at *3 (E.D. Va. Oct. 6, 2016) ("Because SecTek failed to file a privilege log in a timely manner, the Court finds that SecTek's privilege claim . . . is waived.").

## V.   PLAINTIFFS' MOTION AMPLY SATISFIES THE REQUIREMENTS OF FEDERAL RULE OF CIVIL PROCEDURE 37(a)(1) AND LOCAL CIVIL RULE 37(E)

For the reasons set forth above and in Plaintiffs' filings, Dkts. 190–94, Plaintiffs' motion to compel fully satisfies the conferral requirements in Federal Rule of Civil Procedure 37(a)(1) and Local Civil Rule 37(E).  Plaintiffs' motion also satisfies all the requirements for recovery of reasonable costs and fees in bringing this motion, which Plaintiffs will support with appropriate time and cost records if granted. *See* Fed. R. Civ. P. 37(a)(5).  Finally, Plaintiffs reserve all further rights and remedies with respect to Defendants' discovery violations, which on the record here may support additional sanctions under Fourth Circuit precedent addressing "repeated refusals to comply" with "legitimate discovery requests, despite court orders to the contrary."  *E.g.*, *United States v. One Tract of Real Prop.*, 107 F.3d 868, 1997 WL 71719, at *3 (4th Cir. 1997) (table).

# CONCLUSION

For the foregoing reasons and those set forth in Plaintiffs' opening papers, this Court should grant Plaintiffs' motion to compel discovery and order the payment of Rule 37 fees and costs.

Dated: November 9, 2020                Respectfully submitted,

                                       s/ Luke M. Sullivan
                                       Elizabeth P. Papez (*pro hac vice*)
                                       Patrick F. Stokes (*pro hac vice*)
                                       Claudia M. Barrett (*pro hac vice*)
                                       Travis S. Andrews (Va. State Bar No. 90520)
                                       Luke M. Sullivan (Va. State Bar No. 92553)
                                       GIBSON, DUNN & CRUTCHER LLP
                                       1050 Connecticut Avenue, N.W.
                                       Washington, D.C. 20036-5306
                                       Telephone:  (202) 955-8500
                                       Facsimile:  (202) 467-0539
                                       epapez@gibsondunn.com
                                       pstokes@gibsondunn.com
                                       cbarrett@gibsondunn.com
                                       tandrews@gibsondunn.com
                                       lsullivan@gibsondunn.com

                                       *Counsel for Plaintiffs Amazon.com, Inc. and Amazon Data Services, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on November 9, 2020, I will electronically file the foregoing with the

Clerk of Court using the CM/ECF system.  I will send then send the document and a notification

of such filing (NEF) to the following parties via U.S. mail to their last-known address, and via

email, where noted:

Jamie Hubbard
Stimson Stancil LaBranche Hubbard
1652 Downing Street
Denver, CO 80218
*Counsel for Defendants White Peaks Capital
LLC and NOVA WPC LLC*

Villanova Trust
c/o Christian Kirschner, Trustee
3924 Wallace Lane
Nashville, TN 37215

Finbrit Holdings LLC
Paracorp Inc.
1920 Thomes Ave., Ste. 610
Cheyenne, WY 82001

Casey Kirschner
635 N. Alvarado Lane
Plymouth, MN 55447
Email: casey.kirschner@gmail.com

AllCore Development, LLC
c/o CT Corporation System
1908 Thomes Ave.
Cheyenne, WY 82001


*s/ Luke M. Sullivan*
Luke M. Sullivan (Va. State Bar No. 92553)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
Telephone:  (202) 955-8500
Facsimile:  (202) 467-0539
lsullivan@gibsondunn.com

*Counsel for Plaintiffs Amazon.com, Inc. and Amazon
Data Services, Inc.*

15