**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

AMAZON.COM, INC., and AMAZON DATA
SERVICES, INC.,

    Plaintiffs,

             v.

WDC HOLDINGS LLC dba NORTHSTAR
COMMERCIAL PARTNERS; BRIAN
WATSON; STERLING NCP FF, LLC;
MANASSAS NCP FF, LLC; NSIPI
ADMINISTRATIVE MANAGER; NOVA WPC
LLC; WHITE PEAKS CAPITAL LLC;
VILLANOVA TRUST; CARLETON NELSON;
CASEY KIRSCHNER; ALLCORE
DEVELOPMENT LLC; FINBRIT HOLDINGS
LLC; CHESHIRE VENTURES LLC; JOHN
DOES 1-20,

    Defendants.

Case No. 1:20 Civ. 484

**REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND**
**AMENDED COMPLAINT BY DEFENDANTS CARLETON NELSON**
**AND CHESHIRE VENTURES LLC**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ................................................................................................................ 1

ARGUMENT ...................................................................................................................... 2

I.      Amazon's RICO Claim Fails as a Matter of Law.......................................................... 2

    A.      Amazon's Deficient Enterprise Allegations Alone
    Require Dismissal ................................................................................... 3

        1.      Amazon Fails To Show a "Continuing Unit" with a
        "Common Purpose" ...................................................................... 3

        2.      Amazon Cannot Rely on the Preliminary Injunction Ruling...................... 8

    B.      Amazon's Predicate Act Theories Fail ........................................................... 9

        1.      Nelson and Cheshire Committed No Fraud in the
        Purchase Transactions.................................................................... 9

        2.      Nelson and Cheshire Committed No Fraud in the
        Lease Transactions...................................................................... 12

        3.      Amazon's Remaining Arguments Fail............................................... 14

    C.      Amazon Has Not Alleged a Pattern ............................................................. 17

    D.      Amazon Fails To Allege That Any RICO Violations
    Injured It Directly ................................................................................. 20

    E.      Amazon's Claims Under 1962(a), (b), and (d) Must Be Dismissed.................... 22

II.     Amazon's Robinson-Patman Theory Defies Credulity ................................................ 22

III.    Amazon's State-Law Claims Must Be Dismissed ....................................................... 24

CONCLUSION................................................................................................................. 25

## **TABLE OF AUTHORITIES**

Page(s)

### CASES

*Abbott Labs. v. Adelphia Supply USA*,
  No. 15 Civ. 5826, 2017 WL 57802 (E.D.N.Y. Jan. 4, 2017)....................................................6

*Aetna Cas. Sur. Co. v. P & B Autobody*,
  43 F.3d 1546 (1st Cir. 1994)...........................................................................................16, 17

*Al-Abood ex rel. Al-Abood v. El-Shamari*,
  217 F.3d 225 (4th Cir. 2000) ..........................................................................................18, 19

*Amazon.com, Inc. v. Powers*,
  No. 12 Civ. 1911, 2012 WL 6726538 (W.D. Wash. Dec. 27, 2012).....................................25

*Ashland Oil, Inc. v. Arnett*,
  875 F.2d 1271 (7th Cir. 1989) ..............................................................................................19

*Askins v. U.S. Dep't of Homeland Sec.*,
  899 F.3d 1035 (9th Cir. 2018) ................................................................................................9

*Atl. Richfield Co. v. USA Petroleum Co.*,
  495 U.S. 328 (1990)..............................................................................................................24

*Bi v. McAuliffe*,
  927 F.3d 177 (4th Cir. 2019) ................................................................................................16

*Bloch v. Exec. Off. of the President*,
  164 F. Supp. 3d 841 (E.D. Va. 2016) ...................................................................................12

*Bowen v. Oistead*,
  125 F.3d 800 (9th Cir. 1997) ................................................................................................20

*Boyle v. United States*,
  556 U.S. 938 (2009)...........................................................................................................3, 6

*In re Burlington Coat Factory Sec. Litig.*,
  114 F.3d 1410 (3d Cir. 1997)................................................................................................10

*In re Cable & Wireless, PLC*,
  321 F. Supp. 2d 749 (E.D. Va. 2004) ...................................................................................10

*Campaniello Imps., Ltd. v. Saporiti Italia S.p.A.*,
  117 F.3d 655 (2d Cir. 1997)..................................................................................................16

ii

*Cap. Lighting & Supply, LLC v. Wirtz*,
   No. 17 Civ. 3765, 2018 WL 3970469 (D. Md. Aug. 20, 2018)......................................7, 8, 18

*Carnegie-Mellon Univ. v. Cohill*,
   484 U.S. 343 (1988)...........................................................................................................24

*Chambers v. King Buick GMC, LLC*,
   43 F. Supp. 3d 575 (D. Md. 2014) ....................................................................................18

*Chase v. Dep't of Pub. Safety & Corr. Servs.*,
   No. 18 Civ. 2182, 2020 WL 1914811 (D. Md. Apr. 20, 2020) ...........................................9

*Cisneros v. Petland, Inc.*,
   972 F.3d 1204 (11th Cir. 2020) ...........................................................................3, 16, 17

*Cleveland Bd. of Educ. v. Loudermill*,
   470 U.S. 532 (1985)..............................................................................................................8

*Crawford's Auto Ctr., Inc. v. State Farm Mut. Auto. Ins. Co.*,
   259 F. Supp. 3d 1344 (M.D. Fla. 2017) ..............................................................................5

*Dickson v. Microsoft Corp.*,
   309 F.3d 193 (4th Cir. 2002) ...............................................................................................6

*Donaldson v. Primary Residential Mortg.*,
   No. 19 Civ. 1175, 2020 WL 3184089 (D. Md. June 12, 2020) ........................................5, 6

*Minn. ex rel. Ellison v. Sanofi-Aventis U.S. LLC*,
   No. 3:18 Civ. 14999, 2020 WL 2394155 (D.N.J. Mar. 31, 2020)........................................21

*Farley v. Bank of Am., N.A.*,
   No. 3:14 Civ. 568, 2015 WL 3651165 (E.D. Va. June 11, 2015)..........................................17

*Figueroa Ruiz v. Alegria*,
   896 F.2d 645 (1st Cir. 1990) ............................................................................................ 15

*First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*,
   385 F.3d 159 (2d Cir. 2004)..................................................................................................5

*Flip Mortg. Corp. v. McElhone*,
   841 F.2d 531 (4th Cir. 1988) .........................................................................................18, 19

*Forgus v. Mattis*,
   753 F. App'x 150 (4th Cir. 2018) .....................................................................................22, 25

*FTC v. Henry Broch & Co.*,
   363 U.S. 166 (1960)............................................................................................................24

iii

*GE Inv. Priv. Placement Partners II v. Parker*,
    247 F.3d 543 (4th Cir. 2001) ...................................................................18, 19, 20

*Goines v. Valley Cmty. Servs. Bd.*,
    822 F.3d 159 (4th Cir. 2016) .........................................................................3

*U.S. ex rel. Grant v. United Airlines Inc.*,
    912 F.3d 190 (4th Cir. 2018) ........................................................................15

*Grayson O Co. v. Agadir Int'l LLC*,
    856 F.3d 307 (4th Cir. 2017) ........................................................................11

*Hemi Grp., LLC v. City of N.Y.*,
    559 U.S. 1 (2010)...........................................................................2, 19, 20, 21

*Herrera v. Finan*,
    709 F. App'x 741 (4th Cir. 2017) ..................................................................11

*Hinkleman v. Shell Oil Co.*,
    962 F.2d 372 (4th Cir. 1992) ........................................................................22

*Hyundai Emigration Corp. v. Empower-Visa, Inc.*,
    No. 09 Civ. 124, 2009 WL 10687986 (E.D. Va. June 17, 2009)...........................20

*In Town Hotels Ltd. P'ship v. Marriott Int'l, Inc.*,
    246 F. Supp. 2d 469 (S.D. W. Va. 2003).........................................................23

*In re Ins. Brokerage Antitrust Litig.*,
    618 F.3d 300 (3d Cir. 2010)...........................................................................6

*Iron Workers Local 16 Pension Fund v. Hilb Rogal & Hobbs Co.*,
    432 F. Supp. 2d 571 (E.D. Va. 2006) .............................................................10

*Kaul v. Christie*,
    372 F. Supp. 3d 206 (D.N.J. 2019) ................................................................13

*Kaye v. D'Amato*,
    357 F. App'x 706 (7th Cir. 2009) ..................................................................13

*Knit With v. Knitting Fever, Inc.*,
    No. 08 Civ. 4221, 2012 WL 2938992 (E.D. Pa. July 19, 2012)...........................20

*Liquid Air Corp. v. Rogers*,
    834 F.2d 1297 (7th Cir. 1987) ......................................................................19

*Luttrell v. Brannon*,
    No. 2:17 Civ. 2137, 2018 WL 6604255 (D. Kan. Dec. 17, 2018)...........................9

*McCauley v. Home Loan Inv. Bank, F.S.B.*,
    710 F.3d 551 (4th Cir. 2013) ................................................15

*Menasco, Inc. v. Wasserman*,
    886 F.2d 681 (4th Cir. 1989) ................................................18

*Miyano Mach. USA, Inc. v. Zonar*,
    No. 92 Civ. 2385, 1993 WL 23758 (N.D. Ill. Jan. 29, 1993) ................24

*MIZ Eng'g, Ltd. v. Avganim*,
    No. 2:05 Civ. 722, 2007 WL 2892623 (E.D. Va. Sept. 28, 2007)...........13

*Myers v. Lee*,
    No. 10 Civ. 131, 2010 WL 2757115 (E.D. Va. July 12, 2010) ..............16

*U.S. ex rel. Nathan v. Takeda Pharm. N. Am., Inc.*,
    707 F.3d 451 (4th Cir. 2013) ............................................13, 15

*Nw. Fed. Credit Union v. SBC Fin., LLC*,
    No. 16 Civ. 1299 (LO), 2017 WL 7737324 (E.D. Va. Jan. 18, 2017)........8

*U.S. ex rel. O'Donnell v. Countrywide Home Loans, Inc.*,
    822 F.3d 650 (2d Cir. 2016)...............................................14

*Parcoil Corp. v. Nowsco Well Service, Ltd.*,
    887 F.2d 502 (4th Cir. 1989) ..............................................20

*Patterson v. Ford Motor Credit Co.*,
    203 F.3d 821, 2000 WL 123943 (4th Cir. 2000) ....................2, 22, 24

*Peter Farrell Supercars, Inc. v. Monsen*,
    82 F. App'x 293 (4th Cir. 2003) ...........................................24

*Realcomp II, Ltd. v. FTC*,
    635 F.3d 815 (6th Cir. 2011) ..............................................23

*Retail Wholesale & Dep't Store Union Local 338 Ret. Fund v. Hewlett-Packard Co.*,
    845 F.3d 1268 (9th Cir. 2017) .............................................14

*Reves v. Ernst & Young*,
    507 U.S. 170 (1993)........................................................4

*Rojas v. Delta Airlines, Inc.*,
    425 F. Supp. 3d 524 (D. Md. 2019) ........................................12

*Salinas v. United States*,
    522 U.S. 52 (1997)....................................................16, 17

*Sanford v. MemberWorks, Inc.*,
  625 F.3d 550 (9th Cir. 2010) ...........................................................................16

*Scott v. WFS Fin., Inc.*,
  No. 2:06 Civ. 349, 2007 WL 190237 (E.D. Va. Jan. 18, 2007)................................13

*Sedima, S.P.R.L. v. Imrex Co.*,
  473 U.S. 479 (1985).........................................................................................2, 6

*Shanaghan v. Cahill*,
  58 F.3d 106 (4th Cir. 1995) ...............................................................................24

*Sheet Metal Workers Local No. 20 Welfare & Benefit*
  *Fund v. CVS Pharmacy, Inc.*,
  305 F. Supp. 3d 337 (D.R.I. 2018).........................................................................6

*Skilling v. United States*,
  561 U.S. 358 (2010)............................................................................11, 13, 14

*Slay's Restoration, LLC v. Wright Nat'l Flood Ins. Co.*,
  884 F.3d 489 (4th Cir. 2018) .......................................................................20, 21

*Smith v. Spears*,
  No. 2:17 Civ. 3384, 2018 WL 2772668 (D.S.C. June 11, 2018)............................17

*Spellman v. Sch. Bd.*,
  No. 2:17 Civ. 635, 2018 WL 2085276 (E.D. Va. Apr. 5, 2018)............................22

*United States v. Abed*,
  203 F.3d 822 (4th Cir. 2000) ..............................................................................17

*United States v. Colton*,
  231 F.3d 890 (4th Cir. 2000) ........................................................................12, 13

*United States v. Hawkins*,
  777 F.3d 880 (7th Cir. 2015) ..............................................................................11

*United States v. Hayes*,
  555 U.S. 415 (2009)...........................................................................................23

*United States v. Philip Morris USA, Inc.*,
  396 F.3d 1190 (D.C. Cir. 2005)............................................................................21

*United States v. Pinson*,
  860 F.3d 152 (4th Cir. 2017) .......................................................................... *passim*

*United States v. Safavian*,
  528 F.3d 957 (D.C. Cir. 2008)..............................................................................14

*United States v. Shields*,
    844 F.3d 819 (9th Cir. 2016) ...........................................................................12

*United States v. Tillett*,
    763 F.2d 628 (4th Cir. 1985) ........................................................................3, 7

*Univ. of Tex. v. Camenisch*,
    451 US 390 (1981)..............................................................................................8

*US Airline Pilots Ass'n v. Awappa, LLC*,
    615 F.3d 312 (4th Cir. 2010) ......................................................................2, 17

*Weidman v. Exxon Mobil Corp.*,
    776 F.3d 214 (4th Cir. 2015) ..........................................................................10

*Weiss v. Bank of Am. Corp.*,
    153 F. Supp. 3d 831 (W.D. Pa. 2015)...............................................................6

*Whitney, Bradley & Brown, Inc. v. Kammermann*,
    436 F. App'x 257 (4th Cir. 2011) ....................................................................20

## STATUTES & RULES

Fed. R. Civ. P. 8 ......................................................................................................15

Fed. R. Civ. P. 9 ......................................................................................................15

Fed. R. Civ. P. 9(b) ...........................................................................................*passim*

Fed. R. Civ. P. 10(c) .................................................................................................3

Fed. R. Civ. P. 11 ....................................................................................................15

Robinson-Patman Act, §2, codified as amended at 15 U.S.C. §13...................2, 22

    15 U.S.C. §13(c).............................................................................2, 22, 23, 24

    15 U.S.C. §13(e)..............................................................................................22

Travel Act, codified as amended at 18 U.S.C. §1952 ............................................17

18 U.S.C. §1349 ...............................................................................................12, 16

18 U.S.C. §1961(1)..................................................................................................16

18 U.S.C. §1962(a)..................................................................................................22

18 U.S.C. §1962(b)..................................................................................................22

18 U.S.C. § 1962(c) ..................................................................................................2, 16, 17, 22

18 U.S.C. § 1962(d) .......................................................................................................17, 22

18 U.S.C. § 1964(a) ..............................................................................................................21

**OTHER AUTHORITIES**

Robert W. Hamilton & Richard A. Booth, *Attorney's Guide to Business and
      Finance Fundamentals* (2d ed. 2007) ......................................................................23

## INTRODUCTION

Carleton Nelson and Cheshire Ventures' opening brief identified "basic factual and legal errors" in Amazon's complaint.  Dkt. 182 ("Mot.") at 1.[1]  Amazon responds to the vast majority of those errors with silence.  In 70 pages of briefing, Amazon largely ignores its mistakes.  It fails to identify any connections among most of the thirteen members of its ramshackle RICO "enterprise."  It practically concedes that it has failed to identify any misstatement by Nelson, much less Cheshire Ventures, sufficient to support its wire or honest-services fraud predicates.  It offers no response to the Fourth Circuit's dismissal of RICO claims involving enterprises that lasted *three times* as long as Amazon alleges here.  The list goes on.

Rather than respond, Amazon seeks to distract.  First, it accuses Nelson of advancing "factual disagreements with the complaint."  Dkt. 218 ("Opp.") at 5.  But the disagreements exist between Amazon's complaint and its own exhibits, not Nelson.  Next, Amazon claims that Nelson and Cheshire Ventures "inexcusably ignore" the "Court's preliminary injunction opinion."  *Id.* at 6.  But a preliminary injunction opinion does not bind the Court on a motion to dismiss, and in any event, Amazon "inexcusably" ignores that the Second Amended Complaint—its *fourth*—reinvents its claim.  Where the Court previously considered two alleged RICO enterprises with separate members, Amazon now pleads a single, "rimless wheel" that tries (and fails) to connect all original defendants, five new ones, and an additional transaction. *Compare* Dkt. 1 ¶¶94, 135, *with* Dkt. 153.  Finally, Amazon again invokes the specter of a parallel criminal proceeding, ignoring that the presumption of innocence has not been rebutted in

---

[1] Unless otherwise noted, all emphasis is added, and terms defined in Nelson and Cheshire's opening brief have the same meaning here.  Additionally, Amazon's claim that Nelson "exploited" the briefing order by filing an "oversized" brief, Dkt. 218 at 1 n.1, is meritless.  Defendants explicitly sought (and received) leave to "file no more than three consolidated motions" of 50 pages.  Dkt. 119 at 3; Dkt. 121.  Amazon's reference to Cheshire as Nelson's "*alter ego*," Dkt. 218 at 1 n.1, ignores that its complaint makes no such claim, SAC ¶540.

the *eight months* since the FBI searched Watson's home.  Opp. 34 n.11.  An FBI investigation of fraud does not help Amazon in any event, because there is no private right of action for wire or honest-services fraud.  Amazon must allege a unified RICO enterprise engaged in "organized, long-term, habitual criminal activity."  *US Airline Pilots Ass'n v. Awappa, LLC*, 615 F.3d 312, 317 (4th Cir. 2010).  It does not even come close.

Amazon's disregard of fact and law is even clearer in its continued pursuit of claims under § 2(c) of the Robinson-Patman Act, 15 U.S.C. § 13(c).  Amazon dismisses as "dicta" the Fourth Circuit's acknowledgment that the "circuit courts of appeal appear to be in agreement that section 2(c) covers only transactions that involve the transfer of *tangible goods*."  *Patterson v. Ford Motor Credit Co.*, 203 F.3d 821, 2000 WL 123943, at *3 (4th Cir. 2000) (table).  Amazon cites no contrary case, instead offering an interpretation of § 2(c) that no circuit court has accepted in the provision's 84-year history and that would outlaw ordinary commercial transactions.

Amazon's state-law claims fall with its federal ones.  Amazon's insistence that this Court exercise its discretion to retain state-law claims against Nelson and Cheshire at the *motion-to-dismiss* stage is unprecedented and unfounded.  The claims should thus be dismissed.

## ARGUMENT

### I.   AMAZON'S RICO CLAIM FAILS AS A MATTER OF LAW

Amazon's RICO claim cannot survive.  It fails to plausibly allege a cohesive enterprise, let alone one that Nelson and Cheshire "conduct[ed] or participate[d]" in "through a pattern of racketeering activity."  18 U.S.C. § 1962(c); *see Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985).  Nor has Amazon adequately pled a RICO injury.  *Hemi Grp., LLC v. City of N.Y.*, 559 U.S. 1, 8-9 (2010).  Each of those failings independently doom Amazon's RICO claim.

As a threshold matter, Amazon's background section takes issue with Nelson and Cheshire's reliance on the complaint's exhibits.  It accuses Nelson and Cheshire of mounting a

2

"15-page counter-narrative" to set forth their "factual disagreements with the complaint," but then confusingly claims that the narrative "does not even purport to identify any 'conflict' between the SAC and its exhibits."  Opp. 5.  Regardless, the Court can consider the complaint's exhibits under Federal Rule of Civil Procedure 10(c), which renders an exhibit "part of the pleading for all purposes."  And where the exhibits contradict the complaint—as they often do—the exhibits prevail.  *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016).

### A.       Amazon's Deficient Enterprise Allegations Alone Require Dismissal

Amazon concedes that an "association-in-fact enterprise" must be a "continuing ***unit*** that functions with a ***common*** purpose."  Opp. 20 (quoting *Boyle v. United States*, 556 U.S. 938, 948 (2009)).   That association must exist "***separate and apart*** from the pattern of racketeering activity in which it engages."  *United States v. Tillett*, 763 F.2d 628, 631 (4th Cir. 1985). Amazon attempts to plead a ***single*** RICO enterprise consisting of ***all*** thirteen defendants in this case.  But Amazon's allegations do not show that those defendants shared a "common purpose," functioned as a "continuing unit," or associated "separate and apart" from the alleged RICO predicates.  Mot. 19-23.  Amazon's RICO claim must therefore be dismissed.

### 1.       *Amazon Fails To Show a "Continuing Unit" with a "Common Purpose"*

Attempting to show a "common purpose," Amazon suggests that all Defendants worked "to profit from unlawfully inflated lease transactions and purchases."  Opp. 17.  But "[a]n abstract common purpose, such as a generally shared interest in making money, will not suffice." *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1211 (11th Cir. 2020).  For that reason, the Fourth Circuit has specifically rejected the sort of common purpose that Amazon advances here.  In *United States v. Pinson*, 860 F.3d 152 (4th Cir. 2017), the Fourth Circuit explained that, where separate ventures seek only to "enrich" their members, they lack a "'common purpose'" because "any fruits of these ventures accrue[] only to members of each venture" and do "not carry over

to the members of the other ventures." *Id.* at 162; *see also Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993) ("[L]iability depends on showing that the defendants conducted or participated in the conduct of the 'enterprise's affairs,' not just their own affairs." (emphasis omitted)).

The same is true here. *See* Mot. 19-20. The lease transactions and each purchase transaction "involved different memberships, methods, and motives." *Pinson*, 860 F.3d at 162; *see* Mot. 8-14, 19-21. The Northstar Defendants and the Villanova Trust were allegedly involved only in the lease transactions, which third-party investors (not Amazon) funded. SAC ¶¶230-232, 349; Mot. 6-8. The purchase transactions each involved different participants as well, and those participants were not connected to one other, let alone to any lease transaction. The White Peaks Defendants and two nonparties were allegedly involved only in White Peaks. SAC ¶¶10, 35. And two different nonparties were allegedly involved only in Blueridge. *Id.* ¶7. And each purchase transaction involved a different method—a "same day" sale for White Peaks, *id.* ¶298, versus an "assignment fee" for Blueridge, *id.* ¶323.

The profits of each venture did not "carry over to the members of the other ventures." *Pinson*, 860 F.3d at 162. Amazon does not allege that the Blueridge transaction was intended to benefit the Northstar Defendants or the White Peaks Defendants. Mot. 20; SAC ¶¶314-326. Neither group of defendants was even allegedly aware of the Blueridge transaction. *Id.* And the Northstar Defendants could not seek profits for the White Peaks Defendants—because they did not even know the White Peaks Defendants existed. *Compare* Dkt. 155-9 at 5 (Watson learns of White Peaks in September 2019), *with* SAC ¶234 (all Northstar transactions but one occurred in 2018). Nor did the White Peaks Defendants seek to enrich the Northstar Defendants. The White Peaks Defendants ***hid their transaction*** from the Northstar Defendants, Dkt. 155-9 at 5, and Watson allegedly had to "***extort[ ]*** the White Peaks principals for a cut of . . . profits," Opp. 12.

Amazon argues that the White Peaks Defendants' "subsequent agreement" with Watson "brought the White Peaks Purchase squarely within the Enterprise." Opp. 21. But that simply admits that the White Peaks Defendants were not part of the alleged enterprise—and did not share in its common purpose—*at the time of the alleged fraud*, which is what RICO requires. *First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 174 (2d Cir. 2004) (requiring that defendants "'work together to achieve'" a "'particular fraudulent course of conduct'").[2] And Amazon's contention about the White Peaks Defendants still fails to establish a common purpose with the separate participants in the Blueridge transaction, which it simply does not address.

Amazon's suggestion that Nelson or Kirschner participated in each transaction falls short of providing a common purpose. *Pinson* found a lack of common purpose despite the existence of a "member common to all four ventures." 860 F.3d at 162. And the complaint's allegation that Nelson and Kirschner "exerted pressure against the White Peaks Defendants," SAC ¶300, underscores the absence of a common purpose, *see Crawford's Auto Ctr., Inc. v. State Farm Mut. Auto. Ins. Co.*, 259 F. Supp. 3d 1344, 1354 (M.D. Fla. 2017) (one party "'coerc[ing] and intimidat[ing]'" another refutes "common purpose"), *aff'd*, 945 F.3d 1150 (11th Cir. 2019).

Amazon contends that all members of an enterprise need not always cooperate, Opp. 21-22, but it has not alleged that the distinct ventures *ever cooperated* to make money for one another's members, as opposed to their own. *Pinson* thus squarely requires dismissal. 860 F.3d at 162; *Donaldson v. Primary Residential Mortg., Inc.*, No. 19 Civ. 1175, 2020 WL 3184089, at *26 (D. Md. June 12, 2020) (requiring showing that defendants acted "on behalf of the *enterprise* as opposed to . . . in their individual capacities, to advance their individual self-

---

[2] Neither can Amazon establish a common purpose by arguing the White Peaks Defendants' principals were "Northstar employees." Opp. 21 (quoting SAC ¶563). Amazon has not sued the White Peaks *principals*, and it does not include them in the supposed enterprise. SAC ¶3 n.1.

interests" (internal quotation marks omitted)); *Abbott Labs. v. Adelphia Supply USA*, No. 15 Civ. 5826, 2017 WL 57802, at *3 (E.D.N.Y. Jan. 4, 2017) (similar).[3]

At most, Amazon has pled a "rimless wheel" hub-and-spoke conspiracy that court after court has rejected as a RICO enterprise. Mot. 19-21; *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 327, 374 (3d Cir. 2010); *Donaldson*, 2020 WL 3184089, at *26; *Abbott Labs.*, 2017 WL 57802, at *6. Such a structure does not form a " 'continuing unit.' " *Boyle*, 556 U.S. at 945. Amazon derides Nelson and Cheshire's "hub and spoke" authorities as "non-binding." Opp. 22. But the Fourth Circuit has held the same, albeit under the Sherman Act. *Dickson v. Microsoft Corp.*, 309 F.3d 193, 203-04 (4th Cir. 2002) (rejecting "rimless wheel conspiracy" in which "various defendants enter into separate agreements with a common defendant, but where the defendants have no connection with one another"); *see also Sedima*, 473 U.S. at 485 (Congress modeled civil RICO statute on antitrust laws). Amazon cites no contrary authority. Instead, it identifies additional decisions that **confirm** a rim is required. Opp. 22-23 & n.8 (citing *Sheet Metal Workers Local No. 20 Welfare & Benefit Fund v. CVS Pharmacy, Inc.*, 305 F. Supp. 3d 337, 347 (D.R.I. 2018); *Weiss v. Bank of Am. Corp.*, 153 F. Supp. 3d 831, 845-48 (W.D. Pa. 2015) (without "rim to the structure," there is no "enterprise")).

Amazon offers a conclusory assertion that it has pled "facts that are more than sufficient for a viable hub-and-spoke conspiracy." Opp. 23. But it never identifies what relationship it regards as the "rim" connecting the Northstar Defendants, the White Peaks Defendants, the participants in the Blueridge transaction, and other entities such as Cheshire. Each group engaged in separate transactions, with different structures, for their individual purposes. *See* pp. 3-6, *supra*.

---

[3] Still other entities, including Cheshire, are alleged to have been involved only by receiving proceeds—highly limited conduct Amazon has not defended as sufficient for inclusion in any enterprise. Mot. 23 n.8; *see* Opp. 18.

Amazon attempts to sidestep the lack of relationship among *all* defendants by claiming that "the faces in the group may have changed."  Opp. 22 (quoting *Tillett*, 763 F.2d at 631).  But the authority Amazon cites in support, *United States v. Tillett*, only demonstrates how far Amazon falls short.  In that case, the Fourth Circuit emphasized that "***continuity*** of structure and personality within the organization" is critical for any enterprise, and must exist "***separate and apart***" from the alleged pattern of racketeering.  *Tillett*, 763 F.2d at 632.  It held such continuity present where the party playing the "role of financiers" changed between ventures.  *Id.*  In Amazon's complaint, by contrast, virtually every "face" changes from one set of transactions to the next.  No entity in the lease transactions participated in the purchase transactions.  *Compare* SAC ¶ 232, *with id.* ¶¶ 293-326.  And the purchase transactions each involved different groups of defendants and non-parties.  SAC ¶¶ 293-326.  Amazon has thus utterly failed to identify a unified group with "continuity of structure and personality," that exists "***separate and apart***" from the alleged transactions.  *Tillett*, 763 F.2d at 631.

Bereft of other arguments, Amazon claims that this case "bears a marked resemblance" to the District of Maryland's decision in *Capital Lighting & Supply, LLC v. Wirtz*, No. 17 Civ. 3765, 2018 WL 3970469 (D. Md. Aug. 20, 2018), citing the decision fourteen times, Opp. 18-20, 25-30.  Not so.  *Capital Lighting* involved three alleged enterprises.  2018 WL 3970469, at *11.  The District of Maryland dismissed the RICO claims against two of the three alleged enterprises, albeit on pattern grounds, without reaching the enterprise question.  *Id.* at *9-11.  The one enter-prise the Court found had exactly the elements Amazon's supposed enterprise lacks:  The defendants "worked together for at least four years"; "shared excess product"; "shared profits"; "carried on ***legitimate*** business" between "their alleged illegal conduct"; and "even formed business entities together."  *Id.* at *12.  None of that is alleged here.  *See* pp. 3-6, *supra*.

7

If anything, the RICO claims **dismissed** by the District of Maryland in *Capital Lighting* only underscore why dismissal is appropriate here.  The second enterprise there involved **four of the same** defendants, including the same "inside man" and allegations of overbilling.  2018 WL 3970469, at *2-3, *7, *11.  But rather than treat that second enterprise as an extension of the first, the District of Maryland recognized it as a "single, narrow scheme" providing a "perfect example of the type of 'ordinary' or 'garden-variety' fraud that should not be placed under the RICO umbrella."  *Id.* at *9-10.  It found similarly for the third alleged enterprise, which also involved **four overlapping defendants**.  *Id.* at *10-11.  *Capital Lighting* thus provides no support for Amazon's attempt to portray separate groups with the same alleged "inside man" as a single enterprise.  To the contrary, Amazon's **preferred case** requires a separate analysis of the lease transactions, the White Peaks purchase, and the Blueridge purchase, and it explains why dismissal is appropriate.

### 2.   *Amazon Cannot Rely on the Preliminary Injunction Ruling*

Unable to show that its alleged enterprise meets RICO's requirements, Amazon falls back again and again on this Court's ruling on the preliminary injunction.  Opp. 3, 6, 13, 15, 34, 57, 67.  Amazon is wrong as a matter of law and fact.  Legally, where a court's "decision came on a motion for a preliminary injunction, it is not the law of the case for the purposes of [a] motion to dismiss."  *Nw. Fed. Credit Union v. SBC Fin., LLC*, No. 16 Civ. 1299 (LO), 2017 WL 7737324, at *2 (E.D. Va. Jan. 18, 2017); *see also Univ. of Tex. v. Camenisch*, 451 US 390, 396 (1981) (preliminary injunction is not a ruling on the merits).  And Amazon ignores that it sued Nelson and Cheshire only **after** the Court issued the preliminary injunction.  Application of the Court's prior rulings would thus deprive them of the "opportunity to respond" that is one of the "essential requirements of due process."  *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985).

Factually, Amazon ignores that it now alleges a completely different enterprise than the enterprise that this Court previously considered.  Previously, Amazon asserted **two** distinct

enterprises with different parties, purposes, and conduct: the "Lease Transaction Enterprise" and the "Direct Purchase Enterprise."   Dkt. 1 ¶¶ 93-96, 134-137.   Because it pled two separate enterprises, it did not need to allege that the participants in one enterprise shared a common purpose with the members of the other enterprise.

But then Amazon ***abandoned*** the two-enterprise theory the Court had considered, failing even to plead it in the alternative.   The Court thus has never evaluated the ***single enterprise*** Amazon now pleads, much less addressed the arguments Nelson and Cheshire raise.   Amazon cannot avoid the failure of its new allegations by relying on prior, materially different complaints that Nelson and Cheshire had no opportunity to contest.  *Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035, 1043 (9th Cir. 2018) (law of the case inapplicable to amended pleading); *Chase v. Dep't of Pub. Safety & Corr. Servs.*, No. 18 Civ. 2182, 2020 WL 1914811, at \*12-13 (D. Md. Apr. 20, 2020) (same).   Having failed to plead the existence of an enterprise, Amazon's RICO claim must be dismissed.  *Luttrell v. Brannon*, No. 2:17 Civ. 2137, 2018 WL 6604255, at \*4 & n.4 (D. Kan. Dec. 17, 2018) (deficient enterprise requires dismissal against all defendants).

**B.      Amazon's Predicate Act Theories Fail**

Amazon's complaint fails to plead any predicate act, much less do so—as it must for the fraud predicates—with the particularity required by Rule 9(b).  Mot. 23-31.

1.      *Nelson and Cheshire Committed No Fraud in the Purchase Transactions*

Amazon has not pled that Nelson or Cheshire committed fraud in connection with the White Peaks or Blueridge transactions.  Amazon does not identify any affirmative misrepresenta-tion that Nelson or Cheshire made.  Nor does it identify any omission of information that Nelson or Cheshire was duty-bound to disclose.   Indeed, Amazon concedes that, before either transaction, it terminated Nelson (and extinguished any duty) for reasons unrelated to this suit.

Amazon's attempts to identify a misrepresentation in the direct purchase transactions defy Rule 9(b) and misconstrue its own complaint. Amazon first claims to have satisfied Rule 9(b) by alleging that the "RICO Defendants knowingly and intentionally made . . . misrepresentations . . . to induce them to enter into . . . the White Peaks Purchase and, on information and belief, the Blueridge Transaction." Opp. 35-36 (quoting SAC ¶469). But that language—boilerplate from the recital of Amazon's fraud claim—is the opposite of specificity.[4] Vague allusions to unidentified "misrepresentations" hardly provide the "'time, place, and **content** of the false representations, [or] the [speaker's] identity . . . and what he obtained thereby.'" *Weidman v. Exxon Mobil Corp.*, 776 F.3d 214, 219 (4th Cir. 2015); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 (3d Cir. 1997) ("[B]oilerplate and conclusory allegations will not suffice."). If that satisfies Rule 9(b), any allegation can.

Amazon next misrepresents the contents of its complaint by citing ¶83 to argue that it has alleged that Nelson and Kirschner "used certain, selected comparables" that caused Amazon to pay "inflated prices" in connection with the direct purchase transactions. Opp. 35-36 (quotation marks omitted). That paragraph *does not relate to the direct purchase transactions at all*. Instead, it refers to the "*Northstar Lease Transactions alone*," making no mention of the direct purchase transactions. SAC ¶83. If Amazon had alleged a misrepresentation, it would identify it, not dissemble.

---

[4] Amazon's use of an ellipsis to hide an intervening reference to "the Lease Transactions" underscores the boilerplate, generic nature of the allegation. SAC ¶469. The allegation also engages in impermissible group pleading. *In re Cable & Wireless, PLC*, 321 F. Supp. 2d 749, 773 (E.D. Va. 2004); *Iron Workers Local 16 Pension Fund v. Hilb Rogal & Hobbs Co.*, 432 F. Supp. 2d 571, 594-95 (E.D. Va. 2006). Amazon's claim that its "collective terms" are "merely a shorthand to indicate Amazon's assertion that *all* of the identified defendants committed the asserted act," Opp. 64, ignores that many of the "RICO Defendants" did not even know, much less make misrepresentations, about the White Peaks and Blueridge transactions.

Indeed, with respect to White Peaks, Nelson and Cheshire explained that the exhibits to Amazon's complaint show, beyond doubt, that Amazon *knew* that it paid $17.73 million more than White Peaks for the same property.  Mot. 12-13, 24-25.  Amazon concedes as much, but protests that the "sales terms were tainted by hidden kickbacks and collusive cost inflation," without citation to the complaint.  Opp. 11.  Amazon has waived that theory (and its parallel claim regarding Blueridge) by failing to develop it in the argument section of its brief.  *See Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017); *Herrera v. Finan*, 709 F. App'x 741, 747 (4th Cir. 2017).  In any event, Amazon's complaint does not allege "collusive cost inflation."  Instead, it alleges that, *after the White Peaks sale*, the "TM Defendants exerted pressure against the White Peaks Defendants to obtain a share of the . . . profit," and the "White Peaks Defendants yielded to this pressure and agreed to wire monies."  SAC ¶¶300-301.  But absent a prior agreement or *quid pro quo* (which would render "pressure" unnecessary), an after-the-fact payment is not honest-services fraud.  *United States v. Hawkins*, 777 F.3d 880, 883 (7th Cir. 2015) ("Treating a gratuity as a bribe transgresses *Skilling*.").  Amazon has no response.

Similarly, with respect to Blueridge, Amazon does not deny it knew of the $10 million assignment fee at the time of the Blueridge transaction.  It instead argues that unspecified "Defendants" (not Nelson or Cheshire) "fraudulently concealed . . . that part of the $10 million markup would be used to fund kickbacks."  Opp. 12 (citing SAC ¶¶325-26).  But Amazon does not allege any act of concealment by Nelson or Cheshire, much less do so with specificity.

Amazon also fails to identify any duty that would have required disclosure.  It points to its code of conduct and employment-based fiduciary duties Nelson supposedly owed Amazon.  Opp. 37.  But neither even arguably applies, because Nelson was terminated before the White Peaks and Blueridge transactions.  Mot. 25; SAC ¶¶29, 322.  As Nelson and Cheshire explained,

11

"it is axiomatic that 'an employee's fiduciary duty ends upon the termination of the employment relationship.'"  Mot. 26 (citing *Bloch v. Exec. Off. of the President*, 164 F. Supp. 3d 841, 862 (E.D. Va. 2016)).  Amazon responds with silence.  In any event, Nelson's employment agreement delineated Nelson's disclosure obligations to Amazon, and Amazon points to nothing that would have required disclosure of any fact related to the purchase transactions.  Mot. 28-29.[5] "[S]ilence as to a material fact (nondisclosure), without an independent disclosure duty, usually does not give rise to an action for fraud."  Mot. 28 (citing *United States v. Colton*, 231 F.3d 890, 899 (4th Cir. 2000); *Rojas v. Delta Airlines, Inc.*, 425 F. Supp. 3d 524, 541-42 (D. Md. 2019)); *see also United States v. Shields*, 844 F.3d 819, 822 (9th Cir. 2016).  Amazon points to nothing that overcomes that basic principle here.

### 2.   *Nelson and Cheshire Committed No Fraud in the Lease Transactions*

Nor has Amazon pled that Nelson or Cheshire committed wire or honest-services fraud in connection with the lease transactions.  Amazon all but concedes that the complaint's allegations about representations in the leases "do not involve statements by Nelson or Cheshire Ventures at all."  Mot. 30; *see* Opp. 35.  While Amazon argues that Nelson "'knowingly misrepresent[ed] the transactions,'" Opp. 35, it continues to offer no detail about the supposed misrepresentations.  Nelson and Cheshire explained that Amazon's complaint hedges regarding whether data points "***may*** . . . have been inflated"; does not dispute the lease transactions had "'below market'" pricing; and never claims Amazon now pays less under its reformed leases with IPI.  Mot. 27, 38.  Amazon offers no response, and concedes its "robust, multi-step process" approved the lease transactions.  Opp. 8; Mot. 5-6.[6]  Nor does it contest the Supreme Court's dictate that it allege

---

[5] Nor does Amazon dispute that claims against Nelson cannot be based on Kirschner's alleged duties, because conspiracy under 18 U.S.C. § 1349 is not a RICO predicate.  Mot. 26 n.10.

[6] Amazon argues—again in its facts section—that Nelson and Cheshire's description of the

Nelson "solicited or accepted side payments from a third party *in exchange for* making . . . misrepresentations." Mot. 26 (quoting *Skilling v. United States*, 561 U.S. 358, 413 (2010)).

Rather than engage those arguments, Amazon continues to assert that it can satisfy Rule 9(b)'s stringent requirements by alleging that, sometime between "September 2017" and "August 2019," Nelson made unspecified misrepresentations in connection with one or more of the *nine* lease transactions. Opp. 35. That simply is not the law. *See Kaye v. D'Amato*, 357 F. App'x 706, 714 (7th Cir. 2009) (allegations of "various acts of honest services fraud relating [to] several transactions surrounding [an] alleged land swap . . . fail to meet Federal Rule of Civil Procedure 9(b)'s heightened pleading standard"); *Kaul v. Christie*, 372 F. Supp. 3d 206, 248 (D.N.J. 2019) (dismissing under Rule 9(b) despite "many conclusory allegations of kickbacks and bribery"); *cf. U.S. ex rel. Nathan v. Takeda Pharm. N. Am., Inc.*, 707 F.3d 451, 456 (4th Cir. 2013) (declining to infer actionable false statements from a supposedly "fraudulent scheme").[7]

Amazon's attempt to plead fraud by nondisclosure fares no better. Amazon does not dispute that, under the Fourth Circuit's decision in *Colton*, it must identify a disclosure duty. Opp. 37. Notably, Amazon does not argue that Nelson's employment contract imposed such a duty, *id.*, tacitly conceding that the information in question falls outside of the scope of that contract's explicit disclosure provision, Mot. 28-29. Instead, it cites "the express disclosure provisions in Amazon's Code of Conduct," *id.*, but it identifies no support for its claim that an

---

approval process is "largely consistent" with the complaint because it "never alleges that Defendants 'evade[d]' . . . approvals." Opp. 8. But the complaint alleges almost exactly that. SAC ¶77 ("The TM Defendants were able to conceal their unlawful activities because they exploited their positions *to evade company controls on transaction approvals*.").

[7] Amazon's unpublished citations do not advance its cause either. *MIZ Eng'g, Ltd. v. Avganim*, No. 2:05 Civ. 722, 2007 WL 2892623, at *7 (E.D. Va. Sept. 28, 2007) (finding Rule 9(b) satisfied by allegations that defendant falsely asserted patent infringement in a specific meeting); *Scott v. WFS Fin., Inc.*, No. 2:06 Civ. 349, 2007 WL 190237, at *2, *6 (E.D. Va. Jan. 18, 2007) (dismissing *pro se* RICO claim, but finding that fraud claim satisfied Rule 9(b) because plaintiff alleged specific day when sales manager falsely told him a car he purchased was new).

employer's non-contractual code of conduct is legally enforceable, ignores Nelson's authority to the contrary, Mot. 29 (citing *Retail Wholesale & Dep't Store Union Local 338 Ret. Fund v. Hewlett-Packard Co.*, 845 F.3d 1268, 1276 (9th Cir. 2017) (code of conduct does not "imply[ ] that all staff . . . always adhere to its aspirations")), and points to nothing transforming the aspirational code into a binding agreement with Nelson.  Nor does Amazon address *United States v. Safavian*, 528 F.3d 957, 964-65 (D.C. Cir. 2008), which held that "vague standards of conduct" fail to "identify a legal disclosure duty" enforceable under the criminal law.[8]

Amazon's second contention—that it "pleads disclosure duties associated with the existence of a fiduciary relationship," Opp. 37—runs headlong into *Skilling v. United States* and once again seeks to reinvent Amazon's claims.  *Skilling*—the very case Amazon cites for the **existence** of a fiduciary duty—**rejects** the position that "'**undisclosed** financial interests,'" even on the part of one who "owes a fiduciary duty," constitute honest-services fraud.  561 U.S. at 409.  It holds that a claim of honest-services fraud must allege "side payments from a third party **in exchange for** making . . . misrepresentations."  *Id.* at 413.  Neither the complaint nor Amazon's opposition identifies any such *quid pro quo*.  Amazon's invocation of unspecified duties arising from the employment relationship thus gets it nowhere.[9]

3.    *Amazon's Remaining Arguments Fail*

Amazon's other arguments cannot save it.  Amazon relies on inapposite preliminary injunction rulings, Opp. 31, 34, but ignores that Nelson and Cheshire were not then defendants and that

---

[8] Moreover, Amazon has not identified when Nelson allegedly signed the code of conduct, Mot. 30 n.12—information that Rule 9(b) requires, *see* p. 10, *supra*, that Amazon undoubtedly has, and that would be necessary to establish "fraudulent intent at the time of . . . execution."  *U.S. ex rel. O'Donnell v. Countrywide Home Loans, Inc.*, 822 F.3d 650, 658 (2d Cir. 2016).

[9] Despite pleading twelve counts, Amazon's complaint also does not claim breach of fiduciary duty by any defendant, much less Nelson and Cheshire.  Dkt. 153.  The 601-paragraph complaint mentions fiduciary duties three times, with no connection to disclosure.  SAC ¶¶ 9, 387, 400.

its allegations have changed, *e.g.*, Dkt. 99 at 4 ("allegedly sham RFP"); Dkt. 1 ¶ 37 ("RFP Watson received not sent to other developers"); SAC ¶ 181 (dropping allegation); *see* pp. 8-9, *supra*.

Remarkably, Amazon contends that dismissal would not serve the purposes of Rule 9(b), because no defendant has proved its suit "'frivolous.'" Opp. 37. But truly frivolous lawsuits are governed by Rule 11, not Rule 9. Hurdling Rule 11's low bar unquestionably requires less than Rule 8 plausibility, and Rule 8 unquestionably requires less than Rule 9. The mere fact that no defendant invoked Rule 11 does not absolve Amazon of its duty to plead fraud with specificity under Rule 9(b). As Nelson and Cheshire argued at length, Amazon's complaint defies the purposes of Rule 9(b), *i.e.*, "to provide defendants with fair notice of claims against them and the factual ground upon which they are based." Mot. 18 (quoting *McCauley v. Home Loan Inv. Bank, F.S.B.*, 710 F.3d 551, 559 (4th Cir. 2013)); *id.* 26-28. Amazon's opposition brief, like its complaint, leaves Nelson to guess at what Amazon believes was misrepresented. The candidates include a "multitude of data points, contracts, and fee structures," from nine "complex" transactions, negotiated and reviewed during a two-year period. SAC ¶ 82; Opp. Br. 35. A claim that "'rest[s] primarily on facts'" the defendant must learn "'through the costly process of discovery . . . is ***precisely what Rule 9(b) seeks to prevent***.'" *Nathan*, 707 F.3d at 456.[10]

Amazon's defense of its "information-and-belief" pleading also falls flat. Amazon claims that it has "not yet had the benefit of discovery," Opp. 36, but surely Amazon, following a nine-month investigation, can identify allegedly false statements (or nondisclosure in violation of a duty) made by Amazon employees to other Amazon employees regarding Amazon transactions in the course of Amazon's approval process. Mot. 28-29. Nelson and Cheshire explained that

---

[10] That is even truer here because RICO claims are "'quasi-criminal in nature.'" *Figueroa Ruiz v. Alegria*, 896 F.2d 645, 650 (1st Cir. 1990). Rule 9(b) thus serves as an especially "necessary counterbalance to" such claims' "gravity," their "'quasi-criminal nature,'" and the risk of "treble damages." *U.S. ex rel. Grant v. United Airlines Inc.*, 912 F.3d 190, 197 (4th Cir. 2018).

"[a]llegations of fraud cannot . . . be based 'upon information and belief,' except as to matters peculiarly within the opposing party's knowledge." *Id.* at 28 (quoting *Campaniello Imps., Ltd. v. Saporiti Italia S.p.A.*, 117 F.3d 655, 664 (2d Cir. 1997)); *see also Bi v. McAuliffe*, 927 F.3d 177, 185 (4th Cir. 2019) (Rule 9(b) "applies with special force to allegations . . . which inherently rest on information within a plaintiff's possession"); *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 558 (9th Cir. 2010) (similar).  Amazon offers no response, failing to address *Campaniello* and *McAuliffe* at all.  It does not even attempt to explain why the allegedly false statements at issue would be "'particularly within the knowledge of the defendant.'"  Opp. 36.

Sensing its failure to allege predicate acts by Nelson and Cheshire, Amazon declares that it need not "'allege that each defendant directly committed predicate acts.'"  Opp. 38-40 (quoting *Myers v. Lee*, No. 10 Civ. 131, 2010 WL 2757115, at *5 (E.D. Va. July 12, 2010)).  Incorrect.   "[A] plaintiff must allege that ***each defendant*** participated in the affairs of the enterprise through a 'pattern of racketeering activity,' which requires 'at least two acts of racketeering activity.'" *Cisneros*, 972 F.3d at 1215; *Aetna Cas. Sur. Co. v. P & B Autobody*, 43 F.3d 1546, 1560 (1st Cir. 1994); *see also Salinas v. United States*, 522 U.S. 52, 65 (1997) ("[T]he substantive offense under § 1962(c) requires two or more predicate acts.").  Amazon's proffered case, *Myers v. Lee*, is not to the contrary, holding that "'acts may be committed by a variety of persons such that each defendant may not have direct participation in ***each*** act.'" 2010 WL 2757115, at *5.  But that does not absolve a RICO plaintiff from alleging that each defendant personally participated in a pattern of racketeering.  Amazon has not carried that burden here.  It has not pled even one act of fraud by Nelson or Cheshire with particularity.

Amazon's argument would also make hash of RICO's statutory scheme.  It would over-turn Congress's exclusion of 18 U.S.C. § 1349 (conspiracy) from the list of RICO predicates, 18

U.S.C. § 1961(1), by imposing RICO liability on those who did not directly commit wire fraud. And it would render § 1962(d)'s prohibition on conspiracy superfluous. *See Salinas*, 522 U.S. at 65. Anyone who merely conspired to violate RICO would have "conducted" a "pattern of racketeering activity" under § 1962(c) without directly committing any predicate. *But see Cisneros*, 972 F.3d at 1208; *Aetna*, 43 F.3d at 1560. Amazon thus has no viable allegation of wire or honest-services fraud as to Nelson or Cheshire. Absent such predicates, there can be no money-laundering or Travel Act violations, no pattern of racketeering, and no RICO claim. Mot. 32.

### C.    Amazon Has Not Alleged a Pattern

Amazon's failure to identify the commission of any RICO predicate by Nelson and Cheshire necessarily precludes it from identifying a "pattern of racketeering activity," something it must do for "each defendant." *Cisneros*, 972 F.3d at 1208; *Aetna*, 43 F.3d at 1560. The pattern requirement prevents ordinary business or fraud disputes from becoming "'treble damage suits,'" limiting the statute instead to "organized, long-term, habitual criminal activity." *US Airline Pilots*, 615 F.3d at 317. It also prevents plaintiffs from evading Congress's refusal to create a private right of action for wire or honest-services fraud. *Smith v. Spears*, No. 2:17 Civ. 3384, 2018 WL 2772668, at *2 (D.S.C. June 11, 2018); *Farley v. Bank of Am.*, N.A., No. 3:14 Civ. 568, 2015 WL 3651165, at *8 (E.D. Va. June 11, 2015). Amazon attempts, but fails, to satisfy the pattern requirement by invoking both closed-ended and open-ended continuity.[11]

<u>Closed-Ended Continuity</u>. The Fourth Circuit has repeatedly declined to find the closed-ended continuity necessary for a RICO pattern even where conduct lasted much longer than the

---

[11] Amazon incorrectly asserts that defendants do not contest that the alleged predicate acts are "related." Opp. 23 n.9. But Nelson and Cheshire's arguments regarding the lack of an enterprise plainly contest that issue. *See* pp. 3-9, *supra*; *United States v. Abed*, 203 F.3d 822, 2000 WL 14190, at *9 (4th Cir. 2000) (table) ("relatedness" asks whether "predicate acts are ***related to the affairs of the enterprise***").

22 months alleged here.  Mot. 34-36; *Flip Mortg. Corp. v. McElhone*, 841 F.2d 531, 538 (4th Cir. 1988) ("fraudulent acts spanning seven years depriving FMC of money . . . on many distinct occasions" not a pattern); *see also GE Inv. Priv. Placement Partners II v. Parker*, 247 F.3d 543, 550 (4th Cir. 2001) (scheme of "about two years" does not "present the type of persistent, long-term fraudulent conduct" required); *Pinson*, 860 F.3d at 163 ("two and a half years" insufficient because Fourth Circuit has "required much greater closed-ended time periods to establish a pattern"); *Al-Abood ex rel. Al-Abood v. El-Shamari*, 217 F.3d 225, 238 (4th Cir. 2000) ("three discrete schemes spanning several years" not a pattern).  Amazon purports to distinguish those cases because they "'involved only a single scheme to defraud the plaintiff,'" Opp. 30 (quoting *Capital Lighting*, 2018 WL 3970469, at *8), but that is untrue.  In *Al-Abood*, the Fourth Circuit found no pattern despite the plaintiff's allegations of "three discrete schemes."  217 F.3d at 230. And in *Pinson*, the Fourth Circuit rejected RICO claims premised on multiple "ventures" and "fragmented schemes."  *Pinson*, 860 F.3d at 163.  Amazon argues against "giving the duration factor talismanic status," Opp. 27-28, but it is not "talismanic" to observe that short schemes lack the type of "scope and persistence" that "pose a special threat to social well-being."  *GE Inv.*, 247 F.3d at 551 (quoting *Menasco, Inc. v. Wasserman*, 886 F.2d 681, 684 (4th Cir. 1989)).

Amazon cites no contrary authority.  The scheme in *Capital Lighting* lasted "over a roughly five-year period," 2018 WL 3970469, at *1, far longer than the 22 months here, Mot. 35. Amazon seeks to analogize its allegations to *Capital Lighting* by claiming that the conduct it alleges "'evolved over time,'" Opp. 29, but the differences Amazon cites are the product of separate schemes, rather than changes in the structure utilized by the same group, *see* pp. 3-8, *supra*.  The only two other non-binding cases Amazon cites involved either consumer businesses targeting the public at large, *Chambers v. King Buick GMC, LLC*, 43 F. Supp. 3d 575, 602 (D.

Md. 2014) ("widespread fraud scheme" by car dealerships "involving various victims"), or acts beyond mail and wire fraud, such as "bankruptcy fraud and arson," *Ashland Oil, Inc. v. Arnett*, 875 F.2d 1271, 1275 (7th Cir. 1989).  Such distinguishing characteristics implicate "'social well-being.'"  *GE Inv.*, 247 F.3d at 551.  Amazon's allegations do not.

Amazon next claims that it is not the "sole alleged victim," Mot. 34, but it has identified no other.  A parent company and a wholly owned subsidiary who both claim to have been affected by identical conduct do not show a pattern that threatens "social well-being."  *GE Inv.*, 247 F.3d at 551.  And while Amazon claims other "business partners" and "innocent investors" are additional victims, it does not even identify who those business partners and investors might be.  Opp. 24 (quoting SAC ¶5).  They cannot possibly include IPI—who has not pursued claims and who, in fact, determined after discovery of the alleged fraud that "it **owed additional money to Northstar.**"  Mot. 39 (citing Dkt. 160-2 ¶26).  Amazon has no response.  And even if the conduct at issue had some indirect effect on others beside Amazon—which Amazon has nowhere explained—such indirect harm is simply not cognizable under RICO.  *Liquid Air Corp. v. Rogers*, 834 F.2d 1297, 1304 (7th Cir. 1987); *see also Hemi Grp.*, 559 U.S. at 18.

Amazon claims there is "'no per se rule against a RICO claim involving only one victim.'"  Opp. 24.  But neither the number of victims Amazon identifies nor the duration of the conduct alleged supports finding a pattern.  *Pinson*, 860 F.3d at 163; *GE Inv.*, 247 F.3d at 551; *Al-Abood*, 217 F.3d at 238; *Flip Mortg.*, 841 F.2d at 538.  Each points in the same direction.

Open-Ended Continuity.  Amazon's claims of open-ended continuity suffer from a fatal flaw:  Nelson was terminated by Amazon for reasons wholly unrelated to this litigation.  Mot. 36.  Amazon does not dispute that fact.  Nor does it contest that the Fourth Circuit (and this District) have held that independent terminations of similar relationships refute claims of open-

19

ended continuity. *See id.*; *Parcoil Corp. v. Nowsco Well Service, Ltd.*, 887 F.2d 502, 504-05 (4th Cir. 1989); *Whitney, Bradley & Brown, Inc. v. Kammermann*, 436 F. App'x 257, 259, 264 (4th Cir. 2011); *Hyundai Emigration Corp. v. Empower-Visa, Inc.*, No. 09 Civ. 124, 2009 WL 10687986, at *6 (E.D. Va. June 17, 2009). Amazon contends that "'the threat of continuity must be viewed at the time the racketeering activity occurred,'" Opp. 28, but Nelson was fired in June 2019, SAC ¶29, long before (and thus unrelated to) the discovery of the alleged predicate acts, *id.* ¶8, and well before the direct purchase transactions that were allegedly tainted by fraud. Recognizing as much, Amazon maintains that the Blueridge transaction demonstrates that Nelson's "departure from Amazon was no obstacle" to the pattern's continuation. Opp. 25. But Amazon has neither plausibly alleged fraud as to Blueridge, *see* pp. 9-12, *supra*, nor explained how that transaction is connected to the other, distinct sets of transactions at issue, *see* pp. 3-8, *supra*. Thus, as to Nelson, the conduct at issue had a "built-in ending point," precluding a finding of open-ended continuity. *GE Inv.*, 247 F.3d at 549.

### D.    Amazon Fails To Allege That Any RICO Violations Injured It Directly

Amazon cannot dispute it "has no RICO claim" if it fails to allege "injuries . . . caused directly by the alleged fraud." *Hemi Grp.*, 559 U.S. at 18; *see Slay's Restoration, LLC v. Wright Nat'l Flood Ins. Co.*, 884 F.3d 489, 494 (4th Cir. 2018) (injury must be "direct result" of RICO violation). And it has not contested that reputational injuries simply are not cognizable. Mot. 40 (citing *Bowen v. Oistead*, 125 F.3d 800, 806 (9th Cir. 1997); *Knit With v. Knitting Fever, Inc.*, Nos. 08 Civ. 4221, 08 Civ. 4775, 2012 WL 2938992, at *10 (E.D. Pa. July 19, 2012)).

Amazon's contention that it is "not required to prove damages," Opp. 65, disregards that it must plausibly allege direct injury to plead a RICO claim, *Hemi Grp.*, 559 U.S. at 8-9; *Slay's Restoration*, 884 F.3d at 494. It does not deny, or even address, the myriad facts in its own complaint and exhibits that rebut its allegations of "inflated" prices. Amazon tacitly concedes that it

knew exactly what it paid in the two purchase transactions, approved payment in those amounts (in the case of Blueridge, *after* it learned of the supposedly fraudulent scheme), and continues to move forward with plans for data centers at both sites.  Mot. 12-14, 16, 38-40.  For the lease transactions, Amazon similarly does not dispute that the supposedly inflated fees were disclosed and approved (in the case of one lease, *after* it learned of the supposedly fraudulent scheme), or that it has failed to allege rent reductions under its reformed leases.  *Id.* 8-11, 16, 38-40.

Indeed, Amazon does not dispute that its representations at the preliminary injunction stage that "Amazon *paid Northstar*," Dkt. 69-5 at 8, were false,[12] instead contending that "[w]hether Amazon directly or immediately funded the . . . deals is not the point," Opp. 11.  But that is exactly the point:  That Amazon fails to allege either that it paid Northstar or that it now pays less rent on the leases than the amounts it negotiated with Northstar means Amazon has not plausibly alleged direct injury.  *Hemi Grp.*, 559 U.S. at 8-9; *Slay's Restoration*, 884 F.3d at 494.

Sensing the weakness of its claimed injury, Amazon asserts without citation that its RICO claims "*do not require that Amazon suffer losses at all*," because it can seek "disgorgement of profits."  Opp. 66 (emphasis original).  Amazon is wrong as a matter of law.  As the D.C. Circuit has explained, "[p]ermitting disgorgement under § 1964(a) would . . . thwart Congress' intent in creating RICO's elaborate remedial scheme."  *United States v. Philip Morris USA, Inc.*, 396 F.3d 1190, 1201 (D.C. Cir. 2005); *Minn. ex rel. Ellison v. Sanofi-Aventis U.S. LLC*, No. 3:18 Civ. 14999, 2020 WL 2394155, at *11 (D.N.J. Mar. 31, 2020).  Amazon must allege direct injury to state a RICO claim.  *Hemi Grp.*, 559 U.S. at 18.  It has not.

---

[12] *See also, e.g.*, Dkt. 69-5 at 13 ("payments that we, Amazon, made to the defendants, Northstar and Mr. Watson . . . that they then took and paid over to [the] trust"); *id.* at 14 ("fees that Amazon was paying to Northstar"; "we paid Northstar and that Northstar paid to Villanova and then Casey was expecting a share"); *id.* at 15 (similar); Dkt. 41 at 8-9 (Northstar improperly "'*charg[ed]*'" Amazon and took control of Amazon "funds").

21

### E.      Amazon's Claims Under 1962(a), (b), and (d) Must Be Dismissed

Amazon's RICO claim should be dismissed in full for any one of the failures set forth above.  But even if the "association-in-fact" RICO claim were to survive as to § 1962(c), the Court should still dismiss the claims under § 1962(a), (b), and (d).  Nelson and Cheshire explained in detail why Amazon has failed to plead claims under § 1962(a), (b), and (d).  Mot. 22-23, 37.  Amazon's entire response is a conclusory assertion that its complaint "alleges predicate acts under [each of] the statutory provisions."  Opp. 15.  Such cursory treatment justifies dismissal of the claims as abandoned.  *See, e.g.*, *Forgus v. Mattis*, 753 F. App'x 150, 153 (4th Cir. 2018) (affirming dismissal where plaintiff "failed to oppose [the] motion to dismiss [those] claims in any meaningful way"); *Spellman v. Sch. Bd.*, No. 2:17 Civ. 635, 2018 WL 2085276, at *14 (E.D. Va. Apr. 5, 2018) (holding that the failure to defend a claim constituted "tacit concession that no such claim exists" and justified "dismissal with prejudice"), *report and recommendation adopted*, 2018 WL 2015810 (E.D. Va. Apr. 30, 2018).

## II.    AMAZON'S ROBINSON-PATMAN THEORY DEFIES CREDULITY

Amazon's claim under § 2(c) of the Robinson-Patman Act defies eighty years of settled law.  Amazon does not dispute that ***every single*** court of appeals to address the question of whether § 2(c) reaches beyond "tangible goods" held that it does not.  *Patterson v. Ford Motor Credit Co.*, 203 F.3d 821, 2000 WL 123943, at *3-4 (4th Cir. 2000) (table) (collecting cases from the Fifth, Seventh, and Ninth Circuits); *see also* Mot. 41-43.  Nor can Amazon suggest that the Fourth Circuit has ever indicated otherwise.  *Patterson*, 203 F.3d 821; *cf. Hinkleman v. Shell Oil Co.*, 962 F.2d 372, 379-80 (4th Cir. 1992) ("real estate leases" are not "facilities" promoting the resale of goods "within the scope" of § 2(e)).  Amazon also does not dispute that real estate transactions do not involve "tangible goods."  Instead, it declares that § 2(c) reaches non-goods transactions, something no court of appeals—and no case Amazon cites—has ever held.

Flailing for authority to support its position, Amazon claims that "the Fourth Circuit" has applied §2(c) "to claims based on kickback payments in services contracts without any reference to the 'tangible goods' limitation."  Opp. 43.  But Amazon is wrong twice over:  It cites a case not from the Fourth Circuit, but from the Southern District of West Virginia, *id.*, and that case explicitly addressed "undisclosed payments and rebates ***in the course of purchasing goods***," *In Town Hotels Ltd. P'ship v. Marriott Int'l, Inc.*, 246 F. Supp. 2d 469, 473 (S.D. W. Va. 2003).[13] Amazon's claim and its citation cannot be reconciled.

Lacking precedent, Amazon offers a new interpretation of an 84-year-old statute based on the "last antecedent rule."  Opp. 43.  According to Amazon, that rule means §2(c) reaches all commissions paid for ***anything*** besides services in connection with sales of goods.  *Id.*  Amazon's interpretation would transform every single legitimate commission "***for services rendered*** in connection with" transactions involving non-goods into an antitrust violation, subject to treble damages.  15 U.S.C. §13(c).  Every real estate broker that accepted fees from the opposing party (or both parties) to a transaction would violate §2(c).  Such transactions are common in real estate, and their legality is beyond dispute.[14]  Amazon's interpretation would declare such commonplace transactions to violate federal antitrust laws.

The last-antecedent rule does not support such absurd results.  As the Supreme Court has explained, the last antecedent rule "'is not an absolute and can assuredly be overcome by other indicia of meaning.'"  *United States v. Hayes*, 555 U.S. 415, 425 (2009).  Here, another

---

[13] *Town Hotels* was also limited to the issue of standing because the defendant had not "attacked the merits" of the §2(c) claim.  246 F. Supp. 2d at 474.

[14] *See generally* Robert W. Hamilton & Richard A. Booth, *Attorney's Guide to Business and Finance Fundamentals* §3.01, at 3-3 (2d ed. 2007) (owners generally "pay[] the entire commission" for brokers); *Realcomp II, Ltd. v. FTC*, 635 F.3d 815, 820-21 (6th Cir. 2011) ("The home seller also compensates the cooperating broker, either directly or through payment to the listing broker.").

interpretation makes far better sense of § 2(c)'s text.  It is the same interpretation that courts have unanimously adopted for over eighty years:  Section 2(c) applies only to commissions paid as part of transactions involving "the sale or purchase of goods, wares, or merchandise."  15 U.S.C. § 13(c); *Patterson*, 203 F.3d 821.  That interpretation requires dismissal.  Mot. 41-43.

Amazon's standing arguments fail as well.  Amazon does not contest that there is no price discrimination here.  *Compare* Mot. 43-44, *with* Opp. 44-45.  Amazon thus is not the proper plaintiff because any alleged bribery could not have been "used to effect price discrimina-tion" harming it.  *FTC v. Henry Broch & Co*., 363 U.S. 166, 169 (1960); *see also Miyano Mach. USA, Inc. v. Zonar*, No. 92 Civ. 2385, 1993 WL 23758, at *7 (N.D. Ill. Jan. 29, 1993) ("[C]ommercial bribery does not make all related injury antitrust injury.").  Amazon's bald claim of an "extremely close" "causal connection" between its supposed injury and conduct by Nelson or Cheshire, Opp. 45, is incorrect, *see* pp. 20-21, *supra*, and also irrelevant, because the claimed injury is simply not "'of the type the antitrust laws were intended to prevent,'" *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 334 (1990).

## III.   AMAZON'S STATE-LAW CLAIMS MUST BE DISMISSED

The Court should dismiss Amazon's state claims with its federal ones.  Mot. 45.  Amazon cannot differentiate its suit from the "usual case" where, following dismissal of federal claims, the "balance of factors" points toward declining supplemental jurisdiction.  *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).  Amazon's citations all concern distinguishable postures.  Opp. 67-68 (citing *Shanaghan v. Cahill*, 58 F.3d 106, 108-09 (4th Cir. 1995) (diversity case failed "amount in controversy" requirement after "summary judgment"); *Peter Farrell Supercars, Inc. v. Monsen*, 82 F. App'x 293, 297 (4th Cir. 2003) (parties at "eve of trial")).

If the Court reaches state-law claims, it should dismiss them:

*Virginia-Law Claims.*   Amazon does not meaningfully contest that Washington law applies to its state-law claims against Nelson and does not defend its application of *any* Virginia-law claim to him.  Mot. 45-47.  It has thus waived arguments against dismissal of those claims.  *See Forgus*, 753 F. App'x at 153; p. 22, *supra*.

*Fraud.*  Amazon effectively concedes that its state-law fraud theories depend on its faulty RICO predicate allegations, Opp. 56-57, and fail for the same reasons, *see* pp. 9-17, *supra*.  Nor can Amazon show "reliance" given that it approved two transactions *after* learning of the alleged fraud, Mot. 16, 47, which rebuts its claim to have taken "only" remedial action, Opp. 58.

*Breach of Contract.*   Amazon does not meaningfully dispute that its sole contract with either Nelson *or* Cheshire is ***Nelson's*** employment agreement, and it provides no persuasive response to Nelson's arguments as to why he has not breached it.  Mot. 47-49.  Amazon claims that the noncompetition agreement is not overbroad because Amazon seeks only to restrict Nelson from working with Amazon's "former clients or customers," Opp. 61 (citing *Amazon.com, Inc. v. Powers*, No. 12 Civ. 1911, 2012 WL 6726538, at *8 (W.D. Wash. Dec. 27, 2012)).  But none of the counterparties to the lease transactions or direct purchase transactions is a "former client or customer" of Amazon.  Amazon is the client, not the other way around.  Moreover, Amazon's claim that the contract does not require "mutual performance," Opp. 62, is rebutted by the contract's description of "mutual promises," Dkt. 162-10 at 2.  Amazon plainly has not performed its obligations under the venue clause, *id.* at 9, thereby excusing Nelson from his own obligations under the contract, Mot. 47.

## CONCLUSION

The Court should dismiss the complaint and deny leave to amend.  The Court previously admonished Amazon to file a "clear Complaint free of corrections."  Dkt. 138.  Amazon has not done so, because even following a nine-month investigation, it cannot do so.

Dated:  December 4, 2020                    Respectfully submitted,

                                            _____/s/_____
                                            Eric R. Nitz (Va. Bar No. 82471)
                                            MOLOLAMKEN LLP
                                            The Watergate, Suite 500
                                            600 New Hampshire Avenue, N.W.
                                            Washington, D.C.  20037
                                            (202) 556-2021 (telephone)
                                            (202) 536-2021 (facsimile)
                                            enitz@mololamken.com

                                            Justin V. Shur (admitted *pro hac vice*)
                                            Caleb Hayes-Deats (admitted *pro hac vice*)
                                            Kenneth E. Notter III (admitted *pro hac vice*)
                                            MOLOLAMKEN LLP
                                            The Watergate, Suite 500
                                            600 New Hampshire Avenue, N.W.
                                            Washington, D.C.  20037
                                            (202) 556-2000 (telephone)
                                            (202) 556-2001 (facsimile)
                                            jshur@mololamken.com
                                            chayes-deats@mololamken.com
                                            knotter@mololamken.com

                                            Jennifer E. Fischell (admitted *pro hac vice*)
                                            MOLOLAMKEN LLP
                                            430 Park Avenue
                                            New York, New York  10022
                                            (212) 607-8174 (telephone)
                                            (212) 607-8161 (facsimile)
                                            jfischell@mololamken.com

                                            *Counsel for Defendants Carleton Nelson*
                                            *and Cheshire Ventures LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 4, 2020, I electronically filed the foregoing with the

Clerk of Court using the CM/ECF system.   On December 4, 2020, I will further cause the

document and a notification of such filing (NEF) to be sent to the following parties by email or

mail:

Travis Stuart Andrews (Va. Bar No. 90520)
Luke Michael Sullivan (Va. Bar No. 92553)
Elizabeth P. Papez
Patrick F. Stokes
Claudia M. Barrett
GIBSON DUNN & CRUTCHER LLP
tandrews@gibsondunn.com
lsullivan@gibsondunn.com
epapez@gibsondunn.com
pstokes@gibsondunn.com
cbarrett@gibsondunn.com

*Counsel for Plaintiffs*

Jeffrey R. Hamlin (Va. Bar No. 46932)
George R. Calhoun
James Trusty
IFRAH PLLC
jhamlin@ifrahlaw.com
george@ifrahlaw.com
jtrusty@ifrahlaw.com

*Counsel for Defendants Brian Watson and
WDC Holdings LLC, Sterling NCP FF,
LLC, Manassas NCP FF, LLC, and NSIPI
Administrative Manager*

Casey Kirschner
635 N. Alvarado Lane
Plymouth, MN 55447
casey.kirschner@gmail.com

*Pro se*

Dated:  December 4, 2020

_____/s/_____
Eric R. Nitz (Va. Bar No. 82471)
MOLOLAMKEN LLP
The Watergate, Suite 500
600 New Hampshire Avenue, N.W.
Washington, D.C.  20037
(202) 556-2021 (telephone)
(202) 536-2021 (facsimile)
enitz@mololamken.com

*Counsel for Defendants Carleton Nelson
and Cheshire Ventures LLC*