# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### ALEXANDRIA DIVISION

AMAZON.COM, INC., and AMAZON DATA
SERVICES, INC.,

    Plaintiffs,

           v.

WDC HOLDINGS LLC dba NORTHSTAR
COMMERCIAL PARTNERS; BRIAN
WATSON; STERLING NCP FF, LLC;
MANASSAS NCP FF, LLC; NSIPI
ADMINISTRATIVE MANAGER; NOVA WPC
LLC; WHITE PEAKS CAPITAL LLC;
VILLANOVA TRUST; CARLETON NELSON;
CASEY KIRSCHNER; ALLCORE
DEVELOPMENT LLC; FINBRIT HOLDINGS
LLC; CHESHIRE VENTURES LLC; JOHN
DOES 1-20,

    Defendants.

Case No. 1:20 Civ. 484

## DEFENDANT CARLETON NELSON'S REPLY IN SUPPORT OF
## MOTION TO TRANSFER VENUE

# **TABLE OF CONTENTS**

Page

INTRODUCTION ................................................................................................................ 1

ARGUMENT ...................................................................................................................... 2

I.      Amazon's Claims All Fall Within the Mandatory
        Forum-Selection Clause .......................................................................................... 2

II.     Transfer Is Appropriate Under § 1404(a) ............................................................... 5

        A.      Under *Atlantic Marine*, the Forum-Selection Clause Deserves
                "Controlling Weight" ................................................................................... 6

        B.      Even if *Atlantic Marine* Does Not Control, Transfer
                Is Still Warranted ...................................................................................... 11

                1.      Step One:  The Private Interests Under the
                        Forum-Selection Clause Favor Transfer ...................................... 11

                2.      Step Two:  The Interests of the Non-Contracting Parties
                        Favor Transfer .............................................................................. 11

                3.      Step Three:  Threshold Considerations Support Transfer ........... 15

                4.      Step Four:  All Other Factors Favor Transfer or,
                        at a Minimum, Severance and Transfer ........................................ 17

CONCLUSION ................................................................................................................. 20

## <u>TABLE OF AUTHORITIES</u>

Page(s)

### CASES

*1-Stop Fin. Serv. Ctrs. of Am., LLC v. Astonish Results, LLC*,
　　No. A-13-CA-961, 2014 WL 279669
　　(W.D. Tex. Jan. 23, 2014)................................................................................10, 20

*Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*,
　　398 U.S. 281 (1970)........................................................................................18

*Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W.D. Tex.*,
　　571 U.S. 49 (2013)........................................................................... *passim*

*Azima v. RAK Inv. Auth.*,
　　926 F.3d 870 (D.C. Cir. 2019) .....................................................................2, 5

*BAE Sys. Tech. Sols. & Servs., Inc. v. Republic of Korea's*
　　*Def. Acquisition Program Admin.*,
　　884 F.3d 463 (4th Cir. 2018) ....................................................... *passim*

*Bank v. Adv. Sys. Servs. Corp.*,
　　No. 09 Civ. 23, 2009 WL 855730 (E.D. Va. Mar. 30, 2009) ....................................7

*Bartels v. Saber Healthcare Grp., LLC*,
　　880 F.3d 668 (4th Cir. 2018) ...........................................................................2

*Butcher's Union Local No. 498 v. SDC Inv., Inc.*,
　　788 F.2d 535 (9th Cir. 1986) ........................................................................16

*Cara's Notions, Inc. v. Hallmark Cards, Inc.*,
　　140 F.3d 566 (4th Cir. 1998) ...........................................................................2

*Carmouche Ins., Inc. v. Astonish Results, LLC*,
　　No. 14 Civ. 61, 2014 WL 2740464 (M.D. La. June 17, 2014).........................................10, 20

*Chambers Dev. Co. v. Passaic Cnty. Utils. Auth.*,
　　62 F.3d 582 (3d Cir. 1995)............................................................................19

*Clausen v. Burns & Wilcox, Ltd.*,
　　No. 19 Civ. 605, 2020 WL 2425671
　　(M.D. Fla. May 12, 2020)..............................................................................18

*Corry v. CFM Majestic Inc.*,
　　16 F. Supp. 2d 660 (E.D. Va. 1998) ................................................................17

*Crescent Int'l, Inc. v. Avatar Comtys, Inc.,*
   857 F.2d 943 (3d Cir. 1988) (per curiam) .................................................5

*Does 1-144 v. Chiquita Brands Int'l, Inc.,*
   285 F. Supp. 3d 228 (D.D.C. 2018) ........................................................17

*EEOC v. Waffle House, Inc.,*
   534 U.S. 279 (2002) .................................................................................9

*ESAB Grp., Inc. v. Centricut, Inc.,*
   126 F.3d 617 (4th Cir. 1997) ..................................................................16

*Fesniak v. Equifax Mortg. Servs. LLC,*
   No. 14 Civ. 3728, 2015 WL 9462087 (D.N.J. Dec. 28, 2015) ................17

*First Am. Title Ins. Co. v. First Alliance Title, Inc.,*
   718 F. Supp. 2d 669 (E.D. Va. 2010) .....................................................19

*Green Tech. Lighting Corp. v. Liberty Surplus Ins. Corp.,*
   No. 17 Civ. 432, 2018 WL 1053529
   (D. Idaho Feb. 26, 2018) .........................................................................17

*Hoffman v. Blaski,*
   363 U.S. 335 (1960) ...............................................................................16

*In re Howmedica Osteonics Corp.,*
   867 F.3d 390 (3rd Cir. 2017) ..................................................... *passim*

*Hugel v. Corp. of Lloyd's,*
   999 F.2d 206 (7th Cir. 1993) ...............................................................4, 5

*John Wyeth & Brother Ltd. v. CIGNA Int'l Corp.,*
   119 F.3d 1070 (3d Cir. 1997) ...................................................................3

*Jon Feingersh Photography, Inc. v. Pearson Educ., Inc.,*
   978 F. Supp. 2d 463 (E.D. Pa. 2013) .....................................................16

*Jones v. Custom Truck & Equip., LLC,*
   No. 10 Civ. 611, 2011 WL 250997 (E.D. Va. Jan. 25, 2011) ...................8

*Joseph v. Amazon.com, Inc.,*
   No. 12-06256, 2013 WL 4806462 (N.D. Cal. Sept. 9, 2013) .................13

*MaxEn Cap., LLC v. Sutherland,*
   No. H-08-3590, 2009 WL 936895 (S.D. Tex. Apr. 3, 2009) .....................5

*In re McGraw-Hill Glob. Educ. Holdings LLC,*
   909 F.3d 48 (3d Cir. 2018) .......................................................................5

*Mendoza v. Microsoft, Inc.*,
  1 F. Supp. 3d 533 (W.D. Tex. 2014)........................................................5

*Mey v. DIRECTV, LLC*,
  971 F.3d 284 (4th Cir. 2020) ................................................................2

*Mfrs. & Traders Tr. Co. v. Minuteman Spill Response, Inc.*,
  999 F. Supp. 2d 805 (W.D. Pa. 2013).....................................................14

*Modern Am. Recycling Servs., Inc. v. Dunavant*,
  No. 10 Civ. 3153, 2012 WL 1357720
  (E.D. La. Apr. 19, 2012)....................................................................14

*Muzumdar v. Wellness Int'l Network, Ltd.*,
  438 F.3d 759 (7th Cir. 2006) .................................................................8

*Nathanson v. Simpson*,
  No. 89 Civ. 1175, 1989 WL 76470 (N.D. Ill. July 5, 1989)..................................14

*Parus Holdings Inc. v. LG Elecs. Inc.*,
  No. 19 Civ. 432, 2020 WL 4905809
  (W.D. Tex. Aug. 20, 2020)..................................................................18

*Piper Aircraft Co. v. Reyno*,
  454 U.S. 235 (1981)........................................................................6, 13

*Primary Color Sys. Corp. v. Agfa Corp.*,
  No. 17 Civ. 00761, 2017 WL 8220729
  (C.D. Cal. July 13, 2017)....................................................................8

*In re Rolls Royce Corp.*,
  775 F.3d 671 (5th Cir. 2014) .......................................................... *passim*

*Royal Smit Transformers BV v. HC BEA-LUNA M/V*,
  No. 16 Civ. 14647, 2017 WL 819243
  (E.D. La. Mar. 2, 2017)......................................................................10

*Samuels v. Medytox Sols., Inc.*,
  2014 WL 4441943 (D.N.J. Sept. 8, 2014) .................................................8

*Scherk v. Alberto-Culver Co.*,
  417 U.S. 506 (1974).........................................................................2

*Stewart Org., Inc. v. Ricoh Corp.*,
  810 F.2d 1066 (11th Cir. 1987) (per curiam) (en banc).....................................5, 9

*Sun v. Advanced China Healthcare, Inc.*,
  901 F.3d 1081 (9th Cir. 2018) ...........................................................3, 5

iv

*Transp. Sys., LLC v. Amazon*,
    No. 18 Civ. 11286, 2018 WL 5043726
    (E.D. Mich. Oct. 17, 2018) ...........................................................................10, 20

*Trs. of the Plumbers & Pipefitters Nat'l Pension*
    *Fund v. Plumbing Servs., Inc.*,
    791 F.3d 436 (4th Cir. 2015) ..................................................................................16

*United States v. $4,543.79*,
    No. 1:20 Civ. 1343 (E.D. Va. Nov. 9, 2020) ........................................................14

*Van Dusen v. Barrack*,
    376 U.S. 612 (1964) ................................................................................................10

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices*,
    *& Prods. Liab. Litig.*,
    959 F.3d 1201 (9th Cir. 2020) ................................................................................14

*Waterman v. Thor Motor Coach, Inc.*,
    No. 19 Civ. 890, 2020 WL 1290595 (E.D. Va. Mar. 2020) ..................................18

*WCC Cable, Inc. v. G4S Tech. LLC*,
    No. 17 Civ. 52, 2017 WL 6503142 (W.D. Va. Dec. 15, 2017) .............................18

## STATUTES

18 U.S.C. § 1965(b) ...........................................................................................................16

18 U.S.C. § 1965(d) ...........................................................................................................16

28 U.S.C. § 1404(a) ...........................................................................................1, 5, 12, 16

28 U.S.C. § 1631 ................................................................................................................17

28 U.S.C. § 2254 ................................................................................................................19

35 U.S.C. § 311 ..................................................................................................................19

Racketeer Influenced and Corrupt Organizations Act,
    Pub. L. No. 91-452, 84 Stat. 941, 18 U.S.C. § 1961, *et seq.* ........................... *passim*

Wash. Rev. Code Ann. § 49.62.050 ..................................................................................14

## OTHER AUTHORITIES

American Heritage Dictionary of the English Language (5th ed. 2018) .........................6

Black's Law Dictionary (11th ed. 2019) ......................................................................2, 3

Amazon Mot. To Transfer, *Appistry, Inc. v. Amazon.com, Inc.*,
    No. 13 Civ. 2547, 2015 WL 881507 (E.D. Mo. 2015) ..........................................................13

Reply Supp. Mot. To Transfer, *Appistry, Inc. v. Amazon.com, Inc.*,
    No. 13 Civ. 2547, 2015 WL 881507 (E.D. Mo. 2015) ............................................................5

## **INTRODUCTION**

This motion presents a straightforward application of transfer principles.  Amazon admits that its employment contract with Mr. Nelson contained a forum-selection clause that is both mandatory and enforceable.   And it cannot dispute that its claims flow from the duties supposedly imposed by that contract.   Under § 1404(a) and the Supreme Court's decision in *Atlantic Marine*, then, the forum-selection clause must be given controlling weight and the case transferred to the Western District of Washington.  But even if *Atlantic Marine* does not control, transfer is still appropriate because all relevant considerations favor transfer.  At minimum, the Court should sever and transfer the claims against Mr. Nelson.

Amazon offers little in response.   It trots out supposedly competing forum-selection provisions that, it says, make Virginia the proper venue.  But those clauses, where they address venue at all, are permissive and must yield to the mandatory forum-selection clause in Mr. Nelson's employment agreement.  Amazon repeatedly asserts that the case is "exceptional" such that it falls outside the ambit of *Atlantic Marine*.  But the proffered reasons for exceptionality— the involvement of multiple defendants and numerous counts—are hardly unique in federal civil litigation.   And Amazon's suggestion that transfer is improper because the Washington court would have lacked jurisdiction over some defendants is both flawed and irrelevant.  It is flawed because jurisdiction would have been proper, a fact Amazon does not actually contest.  And it is irrelevant because, at most, it supports severance and transfer of the claims against Mr. Nelson— not the complete denial of transfer that Amazon suggests.

This case—all of it, but at the very least the claims against Mr. Nelson—belongs in the Western District of Washington.   Amazon flouted its contractual obligations when it filed in Virginia, and it offers no persuasive reason why this Court should ratify that defiance.

## ARGUMENT

**I.     AMAZON'S CLAIMS ALL FALL WITHIN THE MANDATORY FORUM-SELECTION CLAUSE**

Amazon does not dispute that the forum-selection clause in Mr. Nelson's employment agreement is mandatory.  Nor could it.  The clause contains "'specific language of exclusion,'" *BAE Sys. Tech. Sols. & Servs., Inc. v. Republic of Korea's Def. Acquisition Program Admin.*, 884 F.3d 463, 472 (4th Cir. 2018), and "requires litigation to occur in a specified forum," *id.*; *see* Dkt. 210 ("Opp.") at 3, 5.  The clause states that "[j]urisdiction over and venue of any suit arising out of or related to this agreement ***shall be exclusively*** in the state and federal courts of King County, Washington."  Dkt. 162-10 at 8 (emphasis added).  Nor does Amazon argue that the forum-selection clause is unenforceable.  Opp. 4-5.  Instead, Amazon tries to argue that most of its claims fall outside the scope of the forum-selection clause.  *Id.* at 13-14.  But Amazon's complaint proves otherwise.  It makes clear that each and every one of Amazon's claims is, at a minimum, "related to" the employment agreement.  *See* Dkt. 165 ("Mot.") at 9-14.

The forum-selection clause is "extremely broad," *Cara's Notions, Inc. v. Hallmark Cards, Inc.*, 140 F.3d 566, 569 (4th Cir. 1998), and "expansive," *Mey v. DIRECTV, LLC*, 971 F.3d 284, 293 (4th Cir. 2020).[1]  It applies to "any ***suit*** arising out of or related to" the employment agreement.  Dkt. 162-10 at 8 (emphasis added).  By covering "any suit," the clause requires only that the "proceeding" or "lawsuit" as a whole relate to the employment agreement—***not*** each individual claim.  Black's Law Dictionary 1735 (11th ed. 2019) (defining "suit"); *see Azima v. RAK Inv. Auth.*, 926 F.3d 870, 878 (D.C. Cir. 2019) (noting the term

---

[1]  Amazon attempts to distinguish *Cara's Notions* and *Mey* because they involved "arbitration clauses."  Opp. 14 n.7.  But arbitration clauses are simply "a specialized kind of forum-selection clause."  *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974); *see Bartels v. Saber Healthcare Grp., LLC*, 880 F.3d 668, 679 n.6 (4th Cir. 2018).  And the Fourth Circuit gives identical language the same meaning in both contexts.  *See, e.g.*, *Bartels*, 880 F.3d at 678.

"claims" is "narrower than 'disputes' "). A suit is "related to" an agreement if it is "[c]onnected in some way." Black's Law Dictionary, *supra*, at 1541. That is, "forum-selection clauses covering disputes 'relating to' a particular agreement apply to any disputes that reference the agreement or have some 'logical or causal connection' to the agreement." *Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1086 (9th Cir. 2018) (quoting *John Wyeth & Brother Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1074 (3d Cir. 1997) (Alito, J.)).[2]

Amazon does not contest that the venue clause in the employment agreement covers "any suit"—not individual claims. Opp. 5. And Amazon essentially admits that ***this suit*** relates to the employment agreement: It acknowledges that it brought breach of contract claims alleging breach of the agreement. Dkt. 153 ("SAC") ¶¶ 500-503; *see* Opp. 18 (noting that "one of Amazon's twelve claims asserts breach of those contracts" (emphasis omitted)). That count alone makes ***this suit*** "related to" the employment agreement. *See John Wyeth*, 119 F.3d at 1074 (rejecting argument that all *claims* must be related to an agreement when the forum-selection clause "applies more broadly to *disputes*"). Amazon also concedes that the employment agreement is relevant to Mr. Nelson's defenses and potential counterclaims. Opp. 1. That too makes the suit related to the agreement. *John Wyeth*, 119 F.3d at 1076.

Regardless of the breach of contract claim, Amazon's RICO, antitrust, and state-law claims still have some "logical or causal connection" to the employment agreement. *John*

---

[2] Amazon cites *Sun* for the proposition that the phrase "arising under" in a forum-selection clause has a narrow meaning, limited "only to disputes 'relating to the interpretation and performance of the contract itself.' " Opp. 14 (emphasis and some quotation marks omitted) (quoting *Sun*, 901 F.3d at 1086). The ***very next sentence*** of that case, though, says: "By contrast, forum-selection clauses covering disputes 'relating to' a particular agreement apply to ***any disputes that reference the agreement*** or have some 'logical or causal connection' to the agreement." 901 F.3d at 1086 (emphasis added). Because the clause in *Sun* covered "any disputes arising out of ***or related to***" an agreement, the Ninth Circuit held that the case was "subject to the forum-selection clause" because it was "logically connected to the parties' agreements." *Id.* at 1086-87.

*Wyeth*, 119 F.3d at 1076; *see* Mot. 11-13.  Indeed, but for the employment agreement, Amazon would have no claims to bring.  On Amazon's framing, Mr. Nelson abused his employment at Amazon by "conspir[ing] to steer lucrative company contracts, business opportunities, and proprietary or otherwise competitively sensitive business information to third parties."  SAC ¶73.  Mr. Nelson could not have executed that supposed scheme had he not signed the employment agreement.  *See id.* ¶135 (the agreement was "a condition of [his] employment").  It was his employment with Amazon that allegedly allowed him to "shepherd[] [the injurious transactions] through Amazon's internal approval process," *id.* ¶4, and purportedly enabled him to "steer" those transactions, *id.* ¶73.

Indeed, the entire supposed RICO enterprise depended on Mr. Nelson's alleged exploit-ation of "proprietary and confidential information for [his] benefit and to Amazon's detriment." SAC ¶154.  The complaint could not make this point any clearer; it flat-out accuses Mr. Nelson of violating his employment agreement "by participating in the RICO Enterprise."  *Id.* ¶503.  It concedes the allegations touch upon "several provisions" of the employment agreement, which Amazon admits are "relevant to this suit."  *Id.* ¶139.  And it confirms that "*[a]ll of the acts alleged herein* . . . breach multiple provisions of" Mr. Nelson's employment agreement.  *Id.* ¶347 (emphasis added); *see also* Dkt. 243-1 at 23 (asserting RICO claims "overlap[]" with breach-of-contract claim).  Simply put, the employment agreement—and the supposed breaches of that agreement—is part of the essential fabric of every claim in this suit.  *See* Mot. 9-14.

The law, like the facts, is against Amazon.  Take *Hugel v. Corporation of Lloyd's*, 999 F.2d 206 (7th Cir. 1993).  Amazon dismisses *Hugel* as inapposite, noting that the Seventh Circuit held that a forum-selection clause "covered certain non-contract claims only because their reso-lution depended on conduct governed by the membership agreement."  Opp. 19.  But that fact

only reinforces the parallel.  Mot. 9-10.  As in *Hugel*, resolution of Amazon's RICO and other claims depends on conduct governed by the agreement with the forum-selection clause—namely, Mr. Nelson's supposed misuse of his employment by allegedly passing confidential information to third parties, allegedly accepting compensation from Amazon partners, and "suppress[ing] inquiries" into the transactions.  SAC ¶ 224; *see also id.* ¶¶ 4, 82, 93, 107, 154, 316.

Amazon also misses the point of *Stewart Organization, Inc. v. Ricoh Corp.*, 810 F.2d 1066 (11th Cir. 1987) (per curiam) (en banc).  *Stewart* concluded that a similarly worded forum-selection clause was "sufficiently broad" to cover a suit alleging "breach of warranty, fraud, and . . . antitrust claims."  *Id.* at 1070.  And *Crescent International, Inc. v. Avatar Communities, Inc.*, 857 F.2d 943 (3d Cir. 1988) (per curiam), drives that point home by rejecting the idea that a plaintiff can "avoid[ ] a forum selection clause by simply pleading non-contractual claims . . . involving the terms of a contract containing the parties' choice of forum."  *Id.* at 945.  That is the exact loophole Amazon would have this Court adopt.  *See* Opp. 1, 19-20.  It is a loophole that courts have rejected for decades.[3]  And it is one that Amazon itself knows does not exist.  *See* Mot. 13-14.  As Amazon has argued elsewhere, "applying the forum selection clause to [a] non-contractual dispute would not be the least bit unusual."  Reply Supp. Mot. To Transfer, *Appistry, Inc. v. Amazon.com, Inc.*, No. 13 Civ. 2547, 2015 WL 881507 (E.D. Mo. 2015).

## II.   TRANSFER IS APPROPRIATE UNDER § 1404(a)

Because this suit relates to Mr. Nelson's employment agreement, this Court must apply *Atlantic Marine* to give "controlling weight" to the mandatory forum-selection clause in that

---

[3] *See, e.g.*, *Azima*, 926 F.3d at 878-79; *In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48, 67-69 (3d Cir. 2018); *Sun*, 901 F.3d at 1086-87; *Mendoza v. Microsoft, Inc.*, 1 F. Supp. 3d 533, 548 (W.D. Tex. 2014) (concluding a suit "related to" a forum-selection clause where the complaint "extensively recount[ed] portions of the [contract]"); *MaxEn Cap., LLC v. Sutherland*, No. H-08-3590, 2009 WL 936895, at *6-7, (S.D. Tex. Apr. 3, 2009).

5

agreement and transfer this case to the Western District of Washington.  *See* Mot. 14-15.  Even

moving beyond *Atlantic Marine*, however, the law and the facts make clear that this case (or, at a

minimum, the case as brought against Mr. Nelson) belongs in that forum.  *See id.* at 15-16.

> **A.  Under *Atlantic Marine*, the Forum-Selection Clause Deserves "Controlling Weight"**

Because this suit relates to an employment contract, the transfer motion calls for a

straightforward application of *Atlantic Marine*.   That case teaches that mandatory forum-

selection clauses have "'controlling weight in all but the most exceptional cases.'"  *Atl. Marine*

*Constr. Co. v. U.S. Dist. Ct. for W.D. Tex.*, 571 U.S. 49, 63 (2013).  By definition, few cases are

"exceptional."   *See* The American Heritage Dictionary of the English Language 618 (5th ed.

2018) ("exceptional" means "[b]eing an exception; uncommon").  Courts look to certain "public-

interest factors" to decide whether a case qualifies.  *Atl. Marine*, 571 U.S. at 64.[4]  But "those

factors will rarely defeat a transfer motion," and "the party defying the forum-selection

clause"—here, Amazon—has "the burden of showing" otherwise.  *Id.* at 63-64; *see* Mot. 14-15.

Amazon does not deny that the clause is mandatory and enforceable.  Opp. 11-13.  The "suit" is

unquestionably related to the underlying employment agreement.  *See* pp. 2-5, *supra*.  And aside

from the naked declaration that "[t]his is an exceptional case," Opp. 3, Amazon does not even try

to carry its burden of proving "that public-interest factors overwhelmingly disfavor a transfer,"

*Atl. Marine*, 571 U.S. at 67.

Instead, Amazon claims that *Atlantic Marine* does not apply.  Its argument is two-fold.

Opp. 12-14.  First, it argues that permissive venue provisions in some of the real estate deals take

---

[4] The factors include: (1) "'administrative difficulties flowing from court congestion'"; (2) "'the local interest in having localized controversies decided at home'"; and (3) "'the interest in having the trial of a diversity case in a forum that is at home with the law.'"  *Atl. Marine*, 571 U.S. at 62 n.6 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)).

this case outside of *Atlantic Marine*'s ambit.  *Id.* at 13-14.  Second, it tosses *Atlantic Marine* aside because the forum-selection clause does not bind every defendant.  *Id.* at 14.  Amazon is wrong.  Neither of those facts renders this case "exceptional."

1.      To start, Amazon (at 16) invokes venue provisions in various real estate contracts (the "Real Estate Contracts").  But that invocation seeks only to sow confusion; those venue provisions are irrelevant.  Amazon's claim that the Real Estate Contracts "expressly prescribe venue in Virginia," Opp. 16, is unequivocally off base.  ██████ of the cited provisions are *solely* ██████████████████; they state only that ████████████████████████████████ ██████████████████████████████████████████████████████ Dkt. 212-5 ¶35(k) to Dkt. 212-10 ¶35(k); *see also* Dkt. 212-11 §12 (similar).  Those ██████ provisions █████████████████████████.  ████ others include an additional sentence stating that ████████████████████████████████████████████████ ████████████   Dkt. 212-3 ¶35(k); Dkt. 212-4 ¶35(k).  And another states only that suits "arising out of or relating to this Agreement *may be* instituted in any federal or state court sitting in the State of Virginia."  Dkt. 160-8 ¶3(C) (emphasis added).[5]

To the extent these contracts address venue at all, they completely lack "'specific language of exclusion.'"  *BAE Sys.*, 884 F.3d at 472.  Thus, that the parties to the Real Estate Contracts ████████████████████████████████████████████████ ████████████████████████████████   *Bank v. Adv. Sys. Servs. Corp.*, No. 09 Civ.

---

[5] Amazon labels this agreement the "White Peaks Agreement," Opp. 6, but the quoted language does not, in fact, appear in the Purchase Agreement Amazon executed, Dkt. 160-7.  Instead, it appears in a "Form Assignment and Assumption Agreement" the parties attached to the Purchase Agreement as Exhibit E.  Dkt. 160-7 at 5.  Thus, the only suits that fall within the scope of the venue provisions are suits that relate to the assignment of White Peaks Defendants' rights and Amazon's assumption of corresponding responsibilities to the properties' prior owner.  Dkt. 160-8 at 3-5.  Amazon inexplicably ignores that fact and nowhere explains how those rights or responsibilities relate to its current suit.

23, 2009 WL 855730, at *4 (E.D. Va. Mar. 30, 2009). The forum-selection clause in Mr. Nelson's employment agreement, on the other hand, is mandatory. It **requires** venue in Washington State to the exclusion of all others. *Compare* Opp. 5-6 (citing no language of exclusivity), *with* Dkt. 162-10 at 8 & Dkt. 162-9 at 4 (making Washington "exclusive jurisdiction and venue"); *see* pp. 2-3, *supra*.

No conflict therefore exists between clauses that permit—but do not require—venue in one jurisdiction, such as those in the Real Estate Contracts, and clauses that mandate jurisdiction in another, such as those in Mr. Nelson's employment agreement. Enforcement of the mandatory provisions does not run afoul of the permissive clauses. *Muzumdar v. Wellness Int'l Network, Ltd.*, 438 F.3d 759, 762 (7th Cir. 2006) (remarking that a permissive clause did not "undermine[] a very strongly worded forum selection clause containing mandatory language").[6] These cases demonstrate why Amazon's reliance on *Samuels v. Medytox Solutions, Inc.* is misplaced. Opp. 16-17 (citing No. 13 Civ. 7212, 2014 WL 4441943, at *4 (D.N.J. Sept. 8, 2014)). *Samuels* involved "two mandatory forum selection clauses," 2014 WL 4441943, at *4, not the permissive clauses Amazon invokes.

The Real Estate Contracts are also irrelevant for a second reason: The parties to those agreements are, with one exception, not **parties to this litigation**. According to the complaint, Amazon executed the leases with "Dulles NCP LLC; Quail Ridge NCP, LLC; Manassas NCP LLC; and Dulles NCP II LLC." SAC ¶169; *see id.* ¶234. And Amazon bought the Blueridge Property from the Blueridge Group, LLC. *See id.* ¶¶315-326. But Amazon did not sue any of

---

[6] *See also BAE Sys.*, 884 F.3d at 471-72 (concluding that *Atlantic Marine* applies to only mandatory forum-selection clauses); *Primary Color Sys. Corp. v. Agfa Corp.*, No. 17 Civ. 00761, 2017 WL 8220729, at *5 (C.D. Cal. July 13, 2017) (disregarding permissive forum-selection clause given competing mandatory clauses); *Jones v. Custom Truck & Equip., LLC*, No. 10 Civ. 611, 2011 WL 250997, at *6 (E.D. Va. Jan. 25, 2011) (enforcing a mandatory forum-selection clause over a permissive clause).

*those* entities.  *See id.* ¶¶ 13-45.[7]  It sued Mr. Nelson, who did not sign and is not bound by the Real Estate Contracts.  *See EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002) ("It goes without saying that a contract cannot bind a nonparty.").  And NOVA WPC LLC, the sole entity supposedly bound by a permissive venue clause (in an assignment agreement), has not appeared, did not respond to the Court's temporary restraining order, Mot. 6-7, and has not been "included" by Amazon in "recent actions to enforce the PI," SAC ¶ 354.  Amazon's repeated reliance on the Real Estate Contracts, *see* Opp. 5-6, 13, 16-17, 19, 21-22, 23, 26, thus improperly equates permissive clauses executed by nonparties (or effective nonparties) with Amazon's mandatory agreement to sue Mr. Nelson in Washington.

2.     Amazon's second argument for disregarding *Atlantic Marine* fares no better.  Amazon argues that *Atlantic Marine* applies only where "***all*** litigants agreed to the ***only*** forum clause in issue."  Opp. 13.  And because the exclusive forum-selection clauses here bind only Amazon, Mr. Nelson, and Mr. Kirschner, Amazon reasons, *Atlantic Marine* is irrelevant.  *See id.* Not so.  The Supreme Court never limited its logic to two-party cases involving parties bound by a forum-selection clause.  To the contrary, it spoke generally, instructing courts to give forum-selection clauses "'controlling weight in all but the most exceptional cases.'"  *Atl. Marine*, 571 U.S. at 60 (quoting *Stewart*, 487 U.S. at 33 (Kennedy, J., concurring)).  Multi-defendant cases are not exceptional in the least.  Amazon gives no reason why *Atlantic Marine*'s conclusions— *e.g.*, that "the party defying the forum-selection clause" bears the burden—apply only if every defendant signed the same clause.  *Id.* at 63.  "It seems highly unlikely that the Supreme Court

---

[7] Implicitly recognizing that problem, Amazon asserts that Mr. Watson signed the leases on behalf of "the Dulles, Manassas and Quail Ridge entities" and attempts to cast those entities as Watson's alter egos.  Opp. 22 n.13.  But IPI Partners, LLC—which Amazon neither suspects nor accuses of any wrongdoing—is (and was at the time) the majority owner of those entities.  *See* SAC ¶¶ 171, 232.  Mr. Watson's assent to permissive venue clauses on behalf of nonparty entities cannot override the mandatory venue clause that Amazon itself insisted Mr. Nelson sign.

granted certiorari and awarded the extraordinary relief of mandamus simply to proclaim that a forum selection clause must prevail only when one party [to a clause] sues one other party." *In re Rolls Royce Corp.*, 775 F.3d 671, 685 (5th Cir. 2014) (Jones, J., concurring in the judgment).

Indeed, several courts deem *Atlantic Marine* controlling even when some defendants are not bound by the relevant forum-selection clause. Consider *Transport Systems, LLC v. Amazon*, No. 18 Civ. 11286, 2018 WL 5043726 (E.D. Mich. Oct. 17, 2018). That case involved two defendants—Amazon and U.S. Express. *Id.* at *1. A mandatory forum-selection clause bound U.S. Express and the plaintiff, but not Amazon. *See id.* Nevertheless, the court applied *Atlantic Marine*, placing the burden on the plaintiff as the party defying the forum-selection clause. *Id.* at *3. And because the plaintiff could not carry that burden, the court transferred the case against U.S. Express. *Id.* at *5. Other district courts have repeatedly done the same.[8]

Amazon would have this Court read *Atlantic Marine* out of existence. Opp. 12-13. Under its reading, any canny plaintiff could evade a mandatory forum-selection clause with one defendant by merely adding another defendant not bound by the clause. *See Rolls Royce*, 775 F.3d at 685 (Jones, J., concurring in the judgment). The Supreme Court has long rejected arguments that "would discriminatorily enable parties opposed to transfer, by means of their own acts or omissions, to prevent a transfer." *Van Dusen v. Barrack*, 376 U.S. 612, 623 (1964). But that is precisely the argument that Amazon would have this Court endorse. Amazon's cramped interpretation of *Atlantic Marine* also contradicts the Fourth Circuit's broad interpretation of that case. In *BAE Systems*, for example, the Fourth Circuit applied *Atlantic Marine*'s principles to a

---

[8] *E.g.*, *Royal Smit Transformers BV v. HC BEA-LUNA M/V*, No. 16 Civ. 14647, 2017 WL 819243, at *5 (E.D. La. Mar. 2, 2017); *Carmouche Ins., Inc. v. Astonish Results, LLC*, No. 14 Civ. 61, 2014 WL 2740464, at *7 (M.D. La. June 17, 2014); *1-Stop Fin. Serv. Ctrs. of Am., LLC v. Astonish Results, LLC*, No. A-13-CA-961, 2014 WL 279669, at *6-8 (W.D. Tex. Jan. 23, 2014).

*forum non conveniens* analysis because such application was implicit in "the Court's rationale."

*BAE Systems,* 884 F.3d at 471.  There is thus every reason to apply *Atlantic Marine* here.

### B.      Even if *Atlantic Marine* Does Not Control, Transfer Is Still Warranted

Even if the Court concludes *Atlantic Marine* does not control, transfer is still appropriate

under Amazon's preferred test: the four-step test adopted by *Howmedica* and *Rolls Royce*.  *See*

Opp. 14-15.  Under that test, the Court need not go past Steps One and Two, because both point

to the Western District of Washington.  Mot. 16-21.  But even if the Court reaches Steps Three

and Four, the analysis still favors transferring the entire case or, at minimum, severing and

transferring the claims against Mr. Nelson.  *Id.* at 21-26.

1.      *Step One:  The Private Interests Under the Forum-Selection Clause Favor Transfer*

Step One is easy.  *See* Mot. 16-17.  Under "*Atlantic Marine*, the private factors of the

parties who have signed a forum agreement must, as a matter of law, cut in favor of . . . transfer

to the contracted for forum."  *Rolls Royce*, 775 F.3d at 681.  Here, Amazon bargained for the

Western District of Washington.  Step One is thus complete.  Amazon tries to evade this conclu-

sion by (again) injecting the irrelevant venue provisions in the Real Estate Contracts.  But, at

Step One, "the court assumes that *Atlantic Marine* applies," *In re Howmedica Osteonics Corp.*,

867 F.3d 390, 404 (3d Cir. 2017), and *Atlantic Marine* requires that mandatory—not

permissive—forum-selection clauses be given "controlling weight," *BAE Sys.*, 884 F.3d at 471-

72.  The venue provisions in the Real Estate Contracts—and the five pages Amazon devotes to

them—are irrelevant.  *See* Opp. 16-21.

2.      *Step Two:  The Interests of the Non-Contracting Parties Favor Transfer*

Step Two asks courts to consider the private and public interests of the parties not bound

by the forum-selection clause at issue.  *Howmedica*, 867 F.3d at 404.  Here, the only parties

bound by mandatory forum-selection clauses are Amazon, Mr. Nelson, and Mr. Kirschner. Amazon, however, claims that all but the "Villanova Trust and the LLC and Doe defendants" are bound by forum-selection clauses. Opp. 22. Amazon is mistaken. Once again, its error flows from its preoccupation with the venue provisions in the Real Estate Contracts. *See* Opp. 21-22. Only one defendant—who has not appeared—is a party to a contract with a Virginia venue provision. *See* pp. 8-9 & n.7, *supra*. In any event, the Virginia venue provisions are permissive, so "there is no presumption in favor of enforceability." *BAE Sys.*, 884 F.3d at 472.

Step Two, then, must consider the interests of: Northstar; Brian Watson; Sterling NCP FF, LLC; Manassas NCP FF, LLC; NSIPI Administrative Manager; Villanova Trust; White Peaks Capital LLC; NOVA WPC LLC; AllCore Development LLC; Cheshire Ventures LLC; and Finbrit Holdings LLC. Those parties' interests favor transfer. For one thing, the only defendants to have appeared—Northstar, Mr. Watson, Sterling, Manassas, NSIPI, and Cheshire—all consent to transfer.[9] That consent should be dispositive evidence of those parties' private interests, and decisively rebuts Amazon's suggestion (Opp. 10, 22-26) that Virginia is the more convenient forum. *Cf.* 28 U.S.C. §1404(a) (allowing transfer where "all parties have consented"); *Atl. Marine*, 571 U.S. at 64 (instructing courts to consider only public-interest factors when a party consents to venue through forum-selection clause).

Even if that consent were not dispositive, those parties' interests point toward Washington. Mot. 17-21. The birthplace of the purported RICO scheme was Seattle, SAC ¶¶ 175-178, and it supposedly involved Mr. Nelson misappropriating Amazon's confidential information and "shepherd[ing]" eleven real estate deals "through Amazon's internal approval

---

[9] Amazon attempts to undermine this consent by suggesting that Virginia would be more convenient for witnesses from Colorado and Wyoming. Opp. 10, 25. But those states are **hundreds** of miles closer to Seattle than to Virginia. And for witnesses in Chicago, Seattle is only marginally more inconvenient than Virginia. Either way, the witnesses must travel.

process," *id.* ¶4.  Evidence of that alleged misappropriation and shepherding, if it exists, will be in Seattle.  That is where the people who were supposedly duped live and work; that is where defendants will be able to compel those witnesses' attendance; that is where Amazon ran its "immediate and extensive internal investigation," *id.* ¶121; and that is where trying this case will be most efficient for Mr. Watson, the only individual not bound by a forum-selection clause.

Moreover, the interests of Amazon and the courts more broadly favor transfer to Washington.  Any imaginable harm from the scheme was suffered by Amazon in Washington. *See* SAC ¶¶370, 382, 483, 504-505.  As Amazon has argued elsewhere, the "interest in having localized issues decided at home favors transfer because this case allegedly arises, in part, based on meetings that took place in Amazon's offices in Seattle, Washington."  Amazon Mot. To Transfer, *Appistry*, 2015 WL 881507 (E.D. Mo. 2015); *see also Atl. Marine*, 571 U.S. at 62 n.6 (stressing interest in having "localized controversies decided at home").[10]   The court in Washington, meanwhile, would be more "at home with the law" in this case because Mr. Nelson's employment agreement unambiguously requires the application of Washington law—a point Amazon hardly contests.  *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981); *see* Mot. 21-22; Dkt. 162-10 at 8.  And under Washington law, non-compete provisions, like the one

---

[10] Amazon's effort to distinguish *Joseph v. Amazon.com, Inc.*, No. 12-06256, 2013 WL 4806462 (N.D. Cal. Sept. 9, 2013), is also a dud.  Opp. 18-19.  According to Amazon, "*Joseph* is inapposite" because that case "did not involve any competing forum clauses or non-signatory parties."  *Id.* at 19.  It adds that *Joseph* "addressed only claims that flowed **directly** from the contracts that uniformly included the relevant forum clause."  *Id.*  Not so.  To start, there are no competing mandatory forum-selection clauses here either.  *See* pp. 7-9, *supra*.  For another thing, *Joseph* **did** involve a non-party—namely, Jeff Bezos.  *See* 2013 WL 4806462, at *1.  What's more, the forum-selection clause in *Joseph* did not require (and the court did not purport to conclude) that claims "flowed directly from the contracts."  Opp. 19 (emphasis omitted).  To the contrary, the clause there applied to "[a]ny dispute relating in any way to the [agreement]." 2013 WL 4806462, at *4.  And the court's ruling turned on the conclusion that the plaintiff's "claims **relate to** th[e] contract and [thus] fall within its forum selection clause."  *Id.* at *5 (emphasis added).

in Mr. Nelson's contract, are void if (as Amazon would have it) they "require[] the employee . . . to adjudicate a noncompetition covenant outside of" Washington.   Wash. Rev. Code Ann. § 49.62.050.

Amazon tries to distract from those uncomfortable truths.   It says the case should stay here because "[t]his District is home to a criminal investigation."   Opp. 22.   It cites not a single supporting case, however, because a pending criminal investigation has no bearing on the appropriate forum for a civil case.[11]   Indeed, related criminal and civil proceedings are frequently brought in different judicial districts.   *See e.g.*, *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 959 F.3d 1201, 1209-10 & n.11 (9th Cir. 2020) (noting criminal case filed in the Eastern District of Michigan, while related civil suits proceeded in the Northern District of California).   And criminal cases cannot be consolidated with civil ones in any event, especially where a criminal case has not yet been—***and may never be***—brought.[12]   Amazon accuses Mr. Nelson of attempting to "avoid accountability."   Opp. 7, 18.   But this motion is not about avoiding accountability.   It is about enforcing the promises Mr. Nelson and Amazon bargained for and the agreement they reached.   And if Mr. Nelson had indeed wronged Amazon (he

---

[11] *See Mfrs. & Traders Tr. Co. v. Minuteman Spill Response, Inc.*, 999 F. Supp. 2d 805, 811-12 (W.D. Pa. 2013) (giving no weight to a pending criminal investigation in considering a motion to transfer a civil case); *Modern Am. Recycling Servs., Inc. v. Dunavant*, No. 10 Civ. 3153, 2012 WL 1357720, at *3 (E.D. La. Apr. 19, 2012) (denying motion to stay or, alternatively, to transfer where defendant had "not yet been indicted," and it was mere "speculation whether the civil action and the pending criminal investigation overlap"); *Nathanson v. Simpson*, No. 89 Civ. 1175, 1989 WL 76470, at *1 (N.D. Ill. July 5, 1989) (denying motion to transfer to district with "pending criminal investigation").

[12] The government recently initiated a civil forfeiture case against bank accounts held by Mr. Nelson.   *See United States v. $4,543.79*, No. 1:20 Civ. 1343 (RDA) (IDD) (E.D. Va. Nov. 9, 2020).   But it did not file a "Notice of Related Case," and the forfeiture proceeding has been assigned to a different judge.   Nor does the government make any reference to RICO, Amazon's primary theory of liability.

has not), surely the Western District of Washington is equally capable of holding him accountable.

Amazon next claims that Mr. Nelson and Mr. Kirschner frequently traveled to Virginia. Opp. 24-25. Amazon's reliance on that travel is the height of irony because all of it was travel *for* Amazon, under the very employment contracts Amazon now seeks to escape. Dkt. 212-18.

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

That underscores that the travel at issue was a product of Mr. Nelson's and Mr. Kirschner's employment. Finally, Amazon ignores that Mr. Nelson traveled from and returned to Washington, where he spent the vast majority of his time. The travel thus provides no basis for disregarding Mr. Nelson's employment agreement. To the contrary, it underscores the impor-tance of that agreement to this case.[13]

Because Steps One and Two both point to Washington as the proper forum, "the court should allow the case to proceed in that forum . . . by transfer." *Howmedica*, 867 F.3d at 404.

### 3. *Step Three: Threshold Considerations Support Transfer*

Even if the Court reaches Step Three, this step still favors transferring the entire case to Washington. There is no threshold issue preventing the Court from doing so. Jurisdiction is

---

[13] Attempting to tar Mr. Nelson with continued accusations of misconduct, Amazon gratuitously attaches transcripts of recordings and other evidence that, it says, demonstrate this case's connection to Virginia. Dkt. 212-13 to 212-18. Those documents do not support Amazon's opposition to transfer. The two recordings were made in Colorado, from meetings held in Colorado. Dkt. 212-13 at 1 ("Denver International Airport"); Dkt. 212-15 at 1 ("1999 Broadway"); SAC ¶15 (identifying "1999 N. Broadway, Suite 3500, Denver, CO," as Northstar's address). And while certain messages show travel by Mr. Nelson to Virginia, that travel was within the scope of his employment. *Compare* Opp. 9-10, *with* SAC ¶234. Amazon's mischaracterization of these documents is beyond the scope of this motion, and Mr. Nelson looks forward to disproving Amazon's accusations. But even in Amazon's recording, Mr. Nelson— with no knowledge that he was being recorded—said, "I'll tell you right now, we are absolutely not gonna do anything that breaks the law." Dkt. 212-13 at 10.

unquestionably proper as to Mr. Nelson, who lives in Seattle, and as to all other defendants. Amazon nonetheless suggests that jurisdiction presents a threshold barrier, arguing that Mr. Nelson has not **shown** the Western District of Washington would have had personal jurisdiction over other defendants.  Opp. 12 (citing *Hoffman v. Blaski*, 363 U.S. 335, 344 (1960)).  But this is just another attempt to distract.  Amazon does not actually argue that the Western District of Washington would have lacked personal jurisdiction over any defendant, *id.*, because that court would almost certainly have had jurisdiction under the RICO's jurisdictional provision, 18 U.S.C. § 1965(b), (d); *see ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 626-27 (4th Cir. 1997) (noting that due process rarely prohibits personal jurisdiction over a RICO defendant who "is located within the United States"); *see also Trs. of the Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015); *Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 539 (9th Cir. 1986); SAC ¶¶ 51-52 (relying on the RICO statute for personal jurisdiction).  Amazon gives no reason to suggest that due process would prohibit the Washington court's exercise of jurisdiction over any defendant—a burden that **Amazon must carry** as the party defying the forum-selection clause to which it agreed.  *Atl. Marine*, 571 U.S. at 63; *see also ESAB*, 126 F.3d at 627.  Step Three, then, does not cut against transferring the entire case.  *See Howmedica*, 867 F.3d at 405.[14]

Additionally, Amazon's position erroneously assumes that, if the Washington court lacks jurisdiction over a single defendant, the motion to transfer must be denied.  Opp. 12.  But Mr. Nelson sought, in the alternative, **severance** and transfer of the claims against him.  Mot. 25-26.

---

[14] Amazon (at 11) cites *Jon Feingersh Photography, Inc. v. Pearson Educ., Inc.*, 978 F. Supp. 2d 463, 467 (E.D. Pa. 2013), to suggest that the "burden remains on the Section 1404 movants." But *Feingersh Photography* was decided **before** *Atlantic Marine*.  *Atlantic Marine* controls. Amazon also misapplies its preferred four-step test in arguing that personal jurisdiction is the "first requirement" of § 1404(a).  Opp. 12.  Under *Howmedica*, that question is for Step Three.

Thus, even if some threshold issue of jurisdiction did exist as to another defendant, the proper remedy would be to sever and transfer the claims against Mr. Nelson.  *See Howmedica*, 867 F.3d at 405.  Indeed, court after court has done precisely that when one defendant would not be subject to personal jurisdiction in the transferee forum.  The *Rolls Royce* court did it.  775 F.3d at 673-74 & n.5.  And so have many others.[15]  Amazon ignores those authorities.  Instead, it attacks severance as inefficient.  Opp. 28-29.  But Step Three is not concerned about efficiency; that question is reserved for Step Four.  *Howmedica*, 867 F.3d at 405.  In any event, Amazon's efficiency arguments are overstated at best.  *See* pp. 18-19, *infra*.

4.     *Step Four:   All Other Factors Favor Transfer or, at a Minimum, Severance and Transfer*

To defeat the forum-selection clauses at Step Four, Amazon must prove that "the strong public interest in upholding the contracting parties' settled expectations is 'overwhelmingly' outweighed by the countervailing interests."  *Howmedica*, 867 F.3d at 405.  Amazon cannot carry that burden.  Mot. 23-24.  For all its talk of judicial economy, Amazon never explains why transferring the whole case to Washington would be inefficient.  *See* Opp. 28-30.  After all, "this case is in its early stages" before any case-dispositive rulings,[16] "meaning any increase in judicial economy from the Court's experience in these early stages of litigation is likely to be limited."

---

[15] *See Corry v. CFM Majestic Inc.*, 16 F. Supp. 2d 660, 664, 667 (E.D. Va. 1998) (severing and transferring claims against the defendants over whom the transferee court had personal jurisdiction); *Green Tech. Lighting Corp. v. Liberty Surplus Ins. Corp.*, No. 17 Civ. 432, 2018 WL 1053529, at *8 (D. Idaho Feb. 26, 2018) (same); *Fesniak v. Equifax Mortg. Servs. LLC*, No. 14 Civ. 3728, 2015 WL 9462087, at *4 (D.N.J. Dec. 28, 2015) (severing a case into two parts and transferring each to a forum with personal jurisdiction); *see also Does 1-144 v. Chiquita Brands Int'l, Inc.*, 285 F. Supp. 3d 228, 238-39 (D.D.C. 2018) (severing a case into three parts and transferring each under 28 U.S.C. § 1631 to a forum with personal jurisdiction).

[16] Remarkably, Amazon has claimed in the Washington State litigation that Mr. Nelson is "losing the EDVA Lawsuit" and that this Court "has already issued rulings on the merits of Amazon's claims."  Dkt. 243-1 at 6, 24.  Neither statement is true.  *See* Dkt. 245 at 1-2, 8-9, 14-15 (explaining that a preliminary injunction ruling is neither law of the case nor a ruling on the merits).

*Parus Holdings Inc. v. LG Elecs. Inc.*, No. 19 Civ. 432, 2020 WL 4905809, at *7 (W.D. Tex. Aug. 20, 2020).   Whatever efficiency interests do exist, they do not overwhelmingly outweigh "the strong public interest in upholding" the forum-selection clauses.   *Howmedica*, 867 F.3d at 405.   In fact, "considerations of judicial economy alone" are not enough to defeat "a presumptively valid forum selection clause."   *WCC Cable, Inc. v. G4S Tech. LLC*, No. 17 Civ. 52, 2017 WL 6503142, at *17 (W.D. Va. Dec. 15, 2017) (alteration and quotation marks omitted); *see Atl. Marine*, 571 U.S. at 64.   That is why this Court and others have repeatedly transferred entire cases where only one defendant was bound by a forum-selection clause.   *See, e.g.*, *Waterman v. Thor Motor Coach, Inc.*, No. 19 Civ. 890, 2020 WL 1290595, at *8 (E.D. Va. Mar. 18, 2020); *Clausen v. Burns & Wilcox, Ltd.*, No. 19 Civ. 605, 2020 WL 2425671, at *4 (M.D. Fla. May 12, 2020).

Amazon claims that Mr. Nelson's pursuit of Washington-based claims in Washington state court weighs against transfer, but again offers no supporting authority.   Opp. 29.   That is unsurprising.   The Supreme Court held decades ago that state and federal courts have "concurrent jurisdiction," and neither can "prevent [a] party from simultaneously pursuing claims in both courts."   *Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 295 (1970).[17]

Ultimately, there can be no doubt that the claims against Mr. Nelson (and Mr. Kirschner) are properly adjudicated in Washington.   To the extent this Court finds that claims against other Defendants may be more efficiently retained, the Court should still sever and transfer the claims

---

[17] Amazon also mischaracterizes Mr. Nelson's claims, which do not ask "the state court to usurp this Court's role in deciding forum and choice of law."   Opp. 2.   Instead, Mr. Nelson seeks a declaration regarding the enforceability of the non-competition clause in Mr. Nelson's employment agreement, damages for breach of a Washington statute that requires enforcement of non-competition clauses against Washington employees in Washington, and damages for breach of the venue clause in Mr. Nelson's employment agreement.   Dkt. 196-1.   Adjudication of those claims in Washington can occur independently of the federal court's resolution of this case. *Atl. Coast Line*, 398 U.S. at 295.

against Mr. Nelson (and Mr. Kirschner).   Mot. 25-26.   In response, Amazon again argues inefficiency, but it vastly overstates the problem.   Opp. 29-30.   It ignores *Howmedica*'s instruction to "tak[e] into account case management techniques that can reduce inefficiencies accompanying severance."  867 F.3d at 405.   In today's world of video proceedings and other technology, much of the redundancy in parallel litigation can be avoided.   As the Fifth Circuit noted, "careful pre-trial management will allow the district courts to sever and transfer the contracting litigant while minimizing prejudice to the remaining parties."  *Rolls Royce*, 775 F.3d at 683.   Amazon offers no reason why such management cannot be deployed here.

Amazon similarly fails to grasp that judicial economy is not an end to be pursued to the exclusion of all others.[18]   *Atlantic Marine* requires courts to subordinate efficiency concerns to the higher public interest of enforcing contractual obligations.   The court may "'not disrupt the parties' settled expectations' embodied in forum-selection clause except when other factors '*overwhelmingly*' weigh against enforcing the clauses."  *Howmedica*, 867 F.3d at 409 (ellipses omitted, emphasis added).   Enforcement of contractual obligations (including forum-selection clauses) is undoubtedly an important value that merits tolerating some inefficiency—particularly here, where the corporation seeking to evade its standard employment contract has more employees than many countries have citizens.[19]   With far less at stake, courts across the country have severed and transferred claims against parties who bargained for a specific forum.   *See*

---

[18]  Our judicial system often subordinates efficiency to other values.   Congress permits inefficiency in the patent context by allowing parties to initiate parallel proceedings before the Patent and Trademark Office and in district court.   *See* 35 U.S.C. § 311.   Federal review of state prisoners' habeas petitions is another glaring example of efficiency taking a backseat to higher values.   *See* 28 U.S.C. § 2254.

[19]  *See, e.g.*, *Chambers Dev. Co. v. Passaic Cty. Utils. Auth.*, 62 F.3d 582, 589 (3d Cir. 1995) ("The sanctity of a contract is a fundamental concept of our entire legal structure."); *see also First Am. Title Ins. Co. v. First Alliance Title, Inc.*, 718 F. Supp. 2d 669, 674 (E.D. Va. 2010) (similar).

*Howmedica*, 867 F.3d at 409; *Rolls Royce*, 775 F.3d at 683; *Transp. Sys.*, 2018 WL 5043726, at

*5; *Carmouche*, 2014 WL 2740464, at *7; *1-Stop*, 2014 WL 279669, at *6-8.  If necessary to

enforce Amazon's agreement, this Court should do the same.

## CONCLUSION

The Court should thus grant the motion to transfer, or sever and transfer the claims

against Mr. Nelson.

Dated:  December 4, 2020                                 Respectfully submitted,

                                                        _____/s/_____
                                                        Eric R. Nitz (Va. Bar No. 82471)
                                                        MOLOLAMKEN LLP
                                                        The Watergate, Suite 500
                                                        600 New Hampshire Avenue, N.W.
                                                        Washington, D.C.  20037
                                                        (202) 556-2021 (telephone)
                                                        (202) 536-2021 (facsimile)
                                                        enitz@mololamken.com

                                                        Justin V. Shur (admitted *pro hac vice*)
                                                        Caleb Hayes-Deats (admitted *pro hac vice*)
                                                        Kenneth E. Notter III (admitted *pro hac vice*)
                                                        MOLOLAMKEN LLP
                                                        The Watergate, Suite 500
                                                        600 New Hampshire Avenue, N.W.
                                                        Washington, D.C.  20037
                                                        (202) 556-2000 (telephone)
                                                        (202) 556-2001 (facsimile)
                                                        jshur@mololamken.com
                                                        chayes-deats@mololamken.com
                                                        knotter@mololamken.com

                                                        Jennifer E. Fischell (admitted *pro hac vice*)
                                                        MOLOLAMKEN LLP
                                                        430 Park Avenue
                                                        New York, New York  10022
                                                        (212) 607-8174 (telephone)
                                                        (212) 607-8161 (facsimile)
                                                        jfischell@mololamken.com

                                                        *Counsel for Defendants Carleton Nelson*
                                                        *and Cheshire Ventures LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on December 4, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system.  On December 4, 2020, I will further cause the document and a notification of such filing (NEF) to be sent to the following parties by email or mail:

Travis Stuart Andrews (Va. Bar No. 90520)
Luke Michael Sullivan (Va. Bar No. 92553)
Elizabeth P. Papez
Patrick F. Stokes
Claudia M. Barrett
GIBSON DUNN & CRUTCHER LLP
tandrews@gibsondunn.com
lsullivan@gibsondunn.com
epapez@gibsondunn.com
pstokes@gibsondunn.com
cbarrett@gibsondunn.com

*Counsel for Plaintiffs*

Jeffrey R. Hamlin (Va. Bar No. 46932)
George R. Calhoun
James Trusty
IFRAH PLLC
jhamlin@ifrahlaw.com
george@ifrahlaw.com
jtrusty@ifrahlaw.com

*Counsel for Defendants Brian Watson and WDC Holdings LLC, Sterling NCP FF, LLC, Manassas NCP FF, LLC, and NSIPI Administrative Manager*

Casey Kirschner
635 N. Alvarado Lane
Plymouth, MN 55447
casey.kirschner@gmail.com

*Pro se*

Dated:  December 4, 2020

_____/s/_____
Eric R. Nitz (Va. Bar No. 82471)
MOLOLAMKEN LLP
The Watergate, Suite 500
600 New Hampshire Avenue, N.W.
Washington, D.C.  20037
(202) 556-2021 (telephone)
(202) 536-2021 (facsimile)
enitz@mololamken.com

*Counsel for Defendants Carleton Nelson and Cheshire Ventures LLC*