# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | |
|---|---|
| **AMAZON.COM, INC., et al.** | |
| **Plaintiffs,** | |
| **v.** | **CIVIL ACTION No. 1:20cv484** |
| **WDC HOLDINGS LLC., et al.,** | |
| **Defendants.** | |

**REPLY IN SUPPORT OF DEFENDANTS BRIAN WATSON, WDC HOLDINGS LLCS, STERLING NCP FF, LLC, MANASSAS NCP FF, LLC, AND NSIPI ADMINISTRATIVE MANAGER'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**

# <u>TABLE OF CONTENTS</u>

I.    The RICO Claim Remains Legally Deficient .......................................................... 1

  A.  Brian Watson Cannot Be Considered a RICO Conspirator. ................................. 1

  B.  This Circuit's Discouragement of Single Victim Racketeering Claims Continues to Warrant Dismissal of the RICO Claims.......................................................... 2

  C.  Amazon's "Hub and Spoke" RICO Conspiracy Lacks Continuity and Connectivity Between the Participants.......................................................... 4

II.   Amazon's Antitrust Claim Has No Merit ........................................................... 8

III.  Amazon's State Law Claims Also Fail ............................................................... 9

  A.  Amazon Has Not Established a Claim for Unjust Enrichment............................ 9

  B.  Amazon Has Not Alleged a Detinue Claim .................................................... 10

  C.  Amazon has Not Properly Alleged a Conversion Claim ................................. 12

  D.  Amazon Has Not Stated a Claim for Agency and Respondeat Superior .......................... 13

  E.  Amazon Cannot Save its Fraud Claims. ........................................................ 15

  F.  Amazon Has Not Properly Alleged a Breach of Contract ................................. 16

  G.  Amazon Has Not Properly Alleged a Tortious Interference Claim................................. 18

  H.  Amazon Has Not Alleged Damages Plausibly ................................................. 18

CONCLUSION.......................................................................................... 20

<u>**TABLE OF AUTHORITIES**</u>

**Cases**

*Brandenburg v. Seidel,*
  859 F.2d 1179 (4th Cir. 1988)..................................................................... 4

*Capital Lighting and Supply, LLC v. Wirtz,*
  Civil No. JKB-17-3765, 2018 WL 3970469 (D. Md. Aug. 20, 2018)..................... 5

*Carper v. Frost Oil Co.,*
  72 Colo. 345, 211 P. 370 (1922) ................................................................. 14

*Collie v. Becknell,*
  762 P.2d 727 (Colo. App. 1988) ................................................................. 14

*D.T. Vicars v. Atlantic Discount Co.,*
  140 S.E.2d 667 (Va. 1965) ....................................................................... 10

*Donaldson v. Primary Residential Mortg., Inc.,*
  Civil Action No. ELH-19-1175, 2020 WL 3184089 (D. Md. June 12, 2020).......... 5, 6, 7

*Foreign Mission Bd. of S. Baptist Convention v. Wade,*
  409 S.E.2d 144 (Va. 1991) ....................................................................... 16

*Frank Shop, Inc. v. Crown Cent. Petrol. Corp.,*
  564 S.E.2d 134 (Va. 2002)...................................................................... 9, 10

*FTC v. Lanier Law, LLC,*
  2015 WL 9302786 (M.D. Fla. Dec. 22, 2015) ............................................... 12

*FTC v. Vylah Tec LLC,*
  328 F. Supp. 3d 1326 (M.D. Fla. 2018) ....................................................... 12

*Hartzell Fan, Inc. v. Waco, Inc.,*
  256 Va. 294, 505 S.E.2d 196 (1998) .......................................................... 12

*In re Bogg's-Rice Co.,*
  66 F.2d 855 (4th Cir. 1933) ....................................................................... 8

*In Town Hotels Ltd. P'ship v. Marriott Int'l, Inc.,*
  246 F. Supp. 2d 469 (S.D.W. Va. 2003) ........................................................ 8

*James G. Davis Constr. Corp. v. FTJ, Inc.,*
  841 S.E.2d 642 (Va. 2020)......................................................................... 9

*Klaiber v. Freemason Assocs., Inc.,*
  587 S.E.2d 555 (Va. 2003)........................................................................ 19

*McConnell v. Servinsky Eng'g, PLLC,*
  22 F. Supp. 3d 610 (W.D. Va. 2014) .......................................................... 16

*Mich. Mut. Ins. Co. v. Smoot,*
  183 F. Supp. 2d 806 (E.D. Va. 2001) ........................................................... 9

*Morgan v. Bank of Waukegan,*
  804 F.2d 970 (7th Cir. 1986)....................................................................... 4

*Prospect Dev. Co. v. Bershader,*
  258 Va. 75, 515 S.E.2d 291 (1999)............................................................. 19

*Quick Serve Concepts, LLC v. Cedar Fair, L.P.,*
  83 Va. Cir. 59 (Va. Cir. Ct. 2011) ................................................................ 9

*Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.,*
  249 F. Supp. 2d 703 (D. Md. 2003) .............................................................. 9

## <u>TABLE OF AUTHORITIES</u>

*Sharma v. USA Int'l, Inc.*,
   851 F.3d 308 (4th Cir. 2017)...................................................................................... 19

*Simmons v. Miller*,
   544 S.E.2d. 666 (Va. 2001)....................................................................................... 12

*Stephen Jay Photography, Ltd. v. Olan Mills, Inc.*,
   903 F.2d 988 (4th Cir. 1990)....................................................................................... 8

*Stith v. Thorne*,
   488 F. Supp. 2d 534 (E.D. Va. 2007)....................................................................... 14

*United Leasing Corp. v. Thrift Ins. Corp.*,
   440 S.E.2d 902 (Va. 1994)........................................................................................ 13

*United States v. Pinson*,
   860 F.3d 152 (4th Cir. 2017)....................................................................................... 7

*Ward v. Ernst & Young*,
   435 S.E.2d 628 (Va. 1993)........................................................................................ 17

The core of Amazon's Complaint is a theory that the Defendants conspired to fraudulently induce Amazon into real estate development or purchase contracts. Amazon admits that its "claims . . . rest on Defendants' fraudulent inducement of Amazon approvals [of contract terms.]" Pls.' Opp. at 10. Yet Amazon has not brought a single fraudulent inducement claim and does not seek rescission of any contract. Instead, what Amazon seeks—at least as to the Watson Defendants— is to recover all the payments made to or from Northstar in connection with the development of those properties. In essence, Amazon is seeking to have the properties for which it bargained, but obtain the development for free or at a significantly reduced price, without regard to the benefit it received. The mishmash of claims asserted by Amazon is not supported by the law. Amazon's ever-shifting theories are inherently self-contradictory and unsupportable. Moreover, Amazon's claim of a RICO enterprise operating at its expense is legally deficient and, after the Second Amended Complaint's ("Complaint") collapsing of two "enterprises" into one, a fatally flawed basis for this Court's jurisdiction.

## I.    The RICO Claim Remains Legally Deficient

### A.    Brian Watson Cannot Be Considered a RICO Conspirator.

Sometimes a loose thread can ultimately destroy an entire sweater. In the Complaint, Amazon feverishly tries to patch up glaring holes in its RICO claim, but it has now fully established, through its own pleadings, that the White Peaks transaction is the loose thread that unravels the entire claim that Brian Watson is part of a criminal enterprise under RICO.

What Amazon desperately tries to avoid acknowledging is that its pleadings demonstrate that the White Peaks Transaction, to the extent it involved criminal activity, was literally at the expense of Northstar, Brian Watson's commercial real estate entity. Look no further than paragraphs 304 and 305 of the Complaint for specific acknowledgment that Watson was a victim of the White Peaks transaction, the polar opposite of a co-conspirator.

1

Recognizing the obvious implausibility of the White Peaks RICO conspiracy allegations, Amazon fishes for a technical hook that grudgingly implies that Watson was not part of the conspiracy, but his acceptance of a settlement check somehow transforms him from a victim of Ramstetter and Camenson into their co-conspirator:

> Moreover, even if Ramstetter and Camenson initially attempted to conduct a separate deal without Watson's involvement, their subsequent agreement to split the proceeds of the sale with Watson (out of their share, not the share already promised to Nelson and Kirschner) and to conceal this from Amazon brought the White Peaks Purchase squarely within the Enterprise.

Pls.' Opp. at 21 (Dkt. 219).

The absurd characterization of a "subsequent agreement to split the proceeds" is fully betrayed by the indisputable fact that Watson *fired* Ramstetter and Camenson for their theft of a Northstar business opportunity,[1] and the settlement payment they conceded to him was pursuant to mediation and under a standard non-disclosure agreement. To pretend that Watson's firing of these employees and subsequent settlement on the brink of litigation is some elaborate conspiratorial ploy is ludicrous. Amazon has grafted its original deficiency in the "White Peaks Conspiracy" into a legally deficient single count, and this reason alone is sufficient to dismiss the RICO-based claims.

### B.   This Circuit's Discouragement of Single Victim Racketeering Claims Continues to Warrant Dismissal of the RICO Claims.

Amazon's effort to downplay the limited nature of its RICO contention is equal parts transparent and ineffective in the Complaint. Most directly, the plaintiffs' response now specifically cites four paragraphs within the Complaint as a basis for claiming the "Enterprise"

---

[1] Amazon quibbles over how quickly Watson fired his employees, but its papers fully acknowledge the lack of conspiratorial connection between Watson and the White Peaks dealers.

had multiple victims. *See* Compl. ¶¶ 4, 270, 370, and 416 (Dkt. 150). Closer examination of those paragraphs reveals they are woefully insufficient to establish victim status. Paragraph 4 simply announces that the originally distinct RICO claims have been collapsed into one. Paragraph 270 wistfully includes an effort to categorize IPI as a "victim," by positing, "to the extent that IPI or others absorbed these [kickback] costs, they are additional victims of the RICO Enterprise," without further explanation or itemization. Paragraph 370 never mentions other victims, instead just making legal argument that the defendants constituted an open-continuity enterprise, and Paragraph 416 tries to allege "common victims" by simply referring to "Amazon, IPI, and their affiliates, partners and investors." It apparently took an additional 146 paragraphs to graduate IPI from a fleeting (and necessarily equivocal) inclusion to presumed victim status. Considering IPI remains a primary beneficiary of the non-rescinded lease agreements with Amazon, it should be no surprise that Watson has initiated litigation against IPI for its opportunistic and premature exclusion of Watson from the data center leasing operations.

But ultimately, the passing suggestion of "other victims" is not simply a throw-away deficiency in the Complaint but a tacit acknowledgment that the plaintiffs are pushing for acceptance of a one-victim RICO allegation in a Circuit that regularly frowns upon such expansion of RICO's intended purview. The plaintiffs continuously harken back to earlier stages in the litigation, citing this Court's ruling on the Motion for Stay of Preliminary Injunction (Dkt. 137) in an effort to preclude an assessment of their RICO claim's evolution, the now indisputable failure to tie Watson to the White Peaks transaction, and this Court's general willingness to continue to

analyze the facts, case law, and pleadings that accompany this hotly-contested portion of the plaintiff's case.

Amazon's chief strategy appears to be reminding the Court repeatedly of how it ruled on the Preliminary Injunction and of the existence of a criminal investigation. Amazon's repetitive drumbeat hits strongest at the weakest part of its arguments as if an investigation could serve as substantive evidence or allegations to support a RICO claim. *See* Pls.' Opp, at 25 (making comments such as "as the ongoing parallel criminal investigation in this District amply underscores . . . ."). As to the Court's prior preliminary injunction order, it is obviously true that the Court's assessment included a determination of the likelihood of eventual success on the merits, but a decision at that particular time has no binding effect on the Court's determinations now. In fact, this Court is dealing with a different legal framework and a Second Amended Complaint with notably differing allegations and in which Amazon desperately seeks to transform a fraud allegation into a RICO one.

### C. Amazon's "Hub and Spoke" RICO Conspiracy Lacks Continuity and Connectivity Between the Participants.

Amazon now waivers back and forth between whether their alleged enterprise is of open or close-ended continuity, eventually offering a wan self-congratulation that "Amazon has plausibly alleged both closed- and open-ended continuity sufficient to show a pattern of racketeering activity." Pls.' Opp. at 24. Our initial motion to dismiss and that of the codefendants addressed RICO continuity: "[f]actors relevant to this inquiry include the number and variety of predicate acts and the length of time over which they were committed, the number of putative victims, the presence of separate schemes, and the potential for multiple distinct injuries." *Brandenbur*g *v. Seidel*, 859 F.2d 1179, 1185 (4th Cir. 1988) (citing *Morgan v. Bank of Waukegan*, 804 F.2d 970, 975 (7th Cir. 1986)). It appears that the difficulty in arguing every prong

of this analysis has reduced Amazon to pointing at *Capital Lighting* and suggesting the allegations in that case and this one bear similarities.

An examination of the ruling in *Capital Lighting* underscores Amazon's cherry-picking approach to a case full of pitfalls in the current context. While a single victim enterprise is not to be *per se* dismissed, it remains an important factor in the motion-to-dismiss setting. The court in *Capital Lighting* broke no new ground in taking a broader look at the allegations, but Amazon conveniently omits that the Court consistently pointed to the existence of multiple, evolving schemes as a key part of the analysis. Counts 1 and 4 in that case were deemed sufficient because the same participants engaged in multiple, evolving schemes over a four-year period. *See Capital Lighting and Supply, LLC v. Wirtz*, Civil No. JKB-17-3765, 2018 WL 3970469, at *7 (D. Md. Aug. 20, 2018) (unpublished). The Court noted the "Complaint alleges a host of schemes that evolved over time to increase the Defendants' returns and to avoid detection." *Id.* Conversely, in Counts 2 and 5, the Court found that eight transactions over a one-year period constituted a "single, narrow scheme," and thus a "garden variety fraud," subjecting those counts to dismissal. *Id.* at *9–10.

Amazon's claim is considerably more akin to that advanced in *Donaldson v. Primary Residential Mortg., Inc.*, Civil Action No. ELH-19-1175, 2020 WL 3184089 (D. Md. June 12, 2020) (slip op.) than those that survived dismissal in *Capital Lighting*. In *Donaldson*, the plaintiffs alleged a kickback scheme in which lenders referred clients to a title company for inflated services. *Id.* at *1. The high fees were financed by the lender and included the eventual kickback component. *Id.* At times, the payments were filtered through third party entities, operating as shell companies. *Id.* The conduct spanned at least five years, *id.*, with multiple victims, and connections to multiple states, *id.* at *1–6. The RICO claim was dismissed on a Rule 12(b)(6) motion for reasons that apply

even more forcefully in this case's single scheme, single victim, limited scope, kitchen-sink enterprise allegation. *See id.* at *26.

In the Complaint, the plaintiffs tried to address the significant frailty of a single victim RICO claim by claiming that there were other acts and victims that connected to the Transaction Manager ("TM") defendants. In addition, the plaintiffs collapsed their initial claim of two RICO bases (leases and the White Peaks purchase) into one, hoping to bolster the notion of a pattern of racketeering activity. Both maneuvers, however, simply underscore the fundamental flaws in Plaintiffs' push for treble damages.

Adding alleged "victims" of "other schemes" was an effort to show continuity but also an effort to beef up the notion of a hub-and-spoke conspiracy emanating from the TM defendants to a variety of other corrupt actors associated with additional transactions. The court in *Donaldson* described hub and spoke conspiracies aptly:

> Defendant is correct that the essence of the enterprise alleged in the Complaint is inescapably one of the "hub and spoke" variety, in which the mortgage lenders (here, the spokes), comprise an association in fact with All Star (the hub). *See Dickson v. Microsoft Corp.*, 309 F.3d 193, 203 (4th Cir. 2002) ("A rimless wheel conspiracy is one in which various defendants enter into separate agreements with a common defendant, but where the defendants have no connection with one another, other than the common defendant's involvement in each transaction.").

*Id*. But here, as in *Donaldson*, the Complaint provides no basis for believing the spokes are in any way connected to each other.[2] In *Donaldson*, the RICO dismissal was accompanied by the Court's clear assessment that routine "bilateral" transactions are not the stuff of civil RICO claims:

> Significantly, the Complaint is devoid of facts connecting the spokes. In other words, the Complaint is bereft of allegations

---

[2] In addition to the threadbare attempt to connect Watson to the White Peaks transaction, the Complaint alleges a Blueridge Transaction, which alleges upon "information and belief" a kickback scheme that has no connection whatsoever to Watson. *See* Compl. ¶¶ 315–26.

suggesting that the participating mortgage lenders were working together in furtherance of the scheme or, indeed, that they were even aware of each other's existence. *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 374 (3d Cir. 2010) (noting that an asserted hub and spoke conspiracy without a rim was "fatally defective").

\* \* \*

Accordingly, I conclude that plaintiffs have failed plausibly to allege a RICO enterprise."

*Id.*

Amazon is unable to characterize the "rim" connecting the Northstar Defendants, the White Peaks Defendants, the participants in the Blueridge transaction.  Each group engaged in distinct transactions, with different structures, for their own profit, as opposed to somehow benefitting the entire "enterprise." This absence of a common purpose or connection between the conspiracy's rim is a fundamental flaw in the Complaint. As made clear in *United States v. Pinson*, 860 F.3d 152 (4th Cir. 2017), the Fourth Circuit rejects RICO claims where, where "any fruits of these ventures accrue[ ] only to members of each venture" and do "not carry over to the members of the other ventures."  *Id.* at 162. In other words, the bilateral transactions with a common victim have no financial benefit for the alleged organization as a whole.

Amazon continues to bounce between over-simplification and over-complication of this case. If their allegations are to be believed, they can be easily boiled down to a claim that Amazon insiders manipulated the data center contracting process to the benefit of a bribe-paying real estate developer. Pointing out that these were expensive transactions with thousands of pages of contractual or developmental documents as well as payments going through shell companies does not suddenly elevate this case to a RICO matter.

## II.      Amazon's Antitrust Claim Has No Merit

In its Complaint, Amazon raised a new antitrust claim.  After the Defendants highlighted the authority that the Fourth Circuit does not recognize antitrust liability in this context, Amazon ignores that authority and asks that the Court adopt Amazon's own reading of the statute as better than that of the many Circuit Courts of Appeal, including the Fourth Circuit, that have considered the issue.  Pl. Opp. at 42–43.  Of course, this Circuit has held that unambiguous statutes do not subject themselves to such a creative use of statutory construction concepts as "[t]he rules of interpretation are resorted to for the purpose of resolving ambiguity, not for the purpose of creating it," *In re Bogg's-Rice Co.,* 66 F.2d 855, 858 (4th Cir. 1933). The Robinson-Patman Act does not apply, and the claim should be dismissed.

Amazon's antitrust injury argument is similarly lacking.  Amazon's Complaint does not allege any antitrust injury.  Indeed, it fails to allege any cognizable theory of damages at all. Amazon seemingly recognizes this and contends that it need not allege antitrust injury, citing a district court case from Maryland that has not been adopted by any other court.  Pls.' Opp. at 44. But as the other cases it cites hold, antitrust standing is a necessary element that must be pled.

> Regardless of whether the defendant has violated section 2(c), however, the question remains whether the plaintiff has standing to bring suit for that violation. The Supreme Court has made clear that even in the case of per se antitrust violations, where the plaintiff need not prove actual harm to competition as an element of the substantive violation, the plaintiff still must prove that its injury was of the type the antitrust laws were intended to prevent.

*In Town Hotels Ltd. P'ship v. Marriott Int'l, Inc.*, 246 F. Supp. 2d 469, 473–75 (S.D.W. Va. 2003). Antitrust injury under the Robinson-Patman Act must still cross "the seller-buyer line." *Id.* at 479 (quoting *Stephen Jay Photography, Ltd. v. Olan Mills, Inc.,* 903 F.2d 988 (4th Cir. 1990)).[3]  In

---

[3] *Town Hotels* itself concerned the purchase of goods and supplies for a hotel. *Id.* at 480.

other words, § 2(c) applies only in the contest of the sale of goods.  Amazon has not established

that the Robinson-Patman Act applies and has not shown any antitrust injury to support standing.

## III.    Amazon's State Law Claims Also Fail

### A.    Amazon Has Not Established a Claim for Unjust Enrichment

Amazon doubles down on its claim that its unjust-enrichment claim is viable, arguing that

its contract claims do not bar it because it can plead in the alternative.  While Amazon may indeed

plead in the alternative, doing so does not save its claim if its allegations preclude an unjust

enrichment theory as they do here.  Here, Amazon's unjust enrichment claim fails as a matter of

law because it does not allege any unjust enrichment, any payments from Amazon to the Watson

Defendants, or any payments to third parties that were not pursuant to contracts.  Moreover,

Amazon does not seek to rescind or otherwise invalidate any of the contracts at issue.  As such,

unjust enrichment will not lie under controlling Virginia law.  *See, e.g., James G. Davis Constr.*

*Corp. v. FTJ, Inc.*, 841 S.E.2d 642, 647–48 (Va. 2020).

Amazon now concedes that it has not paid anything to the Watson Defendants.  Despite

that concession, Amazon does not even attempt to distinguish *Sensormatic* or the other cases cited

by the Defendants.  But as that court reasoned, unjust enrichment is not applicable where plaintiff

seeks fees paid to a defendant by others. *See Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.*,

249 F. Supp. 2d 703, 708–09 (D. Md. 2003); *Mich. Mut. Ins. Co. v. Smoot*, 183 F. Supp. 2d 806

(E.D. Va. 2001) (no unjust enrichment where defendant paid by third party).  As such, the unjust

enrichment claim fails.

Amazon attempts to evade this failure by arguing that it is seeking disgorgement rather

than actual damages.  *See* Pls.' Opp. at 47 (citing *Quick Serve Concepts, LLC v. Cedar Fair, L.P.*,

83 Va. Cir. 59 (2011) (citing *Frank Shop, Inc. v. Crown Cent. Petrol. Corp.*, 564 S.E.2d 134, 139

(Va. 2002))).  But the court in *Quick Serve Concepts* expressly rejected disgorgement as a remedy,

stating "[t]he measure of damages in unjust enrichment actions is the value of the benefit which accrued to the defendant."  The *Frank Shop, Inc.* case cited by Amazon considered only whether disgorgement could be a remedy under the Virginia Petroleum Products Franchise Act.  *See Frank Shop, Inc.,* 564 S.E.2d at 139.  Moreover, Amazon's bald contention that it "has identified specific profits from the Lease Transactions and Direct Purchase Transactions that constitute the benefit for these claims" (Pls.' Opp. at 47) is not found in the Complaint.  Amazon alleges only that it has identified a spreadsheet that lists certain sums in connection with certain projects.  *Id.*  Amazon has not alleged any funds paid by Amazon or received by any Defendant.  That Amazon now describes that spreadsheet as identifying profits does not make it so.  Not only does the spreadsheet not reflect profits, it does not even represent existing facts.  The spreadsheet specifically references events that have not taken place, yet Amazon contends that funds referenced in connection with those future, never-to-occur events somehow represent Defendants' profits.  It is nonsensical.

### B.   Amazon Has Not Alleged a Detinue Claim

Amazon correctly states that detinue applies to the unlawful detention of personal property.  Amazon concedes that "[t]he plaintiff must merely allege that it owns the chattel and that the defendant unlawfully withholds it."  Pls.' Opp. at 48.  Although Amazon attempts for pages to distinguish the authority and undisputed facts that Defendants rely upon in their motions, Amazon never actually addresses its own shortened version of the standard.[4]  Amazon has not identified any chattel that it claims to own that any Defendant has wrongly detained.  Instead, it has now effectively conceded that it has not paid anything to the Watson Defendants.  Amazon further does

---

[4] The elements of a detinue action are: (1) plaintiff must have a property interest in the thing sought to be recovered; (2) the right to immediate possession; (3) the property is capable of identification; (4) the property must be of some value; and (5) defendant must have had possession prior to the institution of the case. *D.T. Vicars v. Atlantic Discount Co.*, 140 S.E.2d 667, 670 (Va. 1965).  For prejudgment attachment, Amazon also must allege property in Virginia, which it has not done.

not dispute, and as the contracts attached to the Complaint show, Amazon's only payments were rent payments paid after the properties were developed.  Any funds paid to the Watson Defendants were paid from the project joint ventures and in almost all cases came from loan or investment proceeds in connection with property development. Amazon cannot, therefore, identify any of *its* specific personal property that the Watson Defendants are alleged to have wrongfully detained.[5] It thus fails the first element of the standard.

In its effort to identify the subject of its detinue claim, Amazon bizarrely contends that Defendants have conceded that it has stated a claim for at least $16.25 million.  Pls.' Opp. at 50. Not so.  Amazon's allegation is nothing but a bald contention that it is entitled to $16.25 million. It does not allege a property interest in those funds.  It does not identify when or to whom they were paid or how else it could identify them.  Virginia detinue law requires more, especially as Amazon is seeking a detinue remedy over funds.  While numerous authorities state that money is typically not a proper subject of detinue (*see* Mot. at 18), that is especially so where the plaintiff cannot even state what amount of money it claims to have been wrongfully detained.

Amazon further contends that it is implausible that any payment made by Northstar came from its own earnings. Pls.' Opp. at 50.  Amazon contends that the only net source of revenue was Amazon's lease payments.  *Id.*  This reflects a basic misunderstanding of real estate development. There is no dispute that Amazon signed contracts that provided for the development of various data center properties.  Northstar's affiliates entered into agreements with IPI for the development

---

[5] Whether Amazon believes it might have reimbursed such payments in the future as part of rent payments is irrelevant.  A detinue claim requires identification of plaintiffs' property in the possession of defendant.  Amazon contends that its ratified contracts don't matter because it did not agree to the use of lease payments for kickbacks, but detinue pertains only to the wrongful detention of a plaintiffs' property, not every imaginable wrong.  Payments paid pursuant to a third-party contract may be disputed, but they are not "unlawfully held."

of those properties and it is undisputed that those contracts provided for various fees and payments. It is further undisputed that the development partners obtained construction loans and third-party investors. The fees that Amazon claims must have been paid from its rent were in fact paid from those funds. Indeed, the settlement statements referenced by Amazon show that some of these fees were paid at closing on the real property purchase, long before Amazon had ever paid a dime.

### C.    Amazon has Not Properly Alleged a Conversion Claim

Amazon wrongly contends that the Watson Defendants somehow conceded that money can be the subject of a conversion proceeding. In doing so, they cite to a demand made pre-litigation, which proves nothing but the fact that the Watson Defendants were not in a conspiracy with Ramstetter. Pls.' Opp. at 52 (quoting language concerning usurpation of corporate opportunity). Amazon also contends that it need not identify specific converted funds because it is seeking "monetary equitable relief like disgorgement." Pls.' Opp. at 53 n.20.[6] That remarkable admission should suffice to dismiss the conversion claim. If what Amazon seeks is disgorgement, conversion is not the method to achieve that result. Conversion seeks the return of identifiable property. It is not a vehicle for an equitable disgorgement claim, to the extent such relief is available at all.

Amazon contends that it need not show that a Defendant holds allegedly converted property wrongfully. Pls.' Opp. at 52. But that is exactly what it must allege.[7] Defendants correctly argued that Amazon's own documents show that its only payments were made to third-parties pursuant to

---

[6] Amazon cites *FTC v. Vylah Tec LLC*, 328 F. Supp. 3d 1326, 1331 (M.D. Fla. 2018) (quoting *FTC v. Lanier Law, LLC*, 2015 WL 9302786, at *2 (M.D. Fla. Dec. 22, 2015)), which was not a conversion case but a civil action by the FTC against a defendant under the Federal Trade Commission Act, which specifically provides for both injunctive relief and disgorgement.

[7] A person is liable for conversion for *the wrongful exercise or assumption of authority* over another's goods. *See Simmons v. Miller*, 544 S.E.2d. 666, 679 (Va. 2001) (emphasis added) (citing *Hartzell Fan, Inc. v. Waco, Inc*., 505 S.E.2d 196, 201 (Va. 1998)). Amazon cites a handful of cases where conversion was allowed against indirect transferees of the plaintiff, but here, Amazon never alleges an initial transfer that could support such an argument.

ratified contracts.  Amazon cannot escape that fact.  Similarly, Amazon does not dispute that the payments made to Northstar on the Lease Transactions were all pursuant to valid contracts.  There simply is no viable argument that Northstar held any such funds wrongfully.  *See, e.g., United Leasing Corp. v. Thrift Ins. Corp.*, 440 S.E.2d 902, 906 (Va. 1994) ("An action for conversion can be maintained only by one who has a property interest in and is entitled to the immediate possession of the thing alleged to have been wrongfully converted").  Moreover, the property right asserted by the plaintiff must be "clear, definite, undisputed, and obvious."  *Id.* Where the property subject to an alleged conversion is a subject to adjudication of other claims, as here, Virginia law mandates dismissal of a conversion claim.  *Id.*

Moreover, in its opposition, Amazon focuses only on the White Peaks transaction. *Id.* There too, however, Amazon had full knowledge of the increase in price before it signed or consummated its purchase agreement.  That fact is shown indisputably in the contracts themselves.  The Watson Defendants cannot be liable for conversion because they settled a dispute with Ramstetter after Amazon made a payment on a contract to a third party.

### D.    Amazon Has Not Stated a Claim for Agency and Respondeat Superior

Amazon contends that Camenson and Ramstetter were acting within the scope of their employment when they undertook actions that even Amazon admits were done without Watson's or Northstar's knowledge.  Essentially, Amazon's argument is that the Watson Defendants are liable for Camenson's and Ramstetter's alleged conduct because they allegedly used a Northstar email for certain communications. But Amazon expressly alleges that those Defendants entered into the White Peaks transaction for their own benefit using a non-Northstar affiliated corporate form. *See, e.g.,* Compl. ¶¶ 296, 304-305.   There is no plausible inference, however, that they were acting within the scope of their employment.  Indeed, Amazon acknowledges that they were fired after Northstar learned of the transaction at issue.  Compl. ¶ 309, Ex. 61.  Indeed, as discussed

above, the Complaint in no way connects the actions of Camenson and Ramstetter with Northstar for enterprise or respondeat superior purposes.

Amazon contends that Camenson and Ramstetter acted within the scope of their employment because, "rather than report the fraudulent White Peaks sale to Amazon, the Northstar Defendants extorted a cut of the proceeds on the ground that the sale converted a "corporate opportunity" that belonged to Northstar." Pls.' Opp. at 55.  Northstar agrees that the White Peaks transaction *would have been* within the scope of their employment had they brought that opportunity to Northstar and the deal been processed as a normal Northstar transaction.   But that is neither what happened nor what is alleged.   While Amazon uses incendiary language like "extortion," it is undisputed that Watson confronted Camenson and Ramstetter for usurping a corporate opportunity and fired them.   Compl. ¶ 309.   That they also entered into a mediated settlement agreement does not make that transaction extortionate or wrongful.   *Id.* at Ex. 61.   The allegation that Northstar charged its former employees with usurpation of a corporate opportunity precludes a finding of respondeat superior.[8]   Northstar did not accept the benefit of the transactions undertaken by its employees, it threatened to sue and fired its former employees for usurping corporate opportunities. *Cf. Stith v. Thorne,* 488 F. Supp. 2d 534, 552 (E.D. Va. 2007).   Under these facts, which are alleged in the Second Amended Complaint, Amazon cannot succeed on a respondeat superior claim, and it must be dismissed.

---

[8] Colorado recognizes breach of fiduciary duty claims based on the usurpation of corporate opportunities, including real estate transactions that might be pursued by the employer.  *See e.g., Collie v. Becknell,* 762 P.2d 727, 731 (Colo. App. 1988) (citing *Carper v. Frost Oil Co.*, 72 Colo. 345, 211 P. 370 (1922)).  Northstar's actions against its former employees were, in fact and as alleged, consistent with controlling state law.

### E.      Amazon Cannot Save its Fraud Claims.

Amazon's makes several arguments about its fraud claims while ignoring the actual allegations in its Complaint.  In an effort to comply with Rule 9, in what is now its fourth version of the Complaint, Amazon specifies the alleged misrepresentations.    Each alleged misrepresentation is a contractual provision in a lease or a form document attached to such lease.  *See*, *e.g.*, Compl. ¶ 467.   The Watson Defendants addressed each of these provisions in their Motion to Dismiss.  *See* Mot. at 20–23.  Amazon, however, does not address any of the Watson Defendants' arguments as to the alleged misrepresentations—effectively conceding them.  In its Opposition, Amazon argues only that "Watson and Northstar represented to Amazon that they would not pay any undisclosed fees and then did so surreptitiously."  Pls.' Opp. at 57.

Amazon does not dispute that it has ratified the contracts at issue.  Amazon further concedes that the lease budgets disclosed all the fees and costs involved in the transaction.  *Id.* at 58 n.23.  Its Complaint is not that it paid more than it expected to pay, but that some portion of those fees and costs were allegedly used to fund kickbacks.  *Id.*  But the alleged kickbacks are not the subject of its fraud claims as it now appears to contend.  Compl. ¶ 467.  The alleged fraud is violation of contractual provisions. The primary contractual provision upon which it relies, however, expressly provides that Amazon shall not have any obligation to pay "(3) real estate brokers' commissions . . . [or] (5) legal, accounting or professional fees . . . ." as operating expenses.  Compl., Ex. 24 at 5–6.  That says nothing as to whether Defendants used a broker, finder, or other referral source.  It simply provides that Amazon would not have to pay for any such expenses, which it indisputably did not.

Despite failing to argue that there was even a breach of the contract provisions upon which it bases its fraud claim, Amazon contends that the same facts can support a fraud and a breach of contract claim. Pls.' Opp. at 57.  To support this argument, Amazon relies on out-of-context

language which recognizes inapplicable exceptions to the rule that a fraud and breach of contract claim cannot coexist.  Amazon does not take issue with the proposition that Virginia requires that the "duty tortiously or negligently breached" by a party committing actual or constructive fraud "be a common law duty, not one existing between the parties solely by virtue of [a] contract." *Foreign Mission Bd. of S. Baptist Convention v. Wade*, 409 S.E.2d 144, 148 (Va. 1991).  Yet Amazon's claims here pertain to the breach of contractual provisions that allegedly prohibit Northstar from paying any finders fees to third parties.  *See* Compl. ¶ 467.  As such, the claims are barred by the controlling law.

Amazon also does not address the fact that the alleged misrepresentations were all made by its contract counterparties, none of which Amazon has sued.  So not only is Amazon attempting to build a fraud claim on the back of contractual provisions, but it is also doing so based on contracts to which the Defendants are not even parties.  The fraud claim must be dismissed.

### F.   Amazon Has Not Properly Alleged a Breach of Contract

Amazon's breach of contract claims fail for the same reason.  Amazon ignores the fact that it has not sued its contract counterparties.  It claims that "[t]he Defendants executed a variety of contracts with Amazon."  Pls.' Opp. at 58.  Despite this contention, it does not identify a single contract signed by a Watson Defendant in that person's own capacity.  Instead, it argues that "Watson signed lease agreements between Amazon and Northstar-affiliated landlord LLCs for the Virginia Lease Transaction sites . . . ." *Id.*  Amazon ignores that those "Northstar affiliated landlord LLCs" were separate corporate entities that Watson did not control.  Indeed, Amazon maintains those contracts to this day, and Northstar has no current connection with them.  Compl. ¶ 221. Virginia requires privity in breach of contract cases and in tort cases involving only economic loss. *See, McConnell v. Servinsky Eng'g, PLLC,* 22 F. Supp. 3d 610, 614 (W.D. Va. 2014) ("Because the law of contracts provides the sole remedy for economic loss under Virginia law, privity is an

indispensable requirement for a viable claim."); *Ward v. Ernst & Young*, 435 S.E.2d 628 (Va. 1993).  Because privity is absent, the breach of contract claims must be dismissed.

Amazon contends that the Watson Defendants' argument that they are not the contract counterparties is "disingenuous" because Watson signed the lease agreements.  Pls.' Opp. at 62. There is nothing disingenuous about insisting that Amazon allege a necessary element of its claim. Amazon does not contend that Watson signed the contracts in his personal capacity.  It further expressly contends that Northstar was removed from the contracts at issue, demonstrating the falsity of its contention that Watson controlled those entities.  Amazon would like to take the position that the landlords are Watson's alter ego, but also not to sue them.  That decision is inexplicable as those entities own the real estate that are the primary assets involved in this dispute. That Amazon has chosen not to sue those parties puts the lie to its contradictory allegations.

Finally, Amazon contends that it is not required to show damages, but only allege damages. To a certain extent that is true, but it must allege damages plausibly and those damages must result from the actions about which it claims.  Here, it has alleged damages in connection with a contract that it has assumed and as to which it is indisputably enjoying the benefits.  Further, it has conceded that the lease budgets disclosed all the fees and costs involved in the transaction. Pls.' Opp. at 5 n.23.  Despite these concessions, Amazon also has not argued that the lease contracts are above market.  Rather, its alleged damages are payments purportedly made by Northstar to former Amazon employees.  Those payments are not a proper measure of damages under any breach of contract theory.  *See infra*.  Rather than address the standard, Amazon's Complaint contains only a boilerplate statement that Amazon suffered "pecuniary harm." As such, Amazon has failed to allege plausibly a required element of breach of contract.

### G.     Amazon Has Not Properly Alleged a Tortious Interference Claim

As to the lease transactions, those contracts remain in place and Amazon makes no allegation that the Watson Defendants made any effort to interfere with them.  To the contrary, Amazon alleges that the Watson Defendants attempted to induce Amazon into entering those contracts.  It is nonsensical to allege that the Watson Defendants attempted to interfere with contracts from which they were benefiting.  Indeed, Amazon does not allege or argue that its contracts were breached or terminated.  As set forth in the Motion to Dismiss, that alone should dispose of the tortious interference claim as to the Watson Defendants.

For the first time in its opposition, Amazon alleges that the Watson Defendants interfered with the contracts of its employees.  That allegation simply does not exist in the Complaint.  Rather, the Complaint alleges only that "Plaintiffs entered into contractual relationships and/or business expectancies with the Northstar Defendants, their affiliates, and other partners as alleged herein." Compl. ¶ 480.  Because Amazon has not alleged a contract with which the Watson Defendants interfered, the tortious interference claim must be dismissed.

### H.     Amazon Has Not Alleged Damages Plausibly

Amazon asserts generically that it has been damaged by Defendants' alleged conduct, but does not make any plausible allegations in that regard, nor does it plead any damages with particularity (which it must as an element of its fraud and RICO claims, among others).  Amazon appears to believe that the controlling law is irrelevant, contending that "What matters is the allegation that all of the Defendants' gains on the transactions were unjust, because Amazon would never have approved them absent the kickback scheme."  Pls.' Opp. at 67.  Virginia law does not recognize that theory of damages.  If a plaintiff is damaged by a fraudulent inducement as Amazon alleges, it must choose to seek either rescission or damages.  If it seeks damages, "the damages are the delta between the value of the property at the time the contact was made and the value that the

property would have possessed if the statement had been true." *Klaiber v. Freemason Assocs., Inc.*, 587 S.E.2d 555, 558-59 (Va. 2003) (quoting *Prospect Dev. Co. v. Bershader,* 258 Va. 75, 91, 515 S.E.2d 291, 300 (1999). *See also*, *Sharma v. USA Int'l, Inc.*, 851 F.3d 308 (4th Cir. 2017) (citing *Prospect Dev. Co.* as supplying the rule for damages in Virginia).

In *Klaiber*, the Virginia Supreme Court observed that the plaintiff "*did not allege facts* to support a conclusion that the actual value of their condominium units at the time they purchased them was less than the value those units would have had absent the fraudulent acts of [defendants]" and thus affirmed judgment against the plaintiff. *Id.* (emphasis added). As in *Klaiber,* Amazon makes no such allegations in its claims, including fraud, breach of contract, RICO, and the like. If Amazon paid a market price for a property that it indisputably intends to keep, it has not been harmed by any secondary transaction that Northstar might have undertaken.

While Amazon makes generic statements that the White Peaks and Blueridge properties were at "inflated" prices, neither of those transactions involved the Watson Defendants and the Complaint contains no allegations to support that generic statement. Moreover, as to at least the White Peaks transaction, the alleged "inflated" price was apparent from the face of the contracts. Amazon cannot claim to have been misled or damaged by the performance of a contract that expressly disclosed the price increase involved in the so-called flip transaction. Similarly, although it makes a passing reference to "rent amounts inflated by kickback payments" Amazon never alleges that the rent charged to it was above market, which it must if it is to satisfy Virginia law. Indeed, Amazon makes not allegations at all concerning the value of the properties that it purchases or leased. Absent such allegations, it has failed to allege damages as required.

As to its detinue, conversion, and unjust enrichment claims, Amazon concedes that it did not actually pay any funds to the Watson Defendants. Rather, it contends that "[w]hether Amazon

directly or immediately funded the fraudulent and inflated deals is not the point" because, in Amazon's view, it might have funded some amount in the future.  But the law does not compensate a plaintiff for what might have happened.  Amazon is only entitled to damages that it suffers, and it has not alleged any.  If other, "innocent business partners were victims of Defendants' scheme" as Amazon now contends, it is incumbent on them to bring their own claims.  Amazon cannot do it for them.

Perhaps because it does not have a viable damages theory, Amazon continues to insist that it is entitled to disgorgement, citing only government-as-plaintiff cases and without responding to Defendants' arguments that disgorgement is not a remedy available in private plaintiff lawsuits. *See* Pls' Opp. at 66.  Each of the cases cited by Amazon to support its disgorgement claim is out of context and inapplicable.  Amazon never responds to the case law cited by the Watson Defendants which holds that disgorgement is not available to private, civil RICO claimants.  Nor, as discussed above, is such a remedy available under Virginia law for unjust enrichment claims. As much as Amazon would like to treat this case as if it were a U.S. Attorney, it is subject to the same rules as all other nongovernmental civil litigants.

## CONCLUSION

For the reasons discussed above, Amazon has failed to state a claim and the Court should dismiss the Complaint.

Respectfully submitted

/s/ Jeffrey R. Hamlin
Jeffrey R. Hamlin (Va. Bar No. 46932)
George R. Calhoun (pro hac vice)
James Trusty (pro hac vice)
IFRAH PLLC
1717 Pennsylvania Avenue NW
Suite 650
Washington, DC 20006-2004
(202) 524-4140 – Tel.
(202) 524-4141 – Fax
jhamlin@ifrahlaw.com
george@ifrahlaw.com
jtrusty@ifrahlaw.com

Stanley L. Garnett (pro hac vice)
Brownstein Hyatt Farber Schreck, LLP
410 Seventeenth Street
Denver, Colorado 80202-4432
(303) 223-1100 – Tel.
(303) 223-1111 – Fax
Sgarnett@bhfs.com

Gregory A. Brower (pro hac vice)
Brownstein Hyatt Farber Schreck, LLP
100 North City Parkway
Las Vegas, Nevada 89106-4614
(702) 382-2101 – Tel.
(702) 382-8135 – Fax
gbrower@bhfs.com

*Counsel for the Watson Defendants*