UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| **AMAZON.COM AND AMAZON DATA SERVICES, INC.,** ) | |
| ) | Civil Action |
| **Plaintiffs,** ) | No. 1:20-CV-484-LO-TCB |
| ) | |
| **v.** ) | November 20, 2020 |
| ) | 11:00 a.m. |
| **WDC HOLDINGS, et al.,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

*TRANSCRIPT OF MOTION HEARING PROCEEDINGS*
*(Via Zoom Conference)*
*BEFORE THE HONORABLE THERESA C. BUCHANAN,*
*UNITED STATES DISTRICT COURT MAGISTRATE JUDGE*


APPEARANCES:

For the Plaintiffs:     **Elizabeth Petrela Papez, Esq.**
Gibson Dunn & Crutcher LLP (DC)
1050 Connecticut Avenue, NW
Washington, DC 20036-5306
202-955-8500
Fax: 202-831-6055
Email: Epapez@gibsondunn.com

**Patrick Friel Stokes, Esq.**
Gibson Dunn & Crutcher LLP (DC)
1050 Connecticut Avenue, NW
Washington, DC 20036-5306
202-955-8500
Fax: 202-467-0539
Email: Pstokes@gibsondunn.com

**Claudia Maria Barrett, Esq.**
Gibson Dunn & Crutcher LLP (DC)
1050 Connecticut Avenue, NW
Washington, DC 20036-5306
202-955-8500
Email: Cbarrett@gibsondunn.com

APPEARANCES:  (Cont.)

For the Defendants:      **Eric Richard Nitz, Esq.**
                         MoloLamken LLP (DC)
                         600 New Hampshire Ave NW
                         Suite 660
                         Washington, DC 20037
                         202-556-2000
                         Fax: 202-556-2001
                         Email: Enitz@mololamken.com

                         **Caleb Hayes-Deats, Esq.**
                         MoloLamken LLP (DC)
                         600 New Hampshire Avenue, N.W.
                         Washington, D.C. 20037
                         202-556-2015
                         Email: Chayes-deats@mololamken.com

For the Intervenor:      **Kevin Bryan Bedell, Esq.**
                         1309 Capulet Court
                         McLean, VA 22102
                         703-963-6118
                         Email: Kbbedell@outlook.com

Court Reporter:          **Scott L. Wallace, RDR, RMR, CRR**
                         Official Court Reporter
                         United States District Court
                         401 Courthouse Square
                         Alexandria, VA 2231-5798
                         703.549.4626
                         scottwallace.edva@gmail.com

Proceedings reported by machine shorthand, transcript produced
by computer-aided transcription.

<u>**MORNING SESSION, NOVEMBER 20, 2020**</u>

1

2  (11:02 a.m.)

3        THE COURTROOM CLERK:  *Amazon.com, Inc., et al. versus WDC*

4  *WDC Holdings, et al.,* Case Number 20-cv-484.

5        Counsel, please note your appearances for the record.

6        THE COURT:  Who is here for Amazon today?  Is that

7  Ms. Papez?

8        MS. PAPEZ:  Yes.  Good morning, Your Honor.  Elizabeth

9  Papez from Gibson, Dunn & Crutcher, LLP for Amazon.

10       THE COURT:  Okay.  And then the respondent -- counsel for

11 the defendants?

12       MR. NITZ:  Good morning, Your Honor.  It's Eric Nitz from

13 MoloLamken for Defendant Carleton Nelson.  Joining me is Caleb

14 Deats, also from MoloLamken.

15       MR. DEATS:  Good morning, Your Honor.

16       THE COURT:  And who is here for the intervenor?

17       MR. BEDELL:  Good morning, Your Honor.  Kevin Bedell for

18 the author of the e-mail in question.

19       THE COURT:  Okay.  And is there anyone else that wants to

20 enter their appearance today?

21       MR. STOKES:  Your Honor, on bath of Amazon, Patrick Stokes

22 and Carla Barrett are joining Ms. Papez.

23       THE COURT:  All right.  I'm going to grant the motion

24 insofar as to intervene, and does counsel for the intervenor have

25 anything that you would like to add to the motion?

1          MR. BEDELL:  Yes, Your Honor, I do, and I appreciate both

2     you granting the motion and presumably reading the papers and

3     hearing from me.

4          THE COURT:  Yes.

5          MR. BEDELL:  Well, I assumed, but I try to get out of the

6     assumption business, because I know sometimes, particularly these

7     days, people don't have time to get things done what they would

8     normally do, and I knew you would read it, but I didn't want to

9     presume that you would have the opportunity to do so yet,

10    although I appreciate that.

11         And what I want to add -- the -- I thought it might be

12    helpful to go sort of to a little bit of the bigger picture and

13    take a step back to understand that.  As I read the reply, still

14    in the reply the movants have not cited any law that supports the

15    actual relief that they're requesting here.  What they've given

16    you, both in the original brief and in the reply, is a bunch of

17    cases where it talks about {indiscernible} that deal with

18    sealing, things that have been put under seal by the Court and

19    whether the public has a right to access them, and that's not the

20    situation we've got here, because at the moment the public can

21    see exactly the same thing that the Court can see, which is the

22    exhibit as it was filed by Amazon with parts blacked out.

23         What they are asking is to expand the judicial record, as

24    they describe it, by giving -- having -- requiring Amazon to

25    supplement its pleading, but then they're actually going to go

1  against all the caselaw they cite because that additional

2  supplementation is going to be kept from the public by being put

3  under seal, is their recommendation.  So that really doesn't get

4  to the situation we have here.  The situation we have here is

5  addressed by -- every circuit that I found that's addressed the

6  issue, and there are only three that haven't said what the

7  procedure is, and those haven't said anything one way or the

8  other -- of course, I didn't write it down in my notes; I think

9  it's 611 in D.C. -- are the three circuits that haven't spoke.

10 Everybody else has followed the procedure set out by the New

11 York -- the Second Circuit in the *Novak* case, and that includes

12 the Fourth Circuit in particular that followed which says that

13 you take the pleading with the information that's in it, and if

14 there's an argument -- if they have -- if the defendants have a

15 problem with what is in there and whether it's sufficient, then

16 their argument is to argue against the sufficiency; in this case,

17 to make the argument, well, they anonymized this, so the Court

18 should not give it any weight.  I -- They made the argument very

19 brief.  I'm sure they will spit it out more completely, but

20 that's what they're to do.

21      And, in fact, in some ways, when this issue came up -- at

22 one point I was a little surprised that it wasn't Amazon asking

23 to be able to file, because presumably they would want to be the

24 ones that would want to expand the argument and make sure -- and

25 give this more weight if they thought it was necessary, but they

```
1    haven't.  It's -- they make the argument, just basic Rule 12, you
2    make the argument based on what are in the four corners of the
3    complaint and what's in there.  And I think that really is the
4    end of the issue.  The other stuff that's come up -- there's a
5    lot of stuff that comes from around it, and the -- and I think
6    it's more to show this is not just a legal law review question,
7    but this is a practical question as well, which is that it --
8    there is potential harm if this is disclosed.
9         One thing I can add to that is, since I filed the
10   opposition, there's been an article in Denver in the Denver Press
11   that's come out that says Carleton Nelson is looking to uncloak
12   the mystery of the individual, and it's -- I can't -- I can't
13   completely malign defendant's counsel for something that a
14   reporter in Denver says, but someone at defendants' counsel spoke
15   to the reporter for the article, so that's -- it's part of a
16   pattern of intimidation, and I've given you the e-mail, the
17   e-mail that's attached that shows that at least some of the
18   defendants are capable of acting irrationally and impulsively,
19   and that's exactly what my client is concerned about.
20        Something else that's, perhaps, not covered in the papers
21   that I do think has some impact is -- you may also have to
22   consider the impact on the criminal proceeding that's -- You
23   know, there's reference certainly in -- Well, here's where my
24   newness to this comes out.  I don't know how much of the fact of
25   the criminal proceeding is in here.  I'm not incredibly knowledge
```

1    about that other than that there is one, but I think there's a

2    high likelihood that confidential informants in this case are

3    also confidential informants for the government.  And if you

4    reveal them in one, you're necessarily going to have to reveal

5    them in the other, or at least you're going to narrow the field

6    quite a bit.  And so I think that that also weighs against it.

7         I confess that nobody's given you any law specifically on

8    that, but I think that's commonsense that if you're starting to

9    reveal confidential informants, it's going to affect somewhere

10   else, and both of those go to the point, really, that there are,

11   in addition to what the law says in *Novak*, there are reasons for

12   following it, and they haven't given you any good reasons for not

13   following it, because, even when I looked at their argument for

14   how this could be relevant, which they didn't make until their

15   reply, to me it didn't make any sense.  And I tread carefully

16   here because, quite frankly, the complaint in this case is a bit

17   overwhelming, and I can't confess having read the hundreds of

18   pages of each version of it.  The same thing with the motion to

19   dismiss.  But the argument they make in the reply seems to be

20   that if a -- in its most basic form, "If a co-conspirator turns

21   informant, then the conspiracy ceases to exist because the

22   informant is not working toward the same purpose as the rest of

23   the co-conspirators."  They don't cite any caselaw for that, and

24   I think our commonsense tells us that that can't be the case

25   because then any conspiracy that was revealed by an informant

1    wouldn't be immune from prosecution, and we know that that's just

2    not true.  You know, people can conspire in some aspects and then

3    do other things that are outside of the conspiracy, and that

4    doesn't destroy the conspiracy.

5         And they haven't -- I don't see how that flows -- how

6    that -- how that gets us anywhere under the law.  So, that's

7    really all I have to add to what's there, unless you have

8    questions or something else comes up.

9         THE COURT:  Okay.  Thank you.  Let me hear from counsel

10   for the movant.

11        MR. DEATS:  Good morning, Your Honor.  Caleb Deats on

12   behalf of Carleton Nelson.  So, I want to respond to each thing

13   that Mr. Bedell said in turn, but I think the question is

14   actually somewhat different than the way he framed it.  It's what

15   authority did Amazon have to redact this information from the

16   exhibits in the complaint in the first place?  We challenge

17   Amazon and Mr. Bedell to identify any support for the proposition

18   that they can file a redacted exhibit, and they didn't.  They

19   haven't identified a single case that allows them to do so.  So

20   when Mr. Bedell says --

21        THE COURT:  When they file something publicly, they can

22   redact identifiers, and they should; they can redact personal

23   information.  I don't see any reason why they couldn't do it,

24   and, frankly, your position is more like a discovery motion to me

25   in terms of the factors to consider, rather than completing the

1   record, but let me go ahead and let you finish your argument.

2       MR. DEATS:  Sure, Your Honor, you're right.  Rule 5.2

3   specifically addresses redactions in a complaint, and it does not

4   say that you can redact people's names -- I'm sorry, it addresses

5   redactions from any judicial document whatsoever, and it doesn't

6   say you can redact names.

7       Rule 10(c) specifically says that an exhibit to a

8   complaint can be used for any purpose, and the Fourth Circuit has

9   made clear that that means that defendants can use it in support

10  of a motion to dismiss, and --

11      THE COURT:  Well, I'm having a hard time understanding,

12  the issue of whether they have the ability to redact aside, why

13  you need this person's name for purposes of a motion to dismiss.

14  I'm having a hard time understanding what this adds to your

15  motion.

16      MR. DEATS:  Sure.  Amazon -- and, Your Honor, I just want

17  to take a step back.  There's been a lot of discussion by

18  Mr. Bedell and also by Amazon in its papers about, you know,

19  {indiscernible} our motion to dismiss at all, and, frankly,

20  that's not their call.  It's our call.

21      THE COURT:  No, I understand.  I -- well --

22      MR. DEATS:  Understood.  So, Amazon has brought RICO

23  claims, and under RICO, it has to identify an enterprise that

24  functioned as a continuing unit with a common purpose, and Amazon

25  has said that no fewer than 13 entities and a few individuals

1    have functioned as a continuing unit with a common purpose.

2         Now, this e-mail was sent before two of the transactions

3    that this enterprise supposedly undertook.  So it would show --

4    Well, if it were sent by somebody who was a principle of one of

5    the enterprises -- I'm sorry, one of the entities that form the

6    part of this continuing unit, it would show or at least

7    contradict Amazon's allegations that it was functioning as a

8    continuing unit.

9         We think it could be very powerful evidence of that, and

10   it could be a critical argument in support of our motion to

11   dismiss.  And Amazon is trying to prevent us from even evaluating

12   whether we have that argument.  That's the thing that I think

13   really stands out here, right.  They are free to dispute our

14   arguments.  We can make our argument with appropriate

15   protections; we can file our brief under seal; they can disagree

16   with it, but they're trying to prevent us from making the

17   argument {Indiscernible} {Indiscernible} {Indiscernible}

18   {Indiscernible}.

19        THE COURT:  I'm sorry, your last couple of sentences were

20   breaking up.  Can you hear me all right?

21        (Brief pause in proceedings.)

22        THE COURT:  Tina, can you hear me okay?

23        THE COURTROOM CLERK:  I can hear you just fine, Judge.

24        THE COURT:  I think it's just a problem with Mr. --

25        THE COURTROOM CLERK: -- yeah, he was fine until he got to

1   the last sentence.

2        MR. DEATS:  Your Honor, I think I'm back now.  I

3   apologize, Your Honor.

4        THE COURT:  The last couple of sentences we didn't hear.

5        MR. DEATS:  So, I think the thing that really stands out

6   here is that it's not simply {Indiscernible} their arguments,

7   they're trying to prevent us from having information that we

8   believe could very well support it in the first place.

9        THE COURT:  Let me -- another -- and I don't think Amazon

10  is really taking a position on this.  If -- you want me to

11  disclose that, have them disclose that and have it be subject to

12  outside personnel only.  How could you possibly use that

13  information without revealing who the person is who wrote the

14  e-mail?  I mean, if only outside counsel can see it, how does

15  that help anything?  How would you get any information from that

16  person without revealing it?

17       MR. DEATS:  Your Honor, I want to be very clear on this.

18  Amazon has released other exhibits of the complaint in unredacted

19  form subject to an "Attorney's Eyes Only" designation, and we

20  haven't used those exhibits in our motion to dismiss.  We filed

21  our motion to dismiss in a redacted form under seal.  We redacted

22  the information in the publicly filed version, and we even

23  redacted it in the version that we shared with our client.  It

24  will pose no obstacle to us to use this information if we get it

25  under an Attorneys Eyes Only designation.

```
 1        THE COURT:  Okay.  Mr. Bedell, what is your concern about
 2   having that be subject to attorneys, outside counsel's eyes only?
 3        MR. BEDELL:  I'm sorry, I had some difficulty there for a
 4   moment.  I have a couple of concerns.  One is that this
 5   protective order is a little different in that it says outside
 6   counsel.  It does not say counsel -- it did not say outside
 7   counsel responsible for this litigation, it's all outside
 8   counsel, and the -- it -- I don't know who that includes.  I read
 9   somewhere that Amazon says they don't know who that includes
10   either.  And I understand that there are outside counsel that
11   were involved in the very acts that are at issue in the
12   complaint, like helping the defendants set up companies that some
13   of these 13 -- 10 or 13 entities, whatever Mr. Hayes-Deats said,
14   and then the other one is the concern that you hit upon.
15        THE COURT:  Well, if I were to -- if I were to limit this
16   to Mr. Hayes-Deats specifically, is there a concern?
17        MR. BEDELL:  Yes, because then the concern is the one that
18   you upon which is that this isn't like an exhibit where, for
19   instance, I can take the typical case of maybe there's a profit
20   and loss statement, some numbers on a spreadsheet that are
21   sealed, and they can look at them and maybe they can have their
22   accounting expert look at them and you can craft arguments based
23   on this, exactly what you said, which is that -- How do they put
24   this person in the context to be able to say, Yes, he was
25   central, he did these things, he undermined this theory without
```

1    talking to somebody who was involved, either their own clients or
2    similar people?  And I think that on that point, I would add --
3    it's a little off of your question, I confess that -- but I think
4    they're free to make their argument as it stands anyway because
5    just -- that's the *Novak* procedure, which is -- assume that it's
6    fine.  Amazon hasn't shown that this person doesn't defeat it
7    because they haven't shown who it is.  They make the argument,
8    say who the anonymous person is, and present that to the Court.
9    I think they're free to make that argument, and I don't see how
10   adding the name -- and as a sort of add-on to that, presumably
11   they know who the people involved in these organizations are.
12   What they don't -- the only piece they don't know -- and the
13   people involved in the alleged conspiracy -- the only piece they
14   don't know is which one of them chose to send the e-mail.  There
15   are ten people in this entity, ten people on the management board
16   of this entity, hypothetically; one of them chose to send an
17   e-mail.  I don't see how that little bit of information gets them
18   anywhere and how they could particularly use that little bit of
19   information apart from whatever they already know about the 10
20   people who were on the Board -- in my hypothetical, the Board --
21   RICO can only have four for compliance, whatever -- ten people in
22   charge of the entity, and how having that little bit of
23   information that this one particular -- this is the person who
24   sent the e-mail could be of any use without going back to the
25   other people and talking about it.

1      THE COURT:  Okay.  Is Exhibit 2 necessary for your

2  complaint?  Do you feel as though you need to keep it in?

3      MS. PAPEZ:  Honestly, Your Honor, we don't think it's

4  necessary.  Allow me to speak.  I think maybe I can cut through

5  some of the -- you know, if the Court is interested in that

6  option, I think that's something we can certainly work with, but

7  if the Court would allow me just to take a step back.

8      We're here today on the defendant's motion for very

9  specific relief.  They're asking the Court to order this name

10 disclosed, so I think the real question is what authority do they

11 have to get that relief.  The answer is none.  Their reply

12 confirms it.  And let me put a fine point on this.

13     Mr. Hayes-Deats said two rules are at issue.  One is 5.2.

14 That's the rule, Your Honor, that says we have to redact things

15 like social security numbers and minors' names.  That's not the

16 issue.  We're here under 10(c), right, which is the one that says

17 we have to live with and take our lumps on any exhibits as part

18 of our pleadings.  We're absolutely comfortable with that.

19     What the Fourth Circuit law says, and this is the *Hunter*

20 case.  In our response -- it's docket 226 at page 4 -- the Fourth

21 Circuit said at the pleadings stage, it is totally normal to base

22 allegations on a confidential informant.  We see that in criminal

23 cases and PSLRA cases, like many of the cases here that have a

24 much higher pleading standard than we do in this action.

25     What the Fourth Circuit said, Your Honor, is there, as

```
 1    here, for a plaintiff relies on a confidential informant for
 2    allegations in a complaint, two thing must be true:  We must
 3    provide enough information about that allegation to identify that
 4    the source would have the information in question, and to give --
 5    and to justify the contents.  So it's contents, an indicia of
 6    knowledge, Your Honor.  I will say we have done that in spades.
 7    We were very careful here.  What we tried to do is walk this
 8    line, and we think we did it in exactly the way the law requires
 9    for the Court and the defendants to have the information that you
10    need to assess our allegations, both for the preliminary
11    injunction, which the Court obviously was able to assess
12    sufficiently; the RICO allegations, the Court found us likely to
13    succeed on the merits with the redacted names.  So, respectfully
14    to Mr. Hayes-Deats, this is not necessary for sufficiency.  We
15    went above and beyond the normal pleadings' standard under 8 and
16    9(b) to give them the indicia.  And this is really important.
17    Their reply brief, docket 229, they've waived a lot of these
18    arguments for many reasons, Your Honor, but they put it into
19    their reply brief, so we haven't had a chance to brief them.  But
20    I'll just tell Your Honor, the cases in footnote 5 of their reply
21    brief, docket 229, the say point blank what I I'm saying now,
22    they literally say the balance of the pleadings stage is that we
23    provide enough information to provide an indicia of reliability,
24    but we don't have to reveal the source because we don't want to
25    {indiscernible} the Baker case here at 596.  We don't want to
```

1   turn from it, and they don't want to invite retaliation, so their

2   own article in footnote 5 says pointblank we just need to provide

3   some identifying information.

4        When you look at our second amended complaint, paragraph

5   109 and 110, we say this informant was formally affiliated with

6   one of the defendants.  When you look at Ms. McDonald's

7   declaration at paragraph 44, we detail the context and the source

8   of the information.  And then the actual e-mail itself, which is

9   Exhibit 36 of our complaint, we put in the information -- they

10  could have argued, for example, Your Honor, that, Well, you

11  shouldn't have rely on this because he asked for money from

12  Amazon or, you know, he was somehow involved.  You know what they

13  did, Your Honor?  They did none of that.  When you look at their

14  motion to dismiss, which is the reason they say they need this --

15  this is docket 180 -- there is not one word in that motion.  So

16  this is a complete waiver that this information is necessary to

17  challenge the sufficiency of our RICO allegations.  It's

18  absolutely not.  We know that from the pleadings.  We know that

19  from the complaint.  I don't know what it is that they're trying

20  to get this information for at this stage.  No way can it be for

21  their motion to dismiss because they've waived that.

22       And the last thing I'll say, Your Honor, is their reply,

23  docket 229 on this unsealing motion, is the first time that we've

24  been apprised of it and had an opportunity to respond to it.

25  It's the first time they've ever even attempted to articulate why

1    this name would negate our RICO allegations, and I have two very

2    simple responses.  One is, as Your Honor said, the name itself

3    could be in no way do the work that they posit in their reply.

4    They say, by getting this name, it may negate a RICO association

5    in fact plain.  There's no way that the name itself could do

6    that.

7         As Your Honor pointed out, they would need a

8    counterfactual narrative around who this person is and what they

9    did, which is absolutely forbidden at the Rule 12 stage.  We all

10   know that.

11        The other point is the only case they cite -- and again

12   they waived it because they dropped it just in the reply -- is

13   this Third Circuit *Brokerage* decision.  It's mostly an antitrust

14   case, but it supports us, Your Honor.

15        The RICO portion of that case is relevance, is the one

16   that says where you haven't proved a RICO a conspiracy of this

17   nature.  We've done more than enough to prove a RICO enterprise.

18   The Court already passed on that in the preliminary injunction in

19   this case, and we've briefed this fully in our motion to dismiss

20   {indiscernible} in our transfer opposition.  That's docket 210

21   where this defendant, Mr. Nelson, is on tape talking about his

22   role in the conspiracy, in the RICO enterprise.  So, I don't know

23   what they're trying to do here, but I can tell you there's

24   absolutely no legal basis for the Court ordering the disclosure

25   of the name at this time and, therefore, we don't think that we

1    need to even discuss an Attorneys Eyes Only designation.

2         THE COURT:  Okay.  Thank you, Ms. Papez.  Mr. Hayes-Deats,

3    do you have anything else you want to add?

4         MR. HAYES-DEATS:  Yes, I would like to respond to a lot of

5    what Mr. Bedell and Ms. Papez said.  Let met start with the

6    Second Circuit's decision in *Novak* and the Second Circuit

7    decision in *Hunter*.  Those decisions say that reliance on

8    confidential informants in a complaint is not a basis for

9    dismissing the complaint.  They don't say anything about

10   exhibits, they don't say anything about Rule 10, and they don't

11   say anything about redactions.

12        And if they are right in this position, if essentially

13   they can redact any information from an exhibit that they do have

14   an affirmative obligation to include in their complaint, then the

15   Fourth Circuit's decision in *Boyd* would be eviscerated.

16   Plaintiffs will always redact any harmful information in their

17   exhibits, and the defendants will not be permitted to rely on

18   that harmful information in a motion to dismiss, and that's

19   completely inconsistent with all of the --

20        THE COURT:  Well, {indiscernible} information, we're

21   talking about an {indiscernible} person who had legitimate, I

22   think, concerns.

23        MR. HAYES-DEATS:  Your Honor, we believe that it could be

24   harmful information, and, frankly, if it's not harmful

25   information, why are we fighting so hard over this?  Your Honor

1   pointed out, and I don't think there was anything mentioned in

2   response, you can craft an order that releases this to any group

3   of people that you want.  It can be limited to me, it can be

4   limited to my law firm, and there is --

5           THE COURT:  If I were to limit it to you, how would you

6   possibly reply without, as Mr. Bedell points out or Ms. Papez

7   points out, gathering information to respond to that person's

8   name, and thereby admitting facts which are not to be submitted

9   in support of the motion to dismiss.

10          MR. HAYES-DEATS:  There's a simple answer to this, Your

11  Honor.

12          THE COURT:  Okay.

13          MR. HAYES-DEATS:  Mr. Bedell and Amazon both concede that

14  the record on a motion to dismiss is the complaint and the

15  exhibits.  Now, the complaint is very long.  The exhibits, there

16  are over 60 of them.  This person may well be mentioned dozens of

17  times throughout the complaint and the exhibits, and if that's

18  the case, then we can show who this person is and the relevance

19  of their actions just based on some of the things in the exhibits

20  alone.  That's what we would like the opportunity to do.  That's

21  what we believe it's very likely we can do.

22          So -- and I come back to this notion.  They're trying to

23  prevent us from making an argument.  We can have this, you know,

24  argument that I expect we will have this argument on a motion to

25  dismiss about what the relevance is and whether they pled enough

1  to show a RICO claim, but right now all we're dealing with is do

2  we get the information that we feel we should have under Rule 10

3  in order to even make the arguments in the first place.  That's

4  what we're asking Your Honor to do.  There are a couple of other

5  points, but I don't want to belabor this and take too much of

6  Your Honor's time.

7      You know, Amazon said that it doesn't think that Exhibit 2

8  is necessary.  If they want to formally withdraw Exhibit 2, that

9  might change the record, but I don't know that they even need to

10  do that, and they have included this not just in the second

11  amended complaint but also in support of two other documents that

12  they filed.  So this isn't something that they've come back to

13  three times because they think that it gives them an advantage,

14  and we think that they have to take the bad with the good.

15      Mr. Bedell also brought up a few points with the Denver

16  newspaper that reported on this.  That story was simply about the

17  fact that this motion had been filed.  When you said defense

18  counsel communicated with the reporter, that was not any counsel

19  for Mr. Nelson, and I think that was actually in response to --

20  Mr. Watson's attorneys were called in response to the

21  characterization in his papers of Mr. Watson, and they responded

22  to that because, frankly, that characterization was very

23  inflammatory.  So I just wanted to correct the record on that

24  point.

25      THE COURT:  Thank you.  So, for the purposes of this

1   motion to dismiss that -- the rationale that you give for

2   revealing the name, I don't think that the author of the name --

3   of the e-mail is relevant.  I don't think that you really have

4   been able to state clearly why it's relevant or how it would be

5   helpful to a motion to dismiss, and even if I limited it to your

6   eyes only, Mr. Hayes-Deats, I don't see how you could possibly

7   use that information without revealing that identity, again, to

8   your clients or someone else.  I just -- I don't think it's of

9   any use to you at this point, and you've already filed it, so I

10  find that -- and I think that the defendant -- excuse me, the

11  intervenor has significant security concerns that I think are

12  justified.  So, at this point, I'm going to deny the motion.

13       Now, if Amazon wants to remove Exhibit 2, they could.  I'm

14  not sure that it needs to be attached to their complaint, and I

15  think that you all should discuss that.  I have a concern that at

16  some point that person may need to be identified.  I don't know

17  whether that's going to be necessary or not, but it may be.

18       If that is the case, I'm probably going to restrict the

19  disclosure of that name to outside counsel, but, then again, it

20  may be unsealed further in the future and, of course, you know,

21  if this goes to trial, you know, that person may be revealed as

22  well.

23       So, I encourage counsel for Amazon and counsel for the

24  intervenors to talk about this further because this may not be

25  the case forever, depending on how this case progresses.  But at

1    this point, I don't believe that it's necessary.  I think that

2    they do have the right to redact the name of the informant

3    because of the security concerns, and I think they're justified,

4    and it's -- As you all pointed out, Amazon's pleadings are the

5    ones that are at risk here because of the nondisclosure of the

6    names.  So, the motion is denied.

7        Is there anything else coming up that I can help address

8    now?  Are there any other issues coming up?  You all have been

9    here a lot lately.

10        MS. PAPEZ:  Nothing for us.  Respectfully, nothing we

11    think you can assist with today.  We obviously, pursuant to the

12    Court's order last Friday, are expecting that Mr. Watson should

13    comply with the production next week, and so the only thing we

14    can see arising would be the potential issues surrounding that

15    production.

16        THE COURT:  All right.  So we'll see what happens then.

17    All right.  I hope you all have a nice Thanksgiving.  Thank you.

18        MR. HAYES-DEATS:  Thank you, Your Honor.

19        MR. BEDELL:  Thank you, Your Honor.

20        (Proceedings adjourned at 11:34 a.m.)

21

22

23

24

25

1

2

3

## C E R T I F I C A T E

4

5

        I, Scott L. Wallace, RDR-CRR, certify that
the foregoing is a correct transcript from the FTR Gold
record of proceedings in the above-entitled matter.

6

7

   /s/ Scott L. Wallace               11/25/20

8

   ----------------------------    ----------------
   **Scott L. Wallace, RDR, CRR**     **Date**
     **Official Court Reporter**

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25