**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| AMAZON.COM, INC. and AMAZON DATA SERVICES, INC., <br><br> Plaintiffs, <br><br> v. <br><br> WDC HOLDINGS LLC dba NORTHSTAR COMMERCIAL PARTNERS; BRIAN WATSON; STERLING NCP FF, LLC; MANASSAS NCP FF, LLC; NSIPI ADMINISTRATIVE MANAGER; NOVA WPC LLC; WHITE PEAKS CAPITAL LLC; VILLANOVA TRUST; CASEY KIRSCHNER; ALLCORE DEVELOPMENT LLC; FINBRIT HOLDINGS LLC; CHESHIRE VENTURES LLC; CARLETON NELSON; JOHN DOES 1-20, <br><br> Defendants. | CASE NO. 1:20-CV-484-LO-TCB |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR**
**RULE 37 AND CIVIL CONTEMPT SANCTIONS**

## TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................ 1

RELEVANT BACKGROUND ............................................................................. 5

LEGAL STANDARDS ...................................................................................... 13

ARGUMENT ..................................................................................................... 13

I.   DEFENDANTS' DISCOVERY VIOLATIONS ARE SANCTIONABLE
     UNDER RULE 37 AND THE COURT'S CIVIL CONTEMPT POWER ......... 14

II.  DEFENDANTS' DISCOVERY RESPONSES FORECLOSE SEVERAL
     DEFENSES ............................................................................................. 19

     A.   Defendants' Discovery Misconduct Forecloses the Affirmative
          Injunction Defenses the Court Ordered the Discovery to Address ........... 19

     B.   Defendants' Misconduct At a Minimum Precludes Certain Facts
          and Evidence ................................................................................... 21

III. DEFENDANTS HAVE WAIVED THEIR PRIVILEGE CLAIMS ................... 22

     A.   Defendants' Privilege Claims Violate the Court's November Order ....... 22

     B.   Defendants' Privilege Claims Are Untimely and Waived ...................... 23

     C.   Defendants' Privilege Claims Are Facially Deficient ............................ 24

IV.  DEFENDANTS' DISCOVERY ABUSES WARRANT FORENSIC
     EXAMINATION, SPECIAL MASTER OVERSIGHT, AND
     ENFORCEMENT FINES .......................................................................... 25

CONCLUSION .................................................................................................. 28

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Amorin v. Taishan Gypsum Co.*,
 2019 WL 2172707 (E.D. Va. May 20, 2019) ..........................................................27

*Anderson v. Found. for Advancement, Educ. & Emp't of Am. Indians*,
 155 F.3d 500 (4th Cir. 1998) .......................................................................14, 20

*Anderson v. Sch. Bd. of Gloucester Cty.*,
 2021 WL 1134788 (E.D. Va. Mar. 24, 2021) ...................................................15, 17

*Ashcraft v. Conoco, Inc.*,
 218 F.3d 288 (4th Cir. 2000) ....................................................................................13

*AVX Corp. v. Horry Land Co.*,
 2010 WL 4884903 (D.S.C. Nov. 24, 2010)...............................................................24

*Axiom Res. Mgmt., Inc. v. Alfotech Sols., LLC*,
 2011 WL 2560096 (E.D. Va. June 3, 2011) ....................................14, 19, 20, 28

*Baker v. Curtis W. Key Plumbing Contractors, Inc.*,
 2016 WL 11672046 (E.D. Va. Dec. 8, 2016) ...........................................................21

*Beach Mart, Inc. v. L&L Wings, Inc.*,
 784 F. App'x 118 (4th Cir. 2019) .............................................................................14

*Bralley v. Carey*,
 2011 WL 6326503 (E.D. Va. Dec. 1, 2011) .............................................................28

*Brooks Sports, Inc. v. Anta (China) Co.*,
 2018 WL 7488924 (E.D. Va. Nov. 30, 2018)...............................15, 17, 18, 20, 21

*Buffington v. Baltimore Cty., Md.*,
 913 F.2d 113 (4th Cir. 1990) ....................................................................................28

*Buskirk v. Wiles*,
 2016 WL 7118288 (S.D. W. Va. Dec. 6, 2016)........................................................25

*Byrnes v. Jetnet Corp.*,
 111 F.R.D. 68 (M.D.N.C. 1986) ...............................................................................25

*Cappetta v. GC Servs. Ltd. P'ship*,
 2008 WL 5377934 (E.D. Va. Dec. 24, 2008) .........................................1, 4, 25, 26

*Castle Aero Fla. Int'l, Inc. v. Mktg. & Fin. Servs., Inc.*,
 2013 WL 12149691 (D. Minn. Apr. 5, 2013)...........................................................28

## TABLE OF AUTHORITIES
### (*continued*)

Page(s)

*Certain Underwriters at Lloyd's v. AdvanFort Co.*,
　2019 WL 3366103 (E.D. Va. July 25, 2019) .............................................2, 3, 4, 15, 17, 18, 20

*Chambers v. NASCO, Inc.*,
　501 U.S. 32 (1991) ......................................................................................................................13

*Chevron Corp. v. Donziger*,
　425 F. Supp. 3d 297 (S.D.N.Y. 2019) .......................................................................................26

*Chisolm v. TranSouth Fin. Corp.*,
　194 F.R.D. 538 (E.D. Va. 2000) ................................................................................................27

*Clark v. Trans Union, LLC*,
　2017 WL 11504623 (E.D. Va. Mar. 1, 2017) ......................................................................23, 25

*Colonial Williamsburg Found. v. Kittinger Co.*,
　792 F. Supp. 1397 (E.D. Va. 1992) ...........................................................................................13

*Cromer v. Kraft Foods N. Am., Inc.*,
　390 F.3d 812 (4th Cir. 2004) ...............................................................................................13, 28

*Delta T, LLC v. Williams*,
　337 F.R.D. 395 (S.D. Ohio 2021) ..............................................................................................27

*Fin. Mkts. Int'l, Inc. v. Booz Allen Hamilton, Inc.*,
　2013 WL 5537817 (E.D. Va. Sept. 16, 2013) ...........................................................................22

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
　236 F.R.D. 177 (S.D.N.Y. 2006) ...............................................................................................16

*Flame S.A. v. Indus. Carriers, Inc.*,
　2014 WL 3895933 (E.D. Va. Aug. 8, 2014) ....................................................................15, 17, 21

*Flame S.A. v. Indus. Carriers, Inc.*,
　39 F. Supp. 3d 752 (E.D. Va. 2014). ................................................................................15, 16, 18, 22

*In re Gen. Motors Corp.*,
　61 F.3d 256 (4th Cir. 1995) .................................................................................................13, 14

*In re Grand Jury Subpoena*,
　341 F.3d 331 (4th Cir. 2003) .....................................................................................................23

*Hall v. Arlington Cty.*,
　2014 WL 12521382 (E.D. Va. Mar. 14, 2014) ..........................................................................16

iii

# TABLE OF AUTHORITIES
## (*continued*)

Page(s)

*Herbalife Int'l, Inc. v. St. Paul Fire & Marine Ins. Co.*,
  2006 WL 2715164 (N.D. W. Va. Sept. 22, 2006) ....................................................24

*Hicks v. Feiock*,
  485 U.S. 624 (1988)..................................................................................................28

*Hinkle v. City of Clarksburg*,
  81 F.3d 416 (4th Cir. 1996) .......................................................................................3

*Hosch v. Bae Sys. Info. Sols., Inc.*,
  2015 WL 12227738 (E.D. Va. Apr. 28, 2015) ...............................................25, 26

*Hughes Network Sys. v. Interdigital Commc'ns*,
  17 F.3d 691 (4th Cir. 1994) .....................................................................................18

*IHS Glob. Ltd. v. Trade Data Monitor LLC*,
  2019 WL 7049687 (D.S.C. Dec. 23, 2019) ............................................................26

*Koosharem Corp. v. Spec Pers., LLC*,
  2008 WL 4458864 (D.S.C. Sept. 29, 2008)......................................................26, 27

*Law Enforcement All. of Am., Inc. v. USA Direct, Inc.*,
  61 F. App'x 822 (4th Cir. 2003) ..............................................................................14

*McDonald v. Robinson*,
  2018 WL 7001680 (E.D. Va. Dec. 26, 2018)  ..................................................19, 21

*McKenna v. Sovran Bank NA*,
  1987 WL 30159 (4th Cir. 1987) ..............................................................................18

*In re Microsoft Corp. Antitrust Litig.*,
  333 F.3d 517 (4th Cir. 2003) ...................................................................................18

*Mut. Fed. Sav. & Loan Ass'n v. Richards & Assocs.*,
  872 F.2d 88 (4th Cir. 1989) .....................................................................................18

*Mya Saray, LLC v. Al-Amir*,
  831 F. Supp. 2d 922 (E.D. Va. 2011) ...............................................................20, 21

*Nacco Materials Handling Grp., Inc. v. Lilly Co.*,
  278 F.R.D. 395 (W.D. Tenn. 2011) .........................................................................26

*Nat'l Ass'n of Radiation Survivors v. Turnage*,
  115 F.R.D. 543 (N.D. Cal. 1987)..............................................................................27

iv

**TABLE OF AUTHORITIES**
(*continued*)

Page(s)

*Nat'l Hockey League v. Metro. Hockey Club, Inc.*,
　427 U.S. 639 (1976)................................................................................18

*Neuberger Berman Real Estate Income Fund, Inc. v. Lola Brown Tr. No. 1B*,
　230 F.R.D. 398 (D. Md. 2005)..............................................................25

*Nieves v. Rreal Image, Inc.*,
　2020 WL 2858808 (E.D. Va. May 15, 2020) ................................14, 15, 17, 20, 21

*NLRB v. Apex Decorating, Inc.*,
　1992 WL 372393 (4th Cir. Oct. 20, 1992)..............................................27

*Physicians Interactive v. Lathian Sys., Inc.*,
　2003 WL 23018270 (E.D. Va. Dec. 5, 2003) ........................................26

*Plant v. Merrifield Town Ctr. Ltd. P'ship*,
　711 F. Supp. 2d 576 (E.D. Va. 2010) ....................................................15

*U.S. ex rel. Rahman v. Oncology Assocs.*,
　198 F.3d 489 (4th Cir. 1999) .................................................................18

*Rambus, Inc. v. Infineon Techs. AG*,
　220 F.R.D. 264 (E.D. Va. 2004) ............................................................25

*Riggs v. Johnson Cty.*,
　73 U.S. 166 (1867)..................................................................................13

*RLI Ins. Co. v. Conseco, Inc.*,
　477 F. Supp. 2d 741 (E.D. Va. 2007) ................................................23, 25

*S.E.C. v. Liu*,
　2021 WL 943743 (9th Cir. Mar. 12, 2021)............................................19

*Sanders v. Smith et al.*,
　2014 WL 12591161 (E.D. Va. Aug. 29, 2014).......................................22

*Schreiber v. Friedman*,
　2017 WL 11508067 (E.D.N.Y. Aug. 15, 2017)......................................26

*In re Search Warrant Issued June 13, 2019*,
　942 F.3d 159 (4th Cir. 2019) .................................................................27

*Sectek Inc. v. Diamond*,
　2016 WL 5897763 (E.D. Va. Oct. 6, 2016).........................................4, 23

**TABLE OF AUTHORITIES**
(*continued*)

Page(s)

*Societe Int'l, S.A. v. Rogers*,
  357 U.S. 197 (1958)............................................................................................16

*Thomas v. FTS USA, LLC*,
  2016 WL 3566657 (E.D. Va. June 24, 2016) ....................................................21

*Volumetrics Med. Imaging, L.L.C. v. Toshiba Am. Med. Sys., Inc.*,
  2011 WL 2600718 (M.D.N.C. June 29, 2011) ..................................................22

*Wright v. James City Cty.*,
  2014 WL 1056693 (E.D. Va. Mar. 18, 2014) ....................................................21

*Wu v. Tseng*,
  2008 WL 4360990 (E.D. Va. Sept. 22, 2008)..............................................20, 21

*Zornes v. Specialty Indus., Inc.*,
  1998 WL 886997 (4th Cir. 1998) ......................................................................18

**Rules**

Fed. R. Civ. P. 26............................................................................8, 16, 23, 25

Fed. R. Civ. P. 34......................................................................................11, 23

Fed. R. Civ. P. 37......................................................1, 2, 13, 14, 16, 20, 22, 23

Fed. R. Civ. P. 53....................................................................................................27

**Treatises**

8B Fed. Prac. & Proc. Civ. § 2282 (3d ed.) ........................................................13

Plaintiffs Amazon.com, Inc. and Amazon Data Services, Inc. ("Plaintiffs") hereby respectfully seek relief against Defendants Brian Watson and WDC Holdings, LLC ("Defendants") under Federal Rule of Civil Procedure 37 and the Court's civil contempt power for ongoing violations of the Court's July 22 and November 13, 2020 discovery orders.  Dkts. 95, 231.

## INTRODUCTION

This case is about a fraud and kickback scheme that Defendants and their co-conspirators used to enrich themselves by obtaining illegal proceeds on over $500 million of Amazon development projects in this District.  Dkt. 150.  Early last year, Plaintiffs obtained extensive evidence of Defendants' involvement in this scheme from informants and co-conspirators cooperating with federal prosecutors.  Based on this record and to preserve the *status quo*, the Court entered a Temporary Restraining Order and Preliminary Injunction requiring Defendants to post $21.25 million in security.  Dkts. 16, 57.  Defendants refused to comply on the grounds that they "never received anywhere near that amount of money in connection with the transactions," Dkt. 193-2 at 18:25–19:1, and that their assets were "not sufficient" to post the required amount, *id.* 24:3–5.  But they failed to substantiate these claims in months of litigation.  The Court held that "discovery is the answer."  *Id.* 26:10–28:6.

On July 22, 2020, the Court ordered Defendants to respond to 22 written discovery requests about their transaction proceeds and assets.  Dkts. 94–95.  Defendants did not comply, and on November 13 the Court entered a Rule 37 order rejecting all of their objections and requiring "everything to be produced within 11 days."  Ex. 1 at 12:13; 13:3–5; 13:14–19; Dkt. 230.  Defendants defied this order too, and have since engaged in a "pattern of obstruction and delay" to conceal information about their meritless injunction defenses while dissipating over $100 million in assets and collaterally attacking this Court's rulings.  *Cappetta v. GC Servs. Ltd. P'ship*, 2008 WL

1

5377934, at *6 (E.D. Va. Dec. 24, 2008).

This motion seeks Rule 37 and civil contempt sanctions for these discovery violations, which are actionable independent of Defendants' non-compliance with the Court's injunctions. Defendants' discovery abuses are on par with misconduct this Court routinely sanctions with default judgment. The more modest sanctions Plaintiffs seek here are the minimum relief required because, after "a third chance," Defendants "chose not to follow the Court's clear instruction" to provide "non-evasive answer[s]" to "foundational questions" about their proceeds from the Amazon transactions and the assets they could use to post court-ordered security. *Certain Underwriters at Lloyd's v. AdvanFort Co.*, 2019 WL 3366103, at *4 (E.D. Va. July 25, 2019).

These deficiencies are inexcusable because the Court's November order overruled all of Defendants' objections to the July order directing them to answer discovery about their transaction proceeds and over $1 billion in assets they claimed were too "illiquid" to post a penny of judgment security. After violating the Court's November 24 deadline for producing this discovery, Defendants served supplemental responses that obscured or delayed action on their remaining deficiencies for months. Notably, in late December they produced a privilege log that withheld or redacted at least 6,331 documents based on improper claims they partially withdrew in February with a promise to reexamine invalid entries they have since refused to address. They also concealed their post-injunction disposition of over $82 million in assets until Plaintiffs uncovered them through public searches, and then purported to explain the sales in supplemental productions that still do not account for tens of millions in relevant proceeds. In addition, Defendants waited until early May to make promised productions from devices the FBI returned to them months ago, and then produced only 66 documents that are riddled with deficiencies and undermine the defenses the discovery was ordered to address.

The consequences of these violations are clear. Defendants' productions: (i) do not identify all of their transaction proceeds; (ii) do not account for at least $18.8 million of Defendants' post-injunction disposition of over $100 million in assets; (iii) do not identify the "investors" who allegedly prevented Defendants from posting court-ordered security; (iv) do not justify withholding or redacting over 6,300 responsive documents under waived and invalid privilege designations; and (v) do not cure the deficiencies Plaintiffs identified in the May production from devices the FBI returned months ago. The resulting prejudice is equally clear. Critical facts that Defendants control and assert as justifications for their ongoing contempt of this Court's rulings remain a "moving target" after a year of litigation including two injunctions, two discovery orders, an appeal, and months of collateral civil and criminal proceedings. *Lloyds*, 2019 WL 3366103, at *8. This Court has "nearly unfettered discretion" to "impose sanctions for [Defendants'] failur[e] to comply with its discovery orders." *Hinkle v. City of Clarksburg*, 81 F.3d 416, 426 (4th Cir. 1996). Here, the record compels at least the following three remedies for the violations above.

*First*, the Court should overrule the defenses impacted by the discovery violations. Preclusion is the proper remedy for such violations, particularly where the defenses are otherwise unsupported. That is the case here. Even Defendants' untimely and deficient responses show that the Court's orders do *not* overstate Defendants' transaction proceeds of at least $21.25 million, or their control of related assets. Defendants admit that they received $5 million from the Amazon White Peaks sale, and documents buried in the chaff of their productions reference at least another $18,636,919 in Northstar "Acquisition, Leasing, Development and Asset Management" fees on the relevant transactions. Further, Defendants confirmed this spring over $100 million in asset dispositions they used to pay their own affiliates and liquidate the "investor" interests that allegedly encumbered their holdings. Further, the few text messages they produced this month confirm

3

their conspiratorial relationship with co-defendant and former Amazon manager Casey Kirschner, as well as inculpatory dealings with several co-defendants.  These productions thus corroborate, not rebut, independent record evidence that Defendants' transaction proceeds totaled at least $21.25 million, and were used to fund kickbacks to co-defendants Casey Kirschner and Carleton Nelson.[1]  Defendants' decision to delay these productions and dissipate assets while making mer-itless discovery objections and improperly blaming vendors, investors, and even law enforcement for their untimely and deficient responses forecloses their preliminary injunction defenses.

*Second*, the Court should strike all of the privilege assertions Defendants improperly raised in December and require immediate production of all associated documents (over 6,300) in their entirety.  The Court ruled in November that it was "not allowing [Defendants] to have any privilege objection." Ex. 1 at 13:3–5.  And even if Defendants could overcome that bar, their December log was served over a month *after* the November 24 deadline for "all" productions and is facially deficient.  Failure to substantiate or "file a privilege log in a timely manner" means the "privilege claim … is waived."  *Sectek Inc. v. Diamond*, 2016 WL 5897763, at *3 (E.D. Va. Oct. 6, 2016).

*Third*, the Court should order forensic examination of Defendants' devices and appoint a special master to oversee their responses to the Court's orders, at their expense and subject to daily court fines for non-compliance.  Such remedies are proper where, as here, Defendants have "failed to answer some of the discovery and … provided what appears to be evasive or incomplete answers to many questions or requests."  *Cappetta*, 2008 WL 5377934, at *6.

---

[1] Evidence of this kickback arrangement includes audio recordings in which:  (i) Watson agrees that "first priorities should be Casey and Carl," Dkt. 212-15 at 21; and (ii) Nelson tells a former Northstar employee that the "first couple distributions [Nelson and Kirschner] took" on the Northstar transactions came "through Casey's brother" at Northstar partner Villanova, which was "some sketchy a** sh**," Dkt. 212-13 at 9; Nelson had "taken 960 total" and Kirschner "eight something" from "all Brian's fees," *id.* at 30; and Nelson and Kirschner could continue getting kickback deals approved because people at Amazon are "f****** idiot[s]," *id.* at 19, 27.

## RELEVANT BACKGROUND

The discovery violations addressed herein are the latest examples of Defendants' unabated contempt for this Court's rulings. The following history is relevant to the current relief requested.

***2020 TRO and Preliminary Injunction.*** Defendants' misconduct was exposed in late 2019, when an informant notified Amazon that Defendants conspired to pay kickbacks to corrupt Amazon insiders in exchange for their approval of inflated real estate development contracts the conspirators used to defraud Amazon of tens of millions of dollars on several high value projects in this District. On April 2, 2020, the FBI executed search warrants against Defendants, and Defendants' business partner terminated their joint venture for developing the affected properties. In response, Defendants sought to eliminate assets and evidence central to the case, forcing Plaintiffs to file this suit and seek the TRO the Court granted on April 28, 2020. (Dkt. 16.) But the Defendants defied the TRO on the grounds that it misrepresented their role in, and proceeds from, the transactions in suit. The Court gave them ample time to support these claims in the preliminary injunction litigation last spring, but they failed to do so. They continued to rely on unsubstantiated assertions, and their only testimony was from counsel who attached a transcript of an audio recording among several co-conspirators that Plaintiffs exposed as omitting an inculpatory reference to Casey Kirschner. (Dkts. 41 & 42-3.)

Based on this extensive record, the Court converted the TRO to a preliminary injunction, but indulged Defendants' request to modify the terms and delay entry of the order so they could obtain a bond. (Dkts. 49–51.) They failed to do so. Accordingly, on June 5, 2020, the Court entered the injunction with various security options, all of which Defendants have defied to this day. (Dkts. 57; 84 at 2.) Plaintiffs initiated contempt proceedings in July 2020. (Dkts. 67–68, 84.) Defendants responded by appealing the injunction's $21.25 million security provision (which

the Court did not stay pending appeal), Dkts. 72, 137,[2] and reprising their claims that the provision "far overestimate[s] the amount of money that [Defendants] actually received from Amazon," Dkt. 193-2 at 18:21–23; that the "different types of fees that were paid" on the transactions at issue are "not the kind of thing that one can quickly come in and summarize for the Court," *id*. 17:22–25; and that Defendants "do not have anywhere near enough available cash or other liquid assets to be able to place $21,250,000 into escrow," Dkt. 193-2 at 18:25–19:1.  The Court responded that "discovery is the answer," and that it should be "expeditious."  *Id*. at 26:10–12; 27:23–24.

*July 2020 Discovery Order*.  On July 21, Plaintiffs filed and served 22 requests (15 document requests and 7 interrogatories) tailored to Defendants' unsubstantiated injunction challenges in this Court and the Fourth Circuit.  (Dkt. 94.)  On July 22, the Court ordered Defendants to "respond" in accordance with "Federal Rules of Civil Procedure 26, 33, and 34."  (Dkt. 95 at 1.) Defendants did not do so.  In August 2020, they served boilerplate objections to the document requests, wasted weeks backtracking on conference commitments, and made only two productions (of 94 and 88 documents, respectively).  Their interrogatory responses were equally deficient and failed to provide any substantive responses.  In response to Plaintiffs' inquiries, Defendants promised to produce additional documents and a privilege log "as soon as possible."  (Dkt. 193-9).  But in September they produced just 11 non-duplicative documents and a four-line redaction log with an email stating "that is all you will be receiving."  *Id.*

*November 2020 Rule 37 Order Granting Plaintiffs' Motion to Compel.*  Defendants' September productions did not address any of the requests they refused to answer in July, and were

---

[2]   The appeal raises the same factual claims this Court ordered Defendants to substantiate in discovery, including whether the June 2020 injunction overstates "the amount paid to Defendants or [Amazon's] own damages" from the transactions in suit.  *Compare Amazon.com, Inc. v. WDC Holdings, LLC*, No. 20-1743 (4th Cir.), Appellants' Reply Br. at 1–2 *with* Dkt. 82 at 9–11; Dkt. 94-1 (RFPs).  The Fourth Circuit heard argument on January 27, 2021 and a decision is pending.

rife with additional deficiencies.  Plaintiffs moved to compel (Dkt. 190), and on November 13 the Court granted the motion, overruled Defendants' objections, and ordered that the July 22 requests "be answered" as written because Defendants had not shown "how you would narrow [the requests] any further and Amazon still be able to get the information that is necessary to decide the motion for sanctions."  Dkt. 231; Ex. 1 at 12:7–10.  The Court then ordered Defendants to "*fully and completely respond to the [July] discovery requests*" by November 24, 2020.  Ex. 1 at 13:14–21 (emphasis added).  The Court stated that it was "*not allowing [Defendants] to have any privilege objection*, so *you don't need to review [the documents], you just need to produce them*."  *Id.* at 13:3–5 (emphasis added).  Defendants responded that "[t]here were privilege objections and a [four-entry redaction] log produced" before the hearing.  *Id.* at 8–9.  The Court agreed to "look at that separately, but otherwise" ordered "*everything to be produced within 11 days*."  *Id.* at 12:13; 13:3–5; 13:18–19 (emphasis added).

**Defendants' Remaining 2020 Productions**.  Defendants again failed to comply with the Court's order.  On November 24, they produced 113,547 documents with no privilege log or indication that additional responsive documents were being withheld.  Ex. 2.  On November 25, they produced supplemental interrogatory responses that were facially deficient (particularly on requests 2 through 7 regarding their transaction proceeds and asset dispositions) and simply referred to unidentified documents in their incomplete productions.  Exs. 3, 4.[3]  Plaintiffs searched the document productions but could not locate the responsive information.

On Friday, December 11, 2020, Defendants produced another 46,871 documents totaling nearly 300,000 pages.  When Plaintiffs inquired about the reason for this untimely production,

---

[3]  Plaintiffs later learned that this production omitted documents Defendants withheld until February 3.  *See, e.g.*, Ex. 7 █████████████████████████████████████.

Defendants said the documents "had to be retrieved from a third party which did not move as quickly or communicate as clearly as we hoped." Ex. 5.  Upon further inquiry, Defendants admitted that the production was obtained from NexusTek, Defendants' hosting service, which is *not* a "third party" for Rule 26 purposes.  Ex. 6.  Defendants' ensuing correspondence independently confirmed that it was not "retrieval" issues at NexusTek that prevented Defendants from meeting the Court's December 11 production deadline, but rather Defendants' admitted failure even to request the documents until November 17.  *Id.* (conceding they "[r]eached out to NexusTek" on November 17, and NexusTek provided "over 70,000 documents" on November 24, 2020).  On December 18, 2020, Defendants made two more productions and Plaintiffs sent Defendants a letter detailing several prejudicial deficiencies in Defendants' interrogatory responses, (Ex. 8), notably:

- **Interrogatory 2 (description of asset dispositions since April 2, 2020)**:  Defendants' responses failed to address the status of assets identified in Amazon's July 2020 show cause motion, as well as Defendants' disposition of at least *$82 million in assets* since June 2020.[4]

- **Interrogatory 3 (financial benefits of any kind received or owed on the transactions in issue)**:  Defendants' responses failed to provide any details regarding "the fees received by Northstar" on the relevant transactions, when and how these fees were "distributed to Mr. Watson [or] used to pay bills on behalf of Northstar," or the disposition and location of the $5 million payment Defendants admittedly received on the White Peaks sale.

- **Interrogatory 5 (knowledge or reason to believe co-defendants or others would receive a "share" of Defendants' transaction proceeds)**:  Defendants' responses do not substantiate their purported ignorance of the kickbacks documented in other record evidence, and play word games in disclaiming that co-defendants "actually received" kickbacks at certain times (such as "while [Casey Kirschner] was an employee at Amazon").

- **Interrogatory 6 (names and details of investors involved in the relevant transactions or who Defendants contend are barriers to posting "judgment security")**:  Defendants'

---

[4]  These dispositions include: (i) 5825 Mark Dabling Blvd, sold for **$17,000,000** on 10/1/2020; (ii) 9200 E. Mineral Avenue, sold for **$9,050,000** on 12/9/2020; (iii) 5500 S. Quebec Street, sold for **$25,480,000** on 7/30/2020; (iv) 2979 N. Uinta Street, sold for **$24 million** on 11/4/2020; (v) 3840 S. Wadsworth Blvd, sold for an unknown amount on 8/18/2020; (vi) 800 Hoyt Street, sold for **$22,212,000** on 12/8/2020; (vii) 18445-18455 W. Colfax Avenue, apparently transferred to an affiliate for **$1,117,662** on 11/23/2020; and (vii) Mt. Pocono, sold for **$25,175,000** on 12/23/20.

responses failed to identify any of the "investors" who purportedly "rendered" Defendants "unable to pledge" any of their claimed net worth to satisfy the Court's injunction.

Defendants responded on December 22, 2020 that their "production will be complete with the production of a sharefile [sic] today of documents originally deemed privileged." Ex. 9. But that file (of 1,071 documents) was not transmitted until the afternoon of December 24 and was not Defendants' final production. On December 30, they produced over 1,800 additional documents, again without a privilege log. Then, at 5:20 p.m. on New Year's Eve, Defendants produced a facially deficient log with 6,331 entries. Exs. 10, 11. Defendants thereafter made *five* additional productions, most recently on May 13, none of which complies with the Court's orders.

***Defendants' 2021 Misrepresentations, Deficient Productions, and Asset Dissipation.*** On January 8, 2021, Defendant WDC Holdings provided a supplemental response to Interrogatory 2 detailing the asset dispositions Plaintiffs identified on December 18. This untimely response *admitted* the disposition of *at least $82.5 million* in assets since April 2020. Exs. 14, 15. But it failed to account for nearly $19 million in sale proceeds, and omitted critical information about the dispositions it did disclose. Ex. 15. Watson never supplemented his response to Interrogatory No. 2, and has ignored Plaintiffs' repeated requests to address his receipt and use of proceeds from Northstar's post-injunction asset sales, which now total over $100 million. In addition, Defendants' January 8 response refused to identify "investors" who received proceeds from those sales, and who allegedly precluded Defendants from posting the security the Court ordered last June.

On January 26, 2021, Plaintiffs notified Defendants of these and other deficiencies and demanded that Defendants: (i) "immediately cease and desist liquidating or otherwise dissipating" assets, including "proceeds from the executed dispositions addressed in the January 8 supplement;" and (ii) update their responses to provide "the required transaction details" and "recipients" of the dispositions. Ex. 13 at 2–3. Plaintiffs also detailed uncured deficiencies in Defendants' November

response to Interrogatory 3 (transaction proceeds) that Defendants ignored in December despite filing claims in Delaware that month for additional payments on the same Amazon lease fees.[5] *Id.* at 3–4.  Plaintiffs stressed that Defendants' deficient responses were inexcusable for this reason, and because their own productions referenced "*at least $18,636,919*" in Northstar "Acquisition, Leasing, Development and Asset Management" fees for the leases in suit *in addition to the $5 million* Defendants admitted they received from the White Peaks sale.  *Id.* at 4.

On January 29, Defendants stated that they would amend their responses and "produce underlying documentation regarding lenders, investors, and payments concerning various Northstar property investments, including those referenced in Plaintiffs' Interrogatory No. 3."[6] Ex. 17.  Plaintiffs reserved all rights, Ex. 18, and on February 3 Defendants produced 538 documents improperly withheld from their 2020 productions, along with a letter defending their continued asset dispositions as consistent with the Court's injunction.  The letter states that the June 2020 injunction "applies only to the real estate transactions with Amazon, and not to any other assets or properties."  Ex. 21.  That is incorrect.  The order expressly applies to "assets used in, or obtained from, any activities (including but not limited to the activities described [in the order]) relating to Defendants' real property transactions with Amazon in Virginia since 2018."  Dkt. 57. And the record shows that the assets Defendants recently liquidated were purchased with Northstar

---

[5] On December 15, Defendants filed suit in Delaware against IPI and developer entities presently serving as Plaintiffs' landlords or developers on the lease sites at issue.  Ex. 12.  The Delaware complaint arises out of the same transactions as this case and recycles Defendants' failed injunction defenses as affirmative claims requesting "over $13 million in fees" beyond those already received on the same deals, as well as "approximately $53 million in" "GP Promote" payments. Defendants amended these claims on April 21, and IPI moved to dismiss on April 26 based in part on the record in this first-filed action.  Plaintiffs have written Defendants, whose counsel here are also involved in the Delaware suit, reserving all rights with respect to any Delaware claims that are not dismissed and challenge this Court's rulings or Plaintiffs' positions in this case.  Ex. 13.

[6] To date, Defendants have failed to honor, or even address, the cease and desist request.

funds commingled with Amazon transaction proceeds, which Defendants concede were "used for Northstar Commercial Partners' expenses." Ex. 14.[7]  The February 3 letter also made unsubstantiated assertions that Defendants "own very little that is not heavily leveraged or with interests held by various investors" they still refuse to identify.  Ex. 21.  Plaintiffs again reserved rights on these and other points and challenged Defendants' privilege claims.  Defendants then withdrew their claims over certain communications and agreed to review their log for additional improper designations.  Exs. 22, 23.  They have never reported on this review despite repeated requests.

***Defendants' Misstatements and Deficient Productions from March Through May 2021***.  On March 2, 2021, Defendants advised that the FBI had returned several electronic devices (two laptops and a cell phone) seized in April 2020.  Defendants initially stated that they lacked passwords for the devices, but later confirmed that the FBI had provided them.  Defendants then said they would "produce in due course"—in "a few days" to a "couple weeks"—information responsive to the July and November discovery orders.  Ex. 24.  On March 5, Plaintiffs requested preservation and other discovery responses by March 10.  *Id.*  Again Defendants did not comply.[8]

Defendants did not make the promised productions from the returned devices until May 6, when they produced just 66 documents all with missing metadata and several with missing and disordered attachments.  Ex. 25.  Plaintiffs raised these and other outstanding discovery deficiencies on May 10, *id.*, and on May 13 Defendants addressed only certain attachment and Bates range issues.  Ex. 26.  On May 19, Plaintiffs advised that Defendants' May 13 response violated Rule 34,

---

[7] Defendants' interrogatory responses confirm that "[a]ll proceeds paid to WDC Holdings/Northstar Commercial Partners … were used for Northstar Commercial Partners' expenses." Ex. 14.  And their productions reflect ▮▮▮▮▮▮▮.  *See, e.g.*, Exs. 19, 20.

[8] On April 21, Defendants rebuffed separate requests for documents from a Colorado suit in which a former employee sought seven figures in unpaid compensation.  *See Richards et al. v. WDC Holdings LLC, et al.*, No. 2019-cv-34472 (Colo. Dist. Ct.).  That case settled on May 3, 2021.

and asked Defendants to respond by May 21. *Id.* Defendants failed to do so. These ongoing violations, and the substance of the recent productions, confirm the need for sanctions. The May 2021 productions alone show: ███████████████████████████████████

███████████, Ex. 27; ████████████████████████████████

████████████████████████████████, *e.g.*, Ex. 28; and ███████████████

███████████████████████████████████████████████████████

████████████████████████, Ex. 29 at 59; *see also id.* at 43–44. Accord-ingly, even Defendants' deficient productions complement—rather than rebut—independent rec-ord evidence that they used their transaction proceeds to facilitate the kickback scheme at issue in this suit. *E.g.*, Dkt. 82 at 10 n.3.

In sum, Defendants' untimely and improper discovery responses establish that Defendants abused the opportunity the Court gave them to support their position by using the discovery period to hide damaging evidence and conceal the meritless nature of their injunction defenses while they disposed of over $100 million in assets, made payments to themselves and other creditors in vio-lation of this Court's injunction, and filed collateral attacks on this Court's rulings.[9]

---

[9] Plaintiffs' ongoing investigation has revealed that individuals and entities affiliated with De-fendants were among the "investors" who received proceeds from these asset sales. Indeed, Plain-tiffs' diligence on a document from Defendants' productions, *see* WDC0913910, shows that ████

███████████████████████████████████████████████████████

████████████████████████ *See* Ex. 34. Further, some asset sale proceeds were used to pay off personal notes Watson owed to third parties, and Defendants deliberately concealed information about these and other dispositions including: (i) the aircraft identified in Plaintiffs' enforcement filings, (Dkt. 68 at 23–24); (ii) proceeds from several Northstar asset sales; (iii) proceeds from the September 14, 2020 dissolution of the Brian Watson Foundation, which Watson identified as the beneficiary of royalties from publications identified in Plaintiffs' enforcement filings, (Dkt. 68 at 24); and (iv) proceeds from Fresh Fit Go Healthy Foods, LLC, an entity operating out of the Wat-son mansion described in Plaintiffs' enforcement filings, (Dkt. 68 at 22).

## LEGAL STANDARDS

Federal Rule of Civil Procedure 37(b) gives the Court broad discretion to grant sanctions or issue other "just orders" where a party "fails to obey an order to provide or permit discovery." Fed. R. Civ. P. 37(b)(2)(A).  This Rule 37 authority is independent of the Court's civil contempt power, which flows from the Court's inherent authority to enforce judgments.  *Riggs v. Johnson Cty.*, 73 U.S. 166, 187 (1867).[10]  To establish civil contempt, a party must prove:

> (1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge; (2) … that the decree was in the movant's 'favor'; (3) … that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive knowledge) of such violations; and (4) … that [the] movant suffered harm as a result.

*Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 301 (4th Cir. 2000) (quoting *Colonial Williamsburg Found. v. Kittinger Co.*, 792 F. Supp. 1397, 1405–06 (E.D. Va. 1992), *aff'd,* 38 F.3d 133 (4th Cir. 1994)).  Willfulness is not an element of civil contempt, *see, e.g.*, *In re Gen. Motors Corp.*, 61 F.3d 256, 258 (4th Cir. 1995), which may be used "to coerce obedience to a court order or to compensate the complainant for losses sustained as a result of the contumacy." *Cromer v. Kraft Foods N. Am., Inc.*, 390 F.3d 812, 821 (4th Cir. 2004) (quotation omitted).

## ARGUMENT

Defendants' extraordinary discovery misconduct warrants sanctions under controlling Rule 37 and civil contempt law as applied to the record here.  *First*, the Court should strike or overrule Defendants' injunction defenses that they did not receive at least $21.25 million from the transactions in suit, and that they lack assets sufficient to post the judgment security the Court ordered.  *Second*, the Court should strike all of the privilege claims Defendants raised in violation of the

---

[10] "The court is not limited to the kinds of orders specified in Rule 37(b)(2)," and "may safely rely on its inherent power" if Rule 37(b)(2) is not "up to the task."  8B Fed. Prac. & Proc. Civ. § 2282 n.15, 2289 (3d ed.) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991)).

Court's November order and the federal rules. *Third*, the Court should order forensic examination of Defendants' data and appoint a special master to oversee their compliance with the Court's discovery and related orders, at their expense and subject to court fines for non-compliance.

## I.   DEFENDANTS' DISCOVERY VIOLATIONS ARE SANCTIONABLE UNDER RULE 37 AND THE COURT'S CIVIL CONTEMPT POWER

Civil contempt sanctions do not require proof of willfulness or bad faith, only disregard of court orders and resulting harm. *See, e.g.*, *In re Gen. Motors Corp.*, 61 F.3d at 258. Accordingly, the Court's contempt authority is alone sufficient to justify the relief requested in this motion. That said, the sanctions here are also proper under Rule 37(b), which expressly authorizes such relief where (1) "the non-complying party acted in bad faith"; (2) the movant can show "prejudice that noncompliance caused"; (3) the record demonstrates a "need for deterrence of the particular sort of non-compliance" in issue; and (4) the record shows that "less drastic sanctions would [not] have been effective." *Anderson v. Found. for Advancement, Educ. & Emp't of Am. Indians*, 155 F.3d 500, 504 (4th Cir. 1998); *see also Beach Mart, Inc. v. L&L Wings, Inc.*, 784 F. App'x 118, 124 (4th Cir. 2019) (applying *Anderson*); *Nieves v. Rreal Image, Inc.*, 2020 WL 2858808, at *3 (E.D. Va. May 15, 2020) (Buchanan, J.) (same), *adopted* 2020 WL 2850230 (E.D. Va. June 2, 2020).

***Bad Faith.*** Although "*Anderson* does not require a finding of bad faith before discovery sanctions can be awarded," Defendants' bad faith here is manifest. *Law Enforcement All. of Am., Inc. v. USA Direct, Inc.*, 61 F. App'x 822, 831 (4th Cir. 2003).[11] "Bad faith includes willful conduct, where the party 'clearly should have understood his duty to the court' but nonetheless 'deliberately disregarded' it." *Axiom Res. Mgmt., Inc. v. Alfotech Sols., LLC*, 2011 WL 2560096, at *7 (E.D. Va. June 3, 2011) (quoting Fourth Circuit authority); *see Beach Mart*, 784 F. App'x at

---

[11] "Where a district court determines that there was no bad faith, that determination will likely be reflected in a less severe sanction." *USA Direct*, 61 F. App'x at 831.

122–23 ("willfully" withholding "knowledge" and "failing to disclose" evidence constitutes bad faith).[12]  "Bad faith may [also] be established by 'noncompliance [or] haphazard compliance [with] discovery orders.'"  *Anderson v. Sch. Bd. of Gloucester Cty.*, 2021 WL 1134788, at \*12–13 (E.D. Va. Mar. 24, 2021) (quoting Fourth Circuit authorities).  Accordingly, a "party's failure to provide a satisfactory reason why its discovery responses were not timely" constitutes "bad faith."  *Id.* (quotation marks omitted).

Defendants' extraordinary discovery abuses far exceed these standards for "bad faith."  In *Lloyd's*, this Court found bad faith because the court "specifically instructed Defendant how to properly amend its answers," but "Defendant chose not to follow the [c]ourt's clear instruction." *Lloyd's*, 2019 WL 3366103 at \* 8 (noting that "[e]ven when given a third chance to submit proper answers, Defendant still equivocated in many of its responses").  Similarly in *Flame*, this Court held that where a party was "non-complian[t]" and engaged in "'stonewalling' tactics" against a background of "extensive" "discovery disputes," the record clearly supported a finding of "bad faith."  *Flame S.A. v. Indus. Carriers, Inc.*, 2014 WL 3895933, at \*12 (E.D. Va. Aug. 8, 2014), *objections overruled*, 39 F. Supp. 3d 752 (E.D. Va. 2014), *aff'd sub nom. Flame S.A. v. Freight Bulk Pte. Ltd.*, 807 F.3d 572 (4th Cir. 2015).  Indeed, this Court held just last year that a defendant acted in bad faith by failing to comply with an "order compelling discovery" because the defendant served "'inadequate'" responses "near[ly] one month late."  *Nieves*, 2020 WL 2858808, at \*3–4.

Here, Defendants deliberately withheld responsive information about transaction proceeds

---

[12] *See also Plant v. Merrifield Town Ctr. Ltd. P'ship*, 711 F. Supp. 2d 576, 587–88 (E.D. Va. 2010) ("bad faith is clearly evidenced by the repeated and flagrant disregard for the binding orders of the magistrate judge and plaintiffs' counsel's misrepresentation of material facts concerning plaintiffs' noncompliance with these orders"); *Brooks Sports, Inc. v. Anta (China) Co.*, 2018 WL 7488924, at \*16 (E.D. Va. Nov. 30, 2018) (bad faith where party failed "to comply with its discovery obligations on numerous occasions" and lied to the Court).

and asset dispositions in violation of two court orders, and used false assurances and filler material to obstruct enforcement action on these violations.  After refusing to answer discovery on the schedule the Court ordered last July, Defendants made belated productions that contained obviously unresponsive information, *see, e.g.*, Ex. 30 (Jimmy John's restaurant ad), and included duplicates so numerous they comprised approximately one third of total production volume, *see* Exs. 31, 32.  Further, despite repeatedly promising compliance with the Court's November order granting Plaintiffs' motion to compel, Defendants continued to assert objections the Court overruled, including waived and indefensible privilege claims over more than 6,300 documents.  Defendants likewise failed even to collect at least 70,000 responsive documents from their own vendor until *after* the Court entered its Rule 37 order in November.  Defendants then falsely blamed this violation on their vendor, even though their own emails show that they always controlled the documents and should have collected them last summer.  Exs. 5, 6; Fed. R. Civ. P. 26; *Flame*, 39 F. Supp. 3d at 759; *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 236 F.R.D. 177, 180 (S.D.N.Y. 2006); *Societe Int'l, S.A. v. Rogers*, 357 U.S. 197, 199–200, 204–06 (1958).  Defendants next claimed they could not access their own devices after the FBI returned them with passwords, Ex. 16, and took more than two months to produce just 66 documents with missing metadata, disordered attachments, and other deficiencies they have refused to cure.  Ex. 26.  These persistent failures to meet "discovery obligations, including responding to past due discovery requests," clearly establish bad faith under Rule 37.  *Hall v. Arlington Cty.*, 2014 WL 12521382, at *3 (E.D. Va. Mar. 14, 2014), *adopted* 2014 WL 12524651 (E.D. Va. Apr. 8, 2014), *aff'd*, 585 F. App'x 52 (4th Cir. 2014).

*Prejudice.*  The prejudice to Plaintiffs is equally clear.  In *Gloucester*, prejudice existed where discovery delays "forced" the requesting party "to expend time and resources not only en-

gaging in repetitive and fruitless communications," but also filing a "Motion for Sanctions to en-sure that they received the necessary discovery." 2021 WL 1134788, at *13. "[U]nwarranted and unnecessary 'expenditure of time and money'" by the other side "suffices to show prejudice." *Id.* Here, much more than in *Lloyd's*, Plaintiffs have been prejudiced by "Defendant[s'] refusal to provide straightforward answers to questions about basic facts in this case, prevent[ing] Plaintiffs from properly evaluating and addressing this matter." *Lloyd's,* 2019 WL 3366103, at *8. Plaintiffs have "struggled to obtain a clear, non-evasive answer from Defendant[s] to foundational ques-tions" about how much money Defendants received from the Amazon transactions at issue in this suit, the state of their assets, and their ability to comply with the Court's injunction. *Id. Lloyd's* pales in comparison. There, the Court found prejudice because "some of Defendant's responses still constitute[d] a moving target" after amended productions. *Id.* Here, critical facts that De-fendants control remain a "moving target" after a year of litigation, including two injunction or-ders, two discovery orders, an appeal, and extensive collateral civil and criminal proceedings.

The prejudice from Defendants' failure "to produce documents … or producing them months [late]," *Flame*, 2014 WL 3895933, at *12, affects the courts as well as Plaintiffs. Defend-ants' "actions (or omissions) … needlessly increased the expense, annoyance, and delay of these proceedings," and improperly obstructed the injunction litigation in this Court and in Defendants' pending appeal. *Flame*, 2014 WL 3895933, at *12; *see also Brooks*, 2018 WL 7488924, at *16–17 (finding prejudice where defendant refused "to completely and expeditiously disclose and pro-duce documents," such that plaintiff was "unable to adequately evaluate its case" and had to "ex-pen[d] considerable time and incu[r] significant monetary expenses" to enforce orders); *Nieves*, 2020 WL 2858808, at *4 (similar where Defendants' discovery violations "forc[ed] [Plaintiff] to litigate blindly"). This prejudice is particularly significant because the "traditional office of a

17

preliminary injunction is to protect the *status quo* and to prevent irreparable harm during the pendency of a lawsuit ultimately to preserve the court's ability to render a meaningful judgment on the merits." *In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 525 (4th Cir. 2003); *see* Dkt. 99 at 17–18.  In order to "ensure that [D]efendant[s]' assets are not so dissipated that a monetary judgment will be frustrated," *Hughes Network Sys. v. Interdigital Commc'ns*, 17 F.3d 691, 696 (4th Cir. 1994), this Court sought to protect and maintain the *status quo* through injunction orders. *See* Dkts. 16, 57, 84; *U.S. ex rel. Rahman v. Oncology Assocs.*, 198 F.3d 489, 496 (4th Cir. 1999). It then ordered discovery in lieu of contempt so Defendants could substantiate their defenses. Dkt. 94.  But Defendants squandered this opportunity, instead opting to defy the Court's discovery orders and use the discovery period to dissipate assets and attack this Court's rulings.

> ***Need for Deterrence.*** Defendants' "[c]ontinued contumacious behavior and abuse of the Courts through non-compliance with its orders cannot be tolerated," and "deterrence is greatly needed." *Flame*, 39 F. Supp. 3d at 765; *see also Brooks*, 2018 WL 7488924, at \*17 ("The Court cannot countenance complete disregard for its discovery orders and must fashion sanctions with an appropriate amount of deterrent effect.").  To that end, "the most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 642–43 (1976).  Severe sanctions are appropriate because "parties are expected to take the Court's orders, instructions, and timelines seriously." *Lloyd's*, 2019 WL 3366103, at \*9; *see also Zornes v. Specialty Indus., Inc.*, 1998 WL 886997, at \*5–9 (4th Cir. 1998); *Mut. Fed. Sav. & Loan Ass'n v. Richards & Assocs.*, 872 F.2d 88, 92–94 (4th Cir. 1989); *McKenna v. Sovran Bank NA*, 1987 WL 30159, at \*3–5 (4th Cir. 1987).

*Inadequacy of Alternative Sanctions.* The sanctions Plaintiffs seek are necessary because Defendants have shown time and again that they will not comply with this Court's orders. *See, e.g.*, *McDonald v. Robinson*, 2018 WL 7001680, at *6 (E.D. Va. Dec. 26, 2018) (Buchanan, J.) (imposing default judgment because "[i]mposition of lesser sanctions will not cure [the material prejudice to Plaintiffs]"), *adopted* 2019 WL 166548 (E.D. Va. Jan. 10, 2019). The sanctions this motion requests are the minimum required for Defendants' unabated discovery misconduct.

## II.    DEFENDANTS' DISCOVERY RESPONSES FORECLOSE SEVERAL DEFENSES

Defendants' discovery abuses foreclose their defenses in at least two ways. *First*, they necessitate overruling the injunction defenses tied to Defendants' discovery violations. *Second*, they preclude reliance on related factual claims and evidence to defend this suit. Such preclusive sanctions are particularly appropriate here because even Defendants' deficient productions negate their challenge to the Court's order for $21.25 million in judgment security. *See supra* (documenting at least $18 million in lease-related fees in addition to $5 million in White Peaks proceeds); *S.E.C. v. Liu*, 2021 WL 943743, at *2 (9th Cir. Mar. 12, 2021) (affirming that it is not necessary to trace specific fraud proceeds at the preliminary injunction stage, and upholding a total asset freeze to "prevent a defendant from dissipating assets" and thereby "preserve the possibility of equitable remedies") (quotation marks omitted).

### A.    Defendants' Discovery Misconduct Forecloses the Affirmative Injunction Defenses the Court Ordered the Discovery to Address

"The facts giving rise to the need for sanctions at this time are undisputed and demonstrate a remarkable disobedience in the face of numerous court Orders." *Axiom*, 2011 WL 2560096, at *3. The orders here compelled discovery into Defendants' unsubstantiated claims that they "do not have anywhere near enough available cash or other liquid assets to be able to place $21,250,000 into escrow," and "never received anywhere near that amount of money in connection with the

transactions" at issue in this suit, Dkt. 193-2 at 18:25–19:1.  Defendants' failure to comply with this discovery forecloses these defenses.  If Defendants' misconduct had occurred in full merits discovery, the proper remedy would be a default judgment.[13]  In the more limited discovery context here, Plaintiffs request only the more modest sanction of striking or otherwise overruling the affected defenses.  *See, e.g.*, *Lloyd's*, 2019 WL 3366103, at *9 (imposing "preclusion sanctions" that limited defendant's positions at summary judgment and trial); *Wu v. Tseng*, 2008 WL 4360990, at *6–7 (E.D. Va. Sept. 22, 2008) (creating presumptions against defendants).

This sanction is particularly appropriate because Defendants' misconduct has deprived not only Plaintiffs, but also this Court and the Fourth Circuit, of "critical information" that Defendants control and have affirmatively raised as injunction defenses.  *Nieves*, 2020 WL 2858808, at *4 ("Because [Plaintiff] lacks essential discovery materials … other possible sanctions [short of preclusion]… would be ineffective"); *Brooks*, 2018 WL 7488924, at *12, *17 (same, recommending default judgment for "failing to comply with … discovery orders"), *adopted* 2019 WL 969572 (E.D. Va. Jan. 11, 2019) and *clarified* 2019 WL 969569 (E.D. Va. Feb. 5, 2019); *Mya Saray, LLC v. Al-Amir*, 831 F. Supp. 2d 922, 926, 934–35 (E.D. Va. 2011) ("[T]he only remedy that will prevent the defendants from engaging in additional nonsense is the entry of default.").

Indeed, Defendants' discovery abuses here are at least on par with conduct this Court has repeatedly sanctioned with the heavier penalty of a default judgment.  Here, as in *Mya Saray*, Defendants have engaged in "a consistent pattern of indifference and disrespect for the authority

---

[13]  *See, e.g.*, *Anderson*, 155 F.3d at 502 (affirming Rule 37(b) default judgment where defendant "was extremely dilatory in responding to both interrogatories and requests for documents"); *Axiom*, 2011 WL 2560096, at *7 (entering Rule 37(b) default because defendants "failed to comply with two explicit orders of the District Judge compelling defendants to 'fully comply with all outstanding discovery requests'"); *Brooks*, 2018 WL 7488924, at *17 (same, holding that Defendant "is a sophisticated party with sophisticated counsel [whose] [r]efusal to comply with this Court's orders can only be interpreted as an unabashed flouting of the Court's authority").

of th[e] Court," demonstrating that they have "no intention of abiding by the Federal Rules of Civil Procedure, this Court's orders, or even advice from counsel."  831 F. Supp. 2d at 934.  Further, like the defendants in *McDonald*, *Nieves*, and *Brooks*, they did so by refusing "to comply with their discovery obligations on numerous occasions" after "being directly instructed" to do so. *McDonald*, 2018 WL 7001680, at *4, *6; *Nieves*, 2020 WL 2858808, at *4 (entering default after the defendant "filed *some* responses to Plaintiff's interrogatories," but the Court found them "inadequate"); *Brooks*, 2018 WL 7488924, at *12–15 (same where defendants failed to produce responsive information and made "multiple lies to the Court").[14]  This misconduct, along with evidence sifted from Defendants' untimely productions, precludes them from pursuing the defenses they have failed to substantiate for over a year in violation of multiple court orders.

### B.    Defendants' Misconduct At a Minimum Precludes Certain Facts and Evidence

In addition to striking the foregoing injunction defenses, the Court should enter an order deeming related facts established and precluding Defendants from relying on information they "failed to produce, or produced very late," in violation of this Court's orders.  *Flame*, 2014 WL 3895933, at *13; *see also, e.g.*, *Baker v. Curtis W. Key Plumbing Contractors, Inc.*, 2016 WL 11672046, at *9 (E.D. Va. Dec. 8, 2016) (barring reliance on evidence defendants failed "to timely search for and produce in discovery"); *Thomas v. FTS USA, LLC*, 2016 WL 3566657, at *4 (E.D. Va. June 24, 2016) (similar); *Wu*, 2008 WL 4360990, at *6–7 (similar).

The precedents above reflect Rule 37(b)'s express authorization to "prohibit[] [a] disobedient party from supporting or opposing certain claims or defenses" as a sanction for discovery

---

[14] *See also Wright v. James City Cty.*, 2014 WL 1056693, at *3 (E.D. Va. Mar. 18, 2014), *aff'd*, 589 F. App'x 186 (4th Cir. 2015) (dismissing pleading because the offending party had "previously been granted every opportunity and multiple extensions of time to provide the information," and "[p]arties cannot be allowed to ignore direct orders of the court with impunity") (quotation marks omitted).

violations.   Fed. R. Civ. P. 37(b)(2)(A)(ii).   Here, the record at a minimum compels a Rule 37(b)(2)(A)(i) order that deems the following facts established and precludes Defendants from relying on any evidence to the contrary:  (i) Defendants received at least $21.25 million in proceeds from the Amazon transactions in suit; (ii) Defendants pose a substantial risk of asset dissipation; and (iii) Defendants are precluded from arguing or presenting evidence that their assets are insufficient to post judgment security.  *See Flame*, 39 F. Supp. 3d at 766; *Sanders v. Smith et al.*, 2014 WL 12591161, at *2 (E.D. Va. Aug. 29, 2014); *see also Fin. Mkts. Int'l, Inc. v. Booz Allen Hamilton, Inc.*, 2013 WL 5537817, at *4 (E.D. Va. Sept. 16, 2013) (excluding untimely testimony), *adopted* 2013 WL 5538341 (E.D. Va. Oct. 7, 2013).  Such preclusion is necessary because Defendants "ha[ve] not provided a reasonable excuse for [their] failure to comply with the Court's directives," and "simply offered … conclusory assertion[s]" while "re-hash[ing]" positions the Court already rejected.  *Volumetrics Med. Imaging, L.L.C. v. Toshiba Am. Med. Sys., Inc.*, 2011 WL 2600718, at *8 (M.D.N.C. June 29, 2011).

## III.   DEFENDANTS HAVE WAIVED THEIR PRIVILEGE CLAIMS

Defendants continue to withhold responsive information from over 6,300 documents under untimely and facially improper privilege claims in violation of the Court's November order and controlling law.  The Court should overrule these privilege claims and order immediate production.

### A.   Defendants' Privilege Claims Violate the Court's November Order

The Court's November order alone bars Defendants' untimely and deficient privilege claims.  When Defendants' discovery responses were due last summer, they produced only a four-entry, facially deficient redaction log and stated "that is all you will be receiving."  Dkt. 193-9.  Based on this record, the Court held in November that it was "not allowing [Defendants] to have *any* privilege objections" beyond the redaction log.  Ex. 1 at 13:3–18 (emphasis added).  The Court then said Defendants "don't need to review [responsive documents]," "just … produce them," *id.*

at 13:4–5, and granted Plaintiffs' motion to compel production of "*all* documents and information responsive to the 22 requests the Court approved in July," Dkt. 231; Dkt. 191 at 20, 25; Dkt. 215 at 12. This ruling alone forecloses the privilege claims in Defendants' December 31 log.

### B. Defendants' Privilege Claims Are Untimely and Waived

Even if the Court's November 13 order had permitted additional privilege assertions, which it did not, they must be overruled as untimely. The November order required Defendants to "complete responses … within eleven (11) days"—*i.e.*, by November 24. Dkt. 231. Rule 34 requires a producing party to state whether responsive material is being withheld on the basis of privilege or other objections. Fed. R. Civ. P. 34(b)(2)(C). And Rule 26 states that, when "a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed" with sufficient detail to "enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A). Defendants failed to do any of this in their August or September productions, or at any other point prior to the November 24 deadline this Court set for "produc[ing] everything" responsive to the July requests. Indeed, they failed to do so even after the Court's Rule 37 deadline.

This failure is material and highly prejudicial. This Court has held that a "plain reading of Federal Rule of Civil Procedure 26(a)(5)(A) requires the production of a privilege log *when information is withheld*." *Clark v. Trans Union, LLC*, 2017 WL 11504623, at *8 (E.D. Va. Mar. 1, 2017) (emphasis original). The reason is that a timely log enables litigants and courts to assess whether "the particular communications at issue are privileged and that the privilege was not waived." *RLI Ins. Co. v. Conseco, Inc.*, 477 F. Supp. 2d 741, 750 (E.D. Va. 2007) (quoting *In re Grand Jury Subpoena*, 341 F.3d 331, 335 (4th Cir. 2003)). Defendants violated this obligation— and thus waived their privilege claims—not once, but several times. *See Sectek*, 2016 WL

23

5897763, at *3 ("Because SecTek failed to file a privilege log in a timely manner, the Court finds that SecTek's privilege claim … is waived."); *Herbalife Int'l, Inc. v. St. Paul Fire & Marine Ins. Co.*, 2006 WL 2715164, at *4 (N.D. W. Va. Sept. 22, 2006) ("Failure to timely produce a … log may constitute a waiver of any asserted privileges."); *AVX Corp. v. Horry Land Co.*, 2010 WL 4884903, at *4 (D.S.C. Nov. 24, 2010) (same).

### C.    Defendants' Privilege Claims Are Facially Deficient

Even if Defendants' December privilege assertions were not barred by the November order, they are facially deficient.  Plaintiffs raised these deficiencies in January, and in February Defendants agreed that several entries were improper, *see* Ex. 11 (log entries 4945, 4981, 4982, 4985, 4986), and committed to "re-review our privilege log to determine if there are other documents that were over withheld," Ex. 23.  They have never reverted on this review despite repeated requests to do so.  This history independently forecloses their privilege claims, which remain unsubstantiated and thus waived.  Notably, Defendants' log shows that they are withholding responsive communications with third parties that are plainly not attorneys.  *See e.g.*, Ex. 11 at 473, 484 (CrossCon Real Assets Capital, Inc.); *id.* at 230, 233 (TIAA Investments); *id.* at 2245, 3335 (DJM Architecture LLC).  Further, their log is facially deficient because:

- Numerous entries fail to identify the sender or recipient.  *See, e.g.*, Ex. 11 (log entries 61–66, 71–74; 243, 264, 652, 705–706, 775, 839, 843–844, 948).  And all entries fail to specify any attorneys involved in the withheld documents, or any attorney's relationship to Defendants.

- The log's document descriptions are patently inadequate.  Hundreds of entries say only "Email exchange with counsel RE Sterling Project," *see, e.g.*, Ex. 11 (log entries 3373–3374, 3379–3380, 5139–5140); *id.* (log entries 37–46) (similar).  And for hundreds of others, the description column appears to be a cut-and-paste of the subject column.  *See, e.g.*, *id.* (log entries 2–3, 5–12).  Defendants' descriptions of alleged work product privilege are similarly deficient.  *See, e.g.*, Ex. 11 (log entries 65–66) ("draft allonge"); *id.* (log entries 71–74) ("Legal invoice").

- The log also contains multiple categories of documents that presumptively fall outside the attorney-client and work product privileges, including numerous "[l]egal invoice[s]" and

"[c]alendar invite[s]." *See, e.g.*, Ex. 11 (log entries 5539–5540); *id.* (log entries 743–744).

- It is difficult or impossible to determine the correct date and time of many documents on the log because the time or date listed in the log does not match the information on related documents Defendants did produce. *Compare, e.g.*, Ex. 11 (log entry 376) (listing date of "4/2/2019"), *with* Ex. 33 ███████████████ .

These pervasive deficiencies independently foreclose Defendants' privilege assertions. Defendants must "establish" that particular documents they have logged or otherwise withheld are privileged and "that the privilege was not waived." *RLI*, 477 F. Supp. 2d at 750 (quotation marks omitted). "[A] conclusory assertion that a document is privileged or protected is insufficient under Rule 26(b)(5)." *Buskirk v. Wiles*, 2016 WL 7118288, at *4 (S.D. W. Va. Dec. 6, 2016); *see Neuberger Berman Real Estate Income Fund, Inc. v. Lola Brown Tr. No. 1B*, 230 F.R.D. 398, 406 n.14 (D. Md. 2005) (the "burden" of establishing privilege "cannot be discharged by merely conclusory or ipse dixit assertions." (quotation marks omitted)). Courts construe these requirements strictly. *RLI*, 477 F. Supp. 2d at 750–51. Accordingly, "*an improperly asserted privilege is the equivalent of no privilege at all*." *Byrnes v. Jetnet Corp.*, 111 F.R.D. 68, 71 (M.D.N.C. 1986) (emphasis added); *Rambus, Inc. v. Infineon Techs. AG*, 220 F.R.D. 264, 273–74, 290 (E.D. Va. 2004) (similar); *Clark*, 2017 WL 11504623, at *8 (similar); *Cappetta*, 2008 WL 5377934, at *4 (same).

## IV. DEFENDANTS' DISCOVERY ABUSES WARRANT FORENSIC EXAMINATION, SPECIAL MASTER OVERSIGHT, AND ENFORCEMENT FINES

As a sanction for Defendants' discovery misconduct in violation of multiple orders, and to ensure that evidence and assets are preserved and produced, the Court should at a minimum order Defendants to furnish their "electronic devices and email accounts for forensic imaging and inspection" by a third party that can perform Court-approved examinations and searches for responsive information. *Hosch v. Bae Sys. Info. Sols., Inc.*, 2015 WL 12227738, at *1 (E.D. Va. Apr. 28, 2015) (granting motion for "forensic inspection" where party refused to provide responsive docu-

ments) (citing Dkt. 53; Buchanan, J.); *Cappetta*, 2008 WL 5377934, at *6 (requiring forensic im-

aging where defendant failed to produce responsive information within 90 days of requests).[15]

The facts here are far more egregious than other cases involving forensic examinations,

including *Cappetta*, where the Court ordered forensic relief in adjudicating plaintiffs' first motion

to compel—*not*, as here, *after* the Court has already *granted* such a motion and previously ordered

the relevant discovery. (Dkts. 95, 231). The defendant in *Cappetta* produced an untimely and

inadequate privilege log, "failed to answer some of the discovery" served, belatedly identified

"responsive information," and provided "evasive or incomplete answers to many questions or re-

quests." 2008 WL 5377934 at *6. This more modest "pattern of obstruction and delay by De-

fendant" was sufficient to justify mirror imaging of a laptop in its possession. *Id*. at *5 .

These precedents reflect the "well-settled" rule that courts may compel forensic inspections

where there are "discrepancies or inconsistencies in the responding party's discovery responses,"

*Schreiber v. Friedman*, 2017 WL 11508067, at *5 (E.D.N.Y. Aug. 15, 2017) (quotation marks

omitted), or where a party persistently "with[o]ld[s] responsive documents," *Chevron Corp. v.

Donziger*, 425 F. Supp. 3d 297, 302 (S.D.N.Y. 2019). This case presents precisely such circum-

stances. *See Schreiber*, 2017 WL 11508067, at *5. Accordingly, the Court should at the very least

order Defendants to produce their "electronic devices and email accounts" for imaging and inspec-

tion. *Hosch*, 2015 WL 12227738, at *1; *see Physicians Interactive v. Lathian Sys., Inc*., 2003 WL

---

[15] *See also IHS Glob. Ltd. v. Trade Data Monitor LLC*, 2019 WL 7049687, at *3 (D.S.C. Dec. 23, 2019) ("[F]orensic imaging is not uncommon in the course of civil discovery.") (quotation mark omitted); *Nacco Materials Handling Grp., Inc. v. Lilly Co.*, 278 F.R.D. 395, 406 (W.D. Tenn. 2011) ("the court finds that analyses of the data on the hard drives of some of the computers is warranted at this time and that [defendant] should bear these costs"); *Koosharem Corp. v. Spec Pers., LLC*, 2008 WL 4458864, at *2 (D.S.C. Sept. 29, 2008) (ordering forensic inspection of computers where "defendants' fail[ed] to produce documents and … relevant electronic information stored on the computers").

23018270, at *10 (E.D. Va. Dec. 5, 2003) (ordering "a 'mirror image' of" defendant's computer and "electronic data"); *Delta T, LLC v. Williams*, 337 F.R.D. 395, 403 (S.D. Ohio 2021) (same based on party's "unwillingness [and] failure to produce relevant information") (quotation marks omitted); *Koosharem*, 2008 WL 4458864, at *2 (similar).

As a complement to forensic examination, the Court should appoint a special master to oversee Defendants' discovery responses. Although this Court has "inherent powe[r]" to order this relief, such appointments are "guided by" Rule 53. *Nat'l Ass'n of Radiation Survivors v. Turnage*, 115 F.R.D. 543, 560 (N.D. Cal. 1987). The rule provides that "a court may appoint a master … to … address pretrial and posttrial matters that cannot be effectively and timely addressed by an available district judge or magistrate judge." Fed. R. Civ. P. 53(a)(1)(C). Such appointments routinely include "overseeing discovery." *Amorin v. Taishan Gypsum Co.*, 2019 WL 2172707, at *6 (E.D. Va. May 20, 2019). And they are particularly appropriate if a "continuing need to resolve discovery disputes undermines any confidence as to future cooperation between the litigators." *Chisolm v. TranSouth Fin. Corp.*, 194 F.R.D. 538, 554 n.13 (E.D. Va. 2000). Indeed, in "a dispute aris[ing] between the parties respecting … discovery," the Fourth Circuit has held that "upon the motion of either party, the Court *shall* appoint a [s]pecial master … to supervise the discovery." *NLRB v. Apex Decorating, Inc.*, 1992 WL 372393, at *1 (4th Cir. Oct. 20, 1992).

The record here supports such an appointment, either alone or as a complement to a forensic review, at Defendants' expense. *See, e.g.*, *In re Search Warrant Issued June 13, 2019*, 942 F.3d 159, 181 (4th Cir. 2019), as amended (Oct. 31, 2019) (holding that a "magistrate judge (or an appointed special master) … must perform the privilege review of [certain disputed] materials").[16]

---

[16] *See also Turnage*, 115 F.R.D. at 558-61 ("impos[ing] a variety of measures to sanction the defendant's multiple [discovery] transgressions," including "the appointment of a special master at defendant's expense to supervise all further discovery") (collecting cases).

Indeed, courts have routinely ordered such relief in cases involving far less egregious discovery abuses. *See, e.g.*, *Castle Aero Fla. Int'l, Inc. v. Mktg. & Fin. Servs., Inc.*, 2013 WL 12149691, at *1–3 (D. Minn. Apr. 5, 2013) (appointing special master "to oversee the production of documents" and "independently investigate the status of Defendants' … accounts" because they failed to "produce sufficient records" or comply with discovery orders regarding the "whereabouts and nature of [$3.6 million]" central to "th[e] litigation").

Finally, Defendants' "blatan[t] fail[ure] to respond to discovery requests," "fail[ure] to produce documents," and other "act[s] in contravention of the court's [orders]" support the imposition of daily fines until they comply. *Axiom*, 2011 WL 2560096, at *3; *see generally Buffington v. Baltimore Cty., Md.*, 913 F.2d 113, 133 (4th Cir. 1990) (quoting *Hicks v. Feiock*, 485 U.S. 624, 632 (1988)) (endorsing civil contempt fines payable to the court "when the defendant can avoid paying the fine simply by performing the affirmative act required by the court's order").  The Fourth Circuit has endorsed the use of such sanctions "to coerce obedience to a court order or to compensate the complainant for losses sustained as a result of the contumacy." *Cromer v. Kraft Foods N. Am., Inc.*, 390 F.3d 812, 821 (4th Cir. 2004) (quotation marks omitted) (citing authorities).  Here, a daily fine payable to the Clerk of Court, starting at $1,000 and doubling each day Defendants fail to comply with the terms of the Court's orders, would accord with this Court's precedents. *See, e.g.*, *Bralley v. Carey*, 2011 WL 6326503, at *5–6 (E.D. Va. Dec. 1, 2011).

## CONCLUSION

For the reasons above, Plaintiffs respectfully request that the Court overrule the injunction defenses impacted by Defendants' violation of the Court's discovery orders, overrule the untimely and unsupported privilege claims Defendants asserted in December, and order forensic examination of their devices and special master oversight of their responses to the current requests and associated orders, at Defendants' expense and subject to daily court fines for non-compliance.

Dated: June 2, 2021                    Respectfully submitted,

                                       *s/ Luke M. Sullivan*
                                       Elizabeth P. Papez (*pro hac vice*)
                                       Patrick F. Stokes (*pro hac vice*)
                                       Claudia M. Barrett (*pro hac vice*)
                                       Luke M. Sullivan (Va. State Bar No. 92553)
                                       GIBSON, DUNN & CRUTCHER LLP
                                       1050 Connecticut Avenue, N.W.
                                       Washington, D.C. 20036-5306
                                       Telephone:  (202) 955-8500
                                       Facsimile:  (202) 467-0539
                                       epapez@gibsondunn.com
                                       pstokes@gibsondunn.com
                                       cbarrett@gibsondunn.com
                                       lsullivan@gibsondunn.com

                                       *Counsel for Plaintiffs Amazon.com, Inc. and Amazon Data*
                                       *Services, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on June 2, 2021, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system.  I will send then send the document and a notification of such filing (NEF) to the following parties via U.S. mail to their last-known address and by email, where noted:

Jamie Hubbard
Stimson Stancil LaBranche Hubbard
1652 Downing Street
Denver, CO 80218
*Counsel for Defendants White Peaks Capital LLC and NOVA WPC LLC*

Villanova Trust
c/o Christian Kirschner, Trustee
3924 Wallace Lane
Nashville, TN 37215

Allcore Development LLC
6870 W 52nd Avenue, Suite 203
Arvada, CO 80002

Finbrit Holdings LLC
6870 W 52nd Avenue, Suite 203
Arvada, Colorado 80002

Casey Kirschner
635 N. Alvarado Lane
Plymouth, MN 55447
By email: casey.kirschner@gmail.com


*s/ Luke M. Sullivan*
Luke M. Sullivan
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
Telephone:  (202) 955-8500
Facsimile:  (202) 467-0539
lsullivan@gibsondunn.com

*Counsel for Plaintiffs Amazon.com, Inc. and Amazon Data Services, Inc.*