# EXHIBIT 13

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Tel 202.955.8500
www.gibsondunn.com

Elizabeth P. Papez
Direct: +1 202.955.8608
Fax: +1 202.530.9698
EPapez@gibsondunn.com

January 26, 2021

VIA E-MAIL

Stanley L. Garnett
Brownstein Hyatt Farber Schreck, LLP
410 Seventeenth Street, Suite 2200
Denver, CO. 80202
(303) 223-1286
Sgarnett@bhfs.com

George Calhoun
Ifrah Law
717 Pennsylvania Ave, N.W.
Washington, DC 20006
(202) 524 – 4147
george@ifrahlaw.com

Re:   No. 20-cv-484, *Amazon.com, Inc. v. WDC Holdings LLC et al.*, EDVA

Dear Stan and George:

We write regarding the supplemental answers to Plaintiffs' First Set of Interrogatories that your clients, Brian Watson and WDC Holdings LLC d/b/a Northstar Commercial Partners, served on January 8, 2021 in the above-captioned action, as well as regarding the Delaware Chancery Court suit (No. 2020-1026) they filed in December 2020 for relief on the same joint venture activities at issue in this action and addressed in the Court's June 5, 2020 Preliminary Injunction.

**January 8, 2021 Supplemental Response.**  The January 8 supplement admits that from "April 2, 2020 through the present," your clients have disposed of assets worth $82.5 million. The supplement makes this admission in response to an interrogatory that, pursuant to the Court's July and November discovery orders:  (a) requires your clients to disclose the value of "each transfer or disposition of any assets or financial interests of any kind" over $10,000 during this time period; and (b) provide the "details of and reasons for the transfer(s) or disposition(s), as well as the current or last known location of the asset(s) or interest(s)."

The January 8 supplement confirms that your clients disposed of assets that generated at least $82.5 million in cash proceeds, but does not provide required information about the dispositions.  These deficiencies are highly prejudicial in light of your clients' ongoing failure to post one penny of the escrow or bond security mandated by the Court's April 28, 2020 Temporary Restraining Order and June 5 Preliminary Injunction.

**GIBSON DUNN**

Upon receiving the January 8 supplement, we reviewed the settlement statements you referenced therein, as well as apparently relevant portions of the untimely document productions you made between Thanksgiving and New Year's Eve. This ongoing and costly examination revealed that the settlement statements and other information identified in the supplement fail to account for several million dollars of the admitted proceeds. And the remaining information in the supplement does not explain—much less excuse—your clients' ongoing violation of the Court's injunctive orders. Indeed, the supplement independently violates your clients' obligations under the Court's July and November discovery orders because it is untimely and incomplete in failing to disclose required information about the asset dispositions and resulting proceeds.

As a threshold matter, the numbers in the supplement and accompanying Excel sheet do not add up. The spreadsheet fails to account for at least $18,865,506 of the proceeds from the disclosed asset liquidations. And it states that another $15.2 million has been used to pay "Other loans" or unidentified "Investors," but fails to provide the transaction details the interrogatory and Court orders require. Accordingly, the supplement confirms that your clients generated $34.6 million in net proceeds after payment of the mortgages on the assets sold since April 2020. Yet it fails to document any justification for your clients' failure to use some or all of these proceeds to comply with the Court's orders. Instead, it admits that your clients converted part of the unencumbered proceeds to personal and business uses after making millions of dollars of preferential transfers to unidentified investors and creditors.

You previously represented to the District Court that your clients lack the liquidity to fund the escrow or otherwise post the judgment security the Court ordered in April and June 2020. But the recent asset dispositions generated more cash than required to satisfy these provisions, and your clients' failure to justify their alternative use of the proceeds violates their obligations under the Court's orders and federal discovery rules. Accordingly, reserving all rights, including Plaintiffs' right to seek discovery and other relief on your clients' transfers to third parties, Plaintiffs hereby demand that your clients:

- ***Immediately cease and desist*** liquidating or otherwise dissipating any assets within Watson or WDC/Northstar's possession, custody, or control as defined in Federal Rule of Civil Procedure 26, including any of the proceeds from the executed dispositions addressed in the January 8 supplement and the proposed dispositions of the Churchill Drive and other assets addressed in our December 18, 2020 letter;

- ***Immediately update and serve no later than 9 am EST on January 27, 2021***, an updated supplement that contains the required transaction details, including the identity of every transferee, including any law firm, that has received the proceeds from each of the sales, an accounting of all personal and business "expenses" referenced in the January 8 supplement, and the identities of all third parties that received any portion of the $82.5 million disclosed in the January 8 supplement or from other asset dispositions responsive to the interrogatory since January 8, 2021.

**Delaware Suit.** On December 15, 2020, Watson and WDC/Northstar filed suit in Delaware against several entities and individuals presently serving as landlords and/or developers of the Amazon lease sites at issue in the EDVA civil action and parallel criminal investigation. The Delaware suit arises out of the same transactions as the EDVA action and investigation, and

**GIBSON DUNN**

alleges conduct, including by an individual defendant, that involves sworn testimony and Amazon Confidential Information directly addressed in the EDVA proceedings giving rise to the June 5 Preliminary Injunction and EDVA Protective Order. But the Delaware complaint references the EDVA action only in a footnote, and makes no mention of the Preliminary Injunction, ensuing discovery orders, or Protective Order. Your clients' initiation of collateral litigation involving confidential information and transactions covered by the EDVA Preliminary Injunction, Protective Order, and July and November discovery orders raises serious procedural and substantive concerns. Reserving all rights and remedies in this action and the related Delaware proceedings as relevant to Plaintiffs' interests, your clients' Delaware filings raise at least the following issues:

*Use of Amazon Confidential Information*. In an email following the FBI raid cited in Paragraph 13 of the Delaware complaint, Brian Watson references a "strict confidentiality agreement with Amazon" concerning the development properties at issue in the criminal investigation. Consistent with this and other acknowledgments by your clients, the Preliminary Injunction and Protective Order impose strict limits on your clients' use of confidential information about the transactions they have now raised in Delaware. Notably, Paragraph 5 of the Preliminary Injunction expressly requires your clients to "immediately return any and all Amazon confidential or otherwise non-public proprietary information in their possession except as necessary for use in this case in accordance with the confidential treatment and other obligations prescribed herein." Further, in response to the Court's July and November discovery orders, your clients provided an inventory of such information. In addition, your clients and other parties to the EDVA civil action have designated "confidential" under the EDVA Protective Order various information referenced in the Delaware complaint. In accordance with these and other authorities and precedents, please:

- *Immediately cease and desist* from using any Amazon confidential information in the Delaware action or otherwise in violation of Paragraph 5 of the Preliminary Injunction;

- *Certify in writing by 9 am EST on January 27, 2021*, that: (i) you have not disseminated or otherwise disclosed confidential information covered by Paragraph 5 of the Preliminary Injunction or the EDVA Protective Order for any purpose not permitted by those orders; and (ii) if you have made any such disclosures, that you have notified the recipients, including the Court or parties in Delaware, of the terms of the EDVA Preliminary Injunction and Protective Order and requested immediate return or destruction of all information disclosed in violation of these orders.

*Claims for Fees or Other Remuneration on Amazon Development Projects*. Your clients' Delaware complaint seeks, among other things, "over $13 million in fees" on the Amazon lease transactions at issue in the EDVA civil action, as well as "approximately $53 million in the GP Promote that would be owed to" EDVA civil defendant NSIPI Administrative Manager, LLC in the EDVA action. (Del. Compl. ¶¶ 72, 81-82.) These claims relate directly to your clients' representations to the EDVA District Court and Fourth Circuit that the June 5 Preliminary Injunction does not accurately reflect the amount of fees and other proceeds your clients received in relation to their transactions with Amazon. The Court's July and November discovery orders required your clients to substantiate these claims.

3

# GIBSON DUNN

Notably, Plaintiffs' Interrogatory 3 requires your clients to "describe in detail the amount(s) and all factual and legal bases for all fees or other financial benefits of any kind that you have received or contend you are entitled to receive in connection with the Leased Transactions, the White Peaks Purchase, or any other transaction with Plaintiffs or their agents." The interrogatory specifies that this request encompasses and seeks "the individual amounts and aggregate total of all fees, remuneration, payments, or financial interests of any type that You have received to date, directly or indirectly, from Plaintiffs or any other person" on the specified Amazon transactions, as well as your grounds for demanding additional fees totaling $3,681,931 and $9.4 million on the Leased Transactions, and "GP Promote" or other interests you value "at no less than $53 million."

Your November 2020 response to Interrogatory 3 is deficient for the reasons detailed in our December 18, 2020 letter, because it does not provide the requested information and refers only generally (with no bates numbers) to materials from the untimely document productions you made after Thanksgiving. Your January 8 discovery supplement did not amend Interrogatory 3. Accordingly, and reserving all rights, we reviewed your untimely productions for information responsive to Interrogatory 3.

Those productions include a document (WDC0069428) referencing at least $18,636,919 in Northstar "Acquisition, Leasing, Development, and Asset Management" fees for the Dulles, Quail Ridge, and Manassas developments for Amazon. And our ongoing review of your productions and other data has uncovered evidence of at least $14,747,378 in Northstar fee receipts on a subset of these deals. We trust that your Delaware complaint does not improperly seek fees that your clients have already received, and thus that the "over $13 million in fees" it claims are for fees in excess of the receipts documented in the EDVA action. Reserving all rights, please:

> ***Immediately confirm in writing*** that your clients' Delaware claims seek only unpaid fees or other unpaid amounts related to the Amazon transactions; and
>
> ***Produce by 9 am EST on January 27, 2021*** a signed supplemental response to Interrogatory 3 that identifies the specific dates, amounts, and recipients of all fees and other payments remitted to your clients' possession, custody, or control in relation to the Amazon transactions, along with the bates numbers of all documents that your clients rely upon to support their response.

The requests in this letter are without prejudice to all of Plaintiffs' rights and remedies on the claims and conduct at issue in the EDVA action and related investigations. The authorities governing these rights include all relevant orders issued in that action, as well as Federal Rules of Civil Procedure 26, 34, and 37, notably the provisions of Rule 26(g) that govern "attorney or party" certifications in civil cases.

Sincerely,

Elizabeth Papez

cc: Patrick Stokes; Claudia Barrett