# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# ALEXANDRIA DIVISION

| | |
|---|---|
| AMAZON.COM, INC. and AMAZON DATA SERVICES, INC., <br><br> Plaintiffs, <br><br> v. <br><br> WDC HOLDINGS LLC dba NORTHSTAR COMMERCIAL PARTNERS; BRIAN WATSON; STERLING NCP FF, LLC; MANASSAS NCP FF, LLC; NSIPI ADMINISTRATIVE MANAGER; NOVA WPC LLC; WHITE PEAKS CAPITAL LLC; VILLANOVA TRUST; CASEY KIRSCHNER; ALLCORE DEVELOPMENT LLC; FINBRIT HOLDINGS LLC; CHESHIRE VENTURES LLC; CARLETON NELSON; JOHN DOES 1-20, <br><br> Defendants. | CASE NO. 1:20-CV-484-LO-TCB |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR
<u>RULE 37 AND CIVIL CONTEMPT SANCTIONS</u>**

**TABLE OF CONTENTS**

| | Page |
|---|---:|
| INTRODUCTION | 1 |
| RELEVANT BACKGROUND AND LEGAL STANDARDS | 3 |
| ARGUMENT | 3 |
|     I.    DEFENDANTS ADMIT THE CONDUCT AT ISSUE IN PLAINTIFFS' MOTION | 3 |
|         A.    Defendants Concede the Actions That Violate Their Discovery Obligations | 3 |
|         B.    Defendants Concede the Conduct That Forecloses Their Privilege Claims | 7 |
|     II.    THE OPPOSITION CONFIRMS ALL THE REQUIREMENTS FOR SANCTIONS | 9 |
|         A.    Defendants' Claims of "Good Faith" Are Unavailing | 9 |
|         B.    The Record Establishes Prejudice Under Controlling Law | 10 |
|         C.    The Record Establishes a Need for Deterrence | 11 |
|         D.    The Requested Sanctions Are Necessary to Address Defendants' Misconduct | 12 |
| CONCLUSION | 13 |

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Acosta v. Med. Staffing of Am., LLC*,
  2019 WL 6122016 (E.D. Va. Mar. 15, 2019) ................................................................. 6, 9

*Anderson v. Sch. Bd. of Gloucester Cty.*,
  2021 WL 1134788 (E.D. Va. Mar. 24, 2021) ..................................................................... 10

*Aung v. State Farm Fire & Cas. Co.*,
  2020 WL 2089823 (E.D. Ky. Apr. 30, 2020) ...................................................................... 4

*Brown v. Nucor Corp.*,
  785 F.3d 895 (4th Cir. 2015) ............................................................................................ 11

*Cappetta v. GC Servs. Ltd. P'ship*,
  2008 WL 5377934 (E.D. Va. Dec. 24, 2008) ...................................................................... 9

*Certain Underwriters at Lloyd's v. AdvanFort Co.*,
  2019 WL 3366103 (E.D. Va. July 25, 2019) ....................................................................... 6

*Clark v. Trans Union, LLC*,
  2017 WL 11504623 (E.D. Va. Mar. 1, 2017) ................................................................... 8, 9

*Dig. Vending Servs. Int'l, Inc. v. Univ. of Phoenix, Inc.*,
  2013 WL 5533233 (E.D. Va. Oct. 3, 2013) ....................................................................... 13

*Disney Enters., Inc. v. Kappos*,
  923 F. Supp. 2d 788 (E.D. Va. 2013) .................................................................................. 4

*E.E.O.C. v. Freeman*,
  778 F.3d 463 (4th Cir. 2015) ........................................................................................... 4, 5

*Flame S.A. v. Indus. Carriers, Inc.*,
  2014 WL 3895933 (E.D. Va. Aug. 8, 2014) ...................................................................... 10

*Flame S.A. v. Indus. Carriers, Inc.*,
  39 F. Supp. 3d 752 (E.D. Va. 2014) .............................................................................. 2, 12

*Hinkle v. City of Clarksburg*,
  81 F.3d 416 (4th Cir. 1996) .............................................................................................. 13

*Law Enforcement All. of Am., Inc. v. USA Direct, Inc.*,
  61 F. App'x 822 (4th Cir. 2003) ......................................................................................... 9

*Matilla v. S. Ky. Rural Elec. Co-op. Corp.*,
  240 F. App'x 35 (6th Cir. 2007) ......................................................................................... 4

## TABLE OF AUTHORITIES
(*continued*)

Page(s)

*Metro Ford Truck Sales, Inc. v. Ford Motor Co.*,
   145 F.3d 320 (5th Cir. 1998) ...................................................................................................4

*In re Microsoft Corp. Antitrust Litig.*,
   333 F.3d 517 (4th Cir. 2003) .................................................................................................11

*Munchkin, Inc. v. Playtext Prods., LLC*,
   600 F. App'x 537 (9th Cir. 2015) ............................................................................................4

*U.S. ex rel. Rahman v. Oncology Assocs., P.C.*,
   198 F.3d 489 (4th Cir. 1999) .................................................................................................11

*Reid v. Lockheed Martin Aeronautics Co.*,
   205 F.R.D. 655 (N.D. Ga. 2001) .............................................................................................5

*SEC. v. Elfindepan, S.A.*,
   206 F.R.D. 574 (M.D.N.C. 2002) ...........................................................................................6

*Sectek Inc. v. Diamond*,
   2016 WL 5897763 (E.D. Va. Oct. 6, 2016) ............................................................................9

*Southern v. Bishoff*,
   675 F. App'x 239 (4th Cir. 2017) ............................................................................................4

*Wright v. James City Cty.*,
   2014 WL 1056693 (E.D. Va. Mar. 18, 2014) .................................................................11, 12

**Rules**

Fed. R. Civ. P. 26..............................................................................................4, 5, 8, 12, 13

Fed. R. Civ. P. 33..............................................................................................................6

Fed. R. Civ. P. 37....................................................................................................1, 2, 10, 12

**INTRODUCTION**

Defendants Watson and WDC Holdings have violated this Court's discovery orders since they were entered last year. Plaintiffs' latest Rule 37 motion seeks sanctions for these violations. Dkt. 284 ("Mot."). Defendants' opposition confirms the case for relief. Dkt. 292 ("Opp.").

Defendants admit that the Court ordered the relevant discovery to test their claim that they "couldn't comply with the preliminary injunction" entered last June. Opp. at 2 (quotation omitted). Defendants insist they have "thoroughly responded" to this "narrow purpose," and that Plaintiffs now improperly "demand essentially every piece of paper [Defendants] posses[s]," "prior to the case even being at issue," while "inexplicably fail[ing] to file for default" against other defendants who have refused "to file an answer." *Id.* The record forecloses this revisionist history.

The proceedings in this case reflect the difference between Defendants' contumacy and other parties' compliance with the Court's orders. When Plaintiffs filed this suit last April, the Court agreed that a Temporary Restraining Order ("TRO") was necessary to protect relevant evidence and assets. Dkt. 16. Several defendants complied with the order and certified that they had already secured their proceeds from the kickback scheme in issue by disgorging those proceeds to federal prosecutors. Dkts. 41, 42-1. In contrast, Defendants violated both the TRO and ensuing preliminary injunction based on financial defenses they have not substantiated in this action or their pending "appeal," Opp. at 2, which did not stay the injunction, Dkt. 57, and concerns only one of its eight provisions (the one requiring Defendants to post $21.25 million in security).

Specifically, Defendants claimed that they "never received anywhere near" $21.25 million from the transactions in suit, Dkt. 193-2, at 18:25–19:1, and that their assets were "not sufficient" to secure such an amount, *id.* at 24:3–5. The Court held that "discovery is the answer," *id.* at 26:10–28:6, and ordered them to produce evidence of their transaction proceeds and assets last

August.  Dkt. 95.  Instead, they raised baseless objections the Court overruled in November, and then violated the Court's Rule 37 order while disposing of over $100 million in assets the Court ordered them to preserve in injunction provisions they did not appeal.  Mot. at 6–12.

Defendants seek to drown this record of sanctionable conduct in a sea of red herring.  Beyond the revisionist history above, their opposition confuses production quantity with quality, Opp. at 2–3, conflates supplementation with sufficiency, *id.*, and collapses the distinction between Rule 37 remedies and civil contempt, *id.* at 3.  None of these arguments cures Defendants' discovery violations, or validates their untimely and deficient privilege claims.  Mot. at 6–12; Opp. at 4–6, 9–10.  The prejudice from this discovery misconduct is clear.  Mot. at 16–18.  After one year and "nearly one million pages of documents," Opp. at 2, Defendants have not produced the basic financial information the Court ordered last July, *see* Mot. at 3.  Instead, they have produced wasteful and improper document dumps that foreclose, rather than substantiate, their injunction defenses.  Notably, buried among hundreds of thousands of pages of duplicative and unresponsive information is evidence of:  (i) at least $18,636,919 in lease fees beyond the $5 million Defendants admit receiving from their co-conspirators; (ii) Defendants' use of these fees to make payments to known kickback recipients, *id.* at 4 n.1; and (iii) Defendants' failure to account for nearly $19 million in proceeds from over $100 million in post-injunction asset dispositions, *id.* at 17–18.

This record supports sanctions up to and including default judgment under precedents the opposition does not address, Mot. at 17–28, and thus cannot contest.  But Plaintiffs' motion accounts for the "preliminary" phase of this case, Opp. at 2, and does not request such a severe sanction, seeking the minimum relief required for Defendants' "[c]ontinued contumacious behavior and abuse of the Court through non-compliance with its orders." *Flame S.A. v. Indus. Carriers, Inc.*, 39 F. Supp. 3d 752, 765 (E.D. Va. 2014), *aff'd*, 807 F.3d 572 (4th Cir. 2015).

## RELEVANT BACKGROUND AND LEGAL STANDARDS

The opposition's "timeline of the discovery giving rise to" Plaintiffs' motion, Opp. at 3–6, concedes the relevant dates and events from July 2020 to May 2021, Mot. at 6–12, and does not refute the additional factual and procedural background in Plaintiffs' filing. *Id.* Accordingly, that background governs the sanctions issues before the Court.

The opposition likewise concedes the controlling legal standards. Opp. at 6–7. It cites the same "elements" of "civil contempt" addressed in Plaintiffs' motion. *Id.* at 6; Mot. at 13. And it admits that Rule "37 permits sanctions where a party fails to make disclosures or cooperate in discovery," and that such relief is proper where a party "fails to obey" a court "order," Opp. at 7 (quotation alteration omitted).

## ARGUMENT

### I. DEFENDANTS ADMIT THE CONDUCT AT ISSUE IN PLAINTIFFS' MOTION

#### A. Defendants Concede the Actions That Violate Their Discovery Obligations

Defendants admit that they did not produce the "lion's share" of documents responsive to the July order until *after* the Court granted Plaintiffs' motion to compel. Opp. at 7. They also admit that, even then, they did not comply with the Court's November 24 deadline to produce or log "everything" necessary to "fully and completely" respond to the July requests. Dkt. 286-1, at 13; *see* Opp. at 7, 9. Notably, they concede that they did not "request" responsive information from their document vendor until *after* the November 13 hearing, Opp. at 9, did not even begin to review "over 70,000 potentially responsive documents" until November 24, *id*. at 4–5; *see* Mot. at 6–7, made rolling productions throughout December, did not log their privilege claims until December 31, and made deficient productions through May 2021, Opp. at 4–6. Defendants thus concede the conduct underlying Plaintiffs' motion in arguing that sanctions are "not appropriate"

3

because their "attempt[s]" to comply with the Court's orders were "reasonable." Opp. at 13 (quotation omitted). This argument fails under controlling law as applied to Defendants' own description of their discovery conduct. They say they "produced all *known* documents in their *immediate* possession, custody, or control *on or around* November 24, 2020," and later "supplemented" these productions under Rule 26(e). *Id*. at 9 (emphasis added). That is not enough. Defendants were required to collect and timely produce or log *all* responsive information within their possession, custody, or control (including information hosted by vendors). Mot. at 16 (citing authorities). They admit they failed to do so, Opp. 4-6, 9, and Rule 26(e)'s provisions on "supplemental" discovery, *id*. at 8–11, do not excuse these violations.

Courts have long "distinguish[ed] true supplementation . . . from gamesmanship," *Southern v. Bishoff*, 675 F. App'x 239, 249 (4th Cir. 2017) (quotation omitted), and held that Rule 26(e) "cannot [be] use[d] . . . as a loophole" for extending initial discovery deadlines or excusing insufficient disclosures, *E.E.O.C. v. Freeman*, 778 F.3d 463, 467 n.7 (4th Cir. 2015) (quotation omitted).[1] Although this kind of abuse is most common in expert discovery, *see id*., it applies with equal force to fact discovery under Rule 26(e), which governs "interrogator[ies], request[s] for production, and request[s] for admission." Fed. R. Civ. P. 26(e). Parties cannot use "supplemental" disclosures to "make an end-run around the normal timetable for conducting discovery," *Disney Enters., Inc. v. Kappos*, 923 F. Supp. 2d 788, 795 (E.D. Va. 2013) (quotation omitted), or to justify untimely production of information "available to the party at the time of her initial disclosure," *Aung v. State Farm Fire & Cas. Co.*, 2020 WL 2089823, at *8 (E.D. Ky. Apr. 30, 2020). That is precisely what Defendants seek to do here.

---

[1] *See also, e.g., Metro Ford Truck Sales, Inc. v. Ford Motor Co.*, 145 F.3d 320, 324 (5th Cir. 1998); *Matilla v. S. Ky. Rural Elec. Co-op. Corp.*, 240 F. App'x 35, 43 (6th Cir. 2007); *Munchkin, Inc. v. Playtext Prods., LLC*, 600 F. App'x 537, 538 (9th Cir. 2015).

4

Defendants cast their untimely responses to the Court's discovery orders as "supplements" that "comply with" Rule 26(e). Opp. at 9. But courts have rightly rejected such attempts to transform the rule's "duty" to supplement into a "right to produce information in a belated fashion." *Reid v. Lockheed Martin Aeronautics Co.*, 205 F.R.D. 655, 662 (N.D. Ga. 2001) (emphasis omitted). Defendants' "supplemental" productions (which are "supplemental" only due to Defendants' delays), Opp. at 9–10, are "poorly disguised attempts" to do just that, *Freeman*, 778 F.3d at 467 n.7 (quotation omitted), and violate the substance of the Court's discovery orders in any event.

To this day, Defendants' responses: (1) fail to identify all of their proceeds from the Amazon transactions in suit; (2) fail to identify the assets they say are not "sufficient" to post judgment security; (3) fail to identify the investors who purportedly prevented them from posting a bond; and (4) fail to account for at least $18.8 million of their post-injunction disposition of over $100 million in assets. Mot. at 3. Defendants' refrain that they produced "nearly one million pages" of documents containing a "wealth" of information, Opp. at 2, 4–5, 9, 14, does not cure these deficiencies. Opp. at 2. Further, as detailed in Plaintiffs' motion, nearly one-third of Defendants' productions were duplicative and riddled with unresponsive material like Jimmy John's restaurant ads. Mot. at 16; Dkt. 286-30. These document dumps frustrated—rather than "strict[ly] compli[ed]" with—Plaintiffs' requests and the federal rules. Opp. at 10. The amount of unresponsive material in Defendants' productions proves that they did not employ search terms that targeted relevant documents. And they did not share or discuss these terms with Plaintiffs before using them to respond to the July requests, which the Court enforced as written in November. Dkt. 231.

Defendants' assertion that they served interrogatory responses "in compliance with" the Court's orders, Opp. at 9, is equally baseless. As Plaintiffs explained, Mot. at 7, Defendants an-

swered multiple interrogatories—including initially Interrogatory 2, which requests details regarding "each transfer or other disposition of any assets"—by improperly referring to their (untimely and incomplete) document productions. Dkt. 286-4, at 3 (directing Plaintiffs to "Northstar's bank statements and accounting documents, including its general ledger and accounts payable, produced in response to Plaintiffs' Requests for Production"); *id.* at 6–7 (directing Plaintiffs "to documents produced pursuant to Plaintiff's Requests for Production" for the "location" of various "investors"). Although Rule 33(d) sometimes allows parties to answer an interrogatory by referring to business records, "[d]ocument dumps or vague references to documents" do not satisfy the rule. *SEC. v. Elfindepan, S.A.*, 206 F.R.D. 574, 576 (M.D.N.C. 2002). Producing parties must "identify a specific document and indicat[e] the page and paragraphs that are responsive rather than a large group of documents." *Certain Underwriters at Lloyd's v. AdvanFort Co.*, 2019 WL 3366103, at *7 (E.D. Va. July 25, 2019) (Buchanan, J.) (quotation omitted); *see also id.* at *2 (instructing defendants to "specifically refer to the Bates number") (quotation omitted); *Acosta v. Med. Staffing of Am., LLC*, 2019 WL 6122016, at *5 (E.D. Va. Mar. 15, 2019) (similar). Yet time and again, Defendants left Plaintiffs to comb through "915,763 pages" to find answers to basic questions about Defendants' finances and refusal to comply with the injunction. Opp. at 1.

In sum, Defendants' discovery violations go beyond their admitted timing and procedural defects. They violate the substance of the Court's orders because they fail to provide the financial information Defendants' asserted in this Court and the Fourth Circuit. The financial information Defendants asserted last spring is not "new" or "supplemental." Opp. at 8; Mot. at 6–12. The information about their ongoing asset dispositions is entirely within their control. Mot. at 10–11. And the same is now true of responsive information on the devices the FBI returned to them in February, Opp. at 6, which Defendants admit they "imaged" and "extracted" for data they have

not claimed on any privilege log. Yet they still have not substantiated the defenses they raised last year and maintain to this day, *id.* at 14, nor have they cured the deficient production of 66 documents they made from the returned devices in May. Mot. at 2; Opp. at 6. This history is irreconcilable with their claim that they have "provided thorough, meticulous responses to Plaintiffs' requests" in "compliance with this Court's orders." Opp. at 14.

### B. Defendants Concede the Conduct That Forecloses Their Privilege Claims

Defendants' refusal to produce over 6,300 responsive documents based on the untimely and deficient privilege log they served on December 31, 2020 is an independently sanctionable violation of this Court's orders that compels waiver of their privilege claims. Mot. at 22–25. Defendants' contrary arguments, Opp. at 9–10, contain no supporting citations because the Court's November 13 directive to Defendants was clear: "I'm not allowing you to have any privilege objections, so you don't need to review [the documents], you just need to produce them." Dkt. 286-1, at 13:3–5. Defendants responded at the November hearing that there "were privilege objections and a log produced," *id.* at 13:8–9 ("produced," in the past tense, clearly referred to the four-entry redaction log Defendants served in September,[2] which was the only log they produced before the November hearing). The Court then explained, in a passage Defendants quote out of context, that "[i]f anything *is* the subject of a privilege log"—a clear reference to a log *already* in existence—"I'll . . . look at that separately," *id.* at 13:16–18 (emphasis added); *see* Opp. at 11. It is undisputed that Defendants' December claims were *not* "the subject of a privilege log" on November 13. Dkt. 286-1, at 13:16-18. Accordingly, these claims were not among the claims the Court reserved on the redaction "log produced" before the hearing. *Id.*

---

[2] The redaction log, which was filed with Plaintiffs' October motion to compel, is also filed with this reply as Exhibit 1 to the Declaration of Lora E. MacDonald. As Plaintiffs have previously explained, Dkt. 191, at 21, the claims on that log are not properly substantiated.

7

For the foregoing reasons alone, the November order compels waiver of Defendants' December 2020 privilege claims. But this sanction is also warranted independent of the parties' "impasse" on the proper "interpretation" of the Court's November "privilege log" reference, Opp. at 10, because Defendants' December log is untimely and deficient under aspects of the order and rules the opposition does not address. Mot. at 23–25. Defendants' only counterargument is that the November order "did not foreclose" them from asserting "privileges on documents that were *not* previously identified as responsive or *supplemental* productions of future-discovery documents." Opp. at 11 (emphasis added). But this argument fails for at least two reasons.

First, it is undisputed that the December 31 log addresses documents responsive to requests the Court ordered Defendants to answer last July, Dkts. 94–95, and required them to address "fully and completely" by November 24, 2020, Dkt. 286-1, at 12–13. The latter deadline applied to the production of "everything" responsive to the July order, yet on that date Defendants did not log any documents withheld from their productions. Dkt. 286-1, at 13. That was a sanctionable violation because the documents on their December log are responsive to financial and other arguments they raised last spring, and were required either to produce or withhold and log by November 24. *See* Parts I.A–B *supra*. As this Court has held, a "plain reading of Federal Rule of Civil Procedure 26(a)(5)(A) requires the production of a privilege log *when information is withheld*." *Clark v. Trans Union, LLC*, 2017 WL 11504623, at *8 (E.D. Va. Mar. 1, 2017) (emphasis original).

Second, Defendants' December privilege claims are also waived because their untimely log is rife with substantive deficiencies they conceded this winter. Mot. at 23–25 (citing cases and detailing conceded and outstanding log deficiencies). A privilege log is required to contain:

> [1] a brief description or summary of the contents of the document, [2] the date the document was prepared, [3] the person or persons who prepared the document, [4] the person to whom the document was directed, or for whom the document was prepared, [5] the

8

>purpose in preparing the document, [6] the privilege or privileges asserted with respect to the document, and [7] how each element of the privilege is met as to that document.

*Clark*, 2017 WL 11504623, at *9 (quoting *Cappetta v. GC Servs. Ltd. P'ship*, 2008 WL 5377934, at *4 (E.D. Va. Dec. 24, 2008)). Defendants' untimely December log violates these requirements. *See* Mot. at 24–25 & Dkt. 286-11; *Acosta*, 2019 WL 6122016, at *3 (rejecting log that failed "to provide any dates for the redacted or withheld documents, the name of the sender or receiver, or the document's general subject matter"). And their opposition does not defend or cure these defects. Mot. at 24; Opp. at 9–11. Accordingly, Defendants have waived the privilege claims in their December log of over 6,300 documents, as well as any privilege claims over information from the devices the FBI returned in February, but Defendants have not logged *at all*. Opp. at 5. "Where," as here, "a party has taken no precautions to properly assert the privilege, and has allowed time to pass without clarifying the basis for its assertion of privilege, waiver" is "an appropriate sanction." *Cappetta*, 2008 WL 5377934, at *4; *see also Sectek Inc. v. Diamond*, 2016 WL 5897763, at *2–3 (E.D. Va. Oct. 6, 2016) (failure to "file . . . Privilege Log in a timely manner . . . amounts to a waiver of privilege").

## II. THE OPPOSITION CONFIRMS ALL THE REQUIREMENTS FOR SANCTIONS

Defendants pair their baseless claims of "reasonable" attempts at discovery "compliance" with the argument that any violations should be excused as committed in "good faith" with no "prejudice" to Plaintiffs. Opp. at 8–14. These claims also fail. Mot. at 12–21.

### A. Defendants' Claims of "Good Faith" Are Unavailing

Defendants' assertions of "good faith" do not alter the case for sanctions. Opp. at 8. As a threshold matter, these arguments ignore circuit law holding that civil contempt does "*not* require a finding of bad faith before discovery sanctions can be awarded." Mot. at 14 (quoting *Law Enforcement All. of Am., Inc. v. USA Direct, Inc.*, 61 F. App'x 822, 831 (4th Cir. 2003) (emphasis

9

added). Second, Defendants' "good faith" arguments ignore this Court's holding that a "party's failure to provide a satisfactory reason why its discovery responses were not timely" is sufficient to establish "bad faith" under Rule 37. Mot. at 15 (quoting *Anderson v. Sch. Bd. of Gloucester Cty.*, 2021 WL 1134788, at *12–13 (E.D. Va. Mar. 24, 2021)). The record here goes well beyond this standard for bad faith. Plaintiffs' motion and exhibits demonstrate Defendants' "noncompliance" and "haphazard compliance [with] discovery orders," *Anderson*, 2021 WL 1134788, at *12–13 (quotation omitted), including a Rule 37 production order, and thus establish "bad faith" under controlling precedents Defendants fail to address. Mot. at 15–16 (discussing cases).

### B.   The Record Establishes Prejudice Under Controlling Law

Defendants' assertion that "Plaintiffs cannot show prejudice at this [early] stage" of the case, Opp. at 11, is also foreclosed by the authorities in Plaintiffs' motion. *See* Mot. at 16–18 (citing authorities). Discovery conduct that forces a requesting party "to expend time and resources" addressing insufficient responses is inherently prejudicial. *Id.* at 16 (quoting *Anderson*, 2021 WL 1134788, at *13); *see id.* at 16–17 (discussing cases). Defendants' responses before and after the November Rule 37 order required precisely such expenditures, and "'needlessly increased the expense, annoyance, and delay of these proceedings.'" Mot. at 17 (quoting *Flame S.A. v. Indus. Carriers, Inc.*, 2014 WL 3895933, at *12 (E.D. Va. Aug. 8, 2014), *objections overruled*, 39 F. Supp. 3d 752 (E.D. Va. 2014)). These points alone establish the prejudice required for sanctions, which here goes far beyond the Rule 37 baseline above.

For the past year, Defendants have burdened Plaintiffs, this Court, and the Fourth Circuit with unsubstantiated injunction challenges the July discovery was ordered to address. Mot. at 17–18. The Court held that this discovery should be "expeditious," Dkt. 193-2, at 26:10–12; 27:23–24, because it was directly related to compliance with an injunction entered "to protect the *status quo*" and "preserve the court's ability to render a meaningful judgment on the merits." Mot. at

10

17–18 (quoting *In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 525 (4th Cir. 2003); *see* Dkts. 16, 54, 84, 99, at 17–18; *U.S. ex rel. Rahman v. Oncology Assocs., P.C.*, 198 F.3d 489, 496 (4th Cir. 1999)). Defendants have prejudiced all of these interests by failing to provide timely and complete discovery on the defenses they raised last spring, and by abusing the discovery process to dispose of over $100 million in assets in violation of injunction provisions they did not appeal. Mot. at 12–21. Defendants do not even attempt to address this additional evidence of prejudice, *see id.*, and thus waive their right to contest it. *See, e.g.*, *Brown v. Nucor Corp.*, 785 F.3d 895, 923 (4th Cir. 2015) (a party waives an argument by failing to "develop" it, "even if [the party] takes a passing shot at the issue") (quotation omitted).

### C. The Record Establishes a Need for Deterrence

Defendants' opposition similarly fails to address the facts and law establishing the need to deter Defendants' discovery violations going forward. Mot. at 5–12, 18. Their response consists of a single paragraph asserting that "Defendants fail to see how their strict compliance with this Court's orders and their ongoing obligation to supplement discovery responses" constitutes "behavior worthy of deterrence." Opp. at 12–13. This argument collapses on the unsupported claim of "strict compliance" alone. *See* Part I *supra*. Defendants have spent a year violating this Court's orders to answer simple questions about financial information they control and have raised in several lawsuits. *See id.* "[T]he need to deter this type of stalling and disrespect for the authority of the court is self-evident." *Wright v. James City Cty.*, 2014 WL 1056693, at *3 (E.D. Va. Mar. 18, 2014) (quotation omitted), *aff'd*, 589 F. App'x 186 (4th Cir. 2015).

Defendants protest that they "have exhausted all known repositories of documents," "adhered to their obligation to supplement their responses," and "been receptive to all of Plaintiffs' concerns." Opp. at 2–3. But the record belies these assertions, and sanctions are warranted even taking them as true. If Defendants' productions really do "exhaus[t] all known repositories" of

relevant information, they confirm that Defendants' ongoing contempt of the June injunction is baseless and should be immediately sanctioned.  If the productions do not "exhaust[]" all Rule 26 repositories, they are inexcusably deficient—and therefore sanctionable—under the Court's discovery orders and rules.  Either way, the record shows ongoing misconduct for which "deterrence is greatly needed."  Mot. at 18 (quoting *Flame*, 39 F. Supp. 3d at 765).  "Parties cannot be allowed to ignore direct orders of the court with impunity."  *Wright*, 2014 WL 1056693, at *3.

### D.     The Requested Sanctions Are Necessary to Address Defendants' Misconduct

Plaintiffs' motion accounts for the "preliminary" phase of this case, Opp. at 14, by seeking sanctions tailored to the scope of Defendants' violations under controlling law.  Mot. at 19–28 (collecting cases).  To that end, the motion does not seek a default judgment or total asset freeze even though courts have approved such sanctions for conduct less egregious than Defendants' conduct here.  *Id.* at 19–21.  The motion seeks only privilege waivers and issue preclusion commensurate with Defendants' unexcused discovery violations to date, *id.* at 19–25, and forensic examination and special master oversight to deter such violations going forward, *id.* at 25–28.

Defendants' opposition does not engage any of the facts or precedents supporting these requests.  It simply reasserts that "sanctions are not appropriate" because "civil contempt is improper where a party's attempt at compliance is reasonable."  Opp. at 13 (quotation and alterations omitted).  This argument does not address Rule 37, and fails even with respect to civil contempt because Defendants' conduct in responding to Plaintiffs' discovery is not "reasonable."  *Id.* at 2; *see also id.* at 1, 7; Mot. at 6.  It has been almost a year since the Court ordered Defendants to produce the basic financial information they asserted in their injunction defenses.  They have failed to do so, and instead spent the discovery period litigating baseless objections and serving untimely and incomplete responses so they could dispose of over $100 million in assets before producing document dumps that foreclose the arguments they raised in this Court and the Fourth Circuit.  As

12

detailed in Plaintiffs' motion, these productions reference Amazon transaction proceeds in excess of the $21.25 million the Court cited in June, confirm Defendants' payments to known kickback recipients, and document Defendants' concealment of nearly $19 million in proceeds from post-injunction asset dispositions. Mot. at 8–9.[3] This Court has "nearly unfettered discretion" to "impose sanctions for" these and other "failures to comply with its discovery orders," and should not hesitate to exercise that discretion here. *Hinkle v. City of Clarksburg*, 81 F.3d 416, 426 (4th Cir. 1996).

## CONCLUSION

For the reasons above and in Plaintiffs' motion, Dkt. 282, the Court should: (1) overrule Defendant's injunction defenses that they "never received" $21.25 million from the transactions in suit and do not have "sufficient" assets to secure that amount; (2) overrule as waived all privilege claims over information responsive to the July 2020 requests; and (3) order forensic examination of Defendants' data and appoint a special master to oversee their compliance with the Court's discovery and related orders going forward, at their expense and subject to daily enforcement fines.

---

[3] WDC's supplemental interrogatory responses do not account for these proceeds. And contrary to Defendants' suggestion, Opp. at 3, Defendant Watson has *never* supplemented his response to Interrogatory 2, which seeks information about his receipt and use of proceeds from Defendants' post-injunction asset dispositions. Mot. at 9; Fed. R. Civ. P. 26(e); *Dig. Vending Servs. Int'l, Inc. v. Univ. of Phoenix, Inc.*, 2013 WL 5533233, at *7 (E.D. Va. Oct. 3, 2013) ("Rule 26(e) . . . requires that parties timely supplement or correct information disclosed to the opposing party . . . if and when the party learns their previous disclosures were materially incorrect or incomplete.").

13

Dated: July 1, 2021	Respectfully submitted,

*s/ Michael R. Dziuban*
Elizabeth P. Papez (*pro hac vice*)
Patrick F. Stokes (*pro hac vice*)
Claudia M. Barrett (*pro hac vice*)
Michael R. Dziuban (Va. State Bar No. 89136)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
Telephone: (202) 955-8500
Facsimile: (202) 467-0539
epapez@gibsondunn.com
pstokes@gibsondunn.com
cbarrett@gibsondunn.com
mdziuban@gibsondunn.com

*Counsel for Plaintiffs Amazon.com, Inc. and Amazon Data Services, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 1, 2021, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system. I will send then send the document and a notification of such filing (NEF) to the following parties via U.S. mail to their last-known address and by email, where noted:

Jamie Hubbard
Stimson Stancil LaBranche Hubbard
1652 Downing Street
Denver, CO 80218
*Counsel for Defendants White Peaks Capital LLC and NOVA WPC LLC*

Villanova Trust
c/o Christian Kirschner, Trustee
3924 Wallace Lane
Nashville, TN 37215

Allcore Development LLC
6870 W 52nd Avenue, Suite 203
Arvada, CO 80002

Finbrit Holdings LLC
6870 W 52nd Avenue, Suite 203
Arvada, Colorado 80002

Casey Kirschner
635 N. Alvarado Lane
Plymouth, MN 55447
By email: casey.kirschner@gmail.com

*s/ Michael R. Dziuban*
Michael R. Dziuban
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
Telephone: (202) 955-8500
Facsimile: (202) 467-0539
mdziuban@gibsondunn.com

*Counsel for Plaintiffs Amazon.com, Inc. and Amazon Data Services, Inc.*