**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| AMAZON.COM, INC. and AMAZON DATA SERVICES, INC., <br><br> Plaintiffs, <br><br> v. <br><br> WDC HOLDINGS LLC dba NORTHSTAR COMMERCIAL PARTNERS; BRIAN WATSON; STERLING NCP FF, LLC; MANASSAS NCP FF, LLC; NSIPI ADMINISTRATIVE MANAGER; NOVA WPC LLC; WHITE PEAKS CAPITAL LLC; VILLANOVA TRUST; CASEY KIRSCHNER; ALLCORE DEVELOPMENT LLC; FINBRIT HOLDINGS LLC; CHESHIRE VENTURES LLC; CARLETON NELSON; JOHN DOES 1-20, <br><br> Defendants. | CASE NO. 1:20-CV-484-LO-TCB |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR
SUPPLEMENTARY RELIEF PURSUANT TO LOCAL RULE 37(D) AND THE
COURT'S 2020 AND 2021 DISCOVERY ORDERS**

Plaintiffs Amazon.com, Inc. and Amazon Data Services, Inc. respectfully submit that Defendants WDC Holdings LLC and Brian Watson have again "fail[ed] to comply" with the Court's discovery orders, and bring this "non-compliance before the Court" for supplementary relief under applicable federal and local rules.  L. Civ. R. 37(D); Fed. R. Civ. P. 37.

## INTRODUCTION

Defendants continue to violate three separate discovery orders requiring them to answer requests about asset information they raised in defying the judgment security provisions of the Court's June 2020 injunction.  Dkts. 95, 231, 301–02.[1]  The latest discovery order, entered on July 9, 2021, required them to "completely and fully re-answer interrogatories 2, 3, 5, and 6 and identify Bates numbers of relevant documents … within ten (10) days."  Dkts. 301–02.  Defendants still have not done so.  They recently produced approximately 97% of the documents from their deficient privilege log,[2] but have not "completely and fully re-answer[ed]" the interrogatories or kept their promise to produce on August 16 responsive financial information they admit should have been served months ago.  *Id.*

The missing information goes to the heart of the discovery the Court has repeatedly ordered.  Dkts. 95, 231, 302.  Specifically, it violates the Court's July 9 directive that Defendants "account for all" of the $140 million in post-injunction asset dispositions covered by Interrogatory 2 and "explain where the money went," as well as "completely re-answer Interrogatories 3, 5 and 6" regarding Defendants' proceeds from the transactions at issue in this suit, how they were shared, and which "investor interests" allegedly rendered Defendants "unable to pledge" even a penny to

---

[1]  The Court first ordered Defendants to answer these requests in July 2020.  Dkt. 95.  They objected.  In November 2020, the Court overruled the objections except for privilege and directed the requests to "be answered" as written.  Dkts. 231, 286-1 at 12:7–10.  Defendants did not comply.

[2]  Following in camera review, the Court found privilege on 20 documents Plaintiffs submitted as a sample from the remaining 3%—approximately 14 of 432 pages—of Defendants' log.  Dkt. 304.

comply with the Court's injunction. Ex. 1[3] at 25:2–14. The prejudice of these discovery violations is most obvious with respect to over $13 million in undistributed cash proceeds from the sale of a $24 million asset (800 Hoyt) that Defendants concealed until the Court's July 9 order compelling its production. Defendants admitted on July 19 that these proceeds are still "pending distribution," but refused to provide the information Interrogatories 2 and 6 require about who holds the funds and why they cannot be used to comply with the Court's orders. Defendants promised that they would provide "by COB on Monday, August 16" relevant details about these funds, which they admit are slated for dissipation in September at the discretion of a manager who succeeded Defendant Watson and is affiliated with Defendant Northstar. But on August 16 they broke this promise and failed even to provide the Hoyt settlement statement they said they would produce that day, and admit should have been produced months ago.

       This record confirms all the grounds for injunction enforcement that Plaintiffs will pursue in separate filings as the Court suggested on July 9. Ex. 1 at 11, 26. But Plaintiffs respectfully submit that Defendants' violations of the Court's July 9 discovery order also warrant the independent Rule 37 relief addressed herein, which could materially advance the enforcement proceedings and progress of this case. *See, e.g.*, Dkt. 284 (citing authorities).

## BACKGROUND

       On July 19, Defendants served "Second Supplemental Answers" to Plaintiffs' discovery requests. Exs. 2, 3. But these supplements did not "completely and fully" answer Interrogatories 2, 3, 5 and 6 as ordered on July 9. Dkt. 302; *see also* Dkts. 193, 231. Plaintiffs identified material deficiencies within 24 hours, Ex. 4, and repeatedly conferred with Defendants in a good faith effort

---

[3] All "Ex." cites are to the Declaration of Todd W. Shaw, filed concurrently herewith.

2

to resolve them, to no avail. Exs. 4, 8, 9. Between July 22[4] and July 27, Defendants served Third Supplemental Answers and an email with some further information on Requests 2, 3, and 6, but refused to supplement their response to Request 5 or provide responsive information from a Colorado court proceeding (*Richards*) in which they litigated relevant financial issues and paid a settlement to former Northstar employee, Josh Richards.[5] Exs. 6, 7. The prejudice in Defendants' refusal to provide the *Richards* documents is evident from ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 16 at 3.

Plaintiffs promptly requested a Rule 37 conference on these and other deficiencies in Defendants' Third Supplemental Answers. That conference, which Defendants deferred until July 30, focused on the *Richards* documents and Defendants' failure to produce information about asset sale proceeds including the $13 million in undistributed Hoyt proceeds the Court ordered them to address "completely" on July 19. Dkt. 302. Defendants promised to "provide a supplemental interrogatory response" on at least the $13 million, and to provide "an email update by mid-morning Wednesday, August 3, regarding what will be necessary to produce" documents from *Richards*. Ex. 7. Defendants did not provide this information on August 3, but on August 5 sent an email saying they would produce at least some *Richards* documents, and "should be able to

---

[4] Defendants deferred the parties' first conference until July 22, and even then were not prepared to address the deficiencies Plaintiffs identified in writing on July 20.

[5] *See Richards v. WDC Holdings LLC*, No. 2019-cv-34472 (Colo. Dist. Ct.) (settled 5/3/2021).

provide complete detail" on the Hoyt proceeds, by "COB on Monday, August 16." Ex. 7.

Defendants did neither. In an email sent at 6:51 p.m. on August 16, they improperly conditioned production of their own documents from *Richards* on the protective order in that case, Ex. 15, and "[w]ith regard to the Hoyt documents" stated only that:

> [W]e are making the Settlement statement available today. There are a handful of other documents that relate to that matter but we have to give notice to some other parties to give them an opportunity to object or not which could take a few days.

Ex. 14. Defendants did not specify what they meant by "a few days," nor did they produce the promised settlement statement from the 800 Hoyt transaction. Further, and critically, they did not use the referenced documents or other information to supplement their sworn responses to Interrogatories 2 and 6 in compliance with this Court's orders.

## I.  DEFENDANTS' NON-COMPLIANT RESPONSES

Defendants still have not "completely and fully re-answered" the discovery requests the Court ordered on July 9. Notably:

- Interrogatory 2 – Defendants still have not identified disposition details or supporting Bates numbers for seven asset sales totaling $82.3 million, including the sale of the Hoyt property that will result in $13 million in disbursements in September, nor have they provided relevant financial documents from the *Richards* case;[6]

- Interrogatory 3 – Defendants still have not "detail[ed] the amount(s)" of money they distributed from Plaintiffs' transactions, including what "portion" of the "approximately $14,609,925" in Lease Transaction proceeds was "distributed to Brian Watson," nor have they supported their statement that neither these nor any substitute funds "are available to comply with the [Court's] $21 million escrow requirement";

- Interrogatory 5 – Defendants still do not identify whether and when they knew that their transactions with Amazon would result in kickbacks, "shares," or other financial benefits to their co-defendants, and refuse to supplement their response or produce relevant documents from their litigation with Richards, ████████████████ ████████████████████████████████████ (Ex. 16 at 3);

---

[6] Pinnacle ($37,675,250); 800 Hoyt ($24,075,000); Mountain Vista ($17,400,000); Wadsworth (foreclosure); Dabling Land ($720,000); E. Colfax ($1,400,000); Airplane ($1,050,000). Ex. 3.

4

- <u>Interrogatory 6</u> – Defendants still do not say which of the hundreds of investors listed in their response rendered Defendants "unable to pledge" or otherwise leverage assets they have now sold for over $140 million, or how much of the sale proceeds flowed to specific "investors" including Defendants and their affiliates.

A.   **Interrogatory 2 (asset dispositions)**

Defendants' responses through August 5 still do not "completely and fully re-answer" Interrogatory 2 as written, Dkts. 302; Dkts. 231, 286-1 at 12:7–10, or "identify Bates numbers of relevant documents" as ordered on July 9. Dkt. 302. Defendants' July 19 responses: (i) raised generalized objections in violation of the Court's rulings that such objections "were gone," Dkt. 302; Ex. 1 at 13:5–6; (ii) addressed only asset "sales," rather than the "transfer[s] or other dispositions" expressly requested; (iii) failed to identify Bates numbers for seven sales totaling *$82.3 million*, *see supra* n.6; and (iv) otherwise failed to provide the requested "details of and reasons for" each listed "transfer or disposition," including the identity of paid "[l]enders," "[i]nvestors," and other transaction beneficiaries, "as well as the current or last known location of the asset(s) or interest(s)" disposed. Exs. 2, 3.

Plaintiffs raised these specific deficiencies on July 20, Ex. 4, and at the parties' July 22 conference Defendants admitted they could not identify Bates numbers because they had never produced settlement statements or other documents responsive to the request. Ex. 8. Their statement that this "may" have been an "oversight" does not excuse these violations. Accordingly they agreed to provide certain unproduced sales documents, further written responses, and a position on *Richards* documents by July 27. *See* Ex. 5. But these supplements also failed to "completely and fully re-answer" (or provide "Bates numbers") on Interrogatory 2. Ex. 6.

On July 30, Plaintiffs stated by teleconference and email that Defendants' July 27 supplement still: (i) failed to identify the amount of Defendants' share in each asset sale disclosed

5

on July 19, even via Bates numbers for the "Operating Agreements" Defendants referenced;[7] (ii) otherwise failed to provide the "details of and reasons for" each disposition, as well as "the current or last known location of the asset(s) or [financial] interests"; (iii) inexcusably failed to address relevant information from the *Richards* litigation; and (iv) deliberately avoided a sworn response about Defendants' possession, custody, or control over any of the $13 million in undistributed proceeds from 800 Hoyt. Ex. 6 at 3 (stating only that "Brian Watson resigned as a Manager on June 1, 2020, and has no control over the disposition of funds received from the property").

On August 3, Plaintiffs followed up on these deficiencies, which frustrate Interrogatory 2's entire purpose and impede the injunction enforcement the Court referenced on July 9. On August 5, Defendants simply reiterated their unsubstantiated claim that they "are unable to post the $21 Million bond," but "anticipated" they would "be able to provide" a production from *Richards* and "should be able to provide complete detail on the Hoyt matter by COB on Monday, August 16." Ex. 7. As noted, on August 16 Defendants did neither. They refused to provide the *Richards* documents based on protective order provisions that do not impede them from producing and designating their own documents in this action, Exs. 14, 15, and expressly allow them to produce documents designated or controlled by other parties in *Richards* with consent they had not even requested as of August 9. Further, they did not provide any of the "complete detail" on the Hoyt proceeds they promised on August 5. Indeed, they failed to produce even the "settlement

---

[7] Defendants' July 27 supplement claims that the "Operating Agreement for each investment outlines the returns/sharing ratios for the Sponsor, which is referred to as the General Partner ("GP"), [namely] Brian Watson or one of his personal holding companies," as well as various "Limited Partners." Ex. 6 at 2. But Defendants did not provide Bates numbers for these agreements as ordered. And the versions Plaintiffs found in Defendants' productions after costly searches are useless because ███████. *See, e.g.*, Ex. 10 ███████; Ex. 11 (Mountain Vista (same)).

statement" they said they were "making … available" and admitted they should have produced months ago. Ex. 14. Defendants based this stonewalling on the purported need to "give notice to some other parties to give them an opportunity to object or not, which could take a few days." *Id*. But they refused Plaintiffs' request to substantiate this assertion, which confirms their improper withholding of responsive information about assets at risk of dissipation in the coming weeks.

Accordingly, nearly a month after the Court's July 19 deadline—and more than a year of violating three separate discovery orders, two injunctions, multiple federal rules, and their own production promises, Dkts. 193, 231, 301–02—Defendants' response to Interrogatory 2 still does not "account for all" their ongoing asset dispositions, or "explain where the money went" from over a $140 million in post-injunction asset sales. Ex. 1 at 25:2–14.

**B.     Interrogatory 3 (proceeds from transactions in suit).**

Defendants' July 19 response also did not comply with the Court's July 9 Order to "completely and fully re-answer" this interrogatory and "identify Bates numbers of relevant documents." Dkt. 302. The July 19 response admitted—contrary to Defendants' representations to the Court and Plaintiffs for over a year, *e.g.*, Dkt. 193-2 at 18:25–19:1—that Defendants "received approximately $14,609,925 in relation to [Plaintiffs'] Lease Transactions" *in addition to* the "$5,000,000" Defendants received as a result of Plaintiffs' "White Peaks Purchase" from two former Northstar employees named as co-defendants in this action. Ex. 2 at 3–4. But it improperly raised unspecified privileges and failed to "detail the amount(s)" distributed on Plaintiffs' transactions, including what "portion" of the "approximately $14,609,925" was "distributed to Brian Watson." Ex. 4 at 4 (quotation marks omitted).

Defendants' July 27 supplement does not address these deficiencies. Ex. 6. Instead, it asserts—without support—that the "monies received by Defendants from the Lease Transactions, and the $5 million received from the settlement related to the White Peaks Purchase, were used

7

for various reasonable and legitimate purposes long before the injunction was issued in this case," and "none of these funds are available to comply with the $21 million escrow requirement." *Id.* (caps omitted)  This response does not answer the interrogatory as ordered.

### C. Interrogatory 5 (kickbacks and shares in transaction proceeds)

Defendants also failed to comply with the Court's July 9 Order to "completely and fully re-answer" Interrogatory 5, which the Court ordered to "be answered" as written last November. Dkts. 231, 286-1 at 12:7–10, 302.  The Interrogatory asks whether Defendants "*ever* had knowledge or reason to believe" that their co-conspirators or others received, "either directly or through … any other Person," kickbacks or any other "share" of Defendants' "financial benefit[s]" from Plaintiffs' transactions. Ex. 2 at 4 (emphasis added; quotation marks and caps omitted).  As Plaintiffs explained on and after July 20, Defendants' July 19 response does not "completely and fully" answer this Interrogatory because the response is improperly qualified.  Notably, on Defendants' $5 million in White Peaks proceeds, it says: (i) "Defendants have no knowledge" that kickback co-defendants including "Casey Kirschner" received "any portion *of* the $5,000,000," which does not answer the express request about shares in "financial benefits of any kind *relating to*" the "White Peaks Purchase *or* any other . . . business opportunity involving Plaintiffs"; and (ii) denies "knowledge of any other fees" responsive to the request only on behalf of "Northstar," *not* Brian Watson, who did have such knowledge according to audio recordings and former Northstar personnel—███████████—*see* Ex. 16 at 3—that the interrogatory response does not disclose or identify and substantiate as privileged. *Id.* (emphasis added; caps omitted).

The deficient responses concerning kickbacks or other shares relating to proceeds from the "Leased Transactions" are even more glaring.  Defendants' response is improperly limited to their knowledge of shares in the undefined term "earned fees," which does *not* answer the interrogatory's express request about shares in "financial benefit[s] of any kind."  Further, it

8

qualifies even this deficient response as disclaiming knowledge of kickbacks "*apart from* Plaintiffs' allegations*,*" which it then disclaims as "unsubstantiated" because "Defendants have received no discovery." Ex. 2 at 4 (emphasis added). This response exemplifies Defendants' bad faith approach to the requests and this Court's orders. As Defendants are well aware, Plaintiffs' kickback allegations *are* "substantiated" by evidence (including audio transcripts and bank and business records) that Plaintiffs already produced—and this Court credited—in the injunction record. *E.g.*, Dkts. 12-7, 12-9, 12-29, 12-23, 12-24, 42-2.

Further, Defendants' knowledge of kickback information is *not* limited to "Plaintiffs' allegations." It is documented in their *own* pleadings—including recent filings in the Delaware case they filed as a collateral attack on this Court's injunction and Rule 12 decisions. Ex. 12. In addition to misrepresenting this Court's rulings, *see id*. at 13–14, their most recent Delaware pleading affirmatively states that Watson "sought assurances . . . that none of the fees" he and Northstar paid to his Amazon contact's brother (Christian Kirschner) "would benefit [his contact] Casey [Kirschner]"—or "anyone other than Christian's immediate family for that matter—*while Casey was employed by Amazon*." *Id*. at 4 (emphasis added). Defendants' pleading further concedes that "Northstar's COO" (███████) *knew or had reason to believe* this arrangement was used to funnel kickbacks to former Amazon personnel. *Id*. at 9–10. Accordingly, Defendants' knowledge of these kickback facts—which they assert in Delaware through the same law firm (Brownstein Hyatt) that represents them here—goes well beyond "Plaintiffs' allegations," and should have been disclosed in their interrogatory responses. Nevertheless, on July 28, they refused to provide any "amendment or supplement to their answers to Interrogatory No. 5." Ex. 7.

### D. Interrogatory 6 (investor interests impeding judgment security)

Defendants' response to Interrogatory 6 also remains critically deficient in violation of the

9

Court's orders. The interrogatory requires Defendants to "describe in detail" specified investor interests, including "all the investors You contend are 'involved in Your real estate ventures' *and* rendered you 'unable to pledge those assets' in any form as judgment security in this Action." Ex. 2 at 5. Defendants' July 19 response identified a laundry list of investors in various properties, including those Defendants recently sold for a total of over $140 million. Exs. 2, 3. But the response does not say which of these investors rendered Defendants "unable to pledge," or otherwise leverage, the referenced assets to comply with the Court's injunction, or even what portion of the proceeds different "investors" received from the post-injunction asset sales that generated tens of millions in cash. For example, the response lists over 60 investors in the $37 million Pinnacle sale, over 50 investors in the $24 million Hoyt sale, over 40 investors in the $24 million Stapleton sale, and over 50 investors in the $17 million Mountain Vista sale. Ex. 2 at 5–15. But it is impossible to tell what interest each of these investors had in the assets, much less how they allegedly rendered Defendants "unable to pledge" or secure their own shares.

This discovery deficiency is highly prejudicial for many reasons, most notably because Defendants' list of "investors" includes Defendants and their affiliates, but does not (alone or in conjunction with their response to Interrogatory 2) disclose what they did with their cash proceeds from the assets that were "unencumbered" and sold. For example, their response admits that "Brian Watson" was a direct investor in various properties, as well as a "manager" that had broad "discretion" under property Operating Agreements to pay various and unspecified "fees" to Northstar. Ex. 6 at 2–3. And the response's list of "investors" includes several of Defendants' affiliates, notably "BW [Brian Watson] Holdings" in Littleton Colorado, Ex. 2 at 9, as well as other entities that Watson admits he "set up" and lists as sharing BW Holding's Littleton address.[8]

---

[8] *See* Ex. 6 at 2 (identifying PLW Capital LLC, PLW Capital I LLC, PLW Mineral LLC).

The response also names several entities—notably various "JM Capital" LLCs—registered to Northstar personnel including Donald J. Marcotte, ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉. Ex. 13. Indeed, Defendants admit that Marcotte has now succeeded Watson as the "manager" who "controls" the $13 million in Hoyt sale proceeds the Court ordered Defendants to address on July 9, and they have since said they do not "control" and may be dissipated through payments to investors—including "BW Holdings"—in September.

In sum, Defendants' supplemental responses to Interrogatory 6 frustrate, rather than comply with, the Court's repeated orders to answer this and related requests "fully and completely" as required to "explain where the money went" from Plaintiffs' transactions and the $140 million in asset sales Defendants have orchestrated while defying the Court's injunction. The July 27 supplement simply states that "[e]very investor involved in Defendants' real estate ventures was paid, pursuant to contract, monies they were legally entitled to receive," and "Defendants have no ability to pledge assets that are legally contracted to be paid to other third parties." Ex. 6 at 4. This response does not answer the request because it does not even attempt to show which proceeds were paid to which "third parties," when the payments were made, and under which contracts, much less how any such payments rendered Defendants "unable" to satisfy a penny of their obligations to this Court. Further, the response inexcusably fails to provide this accounting information for proceeds paid to *Defendants and their affiliates* during the injunction period based on distributions that Watson and other Northstar personnel (including current Hoyt manager Don Marcotte) had "discretion" to determine. *See supra* n.7.

## II.   RELIEF REQUESTED

The Court's July ruling is the third discovery order Defendants have violated in an effort to conceal information about assets they say are still not available to comply with the injunction

despite $140 million in liquidations. These discovery violations warrant Rule 37 relief independent of injunction enforcement, which Defendants' latest responses are clearly designed to frustrate. Defendants' productions to date foreclose the original injunction defenses the discovery was ordered to address. Dkt. 283. But Defendants still insist they are "unable" to post a penny of the security the Court ordered because they "do not have the funds" and are "unable to post [a] $21 million bond." Ex. 7. Instead of addressing this unsubstantiated position, Defendants have used the period since the Court's July 9 Order to raise new roadblocks to the enforcement proceedings the Court referenced. These abuses have made a mockery of the Court's orders and discovery accommodations, and warrant immediate Rule 37 relief that this Court has "nearly unfettered discretion" to impose. *Hinkle v. City of Clarksburg*, 81 F.3d 416, 426 (4th Cir. 1996). That relief encompasses all of the remedies addressed in Plaintiffs' June 2 motion, Dkt. 283, and at this juncture supports at least the following remedies.

*First*, the Court should preclude Defendants from introducing in this action documents or information that they have not produced in compliance with the Court's mandate to "completely and fully" answer Plaintiffs' discovery requests. Such relief is the proper remedy for Defendants' decision *not* to "account for all" of their assets or "explain where the money went" from over $140 million in asset sales they used to pay themselves and virtually every financial obligation they owed *except* the one to this Court. Dkt; 302; Ex. 1 at 25:2-14; *Baker v. Curtis W. Key Plumbing Contractors, Inc.*, 2016 WL 11672046, at *9 (E.D. Va. Dec. 8, 2016) (barring reliance on evidence defendants failed "to timely search for and produce in discovery"); *Thomas v. FTS USA, LLC*, 2016 WL 3566657, at *4 (E.D. Va. June 24, 2016) (similar). As a result of these violations, their assets remain a "moving target" after two injunctions, three discovery orders, over $140 million in sales, and months of litigation. *Certain Underwriters at Lloyd's v. AdvanFort Co.*, 2019 WL

3366103, at *8 (E.D. Va. July 25, 2019).  Here, as in *Baker*, the proper Rule 37 remedy for these violations is to bar Defendants from relying on responsive information that they failed "to timely search for and produce in discovery."  2016 WL 11672046, at *9.[9]

This Court has held that this remedy is particularly appropriate where discovery violations have "made recovery of the monies sought in [a] complaint significantly more difficult."  *Axiom Res. Mgmt. Inc. v. Alfotech Sols., LLC*, 2011 WL 2560096, at *5 (E.D. Va. June 3, 2011), *adopted by* 2011 WL 2559806 (E.D. Va. June 27, 2011).  That is exactly what Defendants have done before and since the July 9 order.  They admitted earlier this month that the $13 million in undistributed Hoyt proceeds the Court forced them to identify in July is slated for September distribution to a vast web of LLCs and other "investors" at the "discretion" of a Northstar-affiliated "manager" (Watson's successor and personal lender, Don Marcotte).  They then promised to provide "complete" details about these funds on August 16 so Plaintiffs could pursue these assets, including through cease and desist requests.  But as usual they broke their promise, and are still withholding even the settlement statement from the December 2020 sale.  Further prolonging the discovery period will simply reward these "bad faith" discovery abuses, and all but guarantee that Defendants' "only remaining asset[s]" will continue to disappear.  *Id*.

*Second*, and particularly if the Court concludes that the Rule 37 relief above is not warranted unless Defendants have yet another (presumably final) opportunity to comply with the Court's discovery orders, Plaintiffs respectfully request at least the following relief:

---

[9]   This discovery relief is evidentiary and distinct from the request to "overrule" the specific legal "defenses" that Plaintiffs requested in their June 2 filing.  Dkt. 284 at 3.  Based on the Court's direction at the July 9 hearing, Plaintiffs will pursue this legal preclusion, which is more akin to a default judgment, in a separate motion to enforce the injunction.  *See, e.g.*, *Anderson v. Advancement, Etc., of Am. Indians*, 155 F.3d 500, 502 (4th Cir. 1998)  (affirming Rule 37(b) default judgment where defendant "was extremely dilatory in responding to both interrogatories and requests for documents" during merits discovery).

- Supplemental Responses – Compel Defendants to produce within 11 days:

    i. all responsive documents Defendants produced in *Richards*, whose protective order does not prevent Defendants from producing their own documents in this case with designations under this Court's protective order, Dkt. 15;[10]

    ii. further supplemental responses, separately submitted and signed by each Defendant, to Interrogatories 2, 3, 5 and 6 detailing the specific amounts that Defendants and other Interrogatory 6 "investors" received from the sale proceeds in Interrogatory 2 Exhibit A; what Defendants did with their share of these payments; the specific amount of the Lease Transaction proceeds Northstar paid to Brian Watson; unqualified answers to Interrogatory 5; and details on the unspecified expenditures that Defendants say have rendered them "unable" to post a penny of judgment security despite their liquidation of over $140 million in assets that generated cash payments they controlled; and

    iii. supporting documentation for all of the foregoing responses including all documents relating to the 800 Hoyt sale, subject to the Rule 37 bar above or daily Court fines and other sanctions, including but not limited to confirmatory searches or special master oversight at Defendants' expense.

- Rule 45 Discovery – Authorize immediate Rule 45 discovery—at Defendants' expense because the burden on the third parties is the direct result of Defendants' violation of their Rule 26, 33, and 34 obligations in this action—to:

    i. the "third parties" that Defendants now say are in "control[]" of various (and still unspecified) cash shares and proceeds from Defendants' recent assets sales, including Donald J. Marcotte, 800 Hoyt LLC, BW Holdings LLC, JM Capital LLC, and PLW Capital LLC, PLW Capital I LLC, PLW Mineral LLC; and

    ii. The *Richards* plaintiff, whose counsel has expressed willingness to cooperate with the discovery requests in this matter.

The foregoing remedies are the minimum relief appropriate for Defendants' discovery abuses, which far exceed this Court's standards for finding "bad faith" under Rule 37 for the reasons Plaintiffs briefed in June. *See* Dkt. 283; *Cappetta v. GC Servs. Ltd. P'ship*, 2008 WL 5377934, at *6 (E.D. Va. Dec. 24, 2008) (finding bad faith where defendants "failed to answer

---

[10] To the extent Defendants are in possession of responsive documents from the *Richards* litigation designated confidential by the *plaintiff* in that case, the *Richards* protective order expressly permits the disclosure of such documents with the consent of designating plaintiff's consent. Ex. 15.

14

some of the discovery and . . . provided what appears to be evasive or incomplete answers to many questions or requests"); *Anderson v. Sch. Bd. of Gloucester Cty.*, 2021 WL 1134788, at *12–13 (E.D. Va. Mar. 24, 2021) ("Bad faith may [also] be established by 'noncompliance [or] haphazard compliance [with] discovery orders,'" (quoting circuit authorities), or a "party's failure to provide a satisfactory reason why its discovery responses were not timely") (quotation marks omitted).

Since the July order, Defendants have "willfully" withheld "knowledge" and "fail[ed] to disclose" information in violation of this Court's orders. *Beach Mart, Inc. v. L&L Wings, Inc.*, 784 F. App'x at 118, 122–23 (4th Cir. 2019). Like the Rule 37 defendant in *Lloyd's*, "[e]ven when given a third chance to submit proper answers, [they] still equivocated in many of [their] responses." *Lloyd's*, 2019 WL 3366103, at * 8. And like the defendant in *Flame*, Defendants remain "non-complian[t]" and committed to "'stonewalling" despite "extensive" "discovery disputes" and multiple Court orders. *Flame S.A. v. Indus. Carriers, Inc.*, 2014 WL 3895933, at *12 (E.D. Va. Aug. 8, 2014), *objections overruled*, 39 F. Supp. 3d 752 (E.D. Va. 2014), *aff'd sub nom. Flame S.A. v. Freight Bulk Pte. Ltd.*, 807 F.3d 572 (4th Cir. 2015). Relief is warranted.

## CONCLUSION

For the reasons above and in Plaintiffs' June 2, 2021 motion, Plaintiffs respectfully request supplementary relief for Defendants' continuing violations of the Court's July 9 order.

Dated: August 17, 2021	Respectfully submitted,

<div style="margin-left: 2em;">

*s/ Michael R. Dziuban*
Elizabeth P. Papez (*pro hac vice*)
Patrick F. Stokes (*pro hac vice*)
Claudia M. Barrett (*pro hac vice*)
Michael R. Dziuban (Va. State Bar No. 89136)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
Telephone:  (202) 955-8500
Facsimile:  (202) 467-0539
epapez@gibsondunn.com
pstokes@gibsondunn.com
cbarrett@gibsondunn.com
mdziuban@gibsondunn.com

*Counsel for Plaintiffs Amazon.com, Inc. and Amazon Data Services, Inc.*

</div>

# CERTIFICATE OF SERVICE

I hereby certify that on August 17, 2021, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system. I will then send the document and a notification of such filing (NEF) to the following parties via U.S. mail to their last-known address and by email, where noted:

Jamie Hubbard
Stimson Stancil LaBranche Hubbard
1652 Downing Street
Denver, CO 80218
*Counsel for Defendants White Peaks Capital LLC and NOVA WPC LLC*

Villanova Trust
c/o Christian Kirschner, Trustee
3924 Wallace Lane
Nashville, TN 37215

Allcore Development LLC
6870 W 52nd Avenue, Suite 203
Arvada, CO 80002

Finbrit Holdings LLC
6870 W 52nd Avenue, Suite 203
Arvada, Colorado 80002

Casey Kirschner
635 N. Alvarado Lane
Plymouth, MN 55447
By email: casey.kirschner@gmail.com

*s/ Michael R. Dziuban*
Michael R. Dziuban (Va. State Bar No. 89136)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
Telephone: (202) 955-8500
Facsimile: (202) 467-0539
mdziuban@gibsondunn.com

*Counsel for Plaintiffs Amazon.com, Inc. and Amazon Data Services, Inc.*