**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

**No. 20-1743**

———————————

AMAZON.COM, INC.; AMAZON DATA SERVICES, INC,

                    Plaintiffs - Appellees,

      v.

WDC HOLDINGS LLC, d/b/a Northstar Commercial Partners; BRIAN WATSON,

                    Defendants - Appellants,

      and

STERLING NCP FF, LLC; MANASSAS NCP FF, LLC; NSIPI ADMINISTRATIVE MANAGER; NOVA WPC LLC; WHITE PEAKS CAPITAL LLC; VILLANOVA TRUST; and JOHN DOES, 1-20,

                    Defendants.

———————————

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.  Liam O'Grady, Senior District Judge.  (1:20-cv-00484-LO-TCB)

———————————

Argued:  January 27, 2021                    Decided:  August 31, 2021

———————————

Before MOTZ, FLOYD, and RUSHING, Circuit Judges.

———————————

Affirmed by unpublished per curiam opinion.

———————————

**ARGUED:**  George Reid Calhoun, V, IFRAH PLLC, Washington, D.C., for Appellants. Elizabeth Petrela Papez, GIBSON, DUNN & CRUTCHER LLP, Washington, D.C., for

Appellees. **ON BRIEF:** Jeffrey R. Hamlin, James M. Trusty, IFRAH PLLC, Washington, D.C., for Appellants.  Patrick F. Stokes, Claudia M. Barrett, David W. Casazza, Christine A. Budasoff, GIBSON, DUNN & CRUTCHER LLP, Washington, D.C., for Appellees.

—————————————

PER CURIAM:

Amazon.com, Inc. and Amazon Data Services, Inc. (collectively, Amazon) sued WDC Holdings, LLC (doing business as Northstar Commercial Partners) and its CEO Brian Watson (collectively, Northstar), alleging an extensive kickback scheme connected to real property transactions in northern Virginia.  At Amazon's request, the district court entered a preliminary injunction that, among other things, required Northstar to secure $21,250,000 through some combination of surety bonds and escrow payments.  Northstar appeals that part of the injunction, arguing that the district court lacked authority to enjoin the funds and abused its discretion in granting injunctive relief.  We conclude that the district court did not abuse its discretion and acted within its authority in ordering preliminary relief in connection with Amazon's cognizable equitable claims.

I.

A.

Amazon develops real property to support its supply chain and other business operations.  Many of these sites, which include data centers and warehouses, are in northern Virginia.  Amazon selects, develops, and, in some cases, purchases its sites with the assistance of third-party commercial real estate companies.  Northstar, a privately held, full-service real estate investment and asset management firm, is one such company.

Amazon acquires real estate through two deal structures: build-to-suit leasing transactions and direct purchase transactions.  In build-to-suit leasing transactions, Amazon identifies the type of location that would be suitable and partners with a commercial real estate developer that is willing to find, acquire, and develop the land for Amazon.  In direct

purchase transactions, Amazon purchases land outright and subsequently builds its own facilities on the sites.  Amazon's review and approval of both types of transactions rely on in-house transaction managers, who solicit developers and present plans and locations for approval.  Transaction managers are responsible for issuing and processing requests for proposals (RFPs) associated with these real estate transactions and obtaining competitive bids for the services of third parties who will help execute Amazon's development efforts.

According to Amazon's complaint, two of its transaction managers conspired with Northstar to create a kickback scheme in which they were rewarded for steering lucrative development contracts and land sales to Northstar and its related entities.  Amazon alleges that transaction managers Casey Kirschner and Carleton Nelson met with Watson in 2017. They allegedly discussed partnering on several projects in northern Virginia, agreed to create a sham RFP process to guarantee Amazon would award contracts to Northstar, and developed a system of referral fees the transaction managers would receive in return. Christian Kirschner, Casey Kirschner's brother, simultaneously set up a trust account in Tennessee named Villanova Trust (Villanova) with himself as the sole trustee.  On January 8, 2018, Villanova and Northstar entered a "referral agreement," signed by Watson, by which Northstar would pay a percentage of the proceeds from the Amazon contracts to Villanova as "fees" despite Villanova performing no services related to Amazon projects. Villanova allegedly, under Christian Kirschner's direction, would then route these proceeds to the Amazon transaction managers as kickbacks for steering contracts to Northstar.

Throughout 2017 and 2018, Amazon awarded Northstar nine build-to-suit contracts pursuant to this process, which Amazon's complaint dubs the "Lease Transaction Enterprise." Northstar set up and operated four "landlord" LLCs (the Project Entities) that directly contracted with Amazon by forming lease agreements: Dulles NCP LLC, Quail Ridge NP LLC, Manassas NCP LLC, and Dulles NCP II, LLC. Over the course of their relationship, Amazon approved more than $400 million in spend requests for the Northstar-affiliated lease agreements, which agreements Watson personally signed. Those leases warranted that there were no undisclosed payments of various project fees. Additionally, in its RFP response, Northstar promised disclosure of all "Professional Service Provider[s]."

However, Amazon presented significant evidence linking the Project Entities, Northstar, and Villanova to improper payments and money transfers. In 2018 and 2019, Northstar sent over $5 million in wire transfers to Villanova for "commissions," "leasing fees," and "development fees" related to the leasing deals operated by Project Entities Quail Ridge, Dulles, and Manassas. These and other payments to Villanova allegedly flowed directly from funds paid by Amazon to the Project Entities. Following an internal investigation, Amazon discovered hastily deleted files on Casey Kirschner's work computer indicating he was entitled to "shares" of $16,250,000 in proceeds Northstar realized on three Amazon leasing deals (the Shaw Road, Quail Ridge, and Manassas projects). A series of Northstar-related informants and whistleblowers brought to light additional information corroborating the existence of the scheme by documenting

significant improprieties that occurred throughout the course of Northstar's relationship with Amazon.

Northstar employees and Watson were also allegedly involved in a fraudulent scheme involving an Amazon direct purchase transaction, which Amazon's complaint dubs the "Direct Purchase Enterprise." Two Northstar employees, Kyle Ramstetter and Will Camenson, utilized shell LLCs named White Peaks Capital and NOVA WPC to buy land to "flip" to Amazon with the assistance of transaction manager Casey Kirschner. Ramstetter and Camenson proposed that Amazon purchase the land from them after they secured the property for a price they claimed was lower than Amazon would have had to pay. While the property had sold for roughly $20 million in 2018, Ramstetter and Camenson bought it for $98 million on July 30, 2019, and sold it to Amazon for $116.4 million the same day. Amazon alleges that Casey Kirschner supported the sale from within Amazon to ensure the deal went through and was not properly scrutinized.

When Watson learned of the deal, he confronted the employees for "usurping" Northstar's corporate opportunity. He surreptitiously recorded a meeting with Ramstetter and Camenson in which he demanded they pay Northstar for the inflated price of the flip sale. But Watson's recording plan backfired; in the meeting, Ramstetter repeatedly alluded to the Lease Transaction Enterprise, saying: "[W]hat we did for Amazon, that's FBI. You have two corporate real estate people for the largest tenant in the world that you can trace the money, it will get out of hand. . . . We all know what we did." J.A. 1819. Ramstetter urged Watson to "work something out" because "[i]f I say something to the wrong person, and it gets out, the whole Amazon thing is shut down and we will never do another deal in

the data center space." J.A. 1819.  Ramstetter and Camenson subsequently agreed to pay Northstar $5 million from the flip-sale proceeds.

In late 2019 and early 2020, Amazon discovered the alleged schemes.  A former Northstar employee revealed Northstar's relationship with Casey Kirschner to Amazon in December 2019.  An additional whistleblower approached Northstar's financing partner, IPI, in January 2020 to discuss the fraudulent behavior and other irregularities.  IPI then worked with Amazon to terminate Northstar from all leasing projects and reform their contracts so that the Project Entities would be controlled by IPI.  On April 2, 2020, the FBI executed a search warrant on Watson's home, seizing several personal devices.  Watson then sent an email to his co-conspirators, informing them of the raid.  A federal criminal investigation is ongoing.

## B.

On April 27, 2020, Amazon filed its initial complaint in the Eastern District of Virginia against Northstar, Watson, and a collection of Northstar entities involved in the Amazon lease transactions.  Amazon also filed an application for an *ex parte* temporary restraining order (TRO) and an order to show cause why a preliminary injunction should not issue.  The complaint (which was filed with hundreds of pages of supporting evidence) alleged violations of the Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. § 1961 et seq., with predicate acts of wire fraud, money laundering, transactions in property derived from specified unlawful activity, and violations of the Travel Act.  The complaint also alleged statutory detinue, common law fraud, tortious interference, civil conspiracy, breach of contract, unjust enrichment, conversion and constructive trust, and

piercing the corporate veil.  Amazon requested a TRO and preliminary injunction, alleging efforts to spoliate evidence, manipulate corporate ownership structures, tip off accomplices, disrupt business relationships, and dissipate assets.

The district court held a hearing and granted Amazon a TRO.  The district court also ordered Northstar to show cause why a preliminary injunction should not issue and, after granting Northstar's request for a continuance, set a hearing on Amazon's preliminary injunction motion for May 21, 2020.  Northstar filed a response to Amazon's motion on May 14 and Amazon replied on May 18, submitting four supplemental declarations with its reply.[1]

At the hearing, the district court addressed a number of Northstar's objections, including its purported liquidity concerns.  The parties voluntarily delayed the injunction as they attempted to negotiate alternatives to escrow, including a bond option.  The district court then entered the preliminary injunction order on June 5, 2020, enjoining all defendants from spoliating, concealing, or transferring relevant evidence or assets, from disrupting ongoing business activities at Amazon's real estate developments, and from

---

[1] Northstar unsuccessfully moved to strike the supplemental declarations.  On appeal, Northstar contends that the district court's consideration of those declarations violated Federal Rule of Civil Procedure 6(c) and Northstar's due process rights.  We reject Northstar's argument because Amazon filed its reply and supporting declarations on the date set by the district court and those declarations responded to evidence Northstar had submitted in support of its opposition brief.  *See* Fed. R. Civ. P. 6(c)(2) (permitting affidavits supporting a motion to be served "at another time" set by the court); *Robinson v. Empire Equity Grp., Inc.*, No. CIV. WDQ-09-1603, 2009 WL 4018560, at *2 (D. Md. Nov. 18, 2009) (noting that Rule 6(c)(2) "does not preclude affidavits supporting a reply brief when they respond to evidence supporting an opposition brief"); *see also Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 476 (6th Cir. 2002) ("[R]eply affidavits that respond only to the opposing party's brief are properly filed with the reply brief.").

disclosing or retaining Amazon's confidential or otherwise nonpublic proprietary information except as necessary for litigation. The injunction also ordered certain defendants to place particular funds into an escrow account. The sole provision Northstar now appeals states:

> [Northstar] shall secure funds totaling $21,250,000.00 USD, representing the sum of certain Amazon real estate development fees to [Northstar and its affiliates] in the amounts of $4,150,000, $8,500,000, and $3,600,000 for the Shaw Rd., Quail Ridge, and Manassas Lease Transactions, respectively, that were expressly designated for prohibited payments to a former Amazon employee and his affiliates, and the $5,000,000 these Defendants received from Defendants White Peaks Capital LLC and/or NOVA WPC LLC in October 2019 from proceeds on the White Peaks Defendants' July 30, 2019 sale of a Virginia real estate parcel to Amazon for approximately $116.4 million USD, by (a) promptly placing in an escrow account maintained according to the terms attached to this order funds totaling $21,250,000.00 USD, or (b) obtaining and depositing in the Court's Registry a surety bond from a licensed bonding company for $21,250,000.00 USD, or (c) a combination of both (a) and (b), such that the total amount of $21,250,000 USD is secured through the combination of a surety bond and escrow through the entry and execution of final judgment in this action.

J.A. 619–620. The district court entered a memorandum opinion supporting the preliminary injunction on July 28, 2020.

Northstar appealed only the above-quoted portion of the preliminary injunction order. We have jurisdiction over this interlocutory appeal pursuant to 28 U.S.C. § 1292(a)(1).

## II.

Northstar contends that the district court lacked authority to issue a preliminary injunction ordering it to secure $21,250,000 because Amazon's complaint seeks only money damages, "even if couched in equitable terms." Opening Br. 26. This argument

relies on the Supreme Court's decision in *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999), prohibiting an injunction freezing assets in an action for money damages where no lien or equitable interest in the assets is claimed. We considered the implications of *Grupo Mexicano* for suits seeking both money damages and equitable relief in *United States ex rel. Rahman v. Oncology Associates*, 198 F.3d 489 (4th Cir. 1999), so we begin by examining that precedent.

In *Rahman*, the United States alleged that the defendants engaged in fraudulent medical billing schemes and thereafter undertook complex reorganizations and asset transfers to insulate themselves from liability. The United States asserted claims for treble damages under the False Claims Act, unjust enrichment, and equitable remedies including disgorgement, voiding of fraudulent transfers, and a constructive trust. *Rahman*, 198 F.3d at 493. After the district court granted a preliminary injunction freezing the defendants' assets and ordering them to place funds in escrow as security for any judgment, the defendants appealed. The defendants argued that the case was "overwhelmingly a suit at law for money damages" and the equitable claims were only "ancillary and incidental," therefore the district court lacked authority to issue the injunction. *Id.* at 494–495 (internal quotation marks omitted). Were it otherwise, the defendants argued, "any artful pleader could circumvent *Grupo Mexicano* merely by sprinkling a bit of equity on a suit at law for money damages." *Id.* at 495 (internal quotation marks omitted).

This Court rejected the defendants' argument. We observed that the Supreme Court has long endorsed preliminary injunctions "to preserve the *status quo* pending final determination of the questions raised" in cases that state a cause of action for equitable

relief. *Id.* at 496 (discussing *Deckert v. Indep. Shares Corp.*, 311 U.S. 282 (1940)); *see also De Beers Consol. Mines, Ltd. v. United States*, 325 U.S. 212, 220 (1945) ("A preliminary injunction is always appropriate to grant intermediate relief of the same character as that which may be granted finally."). We reasoned that *Grupo Mexicano* did not address a situation in which equitable remedies were claimed, *Rahman*, 198 F.3d at 496, and the fact "[t]hat money damages are claimed along with equitable relief does not defeat the district court's equitable powers," *id.* at 498. Because the United States sought cognizable equitable relief and the injunction was a reasonable measure to preserve the status quo in aid of the equitable relief claimed, we affirmed.

*Rahman* thus teaches that the district court here retained its equitable authority to preserve the status quo pending judgment if Amazon asserted a cognizable claim to specific Northstar assets or sought a remedy involving those assets. *See id.* at 496. That Amazon also claims damages under RICO,[2] breach of contract, and other legal causes of action "does not defeat the district court's equitable powers." *Id.* at 498. We therefore proceed to the two steps of the *Rahman* analysis.

---

[2] The parties contest whether Amazon's RICO claims authorized the district court to order preliminary relief. Because Amazon's common law claims for equitable relief support the injunction, we do not address the RICO claims. Northstar contends the district court lacked subject-matter jurisdiction over this case because Amazon's RICO claims—the basis for federal jurisdiction here, *see* 28 U.S.C. § 1331—were "not viable" or "pled adequately." Opening Br. 32–33. But "the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction." *Bell v. Hood*, 327 U.S. 678, 682 (1946). The district court properly exercised jurisdiction over this suit. *See Donohoe Constr. Co. v. Montgomery Cnty. Council*, 567 F.2d 603, 607 (4th Cir. 1977) ("[W]here a complainant raises allegations which may or may not state [a] federal claim, a district court should take jurisdiction to decide the merits of the controversy so long as the questions raised are not frivolous on their face.").

A.

"[W]e must begin with an analysis of the claims in suit to determine whether they seek cognizable relief in equity involving assets of the defendant." *Id.* at 497.  In addition to numerous other claims and remedies, Amazon's complaint alleges unjust enrichment and conversion and seeks the remedies of disgorgement and a constructive trust.  Northstar contests whether Amazon has pleaded a viable claim for equitable relief under these theories; we consider each in turn.

1.

"The unjust enrichment count is recognized as equitable." *Id.*  To state a cause of action for unjust enrichment, a plaintiff must allege that: (1) it conferred a benefit on the defendant; (2) the defendant knew of the benefit and should reasonably have expected to repay the plaintiff; and (3) the defendant accepted or retained the benefit without paying for its value.  *Schmidt v. Household Fin. Corp., II*, 661 S.E.2d 834, 838 (Va. 2008).  Amazon has alleged that it conferred benefits on Northstar, including the award of the nine build-to-suit contracts, the profits Northstar realized on those projects, and the profits Northstar realized on the Direct Purchase Enterprise flip sale; that Northstar knowingly attained those benefits through fraudulent means such as the rigged RFP process, undisclosed fees, and the agreement with Ramstetter and Camenson in the Direct Purchase Enterprise; and that Northstar retained the benefits of its deal-rigging, kickbacks, and other misconduct without paying for their value.

Northstar contends that Amazon's unjust enrichment claim is not a viable claim for equitable relief because it is based on "express contract[s] covering the same subject matter

12

of the parties' dispute." *CGI Fed. Inc. v. FCi Fed., Inc*., 814 S.E.2d 183, 190 (Va. 2018). But the Supreme Court of Virginia has clarified that "broad statements such as 'there can be no unjust enrichment in contract cases'" are "'plainly erroneous.'" *James G. Davis Constr. Corp. v. FTJ, Inc.*, 841 S.E.2d 642, 648 (Va. 2020) (quoting Restatement (Third) of Restitution and Unjust Enrichment § 2, cmt. c, at 17). Amazon's unjust enrichment claims are not confined to the contracts governing the lease agreements with the Project Entities; rather, as described above, they take aim at Northstar's broader scheme to acquire Amazon's business and thereby generate illicit profits. As such, Amazon presents a viable claim that the contracts do not bar its unjust enrichment claim. *See id.* (citing examples where the existence of a contract did not bar an unjust enrichment claim based on illegal fees, where the benefit received was outside the contract scope, or where the contract was "otherwise ineffective to regulate the parties' obligations" (internal quotation marks omitted)).

Moreover, although Amazon has alleged that the Project Entities served as Watson's *alter ego*, Northstar has questioned its amenability to suit under the contracts governing the lease agreements. Because Northstar contests its liability under Amazon's breach of contract claims, Amazon cannot be barred from arguing unjust enrichment in the alternative. *See Loudoun Country Day Sch. v. Ridenour*, No. CL 20-3961, 2021 WL 126347, at *3 (Va. Cir. Ct. Jan. 5, 2021) (noting that a defendant who calls "into question the validity of the contract . . . opens the door to a claim for unjust enrichment"); *Mendoza v. Cederquist*, No. 1:09CV163 (LMB/IDD), 2009 WL 1254669, at *3 (E.D. Va. May 6, 2009) ("[U]nder Virginia and federal law, a plaintiff is permitted to plead equitable theories

of relief such as unjust enrichment and quantum meruit as alternatives to contract recovery."); *see also James G. Davis Constr. Corp.*, 841 S.E.2d at 648.

2.

Amazon's conversion claim also seeks equitable relief. Amazon has alleged that Northstar fraudulently induced it to pay undisclosed costs and fees on the nine lease transactions and to purchase the flip-sale property at a fraudulently inflated price. *See Fed. Ins. Co. v. Smith*, 144 F. Supp. 2d 507, 517–518 (E.D. Va. 2001), *aff'd*, 63 Fed. App. 630 (4th Cir. 2003) ("[C]onversion is 'any distinct act of dominion wrongfully exerted over the property of another, and in denial of his rights, or inconsistent therewith.'" (quoting *Universal C.I.T. Credit Corp. v. Kaplan*, 92 S.E.2d 359, 365 (Va. 1965))); *see also Economopoulos v. Kolaitis*, 528 S.E.2d 714, 719 (Va. 2000). "It is well-settled that money and negotiable instruments may be converted." *Fed. Ins. Co.*, 144 F. Supp. 2d at 518 n.25.

Northstar argues that Amazon's conversion claim is not a viable claim for equitable relief because Amazon cannot make a claim for immediate possession of any specific funds. *See Economopoulos*, 528 S.E.2d at 719 (noting that a plaintiff asserting conversion must be "entitled to the immediate possession of the item alleged to have been wrongfully converted"). The crux of this argument is that Amazon can assert a conversion claim only by establishing a right to funds the Project Entities paid Northstar pursuant to the rent contracts. But a defendant need not be a direct recipient of converted funds for a plaintiff to establish a conversion claim under Virginia law. *See Fed. Ins. Co.*, 63 Fed. App. at 632–633 ("As a rule, a wronged party can recover money converted if the possessor did not receive it in good faith or for valuable consideration[.]"). Here, even assuming Northstar's

14

relationship to the Project Entities and White Peaks Capital rendered it a third party, Amazon alleged a right to the funds that were allegedly converted due to Northstar's fraudulent behavior and were eventually deposited into Northstar's accounts.   And Northstar ignores the flip-sale proceeds of the Direct Purchase Enterprise, which is an independent ground for Amazon's conversion claim.

3.

As equitable remedies for its unjust enrichment and conversion claims, Amazon seeks disgorgement and a constructive trust.  *See Rahman*, 198 F.3d at 498 (noting that a constructive trust is "a tool of equity" (internal quotation marks omitted)); *Frank Shop, Inc. v. Crown Cent. Petroleum Corp.*, 564 S.E.2d 134, 137, 140 (Va. 2002) (acknowledging that "[d]isgorgement of profits is [an] equitable remedy").  Northstar contends that flaws in Amazon's theories demonstrate that the relief it seeks is actually not equitable.  We again disagree.

Disgorgement is "the payment of profits arising from improper conduct" and "is commonly understood as a form of restitution, 'limited to restoring the status quo.'" *Consumer Fin. Prot. Bureau v. Klopp*, 957 F.3d 454, 467 (4th Cir. 2020) (quoting *Tull v. United States*, 481 U.S. 412, 424 (1987)).  It is "tethered to a wrongdoer's net unlawful profits," not a plaintiff's losses.  *Liu v. SEC*, 140 S. Ct. 1936, 1943 (2020).  Indeed, when the case warrants, "Virginia law allows for disgorgement of *all* profits for unjust enrichment," not only the funds obtained directly from the plaintiff, as Northstar suggests. *Quick Serve Concepts, LLC v. Cedar Fair, L.P.*, 83 Va. Cir. 59, 2011 WL 8947571, at *5 (2011).  Here, Amazon alleges that, had it known of Northstar's fraudulent behavior, it

15

"would not, under any circumstances, have approved the real estate transactions it entered into with Northstar." J.A. 1252. And, contrary to Northstar's arguments, disgorgement does not require tracing of specific funds in a defendant's possession. *See FTC v. Bronson Partners, LLC*, 654 F.3d 359, 374 (2d Cir. 2011) (remarking that it is "uncontroversial that tracing is not required in disgorgement cases"); *SEC v. Banner Fund Int'l*, 211 F.3d 602, 617 (D.C. Cir. 2000) (observing that "disgorgement is an equitable obligation to return a sum equal to the amount wrongfully obtained, rather than a requirement to replevy a specific asset"); *FTC v. Vylah Tec LLC*, 328 F. Supp. 3d 1326, 1331 (M.D. Fla. 2018) (noting that "disgorgement does not require the district court to apply equitable tracing rules to identify specific funds in the defendant's possession that are subject to return" (internal quotation marks omitted)).

As regards the constructive trust, Amazon requested it be imposed over various accounts and assets identified throughout its pleadings. Northstar contends that Amazon cannot be entitled to a constructive trust because it has made no effort to trace its money "into the chose in action, fund, or other property which is to be made the subject of the trust." *St. Joe Co. v. Norfolk Redev. & Hous. Auth.*, 722 S.E.2d 622, 409 (Va. 2012) (quoting *Crestar Bank v. Williams*, 462 S.E.2d 333, 335 (1995)). But "[f]or commingled funds, such tracing may be sufficiently accomplished under the lowest intermediate balance rule by a showing that the amount in the destination account exceeded the value of the constructive trust." *Id.* at 410 (citing *Old Republic Nat'l Title Ins. Co. v. Tyler*, 155 F.3d 718, 724 (4th Cir. 1998)). Amazon pleaded numerous examples of specific funds that Northstar received through unjust enrichment or conversion. It is enough at this point that

16

Amazon alleges that the unjust gains and converted funds passed through Northstar's possession and "an amount equal to the amount held [in trust] was in its hands." *Fed. Reserve Bank of Richmond v. Peters*, 123 S.E. 379, 386 (Va. 1924).

We are satisfied that Amazon has pleaded claims "seek[ing] cognizable relief in equity involving assets of [Northstar]." *Rahman*, 198 F.3d at 497.

## B.

The second step of the *Rahman* analysis requires us "to determine whether the interim relief sought"—here, the preliminary injunction requiring Northstar to secure $21,250,000—"is a reasonable measure to preserve the *status quo* in aid of the ultimate equitable relief claimed." *Id.*; *see also Grupo Mexicano*, 527 U.S. at 326 ("[A] preliminary injunction is always appropriate to grant immediate relief of the same character as that which may be granted finally[.]" (quoting *De Beers Consol. Mines*, 325 U.S. at 220)). To begin with, "[i]t is readily apparent" that, to be able to "impose a constructive trust over assets obtained through fraud requires preservation of the assets," and to order disgorgement of illicit profits likewise requires that those profits be preserved. *Rahman*, 198 F.3d at 498.

To the extent Northstar questions the link between the amount secured by the injunction and the equitable relief Amazon seeks, we find it sufficiently established. For example, Amazon alleged that Northstar had a role in the White Peaks flip sale, yielding inflated profits of $18 million, of which Northstar ultimately realized $5 million. Amazon also granted over $400 million in spend requests in the build-to-suit partnership and alleged that Northstar improperly used certain of those funds, such as Casey Kirchner's "shares"

17

of $16,250,000 in proceeds Northstar realized on the Shaw Road, Quail Ridge, and Manassas projects, and over $5 million in wire transfers Northstar made to Villanova for "commissions," "leasing fees," and "development fees" related to the leasing projects. The $21,250,000 that the district court ordered Northstar to secure thus represents what Amazon terms a "conservative estimate" of Northstar's unjust gains subject to disgorgement or a constructive trust. Resp. Br. 28. Preservation of that sum ensures that Amazon can obtain at least a portion of the ultimate relief sought pursuant to its equitable claims.

*   *   *

In view of the foregoing, we conclude that Amazon's equitable claims fit within "the traditional equity powers recognized by *Grupo Mexicano*, *De Beers*, and *Deckert*." *Rahman*, 198 F.3d at 498. This case "does not present the pure money damage claim addressed in *Grupo Mexicano*," *id.*, and the district court possessed authority to enter the injunction.

III.

Having resolved the question of the district court's authority, we turn now to the separate question of whether a preliminary injunction was justified. "A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). We review the decision to grant a preliminary injunction for an abuse of discretion. *Mountain Valley Pipeline, LLC*

18

*v. 6.56 Acres of Land, Owned by Sandra Townes Powell*, 915 F.3d 197, 213 (4th Cir. 2019). Under this "deferential standard," we will not reverse absent a clearly erroneous factual finding or a mistake of law. *Id.* Northstar has shown neither.

### A.

The district court determined at this preliminary stage that Amazon is likely to succeed on all its claims. As the court noted, "this suit is based on conduct that supported law enforcement's finding of probable cause" to issue an FBI search warrant. J.A. 1639. Support for Amazon's claims at this point "includes, *inter alia*, business files, wire records, voice recordings, and recent public and incriminating statements by Defendants." J.A. 1639. "Undisclosed self-dealings, kickback payments, and concealed 'finder' or 'broker' fees also support" Amazon's claims. J.A. 1639.

As discussed above, Northstar contests the viability of Amazon's equitable claims. *See supra* Part II.A. But Northstar makes no other argument regarding Amazon's likelihood of success on those claims. Because Amazon has pleaded viable equitable claims, Northstar has failed to identify any abuse of discretion in the district court's conclusion that Amazon is likely to prevail on the merits.

### B.

Northstar contends that the district court erred in finding that Amazon faces irreparable harm absent preliminary relief because Amazon seeks an award of damages and has an adequate remedy at law. "The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Sampson v. Murray*, 415 U.S. 61, 90 (1974);

19

*see also Hughes Network Sys., Inc. v. InterDigital Commc'ns Corp.*, 17 F.3d 691, 694 (4th Cir. 1994) ("Where the harm suffered by the moving party may be compensated by an award of money damages at judgment, courts generally have refused to find that harm irreparable.").

But "irreparable harm may still exist where . . . 'damages may be unobtainable from the defendant because he may become insolvent before a final judgment can be entered and collected.'"  *Hughes Network Sys.*, 17 F.3d at 694 (quoting *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386 (7th Cir.1984)); *see also SAS Inst., Inc. v. World Programming Ltd.*, 874 F.3d 370, 386–387 (4th Cir. 2017).  In such a case, preliminary relief securing assets may fulfill the "traditional office of a preliminary injunction . . . to protect the status quo and to prevent irreparable harm during the pendency of a lawsuit ultimately to preserve the court's ability to render a meaningful judgment on the merits." *In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 525 (4th Cir. 2003), *abrogated on other grounds by eBay Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006); *see also Deckert*, 311 U.S. at 290 (affirming preliminary restraint of a certain sum when it was alleged the defendant was insolvent and its assets in danger of dissipation or depletion).

The district court agreed with Amazon that Northstar's assets are likely to become unavailable before judgment due to "dissipation of assets" and Northstar's conceded "likelihood of insolvency."  J.A. 1646, 1647; *see also* J.A. 1645 (observing Northstar and Watson "are now beset by lawsuits, business failures, and FBI inquiries").  The district court therefore did not abuse its discretion in finding that a preliminary injunction was necessary to preserve Amazon's interests in Northstar's assets and the court's ability to

render a meaningful judgment on the merits.  Furthermore, the injunction awarded was "carefully tailored" to Amazon's equitable claims and specific figures alleged in its complaint, in order to maintain the status quo and "preserve [Amazon's] opportunity to receive an award . . . at judgment."  *Hughes Network Sys.*, 17 F.3d at 694.

### C.

Regarding the balance of harms, Northstar advances two arguments, both illogical. First, Northstar contends it is "[a]xiomatic[]" that if it is "unable to pay a $21.25 million judgment—the basis for the district court's injunction—[then] an order to escrow that sum before trial will cause it to sell off its real estate investments at a loss and to cease operations," causing the very harm the order intends to prevent.  Opening Br. 21.  This logic is faulty because the district court's order is premised not on a current inability to pay but on a future inability to pay due to dissipation of currently held assets.  It also ignores the bond alternative the district court included in the injunction at Northstar's request.

Second, Northstar asserts that if it "has the wherewithal to fund the requested escrow, that completely undermines the basis for an injunction in the first place."  *Id.* at 22.  Of course, this disregards the purpose of the injunction: to ensure that Northstar's present ability to pay endures until judgment.

### D.

Lastly, the district court found that the public interest favored a preliminary injunction to preserve the status quo.  On appeal, Northstar takes issue with the court's statement that "[t]rusted business partners will be necessary to secure [Amazon's] ongoing development [in northern Virginia] in the public interest."  J.A. 1652.  Here and elsewhere

21

in its briefs, Northstar accuses the district court of favoring Amazon because of its "market power."  Opening Br. 50.  We reject Northstar's baseless charge against the integrity and impartiality of the district court.  Northstar has failed to identify any abuse of discretion in the court's entry of this preliminary injunction.

## IV.

The district court possessed authority to enter a preliminary injunction in this case to preserve the status quo and Amazon's ability to recover on its equitable claims after judgment.  Northstar has not demonstrated that the court abused its discretion in granting the portion of the injunction appealed.  The judgment of the district court is

*AFFIRMED*.