**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| AMAZON.COM, INC. and AMAZON DATA SERVICES, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>WDC HOLDINGS LLC dba NORTHSTAR COMMERCIAL PARTNERS; BRIAN WATSON; STERLING NCP FF, LLC; MANASSAS NCP FF, LLC; NSIPI ADMINISTRATIVE MANAGER; NOVA WPC LLC; WHITE PEAKS CAPITAL LLC; VILLANOVA TRUST; CASEY KIRSCHNER; ALLCORE DEVELOPMENT LLC; FINBRIT HOLDINGS LLC; CHESHIRE VENTURES LLC; CARLETON NELSON; JOHN DOES 1-20,<br><br>Defendants. | CASE NO. 1:20-CV-484-LO-TCB |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO HOLD
DEFENDANTS BRIAN WATSON & WDC HOLDINGS LLC IN CIVIL CONTEMPT**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 4

      A.    2020 Injunction and Contempt Proceedings ................................ 4

      B.    Appellate Affirmance of Injunction .............................................. 6

      C.    2021 Discovery and Sanctions Proceedings ................................ 7

      D.    Collateral Asset Liquidation, Litigation, and Ongoing Injunction
           Obstruction ................................................................................. 12

LEGAL STANDARDS ...................................................................................................... 14

ARGUMENT ..................................................................................................................... 15

    I.     DEFENDANTS ARE IN CONTEMPT OF INJUNCTION
         PARAGRAPHS 2 AND 7 ....................................................................... 15

      A.    Defendants Had Knowledge of the Injunction in Amazon's Favor .......... 15

      B.    Defendants Knowingly Violated Paragraphs 2 and 7 of the
           Injunction ................................................................................... 16

      C.    Defendants' Injunction Violations Have Harmed Amazon ..................... 19

      D.    Defendants Cannot Show "Good Faith" or "Reasonable Efforts to
           Comply" ..................................................................................... 21

    II.    MULTIPLE SANCTIONS ARE IMMEDIATELY WARRANTED .................. 22

      A.    The Court Should Preserve the *Status Quo* Through Expedited
           Hearing on This Motion By Prohibiting Certain Transactions and
           Collateral Litigation .................................................................... 24

      B.    The Court Should Appoint a Receiver to Administer Defendants'
           Assets ......................................................................................... 27

      C.    The Foregoing or Other Contempt Remedies Should Be Enforced
           At Defendants' Expense and Subject to Fines for Non-Compliance ........ 29

CONCLUSION .................................................................................................................. 30

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*ACA Fin. Guar. Corp. v. City of Buena Vista*,
  298 F. Supp. 3d 834 (W.D. Va. 2018) ....................................................................28

*Amazon.com, Inc. v. WDC Holdings LLC* (*Amazon V*),
  2021 WL 3878403 (4th Cir. Aug. 31, 2021)............................1, 2, 6, 7, 11, 16, 18, 20, 21, 29

*Amazon.com, Inc. v. WDC Holdings LLC* (*Amazon IV*),
  2020 WL 7680552 (E.D. Va. Sept. 4, 2020)............................................................5

*Amazon.com, Inc. v. WDC Holdings LLC* (*Amazon III*),
  2020 WL 4353563 (E.D. Va. July 28, 2020) .......................................................1, 4

*Amazon.com, Inc. v. WDC Holdings LLC* (*Amazon II*),
  2020 WL 4720086 (E.D. Va. June 5, 2020) .................................1, 5, 16, 17, 18, 19

*Amazon.com, Inc. v. WDC Holdings LLC* (*Amazon I*),
  2020 WL 9455205 (E.D. Va. Apr. 28, 2020) .......................................................4, 5

*Ashcraft v. Conoco, Inc.*,
  218 F.3d 288 (4th Cir. 2000) .................................................................2, 15, 22

*Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*,
  398 U.S. 281 (1970)............................................................................................27

*Axiom Res. Mgmt., Inc. v. Alfotech Sols., LLC*,
  2011 WL 2560096 (E.D. Va. June 3, 2011) .........................................2, 20, 21, 22, 23, 24, 30

*Axiom Res. Mgmt., Inc. v. Alfotech Sols., LLC*,
  2012 WL 1118947 (E.D. Va. Mar. 30, 2012).........................................................24

*Baker v. Curtis W. Key Plumbing Contractors, Inc.*,
  2016 WL 11672046 (E.D. Va. Dec. 8, 2016) ........................................................22

*Bralley v. Carey*,
  2011 WL 6326503 (E.D. Va. Dec. 1, 2011) ..........................................................30

*Brooks Sports, Inc. v. Anta (China) Co.*,
  2018 WL 7488924 (E.D. Va. Nov. 30, 2018).....................................................22, 23

*Buffalo Wings Factory, Inc. v. Mohd*,
  574 F. Supp. 2d 574 (E.D. Va. 2008) ..................................................................16

# TABLE OF AUTHORITIES

Page(s)

*Buffington v. Baltimore Cty.*,
   913 F.2d 113 (4th Cir. 1990) ............................................................23, 30

*Certain Underwriters at Lloyd's v. Advanfort Co.*,
   2019 WL 3366103 (E.D. Va. July 25, 2019) ...........................................22

*CFTC v. Forefront Invs. Corp.*,
   2007 WL 2437413 (E.D. Va. Aug. 22, 2007)............................................28

*CFTC v. Kimberlynn Creek Ranch, Inc.*,
   276 F.3d 187 (4th Cir. 2002) ...................................................................25

*Chesapeake Bank v. Berger*,
   2014 WL 5500872 (E.D. Va. Oct. 30, 2014).............................22, 23, 28, 29

*Chick Kam Choo v. Exxon Corp.*,
   486 U.S. 140 (1988)...................................................................................27

*Colonial Williamsburg Found. v. Kittinger Co.*,
   792 F. Supp. 1397 (E.D.Va. 1992) ...........................................................15

*Cromer v. Kraft Foods N. Am., Inc.*,
   390 F.3d 812 (4th Cir. 2004) ............................................................23, 30

*De Beers Consol. Mines Ltd. v. United States*,
   325 U.S. 212 (1945)...................................................................................16

*Doe v. Ceci*,
   517 F.2d 1203 (7th Cir. 1975) ..................................................................27

*Enovative Techs., LLC v. Leor*,
   86 F. Supp. 3d 445 (D. Md. 2015).............................................................30

*Fed. Nat'l Mortg. Ass'n v. CG Bellkor, LLC*,
   2013 WL 12148279 (E.D. Va. Mar. 18, 2013)..........................................28

*FTC v. Bronson Partners, LLC*,
   654 F.3d 359 (2d Cir. 2011).......................................................................18

*In re Gen. Motors Corp.*,
   61 F.3d 256 (4th Cir. 1995) ......................................................................15

*Gilchrist v. Gen. Elec. Capital Corp.*,
   262 F.3d 295 (4th Cir. 2001) ....................................................................27

# TABLE OF AUTHORITIES

Page(s)

*Gompers v. Buck's Stove & Range Co.*,
   221 U.S. 418 (1911)......................................................................................................29

*Henry v. First Nat'l Bank*,
   595 F.2d 291 (5th Cir. 1979) ........................................................................................27

*Hicks v. Feiock*,
   485 U.S. 624 (1988)......................................................................................................30

*Hutto v. Finney*,
   437 U.S. 678 (1978)......................................................................................................15

*Int'l Union, United Mine Workers of Am. v. Bagwell*,
   512 U.S. 821 (1994)................................................................................................23, 29

*Lamar, Archer & Cofrin, LLP v. Appling*,
   138 S. Ct. 1752 (2018)..................................................................................................20

*LNV Corp. v. Harrison Family Bus., LLC*,
   132 F. Supp. 3d 683 (D. Md. 2015) ..............................................................................28

*NBA v. Minn. Prof'l Basketball, Ltd. P'ship*,
   56 F.3d 866 (8th Cir. 1995) ..........................................................................................27

*Plant v. Merrifield Town Ctr. Ltd. P'ship*,
   711 F. Supp. 2d 576 (E.D. Va. 2010) ...........................................................................23

*United States ex rel. Rahman v. Oncology Assocs.*,
   198 F.3d 489 (4th Cir. 1999) ..................................................................................21, 25

*Rainbow Sch., Inc. v. Rainbow Early Educ. Holding LLC*,
   887 F.3d 610 (4th Cir. 2018) ..................................................................................15, 26

*Redner's Mkts., Inc. v. Joppatowne G.P. Ltd. P'ship*,
   608 F. App'x 130 (4th Cir. 2015) .................................................................................15

*Ex parte Robinson*,
   86 U.S. (19 Wall.) 505 (1874) ................................................................................15, 26

*SAS Inst., Inc. v. World Programming Ltd.*,
   874 F.3d 370 (4th Cir. 2017) ........................................................................................21

*Schwartz v. Rent-A-Wreck of Am.*,
   261 F. Supp. 3d 607 (D. Md. 2017) ..............................................................................30

# TABLE OF AUTHORITIES

Page(s)

*SEC v. Dunlap*,
    253 F.3d 768 (4th Cir. 2001) ...................................................................................24

*SEC v. Int'l Swiss Invs. Corp.*,
    895 F.2d 1272 (9th Cir. 1990) ................................................................................25

*SEC v. Liu*,
    851 F. App'x 665 (9th Cir. 2021) ...............................................................17, 25, 26

*STM Invest S.A.R.L. v. 3P Equity Partners, LLC*,
    2019 WL 1960278 (C.D. Cal. Mar. 27, 2019) ........................................................17

*STM Invest S.A.R.L. v. 3P Equity Partners, LLC*,
    No. 19-cv-1764-CBM-AS, Dkt. 167 (C.D. Cal., June 14, 2019), In *STM* ..............17

*TFWS, Inc. v. Franchot*,
    572 F.3d 186 (4th Cir. 2009) ...................................................................................29

*Thomas v. FTS USA, LLC*,
    2016 WL 3566657 (E.D. Va. June 24, 2016) ..........................................................22

*United States v. Ali*,
    874 F.3d 825 (4th Cir. 2017) ..................................................................2, 15, 16, 22

*United States v. Latney's Funeral Home, Inc.*,
    41 F. Supp. 3d 24 (D.D.C. 2014) ............................................................................29

*United States v. Mescall*,
    624 F. App'x 103 (4th Cir. 2015) ............................................................................28

*United States v. Rosen*,
    557 F.3d 192 (4th Cir. 2009) ...................................................................................29

United States v. Rylander, 460 U.S. 752 (1983) ............................................................22

*United States v. United Mine Workers of Am.*,
    330 U.S. 258 (1947) .................................................................................................23

*Wu v. Tseng*,
    2008 WL 4360990 (E.D. Va. Sept. 22, 2008)........................................................22

*Yancey v. Int'l Fid. Ins. Co.*,
    2016 WL 2997375 (E.D. Va. May 25, 2016) ..........................................................28

*Zacarias v. Stanford Int'l Bank, Ltd.*,
    945 F.3d 883 (5th Cir. 2019) ...................................................................................27

# TABLE OF AUTHORITIES

Page(s)

**Statutes**

28 U.S.C. § 2283.................................................................................................27

28 U.S.C. § 2361.................................................................................................27

**Other Authorities**

Related, *Black's Law Dictionary* 1541 ...........................................................20

Restatement of Restitution § 210(1) p. 845 (1958)....................................18, 19

Wright & Miller, Fed. Prac. & P. § 2960..........................................................23

Wright & Miller, Fed. Prac. & P. § 2985..........................................................28

**Rules**

Fed. R. Civ. P. 37.............................................1, 2, 7, 10, 13, 14, 21, 22, 25, 27, 30

Fed. R. Civ. P. 66.................................................................................................28

Plaintiffs Amazon.com, Inc. and Amazon Data Services, Inc. ("Amazon") respectfully move for an order holding defendants Brian Watson and WDC Holdings LLC ("Northstar") (collectively, "Defendants") in civil contempt of this Court's preliminary injunction, Dkt. 57 ("Injunction"), and for immediate relief based on this contempt and the Rule 37 record the Court has found "admissible in any . . . motion[] regarding injunctive relief filed by Plaintiffs," Dkt. 330.

## INTRODUCTION

Defendants' contempt is clear, and sanctions are necessary to protect the Court's authority and Amazon's rights as affirmed on appeal and in the Court's Rule 37 orders. The Court entered the Injunction after finding that Amazon was likely to succeed on its claims in this fraud and racketeering case, and that Defendants were likely to dispose of assets and evidence prior to judgment. Dkts. 16, 57; *Amazon.com, Inc. v. WDC Holdings LLC* (*Amazon II*), 2020 WL 4720086 (E.D. Va. June 5, 2020). Consistent with these findings, Paragraph 2 of the Injunction required Defendants to post $21,250,000 in judgment security, and Paragraph 7 prohibited them from dissipating assets. *Amazon II*, 2020 WL 4720086, at *2–4; *Amazon.com, Inc. v. WDC Holdings LLC* (*Amazon III*), 2020 WL 4353563, at *2 (E.D. Va. July 28, 2020) (*Amazon III*). Defendants have defied both provisions since they were entered in June of last year, and have now liquidated over $140 million in assets without posting any of the required security.

This Injunction contempt is not excused by Defendants' appeal of Paragraph 2's security provision. This Court did not stay this provision, which the Fourth Circuit has now affirmed as necessary to "ensure that [Defendants'] present ability to pay endures until judgment." *Amazon.com, Inc. v. WDC Holdings LLC* (*Amazon V*), 2021 WL 3878403, at *9 (4th Cir. Aug. 31, 2021). Nor is Defendants' Injunction contempt excused by the defenses they raised in this Court last spring. In July 2020, the Court ordered Defendants to produce discovery substantiating those defenses. Dkts. 94, 95. That order gave Defendants a chance to prove that they "never received

anywhere near" $21.25 million "in connection with [Amazon's] transactions," Dkt. 193-2 at 18:25–19:1; that they did not know kickbacks were being funneled to Amazon insiders; and that they were "unable to [pledge]" any of their ten-figure portfolio for a bond and otherwise lacked resources "sufficient" to post security, *id*. at 24:1–5. Instead, Defendants abused the discovery process to proliferate their Injunction violations. This record supports immediate contempt relief in addition to the Rule 37 sanctions the Court granted on September 10, 2021. Dkt. 330.

Civil contempt is warranted where, as here, the alleged contemnor had "knowledge" of a "valid decree" in the movant's "favor," "violated the terms of the decree," and harmed the movant "as a result." *Ashcraft v. Conoco, Inc*., 218 F.3d 288, 301 (4th Cir. 2000). The Injunction itself satisfies the first two requirements. Defendants' admitted dissipation of over $140 million in assets while refusing to post the required judgment security satisfies the third requirement. And recent orders from this Court and the Fourth Circuit confirm the resulting harm to Amazon.

This *prima facie* evidence of contempt "shift[s] to [D]efendant[s]" the burden "to demonstrate that [they] made in good faith all reasonable efforts to comply with" the Injunction. *United States v. Ali*, 874 F.3d 825, 828 (4th Cir. 2017) (quotation marks omitted). But the record here forecloses such a showing. On September 10, 2021, this Court held that Defendants "willfully failed to comply with" three Injunction-related "discovery orders," *see* Dkts. 95, 231, 302, as well as "their discovery obligations under Federal Rule of Civil Procedure 37," Dkt. 330, and that "there is certainly prejudice to the plaintiffs in terms of their ability to enforce the injunction or, perhaps, even recoup the funds," Ex. 1 at 7:5–7. These rulings alone preclude any "good faith" defense. *See, e.g*., *Axiom Res. Mgmt., Inc. v. Alfotech Sols., LLC*, 2011 WL 2560096, at *7 (E.D. Va. June 3, 2011) ("bad faith includes willful" violation of court orders). And they similarly preclude any showing of "reasonable efforts to comply" with the Injunction. *Ali*, 874 F.3d at 831.

2

Defendants' discovery responses confirm that their Injunction defenses were not just unsubstantiated, but were knowingly false.  Defendants told the Court that they "never received anywhere near that amount of money" Paragraph 2 attributes to the deals in this suit, and did not know that funds were being channeled to Amazon insiders.  Dkt. 193-2 at 18:25–19:1.  But Defendants now admit Amazon proceeds that *exceed* the Injunction amount and have corroborated their knowledge of kickbacks that were independently documented in the Injunction record.  Defendants' discovery responses also confirm that third party investors did *not* "render" Defendants "unable to pledge" their assets for escrow or bond.  ██████████████████████████ ████████████████████████████████.  Defendants simply chose not to do so and instead dissipated over $140 million in assets while violating the Injunction.

Defendants' extraordinary contempt of this Court's orders, coupled with their ongoing Injunction obstruction, supports immediate relief beyond the discovery sanctions the Court granted earlier this month.  Dkt. 330.  At a minimum, the Court should rely on its September 10 findings to immediately entering an order that:  (i) grants the request for expedited briefing and hearing that accompanies this motion; and (ii) prohibits Defendants from engaging in any business or personal transactions in excess of $10,000, and from initiating or settling any collateral asset litigation, until the Court hears and fully resolves this motion, including the post-hearing appointment of any receiver.  The law and record support these sanctions now to preserve the *status quo* while expediting full consideration of receivership or other contempt sanctions that will protect the Injunction and all stakeholder rights without collateral litigation, including for liens or lis pendens.[1]

---

[1] The issues presented by Defendants' September 29, 2021 "Motion to Clarify the Injunction," Dkt. 343, are subsumed—and foreclosed—by the points in this motion, and should be briefed concurrently as Amazon proposed (and Defendants purported to agree) just hours before they filed. Although Amazon reserves the right to file a separate opposition to Defendants' motion, the record evidence confirms that they are in contempt of Injunction Paragraph 7 as they read it.

**BACKGROUND**

Plaintiffs filed this case and sought preliminary injunctive relief in April 2020.  The action arises out of a fraud and kickback scheme that Defendants and their coconspirators used to obtain tens of millions of dollars in illicit proceeds on over $500 million of Amazon development projects in this District.  Defendant Brian Watson is the owner of Defendant WDC Holdings, a Colorado real estate development company operating as Northstar.  *Amazon III*, 2020 WL 4353563, at *2. Beginning in 2017, Watson cultivated a relationship with two Amazon real estate transaction managers—co-defendants Carleton Nelson and Casey Kirschner, *id.*—who, as detailed in prior pleadings and orders, steered transactions to Defendants in exchange for kickbacks.  Dkts. 10–12, 41– 47, 57, 68–69, 84–85, 100, 150, 191, 210–218, 231, 256, 285–86, 291, 308, 330.

**A.**     **2020 Injunction and Contempt Proceedings**

Because this case arose out of an internal and parallel criminal investigation into Defendants' misconduct, even Amazon's initial filings were supported by a substantial "body of evidence including spreadsheets, wire transfer instructions, email exchanges, recorded conversations, and other materials implicating defendants in the alleged scheme."  *Amazon III*, 2020 WL 4353563, at *3.  Based on this record, the Court granted a temporary restraining order ("TRO") requiring Defendants to place $21.25 million into escrow and enjoining them from "transferring, or otherwise disposing of . . . assets used in, or obtained from, the activities alleged in this action."  Dkt. 16; *Amazon.com, Inc. v. WDC Holdings LLC* (*Amazon I*), 2020 WL 9455205, at *3 (E.D. Va. Apr. 28, 2020).  Then, after weeks of litigation, Dkts. 9, 10, 30, 39, 41, the Court converted the TRO to a preliminary injunction, but indulged Defendants' request to modify the terms and delay entry of the order so they could obtain a bond.  Dkts. 49–51.  As of June 5, 2020, Defendants had not procured a bond, so the Court entered the Injunction with various security options, all of which Defendants have defied to this day.  *Amazon II*, 2020 WL 4720086; *see also* Dkt. 84 at 2.

In July 2020, Defendants still had not posted any security, so Amazon moved for an order to show cause why they should not be held in contempt of the Injunction. Dkts. 67–68, 84. Defendants responded by appealing the security provision, Dkts. 72, 137, and reprising their claims that it "far overestimate[s] the amount of money that [they] actually received from Amazon," Dkt. 193-2 at 18:21–23; that the "different types of fees that were paid" on the relevant deals are "not the kind of thing that one can quickly come in and summarize for the Court," *id*. at 17:22–25; and that they do not have "anywhere near" enough available cash or other liquid assets to be able to place $21,250,000 into escrow, *id.* at 18:25–19:1. Defendants then endorsed Amazon's proposal of "limited discovery" on these defenses, *id.* at 13, to avoid a contempt ruling pending disposition of their appeal and motion to stay the Injunction, Dkts. 75, 118.

On July 17, 2020, the Court agreed that "discovery is the answer." Dkt. 91 at 26:10–12, 27:1–8, 27:23–24. Amazon immediately filed 22 requests tailored to Defendants' unsubstantiated Injunction challenges, Dkt. 94, and the Court ordered Defendants to answer them in accordance with the federal rules. Dkt. 95 at 1. Defendants did not do so, Dkt. 193-9, even after the Court denied their request to stay the Injunction pending appeal. *Amazon.com, Inc. v. WDC Holdings LLC* (*Amazon IV*), 2020 WL 7680552, at *2 (E.D. Va. Sept. 4, 2020).[2] Amazon then moved to compel, Dkt. 190, and on November 13, 2020 the Court overruled Defendants' discovery objections and ordered them to "fully and completely respond to the [July] discovery requests" by November 24, 2020. Ex. 1 at 13:14–21. They failed to do so, instead producing initial and objectionable responses in late November while surreptitiously liquidating over $82 million in assets. When Amazon discovered and objected to these liquidations, Defendants insisted they did not

---

[2] The Court's opinion found that Defendants' appeal was unlikely to succeed, and that a stay would "risk any award being payable in the event of a favorable ruling" for Amazon because Defendants were likely to dissipate "significant assets." *Amazon IV*, 2020 WL 7680552 at *2–3.

generate cash that could be used for judgment security, and promised to "supplement" their discovery responses to substantiate this claim.  They then spent months on voluminous but substantively deficient productions while their liquidations swelled to over $140 million.[3]  Dkt. 310-3.

## B.      Appellate Affirmance of Injunction

On September 22, 2021, the mandate issued on the Fourth Circuit's opinion affirming the Injunction.  *See Amazon.com, Inc. v. WDC Holdings LLC* (*Amazon V*), 2021 WL 3878403 (4th Cir. Aug. 31, 2021).  The opinion unanimously rejected Defendants' claim that the Injunction violates the Supreme Court's prohibition on preliminary damages awards, *id*. at *4–5, and affirmed Paragraph 2's judgment security provision as a valid exercise of this Court's "equitable authority to preserve the status quo pending judgment" on Amazon's claims "involving [Defendants'] assets," *id.* at *5.  Notably, the Fourth Circuit held that Amazon has "viable claim[s]" in equity for "funds that were allegedly converted due to Northstar's fraudulent behavior and were eventually deposited into Northstar's accounts." *Id.* at *6.  It then affirmed Paragraph 2's mandate for $21.25 million in judgment security because even the record appealed last spring  presented "significant evidence linking the Project Entities, Northstar, and Villanova[4] to improper payments and money transfers." *Id.* at *2.  In affirming the amount of security Paragraph 2 requires, the Fourth Circuit expressly held that a preliminary injunction on equitable claims like constructive trust and "disgorgement does *not* require tracing of specific funds in a defendant's possession." *Id.* at *6–7.

---

[3]  These dispositions include: (i) 5825 Mark Dabling Blvd, sold for $17,000,000 on 10/1/2020; (ii) 9200 E. Mineral Avenue, sold for $9,050,000 on 12/9/2020; (iii) 5500 S. Quebec Street, sold for $25,480,000 on 7/30/2020; (iv) 2979 N. Uinta Street, sold for $24 million on 11/4/2020; (v) 3840 S. Wadsworth Blvd, sold for an unknown amount on 8/18/2020; (vi) 800 Hoyt Street, sold for $22,212,000 on 12/8/2020; (vii) 18445-18455 W. Colfax Avenue, apparently transferred to an affiliate for $1,117,662 on 11/23/2020; and (viii) Mt. Pocono, sold for $25,175,000 on 12/23/20.

[4]  Co-Defendant Villanova Trust was the entity that Watson's friend Christian Kirschner, the brother of co-defendant and former Amazon manager Casey Kirschner, set up to receive Defendants' "referral" payments on Amazon's deals, portions of which channeled to Casey and Nelson.

Having affirmed this standard for granting the Injunction, the Fourth Circuit agreed that Amazon had satisfied it by "plead[ing] numerous examples of specific funds that Northstar received through unjust enrichment or conversion." *Id.* Based on this record (which has now further developed in Amazon's favor), it held that Paragraph 2's security requirement is "a reasonable measure to preserve" the $21.25 million Amazon identified as "a 'conservative estimate' of Northstar's unjust gains subject to disgorgement or a constructive trust," *id.* at \*7, and that this security is necessary to prevent irreparable harm to Amazon and "ensure that Northstar's *present ability to pay* endures until [final] judgment," *id.* at \*9.

## C.    2021 Discovery and Sanctions Proceedings

The current Injunction and contempt record is much stronger now than the record underlying the Fourth Circuit's opinion and this Court's July 2020 discovery order. Dkts. 57, 95. The new record is detailed in the many pleadings (*see, e.g.*, Dkts. 284, 286, 302, 304, 308, 310, 330) supporting the Court's three Rule 37 decisions, Dkts. 231, 301, 330, the most recent of which granted sanctions for Defendants' "willful[] fail[ure]" to comply with the Court's discovery orders and the federal rules. Dkt. 330; Ex. 1 at 7. As detailed below, this record confirms that Defendants' Injunction challenges were not merely unsubstantiated, but in several respects knowingly false or otherwise willfully directed at obstructing the Injunction.

***Amazon Transaction Proceeds and Kickbacks.*** The record now establishes that Defendants' representations concerning the transaction proceeds and kickbacks at issue in this case—including their claims that they "never received anywhere near [$21.25 million] in connection with [Amazon's] transactions" and were unaware of any proceeds flowing back to Amazon insiders, Dkt. 193-2 at 18:25–19:1—were false. Their own documents reference at least $18,636,919 in Northstar "Acquisition, Leasing, Development and Asset Management" fees connected to Northstar's Amazon lease deals *in addition to* the $5 million they admit receiving from Amazon's

purchase of land at an inflated price from co-defendant White Peaks LLC.[5]  Dkt. 286-13.  And of this $23,636,919 in Amazon-related proceeds, their sworn interrogatory responses, which the Court sanctioned as incomplete, admit they received at least $19,609,925 before this suit was filed. Dkt. 310-4 at 3–4.  Defendants are also suing Amazon's current development partner for "over $13 million in fees" *beyond* the $23 million above, as well as an additional "$53 million in" partnership payments.  Dkt. 310-12.

The current record similarly rebuts Defendants' claim that they never knew these funds or other deal proceeds were used or intended for kickbacks.  Since the Injunction was entered, Amazon has obtained audio transcripts and documents corroborating the original evidence that Defendants made such payments, including through their "referral" agreement with co-defendant Villanova Trust.[6]  And the discovery the Court compelled Defendants to produce this past July from electronic devices the FBI returned to them in February of this year contained significant additional evidence of their knowing participation in the kickback scheme, notably:



---

[5] White Peaks was the shell entity created to sell the Virginia property to Amazon.  The responsible former Northstar employees have since forfeited their share of the proceeds to prosecutors.

[6] Evidence of this kickback arrangement includes audio recordings in which: (i) Watson agrees that "first priorities should be Casey and Carl," Dkt. 212-15 at 21; and (ii) Nelson tells a former Northstar employee that the "first couple distributions [Nelson and Kirschner] took" on the Northstar transactions came "through Casey's brother" at Northstar partner Villanova, which was "some sketchy a** sh**," Dkt. 212-13 at 8–9; Nelson had "taken 960 total" and Kirschner "eight something" from "all Brian's fees," *id*. at 30; and Nelson and Kirschner could continue getting kickback deals approved because people at Amazon are "f****** idiot[s]," *id*. at 19, 27.

███████████████████████████████████████████

The documents Defendants were forced to produce this month from the *Richards* litigation (which they settled using diverted assets) also contained █████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████

*Assets.* The current record likewise establishes the false or otherwise obstructive nature of Defendants' representations about their assets, particularly their claims that: (i) their assets last spring were "not sufficient" to comply with the Injunction, Dkt. 193-2 at 24:3–4; (ii) they could not obtain a bond because their "investors" rendered them "unable to pledge" any of their personal assets or investment interests as security, Dkt. 326-5 at 5; and (iii) they remain "unable" to comply with the Injunction after liquidating over $140 million in assets, Dkt. 326-6 at 4.  Notably:

- The Fourth Circuit has now agreed that the Injunction was properly entered to "preserve Northstar's present ability to pay" as documented in the record on appeal, Ex. 326-1 at 22;

- Defendants concede that since the Injunction was entered they have liquidated approximately *$140 million* in assets for cash they used to make payments to lenders and "investors," Dkt. 310-3;

- These "investors" included Defendants themselves *and* entities in which they have control or other interests, including new intervenor 800 Hoyt LLC, Dkts. 310-3, 310-6, 334;[7]

---

[7] Defendants' sworn interrogatory responses this summer concede that Defendants were among the "investors" that received payouts.  Dkt. 310-2; *see also, e.g.*, ███████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████).  But Defendants "willfully [disobeyed]" the Court's orders to account for all of these payments, as well as their interests in other investment properties, Watson's personal holdings, the September 14, 2020 dissolution of the Brian Watson Foundation (which Watson identified as the beneficiary of publication royalties), *see* Dkt. 68 at 24, and proceeds from the Fresh Fit Go Healthy Foods, LLC

- This Court granted Amazon's motion for Rule 37 sanctions because Defendants "willfully failed to comply with" orders to account for these dispositions, Dkt. 330;

- The incomplete discovery responses Defendants have produced show that:



- In addition to the above unaccounted proceeds, Defendants retain interests in Watson's golf-course mansion (currently on the market for $9.975 million), Colorado ranch, various unsold properties (*e.g.*, Benchmark) and proceeds "pending distribution" from prior asset sales (*e.g.*, 800 Hoyt, which they estimated to be up to $13.9 million), Dkt. 310-3 at 5; *supra* note 5;

Defendants further concede that since the Injunction was entered, they used the above and other assets "for the personal living expenses of Mr. Watson" as well as an endless stream of third party payments, unaccounted expenses, settlements with potential witnesses in this action, and payments to lawyers ▮▮▮▮▮▮▮▮▮. *See* Ex. 52 at 2; Ex. 54.[8]  The current record thus confirms that Defendants had the "ability" to comply with the Injunction last year, *Amazon V*, 2021 WL 3878403, at *9, and that, to the extent they are "unable" to comply now, it is because they diverted assets to themselves, their surrogates, and other obligations of their choosing while "willfully [disobeying]" the Injunction and this Court's discovery orders, Dkt. 330.[9]

---

entity operating out of Watson's mansion, *see* Dkt. 68 at 22.

[8] For example, Watson admits transferring proceeds from the sale of Defendants' interest in 5500 S. Quebec to his ex-wife immediately after the sale to satisfy "amounts he owed to her per the divorce agreement for other prior deals." Dkts. 310-2 at 2, 310-3. Similarly, she received more than $500,000 from the Dabling Properties sale, which Defendants used to pay loans totaling at least $1.26 million, including loans Watson owed in his personal capacity. *See* Dkt. 310-3 at 3.

[9] To the extent Defendants believed they had valid reasons to prioritize certain payments over

*Relationship of Assets to Amazon Transaction Proceeds.*  The current record further establishes that Defendants violated Paragraph 7's anti-dissipation provision in addition to defying Paragraph 2's security requirements.[10]  Defendants assert that Paragraph 7 "applies only to the real estate transactions *with* Amazon, and not any other assets or properties."  Dkt. 286-21 at 1 (emphasis added).  As discussed below, this argument is legally foreclosed by the plain text of Paragraph 7 (which covers assets "obtained from" or "relating to" Defendants' business with Amazon, Dkt. 57), and the Fourth Circuit's opinion affirming the Injunction's preservation mandate.  Dkt. 326-1. It is also factually foreclosed by Defendants' admissions that they used funds commingled with Amazon deal proceeds to finance or secure assets they still hold or have liquidated for cash. Declaration of Todd W. Shaw ("Shaw Decl.") ¶¶ 12–47, 48–74; Exs. 9–31, 32–48; *see also* Shaw Decl. ¶¶ 12–47; Exs. 9–31.

Notably, Defendants concede that funds from the Amazon deals were used "to pay operation expenses, used as working capital/investment funds, distributed to employees pursuant to contract, or were generally used to pay bills on behalf of Northstar."  Dkt. 310-2 at 3.  They also admit that they sold several properties—notably 800 Hoyt (for $24 million), 5805 Mark Dabling (for $17 million), 5500 S. Quebec (for $575,000), and Gateway Retail (for $5.9 million)—that were financed with funds that Defendants commingled with Amazon deal proceeds in at least two accounts.  Dkt. 310-3; Shaw Decl. ¶¶ 48–74; Exs. 32–48.  Further, Defendants still appear to own properties (*e.g.*, Benchmark Title) that were similarly financed with funds commingled in the same

---

Injunction compliance, they should have raised and substantiated those justifications in discovery. Instead, Defendants "willfully" failed to do so.  Dkt. 330.

[10]  The issues presented by Defendants' September 29, 2021 "Motion to Clarify the Injunction," Dkt. 343, are subsumed—and foreclosed—by the points in this motion, and should be briefed concurrently as Amazon proposed (and Defendants purported to agree) just hours before they filed. Although Amazon reserves the right to file a separate opposition to Defendants' motion, the record evidence herein confirms that they are in contempt of Injunction Paragraph 7 even as they read it.

accounts that contained Amazon proceeds.  This commingling continued through at least May 2020, when the United States seized $3.85 million in Amazon-related equity payments Defendants directed to those accounts.  Shaw Decl. ¶¶ 4, 66–67; Exs. 2, 43–44.  *United States v. $196,634 Seized from Citywide Bank Account Ending in 9662 and $3,648,375 Seized from Citywide Bank Account Ending in 8557*, No. 1:21-cv-00561 (E.D. Va. 2021).

### D.  Collateral Asset Liquidation, Litigation, and Ongoing Injunction Obstruction

Defendants' Injunction contempt goes well beyond asset dissipation.  In the last nine months they have engaged in litigation involving many of the same assets and rulings at issue here, and seemingly used these proceedings to frustrate Injunction enforcement and threaten third parties who have offered to cooperate with Amazon in resolving asset claims in this Court.

Defendants' collateral attacks on this Court's rulings began in December 2020, when they filed a complaint in Delaware against the Amazon financing partner (IPI) who terminated their involvement in the projects at issue here.  Dkt. 286-12.  The Delaware complaint arises out of precisely the same transactions as this case, and recycles Defendants' failed injunction and merits defenses as affirmative claims for "over $18 million in fees" beyond those already received on Amazon's deals, as well as "approximately $53 million" in general partner payments.  *Id*. at 12–14.  To support these claims, Defendants' complaint misquotes controlling contract termination provisions on the lease development sites, attacks and distorts the testimony from IPI and former Northstar executives this Court credited last year, and misrepresents this Court's rulings.  Dkt. 308-12.  If the case proceeds beyond IPI's pending motion to dismiss, it could complicate merits litigation and asset recovery in this action.

The same is true of Defendants' pursuit of certain legal proceedings in Colorado.  This spring Defendants resolved two disputes with former executives and development partners relevant to this case.  The first suit, *Richards et al. v. WDC Holdings LLC, et al*., No. 2019-cv-34472

(Colo. Dist. Ct.), brought by former Northstar executive Josh Richards, settled on May 3, 2021 for an undisclosed sum.  Beyond diverting assets to that settlement over this Court's Injunction, Defendants used the dispute to assert confidentiality objections to the discovery this Court ordered. Dkt. 308 at 3–4.  Notably, Defendants stonewalled production of documents that, among other things, show that ████████████████████████████████████████████████████ ██████████████████████████████████████████████████ did not produce any documents from *Richards* until after this Court granted Rule 37 sanctions, and even then did not produce ████████████████, which Amazon obtained from imaged devices this Court separately forced Defendants to produce after they improperly withheld them for months following their February 2021 return from the FBI.  Dkt. 302.

The second Colorado dispute involved another former Northstar principal—Donald J. Marcotte—who replaced Watson as the manager of an investment property ("800 Hoyt" or the "LLC") that was liquidated in December 2020 for over $24 million that Defendants improperly withheld from their discovery responses here.  In response to the Court's Rule 37 order this July, Defendants admitted that some $13.9 million of these funds were "pending distribution[]," but disclaimed any "control" over (as distinct from interests in) the money.  Dkt. 308 at 2, 11.  Amazon then sent Marcotte and the LLC a cease and desist letter regarding the funds, and LLC counsel responded by offering to cooperate by interpleading the disputed funds in this Court.  Dkt. 334.  In response— before 800 Hoyt moved to "interplead the disputed Interpleader funds into th[is] Court's registry," *id*. ¶ 5—Defendants threatened to sue the LLC in Colorado for breach of the venue provision in a settlement agreement Watson extracted this spring for certain management fees he concealed from discovery in this case.  In the course of reviewing the settlement ██████████████████████ ██████████████████████████████████████████████) and the Hoyt

LLC management agreement, Amazon discovered provisions further rebutting Defendants' state-ments to this Court. ███████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████████ Instead, Defendants misrep-resented this capability and used their property interests to generate cash they used to benefit them-selves while defying this Court's Injunction.

## LEGAL STANDARDS

"The power to punish for contempt is inherent in all courts; its existence is essential . . . to the enforcement of the judgments, orders and writs of the courts, and consequently, to the due administration of justice." *Ex parte Robinson*, 86 U.S. (19 Wall.) 505, 510 (1874); *see also Rainbow Sch., Inc. v. Rainbow Early Educ. Holding LLC*, 887 F.3d 610, 617 (4th Cir. 2018); *Hutto v. Finney*, 437 U.S. 678, 691 (1978). Such proceedings begin when the movant makes a *prima facie* showing of clear and convincing evidence that:

(1) the[re] exist[s] . . . a valid decree of which the alleged contemnor had actual or constructive knowledge;

(2) the decree was in the movant's "favor";

(3) the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive knowledge) of such violations; and

(4) the movant suffered harm as a result.

*Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 301 (4th Cir. 2000) (alterations omitted) (quoting *Colonial Williamsburg Found. v. Kittinger Co.*, 792 F. Supp. 1397, 1405–06 (E.D.Va. 1992)). Once the movant makes this showing, "the *burden shifts to the defendant* . . . to demonstrate that [the de-fendant] made in good faith all reasonable efforts to comply with" the relevant order. *United States*

*v. Ali*, 874 F.3d 825, 831 (4th Cir. 2017) (quotation marks omitted);[11] *In re Gen. Motors Corp.*, 61 F.3d 256, 258 (4th Cir. 1995) ("Civil contempt is an appropriate sanction" if plaintiff "can point to an order of this Court [that] 'set[s] forth in specific detail an unequivocal command'" which [Defendants have] violated.") (citation omitted; second alteration in original). "Willfulness is not an element of civil contempt," but informs the choice of sanctions where, as here, the Court has already found that the defendant "willfully" violated orders. *Redner's Mkts., Inc. v. Joppatowne G.P. Ltd. P'ship*, 608 F. App'x 130, 131 (4th Cir. 2015).

## ARGUMENT

## I.   DEFENDANTS ARE IN CONTEMPT OF INJUNCTION PARAGRAPHS 2 AND 7

### A.   Defendants Had Knowledge of the Injunction in Amazon's Favor

The Injunction mandates that Defendants set aside $21.25 million in bond or escrow and prohibits them from dissipating assets "related to" the Amazon deals. *Amazon II*, 2020 WL 4720086, at *2–4 ¶¶ 2, 7. This order was entered in Amazon's favor in order to protect Amazon's equitable claims, which could result in disgorgement of proceeds or imposition of a constructive trust or equitable lien. Dkt. 57.[12] Defendants appealed, and the Fourth Circuit affirmed the Injunction and returned full enforcement jurisdiction to this Court when the mandate issued on September 22. *Amazon V*, 2021 WL 3878403, at *9; Dkt. 333.

It is undisputed that Defendants have "knowledge" of the Injunction, including the specific security and anti-dissipation provisions they have been litigating for over a year. *E.g.*, *Ali*, 874

---

[11] All emphasis in this brief is supplied unless otherwise noted.

[12] *See generally De Beers Consol. Mines Ltd. v. United States*, 325 U.S. 212, 220 (1945) ("preliminary injunction is always appropriate to grant intermediate relief of the same character as that which may be granted finally").

F.3d at 831. Indeed, Defendants negotiated the language in Paragraph 2 as an alternative to Amazon's initial escrow order. *See, e.g.*, Dkts. 48–52, 57, 60, 62. The record thus plainly satisfies the "knowledge" requirements for a contempt order. *E.g.*, *Ali*, 874 F.3d at 831; *Buffalo Wings Factory, Inc. v. Mohd*, 574 F. Supp. 2d 574, 581 (E.D. Va. 2008) ("Defendants ha[d] actual and constructive knowledge of [the order] due to their attendance at the hearing on its validity and because [p]laintiff ha[d] written [d]efendants' counsel to demand compliance with [the order].").

## B. Defendants Knowingly Violated Paragraphs 2 and 7 of the Injunction

The record also establishes Defendants' knowing violation of the Injunction.

***Paragraph 2 – Judgment Security***. Paragraph 2 of the Injunction states that Defendants "shall secure" $21,250,000 by: (i) "promptly placing [the funds] in an escrow account" on the terms that Defendants negotiated with Amazon in May 2020; *or* (ii) "obtaining and depositing in the Court's Registry a surety bond from a licensed bonding company"; *or* (iii) relying on a "combination" of bond and escrow options to "secur[e]" the funds "through the entry and execution of final judgment in this action." *Amazon II*, 2020 WL 4720086, at *2 ¶ 2. These alternatives were granted at Defendants' request in an effort to accommodate their claim of business hardship in complying with the TRO's escrow provision, which was based on a recent federal precedent that utilized a pure escrow structure to enforce a preliminary injunction securing $8 million that certain defendants transferred to their attorneys. *See* Prelim. Inj. at 4, *STM Invest S.A.R.L. v. 3P Equity Partners, LLC,* No. 19-cv-1764-CBM-AS, Dkt. 167 (C.D. Cal., June 14, 2019).[13] Because of the Court's accommodations, Paragraph 2's judgment security provisions are far less restrictive than

---

[13] In *STM*, as here, the plaintiffs challenged the defendant's collection of millions of dollars in unauthorized fees, and the Court granted preliminary injunctive relief because "Defendants provide[d] no evidence regarding how the Cash [was] being spent or the amount of the Cash that remain[ed], nor offer[ed] evidence demonstrating Defendants would be able to satisfy a judgment in Plaintiffs' favor." *STM Invest S.A.R.L. v. 3P Equity Partners, LLC*, No. 19-cv-1764-CBM-AS, 2019 WL 1960278, at *5 (C.D. Cal. Mar. 27, 2019).

the escrow structure in *STM*, and respected Defendants' business interests by forgoing a total asset freeze. *Cf. SEC v. Liu*, 851 F. App'x 665, 669 (9th Cir. 2021) ("freez[ing] all [the defendant's] assets"). But instead of respecting these provisions, Defendants abused them and employed their ongoing operations to dissipate assets and otherwise obstruct the Injunction.

*Paragraph 7 – Anti-Dissipation.* Paragraph 7 of the Injunction prohibits Defendants from "transferring, or otherwise disposing of . . . assets used in, or obtained from, any activities (including but not limited to the activities described above) relating to Defendants' real property transactions with Amazon in Virginia since 2018." *Amazon II*, 2020 WL 4720086, at *4 ¶ 7. This provision is reasonably tailored to protect Amazon's claims for a constructive trust or equitable lien on the proceeds that Defendants received in connection with the deals in suit. Defendants insist that their $140 million in liquidations did not violate Paragraph 7 because it "applies only to the real estate transactions *with* Amazon, and not any other assets or properties." Dkt. 286-21 at 1 (emphasis added). That is incorrect. The order expressly applies to "assets used in, or *obtained from*, any activities . . . *relating to* Defendants' real property transactions with Amazon." Dkt. 57. And the Fourth Circuit affirmed the Injunction as a prohibition on "spoliating, concealing, or transferring relevant evidence or assets" that is *not* limited to funds directly traceable to Amazon's transactions. *Amazon V*, 2021 WL 3878403, at *3, *8.[14]

Defendants now admit that they commingled Amazon transaction proceeds with general business funds in accounts they used to acquire and finance assets they liquidated for cash after the Injunction was entered. *See* notes 5–6 *supra*. And they admit they used the cash to benefit themselves rather than post the judgment security Paragraph 2 requires. *See id.* (interrogatory

---

[14] *See also, e.g.*, *FTC v. Bronson Partners, LLC*, 654 F.3d 359, 374 (2d Cir. 2011) ("[I]t is by now so uncontroversial that tracing is not required in disgorgement cases that we recently rejected an argument to the contrary via summary order.").

responses stating that Watson used his payments for "personal and living expenses" and that "[a]ll proceeds paid to WDC Holdings/Northstar Commercial Partners … were used for Northstar Commercial Partners' expenses").  This undisputed conduct alone violates Paragraph 7.  Under ordinary principles of equity, "[w]here a person wrongfully mingles money of another with money of his own and with the mingled fund acquires property, the other is entitled to an equitable lien upon the property to secure his claim for reimbursement."  Restatement of Restitution § 210(1) p. 845 (1958).  Further, where, as here, a conscious wrongdoer uses mingled funds to "acquire[] other property which is or becomes more valuable than the mingled fund with which it is acquired, the claimant [Amazon] is entitled to a proportionate share of the property and thus to secure the profit which arises from the transaction."  *Id.* § 210 *cmt. d.*  Conversely, if the property acquired with commingled funds diminishes in value, "the claimant can enforce an equitable lien upon the property as security for his claim" and take priority over *any* returns to the wrongdoer.  *Id.*

Paragraph 7 anticipates these entitlements.  It proscribes Defendants from transferring or dissipating any assets "obtained from" the Amazon deals.  2020 WL 4720086, at *4.  This portion of Paragraph 7 alone prohibited Defendants from liquidating assets purchased or financed with funds commingled in the Northstar and Watson accounts in which they now admit depositing some $20 million in Amazon deal proceeds.  Dkt. 308 at 7–8; Dkt. 308-2 at 3–4.  Because Defendants used commingled accounts to finance assets and business operations, *see id.*, Amazon has an equitable right to proceeds from any assets Defendants acquired or sold after they deposited the Amazon-linked funds.  *See* Restatement, *supra*, § 210 p. 845.  Such assets include at least the $23 million in proceeds from the 5805 Mark Dabling, Gateway Realty, and 5500 S. Quebec sales last year, which Northstar general ledger entries tie directly to financing payments from the commingled accounts.  Dkt. 308 at 4–7; Dkt. 308-6; Dkt. 308-7.  They also include other properties, such

as Benchmark Title and Watson's personal mansion and ranch, that Defendants continue to hold as a result of financing or other payments from accounts in which they commingled Amazon-related funds, as well as liquidation proceeds placed into such accounts. *See* Restatement, *supra*, § 210 p. 845.

Separately, Paragraph 7's prohibition on dissipation of assets "*relating to* Defendants' real property transactions with Amazon," establishes Defendants' violation of Paragraph 7 with respect to assets in which Amazon has an enforceable equitable interest. *See Black's Law Dictionary* 1541 ("related" means "connected in some way; having relationship to or with something else"); *Lamar, Archer & Cofrin, LLP v. Appling*, 138 S. Ct. 1752, 1760 (2018) (collecting authorities noting the "expansiv[e]" meaning of "relating to"). This portion of Paragraph 7 covers all funds that Defendants received from any persons, entities, or transactions "related to" the Amazon deals in suit, including funds from co-defendants, the landlord joint ventures and LLCs, other investors, third party lenders, or vendors. Despite this clear prohibition, Defendants have not preserved these funds or the assets they financed. Instead, Defendants admit they spent all the funds, as well as all of the cash they received from related asset liquidations, on Watson's "personal living expenses" and alleged Northstar business "expenses." *See* Ex. 52. Defendants also now state that these expenditures, which they "willfully [disobeyed]" this Court's orders to explain in discovery, Dkt. 330, made previously available assets unavailable for judgment in this case. *Id.* These admissions further establish Defendants' knowing violation of Paragraph 7's anti-dissipation provisions.

### C.    Defendants' Injunction Violations Have Harmed Amazon

The "fourth and final element" for civil contempt is also satisfied here because "it is clear" that Amazon has been, and continues to be, "harmed by [D]efendants' actions" in violation of this Court's orders. *E.g.*, *Axiom Res. Mgmt. Inc. v. Alfotech Solutions, LLC*, 2011 WL 2560096, at *5 (E.D. Va. June 3, 2011), *adopted by* 2011 WL 2559806 (E.D. Va. June 27, 2011). The Court

recognized as much when it held that Defendants' discovery abuses—and specifically their failure to substantiate their Injunction defenses— "certainly prejudice[d] [the Amazon] plaintiffs in terms of their ability to enforce the injunction or, perhaps, even recoup the funds." Ex. 1 at 7:5–7.

This finding alone establishes the injury required for civil contempt, *see, e.g.*, *Axiom*, *supra*, but the violations here extend even beyond this harm to Amazon. *Amazon V*, 2021 WL 3878403, at *7. Defendants' Injunction contempt has also materially interfered with the Court's ability to "render a meaningful judgment on the merits," *id.* (citing authorities), by making "recovery of the monies sought in plaintiffs['] complaint significantly more difficult." *Axiom*, 2011 WL 2560096, at *5 (granting contempt sanctions including partial default judgment, a permanent injunction, and disgorgement). And it has needlessly embroiled third parties in asset disputes that have threatened investor interests and proliferated litigation, including and most recently the 800 Hoyt intervenor. *See, e.g.*, Dkt. 334; Dkt. 308-2 & 3; Dkt. 310-16. These harms have been compounded by Defendants' decision to burden Amazon and the Court with costly discovery proceedings—including multiple Rule 37 hearings and the review of irrelevant documents—to conceal their contempt. *See* Dkts. 16, 57; *Axiom*, 2011 WL 2560096, at *5.

This record establishes exactly the kind of prejudice that this Court has previously addressed through contempt sanctions far more onerous than those Amazon requests here. In *Axiom*, as in this case, the harm from defendants' contempt of an asset preservation order was exacerbated by discovery misconduct that increased the likelihood of insolvency, thereby "*making preservation of the existing funds all the more important.*" *Id.* The Court responded by imposing contempt sanctions that included a partial default judgment, permanent injunction, disgorgement order, and fines. Here, Amazon currently seeks more modest relief, all of which could be discontinued upon Injunction compliance, to "ensure that assets currently held by the defendant, but likely to become

unavailable before damages can be collected, will remain available following trial." *SAS Inst., Inc. v. World Programming Ltd.*, 874 F.3d 370, 386–87 (4th Cir. 2017); *Rahman*, 198 F.3d at 499–501; *Amazon V*, 2021 WL 3878403, at *5.

### D.   Defendants Cannot Show "Good Faith" or "Reasonable Efforts to Comply"

For the reasons above, Amazon has established all the elements of a *prima facie* case for contempt: Defendants' "knowledge" of a "valid decree" in Amazon's "favor" that they "violated" in ways that harmed Amazon "as a result." *Conoco*, 218 F.3d at 301. Accordingly, the burden "shifts to [D]efendant[s] to demonstrate that [they] made in good faith all reasonable efforts to comply with" the Injunction. *Ali*, 874 F.3d at 831 (quotation marks omitted); *Rylander*, 460 U.S. at 757; *Chesapeake Bank v. Berger*, No. 4:14-cv-66, 2014 WL 5500872, at *2 (E.D. Va. Oct. 30, 2014). The record forecloses such a showing. The Fourth Circuit decision and Defendants' own discovery responses conclusively rebut their excuses for defying Paragraphs 2 and 7 of the Injunction. *See supra*. And the discovery record now establishes that they made no "good faith" or "reasonable" effort to comply even after they liquidated $140 million in assets. Instead, they used the proceeds to benefit themselves and make funds *unavailable* for judgment in this case while they "willfully [disobeyed]" this Court's repeated orders to account for their assets. Dkt. 330.

On September 10, this conduct caused the Court to "order[] [that], for reasons stated from the bench, and in accord with specific rulings and instructions thereto," Amazon's "Motion for Sanctions (Dkt. 307) is GRANTED."[15] The Court's findings of "willful" violations of multiple

---

[15] Accordingly, Defendants are "bar[red] …from relying on or presenting any evidence they failed to timely search for and produce." Dkt. 307 (requesting such relief). This sanction was a far more modest form of relief than the default judgments this Court has imposed for the type of misconduct here. *See, e.g.*, *Axiom*, 2011 WL 2560096, at *7 (entering partial default judgment and other sanctions because defendants "failed to comply with" a preliminary injunction and related "discovery requests'"); *Brooks*, 2018 WL 7488924, at *17 (same, holding that defendants' "[r]efusal to com-

orders and federal rules causing "prejudice" to Amazon, Dkt. 330, alone preclude any showing that Defendants' Injunction was "reasonable" or in "good faith." *E.g.*, *Plant v. Merrifield Town Ctr. Ltd. P'ship*, 711 F. Supp. 2d 576, 587–88 (E.D. Va. 2010) ("bad faith is clearly evidenced by the repeated and flagrant disregard for the binding orders of the magistrate judge and plaintiffs' counsel's misrepresentation of material facts concerning plaintiffs' noncompliance with these orders"); *Brooks Sports, Inc. v. Anta (China) Co.*, 2018 WL 7488924, at *16 (E.D. Va. Nov. 30, 2018) (similar).  The Court may therefore impose immediate contempt findings and sanctions.

## II.    MULTIPLE SANCTIONS ARE IMMEDIATELY WARRANTED

The Court has broad "power to frame a sanction to fit the violation" of civil contempt, Wright & Miller, 11A Fed. Prac. & P. § 2960, and may impose sanctions "to compel obedience with the court's outstanding order[s]," *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 830 (1994) (quoting *United States v. United Mine Workers of Am.*, 330 U.S. 258, 307 (1947)).  Because Amazon has established a *prima facie* case of civil contempt that Defendants cannot rebut on the record here, the Court can now impose sanctions "to coerce obedience to [the Injunction] or to compensate [Amazon] for losses sustained as a result" of Defendants' contempt.

---

ply with this Court's orders can only be interpreted as an unabashed flouting of the Court's authority").  To the extent there is any question regarding the preclusive effect of the September 10 order,  Amazon respectfully reserves all rights to "preclusion sanctions" for Defendants' Rule 37 violations and ongoing Injunction contempt.  *See  Baker v. Curtis W. Key Plumbing Contractors, Inc.*, 2016 WL 11672046, at *9 (E.D. Va. Dec. 8, 2016) (preclusion is a proper remedy for failure "to timely search for and produce" information required by discovery orders); *Thomas v. FTS USA, LLC*, 2016 WL 3566657, at *4 (E.D. Va. June 24, 2016) (granting preclusion); *Wu v. Tseng*, 2008 WL 4360990, at *6–7 (E.D. Va. Sept. 22, 2008) (similar); *Certain Underwriters at Lloyd's v. Advanfort Co.,* 2019 WL 3366103, at *9 (E.D. Va. July 25, 2019); *Wu*, 2008 WL 4360990, at *6–7; *see generally* Dkts. 283–84, 296, 308, 324, 330 (citing Rule 37 and civil contempt authorities that support barring Defendants here from presenting evidence or arguments that they "do not have anywhere near enough available cash or other liquid assets to be able to place $21,250,000 into escrow"; that they "never received anywhere near that amount of money in connection with the transactions" in suit; and that they have no knowledge of the kickbacks described in Interrogatory 5, Dkt. 193-3 at 18:25–19:1).

*Cromer v. Kraft Foods N. Am., Inc.*, 390 F.3d 812, 821 (4th Cir. 2004) (citation omitted); *Chesa-peake Bank*, 2014 WL 5500872, at *3 (civil contempt sanctions appropriate "if the[ir] purpose is remedial") (citing *Buffington v. Baltimore Cty.*, 913 F.2d 113, 133 (4th Cir. 1990)).

Once again *Axiom* is instructive. There, as here, the Court granted a "preliminary injunc-tion" that barred the defendants from "disposing of [certain] funds." 2011 WL 2560096, at *1. "As discovery progressed, it became clear that defendants were egregiously non-compliant with their discovery obligations, the preliminary injunction, and various orders of the Court." *Axiom Res. Mgmt., Inc. v. Alfotech Sols., LLC*, 2012 WL 1118947, at *1 (E.D. Va. Mar. 30, 2012). Ac-cordingly, the magistrate judge there (as here) found that the defendants had "willfully" violated their discovery obligations and "prejudiced" the plaintiff. 2011 WL 2560096, at *2; Dkt. 330. The case then progressed to contempt sanctions because "fail[ure] to enforce" the injunction would "*send the wrong message to recalcitrant parties and their counsel: that defiance goes unpun-ished.*" 2011 WL 2560096, at *7; *see also* 2012 WL 1118947, at *2 (ultimately entering partial "default judgment," requiring defendants to "disgorge themselves of the funds obtained in viola-tion of the TRO and injunction," "convert[ing] the preliminary injunction into a permanent injunc-tion," and compelling defendants to pay fees and costs).

Defendants' contempt here is at least as egregious as the contempt in *Axiom*. But the sanc-tions Amazon currently seeks are far more tailored. Reserving rights to all available remedies, this motion seeks the minimum relief necessary to secure Injunction compliance if Defendants do not purge their contempt within a reasonable period of time.[16] *First*, Plaintiffs seek an immediate order that will preserve the *status quo* until the hearing on this motion (and Defendants' related

---

[16] Given Defendants' persistent refusal to comply with the Injunction, a week to purge their con-tempt is sufficient. *See, e.g.*, *SEC v. Dunlap*, 253 F.3d 768, 771 (4th Cir. 2001).

Motion to Clarify the Injunction) by holding that:  (i) Defendants' request for expedited consideration is granted; (ii) Defendants are in contempt of the Injunction based on the current record and September 10 Rule 37 order, Dkt. 330; and (iii) Defendants are prohibited from engaging in personal or business transactions in excess of $10,000, and from initiating or settling any collateral asset litigation, until the Court hears and resolves this motion's requests for receivership or alternative contempt sanctions.  *Second*, following the hearing on this motion, Plaintiffs respectfully request an order:  (i) directing the appointment of a receiver within 30 days, following party input on possible candidates; and (ii) requiring Defendants to bear all costs associated with the receivership or other contempt sanctions, as well as the Rule 37 sanctions the Court ordered on September 10, subject to the payment of daily Court fines for non-compliance.

### A.   The Court Should Preserve the *Status Quo* Through Expedited Hearing on This Motion By Prohibiting Certain Transactions and Collateral Litigation

To preserve the *status quo* until the Court hears this motion, the Court should rely on the current Rule 37 record and September 10 findings to enter an order immediately:  (i) granting the expedited schedule Amazon requests; (ii) prohibiting Defendants from engaging in any business or personal transactions in excess of $10,000, and from initiating or settling any collateral asset litigation, until the Court hears and fully resolves this motion, including any appointment of a receiver.  These initial contempt remedies are supported by the law and record now, and would— particularly if backed by an order imposing daily fines for non-compliance—at least preserve the *status quo* while the parties litigate Amazon's request for additional contempt sanctions.  Although Amazon reserves all rights to all available remedies for Defendants' Injunction contempt, Amazon respectfully requests that the Court appoint, within 30 days of a decision on this motion, a receiver who would control and direct all of Defendants' business and personal transactions and collateral litigation involving their assets.  *See, e.g.*, *SEC v. Int'l Swiss Invs. Corp.*, 895 F.2d 1272, 1277 (9th

Cir. 1990) (authorizing asset freeze in conjunction with other contempt sanctions).

*Asset Preservation*.   This Court possesses "inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief," and may direct such relief "against a custodian of defendant's assets. *CFTC v. Kimberlynn Creek Ranch, Inc.*, 276 F.3d 187, 193 (4th Cir. 2002).   This power can be exercised in the initial entry of a preliminary injunction. *See id.*; *see also, e.g.*, *United States ex rel. Rahman v. Oncology Assocs.*, 198 F.3d 489, 493 (4th Cir. 1999) (affirming preliminary injunction including asset freeze to protect disgorgement, constructive trust, and voiding of fraudulent transfers); *SEC*, 851 F. App'x at 669 (affirming an injunction "freez[ing] *all* [the defendant's] assets").   This power to order a preliminary freeze of "all" assets, *Liu, supra*, plainly encompasses a limited order prohibiting Defendants from engaging in transactions in excess of $10,000 to preserve the status quo until the Court concludes a hearing on this motion.   *See generally Ex parte Robinson*, 86 U.S. (19 Wall.) at 510; *Rainbow*, 887 F.3d at 617.

*Prohibition on Collateral Asset Litigation*.   The Court should also immediately and temporarily prohibit Defendants from pursuing collateral litigation on the issues and assets covered by the Injunction, at least until the Court concludes the hearing on this motion, and until the Court appoints a receiver if Amazon's request for receivership is granted.   The need for a temporary restriction on collateral asset litigation is evident from Defendants' filings over the past 18 months, as well as their recent threats of new filings.[17]   Defendants' Injunction contempt, reinforced by

---

[17] Defendants' prior filings related to this case include their Delaware suit against IPI, as well as the Richards and Marcotte proceedings in Colorado and recent related litigation threats.  The Delaware suit, which is the subject of a pending dismissal motion, demands that IPI pay Defendants some $60 million in fees and commissions directly related to the Amazon deals at issue in this case, based on allegations that incorporate the Injunction defenses this Court rejected last year.

other litigation threats, prompted the Hoyt LLC's recent request for Rule 24(b) intervention and fee and cost recovery in this case.  Dkt. 334.  The immediate order this motion requests would simply prohibit Defendants from initiating or resolving collateral asset litigation until the Court concludes the hearing on this motion and appoints a receiver if it agrees receivership is warranted.

Such an order would flow directly from this Court's power to enjoin Defendants from engaging in litigation in "certain, specific circumstances," namely, where such a prohibition is "necessary in aid of the court's jurisdiction, or *necessary to protect or effectuate the court's judgment*." *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 146 (1988); *see also* 28 U.S.C. § 2283 (authorizing limits on collateral litigation where necessary to "protect or effectuate [court] judgments").[18]  The "preliminary injunction," like the Court's recent Rule 37 sanctions order, operates as a "'judgment' for purposes of " Section 2283 because each order "confers important rights and finally adjudicates" issues necessary to "preserv[e] the *status quo* until the district court reaches the case's merits."  *NBA v. Minn. Prof'l Basketball, Ltd. P'ship*, 56 F.3d 866, 871–72 (8th Cir. 1995); *see also Henry v. First Nat'l Bank*, 595 F.2d 291, 305 (5th Cir. 1979) (same); *Doe v. Ceci*, 517 F.2d 1203, 1206–07 (7th Cir. 1975).  This Court thus has statutory authority to bar Defendants from collateral litigation where necessary to protect these orders, or otherwise prevent them from substantially "interfering with" this Court's "consideration or disposition of [this] case."  *Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 295 (1970).  The record supports such a bar here

---

*See supra* at 12 (citing Dkt. 308-12).  Defendants' Colorado actions concern assets that they financed with funds commingled with Amazon deal proceeds, and that they dissipated in violation of the Injunction.  Defendants have settled two of these disputes (with former executives Richards and Marcotte), but just this month threatened to use the Marcotte settlement to sue the LLC he manages (as Watson's successor) for offering to cooperate in this case.  Dkt. 334.

[18] This power is independent of the Court's authority to prohibit Defendants from "instituting or prosecuting any proceeding in any State or United States court affecting [any] property" interpleaded in this action,  28 U.S.C. § 2361, such as the 800 Hoyt property addressed in last week's intervention motion and interpleader.  *See* Dkt. 334.

whether or not the Court appoints a receiver, and would continue to support "bar[ring] judicial proceedings not before [this Court] to protect the receivership" if granted. *Zacarias v. Stanford Int'l Bank, Ltd.*, 945 F.3d 883, 903 (5th Cir. 2019).

**B.     The Court Should Appoint a Receiver to Administer Defendants' Assets**

Receivership is the most tailored contempt sanction the record now requires as a complement to the contempt remedies above and the Rule 37 sanctions this Court has already granted. A federal district court "has within its equity power the authority to appoint receivers and to administer receiverships," *Gilchrist v. Gen. Elec. Capital Corp.*, 262 F.3d 295, 302 (4th Cir. 2001), and may exercise that power "where the entity . . . has demonstrated that it cannot or will not comply with the law," 2 Fed. R. Civ. P., Rules and Commentary Rule 66; *see ACA Fin. Guar. Corp. v. City of Buena Vista*, 298 F. Supp. 3d 834, 847 (W.D. Va. 2018); *see also* Fed. R. Civ. P. 66. The receiver has "exclusive jurisdiction and control over all of defendant's property in whatever district it may be situated," Wright & Miller, 12 Fed. Prac. & P. § 2985, and is "vested with complete jurisdiction and control of all such property," *Yancey v. Int'l Fid. Ins. Co.*, No. 1:16-cv-57, 2016 WL 2997375, at *3 (E.D. Va. May 25, 2016). As a result, it does not require the proliferation of proceedings necessary for equitable liens or lis pendens involving property in different jurisdictions. Further, the receiver "wields the power of the property owner" and is obliged to respect the rights of creditors and other third parties. *LNV Corp. v. Harrison Family Bus., LLC*, 132 F. Supp. 3d 683, 697 (D. Md. 2015). Accordingly, the receiver would have to respect Defendants' legitimate business interests, if any, as well as third party rights in securing Injunction compliance.

Receivership is appropriate here because Defendants' ongoing contempt endangers the Court's authority and continues to harm Amazon and others. *See, e.g.*, *Chesapeake Bank*, 2014 WL 5500872, at *5. Receiverships administered at the contemnor's expense are a common remedy where, as here, the contemnor has not complied with multiple Court orders and additional

discovery or asset diligence would be unduly costly or burdensome for the Court and innocent parties. *See, e.g.*, *Fed. Nat'l Mortg. Ass'n v. CG Bellkor, LLC*, No. 3:13CV39 (DJN), 2013 WL 12148279, at *5 (E.D. Va. Mar. 18, 2013) (granting injunction and appointing receiver); *United States v. Mescall*, 624 F. App'x 103, 103 (4th Cir. 2015) (noting issuance of preliminary injunction and appointment of receiver); *CFTC v. Forefront Invs. Corp.*, No. CIV.A. 3:07CV152, 2007 WL 2437413, at *2 (E.D. Va. Aug. 22, 2007) (upholding injunction and appointment of receiver). The reason, again, is that receivers can facilitate compliance by employing means that are more trans-parent and efficient than discovery or collateral asset proceedings, but do not require the "paradig-matic coercive, civil contempt sanction" of "confining a contemnor indefinitely until he complies with an affirmative command such as an order 'to pay [a court ordered award or] surrender prop-erty ordered to be turned over to a receiver, or to make a conveyance.'" *Bagwell*, 512 U.S. at 828 (quoting *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 442 (1911)).

The Court may impose a receiver based on a variety of considerations "generally similar to those required for injunctive relief, including fraudulent conduct on the part of defendant; im-minent danger of the property being lost, concealed, injured, diminished in value, or squandered; the inadequacy of the available legal remedies; the probability that harm to plaintiff by denial of the appointment would be greater than the injury to the parties opposing appointment; and, in more general terms, plaintiffs' probable success in the action and the possibility of irreparable injury to his interests in the property." *Berger*, 2014 WL 5500872, at *5 (quotation marks omitted). By entering and affirming the Injunction, this Court and the Fourth Circuit have already found all of these criteria satisfied here. *See* Dkt. 57; *Amazon V*, 2021 WL 3878403. These findings now bind Defendants as law of the case. *See, e.g.*, *United States v. Rosen*, 557 F.3d 192, 199 (4th Cir.

2009).[19]  And Defendants' refusal to comply with the Injunction despite them supports receivership because it establishes that Defendants will not "rectify" their contempt without coercive sanctions.  *E.g.*, *United States v. Latney's Funeral Home, Inc.*, 41 F. Supp. 3d 24, 37–38 (D.D.C. 2014) (relying on "equitable and statutory power to appoint a receiver as the remedy for Defendants' civil contempt" of injunction requiring payment of past taxes and preventing dissipation of assets).

### C.   The Foregoing or Other Contempt Remedies Should Be Enforced At Defendants' Expense and Subject to Fines for Non-Compliance

Defendants' contempt supports imposition of at least the foregoing remedies at their expense, subject to daily fines for non-compliance.  *See, e.g.*, *Cromer v. Kraft Foods N. Am., Inc.*, 390 F.3d 812, 821 (4th Cir. 2004) (endorsing use of contempt sanctions "to coerce obedience to a court order or to compensate the complainant for losses sustained as a result of the contumacy") (quotation marks omitted; citing authorities); *Buffington v. Baltimore Cty., Md.*, 913 F.2d 113, 133 (4th Cir. 1990) (same, particularly "when the defendant can avoid paying [a] fine simply by performing the affirmative act required") (quoting *Hicks v. Feiock*, 485 U.S. 624, 632 (1988)).

Where, as here, Defendants' contempt of Court orders has necessitated costly enforcement proceedings and relief, it is appropriate for Defendants to bear the costs "incurred as result of . . . [their] obstinacy or recalcitrance."  *Enovative Techs., LLC v. Leor*, 86 F. Supp. 3d 445, 447 (D. Md. 2015) (awarding attorneys' fees and costs to movant to compensate for the costs of litigating civil contempt in connection with failure to comply with preliminary injunction); *see also Schwartz v. Rent-A-Wreck of Am.*, 261 F. Supp. 3d 607, 618–19 (D. Md. 2017) (awarding attorneys' fees "related to bringing and litigating the instant contempt motion" as sanction for noncompliance with court order).  In this case, the Court should at the very least order Defendants to pay for all

---

[19]  "The law of the case doctrine "posits that" an interlocutory decision "should continue to govern the same issues in subsequent stages in the same case" subject to certain exceptions that have no application here.  *See, e.g.*, *TFWS, Inc. v. Franchot*, 572 F.3d 186, 191 (4th Cir. 2009); Dkt. 330.

costs associated with receivership, intervention, and third party discovery or proceedings required to satisfy the Injunction and the Court's most recent Rule 37 order.  Dkt. 330.  These costs are solely the result of Defendants' Injunction contempt.  And granting sanctions that shift such costs from Amazon (or third parties like the Hoyt intervenor) to Defendants is both appropriate under civil contempt and Rule 37 law, and would not deplete the asset corpus the Injunction secures.  The reason is that Defendants have litigation insurance policies that provide up to $15 million of coverage that could be used to cover litigation costs, including the cost of a receiver.  *See* Dkt. 85-5.  Amazon has incurred significant expense defending and enforcing the Injunction and related discovery orders Defendants have defied.  The time has come for Defendants to use their litigation funding to comply with, rather than obstruct, the Court's orders.  The Court should also impose daily fines for any further "act[s] in contravention of the court's [orders]."  *Axiom*, 2011 WL 2560096, at *3; *Bralley v. Carey*, 2011 WL 6326503, at *5–6 (E.D. Va. Dec. 1, 2011).  Absent such relief, the record establishes that Defendants will never comply with the Injunction and instead use all available resources to burden courts and innocent parties with wasteful proceedings intended to obstruct this case.

## CONCLUSION

For the foregoing reasons, the Court should find Defendants in civil contempt of the Injunction and grant the immediate and other relief requested herein.

Dated: September 30, 2021                    Respectfully submitted,

*s/ Michael R. Dziuban*
Elizabeth P. Papez (*pro hac vice*)
Patrick F. Stokes (*pro hac vice*)
Claudia M. Barrett (*pro hac vice*)
Michael R. Dziuban (Va. State Bar No. 89136)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
Telephone:  (202) 955-8500
Facsimile:  (202) 467-0539
epapez@gibsondunn.com
pstokes@gibsondunn.com
cbarrett@gibsondunn.com
mdziuban@gibsondunn.com

Veronica S. Moyé (*pro hac vice application* pending)
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
Telephone:  (214) 698-3100
Facsimile:  (214) 571-2900
vmoye@gibsondunn.com

*Counsel for Plaintiffs Amazon.com, Inc. and Amazon Data Services, Inc.*

31

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 30, 2021, I will electronically file the foregoing with the

Clerk of Court using the CM/ECF system.  I will send then send the document and a notification

of such filing (NEF) to the following parties via U.S. mail to their last-known address and by email,

where noted:

Jamie Hubbard
Stimson Stancil LaBranche Hubbard
1652 Downing Street
Denver, CO 80218
*Counsel for Defendants White Peaks Capital*
*LLC and NOVA WPC LLC*

Villanova Trust
c/o Christian Kirschner, Trustee
3924 Wallace Lane
Nashville, TN 37215

Allcore Development LLC
6870 W 52nd Avenue, Suite 203
Arvada, CO 80002

Finbrit Holdings LLC
6870 W 52nd Avenue, Suite 203
Arvada, Colorado 80002

Casey Kirschner
635 N. Alvarado Lane
Plymouth, MN 55447
By email: casey.kirschner@gmail.com


*s/ Michael R. Dziuban*
Michael R. Dziuban
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
Telephone:  (202) 955-8500
Facsimile:  (202) 467-0539
mdziuban@gibsondunn.com

*Counsel for Plaintiffs Amazon.com, Inc. and Amazon*
*Data Services, Inc.*

32