**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

|  |  |
|---|---|
| AMAZON.COM, INC. and AMAZON DATA SERVICES, INC., <br><br> Plaintiffs, <br><br> v. <br><br> WDC HOLDINGS LLC dba NORTHSTAR COMMERCIAL PARTNERS; BRIAN WATSON; STERLING NCP FF, LLC; MANASSAS NCP FF, LLC; NSIPI ADMINISTRATIVE MANAGER; NOVA WPC LLC; WHITE PEAKS CAPITAL LLC; VILLANOVA TRUST; CASEY KIRSCHNER; ALLCORE DEVELOPMENT LLC; FINBRIT HOLDINGS LLC; CHESHIRE VENTURES LLC; CARLETON NELSON; JOHN DOES 1-20, <br><br> Defendants. | CASE NO. 1:20-CV-484-LO-TCB |

**PLAINTIFFS' RESPONSE TO 800 HOYT LLC'S MOTION TO INTERVENE**

Plaintiffs Amazon.com, Inc. and Amazon Data Services, Inc. hereby respectfully respond to the Motion to Intervene by 800 Hoyt LLC ("800 Hoyt" or "LLC").  Dkt. 334.

## INTRODUCTION

Plaintiffs do not oppose 800 Hoyt's motion and support permissive intervention under Federal Rule of Civil Procedure 24(b), so that 800 Hoyt may place certain funds in the Court's registry until the Court decides whether they should be used for the judgment security that Defendants Brian Watson and WDC Holdings, LLC ("Defendants") owe under Paragraph 2 of the June 5, 2020 preliminary injunction in this case.  Dkt. 57 ("Injunction"); Dkt. 334 ("Motion"); Dkt. 338-1 ¶ 60 ("Interpleader Funds").  These Interpleader Funds include several specific amounts that 800 Hoyt maintains "must be paid or distributed to parties entitled to take on behalf of" Defendants, Dkt. 335 at 2, as well as "[a]ny remaining [LLC] funds due and payable to" Defendants either directly or through "PLW, BW Holdings, or any entity owned or controlled by Mr. Watson," Dkt. 338-1 ¶ 60.

Defendants have opposed intervention based on  Dkt. 366.  As detailed below, these clauses do not prevent intervention or interpleader under controlling law.

The Interpleader Funds are potentially significant, because they would be paid from what Defendants' sworn discovery responses describe as an "undistributed" pool of up to $13,952,251 from the $24,075,000 sale of one of their main property assets, Dkt. 310-3 at 5–6.

The propriety and efficiency of intervention is clear from these and other points in 800 Hoyt's filing, which pleads facts directly related to Defendants' injunction contempt in this case. ████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████ ████████████████; Exs. 1–2. Indeed, 800 Hoyt's motion prompted Watson's co-owner in one of 800 Hoyt's Class A investors (PLW Capital I, LLC) to volunteer information about that LLC and others in which Defendants have control or access rights to proceeds from over $140 million in recent asset liquidations. Ex. 1. This information confirms that Defendants concealed certain income in violation of the Injunction and related orders, Dkts. 310, 330, and continue to do so despite the Court's recent sanctions order, Dkt. 330. Intervention and interpleader by 800 Hoyt (and perhaps other third parties) would assist the Court in fairly adjudicating disputed claims relevant to this ongoing misconduct if Defendants continue to defy the Injunction.

For the foregoing and other reasons addressed herein, Plaintiffs respectfully request that the Court: (i) grant the motion to intervene; (ii) docket 800 Hoyt's Interpleader Complaint; and (iii) after any necessary proceedings, order 800 Hoyt to place the Interpleader Funds in the Court's registry as well as provide a full accounting of all property sale proceeds to date as well as any anticipated future distributions. Further, if the Court grants 800 Hoyt's request for intervention-

---

[1] These entities include PLW Capital I, LLC which is co-owned by Watson's ex-wife, Patricia Watson. Ms. Watson's email to Plaintiffs' counsel, filed as Exhibit 1 to this response, makes claims that support the proposed intervention and interpleader, as well as Plaintiffs' pending request to appoint a receiver to manage Defendants' assets in a manner that accounts for their interests as well as court orders and third party right. Dkt. 350. Other documents ████████ ████████████████████████████████ ██████

related "costs and fees," Dkt. 338-1 ¶ 68, it should order those costs to be borne by Defendants or their insurers consistent with the September 10 sanctions order, Dkt. 330, and with the fact that intervention would be unnecessary if Defendants simply complied with the Injunction.

## BACKGROUND

The motion to intervene arose out of Defendants' ongoing contempt of this Court's Injunction and related discovery orders. The intervenor, 800 Hoyt, is one of several limited-liability companies (LLCs) that Defendants formed to own and operate various properties comprising the real-estate portfolio, Dkt. 335 at 3, that Defendants claimed last year was worth "$1.3 Billion," but was not sufficiently "liquid" to allow them to post even a penny of the judgment security the Court ordered and the Fourth Circuit recently affirmed. Dkt. 12-6; Dkt. 335 at 3.

800 Hoyt was formed in 2014 "for the purpose of owning, developing, operating, managing, maintaining, leasing or selling" a property located at 800 Hoyt Street in Broomfield, Colorado. Dkt. 335 at 3. One of the LLC's two "Class A" members is PLW Capital I LLC, an entity that Defendants continue to own in part, and whose accounts Defendants can continue to access. *Id.*; Exs. 1–2. Defendant Watson initially served as one of 800 Hoyt's two managers alongside Donald J. Marcotte, a former Northstar principal. *Id.* Marcotte now serves as the LLC's sole Manager. *Id.* The 800 Hoyt property was sold in December 2020 for approximately $24 million, Dkt. 310-3 at 5, which sale accounts for nearly twenty percent of the $140 million in assets that Defendants admit they have liquidated since the Court entered the Injunction last year. *See* Dkts. 347, 348 (detailing liquidations).

Defendants willfully concealed these liquidations in violation of the Court's Injunction-related discovery orders until Plaintiffs uncovered them through public records. Dkts. 302, 330. Then, even after the Court's second Rule 37 order compelling them to "completely and fully re-

4

answer" several requests, Dkt. 302, Defendants did not disclose payments from the ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬ Defendants' supplemental discovery responses this summer said only that $13.9 million of the $24 million generated by the 800 Hoyt property sale was "pending distribution." Dkts. 310-2 at 2, 310-3 at 5. When Plaintiffs asked Defendants to preserve this money for judgment security, Defendants disclaimed any "control" over (as distinct from interest in) the funds, and referred Plaintiffs to the LLC and its current manager (their former business partner) Donald J. Marcotte. Dkts. 310-2 at 2, 310-3 at 5–6. Plaintiffs then sent a cease-and-desist letter to Marcotte and the LLC, explaining that "800 Hoyt was a Northstar asset subject to the preliminary injunction entered" by the Court, and that "distribution of the remaining proceeds from its liquidation would violate the terms of the injunction" at least "pending further notice or court action." Dkt. 336-2.[2] In response, Defendants asserted their interest to immediate payment of certain funds, and threatened to sue 800 Hoyt if it did not turn them over. Dkt. 335 at 6. 800 Hoyt's motion to intervene and proposed complaint in intervention followed. Dkt. 334.

The motion details payments and related LLC interests that Defendants concealed in violation of this Court's orders. Dkt. 338-1 ¶¶ 28–29. It also details Defendants' rights and claims to future payments of the Interpleader Funds that could be used to satisfy Defendants' judgment security obligations in this case. *Id.* ¶¶ 57–60. And it includes detailed contractual provisions that

---

[2] Defendants recently accused Plaintiffs of "assert[ing] that the [Injunction] is binding on third parties doing business with Defendants." Dkt. 343 at 3. That is incorrect. Plaintiffs have simply asked third parties to assist in preserving funds that are subject to the Injunction. As detailed in Plaintiffs' recent filings, Defendants' own records show that 800 Hoyt property liquidated last December was ▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬ Dkts. 350 ¶¶ 49–50, 69–73, 350-45, 350-46. The property was thus an asset "related to" the Amazon transactions for purposes of the Injunction's anti-dissipation provision, Dkt 57 ¶ 7; Dkt. 350, as well as an asset that generated funds Defendants could have used to post at least some of the security the Injunction requires. Dkt 57 ¶ 2; Dkt. 350.

belie Defendants' representations to this Court that they could not transfer or otherwise leverage their LLC or property interests to provide judgment security in this case. *Id.*, Ex. A ¶¶ 9.01-9.15 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮). These disclosures leave several questions unanswered, but are undeniably helpful in documenting payment flows and conduct by the Defendants that will assist the Court in resolving the parties' pending motions for Injunction contempt and clarification. Dkts. 349, 350.

Indeed, 800 Hoyt's intervention filing prompted Watson's co-owner in PLW Capital, one of 800 Hoyt's two Class A members (the other is an LLC that Marcotte controls and has investments in several of Defendants' other properties) to identify information about several LLCs in which Watson has sole or substantial control or financial interests. Ex. 1. Notably, this information states that Watson had "sole" ownership or control of several LLCs that he told Plaintiffs and this Court were merely third party "investors" in Defendants' asset portfolio. Dkt. 310-2. These entities include all of the LLCs associated with the Amazon projects in this case, as well as LLC "investors" in several properties Defendants liquidated after the Injunction was entered. *See* Ex. 3 at 13, 15–16 (citing Watson's ownership interests in BW Investments, LLC, PLW Capital I, RBW Capital LLC, PLW Mineral, LLC, PLW Gateway LLC, and PLW Dabling Capital LLC); *compare* Dkt. 310-2 (listing several of these entities as "investors" in the Stapleton and Pinnacle assets that Defendants said they were "unable to pledge" for any type of judgment security in this case). The information Plaintiffs received in response to 800 Hoyt's intervention motion also documented Defendants' interests in several ▮▮▮▮▮▮▮▮▮▮▮

■■■■■■■■■■■■■■■■■■■■■■■■■ whose financial details Defendants did not disclose in response to this Court's discovery orders. *See* Ex. 3 at 13.³

## ARGUMENT

Permissive intervention is warranted under Rule 24(b) for the reasons in 800 Hoyt's motion. Dkt. 334. The motion is timely and concerns a dispute that arises out of this case. *See id.* ¶ 5. And this Court has already held that venue is proper in this district. Dkt. 256. The forum-selection clauses in Defendants' settlement with 800 Hoyt, Dkt. 338-2 ¶ 5, and the 800 Hoyt Operating Agreement, Dkt. 335-1 at 47, do not alter these conclusions or otherwise prevent permissive intervention. Accordingly, the Court should grant 800 Hoyt LLC's motion to intervene and docket its Interpleader Complaint.

## I. Permissive Intervention Is Warranted Here

As 800 Hoyt correctly notes, the Court may grant intervention because the LLC's complaint "shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). The decision whether to grant permissive intervention "lies within the sound discretion of the trial court." *Smith v. Pennington*, 352 F.3d 884, 892 (4th Cir. 2003) (quoting *Hill v. W. Elec. Co.*, 672 F.2d 381, 386 (4th Cir. 1982)). The Court's discretion in this area is "broad," and the "Fourth Circuit favors liberal intervention," including "to prevent inconsistent rulings and [to] efficiently resolve the claims" at issue. *Liberty Mut. Fire Ins. Co. v. Lumber Liquidators, Inc.*, 314 F.R.D. 180, 183 186-87 (E.D. Va. 2016) (citing *Feller v. Brock*, 802 F.2d 722, 729 (4th Cir. 1986)). These goals strongly support intervention where, as here, it is the vehicle for interpleading claims that will allow the Court to resolve competing demands on funds relevant to the underlying

---

³ The co-owner of PLW Capital has asked 800 Hoyt to leave her interests in the Interpleader Funds out of this action. Plaintiffs do not wish to burden third party interests unrelated to this action, but reserve all rights to pursue Defendants' funds subject to the Injunction, including those flowing to LLC accounts to which Defendants still have access. Ex. 1.

litigation.  *See AmGuard Ins. Co. v. SG Patel & Sons II LLC*, 999 F.3d 238, 247 (4th Cir. 2021) ("the Supreme Court has emphasized that interpleader is remedial and to be liberally construed to remedy the problems posed by multiple claimants to a single fund" (internal quotation marks and citation omitted)).

Interpleader is appropriate when "one party, a 'stakeholder,' has money or other property that is claimed, or may be claimed, by two or more other parties, the 'claimants,' creating a risk of inconsistent claims to the property or judgments against the stakeholder that exceed the value of the property."  *AmGuard*, 999 F.3d at 244.  Interpleader permits the stakeholder to join all claimants and "efficiently resolve" their claims to that money or property a single forum or proceeding.  *Id.*  That is precisely the situation here.

The Court should permit 800 Hoyt to intervene because the parties' dispute over the liquidation funds not only "shares with," but is completely encompassed by, the "question[s] of law [and] fact" at issue in this suit. Fed. R. Civ. P. 24(b)(1)(B).  Indeed, as 800 Hoyt explains, this lawsuit is "the entire basis" for the competing claims to the disputed funds.  Dkt. 335 at 9.  This is the "classic circumstance" interpleader was designed to address, *see AmGuard*, 999 F.3d at 244.  Finally, 800 Hoyt's motion to intervene is undeniably timely.  It was filed based on discussions with the parties in the weeks after Plaintiffs sent the cease-and-desist request, and just two weeks after the LLC received the latest portion of liquidation proceeds from the 800 Hoyt property sale. Dkt. 338-1 ¶ 35. Intervention will neither meaningfully delay this lawsuit nor prejudice the parties. Dkt. 335 at 8–9.  It will instead help facilitate resolution of their pending motions for Injunction enforcement by helping the Court (and a receiver, if appointed) understand the web of LLCs and payment streams Defendants have used to dispose of assets after the Injunction was entered.  Dkts. 349, 350.

## II. Intervention In This District Is Proper

Venue for this lawsuit is proper in this district because, as this Court already found, "all of the events giving rise to the dispute took place in Virginia." Dkt. 256 at 2. The Court has thus unequivocally held that "venue is proper in this Court," and did so for "the reasons stated" in its order denying Defendants Casey Kirschner and Carleton Nelson's motion to transfer venue "and as argued in Amazon's briefing." *Id.*; *see* Dkt. 210. The Court also held that a transfer "would lead only to wasted time and resources, and would prejudice the other parties unnecessarily." Dkt. 256 at 6. These holdings were unquestionably correct then, and are the law of the case now. *E.g.*, *Walker v. S.W.I.F.T. SCRL*, 517 F. Supp. 2d 801, 807–08 (E.D. Va. 2007).

Despite that, Defendants have incorrectly asserted that ████████████ ████████████████████████████ prohibit 800 Hoyt's intervention in this case. *See* Dkt. 335 at 9. ████████ ████████████████████████████████████ ████████████████████████████████████ ████████████████████████ not change the fact that venue for this lawsuit is proper in this district, nor does it preclude intervention.

First, a forum-selection clause cannot "render venue in a court 'wrong' or 'improper.'" *Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 59 (2013). A forum-selection ████████████████████████████████ █ ████████████████████████ has no effect on the inquiry." *Devil's Advocate, LLC v. Grynberg Petroleum Co.*, 588 F. App'x 264, 264 (4th Cir. 2014). █ ████████ ██ ████████████████ thus cannot make venue in this district improper.

9

Second, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮s cannot prevent 800 Hoyt's permissive intervention. An "intervenor must generally 'take the case as he finds it.'" *Liberty Mut. Fire Ins.*, 314 F.R.D. at 187 (quoting *Newport News Shipbuilding & Drydock Co. v. Peninsula Shipbuilders' Ass'n*, 646 F.2d 117, 122 (4th Cir. 1981)).  Intervenors thus may not question venue. *Beam Laser Sys., Inc. v. Cox Commc'ns, Inc.*, 117 F. Supp. 2d 515, 517–18 (E.D. Va. 2000) (collecting cases).  For this reason alone, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ cannot preclude 800 Hoyt from intervening in a lawsuit properly filed in this district.

Further, Plaintiffs agree with 800 Hoyt that any objection that *Defendants* may have to this Court adjudicating their (and Plaintiffs') rights to the Interpleader Funds ▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ with 800 Hoyt would be subject to the same four-factor analysis this Court employed when it rejected a motion to transfer venue based on another forum selection clause that bound other parties to this suit.  *See* Dkt. 256 at 2–3 (citing *In re Howmedica Osteonics Corp.*, 867 F.3d 390, 404 (3d Cir. 2017)).[4]  Under that analysis, the Court would "consider, in order: (1) the forum selection clause itself, (2) the private and public interests relevant to non-contracting parties, (3) threshold issues related to severance, and (4) which choice would best serve the interest of efficiency and minimize prejudice to non-contracting parties' interests." *Id.* at 2–3.  The Court has already rejected one motion to transfer venue after analyzing these factors, *id.* at 6, which provide an even stronger basis to reject any contractual forum selection arguments Defendants may raise in opposition to 800 Hoyt's motion to intervene now.

---

[4] To the extent it applies here at all, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ cannot be given preclusive weight in the transfer analysis because it would, at most, govern "only some of the claims in an action." *See* Dkt. 256 at 2 ("the Fourth Circuit has never applied *Atlantic Marine* . . . where the forum selection clause governs only some of the claims").

10

Under the first factor, even assuming the ▮▮▮▮▮▮▮▮▮▮▮▮ is valid, it governs only ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Dkt. 338-1 at 73–74, ¶¶ 1–2. Accordingly, it cannot preclude intervention and interpleader of the asset sale proceeds the ▮▮▮▮ expressly excludes. Moreover, ▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮ the LLC seeks to interplead. Indeed, that is exactly what makes the funds a proper subject for interpleader. ▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮ Amazon simply maintains that insofar as these funds are owed to Defendants, they must be deposited with the Court pursuant to the Injunction. Dkt. 338-1 ¶¶ 1, 3.

Moreover, even if the clauses could be broadly construed to cover 800 Hoyt's motion to intervene, there are competing forum-selection clauses that require all claims arising out of this lawsuit to be litigated in this District. *See* Dkts. 256 at 3–4, 210 at 16–21. For example, the purchase agreement for one of the transactions in suit provides that "Virginia has a substantial relationship to the parties and to the Transaction," and requires any "legal suit, action or proceeding against either party arising out of or relating to this Agreement" (which proceedings now include the Injunction in this case) to be instituted in a Virginia court and to be governed by Virginia law. Dkt. 210 at 16 (quotation marks and emphasis omitted); Dkt. 256 at 3 (citing this provision). "Since the events and actions that led to this action took place in Virginia, the first step assessment suggests" now, as it did when other Defendants moved to transfer venue, "that Virginia should remain the forum state." Dkt. 256 at 4.

The next step of the venue analysis supports this conclusion. The public and private interests of the parties who did not agree to adjudicate claims elsewhere indisputably "weigh[ ] in

11

favor of this Court retaining venue." *Id.*; Dkt. 210 at 21–25.  Those parties "clearly have an interest in litigating their case in Virginia, where the disputed events took place, rather than across the country" in a ▮▮▮▮▮▮ and the "state of Virginia itself also has an interest in deciding cases that involve events . . . within its own borders."  Dkt. 256 at 4–5.  As the Court put it earlier this year, "[s]tep one and step two both point to the same forum: Virginia.  When these two factors point in the same direction, [the] Court should follow that result."  *Id.* at 5.  So, too, here.

The remaining factors in the forum inquiry reinforce this conclusion.  Severance of the dispute over the 800 Hoyt funds "would merely result in a waste of the resources" of another court, since the dispute over the Interpleader Funds is inextricably entwined with the Injunction enforcement issues that are being litigated in this lawsuit already.  *See* Dkts. 256 at 5, 210 at 26–28.  It is obviously more efficient for this Court to resolve this dispute than for another court to do so.  Dkts. 256 at 5–6, 210 at 29–30.

This Court's interest in enforcing its orders and ensuring the due administration of justice further supports intervention.  The proceeds from the 800 Hoyt property represent a significant portion of the $140 million in assets that Defendants have liquidated since the Court entered the Injunction's judgment security and anti-dissipation provisions.  Dkts. 338-1 ¶ 24–25, 310-3.  Granting 800 Hoyt LLC's motion to intervene and allowing it to place the Interpleader Funds in the Court's registry will assist the Court in enforcing the Injunction, and ordering Defendants to bear any costs or fees to which 800 Hoyt is entitled would be proper pursuant to the Court's September 10 sanctions order alone.  Dkt. 330.

### III.  The Court Should Order 800 Hoyt To Account For Sale Distributions to Date In Addition to Placing the Interpleader Funds in the Court's Registry

800 Hoyt LLC currently seeks to intervene and interplead not just the approximately ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ with Defendants, Dkt. 338-1 ¶ 60(a)–(c), but also

12

"[a]ny remaining funds due and payable to Mr. Watson, WDC, PLW, BW Holdings, or any entity owned or controlled by Mr. Watson," *id*. ¶ 60(d).  In non-statutory interpleader actions like this one, pleading the highest possible amount in dispute is both proper and "often required in the discretion of the court as a means of safeguarding the disputed fund and facilitating execution of judgment," particularly where the movant "desires to dispute the amount of its obligation, in whole or in part."  *Emmco Ins. Co. v. Frankford Trust Co.*, 352 F. Supp. 130, 133 (E.D. Penn. 1972); *see* Wright & Miller, 7 Fed. Prac. & Proc. Civ. § 1716 (3d ed. Apr. 2021 update).  Again, that is exactly the case here.  Defendants' pattern of asset dissipation and evading the Court's orders makes securing the Interpleader Funds especially appropriate.  *See* Dkts. 350-52, 330.

Defendants represented in a sworn interrogatory response that approximately $13.9 million from the 800 Hoyt property sale is "[s]till pending distribution[]." Dkt. 310-3 at 5.  The Interpleader Complaint is vague about what funds 800 Hoyt controls as distinct from the entity known as "Hoyt Development,"[5] what funds have actually been distributed to date, and exactly what funds comprise the "Available Cash" that can be used, at the LLC's manager's "discretion," to make future distributions subject to the waterfall formula mentioned in the intervention filing.[6]

---

[5] ███████████████████████████████████████████████████████████████████████ Defendants advised Plaintiffs in discovery and related correspondence this summer that proposed intervenor 800 Hoyt controls these funds through its current manager Donald J. Marcotte. Ex. Dkts. 310-7, 326-6, 350-52.  But on October 12, 2021, counsel for 800 Hoyt disclosed that up to 70% of these funds were retained by Hoyt Development.

[6] *See* Dkt. 335 at 3–4 ███████████████████████████████████████

*(Cont'd on next page)*

These and other questions must be answered to adjudicate the claims in intervention, and the answers will facilitate proper relief on the parties' pending Injunction motions. Dkt. 338-3 ¶ 1.

To assist in resolving these issues expeditiously and efficiently, the Court should grant the motion to intervene, docket the Interpleader Complaint and, following any necessary proceedings, order 800 Hoyt to place the Interpleader Funds in the Court's registry as well as account for all sale proceeds and payments to date. Further, if the Court grants 800 Hoyt's request for intervention-related costs and fees, it should order Defendants and their insurers to bear those costs in accordance with the September 10 sanctions order and Defendants' ongoing Injunction contempt.

## CONCLUSION

For the reasons herein, Plaintiffs respectfully request that the Court grant 800 Hoyt's Motion to Intervene.

Dated: October 12, 2021               Respectfully submitted,

*s/ Michael R. Dziuban*
Elizabeth P. Papez (*pro hac vice*)
Patrick F. Stokes (*pro hac vice*)
Claudia M. Barrett (*pro hac vice*)
Michael R. Dziuban (Va. State Bar No. 89136)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306



Telephone:  (202) 955-8500
Facsimile:  (202) 467-0539
epapez@gibsondunn.com
pstokes@gibsondunn.com
cbarrett@gibsondunn.com
mdziuban@gibsondunn.com

Veronica S. Moyé (*pro hac vice application* pending)
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
Telephone: (214) 698-3100
Facsimile: (214) 571-2900

*Counsel for Plaintiffs Amazon.com, Inc. and Amazon Data Services, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 12, 2021, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system. I will send then send the document and a notification of such filing (NEF) to the following parties via U.S. mail to their last-known address and by email, where noted:

Jamie Hubbard
Stimson Stancil LaBranche Hubbard
1652 Downing Street
Denver, CO 80218
*Counsel for Defendants White Peaks Capital LLC and NOVA WPC LLC*

Villanova Trust
c/o Christian Kirschner, Trustee
3924 Wallace Lane
Nashville, TN 37215

Allcore Development LLC
6870 W 52nd Avenue, Suite 203
Arvada, CO 80002

Finbrit Holdings LLC
6870 W 52nd Avenue, Suite 203
Arvada, Colorado 80002

Casey Kirschner
635 N. Alvarado Lane
Plymouth, MN 55447
By email: casey.kirschner@gmail.com

*s/ Michael R. Dziuban*
Michael R. Dziuban (Va. State Bar No. 89136)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
Telephone:  (202) 955-8500
Facsimile:  (202) 467-0539
mdziuban@gibsondunn.com

*Counsel for Plaintiffs Amazon.com, Inc. and Amazon Data Services, Inc.*