IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| AMAZON.COM, INC. and AMAZON DATA SERVICES, INC.,<br><br>    Plaintiffs,<br><br>    v.<br><br>WDC HOLDINGS LLC dba NORTHSTAR COMMERCIAL PARTNERS; BRIAN WATSON; STERLING NCP FF, LLC; MANASSAS NCP FF, LLC; NSIPI ADMINISTRATIVE MANAGER; NOVA WPC LLC; WHITE PEAKS CAPITAL LLC; VILLANOVA TRUST; CASEY KIRSCHNER; ALLCORE DEVELOPMENT LLC; FINBRIT HOLDINGS LLC; CHESHIRE VENTURES LLC; CARLETON NELSON; JOHN DOES 1-20,<br><br>    Defendants. | CASE NO. 1:20-CV-484-LO-TCB |
| 800 HOYT LLC,<br><br>    Intervening Interpleader Plaintiff, Intervening Interpleader Counter-Defendant,<br><br>    v.<br><br>BRIAN WATSON; WDC HOLDINGS, LLC; BW HOLDINGS; LLC,<br><br>    Interpleader Defendants,<br>    and<br><br>AMAZON.COM, INC., and AMAZON DATA SERVICES, INC.,<br><br>    Interpleader Defendants, Interpleader Counter-Plaintiffs. | |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTION TO THE COURT'S
NOTICE OF GROUNDS FOR JUDICIAL DISQUALIFICATION AND NON-RECUSAL**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... iii

INTRODUCTION .................................................................................................................... 1

BACKGROUND ...................................................................................................................... 3

RELEVANT FACTS ................................................................................................................ 3

ARGUMENT ............................................................................................................................ 6

    I.    DEFENDANTS CONCEDE NO BASIS FOR SECTION 455(b) RECUSAL .............. 8

    II.   DEFENDANTS' SECTION 455(a) CLAIM FAILS ON THE LAW AND RECORD ................................................................................................................... 9

        A.   Defendants' Section 455(a) Claim Fails as a Matter of Law ................................. 9

        B.   Defendants' Section 455(a) Claim Also Fails Because It Ignores "All Relevant Circumstances" for Recusal .................................................................. 10

CONCLUSION ....................................................................................................................... 13

## TABLE OF AUTHORITIES

**CASES**

*Amazon.com, Inc. v. WDC Holdings LLC*,
   2021 WL 3878403 (4th Cir. Aug. 31, 2021)..................................................................3, 4

*Amazon.com, Inc. v. WDC Holdings LLC*,
   2020 WL 4353563 (E.D. Va. July 28, 2020) ..................................................................3, 4

*Amazon.com, Inc. v. WDC Holdings, LLC*,
   2020 WL 4720086 (E.D. Va. June 5, 2020) ........................................................................4

*Central Tel. Co. of Va. v. Sprint Commc'ns Co. of Va.*,
   2011 WL 6178652 (E.D. Va. Dec. 12, 2011) .....................................................................9

*Centripetal Networks, Inc. v. Cisco Sys., Inc.*,
   492 F. Supp. 3d 615 (E.D. Va. 2020) ...............................................................1, 7, 8, 9, 13

*Country Vintner of N.C., LLC v. E & J Gall Winery, Inc.*,
   718 F.3d 249 (4th Cir. 2013) ..............................................................................................9

*Kidder Peabody & Co. v. Maxus Energy Corp.*,
   925 F.2d 556 (2d Cir. 1991)................................................................................................7

*Kolon Indus. Inc. v. E.I. DuPont de Nemours & Co.*,
   748 F.3d 160 (4th Cir. 2014) .........................................................................................8, 13

*Liljeberg v. Health Servs. Acquisition Corp.*,
   486 U.S. 847 (1988)..........................................................................................................12

*Lindsey v. City of Beaufort*,
   911 F. Supp. 962 (D.S.C. 1995)........................................................................................10

*Maharam v. Patterson*,
   369 F. App'x 240 (2d Cir. 2010) ........................................................................................7

*Muchnick v. Thomson Corp.*,
   509 F.3d 136 (2d Cir. 2007)................................................................................................8

*In re Total Realty Mgmt. LLC*,
   706 F.3d 245 (4th Cir. 2013) ..............................................................................................9

*United States v. Pappert*,
   1 F. App'x 767 (10th Cir. 2001) .........................................................................................8

**STATUTES**

28 U.S.C. § 455(a) ...............................................................................1, 6, 9, 10, 11, 12, 13

28 U.S.C. § 455(b) ..................................................................................................................6

28 U.S.C. § 455(c) ................................................................................................................11

28 U.S.C. § 455(d) ............................................................................................................6, 11

28 U.S.C. § 455(f) ........................................................................................3, 6, 7, 8, 9, 10

**OTHER AUTHORITIES**

How to Buy Mutual Funds, Forbes Advisor (Jan. 14, 2021)
    https://www.forbes.com/advisor/investing/how-to-buy-mutual-funds/ ..................................12

U.S. Courts, Guide to Judicial Policy 2D § 320.20 ......................................................................12

Plaintiffs Amazon.com, Inc. and Amazon Data Services, Inc. ("Amazon") hereby respectfully respond to the objections that Defendants WDC Holdings LLC, Brian Watson, Sterling NCP FF, LLC, Manassas NCP FF, LLC, Carleton Nelson, and Cheshire Ventures ("Defendants") filed to the Court's Notice of Grounds for Judicial Disqualification, Dkt, 452, and oppose Defendants' "request that [the Court] recuse from further involvement in this matter," Dkt. 463 at 3 (Mot.).

## INTRODUCTION

On December 14, 2021, the Court notified the parties that the presiding judge previously held a financial interest outside the statutory "safe haven" for investments, but had fully divested that interest and, after "reviewing all the facts and circumstances" required by the judicial code, "concluded that disqualification is not required." Dkt. 452 at 1–2. That decision is squarely supported by the record and the law in Defendants' motion. Mot. 10 (citing 28 U.S.C. § 455 and *Centripetal Networks, Inc. v. Cisco Sys., Inc.*, 492 F. Supp. 3d 615, 619 (E.D. Va. 2020)).

Section 455, the statute governing disqualification, sets out two separate rubrics for recusal in subsections (a) and (b). Defendants' motion states that "recusal is warranted" only "under 28 U.S.C. § 455(a)," Mot. 10, which addresses situations involving the "'appearance of impartiality,'" *id.* at 9 (quoting *Centripetal*). But the motion does not present any basis for recusal under that subsection. It addresses only a stock ownership interest that the Court has already divested in accordance with the more specific statutory provisions in Sections 455(b)(4) and (f) that do not require disqualification here. Dkt. 452.

Further, even accepting Defendants' reliance on Section 455(a), the "relevant facts" do not support recusal. Mot. 10–11. Defendants make much of their lack of success in the litigation, but the reason things have "not gone well for" them in this case and related actions, *id.* 2, is that there is clear evidence of their widespread fraud and kickback scheme targeting over $500 million in

Amazon development projects. Indeed, in one of several audio transcripts in the record here, Defendant Nelson admits that the "first couple distributions" he and co-defendant Casey Kirschner "took" on these projects were "some sketchy a** sh**," Dkt. 348 at 8 n.6, that Nelson had "taken 960 total" and Kirschner "eight something" from "all Brian [Watson]'s fees," *id*., and that he and Kirschner could continue getting kickback deals approved because people at Amazon are "f****** idiot[s]," *id*. When the FBI served warrants to investigate this and other misconduct, Defendant Watson threatened to obstruct access to evidence and assets, prompting the injunction and related rulings the motion describes. Mot. 4-6.

The rulings against Defendants are not only from this Court, where they claim a conflict exists. A Fourth Circuit panel unanimously upheld the injunction against Watson and Northstar this summer, and this Court's related rulings have been endorsed by several other judges based on evidence that independently supported federal grand jury proceedings and civil forfeiture actions against Defendants. Their motion does not mention any of this history. Nor does it mention this Court's extraordinary efforts to accommodate their positions over nearly two years of litigation. The presiding judge modified the injunction at their request, and granted them countless procedural accommodations while they dissipated assets and obstructed this case. They have now been in unabated contempt of multiple orders for over a year. But instead of imposing the full range of justifiable sanctions, the Court granted their request to proceed with merits discovery. In response, Defendants have not produced a shred of exculpatory evidence. They have instead spent weeks publicizing their "David and Goliath" narrative and chasing news reports about judicial disclosures in a further effort to distract from the merits of this suit. Mot. 2. The result is a motion to disqualify a respected jurist based on an interest the Court has fully addressed under the controlling statute, and a record Defendants are forced to distort because it reflects the impartiality the law requires. The motion should be denied and this case should proceed on the merits.

## BACKGROUND

The Court's notice discloses an investment governed by 28 U.S.C. § 455. Dkt. 452. The notice says the investment was not substantially affected by this matter, and has already been completely divested. *Id*. at 2. Controlling authority supports the Court's decision not to disqualify, and Defendants show no abuse of discretion. In arguing otherwise, they once again distort the law and facts to bring "baseless charge[s] against the integrity and impartiality of [this] court." *Amazon.com, Inc. v. WDC Holdings LLC*, 2021 WL 3878403, at *9 (4th Cir. Aug. 31, 2021).

## RELEVANT FACTS

Defendants' "procedural history," Mot. 3-7, deliberately omits facts that must be considered even under their reading of Section 455. *See, e.g.*, Dkt. 150. Those facts, which are summarized below, confirm that recusal would result in a substantial waste of judicial resources in clear contravention of Section 455(f). They also confirm that Section 455(a) does not warrant recusal based on the Court's divested financial interest or its rulings against Defendants, which have already been endorsed by other judges including a unanimous appellate panel. Dkts. 99, 318, 319.

***2020 Complaint, TRO, and Preliminary Injunction (Mot. ¶¶ 4-7).*** Defendant Brian Watson is the owner of Defendant WDC Holdings, a Colorado real estate development company operating as Northstar. *Amazon.com, Inc. v. WDC Holdings LLC*, 2020 WL 4353563 (E.D. Va. July 28, 2020). Beginning in 2017, Watson cultivated a relationship with former Amazon real estate transaction managers—co-defendants Carleton Nelson and Casey Kirschner, *id.*—who, as detailed in prior pleadings and orders, steered transactions to WDC Holdings and Brian Watson (the "Northstar Defendants") in exchange for kickbacks. Dkts. 10–12, 41–47, 57, 68–69, 84–85, 100, 150, 191, 210–218, 231, 256, 285–86, 291, 308, 330, 349. After the FBI served search warrants at Defendant Watson's home, he threatened to interfere with evidence and assets. Accordingly, Amazon filed a complaint and petition for temporary restraining order (TRO) in this Court.

3

The Court granted the TRO based on a substantial "body of evidence including spreadsheets, wire transfer instructions, email exchanges, recorded conversations, and other materials implicating defendants in the alleged scheme." *Amazon v. WDC Holdings*, 2020 WL 4353563, at *3. Then, after weeks of litigation (extended at Defendants' request, Mot. ¶ 6), Dkts. 9, 10, 30, 39, 41, and a lengthy hearing (which was "by telephone," Mot. ¶ 7, due to pandemic closures), the Court converted the TRO to a preliminary injunction compelling the Northstar Defendants to preserve evidence and secure unjust gains during the pendency of this case. Dkt. 99.

Defendants' motion fails to mention that the Fourth Circuit unanimously affirmed that injunction. *Amazon.com, Inc. v. WDC Holdings LLC*, 2021 WL 3878403 (4th Cir. Aug. 31, 2021). It also fails to mention that this Court granted their request to delay the injunction's entry so they could obtain a bond, Dkts. 49–51, and that when they failed to do so the Court modified the order to permit other security options. *Amazon.com, Inc. v. WDC Holdings, LLC*, 2020 WL 4720086 (E.D. Va. June 5, 2020); *see also* Dkt. 84 at 2. Defendants have defied all of these provisions to this day, and refuse to post a penny of the amount affirmed on appeal even though the "newly appointed receiver," Mot. 2, has confirmed that they liquidated over $140 million in assets—and obtained millions in loans—during the injunction period.

***Initial Contempt, Discovery, and Sanctions Proceedings (Mot. ¶¶ 9-12, 16-23).*** When Defendants began dissipating assets in violation of the injunction, Amazon promptly initiated contempt proceedings. Dkts. 67, 68. But the Court deferred this relief, and instead directed Defendants to produce discovery substantiating their objections to injunction compliance. Dkt. 193 at 26:10–12, 27:1–8, 27:23–24; Dkt. 95. They refused. For over a year, they "willfully failed to comply" with the injunction and discovery rulings despite multiple orders to compel, Dkt. 330, causing further "prejudice to the plaintiffs in terms of their ability to enforce the injunction, or perhaps, even recoup the funds," Dkt. 350-1 at 7:5–7. Through it all, the Court declined to impose

4

the full range of relief the law allows for such misconduct, and encouraged Defendants to develop their case.  Dkts. 193-2 at 18:25–19:1; 349 at 7–8; 351-3; 351-48.

*__Dismissal and Transfer Proceedings (Mot. ¶¶ 13-15, 19-21).__*  In parallel with the extensive injunction proceedings against the Northstar Defendants, the Court progressed the action with respect to all named defendants, several of which have defaulted.  Dkts. 406, 447.  Amazon twice amended its complaint to plead additional evidence of the conspiracy, Dkts. 100, 150, Nelson and Kirschner moved to transfer the entire case to Seattle, Dkts. 164, 165, and all Defendants moved to dismiss, Dkts. 174, 175, 176, 179, 181, 182.  Amazon opposed these motions in this Court and in Seattle.  Dkts. 210, 219.  Consistent with the Fourth Circuit's unanimous injunction affirmance (which requires likelihood of success on the merits), this Court found Amazon's claims "adequately pled to survive the Motions to Dismiss," Dkt. 256 at 1, 6, and denied the transfer request because it "would lead only to wasted time and resources" and "would prejudice the other parties unnecessarily."  *Id.* at 6.  Meanwhile, the Seattle court agreed to stay Nelson's case there until proceedings conclude here.

*__2021 Contempt, Interpleader, Receivership, and Pre-Trial Proceedings (Mot. ¶¶ 27-29).__*  After the Fourth Circuit affirmed the injunction, Dkts. 318, 319, Amazon renewed its motion for contempt.  Dkt. 347.  The Northstar Defendants opposed, Dkts. 343, 356, and one of their affiliates intervened to interplead funds covered by the injunction, Dkts. 334, 335, 407.  After voluminous briefing and dozens of evidentiary submissions, the Court held the Northstar Defendants "in willful civil contempt of the Court's Preliminary Injunction."  Dkt. 413 at 1.  But even then, it declined to impose the full range of sanctions available under circuit law.  Instead, it appointed a third-party Receiver to manage the Northstar Defendants' assets until they purged their contempt.  Dkt. 433.

The Receiver has since confirmed Defendants' continued obstruction of the injunction, including the unauthorized disposition of assets and recording of undisclosed liens in favor of their

defense counsel. Dkt. 440. However, the Court has not imposed any further sanctions. Instead, it granted Defendants' request to set a schedule for merits discovery and trial this spring. Dkt. 455. That discovery started weeks ago, but Defendants have not produced any exculpatory evidence. The final pre-trial conference is now set for April 15, 2022, with a trial to follow in June.

## ARGUMENT

Section 455(a), which is the basis for Defendants' recusal request, Mot. 10, states a general rule that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Subsections (b) and (f), which the Court addressed in its December 14 notice, Dkt. 452, are more specific and set out precise guidance on recusal in situations involving the particular type of stock interest at issue here. Subsection (b)(4) presumptively requires recusal where a judge "*knows* that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a *financial interest* in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding." 28 U.S.C. § 455(b)(4).[1] Defendants admit, Mot. 9, that this provision requires the judge to have "actual knowledge" of a prohibited "financial interest," which the statute defines to *exclude* party stock held through a "mutual fund," 28 U.S.C. § 455(d)(4)(i). Further, Section 455(f) says that even where a judge has actual knowledge of a proscribed financial interest, recusal is not required where the judge has devoted "substantial judicial time . . . to the matter," "divests" the interest following its "appearance or discovery," and concludes that the interest is not one that could have been "substantially affected by the outcome" of the case.[2]

---

[1] All emphasis is supplied unless otherwise noted.

[2] Section 455(f) states in full: "Notwithstanding the preceding provisions of this section, if any justice, judge, magistrate judge, or bankruptcy judge to whom a matter has been assigned would

6

The upshot of these statutory provisions, which the Court applied in its notice, Dkt. 452, is that even a judge with actual knowledge of a direct stock holding in a party need not recuse if he divests the interest and it was not one that could have been substantially affected by his rulings. The Court's recent published decision in *Centripetal Networks*, which is the leading case in Defendants' motion, illustrates this point. In *Centripetal*, Judge Morgan's "administrative assistant discovered during preparation of [his] judicial financial disclosure reporting that [his] spouse owned 100 shares of" stock in one of the parties. *Centripetal Networks, Inc. v. Cisco Sys., Inc.*, 492 F. Supp. 3d 615, 617 (E.D. Va. 2020). After a comprehensive discussion of relevant authorities, the Court concluded, on facts similar to those here, that "a reasonable person would not conclude that the Court knew of his spouse's ownership and proceeded to hear the case nonetheless." *Id*. at 620. The Court further concluded that divestment, which took place a month after the Court discovered the potential conflict, "was an effective cure." *Id*. at 624 (quotation marks omitted).

That decision, like the Court's non-recusal decision here, accords with Section 455(f) and conflict precedents across federal circuits.[3] It also accords with the Court's duty to avoid needless recusal. "[A] judge is as much obliged not to recuse himself when it is not called for as he is obliged to when it is." *Muchnick v. Thomson Corp.*, 509 F.3d 136, 140 (2d Cir. 2007) (quotation

---

be disqualified, after substantial judicial time has been devoted to the matter, because of the appearance or discovery, after the matter was assigned to him or her, that he or she individually or as a fiduciary, or his or her spouse or minor child residing in his or her household, has a financial interest in a party (other than an interest that could be substantially affected by the outcome), disqualification is not required if the justice, judge, magistrate judge, bankruptcy judge, spouse or minor child, as the case may be, divests himself or herself of the interest that provides the grounds for the disqualification."

[3] *See, e.g.*, *Kidder Peabody & Co. v. Maxus Energy Corp.*, 925 F.2d 556, 561 (2d Cir. 1991) (affirming non-recusal decision under Section 455(f) where presiding district judge learned after three years on the case that he owned stock in the parent company of one of the parties); *Maharam v. Patterson*, 369 F. App'x 240, 242 (2d Cir. 2010) (same, where district judge discovered that her son had owned a potentially disqualifying interest earlier in the litigation but had sold the stock); *United States v. Pappert*, 1 F. App'x 767, 769 (10th Cir. 2001) (same where district judge was unaware of a proscribed interest early in the case, and promptly divested it upon discovery).

marks omitted). Thus, in deciding a recusal motion under Section 455, "judges must balance [their] duty to appear impartial against several practical considerations, including the availability of other judges, the cost in judicial resources of recusal and reassignment of the case to different judges, and the interest of the parties and the public in a swift resolution of the dispute." *Id.* (citation omitted). The Court's notice balances all of these considerations in accordance with Section 455 and the authorities in Defendants' filing.

## I. DEFENDANTS CONCEDE NO BASIS FOR SECTION 455(b) RECUSAL

Even where a financial interest raises grounds for disqualification under Section 455(b)(4), Section 455(f) creates an exception for precisely the situation here. The statute says that if a judge "discover[s]" after "substantial judicial time has been devoted to a matter" that a "spouse" has a "financial interest in a party," "disqualification is *not* required" if the spouse "divests . . . herself of the interest" and it is not one "that could be substantially affected by the outcome" of the litigation. 28 U.S.C. § 455(f). This provision "presents a clean trade-off between efficiency and impartiality," and "permits a judge with a financial conflict of interest . . . to remain on the case if he has devoted substantial time to the matter and divests himself of the interest." *Kolon Indus. Inc. v. E.I. DuPont de Nemours & Co.*, 748 F.3d 160, 170 (4th Cir. 2014). The Court found each of these requirements satisfied here, Dkt. 452, and Defendants do not try to refute its findings.

Notably, they do not dispute that the interest the Court addressed in its December 14 notice was "divested . . . once [the Court] discovered it." *Centripetal Networks*, 492 F. Supp. 3d at 623 (quotation marks omitted). Nor do they seek recusal based on the Court's analysis of any of the divestment and cure provisions in Section 455(b) and 455(f) of the statute. Their motion asserts only that "recusal is warranted under 28 U.S.C. § 455(a)." Mot. 10.

## II. DEFENDANTS' SECTION 455(a) CLAIM FAILS ON THE LAW AND RECORD

### A. Defendants' Section 455(a) Claim Fails as a Matter of Law

Defendants' Section 455(a) arguments are misplaced because they rely on a financial interest that does not require disqualification under the more specific statutory provisions the Court addressed in its notice. Mot. 10 (identifying the stock divested under Sections 455(b) and (f) as the basis for their "appearance of impartiality" argument under subsection (a)). Defendants cite no authority for ignoring Subsections (b) and (f) in favor of Subsection (a), which cannot be read in isolation. The individual provisions of a statute must be interpreted in the "broader context of [Section 455] as a whole." *Country Vintner of N.C., LLC v. E & J Gall Winery, Inc.*, 718 F.3d 249, 259 (4th Cir. 2013) (quoting *In re Total Realty Mgmt. LLC*, 706 F.3d 245, 251 (4th Cir. 2013)). That is particularly true here because Defendants concede that even where a judge has "actual knowledge" of stock ownership they say a "reasonable person" would recognize as a conflict, Mot. 9, the judge "may cure" it by divesting the interest under Subsection 455(f), which is what the presiding judge did. Mot. 9 (citing 28 U.S.C. § 455(f) and *Central Tel. Co. of Va. v. Sprint Commc'ns Co. of Va.*, 2011 WL 6178652 at *5 (E.D. Va. Dec. 12, 2011) (collecting authorities)).[4] Defendants nonetheless insist that this divested interest requires recusal for optical reasons under Section 455(a) because divestiture "cannot make an apparently biased judge appear to be impartial in the eyes of the litigants and public in general." Mot. 11. This argument is legally and factually unsupported.

---

[4] Defendants do not contest the Court's notice of Section 455(f) divestiture. Notably, they do not dispute the judge's statement that he had no "actual knowledge" of the "direct" nature of the investment (which is the feature that brought it within Section 455's scope) until last month, or that his spouse fully divested the interest the following week. Mot. 11. They also do not dispute the judge's conclusion that the interest was not one that "could be substantially affected by the outcome" of the case. 28 U.S.C. § 455(f). Nor could they, because here as in *Centripetal*, the interest was "in a large, publicly held corporation with diverse interests and revenues in the billions." *Centripetal Networks*, 492 F. Supp. 3d at 624 (quotation marks omitted).

9

First, it focuses on an "appearance of impartiality," *id*. at 9, that Section 455(f) already addresses in providing a divestment "cure" for "the *appearance* or discovery" of the financial conflict they assert. Second, Defendants' own conduct confirms that the stock interest here did not create the "appearance" of bias to anyone, much less to "litigants and public in general." Mot. 11. Indeed, they stress that the interest was "*not*" made "readily available to the public or litigants." Mot. 3. That is important, because they are the litigants who had the greatest motivation to investigate the alleged conflict in making what the Fourth Circuit termed "baseless" attacks on the "integrity" of this Court's injunction. Dkt. 318 at 22. But as their motion explains, they requested the presiding judge's financial disclosures only after the "Wall Street Journal reported" on conflicts created by judicial stock ownership "on or around September 28, 2021." Mot. 6. This history belies their argument that the stock interest listed in his financial disclosures created the appearance of "bia[s]" in the "eyes of the litigants and public in general." Mot. 11. If that were true, Defendants would (and should) have raised it long before now. *See, e.g.*, *Lindsey v. City of Beaufort*, 911 F. Supp. 962, 966 (D.S.C. 1995) (a request for disqualification must be made "at counsel's first opportunity after discovery of the disqualifying facts").

**B.  Defendants' Section 455(a) Claim Also Fails Because It Ignores "All Relevant Circumstances" for Recusal**

Recusal is not warranted for the reasons above. But even accepting Defendants' argument that a financial interest can require recusal under Section 455(a) after it is divested in accordance with Section 455(f), their motion does not satisfy their own description of Section 455(a)'s disqualification standard. Defendants say "[r]ecusal to address the appearance of partiality [under Section 455(a)] 'is required even when a judge lacks actual knowledge [under Sections 455(b) and (f)] of the facts indicating his interest or bias in the case if a *reasonable person, knowing all the circumstances*, would expect that the judge would have actual knowledge" of a "*disqualifying* financial interest." Mot. 9-10 (quotation omitted). They then say this test is satisfied here because,

10

"based on" the selective facts in their motion, "a reasonable observer might well conclude that Judge O'Grady knew of his spouse's financial interest in Amazon when [the] case was assigned to him, yet decided to take the case" anyway. Mot. at 11. This argument fails because their motion does *not* address "all the circumstances" they admit Section 455(a) requires for disqualification.

To start, it does not address "all the circumstances" relevant to the challenged stock holding. Even under Defendants' view of Section 455(a), the recusal question is *not* whether Judge O'Grady "knew of his spouse's financial interest in Amazon when [the] case was assigned to him." Mot. 11. It is whether a "reasonable person" would conclude, based on "all the circumstances" surrounding his disclosures, that he should have known it was a "*disqualifying*" interest: namely, a "direct" interest rather than an interest held through a "mutual fund." *Id*. 10; *see* 28 U.S.C. § 455(c); Dkt. 452 (citing authorities). Defendants gloss over this critical point in asserting that the judge should have recused simply because his disclosures "show that, since at least 2015," his wife held "ownership of Amazon stock in 'Brokerage Account #1." Mot. 3.

This disclosure does not show that the stock interest was direct (and thus presumptively "disqualifying"), particularly under "all the circumstances" addressed in the Court's December 14 notice. As the notice explains, Section 455 creates a "safe haven" for stocks held through mutual funds. Dkt. 452. That exception is set forth in Section 455 itself, which states that "ownership in a mutual or common investment fund that holds securities is *not* a 'financial interest'" for purposes of the recusal inquiry here. 28 U.S.C. § 455(d)(4)(i). Brokerage accounts are routinely used to purchase and hold interests in mutual funds,[5] so the "Brokerage Account #1" disclosure on which

---

[5] *See, e.g.*, How to Buy Mutual Funds, Forbes Advisor (Jan. 14, 2021) https://www.forbes.com/advisor/investing/how-to-buy-mutual-funds/, last visited Decemder 28, 2021 ("You buy mutual funds using an investment account," which you can do "through your workplace 401(k)" or "through an online broker [or] financial advisor").

Defendants stake their recusal claim is consistent with a "safe haven" interest. And the disclosure's list of specific stocks associated with that account could simply describe the composition of a mutual fund subject to the disclosure rules for reporting investment income, which say that for "entities with portfolio holdings," judges must "separately disclose[]" every "underlying source of income." U.S. Courts, Guide to Judicial Policy 2D § 320.20 (last revised Jan. 15, 2021). Accordingly, the breakout of stock positions in the "Brokerage Account #1" disclosure Defendants cite, Mot. 3, does not establish that a "reasonable person, knowing all the circumstances" would find a financial conflict requiring recusal. *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 860–61 (1988) (quotation marks omitted).

Defendants' reliance on *Liljeberg* is instructive because, in stark contrast to this case, it involved facts that would cause a reasonable person to find grounds for recusal. The presiding judge was a Trustee of one of the parties, received correspondence in that capacity about the dispute in the litigation, attended board meetings where the dispute was discussed, and *announced his intended rulings at a board meeting* while presiding over the litigation. 486 U.S. at 856.

The degree to which Defendants' motion distorts the case record further underscores the difference between this action and their cited Section 455(a) authorities. Their motion deliberately omits the undeniably "relevant" fact that the presiding judge's rulings have been endorsed or recognized by several other judges based on evidence that independently supported federal grand jury proceedings. The motion also fails to disclose that—despite the presiding judge's many accommodations of Defendants' positions—they have yet to produce any exculpatory evidence. Defendants have primarily tried to justify their conduct as authorized by their contracts with Amazon. But the Amazon contracts they invoke do not—and could not—authorize the kickback payments documented in Defendants' own bank records and audio recordings. And after nearly two years

12

of litigation replete with opportunities to explain their actions, Defendants have produced no evidence that excuses their documented misconduct.

These facts are all "relevant circumstances" under Section 455(a), Mot. 9-10 (citing *Liljeberg* and *Centripetal*), which does not support recusal here particularly because the Court has "devoted 'substantial judicial time' to th[is] matter," *Centripetal Networks*, 492 F. Supp. 3d at 623 (quotation marks omitted), and issued several complex rulings necessary to the merits proceedings slated for this spring. Against this backdrop, reassignment would needlessly delay this case—and undermine the schedule the Court recently set at Defendants' request—to the detriment of the judicial "efficiency" Section 455 is designed to protect. *Kolon Indus.*, 748 F.3d at 170.

## CONCLUSION

For the foregoing reasons, Amazon respectfully requests that the Court overrule Defendants' objections, deny their recusal request, and proceed with this case on the merits.

13

Dated:  December 28, 2021          Respectfully submitted,

/s/ Michael R. Dziuban
Elizabeth P. Papez (*pro hac vice*)
Patrick F. Stokes (*pro hac vice*)
Claudia M. Barrett (*pro hac vice*)
Michael R. Dziuban (Va. State Bar No. 89136)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
Telephone:  (202) 955-8500
Facsimile:  (202) 467-0539
epapez@gibsondunn.com
pstokes@gibsondunn.com
cbarrett@gibsondunn.com
mdziuban@gibsondunn.com

Veronica S. Moyé (*pro hac vice* application pending)
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
Telephone:  (214) 698-3100
Facsimile:  (214) 571-2900
vmoye@gibsondunn.com

*Counsel for Plaintiffs Amazon.com, Inc. and Amazon Data Services, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 28, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system. I will then send the document and a notification of such filing (NEF) to the following parties via U.S. mail to their last-known address and by email, where noted:

        Casey Kirschner
        635 N. Alvarado Lane
        Plymouth, MN 55447
        By email: casey.kirschner@gmail.com

        *s/ Michael R. Dziuban*
        Michael R. Dziuban
        GIBSON, DUNN & CRUTCHER LLP
        1050 Connecticut Avenue, N.W.
        Washington, D.C. 20036-5306
        Telephone: (202) 955-8500
        Facsimile: (202) 467-0539
        mdziuban@gibsondunn.com

        *Counsel for Plaintiffs Amazon.com, Inc. and Amazon Data Services, Inc.*