# EXHIBIT 1

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Tel 202.955.8500
www.gibsondunn.com

Elizabeth P. Papez
Direct: +1 202.955.8608
Fax: +1 202.530.9698
EPapez@gibsondunn.com

<u>January 18, 2022</u>

*Via Electronic Mail*

Alex Little
Burr & Forman LLP
222 Second Avenue South
Suite 2000
Nashville, TN 37201
Alex.little@burr.com
615-724-3303

> **Re:    No. 20-cv-484-RDA-TCB,** *Amazon.com Inc. et al. v. WDC Holdings LLC, et al.,* **U.S. District Court for the Eastern District of Virginia**

Dear Alex:

We write in follow up to our January 10, 13 and 14 written exchanges and our January 7, 2022 meet and confer regarding:

   i.    the initial document disclosure and hard drive issues addressed in our December 13, 2021 letter, your December 31, 2021 response, and your January 10 and 13, 2022 correspondence;

   ii.   our requests for the return of Amazon information your clients revealed for the first time in your initial disclosures, and on January 10, 2022 described as containing potentially privileged information subject to immediate return and destruction under the Protective Order in this case;

   iii.  the initial damages disclosure issues addressed in your December 28, 2021 letter, our January 3, 2022 response and offer to supplement, and our January 10, 2022 email exchange regarding the same; and

   iv.   miscellaneous discovery issues, including the draft deposition protocol and the Rule 45 litigation your clients' Colorado attorney filed on January 13, 2022.

*Amazon Information on Nelson Hard Drive.* On December 13, we notified you that your clients' possession and use of material from the hard drive that Mr. Nelson utilized while at

Alex Little
Page 2

Amazon[1] "may violate certain contracts, Amazon policies, and laws," and asked you to take specific actions to inventory and return all Amazon Material addressed in our letter. On December 31, 2021, you said "Mr. Nelson's possession of the hard drive is not a violation of any contract, policy, or law—because Amazon gave it to him after his employment ended."

This highly qualified statement about your clients' "possession" of the "hard drive" speaks volumes. Their retention and use of Amazon Material from the drive or otherwise *is* a violation of the contracts, policies, and laws we identified on December 13. These authorities include, but are not limited to:

o   Mr. Nelson's Confidentiality, Noncompetition & Invention Assignment Agreement (CNIAA)

- Section 1(a) requires Mr. Nelson to "promptly disclose and *deliver over to the company*"—both "[d]uring the course of employment and *at the termination thereof*"— enumerated categories of "Disclosure Information," including:

  - "any and all algorithms, procedures or techniques related to the Company's business activities or to [Nelson's] work with the Company";

  - "any and all pricing or marketing strategies";

  - "any and all products and services"; and

  - "any other ideas or information conceived, originated, adapted, discovered, developed, acquired, evaluated, tested, or applied by [Nelson] while employed by the Company if the idea or information could reasonably be expected to prove useful or valuable to the Company."

- Section 2(b) broadly prohibits Mr. Nelson from "*us[ing] or caus[ing] to be used* any . . . Confidential Information in connection with any activity or business except the business of the Company," either "directly or indirectly, *at any time*, during the term of his . . . employment with the Company or *at any time thereafter*, and without regard to when or for what reason, if any, such employment shall terminate." Section 2(a) defines "Confidential Information" to include, among other things:

  - "data of any sort compiled by the Company";

  - "information about the Company's future plans"; and

---

[1] Your initial disclosures in this matter stated that your clients, Defendants Carleton Nelson and Cheshire Ventures, LLC, were in possession of an "[e]xternal hard drive back up of [a] laptop employed by Mr. Nelson for Amazon-related work between approximately 2016 and June 11, 2019 containing approximately 1.45 million pages of documents."

Alex Little
Page 3

- "any information that would typically be included in the Company's financial statements."

  - Section 6 expressly provides that "any breach [of the foregoing and other provisions] . . . may cause the Company irreparable harm for which there is no adequate remedy at law," and that "the Company shall be entitled to the issuance . . . of an injunction, restraining order, or other equitable relief in favor of itself, without the necessity of posting a bond, restraining [Nelson] from committing or continuing to commit any such violation."[2]

- o  Mr. Nelson's Termination Letter

  - Mr. Nelson's termination letter expressly states that his CNIAA (which was an express condition of employment at Amazon[3]) contains "certain provisions" that "survive [his] termination" and "remain in full force and effect."

- o  Mr. Nelson's New Employee Mandatory Certification

  - This certification, which                      , stated that he:  (a)



    and (c)                                    Dkt. 212-1.

- o  Amazon's Removable Storage Standard

  - Sections 1 and 2 of the Removal Storage Standard in effect when Mr. Nelson was terminated expressly stated that "*Employees* must take due care to protect Amazon data when using removable storage," including "removable hard drives."

  - Section 2.4 further stated, in relevant part:  "When a removable storage device is decommissioned *or the employee responsible for the device leaves employment with Amazon*, the removable storage device must be sanitized . . . ."

---

[2]  The CNIAA (which survived Mr. Nelson's termination and he has asserted against Amazon in litigation) states that Mr. Nelson agrees the violations above may cause irreparable harm to the Company justifying injunctive relief.

[3]  Mr. Nelson's signed offer letter from Amazon contains a paragraph titled "Confidentiality, Noncompetition and Invention Assignment Agreement" that states, among other things, that Nelson "must sign" the CNIAA, and that the Company's offer of certain compensation "is based in significant part on your *commitment to fulfill the obligations specified in* the Agreement," which "will significantly restrict your future flexibility in many ways" and expressly urged "careful[]" review by Mr. Nelson and, "if appropriate," his "attorney."

Alex Little
Page 4

Your correspondence does not address, much less justify, your clients' possession of Amazon Material in contravention of the foregoing or other authorities. And your statement that your clients' "*possession*" of the "*hard drive* is not a violation of any contract, policy, or law" does not address their unauthorized *use* of Amazon Material on the drive (or otherwise).

Further, even with respect to the drive, your account of its return to Mr. Nelson confirms that Amazon did not waive any of its rights regarding Amazon Material, or in any way vitiate your clients' affirmative obligations with respect to such material. Your December 31 letter cites no legal authority to the contrary (or at all). It bases its position solely on the claim that, when "Mr. Nelson was terminated as an employee, there was no 'exit' interview or any process for him to certify that he had returned Amazon materials" before Amazon sent his "*personal* belongings" from his desk "to his home" in an "orange RENTACRATE box."

Throughout this process, and at all times during and after his termination from Amazon, it was incumbent on Mr. Nelson to comply with the above and other obligations. Your correspondence cites no authority otherwise, we are aware of none, and the remainder of your letter makes inaccurate statements on which we reserve all rights.

Notably, your December 31 letter purports to provide "context" for your clients' unauthorized use of Amazon Material by describing the parties' 2020 forensic protocol for addressing an incident in which a contract employee of a third party vendor that provides litigation services to Amazon accessed an online "DropBox" belonging to Mr. Nelson. Your letter states that this incident involved an "Amazon lawyer" taking actions that "plainly violated multiple criminal statutes" before asserting that we have not "shared any additional information . . . about this crime nor taken steps to mitigate the damage to Mr. Nelson" since a "neutral third-party investigator" shared his findings with all parties. All of these statements are demonstrably incorrect.[4] The facts concerning the DropBox access are documented in the record surrounding what you concede was a "neutral" investigation of the incident approved by your clients.[5] No one

---

[4] As an initial matter, there has been no proceeding to determine, much less any determination, that the Dropbox access "plainly violated multiple criminal statutes," or that a crime was committed at all. As to your client's purported damage, we are at a loss to determine what such damage could be given the agreed steps we took in cooperation with his counsel and recommended forensic investigator to ensure the protection of his information and interests.

[5] The investigation around the Dropbox issue was conducted by Stroz Friedberg, forensic experts that your client *proposed*, through his former counsel at MoloLamken, as neutral and qualified to conduct the investigation. Throughout the investigation, Gibson Dunn and Consilio were transparent with you and the MoloLamken attorneys about the circumstances surrounding the Dropbox access, starting with notifying MoloLamken as soon as possible about the issue. Notwithstanding the accusations in your letter, the work conducted by Stroz Friedberg was done in an independent and methodical fashion, designed to protect all the parties and all applicable privileges and in accordance with a protocol negotiated by the parties at arms' length.

Your claim that we "refus[ed] to let the neutral third-party investigator document in any written fashion … the information he shared with all of us on the conference call" is incorrect. Stroz Friedberg did in fact issue a *written* report on March 10, 2021. That report followed the protocol negotiated by the parties, and found that "Stroz Friedberg did not find any communications from Ms. Bryan transmitting the Nelson Dropbox Document." During the call to which you refer in your letter, you requested that Stroz Friedberg go beyond the negotiated protocol and include in the report issues beyond the protocol, including "findings" that Stroz Friedberg said were not conclusive and to which
*(Cont'd on next page)*

Alex Little
Page 5

at Amazon or Gibson, Dunn & Crutcher LLP ever reviewed the "materials" you say the third party vendor's "contract attorney" retrieved from the DropBox. And Mr. Nelson has not substantiated any "crime" or "damage" arising out of the facts the investigator reported to all parties.[6]

For the foregoing and other reasons, your reference to the DropBox matter is irrelevant here with one notable exception: the contract attorney involved in that matter promptly raised the access in issue, and Consilio and Gibson Dunn affirmatively took steps to secure her laptop and diligence it through a "neutral" investigation approved by all parties. The contract attorney and her entire team were also removed from the case and any work product created by her on the day of the Dropbox access was discarded. In stark contrast, your clients concealed their unauthorized possession and use of Amazon Material for years in contravention of multiple obligations.[7]

Mr. Nelson's post-termination conduct confirms this. You assert (to this day without any specific supporting information) that "many of the documents that were saved [on the hard drive] contradict the assertions" in Amazon pleadings that were filed against your clients in 2020. If that were true and your clients' possession of Amazon Material were authorized, they should have raised this purportedly "exculpatory" evidence earlier.[8] They did not. Instead, they concealed it while they spent over a year vigorously (and unsuccessfully) challenging Amazon's claims.

---

all the parties had not agreed. In accordance with the protocol to which *you* agreed, we simply asked that Stroz Friedberg follow the protocol in issuing its report, which Stroz Friedberg subsequently did. Your statement that we "refused" to let Stroz Friedberg set forth their findings in a report, or otherwise obstructed their investigatory or reporting work, is thus a complete distortion of what actually occurred.

In fact, once Stroz Friedberg issued its report, it was you who did not follow up. On March 29 and again on March 30, we reached out to you to determine which steps, if any, you and your client thought would be necessary. On March 30, you responded suggesting a call the following day and stating that you "should be able to confirm in the morning." We waited for your confirmation which never came. Indeed, since the Stroz Friedberg report issued nearly a year ago, you and your client have been silent on the issue and the report's findings. Given this history, your suggestion that anything improper has occurred with regard to the Stroz investigation, or that Mr. Nelson suffered any actual damage as a result, is untimely and waived as entirely unfounded.

[6] Your December 31 "demand" that Amazon "cease making any suggestion that [your clients'] possession of the hard drive is a crime" is misplaced and irreconcilable with your express and unsubstantiated assertion that the contract reviewer who accessed Mr. Nelson's DropBox committed a "crime." Our December 13 letter does not use the word "crime" in connection with your clients' possession of the hard drive or otherwise. Like Amazon's pleadings, our letter cites facts that will be adjudicated under civil claims that several judges have endorsed as viable in this action, and that we understand are also the basis for criminal and civil government proceedings against your clients. Whether the conduct by your clients is criminal will be adjudicated in due course. That said, to the extent you assert that it is crime to access files without express or specific consent (in the contract attorney's case with credentials your client left on Amazon systems), the same analysis would presumably govern your clients' access and use of the Amazon Material Mr. Nelson improperly left on the hard drive before it was returned with his personal effects.

[7]  Under the above and other authorities, your clients were obliged to return and ensure the destruction of all Amazon Material upon Mr. Nelson's termination from Amazon in June 2019. The alleged absence of an "exit interview" or "process for him to certify that he had returned Amazon materials" does not excuse his violation of the authorities we raised. And the "rent-a-crate" return of Mr. Nelson's purported "personal" items from his Amazon office did not, and could not, alter these obligations.

[8] That is particularly true because your clients purport to be familiar with Amazon's retention policies, and expressed concern that Amazon "likely deleted many of the exculpatory documents" since they were generated during Mr.

*(Cont'd on next page)*

Alex Little
Page 6

Reserving all rights in Amazon Material on the drive and elsewhere, our December 13 letter offered to discuss terms on which your clients could utilize non-privileged information (the possession of which is presently unlawful and/or unauthorized) to defend this case, and specifically to support your contention that the allegations against them are "baseless." You have not done so, nor provided the information we requested in an effort to resolve these issues without litigation.[9]

To facilitate resolution **please provide on or before January 19, 2022 your clients' positions on the following**: (a) please confirm your clients' availability in Ohio this week, to bring the hard drive to a neutral location to meet a third-party forensic vendor who will image the drive at Amazon's expense; (b) please provide your clients' complete responses to Requests 1–7 in our December 13 letter, including the certifications requested in items 6 and 7 subject to the terms of any party agreement or court order; and (c) identify any purportedly "exculpatory" documents relevant to the claims against your clients so that we may discuss the terms, if any, on which your clients could use such information solely to defend this case.

***Amazon Assertion of All Privileges & Immediate Clawback Request.*** On January 10, 2022, you advised that the Amazon Material your clients possess in violation of the above and other authorities includes potentially privileged information, including "communications with either in-house Amazon counsel or external counsel to Amazon relating to certain real estate deals" and represented to us that there were only about 100 such documents in Mr. Nelson's production. Your letter further asserts, supported only by a two-decade-old Kansas case, that "Amazon's conduct in returning th[e] hard drive to Mr. Nelson [with his office "personal" effects] and failing to take any precautions to avoid the disclosure of potentially privileged information waived any privilege those documents may have possessed." 01/10/22 Ltr. (citing *IMC Chems., Inc. v. Niro, Inc.*, 2000 WL 1466495, at *24, 27 (D. Kan., July 19, 2000)). Nonetheless, you confirmed that, "to avoid any accusation that [your] clients have improperly disclosed privileged information, [they] will refrain from providing [their] production to the other parties in the case for ten (10) days," which commitment your January 13 email confirmed will run through January 21, 2022.

**For the following reasons, including initial search results indicating that your January 11 production contains at least 16,000 potentially privileged Amazon documents your clients were obliged to return or destroy upon Mr. Nelson's termination from Amazon, we request pursuant to Paragraph 11(d) of the Protective Order (Dkt. 55) that your clients immediately secure and return to Amazon, destroying any copies, all Amazon Material from the hard drive described in your correspondence or otherwise in your clients' possession, custody, or control as those terms are construed under FRCP 34 and associated local rules,**

---

Nelson's employment with Amazon. 12/31/21 Ltr. at 3. We are aware of no basis (and you cite none) for any claim that Amazon "deleted" any information it had a duty to preserve, or that was disposed outside the normal and lawful course of the company's records retention practices.

[9] Notably, the vague assurance in your December 31, 2021 letter and during our January 7, 2022 meet and confer that Mr. Nelson did not "alter, delete, or otherwise modify" the information on the hard drive during some unspecified time period, partially satisfies Request 2 in our December 13 letter, but is otherwise insufficient to address your clients' legal obligations with respect to Amazon Material on the drive or otherwise.

Alex Little
Page 7

**and that you refrain from sharing your January 11 production with anyone until these privilege and clawback issues are resolved.**

*First*, the entire premise for your January 10, 2022 letter—that Amazon "fail[ed] to take any precautions to avoid the disclosure of potentially privileged information"—is incorrect and foreclosed by the legal obligations your client agreed to honor. A non-exhaustive list of these obligations is set forth above. And as your December 31, 2021 letter concedes, Amazon took steps to enforce these and other protections on Amazon information by, among other things, promptly escorting Mr. Nelson from the premises upon his termination and collecting the "laptop" he backed up to the hard drive your letter says Amazon returned to him pursuant to his demand for "personal" effects. At that time and all times thereafter, it was incumbent on Mr. Nelson to return or destroy Amazon Material within his possession or control. But he did not do so. Instead, he kept and used Amazon Material after his termination, and then concealed that possession and use for over two years, even after the claims in this case put him on notice of allegations he says the Amazon Material "contradict." When your initial disclosures finally revealed your clients' possession of the drive containing Amazon Material, we promptly made the return and certification demands in our December 13, 2021 letter. But again your clients did not comply. Their willful obstruction of the above and other Amazon "precautions" to safeguard the Amazon Material necessitated the requests herein, which will require Court action if not resolved by agreement this week.

*Second*, the law does not support your waiver claim even on the (erroneous) premise that the "rent-a-crate" return of the hard drive constituted disclosure of Amazon Material Mr. Nelson placed on the drive. The sole case you cite in your January 10 letter applies Kansas law that does not govern here. *See IMC*, *supra*. And in any event, the case confirms that "'the power to waive the corporate attorney-client privilege rests with the corporation's management and is normally exercised by its officers and directors,'" 2000 WL 1466495, at *10 (quoting *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348–49 (1985)), so "[a] mere employee of the corporation [much less a rent-a-crate shipment] 'cannot waive the corporation's privilege,'" *id*. (quoting *Sprague v. Thorn Ams., Inc*., 129 F.3d 1355, 1371 (10th Cir. 1997). For these and other reasons, even your letters' incomplete account of the facts surrounding the hard drive's return to Mr. Nelson does not establish the waiver of any Amazon rights, including and particularly privilege. *See, e.g.*, *In re Zetia (Ezetimibe) Antitrust Litig*., 2019 WL 6122012, at *10 (E.D. Va. July 16, 2019) (rejecting waiver claims even where the disclosure in issue was known to, and reviewed by, the privilege holder). Indeed, waiver claims are particularly inappropriate where, as here, they are asserted by parties who had no right to possess the relevant information in the first place. *See, e.g.*, *U.S. ex rel. Mayman v. Martin Marietta Corp*., 886 F. Supp. 1243, 1245–46 (D. Md. 1995) (rejecting waiver claim of company privilege over documents because, *inter alia*, the party seeking waiver was a former employee who kept the documents after his termination "as a personal secret cache for possible future use against his employer," and "not only failed to advise anyone" that he had the documents but "hid the fact" until the parties were in litigation).

*Third*, your proposed production moratorium until January 21, 2022 is unacceptable given the volume of potentially privileged documents in your January 11 production, and your reliance on cases faulting privilege claimants for not taking "aggressive steps to reacquire" documents. 2000 WL 1466495, at *27. Your January 11 production was so large it took a few days to upload

Alex Little
Page 8

and process for initial privilege review.  Preliminary search terms indicate that there are at least *16,000 potentially privileged documents* in the production, which is a universe exponentially greater than the hundred or so emails you indicated may be at issue last week.  Even if we could properly review and log all of these preliminary search results, the production may contain additional privileged information that your clients retained without authorization in 2019 and only recently disclosed as part of the drive containing what you estimated to be 1.45 million pages. Because your clients inexcusably failed to disclose their possession of these documents earlier, and also refused promptly to comply with our December 13 requests for return or production, your proposal that we review and log all potentially privileged documents by January 21 on penalty of further unauthorized disclosure is not feasible or defensible.

Accordingly, we reiterate our demand for confirmation by January 19 that your clients will: (i) make the drive available for forensic inspection this week; and (ii) secure for return to Amazon, and otherwise refrain from utilizing in any way, Amazon Material from the hard drive or otherwise pending completion of our privilege review and any agreement or Court order regarding your clients' access to the information.

***Amazon Initial Damages Disclosures & Offer to Supplement***.  Your December 28 letter asserted purported "deficiencies" in Amazon's initial damages disclosures and demanded that Amazon provide a supplemental "computation of each category of damages claimed" as well as "the documents or other evidentiary material … on which each computation is based."  On January 3, 2022, we disagreed with your asserted deficiencies,[10] but offered to "supplement the initial disclosures by or around January 21," reserving all rights to "additional supplementation as fact discovery unfolds."  We confirmed this offer of voluntary supplementation on our January 7 teleconference in accordance with district precedent and your clients' admitted familiarity with the damages and unjust enrichment demands already in the case record.[11]  As noted, Amazon reserves the right to further supplement its disclosures in accordance with facts that emerge in discovery.

---

[10]  All but two of the cases cited in your December 28 letter are out of district, and all are distinguishable from the circumstances here.  Each out-of-district cases involved damages disclosure issues deeper into the discovery process, and in most cases far deeper.  The EDVA decision in *Lathon v. Wal-Mart Stores E., LP* is likewise off point, and mentioned initial disclosures only in passing before adjudicating a motion to exclude certain damages evidence filed after discovery closed, and after defendant served and plaintiff did not adequately respond to interrogatories and RFPs. *See* 2009 WL 1810006, at *4 n.4 (E.D. Va. June 24, 2009) (addressing motion).  And your reliance on *Jaguar Land Rover* affirmatively undercuts your position because it found disclosure of computation of damages untimely only where they were first served in an expert report after fact discovery closed, and even then declined to exclude the damages evidence under Rule 37 because the defendant had the ability to cure the challenged surprise of the belated disclosure by engaging in additional discovery.  2020 WL 6817060, at *4 (E.D. Va. Nov. 3, 2020).

[11] Your letter's concession that your clients already have detailed information about Amazon's damages and unjust enrichment claims from the pleadings and extensive injunction record in this case further confirms the lack of any basis for your December 28 objections.  *See, e.g., U.S. ex rel. Bunk v. Birkart Globistics GmbH & Co.*, 2014 WL 2967940, at *3 (E.D. Va. June 30, 2014) (holding that plaintiff "adequately disclosed its intention to rely on" rate inflation theory because (i) its complaint contained allegations regarding the same and (ii) its initial disclosures "ma[d]e clear that [it] intended to claim [such] damages"); *Bresler v. Wilmington Tr. Co.*, 855 F.3d 178, 190 (4th Cir. 2017) (emphasizing that "[t]he purpose of Rule 26(a)" is "to allow litigants to adequately prepare their cases for trial and to avoid unfair surprise") (quotation marks omitted).

*(Cont'd on next page)*

Alex Little
Page 9

   ***Deposition Protocol, Subpoena Litigation, and Other Discovery Issues.*** We appreciate your transmission on January 14 of proposed edits to the draft deposition protocol in this matter, and look forward to discussing them this week along with the clawback issues above and other ongoing discovery developments including the Rule 45 litigation your clients' Colorado attorney initiated on January 13, 2022.   That litigation seeks to quash the subpoena we served for information relevant to your clients' claims and defenses in this action.  As noted, we are happy to meet and confer this week in an effort to identify an agreed path forward on the issues in the subpoena, as well as address grounds for transferring the Colorado subpoena litigation to the Eastern District of Virginia pursuant to FRCP 45(f).[12] *See, e.g.*, *Weddle v. Williams*, 2019 WL 1620815, at *1–2 (D. Colo. Apr. 15, 2019) (transferring to the Eastern District of Virginia a Rule 45 motion to quash a subpoena to a Denver attorney who represented an EDVA defendant in connection with  "enterprise" activity involving a "payday lending scheme").

   We look forward to hearing from you.

Sincerely,

Elizabeth Papez

cc:  All counsel of record

---

[12] Please note that Amazon has not yet been served with the papers from Colorado that would start the clock on its response period there.  But once this service is effected, Amazon will have seven days to respond and accordingly, we agree it would be most productive to talk as soon as possible this week.