**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| AMAZON.COM, INC. and AMAZON DATA SERVICES, INC., | |
|         Plaintiffs, | |
|     v. | |
| WDC HOLDINGS LLC dba NORTHSTAR COMMERCIAL PARTNERS; BRIAN WATSON; STERLING NCP FF, LLC; MANASSAS NCP FF, LLC; NSIPI ADMINISTRATIVE MANAGER; NOVA WPC LLC; WHITE PEAKS CAPITAL LLC; VILLANOVA TRUST; CASEY KIRSCHNER; ALLCORE DEVELOPMENT LLC; FINBRIT HOLDINGS LLC; CHESHIRE VENTURES LLC; CARLETON NELSON; JOHN DOES 1-20, | CASE NO. 1:20-CV-484-RDA-TCB |
|         Defendants. | |
| 800 HOYT LLC, | |
|         Intervening Interpleader Plaintiff, Intervening Interpleader Counter-Defendant, | |
|     v. | |
| BRIAN WATSON; WDC HOLDINGS, LLC; BW HOLDINGS, LLC, | |
|         Interpleader Defendants, | |
|     and | |
| AMAZON.COM, INC., and AMAZON DATA SERVICES, INC., | |
|         Interpleader Defendants, Interpleader Counter-Plaintiffs. | |

**PLAINTIFFS AMAZON.COM, INC. AND AMAZON DATA SERVICES, INC.'S
RESPONSE TO BRIAN WATSON'S MOTION TO COMPEL DISCOVERY**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ iii

INTRODUCTION .............................................................................................................. 1

BACKGROUND ................................................................................................................ 4

ARGUMENT ..................................................................................................................... 5

    I.   WATSON'S MOTION IS MOOT AND MERITLESS ........................................... 5

        A.   The Motion Inexcusably Seeks to Compel Documents Already Produced ........... 5

        B.   The Motion's Objections to Document Volume Are Also Baseless ..................... 7

    II.   WATSON NEVER RAISED, MUCH LESS EXHAUSTED, THE REMAINING  ISSUES IN HIS MOTION AS THE COURT'S RULES REQUIRE ................................................................................................................. 10

    III.  WATSON'S IMPROPER MOTION DOES NOT SUPPORT FEES OR COSTS ..................................................................................................................... 15

CONCLUSION ................................................................................................................ 17

# TABLE OF AUTHORITIES

Page(s)

CASES

*Basf Plant Sci., LP v. Commonwealth Sci. & Indus. Rsch. Org.*,
  2019 WL 8108060 (E.D. Va. July 3, 2019)............................................................................3

*U.S. ex rel. Carter v. Bridgepoint Educ., Inc.*,
  305 F.R.D. 225 (S.D. Cal. 2015) .........................................................................................11

*Davis v. 7-Eleven Inc.*,
  2019 WL 8323944 (E.D. Va. Mar. 1, 2019), *aff'd* 770 F. App'x 133 (4th Cir. 2019) ..............5

*Fred Hutchinson Cancer Rsch. Ctr. v. Branhaven, LLC*,
  No. 3:11-CV-710-JAG, 2011 WL 11565809 (E.D. Va. Dec. 23, 2011) ................................11

*Jenkins v. Wal-Mart Stores, Inc.*,
  2021 WL 1256907 (E.D. Va. Apr. 5, 2021) .................................................1, 3, 6, 10, 15, 16

*Ryan v. PDC Energy, Inc.*,
  2017 WL 5153403 (N.D.W. Va. June 28, 2017) .....................................................................5

*Smith v. U.S. Sprint*,
  19 F.3d 12 (4th Cir. 1994) ...................................................................................................13

*Stabilus, a Div. of Fichtel & Sachs Industries, Inc. v. Haynsworth, Baldwin, Johnson and
  Greaves, P.A.*,
  144 F.R.D. 258 (E.D. Pa. 1992).............................................................................................13

*Starr v. Hall*,
  2011 WL 13233574 (S.D.W. Va. May 25, 2011)....................................................................5

*Williams v. Sprint/United Mgmt. Co.*,
  230 F.R.D. 640 (D. Kan. 2005)...............................................................................................11

*Wilson v. Conair Corp.*,
  2015 WL 1994270 (E.D. Cal. Apr. 30, 2015)..........................................................................11

RULES

Fed. R. Civ. P. 26 .......................................................................................................................14

Fed. R. Civ. P. 37 ...........................................................................................................3, 15, 16

L. Civ. R. 37.........................................................................................................................15, 16

L. Civ. R. 7.........................................................................................................................1, 2, 9

iii

Plaintiffs Amazon.com, Inc. and Amazon Data Services, Inc. ("Amazon") hereby respond to the Motion To Compel filed by Defendant Brian Watson ("Defendant" or "Watson") on February 11, 2022, Dkts. 524, 545 ("Motion").

## INTRODUCTION

"Unnecessary discovery disputes requiring court intervention waste attorney time, cost their clients extra fees, and waste judicial resources." *Jenkins v. Wal-Mart Stores, Inc.*, 2021 WL 1256907, at *3 (E.D. Va. Apr. 5, 2021). Only days after withdrawing a motion to compel that violated this rule, Defendant Watson filed *another* such motion—the second one in less than a month.

As detailed below, the Motion seeks to compel discovery that Amazon already provided *before* the Motion was filed, as well as information Amazon had already agreed to provide or would have addressed in the conferral process if Watson had complied with Local Rule 7. On February 15, 2022, the Court directed the parties to try to resolve these issues by agreement. Amazon promptly reached out to defense counsel to schedule a conference that same day. In a meet-and-confer on the afternoon of February 16, defense counsel conceded that they had agreed to rolling productions and failed to explain the basis for filing the Motion on issues previously not discussed with Amazon. Amazon once again committed to further productions and indicated that it anticipated completing productions by February 25. Despite these assurances, defense counsel declined to commit to withdrawing the Motion. *See* Ex. 7. Instead, defense counsel responded, thirty-nine minutes before Amazon's filing deadline, with a demand for additional commitments and an offer only that Watson will move the hearing date from this week to next. Ex. 8. This demand is improper as it indicates that, once again, Watson intends to attempt to hold a hearing seeking a motion to compel attacking productions made *after* the motion was filed. *See* Dkt. 517.

To the extent Watson views the productions Amazon has committed to make next week as defi-cient, he is required to confer on those deficiencies and *then* move for the Court's intervention—he cannot hold a revolving hearing date to drop before the Court complaints neither ripe or nor raised in his motion.

Watson has thus forced Amazon to file this brief to protect its rights, further burdening the Court and wasting resources better spent on the actual discovery they seek.  This misconduct is particularly egregious because Defendant Watson was a party to the improper motion Defendants just withdrew, was sanctioned for discovery violations last year, Dkt. 330, and remains in contempt of this Court's orders as affirmed on appeal, Dkts. 318–19.  This record supports summary denial of the Motion, which fails on the merits for at least the following three reasons.

*First*, the Motion was filed without exhausting the meet-and-confer process under Local Rule 7, and seeks documents that Amazon has *already produced* as well as documents that it has already *committed to producing*.  Notably, Watson asks the Court to compel the production of "communications with the receiver" and "documents related to their computation of damages." Mot. 7.  But Amazon produced both categories of documents *before* the Motion was filed.  The receiver communications were produced on February 9, and documents relating to damages were produced on three separate occasions (January 24 and 25 and February 10).  Watson also asks the Court to compel the production of "communications with IPI."  Mot. 7.  But Amazon already committed to producing those communications (which support produced damages and mitigation evidence) before the Motion was filed.

*Second*, in an even more aggressive and improper move, the Motion asks the Court to compel Amazon to remedy alleged discovery deficiencies Defendant has *never* before raised.  No-tably, Watson has never objected to, or asked to meet and confer regarding, Amazon's "rolling"

2

productions, Mot. 3, which all parties rely upon to complete fact discovery.  Nor has he raised any valid basis for demanding that Amazon "commit to a date certain when responsive documents will be produced" *prior* to the Court-ordered close of fact discovery.  Mot. 5.  Nor has he asked Amazon about the availability of "meta data" for documents already produced, asked Amazon to produce "native" versions of certain documents, or asked Amazon about purported "redactions" to certain documents.  Mot. 5.  Because Watson "never discussed" these issues with Amazon prior to filing this motion—many of which would be addressed by the ESI protocol Amazon circulated by Defendants have refused to sign—his "conduct does not satisfy the requirement to meet and confer," *Jenkins*, 2021 WL 1256907, at *3, making this Motion all the more unnecessary.  The Motion is also premature as to the interrogatories that Watson has put at issue, which the parties were discussing up to the day before the Motion was filed.

*Third*, the Motion's presentation of the issues it improperly raises is highly misleading.  For example, the Motion fails to attach correspondence documenting Amazon's prior and promised productions, as well as Defendant's agreement with Amazon's rolling productions.  Instead, it attaches Defendants' self-serving correspondence and disregards key information from the Amazon correspondence it does attach.  *See* Dkt. 525-11 (Amazon's February 10 letter on interrogatories memorializing that the parties "agreed to meet and confer if any additional issues arise regarding Defendant's Interrogatories or Amazon's Objections and Responses thereto").  The agreement regarding rolling responses made particular sense here, because, as detailed below, the interrogatories concern many issues on which Defendants have more information than Amazon (including information they have refused to produce in violation of multiple Court orders).  In sum, the Motion is simply another "effort to mislead the Court into believing a motion was necessary

to obtain discovery relief Amazon had repeatedly and voluntarily agreed to provide, but Defendants improperly want to use as the basis for seeking Rule 37 fees and costs."  Dkt. 517 at 1–2.  If Watson does not immediately withdraw the Motion, it should be summarily denied and the Court should impose sanctions for ongoing discovery misconduct.  *See Basf Plant Sci., LP v. Commonwealth Sci. & Indus. Rsch. Org.*, 2019 WL 8108060, at *2 (E.D. Va. July 3, 2019) ("Trial courts have broad discretion when acting on a motion to compel.").

## BACKGROUND

On December 8, 2021, Defendants and Amazon submitted a joint proposed discovery plan, Dkt. 449, which the Court approved on December 15, Dkt. 455.  Defendants served Amazon with its first requests for production and first set of interrogatories on the afternoon of December 23, 2021.  Dkts. 525-2, 525-3.  Although Amazon was only required to serve objections (and *not* responses) by January 7, 2022, Amazon provided both on that date, cognizant that the parties would need time to meet and confer on several issues.  Dkts. 525-5, 525-6.  Indeed, in its responses, Amazon specifically offered to "meet and confer with Watson in a good-faith effort to address Watson's questions or concerns."  *See, e.g.*, Dkt. 525-5 (extending this offer "[t]o the extent that Watson disagrees with or does not understand any General or Specific Objection to an Interrogatory")); Dkt. 525-6 (same regarding objections to document requests).

Defendant subsequently requested a meet and confer, which the parties had on January 20, 2022.  During the meet and confer, Amazon offered to make rolling productions "each week," and Defendants *accepted* this standard protocol.  Ex. 1, E-mail from G. Calhoun (Jan. 20, 2022).  The parties thereafter exchanged letters and emails noting the status of the production and memorializing their discussions and agreements.  *See, e.g.*, *id.*; Ex. 2, Ltr. from R. Robertson to G. Calhoun (Jan. 25, 2022); Dkt. 525-11, Ltr. from R. Robertson to G. Calhoun (Feb. 10, 2022).  Defendant

agreed that a rolling production was appropriate.  Ex. 1.  Since then, Amazon has diligently fol-lowed the agreed protocol, making productions on January 26, February 2, February 7, February 8, and February 9, as well as producing documents received from third parties on January 26, January 28, February 3, and February 8.

Despite these agreements and cooperation from Amazon, Defendant Watson filed the Mo-tion without conferring (or even alerting) Amazon to alleged deficiencies that either do not exist, or could have been easily resolved in the conference process.

**ARGUMENT**

## I.   WATSON'S MOTION IS MOOT AND MERITLESS

### A.   The Motion Inexcusably Seeks to Compel Documents Already Produced

The Motion alleges that three "categories of documents" are "missing entirely" from Am-azon's productions: (i) communications with IPI; (ii) communications with the receiver; and (iii) documents related to Amazon's computation of damages.  Mot. 5.  These allegations are flat-out false.  Amazon has already produced or promised to produce those categories of documents.  Accordingly, the Motion's request to compel such productions should be summarily "denied as moot."  *Starr v. Hall*, 2011 WL 13233574, at *1 (S.D.W. Va. May 25, 2011); *see also Ryan v. PDC Energy, Inc.*, 2017 WL 5153403, at *1 (N.D.W. Va. June 28, 2017) (motion to compel was moot after supplemental responses); *Davis v. 7-Eleven Inc.*, 2019 WL 8323944, at *4 (E.D. Va. Mar. 1, 2019), *aff'd* 770 F. App'x 133 (4th Cir. 2019) (motion to compel was moot when available documents were sufficient to achieve objective of pending motion).  The Motion's demand for these documents also raises serious questions about Watson's lack of diligence and potential bad faith for several reasons.

***First***, Amazon produced all communications with the receiver on February 9—two days before the Motion was filed.  Accordingly, Watson either did not review Amazon's production

before filing the Motion, or he did review it and made willful misrepresentations about its contents. Either way, the Motion's request to compel these documents is meritless because they have already been produced. *See Starr*, 2011 WL 13233574.

**Second**, Amazon committed to producing communications with IPI before the Motion was filed, and is currently in the process of gathering those documents. The Motion's request to compel this production is thus untimely and baseless, particularly because Watson never conferred with Amazon about the planned production date. Had he done so, Amazon would have responded that it plans to produce those documents this week, before Friday, February 18. The Motion's request to compel this production is unnecessary and improper. *See Jenkins*, 2021 WL 1256907, at *3.

**Third**, Amazon's most recent damages computations and productions on January 21, January 24, January 25 and February 10 *include* documents regarding Amazon's renegotiation of Northstar projects that the Motion baselessly asserts are "[a]bsent" from Amazon's productions. Mot. 7. The Motion's demand for such information is also improper because Defendant Watson never addressed it in the conference process. This was not for lack of an opportunity to do so. Indeed, Defendant Carleton Nelson requested additional information regarding damages on January 28, 2022, which Amazon promptly provided on February 10. But Watson and Northstar have been almost entirely silent on this issue, noting in a one-sentence email that "[i]t is important that any damages calculations from Plaintiffs account for the reported Amazon sales transactions with IPI involving the Manassas and Quail ridge properties, on 12/29/21 and 12/30/21." Ex. 3, e-mail from Stanley Garnett (Feb. 7, 2022). Amazon took that sentence at its word and produced on February 10 documents evidencing the Manassas and Quail Ridge transactions. Watson never attempted to confer on this issue, and raised no objections or alleged deficiencies before filing the Motion seeking fees. If he had, Amazon would have explained that although Amazon has timely

produced all that it has to date, it may produce additional documents on the Northstar transactions before the close of discovery because other *Defendants* have more documents about them than Amazon does. Notably, Defendant Nelson retained—improperly in violation of Amazon contracts, policies, and independent laws—approximately one million pages of Amazon documents that Amazon has been reviewing for privilege and authorizing for production to Watson as responsive to the issues in this case.

**B.    The Motion's Objections to Document Volume Are Also Baseless**

After erroneously demanding production of the specific document categories addressed above, Watson makes a more generic claim that Amazon's productions are "deficient" because Amazon "has thus far produced approximately 7,300 documents,"[1] which Watson argue represents "only a fraction of the documents responsive to Defendants' discovery." Mot. 3, 5, 11. This argument is procedurally unexhausted, legally unsupported, and meritless. The difference in volume between Amazon's and Defendants' production in fact reflects three undisputed record facts that simply highlight the impropriety of Watson's Motion.

*First*, Amazon, unlike Defendants, has properly confined its productions to relevant and responsive documents. This approach accords with the federal rules, and minimizes the review "burden" to which Watson separately (and also baselessly) objects.[2] In contrast, Defendants have consistently dumped large volumes of non-responsive information on Amazon in an effort to frustrate progress of this case while maximizing cost and burden to the Plaintiffs. Notably, the Watson

---

[1] To date, Amazon has produced at least 7,336 documents consisting of at least 61,712 pages, and the productions have occurred on a rolling basis, as was agreed upon by the parties.

[2] Defendant's complaint that Amazon has not produced enough documents is at odds with their claim that Amazon's productions impose an undue "burden" on Defendants because the productions are too voluminous for Defendants to review individually. Mot. 7. As discussed below this argument is also meritless.

and Northstar productions the Court repeatedly ruled incomplete and ultimately sanctionable last year consisted of over 250,000 documents (nearly one million pages), most of which were nonresponsive. *E.g.*, Dkt. 286–30 (Jimmy Johns sandwich advertisement). Indeed, although Amazon continues to analyze it, Watson's latest production from January also appears to consist mostly of irrelevant documents, even as the Receiver's work confirms that he has long possessed responsive information he continues to withhold in violation of discovery rules and multiple court orders.

*Second*, Defendants have more relevant documents than Amazon does because this case is about how *Defendants* (not Amazon) perpetrated a fraud and racketeering scheme that they successfully concealed for years until (in late 2019) one of their former employees reported it. Dkt. 150. As a result of this fraud and deception, Amazon had no reason to suspend its normal business and document-retention policies on many of the relevant communications and transactions in suit before it began investigating the matter and issued an accompanying hold in the wake of the confidential informant's disclosure. Nonetheless, Amazon has worked diligently to try to locate and produce thousands of documents responsive to Defendant's requests. But the evidence of Defendants' unlawful conduct—including and particularly their communications using social media and personal account such as What'sApp and Gmail, as well as personal texts and dropboxes, as well as shell entities, wire transfers, and verbal agreements (some of which were recorded by cooperators or Defendants themselves)—are all within *Defendants*' possession, custody, or control. Accordingly, the bulk of the discovery in this action can and should come from them, not from Amazon. Their discovery strategy to date, including their sanctioned conduct last year and two recently and improper motions, seems to be to withhold the evidence of misconduct they possess, and then claim that Amazon's inability to produce that proves that its "claims, upon which this

Court based its preliminary injunction and other punitive rulings, were false." Mot. 2.  The Court should summarily reject this abusive and baseless tactic.

*Third*, Watson's complaints about volume ignore the fact that Defendants have not just the bulk of responsive information in this case, but also the bulk of potentially responsive *Amazon* information, tens of thousands of pages of which have already been produced but the Motion improperly ignores.  The reason this Amazon information has come from the defense side is that Defendant Carleton Nelson retained—in violation of Amazon contracts, policies, and independent legal obligations—a personal hard drive containing over 100,000 documents (approximately *one million pages*) of Amazon documents after his 2019 termination from the company.  Reserving all rights with respect to this unlawful document possession, Amazon has conditionally approved the use and production of these documents by Nelson to Watson and other Defendants as allegedly necessary to their defense of this case. Ex. 4, Ltr. from C. Barrett to A. Little (Feb. 2, 2022).  Many of these documents are directly responsive to Watson's requests, and the Motion's failure to mention them is at best misleading and a disservice to the Court.

These undisputed record facts alone require denial of Watson's Motion.  And Watson's conclusory assertion that relief is warranted because Amazon waited to receive requests for production before "pulling and reviewing the potentially responsive documents," Mot. 5, is also legally and factually baseless.  Not surprisingly, Watson cites no authority obligating Amazon to prepare productions before receiving requests and negotiating scope and other objections, particularly in a case like this where the Defendants have far more information about the claims in issue than Amazon does.

## II.   WATSON NEVER RAISED, MUCH LESS EXHAUSTED, THE REMAINING ISSUES IN HIS MOTION AS THE COURT'S RULES REQUIRE

As Defendant's Motion states, Amazon has actively engaged in meet-and-confer discussions, and those discussions are still ongoing.  *See* Mot. 3–4 (conceding meet-and-confer discussions on January 20 and 28, and a letter concerning the same on February 10).  But Watson *never* raised several issues in his Motion in these conferences or otherwise, and inexcusably failed to exhaust others.  These failures violate Local Rule 7 and independently compel summary denial of the Motion as at best premature.

*Completion Date.*  Defendant complains that Amazon has "refuse[d] to commit to a date when their productions will be complete."  Mot. 5.  But Watson has never even *asked* for such a commitment.  Nor does he cite any authority requiring one before the close of fact discovery.  To the contrary, Watson accepted Amazon's rolling productions, of which there have been six.  Ex. 3.  Further, and in any event, if Watson *had asked* for a date (as Amazon expressed in the meet-and-confer that belatedly took place on February 16), Amazon would have assured them that its productions of responsive, non-privileged information presently within its possession, custody or control would be substantially complete before the February 24 date his Motion requested without notice or supporting authority.  There was thus no need to use judicial and party resources on this motion simply to confirm a point that could have easily been confirmed in a letter between counsel.  *See Jenkins*, 2021 WL 1256907, at *3.

*Metadata.*  Defendant also complains that metadata is missing from Amazon's productions, claiming that this is "in violation of the governing standards (and the Parties' express agreement)."  Mot. 5.  That is wrong on the facts and the law.  Defendant cites *a single document* which he alleges is missing metadata (AMZ-CVL-006773), but a review of that document within Amazon's

10

records shows that no metadata was "scrubbed" as Defendant alleges.  And Defendant's cases do not stand for a requirement to produce metadata, as they assert.

To the extent that there are other documents whose metadata Defendant has questions about, it was incumbent on him to raise the issue with Amazon rather than run to Court to file a motion without conferral.  It is premature and improper for Watson to raise this issue when he has never pursued it before and certainly never conferred with Amazon about it.[3]

On January 28, Defendant emailed Amazon purporting to summarize the parties' meet and confer.  Defendant noted that some documents in Amazon's initial production were missing metadata.  Ex. 5.  There was no suggestion that this was a wide-ranging, serious issue.  The e-mail was unspecific and raised the issue only in the context of "we are still looking into it" and "we'll let you know if there are other issues," and finished by asking that *future* productions have the proper metadata: "I am flagging it now in hopes that you can ensure that any future productions do not suffer from the same problems."  *Id.*  No remedy was requested at all.  And Defendant never raised the issue again, either to discuss the "scope of the problem" or to ask Amazon to provide metadata for past productions.  Instead of requesting the information, Defendant quietly rushed to Court without any conferral on this issue, creating yet another needless motion when a simple request would have resulted in a loss of far less time and money on the part of the parties.

Defendant is also wrong on the law.  He cites two out-of-circuit cases for the proposition that "meta data should be retained unless the party objects to the production of metadata or the parties agree not to produce metadata."  Mot. 6.  But even Defendant's cases acknowledge that

---

[3]  Defendant takes issue with the fact that some of Amazon's production has two Bates stamps on it. Mot. 6.  This is so because Amazon produced to Watson the same documents it produced to the government, in the exact format produced to the government, in response to Requests 9 and 12 in his RFPs.

there is no hard and fast rule on producing metadata. *See Williams v. Sprint/United Mgmt. Co.*, 230 F.R.D. 640, 649 (D. Kan. 2005) ("In the few cases where discovery of metadata is mentioned, it is unclear whether metadata should ordinarily be produced as a matter of course in an electronic document production."); *Wilson v. Conair Corp.*, 2015 WL 1994270, at *4 (E.D. Cal. Apr. 30, 2015) ("[T]he extent to which the requested party must supply metadata depends on the form in which the ESI whose metadata is sought is kept in the ordinary course of business." (quoting *U.S. ex rel. Carter v. Bridgepoint Educ., Inc.*, 305 F.R.D. 225, 238 (S.D. Cal. 2015)). And there is certainly no clear-cut rule in this Court, either. *See, e.g.*, *Fred Hutchinson Cancer Rsch. Ctr. v. Branhaven, LLC*, 2011 WL 11565809, at *1 (E.D. Va. Dec. 23, 2011) ("General ESI production requests under Federal Rules of Civil Procedure 34 and 45 shall not include metadata absent a showing of good cause."). The fact-dependent nature of producing metadata is even more reason to have conferred with Amazon before filing this motion.

*Native Format of Documents.* Similarly, Defendant never conferred with Amazon on missing native versions of documents. Though Defendant's motion alleges that "many documents" are missing their native versions, he provide no specificity about which documents they are referring to. This is another issue that could easily have been rectified to the extent the documents they are thinking of are native documents in Amazon's possession, custody, or control. But again, Defendant never raised the issue prior to his Motion and even after this filing, Defendant has *failed* to put Amazon on notice at all as to which documents he refers.

*Purported Redactions and Missing Documents.* Continuing in the same vein, Defendant's Motion complains of unexplained redactions and missing documents, but these issues have not,

prior to this motion, been mentioned to Amazon.[4]  If Watson believes some aspect of Amazon's responses to be deficient, it is reasonable that he bring the alleged deficiency to Amazon's attention so it can be cured, rather than play a game of "gotcha" with premature motions designed to complicate discovery, waste time and money, and hassle Plaintiffs.

    ***Interrogatories.***  Finally, Defendant's Motion with regard to the interrogatory responses is also at best premature.  The parties have had one meet and confer on the interrogatories, after which Amazon sent a letter to Watson responding to the queries Watson had previously made, and noting that during the meet and confer the parties agreed to continue to meet and confer on any issues on which they might disagree.  Ex. 6.  But again, instead of picking up the phone, Watson filed this Motion without conferral.

    Watson's complaints about the substance of the interrogatory responses are also unfounded, and the cases that he cites to support his arguments relating to the interrogatories are inapposite.  For example, while it is true that in *Smith v. U.S. Sprint*, the Court observed in a footnote that the plaintiff referred to the complaint for its interrogatory responses, the plaintiffs' discovery responses were woefully insufficient for a variety of other reasons, not least that the plaintiff failed to produce *any* documents or responses prior to sitting for a deposition and because of plaintiffs' counsel's repeated failures to abide by motions to compel, appear in court, or otherwise participate in the discovery process.  19 F.3d 12 at *4 n.11 (4th Cir. 1994).  *Stabilus, a Div. of Fichtel & Sachs Industries, Inc. v. Haynsworth, Baldwin, Johnson and Greaves, P.A.*, apart from

---

[4]  The only documents Watson has identified are neither missing nor improperly redacted.  AMZ-CVL-055573 was produced on January 24, 2022.  Watson may have overlooked that document among the remainder of Amazon's production.  AMZ-CVL-055574 is a document that appears to contain redline edits but the version produced does not show the redline edits.  These unintentional oversights or omissions are properly remedied through a meet-and-confer, not an unnecessary motion to compel.

being decades old and out-of-district, is also distinguishable.  144 F.R.D. 258 (E.D. Pa. 1992).  The plaintiff there improperly answered interrogatories simply by referring to the complaint.  In stark contrast, Amazon's answers here provided paragraph numbers to the verified Complaint—many of which refer to specific document exhibits from past pleadings the parties *agreed* they need *not* re-produce—and offered to address any other concerns that Watson  has with the responses.

In sum, cases holding that parties cannot answer interrogatories "by *merely* repeating the allegations of the complaint," *Johnson and Greaves, P.A.*, 144 F.R.D. 258, 263-64 (E.D. Pa. 1992) (emphasis added), have no application here.  The Motion provides no basis for holding otherwise.

Again, Amazon's case hinges on *Defendants'* conduct.  Yet the Motion proceeds on the unsupported suggestion that Amazon is required to rely on Amazon personnel, rather than Defendants or third parties, to prove its case.  Mot. 10-11 (complaining that Amazon's interrogatory responses do not identify a sufficient number of Amazon personnel).  That is incorrect, particularly where, as here, the Defendants include the former company insiders who orchestrated the contested fraud and racketeering scheme in suit that Defendants hid from the company for years.

Further, Watson's Motion confuses initial disclosure standards with discovery responses. Mot. 11 (citing "Plaintiffs' Initial Disclosures at 7").  Initial disclosures require the identity of individuals the "disclosing party *may use to support its claims or defenses*, unless the use would be solely for impeachment.  Fed. R. Civ. P. 26(a)(1) (emphasis added).  In accordance with this rule, Amazon properly identified the Amazon executive the Motion cites,  Mot. 11, *as well as* the many individuals in Defendants' disclosures.  That disclosure was sufficient under Rule 26(a)(1), and provides no basis for challenging Amazon's interrogatory responses.  Mot. 10-11.  The Motion all but concedes this is focusing on whether Amazon has disclosed all personnel with "*any knowledge of any of the issues and allegations raised in the Complaint*."  *Id*.  To the extent that is

what the interrogatories seek, they are objectionable because such a requests is unnecessary, over-broad, unduly burdensome, and vastly disproportionate to the needs of this case, particularly on the Court's current discovery schedule.  And to the extent the interrogatories seek more modest and proportional disclosures, Amazon has answered them and is happy to confer on open issues.

The record thus belies the Motion's claim that discovery relief is warranted because "Plaintiffs have identified exactly one Amazon employee with *knowledge of the allegations* underlying their Complaint," and that "Plaintiffs have not identified even one other current Amazon employee with *any knowledge of … information covered by Mr. Watson's interrogatories*," and "only one current Amazon employee has *any knowledge of any of the issues and allegations raised in the Complaint*."  Mot. 10–11 (emphasis added).  Amazon has identified *many* people with relevant knowledge of the case in accordance with specific discovery obligations.  And Watson cannot turn those proper disclosures into "deficiencies" by unhinging them from the rules and saying they fail to disclose everyone at Amazon who might have "any knowledge of any of the issues and allegations raised in the Complaint."  Mot. 11.  Again, the individuals most knowledgeable about how Defendants perpetrated the fraud and racketeering scheme at issue in this suit are Defendants Carleton Nelson and Casey Kirschner—the former Amazon employees who orchestrated the scheme and successfully concealed it from the company for years.

III.   **WATSON'S IMPROPER MOTION DOES NOT SUPPORT FEES OR COSTS**

Nowhere in Defendant's motion, memorandum in support thereof, or proposed order does he explicitly ask the Court to order Amazon to pay their attorney's fees and other reasonable expenses relating to this motion.  Defendant does, however, quote in his motion the relevant language from Rule 37 that, in certain circumstances, requires responding parties to "pay the movant's reasonable expenses incurred in making the motion," *see* Mem. ISO Mot. 4, so Amazon addresses this issue out of an abundance of caution.

Defendant is not entitled to recover expenses or attorney's fees in connection with this motion. The Court may award costs under Rule 37 only when the responding party's "conduct *necessitated* the motion" to compel. Fed. R. Civ. P. 37(a)(5)(A). When, by contrast, "the movant filed the motion *before* attempting in good faith to obtain the disclosure or discovery without court action," "the court *must not* order this payment." *Id.* The Court's "local rules go further," requiring parties to meet and confer "in person or by telephone to explore with opposing counsel the possibility of resolving the discovery matters in controversy." *Jenkins v. Wal-Mart Stores, Inc.*, Civ. No. 2:19-cv-271, 2021 WL 1256907, at *2-3 (E.D. Va. Apr. 5, 2021) (discussing L. Civ. R. 37(E)).

Defendant's failure "to engage in a good faith effort to resolve this dispute without court intervention" precludes any attempt to recover the expenses relating to this motion. *See id.* at *2. **First**, as discussed above, Defendant did not meet and confer with Amazon *at all* about several of the items raised in his motion to compel. *See infra* at 9–15. Under this Court's precedent, Defendant's failure to do so makes them ineligible to recover expenses or attorney's fees relating to those items. *Jenkins*, 2021 WL 1256907, at *4.

**Second**, Defendant fell far short of his obligation to avoid unnecessary court intervention even as to those items about which he did meet and confer with Amazon before filing this motion. As discussed above, Amazon has already produced or promised to produce the documents sought by this motion. Defendant's filing of this motion despite that fact falls far short of the "good faith" efforts to resolve disputes "without court action" that Rule 37 requires. Defendant's conduct also conflicts with this Court's requirement that counsel "confer to decrease, *in every way possible the filing of unnecessary discovery motions*," L. Civ. R. 37(E) (emphasis added), which "waste attorney time, cost their clients extra fees, and waste judicial resources," *Jenkins*, 2021 WL 1256907,

at *3.  Filing a motion to compel items that the opposing party has *already* repeatedly and volun-

tarily committed to provide is hardly an attempt to avoid the filing of unnecessary motions.  To

the contrary, it is precisely the type of "unnecessary discovery motion[]" and wasteful approach

that would properly subject *Defendants* "to appropriate remedies and sanctions, including the im-

position of costs and counsel fees." L. Civ. R. 37(G).

## CONCLUSION

Defendant's Motion should be denied on the papers in light of the deficiencies in the Mo-

tion.

Dated:  February 16, 2022                    Respectfully submitted,

                                             */s/ Michael R. Dziuban*

Veronica S. Moyé (*pro hac vice*)           Elizabeth P. Papez (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP                 Patrick F. Stokes (*pro hac vice*)
2001 Ross Avenue, Suite 2100                Claudia M. Barrett (*pro hac vice*)
Dallas, TX 75201                            Michael R. Dziuban (Va. State Bar No. 89136)
Telephone:  (214) 698-3100                  GIBSON, DUNN & CRUTCHER LLP
Facsimile:  (214) 571-2900                  1050 Connecticut Avenue, N.W.
vmoye@gibsondunn.com                        Washington, D.C. 20036-5306
                                            Telephone:  (202) 955-8500
                                            Facsimile:  (202) 467-0539
                                            epapez@gibsondunn.com
                                            pstokes@gibsondunn.com
                                            cbarrett@gibsondunn.com
                                            mdziuban@gibsondunn.com

*Counsel for Plaintiffs Amazon.com, Inc. and Amazon Data Services, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on February 16, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system.  I will then send the document and a notification of such filing (NEF) to the following parties via U.S. mail to their last-known address and by email, where noted:

Casey Kirschner
635 N. Alvarado Lane
Plymouth, MN 55447
By email: casey.kirschner@gmail.com

*s/ Michael R. Dziuban*
Michael R. Dziuban
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
Telephone:  (202) 955-8500
Facsimile:  (202) 467-0539
mdziuban@gibsondunn.com

*Counsel for Plaintiffs Amazon.com, Inc. and Amazon Data Services, Inc.*