**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| AMAZON.COM, INC. and AMAZON DATA SERVICES, INC., | |
|       Plaintiffs, | |
|     v. | |
| WDC HOLDINGS LLC dba NORTHSTAR COMMERCIAL PARTNERS; BRIAN WATSON; STERLING NCP FF, LLC; MANASSAS NCP FF, LLC; NSIPI ADMINISTRATIVE MANAGER; NOVA WPC LLC; WHITE PEAKS CAPITAL LLC; VILLANOVA TRUST; CASEY KIRSCHNER; ALLCORE DEVELOPMENT LLC; FINBRIT HOLDINGS LLC; CHESHIRE VENTURES LLC; CARLETON NELSON; JOHN DOES 1-20, | CASE NO. 1:20-CV-484-RDA-TCB |
|       Defendants. | |
| 800 HOYT LLC, | |
|       Intervening Interpleader Plaintiff, Intervening Interpleader Counter-Defendant, | |
|     v. | |
| BRIAN WATSON; WDC HOLDINGS, LLC; BW HOLDINGS; LLC, | |
|       Interpleader Defendants, | |
|    and | |
| AMAZON.COM, INC., and AMAZON DATA SERVICES, INC., | |
|       Interpleader Defendants, Interpleader Counter-Plaintiffs. | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR PROTECTIVE ORDER**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ........................................................................................................ iii

FACTUAL BACKGROUND ........................................................................................................ 2

LEGAL STANDARD .................................................................................................................... 4

ARGUMENT .................................................................................................................................. 5

    I.    The Apex Doctrine Protects All Three of the Apex Executives. .................................... 7

    II.   The Apex Executives Have No Knowledge Relevant to This Case Aside from Information That Is Also Known to Other Amazon Executives and Employees. .......... 8

    III.  Defendants Have Not Yet Exhausted Other Potential Sources of the Information They Seek from the Apex Executives. ....................................................... 11

CONCLUSION ............................................................................................................................. 14

**TABLE OF AUTHORITIES**

<u>**Cases**</u>

*Bridge v. Phoenix Bond & Indem. Co.*,
   553 U.S. 639 (2008)................................................................................................ 9

*Erdmann v. Preferred Research, Inc.*,
   852 F.2d 788 (4th Cir. 1988) ............................................................................... 4

*Estate of Livingston v. Cnty. of Kern*,
   320 F.R.D. 520 (E.D. Cal. 2017) ................................................................... 6, 8, 12

*Harapeti v. Television Stations*,
   2021 WL 3932424 (S.D.N.Y. 2021)..................................................................... 7

*In re Lumber Liquidators Chinese-Manufactured Flooring Prods.*
   *Mktg., Sales Pracs. & Prods. Liab. Litig.*,
   2018 WL 3934396 (E.D. Va. Aug. 16, 2018)............................................. 5, 6, 8, 12

*Neder v. United States*, 527 U.S. 1 (1999)................................................................ 9

*Performance Sales & Mktg. LLC v. Lowe's Cos., Inc.*,
   2012 WL 4061680 (W.D.N.C. Sept. 14, 2012) .............................................. *passim*

*Rembrandt Diagnostics, LP v. Innovacon, Inc.*,
   2018 WL 692259 (S.D. Cal. Feb. 2, 2018) ........................................................ 8

*RLI Ins. Co. v. Nexus Servs., Inc.*,
   2020 WL 2311668 (W.D. Va. May 8, 2020)................................................... *passim*

*Seattle Times Co. v. Rhinehart*,
   467 U.S. 20 (1984)............................................................................................. 4

*Sharma v. Lockheed Engineering & Mgmt. Servs. Co.*,
   1988 WL 118154 (4th Cir. Nov. 7, 1988)........................................................ 10

*Smithfield Business Park LLC v. SLR Int'l Corp.*,
   2014 WL 547078 (E.D.N.C. Feb. 10, 2014)................................................... *passim*

*Sun Capital Partners, Inc. v. Twin City Fire Ins. Co.*,
   310 F.R.D. 523 (S.D. Fla. 2015)............................................................... 7, 12, 13

*Younes v. 7-Eleven, Inc.*,
   2015 WL 12844446 (D.N.J. Aug. 19, 2015) ...................................................... 8

**Statutes**

Fed. R. Civ. P. 26(b)(2)(C) .......................................................................................... 5

Fed. R. Civ. P. 26(c) ..................................................................................... 5, 10, 11

Fed. R. Civ. P. 30(b)(6) ................................................................................................ 13

Pursuant to Federal Rule of Civil Procedure 26(c), Plaintiffs Amazon.com, Inc. and Amazon Data Services, Inc. ("Plaintiffs" or "Amazon") respectfully move for a protective order precluding the depositions of three of Amazon's highest-ranking current and former executives, who have no unique personal knowledge pertaining to any disputed fact or issue in this litigation.

## INTRODUCTION

As this Court is aware, this action involves an elaborate fraud and kickback scheme targeting more than $500 million of Amazon real estate development projects in Virginia.  Amazon has alleged that Defendants, all of whom are sophisticated professionals, used commercial real estate transactions and a network of shell entities to disguise their criminal activities, which included wire fraud, honest services fraud, money laundering, and other unlawful acts.  As detailed in Amazon's Verified Second Amended Complaint, Dkt. 150, this scheme unjustly enriched Defendants at the expense of Amazon and other outsiders to the conspiracy.

Against the backdrop of these claims, Defendants seek to depose nearly a dozen current and former Amazon executives and employees in this action.  *See* Ex. 1.  Three of those individuals—Andrew Jassy, Peter DeSantis, and Teresa Carlson—are among Amazon's highest-ranking current and former executives, who have no unique personal knowledge of the transactions at issue in this litigation.  Defendants have also informally advised counsel for Amazon that they intend to depose Amazon pursuant to Federal Rule of Procedure 30(b)(6), which will require Amazon to produce individuals with knowledge of the topics specified in the deposition notice. Amazon has not objected to the Rule 30(b)(6) deposition, nor does it object to the majority of the Amazon executive and employee depositions that Defendants have noticed.

But, Defendants are not entitled to depose current and former senior Amazon executives who lack unique knowledge relevant to the case, particularly given that Defendants can obtain any

relevant information they need through a deposition of Amazon under Rule 30(b)(6) and/or the depositions of lower ranking current and former Amazon employees they have noticed.  The Court should issue a protective order prohibiting Defendants from compelling Andrew Jassy, Peter DeSantis, or Teresa Carlson to be deposed in this matter.

## FACTUAL BACKGROUND

Mr. Jassy is Amazon's current President and Chief Executive Officer.  *See* Declaration of Andrew Jassy ("Jassy Decl.")  ¶ 1.  During the entirety of the time period relevant to Amazon's claims, he served as CEO of Amazon Web Services, an Amazon subsidiary with currently more than 90,000 employees.  *Id.* ¶ 2.  As a top-level executive, Mr. Jassy had only very limited involvement in real estate transactions of the type relevant to Amazon's claims. *Id.* ¶¶ 3–5.  Under Amazon policies in effect at the time, Mr. Jassy approved real estate purchase or lease contracts with a spend over a certain threshold only after several layers of review and approval by relevant executives, managers, and business professionals more directly involved in the oversight and execution of the transactions at issue.  *Id.* ¶¶ 4–5.  His authorization of those expenditures relied entirely on information provided to him by those subordinates at Amazon.  Those other Amazon executives and employees include Keith Klein, Eugene Choi, Karen Davenport, Joe Minarik, and Chris Vonderhaar, whom Defendants have noticed for deposition but not yet deposed.[1]  *See id.* ¶¶ 4–5; *see also* Ex. 1.

---

[1]  Keith Klein is Managing Principal, Amazon Web Services ("AWS") Americas Real Estate Acquisition and Development.  Eugene Choi was Finance Director, AWS Infrastructure Global Expansion and Networking from May 2017 until January 2019.  Karen Davenport was Director of Global Real Estate and Development from July 2017 until October 2019.  Joe Minarik was Director, AWS Data Center Supply until December 2021.  Chris Vonderhaar is Vice President of Data Center Planning, Delivery and Operations.  These individuals provided Mr. Jassy and Mr. DeSantis with inputs in connection with the contract approval process.

Mr. DeSantis is Senior Vice President of Utility Computing and Applications at Amazon Web Services.  Declaration of Peter DeSantis ("DeSantis Decl.") ¶ 1.  During the entirety of the time period relevant to Amazon's claims, he served as Vice President (and later Senior Vice President) of Global Infrastructure at Amazon Web Services.  *Id.* ¶ 2.  Like Mr. Jassy, Mr. DeSantis had limited involvement in the real estate transactions of the type at issue in this case, and has no unique personal knowledge of those transactions relevant to Amazon's claims.  *Id.* ¶¶ 3–4.  He had no direct supervisory authority over any of the Defendants, and any knowledge he has of the transactions at issue in this case derives from other, less senior executives at Amazon who were more actively involved in those transactions, including the five current and former Amazon employees whom Defendants have noticed for deposition but not yet deposed.  *Id.* ¶¶ 3–5; *see also* Ex. 1.

Ms. Carlson is a former Vice President of Worldwide Public Sector and Industries at Amazon Web Services.  Declaration of Teresa Carlson ("Carlson Decl.") ¶ 2.  She now is President and Chief Growth Officer of Splunk, a global software company.  *Id.* ¶ 1.  In her role as Vice President of Worldwide Public Sector and Industries, Ms. Carlson had no involvement in or firsthand knowledge of the transactions relevant to Amazon's claims.  *Id.* ¶¶ 3–4.  She had no direct supervisory authority over any of the Defendants, and she has no unique personal knowledge relating to any real estate lease or purchase transactions that Amazon undertook during her tenure. *Id.* ¶¶ 3–5.

Through counsel, Amazon timely sought to meet and confer with Defendants concerning the deposition notices.  Ex. 2, at 4–8.  During the meet and confer, Amazon asked Defendants to clarify the subject matter on which they believe Mr. Jassy, Mr. DeSantis, and Ms. Carlson have unique personal knowledge.  *See id.* at 11–12.  Defendants advised that they believe Mr. Jassy and

3

Mr. DeSantis to have knowledge because their names appear on documents within the approval process for the real estate transactions at issue. *Id*. As to Ms. Carlson, Defendants indicated that they seek testimony concerning Amazon's bid for a multi-billion dollar government contract concerning the federal government's Joint Enterprise Defense Infrastructure (JEDI), which has no relevance whatsoever to Amazon's claims against Defendants or any cognizable defenses that Defendants may have to those claims and is not mentioned in the Complaint, or named in the Defendants' Answers. *Id.* at 12.

Following the parties' meet and confer, Amazon wrote to Defendants to reiterate its concerns and to request that they withdraw the notices to Mr. Jassy, Mr. DeSantis, and Ms. Carlson. *Id.* at 11–12. Defendants refused. Ex. 3, at 2. Defendants contended that Mr. Jassy and Mr. DeSantis have knowledge of the transactions and approvals relevant to Amazon's claims, and that they would be able to testify about "changes and adjustments" that were made to that process at some unspecified time. *Id.* Defendants' reply failed to acknowledge the self-evident fact that any such "changes and adjustments" to Amazon's processes could not have been made without the knowledge or involvement of other Amazon executives and employees who were more actively involved in the relevant transactions, or that this information could be obtained through a Rule 30(b)(6) deposition. *See id.* Defendants also declined to withdraw the notice of deposition of Ms. Carlson, though they offered no additional detail or support for their incorrect contention that she is a proper deponent. *See id.*

## LEGAL STANDARD

"Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984); *Erdmann v. Preferred Research, Inc.*, 852 F.2d 788, 792 (4th Cir. 1988). The court

may take steps to prevent "annoyance, embarrassment, oppression, or undue burden or expense," including forbidding the discovery requested and issuing a protective order.  Fed. R. Civ. P. 26(c). Additionally, under Rule 26(b)(2), the court "must limit the frequency or extent of discovery . . . if it determines that . . . the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C).

## ARGUMENT

The depositions that Defendants seek are improper and should be precluded.  Even under the permissive approach to discovery contemplated by the Federal Rules, the "broad rule allowing liberal discovery does not necessarily bestow upon a party the right to have his or her attorney depose a highly ranked corporate executive." *Performance Sales & Mktg. LLC v. Lowe's Cos., Inc.*, 2012 WL 4061680, at \*3 (W.D.N.C. Sept. 14, 2012).  Rather, as a safeguard against foreseeable abuses of the discovery process, a party seeking to depose a witness at the apex of an adversary's corporate structure—like Mr. Jassy, Mr. DeSantis, or Ms. Carlson—must satisfy particular requirements in order to show that the burdens imposed by the deposition are reasonable and proportional to the needs of the case.  *See In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Pracs. & Prods. Liab. Litig.*, 2018 WL 3934396, at \*1, 4–5 (E.D. Va. Aug. 16, 2018); *see also, e.g.*, *Performance Sales*, at \*3 (relying on the "apex doctrine," which serves to "ensur[e] that the liberal rules of procedure for depositions are used only for their intended purpose and not as a litigation tactic to create undue leverage by harassing the opposition or inflating its discovery costs").

In simple terms, the apex doctrine establishes "the rebuttable presumption that the deposition of a high-ranking corporate executive either violates Rule 26(b)(2)(C)'s proportionality

standard or, in a party's motion for a protective order, constitutes 'good cause' for such an order as an 'annoyance' or 'undue burden' within the meaning of Rule 26(c)(1)." *Performance Sales*, 2012 WL 4061680 at \*4. "Should the deposing party fail to overcome this presumption, the court must then limit or even prohibit the deposition." *RLI Ins. Co. v. Nexus Servs., Inc.*, 2020 WL 2311668, at \*2 (W.D. Va. May 8, 2020) (citation and internal quotation marks omitted).

District courts throughout the Fourth Circuit have routinely applied the apex doctrine to preclude depositions of high-ranking executives unless it is clear from the record that "(1) the executive has unique or special knowledge of the facts at issue and (2) other less burdensome avenues for obtaining the information sought have been exhausted." *Performance Sales*, 2012 WL 4061680 at \*3–4, 9–10 (citation and internal quotation marks omitted); *Lumber Liquidators*, 2018 WL 3934396, at \*5 (granting protective order to prevent depositions of party's board members); *see also, e.g.*, *RLI Ins. Co.*, 2020 WL 2311668, at \*3 (granting motion for protective order preventing the deposition of plaintiff's president and chief operating officer, where the defendants "failed to show that [the witness] ha[d] unique or special knowledge of the issues in this case" or "that they ha[d] exhausted other less burdensome means to obtain the information"); *Smithfield Business Park LLC v. SLR Int'l Corp.*, 2014 WL 547078, at \*2–3 (E.D.N.C. Feb. 10, 2014) (denying motion to compel deposition of high-level corporate officer because moving party "failed to overcome its burden of demonstrating that [the witness]'s knowledge is special or unique and that the discovery he would provide through a deposition cannot be obtained from some other more convenient source"). These decisions comport with other case law from district courts across the country, which have likewise permitted apex depositions over a litigant's objection only in rare circumstances, based on an appropriate showing by the party seeking to take the deposition. *See, e.g.*, *Estate of Livingston v. Cnty. of Kern*, 320 F.R.D. 520, 525–28 (E.D. Cal. 2017) (applying

6

apex doctrine and granting motion for protective order); *Sun Capital Partners, Inc. v. Twin City Fire Ins. Co.*, 310 F.R.D. 523 (S.D. Fla. 2015) (similar).

Defendants cannot satisfy either prong of the apex doctrine as to any of the three witnesses they seek to depose.  There is no credible basis for the notion that the apex witnesses have special, unique personal knowledge of any issues in dispute in this case, nor have Defendants offered any justification for their failure to seek information from more appropriate sources before targeting the top of Amazon's corporate structure.  To the contrary, as discussed in greater depth *supra*, the record makes clear that the apex executives have no unique, special knowledge to any fact or issue in dispute in this litigation, and that any knowledge those executives *do* have is also known to other, less senior executives whom Defendants can depose.  Amazon accordingly is entitled to a protective order under Rule 26(c) precluding Defendants from deposing Mr. Jassy, Mr. DeSantis, and Ms. Carlson.  *Accord, e.g.*, *Performance Sales*, 2012 WL 4061680 at *3–4; *RLI Ins. Co.*, 2020 WL 2311668 at *3.

## I.   The Apex Doctrine Protects All Three of the Apex Executives.

As a threshold matter, it is clear that the apex doctrine applies to Mr. Jassy, Mr. DeSantis, and Ms. Carlson.  District courts applying the doctrine have generally agreed that it protects "high-ranking corporate executive(s)" from being forced to sit for deposition unless the two-prong test is satisfied.  *Performance Sales*, 2012 WL 4061680 at *4; *RLI Ins. Co.*, 2020 WL 2311668 at *2; *Smithfield Bus. Park*, 2014 WL 547078, at *1.  Courts that have considered the question have concluded that the protections "apply with equal force to former executives."  *Harapeti v. Television Stations*, 2021 WL 3932424, at *3 (S.D.N.Y. 2021).  Regardless of whether the executive is currently with the company in question, the propriety of the deposition turns on the same question, which is whether the executive has any "unique or personal knowledge that" cannot be revealed elsewhere through discovery.  *Younes v. 7-Eleven, Inc.*, 2015 WL 12844446, at *3

(D.N.J. Aug. 19, 2015) (granting cross-motion for a protective order to prevent the deposition of former executive of 7-Eleven); *see also, e.g.*, *Rembrandt Diagnostics, LP v. Innovacon, Inc.*, 2018 WL 692259, at *7 (S.D. Cal. Feb. 2, 2018) ("[T]he protections of the apex doctrine continue to apply to [the executive] despite [her] recent change in employment.").  As former Vice President of Worldwide Public Sector and Industries at Amazon Web Services, Ms. Carlson certainly qualifies as a "high-ranking corporate executive" and accordingly is protected to the same extent as Mr. Jassy and Mr. DeSantis.

## II.    The Apex Executives Have No Knowledge Relevant to This Case Aside from Information That Is Also Known to Other Amazon Executives and Employees.

The first prong of the apex doctrine prevents a litigant from deposing its adversary's high-level executives unless the record shows that the executives in question have "'unique or special knowledge of the facts at issue.'"  *Performance Sales*, 2012 WL 4061680 at *3 (internal citation omitted); *accord, e.g.*, *Lumber Liquidators*, 2018 WL 3934396, at *3–5 (precluding depositions of additional witnesses, including apex witnesses, based in part on the fact that the witnesses had no information beyond what was already in the discovery record).  Courts applying the doctrine have consistently held that this standard is satisfied only where there are specific facts that are relevant to the litigation and also are *uniquely* known to the high-ranking executive and no other potential witness.  *See, e.g.*, *RLI Ins. Co.*, 2020 WL 2311668, at *3; *accord Lexington*, 320 F.R.D. at 525 (noting that the first prong asks "'whether the deponent has unique first-hand, non-repetitive knowledge of the facts at issue in the case'" (citation omitted)).  There must be record evidence supporting the deposing party's contention that the executive has unique knowledge of relevant facts; the contention cannot be based solely on unsubstantiated statements by the deposing party's counsel or unpersuasive evidence in the existing discovery record.  *See, e.g.*, *Smithfield Bus. Park*, 2014 WL 547078 at *2–3 (rejecting "undetailed assertions" advanced in party's briefing as

insufficient to support apex deposition); *RLI Ins. Co.*, 2020 WL 2311668 at *3 (rejecting contentions based on "uncorroborated recollection" of a separate witness).

Defendants' requests to depose the apex executives falls substantially short of these requirements.  As an initial matter, Defendants  have not substantiated their assertion that the apex witnesses have unique knowledge of relevant information.  For example, Defendants have indicated that they are seeking to depose Mr. Jassy and Mr. DeSantis in order to cast doubt on Amazon's allegations that Defendant Carleton Nelson "committed a crime and manipulated the Amazon real estate purchasing process."  Ex. 3, at 2.  Any information that Mr. Jassy and Mr. DeSantis could conceivably have regarding Mr. Nelson's conduct would have been obtained from other Amazon employees. Neither Mr. Nelson, nor Casey Kirschner (the other former Amazon employee named as a Defendant) ever reported to Mr. Jassy or Mr. DeSantis.[2]

As to the narrower issue of Defendants' manipulation of the Amazon real estate purchasing process, Defendants appear to be referencing Amazon's allegation that Mr. Nelson and Mr. Kirschner manipulated site presentations within Amazon in order to secure approval that would allow them to receive unlawful kickbacks.  Ex. 3, at 2; *see* ECF 150, ¶ 80.  Defendants have not elaborated as to the specific facts that they believe would be relevant to Amazon's claims or any cognizable defenses to those claims with respect to that allegation, nor have they explained why

---

[2]  To the extent Defendants contend that the depositions of Amazon senior executives are needed to cast doubt on the reliance element of the predicate fraud claims under RICO, they are mistaken as a matter of law.  *See Neder v. United States*, 527 U.S. 1, 24 (1999); *see also, e.g.*, *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 649 (2008) ("[O]ne can conduct the affairs of a qualifying [RICO] enterprise through a pattern of such acts without anyone relying on a fraudulent misrepresentation.").   Amazon's reliance has no bearing on whether Defendants committed fraud under federal law.  *See Neder*, 527 U.S. at 24.  Nor would the apex executives have knowledge—much less unique knowledge—as to whether Defendants otherwise engaged in a pattern of racketeering activity, particularly given the steps that Defendants undertook to conceal their unlawful scheme.

they believe that such information would be within Mr. Jassy's or Mr. DeSantis's unique personal knowledge. That deficiency, standing alone, is sufficient to support Amazon's motion and preclude Defendants from deposing Mr. Jassy and Mr. DeSantis.[3] *See, e.g.*, *Smithfield Bus. Park*, 2014 WL 547078, at *2–3 (rejecting request for apex deposition of high-level executive with no "special or unique" knowledge).

Defendants' failure to identify any relevant information within the executives' unique knowledge is even more egregious with respect to Ms. Carlson. As Amazon explained, and as Defendants have not disputed, Ms. Carlson had no involvement whatsoever in the real estate transactions relevant to Amazon's claims. The only information that Defendants indicated they are seeking from Ms. Carlson relates to her knowledge of a large government cloud computing contract proposal (known as the JEDI contract), which is entirely irrelevant to the issues in dispute in this case. Ex. 2, at 12. Defendants accordingly should be precluded from deposing Ms. Carlson not only pursuant to the apex deposition, but also on the ground that the information sought is categorically irrelevant to the claims and defenses in this case and beyond the scope of permissible discovery under the Federal Rules. *See* Fed. R. Civ. P. 26(b)(1); Fed. R. Civ. P. 26(c); *cf. Sharma v. Lockheed Engineering & Management Services Co.*, 1988 WL 118154, at *2–3 (4th Cir. Nov. 7, 1988) (holding that protective order issued by district court was appropriate where the witness "ha[d] no personal knowledge" as to the plaintiff's complaint).

---

[3] Similarly unavailing is Defendants' suggestion that Mr. Jassy and Mr. DeSantis have unique personal knowledge as to "important aspects of the transactions and approvals at issue." Ex. 3, at 2. Even if Defendants are correct that Mr. Jassy and Mr. DeSantis "independently reviewed, analyzed, considered, and ultimately executed" the transactions at issue, *see id.*, Defendants have not provided any grounds for their contention that such information is relevant to any claims or legally cognizable defenses. And even were the information relevant, there is no basis for the notion that the process by which transactions were approved is within these executives' *unique* personal knowledge, given that other executives were equally if not more significantly involved in that approval process.

To the extent the apex executives have any knowledge relevant to the issues in this case, the record makes affirmatively clear that such knowledge is not unique, but rather was shared by others at Amazon. Mr. Jassy and Mr. DeSantis had minimal direct involvement in the real estate transactions relevant to Amazon's claims; and as high-level executives, any knowledge that they have as to the transactions or the process by which those transactions were approved was also known to others at the company, including others scheduled for depositions in this case. Jassy Decl ¶ 3–5; DeSantis Decl ¶ 3–5; Carlson Decl ¶ 3–5; Ex. 1. Moreover, while Defendants purport to identify Mr. Jassy, Mr. DeSantis, and Ms. Carlson in their Initial Disclosures as to certain subjects, they also identified additional witnesses as having knowledge of the same subjects.[4] *See* Ex. 4, at 4, 7. Given that none of the apex executives have personal knowledge on relevant subjects beyond information that is also known to Amazon's other executives and employees, Defendants' efforts to depose them must fail at the doctrine's first step.

## III.    Defendants Have Not Yet Exhausted Other Potential Sources of the Information They Seek from the Apex Executives.

The second prong of the apex doctrine prevents a litigant from deposing its adversary's high-level executives unless the record is clear that "'other less burdensome avenues for obtaining the information sought have been exhausted.'" *Performance Sales*, 2012 WL 4061680 at *3 (citation omitted). Courts have interpreted this prong to require a showing from the party seeking the deposition that the information sought cannot be obtained through different potential witnesses

---

[4] The witnesses' duplicative knowledge is less clear with respect to Ms. Carlson. Defendants identified her as a person with knowledge concerning "AWS data center customer demand in 2019, as related to bid for potential government contract; the cause of Mr. Nelson's termination." Ex. 4, at 7. As discussed above, however, the government contract in question is irrelevant to this litigation, nor is the cause of Mr. Nelson's termination relevant to any disputed fact or issue. Again, Defendants appear interested in deposing Ms. Carlson as to issues that have nothing to do with this action, which is impermissible under the Federal Rules. *See* Fed. R. Civ. P. 26(c).

or other sources of discovery.  *See, e.g.*, *RLI Ins. Co.*, 2020 WL 2311668 at *3 (granting motion for protective order where party seeking to take apex deposition had failed to seek information from other knowledgeable executives in deposition); *see also Sun Capital Partners*, 310 F.R.D. at 528 ("In certain cases, even when a high-ranking official of a corporation does have direct knowledge of the facts, it is inappropriate to compel his or her deposition without first deposing lesser-ranking employees who have more direct knowledge of the facts at issue."); *accord Lumber Liquidators*, 2018 WL 3934396, at *3–5.  In applying this inquiry, courts have noted that "[t]he history of the propounding party's efforts to obtain the information through other discovery, or lack of such efforts, can shed considerable light on whether the party is seeking the apex deposition for appropriate purposes."  *Lexington*, 320 F.R.D. at 525.

Here, Defendants' failure to exhaust other means of obtaining the information they seek reveals their efforts to depose the apex executives for the litigation tactic they are.  Defendants served deposition notices for the apex executives simultaneously with a half-dozen notices to other current and former Amazon employees.  Ex. 1.  The other individuals noticed for deposition include individuals identified in Defendants' Initial Disclosures as persons with knowledge regarding Amazon's real estate transaction approval process "generally," as well as knowledge about decisionmakers at Amazon with respect to the real estate transactions that are directly relevant to this suit.  *See* Ex. 1; Ex. 4, at 3–5.  Amazon has not objected to most of those depositions.[5]  Defendants have not yet taken any of those depositions, and accordingly cannot know one way or the other whether those depositions will obviate the need for testimony from the

---

[5]  Amazon did object to the deposition of Dennis Wallace, in house counsel at Amazon and part of Amazon's legal team for this litigation.  Mr. Wallace was noticed for deposition on March 3, 2022.  On February 25, Amazon moved for a protective order to prevent the deposition of Mr. Wallace, in order to protect Amazon's privileges.  Dkt. 538.

apex executives.  It would be highly inappropriate, and contrary to the careful balance struck by Rule 26(c), if Defendants were permitted to go straight to the top of Amazon's corporate structure to obtain the same information they are simultaneously seeking from less senior executives and employees.  *See RLI Ins. Co.*, 2020 WL 2311668, at *3 (holding that apex doctrine barred deposition of high-level executive where the defendants had previously failed to question two prior deponents about the information sought from the apex executive); *see also, e.g.*, *Sun Capital Partners*, 310 F.R.D. at 528 (holding that party had failed to satisfy second prong of apex doctrine where the party "ha[d] not yet deposed any other lesser-ranking employees in an effort to conduct discovery of the facts at issue").

Additionally, although Defendants have not yet served Amazon with a formal notice of deposition pursuant to Federal Rule of Civil Procedure 30(b)(6), Amazon understands that Defendants intend to serve such a notice in the near future.  A Rule 30(b)(6) deposition would, of course, allow Defendants to seek testimony from Amazon's corporate designees "about information known or reasonably available to the organization" regarding the matters for examination.  Fed. R. Civ. P. 30(b)(6).  Amazon's Rule 30(b)(6) deposition accordingly is a separate and independent means by which Defendants could seek any relevant information they now purport to seek from the apex executives.  Defendants must be required to exhaust these and other potential sources of discovery before they are even potentially permitted to burden Amazon and its high-ranking executives with apex depositions.  *Smithfield Bus. Park*, 2014 WL 547078, at *2–3 (granting motion for protective order, and precluding apex deposition, because "the deposition of [the party]'s 30(b)(6) designee later this month may obviate [the apex executive]'s deposition altogether or clarify the basis on which it should be allowed to proceed").

## CONCLUSION

For the above-stated reasons, Amazon respectfully requests that the Court grant its motion for a protective order to preclude the depositions of apex executives Andrew Jassy, Peter DeSantis, and Teresa Carlson.


Dated: March 1, 2022                        Respectfully submitted,

                                            *s/  Michael R. Dziuban*
                                            Elizabeth P. Papez (*pro hac vice*)
                                            Patrick F. Stokes (*pro hac vice*)
                                            Claudia M. Barrett (*pro hac vice*)
                                            Michael R. Dziuban (Va. State Bar No. 89136)
                                            GIBSON, DUNN & CRUTCHER LLP
                                            1050 Connecticut Avenue, N.W.
                                            Washington, D.C. 20036-5306
                                            Telephone:  (202) 955-8500
                                            Facsimile:  (202) 467-0539
                                            epapez@gibsondunn.com
                                            pstokes@gibsondunn.com
                                            cbarrett@gibsondunn.com
                                            mdziuban@gibsondunn.com

                                            Veronica S. Moyé (*pro hac vice* application pending)
                                            GIBSON, DUNN & CRUTCHER LLP
                                            2001 Ross Avenue, Suite 2100
                                            Dallas, TX 75201
                                            Telephone:  (214) 698-3100
                                            Facsimile:  (214) 571-2900
                                            vmoye@gibsondunn.com

                                            *Counsel for Plaintiffs Amazon.com, Inc. and Amazon Data Services, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 1, 2022, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system.  I will then send the document and a notification of such filing (NEF) to the following parties via U.S. mail to their last-known address and by email, where noted:

> Casey Kirschner
> 635 N. Alvarado Lane
> Plymouth, MN 55447
> By email: casey.kirschner@gmail.com

> _s/ Michael R. Dziuban_
> Michael R. Dziuban (Va. State Bar No. 89136)
> GIBSON, DUNN & CRUTCHER LLP
> 1050 Connecticut Avenue, N.W.
> Washington, D.C. 20036-5306
> Telephone:  (202) 955-8500
> Facsimile:  (202) 467-0539
> mdziuban@gibsondunn.com
>
> _Counsel for Plaintiffs Amazon.com, Inc. and_
> _Amazon Data Services, Inc._

15