**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

|  |  |
|---|---|
| AMAZON.COM, INC. and AMAZON DATA SERVICES, INC., | |
| Plaintiffs, | |
| v. | CASE NO. 1:20-CV-484 |
| WDC HOLDINGS LLC dba NORTHSTAR COMMERCIAL PARTNERS; BRIAN WATSON; STERLING NCP FF, LLC; MANASSAS NCP FF, LLC; NSIPI ADMINISTRATIVE MANAGER; NOVA WPC LLC; WHITE PEAKS CAPITAL LLC; VILLANOVA TRUST; JOHN DOES 1-20, | |
| Defendants. | |

**WATSON DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO WITHDRAW AND SUBSTITUTE VERIFICATIONS AND CERTAIN DECLARATIONS AND FOR**
**PROTECTIVE ORDER**

Defendants WDC Holdings LLC d/b/a Northstar Commercial Partners ("Northstar") and Brian Watson ("Mr. Watson") (collectively, "Watson Defendants"), by and through their undersigned counsel, hereby file their response to Plaintiffs Amazon.com, Inc.'s and Amazon Data Services, Inc.'s (collectively, "Plaintiffs" or "Amazon") Motion to Withdraw and Substitute Verification and Certain Declarations and for Protective Order ("Motion") and state as follows.

## INTRODUCTION

This case has time and time again presented the Court with unusual issues to resolve, however, no motion is more unusual than the one filed by Plaintiffs last Friday night at 11:55 PM.

Though presented as a routine request, as if to correct a mere clerical error, a closer look reveals that the relief Plaintiffs seek is nothing short of extraordinary. The midnight Motion seeks no fewer than four separate forms of relief: (1) to withdraw the several previous verified complaints, which were verified by Gibson Dunn attorneys Travis Andrews and Luke Sullivan, both of whom swore that they have "personal knowledge of the facts set forth in the complaint and if called upon to do so, [] could and would competently testify thereto[,]" Dkt. 589-1 at 57; Dkt. 589-2 at 100; Dkt. 589-3 at 127; (2) to withdraw <u>five</u> sworn declarations of Gibson Dunn attorney Lora Elizabeth MacDonald, in which she avers that she has "personal knowledge of the facts . . . and could competently testify thereto[,]" Dkt. 589-4 at 1; Dkt 589-5 at 1; Dkt. 589-6 at 1; Dkt. 589-7 at 1; Dkt. 589-8 at 1;(3) to substitute a new declaration sworn by a different individual who will not aver that the facts and allegations in the operative complaint are true, but only that they were <u>believed</u> to be true at the time the complaint was filed, Dkt. 589-9; and (4) to obtain a protective order prohibiting the depositions of Mr. Andrews, Mr. Sullivan, and Ms. MacDonald. Dkt. 587 at 2.

Setting aside the impropriety of requesting four forms of relief in one motion,[1] this request is extraordinary for two reasons. First, Plaintiffs ask this Court to ignore the well-established and common-sense rule that any person, including a lawyer, who verifies a complaint and swears personal knowledge of facts underlying the allegations waives privilege and may be deposed about those facts. Second, the Motion attempts to circumvent Fed. R. Civ. P. 15 and drastically amend the pleadings without following the proper procedure. Plaintiffs do so on the basis that inclusion of the verifications was simply a "mistake" despite the fact that they have explicitly and repeatedly relied

---

[1] *See* E.D. V.A. Electronic Case Filing Policies and Procedures at 85 (2020) (requiring a party to use a separate motion relief entry for each filing).

on these very verifications and sworn declarations throughout this litigation to inflict great harm on

all Defendants, particularly the Watson Defendants. For example:

- These sworn declarations were relied upon at the April 28, 2020 *ex parte* TRO hearing that has severely damaged Mr. Watson's business and changed his life. Judge O'Grady explicitly relied on them in issuing his *ex parte* order requiring the Watson Defendants to escrow $16.5 million. The law is clear that *ex parte* relief requires personal knowledge of the facts underlying such a request;

- Upon information and belief, Amazon provided these attestations to the United States Attorney's Office for the Eastern District of Virginia with the apparent purpose of facilitating a criminal investigation of the defendants and seizure of their assets—the majority of which seizures have since been abandoned by the government;

- Amazon explicitly relied on these sworn statements at the May 21, 2020 hearing where Judge O'Grady converted the *ex parte* order into a preliminary injunction requiring the Watson Defendants to escrow $21.5 million. At that hearing, counsel for Plaintiffs explicitly referred to the "verified pleadings" no less than 16 times in oral argument as the evidentiary basis for the relief sought;

- Amazon relied on the verified pleadings in briefing and oral argument before the 4th Circuit upholding that injunction;

- Amazon used the verified pleadings in its multiple motions for contempt of the very injunctive order that they had obtained on apparently false pretenses; and

- Amazon has repeatedly relied on the operative verified complaint as its sole response to many of the defendants' interrogatories seeking to understand the factual basis of the least $75 million in damages Amazon claims in its operative complaint.

Though the Watson Defendants vigorously deny Plaintiffs' allegations, they have assumed

for the past two years of litigation that there must, somewhere within Amazon, be evidence to support

the extraordinary claims that Plaintiffs levy against the defendants. However, discovery to this point

has revealed a notable dearth of evidence supporting the allegations. Certainly no facts have been

discovered supporting knowledge of the sinister, far reaching "kickback" scheme which is repeatedly

alleged in the verified pleadings and which has formed the basis of the extraordinary injunction still

in place against the Watson Defendants. Not only do Amazon's responses to Defendants' interrogatories seeking further facts and evidence simply cite back to the allegations in the Second Amended Verified Complaint, but indeed, no current or former Amazon employee deposed to date has professed any personal knowledge of such a scheme, including the only Amazon employee identified in Plaintiffs' disclosures (who also verified Plaintiffs' interrogatory responses). When pressed as to why Plaintiffs think a kickback scheme does exist, the Amazon employees again, did not have any personal knowledge, but referred back to the same verified pleadings that are the subject of the Friday midnight Motion as the basis for their understanding—they read the verified complaints and relied on what counsel for Amazon told them.

Because of the circular nature of this testimony, it is essential that the Watson Defendants have the chance to take the depositions of the only persons in this case who have claimed personal knowledge of the crucial allegations in the various verified complaints—Mr. Andrews, Mr. Sullivan, and Ms. MacDonald. The Watson Defendants have a right to do so in order to determine if there is any competent evidence to support what Amazon has represented to this Court for almost two years. The Watson Defendants have never hidden the ball on this point: not only did the Watson Defendants identify Mr. Andrews and Mr. Sullivan as individuals with personal knowledge of the allegations in the complaint in their initial disclosures filed December 3, 2021, but the Watson Defendants noticed their depositions weeks ago[2] and their counsel have been in communication with Amazon regarding

---

[2] Plaintiffs' Motion misstates the facts of the case, alleging that Defendants did not notice the depositions until after the March 11, 2022 ruling by this Court granting a protective order preventing the deposition of Amazon in house counsel. This is not true. The Watson Defendants noticed the depositions of Mr. Andrews and Mr. Sullivan on February 28, 2022. Decl. of A. Houseal, Ex. A. Mr. Andrews was served on or around March 3, 2022. *Id*., Ex. B Amazon's counsel reached out to undersigned counsel on March 9, 2022, indicating they were representing Mr. Andrews and Mr. Sullivan with respect to these notices and were authorized to accept

these depositions, even agreeing to reschedule them. Now, at the very last minute, Plaintiffs improperly seek not only to prevent the depositions, but also to amend the pleadings to withdraw all verifications of personal knowledge and substitute instead an empty declaration averring only that Plaintiffs believed the allegations to be true at the time they were filed.

Accordingly, the Watson Defendants ask this Court to deny Plaintiffs' Motion and allow the Watson Defendants to take the requested and properly noticed depositions. The Watson Defendants also ask this Court to deny Plaintiffs' Motion to withdraw and substitute verifications. After these depositions, the Watson Defendants will determine whether additional relief should be requested.

## LEGAL STANDARD

The Federal Rules of Civil Procedure permit liberal discovery to make "trial less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." *United States v. Proctor & Gamble Co.* 356 U.S. 677, 682 (1958). To this end, parties may discover "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. Pro. 26(b)(1). Barring extraordinary circumstances, courts rarely will grant a protective order which totally prohibits a deposition, even if that deposition is of an attorney. *U.S. v. Phillip Morris*, 209 F.R.D. 13, 19 (D.D.C. 2002) ("[T]he Federal Rules of Civil Procedure create no special presumptions or exceptions for lawyers, or anyone else—even a sitting President of the United

---

service of the subpoenas and asked to reschedule the depositions. *Id*., Ex. D. On March 15, 2022, undersigned counsel informed Amazon's counsel they intended to depose Lora MacDonald and asked whether they were authorized to accept service. *Id*., Ex. E. Undersigned counsel did not hear from Amazon's counsel for one week, so on March 22, 2022, the Watson Defendants noticed the depositions of Mr. Andrews and Mr. Sullivan for March 28, 2022 and the deposition of Ms. MacDonald for April 4, 2022, and Amazon's counsel accepted service on behalf of Ms. MacDonald. *Id*. On March 24, 2022, Amazon's counsel informed counsel for the Watson and Nelson Defendants that they intended to file this Motion. *Id*. ¶ 2.

States.") (citing *Clinton v. Jones*, 520 U.S. 681 (1997)). Additionally, "The party seeking a protective order has the burden of establishing 'good cause' by demonstrating that 'specific prejudice or harm will result if no protective order is granted.'" *U.S. ex rel. Davis v. Prince*, 753 F. Supp. 2d 561, 565 (E.D. Va. 2010) (quoting *Phillips v. Gen. Motors Corp.*, 307 F.3d 1206, 1210-11 (9th Cir. 2002)).

## ARGUMENT

I.     **The Court Should Deny the Request for Protective Order Preventing the Deposition of Ms. Macdonald, Mr. Andrews, and Mr. Sullivan.**

The witnesses at issue (and their supervisors) are sophisticated and skilled litigators who, by swearing under oath that they have personal knowledge of the facts in the complaint, made the affirmative decision to participate in this case as fact witnesses—a decision that has greatly benefited Plaintiffs up to this point in litigation. They cannot now walk this back and hide behind a privilege that has already been waived. This is particularly true when these three persons are the only witnesses on behalf of Amazon who swear to having personal knowledge of the critical facts underlying the pleadings.

### A.     **Defendants Have a Right to Depose Fact Witnesses.**

It is axiomatic that an individual who swears to the facts underlying the case can be deposed regarding the basis of those facts. This basic tenant of a fair and impartial justice system cannot be circumvented simply by having your attorney make those representations. *See e.g. Computer Network Corp. v. Spohler*, 95 F.R.D. 500, 502 (D.D.C. 1982) ("Here [attorney] was being a factual witness concerning fact issues which goes to the heart of this legal controversy. He cannot foreclose discovery on the factual basis for his factual representations in the affidavit any more than he could take the witness stand and testify on direct examination to the factual matters set forth in his affidavit, and then preclude cross-examination by invoking the attorney-client privilege. . . . A party cannot

voluntarily disclose facts in his favor before a judicial tribunal, when they are helpful to his cause, and then invoke the attorney-client privilege into the truthfulness of the facts initially presented. A litigant cannot convert the privilege into a tool for selective disclosure."); *In re Powerhouse Licensing LLC*, 441 F.3d 467 , 473 (6th Cir. 2006) ("The decision to include [counsel's] affidavit represents a litigation strategy fraught with obvious risks . . . presumably, a conscious decision was made that the rewards outweigh the risk. In the end, perhaps they will. However, we find that certain statements contained in the affidavit represented opinions, based upon confidential communications between attorney and client, that go to the heart of the legal claims at issue. By including these communications in the affidavit, counsel for petitioners effectively waived the attorney-client privilege."); *Rainbow Invs. Grp., Inc. v. Fuji Trucolor Missouri, Inc.*, 168 F.R.D. 34 (W.D. La. 1996) (deposition of attorney is allowed where information sought from attorney is relevant and concerned factual issues central to the counter claims and defenses asserted by defendants); *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 164 F.R.D. 245, 247 (D. Kan. 1995) (attorneys with discoverable facts not protected by attorney-client privilege or work product, are not exempt from being a source for discovery by virtue of their license to practice law).

Plaintiffs have not met their burden of proving that harm or prejudice will result from deposing these fact witnesses, and instead attempt to shift the burden to the Watson Defendants under *Shelton v. Am. Motors Corp*. 805 F.2d 1323 (8th Cir. 1987). This is misdirection. Not only is *Shelton* not binding in the Fourth Circuit, but the facts of this case are easily distinguishable from those in *Shelton. Shelton* concerned the deposition of an attorney who "had nothing to do with the lawsuit except to represent her client." *Id.* at 1330. This is in no way comparable to a situation where the attorneys have made themselves indispensable fact witnesses by swearing under oath, multiple

times over several months, to having personal knowledge of the facts underlying the complaint that they can and will competently testify to. Not only have the noticed attorneys made these averments, but Plaintiffs have actually and tangibly relied on them to gain relief against the Watson Defendants. Further, unlike *Shelton*, here there is little danger that these depositions will provide a "back door" for Defendants to probe trial strategy or other privileged information as the topics of the deposition— the facts underlying the allegations in the complaint—occurred prior to the initiation of litigation and two of the three witnesses are no longer employed by Gibson Dunn and have no current involvement in the case.

Regardless of whether the Court ultimately finds the *Shelton* test applicable, the Watson Defendants are entitled to depose the witnesses under any standard.

i.  *These Depositions are Necessary*

Defendants have exhausted all other avenues to investigate the factual allegations of the Second Amended Verified Complaint, including the essential allegation of the existence of a sophisticated "kickback" scheme and damages resulting therefrom. Thus far, Defendants have deposed four current or former Amazon employees: Chris Vonderhaar, Amazon's Vice President of Data centers; Keith Klein, the Managing Principal of Amazon's Real Estate Acquisition and Development; Karen Davenport, the former Director of Global Real Estate and Development at Amazon; and Eugene Choi, the former Finance Director of Amazon Data Center Operations. Despite the fact that each of these individuals supervised and was directly involved with the real-estate transactions at issue in the Complaint, not a single one of these witnesses testified to having personal knowledge of the alleged "kickback scheme," or any illegal acts committed by any defendant, or any of Amazon's alleged damages resulting therefrom. To the extent that any Amazon witness deposed

has knowledge of the alleged kickback scheme, each testified that it was second-hand knowledge, ultimately stemming from the verified pleadings themselves.

Similarly, not one of the several former Northstar employees who have been deposed including former COO, Tim Lorman, former CFO Brent Gray, Former in-house counsel Patricia Watson, and Former Director of Equity Danny Mulcahy—also identified as "confidential informant 1"—has testified to having personal knowledge of the existence of such a scheme. Mr. Mulcahy's lack of personal knowledge is particularly telling. Amazon's Operative Complaint alleges that he claims personal knowledge of the Watson Defendant's involvement in the kickback scheme and details that alleged knowledge. *See* Dkt. 150 ¶¶110-121. However, Mr. Mulcahy recently swore under oath that he has no personal knowledge of a kick-back scheme, and that the information he gave to Amazon and that Amazon included in its Verified Second Amended Complaint was based on "water cooler talk" with Northstar employees.

Defendants' attempts to uncover the factual basis of the allegations through written discovery have proved no more fruitful. For example, in response to an interrogatory asking Amazon to identify "all misrepresentations, omissions, or 'fraudulent aspects'" alleged, Plaintiffs responded that "misrepresentations, omissions, or 'fraudulent aspects' alleged are contained in Plaintiff's Verified Second Amended Complaint, filed September 18, 2020" (verified upon personal knowledge by Mr. Sullivan). A. Houseal Decl., Ex. G at 6. This circular answer referring back to the pleadings, which were verified by persons the Watson Defendants now seek to depose, was repeated throughout each of Plaintiffs' purportedly substantive responses to the Watson Defendants' written interrogatories. *See id.* Additionally, these interrogatories were signed by Chris Vonderhaar, an Amazon employee, whose sworn deposition revealed that he did not have personal knowledge of even basic facts alleged

9

in the Second Amended Verified Complaint, such as when Amazon first became aware of the alleged scheme and its resulting investigation, and was simply "representing [his] understanding of information" gathered by others. *Id*, Ex. H at 18:50:41.

Despite Defendants' diligent discovery efforts, they have been unable to identify any other party who has personal knowledge of the facts underlying the allegations. All roads lead back to the Second Amended Verified Complaint and the declarations. Accordingly, the Watson Defendants must be allowed to depose the only individuals who have affirmatively stated they have personal knowledge of the facts alleged in the verified pleadings—the attorneys who swore that they have personal knowledge of these facts, and "could and would competently testify" to those facts.

      ii.    *The information sought is relevant and non-privileged*

The facts underlying the allegations contained in a complaint are not privileged, and any privilege that may have existed was waived when Plaintiffs' attorneys took the extraordinary step of personally verifying the complaint. *See In re Powerhouse Licensing LLC*, 441 F.3d 467, 473 (6th Cir. 2006); *see also Leybold-Heraeus Tech. Inc. v. Midwest Instrument Co., Inc.*, F.R.D. 609, 614 (E.D. Wis. 1987) (testimony by lawyer causes waiver of privilege for information needed to cross-examine him); *In re Grand Jury Proceedings*, 616 F.3d 1172, 1184 (10th Cir. 2010) (transmission of information to court in previous briefing waived privilege); *Tel. & Tel. Corp. v. United Tel. Co. of Fl.*, 60 F.R.D. 177, 186 (M.D. Fla. 1973) (fairness requires that a client cannot assert privilege to block discovery with respect to matters she plans to disclose at trial). Additionally, Ms. MacDonald further established her position as a fact witness in this case by directly participating in communications and discussions with the United States Attorney's Office over the course of two years, regarding the very same facts and allegations underlying this case, in Amazon's bid to get the

10

United States government to initiate and continue a criminal investigation into the defendants for this alleged kickback scheme. These communications are not privileged. *See In re Subpoenas Duces Tecum*, 738 F.2d 1367, 1369 (D.C. Cir. 1984) (disclosure to governmental agencies in connection with official investigation waives privilege). Accordingly, the Watson Defendants are permitted to depose the above attorneys regarding the circumstances and basis for facts of the case to which they averred personal knowledge as well as the non-privileged communications they had with government officials regarding the facts of the case.

     iii.    *The information sought is crucial to the preparation of the case*

The Watson Defendants cannot reasonably be expected to prepare for the case if they are unable to depose a single person who possesses personal knowledge of essential allegations. The Second Amended Verified Complaint contains extraordinary allegations of the existence of "a massive fraud and kickback scheme," accuses the Watson Defendants of paying "tens of millions in kickbacks," "conspir[ing] with the TM defendants" to commit numerous unlawful acts, and alleges damages of over $75 million. *See* Dkt. 150 ¶¶ 1, 6, 224. Yet, Amazon has neither identified nor produced a single witness who has been able to testify to having personal knowledge of this allegedly "massive scheme" or the resulting damages to Amazon (indeed, no witness called by any party has testified to having such knowledge) apart from the individuals who verified the various complaints and signed declarations attesting to certain facts. Instead, each and every Amazon witness has pointed back to the allegations in the Second Amended Verified Complaint as the source of their knowledge of the defendants' alleged wrongdoings and resulting harm. It is an inescapable fact that only three people have sworn to actually knowing the facts underlying that complaint, and Amazon

11

now seeks to prevent Defendants from deposing them—Mr. Andrews, Mr. Sullivan, and Ms. MacDonald.

The Watson Defendants have no desire to harass, annoy, or inconvenience these attorneys and do not seek to uncover un-waived privileged information or trial strategy, however the stakes for the Watson Defendants are enormous. As a direct result of the allegations sworn to by these three attorneys, Mr. Watson has suffered significant losses to his livelihood, business, and reputation. All else aside, basic foundational principles of fairness and justice require that the Watson Defendants be allowed a full and fair opportunity to conduct discovery into this case and fight for and prove their innocence. They simply cannot do so if they are now denied the opportunity to depose the only persons who have sworn again and again that they possess personal knowledge of the facts underlying the case and who aver that that are willing and able to competently testify to those facts.

**B.      Withdrawal of the Declarations Does Not Relieve the Noticed Attorneys of the Obligation to be Deposed.**

Crucially, Amazon's sudden announcement that the noticed attorneys do not, in fact, have any personal knowledge of the facts of the case does not change this calculus and only compounds the need to take the noticed depositions. Plaintiffs' own words here cannot be ignored. In their Motion, Plaintiffs *admit* that they filed false declarations and that "the attorneys Defendants seek to depose have no knowledge of the facts underlying this case other than those obtained from information or documents possessed by Amazon." Dkt. 588 at 8. Even taking this at face value, Defendants retain a right to know what these documents and information are. Despite several months of discovery and numerous document requests, Amazon has not produced a single document evidencing the Watson Defendants' participation in a massive fraud scheme or that they were even aware that payments were made to Amazon employees. No party has been able to identify a single

12

Amazon employee, or any other witness, with personal knowledge of the Watson Defendants' alleged participation. Accordingly, the Watson Defendants have a right to conduct discovery to determine what "information or documents possessed by Amazon" was relied upon in drafting the Verified Complaints. The persons who verified those pleadings under oath are unquestionably the proper party from which to obtain this information. Since no document produced in discovery in this case came close to establishing the alleged scheme, if Mr. Andrews, Mr. Sullivan, and Ms. MacDonald think they did, they need to explain how and why they reached this conclusion.

However, Amazon's abrupt pronouncement that these attorneys do not, in fact, possess personal knowledge cannot be taken on its face. Amazon's counsel swore under penalty of perjury, not once, but eight times, that they had personal knowledge of the relevant facts. Dkt 589-1 through 589-8. Amazon explicitly relied upon these sworn statements at every step of this litigation, and the Court has similarly relied upon these sworn statements in granting the extraordinary and devastating relief against the Watson Defendants. Amazon now asserts, through motion only, that inclusion of these statements was an honest mistake. Dkt. 588 at 2. How can Defendants possibly determine which statement is true without deposing these witnesses? Amazon has not provided any explanation to the Court or the Watson Defendants as to why its counsel signed these documents under oath on eight different occasions if they did not actually mean what they swore to. Though the Watson Defendants think it highly unlikely that a sophisticated law firm such as Gibson Dunn would make such a crucial error, but also fail to notice or correct it for two years until the Friday before the attorneys were set to be deposed,[3] further facts are needed to understand what actually happened and

---

[3] Since the first complaint was filed and verified by Mr. Andrews on April 27, 2020, Plaintiffs have amended the verified complaint two times. Each Defendant identified Mr. Andrews and Mr. Sullivan as individuals with knowledge in their initial disclosures (*see* Decl. of A. Houseal, Exs.

to what relief, if any, the Watson Defendants may be entitled. It is thus absolutely critical to the Defendants' ability to litigate this case that they be able to depose the attorneys who made those sworn statements regarding the facts and circumstances surrounding those attestations, as it is entirely possible that these actions may form the basis for reconsideration of past orders, sanctions, or a finding of fraud on the court.

## II.   The Court Should Deny Plaintiffs' Request to Withdraw and Substitute the Verifications.

In an attempt to minimize the enormity of their request to withdraw and substitute the verifications upon which they have relied, Amazon essentially argues "no harm no foul." However, there has been enormous harm. Amazon's assertion that the inclusion of the verifications was not required and had no substantive impact on the litigation is flatly false, and it is difficult to believe that experienced litigators such as Gibson Dunn lawyers would truly believe otherwise. Framing these fundamental changes to the pleadings as a novel request to withdraw and substitute the verifications is a creative, but improper attempt to runaround the requirements of the Federal Rules of Civil Procedure for amendment of pleadings, and should be denied.

### A.   For the Entirety of This Litigation, Plaintiffs Have Relied on and Benefited From the Very Statements They Now Seek to Withdraw.

Plaintiffs have leveraged the declarations and verifications to impose an extraordinary injunction against the Watson Defendants. Of grave concern, and notably unaddressed in Plaintiffs' motion, is Amazon's use of Travis Andrews' Verified Complaint and its accompanying Declaration

---

I-K), and the Watson Defendants noticed the depositions of Mr. Andrews. Mr. Sullivan, and Ms. MacDonald. *See id.* Exs. A-F. Notably, on August 4, 2020, Mr. Andrews verified and filed Plaintiffs' Corrected First Amended Verified Complaint, which corrected a filed version of the amended complaint that inadvertently left off Mr. Andrews' verification. *See* Dkt. No. 113.

of Lora MacDonald to obtain the *ex parte* TRO against the Watson Defendants, which was the basis for the preliminary injunction and contempt order. Although it is true that "[u]nless a rule or statute specifically states otherwise, a pleading need not be verified or accompanied by an affidavit," *Right to Life of Cent. California v. Bonta*, No. 121CV01512DADSAB, 2021 WL 5040426, at *n.1 (E.D. Cal. Oct. 30, 2021) (quoting Fed. R. Civ. P. 11.), Federal Rule 65(b)(1)(A) is one such rule requiring verification. *Id*. When seeking an *ex parte* TRO under Rule 65(b)(1)(A), a movant is required to provide "specific facts in an affidavit or a verified complaint [that] clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." *Turner v. Clelland*, No. 1:15CV947, 2016 WL 1069665, at *3 (M.D.N.C. Mar. 16, 2016), report and recommendation adopted, No. 1:15CV947, 2016 WL 3512216 (M.D.N.C. June 22, 2016) (quoting Fed. R. Civ. P. 65(b)(1)(A)). Here, to satisfy the substantial requirements of Rule 65(b)(1)(A), Amazon submitted the complaint verified by Travis Andrews and the declaration of Lora MacDonald, each of which swore to the facts contained therein under penalty of perjury and each of which represented the signatory had personal knowledge of the facts and could testify thereto if called upon to do so. Dkt. 589-1 at 57; Dkt. 589-4 at 1.

In order to meet this standard and obtain the *ex parte* TRO, Plaintiffs explicitly relied on the Verified Complaint to justify the necessity of an order requiring the Watson Defendants to place $16.25 million into escrow.[4] When asked at the TRO hearing how they calculated the $16.25 number, Plaintiffs assured the Court that "it's also in the verified complaint and in the declaration."

---

[4] In fact, in the hearing regarding issuance of the Preliminary Injunction, plaintiff states that "Rule 65(b) says an affidavit is sufficient. We gave them the McDonald Affidavit." Decl. of A. Houseal, Ex. L at 13. This reference to the rule and explicit statement that the personal knowledge affidavit satisfied it makes it nearly impossible to believe that Amazon is not aware of the necessity of personal knowledge to obtain an TRO.

Decl. of A. Houseal, Ex. M at 6. Most troubling, in the Order granting the *ex parte* TRO, the Court specifically stated that all six of its findings in support of the Order were "[b]ased upon the allegations and evidence accompanying Plaintiffs' Verified Complaint and Application." Dkt. 16 at 1-3 This is the very "evidence" that Plaintiffs now claim they submitted in error and wish to retract. Because of the personal knowledge requirement for a TRO, this order never would have been entered if Plaintiffs had not submitted the declarations and verifications they now seek to withdraw.

Second, Plaintiffs utilized the Verified Complaint to obtain a preliminary injunction mandating that the Watson Defendants escrow $21.5 million. Although a declaration of personal knowledge is not necessarily required to obtain a preliminary injunction, the Fourth Circuit has made clear that testimony based on personal knowledge carries higher weight than inadmissible evidence such as an unverified complaint. *See e.g.*, *G.G. ex rel. Grimm v. Glucester Cty. Sch. Bd.*, 882, F.3d 709, 725 (4th Cir. 2016); *Simone v. VSL Pharms., Inc.*, No. CV TDC-15-*1356*, 2016 WL 3466033, at *16 (D. Md. June 20, 2016) (noting though it can be considered on a motion for a preliminary injunction, traditionally inadmissible evidence such as hearsay, "carries less weight"); *T. v. Bowling*, No. 2:15-CV-09655, 2016 WL 4870284, at *13 (S.D.W. Va. Sept. 13, 2016) ("At the present preliminary injunction stage, the Court shall accord greater weight to Plaintiffs' evidence based on first-hand knowledge and experience."); *Imagine Medispa, LLC v. Transformations, Inc.*, 999 F. Supp. 2d 862, 869 (S.D.W. Va. 2014) ("Moreover, the weight to be accorded affidavit testimony is within the discretion of the court, and statements based on belief rather than personal knowledge may be discounted.").

Amazon was apparently aware of this standard. In the preliminary injunction proceeding Plaintiffs not only heavily relied on the Verified Complaint and declarations of personal

knowledge they now seek to withdraw, but directly contrasted their "verified" evidence with Defendants "unverified" evidence in order make the required showing for the injunction. In the hearing, Plaintiffs' counsel referenced the "Verified Complaint" no less than sixteen times. Decl. of A. Houseal, Ex. L at 6, 7, 9, 13, 14, 15, 34, 37, 38, 40. For example, Plaintiffs stated that the allocation of $5 million of damages from the White Peaks defendants to Mr. Watson was proper "because we have three now separate sources of confirmation. . . . a verified complaint, paragraphs 4, 74, 142, and this McDonald affidavit, paragraph 9, that this $5 million was actually paid to Brian Watson."[5] *Id.* at 15. Further, Plaintiffs explicitly argued that their evidence is more compelling than that presented by the Watson Defendants because of the fact that it is sworn and verified, arguing "[w]e've got five affidavits, 50-plus exhibits, and a 55 page verified complaint[,]" whereas "[t]heir counsel (sic) affidavit doesn't purport to verify Mr. Watson's alleged lack of knowledge the kickback scheme. . . . No affidavit, nothing under oath from the company." *Id*. at 37, 39-40. These are just a few examples of many where Plaintiffs explicitly represented to the Court that the allegations and affidavits and declarations were made on personal knowledge and leveraged these representations to obtain a life altering injunction against the Watson Defendants.

And again, the Court relied on Amazon's representations of personal knowledge regarding the Watson Defendants' involvement in the White Peaks and other transactions to convert the TRO to a preliminary injunction for $21.5 million. The Court stated that it "looked carefully at the

---

[5] This particular statement is remarkable because it is simply incorrect. Amazon has since admitted in its interrogatory answers that the Watson Defendants did not participate in the White Peaks Purchase. Ex. N at 11. In reality, the $5 million was paid to the Watson Defendants as part of a settlement for a lawsuit Watson brought against former employees for breach of fiduciary duty, and was thus entirely unrelated to any alleged kickback scheme.

declarations that came in" and found that "the affidavits are direct, focused, and extremely powerful." *Id*. at 49. In issuing the injunction, the Court stated that "the facts of this case fit, the relief that's been requested, because of it, the facts alleged in the complaint and the TRO and the preliminary injunction papers and with the declarations now in place as well. So I am going to grant the motion for preliminary injunction." *Id*. at 50.  In short, by submitting a verified complaint and declarations where the verifier and declarant stated under penalty of perjury that they had personal knowledge of the facts therein, and could competently testify to them if called upon to do so, Plaintiffs avoided having to address the proper weight to be given to these filings. They now ask this Court to find that the attestations were not only unnecessary and inconsequential, but were included as an accidental oversight that they were not aware of until last week.

Additionally, it must be noted that the substitute verification that Amazon propounds is in no way the evidentiary equivalent of that which they seek to withdraw. Not only does the Doden Declaration fail to aver personal knowledge of the facts underlying the allegations, but it does not even attest that the evidence the declaration supports is true or accurate. Rather, the Declaration consists of empty statements to the effect that Amazon *believed* its evidence and documentation to be true at the time it was submitted. *See* 589- 9 at ¶ 2 (Mr. Doden averring that the facts addressed in the "May 2020 Declaration represent information known by or available to Amazon when this action was filed on April 27, 2020.");  *id*. at ¶ 3 (Mr. Doden averring that Amazon believed the Exhibits were "true and correct copies of documents" "at the time they were filed."); *id*. at ¶ 4 (Mr. Doden averring that the attachments describe evidence "at the time the Complaint was filed.").

Because Plaintiffs have represented to the Defendants and this Court that the individuals in question have personal knowledge of the facts underlying the complaint, and because they have

used these representations to obtain significant relief at the expense of the Watson Defendants, they should not now be permitted to amend their complaint to withdraw the verifications and declarations without so much as an explanation.

### B. Amazon Is Not Entitled to Substitute the Verifications Under Rule 15.

Finally, Plaintiffs should not be permitted to substitute a new declaration because they have failed to file the proper motion. Amazon points to no procedural rule nor identifies any case law that would allow it to withdraw the verifications from the complaints or declarations, and instead attempts to circumvent scrutiny under Fed. R. Civ. P. 15, which controls when a party can amend its pleadings. Plaintiffs are only entitled to amend their pleadings once as a matter of course, and even then they must do so promptly. *See* Fed. R. Civ. P. 15(a)(1). In this case, that time has passed. Amazon already amended its pleadings twice, and it has been nearly two years since Amazon first drew these parties before the Court. Amazon's failure to timely rectify its "mistake" is compounded by the fact that it has already amended its pleadings twice before, chose to include the attorney verifications and declarations each time, and can point to no good faith reason why it could not have made the requested changes at those times.

Accordingly, this Court should deny Plaintiffs' request to amend the complaint by withdrawing and substituting declarations.

### III. The Court Should Award the Watson Defendants' Fees and Costs Associated With the Noticed Depositions and This Motion.

Mr. Andrews and Mr. Sullivan did not appear for their noticed depositions. The Watson Defendants noticed the depositions of Mr. Andrews and Mr. Sullivan on February 28, 2022 and informed Amazon's counsel they intended to depose Ms. MacDonald on March 15, 2022. *See* Decl. of A. Houseal Ex. A. When Amazon's counsel informed Watson Defendants' counsel that

19

Mr. Andrews and Mr. Sullivan were not available on the originally noticed date, the parties worked together to find a mutually agreeable date and hoped March 28, 2022 would work. *Id*. Ex. D-E. When the Watson Defendants did not hear back from Amazon's counsel by March 22, 2022 and with discovery closing on April 8, 2022 (depositions were scheduled for every day through to April 8, 2022, but for March 28, 2022), they noticed the depositions of Mr. Andrews and Mr. Sullivan for March 28, 2022 and Ms. MacDonald for April 4, 2022. Decl. of A. Houseal, Exs. E-F. Amazon's counsel requested a call for March 24, 2022, and informed counsel for the Watson and Nelson Defendants they intended to file the present Motion. Decl. of A. Houseal ¶ 2. Mr. Andrews and Mr. Sullivan did not show up for their depositions on March 28, 2022. Decl. of A. Houseal ¶ 2.

The filing of this Motion did not absolve Mr. Andrews and Mr. Sullivan of the obligation to appear at their depositions. Upon information and belief, they did not show up pursuant to the request or direction of Amazon's counsel. The Court should award the Watson Defendants fees and costs related to arranging and attending the noticed depositions and responding to this Motion.

## CONCLUSION

For the above reasons, the Watson Defendants respectfully request that this Court DENY Plaintiffs' Motion, allow the depositions to proceed, prevent Amazon from amending the complaint

by substituting declarations and verifications, and award the Watson Defendants fees and costs related to the noticed depositions and this Motion.

Dated: April 1, 2022

<div style="margin-left:40%">

Respectfully submitted,

/s/ Jeffrey R. Hamlin
Stanley L. Garnett (*pro hac vice*)
Amanda K. Houseal (*pro hac vice*)
Brownstein Hyatt Farber Schreck, LLP
Telephone: 303.223.1100
Facsimile: 303.223.1111
sgarnett@bhfs.com
ahouseal@bhfs.com

Jeffrey R. Hamlin (VA Bar No. 46932)
George R. Calhoun (*pro hac vice*)
James Trusty (*pro hac vice*)
IFRAH PLLC
1717 Pennsylvania Avenue NW
Suite 650
Washington, DC 20006
Telephone: 202.524.4140
Facsimile:  202 524.4141
jhamlin@ifrahlaw.com
george@ifrahlaw.com
jtrusty@ifrahlaw.com

*Attorney for Defendants WDC Holdings, LLC and Brian Watson*

</div>

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 1, 2022, I will file the foregoing response, the Declaration of Amanda K. Houseal and Exhibits A through N with the Clerk of Court using the Court's CM/ECF system, which will send a notice of electronic filing (NEF) to all counsel of record. I will cause a copy of the filing and NEF to the following:

Casey Kirschner (*pro se*)
635 Alvarado Ln N
Plymouth, MN 55447