**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| AMAZON.COM, INC. and AMAZON DATA SERVICES, INC., | |
| Plaintiffs, | |
| v. | |
| WDC HOLDINGS LLC dba NORTHSTAR COMMERCIAL PARTNERS; BRIAN WATSON; STERLING NCP FF, LLC; MANASSAS NCP FF, LLC; NSIPI ADMINISTRATIVE MANAGER; NOVA WPC LLC; WHITE PEAKS CAPITAL LLC; VILLANOVA TRUST; CASEY KIRSCHNER; ALLCORE DEVELOPMENT LLC; FINBRIT HOLDINGS LLC; CHESHIRE VENTURES LLC; CARLETON NELSON; JOHN DOES 1-20, | CASE NO. 1:20-CV-484-RDA-TCB |
| Defendants. | |
| 800 HOYT LLC, | |
| Intervening Interpleader Plaintiff, Intervening Interpleader Counter-Defendant, | |
| v. | |
| BRIAN WATSON; WDC HOLDINGS, LLC; BW HOLDINGS, LLC, | |
| Interpleader Defendants, | |
| and | |
| AMAZON.COM, INC., and AMAZON DATA SERVICES, INC., | |
| Interpleader Defendants, Interpleader Counter-Plaintiffs. | |

**PLAINTIFFS AMAZON.COM, INC. AND AMAZON DATA SERVICES, INC.'S**
**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO**
**FILE THIRD AMENDED COMPLAINT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ iii

INTRODUCTION ......................................................................................................... 1

BACKGROUND ........................................................................................................... 3

I. The Procedural Background ................................................................................. 3

II. New Evidence And Factual Developments Support Amazon's Proposed TAC ............... 5

    A.   New Evidence Demonstrates Atherton Was An Active Participant In The Fraud .................................................................................................. 5

    B.   New Evidence Shows Other Entities Were Part Of The Scheme ........................... 8

    C.   New Evidence Further Implicates Straw Man Von Lacey As A Co-conspirator ................................................................................................. 8

    D.   Amazon's Settlement with IPI Further Informs The Proposed Changes To The Complaint .......................................................................... 9

    E.   The Third Amended Complaint Proposes Appropriate Clarifications And Narrowing Of Amazon's Claims ....................................................... 10

ARGUMENT .............................................................................................................. 11

I.   Amazon Satisfies Rule 15's Liberal Standard For Amendment ................................... 12

    A.   Amazon seeks to amend in good faith based on newly produced evidence ........ 12

    B.   Amendment will not unduly prejudice the Defendants ......................................... 14

II.   There Is Good Cause To Permit Amendment Under The Scheduling Order ............... 19

CONCLUSION ........................................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Aerotek, Inc. v. Tyonek Native Corp.*,
   2006 WL 1303142 (E.D. Va. Apr. 12, 2006) ........................................................................18

*Akira Techs., Inc. v. Conceptant, Inc.*,
   2018 WL 10467491 (E.D. Va. Apr. 12, 2018) ......................................................................12

*Amazon.com, Inc. v. WDC Holdings LLC*,
   2021 WL 3878403 (4th Cir. Aug. 31, 2021).............................................................................3

*Antanuos v. First Nat'l Bank of Ariz.*,
   2007 WL 1378542 (E.D. Va. May 1, 2007) ....................................................................12, 13

*Boyle v. United States*,
   556 U.S. 938 (2009).................................................................................................................16

*Builders Mutual Ins. Co. v. Dragas Mgmt. Corp.*,
   2011 WL 13229623 (E.D. Va. Mar. 11, 2011)................................................................14, 15

*Davis v. Piper Aircraft Corp.*,
   615 F.2d 606 (4th Cir. 1980) ..................................................................................................15

*Edwards v. City of Goldsboro*,
   178 F.3d 231 (4th Cir. 1999) ..................................................................................................13

*Francisco v. Verizon S. Inc.*,
   756 F. Supp. 2d 705 (E.D. Va. 2010) .....................................................................................12

*Galustian v. Peter*,
   591 F.3d 724 (4th Cir. 2010) ............................................................................................11, 12

*Global Locating Sys., LLC v. ShadowTrack 247, LLC*,
   2020 WL 2114381 (W.D.N.C. May 4, 2020) .........................................................................13

*In re Grand Jury Subpoena*,
   884 F.2d 124 (4th Cir. 1989) ..................................................................................................17

*Hancock Fabrics, Inc., v. Ruthven Assocs., L.P.*,
   2007 WL 593573 (E.D. Va. Feb. 20, 2007).............................................................................19

*Johnson v. Oroweat Foods Co.*,
   785 F.2d 503 (4th Cir. 1986) ..................................................................................................13

*King v. Deutsche Bank Nat'l Tr. Co.*,
   2010 WL 3745599 (E.D. Va. Sept. 21, 2010)..........................................................................13

*Laber v. Harvey*,
    438 F.3d 404 (4th Cir. 2006) ........................................................................12

*Lewis v. Jayco, Inc.*,
    2019 WL 4126504 (E.D. Va. Aug. 29, 2019)................................................20

*Nourison Rug Corp. v. Parvizian*,
    535 F.3d 295 (4th Cir. 2008) ........................................................................20

*Occupy Columbia v. Haley*,
    922 F. Supp. 2d 524 (D.S.C. 2013)...............................................................19

*Pulliam v. Clark*,
    2012 WL 1835717 (D.S.C. May 21, 2012).....................................................13

*RLI Insurance Co. v. Nexus Servs., Inc.*,
    2019 WL 1880148 (W.D. Va. Apr. 26, 2019) ...............................................19

*Scott v. Family Dollar Stores, Inc.*,
    733 F.3d 105 (4th Cir. 2013) ..................................................................18, 20

*Skinner v. First Am. Bank of Va.*,
    64 F.3d 659 (4th Cir. 1995) ..........................................................................18

*Smithfield Foods, Inc. v. United Food & Com. Workers Int'l Union*,
    254 F.R.D. 274 (E.D. Va. 2008) ....................................................................14

*Spartanburg Reg'l Healthcare Sys. v. Hillenbrand Indus., Inc.*,
    2005 WL 8165816 (D.S.C. May 6, 2005)........................................................12

*Stewart v. Coyne Textile Servs.*,
    212 F.R.D. 494 (S.D.W. Va. 2003)................................................................20

*United States v. Ruhbayan*,
    201 F. Supp. 2d 682 (E.D. Va. 2002) ...........................................................17

*W. Va. Hous. Dev. Fund v. Ocwen Tech. Xchange, Inc.*,
    200 F.R.D. 564 (S.D.W. Va. 2001)................................................................18

*Wall v. Fruehauf Trailer Servs., Inc.*,
    123 F. App'x 572 (4th Cir. 2005) .................................................................20

**STATUTES**

18 U.S.C. § 1343....................................................................................................16

18 U.S.C. § 1346....................................................................................................16

18 U.S.C. § 1956(a) ...............................................................................................16

**RULES**

Fed. R. Civ. P. 16(b) ...................................................................................................20

**TREATISES**

6 Wright & Miller, Fed. Prac. & Proc. § 1487 (3d ed. 2021) .................................15, 17

Plaintiffs Amazon.com, Inc. and Amazon Data Services, Inc. ("Amazon") hereby move under Rule 15(a) for leave to file a Third Amended Complaint.

## INTRODUCTION

Amazon seeks leave to file its Third Amended Complaint ("TAC").  Amazon's proposed amendment: (a) adds new Defendants that new evidence reveals to have played instrumental roles in the fraud and kickback scheme at issue in this action and (b) narrows and refines Amazon's allegations to streamline its claims and the ultimate trial of this action.

Discovery and other developments in the case have brought to light a wealth of new evidence about the scope of the scheme.  For example, Defendant Carleton Nelson ("Nelson") recently produced documents revealing that Defendant Casey Kirschner ("Kirschner") executed a signed statement admitting to the kickback scheme and admitting that an individual who had not been named as a Defendant, Rodney Atherton ("Atherton"), a Colorado lawyer previously suspended for ethics violations, was a crucial part of that scheme.  Kirschner admitted:

> I accepted money from Northstar associated with deals I worked on with Amazon. Carl Nelson and I formed Allcore through Rod Atherton.  Northstar paid kickbacks, which were paid to the Villanova Trust. The Villanova Trust was formed by my brother, Christian Kirschner. Brian Watson of Northstar paid the Villanova Trust associated with the Amazon development deals in Northern Virginia.  The Villanova Trust transferred 66% of the funds from Northstar to the 2010 Irrevocable Trust, which Rod Atherton set up. Rod Atherton then transferred the funds to me and Carl Nelson.

Ex. 1 at 36.

Nelson and Kirschner have, in the last two weeks, waived the attorney-client privilege they had previously asserted over communications with Atherton and have begun to produce documents they had withheld.  Nelson and Kirschner dropped their privilege assertions after Amazon advised them that it intended to file a motion asserting that communications with Atherton are not protected by privilege because of the crime-fraud exception.  This very recent discovery, as well as recent

discovery from other sources, has confirmed that Atherton (i) was a knowing participant in the scheme; (ii) created at least three shell entities not currently named as Defendants that were used to funnel and to conceal the kickbacks Nelson and Kirschner received; and (iii) recruited a "straw man" Demetrius Von Lacey ("Von Lacey") to act as a front for certain of the shell entities to conceal Nelson's and Kirschner's illicit conduct.  Recent discovery has also revealed that Renrets LLC ("Renrets"), a single member entity nominally controlled by Nelson's father-in-law, James M. Sterner, was also used to funnel and to conceal kickbacks paid to Nelson.  Amazon thus seeks to add all these newly discovered key participants in the fraud and kickback scheme—Atherton, Von Lacey, the three shell entities created by Atherton, and Renrets—as Defendants in its proposed TAC ("New Defendants").

        In its proposed TAC, Amazon also intends to streamline and simplify its allegations so that this matter is squarely focused on the key claims directly arising from Defendants' fraud and kick-back scheme.  Amazon intends to drop its claim under the Robinson-Patman Act, to eliminate its allegations under Virginia's pre-trial attachment statute, and to eliminate its allegations related to market prices for the real estate involved in the lease and direct purchase transactions that were a part of Defendants' scheme.  Similarly, Amazon does not intend to name Brian Watson ("Watson") and WDC Holdings, LLC ("Northstar," together with Watson the Northstar Defendants) as Defendants to its breach of contract claim because Amazon has now achieved a settlement with a third party, IPI, that mitigates the damages it would have suffered as a result of the lease agreements Amazon had previously entered with those Defendants and entities they controlled.  Amazon also proposes to refine its allegations identifying which Defendants have direct liability under its fraud and tortious interference claims.

Amazon has acted with diligence.  As a result of the preliminary injunction, related appeal, and other proceedings during the first 18 months of this case, general merits discovery involving all parties did not begin until January of this year.  Hundreds of thousands of pages of documents have been produced by the parties and the numerous third-parties who have been subpoenaed since that time and a significant number of depositions have been taken.  Amazon is seeking leave to file its TAC only after it has carefully reviewed and analyzed all of this discovery material to ensure it could add the additional Defendants in good faith.  The proposed TAC would not unduly prejudice the Defendants.  Amazon does not propose to add new claims or to change the nature of the claims that will remain pending.  Instead, Amazon intends to streamline its allegations, which will lessen the discovery and related burdens on all parties.  Accordingly, and for the good cause set forth herein, Amazon respectfully requests leave to file its TAC.

## BACKGROUND

### I.      The Procedural Background

This case arises from a fraud and kickback scheme that Nelson and Kirschner arranged to leverage their positions at Amazon into lucrative under-the-table payments from developers aiming to secure real estate deals with Amazon.  *See Amazon.com, Inc. v. WDC Holdings LLC*, 2021 WL 3878403, at *1 (4th Cir. Aug. 31, 2021).  Both this Court and the Fourth Circuit have concluded, based on the considerable documentary evidence of the conspiracy that Amazon was able to produce prior to discovery, that Amazon is likely to succeed on the merits.  Dkts. 99, 318–319.

Amazon learned of some of this conduct from two informants in the winter of 2019–20 and filed its original Complaint (naming only Watson, Northstar, Villanova Trust, White Peaks Capital LLC, Nova WPC LLC, and several Northstar entities as Defendants) in April 2020, shortly after the FBI conducted a raid on Watson's home.  Dkt. 1 ¶¶ 14–21. Because of the danger that Watson would compromise Amazon's confidential business information and dissipate the proceeds of the

fraud, Amazon sought and obtained a temporary restraining order, later converted into a preliminary injunction, barring Watson from spoliating evidence, dissipating assets linked to Northstar's transactions with Amazon, or compromising Amazon's confidential information.  Dkts. 16, 99.  Amazon's First Amended Complaint was filed in August 2020, while the preliminary injunction was on appeal, and included Nelson and Kirschner as named Defendants.  Amazon filed its Second Amended Complaint, which expanded its allegations, including allegations about an additional purchase transaction (the Blueridge sale), SAC ¶¶ 7, 314–326, and consolidated Amazon's understanding of the racketeering enterprise, *id.* ¶¶ 358–433, in mid-September 2020, also while the preliminary injunction was pending on appeal.[1]

This Court denied the Defendants' motions to dismiss or transfer the action on February 1, 2021.  *See* Dkts. 164, 165, 174, 175, 176, 179, 181, 256.  The Defendants then Answered the Second Amended Complaint in mid-February 2021, Dkts. 270, 273, 274, 275, which the Northstar Defendants amended in April 2021, Dkt. 277, 280, but the Court did not set a discovery schedule until December 2021.[2]

General discovery involving all parties began in early 2022 and is ongoing.  The Scheduling Order does not set a fixed deadline for amendments to the pleadings but instructs the parties that "[a]ny motion to amend the pleadings or to join a party must be made as soon as possible after counsel or the party becomes aware of the grounds for the motion."  Dkt. 455 ¶ 12(b).

---

[1]  Due to a clerical error, Amazon included incorrect contract language in the First Amended Complaint.  It corrected that error in the Second Amended Complaint.  *See* Dkts. 134, 138, 150.

[2]  The Court ordered limited injunction-related discovery while the appeal was pending.  The process was contentious, and the Court ultimately concluded that Watson and Northstar "willfully failed to comply with [the] Court's prior discovery orders . . . and their discovery obligations under Federal Rule of Civil Procedure 37."  Dkt. 330 at 1.  The Court held the Northstar Defendants in contempt of the Court's Injunction and imposed sanctions, appointing a Receiver to administer Northstar and Watson's personal assets.  Dkts. 413, 433.

II.     **New Evidence And Factual Developments Support Amazon's Proposed TAC**

Documents recently produced in discovery, including after the waiver of certain privilege assertions by Nelson, Kirschner, and Kirschner's brother, Christian Kirschner, have improved Amazon's understanding of the scope of the Defendants' scheme and the role played by various of its participants.  In addition, Amazon's recent settlement with IPI has altered the landscape in important ways.

Recent changes in the Defendants' defense strategies have also shifted the landscape.  In response to Amazon's discovery requests, Nelson and Kirschner initially asserted that their communications with Atherton were privileged and protected.  Ex. 16.  Atherton, in turn, moved to quash Amazon's third party subpoena against him, asserting attorney client and work product privileges. *Amazon.com, Inc. v. WDC Holdings*, No. 22-mc-8 (D. Colo. 2022).  After further discussions with Amazon, in which Amazon indicated that it would move to overcome these privilege assertions under the crime-fraud exception, both Nelson and Kirschner waived their privilege assertions and agreed to produce all responsive communications with Atherton.  Exs. 2-3.  Separately, and in response to Amazon's inquiries following Atherton's motion to quash, Christian Kirschner confirmed in writing during the past month that he too had waived privilege over his communications with Atherton.  Ex. 4.  The documents produced following these privilege waivers have also provided important new information about Defendants' fraudulent scheme.

**A.  New Evidence Demonstrates Atherton Was An Active Participant In The Fraud**

When it filed the SAC, Amazon was aware that Atherton had created a variety of shell entities that the conspirators used to further the scheme.  But discovery has greatly expanded Amazon's understanding of Atherton's role and has demonstrated that he was a knowing and active co-conspirator.  Among the documents produced following the Defendants' recent privilege waiver is the ████████████████████████████████████████.  That ████████████



Ex. 5 at 4.

*Id.* at 1–2.  According to another newly produced document, Kirschner made a signed statement that he and Nelson set up both AllCore and the 2010 Irrevocable Trust "through Rod Atherton," that "Rod . . . transferred the [kickback] funds to me and Carl Nelson," and that "Rod . . . knew that the money paid to the 2010 Irrevocable Trust [through Villanova Trust] was from Northstar, and he knew that Carl Nelson and I worked for Amazon." Ex. 1 at 36.  Documents produced in discovery and introduced at Christian Kirschner's recent deposition confirm these transfers, showing that Christian Kirschner directed that Villanova Trust transfer millions of dollars to the other New Defendants that were organized and managed by Atherton.  Exs. 6-7.  These new documents add to evidence previously known to Amazon in which Nelson stated that "Rod's job is to make us invisible" and indicated that Atherton became important after Nelson realized that he was not "comfortable" about the structure of "[t]he first couple distributions we took" which came "through Casey's brother."  Dkt. 212-13 at 8.

In another recently produced document, Atherton appears to have exchanged text messages with Christian Kirschner in which Atherton explained he "want[ed] to help with the stuff you and Casey are working on and my mind is on overdrive on it."  Ex. 8 at 1.  Atherton wrote to Christian Kirschner that he was "on board" with the scheme and that they would "have to pay fees to AllCore (Carl and Casey)."  *Id.* at 2.

Other messages show that Christian Kirschner was in regular contact with Atherton throughout the course of the kickback scheme.  Ex. 8.  Casey Kirschner and his brother Christian regularly discussed Atherton and his role as a central part of their scheme.  In messages exchanged in June 2018, Christian told Casey that Watson would be wiring them $1.2 million, prompting Casey to respond, "Did you talk to Rod [Atherton]."  Ex. 9 at 2.  Christian responded that he had spoken with Atherton and "ha[d] a solution."  *Id.*  Two months later, Christian and Casey messaged one another about a further $1.2 million they were receiving from Northstar, about which Casey asked Christian to "work with Rod [Atherton] to have our shares wired to his Trust" because Casey had "just talked to [Atherton and] he will disperse to us from there."  *Id.*  Two months later, the brothers again exchanged messages about a further $1.3 million wired to Atherton and passed on in turn to them.  *Id.* at 3.

Throughout the process, Atherton played an active role in the scheme, both advising and facilitating the acts taken by the other conspirators.   One document produced following Kirschner's privilege waiver shows that ███████████████████████████████████████ ███████████████████████████████████████████████████████████████ ████████████████████████████████████████.  Ex. 10 at 3.  And in November 2019, when Christian Kirschner became concerned by Northstar's failure to transfer some of the expected funds, Atherton revised Christian Kirschner's messages to Watson to strengthen Kirschner's bargaining position and further the kickback scheme.  Ex. 8 at 4.  In that same exchange, Atherton strategized with Christian Kirschner on ways to expand their business, drawing in new investors to increase their ability to expand their opportunities.  *Id.* at 4–5.  In return for his participation in the scheme, ████████████████████████████████.  *See, e.g.*, Ex. 14 (showing ███████████████████████████████████).

### B.  New Evidence Shows Other Entities Were Part Of The Scheme

Ongoing third-party discovery has also shaped Amazon's understanding of the shell enti-ties that Nelson, Kirschner, Christian Kirschner, and Atherton used to disguise the fraud.  For example, Amazon recently received a non-party production containing bank statements of Nelson and Kirschner.  Those bank statements reflect the flow of proceeds of the fraudulent scheme from the 2010 Irrevocable Trust, CTBSRM, or Sigma Regenerative Solutions (all shell entities created by Atherton) into accounts held by Kirschner, Nelson, or Nelson's entity Cheshire Ventures, also created by Atherton.  Ex. 11.  Bank records also show that money from at least one of these shell entities was routed through another single-member LLC, newly added Defendant Renrets LLC.  Ex. 12 at 3.  Nelson's father-in-law is listed as the sole signatory for the relevant Renrets bank account.  Ex. 13.

Documents recently produced following Kirschner's privilege waiver also confirm the role played by these Atherton entities.  One such document shows ███████████████████████████ ████████████████████████████████████████████████████████████████████ ██████████████████████████████████.  Ex. 14.  Taken together, these newly produced documents show that the Defendants used these entities in much the same way they used Cheshire Ventures, Allcore Development, and Finbrit Holdings (also Atherton-created entities)—that is, as pass throughs in an elaborate effort to launder, shelter, or disguise the flow of money from the Amazon deals into the pockets of the co-conspirators.

### C.  New Evidence Further Implicates Straw Man Von Lacey As A Co-conspirator

In addition to counseling Nelson, Kirschner, and Christian Kirschner in relation to the kick-back scheme, Atherton also arranged for them to work with Von Lacey, a straw man who posed as the front for some of the Atherton-created entities.  Based on the discovery obtained to date, it

appears that the co-conspirators went to considerable lengths to shield Von Lacey and to hide their actions behind him.  For example, a ███████████████████████████████████████ ████████████████████████████████████████.  Ex. 1 at 29.  The documents Amazon has obtained show that, once Von Lacey was brought into the scheme, he acted as the President of AllCore and served as a front for money transfers between Nelson, Kirschner, and their co-conspirators.  In a message exchange proposing Von Lacey's participation in the scheme, Atherton introduced Von Lacey to Christian Kirschner as "a quality guy."  Ex. 8 at 1.  Nelson moved forward with this arrangement, writing that they would "pay Von Lacey to be a straw guy," Dkt. 212-13 at 30, and that ████████████████████████████████████████████████ ████████ Ex. 1 at 28.

After joining the conspiracy, Von Lacey's role appears largely to have been as a paper face for the entities, but there is also evidence that he may have taken a more direct part.  One recently produced ████████ provided after Kirschner waived privilege over his conversations with Atherton, ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████.  Ex. 15.  Another ████████████████████████████ ████████████████████████████████.  Ex. 14.  This evidence, and other documents and testimony, are sufficient to demonstrate that Von Lacey was a participant in the scheme—whether as a straw man or as a co-planner—and justifies his inclusion as a Defendant.

### D. Amazon's Settlement with IPI Further Informs The Proposed Changes To The Complaint

Although Watson and Northstar were able to rely on Nelson and Kirschner's illicit support to secure lease deals with Amazon, Northstar lacked the capital to plausibly take on the projects. In order to secure that capital (and the legitimacy that comes from working with an established

entity), Watson brought in IPI as an investment partner in the joint ventures that secured the lease deals with Amazon.  Watson and Northstar hid the evidence of the fraud from IPI.  When Amazon and IPI discovered the fraud involved in these transactions, they acted to remove Watson and Northstar from control of the landlord entities.  *See* Dkt. 563-4 at 2.  IPI took on sole management of those entities.  *Id.*  Amazon and IPI entered into long-running negotiations to determine how to amend the leases to remove the impact of the fraud.  At the close of 2021, after more than a year of negotiations, Amazon and IPI ███████████████████████████████████████ ████████████████████████████████████.  *Id.* at 2–5.  ███████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████.  *Id.* at 3–4.  The ███████████████████████████████████████████████████████ ████████████████████████████████.  *Id.* at 4.  In total, ██████████████ ████████████████████████████████████████.  As a result of this renegotiation, Amazon has been able to mitigate its damages, in part, and proposes to amend its claims, including by dropping its breach of contract claim against Northstar and Watson, to reflect these developments.

### E.  The Third Amended Complaint Proposes Appropriate Clarifications And Narrowing Of Amazon's Claims

Amazon proposes changes in the Third Amended Complaint that streamline its claims, provide the Defendants (both the existing Defendants and those newly added) with more information and more specific detail about Amazon's theory of the case, and identify with greater specificity than was previously possible the particular claims asserted against each Defendant.  The TAC makes a number of changes in its general allegations to better reflect Amazon's understanding of the facts.  It also significantly streamlines the claims, both by dropping some claims entirely

and also by more specifically identifying the Defendants the remaining claims are asserted against.

The proposed TAC, for example:

- Adds Atherton, Von Lacey, 2010 Irrevocable Trust, Sigma Regenerative Services, CTBSRM, and Renrets LLC as Defendants;

- Drops claims for pre-trial seizure of assets under Virginia's pre-trial attachment statute;

- Drops anti-trust claim for breach of the Robinson-Patman Act;

- Asserts Fraud against Nelson, Kirschner, Watson, Northstar, and the White Peaks Defendants (previously asserted against all Defendants);

- Asserts Tortious Interference against Watson, Northstar, and the White Peaks Defendants (previously asserted against all Defendants);

- Asserts breach of contract against Nelson and Kirschner (previously asserted against all Defendants);

- Removes separate claim for declaration of alter ego/veil piercing[3];

- Removes separate claim for agency/respondeat superior;[4] and

- Removes separate claim for preliminary injunctive relief (because such relief has already been granted).[5]

The proposed TAC now captures Amazon's understanding of the fraudulent scheme as a whole.

## ARGUMENT

Rule 15 permits a party to amend its pleadings with "the court's leave" and directs that

"[t]he court should freely give leave." Fed. R. Civ. P. 15.[6]  "It is this Circuit's policy to liberally

---

[3]  Amazon continues to argue alter ego as a theory of liability in other claims.

[4]  Amazon reserves the right to assert agency/respondeat superior as a theory of liability.

[5]  Amazon continues to assert its entitlement to preliminary and permanent injunctive relief, including in its prayer for relief.  The TAC  alleges that the preliminary injunction entered by the Court should remain in effect.

[6]  Rule 15 continues to govern motions to amend even when the Amendment would add new parties to the action.  *Galustian v. Peter*, 591 F.3d 724, 730 (4th Cir. 2010) (rejecting argument that Rule 21 and not Rule 15 governs amendments that add parties.).

allow amendment in keeping with the spirit of [Rule] 15(a)." *Galustian*, 591 F.3d at 729. "A Rule 15(a)(2) motion may only be denied where the Court finds one of the following circumstances present: 1) amendment would be prejudicial to the opposing party, 2) there has been bad faith on the part of the moving party, or 3) amendment would be futile." *Akira Techs., Inc. v. Conceptant, Inc.*, 2018 WL 10467491, at *2 (E.D. Va. Apr. 12, 2018).

## I. Amazon Satisfies Rule 15's Liberal Standard For Amendment

### A. Amazon seeks to amend in good faith based on newly produced evidence

Rule 15 imposes a standard that favors amendment and places only minimal barriers before a party seeking to amend. *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (holding district court abused its discretion by denying post-judgment motion to amend the pleadings). "This liberal rule gives effect to the federal policy in favor of resolving cases on their merits instead of disposing of them on technicalities." *Id.* Amendment is particularly appropriate when a party uncovers evidence supporting new allegations during discovery. "[D]iscretionary amendments interposed during or promptly after discovery proceedings which have revealed the existence of facts not previously known have been allowed over objections to their timeliness under Rule 15(a) . . . , the courts reasoning that litigants should not be required to forward claims or defenses on the bases of mere suspicion." *Antanuos v. First Nat'l Bank of Ariz.*, 2007 WL 1378542, at *4 (E.D. Va. May 1, 2007) (quotation marks omitted); *see also Spartanburg Reg'l Healthcare Sys. v. Hillenbrand Indus., Inc.*, 2005 WL 8165816, at *3, *7 (D.S.C. May 6, 2005) (granting leave to amend and modify scheduling order based on newly discovered evidence uncovered in the course of discovery); *Francisco v. Verizon S. Inc.*, 756 F. Supp. 2d 705, 717 (E.D. Va. 2010) (allowing amendment of answer to "conform [the] pleading to facts which were revealed during discovery"). Here, when Amazon filed the operative complaint, it had limited knowledge of the role Atherton, the New Defendants that he created, and Von Lacey played in the kickback scheme. Discovery has

since produced a wealth of admissible evidence that the New Defendants, including Atherton, played an active part in the conspiracy and share liability with the existing Defendants.[7]

Amazon has acted with diligence to analyze the hundreds of thousands of pages produced by the parties in discovery and to seek to amend promptly based on the evidence discovered as a result of that assessment.  In any event, courts in the Fourth Circuit have repeatedly held that "[d]elay alone is an insufficient reason to deny leave to amend," *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999), and that amendment should be permitted "[e]ven if the Defendant is correct that the Plaintiff could have filed its Motion to Amend sooner" provided the Defendant does not show that the Plaintiff "acted in bad faith," *Global Locating Sys., LLC v. ShadowTrack 247, LLC*, 2020 WL 2114381, at *2 n.3 (W.D.N.C. May 4, 2020); *see also King v. Deutsche Bank Nat'l Tr. Co.*, 2010 WL 3745599, at *7 (E.D. Va. Sept. 21, 2010) (allowing amendment three days after close of discovery and less than two months prior to scheduled start of trial).

In light of Amazon's newly discovered evidence, there is ample basis to permit amendment and to allow Amazon to add the New Defendants as parties.  *See Pulliam v. Clark*, 2012 WL 1835717, at *12 (D.S.C. May 21, 2012) (permitting amendment to include new claims against new parties).  Amazon's allegations against Atherton are substantial and are supported by considerable documents, produced in discovery, showing that Atherton was a part of the existing Defendants' racketeering enterprise and unlawful conspiracy.  These allegations are more than sufficient to justify their inclusion.  *See Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986).

---

[7]  The direct evidence implicating the New Defendants as active members of the scheme justifies adding them as an additional Defendant and distinguishes this case from *Antanuos* where the Court permitted amendment to include new factual allegations in the Complaint but denied leave to add new defendants against whom the plaintiff could make assertions only based on information and belief and who were, at most, agents of the existing defendants rather than co-conspirators.  2007 WL 1378542, at *6.

Amazon alleges that Atherton formed multiple shell entities for the existing Defendants for the purpose of concealing their kickback scheme. *See, e.g.*, TAC ¶ 198. Atherton was aware of his clients' illegal conduct and knowingly enabled them to conceal the kickbacks in exchange for personal profit. *See, e.g., id.* ¶¶ 201, 289–294, 309, 318. Atherton participated in multiple racketeering predicates and was an integral part of the Defendants' racketeering enterprise. *See id.* ¶¶ 376–451. These allegations, like the similar allegations against the existing Defendants, are more than adequate to plead claims against Atherton. *See* Dkt. 256 at 1.

Similarly, evidence newly provided from the existing Defendants and from various third parties shows that additional Atherton-created entities (the 2010 Irrevocable Trust, CTBSRM and Sigma Regenerative Solutions) and Renrets LLC were used to conceal transfers of money from the fraud to the existing Defendants. This evidence also shows that Von Lacey was brought into the scheme by Atherton to act as a front for the scheme (indeed, one document lists Von Lacey's personal address as Atherton's law office). Taken together, this additional evidence supports amendment to include all of the New Defendants.

## B. Amendment will not unduly prejudice the Defendants

Leave to amend under Rule 15 should only be denied if the amendment would be futile or would "be prejudicial to the opposing party." *Builders Mutual Ins. Co. v. Dragas Mgmt. Corp.*, 2011 WL 13229623, at *2 (E.D. Va. Mar. 11, 2011) (quotation marks omitted). While it is true that "'almost every amendment . . . results in some prejudice,' the relevant test is whether the opposing party would suffer from 'undue prejudice.'" *Id.* (quoting *Smithfield Foods, Inc. v. United Food & Com. Workers Int'l Union*, 254 F.R.D. 274, 277 (E.D. Va. 2008)). Undue prejudice exists if "the amendment would require the parties to 'engage in significant new preparation' or would result in 'added expense and the burden of a more complicated and lengthy trial.'" *Id.* (quoting *Smithfield*, 254 F.R.D. at 277). "Delay alone . . . without any specifically resulting prejudice, or

any obvious design by dilatoriness to harass the opponent, should not suffice as reason for denial" of leave to amend.  *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980).  There is no undue prejudice to the existing parties in this action.  The nature and type of Amazon's claims against the existing Defendants has not changed—the core allegations and the legal claims remain as they were under the prior Complaint and during the period of discovery that has already been completed.  In fact, amendment would implicate none of the traditional sources of prejudice under Rule 15: the proposed amendment does not "substantially change[] the theory on which the case has been proceeding" nor is it "proposed late enough so that the opponent would be required to engage in significant new preparation."  6 Wright & Miller, Fed. Prac. & Proc. § 1487 (3d ed. 2021).  The proposed amendment would not "result in [the] defendant being put to added expense and the burden of a more complicated and lengthy trial" nor does the amendment introduce issues "remote from the other issues in the case" that "might confuse or mislead the jury."  *Id.*  To the contrary, the new allegations and parties merely present a more complete description of the conspiracy already alleged in the operative complaint.  Far from prejudicing or burdening the Defendants, the proposed amendment may well reduce the burdens they face.  Amazon's amended pleading drops Count XI, which asserted anti-trust claims based on alleged violations of the Robinson-Patman Act.  SAC ¶¶ 569–579.  Permitting amendment will relieve the Defendants of the considerable burden and expense of litigating this anti-trust claim, with its associated costs in expert and other evidentiary work.

Nor does Amazon's proposed amendment require "significant new preparation" or impose "added expense and the burden of a more complicated and lengthy trial" on the existing Defendants.  *Builders Mutual*, 2011 WL 13229623, at *3 (quotation marks omitted).  The existing Defendants would need to confront the same evidence about the New Defendants' roles in facilitating

15

their conspiracy whether they are added as parties or not—that evidence is relevant to demonstrating that the existing Defendants acted as an "enterprise" for purposes of the Racketeer Influenced and Corrupt Organizations Act (RICO) claim. SAC Count I. The enterprise in this conspiracy includes the New Defendants, including Atherton, and their participation assists in demonstrating that the existing Defendants formed an enterprise with the necessary "three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 946 (2009). So too, Atherton's role is relevant to showing that the existing Defendants acted with the scienter necessary for Amazon's fraud and money laundering predicates. *See* SAC ¶¶ 371–378 (wire fraud); 379–391 (honest services fraud); 392–400 (money laundering). The New Defendants' facilitation and support of the conspiracy will already be relevant to show Nelson and Kirschner "obtain[ed] money [and] property . . . by means of false or fraudulent pretenses, representations, or promises" and by transmitting "writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice." 18 U.S.C. § 1343; *see also* 18 U.S.C. § 1346; 18 U.S.C. § 1956(a)(1) (prohibiting financial transactions "with the intent to promote the carrying on of specific unlawful activity" or "knowing that the transaction is designed in whole or in part . . . to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity").

Even the question of whether Atherton acted as a co-conspirator rather than a legal adviser is *already* present in this case. Atherton has asserted attorney-client and work product privilege in response to an Amazon subpoena. While some of Atherton's clients have waived privilege, and now indicate that they will assert an advice-of-counsel defense, other clients (including shell entities that are existing Defendants) have yet to waive. Amazon asserts that *all* of these privileges

16

are vitiated under the crime-fraud exception by Atherton's active participation in the scheme.  Under that rule, communications between an attorney and his purported client are not privileged "if made for the purpose of committing or furthering a crime or fraud." *In re Grand Jury Subpoena*, 884 F.2d 124, 127 (4th Cir. 1989).  In order for the crime-fraud exception to apply, Amazon must make a *prima facie* showing "(1) that the defendant was engaged in or planning a criminal or fraudulent scheme and used his counsel to further the scheme, and (2) that the privileged information bears a close relationship to the criminal or fraudulent scheme." *United States v. Ruhbayan*, 201 F. Supp. 2d 682, 685–86 (E.D. Va. 2002).  This is essentially the same showing, on the same evidence, that supports Amazon's allegations that Atherton acted as a co-conspirator alongside the existing Defendants.  And these questions are *already* going to be litigated in this action and in related actions.  *See, e.g.*, *Amazon.com, Inc. v. WDC Holdings, Inc.*, No. 22-mc-8 (D. Colo. 2022).

The possibility of prejudice here is also reduced because neither the existing Defendants nor the New Defendants can claim to be "surprise[d]" by the new allegations—the Defendants "should have recognized that the new matter included in the amendment would be at issue" both because the operative complaint already discussed Atherton's involvement in the scheme (to the extent Amazon was aware of it at that early stage in the litigation) and because Amazon's new allegations are, in large part, based on documents newly obtained *from the Defendants*.  Wright & Miller, *supra*, § 1487.  Both the existing Defendants and Atherton have already been aware that Atherton's role in the scheme could be a subject of inquiry at trial.  The operative complaint makes repeated reference to Atherton's involvement (as Amazon knew Atherton had advised the existing Defendants but was unsure of his liability in the scheme), *see* SAC ¶¶ 6, 37–44, 94, 98–106, and Atherton has sought to avoid producing communications among them not on the basis that these documents are irrelevant but on the basis that they are privileged.  *See Amazon.com, Inc. v. WDC*

17

*Holdings, LLC*, No. 22-mc-8 (D. Colo. 2022).  In these circumstances, amending to include new allegations, or even new claims related to the allegations already in the operative complaint, is not prejudicial to the Defendants.  *See W. Va. Hous. Dev. Fund v. Ocwen Tech. Xchange, Inc.*, 200 F.R.D. 564, 567–68 (S.D.W. Va. 2001) (amendment not prejudicial even when it adds new claims because the new claim "adds only the knowledge of Defendants of these insufficiencies [in contracted services] and their intent to conceal that putative knowledge from the [Plaintiff]").

Permitting amendment will have minimal impact on the discovery that has already taken place and that continues to take place.  Indeed, that discovery is still underway simply establishes that amendment is not prejudicial to the Defendants.  *Scott v. Family Dollar Stores, Inc.*, 733 F.3d 105, 119 (4th Cir. 2013) ("Because the parties were still in discovery, and many steps removed from trial, the purported undue prejudice to Family Dollar is overstated."); *see also Skinner v. First Am. Bank of Va.*, 64 F.3d 659 at *3 (Table) (4th Cir. 1995) ("extensive discovery is not prejudicial when the results of discovery may be used in a subsequent action").  Nor is it prejudicial to permit amendment when "discovery is coming to a close" simply because permitting amendment would introduce a new defendant and may "extend discovery."  *Aerotek, Inc. v. Tyonek Native Corp.*, 2006 WL 1303142, at *3 (E.D. Va. Apr. 12, 2006) (allowing amendment to add party based on newly discovered evidence and deposition testimony).  Because there is every indication that the New Defendants, including Atherton, and the existing Defendants "worked in concert with each other," "[a]llowing this matter to progress as one case rather than requiring Plaintiff[s] to file a separate case" against Atherton "is especially warranted" and, far from prejudicing the parities, will serve "the interests of judicial economy and justice."  *Id*.

Finally, despite any arguments the Northstar Defendants may make to the contrary, the preliminary injunction and receivership neither alter the rule favoring amendment nor result in

18

undue prejudice on the existing Defendants.  Courts routinely grant motions to amend after entering preliminary injunctions.  *See, e.g., Occupy Columbia v. Haley*, 922 F. Supp. 2d 524, 529–30 (D.S.C. 2013); *Hancock Fabrics, Inc., v. Ruthven Assocs., L.P.*, 2007 WL 593573, at *2, 9 (E.D. Va. Feb. 20, 2007).  This is true even when the injunction imposes financial conditions on existing parties.  In one case, a district court in this circuit permitted amendment despite a defendant's argument that the amendment would extend the amount of time that he would have to comply with an injunction that required the defendant to make monthly payments to the plaintiff.  *RLI Insurance Co. v. Nexus Servs., Inc.*, 2019 WL 1880148, at *5 (W.D. Va. Apr. 26, 2019).  Moreover, the amendments Amazon proposes would streamline the litigation and allow for a quicker and more comprehensive resolution of the claims.  Allowing the amendment may ultimately *lessen* the amount of time the Northstar Defendants are subject to the preliminary injunction and receivership.  And finally, the Northstar Defendants have the power to mitigate any prejudice they may assert.  They could end the receivership by complying with this Court's order granting the preliminary injunction, or the Northstar Defendants could work with Amazon to find a suitable alternative to the current terms of that injunction.  Amazon has  always been open to modifying the injunction if the Northstar Defendants are willing to post some form of security; the Northstar Defendants have yet to take Plaintiffs up on this offer.  As a result, any argument the Northstar Defendants may make with respect to the preliminary injunction and receivership should not stand in the way of an amendment.

## II.  There Is Good Cause To Permit Amendment Under The Scheduling Order

The Scheduling Order in this case does not set a deadline for the parties to seek amendment, requiring only that the party seeking amendment do so "as soon as possible after counsel or the party becomes aware of the grounds for the motion."  Dkt. 455 ¶ 12(b).  Amazon has acted promptly, seeking to amend its  pleading as soon as it became aware, based on documents produced

19

in discovery and on late-breaking privilege waivers, that Atherton, other shell entities, and Von Lacey acted as a co-conspirator in the scheme. That impression has been heightened by the Defendants' decision to assert an advice-of-counsel defense, which underscores the importance of Atherton's participation in the scheme. And the evidence that Amazon has prepared and reviewed in anticipation of asserting the crime-fraud exception further demonstrates that Atherton's participation was far from benign.

Nevertheless, to the extent amendment may necessitate alteration of the scheduling order, there is good cause to amend and modify the case schedule. *See* Fed. R. Civ. P. 16(b)(4); *Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008) (modification of scheduling order pursuant to amendment requires showing of good cause). "The primary consideration of the Rule 16(b) 'good cause' standard is the diligence of the movant." *Lewis v. Jayco, Inc.*, 2019 WL 4126504, at *3 (E.D. Va. Aug. 29, 2019) (quotation marks omitted). Good cause to modify the schedule to permit amendment exists when the evidence produced in discovery provides the basis for the amendment. *See id.* at *3 n.5; *see also Stewart v. Coyne Textile Servs.*, 212 F.R.D. 494, 497 (S.D.W. Va. 2003). That good cause exists even when the movant could have obtained the information by other means prior to obtaining it in discovery. *Stewart*, 212 F.R.D. at 497. That is why the Fourth Circuit has not only permitted amendment during discovery, but has held that the denial of amendment while discovery is ongoing can be an abuse of discretion. *See Scott*, 733 F.3d at 119. Indeed, this Circuit has even held that good cause exists when a party seeks to amend based on newly obtained information *after discovery has closed* and the amendment would require re-opening discovery. *Wall v. Fruehauf Trailer Servs., Inc.*, 123 F. App'x 572, 576–77 (4th Cir. 2005) (good cause to modify and amend because denial of amendment "would have forced [Plaintiff] to litigate an entirely new and separate action based on the same set of facts").

20

Amazon has acted diligently in seeking to amend.  The documents and waivers that are the basis for Amazon's allegations were produced by the existing Defendants as part of the ongoing discovery.

## CONCLUSION

The Court should grant leave to amend and file the proposed Third Amended Complaint attached to this motion.

Dated:  April 1, 2022

Respectfully submitted,

*/s/ Michael R. Dziuban*

Veronica S. Moyé (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
Telephone:  (214) 698-3100
Facsimile:  (214) 571-2900
vmoye@gibsondunn.com

Elizabeth P. Papez (*pro hac vice*)
Patrick F. Stokes (*pro hac vice*)
Claudia M. Barrett (*pro hac vice*)
David W. Casazza (*pro hac vice*)
Michael R. Dziuban (Va. State Bar No. 89136)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
Telephone:  (202) 955-8500
Facsimile:  (202) 467-0539
epapez@gibsondunn.com
pstokes@gibsondunn.com
cbarrett@gibsondunn.com
dcasazza@gibsondunn.com
mdziuban@gibsondunn.com

*Counsel for Plaintiffs Amazon.com, Inc. and Amazon Data Services, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 2, 2022, I electronically filed the foregoing with the Clerk of

Court using the CM/ECF system.  I will then send the document and a notification of such filing

(NEF) to the following parties via U.S. mail to their last-known address and by email, where noted:

> Casey Kirschner
> 635 N. Alvarado Lane
> Plymouth, MN 55447
> By email: casey.kirschner@gmail.com

> *s/ Michael R. Dziuban*
> Michael R. Dziuban
> GIBSON, DUNN & CRUTCHER LLP
> 1050 Connecticut Avenue, N.W.
> Washington, D.C. 20036-5306
> Telephone:  (202) 955-8500
> Facsimile:  (202) 467-0539
> mdziuban@gibsondunn.com

> *Counsel for Plaintiffs Amazon.com, Inc. and Amazon Data Services, Inc.*