# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF VIRGINIA
# ALEXANDRIA DIVISION

| | |
|---|---|
| AMAZON.COM, INC and AMAZON DATA SERVICES, INC., <br><br> Plaintiffs, <br><br> v. <br><br> WDC HOLDINGS LLC d/b/a NORTHSTAR COMMERCIAL PARTNERS, et al., <br><br> Defendants, <br><br>―――――――――――――――――― <br><br> 800 HOYT LLC, <br><br> Intervening Interpleader Plaintiff, <br><br> v. <br><br> BRIAN WATSON, WDC HOLDING LLC, PLW CAPITAL I, LLC.AMAZON.COM, INC, and AMAZON DATA SERVICES, INC. <br><br> Interpleader Defendants. | Case No. 1:20cv484 <br><br> **Hon. Rossie D. Alston, Jr.** <br> **Hon. Theresa Buchanan** <br><br><br><br><br><br> **DEFENDANT CARLETON NELSON'S OBJECTION TO THE MARCH 11, 2022 ORDER PRECLUDING THE DEPOSITION OF PETER DESANTIS (DOC. 577)** |

Pursuant to Federal Rule of Civil Procedure 72(a), Defendant Carleton Nelson ("Nelson") respectfully submits the following Objection to part of U.S. Magistrate Judge Buchanan's March 11, 2022 Order (Doc. 577), specifically the portions of that Order granting a protective order precluding the depositions of Peter DeSantis on the basis of the apex doctrine, despite his active role in the approval of the eleven transactions at issue in this action. Rule 72(a) allows a party to request the Court to modify or set aside any part of a magistrate judge's order that is clearly erroneous or is contrary to law. Fed. R. Civ. P. 72(a); *see also Sectek Inc. v. Diamond*, No.

115CV1631GBLMSN, 2016 WL 5897763, at *2 (E.D. Va. Oct. 6, 2016). In support of this objection, Nelson submits the transcript of the hearing (because the Order granting the relief provided that the protective order was being granted for the reasons stated on the record), the Declaration of Adam Smart and exhibits thereto, and all matters of record.

## Introduction

Plaintiffs Amazon.com, Inc. and Amazon Data Services, Inc. ("Amazon") seek tens of millions of dollars in damages based at least in part on allegations that they "rel[ied] on" certain "misrepresentations and omissions" that Mr. Nelson and other Defendants made to the company. But when Mr. Nelson sought to depose the decision makers at Amazon who ostensibly relied on the information he provided—and approved the transactions that are the very subject of this lawsuit—Amazon filed a motion seeking to block any such deposition from beginning.

This objection focuses on one of those decision makers, Peter DeSantis. DeSantis' approval was necessary for each of the eleven transactions at issue in this action to proceed. When deciding to block DeSantis' deposition, the Magistrate Judge concluded that Mr. DeSantis "signing off on it is not unique knowledge. It would have to be something more than that." Ex A to Smart Decl. at p. 7 ln. 4-6.

Respectfully, when issuing its decision, the Court misapplied the applicable standard. Further, even under the standard the Court applied, the evidence set forth as to the role Mr. DeSantis played in the decision to proceed with the transactions demonstrates unequivocally that his role was not simply that of signing off, but rather that of an executive actively engaged in evaluation and providing feedback for the transactions at issue. In the course of doing so, he clearly had unique knowledge concerning his exercise of decision-making authority, which led to him approving the transactions at issue.

47675969 v1

The Magistrate Judge's error in blocking the deposition is further exemplified by the fact that Amazon has made it impossible for Nelson to rely on DeSantis' emails as another potential source of the information he seeks. Amazon had done this by refusing to search his emails and other electronic communications as a custodian, despite the fact that he was indisputably a major part of the review process for each of the relevant transactions. Thus, Nelson respectfully requests that the Court overrule the Magistrate Judge's decision and permit the deposition of Peter DeSantis to proceed.

## Procedural Background

During the time of the transactions at issue in this litigation, DeSantis was employed as Amazon Web Services' (AWS) Vice President of Global Infrastructure. DeSantis Decl., Doc. 549 at ¶ 2. Mr. Nelson's counsel served notices of deposition on February 15, 2022, for the testimony of DeSantis to occur on March 2, 2022. Following the meet and confer efforts, Amazon objected to DeSantis' deposition on the basis that he was an apex witness. Doc. 567, ¶ 22. After being unable to reach a resolution, Amazon filed the motion for a protective order that is presently at issue in this objection. *See* Doc. 549. On March 11, 2022, the Court granted the motion prohibiting among others the deposition of DeSantis. Doc. 577. Nelson filed a motion seeking to extend the time to file objections until three business days after receipt of the transcript from that hearing given the Order was granted "for the reasons stated from the bench, and in accord with specific rulings and instructions thereto," which relief was granted on March 23, 2022. Docs. 585, 586. Nelson received the transcript on March 31, 2022. Smart Decl. ¶ 4.

**Argument**

I.   **Standard of Review.**

On an objection from a non-dispositive ruling of a U.S. Magistrate Judge, a party may request the Court to modify or set aside any part of a magistrate judge's order that is clearly erroneous or is contrary to law. Fed. R. Civ. P. 72(a). As noted in *Sectek Inc. v. Diamond*, No. 115CV1631GBLMSN, 2016 WL 5897763, at *2 (E.D. Va. Oct. 6, 2016):

> The Fourth Circuit has held that the "clearly erroneous" standard is deferential and that findings of fact should be affirmed unless review of the entire record leaves the reviewing court with "the definite and firm conviction that a mistake has been committed." *Harman v. Levin*, 772 F.2d 1150, 1153 (4th Cir. 1985) (citing *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). A decision is considered contrary to law "when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Attard Indus., Inc. v. U.S. Fire Ins. Co.*, No. 1:10–cv–121, 2010 WL 3069799 at *1 (E.D. Va. Aug. 5 2010) (citing *DeFazio v. Wallis*, 459 F. Supp. 2d 159, 163 (E.D.N.Y. 2006)). The Eastern District of Virginia has noted that for questions of law, "there is no practical difference between review under Rule 72(a)'s contrary to law standard and [a] de novo standard." *Bruce v. Hartford*, 21 F. Supp. 3d 590, 594 (E.D. Va. 2014) (citation omitted). Therefore, the Court reviews the factual findings of the magistrate judge's Order for clear error, and reviews *de novo* legal conclusions. *Id.* at 593–94.

*Sectek Inc.*, 2016 WL 5897763, at *2.

A request for a protective order is governed by Federal Rule of Civil Procedure 26(c). Fed. R. Civ. P. 26(c). Under that Rule, the Court may issue a protective order "to protect a party or person from embarrassment, oppression, or undue burden or expense." *Id.* A protective order pursuant to Rule 26(c), however "should be sparingly used and cautiously granted." *Big Ernie's, Inc. v. United States*, No. 1:09-CV00122(LO/IDD), 2009 WL 3166839, at *1 (E.D. Va. Aug. 13, 2009) (quoting *Medlin v. Andrew*, 113 F.R.D. 650, 653 (M.D.N.C. 1987)).

A court's customary reluctance to constrain discovery is heightened when a party seeks to prevent the taking of a deposition. *Minter*, 258 F.R.D. at 125. As this Court has recognized, "it is very unusual for a court to prohibit the taking of a deposition altogether and absent extraordinary

4

circumstances, such an order would likely be in error." *Big Earnie's,* 2009 WL 3166839, at *1 (quoting *S.E.C. v. Dowdell*, No. CIV.A.3:01CV00116, 2002 WL 1969664, at *3 (W.D. Va. Aug. 21, 2002)). For this reason, a party seeking a protective order preventing a deposition bears a "weighty burden." *Id.*

> The rationale behind this rule has aptly been described as follows:
>
> The reason for this is fundamental. Usually, the subject matter of a deposition is not well-defined in advance; thus, the need for prospective relief is more difficult to establish than in other methods of discovery. In addition, a motion can be made if any need for protection emerges during the course of the examination; therefore, a ruling prior to commencement of the deposition is not necessary to achieve a fair resolution. Consequently, the burden to show good cause for an order prohibiting the taking of a deposition is especially heavy.

*In re C. R. Bard, Inc. Pelvic Repair Sys. Prod. Liab. Litig.,* No. MDL 2187, 2014 WL 12703776, at *3 (S.D.W. Va. June 30, 2014) (cleaned up).

Here, the Magistrate Judge issued a Protective Order under Rule 26(c) preventing Nelson from taking the deposition of DeSantis on the basis of the apex doctrine. As detailed below, respectfully, that portion of the Magistrate Judge's ruling is both contrary to law and clearly erroneous. Amazon has not met its "weighty burden" to block Nelson from obtaining critical discovery to defend his case.

**II.     The standard applied by the Magistrate Judge was contrary to law.**

The sole basis for Amazon's Motion with respect to DeSantis is the apex doctrine. Significantly, the Fourth Circuit has never discussed, much less adopted, the apex doctrine. Nevertheless, courts that have applied the doctrine have recognized that its purpose is to "ensure[e] that the liberal rules of procedure for depositions are used only for their intended purpose and not as a litigation tactic to create undue leverage by harassing the opposition or inflating its discovery

5

costs." *In re Lipitor (Atorvastatin Calcium) Mktg.,* No. 2:14-MN-02502-RMG, 2014 WL 12621613, at *2 (D.S.C. Nov. 13, 2014).

Importantly, "the apex deposition rule is bottomed on the apex executive lacking *any* knowledge of relevant facts. The rule is aimed to prevent the high-level official deposition that is sought simply because he is the CEO or agency head—the top official, not because of any special knowledge of, or involvement in, the matter in dispute." *Minter v. Wells Fargo Bank, N.A.,* 258 F.R.D. 118, 125 (D. Md. 2009); *Duke Energy Carolinas, LLC v. NTE Caroinas II, LLC*, No. 319CV00515KDBDSC, 2021 WL 5826786, at *3 (W.D.N.C. Dec. 8, 2021) (same). Thus, when an apex witness has personal knowledge of facts relevant to a lawsuit—regardless of the witness' position in the company—he or she is subject to a deposition.

The narrow application of the apex doctrine to situations where the executive lacks direct knowledge of relevant facts is also supported by this Court's own prior decisions. While it appears that this Court has only had the opportunity to examine the apex doctrine on two occasions, in both of those cases the Court declined to apply the doctrine because the witness involved had personal knowledge of the facts at issue. *See JTH Tax, Inc. v. Aime*, No. 2:16CV279, 2016 WL 9223926, at *4 (E.D. Va. Dec. 13, 2016) (apex doctrine inapplicable where executive had "distinct knowledge of comments he made on a shareholders conference call" and related corporate decisions even where a transcript of the call was available); *Intelligent Verification Sys., LLC v. Microsoft Corp.,* No. 2:12CV525, 2014 WL 12544827, at *1 (E.D. Va. Jan. 9, 2014) (former Microsoft executive not entitled to protective order under apex doctrine because he had personal knowledge of facts at issue in lawsuit).

Accordingly, by ignoring the fact that DeSantis had significant involvement in the analysis and decisionmaking process for reach of the transactions at issue in this action, and saying he could

6

not be deposed because he simply "signed off on" the transactions, the Magistrate Judge applied the wrong standard.

### III. The Magistrate Judge's conclusion that DeSantis lacked knowledge that was unique was clearly erroneous.

In addition to applying the wrong standard, Nelson respectfully suggests that the Magistrate Judge's conclusion that DeSantis lacked unique knowledge was clearly erroneous.

#### A. There is no dispute that DeSantis has knowledge that is relevant to the claims and defenses in this action.

DeSantis had a significant role in the evaluation and approval of the transactions, and given that role, what he believed was important about each of the transactions at issue during his evaluation and approval is unique information that Nelson is entitled to explore at deposition. Amazon acknowledges that DeSantis reviewed and approved the transactions at issue. *See* Doc. 553. In fact, he was at the top of the approval chain, just below Mr. Jassy, for each of 11 transactions that Amazon has alleged that Nelson manipulated.

With respect to Amazon's RICO claim against Nelson, although first-party reliance is not an essential element of a RICO claim, a RICO claimant will almost always have to plead and prove that "*someone* relied on the defendant's misrepresentations" in order to establish causation—which is an essential element of the cause of action. *See Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 658 (2008) (emphasis in original). "In most cases, the plaintiff will not be able to establish even but-for causation if no one relied on the misrepresentation." *Id.* Here, the only party that Amazon has alleged was subject to misrepresentations was itself, not any particular person. Nevertheless, since Amazon has not identified the specific person it contends relied on the alleged "misrepresentations," Nelson is entitled to inquire as to those members in the approval chain to determine what if anything they did rely on to approve the transactions. Aside from the RICO

claim, Amazon's operative complaint has eleven causes of action *other* than the "fraud under federal law" its motion mentions—including Count III (Fraud). *See* Doc. 150 at ¶¶ 463-475. Count III explicitly requires Amazon to demonstrate that it relied upon Nelson's purported "misrepresentations and omissions." Doc. 150 at ¶ 465, 471. Amazon's own allegations assert that Amazon "had a right to and did rely on [Nelson's] misrepresentations and omissions to [its] detriment." *Id.*¶ 471. Nelson is entitled to explore whether DeSantis, a key decisionmaker for each of the transactions at issue, relied on Nelson's purported "misrepresentations and omissions," to determine whether Amazon can in fact meet this reliance element. At the very least, Nelson is entitled to ask DeSantis what facts, information, and representations he *did* rely upon—because he relied on *something* and, without his approval, these transactions never would have occurred.

In short, the information that each person in the approval chain deemed important, relevant, and relied upon when granting their approval (including DeSantis, who was the penultimate approver) is highly relevant to the claims before the Court and provides a substantial basis for the depositions of those decision makers.

**B.     DeSantis played a significant role in the approval of the relevant transactions.**

The Magistrate Judge concluded, at Amazon's urging, that on the record before her DeSantis' knowledge is not "unique."[1] Ex. A to Smart Decl. (3/11/22 Tr.) at 6-7. DeSantis himself asserts he lacks "unique" knowledge by stating that "[he] relied on information provided by other employees of Amazon" in performing his review and approval role. Doc. 553 at ¶¶ 4-5.

But that is not a basis to excuse them from a deposition; on the contrary, it is *exactly* the subject that Mr. Nelson seeks to explore. Here, Amazon has claimed that it would not have engaged

---

[1] His declaration pointedly refrains from saying he does not have personal knowledge—because that would be demonstrably false—and insists only that such knowledge is not "unique."

in the transactions—and allegedly would not have been harmed—but for misrepresentations and omissions that it alleges Nelson made. To defend against this claim, it is critical to understand what information DeSantis relied upon (or ignored)—no matter its source. It is entirely unexceptional that the information in the approval process came from Amazon employees. But none of the employees below DeSantis can explain what DeSantis himself found to be materially important in giving the specific transactions at issue a green light. If DeSantis did not rely on the alleged misrepresentations Amazon asserts occurred, then Nelson has a complete defense to at least some of the claims in this action.

### C.     DeSantis has personal knowledge that is unique.

At the time of the transactions at issue in this action DeSantis was the VP of global infrastructure at AWS. Doc. 553 ¶ 2. He had approval authority for transactions under $25 million, and for those over $25 million he was in the approval chain below Jassy. Doc. 571, Ex. A. DeSantis was in the approval chain for each of the transactions at issue, before they were sent to Jassy for ultimate approval. *See* Doc. 571, Exs. A – F.

The approval process for each of these transactions included numerous departments and individuals within AWS, including the business side, finance, accounting, environmental, and tax. Ex. G, Smart Decl. Once all of the approvals of those various departments were obtained, the transaction was scheduled as part of the weekly CAR meetings. It was at these weekly meetings that DeSantis' approval was sought for each of the transactions. *See, e.g.,* Doc. 571, Exs. H - J.

For example, with respect to the two purchase transactions at issue in this case, DeSantis refused to initially approve the Blue Ridge and White Peaks transactions after the weekly meeting where the transactions were discussed, stating that the White Peaks purchase transaction (IAD170) at issue in this case seemed like a "bad deal," and that he needed more information on "the cost

structure and IAD expansion plans" before he could approve. Doc. 571, Ex. K. In that same meeting DeSantis also requested further information on other transactions not involved in this case before he would approve them. *Id.; see also* Doc. 571, Ex. L (further feedback on other similar transactions following a weekly review of the proposed transactions). Similarly, messages from another Amazon employee involved in the process, Joe Minarik, show DeSantis was continually engaged in the review process more than just the meetings. Doc. 571, Ex. O. In response to DeSantis' inquiries following the weekly meeting where the proposed White Peaks transaction was discussed, various Amazon employees gathered additional information and explanations for DeSantis to further justify the transactions to him. Doc. 571, Ex. M. Shortly thereafter DeSantis approved the transactions. *See* Doc. 571, Ex. N.

As these records indicate, DeSantis was not just superficially involved in the approval of the transactions at issue, but rather possesses significant factual information regarding the evaluation transactions and their approvals, as well as how they fit into Amazon's overall strategy, information that Nelson should be entitled to explore at his deposition.[2]

A recent district court decision concerning decisionmakers who evaluate information provided by others is illustrative. The court explained, "[t]he knowledge and reasons behind the decisions made by [them] under their own independent, executive decision-making authority related to the at-issue [transactions] cannot be more easily obtained from lower-level employees." *Speed RMG Partners, LLC v. Arctic Cat Sales Inc.*, No. 20-CV-609 (NEB/LIB), 2021 WL 5095281, at *6 (D. Minn. Mar. 12, 2021). While of course knowledge provided by the lower-level

---

[2] The difference between the level of engagement by DeSantis and Jassy highlights the fact that DeSantis does possess unique knowledge stemming from his involvement in the evaluation and approval of the transactions at issue in this action. Jassy's approvals often consisted of responding to an email with a couple of words such as "approved, thanks," without any other indication that Jassy was actively involved in meetings discussing the merits of the transactions and requesting additional feedback before the transactions were approved. *See, e.g.,* Doc. 571, Exs. B & C.

47675969 v1

employees is not unique to him, *see id.* at *4, the exercise of his own independent decision-making authority is, *id.* at *6. *See also Zimmerman v. Al Jazeera Am., LLC*, 329 F.R.D. 1, 7 (D.D.C. 2018) (Dr. Souag's review and authorization of "The Dark Side" prior to its publication gives him unique knowledge of facts highly relevant to this case. . . . Only Dr. Souag can describe his approval and decision-making process."); *Comprehensive Pharmacy Servs., LLC v. Ascension Health Res. & Supply Mgmt. Grp., LLC*, No. 4:17 CV 16 CDP, 2018 WL 1762716, at *3 (E.D. Mo. Apr. 12, 2018) ("The information sought by plaintiffs about Dr. Maryland's decision-making cannot be obtained from others, and CPS is entitled to ask her about it directly. Although sitting for a deposition is always a burden, nothing presented shows that it poses any unusual or unfair burden in this case, given the amount of money at stake and the fact that TRG is a counterclaim plaintiff as well as a defendant.").[3] Accordingly, even if unique knowledge is required, the Magistrate Judge's conclusion that DeSantis' role in evaluating and ultimately exercising his executive authority as to each of the transactions at issue in this action was insufficient to permit his deposition to proceed was clearly erroneous.

### D. Other less burdensome avenues for obtaining the information have been attempted, but Amazon has stymied those attempts.

The apex doctrine does not require complete exhaustion of less intrusive discovery methods before an apex witness will be required to sit for deposition. *See Palmisano v. Paragon 28*, Inc., No. 21-60447-CIV, 2021 WL 1686928, at *3 (S.D. Fla. Apr. 23, 2021). Thus, to the extent the Magistrate Judge decided that Nelson must exhaust every other avenue prior to deposing DeSantis, this is simply not the case. Further, as noted above, because DeSantis' exercise of his

---

[3] Note here Amazon is the one that brought this action and is seeking significant amounts of money form Defendants in this action, which the *Comprehensive Pharmacy Servs.* case considered in its analysis of whether the burden was fair to require the deponent to sit for the deposition.

47675969 v1

executive decision-making authority is unique to him, depositions of lower level employees would not be required. *See Speed RMG Partners, LLC*, 2021 WL 5095281, at *6.

Nevertheless, Nelson has attempted other avenues to understand what misrepresentations DeSantis (and other Amazon approvers) purportedly relied upon in providing their approvals. As noted to the Magistrate Judge, Nelson served written discovery, including contention interrogatories and requests for documents concerning the approvals of the transactions at issue in this case. In *JTH Tax, Inc.*, the district court highlighted the appropriateness of an apex witness deposition where the party had failed to produce in a timely manner documents that could have provided information sought through the deposition, and where its interrogatory responses similarly did not provide the information sought. *JTH Tax, Inc.*, 2016 WL 9223926, at *5.

Since lodging their objections, Amazon has now provided its responses, and as to the requests concerning what misrepresentations Amazon contends were made by Nelson, to whom they were made, and who relied on them, Amazon has only identified "approvers in the Amazon transaction review and approval process" generally. *See, e.g.*, Ex. B to Smart Decl. Amazon's refusal to identify any particular individuals demonstrates why Nelson is entitled to depose the approvers in the Amazon transaction review and approval process, including DeSantis.

In addition, while Nelson has served a myriad of document requests concerning the approvals of the transactions, Amazon has unequivocally stated that they have not and do not intend to search Mr. DeSantis' emails in response to discovery requests. Ex. A to Smart Decl. (3/11/22 Tr.) at 4. Amazon has continued to take this position as part of their meet and confer process. Smart Decl. ¶ 6. Nelson requested that Amazon conduct a custodial search of DeSantis'

12

emails by using only the internal Amazon transaction identifiers for the eleven transactions at issue in this action (e.g., IAD175). *Id.* However, Amazon has not agreed to do so.[4] *Id.*

As previously noted to the Magistrate Judge during the hearing on this motion, Amazon insists that by searching "other custodians" they will have produced anything Mr. DeSantis would have had in his emails regarding the transactions. Doc. 574 at n.3. While Amazon may believe this to be true, there are very real instances that show Amazon is mistaken. For example, the only copies of approval emails demonstrating DeSantis (and Jassy's approvals) of several of the lease transactions at issue came from the documents on the hard drive Amazon returned to Mr. Nelson after Amazon terminated his employment. *See, e.g.,* Doc. 571, Exs. B & C (hence the Nelson_Cheshire Bates numbering). The only reason Nelson and the other parties in this case even have these documents is because Nelson was a recipient of those email chains. Nelson does not know what search terms Amazon used as it has asserted work product with respect to that material, and does not know all of the custodians Amazon searched in response to discovery requests. But, at a minimum given the various requests for production propounded by the defendants about Amazon's internal approvals and consideration of the eleven transactions at issue, a search of the approvers of those transactions using the internal Amazon codes for each of the transactions (e.g., IAD144) would seem to be required.

Had Amazon actually done such a search of the of the emails of the approvers of the transactions using these Amazon codes, then it would be expected that most if not all of the emails sent to or by DeSantis, would have turned up from such a search. However, given that two very important examples were never produced by Amazon, Nelson has no assurance that all relevant

---

[4] In its original reply brief, Amazon makes much of the fact that Nelson did not "ask Amazon to do so." Doc. 574 at n.3. However, despite an explicit request, and discovery still continuing, they still refuse to search DeSantis' files.

47675969 v1

and responsive email regarding DeSantis' consideration and approval of the transactions at issue (or any other salient and responsive emails) would turn up from searches of the "other" custodians Amazon asserts was done.[5]

The point being that Amazon wishes to block the deposition testimony of a key decision maker at Amazon because of his "apex" status, but is unwilling to even search his emails so that Nelson could at least be assured that he has whatever relevant documents DeSantis possesses as a custodian. It is difficult to reconcile Amazon's insistence that Nelson cannot depose DeSantis, but must instead undertake other avenues of discovery to obtain information regarding DeSantis' evaluations and consideration of the transactions at issue in this action, with Amazon's strident refusal to conduct any search of his emails. Amazon, should not be able to block DeSantis' deposition while taking this duplicitous position.

## Conclusion

For the foregoing reasons, Nelson respectfully suggests that the Court should overrule the Magistrate Judge's decision and allow the deposition of DeSantis to proceed.

---

[5] It should also be noted that the emails of some attendees at the approval meetings are no longer available, and do not appear to have been searched. For example, it is Nelson's understanding that Eugene Choi left Amazon in early 2019 and that Amazon's document retention policy would mean those emails were not in its possession before Amazon began its internal investigation in late 2019. This is not to say that at that point in time there was a duty to preserve Mr. Choi's emails in early 2019, but rather to point out that Amazon's technique of searching other custodians rather than DeSantis has additional holes in it.

14

April 5, 2022        **BURR & FORMAN LLP**

*/s/ Rachel Friedman*
Rachel Friedman (VA Bar #93898)
420 North 20th Street, Suite 3400
Birmingham, AL 35203
Telephone: (205) 251-3000
Facsimile: (205) 458-5100
rfriedma@burr.com

*/s/ J. Alex Little*
J. Alex Little, IV (TN Bar No. 29858) (*pro hac vice*)
Emily H. Mack (TN Bar No. 31217) (*pro hac vice*)
222 2nd Ave. S., Suite 2000
Nashville, TN 37201
Telephone: (615) 724-3200
alex.little@burr.com
emack@burr.com

Adam R. Smart (FL Bar No 1032572) (*pro hac vice)*
50 North Laura Street, Suite 3000
Jacksonville, Florida 32202
Telephone: (904) 232-7200
asmart@burr.com

*Attorneys for the Carleton Nelson*

# CERTIFICATE OF SERVICE

I hereby certify that on April 5, 2022, a true and correct copy of the foregoing has been served upon the following via email:

Elizabeth P. Papez (pro hac vice)
Patrick F. Stokes (pro hac vice)
Claudia M. Barrett (pro hac vice)
Michael R. Dziuban
(Va. State Bar No. 89136)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
Telephone: (202) 955-8500
Facsimile: (202) 467-0539
epapez@gibsondunn.com
pstokes@gibsondunn.com
cbarrett@gibsondunn.com
mdziuban@gibsondunn.com
Counsel for Plaintiffs
Amazon.com, Inc. and Amazon Data Services, Inc.

Veronica S. Moyé
(pro hac vice application pending)
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
Telephone: (214) 698-3100
Facsimile: (214) 571-2900
vmoye@gibsondunn.com
Counsel for Plaintiffs Amazon.com, Inc. and Amazon Data Services, Inc.

Aaron G. McCollough
McGuireWoods
77 West Wacker Dr., Suite 4100
Chicago, IL 60601
amccollough@mcguirewoods.com
Counsel for the Receiver Mark Roberts

Casey Kirschner
635 N. Alvarado Lane
Plymouth, MN 55447
casey.kirschner@gmail.com
*Pro se*

Kathryn M. Skilton
Michael R. MacPhail
Faegre Drinker Biddle & Reath LLP
801 Grand Avenue, 33rd Floor
Des Moines, Iowa 50309
kathryn.skilton@faegreddrinker.com
michael.macphail@faegredrinker.com
Counsel for Intervenor 800 Hoyt, LLC

Stanley L. Garnett
Justin L. Cohen
Amanda K. Houseal
Brownstein Hyatt Farber Schreck LLP
410 Seventeenth St., Suite 2200
Denver, CO 80202-4432
sgarnett@bhfs.com
jcohen@bhfs.com
ahouseal@bhfs.com
Counsel for Defendants Brian Watson, WDC Holdings, LLC, NSIPI Administrative Manager, Sterling NCP FF, LLC, Manassas NCP FF, LLC

George R. Calhoun
Jeffrey Hamlin
James M. Trusty
Ifrah Law, PLLC
1717 Pennsylvania Ave, N.W. Suite 650
Washington, DC 20006 george@ifrahlaw.com
jhamlin@ifrahlaw.com
jtrusty@ifrahlaw.com
Counsel for Defendants Brian Watson, WDC Holdings, LLC, NSIPI Administrative Manager, Sterling NCP FF, LLC, Manassas NCP FF, LLC

Dated: April 5, 2022

*/s/ Rachel Friedman*
Rachel Friedman

47675969 v1