UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| AMAZON.COM, INC. and AMAZON DATA SERVICES, INC., <br><br> Plaintiffs, <br><br> v. <br><br> WDC HOLDINGS LLC dba NORTHSTAR COMMERCIAL PARTNERS; BRIAN WATSON; STERLING NCP FF, LLC; MANASSAS NCP FF, LLC; NSIPI ADMINISTRATIVE MANAGER; NOVA WPC LLC; WHITE PEAKS CAPITAL LLC; VILLANOVA TRUST; CASEY KIRSCHNER; ALLCORE DEVELOPMENT LLC; FINBRIT HOLDINGS LLC; CHESHIRE VENTURES LLC; CARLETON NELSON; JOHN DOES 1-20, <br><br> Defendants. | CASE NO. 1:20-CV-484-LO-TCB |
| 800 HOYT LLC, <br><br> Intervening Interpleader Plaintiff / Intervening Interpleader Counter-Defendant, <br><br> v. <br><br> BRIAN WATSON; WDC HOLDINGS, LLC; BW HOLDINGS, LLC, <br><br> Interpleader Defendants, <br><br> and <br><br> AMAZON.COM, INC., and AMAZON DATA SERVICES, INC., <br><br> Interpleader Defendants / Interpleader Counter-Plaintiffs. | |

**MEMORANDUM OF LAW IN SUPPORT OF BRIAN WATSON'S
MOTION TO COMPEL NON-PARTY IPI PARTNERS, LLC'S
<u>COMPLIANCE WITH RULE 45 SUBPOENA</u>**

# TABLE OF CONTENTS

| | | |
|---|---|---:|
| I. | INTRODUCTION | 1 |
| II. | BACKGROUND | 4 |
| III. | LEGAL STANDARD | 6 |
| IV. | ARGUMENT | 7 |
| | 1. This Court Should Compel IPI to Produce Responsive Documents Through the Present. | 7 |
| | 2. This Court Should Compel IPI to Produce Communications on which the Parties Were Included in the Top-Line Message. | 10 |
| | 3. This Court Should Compel IPI to Produce Materials Concerning All Amazon Leases. | 11 |
| V. | CONCLUSION | 12 |

# TABLE OF AUTHORITIES

**Cases**

*Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 300 F.R.D. 406 (C.D. Cal. 2014) ................................................................................................................................. 11

*Andra Group, LP v. JDA software Group, Inc.*, 312 F.R.D. 444 (N.D. Tex. 2015) ..................... 11

*Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390 (4th Cir. 2003) ................ 6

*Castle v. Jallah*, 142 F.R.D. 618 (E.D. Va. 1992) .......................................................................... 6

Deutsche Bank Nat'l Tr. Co. v. Fegely, No. 3:16-cv-147, 2020 WL 201048  (E.D. Va. Jan. 13, 2020) ........................................................................................................................................ 6

*FTC v. Simple Health Plans LLC*, No. 18-62593-CIV, 2019 WL 7371812 (S.D. Fla. Nov. 19, 2019) ...................................................................................................................................... 10

*Rivers v. Asplundh Tree Expert Co.*, No. 5:08cv61, 2008 WL 5111300 (N.D. Fla. Dec. 3, 2008) ................................................................................................................................................ 10

*Westchester Surplus Lines Ins. Co. v. Clancy & Theys Const. Co.*, No. 5:12-cv-636, 2013 WL 6058203 (E.D.N.C. Nov. 15, 2013) ........................................................................................ 10

**Rules**

Fed. R. Civ. P. 26 ............................................................................................................................ 6

Fed. R. Civ. P. 45 .................................................................................................................... 3, 4, 6

Movant Brian Watson ("Watson" or "Movant"), by and through counsel, respectfully requests that this Court compel IPI Partners, LLC ("IPI") to comply with a subpoena for documents issued to it under Federal Rule of Civil Procedure 45.

I. **INTRODUCTION**

In the above-captioned case, Plaintiffs Amazon.com, Inc. and Amazon Data Services, Inc. (collectively, "Amazon") allege that certain former Amazon employees received kickbacks in exchange for directing commercial lease transactions to certain property developers, including Watson and his company, Northstar Commercial Partners ("Northstar"). *E.g.*, Second Am. Compl. ¶ 6. In total, Amazon asserts that the defendants "obtain[ed] illegal profits on over $500 million in Amazon development projects" in Northern Virginia. *Id.* ¶ 1.

Importantly, neither the events at issue in this case nor Amazon's response to them could have been possible without one additional entity: IPI. In the Second Amended Complaint, Amazon explains that Northstar engaged IPI as an equity partner in the development of a joint venture (NSIPI Data Center Venture, LLC) to execute certain lease transactions; to this end, Amazon notes that "IPI has experience entering into joint ventures (JVs) with other firms in order to combine resources on development projects, and often serves as a capital provider as part of its role in JVs and partners with firms that serve primarily as developers for real estate developments." *Id.* ¶¶ 186-87, 225. For two years, IPI had regular communication with Northstar and was involved in the day-to-day activities concerning the data centers. IPI took an active role in reviewing lease provisions, *id.* ¶ 88; may have executed those leases, *id.* ¶ 186; helped to manage the joint venture's relationship with Amazon, *id.* ¶ 89; and worked with Amazon to terminate Northstar from the joint venture's contracts, *id.* ¶ 187. On information and belief, IPI also worked on certain data center projects with Amazon separate and apart from those involving the defendants.

1

Having occupied a vital position in the transactions and entities in question, IPI was also critical as to the steps Amazon has taken over the past two-plus years. In explaining its allegations against the defendants in this case, Amazon relies heavily on communications and information that IPI personnel provided to Amazon. *See, e.g.*, *id.* ¶¶ 240-271. Furthermore, if anything, IPI's role in the transactions at the center of this case has only grown in recent years. In 2019, following a whistleblower complaint, Amazon began to investigate allegations of impropriety on the part of the defendants, including Northstar. In late 2019 and early 2020, Amazon and IPI worked closely together to terminate Watson and Northstar from the joint venture just prior to filing this lawsuit: According to Amazon, in February 2020, "Amazon and IPI agreed to reform the leases and management contracts at the Northstar-affiliated Virginia Lease Transaction sites" to facilitate the termination of Northstar's role, which was completed on April 2, 2020. *Id.* ¶¶ 273, 277. Following Northstar's termination, an IPI affiliate is now the sole owner of NSIPI Data Center Venture, LLC, and several downstream limited-liability companies that hold the leases at issue in this case. *Id.* ¶ 227. The Second Amended Complaint makes clear that IPI assumed many of the responsibilities previously assigned to Northstar and continues to serve as a partner to Amazon. *E.g.*, *id.* ¶ 172. Amazon and IPI went on to renegotiate the leases at issue in this case and ultimately signed a confidential settlement agreement concerning the allegations and transactions at the core of this litigation—communications about which continued through at least early 2022, when exhibits to the settlement agreement continued to be finalized and executed. Amazon's damages allegedly pertain to these recently revised contracts.

On January 21, 2022, pursuant to Federal Rule of Civil Procedure 45, Movant served IPI with a subpoena (the "Subpoena") that included requests for documents related to IPI's interactions with all of the parties in this case. *See* Decl. of Jeffrey R. Hamlin ("Hamlin Decl."), Ex. A

("Subpoena").  The Subpoena specified a response date of February 11, 2022.  On that date, IPI transmitted to Movant a document purporting to include its "Responses and Objections" to the Subpoena, although the document included only objections.  *See* Hamlin Decl., Ex. B ("IPI Objections").

In the following weeks, IPI did not provide any substantive response to the Subpoena.  On March 14, 2022, counsel for Movant and IPI engaged in a meet-and-confer discussion regarding IPI's production of documents in response to the Subpoena.  IPI communicated its intention to begin rolling document productions, and it clearly stated that it intends to produce documents only in accordance with several search restrictions that it seeks to impose unilaterally.  On March 25, IPI produced its first document set, which appears to be subject to the restrictions IPI previously stated it would implement.

IPI views itself as a third party that should not be obligated to substantially comply with the Subpoena issued by Watson in this case.  But a review of the facts at issue in this case demonstrates that IPI was a vital player throughout the events described by Amazon, continuing to the present day.  Of any party not named in the litigation, IPI is likely to have in its custody the most materials and information that are relevant to this case; indeed, because Amazon has apparently destroyed a substantial portion of potentially relevant materials, IPI might have more responsive material than the named parties.

Accordingly, and in light of IPI's intention to withhold materials responsive to the Subpoena, Watson now seeks an order of this Court compelling IPI to respond fully to the Subpoena, without restricting its response according to the parameters it has unilaterally sought to apply.

## II. BACKGROUND

On January 21, 2022, counsel for IPI agreed to accept service of the Subpoena on behalf of IPI. As noted above, the Subpoena included a compliance deadline of February 11, 2022, and it required the production of documents in Washington, D.C., where IPI conducts substantial business. The Subpoena included three requests for documents. First, the Subpoena requested "all documents and communications relating to defendants." Subpoena at 7. Second, the Subpoena requested documents relating to several specified commercial property leases; IPI's April 2020 termination of Northstar with respect to the leases; and IPI's continued relationship with Amazon following that termination. *Id.* at 7-8. Third, the Subpoena requested all documents concerning several named individuals relevant to this case. *Id.* at 8.

Under Federal Rule of Civil Procedure 45(d)(2)(B), written objections were due on February 4, 2022. *See* Fed. R. Civ. P. 45(d)(2)(B) ("[O]bjection[s] must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served."). On February 11, counsel for IPI transmitted a document entitled, "Third Party IPI Partners, LLC's Responses and Objections to Defendant Brian Watson's Subpoena." *See* IPI Objections. Although IPI set forth various boilerplate objections to the Subpoena, it did not respond in substance to any of the Subpoena's requests. Rather, IPI stated that it was "willing to meet and confer with Defendant Watson concerning" each request. IPI Objections at 8, 9, 11.

In a subsequent meet-and-confer conversation and correspondence, counsel for IPI confirmed that it intends to unilaterally narrow the scope of productions to a subset of what the Subpoena requests. First, without waiving rights to earlier material, Movant has agreed to accept

production of documents beginning after a start date of January 1, 2018;[1] however, IPI has unilaterally determined that it will not produce any documents dated after April 30, 2020. Second, IPI has unilaterally determined that it will not produce communications in which the top email includes parties to the *Amazon.com v. WDC Holdings* litigation. Third, although IPI has agreed to supply a subset of documents concerning leases involving both Amazon and Northstar—notwithstanding its simultaneous decision not to produce documents already in the possession of at least one party—IPI has unilaterally determined that it will not produce documents concerning leases involving only Amazon (and not Northstar).

In the March 14 meet-and-confer session and subsequent correspondence, counsel for Watson notified counsel for IPI that it will not agree to the limitations IPI now seeks to impose on its Subpoena response. In response, counsel for IPI reaffirmed its intention to impose the aforementioned limitations on any document sets it eventually produces. IPI has thus far made three document productions to Watson, which appear to be subject to the limitations that IPI set for itself.

On March 29, 2022, Watson filed in the United States District Court for the District of Columbia a Motion to Compel Non-Party IPI Partners, LLC's Compliance with Rule 45 Subpoena that substantially matched the present Motion. After that Motion was docketed, IPI indicated that it would consent to having the matter heard before this Court. IPI also stated that it consents to a response deadline of April 14 and a hearing date of April 22.

---

[1] Without waiving rights under the Subpoena, Movant has also agreed to accept production of documents limited in various other ways, including omitting documents of which IPI's outside counsel, Akin Gump, is the sole custodian.

Because IPI has clearly stated its intention to produce only a subset of materials that are responsive to the Subpoena, this Court should grant the present Motion and compel IPI to fully and immediately comply with the Subpoena.

### III. LEGAL STANDARD

Under Federal Rule of Civil Procedure 45, a party may serve a subpoena on a non-party compelling the production of documents. Fed. R. Civ. P. 45(a)(1)(A)(iii). "[T]he scope of discovery from a nonparty by means of a subpoena *duces tecum* under Rule 45 is coextensive with that of a motion for production from a party under Rule 34." *Castle v. Jallah*, 142 F.R.D. 618, 620 (E.D. Va. 1992). Thus, a party may obtain discovery regarding any matter that is not privileged and is relevant to any party's claims or defenses. Fed. R. Civ. P. 26(b)(1). The information sought need not be admissible in evidence to be discoverable. *Id.*

"Discovery under the Federal Rules of Civil Procedure is broad in scope and freely permitted." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 402 (4th Cir. 2003). Furthermore, "[r]elevance is construed broadly to include any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Deutsche Bank Nat'l Tr. Co. v. Fegely*, No. 3:16-cv-147, 2020 WL 201048, at *6 (E.D. Va. Jan. 13, 2020). "A request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the subject matter of the action." *Id.*

In addition, the burden lies on the party resisting discovery to show "specifically how, despite the broad and liberal construction afforded the federal discovery rules, each [discovery request] is not relevant." *Deutsche Bank*, 2020 WL 201048, at *6. "[M]erely stating that a request is 'overbroad' or 'unduly burdensome' will not suffice to state a proper objection." *Id.* Rather, "[i]n order to overcome the liberal construction afforded by the federal discovery rules, a party

6

objecting on the grounds that a request is overly burdensome must submit affidavits or other evidence indicating with specificity the nature and extent of the burden." *Id.* "The mere fact that responding to a discovery request will require the objecting party to expend considerable time, effort and expense consulting, reviewing and analyzing huge volumes of documents and information is an insufficient basis to object to a relevant discovery request." *Id.*

## IV. ARGUMENT

The Subpoena seeks non-privileged documents that are relevant to the allegations raised in Amazon's Second Amended Complaint, elements of Amazon's claims and alleged damages, and the defenses of Watson and his codefendants in *Amazon.com v. WDC Holdings*. IPI does not dispute that it possesses documents responsive to the Subpoena or that the documents are relevant to this case.

IPI's objections do not justify its noncompliance with the Subpoena or its intention to unilaterally modify the terms of the Subpoena. First, there is no clear basis for IPI to impose its own date range for responsive material. Second, there are similarly no grounds for IPI to withhold communications that include the parties—particularly Amazon. Third, and relatedly, IPI cannot justify its decision to withhold data center leases that involve Amazon.

### 1. This Court Should Compel IPI to Produce Responsive Documents Through the Present.

The Subpoena seeks documents in IPI's possession that are relevant to the parties in *Amazon.com v. WDC Holdings*, and it does not limit the category of responsive documents to materials that were created in a specific date range. During the March 14 meet-and-confer conversation, counsel for Watson and IPI discussed the possibility of specifying a date range for the production of relevant communications. Because IPI was introduced to Watson and Northstar in January 2018, *see, e.g.*, Second Am. Compl. ¶ 226, counsel for IPI proposed that it produce

7

communications with a start date of January 1, 2018. Without waiving rights to earlier communications, counsel for Watson agreed to this parameter.

In addition, counsel for IPI proposed an end date of April 30, 2020—not on grounds that the documents would not be relevant, but based on IPI's April 2, 2020, termination of Northstar from the lease projects, soon after which IPI's communications with Northstar allegedly ceased. Again, IPI's logic seems to be that it need not produce relevant discovery that was not circulated to or from Northstar in real time, while simultaneously disclaiming an obligation to produce relevant discovery that *was* circulated to Northstar in real time.

There is no legal basis for IPI's refusal to produce responsive documents that post-date April 30, 2020, the month IPI terminated its contracts with Northstar. The Second Amended Complaint makes clear that after ending those contracts, IPI "reformed them with Amazon." Second Am. Compl. ¶ 221. Furthermore, Amazon alleges "Amazon and IPI . . . incurred significant costs reforming the leases and related contracts" at issue in this litigation, and "IPI has since assumed or transferred to other partners all Northstar-related responsibilities on these sites." *Id*. ¶ 172. Perhaps even more critically, Amazon has now disclosed that in late 2021, it entered into a purportedly arms-length settlement agreement with IPI and a series of amendments to the lease transactions at issue, and, as part of that settlement agreement, Amazon also purchased from IPI certain of the property at issue in some of the other leases relevant to this case. *See* Plaintiffs' Supplemental Initial Disclosures at 3, ECF No. 518-4. Amazon has pointed to these very amendments and sale transactions as a critical component of its damages claims in the action.

To reiterate, the parties agree that IPI played a critical role in the development and management of the properties at issue. *See id*. ¶¶ 225-229, 232. According to the Second Amended Complaint, Amazon and IPI engaged in direct communications in the first half of 2020

"to reform the leases and management contracts at the Northstar-affiliated Virginia Lease Transaction sites to facilitate this transaction and the Northstar Defendants' termination" from the agreements. *Id.* ¶ 272. That termination occurred on April 2, 2020. *Id.* ¶¶ 271, 277. But although Northstar was no longer a party to the relevant agreements, IPI does not dispute that it remained an active partner of Amazon with respect to these deals; indeed, according to the Second Amended Complaint, "Amazon and IPI . . . incurred significant costs reforming the leases and related contracts relevant to the sites" at issue, and "IPI has since assumed or transferred to other partners all Northstar-related responsibilities on these sites." *Id.* ¶ 172. Moreover, Amazon's damages claims rely, in part, on the contract revisions, which were not finalized until sometime in 2022.

In summary, Amazon has brought suit alleging that Northstar's involvement in the transactions in question damaged Amazon. After IPI removed Northstar from these arrangements, Amazon moved forward exclusively with IPI. Materials concerning the ongoing relationship between Amazon and IPI are relevant both to Amazon's claims and Watson's defenses, because they have the potential to illustrate the differences between the conditions of the relevant leases when Northstar was involved and the conditions after IPI had removed Northstar from the equation. The reformed leases are central to Amazon's theory of damages, and documents and communications relating to those leases—*particularly* after Northstar was terminated and into the present—are necessary for Watson to evaluate Amazon's claimed damages. That Northstar was no longer a party to any of those discussions after April 2020 does not explain why the documents in IPI's possession would no longer be relevant to the litigation and responsive to the Subpoena.

Separately, IPI has articulated no clear reason why responsive materials dated after April 2020 should be excluded from IPI's productions. As discussed above, Amazon and IPI have continued to work closely with one another in the period since April 2020, continuing to focus on

9

contracts to which Northstar was previously a party. If IPI and Amazon discussed the quality of Northstar as a business partner or the soundness of Northstar data center constructions in late 2020, it is not clear why Northstar's contractual termination that month would permit IPI to withhold them.

In short, Amazon has made clear that the communications and agreements entered into after April 2020 are highly relevant to this case, and there is no reason for IPI to generally exclude documents post-dating that month. IPI's attempt to block this necessary discovery should be rejected.

### 2. This Court Should Compel IPI to Produce Communications on Which the Parties Were Included in the Top-Line Message.

IPI has also confirmed its intention to withhold communications that include any of the parties on the top-line message. IPI justifies this approach by asserting that it would be overly burdensome for it, as a non-party, to produce materials that are in the parties' possession.

First, several district courts have noted a party's possession of certain materials "does not prohibit the party from requesting the production of those same documents from another source." *FTC v. Simple Health Plans LLC*, No. 18-62593-CIV, 2019 WL 7371812 (S.D. Fla. Nov. 19, 2019); *see also Rivers v. Asplundh Tree Expert Co.*, No. 5:08cv61, 2008 WL 5111300 (N.D. Fla. Dec. 3, 2008) ("[T]he fact that [a party's counsel] may already possess . . . some of the documents and information included in [his or her] discovery requests . . . does not excuse the [responding party's] failure to fully respond to the discovery requests."); *Westchester Surplus Lines Ins. Co. v. Clancy & Theys Const. Co.*, No. 5:12-cv-636, 2013 WL 6058203 (E.D.N.C. Nov. 15, 2013) (standing for the same proposition). According to this standard, the fact that Amazon—which has supplied minimal discovery in this case—is included on these communications does not supply IPI with a reason for withholding them from Watson.

Certain courts have noted a reluctance to require nonparties to produce documents that a party can produce. For example, the Central District of California has written that "[c]ourts are particularly reluctant to require a non-party to provide discovery that can be produced by a party." *Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 300 F.R.D. 406 (C.D. Cal. 2014). But as a factual matter, to the extent the parties' possession of the requested materials might be relevant, the parties in fact *do not possess* many of the documents that IPI now seeks to withhold under this arbitrary parameter. Under Amazon's document retention policy, employees delete most emails 30 days after receipt, and many more categories of relevant documents have also been destroyed.[2] Accordingly, IPI is the only custodian of many of the documents it now seeks to withhold. In short, then, Amazon cannot produce these materials—which are otherwise relevant and responsive to the Subpoena requests—and IPI, an entity with whom Amazon claims to have a joint interest, refuses to produce them on the theory that Amazon once possessed them. Even the courts expressing clearer reluctance to require nonparties to produce certain materials have emphasized that this reluctance adheres only if a party can produce the documents in question. *See, e.g.*, *Andra Group, LP v. JDA software Group, Inc.*, 312 F.R.D. 444, 453 (N.D. Tex. 2015) (observing a lower need for nonparty production of communications "absent a showing that [a party] has not produced and will not be able to produce all of those communications"). Accordingly, this Court should not permit IPI to withhold documents that were once in Amazon's possession, and it should compel IPI to produce communications that were sent by or to the parties.

3. **This Court Should Compel IPI to Produce Materials Concerning All Amazon Leases.**

---

[2] This is not just a theoretical possibility. It has been a common occurrence in this case that parties other than Amazon are the only ones that still have many of the documents relevant to the case, despite it being apparent that Amazon did, at one time, have such documents in its possession.

11

Relatedly, IPI has stated that although it will produce documents regarding leases related to some Amazon data centers in Northern Virginia, it will only do so for leases with which IPI and Northstar were involved. As an initial matter, the burden of this document request is minimal: It relates to specific types of documents in one region (Northern Virginia) involving one partner (Amazon).

In addition, there is also no legal basis for distinguishing between documents concerning leases involving Northstar (which IPI intends to produce) and those not involving Northstar (which IPI has stated it will not produce). Indeed, to the extent IPI argues that it should not need to produce materials in the parties' possession, it inverts its logic as to this category of documents: The defendants in this case are more likely to possess documents concerning Northstar-related leases, whereas they have no reason to possess documents concerning leases that did not involve them. And to the extent IPI argues that it should not need to produce these materials because Amazon possesses them—an assertion IPI has not yet raised—that argument is not compelling in light of the legal precedent discussed above. IPI is in a unique position to provide evidence concerning market practices for data centers in Virginia (and elsewhere). It also is closely linked to the transactions involved in this case.

Watson requires access to these materials in order to assess Amazon's claims and develop his defenses in this case. Because IPI cannot show either that it would be unduly burdensome to produce these materials or that they are irrelevant to this case, this Court should compel IPI to produce them in accordance with the Subpoena.

## V. CONCLUSION

For the foregoing reasons, Movant respectfully requests that the Court grant his Motion to Compel and require IPI to respond in full to the discovery requests identified in the Subpoena, to

award Movant the reasonable expenses and attorneys' fees incurred in the preparation of this Motion, and to grant such other relief as appropriate.

Dated: April 11, 2022

Respectfully submitted,

*/s/ Jeffrey R. Hamlin*
Jeffrey R. Hamlin (VA Bar No. 46932)
George R. Calhoun (*pro hac vice*)
James Trusty (*pro hac vice*)
IFRAH PLLC
1717 Pennsylvania Avenue NW, Suite 650
Washington, DC 20006
Telephone: (202) 524-4140
Facsimile: (202) 524-4141
jhamlin@ifrahlaw.com
george@ifrahlaw.com
jtrusty@ifrahlaw.com

Stanley L. Garnett (*pro hac vice*)
Amanda K. Houseal (*pro hac vice*)
Sara R. Bodner (*pro hac vice*)
Leah M. Regan-Smith (*pro hac vice*)
Neil S. Sandhu (*pro hac vice*)
Brownstein Hyatt Farber Schreck, LLP
410 17th Street, Suite 2200
Denver, CO 80202
Telephone: (303) 223-1100
Facsimile: (303) 223-1111
sgarnett@bhfs.com
ahouseal@bhfs.com
sbodner@bhfs.com
lregansmith@bhfs.com
nsandhu@bhfs.com

*Counsel for WDC Holdings LLC, Brian Watson, Sterling NCP FF, LLC, Manassas NCP FF, LLC, NSIPI Administrative Manager, and BW Holdings LLC*