# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### ALEXANDRIA DIVISION

| | |
|---|---|
| AMAZON.COM, INC. and AMAZON DATA SERVICES, INC., | |
| Plaintiffs, | |
| v. | |
| WDC HOLDINGS LLC dba NORTHSTAR COMMERCIAL PARTNERS; BRIAN WATSON; STERLING NCP FF, LLC; MANASSAS NCP FF, LLC; NSIPI ADMINISTRATIVE MANAGER; NOVA WPC LLC; WHITE PEAKS CAPITAL LLC; VILLANOVA TRUST; CASEY KIRSCHNER; ALLCORE DEVELOPMENT LLC; FINBRIT HOLDINGS LLC; CHESHIRE VENTURES LLC; CARLETON NELSON; JOHN DOES 1-20, | CASE NO. 1:20-CV-484-RDA-TCB |
| Defendants. | |
| 800 HOYT LLC, | |
| Intervening Interpleader Plaintiff, Intervening Interpleader Counter-Defendant, | |
| v. | |
| BRIAN WATSON; WDC HOLDINGS, LLC; BW HOLDINGS, LLC, | |
| Interpleader Defendants, | |
| and | |
| AMAZON.COM, INC., and AMAZON DATA SERVICES, INC., | |
| Interpleader Defendants, Interpleader Counter-Plaintiffs. | |

### PLAINTIFFS AMAZON.COM, INC. AND AMAZON DATA SERVICES, INC.'S RESPONSE TO DEFENDANT CARLETON NELSON'S OBJECTION TO THE MARCH 11, 2022 ORDER PRECLUDING THE DEPOSITION OF PETER DESANTIS

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ iii

INTRODUCTION ...................................................................................................... 1

LEGAL STANDARDS ............................................................................................... 6

ARGUMENT .............................................................................................................. 7

    I.    The Magistrate Judge Properly Applied the Apex Doctrine ......................... 7

    II.   The Magistrate Judge's Finding That DeSantis Lacks Unique Personal
        Knowledge is Not Clearly Erroneous ........................................................ 10

    III.  The Magistrate Judge Did Not Err in Finding that Other Less Burdensome
        Means were Available to Nelson ................................................................ 14

CONCLUSION ......................................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Attard Indus., Inc. v. U.S. Fire Ins. Co.*,
    2010 WL 3069799 (E.D. Va. Aug. 5, 2010) ...............................................................................6

*Carlucci v. Han*,
    292 F.R.D. 309 (E.D. Va. 2013) ...............................................................................................7

*Comprehensive Pharmacy Servs., LLC v. Ascension Health Res. & Supply Mgmt. Grp., LLC*,
    2018 WL 1762716 (E.D. Mo. Apr. 12, 2018) ...........................................................................13

*Duke Energy Carolinas, LLC v. NTE Caroinas II, LLC*,
    2021 WL 5826786 (W.D.N.C. Dec. 8, 2021) .........................................................................8, 9

*Erdmann v. Preferred Rsch., Inc.*,
    852 F.2d 788 (4th Cir. 1988) ...................................................................................................6

*Fed. Elec. Comm'n v. Christian Coal.*,
    178 F.R.D. 456 (E.D. Va. 1998) .........................................................................................2, 6

*Intelligent Verification Sys., LLC v. Microsoft Corp.*,
    2014 WL 12544827 (E.D. Va. Jan. 9, 2014) .........................................................................8, 9

*JTH Tax, Inc. v. Aime*,
    2016 WL 9223926 (E.D. Va. Dec. 13, 2016) ........................................................................8, 9

*Estate of Levingston v. Cty. of Kern*,
    320 F.R.D. 520 (E.D. Cal. 2017) ........................................................................................8, 15

*In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Practices & Prods. Liab. Litig.*,
    2018 WL 3934396 (E.D. Va. Aug. 16, 2018) .................................................................1, 14, 17

*Minter v. Wells Fargo Bank, N.A.*,
    258 F.R.D. 118 (D. Md. 2009) ...............................................................................................7, 9

*Palmisano v. Paragon 28, Inc.*,
    2021 WL 1686928 (S.D. Fla. Apr. 23, 2021) ........................................................................14

*Performance Sales & Mktg. LLC v. Lowe's Cos.*,
    2012 WL 4061680 (W.D.N.C. Sept. 14, 2012) ..............................................................1, 8, 14, 17

*RLI Ins. Co. v. Nexus Servs., Inc.*,
    2020 WL 2311668 (W.D. Va. May 8, 2020) ...............................................................8, 11, 14, 15, 17

*In re Search Warrants Issued Aug. 29, 1994*,
889 F. Supp. 296 (S.D. Ohio 1995) .......................................6

*Seattle Times Co. v. Rhinehart*,
467 U.S. 20 (1984).......................................................6

*Sectek Inc. v. Diamond*,
2016 WL 5897763 (E.D. Va. Oct. 6, 2016) ...........................6

*Smithfield Bus. Park, LLC v. SLR Int'l Corp.*,
2014 WL 547078 (E.D.N.C. Feb. 10, 2014) ...................8, 14, 15

*Speed RMG Partners, LLC v. Arctic Cat Sales, Inc.*,
2021 WL 5095281 (D. Minn. Mar. 12, 2021) ...................11, 13

*Steele v. XPO Express, Inc.*,
2017 WL 10544634 (D.S.C. May 8, 2017).............................11

*Sun Cap. Partners, Inc. v. Twin City Fire Ins. Co.*,
310 F.R.D. 523 (S.D. Fla. 2015) .................................8, 14, 15

*Zimmerman v. Al Jazeera Am., LLC*,
329 F.R.D. 1 (D.D.C. 2018).................................................13

**STATUTES**

28 U.S.C. § 636(b) ................................................................6

**RULES**

Fed. R. Civ. P. 26 .............................................................3, 6, 14

Fed. R. Civ. P. 30(b) .............................................1, 4, 5, 12, 15, 17

Fed. R. Civ. P. 72(a) .........................................................2, 6, 17

**TREATISES**

12 Fed. Prac. & Proc. Civ. § 3069 (3d ed.).................................7

7 Moore's Federal Practice ¶ 72.03 ........................................6

Plaintiffs Amazon.com, Inc. and Amazon Data Services, Inc. ("Amazon") respectfully respond to the objections Defendant Carleton Nelson filed, Dkt. 629, to U.S. Magistrate Judge Buchanan's March 11, 2022 order precluding the deposition of Peter DeSantis, Dkt. 577.

## INTRODUCTION

As a safeguard against foreseeable abuses of the discovery process, the apex doctrine prohibits a party from deposing a witness at the top of an adversary's corporate structure unless he can show that the burdens imposed by the deposition are reasonable and proportional to the needs of the case. *See In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Practices & Prods. Liab. Litig.*, 2018 WL 3934396, at *4–5 (E.D. Va. Aug. 16, 2018); *Performance Sales & Mktg. LLC v. Lowe's Cos.*, 2012 WL 4061680, at *3–4 (W.D.N.C. Sept. 14, 2012). To make that showing, the deposing party must establish that "(1) the executive has unique or special knowledge of the facts at issue and (2) other less burdensome avenues for obtaining the information sought have been exhausted." *Performance Sales*, 2012 WL 4061680, at *3 (quotation marks omitted).

Magistrate Judge Buchanan correctly held that Defendant Carleton Nelson has not satisfied either requirement in connection with his request to depose Peter DeSantis, a high-ranking executive at Amazon. DeSantis, who was in the chain of individuals with approval authority over the real-estate transactions at issue in this lawsuit—and who did not become involved in those transactions until after a long line of other executives, managers, and business professionals reviewed and approved them—does not possess any unique knowledge relevant to this action. Nor has Nelson shown that he cannot obtain the relevant information he seeks through other means, such as deposing the lower-level employees who reported to DeSantis or deposing the company itself under Federal Rule of Civil Procedure Rule 30(b)(6).

This ruling should be sustained under any standard of review, and it certainly survives the deferential standard that Federal Rule of Civil Procedure 72 sets out for non-dispositive discovery matters like this one.  Under that rule, a Magistrate Judge's order need only be modified or set aside if it is "clearly erroneous or [] contrary to law."  Fed. R. Civ. P. 72(a); *see also Fed. Elec. Comm'n v. Christian Coal.*, 178 F.R.D. 456, 459 (E.D. Va. 1998).  Because Nelson has not come close to establishing that Magistrate Judge Buchanan's order is either, the Court should overrule his objections and leave in place the decision precluding the deposition of DeSantis.

## BACKGROUND

This case arises from a fraud and kickback scheme targeting more than $500 million of Amazon real-estate development projects in Northern Virginia.  *See* Dkt. 150 at ¶ 1.  Nelson and his codefendant are former Amazon employees who abused their positions to steer lucrative contracts to other co-conspirators in exchange for off-the-book payments.  *See id.* at ¶¶ 3–4.  It was a textbook pay-to-play arrangement.

Although the core of this scheme may have been straightforward, the Defendants' efforts to hide their fraud were not.  Indeed, the Defendants were able to perpetrate their illegal behavior for years unbeknownst to Amazon's senior management.  That was in large part due to the extraordinary lengths they took to cover their tracks—including, among other things, hiring a lawyer and a strawman to set up a complex web of shell entities to receive and distribute their illicit gains.  *See, e.g., id.* at ¶¶ 6, 9, 75, 94.  It was not until the winter of 2019-20, and after the Defendants had lined their pockets with millions of dollars, that two informants blew the whistle and Amazon executives became aware of the fraud.  *See id.* ¶¶ 109–21, 240–71.  This lawsuit followed and names as defendants the Amazon employees who orchestrated this scheme and their many co-conspirators.

Now, to defend against Amazon's allegations that he and another line-level manager engaged in this massive fraud and kickback scheme, Nelson seeks to depose Peter DeSantis, one of the most senior executives at Amazon Web Services.[1]

Currently, DeSantis serves as the Senior Vice President of Utility Computing and Applications, and during the time period relevant to Amazon's claims, he served as the Vice President (and later Senior Vice President) of Global Infrastructure. *See* Dkt. 553 at ¶¶ 1–2. He did not directly supervise Nelson or Casey Kirschner, the other Amazon employee who perpetrated the fraud at issue in this litigation. *See id.* at ¶ 5. And as a top-level executive, DeSantis had limited involvement in the type of real-estate transactions underlying Amazon's claims. *See id.* at ¶ 3. His role consisted of approving deals that exceeded certain expenditure levels, and in performing that role, the only information he relied on was provided to him by lower-level Amazon executives and employees. *See id.* at ¶¶ 3–4. Accordingly, he has sworn that he has "no unique, personal knowledge" relating to the eleven transactions at issue in this lawsuit. *See id.* at ¶ 4.

After receiving the notice of deposition for DeSantis, Amazon timely objected on the ground that his deposition would be improper under the apex doctrine. The parties participated in an unsuccessful meet and confer on the subject and exchanged correspondence afterwards confirming their impasse. *See* Dkt. 551-2 at 2–3, 12–14; Dkt. 551-3 at 3. Because Nelson refused to withdraw his notice, Amazon was forced to file the motion for a protective order underlying these proceedings. *See* Dkts. 549, 550; *see also* Fed. R. Civ. P. 26(c).

---

[1] Nelson also sought to depose Andrew Jassy, the current President and Chief Executive Officer at Amazon.com, Inc., and Teresa Carlson, the former Vice President of Worldwide Public Sector and Industries at Amazon Web Services. *See* Dkt. 552 at ¶ 1; Dkt. 554 at ¶ 2. Amazon argued that deposing these executives, like deposing DeSantis, would be improper. *See* Dkt. 551-2 at 12–13; Dkt. 550. Nelson withdrew his notice of deposition for Carlson, *see* Dkt. 566 at 5; Dkt. 567 at ¶ 21, and the Magistrate Judge granted a protective order precluding the deposition of Jassy, *see* Dkt. 577, which Nelson has elected not to challenge.

In support of its motion, Amazon explained that DeSantis does not have unique, personal knowledge regarding any issues in dispute and that Nelson had not shown that the information he sought could not be obtained from other, less senior employees.  *See* Dkt. 550 at 7.  Amazon pointed out that Nelson's counsel had served DeSantis's deposition notice simultaneously with notices for five current or former Amazon executives and employees who reported to DeSantis on the relevant real-estate transactions, including Keith Klein, Eugene Choi, Karen Davenport, Joe Minarik, and Chris Vonderhaar.[2]  *See id.* at 2 n.1, 12 (citing Dkt. 551-1).  These individuals were identified in Nelson's Initial Disclosures as persons with knowledge about Amazon's real-estate transaction approval process and the relevant decision-makers.  *See id.* at 12 (citing Dkt. 551-4 at 3–5).  Amazon further pointed out that although Nelson had not yet served Amazon with a notice of deposition under Federal Rule of Civil Procedure 30(b)(6), he had expressed his intention to do so in the near future.  *Id.* at 13; *see also* Dkt. 551-1 at 2.  In such a deposition, Nelson would be permitted to seek testimony from Amazon corporate designees "about information known or reasonably available to the organization" regarding the matters for examination.  Fed. R. Civ. P. 30(b)(6).

Magistrate Judge Buchanan held a hearing on March 11, 2022 and granted Amazon's motion.  *See* Dkt. 630-1.  The Court explained that the Defendants would "be able to get everything

---

[2]  Keith Klein is Managing Principal, Amazon Web Services ("AWS") Americas Real Estate Acquisition and Development.  Eugene Choi was Finance Director, AWS Infrastructure Global Expansion and Networking from May 2017 until January 2019.  Karen Davenport was Director of Global Real Estate and Development from July 2017 until October 2019.  Joe Minarik was Director, AWS Data Center Supply until December 2021.  Chris Vonderhaar is Vice President of Data Center Planning, Delivery and Operations.  As Amazon has noted to the Defendants— and as the Defendants have not contested—these individuals provided DeSantis with inputs in connection with the contract approval process.  *See* Dkt. 550 at 2 n.1.

they need from the other depositions, especially the 30(b)(6) depositions," *id.* at 6, and also concluded that the deposition "would be cumulative," *id.*, because DeSantis had "no unique knowledge," which required "something more" than him "signing off" on the real-estate transactions at issue, *id.* at 7.  Later that day, the Magistrate Judge entered a formal order granting Amazon's motion "for reasons stated from the bench."  Dkt. 577 (caps omitted).

Nearly two weeks later, and only two days before the deadline for filing his objections, Nelson sought an extension of time so that he could obtain a copy of the hearing transcript.  *See* Dkt. 585.  The court granted his motion and extended the time for filing objections "until three business days following" its receipt.  Dkt. 586 at 1.  Nelson received the transcript on March 31, 2022 and filed his objections on April 5, 2022.  *See* Dkt. 629 at 3, 15.

Since Amazon filed its motion for a protective order, Nelson has deposed Amazon employees Karen Davenport, Eugene Choi, Keith Klein, and Chris Vonderhaar,[3] and Amazon has agreed to produce Joe Minarik for deposition if necessary after Amazon's Rule 30(b)(6) deposition.  Nelson has also formally noticed a deposition for Amazon under Rule 30(b)(6) covering 88 topics—at least half a dozen of which relate to DeSantis or the real-estate approval process relevant to Amazon's claims.  *See* Ex. 1 at 20–25.  Amazon has specifically agreed to put up a witness to testify regarding the divisions or departments involved in the approval process for each of the real-estate transactions at issue in this litigation, the names of decision-makers and approval documents involved in each of the transactions, Mr. DeSantis's role in the process for each of the transactions, and the identity of each individual who had the ability to disapprove any of the transactions and whose disapproval alone would mean that the respective transaction could not succeed, among other topics.  *Id.*

---

[3]  Indeed, Nelson has asked to reopen the depositions of Keith Klein and Chris Vonderhaar.

## LEGAL STANDARDS

"Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984); *Erdmann v. Preferred Rsch., Inc.*, 852 F.2d 788, 792 (4th Cir. 1988). The court may take steps to prevent "annoyance, embarrassment, oppression, or undue burden or expense," including forbidding the discovery requested and issuing a protective order. Fed. R. Civ. P. 26(c). Additionally, under Rule 26(b)(2), the court "must limit the frequency or extent of discovery . . . if it determines that . . . the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C).

Federal Rule of Civil Procedure 72(a) permits a party to file objections to a Magistrate Judge's ruling on non-dispositive matters, such as a decision granting a party's motion for a protective order under Rule 26(c). *See Christian Coal.*, 178 F.R.D. at 459. The District Court must review the Magistrate Judge's ruling under "a 'clearly erroneous or contrary to law' standard." *Id.*; *see also* 28 U.S.C. § 636(b)(1)(A). A court's finding is "clearly erroneous" when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Attard Indus., Inc. v. U.S. Fire Ins. Co.*, 2010 WL 3069799, at *1 (E.D. Va. Aug. 5, 2010) (internal quotation marks omitted). And an order is "contrary to law" when it "fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Id.* (internal quotation marks omitted). "Therefore, the Court reviews the factual findings of the magistrate judge's Order for clear error, and reviews *de novo* legal conclusions." *Sectek Inc. v. Diamond*, 2016 WL 5897763, at *2 (E.D. Va. Oct. 6, 2016). "Review under Rule 72(a) provides 'considerable deference to the determinations of magistrates.'" *In re Search Warrants Issued Aug. 29, 1994*, 889 F. Supp. 296, 298 (S.D. Ohio 1995) (quoting 7 Moore's Federal

6

Practice ¶ 72.03).  "The leading treatise on federal practice and procedure describes altering a magistrate's non-dispositive orders as 'extremely difficult to justify.'"  *Carlucci v. Han*, 292 F.R.D. 309, 312 (E.D. Va. 2013) (quoting 12 Fed. Prac. & Proc. Civ. § 3069 (3d ed.)).

## ARGUMENT

Nelson raises three objections to the Magistrate Judge's decision.  First, he claims that the Magistrate Judge misapplied the apex doctrine by holding that DeSantis must have "unique" knowledge of the issues in dispute before he may be deposed.  *See* Dkt. 629 at 5–7.  Second, Nelson contends that even if the apex doctrine does require "unique" knowledge, the Magistrate Judge's finding that DeSantis lacks such knowledge was clearly erroneous.  *See id.* at 7–11.  And finally, he asserts that the apex doctrine should not apply because deposing lower-level executives and employees would be an inadequate substitute for DeSantis, and other less burdensome means of discovery have been "stymied" by Amazon.  *See id.* at 11–14 (bold omitted).  Each of these arguments lacks merit, and even if reasonable minds could disagree, none of them shows that the Magistrate Judge's decision was "clearly erroneous or contrary to law."

## I.      The Magistrate Judge Properly Applied the Apex Doctrine

The Magistrate Judge concluded that Nelson had not met his burden under the apex doctrine in part because DeSantis had "no unique knowledge" relevant to the case.  *See* Dkt. 630-1 at 7.  Nelson contends that this was error because the apex doctrine does not require a showing of "unique" personal knowledge, but instead prohibits the deposition of a high-level executive only if he lacks *any* personal knowledge of the relevant facts.  *See* Dkt. 629 at 5–7.  That is not the law, and for good reason.

The apex doctrine exists to prevent parties from deposing highly-ranked executives simply because they sit atop a corporate adversary.  *See Minter v. Wells Fargo Bank, N.A.*, 258 F.R.D. 118, 126 (D. Md. 2009).  The doctrine would do little in accomplishing this objective if, as Nelson

contends, a party could drag an apex executive into a deposition simply because he had *some*, *any* knowledge of the transaction or decision that led to litigation.  Corporate executives like DeSantis are responsible for overseeing countless activities and initiatives in their departments, and under Nelson's rule, they could be deposed in cases involving all of them simply because of the super-visory role they play.

Because Nelson's position would gut the apex doctrine, courts have almost unanimously rejected it.  District courts in the Fourth Circuit routinely state that a party may depose an apex executive only if that executive has *unique* or *special* knowledge relevant to the facts of the case. *See, e.g.*, *RLI Ins. Co. v. Nexus  Servs., Inc.*, 2020 WL 2311668, at *2 (W.D. Va. May 8, 2020) ("unique or special knowledge of the facts at issue") (internal quotation marks omitted); *Smithfield Bus. Park, LLC v. SLR Int'l Corp.*, 2014 WL 547078, at *2 (E.D.N.C. Feb. 10, 2014) ("unique or special knowledge of the facts at issue") (internal quotation marks omitted); *Performance Sales & Mktg. LLC v. Lowe's Cos.*, 2012 WL 4061680, at *3 (W.D.N.C. Sept. 14, 2012) ("unique or special knowledge of the facts at issue") (internal quotation marks omitted).  District courts in other cir-cuits have done the same.  *See, e.g.*, *Estate of Levingston v. Cty. of Kern*, 320 F.R.D. 520, 525 (E.D. Cal. 2017) ("unique first-hand, non-repetitive knowledge of the facts at issue") (internal quotation marks omitted); *Sun Cap. Partners, Inc. v. Twin City Fire Ins. Co.*, 310 F.R.D. 523, 527 (S.D. Fla. 2015) ("unique, non-repetitive, firsthand knowledge of the facts at issue") (internal quo-tation marks omitted).  And this includes each of the cases that Nelson cites in support of the contrary position he advances.  *See Duke Energy Carolinas, LLC v. NTE Caroinas II, LLC*, 2021 WL 5826786, at *3 (W.D.N.C. Dec. 8, 2021) ("unique or special knowledge of the facts at issue") (internal quotation marks omitted); *JTH Tax, Inc. v. Aime*, 2016 WL 9223926, at *5 (E.D. Va. Dec. 13, 2016) ("unique knowledge of the facts at issue"); *Intelligent Verification Sys., LLC v.*

*Microsoft Corp.*, 2014 WL 12544827, at *2 (E.D. Va. Jan. 9, 2014) ("unique or special knowledge of the facts at issue") (internal quotation marks omitted); *Minter*, 258 F.R.D. at 126 ("unique or personal knowledge").

Nelson appears to contend that even if the courts in these cases *recited* the proper standard, they allowed apex executives to be deposed on a mere showing that they had "personal" or "direct" knowledge.  Dkt. 629 at 6.  That overreads those cases, which ultimately conclude that the deponents *did have* unique or special knowledge,[4] but even if Nelson were right, his argument would simply show that *those* courts misapplied the test that Nelson acknowledges they purported to follow, not that the Magistrate Judge did.  As the body of cases listed above amply demonstrates, a party may only depose an apex witness if he has "unique" knowledge.  Magistrate Judge Buchanan's decision to hold Nelson to that requirement was consistent with, not contrary to, governing law.  Nelson's first objection should be overruled.

---

[4] In *Minter*, the court acknowledged the rule requiring "unique knowledge" and allowed the apex deposition to proceed only after finding that this requirement was met and that the deposition would not be "unreasonably cumulative or duplicative."  258 F.R.D. at 126–27.  In *Duke Energy*, the court acknowledged that "[u]nder the apex doctrine" the deposing party must show that "the executive has unique or special knowledge of the facts at issue" and allowed the apex executive to be deposed only after concluding that her "relevant knowledge and involvement" were "sufficient."  2021 WL 5826786, at *3 (internal quotation marks omitted).  In *JTH Tax*, the district court discussed the "unique or special knowledge" requirement and concluded that an apex deposition was appropriate because the witness had "unique, personal knowledge of the facts at issue."  2016 WL 9223926, at *5.  And in *Intelligent Verification Sys.*, the court noted that the apex doctrine required "unique or special knowledge of the facts at issue" and allowed the deposition of a witness whom it found had "specific and personal knowledge" of the relevant issues and whom the deposing party had alleged (in language relied on by the court) had "unique, personal knowledge."  2014 WL 12544827, at *2–3 (internal quotation marks omitted).

## II.   The Magistrate Judge's Finding That DeSantis Lacks Unique Personal Knowledge is Not Clearly Erroneous

Nelson next contends that even if the apex doctrine requires "unique" knowledge, the Magistrate Judge's conclusion that DeSantis lacked that knowledge was clearly erroneous.  *See* Dkt. 629 at 7–11.  But the record in this case unquestionably supports the Magistrate Judge's decision, and the counterarguments Nelson advances are either factually incorrect or legally irrelevant.

Nelson first argues that DeSantis must have unique knowledge because he played a significant role in the approval process for each of the transactions at issue in Amazon's complaint.  But as DeSantis explained in his declaration, all of the information he received and reviewed during that process was provided to him by lower-level executives and employees, many of whom have been made available for deposition.  *See* Dkt. 553 at ¶ 3 ("My limited role has been to review and approve real estate transactions . . . , and in performing that role I relied on information provided by other employees of Amazon or its subsidiaries and affiliates."); *id.* at ¶ 4 ("The only information I have regarding the lease or purchase transactions I have approved while in my roles at [Amazon] was provided to me by other executives or employees of Amazon and its subsidiaries and affiliates.").  Moreover, although Nelson points out that DeSantis meaningfully engaged with this information and sometimes required follow-up work to be done before he would grant his approval, those discussions were had with, and the follow-up work was assigned to, the same group of lower-level executives and employees that presented him with the information in the first place.  *See* Dkt. 629 at 9–10; *see also* Dkts. 571-8, 571-9, 571-11, 571-12, 571-13, 571-14, 571-15.

Accordingly, all of the factual information that DeSantis had about the relevant transactions, as well as the strategic considerations he took into account when deciding whether to approve them, is known not just by DeSantis, but by those who reported to him.  That renders any knowledge he had the opposite of "unique."  Indeed, "even where an executive possesses relevant

10

knowledge, that knowledge is not unique if it was provided solely to the executive by lower-level employees from whom that information can more easily be obtained." *Speed RMG Partners, LLC v. Arctic Cat Sales, Inc.*, 2021 WL 5095281, at *4 (D. Minn. Mar. 12, 2021); *see also RLI Ins. Co.*, 2020 WL 2311668, at *3 (precluding apex deposition where the executive had no knowledge about the relevant issues beyond what was known to other witnesses); *Steele v. XPO Express, Inc.*, 2017 WL 10544634, at *2 (D.S.C. May 8, 2017) (precluding apex deposition where it appeared that the specific knowledge sought from the executive could be obtained from other witnesses).

Because lower-level executives and employees necessarily shared in DeSantis's knowledge of the review process itself, Nelson tries a different tack in his second argument.  He contends that even if others were aware of all the same factual information and strategic consider-ations that DeSantis was, they could not have been aware of what DeSantis *thought* about each transaction or *why* he ultimately approved it.  This is important, Nelson claims, because if DeSantis did not rely upon any of the fraudulent misstatements or omissions allegedly made by the Defend-ants when approving the transactions at issue, Nelson has a "complete defense" to at least some of Amazon's claims.  *See* Dkt. 629 at 9.

This argument is a red herring.  To the extent Amazon must show that it relied on Nelson's fraudulent misrepresentations and omissions in approving the transactions, it can—and has—made that showing without any reference to DeSantis.  As Nelson concedes, Amazon's real-estate ap-proval process operates in a hierarchical fashion, and for each of the transactions involved in this case, DeSantis was at or near the top.  *See* Dkt. 629 at 7, 9.  Before a transaction could be presented to him, it had to be reviewed and approved by every decision-maker below.  *See id.* at 9; *see also, e.g.,* Dkt. 571-7.  Because the review process had so many layers, with each one dependent on the last, Amazon does not need to show that the "penultimate" or "top" decision-maker relied on the

fraudulent misrepresentations and omissions made by the Defendants; it need only show that *one* of them did.

Amazon can already make that showing. Matthew Doden, Amazon's in-house counsel and one of the corporate representatives designated for Amazon's Rule 30(b)(6) depositions, has submitted a declaration unequivocally stating that "Amazon would not, under any circumstances, have approved the real estate transactions it entered into" had it been aware of the fraudulent scheme concocted by Nelson and the other Defendants. Dkt. 59 at ¶ 20. In addition, Chris Vonderhaar, a critical decision-maker below DeSantis, was recently deposed and stated in clear terms that he did not know about Nelson's fraudulent scheme and would not have approved the deals if he did. *See* Ex. 2 at 341 ("I would not have approved any of those [deals]. In fact, I would have alerted legal . . . ."); *id.* at 342 (responding "[a]bsolutely not" when asked whether he would have approved any of the deals if he had "known or it had been disclosed" that Nelson "would get any financial benefit of any kind in connection with the transactions"); *id.* at 343 (explaining that the co-conspirators' relationship "would be enough to stop or reject the deal and inform or relate to legal that these relationships exist" and further noting that "[t]he fact that [Amazon] employees were going to profit as a result [was] doubly bad"); *see also* 339–46. Vonderhaar's reliance on the Defendants' fraudulent misstatements and omissions is all Amazon needs to establish liability on its claims.

For these reasons, Nelson is incorrect when he argues that "the information that *each person* in the approval chain deemed important, relevant, and relied upon when granting their approval (including DeSantis, who was the penultimate approver) is highly relevant to the claims before the Court and provides a substantial basis for the depositions of those decision makers." Dkt. 629 at 8. In fact, testimony from DeSantis about this information is plainly irrelevant to any of Amazon's

claims or any legally cognizable defense Nelson might raise.[5]  This fact also renders each of the

cases that Nelson cites in support of his argument inapposite.  *See id.* at 10–11.  In none of them

did the court conclude that the apex executive's unique knowledge would have been irrelevant to

the legal claims and defenses at issue in the case.  Instead, they expressly concluded otherwise.

*See Speed RMG Partners*, 2021 WL 5095281, at *6 (concluding that the apex executives "likely

possess[ed] some unique first-hand, non-repetitive knowledge *that is relevant to the claims and

defenses at issue in th[e] case*") (emphasis added); *Zimmerman v. Al Jazeera Am., LLC*, 329 F.R.D.

1, 7 (D.D.C. 2018) (concluding that the apex executive's involvement in a particular decision gave

him "unique knowledge of facts *highly relevant to th[e] case*") (emphasis added); *Comprehensive

Pharmacy Servs., LLC v. Ascension Health Res. & Supply Mgmt. Grp., LLC*, 2018 WL 1762716,

at *3 (E.D. Mo. Apr. 12, 2018) (explaining that the apex executive's involvement in strategy meet-

ings and other discussions about the contract at issue in the lawsuit was "more than sufficient to

meet the plaintiff's *threshold showing of relevance*") (internal quotation marks omitted; emphasis

added).

      Because Nelson has no unique knowledge that is legally relevant to this case, the Magis-

trate Judge's decision was not "clearly erroneous."  Nelson's second objection should be overruled.

---

[5] Moreover, Nelson suggests that *Comprehensive Pharmacy Servs., LLC v. Ascension Health Res. & Supply Mgmt. Grp., LLC*, 2018 WL 1762716 (E.D. Mo. Apr. 12, 2018), invites courts to consider whether an apex executive is connected to the plaintiff or the defendant in deter-mining whether it is fair to subject him to the burdens of a deposition.  *See* Dkt. 629 at 11 n.3 ("Note here Amazon is the one that brought this action and is seeking significant amounts of money from Defendants in this action, which the *Comprehensive Pharmacy Servs.* case con-sidered in its analysis of whether the burden was fair to require the deponent to sit for the deposition.").  The *Comprehensive Pharmacy* court said no such thing.  And it would hardly be fair to subject DeSantis to the burdens of a deposition merely because the company that employs him was forced to file a lawsuit after the Defendants unjustly enriched themselves by millions of dollars at its expense.

### III.   The Magistrate Judge Did Not Err in Finding that Other Less Burdensome Means were Available to Nelson

In granting Amazon's motion, the Magistrate Judge concluded that Nelson would "be able to get everything [he] need[s] from the other depositions, especially the 30(b)(6) depositions." Dkt 630-1 at 6.   Nelson's primary objection to this holding is that deposing other executives and employees at Amazon would be an inadequate substitute for DeSantis because they cannot attest to the internal thought processes that led to his decisions.  *See* Dkt. 629 at 11–12.  That argument fails for the reasons explained above: testimony about DeSantis's internal thought processes is legally irrelevant to the claims and defenses at issue in this lawsuit.

The other two arguments Nelson makes in connection with this prong are equally unavailing.  First, Nelson asserts that he is not required to exhaust *every* other avenue prior to deposing DeSantis, and to the extent the Magistrate Judge thought otherwise, she was incorrect.  *See id.* at 11.  This argument rests entirely on a single decision from the Southern District of Florida— *Palmisano v. Paragon 28, Inc.*, 2021 WL 1686928 (S.D. Fla. Apr. 23, 2021)—which involved materially different facts and is inconsistent with the numerous decisions Amazon has cited from within the Fourth Circuit.[6]  Dkt. 550 at 11–13 (citing *Performance Sales*, 2012 WL 4061680, at *3; *RLI Ins. Co.*, 2020 WL 2311668, at *3; *Sun Cap. Partners*, 310 F.R.D. at 528; *Lumber Liquidators*, 2018 WL 3934396, at *3–5; *Smithfield Bus. Park*, 2014 WL 547078, at *2–3).  Those decisions make clear that apex depositions violate Rule 26 unless the deposing party can show that they actually tried and failed to obtain the information through other means of discovery.

---

[6]  The court in *Palmisano* simply held that it had previously acted within its discretion in permitting an apex deposition of an executive who had "unique knowledge" that was not available "through other sources" after the opposing party made repeated, unsuccessful efforts to obtain the relevant information.  2021 WL 1686928, at *2–3 (denying motion for reconsideration).  For the reasons explained above and in Amazon's motion for a protective order, Dkt. 550, this case presents materially different facts.

Moreover, *even if* there was some leniency baked into the apex doctrine's exhaustion requirement, it is indisputable that at the very least, it requires a party to take the deposition of lower-level employees or the company itself before targeting executives sitting atop the corporate structure. *See, e.g., RLI Ins. Co.*, 2020 WL 2311668, at *3 (granting motion for protective order where party seeking to take apex deposition had failed to seek information from other knowledge executives in deposition); *Estate of Levingston*, 320 F.R.D. at 528 ("The Court may refuse to allow the deposition of the apex employee before the party makes effort to take the deposition of lower level employees who are more closely tied to the issues to be addressed."); *Sun Cap. Partners*, 310 F.R.D. at 528 (holding that party failed to satisfy second prong of apex doctrine where the party "ha[d] not yet deposed any other lesser-ranking employees in an effort to conduct discovery of the facts at issue"); *Smithfield Bus. Park*, 2014 WL 547078, at *2 (precluding apex deposition because "the deposition of [the party's Rule] 30(b)(6) designee later [that] month may [have] obviate[d] [the apex executive's] deposition altogether or clarif[ied] the basis on which it should be allowed to proceed").

Nelson failed to take that step. Indeed, Nelson served the notice of deposition for DeSantis *before* deposing a single other Amazon witness, *before* noticing Amazon's Rule 30(b)(6) deposition, and *before* serving a single interrogatory on Amazon. *See* Dkt. 550 at 2–4, 11–14; Dkt. 574 at 10. If Nelson had it his way, DeSantis's deposition would have taken place on March 2, 2022, making the Senior Vice President of Global Infrastructure only the *second* Amazon witness to provide testimony in this case. *See* Dkt. 551-3 at 3; Dkt. 574 at 10. Regardless of whether one reads the case law to require complete exhaustion or something less, it surely prohibits this.

Second, Nelson argues that he has sought written discovery, but that Amazon has "stymied those attempts." Dkt. 629 at 11–14 (bold omitted). His primary contention is that Amazon has

15

not and will not search DeSantis's emails, despite the Defendants requests that it do so.  As a preliminary matter, although discovery has been underway for months, Nelson did not even ask Amazon to search DeSantis's emails until March 3—more than two weeks after he noticed De-Santis for deposition and days after Amazon filed its motion for a protective order.  *See* Dkt. 574 at 11 n.3; *see also* Dkt. 567 at ¶ 25; Dkt. 575-3.  Given that timing, any dispute relating to DeSan-tis's emails cannot be used to justify Nelson's initial decision to seek DeSantis's deposition.

 Nor can Nelson contend that any dispute over these emails provides a basis for allowing him to depose DeSantis now.  Amazon has designated employees who reported to DeSantis during the real-estate approval process as custodians, collected their emails, and produced them to the extent they were non-privileged and responsive to Nelson's discovery requests.  If there were any communications between DeSantis and these employees relating to the transactions at issue in this case, they have been picked up by this search and provided to Nelson; separately designating De-Santis as a custodian and performing the same process all over again will not uncover additional unproduced results.  *See* Dkt. 630-1 at 4–5.

Nelson has only one basis for arguing otherwise.  After Amazon terminated his employ-ment, Nelson unlawfully retained a hard drive containing approximately 1.4 million company doc-uments.  *See* Dkt. 551-4 at 15.  Within those documents, Nelson has found a few communications between DeSantis and lower-level Amazon employees that did not turn up in Amazon's search efforts.  *See* Dkt. 629 at 13.  But as Nelson is well aware, Amazon has a very short retention policy for email correspondence, so it is entirely unsurprising that emails relating to some of the transac-tions at issue in this case are no longer within Amazon's possession.  Because DeSantis was subject to the same retention policy as everybody else at Amazon, there is no reason to believe that search-ing his email would produce these correspondence.

16

The fact that Nelson has these emails does not demonstrate that there is a bug in Amazon's discovery processes or that Amazon is being unreasonable in its current refusal to search DeSantis's emails.  More importantly, it certainly does not show that Nelson is entitled to depose DeSantis.  Instead, this is a separate discovery dispute which the parties will resolve in the normal course, or if necessary, through motions directed to the Magistrate Judge.

In sum, Nelson has or will soon depose other Amazon executives and employees who were involved in the relevant events of this case.  He will also have an opportunity to take a Rule 30(b)(6) deposition, which will require Amazon to present a knowledgeable witness on Nelson's broad range of noticed topics.  And between now and the close of fact discovery—which was recently extended—Nelson will have the opportunity to gather any remaining relevant information he needs.  The testimony Nelson seeks from DeSantis would be completely cumulative and duplicative of the information that Nelson can obtain from these other sources, or, as explained above, it would be legally irrelevant.  The benefits of such a deposition are marginal at best and do not justify the significant burdens that would inure to DeSantis.  *See Performance Sales*, 2012 WL 4061680, at \*3–4, 9–10; *see also RLI Ins. Co.*, 2020 WL 2311668, at \*3; *Lumber Liquidators*, 2018 WL 3934396, at \*4–5.  Nelson's third objection should be overruled.

## CONCLUSION

To succeed in these objections, Nelson had to show that the Magistrate Judge's order was "clearly erroneous or [] contrary to law."  Fed. R. Civ. P. 72(a).  He has not done so.  For the reasons explained above and in Amazon's earlier briefing, Dkts. 549, 550, 574, DeSantis has no unique, personal knowledge relevant to the issues in this case, and Nelson has failed to exhaust

other, less burdensome methods of obtaining the information he seeks.  The Court should overrule

Nelson's objections and put the question of DeSantis's deposition to rest.

Dated:  April 19, 2022

Respectfully submitted,

*/s/ Michael R. Dziuban*

Veronica S. Moyé (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
Telephone:  (214) 698-3100
Facsimile:  (214) 571-2900
vmoye@gibsondunn.com

Elizabeth P. Papez (*pro hac vice*)
Patrick F. Stokes (*pro hac vice*)
Claudia M. Barrett (*pro hac vice*)
Michael R. Dziuban (Va. State Bar No. 89136)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
Telephone:  (202) 955-8500
Facsimile:  (202) 467-0539
epapez@gibsondunn.com
pstokes@gibsondunn.com
cbarrett@gibsondunn.com
mdziuban@gibsondunn.com

*Counsel for Plaintiffs Amazon.com, Inc. and Amazon Data Services, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 19, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system.  I will then send the document and a notification of such filing (NEF) to the following parties via U.S. mail to their last-known address and by email, where noted:

        Casey Kirschner
        635 N. Alvarado Lane
        Plymouth, MN 55447
        By email: casey.kirschner@gmail.com

        *s/ Michael R. Dziuban*
        Michael R. Dziuban
        GIBSON, DUNN & CRUTCHER LLP
        1050 Connecticut Avenue, N.W.
        Washington, D.C. 20036-5306
        Telephone:  (202) 955-8500
        Facsimile:  (202) 467-0539
        mdziuban@gibsondunn.com

        *Counsel for Plaintiffs Amazon.com, Inc. and Amazon Data Services, Inc.*