IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| AMAZON.COM, INC. and AMAZON DATA SERVICES, INC., <br><br>        Plaintiffs, <br><br>   v. <br><br> WDC HOLDINGS LLC dba NORTHSTAR COMMERCIAL PARTNERS; BRIAN WATSON; STERLING NCP FF, LLC; MANASSAS NCP FF, LLC; NSIPI ADMINISTRATIVE MANAGER; NOVA WPC LLC; WHITE PEAKS CAPITAL LLC; VILLANOVA TRUST; CARLETON NELSON; CASEY KIRSCHNER; ALLCORE DEVELOPMENT LLC; FINBRIT HOLDINGS LLC; CHESHIRE VENTURES LLC; JOHN DOES 1-20, <br><br>        Defendants. | Case No. 1:20-cv-00484-RDA-TCB |
| 800 HOYT LLC, <br><br>        Intervening Interpleader Plaintiff / Intervening Interpleader Counter-Defendant, <br><br>   v. <br><br> BRIAN WATSON; WDC HOLDINGS, LLC; BW HOLDINGS, LLC, <br><br>        Interpleader Defendants, <br><br>   and <br><br> AMAZON.COM, INC., and AMAZON DATA SERVICES, INC., <br><br> Interpleader Defendants / Interpleader Counter-Plaintiffs. | |

**NON-PARTY IPI PARTNERS, LLC'S [AMENDED] MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT BRIAN WATSON'S MOTION TO COMPEL COMPLIANCE WITH RULE 45 SUBPOENA**

# TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................1

II.     BACKGROUND ....................................................................................................3
        A.      Non-Party IPI and the Underlying Action ..................................................3
        B.      The Subpoena and IPI's Responses and Objections ...................................4
        C.      Watson's Discovery Disputes in the Action...............................................11
        D.      Pending Scope of the Action......................................................................11

III.    LEGAL STANDARD ...........................................................................................12

IV.     ARGUMENT ........................................................................................................15
        A.      The Motion to Compel Should Be Denied Because Watson's Subpoena is
                Overbroad and Unduly Burdensome on its Face .......................................16
        B.      The Motion to Compel Should Be Denied Because Watson Seeks
                Information Available From Other Sources And Subject to Pending
                Discovery Motions .....................................................................................18
                i.      Communications on which the Parties were included in the top line
                        message are in the possession of the parties to this Action and
                        subject to pending motions. ............................................................18
                ii.     Materials concerning IPI's non-Northstar leases with Amazon are
                        irrelevant, in the possession of parties to this Action and subject to
                        pending motions............................................................................21
        C.      The Motion to Compel Should Be Denied Because Watson Is Not Entitled
                to Discovery of IPI's Documents Beyond April 30, 2020. ......................23

V.      CONCLUSION.....................................................................................................26

**<u>TABLE OF AUTHORITIES</u>**

**Cases**                                                                                   **Page(s)**

*Belk v. Smith*,
    No. 1:10CV724, 2014 WL 4986678 (M.D.N.C. Oct. 6, 2014) .............................................15

*Bierman Fam. Farm, LLC v. United Farm Fam. Ins. Co.*,
    No. CV ADC-17-0004, 2017 WL 3311206 (D. Md. Aug. 2, 2017).......................................14

*In re Bunce*,
    No. CV TDC-18-3821, 2020 WL 1331911 (D. Md. Mar. 23, 2020) ...............................13, 16

*Cap. One Bank (USA) N.A. v. Hess Kennedy Chartered, LLC*,
    No. 3:08CV147, 2008 WL 4467160 (E.D. Va. Sept. 30, 2008).............................................14

*Cook v. Howard*,
    484 F. App'x. 805 (4th Cir. 2012) ......................................................................................12

*Elat v. Ngoubene*,
    CIV. PWG-11-2931, 2013 WL 4478190 (D. Md. Aug. 16, 2013).........................................25

*Gilmore v. Jones*,
    339 F.R.D. 111 (W.D. Va. 2021)...................................................................................13, 15

*Hunton & Williams v. U.S. Dept. of Justice*,
    590 F.3d 272 (4th Cir. 2010) .............................................................................................26

*James Madison Project v. C.I.A.*,
    No. 1:08CV1323GBL, 2009 WL 2777961 (E.D. Va. Aug. 31, 2009) .............................13, 17

*Singletary v. Sterling Transp. Co.*,
    289 F.R.D. 237 (E.D. Va. 2012) ........................................................................................14

*Sirpal v. Fengrong Wang*,
    No. CIV. WDQ-12-0365, 2012 WL 2880565 (D. Md. July 12, 2012)...................................14

*In re Subpoena Duces Tecum to AOL, LLC*,
    550 F. Supp. 2d 606 (E.D. Va. 2008) .................................................................13, 17, 23, 25

*In re Subpoenas for Documents Issued to ThompsonMcMullan, P.C.*,
    CV 3:16-MC-1, 2016 WL 1071016 (E.D. Va. Mar. 17, 2016) ...................................... *passim*

*United States v. Meridian Senior Living, LLC*,
    No. 5:16-CV-410-BO, 2018 WL 5723930 (E.D.N.C. Nov. 1, 2018)......................................15

*Va. Dept. of Corrections v. Jordan*,
    921 F.3d 180 (4th Cir. 2019) ........................................................................................ *passim*

*Volt Power, LLC v. Butts*,
  7:19-CV-00149-BO, 2020 WL 5865870 (E.D.N.C. Oct. 1, 2020)..........................................26

**Other Authorities**

The Sedona Conference, *Commentary on Rule 45 Subpoenas to Non-Parties*,
  22 Sedona Conf. J. 1 (2nd ed. 2020) ........................................................................................26

Fed. R. Civ. P. 26....................................................................................................................12, 21

Fed. R. Civ. P. 26(b)(1)......................................................................................................12, 18, 21

Fed. R. Civ. P. 26(b)(2)(C) .......................................................................................................12, 19

Fed. R. Civ. P. 45........................................................................................................1, 9, 12, 26

Fed. R. Civ. P. 45(c)(3)(A) ............................................................................................................12

Fed. R. Civ. P. 45(d)(2)(B) .............................................................................................................5

Non-party IPI Partners, LLC ("IPI"), by and through its undersigned attorneys, respectfully files this opposition to Defendant Brian Watson's ("Defendant Watson" or "Watson") *Motion to Compel Non-Party IPI Partners, LLC's Compliance with Rule 45 Subpoena* and memorandum in support of the same (Dkts. 649, 650) (respectively, the "Motion to Compel" and the "Memorandum").

## I.   **INTRODUCTION**

Despite knowing that non-party IPI has been represented by undersigned counsel since April 2020 in this matter, Defendant Watson chose to serve his *Subpoena To Produce Documents, Information, Or Objects Or To Permit Inspection Of Premises In A Civil Action* (Dkt. 650, Ex. B) (the "Subpoena") on IPI's registered agent without any outreach or notice to counsel.  The agent was served with the subpoena on January 28, 2022.   The Subpoena itself is extraordinary in its breadth, requesting "all documents and communications," from January 1, 2017 through the present, relating to *all* parties to the above-captioned matter (the "Action") and seven enumerated individuals, not limited by any subject matter, let alone subject matter relevant to the claims or defenses in this Action.  As written, this Subpoena would encompass over half a million documents in IPI's possession.  Faced with this impermissibly broad Subpoena, IPI timely lodged responses and objections and offered to meet and confer.  Watson's counsel, however, failed to respond to non-party IPI's request to meet and confer for over three weeks.

After an initial meet and confer, some follow up email exchanges, and IPI's first production of documents, Defendant Watson brought this Motion to Compel.  To date, non-party IPI has produced over ten thousand documents and nearly one-hundred thousand pages, based on Watson's stated priorities.  IPI's production remains ongoing and we anticipate that IPI will have reviewed over 42,000 documents and over 524,000 pages by the hearing date.  Watson also filed

this Motion to Compel against non-party IPI despite moving to compel much of the same information from Plaintiffs Amazon.com, Inc. and Amazon Data Services, Inc., ("Plaintiffs" or "Amazon").  The Court subsequently granted Watson's request to hold that motion in abeyance while the parties proceeded with discovery.

Watson moves to compel three categories of documents from non-party IPI.  First, Watson seeks the production of documents through the present—nearly two full years after IPI cut ties with Watson and his co-defendants in the Action.  Second, Watson seeks the production of documents on which parties to this litigation are included in the top-line email message— documents that are unequivocally within the parties' possession, custody, and control.  Third, Watson seeks materials related to Amazon leases that never involved Watson or his co-defendants and that have no connection to the facts and circumstances of the underlying Action.

In essence, Watson asks the Court to force non-party IPI to review and produce tens of thousands of documents for requests ("Requests") that are: (1) overbroad and unduly burdensome for a non-party; (2) in the possession of parties to the Action or other less burdensome sources; (3) subject to pending motions before this Court; and (4) not relevant to any parties' claims or defenses in this Action.  Watson's motion fails to present a valid argument showing that he is entitled to such broad and burdensome discovery from a non-party.

Accordingly, and given the heightened scrutiny courts must use when evaluating third-party discovery, non-party IPI respectfully asks this Court to deny Defendant Watson's Motion to Compel in its entirety.[1]

---

[1] To the extent the Court denies Watson's Motion to Compel on relevance grounds, in whole or in part, IPI also asks this Court to limit the topics on which IPI officers Matt A'Hearn and Luke Gilpin can be asked in their upcoming depositions.

## II.   **BACKGROUND**

### A. **Non-Party IPI and the Underlying Action**

Non-party IPI is an SEC-registered investment adviser that manages a fund that makes real estate investments in technology and connectivity-related real estate assets.  *Declaration of Luke Gilpin in Support of Plaintiffs' Supplemental Memorandum in Support of Show Cause Order and Motion for Preliminary Injunction* ¶ 2 (Dkt. 46) (hereinafter the "Gilpin Declaration").  IPI enters into joint ventures with various firms to combine resources on development projects.  *Id.* ¶ 3.  IPI typically serves as a capital provider in the joint ventures and partners with firms that serve primarily as real estate developers.  *Id.*; Second Am. Compl. ¶ 225 (Dkt. 150).  IPI was introduced to Defendant Watson and defendant WDC Holdings LLC dba Northstar Commercial Partners ("Northstar") in January of 2018 through third-party brokers who were helping Watson source capital for a real estate development project with Amazon.  Gilpin Decl. ¶¶ 3; *see* Second Am. Compl. ¶¶ 225–26.  Together, IPI and Northstar formed a joint venture called NSIPI Data Center Venture, LLC (the "Joint Venture"), which, through four subsidiaries, executed nine leases with Amazon for shell facilities developed and located on several real property sites in northern Virginia.  Gilpin Decl. ¶¶ 3, 4; Second Am. Compl. ¶¶ 226–27, 232, 234.

In early 2020, the fraudulent scheme alleged in the Second Amended Complaint was independently disclosed to IPI and Amazon through separate Northstar-related sources.  *See* Second Am. Compl. ¶¶ 109–121, 240–261; Gilpin Decl. ¶¶ 10–17.  On April 2, 2020, IPI terminated Watson and all Northstar-affiliated entities from involvement with the lease transactions and from the Joint Venture.  Second Am. Compl. ¶ 271.

IPI is not named as a defendant in this Action, and the Second Amended Complaint makes clear that IPI "is not known or suspected to have endorsed or engaged in any of the

conduct at issue in this suit." Second Am. Compl. ¶ 171. Although IPI is not a party to this Action, Watson-affiliated entities have filed two separate lawsuits against IPI in Delaware Chancery Court.[2] Discovery in those litigations has not yet begun, and IPI is concerned that Watson is using the third party discovery process in this Action to get advance discovery in the Delaware actions.

### B. The Subpoena and IPI's Responses and Objections

On January 28, 2022, Defendant Watson served the Subpoena on IPI's registered agent.[3] Contrary to Watson's assertion in his Motion to Compel, Watson did not contact IPI's counsel in advance of service and never requested that IPI's counsel accept service on behalf of IPI.

Defendant Watson's Subpoena to non-party IPI contains three Requests for the production of documents dated January 1, 2017, through the present. The first Request ("Request 1") is for "all documents and communications related to defendants." *See* Subpoena, Attachment A at 7 (capitalizations omitted). The second Request ("Request 2") is for "all documents and communications related to Plaintiffs." *Id.* (capitalizations omitted). The third Request ("Request 3") is for "all documents and communications" related to seven individuals: Christian Kirschner, Rodney Atherton, Tim Lorman, Patricia Watson, Kyle Ramstetter, Will

---

[2] These two cases are captioned *W.D.C. Holdings d/b/a/ Northstar Commercial Partners,* et al. *v. IPI Partners, LLC*, et al., C.A. No. 2020-1026-JTL (Del Ch.) and *Sterling NCP FF, LLC v. NSIPI Data Center Venture, LLC,* et al., C.A. No. 2021-0059-JTL. (Del. Ch.).

[3] Watson also engaged a process server to serve deposition subpoenas at the homes of two IPI officers that Watson seeks to depose, again despite the fact that Watson knows the individuals have been represented by the undersigned counsel for nearly two years. Watson has noticed the depositions for those two representatives—Luke Gilpin and Matthew A'Hearn—for May 9 and May 11, respectively.

Camerson and "Informant 1 as identified in the Complaint."  *Id.* at 8 (capitalizations omitted).

None of the Requests were limited by subject matter.[4]

On February 11, 2022, the date prescribed by the Subpoena and within 14 days of service

of the Subpoena, as required by Federal Rule of Civil Procedure ("Rule") 45(d)(2)(B), non-party

IPI provided its responses and objections to the Subpoena.  *See* Motion to Compel, Ex. C, *Third*

*Party IPI Partners, LLC's Responses and Objections to Brian Watson's Subpoena to Produce*

*Documents, Information, or Objects or to Permit Inspection of Premises in a Legal Action* (the

"Responses"); Fed. R. Civ. P. 45(d)(2)(B).  IPI's Responses identified numerous specific grounds

for objecting to the Subpoena, including that the Subpoena requested information in the

possession of the parties to the Action, that the Subpoena was overly broad and unduly

burdensome, and that the Subpoena seeks information not relevant to the Action.  *See* Motion to

Compel Ex. C, Responses.  IPI also noted that it intended to produce responsive documents to all

three of the Requests in the Subpoena, but requested that Defendant Watson engage in meet and

confer discussions regarding the scope of IPI's review and productions.  Additionally, and

immediately after serving the IPI Responses, IPI began collecting documents that could be

responsive to the Subpoena and to evaluate the scope of the Subpoena.  This process resulted in

the collection of over 535,000 documents.

On March 9, 2022, nearly a month after IPI served its Responses on Defendant Watson's

counsel and less than a month before the then-scheduled fact discovery cut-off,[5] Defendant

Watson's counsel contacted non-party IPI's counsel to meet and confer.  On March 14, 2022,

---

[4] Watson's Request 2 provided examples of some responsive subject matter, but the Subpoena made clear that the list was non-exhaustive.  Subpoena, Attachment A at 7.

[5] The deadline for the end of discovery has since been extended to May 6, 2022, in an April 4 Order by this Court.  *See Order Granting Plaintiffs' Motion for Extending Discovery and Other Case Deadlines* (Dkt. 622).

counsel for non-party IPI and Defendant Watson met and conferred via telephone.  IPI proposed to limit the subpoena in three principal ways.  First, to limit the time frame to January 1, 2018 to April 30, 2020.  Second, to exclude any emails on which a party to this Action appears on the top, as such a document is undeniably in the possession, custody or control of a party.  And third, to exclude any IPI deals with Amazon unrelated to Watson, Northstar or the other defendants.[6] Acknowledging that IPI and Northstar had not been introduced until 2018, Watson agreed to use January 1, 2018 as the beginning date for responsive materials, but that was the only limitation to which Watson agreed.

IPI's counsel proposed a cut-off date of April 30, 2020, rather than the Subpoena's demand for documents through the present, because IPI terminated Northstar, Watson, and their affiliates from the Joint Venture on April 2, 2020, and IPI was unlikely to possess documents that a party did not possess, related to the allegations of fraud related to any of the defendants, including Defendants Watson and Northstar, or any resulting damages *to Amazon* after that date. Watson's counsel rejected this proposal because he purportedly seeks communications between IPI and Amazon to assess Amazon's assertions of damages.   IPI's counsel invited Defendant Watson's counsel to propose an alternative end date to the Subpoena, however Watson's counsel failed to respond to this invitation.

Non-party IPI also proposed limiting its review and production to exclude emails where a party to the Action is included on the top-line email of the email chain because these documents are in the parties' possession, custody or control, and the elimination of such documents would significantly lessen IPI's burden in responding to the Subpoena.  Defendant Watson's counsel

---

[6] IPI also asked Watson to confirm that he would not interpret the subpoena to cover emails and documents in the possession of IPI's outside counsel Akin, Gump, Strauss, Hauer & Feld LLP. Watson confirmed this.

tentatively agreed to exclude documents where *defendants* were on the top of the email chain, but objected to excluding documents with *Amazon* on the top of the email chain.  According to Watson's counsel, Defendant Watson had received "precious little" from Amazon through discovery and Defendant Watson was seeking to "fill the gaps" in such discovery with discovery from third parties.  IPI's counsel suggested that Defendant Watson raise this issue directly with Amazon.

Finally, IPI said it would limit its production to Amazon deals that involved Watson and Northstar.  By way of reference, the Amazon deals on which Watson and Northstar worked are specifically listed by Watson in Request 2(a) of his Subpoena.  Watson's counsel acknowledged that the Requests encompass all Amazon documents, and that there was potential to pull in documents unrelated to Northstar.

Shortly after the meet and confer, on March 18, 2022, counsel for Defendant Watson sent an email listing the document categories he characterized as "top priorities," and, on March 21, asked when IPI would be able to make a production.  Counsel for IPI responded on the same day with a detailed email. The key points from the email are as follows:[7]

- First, IPI committed to reviewing documents that may be responsive to the Subpoena beginning on January 1, 2018, the agreed upon start date.  Connolly Decl. Ex. B at 3.  Counsel also re-stated its previously proposed end date of April 30, 2020, and requested a counter-proposal.  *Id.*  Counsel for Watson provided no counter-proposal before filing his Motion to Compel, and no further explanation as to why IPI should be burdened with producing documents dated through the present—a two year timeframe.  *See id.* at 1.

---

[7] *See* Connolly Decl. Ex. B, Email Thread Between Akin Gump and Ifrah Law re: Agreed Protective Order (Dkt. 55), dated March 14–24, 2022.

- Second, counsel for IPI confirmed that it would be prioritizing a review of documents potentially responsive to Request 3 of the Subpoena and to the transactions that Watson's counsel identified as priorities in its March 18 email. *Id.* at 3. IPI's counsel repeated its position that IPI would only produce documents regarding leases concerning Amazon data centers in Northern Virginia with which IPI and Northstar were involved. *Id.*

- Third, IPI restated its objection that "it is unduly burdensome to require IPI, a third-party, to review documents that are also in the possession of parties to the litigation." *Id.* at 4. Accordingly, counsel noted that IPI would not review or produce any documents where the top email includes any of the parties to this Action. *Id.* Counsel for IPI concluded by noting that even with the stated limitations, non-party IPI is collecting and reviewing tens of thousands of documents. *Id.* Nonetheless, IPI committed to prioritizing the review of documents responsive to Subpoena Request 3 and the transactions Watson's counsel stated were Watson's "top priorities." *Id.* at 3, 5.

On March 23, 2022, Watson's counsel responded to IPI via email. *Id.* at 2. Regarding the end date of the production timeframe, Watson's counsel noted that "any responsive materials dated after April 30, 2020, would be subject to the [S]ubpoena," without any explanation as to how or why, and asked IPI to indicate how many documents might be responsive and dated after the proposed April 30, 2020 end date. *Id.* Watson's counsel also argued that "all leases for Amazon's data centers in the [northern Virginia] region—not just those involving Northstar—are responsive to the subpoena requests" because, without further explanation, information relating to those non-Northstar leases in northern Virginia are "relevant to both Amazon's theory of the case and its theory of damages." *Id.* Finally, Defendant Watson's counsel agreed that IPI could omit documents on which the defendants are included in the top line email, but did not agree that

8

IPI could omit documents on which Amazon is included on the top-line email. *Id.* Counsel noted that to the extent that IPI had remaining undue burden concerns, Defendant Watson needed "to understand better the quantity and scope of materials that would be affected by the proposed approach." *Id.*

On March 24, 2022, counsel for IPI responded, first noting that the Subpoena as drafted resulted in the collection of over 535,000 communications and files. *Id.* at 1. Even after applying IPI's proposed limitations and search terms to narrow results, counsel for IPI reported that there were over 50,000 documents between IPI's proposed end date of April 30, 2020 and the Subpoena's end date of January 21, 2022. *Id.* Given this large volume of documents, IPI's counsel advised that it would continue to use April 30, 2020, as the end date for document review. *Id.* Counsel for IPI also reiterated that it was unwilling to produce communications with parties to the Action in the top email or to produce documents regarding leases with Amazon to which Northstar was never a party, as both requests seek information in the possession of a party to the Action and the latter request exceeds the subject matter and scope of this Action. *Id.* Defendant Watson's Counsel did not respond to this email; rather, five days later he filed this Motion to Compel.[8]

IPI has agreed to the following parameters (the "Proposal"), which Defendant Watson has rejected and moves to compel:

---

[8] On March 30, 2022, Watson's counsel emailed counsel for IPI attaching a motion to compel compliance with this Subpoena filed in the United States District Court for the District of Columbia. Connolly Decl. Ex. D, Email from J. Grubman, Ifrah Law, to Akin Gump Attorneys re Brian Watson's Motion to Compel Non-Party IPI Partners, LLC's Compliance with Rule 45 Subpoena, dated March 30, 2022. IPI's counsel subsequently reached out to Watson's counsel, indicating IPI's consent to transfer the motion to this Court pursuant to Rule 45, Connolly Decl. Ex. F, to which Defendant Watson agreed, resulting in the filing of the instant Motion to Compel in this Court on April 11, 2022.

- IPI committed to reviewing documents that may be responsive to all of the Requests in the Subpoena beginning on January 1, 2018;

- IPI would not review or produce documents dated after April 30, 2020;[9]

- IPI would not review or produce documents with parties to the Action included in the top-line email;[10] and

- IPI would not produce documents regarding leases with Amazon to which Northstar was never a party.[11]

To date, non-party IPI has made three productions of documents responsive to the Subpoena. In total, IPI has produced 10,169 documents, including 98,794 pages of materials, prioritizing documents responsive to Subpoena Request No. 3 and Defendant Watson's "top priorities," and for the two IPI custodians for which Watson has issued deposition subpoenas. *See* Connolly Decl. Ex. B at 3, 5. As of Thursday, April 14, 2022, Counsel for non-party IPI has logged approximately 950 attorney hours reviewing thousands of documents to respond to the Subpoena. IPI's production pursuant to its Proposal remains ongoing, and will be nearly

---

[9] Compelling production of documents beyond April 30, 2020, would force IPI to review an estimated additional 51,252 documents, comprising 732,582 pages, even with IPI's proposed limitations but including Akin Gump documents that Watson previously agreed to exclude. Without the Akin Gump documents, IPI would be forced to review an estimated additional 28,859 documents, comprising 398,194 pages.

[10] Compelling production of communications with Amazon individuals in the top-line email would force IPI to review of an estimated additional 9,603 documents, comprising 61,236 pages, and compelling production of communications with Northstar individuals in the top-line email would force IPI to review of an estimated additional 43,613 documents, comprising an estimated 733,535 pages. These figures include Akin Gump documents that Watson previously agreed to exclude. Without those Akin Gump documents, IPI would need to review an estimated additional 8,901 documents, comprising 51,755 pages, and an additional 41,613 documents, comprising an estimated 708,615 pages, respectively.

[11] Without incurring substantial cost, IPI is unable to estimate with reasonable accuracy how many additional documents and pages it would have to review if the Court compelled production of documents related to leases not involving Northstar.

complete by the hearing date for this Motion to Compel.  We estimate that as of the hearing, IPI will have reviewed a total of 42,565 documents and 524,242 pages.

### C.  Watson's Discovery Disputes in the Action

Defendant Watson seeks discovery from non-party IPI that it also seeks from parties to this Action in motions made before this Court.  On February 11, 2022, Defendant Watson filed a motion to compel discovery from Plaintiffs.  (Dkts. 524, 525).  Watson sought from Plaintiffs "all documents and communications with IPI related to any Amazon lease transaction" and, relatedly, "all documents relating to the allegations in the Complaint." (Dkts. 525 at Ex. B at 8-9).  In his motion, Watson alleged that Plaintiffs failed to produced "communications with IPI" deemed critical for "damages calculations: Materials concerning renegotiations on Northstar projects will enable Defendants to compare the Lease Transactions in question and establish what 'market' price would be for Plaintiffs." (Dkt. 525 at 7).  After Watson's motion to compel was fully briefed, on February 26, 2022, Defendants Watson and Northstar stated that because "Amazon's productions into next week may cure issues that Watson complained of in his [m]otion to [c]ompel, the Watson Defendants further request that this Court hold the motion to compel in abeyance until such time as Watson takes up unresolved discovery matters with the Court or withdraws the motion."  (Dkt 542 at 3).  On March 2, 2022, this Court ordered that "Watson's motion to compel (Dkt. 524) shall be held in abeyance until further notice."  (Dkt 556 at 2).

### D.  Pending Scope of the Action

On April 1, 2022, Amazon filed a *Motion for Leave to File Third Amended Complaint* (Dkt. 608) ("Motion for Leave"), seeking to add two individuals and four entities as defendants and to "streamline and simplify its allegations so that this matter is squarely focused on the key claims directly arising from Defendants' fraud and kick-back scheme."  Motion for Leave at 3. Notably, one such revision is that "Amazon does not intend to name Brian Watson and Northstar

as defendants to its breach of contract claim because Amazon has now achieved a settlement with a third-party, IPI, that mitigates the damages it would have suffered as a result of the lease agreements Amazon had previously entered with those Defendants and entities they controlled." *Id.* The Motion for Leave is currently pending with a hearing scheduled for May 6, 2022, but to the extent it is granted, it would further undermine Watson's request for documents post April 30, 2022, subject to his Motion to Compel.

## III.   <u>LEGAL STANDARD</u>

Subpoenas to non-parties are limited by Rules 26 and 45. *Cook v. Howard*, 484 F. App'x. 805, 812 (4th Cir. 2012). Rule 26 limits the scope of discovery to subject matter that is relevant to a party's claim or defense "and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Rule 26 further requires that "[o]n motion or on its own, the court *must* limit the frequency or extent of discovery . . . if it determines that . . . the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C) (emphasis added). Rule 45 requires courts to quash a subpoena that "subjects a person to undue burden." Fed. R. Civ. P. 45(c)(3)(A). "This ground encompasses situations where the subpoena seeks information irrelevant to the case or that would require a non-party to incur excessive expenditure of time or money . . . ." *Cook*, 484 F. App'x at 812.

The Fourth Circuit mandates that "when discovery is sought from nonparties, [] its scope must be limited even more . . . . Bystanders should not be drawn into the parties' dispute without some good reason, even if they have information that falls within the scope of party discovery." *Va. Dept. of Corrections v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019). "Courts must give the recipient's nonparty status special weight, leading to an even more demanding and sensitive

inquiry than the one governing discovery generally." *Id.* (quotations omitted).  As such, courts "must consider" the following when assessing a subpoena directed to a nonparty: (1) whether the requesting party needs the information sought, meaning that the information "likely (not just theoretically) . . . offer[s] some value over and above what the requesting party already has;" (2) whether the requesting party can obtain the same or comparable information from other sources; and (3) whether the request will impose a "cognizable burden" on the non-party. *Gilmore v. Jones*, 339 F.R.D. 111, 120 (W.D. Va. 2021) (quoting *Jordan*, 921 F.3d at 189–190).  Cognizable burdens include "the expense of collecting, reviewing, and producing documents," as well as "overbreadth and confidentiality concerns." *Jordan*, 921 F.3d at 192.  "[A]ny subpoena that seeks evidence that is n[ot] relevant … or that is so overbroad that compliance with its demands will necessarily require production of irrelevant evidence . . . creates an undue burden because it necessarily imposes greater hardship than is necessary to obtain proper discovery." *In re Subpoenas for Documents Issued to ThompsonMcMullan, P.C.*, CV 3:16-MC-1, 2016 WL 1071016, at *5 (E.D. Va. Mar. 17, 2016).

　　　"A subpoena imposes an undue burden on a party when it is overbroad." *In re Subpoena Duces Tecum to AOL, LLC*, 550 F. Supp. 2d 606, 612 (E.D. Va. 2008).  A subpoena is overbroad when it "does not limit the documents requested to subject matter relevant to the claims or defenses." *Id.* at 614.  *See also In re Bunce*, No. CV TDC-18-3821, 2020 WL 1331911, at *3–4 (D. Md. Mar. 23, 2020) ("[T]he fact that the Subpoenas are over broad equates to creating an undue burden.").  Courts in this district have rejected requests for documents without any limitation in scope.  *See Singletary v. Sterling Transp. Co.*, 289 F.R.D. 237, 240–41 (E.D. Va. 2012) ("[T]he Court may quash a subpoena duces tecum as overbroad if it does not limit the [documents] requested to those containing subject matter relevant to the underlying

13

action.") (internal quotes omitted); *James Madison Project v. C.I.A.*, No. 1:08CV1323GBL, 2009 WL 2777961, at *4 (E.D. Va. Aug. 31, 2009) (A "request for all documents relating to a subject is usually subject to criticism as overbroad. . . . Such a request unfairly places the onus of non-production on the recipient of the request and not where it belongs—upon the person who drafted such a sloppy request.") (internal citations and quotations omitted); *Cap. One Bank (USA) N.A. v. Hess Kennedy Chartered, LLC*, No. 3:08CV147, 2008 WL 4467160, at *2 (E.D. Va. Sept. 30, 2008) (sustaining an objection to a request in a subpoena that did not have a "time limitation [and did] not limit the scope of the e-mail communications to those containing information regarding the subject matter of the litigation."); *see also Bierman Fam. Farm, LLC v. United Farm Fam. Ins. Co*., No. CV ADC-17-0004, 2017 WL 3311206, at *2–4 (D. Md. Aug. 2, 2017) (finding subpoena request "overbroad in proportion to the needs of the case" where it requested information "having nothing to do with" and "hav[ing] no bearing on the ultimate issue in [the] case").

"Subpoenas must seek only information that is not otherwise procurable by exercise of due diligence and not overbroad."  *Sirpal v. Fengrong Wang*, No. CIV. WDQ-12-0365, 2012 WL 2880565, at *5 (D. Md. July 12, 2012) (internal quotations omitted).  While the burden of proof is generally on the party resisting discovery, the requesting party must be able to explain "why it cannot obtain the same information, or comparable information . . . from one of the parties to the litigation." *Jordan*, 921 F.3d at 189; *see also id.* at 192 (affirming the district court's quashing of a subpoena where the requesting parties "had little, if any, demonstrated need for the additional documents requested[,] . . . failed to explain why the same or similar information could not be had from better, alternative sources[,] and . . . the subpoena imposed cognizable burdens on . . . nonparties to the litigation.").

The Fourth Circuit has also made clear that a "nonparty should not have to do the work of tailoring a subpoena to what the requesting party needs; the requesting party should have done that before serving it." *Jordan*, 921 F.3d at 190.  "There is no reason to burden a third party with discovery when the opposing party has all of the information requested."  *ThompsonMcMullan*, 2016 WL 1071016, at *8; *see also United States v. Meridian Senior Living, LLC*, No. 5:16-CV-410-BO, 2018 WL 5723930, at *4–5 (E.D.N.C. Nov. 1, 2018) (denying a relator's motion to compel certain requests to non-party, noting that the Court could not "countenance requiring a nonparty to produce a multitude of documents without the requesting party's first attempting to obtain such documents from other parties that likely have copies of the documents"); *Belk v. Smith*, No. 1:10CV724, 2014 WL 4986678, at *2 (M.D.N.C. Oct. 6, 2014) ("[R]equiring Defendant [] to pursue [] alternative[] [sources] serves the recognized purpose of protecting non-parties from unnecessary discovery burdens.") .

## IV.   **ARGUMENT**

Watson seeks discovery of documents on which parties to the Action are included in the top-line message, documents concerning leases that Watson and Northstar were never a part of, and documents from well after the period IPI and Northstar severed ties.  The Court should deny the Motion to Compel and limit the scope of the Subpoena because the categories of documents Defendant Watson seeks are (1) overbroad and unduly burdensome for a non-party; (2) in the possession of parties to the Action or other less burdensome sources; (3) subject to pending motions before this Court; and (4) not relevant to any parties' claims or defenses in this Action. *See Gilmore*, 339 F.R.D. at 120 (quoting *Jordan*, 921 F.3d at 189–190).

**A. The Motion to Compel Should Be Denied Because Watson's Subpoena is Overbroad and Unduly Burdensome on its Face**

The Subpoena is impermissibly overbroad and unduly burdensome with respect to time and subject matter.  First, Watson requests documents without regard to the relevancy or reasonableness of the time frame governing the Requests.  The Requests are therefore overbroad and unduly burdensome.  Indeed, Watson seeks to compel documents "through the present," making clear in his Memorandum that the Subpoena "does not limit the category of responsive documents to materials that were created in a specific date range."  Memorandum at 7.  Requests for documents should be "pa[]red down to a reasonable and narrow time-frame which is not unduly burdensome," because to review documents without regard "to a reasonable period of time is substantial and would present an undue burden."  *Bunce*, 2020 WL 1331911, at *3–4.  While it is not the responsibility of IPI to tailor the Subpoena to Defendant Watson needs, IPI proposed April 30, 2020, as an end date because, as detailed herein, IPI ended its contractual relationships with Watson, Northstar, and their affiliates on April 2, 2020, and IPI agreed to add on a month of communications as cushion beyond the termination date.  Watson did not provide a counter-proposal, and filed this Motion to Compel requesting documents to the present.  Since the Requests for documents without a reasonable time frame is broad on its face, the Court should deny Watson's Motion.  *See Bunce*, 2020 WL 1331911, at *3.

Second, Defendant Watson's Requests for documents are overly broad and unduly burdensome because they include no limitations as to subject matter.  Indeed, Watson seeks to compel all communications where the parties[12] to this Action are in the top-line message and all

---

[12] Defendant Watson's Motion to Compel demands production of communications "on [w]hich the *[p]arties* [w]ere [i]ncluded in the [t]op-[l]ine [m]essage."  Memorandum at 10.  However, Watson's counsel already agreed that the "proposal to omit any documents on which the *defendants* are included on the top-line email is acceptable."  Connolly Decl., Ex. B at 2.  Non-

documents related to Amazon leases, not just those Amazon leases identified in the Second

Amended Complaint in which Northstar was involved.  Requests for "all documents relating to a

subject" is generally considered overbroad as a matter of law.  *James Madison Project*, 2009 WL

2777961, at *4.  Watson's Requests are overbroad and therefore unduly burdensome because

they "do[] not limit the emails requested to those containing subject matter relevant to the

underlying action" or sent to or from specific "employees connected to the litigation."  *AOL*, 550

F. Supp. 2d at 612.  Because Watson's requests would include information unrelated to the

Action, they impose an undue burden on non-party IPI.  *Id.* at 612–13.

 Therefore, the Court should deny Watson's Motion to Compel and, since IPI has already

provided a substantial response, limit the Subpoena to what has already been produced and

would be produced under IPI's Proposal.  *See Jordan*, 921 F.3d at 190 ("Mere overbreadth, of

course, usually warrants modifying a subpoena to narrow its scope . . . where the recipient has

already provided a substantial response, 'quashing' the subpoena effectively narrows it by

limiting it to what has already been produced.  A subpoena may be so sweepingly overbroad,

however, that it should be quashed in its entirety.").

 In one particularly glaring illustration of the Requests' overbreadth, IPI's collected

materials contains hundreds (if not thousands) of internal spreadsheets and presentations to IPI's

Investment Committee, wherein Northstar-related information (that would be responsive to the

Subpoena as written) is but a single line item among hundreds of IPI's other listed transactions or

investments—all of which is IPI's highly confidential sensitive business information.  Even if IPI

were to produce redacted versions of these documents, IPI would have to redact over 99% of

---

party IPI's position is that it should not review or produce any document with any party included
in the top-line message.

hundreds or thousands of documents.  These materials bear no apparent relevance to the current litigation, and to produce them in any form would not be proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1).  IPI asks that these materials be excluded as well.

### B. The Motion to Compel Should Be Denied Because Watson Seeks Information Available From Other Sources And Subject to Pending Discovery Motions

#### i. Communications on which the Parties were included in the top line message are in the possession of the parties to this Action and subject to pending motions.

Watson seeks to compel the production of communications that include any of the parties to this Action on the top-line email message.[13]  These communications, by description, are in the possession, custody and control of the parties.  Pursuant to its Proposal, IPI has appropriately narrowed the Subpoena by producing documents that do not involve the parties in the top-line message and, thus, are less likely to be in the possession parties to the Action.  Defendant Watson concedes that "[c]ertain courts have noted a reluctance to require nonparties to produce documents that a party can produce."  Memorandum at 10.  More than that, Watson has not sufficiently explained why he cannot obtain the same information from one or more of the multiple parties to the Action.  *Jordan*, 921 F.3d at 189.  Watson claims, without supplying any evidence from the record, that he cannot obtain the requested discovery from Amazon.  If this were true, Defendant Watson's issue is with Amazon and not non-party IPI, but the record in this Action shows it is indeed not the case.

Defendant Watson's request that IPI produce all communications where Amazon individuals are included in the top-line message is "unreasonably cumulative" and "duplicative" because Watson sought this same information from Plaintiffs and the Court has not resolved his

---

[13] As noted above, Defendant Watson has agreed that IPI need not produce documents with defendants in the top-line email, but nevertheless appears to seek to compel such documents from IPI in his Motion to Compel.

motion to compel such discovery. *See* Fed. R. Civ. P. 26(b)(2)(C); *see also* Order (Dkt. 556) (holding Watson's motion to compel in abeyance until further notice). Watson sought "all" communications between Amazon and IPI in document requests to Amazon, then moved to compel such information before asking the Court to hold his motion in abeyance. (Dkt. 524). Watson has not requested to revive his motion to compel against Amazon where he seeks the same information he seeks from IPI—so Watson has not exhausted the other sources of this information. Instead, Watson seeks to burden non-party IPI on issues yet to be resolved by Watson and the Plaintiffs or by this Court. In effect, Watson's Motion to Compel seeks an end run around his abated discovery dispute with Plaintiffs making the present Motion to Compel improper, duplicative and premature.

In *ThompsonMcMullan*, this Court refused to compel production from a non-party, rejecting an argument by the movant-plaintiff that third-party discovery would be less burdensome because the defendant in the underlying action—which was pending in the Southern District of California—had destroyed documents and engaged in obstructionist motions practice. 2016 WL 1071016, at *8. This Court found that to compel production would "serve as an end run" around the California issuing court. *Id.* Specifically, this Court pointed out that "[i]f [the defendant] has violated its discovery obligations in such a manner, [the plaintiff] should seek appropriate relief from the Southern District of California," and refused to "interfere with the present or future rulings by the California court" so as to give "[plaintiff] two bites at the same apple." *Id.*

Here, Watson alleges, similar to movant-plaintiff in *ThompsonMcMullan*, that Amazon has destroyed documents and produced "precious little" in the way of discovery. But Defendant Watson has already filed a motion to compel against Amazon seeking documents that "include,

19

but are not limited to, communications with IPI." (Dkt. 524 at 7).  That motion is still pending before this Court.   This Court should not permit Watson "two bites of the same apple."  *See* 2016 WL 1071016, at *9.

Even if IPI were the proper entity to produce such documents, Defendant Watson has provided no details for which documents are unavailable through Amazon.  Indeed, Watson has not provided any information regarding his efforts to obtain this information from the dozen-plus other parties to this Action.  Nor has Watson provided similar arguments regarding the preservation of documents by the other parties to the Action or their ability to produce the documents he seeks from non-party IPI.  Instead, Watson asks for all documents and communications concerning and including all parties to the Action from 2017 through 2022— full stop.  Watson's demand is thus facially overly broad and unduly burdensome, especially where the propounded discovery requests would naturally be in Watson's possession and not the possession of other the parties to this Action.

Ultimately, compelling production of communications on which the parties are included in the top-line message would burden IPI with the needless review of at least 53,000 additional documents, comprising an estimated 794,000 pages that Defendant Watson can obtain through parties to the Action.[14]  The Court should therefore deny Watson's Motion to Compel this category of documents.

---

[14] These figures include Akin Gump documents that Watson previously agreed to exclude.  Without the Akin Gump documents, IPI would needlessly review at least 50,000 additional documents, comprising an estimated 760,000 pages.

ii.     **Materials concerning IPI's non-Northstar leases with Amazon are irrelevant, in the possession of parties to this Action and subject to pending motions.**

Watson seeks to compel production of materials related to Amazon leases that never involved Watson or his co-defendants and are subject to his pending motion to compel against Amazon. At great expense, non-party IPI has committed to the review and production of documents concerning the Northstar-Amazon leases in Northern Virginia—the very leases and transactions that form the basis of the underlying Action against Watson. Defendant Watson's inexplicable demand for documents related to other leases and transactions is not relevant to any party's claim or defense, imposes an undue burden on non-party IPI, is subject to pending motions between Amazon and Watson, and should therefore be denied.

Simply put, IPI's non-Northstar leases with Amazon are not relevant to this Action. Defendant Watson claims to "require[] access to these materials in order to assess Amazon's claims and develop his defenses" without stating—because he cannot state—which "claims" or which "defenses." Defendant Watson's vague reasoning is nothing more than a fishing expedition that the Court should decline to allow.

Watson argues that "there is also no legal basis for distinguishing between documents concerning leases involving Northstar (which IPI intends to produce) and those not involving Northstar (which IPI has stated it will not produce)." Memorandum at 12. The legal basis is Rule 26, which limits the scope of discovery to documents that are relevant and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). The Amazon leases involving Northstar in which IPI was involved are the subject to claims in the operative complaint, while the Amazon leases with IPI not involving Northstar are not raised at all. *See generally* Second Am. Compl. Not once in the meet-and-confer process or in the Motion to Compel did Defendant Watson explain

21

his conclusory statement that Watson requires this information for "claims" and "defenses." *See* Memorandum at 12.

While it is IPI's position that the leases between Amazon and IPI that do not involve Defendant Watson or Northstar are not the subject of claims in the underlying Action, and are therefore not relevant, compelling production of such information is otherwise unduly burdensome to IPI. *See ThompsonMcMulla*n, 2016 WL 1071016, at *5 ("[E]ither irrelevance or overbreadth necessarily establishes undue burden.").

Watson's request is unduly burdensome because it requires great cost to IPI and Watson could get this information from other sources, namely Amazon. Watson requested that Amazon produce "all documents and communications with IPI related to *any* Amazon Lease Transaction." (Dkt. 525-3 at 9). Watson's request to IPI for the same information is unreasonably cumulative and duplicative, and as explained above, subject to Watson's motion against Amazon that has been held in abeyance. Watson cannot circumvent this Court's orders or its quarrels with Amazon by seeking this irrelevant information from IPI.

 In a throwaway comment, Defendant Watson also claims that the "burden of this document request[15] is minimal." Memorandum at 11. Not so. The cognizable burdens to non-parties not only include "the dollars-and-cents costs associated with a large and demanding document production," but also whether a "subpoena may impose a burden by invading privacy or confidentiality interests." *Jordan*, 921 F.3d at 189 (noting, for example, that a subpoena directed to a business "may implicate the business's interest in protecting competitively sensitive

---

[15] Defendant Watson did not propound any "document request" for materials concerning non-Northstar Amazon leases. Rather, Watson's three-request Subpoena broadly demanded all documents and communications related to all parties to the Action, which includes Amazon. *See* Subpoena at 7–8.

22

information"). *Id*. at 190.  Compelling production of documents regarding leases not involving Northstar would force IPI to foot the bill for the review of additional documents all for a needless fishing expedition that Defendant Watson cannot justify.  Furthermore, IPI has an interest in protecting highly sensitive business information regarding its other transactions with Amazon, especially where Northstar and Defendant Watson were never privy to such information.  *See id*.  To compel discovery here would be an endorsement of Defendant Watson's attempt to interfere with IPI's private and confidential business interests, and should therefore not be permitted.

Therefore, the Court should deny Defendant Watson's Motion to Compel documents related to Amazon leases not involving Northstar.

### C.  The Motion to Compel Should Be Denied Because Watson Is Not Entitled to Discovery of IPI's Documents Beyond April 30, 2020.

Watson seeks to compel production of documents through January of 2022—nearly two full years after IPI cut ties with Watson and his co-defendants in the Action.  Requiring the review of documents dated between April 30, 2020, IPI's proposed end date, and January 21, 2022, the subpoena end date, would be unduly burdensome for non-party IPI.  The documents in IPI's possession after April 30, 2020, are irrelevant to the issues in the Action and would be costly to review and produce.  *See ThompsonMcMullan*, 2016 WL 1071016, at *6 (Without parameters "limiting the subpoena's scope to evidence relevant in the underlying litigation, . . . the subpoena is overbroad or seeks irrelevant information, and imposes an undue burden.") (citing *AOL*, 550 F. Supp. 2d at 612).

Specifically, IPI terminated its contractual relationships with Northstar and other defendants to the Action on April 2, 2020, and terminated all contact with Northstar shortly thereafter.  Second Am. Compl. ¶ 271; Memorandum at 8.  Additionally, even after applying

search terms, IPI would have to review an estimated additional 50,000 documents (not including

any Akin Gump documents that Watson previously agreed to exclude), the "dollars-and-cents

costs" of which are recognized by the Fourth Circuit as a "cognizable burden" on non-parties IPI

should not have to endure.  *See Jordan*, 921 F.3d at 189.  Given Defendant Watson's glaring

failure to tailor the requested date range to a time period relevant to the Action, the Court should

limit the scope of the Subpoena to documents dated between January 1, 2018, and April 30,

2020.  *See ThompsonMcMullan*, 2016 WL 1071016, at *6.

Defendant Watson argues that he is entitled to IPI's documents and communications after

April 30, 2020, because Amazon and IPI reformed the northern Virginia leases and related

contracts in early 2020, and those reformed leases "are central to Amazon's theory of damages."

*See* Memorandum at 8–9; Second Am. Compl. ¶ 172.  However, Defendant Watson cannot

show—beyond mere speculation—that he could not obtain such documents from Amazon.[16]

*Jordan*, 921 F.3d at 189 (holding that the requesting party must be able to explain "why it cannot

obtain the same information, or comparable information . . . from one of the parties to the

litigation").  Indeed, there is no evidence whatsoever that Amazon has deleted any documents,

apart from Defendant Watson's unsupported claims to the contrary.  And, even assuming

Amazon had a document retention policy wherein "employees delete most emails 30 days after

receipt," *see* Memorandum at 11, Amazon would surely have acted to preserve documents once

the Original Complaint was filed in April 2020.  Accordingly, Amazon's productions could pick

up where productions made pursuant to IPI's Proposal left off.  Additionally, as discussed above,

Watson's pending motion to compel against Amazon seeks documents from "January 1, 2017

---

[16] In fact, based on Watson's previous representations to this Court, Amazon may have already produced such information or be in the process of producing it, which would likely cure issues that Watson complained of in his motion to compel against Amazon.  *See* Dkt. 542 at 2-3.

through the present," (Dkt. 525-3 at 8), so granting Watson's Motion to Compel on this score

would yet again "serve as an end run" around the abated discovery litigation in this Action.  *See*

*ThompsonMcMullan*, 2016 WL 1071016, at *8.

Furthermore, Watson's damages argument may prove moot if the Court grants Amazon's

Motion for Leave, because Amazon's proposed Third Amended Complaint would not "name

Brian Watson and WDC Holdings, LLC as Defendants to its breach of contract claim"—the

claim to which Watson claims the costs associated with lease reformations are purportedly

relevant.  Motion for Leave at 3.

Defendant Watson also argues that he is entitled to documents after April of 2020 because

"Amazon and IPI have continued to work closely with one another," speculating that Amazon

and IPI may have discussed "the quality of Northstar as a business partner or the soundness of

Northstar data center constructions in late 2020."  Memorandum at 9.  This argument likewise

falls flat.  Even ignoring the bald speculation that there *might* be a few relevant emails in the

estimated 50,000 that IPI would have to review, such a fact cannot justify Watson's requested

date range.  *See AOL*, 550 F. Supp. 2d at 612 ("Although State Farm limited the e-mails

requested to an allegedly relevant six-week period . . . [the] subpoena remains overbroad because

the e-mails produced over a six-week period would likely include privileged and personal

information unrelated to the [underlying] litigation, imposing an undue burden on [the non-

party].").  This is especially true given that Watson's request for such documents "implicate[s]

[IPI's] interest in protecting competitively sensitive information" with Amazon.  *See Jordan*, 921

F.3d at 190 (noting that a subpoena's invasion of privacy or confidentiality interests constitutes a

cognizable burden on non-parties).  Furthermore, with the exception of documents relating to the

settlement between Amazon and IPI relating to the Northstar leases (which are in the possession,

25

custody, and control of party Amazon), many, if not most, relevant communications between Amazon and IPI discussing Watson's and Northstar's fraudulent conduct, would have been at the direction of counsel and subject to a common interest privilege. *See Elat v. Ngoubene*, CIV. PWG-11-2931, 2013 WL 4478190, at *2 (D. Md. Aug. 16, 2013) (The common interest rule "permits parties whose legal interests coincide to share privileged materials with one another in order to more effectively prosecute or defend their claims.") (quoting *Hunton & Williams v. U.S. Dept. of Justice*, 590 F.3d 272, 277 (4th Cir. 2010)).

Thus, Defendant Watson's Motion to Compel should be denied with respect to non-party IPI's review and production of documents pursuant to the Subpoena's date range, as written.

## V.   <u>CONCLUSION</u>

For the reasons stated above, non-party IPI respectfully requests that the Court deny Defendant Watson's Motion to Compel, assess Defendant Watson with the costs incurred by IPI in litigating this discovery issue in an amount to be determined upon the resolution of this Motion to Compel, and to grant such further relief as the Court deems proper.  In the alternative, non-party IPI requests that Defendant Watson pay for any and all costs associated with the review and production of documents that fall outside the scope of IPI's Proposal.[17]

---

[17] *See Volt Power, LLC v. Butts*, 7:19-CV-00149-BO, 2020 WL 5865870, at *5 (E.D.N.C. Oct. 1, 2020) ("In applying [Rule 45], courts have required the subpoenaing party to reimburse the responding party for 'technology consulting fees as well as costs associated with collection, database creation, and, under certain circumstances, document review and privilege log preparation.'  Courts may also require the subpoenaing party to pay the attorneys' fees incurred by the responding party for production-related tasks.") (citing The Sedona Conference, *Commentary on Rule 45 Subpoenas to Non-Parties* at 30 (3d ed. Aug. 2020)).

Dated:  April 22, 2022                    Respectfully submitted,


                                          */s/ Charles F. Connolly*
                                          Charles F. Connolly
                                          AKIN GUMP STRAUSS HAUER & FELD LLP
                                          2001 K Street NW
                                          Washington, DC  20006
                                          telephone: (202) 887-4000
                                          cconnolly@akingump.com

                                          *Counsel for Non-Party IPI Partners, LLC*

## **CERTIFICATE OF SERVICE**

I certify that on April 22, 2022, I electronically filed this document through the ECF

system, which will send a notice of electronic filing to all counsel of record.


*/s/ Charles F. Connolly*
Charles F. Connolly