# EXHIBIT C

**BURR·FORMAN** LLP
*results matter*

Alex Little
alex.little@burr.com
Direct Dial: (615) 724-3203
Direct Fax: (615) 724-3303

Burr & Forman LLP
222 Second Avenue South
Suite 2000
Nashville, TN  37201

*Office*  (615) 724-3200
*Fax*  (615) 724-3290

BURR.COM

December 31, 2021

**VIA EMAIL (epapez@gibsondunn.com)**

Elizabeth P. Papez
Gibson, Dunn & Crutcher LLP
1050 Connecticut Ave., N.W.
Washington DC 20036

      **Re:**    No. 1:20-cv-004840-LO-TCB, Amazon v. WDC Holdings (E.D. Va.)

Dear Elizabeth:

      I write to respond to your letter of December 13, 2021, which relates to the external hard drive my client, Carleton Nelson, disclosed in his initial disclosures. In your letter, you wrote that Mr. Nelson "may [have] violate[d] certain contracts, Amazon policies, and laws," and requested that he take "immediate action," including that he make a "complete accounting of all copies, transfers, or other sharing or preservation of" the hard drive and "certify" to you that he has taken certain steps, such as that he "will not further . . . use" it. As I will detail below, your premise is mistaken. As your client should know, Mr. Nelson's possession of the hard drive is not a violation of any contract, policy, or law—because Amazon gave it to him after his employment ended.

      Before I address those details, I should note that your letter resembles in many respects the letter that Mr. Nelson's former counsel, Caleb Hayes-Deats, wrote to you and your colleague, Patrick Stokes, on December 4, 2020, in response to the illegal hacking of Mr. Nelson's personal files by your contract attorney. As I am sure you will recall, a contract attorney working for your firm and Amazon found a document where Mr. Nelson had stored log-in credentials for his personal accounts. She then used those log-in credentials without authorization to access one or more of his personal accounts and downloaded and reviewed the materials she found there. Unlike my client's possession of the hard drive, the actions this Amazon lawyer took plainly violated multiple criminal statutes. In turn, Mr. Hayes-Deats requested that you provide information about this crime and assurances related to the theft of Mr. Nelson's personal documents. Your response was to require Mr. Nelson and his counsel to agree to a massively convoluted, multi-part protocol that, by the end of the process months later, resulted in your colleagues refusing to let the neutral third-party investigator document in any written fashion (email, letter, or otherwise) the information he shared with all of us on a conference call. Since then, neither you nor any of your colleagues have shared any additional information you know about this crime nor taken steps to mitigate the damage to Mr. Nelson.

AL • DE • FL • GA • MS • NC • SC • TN

Elizabeth Papez
December 31, 2021
2 of 3

---

      This context is important because it makes it difficult for Mr. Nelson to trust that your client can engage in an informal process of information-sharing in good faith. Nonetheless, because it is apparent that neither your client nor your firm has taken any steps to investigate the circumstances related to why Mr. Nelson has a backup hard drive in his possession, he has directed me to share details about it. Armed with this information, we respectfully demand that you cease making any suggestion that his possession of the hard drive is a crime. Your firm has made multiple representations that Mr. Nelson is a criminal. All of them have been as baseless as this one.

      In any event, Mr. Nelson used the external hard drive at issue at the direction of Amazon tech support, which encouraged him to personally back up his work files after a crash of his laptop hard drive in 2018. I assume that, before you sent your letter, your client informed you that its on-site technical support team, Port99 IT Support lab, regularly sent employees an email that attempted "to promote self-service" and "identified the following top contact drivers" for support, including "Data Backups." In this email, a version of which likely has been sent to Amazon employees thousands—if not tens of thousands—of times, the IT Support team tells employees that "You are responsible for your data, please back it up. If your laptop is stolen we cannot save you." A separate automated email sent by the Amazon IT team directed Mr. Nelson (and any other Amazon employee who had a data loss issue) as follows: "Do not delay! Please copy your data to a secure location as soon as possible."

      This is exactly what Mr. Nelson did. He obtained a hard drive and placed it on his desk at Amazon headquarters, where it would back up items from his work laptop when it was plugged in. Mr. Nelson did not use this drive for any other purpose when he worked at Amazon, and he did not "alter, delete, or otherwise modify" it.

      When Amazon informed Mr. Nelson that he was terminated as an employee, there was no "exit" interview or any process for him to certify that he had returned Amazon materials. On the contrary, company officials simply asked for his work laptop, which he provided to them, and escorted him out of the building; he was not allowed to collect his personal belongings. At this time, the external hard drive at issue remained at his desk. Shortly thereafter, when Amazon sent Mr. Nelson's belongings to his home, the company delivered those belongings in an orange RENTACRATE box with a label that reads "AMAZON." The external hard drive from Mr. Nelson's desk was in the Amazon-labeled box, along with other items that had been in his office and on his desk. I have included a photo of the box below, in hopes that it helps your client confirm their delivery of the item to Mr. Nelson.

 

Elizabeth Papez
December 31, 2021
3 of 3

---

      Mr. Nelson found none of this significant at the time. He kept the items Amazon returned to him, including the hard drive, and later used other folders on the hard drive to save documents related to his post-Amazon work and family matters; he only realized the importance of the backup folders on the external hard drive after your colleagues accused him of a felony. As you will soon see, many of the documents that were saved there contradict the assertions that your colleagues made under oath in the verified complaints in this case.[1] Given these false allegations, Mr. Nelson is grateful that Amazon provided him with the hard drive, especially because we understand that your client likely deleted many of the exculpatory documents in the interim.

      In terms of the other demands in your letter, I note that your fifth document request to Mr. Nelson seeks, among other things, "[a] forensic image of [the] 'external hard drive back up'." Although we are happy to provide you with a complete copy of the hard drive (including the non-Amazon documents on it, subject to their treatment as confidential or highly confidential documents under the protective order), the costs of a forensic image are prohibitively expensive. If, however, your client wishes to bear these costs, we are happy to provide access to the drive so that a vendor of your choosing can make this sort of specialized copy. Conversely, if you simply wish to receive a copy of the Amazon materials from the hard drive soon, my firm's technical support team can make a copy for you and send it early next week via overnight delivery.

      As always, if you have any questions about anything in this letter, or need any additional information, please let me know. I look forward to your response, so that we can provide a copy of these materials promptly.

                                  Sincerely,

                                    Alex Little

---

[1] I note that, in your recent filing in response to the Court's Notice of Grounds for Judicial Disqualification, you asserted that Mr. Nelson had "not produced a shred of exculpatory evidence." Dkt. 473 at 2. This claim surprised me, especially because I was not aware you had made such a request to him or that due process required him to affirmatively disprove your allegations as soon as the discovery period opens. In any event, the external hard drive contains much more than a "shred" of evidence disproving the accusations "verified" by your colleagues, and (as noted above) my client is happy to provide you with a copy of these materials as soon as you let me know how you wish to receive them.