**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

AMAZON.COM, INC. and AMAZON
DATA SERVICES, INC.,

                Plaintiffs,

    v.

WDC HOLDINGS LLC dba NORTHSTAR
COMMERCIAL PARTNERS; BRIAN
WATSON; STERLING NCP FF, LLC;
MANASSAS NCP FF, LLC; NSIPI
ADMINISTRATIVE MANAGER; NOVA
WPC LLC; WHITE PEAKS CAPITAL LLC;
VILLANOVA TRUST; JOHN DOES 1-20,

                Defendants.

CASE NO. 1:20-CV-484

**WATSON DEFENDANTS' MEMORANDUM IN SUPPORT OF
MOTION TO VACATE PRELIMINARY INJUNCTION**

       Defendants WDC Holdings LLC d/b/a Northstar Commercial Partners ("Northstar"), Brian

Watson ("Mr. Watson"), Sterling NCP FF, LLC, Manassas NCP FF, LLC, and NSIPI Administrative

Manager (collectively, "Watson Defendants"), by and through their undersigned counsel, hereby file

this Memorandum in Support of their Motion to Vacate the June 5, 2020 Preliminary Injunction and

state as follows.

**INTRODUCTION**

       For the past two years, the Watson Defendants have been subject to a preliminary injunction

requiring, among other things, that they escrow over $25 million dollars. This case has dramatically

shifted since that injunction was granted such that the injunction must now be vacated. At the time

that Judge O'Grady ordered the preliminary injunction, the Court relied upon sworn allegations from

Amazon that have now been withdrawn for falsely claiming "personal knowledge" of the facts

1

underlying the allegations. In arguing for the injunction, Amazon's attorneys continuously relied on these false statements of personal knowledge. Additionally, Plaintiffs repeatedly referred to the pending investigations by the U.S. Attorney's Office, and represented to the Court that Brian Watson was awash in kickback proceeds. Now that all parties have been afforded mutual discovery, these alleged facts have evaporated. In fact, the preliminary injunction turns out to have been based on nothing more than "water-cooler" gossip, as Plaintiffs' "Informant 1," Danny Mulcahy, testified at his deposition on March 30, 2022. Decl. of L. Regan-Smith Ex. 5 at 236, 257.

First, on April 8, 2022, the Court granted Plaintiffs' motion to withdraw key declarations submitted in support of the injunction and the First and Second Verified Amended Complaint as well as the verifications themselves of the Complaint, First Corrected Verified Complaint, and Second Verified Amended Complaint. In withdrawing these sworn statements, Plaintiffs admitted that they are false, and were false when filed. Dkt. 588 at 1. Without these sworn statements, there is no longer a sufficient evidentiary basis to support the injunction. Moreover, as discovery has progressed, new evidence has been uncovered that undercuts Amazon's theory of the case and likelihood of ultimate success on the merits. Most importantly, the depositions of key witnesses, including those whom Amazon repeatedly referenced or relied on in each iteration of their Complaint, have revealed that no one possesses personal knowledge of Brian Watson's involvement in the alleged fraudulent scheme and Brian Watson continues to vehemently deny such involvement. *See generally* Decl. of B. Watson.

This dearth of evidence against the Watson Defendants has been born out on several fronts: despite an extensive, years-long investigation, no criminal charges have been brought against either Watson or any other defendants in this case. In fact, the Department of Justice has recently settled two civil forfeiture actions stemming from the alleged fraud scheme and returned hundreds of

thousands of dollars originally seized as proceeds of the alleged fraudulent scheme. Decl. of L Regan-Smith Exs. 1-2. Additionally, the extensive and thorough report submitted by the court-appointed receiver confirms what the Watson Defendants have asserted all along—that the Watson Defendants are not in possession of millions in fraudulent proceeds, and do not have funds anywhere near adequate to satisfy the injunction. Dkt. 495.

For these reasons, the injunction that has caused and continues to cause irreparable harm to the Watson Defendants should be vacated. The parties to this case are entitled to a level playing field where the allegations can be fairly resolved with full due process for everyone.

## BACKGROUND

On April 27, 2020, Plaintiff filed a motion requesting an *ex parte* temporary restraining order and preliminary injunction against the Watson Defendants. Dkt. 9. Plaintiffs sought eight forms of relief, including requiring the Watson Defendants to escrow assets totaling over $25 million. Dkt. 9 at 4. In support of this application, Plaintiffs submitted the following evidence:

1. Plaintiffs' Verified Complaint, verified upon personal knowledge by former Gibson Dunn attorney Travis Andrews. Dkt. 1.[1]

2. The Declaration of Gibson Dunn Attorney, Lora E. MacDonald, in Support of Plaintiffs' Motion for *Ex Parte* Temporary Restraining Order and Order to Show Cause Re Preliminary Injunction. Dkt. 12. This Declaration is made upon personal knowledge of the facts within and describes allegations surrounding the investigation of the allegations of "Informant 1" and Amazon's subsequent investigation of these allegations. Additionally, this Declaration identifies and verifies the 40 exhibits submitted in support of the Motion for *Ex Parte* Temporary Restraining Order. Dkt. 12-1 through Dkt. 12-49.

3. The Declaration of Gibson Dunn Attorney, Lora E. MacDonald, Executed April 27, 2020. Dkt. 12-43, Ex. 34. This Declaration avers personal knowledge of facts surrounding Brian Watson's April 2, 2020 email.

---

[1] This complaint has since been superseded by two subsequent amended complaints, each of which was similarly verified by Gibson Dunn attorneys, and each of which was additionally accompanied by an affidavit of Lora MacDonald. The verifications and declarations have now been withdrawn on the basis that they made false claims of personal knowledge. Dkt. 588.

3

4. The Declaration of Gibson Dunn Attorney, Lora E. MacDonald, Executed April 27, 2020. Dkt. 12-40, Ex. 31. This Declaration avers personal knowledge and details a recording provided by "Informant 2" reflecting conversations of Brian Watson and Will Camenson and Brian Watson and Kyle Ramstetter following Mr. Watson's discovery of the White Peaks transaction.

Based on the Verified Complaint, affidavits made on personal knowledge, and accompanying documents, the Court granted the *ex parte* TRO against the Watson Defendants on April 28, 2020, Dkt. 16, and set a show cause hearing on the preliminary injunction for May 21, 2020.

On May 18, 2020, Plaintiffs submitted the following supplemental declarations in support of preliminary injunction:

1. The Declaration of Gibson Dunn Attorney, Lora E. MacDonald, In Support of Plaintiffs' Supplemental Memorandum in Support of Show Cause Order and Plaintiffs' Application for Preliminary Injunction. Dkt. 42. This affidavit is made based on personal knowledge and avers to the truth and accuracy of four attached exhibits. Dkt. 42 Exs. 1-4.

2. The Declaration of Timothy Lorman in Support of Plaintiffs' Supplemental Memorandum in Support of Show Cause Order and Plaintiffs' Application for Preliminary Injunction. Dkt. 43. This declaration is made on personal knowledge, and details Brian Watson's confrontation of Will Camenson and Kyle Ramstetter regarding the White Peaks transaction, and the resolution of this dispute.

3. The Declaration of D. Matthew Doden In Support of Plaintiffs' Supplemental Memorandum in Support of Show Cause Order and Plaintiffs' Application for Preliminary Injunction. Dkt. 44. This declaration is made on personal knowledge, and sets forth allegations and interactions with Informant 1 and Amazon's subsequent internal investigation into these allegations.

4. The Declaration of Luke Gilpin In Support of Plaintiffs' Supplemental Memorandum in Support of Show Cause Order and Plaintiffs' Application for Preliminary Injunction. Dkt. 46. This declaration is made on personal knowledge and sets forth facts detailing IPI's relationship with the Watson Defendants, Gilpin's meetings with Tim Lorman, and the termination of IPI's relationship with the Watson Defendants.

In the preliminary injunction hearing, Plaintiffs' counsel repeatedly emphasized that the Complaint was verified and that all declarations submitted were made under oath and on personal

knowledge. *See e.g.* Decl. of L. Regan-Smith Ex. 3 at 37 (testifying that "[w]e've got five affidavits, 50-plus exhibits, and a 55 page verified complaint[.]"). Based on these representations, the Court granted the preliminary injunction, requiring, among other things, that the Watson Defendants escrow $25 million. Dkt. 57. A portion of this order was appealed to the Fourth Circuit, who affirmed the injunction on the basis that "the district court had authority to preserve the status quo pending judgment if Amazon asserted a cognizable claim to specific Northstar assets." *Amazon.com, Inc. v. WDC Holdings LLC*, No. 20-1743, 2021 WL 3878403 at * 5 (4th Cir. Aug. 31, 2021) (unpublished).

The Watson Defendants have complied with all of the requirements of the injunction except for the mandatory portions requiring the escrow of funds, because the Watson Defendants did not (and do not now) have $25 million, and were similarly unable to secure a bond for anywhere near this much. Decl. of B. Watson ¶ 5; *see generally* Dkt. 82. The Watson Defendants were found to be in contempt, and the Court appointed a receiver to take total control of all Mr. Watson's personal and business assets. *See* Dkt. 413; 433.

The receiver was appointed on November 24, 2021. Dkt. 433. Mr. Watson has complied with the receiver's requests and given the receiver and his team full access to his accounts and assets. Dkt. 495 ¶ 6. The receiver has filed one report thus far which lists Mr. Watson's personal and business cash balance as a mere $71,556.16, and reports millions of dollars of liabilities against this cash balance (not including the injunction amount). *Id.* Ex. B. This confirms what the Watson Defendants have been asserting all along—the Watson Defendants are not hiding millions of fraudulently gained dollars, and do not have anywhere near enough funds to comply with the escrow requirement.

On July 31, 2020, Plaintiffs filed an Amended Complaint. Dkt. 100. This Complaint was corrected shortly thereafter to include the verification on personal knowledge of Gibson Dunn attorney, Travis Andrews. Dkt. 115. The First Amended Corrected Verified Complaint was

accompanied by the Declaration on personal knowledge of Gibson Dunn attorney Lora E. MacDonald in Support of Plaintiffs' Verified First Amended Complaint. Dkt. 106-11. The Complaint was then amended a second time on September 18, 2020. Dkt. 150. The Second Amended Verified Complaint was verified on personal knowledge by Gibson Dunn attorney, Luke Sullivan, and accompanied by a Declaration made on personal knowledge of Lora E. MacDonald. Dkt. 150; 155-163. With the discovery deadline looming, Plaintiffs filed a motion on April 2, 2022, to yet again amend the operative complaint. Dkt. 618. Among other things, the proposed Amended Complaint no longer seeks prejudgment attachment, and drops the claim for preliminary injunctive relief. Dkt. 617 at 11.

On March 25, 2022, Plaintiffs filed a motion to withdraw the verifications of the Verified Complaint, First Amended Corrected Complaint, and Second Amended Complaint as well as Lora MacDonald's Declarations in support of each of those complaints. Dkt. 587. Additionally, Plaintiffs moved to withdraw the Declaration of Lora MacDonald in support of the Motion for *Ex Parte* TRO and the two additional Declarations of Lora MacDonald submitted in the application for preliminary injunction. *Id.* Plaintiffs admitted that these verifications and declarations were false when made, and that the declarants never had personal knowledge of the facts within. Dkt. 588. The Court granted this motion at a hearing held on April 8, 2022. Dkt. 648.

## LEGAL STANDARD

Preliminary injunctions are an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Mountain Valley Pipeline, LLC v. W. Pocahontas Props. Ltd. P'ship*, 918 F.3d 353, 366 (4th Cir. 2019) (quoting *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22, (2008)). A plaintiff seeking a preliminary injunction bears a heavy burden to prove: (1) a clear showing that it will likely succeed on the merits; (2) a clear showing that it is likely to be

irreparably harmed absent preliminary relief; (3) that the balance of equities tips in the plaintiff's favor; (4) and that a preliminary injunction is in the public interest. *Winter*, 555 U.S. at 20; *Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 347 (4th Cir. 2009), *vacated on other grounds*, 559 U.S. 1089 (2010). Each of these four factors must be "satisfied as articulated." *Real Truth*, 575 F.3d at 347. This demanding standard "becomes even more exacting when a plaintiff seeks a preliminary injunction that mandates action, as contrasted with the typical form of preliminary injunction that merely preserves the status quo pending trial." *Perry v. Judd*, 471 Fed. App'x. 219, 223–24 (4th Cir. 2012) (unpublished) (citing *In re Microsoft Corp. Antitrust Litig*., 333 F.3d 517, 525 (4th Cir. 2003), *abrogated on other grounds by eBay Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006)). Such "[m]andatory preliminary injunctive relief in any circumstance is disfavored, and warranted only in the most extraordinary circumstances." *Microsoft Corp*., 333 F.3d at 517.

Because a preliminary injunction is an equitable remedy, it can be vacated at any time if the facts and circumstances show that the injunction is no longer equitable. *See e.g. Centennial Broad., LLC v. Burns*, 433 F. Supp. 2d 730, 733-34 (W.D. Va. 2006) ("[T]he court has continuing plenary power to modify or dissolve a preliminary injunction applying general equitable principles." (internal citations omitted)). Thus, a motion to vacate should be granted if the *Winter* factors no longer support the preliminary injunction. *See id.*; *see also, Winter*, 555 U.S. at 51 ("Flexibility is a hallmark of equity jurisdiction. The essence of equity jurisdiction has been the power of the Chancellor to do

equity and to mould each decree to the necessities of the particular case.") (Ginsburg, J. dissenting) (internal citations omitted).

**ARGUMENT**

### I.     There is No Longer a Sufficient Evidentiary Basis to Support the Preliminary Injunction

The evidence Amazon and its law firm, Gibson Dunn, presented to this Court in support of the injunction, and on which the Court actually relied in granting the injunction, has since been withdrawn and severely undermined by subsequent testimony. While Rule 65 does not strictly require that evidence submitted in support of a preliminary injunction be made on personal knowledge, inadmissible evidence carries less weight and may be discounted by the court. *Imagine Medispa, LLC v. Transformations, Inc.*, 999 F. Supp. 2d 862, 869 (S.D.W. Va. 2014) ("statements based on belief rather than personal knowledge may be discounted.") [hereinafter *Medispa*]; *Holloway v. Coakley*, No. 2:17-CV-74, 2018 WL 1287417, at *3 (N.D.W. Va. Mar. 13, 2018) (same); *T. v. Bowling*, No. 2:15-CV-09655, 2016 WL 4870284, at *6 (S.D.W. Va. Sept. 13, 2016), *modified sub nom. Michael T. v. Crouch*, No. 2:15-CV-09655, 2018 WL 1513295 (S.D.W. Va. Mar. 26, 2018) (same); *see also G.G. ex. Rel Grimm v. Gloucester Cnty. Sch. Bd.*, 822 F.3d 709, 725 (4th Cir. 2016) ("[A]dmissible evidence may be more persuasive than inadmissible evidence in the preliminary injunction context. . . ."). Critically, the party seeking an injunction must, at a minimum, provide "proof beyond the unverified allegations in the pleadings." *Medispa*, 999 F. Supp. 2d at 868-69; *Williams v. Rigg*, 458 F. Supp. 3d 468, 474 (S.D.W. Va. 2020) (same); *Splitfish AG v. Bannco Corp.*, 727 F. Supp. 2d 461, 465 (E.D. Va. 2010) ("[P]laintiffs must satisfy each of these requirements with respect to the [] claim based on the content of the amended verified

8

complaint and the various declarations and exhibits contained in the record, or else they are not entitled to preliminary injunctive relief.").

Here, recent developments show that Plaintiffs and their legal counsel overplayed their hand. Despite their representations made under penalty of perjury to this Court that they had sufficient evidence to support such an extraordinary pretrial remedy, it is now clear that the preliminary injunction against the Watson Defendants is based on little more than unverified allegations in the pleadings. While Plaintiffs were able to meet the required burden to obtain a preliminary injunction based on the purported evidence initially submitted with their application, that evidence has since evaporated and can no longer support the extraordinary remedy of the preliminary injunction.

A.     **The Complaint, Declarations of Fact, and Supporting Documents No Longer Support the Injunction.**

Plaintiffs have now withdrawn or nullified nearly all the evidence initially relied upon to obtain the injunction: the Verified Complaint is no longer verified and five declarations of personal knowledge have been withdrawn. Even more troubling, the withdrawn declarations were also those that identified and introduced the documentary evidence Plaintiffs relied upon to win the injunction.[2] Because these declarations have been withdrawn neither they, nor the exhibit evidence that was submitted through those declarations, can be considered as evidence supporting an injunction.[3] *See MercExchange, LLC v. eBay, Inc.*, 500 F. Supp. 2d 556 (E.D. Va. 2007) (refusing

---

[2] Plaintiffs did not withdraw one Declaration of Lora MacDonald introducing four documents, Dkt. 42. However, as this declaration is similarly made on personal knowledge that the Plaintiffs have since stated she does not have, it should be treated the same as the other Declarations which have since been withdrawn. Dkt. 488.

[3] The substituted information and belief Declaration submitted by M. Doden does not cure this issue because it neither introduces nor swears to the truth and accuracy of any specific documents. Rather, it simply replaces false statements of personal knowledge with a blanket

to consider a withdrawn declaration as evidence in an injunction proceeding); *see also Dorval v. Barr*, 414 F. Supp. 3d 386, 389 (W.D.N.Y. 2019) (when a motion is withdrawn, the court "cannot review evidence annexed to it"); *Gardiner v. Walmart Inc.*, Case No. 20-cv-04618-JSW, 2021 WL 2520103, at *11 (N.D. Cal. Mar. 5 2021) (holding that the effect of a withdrawal is that no party can rely on the evidence contained in the withdrawn pleadings or attached exhibits).

The issue of the veracity and truthfulness of the documents upon which Plaintiffs heavily relied in their request for an extraordinary injunction is even more pronounced when coupled with Plaintiffs' continued refusal to produce those documents properly in a form that can be verified. For example, Plaintiffs continually stressed to this Court that a spreadsheet allegedly recovered from the recycle bin of Casey Kirschner's ("Mr. Kirschner") computer is evidence of the fraudulent scheme.[4] *See e.g.* Dkt. 10 at 18-19. However, despite Defendants' repeated requests, Plaintiffs have produced only a PDF of the alleged document. Decl. of L. Regan-Smith ¶ 3. Without any custodial or metadata information, it is impossible to conclude where the PDF came from, who created it and when, or if it even means what Plaintiffs claim it does. And now, Amazon has even withdrawn the MacDonald Declaration attesting that this PDF is a true and correct copy of a document recovered from Mr. Kirschner's laptop. *See* Dkt. 12 ¶ 48. Such evidence—an unauthenticated, unsourced PDF with no context—can hardly be considered evidence at all.

Accordingly, the only evidence properly before the Court in support of the preliminary injunction is the unverified complaint and three witness declarations. This is not enough to subject a party to a mandatory pretrial injunction.

---

statement that Amazon believed all evidence to be true and accurate at the time it was submitted. Dkt. 588-9.

**B.    The Lorman, Doden, and Gilpin Declarations Do Not Connect Brian Watson to the Alleged Fraudulent Scheme.**

The three remaining declarations, those of Mr. Lorman, Mr. Doden, and Luke Gilpin ("Mr. Gilpin"), lend little support to Plaintiffs' cause. Subsequent discovery has severely undercut their evidentiary value by showing that the declarants have no personal knowledge of the Watson Defendants' involvement in the alleged fraudulent scheme and suggest that Plaintiffs misrepresented the strength of their evidence to this Court.

First, the deposition of Mr. Lorman revealed that he has no personal knowledge that Mr. Watson participated in an elaborate and far-reaching fraud scheme, or even that Mr. Watson was aware that Carleton Nelson ("Mr. Nelson") and Mr. Kirschner were receiving payments from Villanova Trust. In fact, Mr. Lorman testified that the first time he learned that Mr. Kirschner and Mr. Nelson received funds from the Villanova Trust was by reading court documents in this case, stating that "[his] only knowledge of that just came from reading court documents." Dec. L. Regan-Smith Ex. 4. at 136-37. Mr. Lorman further testified that "[Mr. Watson] stated that once Villanova gets paid, he has no knowledge where the money goes from there." When Mr. Lorman was asked if believed that statement to be true, he responded "I don't know." *Id*. at 138. Accordingly, Mr. Lorman's deposition revealed that he does not have personal knowledge that Mr. Watson knew of or participated in the alleged fraud and that his knowledge of the facts comes instead from Plaintiffs themselves.

Second, the deposition of Informant 1—now identified as Danny Mulcahy, the former Director of Equity Fundraising at Northstar ("Mr. Mulcahy")—revealed that the facts and allegations contained in Mr. Doden's Declaration in support of the preliminary injunction are misleading at best and at times outright false. Mr. Mulcahy testified under oath that he has no

11

personal knowledge or tangible evidence that Mr. Watson knew of or was involved in the alleged kickback scheme. Rather, Mr. Mulcahy candidly admitted that he "sent this email to Mr. Bezos based on assumptions and hearsay." Decl. of L. Regan-Smith Ex. 5 at 114-15. When asked how he knew that Mr. Watson was facilitating kickbacks, Mr. Mulcahy testified, "I don't have any evidence," *id.* at 119 and characterized his knowledge of the facts as coming from "water-cooler talk," *id*. at 236. Mr. Mulcahy further testified that he told Mr. Doden—who serves as inhouse counsel for Amazon—that he (*i.e.*, Mulcahy) did not have evidence of the kickback scheme and that his understanding was based on office gossip and water-cooler talk from other Northstar employees. *Id*. at 150-51; 236.

However, the Doden declaration, which outlines numerous phone calls and interviews with Mr. Mulcahy, makes no mention of this crucial fact, insinuating instead that "Informant 1" holds a smoking gun. *See e.g.*, Dkt. 44 ¶ 6 ("Informant 1 alleged in his conversations with me that Northstar Commercial Partners [], at the direction of its CEO Brian Watson, had caused payments to be made to two now-former Amazon employees—Casey Kirschner and Carleton Nelson—in return for those employees directing certain lease transactions to Northstar."). However, when deposed, Informant 1 (*i.e.*, Mr. Mulcahy) testified that Mr. Doden's description of Mulcahy's email to Jeff Bezos was "cherry-picked[,]" and actually specifically testified that paragraph six of Mr. Doden's Declaration was incorrect and misrepresented his statements to Amazon because "it's making affirmative statements that I said exactly—you know, I said this is my understanding, I have no proof. You know, this is how I believe things happened. I didn't say with any sort of empirical authority that these—all these things did happen." Decl. of L. Regan-Smith Ex. 5 at 146-148, 149-50. In fact, the only authority Mulcahy had to back his wild accusations was water-

12

cooler gossip. Accordingly, the Doden Declaration holds low evidentiary value and cannot form the basis for the extraordinary remedy of a preliminary injunction.

Amazon also apparently inaccurately represented Mr. Mulcahy's knowledge in the various versions of its complaints (including, curiously, its proposed third amended complaint), alleging that Mr. Mulcahy claimed to have personal knowledge. *See e.g.* Dkt. 612 ¶ 64 ("Informant 1 told Amazon he had personal knowledge of Northstar's payment of millions of dollars in kickbacks on Northstar's real estate transactions with Amazon."). Yet Mr. Mulcahy, when confronted with that language during his deposition, disputed it.

Finally, although Defendants have not yet had the opportunity to depose Mr. Gilpin—an employee of IPI—his declaration provides only circumstantial and hearsay evidence. Mr. Gilpin does not allege that he has personal knowledge that the Watson Defendants were involved in the alleged fraud, nor does he identify any third party with personal knowledge that the Watson Defendants were involved in the alleged fraud. Indeed, the majority of his declaration relates to information communicated to him by Mr. Lorman, who, as mentioned above, has testified to having no personal knowledge of the Watson Defendant's alleged involvement.

Accordingly, as a result of both Plaintiffs' unexpected admission that they submitted and relied on false testimony of personal knowledge to obtain the injunction, and the new information learned through discovery which undermines the truthfulness, accuracy, and evidentiary value of the remaining declarations, it has become clear that Amazon's allegations are based on little more than an unverified complaint based entirely on water-cooler gossip—an evidentiary basis that is patently insufficient to support the extraordinary remedy of injunctive relief. *See Medispa,* 999 F. Supp. 2d at 868-69.

13

II.     **Evidence Based on Hearsay and "Water-Cooler" Gossip Does Not Satisfy the *Winter* Factors**

The Supreme Court has held that a preliminary injunction shall not issue unless the movant proves each of four factors: (1) the movant is likely to succeed on the merits; (2) absent the injunction, the movant will be irreparably harmed; (3) the balance of the equities is in the favor of the movant; and (4) the injunction is in the public interest. *Winter*, 555 U.S. at 20; *Real Truth,* 575 F.3d at 347. If any one of these factors is no longer satisfied, the injunction must be vacated. *See id.* This standard is even more exacting when the relief sought is mandatory rather than a preservation of the status quo. *In re Microsoft Corp.*, 333 F.3d at 517, 525 (4th Cir.2003). Here, the requirement that the Watson Defendant's escrow $25 million is a mandatory provision because, as the receiver's report make clear, the Watson Defendants do not have, and have never had, assets sufficient to meet this requirement. Dkt. 495 Ex. B. Requiring Defendants to escrow funds that do not exist cannot be conceived as preserving the status quo.

A.      **Plaintiffs Are No Longer "Likely to Succeed on the Merits"**

In order to uphold the injunction, there must be a strong likelihood that Plaintiffs will succeed on the merits of the case. This is a high bar which "requires the plaintiff to show *more* than 'a grave or serious question for litigation.'" *Tigges v. Northam*, 473 F. Supp. 3d 559, 568 (E.D. Va. 2020) (quoting *Real Truth*, 575 F.3d at 347) (emphasis added). The key issue that Plaintiffs must prove in order to succeed on the merits of any of their claims against the Watson Defendants is that the Watson Defendants knowingly participated in a fraudulent kickback scheme. Plaintiffs have failed to make this showing.

The Watson Defendants do not deny, and have never denied, making payments to Villanova Trust. Decl. of B. Watson ¶ 9. However, the Watson Defendants vehemently deny the

14

allegation that they paid Villanova Trust with the intention that this money be paid to Mr. Kirschner and Mr. Nelson in exchange for receiving contracts with Amazon. *Id*. ¶ 8. Rather, any money paid to the Villanova trust was done pursuant to a commonplace and fully legal referral agreement. *Id.* ¶ 9. This money was paid by Northstar, not Amazon, from the reasonable market rate fees that Northstar received for its work sponsoring and developing the nine data center sites. *Id*. ¶¶ 10-11. Despite conducting two dozen depositions and exchanging hundreds of thousands of documents, discovery has revealed no facts to the contrary. Indeed, discovery has revealed that Plaintiffs simply do not have the compelling evidence proving Watson's knowledge and involvement that they promised and swore to under penalty of perjury at the time the injunction was granted.

The fact that no witness placed under oath, including "Informant 1," former Northstar employees, IPI employees, and current and former Amazon employees, has testified that Mr. Watson was knowingly paying Mr. Nelson and Mr. Kirschner through the Villanova Trust creates an inescapable factual question which can only be decided at trial. This precludes a finding that Plaintiffs are likely to succeed on the merits of their claims. *See Medispa*, 999 F. Supp 2d at 871; *Alleges Grp., Inc. v. Allegis Cap.*, LLC, 2019 WL 9042984 (D. Md. Mar. 18, 2019)*; see also Chattery Int'l, Inc. v. JoLida, Inc*., WL 1230822, at *9 (D. Md. Mar. 28, 2011) ("Courts have declined to issue a preliminary injunction when there are significant factual disputes."); *Goodman v. Dell Publ'g Co*., 1995 WL 301380, at *2 (E.D. La. May 15, 1995) ("Courts have consistently held that preliminary injunctions are not appropriate in cases permeated with factual disputes."); *E.E. Maxwell Co. v. Arti Decor, Ltd*., 638 F. Supp. 749, 754 (N.D. Tex. 1986) ("The claims presented here are hotly disputed and are not such that the court can say plaintiff has a substantial likelihood of success.").

This dearth of evidence supporting Amazon's far-reaching allegations is further reflected in the fact that despite two years of intense investigation and full access to all Amazon's documents and evidence, the Department of Justice has not indicted a single person related to this case. In fact, the DOJ recently settled two significant forfeiture actions against various defendants in this case, returning $525,000.00 dollars to Mr. Nelson and $8,600.00 to Mr. Kirshner. Dec. L. Regan-Smith Exs. 1-2. Similar to the Federal Government's seeming acknowledgement of the lack of evidence against defendants, Plaintiffs' own proposed Third Amended Complaint drops both the claim for prejudgment attachment and for preliminary injunctive relief. *See* Dkt. 617 at 11.

In short, Plaintiffs overplayed their hand when they sought the injunction, relying on inaccurate declarations, verifications, and sworn statements that have since been severely undermined, and may have even been intentionally fabricated for the purpose of gaining the injunction. *See infra* Part II C. Because of the scarcity of evidence against the Watson Defendants, Plaintiffs have shown, at best, a "grave or serious question for litigation" regarding the Watson Defendants' participation in the alleged scheme, which is simply not enough to show a likelihood of success on the merits. *See Real Truth*, 575 F.3d at 347.

Accordingly, the Watson Defendants should no longer be burdened by this extraordinary and debilitating injunction.

### B. Vacating the Injunction Will Not Harm Plaintiffs and Will Permit the Resolution of This Case on a Level Playing Field With Full Due Process Protections for All Parties.

A preliminary injunction can only stand upon a showing that without it a plaintiff is likely to suffer irreparable harm—a mere possibility of harm is insufficient. *Real Truth*, 575 F.3d at 346-47. In addition to the fact that the withdrawal of key verifications and declarations eliminates the majority of Plaintiffs' evidentiary basis to prove irreparable harm in the first instance, recent

16

developments conclusively show that Amazon will not be irreparably harmed if the injunction is vacated. It has become abundantly clear through the reports of the receiver, who was hand-selected by Plaintiffs, that Mr. Watson and Northstar simply do not have the assets available to comply with the requirement that they escrow approximately $25 million. The receiver's report speaks for itself. It states that the Watson Defendants have a cash balance of only around $70,000.00, and millions of dollars in liabilities against this cash balance in excess of the injunction amount. Dkt. 495 Ex. B. Accordingly, Amazon cannot be harmed by the Watson Defendant's potential disbursement of assets because neither Mr. Watson nor Northstar have any assets to disperse.

### C. The Balance of the Equities Is in the Watson Defendants' Favor

Injunctions are equitable remedies, and thus cannot be sustained if the balance of the equities falls against the movant as they now do here. *See Winter* 555 U.S. at 51.

#### 1. The Injunction Inflicts Greater Harm Than It Prevents

A preliminary injunction is inequitable if the potential harm from the injunction outweighs the potential harm to be prevented by that injunction. *See Winter*, 555 U.S. at 24 ("In each case, courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the request to relief." (internal quotation omitted)). As discussed above, vacating the injunction will have no practical effect on Plaintiffs, but will serve the purpose of removing an incredible hardship from the Watson Defendants. The mandate that the Watson Defendants escrow $25 million that they do not have has caused, and continues to cause, irreparable financial, emotional, and operational harm to the Watson Defendants. As a result of the injunction and subsequent appointment of the receiver, the Watson Defendants have been forced to default on business obligations, liquidate assets at significant losses, and essentially shutter their business. *See* Decl. of B. Watson at ¶ 14. So long as the injunction is in place, the Watson

17

Defendants will continue to suffer these harms despite the fact that they have not been found liable on any of the allegations. Subjecting a party to such irreparable hardship based only on unverified allegations of an adversary is contrary to equity and justice, particularly where, as here, the adverse party receives little benefit from that injunction.

### 2. The Injunction Was Obtained With Unclean Hands

"Unclean hands bars a party from receiving equitable relief because of that party's own inequitable conduct." *Newcom Holdings Pty. Ltd. v. Imbros Corp.*, 369 F. Supp 2d 700, 713 (E.D. Va. 2005). Plaintiffs obtained this injunction by representing to this Court, and to Defendants, that multiple people had personal knowledge of the facts underlying the far-reaching and extraordinary allegations contained in the Verified Complaint. They have now admitted that those verifications and declarations were false. Dkt. 588. Accordingly, it would be inherently inequitable to allow Plaintiffs to continue to benefit from false submissions and representations made to the Court, especially since those submissions and representations were intentionally misleading in order to obtain the injunction against the Watson Defendants. This would be true even if those false submissions were a mistake, however, the facts and circumstances strongly suggest that Plaintiffs' submission of false testimony was intentional and tactical.

First, the persons who signed the complaints and declarations are successful and experienced litigators who know what it means to swear to personal knowledge and ability to competently testify to facts under oath. It strains credulity to believe that any competent litigator would sign sworn documents and submit them to this Court without actually reading those documents, nor that the entire team of experienced lawyers assigned to this case would miss such an error. This is compounded by the fact that the supposed mistake was made not once, but eight times, and not by just one Gibson Dunn attorney, but by three.

18

Second, it is highly unusual for outside counsel to verify a complaint in the first place—it is not a default that Plaintiffs omitted to change, but instead a deliberate strategic choice.[5] Astonishingly, Plaintiffs originally filed the First Verified Amended Complaint without the attorney verification, and then came back and submitted a corrected complaint for the sole purpose of including the verification. *See* Dkt. 113. One cannot "accidentally" file a motion.

Most importantly, Plaintiffs and their legal counsel at Gibson Dunn explicitly relied upon the Verified Complaint and the sworn declarations of personal knowledge throughout the injunction proceedings. In the preliminary injunction hearing Plaintiffs' counsel referenced the "verified" complaint sixteen times. Decl. of L. Regan-Smith Ex. 3 at 6, 7, 9, 13, 14, 15, 34, 37, 38, 40. Further, counsel directly argued to the Court that Plaintiffs' evidence was more compelling than that of defendants specifically because it was verified with personal knowledge under oath and penalty of perjury. *See e.g.*, *id.* at 37, 39-40 (arguing, "[w]e've got five affidavits, 50-plus exhibits, and a 55 page verified complaint[,]" whereas "[t]heir counsel (sic) affidavit doesn't purport to verify Mr. Watson's alleged lack of knowledge the kickback scheme. . . . No affidavit, nothing under oath from the company."). Again, such statements are not made by accident or mistake.

Based on these facts and circumstances, it is clear that Plaintiffs and their counsel at Gibson Dunn were aware of the significance of the declarations and verifications, and included them strategically for the purpose of adding evidentiary weight to their allegations and application for injunction. An injunction based on hyperbole, stated in now-withdrawn declarations should be

---

[5] Magistrate Judge Buchanan called this "sloppy lawyering." Decl. of L. Regan-Smith Ex. 6 at 10:9-11:15.

vacated. Hearsay and "water-cooler" gossip simply cannot be the basis for a $25 million mandatory pretrial injunction.

### C.       There Is no Public Benefit to Keeping the Injunction in Place

"In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24 (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)). Here, there is no clear public interest in retaining the injunction, the public does not receive any benefit from the fact that the Watson Defendants' assets are subject to total control by a receiver. Rather, the continued imposition of the injunction wastes the time and resources of both the parties and this Court. Accordingly, because it has become clear that the Watson Defendants cannot satisfy the injunction, keeping it in place no longer serves any public interest.

### D.       The Watson Defendants Are Entitled to Recover the Injunction Bond

Federal Rule of Civil Procedure 65(c) provides that "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). Here, Plaintiffs have wrongfully obtained an injunction against the Watson Defendants, and as a result the Watson Defendants have suffered damages of at least $100 Million, and likely much more. Decl. of B. Watson ¶ 14. Accordingly, the Watson Defendants are entitled to recover the entirety of the $2 Million injunction bond.

### CONCLUSION

For the reasons outlined above, the Watson Defendants' respectfully request that this Court vacate in its entirety the preliminary injunction against the Watson Defendants, vacate the finding that the Watson Defendants are in contempt of the preliminary injunction order, remove the

appointment of the receiver, and allow the Watson Defendants to recover the entirety of the injunction bond.

Dated: April 25, 2022

Respectfully submitted,

_s/ Stanley L. Garnett_
Stanley L. Garnett (*pro hac vice*)
Amanda K. Houseal (*pro hac vice*)
Leah M. Regan-Smith (*pro hac vice*)
Brownstein Hyatt Farber Schreck, LLP
410 17th Street, Suite 2200
Denver, CO 80202
Telephone: (303) 223-1100
Facsimile: (303) 223-1111
sgarnett@bhfs.com
ahouseal@bhfs.com
lregansmith@bhfs.com

*/s/ Jeffrey R. Hamlin*
Jeffrey R. Hamlin (VA Bar No. 46932)
George R. Calhoun (*pro hac vice*)
James Trusty (*pro hac vice*)
IFRAH PLLC
1717 Pennsylvania Avenue NW, Suite 650
Washington, DC 20006
Telephone: (202) 524-4140
Facsimile: (202) 524-4141
jhamlin@ifrahlaw.com
george@ifrahlaw.com
jtrusty@ifrahlaw.com

*Counsel for WDC Holdings LLC, Brian Watson, Sterling NCP FF, LLC, Manassas NCP FF, LLC, NSIPI Administrative Manager, and BW Holdings LLC*

21