```
 1                    UNITED STATES DISTRICT COURT
               FOR THE EASTERN DISTRICT OF VIRGINIA
 2                       ALEXANDRIA DIVISION

 3
      AMAZON.COM, INC., et al.,      :
 4                                   :
                     Plaintiffs,     :  Civil Action
 5                                   :  No. 1:20-cv-00484
               v.                    :
 6                                   :
      WDC HOLDINGS LLC, et al.,      :  April 29, 2022
 7                                   :  10:05 a.m.
                                     :
 8                                   :
                     Defendants.     :
 9    ............................. :

10

11                 TRANSCRIPT OF MOTION HEARING
              BEFORE THE HONORABLE THERESA BUCHANAN,
12        UNITED STATES DISTRICT COURT MAGISTRATE JUDGE

13     APPEARANCES:

14
      For Defendants Watson:       JEFFREY HAMLIN, ESQ.
15                                 IFRAH LAW
                                   1717 Pennsylvania Avenue NW
16                                 Suite 650
                                   Washington, D.C. 20006
17
      For Defendant IPI:           CHARLES CONNOLLY, ESQ.
18                                 AKIN GUMP STRAUSS HAUER & FELD LLP
                                   2001 K Street NW
19                                 Washington, D.C. 20006

20    Court Reporter:             Tonia Harris, RPR
                                   Official Court Reporter
21                                 United States District Court
                                   401 Courthouse Square
22                                 Alexandria, VA 22314

23
       Proceedings reported by machine shorthand.  Transcript
24     produced by computer-aided transcription.

25
```

─Amazon v. WDC Holdings─

1    THE COURTROOM DEPUTY:  Amazon.com, Inc., et al.

2    vs. WDC Holdings LLC, et al.  Case number 20-cv-484.

3    MR. CALHOUN:  Good morning, Your Honor.

4    THE COURT:  Good morning.

5    MR. CALHOUN:  George Calhoun and Jeff Hamlin for

6    the Watson defendants, the movants.

7    THE COURT:  All right.

8    MR. CONNOLLY:  Good morning, Your Honor.  Charles

9    Connolly and Erica Holland on behalf of the nonparty, IPI,

10   respondent.

11   THE COURT:  Good morning.  Let me ask just a

12   general question, and I'm not sure who can address this

13   best, but what is exactly Amazon's data retention policy?

14   It seems to me that as of April of 2020, they should have

15   been retaining everything, shouldn't they?  Does anybody

16   know?

17   MR. CALHOUN:  I believe we have one of Amazon's

18   lawyers in the courtroom, Your Honor, but our understanding

19   is they've automatic -- I agree with you, they should be

20   retaining everything.

21   THE COURT:  Mm-hmm.

22   MR. CALHOUN:  There's a mismatch between what

23   Amazon says they had produced to us and what IPI says they

24   have.

25   THE COURT:  Mm-hmm.

Amazon v. WDC Holdings

1           MR. CALHOUN:  It's either --

2           THE COURT:  Mismatch in which way?

3           MR. CALHOUN:  IPI has more than what Amazon --

4           THE COURT:  Are we talking about pre-April 2020

5    or post-April 2020?

6           MR. CALHOUN:  Both, Your Honor.

7           THE COURT:  Okay.  All right.  Is there anything

8    that you want to add to your motion?

9           MR. CALHOUN:  Your Honor, the only thing I would

10   add is there's some confusion over what we're looking for

11   from Akin Gump documents.  I did want to make it clear that

12   we are not looking for Akin Gump-IPI communications.  The

13   only thing we need from Akin Gump is to the extent they

14   were negotiating with Amazon on behalf of IPI, the

15   communications between Amazon and IPI that were done via

16   counsel, we'd like those.  So to the extent they're saying

17   we have to review all these documents, I don't think that's

18   really true.  They just need the third-party exchanges.

19   We're not looking for any of the privileged documents.

20          THE COURT:  Well, I really am -- I'm struggling

21   with your request.  When I look at the actual request,

22   apart from your arguments about this, number 1, document

23   request number 1 says, "All documents and communications

24   relating to defendants."  Well, that's wildly overbroad.

25   So when we go then to number 2, you say the same -- "All

1    documents and communications relating to plaintiffs

2    including, but not limited to, all documents and

3    communications relating to the nine leases."  Well, the

4    nine leases is one thing, but, again, in the context of

5    just "All documents and communications relating to

6    plaintiffs," it's just, again, wildly overbroad.

7            The termination is, you know, essentially okay.

8    Your continued relations, I'm not really quite sure why the

9    negotiations and the drafts and the final agreements or

10   contracts are relevant.  I mean, this kind of ties back, I

11   think, to what I ruled before in that the final document is

12   relevant in terms of if you're talking about damages, which

13   I think you are, but the drafts and negotiations and all

14   that, I just don't think are really probative of what the

15   damages are.

16           MR. CALHOUN:  Your Honor, if I could respond to

17   that.

18           THE COURT:  Sure.

19           MR. CALHOUN:  The reason we want to see the

20   communications back and forth is because we want to see if

21   there are other *quid pro quo*s involved in that negotiation,

22   and what the considerations were --

23           THE COURT:  Wouldn't that be part of the

24   contract?  If there's a piece of this that it's contingent

25   on, surely, it would be embodied in a contract.  They

-Amazon v. WDC Holdings-

1   wouldn't just rely on --

2           MR. CALHOUN:  But they could have altered other

3   contracts in addition to the lease contracts to which we

4   had --

5           THE COURT:  Well, why don't you ask that?

6           MR. CALHOUN:  Well, we will, Your Honor, but we

7   want to -- we want to have the documents before we depose

8   them.  That's the issue.

9           THE COURT:  But you could ask that in an

10  interrogatory rather than asking for what could be

11  hundreds, thousands of documents.  So why not -- if that --

12  if that's really what you're seeking, why not ask that.

13          MR. CALHOUN:  We can give them a supplemental

14  interrogatory, Your Honor, we want to see all of them,

15  obviously, because we did --

16          THE COURT:  But I don't think that -- the problem

17  I am having with this also is that this is a third party.

18  And I know you say that they were, of course, involved in

19  all of this, but that doesn't mean that I think -- I have a

20  problem -- I would have a problem with this even if this

21  was -- this was a non- -- if it was a party.  It's just so

22  broad.  And who are -- you have to tell me who are

23  Christian Kirschner, Rodney Atherton, and Tim Lorman,

24  Informant No. 1, Patricia Watson, Kyle Ramstetter and Will

25  Camenson; who are these people?

—Amazon v. WDC Holdings—

1        MR. CALHOUN:  So those are various people who are

2   engaged in some of these transactions for allegations

3   involved in the complaint.  They're not all defendants or

4   parties of the case, although Amazon is seeking to add some

5   of those defendants to the case.

6        THE COURT:  But, again, I guess -- and I'm having

7   trouble with this "all documents and communications."  Have

8   you all talked about -- and I don't know what format they

9   have these documents in, but since they were talking about

10  looking at who was included in the top line, are these in a

11  searchable format; have you all talked about keyword

12  searches?

13       MR. CALHOUN:  My understanding is that they are

14  in a searchable format, and that was, you know, the burden

15  piece.  The top line piece I thought was fairly -- it would

16  be fairly easy to resolve because those, by definition,

17  aren't privileged documents.

18       THE COURT:  We're not talking about privilege.

19  I'm just talking about the scope.

20       MR. CALHOUN:  I understand the scope issue.  I

21  was thinking about the burden response, which would be

22  difficult to produce these.  If they've done, which I think

23  they have a search for, these are the documents that are

24  top line communications.

25       THE COURT:  We're talking about thousands and

Amazon v. WDC Holdings

1    thousands of documents, and if you have keyword searches

2    and you get a certain number of hits that make sense to

3    produce, that's a, you know, a reasonable narrowing.  So

4    you haven't talked about key word searches.

5              MR. CALHOUN:  I don't -- we have not had those

6    conversations, Your Honor.

7              THE COURT:  Okay.  All right.  Is there anything

8    else you'd like to add?

9              MR. CALHOUN:  No, Your Honor.

10             THE COURT:  Okay.  Would you like to add anything

11   on behalf of third party?

12             MR. CONNOLLY:  Thank you, Your Honor, just two

13   points.  First, to respond to your most recent question to

14   counsel.  On behalf of IPI, we created search terms

15   ourselves.

16             THE COURT:  Okay.

17             MR. CONNOLLY:  And, in fact, we have, although

18   it's quite voluminous, we did produce documents responsive

19   to that third requests, because at least we're able to

20   figure out something narrow to create search terms.

21             THE COURT:  All right.  Good.

22             MR. CONNOLLY:  With respect to the question about

23   these *quid pro quo* negotiations, I'd only add the obvious,

24   which is whatever their concerns are about Amazon's data

25   retention, we have no sense of those.  Those communications

1    he indicated he wants are between Akin Gump as counsel for

2    IPI, and Gibson Dunn as counsel to Amazon.  Gibson Dunn

3    certainly would have these documents.  They're part of a

4    party and I think the request would be best directed to

5    them.

6            Last, Your Honor, last point I just flagged

7    because it goes to your first point about the overbroadness

8    of the subpoena, and this is in our brief, but it wasn't

9    flagged, and I don't know if it was directly addressed by

10   counsel in a reply on page 17.  Their request is so broad

11   that one of the documents had come back as responsive to

12   request as drafted, are these spreadsheets.  There are

13   hundreds if not thousands of them.  They may have one line

14   about an IPI -- I'm sorry, Northstar-related deal, and it's

15   all data, about all the other data construction deals that

16   IPI does, because this is their entire business.  And the

17   amount of time and effort it would take to redact that

18   nonrelevant information, according to business sensitive,

19   is hundreds and hundreds of hours.  And they're otherwise

20   irrelevant to the issues in this case.

21           THE COURT:  So how -- specifically, how would you

22   propose narrowing the search to eliminate those kinds of

23   hits?

24           MR. CONNOLLY:  I think, Your Honor, I would say

25   that we can pull those out of our database.  We know what

—Amazon v. WDC Holdings—

1    the spreadsheets are, and we can just pull those out and

2    just not produce them.  The difference is being able to

3    pull them in the initial -- from the 535,000 documents into

4    a set that hit our search terms, which is broad, then we

5    would review them to figure out if they're responsive or

6    not or protected by privilege.  These documents hit our

7    search terms, but in reviewing them, would realize it's

8    just a one line -- dozens and dozens and dozens of pages of

9    data and Excel spreadsheets.  There's no technological way

10   to easily redact them.  It's incredibly sensitive business

11   information --

12            THE COURT:  Is that the one particular part that

13   you're concerned about then?

14            MR. CONNOLLY:  Yes.  That's one example.  Our

15   papers address three of the buckets.

16            THE COURT:  Right.

17            MR. CONNOLLY:  But that's one example of how the

18   overbreadth of their subpoena creates incredible amount of

19   burden for our client, and that's one example of a document

20   that is technically responsive to the subpoena.  But when

21   you take, independent of everything else, probably a

22   hundred or plus hours to redact those things and produce

23   them.

24            THE COURT:  Okay.  All right.  Thank you.  I

25   guess I'd like to hear back from the defendants in that you

1   really haven't proposed an alternative here to the -- to

2   IPI's counsel as to how to narrow it.  You just are to --

3   we'll start from the premise that I'm finding that these

4   are overbroad.  They are.  I could just strike them and

5   say, No, you can't have any of this.

6           They proposed a solution which I think on its

7   face seems reasonable, but I haven't heard anything from

8   you as to something that you think would narrow this

9   sufficiently and still get you what you want, because

10  there's no point in having them produce something like that

11  which contains all those spreadsheets.

12          MR. CALHOUN:  No, Your Honor.  And as always, as

13  requesting parties, there's so many disadvantages we don't

14  know exactly what they have, and obviously --

15          THE COURT:  Yeah, but you haven't really proposed

16  any kind of narrowing here.  That's my problem.  I mean,

17  I'm not going to rewrite these for you.  So here's what I'm

18  faced with, frankly, is either you accept their proposal,

19  which I think on its face is reasonable, or you tell me

20  something small in addition to that that you really need

21  that would help you out.  I'm just -- I mean you're giving

22  me no alternative here.  Either I go with what they say or

23  I strike them completely, which I don't want to do because

24  they have a proposal that seems reasonable.  So what

25  specifically, if anything, do you actually need that's

—Amazon v. WDC Holdings—

1   narrowly tailored in addition to what they've proposed?

2           MR. CALHOUN:  Your Honor, I would ask that they

3   produce the communications with Amazon.

4           THE COURT:  But, again, you're just talking about

5   communications.  That's -- no, that's like a blank no,

6   okay?  What's your next idea?

7           MR. CALHOUN:  All right.  Bear with me one

8   minute, Your Honor.

9           So the other thing that we ask for, Your Honor,

10  that we think shouldn't be difficult for our scope is the

11  other data center deals they have --

12          THE COURT:  That, I can -- I don't understand

13  what that would have to do with anything, because, I mean,

14  so that they had other data centers that they leased.  You

15  know, all those leases have got to be based on so many

16  variables, I don't see how they would be comparators to the

17  leases that they did sign.

18          MR. CALHOUN:  Well, we asked for Amazon leases in

19  Virginia, so it's -- we didn't ask for --

20          THE COURT:  Why?  I mean what relevance do they

21  have to --

22          MR. CALHOUN:  Because --

23          THE COURT:  -- the other leases?

24          MR. CALHOUN:  -- one of the allegations, Your

25  Honor, is that our leases were not market.

11

Amazon v. WDC Holdings

1       THE COURT:  Were not what?

2       MR. CALHOUN:  They weren't market based, and so

3  those provide other --

4       THE COURT:  Yeah, but I mean I guess I get what

5  you're saying.  But if you've got a lease, just for

6  instance, let me put it this way, if you've got a house in

7  Alexandria, then you've got a house way out in Dumfries and

8  they're the same square feet, they're not going to be the

9  same price.  And so, when you've got a data center here and

10  a data center there, I don't see how you can compare them

11  in terms of value when we all know that everything in

12  Northern Virginia wildly varies based on exactly where it's

13  located.

14       MR. CALHOUN:  Well, that's certainly true for

15  residential or commercial real estate.  I think data real

16  estate is a little different, Your Honor.

17       THE COURT:  How?

18       MR. CALHOUN:  It's really based, as I understand

19  it, on its access to the various --

20       THE COURT:  Well, that's the same thing.  I mean

21  location, location, location.  So I'm not going to allow

22  the other data centers, no.  You can have information about

23  these, but not the others.

24       MR. CALHOUN:  It's fine, Your Honor.  If we have

25  a consistent ruling that they can't introduce other

Amazon v. WDC Holdings

 1   evidence --

 2           THE COURT:  I'm not talking about Amazon.  I'm

 3   talking about a nonparty here.  Because later on, if Amazon

 4   thinks that it can rely on other data center prices,

 5   they're going to have to produce the information to you to

 6   show why that's relevant, and I don't think you need it

 7   from a third party.

 8           MR. CALHOUN:  Fair enough, Your Honor.  Off the

 9   top of my head, Your Honor, I don't know if I can come up

10   with the terms to narrow it.

11           THE COURT:  Okay.

12           MR. CALHOUN:  I certainly would like to give it a

13   shot.

14           THE COURT:  I think we have.  So I'm going to go

15   ahead and go with the IPI's proposal as how to narrow the

16   scope of these document requests.  They are overbroad and,

17   you know, I've got to rule on the motion today and I don't

18   really see anyway of -- well, and you haven't come up with

19   any other way of working this out, so I think kicking the

20   can down the road doesn't help.  The time for that has

21   already past.

22           All right.  Anything else this morning?

23           MR. CALHOUN:  No, Your Honor.

24           THE COURT:  All right.  Court stands in recess.

25           (Court proceedings concluded at 10:18 a.m.)

1                    CERTIFICATE OF REPORTER

2

3          I, Tonia Harris, an Official Court Reporter for

4    the Eastern District of Virginia, do hereby certify that I

5    reported from the Court's FTR recording, in my official

6    capacity, the proceedings had and testimony adduced upon

7    the Motion hearing in the case of the **AMAZON.COM, INC., et**

8    **al. versus WDC HOLDINGS LLC, et al**. Civil Action No.:

9    1:20-cv-484, in said court on the 29th day of April, 2022.

10         I further certify that the foregoing 14 pages

11   constitute the official transcript of said proceedings.

12         In witness whereof, I have hereto subscribed my

13   name, this May 9, 2022.

14

15

16

17

18

19

20

21   _____

                              Tonia M. Harris, RPR
22                            Official Court Reporter

23

24

25

                                                              14