**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| AMAZON.COM, INC. and AMAZON DATA SERVICES, INC., <br><br>       Plaintiffs, <br><br>   v. <br><br> WDC HOLDINGS LLC dba NORTHSTAR COMMERCIAL PARTNERS; BRIAN WATSON; STERLING NCP FF, LLC; MANASSAS NCP FF, LLC; NSIPI ADMINISTRATIVE MANAGER; NOVA WPC LLC; WHITE PEAKS CAPITAL LLC; VILLANOVA TRUST; CARLETON NELSON; CASEY KIRSCHNER; ALLCORE DEVELOPMENT LLC; FINBRIT HOLDINGS LLC; CHESHIRE VENTURES LLC; 2010 IRREVOCABLE TRUST; SIGMA REGENERATIVE SOLUTIONS LLC; CTBSRM, INC.; RODNEY ATHERTON; DEMETRIUS VON LACEY; RENRETS LLC, <br><br>       Defendants. | CASE NO. 1:20-CV-484-RDA-TCB |
| 800 HOYT LLC, <br><br>       Intervening Interpleader Plaintiff / Intervening Interpleader Counter-Defendant, <br><br>   v. <br><br> BRIAN WATSON; WDC HOLDINGS, LLC; PLW CAPITAL I, LLC; BW HOLDINGS; LLC, <br><br>       Interpleader Defendants, <br><br>   and <br><br> AMAZON.COM, INC. and AMAZON DATA SERVICES, INC., <br><br>       Interpleader Defendants / Interpleader Counter-Plaintiffs. | |

**PLAINTIFFS' RESPONSE TO WATSON DEFENDANTS'
MOTION TO VACATE PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

**PRELIMINARY STATEMENT** ........................................................................................ 1

**BACKGROUND** ............................................................................................................... 4

      A.   Preliminary Injunction Record ............................................................................ 4

      B.   Post-Injunction Proceedings ................................................................................ 9

      C.   Recent Developments ......................................................................................... 10

**LEGAL STANDARD** ..................................................................................................... 14

**ARGUMENT** ................................................................................................................... 15

   I.    THE DISCOVERY DEVELOPMENTS IN DEFENDANTS' MOTION DO
       NOT SUPPORT MODIFYING THE INJUNCTION OR RELATED ORDERS ....... 16

        A. The Court's April 8 Order Does Not Support Injunction Relief .......................... 16

        B. The Depositions Defendants Cite Also Do Not Undermine the Injunction.......... 20

  II.   THE RECORD PROVIDES GREATER SUPPORT FOR THE INJUNCTION
       NOW THAN IN 2020 ............................................................................................... 22

        A. The Current Record Strongly Supports Amazon's Likelihood of Success........... 23

        B. The Current Record Also Supports All Equitable Factors for the Injunction....... 25

**CONCLUSION** ................................................................................................................ 30

# TABLE OF AUTHORITIES

**Cases**

*Amazon.com, Inc. v. WDC Holdings LLC*,
　2021 WL 3878403 (4th Cir. Aug. 31, 2021)...................................................................... passim

*AngioDynamics, Inc. v. Biolitec AG*,
　780 F.3d 420 (1st Cir. 2015)......................................................................................... 15, 21

*Byrum v. Landreth*,
　566 F.3d 442 (5th Cir. 2009) ............................................................................................. 24

*Centennial Broad., LLC v. Burns*,
　433 F. Supp. 2d 730 (W.D. Va. 2006) .......................................................................... passim

*CF 135 Flat LLC v. Triadou SPV N.A.*,
　2016 WL 5945912  (S.D.N.Y. June 24, 2016) ........................................................................ 25

*Chattery Int'l, Inc. v. JoLida, Inc.*,
　2011 WL 1230822 (D. Md. Mar. 28, 2011)............................................................................ 24

*Johnson v. Couturier*,
　572 F.3d 1067 (9th Cir. 2009) ...................................................................................... 17, 19

*Dominick & Dominick, Inc. v. Investor Services & Sav. Corp.*,
　1990 WL 74547(S.D.N.Y. May 30, 1990) ......................................................................... 17, 22

*E.E. Maxwell Co. v. Arti Decor, Ltd.*,
　638 F. Supp. 749 (N.D. Tex. 1986) .................................................................................... 24

*FTC v. Affordable Media*, 179 F.3d 1228 (9th Cir. 1999) ......................................................... 26

*G.G. ex rel. Grimm v. Gloucester Cty. Sch. Bd.*,
　822 F.3d 709 (4th Cir. 2016) ................................................................................. 17, 19, 22

*Goodman v. Dell Publ'g Co.*,
　1995 WL 301380 (E.D. La. May 15, 1995).............................................................................. 24

*Hartford Acc. & Indem. Co. v. Cox*,
　1988 WL 241123 (E.D. Va. June 29, 1988) ......................................................................... 22

*In re Microsoft Corp. Antitrust Litig.*,
　333 F.3d 517 (4th Cir. 2003) ............................................................................................. 25

*Invention Submission Corp. v. Dudas*,
　413 F.3d 411 (4th Cir. 2005) ....................................................................................... 18, 23

*JLM Couture, Inc. v. Gutman*,
   2021 WL 2227205 (S.D.N.Y. June 2, 2021) ............................................................ 15

*JTH Tax, Inc. v. Aime*,
   2016 WL 4182743 (E.D. Va. Aug. 3, 2016) ............................................................ 17

*Kay Co. LLC v. EQT Prod. Co.*,
   2018 WL 11411389 (N.D.W. Va. Nov. 1, 2018) ..................................................... 22

*League of Women Voters v. North Carolina*,
   769 F.3d 224 (4th Cir. 2014) .................................................................................. 24

*Medispa, LLC v. Transformations, Inc.*,
   999 F. Supp. 2d 862 (S.D.W. Va. 2014) ........................................................... 21, 24

*Moose Creek, Inc. v. Abercrombie & Fitch Co.*,
   331 F. Supp. 2d 1214 (C.D. Cal. 2004) .................................................................. 19

*Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*,
   60 F.3d 823 (4th Cir. 1995) .............................................................................. 14, 18

*Roe v. Dep't of Defense*,
   947 F.3d 207 (4th Cir. 2020) .................................................................................. 24

*Salinas v. United States*,
   522 U.S. 52 (1997) .................................................................................................... 8

*Sentinel Trust Co. v. Namer*,
   172 F.3d 873, 1998 WL 887287 (6th Cir. 1998) ................................................... 25

*Signature Flight Support Corp. v. Landow Aviation Ltd. P'ship*,
   2009 WL 90849 (E.D. Va. Jan. 13, 2009) ............................................................. 17

*Synthes USA, LLC v. Davis*,
   2017 WL 5972705 (D.S.C. Dec. 1, 2017) ............................................................. 17

*TechINT Sols. Grp., LLC v. Sasnett*,
   2018 WL 4655752 (W.D. Va. Sept. 27, 2018) ................................................. 19, 22

*Teledyne Techs. Inc. v. Shekar*,
   831 F.3d 936 (7th Cir. 2016) .................................................................................. 22

*Telesis Cmty. Credit Union v. Mantiff 1215 Statesville Hosp., LLC*,
   2010 WL 892116 (W.D.N.C. Mar. 5, 2010) ..................................................... 18, 21

*Thompson v. U.S. Dep't of Hous. & Urb. Dev.*,
   404 F.3d 821 (4th Cir. 2005) ............................................................................... 1, 14

*Trs. of Carpenters' Health & Welfare Tr. Fund of St. Louis v. Brunkhorst,*
    2005 WL 8173708 (S.D. Ill. Sept. 13, 2005).............................................................. 15

*United States v. 8 Gilcrease Lane Quincy Fla. 32351,*
    587 F. Supp. 2d 133 (D.D.C. 2008) ........................................................................ 17

*United States v. Bell,*
    5 F.3d 64 (4th Cir. 1993) ........................................................................... 15, 18, 21

*United States v. Mallory,*
    988 F.3d 730 (4th Cir. 2021) ................................................................................ 25

*Volvo Trademark Holding Akitebolaget v. Clark Mach. Co.,*
    510 F.3d 474 (4th Cir. 2007) ....................................................................... 1, 15, 18

*Walker v. Mem'l Health Sys. of E. Texas,*
    2017 WL 4506801 (E.D. Tex. June 20, 2017)....................................................... 15

*Winter v. Nat. Res. Def. Council,*
    555 U.S. 7 (2008)........................................................................................ 14, 22, 24

**Statutes**

28 U.S.C. § 1746.............................................................................................................. 17, 20

Plaintiffs Amazon.com, Inc. and Amazon Data Services, Inc. hereby respectfully oppose the Watson Defendants'[1] Motion to Vacate Preliminary Injunction, Dkt. 696 ("Mot.").

## PRELIMINARY STATEMENT

The current motion is Defendants' latest attempt to evade the preliminary injunction this Court granted in June 2020 and the Fourth Circuit affirmed last year.  The Court entered the injunction based on record evidence it described as "extremely powerful" and "beyond that which [wa]s necessary" for the preliminary relief the parties litigated in 2020, and Defendants improperly seek to vacate now.  Dkt. 69-5, at 49; Dkts. 99, 318.  Their motion cites two "developments" in support of their argument that the "case has dramatically shifted since the injunction was granted such that the injunction must now be vacated."  Mot. 1, 9.  First, they cite Judge Buchanan's April 8 order allowing Amazon to "withdraw" what Defendants describe as "false" 2020 declarations "submitted in support of the injunction."  Mot. 2.  Second, they say two recent depositions "show" that the injunction cannot survive on the current record because "no one possesses personal knowledge of Brian Watson's involvement in the alleged fraud[]."  *Id.*  These "developments" do not support Defendants' motion for at least three reasons.

First, they do not come close to meeting the legal test for modifying an injunction.  Because Defendants challenge an operative injunction affirmed on appeal, they bear the burden of proving equitable grounds for vacatur that satisfy Rule 60(b), *Thompson v. U.S. Dep't of Hous. & Urb. Dev.*, 404 F.3d 821, 826 (4th Cir. 2005), and that satisfy the extraordinary test for revisiting issues covered by the Fourth Circuit's appellate mandate, *Volvo Trademark Holding Akitebolaget v. Clark Mach. Co.*, 510 F.3d 474, 481 (4th Cir. 2007).  Defendants cannot meet this burden.  As

---

[1] Unless otherwise noted, references in this filing to "Defendants" or "Watson Defendants" include Brian Watson, WDC Holdings LLC d/b/a Northstar Commercial Partners ("Northstar"), Sterling NCP FF, LLC, Manassas NCP FF, LLC, and NSIPI Administrative Manager.

their own cases explain, these standards for injunction modification "*preclude[] the Court from considering old issues—whether or not they have been amplified by new 'facts' or refashioned arguments—that [were or] could have been presented before the injunction issued.*" *Centennial Broad., LLC v. Burns*, 433 F. Supp. 2d 730, 734–35 (W.D. Va. 2006) (footnote omitted).[2]  Defendants' motion unequivocally fails this test because its "new" arguments merely "amplif[y]" and "refashion[]" evidentiary challenges Defendants litigated and lost in 2020.  For this reason alone, their motion does not justify relief from the injunction and related orders as a matter of law.

Second, Defendants' arguments are foreclosed by the injunction record.  Their motion depends on the conclusion that the evidence supporting the injunction has "evaporated," Mot. 2, and that its provisions are now supported "only [by] unverified allegations of an adversary," *id*. 18.  The evidence they cite in their own brief, e.g., Mot. 10, belies that claim.  And their focus on Amazon's recent withdrawal of certain 2020 attestations does not change that, or otherwise support any of the relief they seek.  Mot. 1.[3]  The record is clear that these withdrawals, which Amazon offered to facilitate the protective order the Court issued on April 8, Dkts. 588, 648, did "not impact" the injunction in any way, Dkt. 627 at 2.  That conclusion is evident from the unrefuted law in Amazon's filings, Dkts. 588, 627, 760, and from the injunction orders and rulings.  This Court and the Fourth Circuit expressly based the injunction on extensive documentary evidence including "business files, wire records, voice recordings, and recent public and incriminating statements by Defendants" themselves, Dkt. 99 at 8; Dkt. 318 at 19, as well as on three witness declarations Amazon filed subsequent to the attestations it withdrew last month.  Dkts. 43, 46, 59.  The later

---

[2]  All emphasis in this brief is supplied unless otherwise noted.

[3]  As detailed below, Defendants' repeated claim that the withdrawn attestations were "false," Mot. 1–3, 6, 9, 11, 13, 18, has no support in the relevant pleadings, Dkts. 588, 627, 648, 760, and is belied by Defendants' own admissions and filings, Dkts. 39, 677.

declarations, which the Court described as providing evidence "beyond that" required for preliminary relief, Dkt. 69-5 at 49, remain in the record alongside the many exhibits that support the injunction as affirmed on appeal.  Accordingly, none of the evidence central to the injunction—including the declarations that go "*beyond*" the requirements for preliminary relief, *id.*—has "evaporated."  Mot. 2.  The 2020 record, even after the declaration withdrawals last month, robustly supports the injunction and precludes Defendants' request for vacatur.  *See* Mot. 8, 18.

Third, Defendants' motion is irreconcilable with the new discovery record they cite, including the most recent Receiver reports.  *See* Mot. 17.  Their motion focuses on two depositions they view as corroborating their failed injunction defenses.  *Id.* at 11–13.  But Defendants cannot relitigate these defenses as a basis for modifying the injunction.  And even if they could, these depositions accord with the original injunction record, *see, e.g., id*. at 13, and the current record reconfirms every injunction factor Defendants now challenge.  It includes a signed confession from one of Defendants' co-conspirators, inculpatory audio recordings, new bank and business records, and receivership reports that confirm Defendants' ongoing contempt of this Court's orders.  This evidence independently precludes the relief Defendants seek, and further rebuts their claim that the injunction "turns out to have been based on nothing more than 'water cooler' gossip."  Mot. 2.

For all of these reasons, modifying the injunction would be improper and also inequitable.  Defendants have defied the injunction's anti-dissipation and security provisions since the day they were entered.  The Court gave them over a year to justify this non-compliance.  And it held them in contempt and appointed a receiver only after they repeatedly violated its rulings and disposed of more than $140 million in assets without posting a penny of the judgment security the Fourth Circuit affirmed.  The Receiver has since confirmed this and other misconduct, Dkts. 702, 768, and endeavored to "avoid [asset] dissipation" and progress "forthcoming transactions" that could generate millions of dollars that could be used to post some security.  Dkts. 768, 702, 702-1.

These Court-ordered outcomes are precisely what Defendants' motion now seeks to avoid based on record developments they engineered in order to challenge the injunction before the Receiver completes his work.  For example, Defendants cite their low "cash balances" as proof that Amazon will not be "irreparably harmed if the injunction is vacated."  Mot. 16–17.  But as the Receiver's latest report confirms, Defendants manufactured these "low balances" by squandering millions of dollars on luxury personal expenses after the entry of the injunction and prior to the Receiver's appointment, Dkt. 702, and have since "threatened" and obstructed his efforts to generate new asset "value" that could be used to satisfy the Court's orders, Dkt. 768.[4]  The record likewise confirms that Defendants solicited the declaration withdrawals and deposition testimony referenced in their motion to recast issues they litigated and lost in 2020 as "new" developments that require review before the Receiver generates funds that could be used to "preserve th[is] court's ability to render a meaningful judgment on the merits."  Dkt. 318 at 20–21.

Rewarding such misconduct would violate the appellate mandate as well as controlling law and equitable principles.  Accordingly, the Court should deny Defendants' motion.

## BACKGROUND

This case has a lengthy and complex history that is addressed here only as relevant to Defendants' current motion.  The facts of Defendants' conspiracy are set out in greater detail in Amazon's complaint and prior submissions, *see* Dkt. 765; *see also*, *e.g.*, Dkts. 10, 12, 41, 43, 46, 59, 150, as well as related court orders and opinions.  Dkts. 99, 318.

### A.    Preliminary Injunction Record

The following background is directed primarily to Defendants' claim that Amazon's recent withdrawal of certain 2020 submissions, combined with "new" deposition testimony, means "there

---

[4]  Against this backdrop, the motion amounts to an argument that "Amazon will not be irreparably harmed if the injunction is vacated," Mot. 17, because Defendants refused to comply with it.

is no longer a sufficient evidentiary basis to support the injunction." Mot. 2, 8–10. The volumi-nous injunction record forecloses this claim and Defendants' related assertion that the injunction "turns out to have been based on nothing more than 'water-cooler gossip.'" *Id.* at 2.

*Amazon's 2020 Injunction Filings*. Amazon filed its complaint and request for prelimi-nary injunctive relief in April 2020. These pleadings addressed a fraud and kickback scheme that Defendants and their co-conspirators used to obtain tens of millions of dollars in illicit proceeds on more than $500 million of Amazon development projects in this District. Defendants are a Colorado real estate development company (Northstar) and its CEO (Watson). Dkt. 99. Begin-ning in 2017, these Defendants cultivated a relationship with two Amazon real estate transaction managers—co-defendants Carleton Nelson and Casey Kirschner, *id.*—who steered transactions to Defendants in exchange for undisclosed kickback payments, Dkts. 10–12, 41–46, 57, 68–69, 84–85, 100, 150, 191, 210–218, 231, 256, 285–86, 291, 308, 330.

Amazon learned of the scheme after receiving tips from former Northstar executives Danny Mulcahy and Timothy Lorman. *See* Dkt. 10 at 1–3, 9. Amazon promptly began an investigation that uncovered extensive additional evidence of the scheme, which Amazon shared with law en-forcement. *Id.* Federal authorities opened a criminal investigation into Defendants' conduct and executed search warrants against Watson and Northstar in early April 2020. *Id.*; Dkt. 106-1. The day the FBI executed the warrants, Watson sent an e-mail to dozens of contacts threatening to obstruct the ongoing investigations and demonstrating an imminent risk of irreparable harm to Amazon's confidential information and to assets in which Amazon had an equitable interest. Dkt. 106-1. Amazon responded by filing this action and obtaining a temporary restraining order, which was later converted to the preliminary injunction Defendants now seek to vacate.

Amazon's initial complaint and petition for preliminary relief were accompanied by a ver-

ification and declaration from Amazon's outside counsel, as well as documentary evidence corroborating Amazon's claims.  Dkts. 1, 12 & Exs. 1–41.  The attorneys who signed the submissions were familiar with the alleged facts based on their investigation and review of documents known or provided to Amazon.  *See* Dkts. 1, 12.  That knowledge was sufficient for preliminary relief, which may be based on hearsay.[5]  However, the submissions included form language on "personal knowledge," Dkts. 1, 12, that Defendants challenged in 2020, Dkt. 39, and seek to relitigate again now, Mot. 1–11.

***Defendants' 2020 Opposition.***  As relevant here, Defendants opposed the injunction by expressly and repeatedly contending that, "[a]lthough [Amazon's complaint was] labeled 'verified,' the only affidavits submitted in support of [the] Complaint were from a Gibson Dunn associate with no first-hand knowledge of any pertinent fact."  Dkt. 39, at 1–2; *see also id.* at 8, 14–5 (similar).  Ironically, Defendants' own brief was supported by an outside counsel declaration that contained the same mix of "personal knowledge" and "information and belief" language that Amazon's outside counsel used.  Dkt. 40.[6]  But since Amazon had the burden on the 2020 motion, it responded to Defendants' challenge by filing additional documentary evidence,[7] as well as three

---

[5] Amazon has addressed this issue at length in prior filings, *see* Dkts. 588, 627; *see also* Dkt. 760, and does so in additional detail *infra*.

[6] Further—*unlike* Amazon's filings—the 2020 declarations from Defendants' outside counsel used "personal knowledge" language to attest to several facts that *did* turn out to be false.  *See* Dkt. 40 (attesting to a transcript of an audio recording that omitted inculpatory language, and to incomplete and misleading facts and exhibits about Defendants' role in the fraud scheme); Dkt. 82-1 (attesting to payment flows contradicted by the contempt and receivership records).  Defendants' remaining 2020 exhibits likewise evidenced Defendants' conspiracy with Casey Kirschner and his brother to conceal kickback payments from Amazon.  Dkt. 41 at 4–5, 10–12.

[7] This evidence included an original version of an audio recording Watson directed Lorman to make, and that Defendants purported to attach to their opposition in transcript form.  However, the original file revealed that Defendants' transcript omitted inculpatory references to former Amazon manager (and co-conspirator) Casey Kirschner.  Dkt. 41 at 11.

new declarations from Amazon investigation counsel Matthew Doden, cooperating Northstar executive Tim Lorman, and Luke Gilpin (Northstar's equity partner on the deals at issue in this suit). Dkt. 41. These declarations, which the Court described as providing "direct" and "powerful" evidence "beyond that which is necessary" for preliminary relief, Dkt. 69-5 at 49, corroborated Amazon's allegations and evidence in support of the injunction.[8] *See* Dkts. 43, 46, 59.

*2020 Injunction Hearing and Order*. After the parties completed their voluminous record submissions, *see* Dkts. 30, 39, 40, 41–46, the Court held a hearing at which it granted the injunction based on Amazon's documentary evidence and the "declarations now in place" from Messrs. Doden, Lorman, and Gilpin. Dkt. 69-5 at 49–50. Then, after accommodating Defendants' requests for certain interim relief,[9] it entered the injunction, Dkt. 57, and issued a detailed opinion relating it to the record evidence on each of the Rule 65 and *Winter* factors. Dkt. 99. The opinion rejected Defendants' "weight" and procedural challenges to Amazon's evidence, as well as their arguments that Watson had no knowing or meaningful role in Defendants' fraudulent scheme. *Id.* at 8–11. In support of these rulings, the opinion cited extensive evidence "suggest[ing] Watson's direct involvement in the conspiracy," including (1) the recorded conversations addressed in the parties' briefs,[10] (2) the timing and terms of the 2018 "referral agreement" with the Villanova Trust, and (3) additional documentary evidence such as "email correspondence, and files recovered from co-

---

[8] In submitting the new declarations, Amazon explained that preliminary relief could be based on documents and hearsay, but that it was nonetheless providing "confirmatory affidavits" by three additional witnesses who had personal knowledge of certain investigation facts and Defendants' business activities. Dkt. 41 at 2–3.

[9] Before entering the injunction, the Court granted Defendants' requests for a grace period to obtain a bond, Dkt. 49, and modified the injunction to allow different methods of posting the $21,250,000 in judgment security established by the injunction evidence, Dkt. 57 ¶ 2.

[10] The Court agreed with Amazon that at least one reference to Casey Kirschner was "conspicuously omitted" from Defendants' version of the transcript, and that the Court had independently confirmed the omission based on the claimed audio file of the recording. Dkt. 99 at 9 & n.6.

conspirators' computers." *Id.* at 9–10.  It then explained that this evidence was sufficient to show Amazon's likelihood of success against the Watson Defendants because "'[o]ne can be a [RICO] conspirator by agreeing to facilitate only some of the acts leading to the substantive offense,'" *id.* at 10 (quoting *Salinas v. United States*, 522 U.S. 52, 65 (1997)), and for the same reason be held liable on related fraud, contract, and equitable claims, *id.* at 11–14.

*Fourth Circuit Appeal.*  Defendants appealed the injunction on all of the grounds they seek to relitigate now.  *See* Appellants' Br., *Amazon.com, Inc. v. WDC Holdings LLC*, No. 20-1743 (4th Cir. Aug. 27, 2020) ("Appellants' Br.") (arguing that Amazon failed to show that it was likely to succeed on the merits of its claims, failed to justify the amount of judgment security the Court imposed, failed to show that equitable and public interest factors favored the injunction, and failed to submit proper witness declarations).  They attacked the Gilpin, Lorman, and Doden affidavits at particular length, arguing that the Court abused its discretion by even considering them.  *Id.* at 22–24; Reply Br. 26, *Amazon.com, Inc. v. WDC Holdings LLC*, No. 20-1743 (4th Cir. Sept. 28, 2020).  They also contended that Amazon's submissions were not enough to "connect Watson to" the conduct giving rise to Amazon's claims.  Appellants' Br. 35–36.  And they argued that the balance of harms favored them rather than Amazon.  *See, e.g.*, *id.* at 20–21.

The Fourth Circuit unanimously rejected all of these arguments and affirmed the injunction.  *Amazon.com, Inc. v. WDC Holdings LLC*, 2021 WL 3878403, at *9 (4th Cir. Aug. 31, 2021) (Dkt. 318).  It began by noting that Amazon's complaint had been "filed with hundreds of pages of supporting evidence" in addition to multiple declarations from investigation counsel and cooperating witnesses.  *Id.* at *3.  It then expressly rejected Defendants' attacks on this evidence, *id.* at *3 n.1, and independently credited Amazon's submissions of, "*inter alia*, business files, wire records, voice recordings, and recent public and incriminating statements by Defendants," *id.* at *8.  Based on this evidence, it held that Amazon had established a sufficient "link between the amount

secured by the injunction and the equitable relief" Amazon sought on its merits claims.  *Id.* at *7.
The Fourth Circuit also expressly affirmed this Court's findings on the remaining *Winter* factors,
holding that the injunction was necessary to prevent "irreparable harm" from the "'dissipation of
assets' and Northstar's conceded 'likelihood of insolvency.'"  *Id.* at *8.  In so doing, the Fourth
Circuit rejected Defendants' balance-of-harm arguments as "illogical" and contrary to the record,
admonished them for impugning the integrity of this Court, and expressly held that the public
interest would be served by the injunction and specifically its $21.25 million security provision.
*Id.* at *9.  The mandate on this order issued on September 22, 2021.  *See* Dkt. 333.

### B.    Post-Injunction Proceedings

***Unauthorized Asset Dissipations and Discovery Violations.***  This Court denied Defend-
ants' motion to stay the injunction pending appeal.  Dkt. 137 at 3–5 (finding that a stay would "risk
any award being payable" on final judgment because Defendants would dispose of "significant
assets" in the interim).  But Defendants defied the anti-dissipation and security provisions anyway.
In July 2020, Amazon moved for an order to show cause why Defendants should not be held in
contempt.  Dkts. 67, 68, 84.  Defendants opposed on the ground that they "made all reasonable
efforts to comply and/or compliance is impossible" because the injunction is "baseless" and "man-
ifestly unfair."  Dkt. 82 at 9, 1 n.1, 2.  The Court responded by giving Defendants over a year to
substantiate these defenses in discovery.  *See* Dkt. 122 at 26:10–28:4; Dkt. 95.  But they failed to
do so, and were repeatedly sanctioned under Rule 37 for violating the Court's discovery orders.
Dkts. 190, 193-9, 231.  In the meantime, Defendants continued surreptitiously disposing of assets
they admit were worth over $140 million.  Dkts. 284 at 9; 286-13 at 2; 310-2, 310-3.  This mis-
conduct led to further Rule 37 sanctions in July and September of last year, Dkts. 302, 330, and
Defendants' belated (and unsuccessful) motion to "clarify" that their asset dispositions were out-
side the scope of the injunction's anti-dissipation provisions.  *See* Dkts. 343, 361, 412.

***Contempt Proceedings.***  In October 2021, Amazon opposed Defendants' meritless "clarification" request and moved to hold Defendants in civil contempt of the injunction's as affirmed on appeal.  Dkts. 348, 412.  The Court granted Amazon's motion based on extensive record evidence of Defendants' "willful and knowing failure to comply with" the judgment security and anti-dissipation provisions, but did not impose the preclusion or monetary sanctions this Court's precedents allow.  Dkt. 413 at 1–2.  Instead, it appointed a receiver to "prevent[] further irreparable harm to Plaintiffs and coerc[e] Defendants' compliance with the Court's Injunction."  *Id*.

***Receivership.***  The Court appointed the Receiver on November 23, 2021.  Dkt. 433.  Within two weeks, the Receiver discovered that Watson was preparing to sell his primary residence for $8.5 million in violation of the Court's orders, and that Watson had executed unauthorized liens on the home in favor of his attorneys and a personal creditor just days before the Court entered its contempt judgment.  Dkt. 495 ¶ 8.  When the Receiver opposed these unauthorized transactions, Watson sought to *accelerate* their closing to prefer these personal creditors before the Receiver could block this dissipation of cash proceeds.  Dkt. 440 ¶ 2.  This misconduct forced the Receiver to file an emergency motion, which this Court granted via an order confirming Defendants' violation of the Receivership order. Dkts. 440, 446.  The liens remain contested.  Dkts. 702, 768.

### C.   Recent Developments

Shortly after the Court appointed the Receiver, Defendants moved to disqualify the presiding judge and used discovery requests to manufacture the record "developments" in their motion.

***Declaration Withdrawals***.  Defendants' motion relies heavily on the Court's April 8 order allowing Amazon to withdraw certain outside counsel declarations it filed with Amazon's 2020 complaints and request for injunctive relief.  But it fails to mention that the order endorsed the withdrawals as a way of resolving *Defendants'* improper discovery requests, and that Amazon volunteered this relief precisely because it would *not* affect the injunction.  Dkts. 588, 627, 760.

10

The discovery requests in issue sought prohibited deposition testimony from Amazon's outside counsel on the grounds that they filed attestations in support of Amazon's claims in this case.  *See* Dkt. 623.  Disregarding their prior admission that these lawyers had "no first-hand knowledge of any pertinent fact," Dkt. 39 at 1–2, Defendants argued this spring that the "personal knowledge" boilerplate in these lawyers' 2020 attestations required their depositions on non-privileged case facts *and* the privileged communications behind them.  Dkts. 606, 615.

To resolve these improper requests consistent with Defendants' discovery rights, Amazon volunteered to withdraw the outside counsel attestations and substitute them with company testimony Defendants could explore in a Rule 30(b) deposition.  Dkt. 588.  In doing so, Amazon *never* stated (much less "admitted") that the withdrawn attestations were "false."  Mot. 1–3, 6, 9, 11, 13, 18 (making this allegation over a dozen times without a single cite to such language).  Amazon simply observed that the "personal knowledge" language in the relevant attestations was "erroneous insofar as it could be read to suggest knowledge beyond that derived from the declarants' role on the litigation team investigating this case."  Dkt. 760 at 8 (citing Dkts. 588, 627).  Amazon's counsel then apologized for any confusion on this point, and asked to "withdraw and substitute the relevant attestations with company testimony to resolve Defendants' deposition requests."  *Id*.

As Amazon's motion and reply explained, this ministerial relief would "*not impact*" the injunction or related orders under controlling law, Dkt. 627 at 4–9, which did "not require verification" of Amazon's complaints even as a basis "for *ex parte* emergency relief under Federal Rule of Civil Procedure 65(b)," and did "not require declarations from individuals with 'personal knowledge'" in any form, Dkts. 588 at 4 (citing authorities), 627 at 2 (same).

Judge Buchanan granted this relief on April 8, Dkt. 648, and Amazon filed its substitute declaration in accordance with the Court's ruling, Dkt. 701.  Defendants have withdrawn their objections to Judge Buchanan's decision allowing Amazon to file that declaration.  Dkt. 778.  And

they do not argue that merely referencing "personal knowledge" or competence to "testify" in an outside counsel declaration waives privileges or is inherently improper, presumably because this language appears in dozens of their own outside counsel declarations, *e.g.*, Dkts. 40, 82-1, 292-1, 525-1, as well as outside counsel declarations in other preliminary injunction cases. Ex. 1. Their motion simply seeks to recast Amazon's withdrawals as an "admission" that the injunction was based on "false" or "misleading" evidence. Mot. 1–3, 18. But the record contradicts this mischaracterization of Amazon's filings, Dkts. 588, 627, and the Court's April 8 order, Dkt. 648.

**Discovery from Defendants.** Defendants' motion similarly distorts the record in citing a handful of third-party deposition quotes as proof that the injunction "is based on little more than unverified allegations in the pleadings." Mot. 16–17. This argument is not supported by the cited testimony, and ignores extensive new discovery from other sources that rebuts Defendants' claim that there is a "dearth of evidence against the Watson Defendants." *See* Mot. 2. Although Watson and Northstar have yet to be deposed, several of their co-conspirators have invoked the Fifth Amendment in response to the kickback payments Northstar admittedly made to Villanova Trust. Exs. 2–4. And discovery taken since the injunction was granted has also revealed additional evidence of their involvement in the fraudulent scheme, including:

-  *See* Dkt. 619-1 at 36;

- An audio recording in which co-defendant and former Amazon manager Carl Nelson states that the "*first couple distributions [he and Casey Kirschner] took" on the Northstar transactions came "through Casey's brother" at the Villanova Trust*, which was "some sketchy a\*\* sh\*\*," Dkt. 212-13 at 8–9, and that he (Nelson) had "taken 960 total" and Kirschner "eight something" from "all Brian [Watson's] fees," *id.* at 30;

- An audio recording in which Watson agrees that "first priorities should be Casey and Carl," the former Amazon managers who now admit to receiving kickback payments on the Northstar deals in suit. Dkt. 212-15 at 21;

- █████████████████████████████████████████████████████████████████████ Dkt. 310-16 at 4;

- Emails between Defendants and co-defendant Casey Kirschner in which Casey improperly provides Defendants with "RFP" information on Amazon deals.  Dkt. 287-6 at 58–59; and

- An internal December 2019 email in which Defendants identify co-defendant "Casey Kirschner" as the "referral partner" on the Amazon deals in suit.  Dkt. 351-3.

*Receiver Reports and Upcoming Transactions*.  Defendants' claim that the Receiver's work supports their request to vacate the injunction, Mot. 3, 17–18, is similarly belied by the record.  The report filed on April 27 (two days after Defendants' motion) details their asset dispositions and other misconduct in violation of the Court's injunction and related orders.  Dkts. 702 ¶ 6, 702-3.  Notably, the report states that from June 2020 through November 2021—the same period in which Defendants said it was "impossible" to post any judgment security—Watson's personal finances "reflect[ed] a high level of spending on luxury and lifestyle items," including millions of dollars on trips to Aspen and Hawaii, luxury car payments, high-end shopping, artwork and home furnishings, and preferential transfers to his lawyers and other personal creditors.  *Id.* ¶ 15.[11]  The report also states that Northstar's financial activity "reflect[s] a declining business" whose assets continue to be used for Watson's personal benefit.  *Id.* ¶ 14.  *See generally* Dkt. 702-3.

The Receiver's April report also belies Defendants' claim that they have "complied with the receiver's requests" and related court orders.  Mot. 5.  The report instead details ongoing efforts by Defendants and their counsel to dispose of assets in violation of this Court's rulings, as well as ongoing friction over the Receiver's attempts to manage expenses—including Watson's claimed personal expenses of over $36,000 a month—in accordance with the Court's directives.  Dkt. 702

---

[11]  Between June 2020 and November 2021, Watson spent approximately $3 million on personal debts and expenses, including $214,000 on luxury travel and shopping (Aspen, Louis Vuitton), nearly $400,000 on home decor and maintenance, and $76,000 on car leases.  Dkt. 702-3 at 5.

¶ 19.  Further, and critically, the Receiver's most recent submission states that Defendants continue to make "threats" against the Receiver and his team, and that Defendants are engaged in efforts to dispose of assets "subject to the Injunction" and disrupt "significant potential sources of future cash recoveries over the next three to six months."  Dkt. 702 ¶¶ 8, 19–20, 26.  Based on this record, the submission warns that dissolving the receivership would preclude a "meaningful contribution toward the Injunction."  *Id.* ¶ 8; *see also* Dkt. 768.

## LEGAL STANDARD

Although Defendants gloss over the legal standard that controls their motion, their own cases confirm that a request to vacate or modify a preliminary injunction is governed by Federal Rule of Civil Procedure 60(b)."  *Thompson v. U.S. Dep't of Hous. & Urb. Dev.*, 404 F.3d 821, 826 (4th Cir. 2005); *see also Centennial*, 433 F. Supp. 2d at 734.[12]  That rule does not require Amazon to relitigate the injunction in the first instance as Defendants incorrectly suggest.  Mot. 13.  It requires *Defendants* to show changed circumstances that *cannot* be based on "'any aspects of the present case other than those which developed subsequent to the granting of the preliminary injunction.'"  *Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 60 F.3d 823 (4th Cir. 1995) (Table).  Further, and critically, these circumstances may not reprise or "relitigate arguments 'that have already been considered by the district court in its initial decision.'"  *Centennial*, 433 F. Supp. 2d at 734 (quoting *Sprint Commc'ns Co. L.P. v. Cat Commc'ns Intern., Inc.*, 335 F.3d 235, 242 (3d Cir. 2003)).

This standard for injunction modification "precludes the Court from considering old issues—whether or not they have been amplified by new 'facts' or refashioned arguments—that

---

[12] The other opinion Defendants cite for vacatur is Justice Ginsburg's *dissent* from the Supreme Court's decision in *Winter*, which has no legal force and comes from a case in which even the majority addressed only the test for *granting* injunctions, not *vacating* them.  *See* Mot. 7 (quoting *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 51 (2008) (Ginsburg, J., dissenting)).

could have been presented before the injunction issued." *Id.* at 734–35. That restriction is "a necessary concomitant to the Fourth Circuit's rule with respect to Rule 59(e) that a party may not relitigate old matters, nor present new evidence or novel legal theories that could have been raised" before the injunction was entered. *Id.*; *see also, e.g.*, *JLM Couture, Inc. v. Gutman*, 2021 WL 2227205, at *3 (S.D.N.Y. June 2, 2021) (emphasizing that a party seeking to vacate a preliminary injunction cannot simply "relitigate on a fuller record preliminary injunction issues already decided," and holding that the movant could not rely on proffered facts that "were known or available to her prior to . . . the date on which the Preliminary Injunction Order was issued").[13] The foregoing principles apply with special force where, as here, an injunction has been affirmed on appeal. In such cases, any request to modify the injunction must also satisfy the mandate rule, which "forecloses litigation of issues decided by the district court but [lost or] foregone on appeal or otherwise waived." *Volvo Trademark Holding Akitebolaget v. Clark Machinery Co.*, 510 F.3d 474, 481 (4th Cir. 2007) (quoting *United States v. Bell*, 5 F.3d 64, 66 (4th Cir. 1993)). Defendants cannot meet any of these standards for relief from the orders they challenge.

## ARGUMENT

Defendants' motion says that Amazon's withdrawal of certain 2020 attestations, combined with "new" deposition testimony, shows that Amazon's "allegations are based on little more than an unverified complaint based entirely on water-cooler gossip," which "is patently insufficient to

---

[13] *See also, e.g.*, *AngioDynamics, Inc. v. Biolitec AG*, 780 F.3d 420, 424–25 (1st Cir. 2015) (party seeking vacatur "must demonstrate in a timely motion that 'exceptional circumstances exist, favoring extraordinary relief,'" which movant did not do by proffering "new" evidence of "virtually the same [expert] opinion" previously "offered" and "rejected"); *Walker v. Mem'l Health Sys. of E. Texas*, 2017 WL 4506801, at *5 (E.D. Tex. June 20, 2017) (similar, noting that "[p]ermitting the parties to raise new arguments that previously could have been raised but were not would disserve the ends of justice"); *Trs. of Carpenters' Health & Welfare Tr. Fund of St. Louis v. Brunkhorst*, 2005 WL 8173708, at *2 (S.D. Ill. Sept. 13, 2005) (same where moving party merely "t[ook] umbrage with the Court's ruling, rehashe[d] old arguments and ma[de] new arguments that should have been raised previously" and did not warrant the "extraordinary remedy" of Rule 60(b) relief).

support the extraordinary remedy of injunctive relief."  Mot. 13.  They are wrong on all counts.

Although the withdrawals and deposition testimony they cite are "new" in the sense that Defend-

ants solicited them in recent discovery, the issues they raise with respect to the injunction simply

rehash arguments Defendants litigated in 2020 about how much "weight" the Court should have

given to evidence Amazon filed with its original pleadings.  Defendants' own cases hold that such

issues are not grounds for modifying the injunction as a matter of law.  Further, and regardless, the

injunction and related orders are supported by a wealth of independent evidence Defendants do

not refute, and preclude their claims on the standard in their own motion.  *See* Mot. 8, 13, 18.

## I.   THE DISCOVERY DEVELOPMENTS IN DEFENDANTS' MOTION DO NOT SUPPORT MODIFYING THE INJUNCTION OR RELATED ORDERS

Defendants say the recent declaration withdrawals and depositions addressed in their mo-

tion show that there is no longer "sufficient . . . support" for requiring them to "escrow over $25

million."  Mot. 1, 9.  This argument is meritless.  As a threshold matter, the injunction does *not*

require Defendants to "escrow" "over" or "approximately $25 million," much less on any ground

affected by the developments they cite.  *Id.* at 1, 17.  It requires them to secure, through the bond

and other means they proposed in 2020, $21.25 million in unjust proceeds based on evidence De-

fendants litigated two years ago, and their "new" developments do not change.  Dkt. 57 ¶ 2.

### A.   The Court's April 8 Order Does Not Support Injunction Relief

According to Defendants, this Court's April 8 order granting Amazon's request to with-

draw certain attestations, Dkt. 468, supports their motion because the remaining record is not "suf-

ficient" to support the injunction.  Mot. 13.  This claim fails for several reasons.

First, it fails as a matter of law because its starting premise—that the withdrawn attestations

supplied facts necessary to the injunction—was fully litigated in 2020 and cannot support Rule 60

relief now.  *See, e.g.*, *Centennial*, 433 F. Supp. 2d at 736 (denying vacatur motion that "only at-

tempt[ed] to rehash old arguments [and] propound novel legal theories that could have been raised

prior to issuance of the preliminary injunction").  As Amazon explained in the motion Judge Bu-

chanan granted on April 8, the withdrawn attestations were not necessary for *ex parte* relief under

Rule 65, or for a preliminary injunction under circuit law.  Dkt. 588, 627 at 4–6 (citing Fed. R.

Civ. P. 65(b); 28 U.S.C. § 1746(2); *United States v. 8 Gilcrease Lane Quincy Fla. 32351*, 587 F.

Supp. 2d 133, 139 (D.D.C. 2008); *G.G. ex rel. Grimm v. Gloucester Cty. Sch. Bd.*, 822 F.3d 709,

725 (4th Cir. 2016)).  Nor did anyone treat them as such for precisely the reason Defendants noted

in May 2020:  "[a]lthough labeled 'verified,' the only affidavits submitted in support of Plaintiffs'

[Injunction] Complaint were from a Gibson Dunn associate with no first-hand knowledge of any

pertinent fact."  Dkt. 39 at 1–2.[14]

On May 18, 2020, Amazon responded to this observation by explaining that preliminary

relief could be based on hearsay,[15] and also filing the three 2020 declarations (from Messrs. Doden,

Lorman, Gilpin) it has *not* withdrawn.  Dkt. 41.  From that moment forward, the parties—like this

Court and the Fourth Circuit—litigated the injunction based on these declarations and the inde-

pendent documentary evidence that remains in the record.  *See* Dkt. 69-5 (granting injunction

based on "the declarations now in place"); Dkt. 99 at 3–10 (same, citing the Doden, Lorman, and

---

[14] *See also, e.g.*, *id.* at 2 (arguing that a "lack of actual evidence" should preclude preliminary injunctive relief); *id.* at 8 (arguing that the record "consists almost entirely on inadmissible evidence"); *id.* at 14 (arguing that "[t]he only evidence provided to the Court is inadmissible hearsay evidence and a declaration from a Gibson Dunn associate with no first-hand knowledge of any relevant fact"); *id.* at 14–15 (criticizing "information and belief" allegations as insufficient).

[15] This point is well settled.  *See, e.g., JTH Tax, Inc. v. Aime*, 2016 WL 4182743, at *5 (E.D. Va. Aug. 3, 2016) (granting preliminary injunction based on facts pled upon "information and belief"); *Synthes USA, LLC v. Davis*, 2017 WL 5972705, at *1 n.2 (D.S.C. Dec. 1, 2017) (same, noting that the Fourth Circuit has reversed district courts for concluding that "admissible evidence is the deciding factor" for preliminary relief); *Dominick & Dominick, Inc.*, 1990 WL 74547, at *1 (similar); *Couturier*, 572 F.3d at 1083 (court may rely on an "interested declaration of Plaintiffs' counsel and unverified client complaints" in granting preliminary relief); *Signature Flight Support Corp. v. Landow Aviation Ltd. P'ship*, 2009 WL 90849, at *2–3 (E.D. Va. Jan. 13, 2009) (denying motion to strike injunction affidavits that allegedly "include[d] hearsay, falsities, speculation, non-expert opinions, legal conclusions, and statements not based on declarants' personal knowledge").

Gilpin declarations, as well as "files recovered from" Kirschner's Amazon "computer[]"; "recorded conversations" and "transcripts" attached to Defendants' filings; the "2018 Villanova Trust" agreement; and "spreadsheets, wire transfer instructions, and emails exchanges" all "implicat[ing] Defendants in the alleged scheme"); Dkt. 319 (affirming the injunction).

For all of these reasons, the evidentiary issues Defendants raise with respect to the declaration withdrawals are "not new," and present "no changed circumstances" or other "basis for modifying the PI" as a matter of law. *Multi-Channel TV Cable Co*, 60 F.3d at 823; *Telesis Cmty. Credit Union v. Mantiff 1215 Statesville Hosp., LLC*, 2010 WL 892116, at *1 (W.D.N.C. Mar. 5, 2010) (similar). That is particularly true because the "weight" issues Defendants raised in 2020, Mot. 8, 19, were part of the record on appeal. Appellants' Br. 22–24, *Amazon.com, Inc. v. WDC Holdings LLC*, No. 20-1743 (4th Cir. Aug. 27, 2020) ("specifically" challenging this Court's decision to "rel[y] on the[] late-filed affidavits"). As noted, the appellate mandate rule "forecloses relitigation of issues *expressly or impliedly* decided by the appellate court." *Volvo*, 510 F.3d at 481 (quoting *Bell*, 5 F.3d at 66). And this rule, which is "a more powerful version of the law of the case doctrine," *Invention Submission Corp. v. Dudas*, 413 F.3d 411, 414 (4th Cir. 2005), can be disregarded only if "'(1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to the issue, or (3) the prior decision was clearly erroneous and would work manifest injustice.'" *Walker v. Kelly*, 589 F.3d 127, 137 (4th Cir. 2009) (quoting *United States v. Lentz*, 524 F.3d 501, 528 (4th Cir. 2008)). The declaration withdrawals present no such circumstances.

Second, even if the 2020 attestations were relevant to the injunction, their withdrawal does not leave only "unverified allegations" in support of the order. Mot. 9. The 2020 record alone is

replete with sufficient independent evidence, including the Doden, Lorman, and Gilpin declarations Amazon has *not* withdrawn, Dkt. 69-5 at 49,[16] and scores of documents this Court and the Fourth Circuit cited as independent support for the injunction.

Defendants' motion suggests the Court cannot consider this evidence without the withdrawn declarations. Mot. 10 (arguing that the only injunction evidence now before the Court is an "unverified complaint and three witness affidavits"). But there is no legal or factual basis for this claim. The documents themselves remain in the record. Dkts. 587, 588, 701. And Defendants cite no authority for disregarding them simply because Amazon withdrew certain attestations.[17] Nor could they, because courts have repeatedly rejected document-specific authentication requirements for preliminary injunctions. *See, e.g.*, *Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009) (granting motion based on "interested declaration of Plaintiffs' counsel and unverified client complaints"); *Moose Creek, Inc. v. Abercrombie & Fitch Co.*, 331 F. Supp. 2d 1214, 1224 n.4 (C.D. Cal. 2004) (overruling objection to documents that were not individually authenticated); *TechINT Sols. Grp., LLC v. Sasnett*, 2018 WL 4655752, at *5 (W.D. Va. Sept. 27, 2018) ("[A] district court . . . may look to, and indeed in appropriate circumstances rely on, hearsay or other inadmissible evidence when deciding whether a preliminary injunction is warranted." (quoting *G.G. ex rel. Grimm*, 822 F.3d at 725–26)). At most, the absence of sponsoring testimony could

---

[16]  Defendants' deposition-based challenges to the Doden, Lorman, and Gilpin testimony also fail for the reasons discussed in Section I.B below.

[17]  *See MercExchange, LLC v. eBay, Inc.*, 500 F. Supp. 556, 589–90 (E.D. Va. 2007) (concluding only that a declaration withdrawn due to the declarant's "impaired mental capacity" did not constitute "sufficient evidence" to support the plaintiff's contentions); *Dorval v. Barr*, 414 F. Supp. 3d 386, 389 (W.D.N.Y. 2019) (noting that immigration judge declined to review evidence attached to a removal petitioner's withdrawn bond motion); *Gardiner v. Walmart Inc.*, 2021 WL 2520103, at *11 (N.D. Cal. Mar. 5 2021) (stating only that when a party withdraws *a motion*, it cannot rely on a statement made in a declaration that supported the motion).

raise reliability questions that go to a document's evidentiary weight. But that is not an issue here because Defendants contested the weight of the 2020 injunction evidence through appeal and recent merits discovery, and have not rebutted it on reliability or other grounds.[18]

Third, even if the documents underlying the injunction required verification, the company declaration Amazon filed as a substitute for the withdrawn 2020 attestations provides the necessary support. Dkt. 701. The Court's April 8 order allowed Amazon to file this declaration because it would "provide the same information that was in the declarations" Amazon withdrew. Dkt. 675-1 at 11:4–8. That is exactly what it does. *See* Dkt. 701 ¶ 3 (expressly confirming under penalty of perjury that all of the documents introduced by the (now-withdrawn) 2020 outside counsel declarations "are true and correct copies of documents [that were] possessed by or known to Amazon and its officers or employees at the time they were filed"). Although Defendants originally opposed this declaration, Dkt. 674, they have since withdrawn their objections to it, Dkt. 778. And the footnote in their motion challenging the form of its attestation—and specifically its lack of "personal knowledge" language, Mot. 9 n.3—contains no citation because it is wrong. *See* Section II.B *infra*. The company declaration verifies the injunction record in accordance with Rule 65 and the federal statute (28 U.S.C. § 1746(2)) that governs its attestation requirement. Dkt. 627 at 4–5.

**B.     The Depositions Defendants Cite Also Do Not Undermine the Injunction**

Defendants next argue that two recent depositions (of former Northstar executives cooperating with Amazon) "reveal[] that *no one* possesses personal knowledge of Brian Watson's in-

---

[18] Defendants' motion makes a passing reference to the fact that Amazon produced only PDF copies of a recovered laptop file the Court relied upon to determine the amount of judgment security. Mot. 10. This formatting argument cannot justify modification of the injunction now, because Defendants failed to raise it when this Court and the Fourth Circuit expressly relied on the document to grant the injunction. Further, and regardless, Amazon has now produced a native version of the document with metadata that confirms its authenticity. *See* Sterling Decl. ¶ 6 & Ex. 5.

volvement in the alleged fraudulent scheme." Mot. 2. They then argue that this purported revelation requires dissolution of the injunction because it "severely undercut[s] the[] evidentiary value" of the deponents' 2020 prior declarations. These arguments fail for several reasons.

First, they all concern challenges to 2020 evidence of Defendants' fraud that are barred by Rule 60(b) and the appellate mandate. *See Telesis Cmty.*, 2010 WL 892116, at *1; *Centennial*, 433 F. Supp. 2d at 736.[19] As detailed above, Defendants vigorously contested the declarations, as well as Watson's alleged ignorance of the fraud scheme, in 2020. Dkt. 99 at 8–11; *Amazon.com, Inc.*, 2021 WL 3878403, at *1. Accordingly, Defendants cannot use recent deposition testimony on the same issues to seek Rule 60(b) relief now. *E.g.*, *Centennial*, 433 F. Supp. 2d at 734–36; *Walker*, 589 F.3d at 137; *Bell*, 5 F.3d at 66; *accord, e.g.*, *AngioDynamics, Inc. v. Biolitec AG*, 780 F.3d 420, 425 (1st Cir. 2015) (affirming denial of vacatur motion because "new" evidence "hardly provide[d] conclusive proof" of defendants' contentions).

Second, the deposition testimony Defendants cite from two third party witnesses does not "show[]" that "no one" has direct knowledge of Defendants' role in the fraud, Mot. 2, 11. There are many witnesses who *do* have direct knowledge of that role, including Watson himself and co-conspirators who have yet to testify (for scheduling or Fifth Amendment reasons).

Third, the deposition testimony Defendants cite would not undermine the injunction even if it "show[ed]" that Amazon's claims were based solely on record documents and "water-cooler gossip." Mot. 11, 13. As Defendants' own cases explain, Mot. 8, such evidence *can* "support the extraordinary remedy of injunctive relief." Mot. 13 (citing *Medispa, LLC v. Transformations, Inc.*, 999 F. Supp. 2d 862, 868–69 (S.D.W. Va. 2014) ("hearsay" and other "inadmissible evidence" is

---

[19]  The deposition testimony Defendants cite, Mot. 11-13, does not actually reveal anything substantively "new" because neither Mr. Lorman's nor Mr. Doden's declarations purported to speak to Watson's subjective intent or knowledge of certain kickback payments. Dkts. 43, Dkt. 59. The same is true of Mr. Gilpin's attestations, Dkt. 46, and Mr. Mulcahy did not testify in 2020.

acceptable support for a preliminary injunction)); *accord TechINT*, 2018 WL 4655752, at *5 (same, quoting *G.G. ex rel. Grimm*, 822 F.3d at 725–26); *Dominick & Dominick, Inc. v. Inv. Servs. & Sav. Corp.*, 1990 WL 74547, at *1–2 (S.D.N.Y. May 30, 1990) (denying vacatur based on argument that injunction affidavit "was not made upon [the witness]'s personal knowledge").  And circumstantial evidence can also support merits liability on all the claims at issue here.  Indeed, in actions like this, fraud "may"—and often "can only be"—"proven by circumstantial evidence." *E.g.*, *Hartford Acc. & Indem. Co. v. Cox*, 1988 WL 241123, at *3 (E.D. Va. June 29, 1988); *Kay Co. LLC v. EQT Prod. Co.*, 2018 WL 11411389, at *10 (N.D.W. Va. Nov. 1, 2018) ("In no class of cases does circumstantial evidence play a more active and appropriate part than in fraud cases.").

For all of these reasons, Defendants' argument that the Court must vacate the injunction based on the "new" declaration withdrawals and depositions they cite, Mot. 1-11, is a red herring. All of these developments relate to the injunction only with respect to evidentiary issues Defendants litigated in 2020.  Accordingly, they cannot support Rule 60 relief even  "as amplified by new 'facts' or refashioned arguments."  *Centennial*, 433 F. Supp. 2d at 734.

## II.   THE RECORD PROVIDES GREATER SUPPORT FOR THE INJUNCTION NOW THAN IN 2020

Unable to support their claims under Rule 60(b) or the mandate rule, Defendants repackage them as an argument that "evidence based on hearsay and 'water-cooler' gossip does not satisfy the *Winter* factors."  Mot. 14 (cleaned up) (citing *Winter v. Nat. Res. Def. Council*, 555 U.S. 7 (2008)).  They then assert that Amazon cannot meet this test on the current record.  *Id.* at 14–20.

This entire line of argument fails, first and foremost, because Amazon does *not* need to relitigate the *Winter* factors to defeat Defendants' motion to vacate the injunction.  *See, e.g., Teledyne Techs. Inc. v. Shekar*, 831 F.3d 936, 940 (7th Cir. 2016) (rejecting motion to vacate because, *inter alia*, the appellant's "argument is essentially that the preliminary injunction should never

have been entered in the first place," which is not a proper ground for vacatur).  Because the injunction has been entered and affirmed on appeal, the burden rests solely on Defendants to prove the type of extraordinary development that would satisfy the mandate rule.  *See Walker*, 589 F.3d at 137 (requiring a "trial," a change in "controlling legal authority," or proof of "clear[] error[]" that would work "manifest injustice").  That said, even if Defendants' motion required relitigation of the *Winter* factors, the current record would easily satisfy them.

### A.     The Current Record Strongly Supports Amazon's Likelihood of Success

Although substantial discovery remains to be taken (including Defendants' depositions), record support for Amazon's claims is stronger now than in 2020.  *See supra* pp. 12–14.  And Defendants' only contrary arguments, Mot. 14–16, fail as a matter of law.  They start with the proposition that *Winter's* "likelihood of success" factor sets a "high bar" that "requires the plaintiff to show more than 'a grave or serious question for litigation.'"  *Id.* at 14.  They then say the current record fails this test because, after two years of litigation, it does not contain "compelling evidence" that Defendants "paid Villanova Trust with the intention that this money be paid to Mr. Kirschner and Mr. Nelson in exchange for receiving contracts with Amazon."  *Id.* at 15.  Accordingly, and because they "vehemently deny" such intent, they say this scienter issue creates an "inescapable factual question which can only be decided at trial," and thus "precludes a finding that Plaintiffs are likely to succeed on the merits" under *Winter*.  *Id.* at 14–15.  This argument fails at every turn.

To start, it amounts to a claim that preliminary injunctions are improper in any case that goes to trial.  This argument makes no sense and violates circuit law, including the appellate mandate affirming this Court's rejection of precisely the same "intent" and absence-of-evidence arguments Defendants reassert now.  Dkt. 313 (affirming Dkt. 99 at 8-11); *Invention Submission Corp.*, 413 F.3d at 414–15; *see also League of Women Voters v. North Carolina*, 769 F.3d 224, 246–47

(4th Cir. 2014) (holding that district court abused its discretion in concluding that factual ambiguity precluded likelihood of success on the merits of voting rights claims).[20]

Further, Defendants' arguments ignore the law and record on Amazon's merits claims, and rely on authorities that have no application here.[21]  As noted, Amazon does not need to produce a witness who can specifically testify to Defendant's "intention" to pay kickbacks to specific individuals, Mot. 15, to succeed on its claims.  Circumstantial evidence of Defendants' intentional acts in furtherance of the fraudulent scheme is enough, especially for preliminary relief.  Defendants' motion confirms this.  It does not cite a single decision denying—much less vacating—a preliminary injunction on a record remotely analogous to the one here.  *See id.*[22]  The cases it cites denied initial relief in the face of substantial competing evidence and pervasive ambiguity on legal claims that have no parallel to Amazon's claims in this action.  The fraud and other claims here remain

---

[20] *Roe v. Dep't of Defense*, 947 F.3d 207, 222 (4th Cir. 2020) (affirming order granting preliminary injunction notwithstanding the fact that "the limited record" did "not conclusively" answer particular key questions); *Byrum v. Landreth*, 566 F.3d 442, 446 (5th Cir. 2009) ("A plaintiff is not required to prove its entitlement to summary judgment in order to establish 'a substantial likelihood of success on the merits' for preliminary injunction purposes."); 11A Wright & Miller, Fed. Prac. & Proc. Civ. § 2948.3 (3d ed.) ("All courts agree that plaintiff must present a prima facie case but need not show a certainty of winning.").

[21] Indeed, Defendants cite legal briefs and dissents that do not constitute authority at all.  *See* Mot. 7–8 (citing *Winter*, 555 U.S. at 51 (Ginsburg, J., dissenting)); Mot. 15 (relying on a legal brief filed in *Alleges Grp., Inc. v. Allegis Cap.*, LLC, 2019 WL 9042984 (D. Md. Mar. 18, 2019)).

[22] *Medispa*, 999 F. Supp. 2d at 871 (denying preliminary relief where competing evidence created pervasive ambiguity as to whether defendant was the party responsible for false advertising); *Chattery Int'l, Inc. v. JoLida, Inc.*, 2011 WL 1230822, at *11 (D. Md. Mar. 28, 2011) (denying preliminary relief where record was incomplete and entirely inconclusive on the question of who owned the trademark in dispute); *Goodman v. Dell Publ'g Co.*, 1995 WL 301380, at *1 (E.D. La. May 15, 1995) (denying preliminary relief because both sides had submitting competing evidence of comparable weight); *E.E. Maxwell Co. v. Arti Decor, Ltd.*, 638 F. Supp. 749, 754 (N.D. Tex. 1986) (similar).  These cases are different in kind because here, this Court has concluded, and the Fourth Circuit has affirmed, that Amazon's initial evidence was sufficient to establish its likelihood of success on the merits, Dkts. 49, 99, 318, which has grown since 2020 and is not remotely outweighed by Defendants' self-serving denials and deposition excerpts.

supported by 2020 evidence this Court described as going "beyond that which is necessary" for preliminary relief, Dkt. 69-5, at 49, and that the Fourth Circuit unanimously affirmed on appeal, Dkt. 318.[23] Further, this evidence has since been corroborated by compelling post-injunction evidence including ███████████████████████████████████, Dkts. 212-15 at 22, 212-13 at 8–10, Dkt. 619-1 at 36; documentary evidence that ████████████████████████████ ██████████, Dkt. 310-16 at 4–5; email correspondence between Defendants and their co-conspirators, Dkts. 350-6, 287-6 at 58–59; and Fifth Amendment invocations by several of Watson's associates, all of whom were directly involved in the fraud. Exs. 2–4; *United States v. Mallory*, 988 F.3d 730, 740 (4th Cir. 2021) (allowing adverse inferences from Fifth Amendment assertions by co-conspirators), *cert. denied sub nom. Dent v. United States*, 142 S. Ct. 485 (2021).[24]

**B.    The Current Record Also Supports All Equitable Factors for the Injunction**

Defendants' invocation of *Winter's* equitable factors is similarly unavailing. Again, none of Defendants' arguments can overcome the Fourth Circuit's mandate upholding the injunction as necessary to prevent irreparable harm from Defendants' "'dissipation of assets,'" and affirming the injunction's security provisions as a means of "preserv[ing] the court's ability to render a meaningful judgment on the merits.'" *Amazon.com, Inc.*, 2021 WL 3878403, at *8 (quoting *In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 525 (4th Cir. 2003)). Defendants' arguments also fail on their own terms. They assert that "recent developments conclusively show that Amazon will not be irreparably harmed if the injunction is vacated" because the Receiver's work "confirms"

---

[23] *See* Dkts. 12-1, 12-2, 12-3, 12-4, 12-5, 12-6. 12-7, 12-8, 12-9, 12-10, 12-11, 12-12, 12-13, 12-14, 12-15, 12-16, 12-17, 12-18, 12-19, 12-20, 12-21, 12-22, 12-23, 12-24, 12-25, 12-26, 12-27, 12-28, 12-29, 12-30, 12-31, 12-32, 12-33, 12-34, 12-35, 12-36, 12-37, 12-38, 12-39, 12-40, 12-41, 12-42, 12-43, 12-44, 12-45, 12-46, 12-47, 12-48, 12-49, 12-50, 42-1, 42-2, 42-3, 42-4, 43, 46, 59.

[24] *See also, e.g.*, *CF 135 Flat LLC v. Triadou SPV N.A.*, 2016 WL 5945912, at *4 n.7 (S.D.N.Y. June 24, 2016) ("Courts routinely draw adverse inferences in connection with preliminary injunction proceedings."); *Sentinel Trust Co. v. Namer*, 172 F.3d 873 (Table), 1998 WL 887287, at *2–3 (6th Cir. 1998) (same, affirming injunction based on inferences from Fifth Amendment claims).

Defendants cannot comply.  Mot. 3, 16–17.  And they say the "balance of the equities" now favors Defendants because the injunction "inflicts greater harm than it prevents" and was "obtained with unclean hands."  *Id.* at 17–18 (cleaned up).  These arguments turn the law and record upside down.

*Irreparable Harm.*  Defendants' lead argument—that "Amazon will not be irreparably harmed if the injunction is vacated" because Defendants lack the "cash" to pay it, Mot. 17—is legally and factually baseless.  As an initial matter, "impossibility" of performance is not a valid ground for vacating the injunction.  It is a contempt defense, *see, e.g., FTC v. Affordable Media*, 179 F.3d 1228, 1239 (9th Cir. 1999),[25] that Defendants have already lost, Dkt. 413, and is in any event unsupported by the current record.  As the Fourth Circuit explained, a current lack of assets does not *mitigate* the risk of irreparable harm here, it *exacerbates* it by increasing the likelihood that Defendants' assets will "become unavailable before judgment."  *Amazon.com, Inc.*, 2021 WL 3878403, at *8.  And Defendants' contrary arguments, Mot. 17, conflict with the Receiver's filings which, as detailed above, confirm that:  (i) Defendants *caused* the low "cash balances" they cite, *see id.*, by squandering millions of dollars on luxury personal expenses during the injunction period, Dkts. 702, 702-3 at 5; and (ii) the Receiver is preparing to execute transactions this summer that could generate millions of dollars in new injunction security that Defendants will dissipate if the receivership is dissolved, Dkt. 702 ¶¶ 7–11, 19; *see also* Dkt. 768.  Accordingly, the current records shows a real and imminent risk of irreparable harm to Amazon and this Court if Defendants' motion is granted in any respect.

*Balance of Equities*.  Defendants' "balance of the equities" arguments, Mot. 17–19, fare no better.  Their argument that the injunction "inflicts greater harm than it prevents," *id.* at 17

---

[25]  *See also Rolex Watch U.S.A., Inc. v. Crowley*, 74 F.3d 716, 720 (6th Cir. 1996) (party must show "in detail why [it is] unable to comply"); *SEC v. McGinn*, 2010 WL 11469814, at *1 (N.D.N.Y. Dec. 15, 2010) (impossibility must be "substantiated and not . . . self-imposed").

(cleaned up), is based solely on the unsupported assertion that the injunction has forced them to "default on business obligations, liquidate assets at significant losses, and essentially shutter their business," *id*. This Court and the Fourth Circuit already rejected these arguments. Dkts. 99, 318. And they are in any event rebutted by the Receiver's finding that Defendants mismanaged their business and wasted millions on personal expenses in violation of court orders. Dkts. 702, 768.

Defendants' remaining argument—that the balance of hardships favors them because Amazon has "[u]nclean [h]ands," Mot. 18–19—is equally unavailing. This claim rests on the unsupported assertion that Amazon "obtained th[e] injunction by representing to this Court, and to Defendants, that multiple people had personal knowledge of the facts" as set forth in "verifications" that Amazon has now withdrawn as "false." *See id.* at 18. This statement is wrong on every level.

First, the record establishes that the injunction is *not* based on the "personal knowledge" of Amazon's outside counsel. It was entered and affirmed on the basis of documentary evidence and three "direct and powerful" fact declarations that remain on the docket. Dkt. 69-5 at 49–50. Second, the record shows that—contrary to the unsupported claims in Defendants' motion (at 1–3, 6, 9, 11, 13, 18)—the attestations Amazon's counsel submitted in 2020 were correctly understood and "weigh[ed]," Mot. 8, 19, by the parties and courts at every stage of this case, *see* Dkts. 39, 41. This record is critical, because it belies Defendants' claim that "these attestations have now been withdrawn for falsely claiming "personal knowledge" of the facts underlying [Amazon's] allegations." Mot. 1–2. As the Court's April 8 ruling confirms, Amazon withdrew these submissions in April to resolve a discovery dispute that Defendants manufactured by disingenuously[26] citing the attestations' form language on "personal knowledge" as a basis for demanding

---

[26] Defendants' use of the attestations' "personal knowledge" language was disingenuous in two respects. First, as Defendants conceded at the April 8 hearing, they never read this language as referencing "personal knowledge other than what [the declarants] gleaned from the documents that

deposition testimony the Court agreed was improper.  Dkts. 588, 627, 648, 760.  In doing so, Amazon cited controlling law for the proposition that the withdrawals would have "no impact" on the 2020 injunction orders.  Dkts. 588, 627, 760.  "Defendants' own cases" confirmed this, Dkt. 627 at 2, 4–9, and their current motion does not even attempt to address these authorities.[27]  For all of these reasons, Defendants' assertion that the injunction rests on "false" or "intentionally misleading" evidence, Mot. 18–19, is unsupported and provides no basis for their motion.

*Public Interest*.  Defendants' "public interest" arguments, Mot. 20, are equally incapable of supporting the relief they seek.  None of these arguments can overcome the Fourth Circuit's holding "that the public interest favor[s] a preliminary injunction" in this case.  *Amazon.com, Inc.*,

---

they reviewed and so forth."  Dkt. 675-1 at 4.  Indeed, their May 5, 2020 injunction opposition stressed this point in stating that Amazon's initial complaints, though "labeled verified," were not entitled to the weight that normally attends that label because "the only affidavits submitted in support of [the] Complaint were from a Gibson Dunn associate with no first-hand knowledge of any pertinent fact."  Dkt. 39 at 1–2.  Second, Defendants' one-sided suggestions that Amazon counsel's use of "personal knowledge" language "falsely" represented percipient knowledge or waived privileges is inconsistent with defense counsel's own use of the same language throughout the docket.  Dkts. 40, 82-1, 130-1, 292-1, 336, 426-2, 498, 525-1 560, 567.

[27] This history further confirms that if any filings in this case are "tactical" and "intentionally mis-leading," it is Defendants' filings.  Mot. 18.  The 2020 Amazon declarations, like dozens of other counsel declarations in this case and others, used "personal knowledge" exactly as the Court stated on April 8:  to describe knowledge "gleaned from the documents that they reviewed and so forth."  Dkt. 675-1.  Such testimony is entirely proper under Rule 65, Ex. 1, which Defendants admit "does not" require that a preliminary injunction be supported by "personal knowledge" at all.  Mot. 8; *see also* Dkt. 627 at 4–9.  Accordingly, Defendants did not claim any "error" in the attestations as filed and addressed in 2020.  Mot. 18.  The dispute about those declarations arose only in connection with Defendants' assertion in March that the attestations' "personal knowledge" language justified outside counsel depositions the Court agreed were improper.  Dks. 648, 760.  It was strictly in that context that Amazon said the attestations' use of "personal knowledge" was "erroneous *insofar as* it could be read to suggest knowledge *beyond* that derived from the declarants' role on the litigation team investigating the facts of this case."  Dkt. 760 at 8 (citing Dkt. 588 at 7–8).  But as noted, Defendants expressly *disclaimed* any such reading in 2020, Dkt. 39, and neither this Court nor the Fourth Circuit even cited the attestations in entering the injunction based on other evidence.  There is thus no support for Defendants' assertion that Amazon "relied on false testimony of personal knowledge to obtain the injunction," Mot. 13, or that the Court accorded the withdrawn attestations excessive "weight" in granting Rule 65 relief, *id*. at 8.

2021 WL 3878403, at *9.  And Defendants' assertion that "there is no clear public interest in retaining the injunction," Mot. 20, is independently foreclosed by the current record.  Defendants' only response—that "the continued imposition of the injunction wastes the time and resources of both the parties and this Court," *id.*—has matters exactly backwards.  As the record shows, it is not the *injunction* that has consumed these resources for two years.  It is Defendants' ongoing *contempt* of the injunction that has done so.  Dkts. 330, 413, 433.

The contempt record is important, because it provides compelling new evidence that granting Defendants' motion would be entirely inequitable.  Defendants have defied the injunction in the face of an appellate mandate, multiple Rule 37 orders, and contempt and receivership rulings.  They say that is because they are innocent and unable to pay the required judgment security.  Mot. 17.  But they have never substantiated these claims as the Court ordered, and the current record rebuts them.  It contains ███████████████████████████████████████████████ ███████████████████████████████████████████  Dkt. 619-1 at 36.  It contains bank and business records that confirm Defendants were enriched by at least the $21.25 million set forth in the injunction and appellate mandate.[28]  It contains receivership records proving that Defendants *could* have posted at least some of this security since June 2020, but chose instead to squander millions of dollars on their own debts and expenses in violation of this Court's orders.  And it shows that Defendants have recently used "threats" and other improper tactics to manufacture injunction chal-

---

[28] *See* 2021 WL 3878403, at *1 (noting documentary records of, among other things, "over $5 million in wire transfers" from Northstar to Villanova for "'commissions,' 'leasing fees,' and 'development fees' related to the leasing deals" and "hastily deleted files on Casey Kirschner's work computer indicating he was entitled to 'shares' of $16,250,000 in proceeds Northstar realized on three Amazon leasing deals").  Defendants' motion confuses their liability for these funds with whether they currently possess them.  Mot. 5, 17.

lenges they hope will prevent the Receiver from completing transactions that could make a signif-

icant "contribution" to the injunction provisions, Dkt. 768, that "preserve th[is] court's ability to

render a meaningful judgment on the merits," Dkt. 318 at 20–21.  On this record, the public interest

and equitable principles embodied in Rule 65, *Winter*, Rule 60(b), and the appellate mandate over-

whelmingly support the injunction, which was entered on a "level playing field" with "full due

process," Mot. 16, that Defendants have abused for years.[29]

## CONCLUSION

For the reasons above, Defendants do not—and cannot—identify any "new" evidence or

changed circumstances that would justify relief from the injunction as affirmed on appeal, *Ama-*

*zon.com, Inc.*, 2021 WL 3878403, at *9, much less allow them to recover Amazon's $2 million

security bond.  *See* Fed. R. Civ. P. 65(c) (providing that security may be order paid to a party that

"ha[s] been *wrongfully* enjoined or restrained").[30]  Accordingly, the Court should deny their mo-

tion and continue enforcing the injunction and related orders.

---

[29]  Amazon has repeatedly offered to discuss agreed injunction modifications if warranted by new facts.  But Defendants have never substantiated any such facts, and have simply demanded that Amazon vacate the injunction and pay them "at least $100 million" in damages.  Mot. 20.

[30]  Even if were the Court to vacate the injunction, Defendants could not recover the injunction security without proving that they were "enjoined from taking action [they] 'had a right all along to do,'" and "establish[ing] damages" as a result.  *Int'l B'hood of Teamsters, Local Union No. 639 v. Airgas, Inc.*, 885 F.3d 230, 237 (4th Cir. 2018).  They do not attempt to make either showing.

Dated:  May 20, 2022                          Respectfully submitted,

                                              */s/ Michael R. Dziuban*
                                              Elizabeth P. Papez (*pro hac vice*)
                                              Patrick F. Stokes (*pro hac vice*)
                                              Jason J. Mendro (*pro hac vice*)
                                              Claudia M. Barrett (*pro hac vice*)
                                              David W. Casazza (*pro hac vice*)
                                              Michael R. Dziuban (Va. State Bar No. 89136)
                                              GIBSON, DUNN & CRUTCHER LLP
                                              1050 Connecticut Avenue, N.W.
                                              Washington, D.C. 20036-5306
                                              Telephone:  (202) 955-8500
                                              Facsimile:  (202) 467-0539
                                              epapez@gibsondunn.com
                                              pstokes@gibsondunn.com
                                              jmendro@gibsondunn.com
                                              cbarrett@gibsondunn.com
                                              dcasazza@gibsondunn.com
                                              mdziuban@gibsondunn.com

     *Counsel for Plaintiffs Amazon.com, Inc. and Amazon Data Services, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 20, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system.  I will then send the document and a notification of such filing (NEF) to the following parties via U.S. mail to their last-known address and by email, where noted:

Casey Kirschner
635 N. Alvarado Lane
Plymouth, MN 55447
By email: casey.kirschner@gmail.com

*s/ Michael R. Dziuban*
Michael R. Dziuban
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
Telephone:  (202) 955-8500
Facsimile:  (202) 467-0539
mdziuban@gibsondunn.com

*Counsel for Plaintiffs Amazon.com, Inc. and Amazon Data Services, Inc.*