**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| AMAZON.COM, INC. and AMAZON DATA SERVICES, INC., | |
| Plaintiffs, | CASE NO. 1:20-CV-484-RDA-TCB |
| v. | |
| WDC HOLDINGS LLC dba NORTHSTAR COMMERCIAL PARTNERS, et al., | |
| Defendant. | |
| | REPLY IN SUPPORT OF WATSON DEFENDANTS' MOTION TO VACATE PRELIMINARY INJUNCTION (DKT. 695) |
| 800 HOYT LLC, | |
| Intervening Interpleader Plaintiff / Intervening Interpleader Counter-Defendant, | |
| v. | |
| BRIAN WATSON, WDC HOLDINGS, LLC, and BW HOLDINGS, LLC, | |
| Interpleader Defendants | |
| AMAZON.COM, INC. and AMAZON DATA SERVICES, INC. | |
| Interpleader Defendants / Interpleader Counter-Plaintiffs. | |

Defendants WDC Holdings LLC, Brian Watson, Sterling NCP FF, LLC, Manassas NCP FF, LLC, and NSIPI Administrative Manager (collectively, the "Watson Defendants"), hereby respectfully file their reply in support of the Motion to Vacate Preliminary Injunction issued on June 5, 2020. Dkt. 57.

**INTRODUCTION**

Since first applying for the *ex-parte* restraining order in April of 2020, Amazon.com, Inc. and Amazon Data Services, Inc. (together, "Amazon") has overstated their hand, mischaracterized evidence, and misled the court, all to devastating effect on the Watson Defendants. Now that discovery is well under way, it has become apparent that things are not always as Amazon says they are. The alleged mountain of evidence Amazon presented to the Court in support of the extraordinary preliminary injunction against the Watson Defendants has eroded, leaving Amazon's bold and extensive accusations supported by nothing more than office gossip and ambiguous documents.

Throughout the past two years, Mr. Watson's life has been turned upside down. His business has been dismantled, his assets placed under total control of a receiver, his family home sold, and his personal and professional life placed on hold and held hostage to the extraordinary injunction filed simultaneously with the charges against him. Throughout this time, the Watson Defendants have never had a meaningful opportunity to confront witnesses or challenge the evidence that Amazon claims as justification for the $25 million injunction.[1] Although Mr. Watson vigorously denies the allegations levied against him, Mr. Watson is not asking the court to dismiss the claims against him or to throw out the case. He is simply asking that he not be punished based on unproven allegations derived from "assumptions," "hearsay," and "water-cooler" gossip. *See*

---

[1] Although there was a brief telephonic hearing on the preliminary injunction, this hearing did not provide any meaningful avenue for the Watson Defendants to challenge the evidence presented by Amazon. First, this hearing was held just weeks after Amazon filed its complex and voluminous complaint, Watson defendants had hardly had the opportunity to investigate or even understand the allegations levied by Gibson Dunn and threatened by federal law enforcement agencies. Second, not only were the Watson Defendants not permitted to conduct any discovery, but they were given no opportunity to cross examine the authors of the declarations submitted against them or challenge the veracity of the documentary evidence submitted by Amazon. *See generally* 696-7.

Dkt. 696-6 114:22-25; 236:16-20; 257:13-25. He is asking for due process and a level playing field from which he can defend this case before a jury of his peers, consistent with the foundational principles of our adversarial justice system. He is asking for a fair trial, and his proper day in Court.

Recent developments in this case including the discovery that Plaintiffs' filed and relied upon false and now withdrawn affidavits and mischaracterized their evidence and the knowledge of key witnesses has severely undermined the legitimacy of the injunction imposed against the Watson Defendants. The evidence Amazon presented as clear and compelling two years ago has now been withdrawn, refuted, and undermined as further facts are discovered and more persons come forward to give testimony consistent with Mr. Watson's Signed Declaration—that the Watson Defendants had no knowledge of and did not participate in any illegal fraudulent scheme. Despite Plaintiffs' continued attempts to downplay their errors and obfuscate the lack of meaningful evidence presented, these developments are substantial and cannot be ignored.

The mistakes in the sworn affidavits cannot be written off as occurring simply due to them being template documents with "boilerplate" or "form language" on personal knowledge, *see* Dkt. 787 at 11, 27, and the depositions of key witnesses that contradict these declarations cannot be ignored. Actions, words, and affidavits sworn under a penalty of perjury have real meaning and consequences. Moreover, Amazon chose to pursue this preliminary injunction on the basis of declarations rather than testimony subject to cross examination. Now they have withdrawn, substituted, and shuffled these declarations to the point where it has become impossible to fully understand what evidence they actually have or claim to have. Subjecting the Watson Defendants to such an oppressive injunction on such a nebulous record is patently inequitable.

Equity requires that the Watson Defendants be given at a minimum, the chance to present new evidence and meaningfully challenge the evidence propounded by Amazon at an evidentiary

hearing. Proving that it actually has all the evidence it claims to have as this injunction drags into its third year with no end in sight is a small burden for Amazon, particularly when compared to the enormous burden of the injunction on the Watson Defendants. Accordingly, the Watson Defendants respectfully ask this court to vacate the injunction, or in the alternative to hold an evidentiary hearing requiring Amazon to present the evidence it claims to hold, and provide an opportunity for the Watson Defendants to challenge this evidence and present their own evidence to the contrary, which they have not been afforded the opportunity to do to date.

## ARGUMENT

### A.   Rule 60(b) Does Not Apply to Interlocutory Orders Such as A Preliminary Injunction.

As an initial matter, Plaintiff's response brief has analyzed, and asks this Court to consider, the Watson Defendant's Motion under an incorrect and inapplicable standard. Plaintiff argues that the strict standards of Rule 60(b) must be met in order for this court to amend, modify, or vacate the preliminary injunction. Dkt. 787 at 1, 14, 21. This is fundamentally incorrect. Rule 60(b) applies to final orders entered after trial or full evidentiary consideration and fact finding. By relying upon Rule 60(b) for their argument, Amazon treats this order as if it had been issued after a full evidentiary hearing, yet not a single witness has ever testified subject to cross examination. The order granting the preliminary injunction is instead based entirely upon a constantly changing universe of declarations and unvalidated documents.

This lack of due process is why Fourth Circuit law is clear that Rule 60(b) does not apply to an interlocutory order such as this preliminary injunction and that "it is not necessary to label under a particular rule number a motion for reconsideration of an interlocutory order." *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1470 (4th Cir. 1991) ("[V]igorously disagree[ing]" with the strict application of Rule 60 standards on interlocutory orders, and finding

4

such application to be reversible error.); *Am. Canoe Ass'n, Inc. v. Murphy Farms, Inc.*, 326 F.3d 505, 514 (4th Cir. 2003) ("Rule 60(b) does not govern relief from interlocutory orders. . . because a district court retains the power to reconsider and modify its interlocutory judgments [] at any time prior to final judgment when such is warranted.") (internal quotations omitted); *see also Moses H. Cone. Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12 (1983) ("[E]very order short of a final decree is subject to reopening at the discretion of the district judge.").

Plaintiffs' own cases are instructive on this point. First, Plaintiffs directly cite *Thompson v. U.S. Dep't of Hous. & Urban Dev.*, 404 F.3d 821, 830 (4th Cir. 2005) for the proposition that Rule 60(b) governs modification of a preliminary injunction. However, Thompson does not concern a preliminary injunction at all, but rather a consent decree which, unlike a preliminary injunction, *is* a final judgment. Moreover, even though Rule 60(b) does apply to modification of a consent decree, the *Thompson* court stresses the importance of flexibility in the application of the court's equitable powers, stating that "[t]he district court must be free to exercise its equitable powers as necessary to remedy the problem" and that "rigidity in applying Rule 60(b)(5) is neither required nor appropriate[.]" *Id.* (quoting *Waste Mgmt. of Ohio, Inc. v. City of Dayton*, 132 F.3d 1142, 1145 (6th Cir. 1997)).

Plaintiffs also rely on, and similarly misconstrue, *Centennial Broadcasting, LLC v. Burns*, 433 F. Supp. 2d 730, 732 (W.D. Va. 2006). This case states that "a preliminary injunction is not a 'final' order or judgment for the purposes or Rule 60(b)[,]" but that courts should "apply the general equitable principles set forth in Rule60(b)(5)" which allow a court to modify a preliminary injunction "in light of subsequent changes in the facts or law, or for any other good reason." *Id.* (quoting *Canal Auth. of State of Florida v. Callaway*, 489 F.2d 567, 578 (5th Cir.1974)). These

general equitable principles are based on flexibility and fairness, not strict adhesion to formal rules. *See Thompson,* 404 F.3d at 830–31.

The inapplicability of strict rules to modification or dissolution of a preliminary injunction is axiomatic. Judgments entered pursuant to Rule 60 follow full trial or a full and fair evidentiary hearing where both sides are fully heard, witnesses are subject to cross examination, and contested facts are impartially resolved. Pursuant to the time-honored traditions of the United States Courts and the dictates of the federal rules, parties who have been accorded due process and fully heard at trial must live with the consequences of a jury verdict or a court's unfavorable determination of the facts. Thus, the standard to modify or overturn a final order pursuant to 60(b) is high.

But nothing close to such due process has occurred here. Rather, a rushed, *ex parte* order issued on April 27, 2020—following a 32-minute hearing which took place the day after the suit was filed—was converted to a preliminary injunction based on inaccurate argument and representations to the Court by Amazon and its outside counsel and several declarations which have either been withdrawn or shown to misrepresent the declarants' knowledge.[2] *See generally* Dkt. 696. As the Fourth Circuit has noted in considering a preliminary injunction, "[t]he 'danger of a mistake' at this juncture—on an incomplete record before a trial on the merits—is 'substantial.'" *Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 284 (4th Cir. 2002) (internal citations omitted). Here, that danger has been born out, leaving the Watson Defendants subject to

---

[2] In light of the deposition testimony and Mr. Lorman and Mr. Mulcahy, the Watson Defendants believe that affidavits submitted in support of the preliminary injunction should be corrected or withdrawn to the extent that information contained within them is directly contradicted by the subsequent sworn deposition testimony. Of additional concern to the accuracy and veracity of the declarations is that Mr. Lorman testified that his Declaration was prompted and drafted by Gibson Dunn. Dkt. 696 13:3-21; 133:20-134:8. Given the recent withdrawal and errors found in Gibson Dunn's own declarations, Watson Defendant's believe that this fact requires further scrutiny of all declarations authored by Gibson Dunn.

6

an extraordinarily oppressive injunction unsupported by anything close to sufficient evidence of wrongdoing.

The consequences of this mistake are particularly grievous because of the unanticipated length of this litigation. As this litigation stretches into its third year with no end in sight, the injustice of such a restrictive injunction imposed without due process becomes magnified by the day. While the Watson Defendants are ready and eager to go to trial to prove their innocence, Amazon, a party with nearly unlimited resources, has chosen to continually delay and extend this litigation. Just weeks before the close of discovery, Amazon was granted leave to file the fourth version of its Complaint over the objection of the Watson Defendants. Dkt. 756. This Complaint (which is not verified and does not even request the relief of a preliminary injunction) was filed on May 6, 2022, yet three weeks later, Plaintiffs have failed to even serve all of the new parties added in the Third Amended Complaint. *See* Dkt. 764.

Given the significant change in status of the declarations, the substance of newly discovered evidence, the submission of Mr. Watson's declaration under oath that he is innocent of the accusations against him, the significant delays in litigation, and the fact that despite extensive discovery Amazon has failed to uncover any substantive evidence that Mr. Watson was the mastermind of an elaborate fraud scheme, to invoke Rule 60(b) to prevent the Watson Defendants from putting the true facts before the court to vacate the injunction makes a sham of any due process attendant to the initial orders. The Watson Defendants are not, at this juncture, seeking to dismiss Plaintiffs' claims, but only to have a meaningful day in court where they can show that the facts are much different than what was represented to the Court two years ago. In sum, the Court

was misled by Amazon and Gibson Dunn for their own advantage, and this should be corrected starting with the removal of the Injunction.

**B.**   **The Facts and Circumstances Have Changed Since the Preliminary Injunction Issued.**

It is undeniable that the facts, circumstances, and evidence in this case have significantly changed since the preliminary injunction was issued in June 2020 such that the injunction is no longer equitable. At the time the injunction issued, the Watson Defendants could not have known or anticipated that two of the five declarations in support of the injunction, as well as verification of the complaint, and several additional supporting declarations would be withdrawn from the record,[3] that more should probably be reviewed and withdrawn or corrected for similar inaccuracies, that Amazon would fail to verify or substantiate its alleged documentary evidence, or that depositions would reveal that the key witnesses Amazon alleges have personal knowledge of the alleged fraud were actually basing their statements on "hearsay," "assumptions," and "water-cooler gossip." Dkt. 696-6 at 114:22-25; 236:16-20; 257 13-25; Dkt. 696-5 at 136:22-138:6. These changes are both substantial and unforeseen, and as such require that, at a minimum, this Court conduct a full evidentiary hearing to evaluate the sufficiency of the evidence Amazon has submitted in support of its extraordinary, deliberate, and burdensome injunction.

Importantly, neither such a hearing nor a decision to dissolve or modify the preliminary injunction is in any way precluded by the mandate rule as Amazon claims. As is both inherent in the nature of that rule and confirmed by the Supreme Court, the mandate rule does not prevent a district court from modifying orders or judgments based on new evidence. *Standard Oil Co. v.*

---

[3] In addition to the withdrawn declarations submitted in support of the Preliminary Injunction, Plaintiffs also withdrew other documents which were considered by the court in grating the injunction such as the verification of the complaint, and declarations submitted in support of the complaint. *See* Dkt. 585-1 through -8.

*United States*, 429 U.S. 17, 18 (1976) (an appellate mandate "relates to the record and issues then before the court, and does not purport to deal with possible later events."); *American Am. Canoe Ass'n*, 326 F.3d at 515 ("Law of the case is just that however, it does not and cannot limit the power of a court to reconsider an earlier ruling.");*Seneca Nation of Indians v. New York*, No. 19-CV-735S, 2021 WL 5907898, at *3 (W.D.N.Y. Dec. 14, 2021) ("[T]he mandate rule does not apply to modification or vacation of a preliminary injunction on the basis of changed circumstances or equity.").

1.  *The False, Withdrawn Declarations Present Compelling New Evidence Requiring the Dissolution of the Injunction.*

Plaintiffs' attempts to undermine the enormity of the impact of their false and now withdrawn declarations are understandable, but unavailing. As the Watson Defendants' highlight in both their Motion and previous filings, Plaintiffs' outside counsel not only submitted numerous affidavits swearing to personal knowledge they did not have, but directly argued to this Court that the declarations and the facts contained within supported their motion for injunction. *See* Dkt. 696 at 19; Dkt. 606 at 14-17. Even if this Court were to take Plaintiffs at their word (and it should not) that the declarations swearing to personal knowledge when the declarant had no such knowledge were somehow not false, *see* Dkt. 787 at 11, such an argument is inapposite because the declarations were not simply amended to remove the "boilerplate" language, but rather entirely withdrawn. Dkt .648. The withdrawn declarations did not just validate documents, but contained substantive factual assertions which were presented to the Court as evidence and formed the basis of the injunction. (Dk. 589-1 through -8). Now that these declarations have been withdrawn, this evidence is no longer part of the record.

Amazon asks both defendants and the Court to simply take Plaintiff at its word that the withdrawal and substitution does not affect the merits of the injunction, but to do so would be

antithetical to due process. In granting the motion to withdraw and substitute, the Court did not hear evidence nor make a ruling as to the sufficiency of the evidence underlying the injunction, the sufficiency of the substitute declaration to support the injunction, nor the effect of the withdrawal on the sufficiency of the preliminary injunction or TRO.[4] Dkt. 675-1.  Issues such as the sufficiency of the substitute declaration—which, as explained in the Motion, The Watson Defendants find to be wholly deficient—are precisely those which due process requires be determined by a court, in a full and fair evidentiary hearing, not unilaterally by Amazon or by Gibson Dunn. Whether or not the Watson Defendants unsuccessfully challenged the evidentiary value of the declarations two years ago is similarly irrelevant—at that time, the evidence existed in the record, now it does not. This is not an issue of the weight that the declarations should be afforded as Amazon asserts, it is the entirely new issue of the declarations no longer existing.

Amazon's argument that the withdrawal is unimportant because multiple parties, including the Watson Defendants, have submitted attorney declarations of personal knowledge similarly misses the point. *See* Dkt. 787 at 12. Every declaration of personal knowledge submitted by the Watson Defendants has, in fact, accurately reflected that individual's personal knowledge. This is obviously different from the declarations of personal knowledge submitted and withdrawn by Plaintiffs, where the declarant claimed to have but did not, in fact, have personal knowledge. Further, the Watson Defendants have never relied on such declarations to obtain such sweeping and devastating relief against another party, have never sought to withdraw such declarations on

---

[4] Plaintiff takes the Magistrate Judge's statement that "Mr. Doden is going to be able to provide the same information that the declarations would" out of context. Dkt. 787 at 20. This statement was not to the effect that the substitute verification adequately replaced the evidence in the withdrawn verifications, but that there would be no prejudice in preventing the Watson Defendants from deposing the Gibson Dunn attorneys who submitted the now withdrawn declarations because those attorneys had no more personal knowledge of the facts than Mr. Doden, and Defendants will be able to depose Mr. Doden via a 30(b)(6) proceeding. Dkt. 675-1 10:21-11:10.

admission that they are false, and if they ever did have to withdraw them due to error, would take full responsibility commensurate with the seriousness of that fault rather than pretending that it does not matter.

## 2. The Depositions

The numerous depositions taken thus far have presented new facts and evidence, undermine the merits of the claims, and require the dissolution of the Preliminary Injunction. First, as discussed in detail in the Motion, the depositions of Mr. Lorman and Mr. Mulcahy show that the non-withdrawn declarations submitted in support of the preliminary injunction are inaccurate and misleading:[5] The affidavits of Mr. Lorman, Mr. Gilpin, Mr. Doden and the submitted complaint state or heavily imply that Mr. Lorman and Mr. Mulcahy have personal knowledge of the alleged fraudulent scheme, but the subsequent depositions show that Mr. Mulcahy and Mr. Lorman do not have this knowledge. *See* 696 at 11-13. Amazon attempts to argue that the Watson Defendants have "distorted the record" regarding Mr. Mulcahy's sworn deposition, Dkt. 787 at 12, yet fails to elaborate on what possible other meaning could be ascribed to his testimony that the whistle blower letter he wrote was based on "assumptions and hearsay," that his knowledge of the alleged scheme was based only on "water-cooler talk," and that Mr. Doden and the Complaint misrepresent his knowledge of the facts underlying the allegation. Dkt. 696-6 114:24-115-1; 236:3-20; 151:19-22. This is because there is no other meaning. Mr. Mulcahy was absolutely clear that he does not have personal knowledge of any wrongdoing by the Watson Defendants and that he never told Amazon otherwise. Despite being filed after this deposition, Plaintiff's Third

---

[5] According to testimony, at least Mr. Lorman's affidavit was written by Gibson Dunn. Dkt. 696 13:3–21; 133:20–134:8.

Amended Complaint still falsely alleges that Mr. Mulcahy has personal knowledge of the fraud. Dkt. 608-2 ¶ 64.

Further, in the time since the Watson Defendants filed the Motion, two more key witnesses have been deposed, and each has confirmed the Watson Defendants' lack of knowledge of or participation in the alleged scheme. Both Casey Kirschner and Carl Nelson, the former real estate department employees of Amazon, testified that the Watson Defendants won the disputed contracts because they offered the best terms, that Mr. Watson did not know that their entities were receiving funds from the Villanova Trust, and that they not only did not push through a contract with Northstar and Mr. Watson, but that given the corporate structure and approval process of many people and departments within Amazon, there would be no way to do so any way.[6] In fact, all of the testimony from Amazon personnel confirmed these later facts as well. *See e.g.* Davenport Dep. Ex. A at 75:18–85:1 (the former Director of Global Real-estate Development Amazon Web Services explaining the many steps of internal review of proposed land deals, extensive involvement and review by Peter Desantis, and stating that transaction managers such as Casey and Carl could not sign leases on behalf of Amazon). Additionally, Mr. Nelson specifically testified that he did not tell Mr. Watson about the payments to his company, Allcore, because Allcore was a development company that would be directly competing with Mr. Watson for land

---

[6] Ex. B, Nelson Dep. 334:19–336:25 (Nelson confirming no Watson Defendant scheme or knowledge of payments); 240:10–19 ("I believe Northstar had issued the lowest yield that AWS had ever received across North America, and possibly the world"); 340:7–14 (no person (besides possibly Jeff Bezos) had the power to solely award contracts or leases); 317:4–17 (explaining that Christian's investment of Villanova funds in Allcore was "sketchy" because Christian was best friends with Mr. Watson and was investing in a company that would compete with him);

Ex. C, Casey Kirschner Deposition 310:6–312:14 (testifying that Casey could not award leases himself, that Mr. Watson had no agreement to pay him for contracts with Amazon, had no knowledge of the Villanova Trust's investments in Allcore, no control over funds in the Villanova trust, and did not pay any funds to any entity set up by Rod Atherton).

deals in the same Virginia market. Nelson Ex. B at 317:4–17. The implication from Mr. Nelson's testimony is that, if Mr. Watson found out where the money he paid to the Villanova trust was going, he might choose to end or modify his referral agreement with Christian Kirschner. These depositions present new and compelling evidence which was not available to the Watson Defendants at the time the preliminary injunction issued and must be considered in determining Amazon's likelihood of success on the merits.

Finally, Amazon argues that the deposition testimony—which includes that of Mr. Mulcahy, Mr. Lorman, Carl Nelson, and Casey Kirschner, as well as other deposed individuals[7] who also testified to having no personal knowledge of any illegality in connection to the leases— is not compelling because "there are many witnesses who *do* have direct knowledge of that role." Dkt. 787 at 21. Yet Plaintiff fails to identify who these mysterious people are. In fact, the only of these "many witnesses" that Amazon actually identifies is Brian Watson. *Id*. However, Mr. Watson, though he has not yet been deposed, has submitted a full and thorough sworn declaration definitively stating that he did not participate in a fraudulent scheme, did not pay money to any Amazon employee, and did not have any knowledge that the funds paid to the Villanova Trust were being shared with entities owned by Casey Kirschner and Carl Nelson. Dkt. 697. Further, the only reason Mr. Watson has yet to be deposed is due to Amazon's refusal to depose him. Mr. Watson is eager to be deposed and pushed to move forward with his deposition as previously scheduled on May 26, 2022. It is Amazon who refused to do so and has chosen to push back his deposition date. Ex. D (e-mail regarding deposition scheduling). Mr. Watson should not be

---

[7] For example, former Northstar CFO Brent Gray who testified that he had no personal knowledge of any illegality in connection with the Amazon leases, and that the Villanova trust referral agreement was well known and not hidden or kept a secret. Gray Deposition Ex. E at 172:11–19; 282:15–283:12.

punished for Plaintiffs' decision to drag this case out, and he is eager and willing to testify to his innocence at a deposition, an evidentiary hearing, or any other appropriate forum.

Thus far twenty-three people have been deposed including former Northstar employees, former and current Amazon employees, contractors in Virginia, Mr. Watson's ex-wife, and several of the defendants in this case. Not a single one of them proffered testimony that contradicts Mr. Watson's Verified Declaration or claims personal knowledge of any wrongdoing by the Watson Defendants. Dkt. 697. Plaintiffs have identified in their disclosures only one Amazon individual, Chris Vonderhaar, yet Mr. Vonderhaar, like the other deponents, testified to having no personal knowledge of the alleged scheme or damages therefrom. Vonderhaar Dep. Ex. F 185:23-186:8 (testifying that his only knowledge of the alleged scheme was from the Amazon internal investigation and complaint). If Amazon has "many witnesses" with direct knowledge of Mr. Watson's involvement, who are they, and why have they not been identified, disclosed, or deposed?

## C. Amazon Continues to Misrepresent the Evidence in an Attempt to Save the Unfair and Unsupported Preliminary Injunction

Amazon made significant representations of a mass of evidence against the Watson Defendants when it applied for the TRO and subsequently converted it to a preliminary injunction. However, this supposed evidence has never been subject to the scrutiny of cross examination or evidentiary hearing, and has now been withdrawn, confused, or undermined. However, Amazon continues to obfuscate the dearth of evidence against the Watson Defendants by presenting a misleading and, at times, flatly incorrect picture of the evidence that they do have.

For example, Amazon ushers as support of the injunction an email from Northstar's former CFO Brent Gray regarding the need to set up a meeting with referral partner Casey Kirschner, implying that Mr. Watson and Northstar considered Casey a referral partner and were paying him.

Dkt. 787 at 13. However, it is obvious that the reference to Casey was simply a typo, and Mr. Gray was in fact referring to Christian Kirshner. Subsequent emails in the thread (which Amazon has full access to but conveniently does not mention) refer to *Christian* Kirschner's availability for the meeting, and include a meeting invite sent to Christian, not Casey Kirschner. Ex. G [WDC0357903-WDC0357905; WDC0354807-WDC0354809]. Additionally, Amazon continues to cite to Timothy Lorman's affidavit as "providing 'direct' and 'powerful' evidence 'beyond that which is necessary' for preliminary relief," Dkt. 787 at 7, despite Mr. Lorman's sworn testimony at his deposition that he did not have personal knowledge that monies paid to Villanova Trust by Northstar were going to Carl Nelson and Casey Kirschner and that his knowledge derived from the reading the pleadings in this case. Dkt. 696-5 at 136:22-138:6. Mischaracterizations such as these are precisely why an evidentiary hearing is necessary—due process requires that the Watson Defendants have a full and fair opportunity to challenge Amazon's presentation of the evidence and present their own competing evidence.

Similarly, Amazon states with minimal support or discussion that the injunction is supported by an adverse inference against the Watson Defendants based on third parties who invoked their Fifth Amendment rights. This bold assertion is misleading and unsupported, as it is inappropriate to apply such an adverse inference to prevent an evidentiary hearing or dissolution of the injunction. The persons who took the Fifth, Christian Kirschner, Will Camenson, and Kyle Ramstetter, are third parties Amazon did not name in the complaint, yet Plaintiffs assert an inference against the Watson Defendants who have not themselves invoked the Fifth Amendment, have submitted a sworn declaration denying the key allegations in full, and have offered to testify

15

at deposition and at an evidentiary hearing.[8] Fundamentally (and pursuant to Amazon's own case law), an adverse inference must be determined by the Court on a case by case basis—it cannot be unilaterally declared by a party. *See United States v. Mallory*, 988 F.3d 730, 740 (4th Cir. 2021). Further, such an inference, particularly in the case of a third party witness, requires a high showing of connectedness between the third party and the defendant, and specific protections which are not present here. *Id.* (allowing an inference against a third party co-conspirator because the challenged jury instructions first required a finding that the underlying conspiracy actually existed). Simply put, if Amazon wants to assert that they are entitled to an adverse inference in support of a preliminary injunction, they should do so at an evidentiary hearing.

> ### D.   Compliance With the Injunction and Contempt Order Has No Bearing on the Continued Legitimacy of the Injunction.

Lastly, Amazon devotes great time to arguing that the injunction must be upheld because the Watson Defendants have not fully complied with the terms of the Preliminary Injunction and Contempt Order. Dkt. 787 at 3, 29. Once again, this argument is nothing more than an attempt to obscure the actual issue at hand—the fact that Amazon obtained an extraordinary injunction against the Watson Defendants based on false and misleading evidence. Amazon cites no case law or support for the proposition that a party's non-compliance with an injunction can justify the continued existence of that injunction when that injunction is no longer equitable in the first instance. While the Watson Defendants disagree with Amazon's characterization of Mr. Watson's compliance with the injunction and contempt order, such compliance simply has no bearing on

---

[8] The inapplicability of this inference is compounded by the fact that the Watson Defendants also wish to obtain the testimony of these witnesses and believe that such testimony would further exonerate the Watson Defendants. Defendants in this case attempted to conduct full depositions of each party and at numerous points in each deposition challenged the assertion of privilege in an attempt to gain substantive responses. *See e.g.* Ramstetter Deposition Ex. H at 81:3–85:16.

whether or not the injunction is equitable based on the *Winter* factors aside from showing that Mr. Watson does not have anywhere near the funds to comply, and any concerns over his compliance should be addressed in separate proceedings.

## CONCLUSION

For the reasons stated above and in the Watson Defendant's Motion, the extraordinary preliminary injunction imposed against the Watson Defendants must be vacated. This case is complicated and extensive, spanning over years. New evidence and developments over these past two years severely undermines the basis for the injunction and calls into question its legitimacy and efficacy. The complexity of the record has been compounded by Plaintiffs' own errors and misrepresentations to the extent that it is unclear what evidence they have actually presented or produced justifying the imposition of such extraordinary relief. Accordingly, equity, fairness, and due process require that at a minimum, the Watson Defendants are given the opportunity to challenge and clarify this evidence through an evidentiary hearing. Until this occurs, it is patently inequitable to subject the Watson Defendants to the multitude and multiplying harms imposed by the extraordinary injunction.

WHEREFOR the Watson Defendants respectfully request that this court enter an order (i) vacating the June 5, 2020 Preliminary Injunction; (ii) ordering an evidentiary hearing so the

Watson Defendants have the opportunity to confront the evidence against them and present

evidence in rebuttal; and (iii) imposing any other relief this court deems appropriate.

Dated: May 27, 2022                    Respectfully submitted,

                                       */s/ Stanley L. Garnett*
                                       Stanley L. Garnett (*pro hac vice*)
                                       Amanda K. Houseal (*pro hac vice*)
                                       Sara R. Bodner (*pro hac vice*)
                                       Leah M. Regan-Smith (*pro hac vice*)
                                       Brownstein Hyatt Farber Schreck, LLP
                                       410 17th Street, Suite 2200
                                       Denver, CO 80202
                                       Telephone: (303) 223-1100
                                       Facsimile: (303) 223-1111
                                       sgarnett@bhfs.com
                                       ahouseal@bhfs.com
                                       sbodner@bhfs.com

                                       */s/ Jeffrey R. Hamlin*
                                       Jeffrey R. Hamlin (VA Bar No. 46932)
                                       George R. Calhoun (*pro hac vice*)
                                       James Trusty (*pro hac vice*)
                                       IFRAH PLLC
                                       1717 Pennsylvania Avenue NW, Suite 650
                                       Washington, DC 20006
                                       Telephone: (202) 524-4140
                                       Facsimile: (202) 524-4141
                                       jhamlin@ifrahlaw.com
                                       george@ifrahlaw.com
                                       jtrusty@ifrahlaw.com

                                       *Counsel for WDC Holdings LLC, Brian
                                       Watson, Sterling NCP FF, LLC, Manassas
                                       NCP FF, LLC, NSIPI Administrative Manager,
                                       and BW Holdings LLC*

I hereby certify that on May 27, 2022, I will electronically file the using the Court's CM/ECF system, which will provide service to all counsel of record, and will separately email *pro se* parties, as follows:

Elizabeth P. Papez
Patrick F. Stokes
Claudia M. Barrett
Michael R. Dziuban
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
epapez@gibsondunn.com
pstokes@gibsondunn.com
cbarrett@gibsondunn.com
mdziuban@gibsondunn.com

Veronica S. Moye
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
vmoye@gibsondunn.com
*Counsel for Plaintiffs* Amazon.com*, Inc. and Amazon Data Services, Inc.*

Aaron G. McCollough
McGuireWoods LLP
77 West Wacker Drive, Suite 4100
Chicago, IL 60601
amccollough@mcguirewoods.com
*Counsel for Receiver*

Casey Kirschner*
635 N. Alvarado Lane
Plymouth, MN 55447
By email: casey.kirschner@gmail.com

Alex Little
Rachel Friedman
Burr & Forman LLP
222 Second Ave. South, Suite 2000
Nashville, TN 37201
Alex.little@burr.com
rfriedman@burr.com
*Counsel for Carleton Nelson and Cheshire Ventures*

/s/ *Jeffrey R. Hamlin*
Jeffrey R. Hamlin

* I further certify that I will mail the aforementioned materials via First-Class Mail to Mr. Kirschner at this address.