# EXHIBIT C

1

| | |
|---|---|
| 1 | UNITED STATES DISTRICT COURT |
| | EASTERN DISTRICT OF VIRGINIA |
| 2 | ALEXANDRIA DIVISION |

```
 3  ------------------------------x
                                 :
 4  AMAZON.COM, INC., et al.,     : Civil Action No:
                                 :
 5              Plaintiffs        :
                                 :
 6              versus            : 1:20-cv-484
                                 :
 7  WDC HOLDINGS LLC, et al.,     : April 8, 2022
                                 :
 8              Defendants.       :
    ------------------------------x
 9
    The above-entitled Motion hearing was heard before the
10  Honorable Theresa C. Buchanan, United States District Judge.

11                  A P P E A R A N C E S

12   FOR THE PLAINTIFFS:   PATRICK F. STOKES, Esq.
                           AMANDA STERLING, Esq.
13                         MICHAEL R. DZIUBAN, Esq.
                           Gibson Dunn & Crutcher LLP
14                         1050 Connecticut Ave NW, Suite 300
                           Washington, DC 20036-5306
15
     FOR THE DEFENDANTS:   JEFFREY R. HAMLIN, Esq.
16   (Brian Watson)        Ifrah Law
                           1717 Pennsylvania Avenue, NW
17                         Suite 650
                           Washington, DC 20006.
18
                           STANLEY L. GARNETT, Esq.
19                         LEAH MAE REGAN-SMITH, Esq.
                           AMANDA KRISTINE HOUSEAL, Esq.
20                         Brownstein Hyatt Farber Schreck, LLP
                           410 Seventeenth St, Suite 2200
21                         Denver, CO 80202

22   FOR THE DEFENDANTS:   ADAM R. SMART, Esq.
     (Carleton Nelson and   Burr & Forman LLP
23   Cheshire Ventures)    50 North Laura Street
                           Suite 3000
24                         Jacksonville, FL 32202

25
```

2

```
 1                          RACHEL R. FRIEDMAN, Esq.
                            Burr & Forman LLP
 2                          420 North 20th Street
                            Suite 3400
 3                          Birmingham, AL 35203

 4

     TRANSCRIBER:                   MS. TONIA M. HARRIS, RPR
 5                                  United States District Court
                                    401 Courthouse Square
 6                                  Fifth Floor
                                    Alexandria, VA 22314
 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

─Amazon v. WDC Holdings─

3

1          **P R O C E E D I N G**

2   (Court proceedings commenced at 9:58 a.m.)

3          THE DEPUTY CLERK:  Amazon.com, Inc., et al. versus

4   WDC LLC, et al.  Civil action No. 20-cv-484.

5          THE COURT:  Good morning.

6          MR. STOKES:  Good morning, Your Honor.  Patrick

7   Stokes, Amanda Sterling, and Michael Dziuban for Amazon.

8          THE COURT:  All right.

9          MR. GARNETT:  Good morning, Your Honor.  Stan

10   Garnett, Amanda Houseal, Leah Mae Regan-Smith, and Jeff Hamlin

11   for Brian Watson, who is also present.

12          THE COURT:  All right.

13          MR. GARNETT:  And the Watson defendants.

14          THE COURT:  All right.  Good morning.

15          MR. SMART:  Adam Smart and Rachel Friedman from Burr

16   and Forman on behalf of Carleton Nelson and Cheshire Ventures.

17          THE COURT:  All right.  Good morning.

18          I believe we covered everybody.  How many thousands

19   of dollars is it for this half-hour hearing.

20          So this is on the competing motions for leave to

21   withdraw and to compel.  And I've read all the pleadings.

22          Is there anything that you would like to add to this

23   motion?

24          MR. STOKES:  Your Honor, we're happy to clarify

25   anything in our briefs so we'll follow your lead on that.

Amazon v. WDC Holdings

4

1          THE COURT:  Okay.

2          MR. STOKES:  If I could, let me start with, we

3    recognize we're here today because of our error.  And we

4    apologize to the Court for that.  And certainly that was, I

5    think the Court would understand, that was not intended

6    despite some of the defense claims.  And so we certainly

7    apologize to the Court for that.

8          THE COURT:  Thank you.

9          MR. STOKES:  I'm happy to talk through any --

10         THE COURT:  I have questions for the defendants at

11   this point.  Thank you.  Who would like to address this?

12         MR. GARNETT:  Good morning, Your Honor.  Stan

13   Garnett.  And I'm happy to answer questions or we're happy to

14   kind of outline how we see the issues.

15         THE COURT:  Well, I guess my question to you is that

16   you admit that these lawyers don't have any personal knowledge

17   other than what they gleaned from the documents that they

18   reviewed and so forth, correct?

19         MR. GARNETT:  Yes, that's what we've been told.

20         THE COURT:  Okay.  And what they disclosed in their

21   declarations certainly is not privileged information since

22   they disclosed it, isn't that correct?

23         MR. GARNETT:  That's correct, Your Honor.

24         THE COURT:  Okay.  And what useful information,

25   beyond what they saw in these documents, do you really think

─Amazon v. WDC Holdings─

5

1   you will get from these lawyers who just didn't know anything

2   about it, other than what their documents -- the documents

3   that they reviewed?

4          MR. GARNETT:  Sure.  I will try to answer that, Your

5   Honor, with a little bit of context of the case, because the

6   Court knows how difficult the case has been for the defense

7   and how difficult it is, particularly, for Mr. Watson.

8              This, of course, is a case that is very much a

9   challenge, because we're going to establish in this case now

10  that we can finally get into discovery, that, in fact,

11  Mr. Watson is innocent.  He did not do what they have claimed

12  he did.  And as the Court may remember from the early motions

13  practice about the injunction -- (audio interruption) -- et

14  cetera, it took us quite a while, in fact, until almost the

15  end of November to be able to begin this process of discovery.

16  And because plaintiffs started getting very aggressive with

17  the United States Attorney in February of 2020 to get this

18  investigation started, it put all the defendants in a very

19  tough spot because of the issues about target letters and

20  Fifth Amendment rights, et cetera.

21             So we've been very anxious to get into this to

22  figure out why they believe what they believe about Mr. Watson

23  and the other defendants.  And so, let me zero in on one

24  particular point, Your Honor.  The second amended complaint,

25  which became kind of the operative complaint, makes very

—Amazon v. WDC Holdings—

6

1   specific allegations about a person named Informant No. 1, and

2   it's presented in a very kind of cloak-and-dagger way.

3   Informant No. 1 knew this and made representations and then

4   those representations were made to this fellow named Matt

5   Doden who they've now said is a person that handled the

6   investigation.

7          So when the case was first filed and we were trying

8   to deal with the implications of what, as I've said many times

9   in 40 years of practice, I've never had a case where I lost it

10   on the day that it was filed, and that's what happened here.

11          We've been trying to figure out who is this -- who

12   is this Informant No. 1 who supposedly had knowledge of a --

13   of a wide range and scheme and told it to this Mr. Doden who

14   put it in his declarations.  Well, it turns out and we asked

15   and it was disclosed, and Judge O'Grady did not disclose the

16   name of it; eventually in discovery we figured out that

17   Informant No. 1 was a person named Danny Mulcahy.

18          Danny Mulcahy worked for Northstar and for Brian

19   Watson for a period of time and then eventually in late 2019

20   he sent an e-mail to Jeff Bezos of Amazon.  We finally got to

21   take Danny Mulcahy's deposition last week in Las Vegas and it

22   was quite a remarkable event because it established what we

23   said all along, which is, he didn't have any knowledge of this

24   scheme or of kickbacks or anything else.  He simply have heard

25   office cooler gossip, casual talk around the office.  He had

─────Amazon v. WDC Holdings─────

7

1    no specific knowledge.

2        Now, why is that relevant to the Court's question?

3    Because Matt Doden of Amazon interviewed Danny Mulcahy three

4    times by phone and put in his affidavit that, in fact,

5    Mr. Mulcahy, Informant No. 1, did have specific knowledge.  So

6    what we want to try to do, Your Honor, and I understand the

7    issues of privilege, et cetera, and we can figure out what all

8    that means in these depositions as we do with any other, is we

9    want to try and sit down and figure out how did this happen;

10    how did it develop; did these various strident affidavits and

11    pleadings were [sic] filed to delay this out that led to the

12    injunction?

13        And then, finally, particularly, in the instance

14    with Laura MacDonald, who is a particular critical witness,

15    Your Honor, she not only signed five times the 53 paragraph

16    affidavit laying out a verified declaration, laying out

17    this extremely significant scheme that the whole case is based

18    on, but she also was very involved in dealing with the United

19    States Attorney's Office, met with the United States

20    Attorney's Office based on discovery we got from Amazon close

21    to 60 times beginning in February of 2020 and was constantly

22    in touch back and forth.

23        Now, Ms. MacDonald's deposition is particularly

24    relevant to the motion to amend that was just filed, because

25    one of the bases for the motion to amend is that they are

—Amazon v. WDC Holdings—

8

1  saying that they found out a whole lot of information just

2  recently in discovery.  In fact, Your Honor, I believe we're

3  going to be able to establish, with Ms. MacDonald's

4  deposition, that most of the information they're claiming now

5  they just found.  If they are claiming now that they just

6  found, they in fact themselves, led by Ms. MacDonald, started

7  providing this information to the United States Attorney in

8  February of 2020 to get the criminal investigation to start.

9         So the short answer to your question, Your Honor,

10  is, you never know what you know until you know it and until

11  we sit down and actually take these folks' depositions, it's

12  hard to know exactly where it's going to lead.  But

13  particularly in the case of Laura MacDonald, who has been such

14  a player and involved in every aspect of this, we need to sit

15  down and figure out what information did she have, what did

16  she present and how did that all come together.

17         THE COURT:  All right.  Thank you.  Is there anyone

18  else that wanted to address this?

19         MR. SMART:  Thank you, Your Honor.  I'll briefly --

20  I think they're related so we'll talk about sort of the motion

21  to compel and the underlying documents.  And I do agree that

22  if it was primary source documents they looked at, we probably

23  already have those.  I think that's -- that wasn't the point

24  of the motion.  What I don't necessarily agree with is if

25  there were created documents or things that are otherwise

─Amazon v. WDC Holdings─

9

1   communications that would have been privileged and those were

2   relied on and that formed the basis of what they presented and

3   said they could testify to, so long as it's not opinion-work

4   product, which we understand we don't get, those would be --

5   our argument is that those particular documents will be

6   waived.  It's not that we're looking for any sort of

7   organization of all the primary source documents.  They've

8   told us they've given us all of this and we don't dispute

9   that.  We take them at their word for that.

10          What we're looking for is if there are documents

11  that would otherwise have been privileged that were relied on

12  to prepare those affidavits and/or declarations and

13  verifications that by using that information and disclosing

14  it, they have actually waived privilege on those.  So

15  that's -- it's a distinction, I think, that's important to

16  make.  We're not sitting in there -- we're not saying you have

17  to organize everything you looked at, put it in front us just

18  like you looked at it.  That's not what we're asking for.

19  It's really those nonprimary source documents that they may

20  have relied on.  We don't know if they exist and the reason is

21  because the way the privilege logs are done.  There was an

22  agreement that you don't have to list every single document

23  once you get into that mode.  And so, otherwise every single

24  time an internal counsel sends an e-mail you'd have to log it.

25          So we just don't know that there are or aren't, but

─────Amazon v. WDC Holdings─────

1   typically when you're putting something together like that, in

2   my experience, is there's usually some internal memoranda and

3   things that are prepared that obviously there will be sections

4   of that that would be opinion-work product.  But there could

5   be, I'm sure you've seen it, where there are factual

6   recitations and things of that nature that are not

7   opinion-work product and that if there is a waiver, it would

8   be discoverable.

9          THE COURT:  All right.  Thank you.  All right.

10  Well, this is sloppy lawyering for sure to have outside

11  counsel sign a declaration as in their personal knowledge.

12  And there's no question in here though that they don't have

13  this personal knowledge of the facts in the declarations.

14  Yet, they only glean that from their view of the documents in

15  this case.  And as a practical matter, there's no useful

16  information to be derived from their depositions unless I

17  found that the attorney-client privilege have been waived

18  wholesale, which would give the defendants, you know, a day

19  advantage here in terms of being able to get into what is

20  truly privileged communications.

21          However, in this case, what the attorneys contest --

22  attested to is not privileged information.  So there was no

23  waiver of the privilege.  And to find otherwise, I don't

24  believe is justified that the information contained in the

25  affidavits, and I believe it would also completely offend this

─────────Amazon v. WDC Holdings─────────

11

1   case if I were to so rule.  So I do not think it is justified.

2   I do not think there was a waiver.  This was a big mistake, no

3   doubt.  But this is not a game of gotcha.

4          I find that there is no prejudice here because, of

5   course, Mr. Doden is going to be able to provide the same

6   information that was in the declarations and provide a

7   30(b)(6) deposition that I think will be more useful to the

8   defendants based on his role in this litigation so far.  So

9   the motion to withdraw the declarations and substitute by

10  Amazon is granted.

11         The motion by the defendant -- the defendant's

12  motion is denied.  I'm also going to deny the motion to compel

13  the documents.  Of course the documents relied upon by

14  Mr. Doden would have to be produced.  And let's deal, though,

15  with the emergency deposition as to Mr. Doden.

16         THE COURT:  It seems to me that really the only

17  information you need from Mr. Doden at this time, in order to

18  oppose the motion for leave to amend, is what they knew as to

19  these additional defendants and when they knew it.

20         Am I correct?

21         MR. SMART:  I think that's primarily correct.  There

22  are changes to the theories of the case to some extent.  I

23  know there has been a refining -- it's been phrased "a

24  refining of the allegations," and I'm well aware of the case

25  law that allows you to do that as the evidence goes, but to

─Amazon v. WDC Holdings─

12

1    the extent it is more than it is just sort of refining but a

2    wholesale change of a legal theory to support something, I do

3    believe if there are facts that would have elucidated that at

4    the time they knew them and we're at least entitled to ask

5    about that.  As a practical matter, I think that will be very

6    limited.  And the primary information will be about what they

7    understood about the additional parties and the roles of those

8    entities and individuals in the action.

9           So I think what I hear you saying, and I'm fine with

10   this, is not -- if they have concerns about the amount of time

11   it's going to prepare Mr. Doden for anything that I could

12   possibly ask him about, I have no problem bifurcating that

13   and, you know, allowing us to at least to go forward with the

14   portion on what we feel like we need to respond to the motion.

15          The only concern I have is I don't know where that

16   line gets drawn if we have some dispute while we're sitting

17   there, how to handle that, and I'm in an expeditious fashion.

18   But again, this isn't a situation where I necessarily believe

19   they have to prepare him for everything we could ask about the

20   investigation that we want to know before the hearing --

21   before the response is due.  So if there's a reasonable way to

22   bifurcate that, I'm happy to do so.  I just want to make sure

23   that there's some mechanism, if a dispute -- if a real true

24   dispute comes.

25          THE COURT:  When is your hearing date on the motion

─────Amazon v. WDC Holdings─────

13

1   for leave to amend?

2          MR. SMART:  It's the 22nd -- I think he moved it to

3   the 22nd and our response date is due on the 15th.

4          THE COURT:  Okay.

5          MR. SMART:  You know I think -- I suspect and I

6   haven't spoken to Amazon about this, I suspect they want to go

7   ahead and keep that where it is.  And so, I didn't ask to move

8   anything back because I think to allow them the time to prep

9   him, because I felt like that was probably not something they

10  wanted to do.  That is another option, but, you know, again,

11  we feel like we need that information from him at least for

12  the motion to amend right now.  We can, obviously, if

13  something is left after 30(b)(6) or if they need more time to

14  prep him for the other expect aspects, we certainly can add

15  the rest of that later.  That's not really an issue from our

16  standpoint.

17         THE COURT:  Okay.  Do you have anything to add to

18  your opposition?

19         MR. STOKES:  Yes, Your Honor, on the Doden

20  deposition.  Here is the context and here is why we think this

21  is challenging.  First, Mr. Doden is an investigation's

22  lawyer, among other things, an investigation's lawyer within

23  Amazon.  He works within their investigations function.  But

24  this investigation, as is the case with many companies when

25  they hire outside counsel, was conducted by outside counsel.

─Amazon v. WDC Holdings─

14

1   The discovery has been conducted by outside counsel.

2   Mr. Doden has no special independent knowledge of what we have

3   done in the investigation and what we've done in discovery.

4   And so, everything he would know about who knew what when, in

5   terms of Mr. Atherton and Demetrius Von Lacey, would have come

6   from --

7            THE COURT:  How long do you think it would take him

8   to get prepared on the specific topics of those additional

9   defendants and what you knew when?

10           MR. STOKES:  Yeah, so Your Honor, as a 30(b)(6)

11  witness, in other words, in that capacity, as Mr. Smart said,

12  if they're generally limited in that area, and we're not

13  getting into privileged areas, I think it would be a very

14  short deposition because I think his answer would be "I don't

15  know."

16           THE COURT:  Well, you have to prepare.

17           MR. STOKES:  Yeah, but what I've learned is that

18  we've learned about these things that you provided in

19  discovery.  I've offered to Mr. Smart, we'll provide a

20  declaration, we'll provide them the information when we learn

21  this.  What we learned came from them.  And we had very

22  limited information, as disclosed in our first and second

23  amended complaints about Mr. Atherton, who we thought of as

24  somebody who is setting up tax evasion structures.  We did not

25  know he was involved in the scheme itself.  The discovery

—Amazon v. WDC Holdings—

15

1  we've gotten of late has demonstrated his involvement in the

2  scheme itself and that's why we added the third amended

3  complaint including him.

4         So we can pull together a declaration to delineate

5  these issues or we can make Mr. -- we'd certainly prefer not

6  to, but make Mr. Doden available in a very narrow sensed, and

7  we would have to educate him on these issues as a 30(b)(6)

8  witness on that.

9         THE COURT:  All right.  Did you have anything to

10  add?

11         MR. GARNETT:  Yes, I do, Your Honor.  If I may, very

12  briefly.  Again, Stan Garnett.

13         Your Honor, the Doden situation is very interesting

14  because we've gotten several declarations from him, including

15  a brand new one last night.  The early ones all establish a

16  lot of involvement by Mr. Doden in the investigation.  As I

17  indicated earlier, the conversations with Dan Mulcahy, who was

18  the whistleblower, claimed to be a whistleblower, but turned

19  out not to know anything.  So the reason I make that point is

20  the motion to amend raises more issues than simply

21  Mr. Atherton and the additional parties.  It restructures the

22  claims against my clients and also against Mr. Smart's

23  clients.  And the issue is going to be one of why is this

24  being brought forward now at this point.  And, in fact, the

25  early Doden declarations, which have now been replaced by the

—Amazon v. WDC Holdings—

16

1  one we've got last night that says he doesn't know anything

2  independently, did establish significant independent

3  knowledge.

4         So I think a deposition on that point is appropriate

5  simply for us to understand and establish with the Court the

6  key issue in the Fourth Circuit about this kind of motion to

7  amend, which is what did the plaintiff know and when did they

8  know.

9         THE COURT:  Okay.  So I'm going to -- I'm going to

10 do both.  I'm going to order that you provide a declaration

11 within a few days as to what you knew when and to the changes

12 -- as to the changes in the amended complaint.  I'm going to

13 allow you a limited deposition of Mr. Doden as to what they

14 put in their declarations.  I don't want you going into some

15 wholesale review of all of the information in the amended

16 complaint.  This is even as to the changes in the amended

17 complaint that apply to Mr. Watson, just a matter of what did

18 they know when.  Not the theories that they have themselves,

19 but timing.  That's all it's going to be related to.  Then

20 later have a 30(b)(6) deposition in its entirety.

21        Now, the only thing is that -- I know your

22 opposition is due in a week, but I'm not quite sure -- can

23 Mr. Doden be prepared next week, even on that limited

24 information?  I mean I have no problem with moving this -- the

25 whole thing back a week if you need that.

─────────Amazon v. WDC Holdings─────────

17

1          MR. STOKES:  Your Honor, if I may, let us

2    communicate with defense counsel about that.  It's our strong

3    preference to keep the hearing on the 22nd.

4          THE COURT:  Okay.  Well, if you can get Mr. Doden

5    prepared, I'm fine with that.

6          MR. STOKES:  Yes.

7          THE COURT:  You all can talk and work that out.  As

8    I said, I don't have a problem with moving it back one week.

9    I don't want to put it back more than that.

10          MR. STOKES:  Okay.  And, Your Honor, if I may, just

11    to clarify for our motion substituted -- withdraw and

12    substituted, in addition to our motion for protective order

13    with regard to the --

14          THE COURT:  Oh, that's, of course, granted.  Yes.

15          MR. SMART:  I want to make sure I just understand

16    exactly what the parameters are for the deposition so that

17    it's clear when we're there, if that's okay.

18          THE COURT:  Sure.

19          MR. SMART:  So what I understand is they're going to

20    provide a declaration, he is going to be prepared as almost

21    like a 30(b)(6) to some extent.

22          THE COURT:  As to the changes in the -- as to the

23    declarations that they provide.

24          MR. SMART:  Am I allowed to ask him questions in his

25    role as investigator what he learned on these topics as well?

────────────Amazon v. WDC Holdings────────────

                                                              18

1            THE COURT:  No.  You're going to be limited to

2     timing.  Because this whole --

3            MR. SMART:  Sorry, let me rephrase.  I apologize.

4     Am I allowed to ask him in his role as investigator when he

5     learned about particular things as well?  Is that part of the

6     30(b)(6)?  If that makes sense.  I believe --

7            THE COURT:  Well, I think to that extent -- I think

8     it's a 30(b)(6), but as a 30(b)(6) deponent if he knew

9     something that was --

10           MR. SMART:  It counts.

11           THE COURT:  Yeah, it counts.

12           MR. SMART:  I just want to make sure so if I had a

13     question that it just didn't become a dispute.

14           THE COURT:  Well, I don't think there should be a

15     dispute between what he knew and what the company knew because

16     if he knew it, the company knew it.

17           MR. SMART:  Agreed.

18           THE COURT:  But this is only limited to timing, not

19     the substance.  Okay?

20           MR. SMART:  Right.  Understood.

21           MR. STOKES:  Thank you, Your Honor.  If I may, just

22     to clarify that.  This is on the new information.

23           THE COURT:  The new information.  What the changes

24     are in the amended complaint as to the substantive changes as

25     to what you knew when and the additional defendants as to what

─Amazon v. WDC Holdings─

19

1   you knew when.

2           MR. STOKES:  Yes.

3           THE COURT:  But not getting into the substantive

4   theories themselves, if I can.

5           MR. STOKES:  Understand.  They've served us with 88

6   topics for a 30(b)(6).

7           THE COURT:  That's a different deposition.

8           MR. STOKES:  Understood.  And so what -- what it

9   sounds to me -- so we're completely clear on the scope, with

10  regard to the additional new information and new defendants

11  when we knew that, not a deposition on the timing of when we

12  knew all the other stuff.

13          THE COURT:  Only the additional things that -- and

14  people that are complained in the amended complaint.

15          MR. STOKES:  Yes.

16          THE COURT:  Okay.  The changes, in other words,

17  timing only as to the changes.

18          MR. SMART:  Can I offer an example of a question

19  just to make sure because I want to add -- I just -- I can see

20  what may be happening so.

21          THE COURT:  Okay.

22          MR. SMART:  -- it's best to just --

23          So, for example, if there is a new allegation in the

24  proposed amended complaint that has some very detailed

25  specificity about a role that Mr. Atherton had.  However, they

─Amazon v. WDC Holdings─

20

1   were aware of say 70 percent of that before and it's sort of a

2   switch in that.

3           Am I allowed to ask them what they knew about that

4   other portion earlier because I think that is what we're

5   pointing out?

6           THE COURT:  You knew that they knew about the other

7   portion earlier, correct?

8           MR. SMART:  Well, I think we do.

9           THE COURT:  Okay.  So, no, don't go into the 70

10  percent that they already said that they knew about.

11          MR. SMART:  I don't know that they're saying they

12  knew that.  And so, I don't know what they're going to say,

13  because what they've done is they're saying, Well, we have put

14  into the amended complaint the things we learned in discovery.

15  And under the standard is you don't have to know every single

16  nuance of what you put in a complaint to have a claim.  And to

17  the extent I'm cabin into saying well you can't ask about

18  anything now what is in this production from your client about

19  Mr. Atherton, even though there certainly is other information

20  that is directly on the same topic and it would have been

21  sufficient to put them on notice that there was a claim

22  against him, I should be able to ask about that.  And that is

23  the crux of what I want to ask about.  I don't want to ask

24  them about when they got information from my client.  We gave

25  it to them.  I know what is in that.

─────Amazon v. WDC Holdings─────

1      THE COURT:  Okay.

2      MR. SMART:  I want to ask them what about this

3 particular theory, not the theory itself, what facts in this

4 theory did you know in 2020 and what is simply a gloss on that

5 that you're now saying, using the bases to bring a claim, that

6 you didn't have enough.  And so that's the distinction.  It's

7 not what did you learn specifically from my client when you

8 produced things in discovery.  It's what about this conduct by

9 Mr. Atherton did you know in 2020 and how does this gloss on

10 that suddenly give you the right to bring a claim now.  That's

11 the critical issue.  It's not -- and I know.

12      THE COURT:  This is a tough line that I'm trying to

13 draw and I understand that.  But I think what I am saying is

14 that if this is information that you provided them, then

15 there's no point in asking them about it, period.

16      MR. SMART:  I agree.  I want to ask about what they

17 knew before and I hear --

18      THE COURT:  What do you mean what they knew before?

19      MR. SMART:  What they knew before my client provided

20 discovery to them.  What did Amazon, through their

21 investigation, know.  My client only began discovery in this

22 case in December of this past year.  And so, their primary

23 claim is what our client gave them discovery is informing

24 these claims.  So what I want to find out is, putting all of

25 that aside, I know when you got that.  What about what you got

————Amazon v. WDC Holdings————

22

1   from my client did you already know.  What --

2           THE COURT:  No.  I mean you're going to ask them

3   what they knew before your client provided them.

4           MR. SMART:  And that's the critical inquiry for the

5   Court.

6           THE COURT:  Why?

7           MR. SMART:  Because if you already had enough

8   information to bring a claim against someone, then it's not

9   good cause to then suddenly bring a claim because you got an

10  additional one or two facts.  I mean in their footnote they

11  say they waited until they had admissible evidence to bring a

12  claim.  That's never the standard.

13          The standard is, do you have enough information to

14  reasonably believe there is a claim.  And so, if they're now

15  saying now that we have admissible evidence but we're going to

16  bring a claim, that's not the standard.  The standard is, did

17  you know enough previously to bring a claim and if you did,

18  then you need to explain why there's good cause to view this

19  right at the end of the action.  That's -- and I'm trying to

20  avoid getting into the motion to amend, but it's critical for

21  our understanding of that issue.  And so --

22          THE COURT:  I see.  All right.

23          MR. STOKES:  Your Honor, if I may clarify some of

24  this.  So, Your Honor, in our first amended complaint filed in

25  the summer of 2020, and in our second amended complaint filed

─Amazon v. WDC Holdings─

23

1   in the fall of 2020, we acknowledge that we knew of

2   Mr. Atherton's existence and knew of Mr. Von Lacey's name and

3   existence at some point in there.  And what we have come to

4   learn from their discovery, because they waived privilege, is

5   we have an engagement letter in which Mr. Atherton and the

6   defendants, the now said defendants, and Mr. Kirschner,

7   discussed in extraordinary detail of fraud scheme.  It's

8   stunning.

9          We have other documents that we've received that

10  they waived privilege over that also further clarified what

11  Mr. Atherton's role was.  We have bank records.  We have other

12  things we've learned in discovery from them of Mr. Atherton's

13  direct role in the scheme itself, which was not known to us.

14  We certainly have suspected this.

15         Now, bringing -- suing an attorney is a serious

16  issue.  We recognize that.  We did not want to have to go

17  half-cocked and allege that an attorney had been involved in a

18  fraud scheme.  We have now developed evidence of that, we

19  believe, in through discovery that is -- it's --

20         THE COURT:  Well, how difficult is it for you to

21  have Mr. Doden be able to provide information as to when those

22  documents were received and when those -- when that evidence

23  was --

24         MR. STOKES:  That's very easy.  For us to establish,

25  we learned new information and we learned it on these --  on

─Amazon v. WDC Holdings─

24

1   these states [sic].  This is the discovery that we received.

2          THE COURT:  Okay.

3          MR. STOKES:  What Mr. Smart is trying to do is go

4   into what we knew and what we did and what we learned about

5   Mr. Atherton prior to receiving that so that he can compare

6   the two and say, Well, you could have brought a complaint

7   earlier on lesser allegations and lesser evidence because you

8   suspected these things and that's all that's required for a

9   complaint is an allegation.  And what we're saying to the

10  Court is we brought the third amended complaint that includes

11  Mr. Atherton based on information that we actually received

12  information that demonstrated that he engaged in misconduct.

13  And that's why we included him in the third amended complaint.

14  That's easy to establish for him to delve into what our

15  investigation knew and when we knew it with regard to our --

16  that pre-discovery stage would be invading privilege.

17         THE COURT:  Okay.

18         MR. GARNETT:  Your Honor, I might be able to move

19  on.

20         THE COURT:  All right.  Good.

21         MR. GARNETT:  But I don't make any promises.  And

22  again, this is a very, very unusual case with a remarkable

23  history.  But this is why we raise the issue with regard to

24  Laura MacDonald, because part of the basis for their motion to

25  amend is deciding to information that Mr. Nelson's counsel got

─────Amazon v. WDC Holdings─────

25

1  from the U.S. Attorney's Office.  But we can establish, based

2  on the discovery that they've provided, that that information

3  alone was given to the U.S. Attorney who then turned it into a

4  reverse proffer.  And this is why being able to do a limited

5  deposition of Laura McDonald would have been --

6          THE COURT:  I'm not going to revisit that.

7          MR. GARNETT:  But the point is, Your Honor, this is

8  not a case of simply being very prudent about deciding who to

9  sue.  That's going to become clear.  But the point is they

10 have all of this information about Mr. Atherton from the very

11 beginning and it's important because the United States

12 Attorney's Office has had it because they've got it from them.

13 So some leeway, as we explore this in this deposition of

14 Mr. Doden, I think will be helpful to the Court to consider

15 the issues on the motion to amend.

16          THE COURT:  Okay.  I understand that this is not an

17 easy line to draw.  I think they may need to go into some of

18 this a little bit into what they knew, what Amazon knew prior

19 to disclosing the documents.  I think that they need to have

20 that leeway.  So again, I'm willing to push this back if you

21 needed me to, the hearing, and the opposition to get that

22 deposition done.  I hope you all don't fight over it.  I do

23 think they do need a little bit of leeway, but we're trying to

24 limit it, as I said, to timing of these disclosures, and

25 that's it.  Okay.

─Amazon v. WDC Holdings─

26

1           All right.  And I will tell you that if you do the

2   deposition next week after Tuesday, I will not be available

3   for an emergency phone call at all.  My son is getting

4   married, I'm leaving town.  I'm not talking to you guys.  The

5   week after, I will be here and if something comes up in the

6   middle of the deposition, although I hope it does not, I do

7   take emergency phone calls.  Okay.

8           All right.  So the motion is granted in part and

9   then you all can schedule the 30(b)(6) later.

10           MR. GARNETT:  Your Honor, I have one logistical

11   issue.

12           THE COURT:  Sure.

13           MR. GARNETT:  I'm just trying to keep -- to make

14   sure I'm in Virginia on the right dates on the right times.

15   It's a little tricky in this case.  I know the pretrial

16   conference is next Wednesday now.

17           THE COURT:  Right.

18           MR. GARNETT:  And I'm kind of wondering, do you have

19   a sense of what Judge Alston is going to expect from us in

20   that?

21           THE COURT:  Well, did we talk about, and I can't

22   remember, if you're going to do your docket -- you're going to

23   do your pretrial submissions later?

24           MR. GARNETT:  I think there was some discussion

25   that --

─────Amazon v. WDC Holdings─────

27

1          MR. SMART:  I know Mr. Stokes was here.  I ordered

2    the transcript yesterday and read it.  I was not aware, as

3    you're aware, it wasn't really that type of hearing.  I think

4    one attorney was here.  So it seems to me what you said was

5    that we have the final pretrial on --

6          THE COURT:  Have the final pretrial.  You pick a

7    trial date.  That's all you're doing.

8          MR. SMART:  But there was --

9          THE COURT:  Sorry.  Go ahead.

10          MR. SMART:  There were also deadlines as to when

11    things would be disclosed.  If the Court -- and maybe that's

12    something we should discuss with Judge Alston, I'm not sure.

13          THE COURT:  No.

14          MR. SMART:  Or should we do that with you?

15          THE COURT:  Yeah, with me.

16          MR. SMART:  If there would be an order in there

17    about what those particular requirements were, I think I could

18    tell from the hearing, but I wasn't quite sure.  And so, that

19    would be all that I ask if there would be an order about what

20    the deadlines are.

21          THE COURT:  Are you talking deadlines as to motions,

22    pretrial motions or just --

23          MR. SMART:  Or exchange any exhibits.

24          THE COURT:  Okay, no.  That's me.  And I have no

25    problem with you all agreeing on the dates that you're going

─────────Amazon v. WDC Holdings─────────

28

```
 1   to do your disclosures after all of this is finished.  After
 2   the 30(b)(6) even is fine.
 3              What I'm try trying to do is to get you to pick a
 4   trial date.  And that's really -- if you've not been to
 5   a final pretrial conference in this court, that's just about
 6   all he's going to do is ask you what date and figure that out.
 7   And he may set some dates for pretrial motions, but -- and
 8   he'll probably talk about trying to get you to settle, which I
 9   don't think is going to happen here.  So I think that would be
10   a waste of time, I would assume.
11              MR. GARNETT:  To be honest, Your Honor, there have
12   been actually some discussions.
13              THE COURT:  There have?
14              MR. GARNETT:  Yes.
15              THE COURT:  That's amazing.
16              MR. GARNETT:  Again, you know, this is just a chance
17   to, you know, raise issues on my mind.  I actually think a
18   settlement conference in this case --
19              THE COURT:  I'd be happy to do one if the parties
20   think it would be --
21              MR. GARNETT:  You know --
22              THE COURT:  I'm not sure what you're thinking.  I
23   don't see a head nod on this side.
24              MR. GARNETT:  Well, let me just tell you why, Your
25   Honor.
```

─────Amazon v. WDC Holdings─────

29

1          THE COURT:  Okay.

2          MR. GARNETT:  Obviously, we've had to deal with this

3    injunction for two years and we're still trying to figure out

4    exactly how we're going to handle that.  I mean actually

5    Mr. Watson is hanging in there.  You know once the ruling on

6    the motion to amend comes through, we're going to know what

7    this case is about, finally.  And I do believe that there's --

8    that it never hurts, and you know this sounds like you know

9    what lawyers always say, it never hurts to sit down and have a

10   mutual, take a look at the case and say, What's really going

11   on here and what are you trying to accomplish?

12          I've certainly had those discussions with my client,

13   and I know these are fine lawyers, who I'm sure they've had

14   them with the plaintiff, and I think it could be helpful.  And

15   I'll just put that out there.  And even if it doesn't result

16   in settlement, it may result in some refinement of what the

17   trial actually is about.

18          THE COURT:  Let me ask another question then.  If

19   the motion for a leave to amend is granted -- and I have no

20   idea whether I'm going to allow that or not -- and I think I

21   asked you last time that the additional defendants would

22   certainly need some time to conduct discovery.  I don't know

23   how involved they've been thus far, in terms of their need for

24   preparation.

25          MR. GARNETT:  I know most of the counsel for the

─────Tonia M. Harris OCR-USDC/EDVA 703-646-1438─────

─────Amazon v. WDC Holdings─────

30

1    additional defendants.  They've certainly been watching, but

2    they haven't been having five lawyers work the case like we

3    have.  I will tell you this, Your Honor, if the motion to

4    amend is granted, we're going to look seriously at

5    counterclaims to bring in the case.  That may complicate the

6    case.  We want to get this resolved.

7           You know, Mr. Watson, as I think the Court knows

8    from previous hearings, is funded by an insurance policy,

9    which is barely hanging in there and getting this done.  We

10   don't want this to drag on forever.  We want to try -- we can

11   try it on these current claims, but if it becomes a broader

12   case, we're going to look at whether we have an obligation to

13   bring those issues before the Court as well.

14          MR. STOKES:  Your Honor.

15          THE COURT:  I'm just wondering if it makes sense to

16   have the final pretrial after the motion for leave to amend.

17          MR. STOKES:  Your Honor, I would suggest that does

18   make sense, because I think that would, from Amazon's

19   perspective --

20          THE COURT:  Let's do that.  I don't know whether I'm

21   going to grant it or not, but we'll push it back a bit.  So

22   when do you think you'd be able to have Mr. Doden ready for

23   that limited deposition so that I can hear the motion for

24   leave to amend?

25          MR. STOKES:  Your Honor, if I may, I'll give you an

31

1   answer now if you insist.  Otherwise, I would ask if I can

2   file something with the Court to talk to the parties about a

3   day --

4           THE COURT:  That's fine.

5           MR. STOKES:  -- that we can come back to you.

6           THE COURT:  I can hear it any time in May, I think.

7   So or, you know, at the end of April, but you're on for the

8   22nd.  So I can hear it pretty much any time after that.

9           MR. GARNETT:  And, Your Honor if I may, as counsel

10  knows, we've been trying work around this.  I will be out of

11  the country (inaudible).  So I will not be able to be here on

12  that date.

13  (Statements were not completely heard.  Lawyer was not at the

14  mic.)

15          THE COURT:  Okay.  Well, I have no problem moving it

16  to May 6th or whenever.  And I will inform Judge Alston that

17  we'll push back the final pretrial until after the motion for

18  leave to amend.  And I think that may make the most sense.

19          MR. GARNETT:  I think that is wise.  The pretrial is

20  actually set up (inaudible) you know the dates of trial but if

21  you (inaudible.)

22  (Statements were not completely heard.  Lawyer was not at the

23  mic.)

24          THE COURT:  That might be a good idea.

25          All right.  So if you would get me an agreed

32

1   schedule for everything as soon as possible, and I'll let

2   Judge Alston know that I'm going to bump it back a few weeks,

3   The final pretrial.

4           MR. STOKES:  The final pretrial.  Yes, Your Honor.

5   We will talk and come back to the Court.  We will talk to

6   defense counsel and come back on what we think is --

7           THE COURT:  And I'm still fine with doing the

8   pretrial submissions after the final pretrial conference.

9           MR. STOKES:  Sure.

10          THE COURT:  We're just pushing it to allow the leave

11  to amend.

12          MR. GARNETT:  That all makes sense.  And I think

13  there's now deadlines for experts and summary judgment and all

14  of that.  We're trying to make sure we're clear on that, so.

15          MR. STOKES:  And, Your Honor, I think that's part of

16  the issue here with moving the deadline for the argument on

17  the third amended complaint out beyond the discovery

18  deadlines, it's, you know, everything is potentially tied

19  together quickly if that motion is going to be granted for the

20  third amended complaint.  And so, we'll talk internally with

21  them and propose dates that make sense of all of that when we

22  come to you with dates.

23          THE COURT:  All right.

24          MR. STOKES:  In terms of a settlement conference,

25  Your Honor, we'll simply talk with Amazon where, you know, I'm

33

1   sure the answer will be we're happy to sit down with the

2   Court.  We're clearly ships passing in the night here.

3   Mr. Garnett has made arguments that there's no evidence of

4   fraud and we're talking about mountains of evidence of fraud

5   and showing documents.  And Mr. -- you know, Mr. Nelson has

6   claimed innocence and we have records of him having received

7   money.  We're happy to talk about settlement.  I don't want

8   the Court to think --

9              THE COURT:  I think it would make sense to do that

10  after all of this.

11             MR. STOKES:  Yes.

12             THE COURT:  But I am happy to do it if the parties

13  feel that it would be useful.  I don't want to waste my time

14  --

15             MR. STOKES:  Understood.

16             THE COURT:  -- if this parties aren't interested.

17             MR. GARNETT:  Certainly we have our disagreements

18  with Mr. Stokes, but we respect their efforts to work with

19  their client in his case.  It's a whole different case

20  (inaudible) response.  And having a new (inaudible) I mean

21  take a look at it.  Whatever counsel thinks they have or

22  whatever we think we have in this case.  Let's say, Okay,

23  what's really going on here, is there -- is this essentially a

24  business dispute.  Is there a way to settle this.  I think it

25  can happen.  While (inaudible) on this but (inaudible) trial,

34

1    Your Honor.

2    (Statements were not completely heard.  Lawyer was not at the

3    mic.)

4              THE COURT:  Okay.  Let me know.  All right.  Court

5    stands in recess.

6              MR. GARNETT:  Thank you, Your Honor.

7

8              **(Proceedings adjourned at 10:37 a.m.)**

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    CERTIFICATE OF REPORTER

2

3          I, Tonia Harris, an Official Court Reporter for

4   the Eastern District of Virginia, do hereby certify that I

5   reported from the Court's FTR recording, in my official

6   capacity, the proceedings had and testimony adduced upon

7   the Motion hearing in the case of the **AMAZON.COM, INC., et**

8   **al. Versus WDC HOLDINGS LLC, et al**. Civil Action No.:

9   1:20-cv-484, in said court on the 8th day of April, 2022.

10          I further certify that the foregoing 35 pages

11   constitute the official transcript of said proceedings.

12          In witness whereof, I have hereto subscribed my

13   name, this April 11, 2022.

14

15

16

17

18

19

20

21   _____

          Tonia M. Harris, RPR
22          Official Court Reporter

23

24

25

                                                              35