IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| AMAZON.COM, INC. and AMAZON DATA SERVICES, INC.,<br><br>    Plaintiffs,<br><br>v.<br><br>WDC HOLDINGS LLC dba NORTHSTAR COMMERCIAL PARTNERS; BRIAN WATSON; STERLING NCP FF, LLC; MANASSAS NCP FF, LLC; NSIPI ADMINISTRATIVE MANAGER; NOVA WPC LLC; WHITE PEAKS CAPITAL LLC; VILLANOVA TRUST; CASEY KIRSCHNER; ALLCORE DEVELOPMENT LLC; FINBRIT HOLDINGS LLC; CHESHIRE VENTURES LLC; CARLETON NELSON; 2010 IRREVOCABLE TRUST; SIGMA REGENERATIVE SOLUTIONS LLC; CTBSRM, INC.; RODNEY ATHERTON; DEMETRIUS VON LACEY; RENRETS LLC,<br><br>    Defendants. | CASE NO. 1:20-CV-484-RDA-TCB |
| 800 HOYT LLC,<br><br>    Intervening Interpleader Plaintiff, Intervening Interpleader Counter-Defendant,<br><br>v.<br><br>BRIAN WATSON; WDC HOLDINGS, LLC; BW HOLDINGS, LLC,<br><br>    Interpleader Defendants,<br><br>and<br><br>AMAZON.COM, INC., and AMAZON DATA SERVICES, INC.,<br>    Interpleader Defendants,<br>    Interpleader Counter-Plaintiffs. | |

**PLAINTIFFS' RESPONSE TO WATSON DEFENDANTS'
<u>MOTION FOR LEAVE TO FILE MULTIPLE SUMMARY JUDGMENT MOTIONS</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... iii

INTRODUCTION ...................................................................................................................1

BACKGROUND .....................................................................................................................3

ARGUMENT ...........................................................................................................................6

    I.    Defendants' Knowledge of the White Peaks Transaction Is Not An Issue That Merits Piecemeal Summary Judgment Motions in Violation of Local Rule 56 .............7

    II.   The Requested Summary Judgment Motion Would Be Premature and Wasteful .........9

    III.  Defendants' Proposed Motion Would Also Be Futile Because Even the Incomplete Record They Cite Establishes Multiple Legal and Factual Barriers to Relief ...................................................................................................................11

**CONCLUSION** ...................................................................................................................14

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Amazon.com Inc. v. WDC Holdings, LLC*,
  2020 WL 4353563 (E.D. Va. July 28, 2020) ................................................................. 5

*Birdsong v. Ponton*,
  2016 WL 1031299 (E.D. Va. Mar. 9, 2016) ............................................................... 1, 6

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ....................................................................................................... 9

*Cobalt Boats, LLC v. Sea Ray Boats, Inc.*,
  2017 WL 11463824 (E.D. Va. May 1, 2017) ...................................................... 2, 7, 10

*Emami v. Bolden*,
  2016 WL 8243169 (E.D. Va. Sept. 7, 2016) ............................................................ 7, 10

*ePlus Tech., Inc. v. Aboud*,
  313 F.3d 166 (4th Cir. 2002) ......................................................................................... 9

*Ingle ex rel. Est. of Ingle v. Yelton*,
  439 F.3d 191 (4th Cir. 2006) ....................................................................................... 10

*Evans v. Jabe*,
  2013 WL 1155532 (E.D. Va. Mar. 19, 2013) ................................................................ 6

*Frank Shop, Inc. v. Crown Cent. Petroleum Corp.*,
  564 S.E.2d 134 (Va. 2002) ............................................................................................ 8

*Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*,
  43 F.3d 922 (4th Cir. 1995) ........................................................................................... 9

*Quick Serve Concepts, LLC v. Cedar Fair, L.P.*,
  83 Va. Cir. 59 (Va. Cir. Ct. 2011) ................................................................................. 8

*Salinas v. United States*,
  522 U.S. 52 (1997) ......................................................................................................... 7

*Sectek, Inc. v. Diamond*,
  2016 WL 4445470 (E.D. Va. Aug. 19, 2016) ..................................................... 2, 9, 10

*Thomas v. Windsor-Mount Joy Mut. Ins. Co.*,
  2008 WL 11383487 (E.D. Va. Aug. 6, 2008) .............................................................. 14

*Walker v. Hershey*,
   979 F.2d 849 (4th Cir. 1992) .................................................................................................. 9

*Warren v. Tri Tech Labs., Inc.*,
   2013 WL 2111669 (W.D. Va. May 15, 2013) ...................................................................... 10

*Webster v. Rumsfeld*,
   156 F. App'x 571 (4th Cir. 2005) ........................................................................................... 9

*Zito v. Leasecomm Corp.*,
   2004 WL 2211650 (S.D.N.Y. Sept. 30, 2004) ....................................................................... 8

**STATUTES**

18 U.S.C. § 1961 et seq. ................................................................................................................. 2

**RULES**

E.D. Va. L. R. 56(C) .................................................................................................................. 1, 6

Fed. R. Civ. P. 56(a) ...................................................................................................................... 2

Plaintiffs Amazon.com, Inc. and Amazon Data Services, Inc. ("Amazon") respectfully submit this opposition to Defendants' Motion for Leave to File Multiple Summary Judgment Motions. Dkts. 827-28 ("Mot."). Unless otherwise noted, references to "Defendants" or "Watson Defendants" include Brian Watson, WDC Holdings LLC d/b/a Northstar Commercial Partners ("Northstar"), Sterling NCP FF, LLC, Manassas NCP FF, LLC, and NSIPI Administrative Manager.

## INTRODUCTION

This District's Local Rules presumptively prohibit multiple summary judgment motions. E.D. Va. L. R. 56(C); *Birdsong v. Ponton*, 2016 WL 1031299, at *1 n.4 (E.D. Va. Mar. 9, 2016). The Watson Defendants seek leave to depart from this rule based on the assertion that multiple Rule 56 motions filed months apart would "simplify and streamline" this case. Mot. 3. That is incorrect, and Defendants' motion to depart from the Court's standard practice should be denied for at least three reasons.

*First*, the only issue on which the Watson Defendants seek to file an early Rule 56 motion is their knowledge of just one of the many kickback transactions covered by the preliminary injunction against them: namely, the White Peaks sale in which former Northstar employees obtained an $18 million profit on a same-day flip of a parcel sold to Amazon and diverted part of that profit into kickback payments to Watson and Amazon insider Casey Kirschner. But this issue is not a candidate for early Rule 56 resolution because it is inextricably entwined with other transactions that together create racketeering and conspiracy liability for all the acts of the enterprise. Defendants concede that those other transactions—and Amazon's legal claims arising from them—are not ripe for summary judgment, and their motion cites no authority to justify separating out the White Peaks transaction. Instead, the Defendants simply retread the same knowledge and intent arguments that they lost in their 2020 motion to dismiss, *see* Dkt. 176 at 14-15, 33-34, 38

n.22, and in their attacks on the preliminary injunction this Court entered in June 2020 and the Fourth Circuit affirmed last year, *see* Dkts. 57, 99, 318–19. Defendants' knowledge of the White Peaks transaction cannot be severed from their knowledge of the unlawful enterprise Amazon alleges under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 et seq., which imposes liability collectively on all members of the conspiracy. Accordingly, a partial Rule 56 motion on Defendants' knowledge of the White Peaks kickbacks will not resolve or streamline the claims in this case and does not justify departing from this "[d]istrict's local rule against multiple summary judg[e]ment motions" *Cobalt Boats, LLC v. Sea Ray Boats, Inc.*, 2017 WL 11463824, at *1 (E.D. Va. May 1, 2017); Mot. 2 (seeking leave based almost entirely on grievances with the Court's prior rulings, including the "highly punitive preliminary injunction").

*Second*, any consideration of the Watson Defendants' role in the White Peaks transaction is premature under Rule 56 itself because essential discovery remains ongoing. *Sectek, Inc. v. Diamond*, 2016 WL 4445470, at *3 (E.D. Va. Aug. 19, 2016) ("[a]s a general rule . . . summary judgment is not appropriate prior to the completion of discovery.") (quotation marks omitted); Fed. R. Civ. P. 56(a) (requiring motion to show "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law"). The evidence relating to the White Peaks Transaction is far from the "developed discovery record" Defendants claim it is. Mot. 5. Most critically, **Watson and Northstar have yet to be deposed by Amazon**, and important document discovery remains ongoing. For example, Casey Kirschner, the Watson Defendants' primary contact at Amazon who received kickbacks on the White Peaks transaction, has withheld key documents that this Court recently ordered him to produce and Amazon has yet to receive. *See*

Dkt. 835. That alone demonstrates that an early summary judgment motion on the Watson Defendants' knowledge of the tainted aspects of the White Peaks transaction is not ripe for adjudication.

*Third*, the motion Defendants wish to file in contravention of Local Rule 56 would waste, rather than conserve, judicial resources because it is clear even from today's incomplete discovery record that Amazon's claims present genuine issues of material fact with regard to the White Peaks transaction. The current record amply demonstrates—with even greater force than it did when this Court and the Fourth Circuit affirmed the preliminary injunction—that the Defendants *did* knowingly profit from Amazon's payments on the White Peaks deal by taking $5 million from Ramstetter and Camenson after those individuals disclosed that the deal was tainted by kickbacks to Amazon insiders. Accordingly, the Court should deny Defendants' request to depart from Local Rule 56 and file a premature and futile motion for partial summary judgment on the White Peaks transaction.

## BACKGROUND

This case involves a single racketeering enterprise in which the Watson Defendants[1] conspired with two former Amazon managers—Casey Kirschner and Carleton Nelson—to obtain lucrative Amazon development contracts in exchange for kickback payments.[2] Both this Court and the Fourth Circuit found Amazon's claims likely to succeed on the merits *prior* to discovery that

---

[1] The Watson Defendants are a Colorado real estate development company (Northstar) and its CEO (Watson), along with a variety of entities Northstar and Watson created to facilitate the Amazon deals. Dkt. 99. Beginning in 2017, these Defendants cultivated a relationship with Nelson and Kirschner—in which Nelson and Kirschner steered transactions to Defendants in exchange for undisclosed kickback payments (the "RICO Enterprise"), Dkts. 10–12, 41–46, 57, 68–69, 84–85, 100, 150, 191, 210–218, 231, 256, 285–86, 291, 308, 330.

[2] The facts of Defendants' conspiracy are set out in greater detail in Amazon's complaint and prior submissions, *see* Dkt. 765; *see also*, e.g., Dkts. 10, 12, 41, 43, 46, 59, 150, as well as related court orders and opinions. Dkts. 99, 318.

3

has since strengthened Amazon's case on all of the challenged transactions, including the White Peaks transaction addressed in Defendants' current motion. Mot. 2-4; *see generally* Dkt. 99 at 10-11 (finding that Amazon "well-satisfied" its burden of showing it was likely to succeed on claims involving Defendants' participation in "at least nine different commercial lease deals . . . *a direct 'flip' purchase* [White Peaks], and at least four different Project Entities") (emphasis added); Dkts. 318-19 (affirming these findings).

**The White Peaks Transaction.** The only transaction addressed in Defendants' current motion is a single land sale (the White Peaks Transaction) that comprised just one of more than 10 Amazon real estate deals tainted by kickbacks. Nine of these transactions were the Northstar lease deals at the heart of the preliminary injunction and on which Defendants do not seek leave to file an early summary judgment motion. Their current motion focuses solely on the White Peaks transaction, a flip sale in which two former Northstar employees (Kyle Ramstetter and Will Camenson) purchased a parcel of land for $98 million and sold it to Amazon for $116.4 million on the same day. Dkt. 161-1; Dkt. 160-7 to -10; *see also* Dkt. 764 ¶¶ 220–43. Defendant Casey Kirschner facilitated the deal internally within Amazon, supporting the purchase price and failing to disclose the nearly $18 million in same-day profits for Ramstetter and Camenson—profits they then used to pay kickbacks to Kirschner, and to pay Watson the $5 million that the Court included in the preliminary injunction provision for judgment security on Defendants' unjust gains.

Watson now seeks to file an early partial summary judgment motion based on self-serving evidence that he received that $5 million payment only after the tainted transaction closed. But much of that evidence was in the record when this Court and the Fourth Circuit granted the injunction, and it does nothing to disprove Watson's liability. Notably, when Watson learned of the deal, Dkt. 110-8, he secretly recorded himself purportedly confronting Ramstetter and Camenson about

4

their failure to notify him of the transaction. Dkt. 155-9. During the confrontation, Watson pressed Ramstetter to "pay us [Northstar] the money [nearly $18 million] immediately" because "[a]nything that comes from [Amazon deals] should be Northstar." *Id* at 5. But Watson's tactics backfired when Ramstetter responded by referencing the Amazon kickback scheme, telling Watson that "what we did for Amazon, that's FBI . . . You have two corporate real estate people for the largest tenant in the world that you can trace the money, it will get out of hand," and that "[w]e all know what we did." *Id.* at 8.

Following these conversations, Watson did not report the scheme to Amazon or law enforcement. Instead, in early October 2019, Watson sent Ramstetter and Camenson a draft settlement agreement in which he proposed that Northstar retain 95% of the White Peaks proceeds. Dkt. 628. Ramstetter and Camenson responded by providing Watson with a high-level analysis of the "flow of funds" from the White Peaks transaction that showed approximately $5 million remaining after Ramstetter and Camenson's individual equity splits and $4.8 million in other "fees" that included kickback payments to Kirschner and Nelson. *Id.*

Watson took this $5 million from Ramstetter and Camenson under cover of "mediation" of alleged claims against them for "usurping" a Northstar corporate opportunity on the White Peaks sale to Amazon. Mot. 3. But Watson did not even adhere to this ruse by depositing the funds in a Northstar corporate account. Instead, he had the funds deposited into a personal account. Dkt. 46 ¶ 21. Based on this and other evidence, the Court found that this $5 million White Peaks payment was an unjust gain covered by the judgment security provision of the preliminary injunction entered in June 2020, Dkts. 57 ¶ 2; 155-9, and affirmed by the Fourth Circuit last year based on Amazon's voluminous record submissions, *see* Dkts. 30, 39, 40, 41–46, 57, 99; *Amazon.com Inc. v. WDC Holdings, LLC*, 2020 WL 4353563 at *2, *4 (E.D. Va. July 28, 2020). This Court

5

and the Fourth Circuit rejected Defendants' White Peaks-related arguments during these proceedings, and in November 2021 this Court held Defendants in "willful civil contempt of the Court's Preliminary Injunction," Dkt. 413, and appointed a third-party Receiver to manage their assets until they purge their contempt. Dkt. 433. They have refused to do so, and in April 2022 they filed a Motion to Vacate the Preliminary Injunction that remains pending. Dkt. 696.

*Ongoing Discovery*. After the Fourth Circuit affirmed the preliminary injunction and this Court held Defendants in contempt, the parties proceeded with merits discovery that remains ongoing with respect to the RICO and other claims in Amazon's May 2022 Third Amended Complaint. Dkt. 764. As relevant here, that discovery—which includes Fifth Amendment invocations, which give rise to adverse inferences, by the former Northstar employees who paid White Peaks kickbacks to Kirschner, Nelson, and Watson—confirms Watson's acceptance of the $5 million covered by the injunction. *See id.* ¶¶ 220–43; *infra* Part III. The Watson Defendants nonetheless seek leave to file an early Rule 56 motion concerning their knowledge of this transaction based on self-serving testimony from a handful of deponents that Watson negotiated his kickback after his former employees closed the transaction with Amazon and paid Kirschner and Nelson. Even on the current record, this evidence would not justify an early motion in violation of Local Rule 56, much less any summary judgment relief. Further, and critically, discovery remains ongoing and neither Watson nor Northstar has been deposed. In addition, Kirschner has not completed his court-ordered document production, and none of new Defendants has finished producing documents or been deposed.

## ARGUMENT

Local Rule 56(C) provides that, "[u]nless permitted by leave of Court, a party *shall not* file separate motions for summary judgment addressing separate grounds for summary judgment." E.D. Va. L. R. 56(C) (emphasis added); *see also Birdsong v. Ponton*, 2016 WL 1031299, at *1 n.4

(E.D. Va. Mar. 9, 2016) (noting "the general rule that a party shall not file separate motions for summary judgment" (citing E.D. Va. L. R. 56(C)); *Evans v. Jabe*, 2013 WL 1155532, at *2 (E.D. Va. Mar. 19, 2013) (same). This rule is designed to "preserve judicial resources," *Emami v. Bolden*, 2016 WL 8243169, at *2 (E.D. Va. Sept. 7, 2016), and to "simplify and streamline" the litigation, *Cobalt Boats, LLC v. Sea Ray Boats, Inc.*, 2017 WL 11463824, at *1 (E.D. Va. May 1, 2017). The Watson Defendants do not—and cannot—demonstrate good cause to overcome "this District's local rule against multiple summary judgement motions." *Id.* at *2.

I. **Defendants' Knowledge of the White Peaks Transaction Is Not An Issue That Merits Piecemeal Summary Judgment Motions in Violation of Local Rule 56**

Defendants contend that a separate motion for summary judgment as to the White Peaks Transaction is warranted because this transaction is "distinct" and contains "no parallels or similarities" to Amazon's claims with respect to the leases between Northstar and Amazon. Mot. 3. This claim is factually and legally baseless. The White Peaks transaction was tainted by kickbacks that Northstar funneled to Amazon insiders just like the leases that Defendants concede are not ripe for summary judgment now. All of these transactions thus support Amazon's RICO and related legal and equitable claims against the Watson Defendants. This point is critical, because it means that their request to file an early summary judgment motion on the White Peaks transaction would be improper even assuming Watson did not know about the White Peaks sale and kickbacks until after his employees closed the deal.

"One can be a [RICO] conspirator by agreeing to facilitate only *some* of the acts leading to the substantive offense." *Salinas v. United States*, 522 U.S. 52, 65 (1997) (emphasis added) (collecting cases). Indeed, under RICO, it is not even necessary that one individual personally commit each element of a RICO offense. "[I]t suffices that [a conspirator] adopt the goal of furthering or facilitating the criminal endeavor," which he may do "in any number of ways short of agreeing to

7

undertake all of the acts necessary for the crime's completion." *Id.* "It is commonplace in RICO enterprises for the members of the enterprise to engage in separate schemes or conspiracies, not all of which involve all of the participants in the scheme." *Zito v. Leasecomm Corp.*, 2004 WL 2211650, at *9 (S.D.N.Y. Sept. 30, 2004) (alteration and quotation marks omitted).[3] And unjust gains resulting from any inequitable conduct involved the scheme are recoverable both under RICO and the equitable claims set forth in Amazon's complaint. For these reasons alone, an early Rule 56 motion on the issue of Watson's alleged ignorance of the White Peaks deal and associated kickbacks before his former associates closed the deal will not resolve any of the claims against him.

Watson tries to avoid this conclusion by asserting that evidence about his White Peaks knowledge could entitle him to early summary judgment on the issue of "respondeat superior." Mot. 2, 4. But that is incorrect because respondeat superior is not the sole (or even primary) basis for Amazon's claims against him. *Id.* As detailed above, Amazon's RICO, fraud, and equitable claims are based on voluminous evidence and do not rest on whether Watson had knowledge of the White Peaks sale before it closed. And even with respect to White Peaks transaction alone, Amazon's claims do not turn on issues of respondeat superior. They rest on conspiracy, alter ego, and direct liability evidence against Northstar and Watson, including bank records and testimony showing that Watson placed $5 million in proceeds from the White Peaks transaction into a personal account *after* two Northstar employees advised him of their kickback payments to Nelson

---

[3] Defendants would also remain liable to Amazon for disgorgement on Amazon's unjust enrichment claim even setting aside the RICO claim. That is because a plaintiff can seek restitution from a third party that profits from an unjust transaction. *See Quick Serve Concepts, LLC v. Cedar Fair, L.P.*, 83 Va. Cir. 59 (Va. Cir. Ct. 2011) (citing *Frank Shop, Inc. v. Crown Cent. Petroleum Corp.*, 564 S.E.2d 134, 139 (Va. 2002)).

and Kirschner. Watson's claim that he had "no involvement whatsoever in the White Peaks Transaction" before it closed, Mot. 4, is thus irrelevant and cannot support any of the Rule 56 relief he seeks, particularly against the backdrop of the preliminary injunction rulings against him. *See* Dkt. 57; *see also* Dkt. 99 at 5, 12 (addressing evidence on the White Peaks sale).

**II.     The Requested Summary Judgment Motion Would Be Premature and Wasteful**

As a general rule, "summary judgment is appropriate only after the opposing party has had 'adequate time for discovery.'" *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 928 (4th Cir. 1995) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Thus, a motion for summary judgment is not ripe "if the nonmoving party has not had an opportunity to make *full discovery*." *Walker v. Hershey*, 979 F.2d 849 (4th Cir. 1992) (Table) (citing *Celotex Corp.*, 477 U.S. at 326) (emphasis added); *Webster v. Rumsfeld*, 156 F. App'x 571, 576 (4th Cir. 2005) ("As a general rule, however, summary judgment is not appropriate prior to the completion of discovery."); *Sectek, Inc. v. Diamond*, 2016 WL 4445470, at *3 (E.D. Va. Aug. 19, 2016) (same).

Here, "discovery [is] still open." *Sectek, Inc.*, 2016 WL 4445470, at *3. And critically, neither Watson *nor* Northstar has been deposed. Moreover, other key witnesses to the White Peaks Transaction—Kyle Ramstetter and Will Camenson—did not testify substantively in their depositions, instead asserting their Fifth Amendment right against self-incrimination on questions about White Peaks. Those invocations support adverse inferences against the Watson Defendants that buttress the voluminous injunction record affirmed against them. *See ePlus Tech., Inc. v. Aboud*, 313 F.3d 166, 179 (4th Cir. 2002) ("In a civil proceeding, a fact-finder is entitled to draw adverse inferences from a defendant's invocation of the privilege against self-incrimination."). Documentary discovery from Watson's co-conspirators, including Casey Kirschner, who facilitated the White Peaks deal from inside Amazon, and from Rodney Atherton, the lawyer Kirschner used to

9

launder the proceeds of the deal, also remain outstanding. *See* Dkt. 835. For all of these reasons, the factual record relating to the White Peaks Transaction is still developing. *See Ingle ex rel. Est. of Ingle v. Yelton*, 439 F.3d 191, 196-97 (4th Cir. 2006) (holding "that the district court prematurely granted summary judgment" where "the party opposing summary judgment is attempting to obtain necessary discovery of information possessed only by her opponent").

Allowing the Watson Defendants to file a partial summary judgment motion despite that outstanding discovery would contradict this Court's local rule and the decisions applying that rule, and would "unfairly prejudice" Amazon by forcing it to "defend [its claims] on an incomplete record." *Sectek, Inc.*, 2016 WL 4445470, at *3. Because "it is clear that discovery has not concluded" on the issued proposed for early motions practice, the requested Rule 56 filing would be at best "premature." *Warren v. Tri Tech Labs., Inc.*, 2013 WL 2111669, at *7 (W.D. Va. May 15, 2013); *cf. Emami*, 2016 WL 8243169, at *2 ("Plaintiff is not prejudiced by having to respond substantively to the Motion for Summary Judgment *following* the completion of extensive discovery." (emphasis added)). And the arguments in Defendants' request for leave establish that their proposed departure from Local Rule 56 would do nothing to "simplify and streamline" this litigation. *Cobalt Boats, LLC*, 2017 WL 11463824, at *1. The Watson Defendants admit that this is a "complicated case," Mot. 4, and that the White Peaks transaction is just one of many transactions covered by RICO and other claims that are not ripe for summary judgment now. Against this backdrop, they cite no basis or authority for concluding that the early motion they propose would resolve or even streamline the action. Nor can they, because their piecemeal and duplicative proposal for briefing portions of individual transactions comprising the alleged RICO enterprise would increase, rather than diminish, the burdens on the parties and the Court. For these reasons

10

as well, the "local rule against multiple summary judgement motions weighs heavily against the Motion for Leave." *Cobalt Boats, LLC*, 2017 WL 11463824, at *2.

### III. Defendants' Proposed Motion Would Also Be Futile Because Even the Incomplete Record They Cite Establishes Multiple Legal and Factual Barriers to Relief

Defendants' argument that their knowledge of the White Peaks deal presents an issue for early summary judgment fails because even the incomplete record they cite precludes the Rule 56 relief they seek. As noted, the White Peaks sale is part of a single and widespread RICO "enterprise" that generated the gains (including the $5 million Watson admittedly took from the White Peaks transaction) that Defendants reaped on the Amazon transactions at issue in this suit. Dkt. 764 ¶¶ 376–88. Defendants' contention that the "significant documentary evidence and sworn deposition testimony" now in the record fails to link Watson to the White Peaks transaction, Mot. 3, is flat wrong. At the very least, the evidence uncovered to date raises genuine issues of material fact that preclude the Rule 56 relief the Defendants seek. Indeed, they do not dispute their knowledge of, or agreement, to the "overall objective" of the RICO enterprise, which in simple terms was the pay-to-play kickback scheme orchestrated by Kirschner and Nelson in concert with outside developers, including Defendants. Nor could they. Even prior to the start of merits discovery, this Court issued a preliminary injunction based on "hundreds of pages of supporting evidence," Dkt. 318 at 7, that it described as "extremely powerful" evidence of the Watson Defendants' role in the scheme. Dkt. 57. The Court found that the evidence demonstrated good cause to believe that the Watson Defendants participated in the White Peaks deal and then ordered Defendants to secure funds inclusive of the $5 million Defendants received as a kickback payment. Dkt. 57 at 4. And even if the Watson Defendants could separate the White Peaks deal from the others, they would still remain under the Injunction's judgment security provision, more than $16 million of which is based on the lease deals that the Watson Defendants do not contest in this motion.

Defendants fare no better under the post-injunction record, which has only bolstered the evidence showing Defendants' knowledge and participation in the enterprise, and thus at the very least establishes that there are disputed issues of material fact precluding Rule 56 relief. This evidence includes a recording in which Watson explicitly states that "first priorities should be Casey and Carl . . . [n]o matter what," with respect to the distribution of Northstar's proceeds from the Amazon deals. Dkt. 212-15 at 21. Discovery has also revealed that Watson's co-defendant, Casey Kirschner, admitted in a signed statement to the FBI that: ███████████ ███████████ ███████████ ███████████ Dkt. 618-1 at 36.[4] And although several of the Defendants' co-conspirators have invoked their Fifth Amendment rights in response to Amazon's questions regarding the kickback payments Northstar admittedly made to Villanova Trust, Ramstetter and Camenson have produced an ███████████ ███████████ ███████████ Dkt. 628.

One of the more compelling pieces of evidence, an audio recording which documents Watson's staged confrontation of Ramstetter and Camenson, further cements Watson's participation in the enterprise. In that recording, Watson accuses Ramstetter and Camenson of usurping the White Peaks Transaction from Northstar and attempts to shakedown his former employees for an immediate payment of $18 million. *See* Dkt. 155-9. Watson's tactics backfire, however, when Ramstetter responds by referencing their collective roles as co-conspirators in the broader RICO

---

[4] These quotes are taken from excerpts that government prosecutors gave to Nelson in a reverse-proffer presentation. Kirscher has yet to produce the full statement, which this Court recently ordered him to do. Dkt. 835.

12

enterprise, stating "what we did for Amazon, that's FBI . . . You have two corporate real estate people for the largest tenant in the world that you can trace the money, it will get out of hand." *Id.* at 8. This and other evidence obtained in merits discovery establishes that Watson was well aware of the kickback scheme, including his employees' payments to Nelson and Kirschner on the White Peaks sale, *before* he took $5 million of the proceeds they obtained from Amazon on that deal. Mot. 3–4. In the recording Ramstetter encourages Watson to "work something out," noting that "if [he] say[s] something to the wrong person, and it gets out, the whole Amazon thing is shut down and we will never do another deal in the data center space." Dkt. 155-9 at 8. Watson's effort to conceal as a "settlement payment" the $5 million he subsequently took from these employees, who have invoked their Fifth Amendment rights regarding the transaction, cannot support Rule 56 relief in his favor, particularly on the broader and evolving record here. And Watson's current motion cites no contrary authority. Indeed, Watson's motion fails to mention the origins of the $5 million payment he received. And it fails to mention that Watson placed this payment in a personal account, which is (i) inconsistent with his cover story that it was merely a settlement payment to Northstar, and (ii) further proof that Watson and Northstar were *alter egos* on the kickback payments that Northstar employees Ramstetter and Camenson made to Amazon insiders on the White Peaks sale.

In sum, because the pre- and post-injunction discovery record contain extensive evidence of Defendants' knowledge and agreement to the "overall objective" of the RICO enterprise, as well as their facilitation of certain RICO enterprise acts including the White Peaks sale and kickbacks, even the partial evidence in their motion would not support the Rule 56 relief they seek.

13

Accordingly, the Court should deny their request for relief from Local Rule 56, as futile, and require them to move on any White Peaks issues when the parties file summary judgments after the close of discovery.

## CONCLUSION

This Court should deny Defendants' motion for premature and wasteful summary judgment briefing. *Thomas v. Windsor-Mount Joy Mut. Ins. Co.*, 2008 WL 11383487, at *3 (E.D. Va. Aug. 6, 2008).

Dated: June 28, 2022

Respectfully submitted,

*/s/ Michael R. Dziuban*

| | |
|---|---|
| Veronica S. Moyé (*pro hac vice*) | Elizabeth P. Papez (*pro hac vice*) |
| GIBSON, DUNN & CRUTCHER LLP | Patrick F. Stokes (*pro hac vice*) |
| 2001 Ross Avenue, Suite 2100 | Jason J. Mendro (*pro hac vice*) |
| Dallas, TX 75201 | Claudia M. Barrett (*pro hac vice*) |
| Telephone: (214) 698-3100 | David W. Casazza (*pro hac vice*) |
| Facsimile: (214) 571-2900 | Amanda Sterling (*pro hac vice*) |
| vmoye@gibsondunn.com | Michael R. Dziuban (Va. State Bar No. 89136) |
| | GIBSON, DUNN & CRUTCHER LLP |
| | 1050 Connecticut Avenue, N.W. |
| | Washington, D.C. 20036-5306 |
| | Telephone: (202) 955-8500 |
| | Facsimile: (202) 467-0539 |
| | epapez@gibsondunn.com |
| | pstokes@gibsondunn.com |
| | jmendro@gibsondunn.com |
| | cbarrett@gibsondunn.com |
| | dcasazza@gibsondunn.com |
| | asterling@gibsondunn.com |
| | mdziuban@gibsondunn.com |

*Counsel for Amazon.com, Inc. and Amazon Data Services, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 28, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system. I will then send the document and a notification of such filing (NEF) to the following parties via U.S. mail to their last-known address and by email, where noted:

| | |
|---|---|
| CTBSRM, Inc.<br>6870 W 52nd Ave., Ste. 203<br>Arvada, CO 80002 | Casey Kirschner<br>635 N. Alvarado Lane<br>Plymouth, MN 55447<br>By email: casey.kirschner@gmail.com |
| Demetrius Von Lacey<br>2845 Des Moines Dr.,<br>Fort Collins, CO 80525 | 2010 Irrevocable Trust<br>6870 W 52nd Ave., Ste. 203<br>Arvada, CO 80002 |
| | Sigma Regenerative Solutions, LLC<br>6870 W 52nd Ave., Ste. 203<br>Arvada, CO 80002 |

        *s/ Michael R. Dziuban*
        Michael R. Dziuban
        GIBSON, DUNN & CRUTCHER LLP
        1050 Connecticut Avenue, N.W.
        Washington, D.C. 20036-5306
        Telephone: (202) 955-8500
        Facsimile: (202) 467-0539
        mdziuban@gibsondunn.com

*Counsel for Plaintiffs Amazon.com, Inc. and Amazon Data Services, Inc.*