**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| AMAZON.COM, INC. and AMAZON DATA SERVICES, INC., | |
| Plaintiffs, | |
| v. | |
| WDC HOLDINGS LLC dba NORTHSTAR COMMERCIAL PARTNERS; BRIAN WATSON; STERLING NCP FF, LLC; MANASSAS NCP FF, LLC; NSIPI ADMINISTRATIVE MANAGER; NOVA WPC LLC; WHITE PEAKS CAPITAL LLC; VILLANOVA TRUST; CARLETON NELSON; CASEY KIRSCHNER; ALLCORE DEVELOPMENT LLC; FINBRIT HOLDINGS LLC; CHESHIRE VENTURES LLC; 2010 IRREVOCABLE TRUST; SIGMA REGENERATIVE SOLUTIONS LLC; CTBSRM, INC.; RODNEY ATHERTON; DEMETRIUS VON LACEY; RENRETS LLC, | CASE NO. 1:20-CV-484-RDA-TCB |
| Defendants. | |
| 800 HOYT LLC, | |
| Intervening Interpleader Plaintiff, Intervening Interpleader Counter- Defendant, | |
| v. | |
| BRIAN WATSON; WDC HOLDINGS, LLC; BW HOLDINGS, LLC, | |
| Interpleader Defendants, | |
| and | |
| AMAZON.COM, INC., and AMAZON DATA SERVICES, INC., | |
| Interpleader Defendants, Interpleader Counter-Plaintiffs. | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL**
**ANSWERS IN CHESHIRE VENTURES' 30(b)(6) DEPOSITION**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... iii

FACTUAL BACKGROUND ................................................................................................... 4

LEGAL STANDARD .............................................................................................................. 7

ARGUMENT ........................................................................................................................... 8

    I.    Cheshire Ventures Failed To Comply With Its Obligations Under Rule 30(b)(6) ......... 9

        A.    Cheshire Ventures' Designee, Carleton Nelson, Improperly Refused To
            Give Testimony That Allegedly Called for His Personal Knowledge................... 9

        B.    Mr. Little Impeded the Deposition by Improperly Instructing Mr. Nelson
            Not to Answer Valid Questions. ............................................................................ 15

        C.    Mr. Nelson Was Unprepared To Testify On Topics Identified In
            Amazon's Deposition Notice............................................................................... 18

        D.    Defense Counsel's Unilateral Restrictions On Cheshire Ventures' Second
            Deposition And Unwillingness to Refrain from Improper Instructions are
            Unreasonable and Present A Significant Risk of Rendering Yet Another
            Examination Futile.............................................................................................. 20

    II.    This Court Should Order Mr. Nelson to Appear Again as Cheshire Ventures'
        Corporate Representative, Require Him To Answer Fully Amazon's Questions,
        and Assess Fees.......................................................................................................... 22

CONCLUSION....................................................................................................................... 23

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Abu-Eid v. Discover Prods., Inc.*,
   2022 WL 683110 (E.D. Va. Mar. 8, 2022) ................................................................................9

*Addax Energy SA v. M/V Yasa H. Mulla*,
   2018 WL 10470917 (E.D. Va. Nov. 13, 2018) .........................................................................8

*All. for Glob. Justice v. D.C.*,
   437 F. Supp. 2d 32 (D.D.C. 2006) ...........................................................................................9

*AngioScore, Inc. v. TriReme Med., Inc.*,
   2015 WL 4040388 (N.D. Cal. July 1, 2015) ..........................................................................13

*BASF Plant Sci., LP v. Commonwealth Sci. & Indus. Rsch. Org.*,
   2019 WL 8108060 (E.D. Va. July 3, 2019) .............................................................................8

*Beltran v. Home Depot, Inc.*,
   2007 WL 9810929 (W.D. Va. Dec. 6, 2007) ..........................................................................10

*ComScore, Inc. v. Moat, Inc.*,
   2013 WL 12147701 (E.D. Va. Sept. 25, 2013) ......................................................................22

*Coryn Grp. II, LLC v. O.C. Seacrets, Inc.*,
   265 F.R.D. 235 (D. Md. 2010) ...............................................................................................22

*DHL Express (USA), Inc. v. Express Save Indus. Inc.*,
   2009 WL 3418148 (S.D. Fla. Oct. 19, 2009) ........................................................................17

*Dravo Corp. v. Liberty Mut. Ins. Co.*,
   164 F.R.D. 70 (D. Neb. 1995) ................................................................................................10

*E.E.O.C. v. Freeman*,
   288 F.R.D. 92 (D. Md. 2012) .................................................................................................10

*Green v. Wing Enters., Inc.*,
   2015 WL 506194 (D. Md. Feb. 5, 2015) ...............................................................................10

*Hooker v. Norfolk S. Ry. Co.*,
   204 F.R.D. 124 (S.D. Ind. 2001) .............................................................................................9

*Huggins v. Prince George's Cty.*,
   2009 WL 10685429 (D. Md. June 8, 2009) ...........................................................................20

*Humanscale Corp. v. CompX Int'l Inc.*,
    2009 WL 5091648 (E.D. Va. Dec. 24, 2009) ...............................................................10, 18

*Leazenby Constr., Inc. v. City of Counsel Bluffs*,
    2012 WL 12914696 (S.D. Iowa Mar. 22, 2012) ...................................................................17

*LifeNet Health v. LifeCell Corp.*,
    2014 WL 5529679 (E.D. Va. Oct. 31, 2014) ........................................................................10

*Mfrs. All. Ins. Co. v. Brencorp, Inc.*,
    2016 WL 11745984 (N.D. Ga. Aug. 3, 2016) .........................................................................8

*Michael Kors, L.L.C v. Hernandez Int'l Inc.*,
    2016 WL 6306129 (S.D. Tex. Oct. 27, 2016).......................................................................13

*Mitnor Corp. v. Club Condos.*,
    339 F.R.D. 312 (N.D. Fla. 2021) .........................................................................................10

*NewMarket Corp. v. Innospec Inc.*,
    2011 WL 1306008 (E.D. Va. Apr. 1, 2011) ......................................................................7, 22

*Power Home Solar, LLC v. Sigora Solar, LLC*,
    339 F.R.D. 64 (W.D. Va. 2021).....................................................................................18, 20

*Redwood v. Dobson*,
    476 F.3d 462 (7th Cir. 2007) ...............................................................................................10

*Sabre v. First Dominion Cap., LLC*,
    2001 WL 1590544 (S.D.N.Y. Dec. 12, 2001) .....................................................................14

*Severn Peanut Co. v. Indus. Fumigant Co.*,
    2013 WL 5348434 (E.D.N.C. Sept. 23, 2013).....................................................................18

*Twentieth Century Fox Film Corp. v. Marvel Enters., Inc.*,
    2002 WL 1835439 (S.D.N.Y. Aug. 8, 2002) .......................................................................10

*United States v. Taylor*,
    166 F.R.D. 356 (M.D.N.C. 1996) ...................................................................................10, 22

**RULES**

Fed. R. Civ. P. 30(b)(6)................................................................................................................7, 14

Fed. R. Civ. P. 30(c)(2)................................................................................................................7, 13

Fed. R. Civ. P. 37(a) .........................................................................................................................7

Fed. R. Civ. P. 37(a)(3)(B)(ii)......................................................................................................7, 22

Fed. R. Civ. P. 37(a)(4) ........................................................................................................7, 21

Fed. R. Civ. P. 37(a)(5)(A) ..........................................................................................................8

Local Civ. R. 37(A) ......................................................................................................................7

Plaintiffs Amazon.com, Inc. and Amazon Data Services, Inc. respectfully move under Federal Rule of Civil Procedure 37(a) and Local Civil Rule 37(A) to compel Defendant Cheshire Ventures LLC ("Cheshire Ventures") to appear again for deposition under Rule 30(b)(6), to answer the questions it improperly refused to answer or was unprepared to answer, and to pay Amazon's costs of bringing this motion.

## INTRODUCTION

Defendants Carleton Nelson and Cheshire Ventures are two of several parties that conspired to execute the elaborate fraud and kickback scheme at issue in this lawsuit.  Discovery has revealed the increasingly complex nature of this scheme, which involved a number of shell entities, including Cheshire Ventures, an entity set up by Defendant Rodney Atherton to obscure Mr. Nelson's connections to the fraud scheme.  In an effort to better understand the roles played by both Mr. Nelson and Cheshire Ventures, Amazon noticed their depositions.  Cheshire Ventures designated Mr. Nelson as its corporate representative for the Rule 30(b)(6) deposition.  During that deposition, Mr. Nelson testified that Cheshire Ventures has "no employees" and that there have never been any other employees at Cheshire Ventures other than him.  Ex. 1 (Cheshire Dep. Tr.) at 16:8–16.  As a result, Mr. Nelson testified over two days on May 9 and 10, 2022: day one in his personal capacity and day two as a corporate representative for Cheshire Ventures—an entity controlled solely and entirely by Mr. Nelson.

Instead of adhering to the Federal Rules of Civil Procedure, Cheshire Ventures limited its testimony in accordance with ad hoc rules established by Mr. Nelson and his counsel, Alex Little at Burr & Forman.  Mr. Nelson created from the beginning an artificial distinction between what he "Carleton Nelson" knew, and what Cheshire Ventures knew, despite the fact that Cheshire Ventures is comprised entirely of one individual: Mr. Nelson.  As a result, all knowledge that Mr.

Nelson personally possesses is also reasonably available to Cheshire Ventures.  Nonetheless,  Mr. Nelson repeatedly refused to answer questions during the Rule 30(b)(6) deposition on the basis that Cheshire Ventures would not know the answer to certain questions, although he as "Carleton Nelson" would.

Mr. Little, for his part, repeatedly interfered with the Rule 30(b)(6) deposition by lodging lengthy speaking objections, taking the position that Mr. Nelson should not answer any questions based on his personal knowledge (as opposed to his knowledge as a Cheshire Ventures representative) and that, if he were to do so, his answers should be limited to the seven hours available for his personal deposition—only 50 minutes of which remained after day one. Amazon's counsel objected, correctly noting that Mr. Nelson had to respond to the questions and that the proper procedure was for Mr. Little to lodge an objection on the record.  Yet, Mr. Little repeatedly instructed Mr. Nelson not to answer certain questions as a corporate designee of Cheshire Ventures, notwithstanding the fact that this instruction was not necessary to "preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)," the only reasons Rule 30 permits for an attorney to instruct a witness not to answer.  In taking this improper position, Mr. Little relied on an artificial distinction between Mr. Nelson's personal knowledge and Cheshire Ventures' corporate knowledge, in direct conflict with Rule 30(b)(6)'s requirement that the designated witness "testify about information known or reasonably available to the organization." Mr. Little continued to instruct Mr. Nelson not to testify unless he could do so without referring to his personal knowledge (or by asking Amazon to agree that answering certain questions would count towards the limited time remaining for Mr. Nelson's personal deposition).[1]  These improper

---

[1]  *See, e.g.*, Cheshire Dep. Tr. at 65:7–66:5; 72:9–18; 72:21–73:6; 75:15–78:21; 114:5–6; 115:17–18; 124:11–13; 124:17–127:24: 129:9–23; 130:8–132:7; 177:3-25; 178:5–179:24; 184:10–11; 185:15–187:6; 193:4–10; 194:12–16; 201:18–23; 203:5–204:11.

instructions disrupted the deposition, prevented Mr. Nelson from testifying, and improperly limited testimony only to the questions Mr. Little wanted Mr. Nelson to answer. Mr. Little's instructions were particularly inappropriate given that Mr. Nelson *is* Cheshire Ventures, and thus any knowledge he has is by definition "reasonably available to the organization" under Rule 30.

Furthermore, Mr. Nelson, as the designated corporate representative for Cheshire Ventures, failed to educate himself about the noticed topics and to answer questions using any information reasonably available to him, as required by Rule 30(b)(6). In fact, he admitted on the record that he did nothing more to prepare for the deposition beyond reading Amazon's 30(b)(6) deposition notice. *See* Ex. 1 (Cheshire Dep. Tr.) at 11:25–12:17. As a result, Mr. Nelson was unable to answer basic questions on a number of noticed topics, including questions regarding Cheshire Ventures' interactions with attorney Rodney Atherton, its involvement in the Blueridge transaction, and its payments to and from other entities.

Due to Mr. Little's improper instructions and Cheshire Ventures' refusal or inability to provide essential testimony, Amazon repeatedly requested that Cheshire Ventures sit for an additional deposition without obstruction. After weeks of back-and-forth by email and meet-and-confer discussions, Cheshire Ventures agreed to sit for a second, half-day deposition, but its counsel has insisted they may instruct the witness not to answer questions based on scope limitations they seek to impose. This precondition on the testimony presents a significant risk that Cheshire Ventures' second deposition also would be obstructed and rendered useless by improper instructions. Mr. Nelson's continued unwillingness to comply with basic deposition requirements therefore necessitates Amazon's motion to compel to resolve the ground rules—which should be undisputed—for the Cheshire Ventures 30(b)(6) deposition.

Amazon respectfully requests that this Court compel Mr. Nelson to appear again as Cheshire Ventures' Rule 30(b)(6) corporate representative and answer questions in conformity with the law.  Further, because it was Mr. Little's conduct that led to the need to file this Motion, the Court should also order that Mr. Little and Mr. Nelson pay Amazon the costs incurred in connection with litigating this motion.

**FACTUAL BACKGROUND**

Amazon issued a Rule 30(b)(6) deposition notice to Cheshire Ventures on February 15, 2022, which stated that it "is available to meet and confer regarding the list of deposition topics." Ex. 2 at 2.  Cheshire Ventures did not take Amazon up on its offer to meet and confer regarding the Rule 30(b)(6) topics, nor did Cheshire Ventures ever object to any of the topics or their scope. Declaration of Claudia M. Barrett ("Barrett Decl.") at ¶ 3.  On April 12, 2022, Amazon issued an amended notice of deposition reflecting new agreed-upon dates.  Ex. 3.  Once again, the notice stated that "Amazon is available to meet and confer regarding the list of deposition topics."  *Id.* at 2.  And again, Defendant Cheshire Ventures did not take Amazon up on this offer nor did they object to any of the topics or their scope.  Barrett Decl. at ¶ 4.

The depositions of Carleton Nelson and Cheshire Ventures took place on April 28, 2022 and April 29, 2022, respectively, in Nashville, TN at the law offices of their counsel, Alex Little. Amazon deposed Mr. Nelson for approximately 6 hours and 10 minutes, leaving the deposition open.  The deposition of Cheshire Ventures proceeded the next day and lasted approximately 3 hours and 51 minutes.

Throughout the Cheshire Ventures deposition, Mr. Nelson and Mr. Little fabricated a distinction between Mr. Nelson's "personal knowledge" and "corporate knowledge," which resulted in Mr. Nelson cherry-picking which questions to answer and which to avoid, in contravention of Rule 30, which requires him to answer a question if he possess *any* knowledge of the answer.  For

example, when asked about whether an email from a Cheshire Ventures e-mail account referred to the Blueridge transaction, *see* Ex. 4, Mr. Nelson refused to answer, notwithstanding the fact that he testified that he, as Carleton Nelson, did have personal knowledge of it:

> Q.  Yes. Do you know if that relates to the Blueridge transaction?
>
> A.  In my capacity as a Cheshire Ventures I wouldn't have known that.
>
> Q.  So at the time in November of 2019 would you have known that in any capacity?
>
> A.  In a personal capacity, yes.
>
> Q.  How would you, therefore, not have known that in your Cheshire Ventures's capacity in 2019, even Cheshire Ventures was not involved in the transaction as you purport, that this transaction related to Blueridge?
>
> A.  Cheshire Ventures was not involved in this transaction.
>
> Q:  I understand that's your position. But my question is, in your role as the human being who is Cheshire Ventures, you had information in your head in your personal capacity, how would Cheshire Ventures also not have that information available to it?
>
> MR. LITTLE: Objection; calls for legal conclusion.
>
> THE WITNESS: As managing principal of Cheshire Ventures I was not engaged in this particular transaction and/or responsible for putting Cheshire Ventures into this transaction.

Ex. 1 (Cheshire Dep. Tr.) at 196:20–197:20.

Mr. Little, for his part, instructed Mr. Nelson not to answer questions that, in Mr. Little's view, called for "personal" knowledge as opposed to "Cheshire Ventures" knowledge, instead insisting that if Mr. Nelson were to answer them, the time would count against Mr. Nelson's deposition in his personal capacity. *See, e.g.*, *id.* at 181:12–23. This pattern was exemplified, in part, by the exchange below, which was prompted by Amazon's questions about the contents of emails sent from a ***Cheshire Ventures*** email account and during which Mr. Little stopped Mr. Nelson from responding and instead provided his own testimony in the form of an objection:

| Q: | So, Mr. Nelson, are you refusing to answer questions about this e-mail that is from Cheshire Ventures? |
|---|---|
| A: | In my capacity as managing principal for Cheshire Ventures, who sent this e-mail, I understand this to be a chart showing total bonus with Rod, with Von, with CNCK, with Rod, Von, gifted back and numbers attached to it. That's all Cheshire Ventures would have known about that. |
| Q: | And you're the managing principal for Cheshire Ventures? |
| A: | Yes. |
| Q: | And so what did you know about that? |
| MR. LITTLE: | Same objection.  We're going to start counting time now.  If you don't want to do it that way, then I will direct him not to answer the question. |
| MR. STOKES: | We do not agree to that, and this is entirely inappropriate. |
| MR. LITTLE: | Then I'm directing him not to answer. |

Ex. 1 (Cheshire Dep. Tr.) 64:18–65:14.

In other instances, Mr. Nelson disclaimed knowledge of a noticed topic and was unable to provide substantive testimony in accordance with his Rule 30(b)(6) obligations.  For example, Mr. Nelson was unable to testify about the financial arrangements and agreements between Cheshire Ventures and several of the other Defendants in this case, despite the fact that Amazon clearly identified these topics as matters for examination in its deposition notice to Cheshire Ventures. *See* Ex. 3 at 5–7 (Topics 3, 4, 7, 9, 10, and 11).  Mr. Nelson lacked relevant knowledge because, by his own admission, he failed to educate himself on those topics and did nothing to prepare for the deposition beyond reading Amazon's 30(b)(6) deposition notice.  Ex. 1 (Cheshire Dep. Tr.) at 11:25–12:17.

At the conclusion of Cheshire Ventures' deposition, Amazon requested that it be left open, and reserved any remaining time, given (i) Mr. Nelson's refusal to answer many of Amazon's

questions, (ii) Mr. Little's repeated speaking objections and instructions not to answer, and (iii) the fact that Mr. Nelsons' limited testimony revealed additional deficiencies in his discovery responses. Ex. 1 (Cheshire Dep. Tr.) at 208:5–16. Subsequently, Amazon reached out to Nelson's counsel about continuing the Cheshire Venture deposition. After many weeks of meet and confer discussions, the Parties agreed on most issues, but were unable to reach complete agreement due to Mr. Nelson's counsel insistence that they can unilaterally impose limitations on the scope of the examination and instruct Mr. Nelson to refuse to answer questions outside this scope. Ex. 16 (email chain between counsel for Amazon and Cheshire).

## LEGAL STANDARD

Amazon was entitled to notice the deposition of Cheshire Ventures regarding particular topics for examination. Fed. R. Civ. P. 30(b)(6). Cheshire "must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf" and the designated person "*must* testify about information known or reasonably available to the organization." *NewMarket Corp. v. Innospec Inc.*, 2011 WL 1306008, at *5 (E.D. Va. Apr. 1, 2011) (emphasis added and omitted; quotation marks omitted). A party must answer questions posed to them, and "[a] person may instruct a deponent not to answer only when necessary to prevent a privilege, to enforce a limitation ordered by the court or to present a motion under Rule 30(d)(3)." Fed. R. Civ. P. 30(c)(2).

Pursuant to Federal Rule of Civil Procedure 37(a) and Local Civil Rule 37(A), a party may "move for an order compelling disclosure for discovery," Fed. R. Civ. P. 37(a), "[a]fter a discovery request is objected to, or not complied with, within time, and if not otherwise resolved," Local Civ. R. 37(A). "A motion to compel, under Rule 37, is proper when a corporation . . . presents an unprepared, unknowledgeable designee." *NewMarket Corp.*, 2011 WL 1306008, at *5 (citing

Fed.R.Civ.P. 37(a)(3)(B)(ii), (a)(4)).  Likewise, "[f]or purposes of Rule 37(a), an evasive or in-complete disclosure, answer, or response must be treated as a failure to disclose, answer, or re-spond."  *Mfrs. All. Ins. Co. v. Brencorp, Inc.*, 2016 WL 11745984, at *6 (N.D. Ga. Aug. 3, 2016) (quoting Fed. R. Civ. P. 37(a)(4)).

The burden rests on the party resisting discovery "to prove why the requested evidence is not discoverable." *BASF Plant Sci., LP v. Commonwealth Sci. & Indus. Rsch. Org.*, 2019 WL 8108060, at *2 (E.D. Va. July 3, 2019).  "District courts generally have broad discretion in man-aging discovery, including whether to grant or deny a motion to compel." *Addax Energy SA v. M/V Yasa H. Mulla*, 2018 WL 10470917, at *3 (E.D. Va. Nov. 13, 2018) (quotation marks omit-ted).  Further "[i]f the motion is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion . . . to pay the movant's reasonable ex-penses incurred in making the motion, including attorney's fees."  Fed. R. Civ. P. 37(a)(5)(A).

## ARGUMENT

Cheshire Ventures failed to comply with its Rule 30(b)(6) obligations in three respects. ***First***, Mr. Nelson refused to answer questions, instead fabricating an artificial distinction between his "personal knowledge" and Cheshire Ventures' "corporate knowledge."  The law, however, does not support this distinction.  Indeed, Rule 30(b)(6) required Mr. Nelson to testify about infor-mation "known or reasonably available" to Cheshire Ventures, even if certain questions might have solicited testimony involving Mr. Nelson's personal knowledge, particularly here where Mr. Nelson's knowledge *is* Cheshire Ventures' knowledge. ***Second***, Mr. Nelson's counsel improperly obstructed the deposition with lengthy speaking objections and baselessly insisted that Mr. Nelson should refuse to answer questions that purportedly called for his "personal knowledge" unless the time for those answers was counted against the time remaining for his individual deposition.

***Third***, Mr. Nelson violated his Rule 30(b)(6) duty of preparedness as Cheshire Ventures' corporate designee by failing to take reasonable steps to educate himself on the noticed topics.

Accordingly, Amazon respectfully requests that the Court issue an order (1) compelling Mr. Nelson to sit for an additional deposition as Cheshire Ventures' corporate representative and to answer *fully* Amazon's questions, as required by the Federal and Local Rules, (2) preventing Mr. Nelson's counsel from instructing Mr. Nelson not to answer unless a privilege is implicated, and (3) requiring Mr. Nelson to pay Plaintiffs' reasonable costs and fees in bringing this motion pursuant to Fed. Civ. P. 37(a)(5).

## I.     Cheshire Ventures Failed To Comply With Its Obligations Under Rule 30(b)(6)

### A.     Cheshire Ventures' Designee, Carleton Nelson, Improperly Refused To Give Testimony That Allegedly Called for His Personal Knowledge.

Although Rule 30(b)(6) testimony is "not *limited* to matters of which the witness has personal knowledge," matters within the corporate designee's personal knowledge are not off-limits. *Abu-Eid v. Discover Prods., Inc.*, 2022 WL 683110, at \*3 (E.D. Va. Mar. 8, 2022) (emphasis added; quotation marks omitted). Case after case makes clear that Rule 30(b)(6) "imposes a duty upon the named business entity" "to adequately testify not only on matters *known by the deponent*, but also on subjects that the entity should reasonably know." *Hooker v. Norfolk S. Ry. Co.*, 204 F.R.D. 124, 126 (S.D. Ind. 2001) (emphasis added); *see also All. for Glob. Justice v. D.C.*, 437 F. Supp. 2d 32, 37 (D.D.C. 2006) ("By its very nature, a Rule 30(b)(6) deposition notice requires the responding party to prepare a designated representative so that he or she can testify on matters not only *within his or her personal knowledge*, but also on matters reasonably known by the responding entity." (emphasis added)). Indeed, Rule 30(b)(6) assumes that, in many cases, much of the designee's testimony will be derived from their personal knowledge. It is only "[i]f the persons designated by the corporation *do not possess personal knowledge* of the matters set out in the

9

deposition notice," that "the corporation is obligated to prepare the designees so that they may give knowledgeable and binding answers for the corporation." *Humanscale Corp. v. CompX Int'l Inc.*, 2009 WL 5091648, at *2 (E.D. Va. Dec. 24, 2009) (citing *United States v. Taylor*, 166 F.R.D. 356 (M.D.N.C. 1996)); *see also LifeNet Health v. LifeCell Corp.*, 2014 WL 5529679, at *8 (E.D. Va. Oct. 31, 2014) (same); *Beltran v. Home Depot, Inc.*, 2007 WL 9810929, at *3 (W.D. Va. Dec. 6, 2007) (same); *Twentieth Century Fox Film Corp. v. Marvel Enters., Inc.*, 2002 WL 1835439, at *2 (S.D.N.Y. Aug. 8, 2002) (same); *Dravo Corp. v. Liberty Mut. Ins. Co.,* 164 F.R.D. 70, 75 (D.Neb. 1995) (same).

Additionally, a corporate designee cannot refuse to answer when a question implicates their personal knowledge. Thus, even if Amazon's questions had exceeded the scope of the noticed deposition topics—which they did not—Mr. Nelson's refusal to answer Amazon's questions was wholly improper. Where "a deponent is asked a question outside the scope of the [30(b)(6)] notice," the "proper course" is to simply "object that the question [is] outside the scope of the 30(b)(6) notice." *Green v. Wing Enters., Inc.*, 2015 WL 506194, at *8 (D. Md. Feb. 5, 2015) (first alteration added; quotation marks omitted). Under these circumstances, the deponent still "must answer the question." *Mitnor Corp. v. Club Condos.*, 339 F.R.D. 312, 321 (N.D. Fla. 2021). The benefit of the objection is that, if sustained, the "answer would not bind the [entity]." *Wing Enters.*, 2015 WL 506194, at *8 (quoting *E.E.O.C. v. Freeman*, 288 F.R.D. 92, 98 (D. Md. 2012)). But an answer is still required. Indeed, "absent one of the three exceptions articulated in Rule 30(c)(2), it is *impermissible* for an attorney to instruct a deponent not to answer a question." *Mitnor*, 339 F.R.D. at 320 (citing *Redwood v. Dobson*, 476 F.3d 462, 467 (7th Cir. 2007).

Throughout the deposition, Amazon asked Mr. Nelson about emails sent to and from his Cheshire Ventures email account (**Cheshireventures**@outlook.com).  These communications included emails introduced as exhibits during the Cheshire Ventures deposition, bearing the following headers:

- Exhibit 4 (Cheshire Dep. Ex. 20):

  **From:** Rod Atherton <ra@ergolaw.com>
  **Sent:** Friday, August 30, 2019 11:53 AM EDT
  **To:** Cadwallader, John I. <JCadwallader@fbtlaw.com>
  **CC:** Herb Glimcher<herb@glimchercompany.com> <herb@glimchercompany.com>; Carleton Nelson <Cheshireventures@outlook.com>; michael@glimcherlegacy.com <michael@glimcherlegacy.com>
  **Subject:** RE: Operating Agreement for LLC to own the Loudoun County, VA Property

- Exhibit 5 (Cheshire Dep. Ex. 3):

  **From:** Cheshire Ventures <Cheshireventures@outlook.com>
  **Sent:** Monday, December 30, 2019 5:17 PM EST
  **To:** Rod Atherton <ra@ergolaw.com>
  **Subject:** Revised Bonus

- Exhibit 6 (Cheshire Dep. Ex. 6):

  **From:** Carleton Nelson <Cheshireventures@outlook.com>
  **Sent:** Thursday, July 11, 2019 6:31 PM EDT
  **To:** Carleton Nelson <carleton.nelson@gmail.com>
  **Subject:** AO/Simple Diagram

- Exhibit 7 (Cheshire Dep. Ex. 9):

  **From:** Rod Atherton <ra@ergolaw.com>
  **Sent:** Monday, August 19, 2019 2:09 PM EDT
  **To:** Carleton Nelson <Cheshireventures@outlook.com>
  **Subject:** ADVICE OF DEBIT - BANK CONFIDENTIAL

- Exhibit 8 (Cheshire Dep. Ex. 15):

  **From:** Carleton Nelson <Cheshireventures@outlook.com>
  **Sent:** Wednesday, June 19, 2019 3:31 PM EDT
  **To:** Carleton Nelson <cheshireventures@outlook.com>

- Exhibit 9 (Cheshire Dep. Ex. 16):

  **From:** Carleton Nelson <Cheshireventures@outlook.com>
  **Sent:** Wednesday, July 03, 2019 2:42 PM EDT
  **To:** jlim@jclconsultingllc.com <jlim@jclconsultingllc.com>

- Exhibit 10 (Cheshire Dep. Ex. 17):

  **From:** Cheshireventures@outlook.com <Cheshireventures@outlook.com>
  **Sent:** Friday, April 10, 2020 1:50 PM EDT
  **To:** Cheshire Ventures <carleton@cheshireventures.com>

- Exhibit 11 (Cheshire Dep. Ex. 18):

  **From:** Carleton Nelson <Cheshireventures@outlook.com>
  **Sent:** Tuesday, August 20, 2019 1:47 PM EDT
  **To:** Carleton Nelson <Cheshireventures@outlook.com>
  **Subject:** Sent from Snipping Tool

- Exhibit 12 (Cheshire Dep. Ex. 19):

  **From:** Carleton Nelson <Cheshireventures@outlook.com>
  **Date:** August 7, 2019 at 8:24:25 PM MDT
  **To:** Kyle Ramstetter <kramstetter@whitepeakscapital.com>
  **Subject: KR-AC Partnership Deal Strux.xlsx**

- Exhibit 13 (Cheshire Dep. Ex. 21):

  **From:** Cheshireventures@outlook.com <Cheshireventures@outlook.com>
  **Sent:** Tuesday, November 05, 2019 2:51 AM EST
  **To:** Cadwallader, John I. <JCadwallader@fbtlaw.com>
  **CC:** Herb Glimcher<herb@glimchercompany.com> <herb@glimchercompany.com>; Rod Atherton <ra@ergolaw.com>;
  michael@glimcherlegacy.com <michael@glimcherlegacy.com>
  **Subject:** Re: H&M Gudelsky Purchase and Sale Agreement--VA Local counsel

- Exhibit 14 (Cheshire Dep. Ex. 22):

  **From:** Cadwallader, John I. <JCadwallader@fbtlaw.com>
  **Sent:** Monday, December 23, 2019 1:38 PM EST
  **To:** Greg.Gorospe@icemiller.com <Greg.Gorospe@icemiller.com>
  **CC:** Herb Glimcher<herb@glimchercompany.com> <herb@glimchercompany.com>; Shannon Meisner
  <Shannon.Meisner@RaymondJames.com>; james.bowman@raymondjames.com <james.bowman@raymondjames.com>;
  Cheshire Ventures <Cheshireventures@outlook.com>; Schengeli, Linda M. <LSchengeli@fbtlaw.com>;
  michael@glimcherlegacy.com <michael@glimcherlegacy.com>; Rod Atherton <ra@ergolaw.com>
  **Subject:** Blueridge Payment to Finbrit

- Exhibit 15 (Cheshire Dep. Ex. 23):

  **From:** Cadwallader, John I. <JCadwallader@fbtlaw.com>
  **Sent:** Monday, December 23, 2019 1:13 PM EST
  **To:** james.bowman@raymondjames.com <james.bowman@raymondjames.com>; Shannon Meisner
  <Shannon.Meisner@RaymondJames.com>
  **CC:** Herb Glimcher<herb@glimchercompany.com> <herb@glimchercompany.com>; Cheshire Ventures
  <Cheshireventures@outlook.com>; michael@glimcherlegacy.com <michael@glimcherlegacy.com>; Schengeli, Linda M.
  <LSchengeli@fbtlaw.com>
  **Subject:** RE: FinBrit wire instructions

*See* Exs. 4–15 (Deposition exhibits listed above in their entirety).  However, Mr. Nelson repeatedly

responded by stating that whatever email he was shown, coming from the Cheshireventures@out-

look.com email account, was not in fact related to Cheshire Ventures or that he only had knowledge

of these emails in his "personal capacity."  He then refused to answer questions about their contents

as Cheshire Ventures' corporate designee, as shown in the following examples:

> Q:       Tell us what you know in any capacity about this bonus that's being de-
>          scribed in your e-mail that you're sending to  - - from Cheshire Ventures'

e-mail account to Rod Atherton?

MR. LITTLE: Objection to the form. Same objection previously about the scope of the deposition.

A:        As managing principal of Cheshire Ventures, I gave myself the ability to send e-mails personally. This would have been a personal e-mail to Rod Atherton regarding the numbers and the names you see there. As managing principal of Cheshire Ventures, I would have had no idea what this is.

Cheshire Dep. Tr. 71:8–21; *see also*, *id.* at 61:25–62:22; 72:9–18; 114:3–6; 115:12–18; 123:22–124:13; 184:5–11; 193:4–10; 194:12–16; 201:18–23.

Mr. Nelson's *claim* that, despite using his Cheshire Ventures email account to interact with scheme participants about transactions in this lawsuit and possessing personal knowledge of the relevant issues, Cheshire Ventures in fact had no role in those transactions is based on nothing more than Mr. Nelson's bald assertion. His refusal to answer questions in his capacity as a Rule 30(b)(6) witness deprived Amazon of the opportunity to learn the relevant facts so that it could test whether his representations about Cheshire Ventures' role were accurate. Under Mr. Nelson's and Mr. Little's fabricated discovery rules, Amazon simply had to take their word for it, clearly not something the discovery rules contemplate. Fed. R. Civ. P. 30(c)(2).

Moreover, the purported distinction between Mr. Nelson's personal knowledge and knowledge as representative of Cheshire Ventures is false for another reason: Mr. Nelson's personal knowledge *is* Cheshire Ventures' knowledge. It is black-letter law "that knowledge of an officer or director of a corporation will be imputed to the corporation.'" *AngioScore, Inc. v. Tri-Reme Med., Inc.*, 2015 WL 4040388, at *20 (N.D. Cal. July 1, 2015) (quotation marks omitted); *Michael Kors, L.L.C v. Hernandez Int'l Inc.*, 2016 WL 6306129, at *24 (S.D. Tex. Oct. 27, 2016) ("[C]ourts generally agree that the knowledge of directors or key officers, such as the president and vice president, is imputed to the corporation.") (quotation marks omitted). Mr. Nelson is not

merely an officer of Cheshire Ventures, he is its *only* officer and, indeed, its only employee.  In other words, Cheshire Ventures is a one-man enterprise run entirely by Mr. Nelson.  And since Mr. Nelson is the sole proprietor and officer of Cheshire Ventures, his personal knowledge necessarily overlaps entirely with Cheshire Ventures' corporate knowledge.  Cheshire Dep. Tr. 23:18 – 22; *see also Sabre v. First Dominion Cap., LLC*, 2001 WL 1590544, at *2 (S.D.N.Y. Dec. 12, 2001) ("In the case of many closely held corporations, the knowledge of an individual concerning a particular subject also constitutes the total knowledge of the entity.").[2]  Thus, even if certain emails from his Cheshire Ventures address were for solely personal *purposes*, that information would still be within Cheshire's corporate *knowledge*.  In other words, any information known by Nelson in his personal capacity, would also be "known or reasonably available," (Fed. R. Civ. P. 30(b)(6)), to Cheshire Ventures.

To make matters worse, Mr. Nelson used the "personal knowledge" distinction as both a sword and a shield: on one hand, he claimed that Cheshire Ventures was engaged in legitimate business operations, but on the other hand, he refused to testify regarding the details of those operations or the company's relationships with relevant entities on ground that those operations and relationship purportedly concerned his personal capacity.  This gamesmanship is all the more troubling with respect to the communications with his counsel, Rodney Atherton, given that Mr. Nelson waived privilege over all such communications dated before April 2, 2020, and has represented that he plans to rely on an advice of counsel defense in this case.  Dkt. 618-2.  Mr. Nelson must

---

[2]  Even if there were plausible distinctions between Mr. Nelson's personal and corporate knowledge (and there are not), Mr. Nelson has no basis to draw that line unilaterally, apparently based on whether he wants to dodge a question.  Any distinctions between the Defendants and related entities are litigable issues that Amazon has every right to investigate through discovery and test on a full factual record.

answer all questions—he cannot be permitted to cherry-pick those questions that he wants to respond to.

### B. Mr. Little Impeded the Deposition by Improperly Instructing Mr. Nelson Not to Answer Valid Questions.

Counsel to Cheshire Ventures, Mr. Little, impeded the deposition by instructing Mr. Nelson not to answers that fell on the wrong side of his artificial divide between what he and Cheshire Ventures knew.[3]  Mr. Little attempted to justify his instructions by claiming that Amazon should have asked Mr. Nelson at his April 28 personal deposition about the emails produced by Cheshire Ventures, notwithstanding that the emails bear Cheshire Ventures' Bates numbers and were sent to and from an email address bearing Cheshire Ventures' name: **CheshireVentures@outlook.com**.  The claim that Amazon should have known to ask about these emails the prior day during Mr. Nelson's individual deposition is nothing but a blatant attempt to prevent Amazon from obtaining testimony about those emails.  Mr. Little also improperly took the opportunity to offer his own testimony as to what he thought was and was not related to Cheshire Ventures.  *See* Ex. 1 (Cheshire Dep. Tr.) at 126:9–127:5.

Defendant's counsel instructed the witness not to answer Amazon's questions as Cheshire Ventures corporate designee[4] multiple times, despite Mr. Nelson having admitted on record to knowing the answer to Amazon's questions in his "personal capacity," a concept that remained a

---

[3]  Cheshire Dep. Tr. at 65:7–66:5; 72:21–73:1; 75:15–78:21; 124:17–127:24; 129:9–23; 130:8–132:7; 177:3-25; 178:5–179:24; 185:15–187:6; 204:5–8.

[4]  At times, the reasons underpinning Mr. Little's instructions appeared unclear or seemed to conflate answers based on personal knowledge as exceeding the scope of the Rule 30(b)(6) deposition.  For example, in some circumstances, Mr. Little instructed the witness not to answer on the basis that the question was "not within the scope of the 30(b)(6)."  Cheshire Dep. Tr. at 68:25–69:8.  But such an instruction is improper in any event as topics listed under a Rule 30(b)(6) notice are provided to assist with the preparation of a company designee.  They do not, however, excuse a party from answering questions about other topics not included in the notice based on the designee's own knowledge.

moving target throughout the deposition.  *See, e.g.*, Ex. 1 (Cheshire Dep. Tr.) at 65:7–66:5; 72:9–

18; 72:21–73:6; 75:15–78:21; 114:5–6; 115:17–18; 124:11–13; 124:17–127:24: 129:9–23; 130:8–

132:7;  177:3-25;  178:5–179:24;  184:10–11;  185:15–187:6;  193:4–10;  194:12–16;  201:18–23;

203:5–204:11.  For example, when Mr. Nelson was asked about the substance of a bonus structure

described in an email sent ***from a Cheshire Venture's email address*** to attorney Defendant Rod-

ney Atherton and produced to Amazon by Cheshire Ventures, Mr. Little responded:

> MR. LITTLE:  Same objection and **we're going to direct him not to answer to the extent you're asking him about his personal capacity**, be-cause it's outside of the 30(b)(6). It's not proper. If you want to ask him in his personal deposition you can.

*Id.* at 72:21–73:1 (emphasis added).  Subsequently, Mr. Nelson was again instructed not

to answer a question about the bonus structure for purposes of his 30(b)(6) deposition:

> Q:       Okay. So again, on Exhibit 3, do you have knowledge whether as the corporate representative of Cheshire Ventures or in any other capacity about what the structure -- what the purpose of this bonus structure was?

> MR. LITTLE: Objecting, this is asked and answered. We have the same objec-tions as before. He's already answered this to the capacity of the 30(b)(6). If you're asking him in any other capacity, **I'm directing him not to answer**.

*Id*. at 75:10–20 (emphasis added).

> Q:       Okay. What is the substance of this structure? What is the purpose of this structure?

> MR. LITTLE: Same objection and **we are directing him not to answer** because it is not appropriate for the 30(b)(6) deposition.

*Id.* at 78:9–14 (emphasis added).

> Q:       What then is the purpose of this agreement?

> MR. LITTLE: Same objection. **I'll direct him not to answer.** If you want to ask him now in his personal capacity and count that toward your dep-osition you left open yesterday, we're happy to let him do so. If

16

> not, I don't think it's appropriate for a 30(b)(6), and **I'll direct him
> not to answer.**

Ex. 1 (Cheshire Dep. Tr.) at 124:17–25 (emphasis added).  Mr. Little instructed Mr. Nelson not to

answer questions as part of the 30(b)(6) at least four more times.  *See, e.g.*, Ex. 1 (Cheshire Dep.

Tr.) at 129:20–23; 177:12–25; 194:20–195:20; 204:5–11.

     Mr. Little suggested he would deduct Amazon's remaining time from Mr. Nelson's indi-

vidual deposition on April 28 if Amazon wanted Mr. Nelson to answer these questions.  *See, e.g.*,

Cheshire Dep. Tr. at 65:7–8; 124:17–25; 195:4-8; 200:9–12.  Putting aside that Amazon's ques-

tions focused on areas involving Cheshire Ventures communications, there is nothing improper

about taking the same person's deposition as an individual and as a corporate designee.  After all,

Cheshire Ventures elected to designate Mr. Nelson as its representative—apparently because

Mr. Nelson is the only person who has anything to do with the company.  Numerous courts have

allowed overlapping testimony, particularly where a 30(b)(6) is conducted of a closely-held entity,

such as Cheshire Ventures.  *See, e.g.*, *Leazenby Constr., Inc. v. City of Counsel Bluffs*, 2012 WL

12914696, at *1 (S.D. Iowa Mar. 22, 2012); *DHL Express (USA), Inc. v. Express Save Indus. Inc.*,

2009 WL 3418148, at *2 (S.D. Fla. Oct. 19, 2009).  Thus, Mr. Nelson was bound to answer Am-

azon's questions once Mr. Little had made a  "note on the record that answers to questions beyond

the scope of the Rule designation are not intended as the answers of the designating party and do

not bind the designating party." *Mitnor*, 339 F.R.D. at 321 (quotation marks omitted).  But Ama-

zon is not required to agree with Mr. Little's unilateral assertions about which knowledge is at-

tributable to Mr. Nelson and which to his company, and there is likewise no support for Mr. Little's

insistence that Amazon agree that Mr. Nelson answer those questions only "as long as [Mr. Nel-

son's] answer [counts] towards [his personal] deposition time."  Cheshire Dep. Tr. at 166:12–14.

## C.   Mr. Nelson Was Unprepared To Testify On Topics Identified In Amazon's Deposition Notice.

In addition to refusing to answer certain questions and being instructed not to answer by his counsel, Mr. Nelson also demonstrated a stunning lack of preparation and was unable to answer many other questions as a result.  Mr. Nelson admitted that he had not reviewed *any* documents in preparation to testify as Cheshire Ventures' corporate designee beyond Amazon's 30(b)(6) deposition notice and Amazon interrogatory responses. Ex. 1 (Cheshire Dep. Tr.) at 11:25–12:17.  Rule 30(b)(6) imposes a duty on entities "to adequately prepare its representatives so that they may give complete, knowledgeable, and nonevasive answers in deposition."  *Humanscale Corp.*, 2009 WL 5091648, at *1.   Compliance with the rule "explicitly requires [a corporation] to have persons testify on its behalf as to all matters known or reasonably available to it and, therefore, implicitly requires such persons to *review all matters known or reasonably available to it in preparation* for the Rule 30(b)(6) deposition."  *Id.* at 2 (emphasis added); *see also Power Home Solar, LLC v. Sigora Solar, LLC*, 339 F.R.D. 64, 76 (W.D. Va. 2021) (testifying on matters known to the corporation "may require extensive preparation, document review, interviews, and other forms of investigation to reasonably identify the corporation's relevant knowledge and positions and educate the corporate designee on the same."); *Severn Peanut Co. v. Indus. Fumigant Co.*, 2013 WL 5348434, at *1 (E.D.N.C. Sept. 23, 2013) (corporate knowledge includes "facts gathered from prior fact witness deposition testimony, other *documents the employee could review*, and facts passed on to the employee by corporate lawyers because the attorney-client privilege does not apply to the disclosure of facts.") (emphasis added).  To the extent that Mr. Nelson truly did not have knowledge of the topics noticed by Amazon, Cheshire Ventures plainly violated its duty to produce an adequately prepared representative.

Throughout the deposition of Cheshire Ventures, Mr. Nelson stated on record that he did not know the answer to Amazon's questions more dozens of times. *See, e.g.*, Ex. 1 (Cheshire Dep. Tr.) at 36:7–8; 46:11–13; 123:8; 136:7–8; 149:19–22; 171:1–2; 171:25; 205:12. He claimed to have no knowledge of, and did not answer questions with respect to, numerous Cheshire Ventures email communications (and their accompanying attachments) relating at least to Topics 1, 2, 4, 5, 7–10. *See* Ex. 3 at 5-7 (topics covering Cheshire Ventures operations and business, its relationship with Amazon, the Blueridge transaction, Michael and Herb Glimcher, Rodney Atherton's and De-metrius Von Lacey's involvement, and payments related to Blueridge transaction or the lease transactions). For example, when asked questions relating to relationship and interactions with Rodney Atherton (Topic 6), Mr. Nelson was either unable or unwilling to answer:

> Q:      Did you receive any written opinions or legal work product from
>         Mr. Atherton?
>
> A:      He would review consulting contracts and either do markups or make rec-
>         ommendations.  Yes.
>
> Q:      And do you have copies of those records?
>
> A:      I don't know if I do or not. I'm not sure where they might be. I haven't
>         looked for those in a long time.
>
> Q:      As part of the 30(b)(6), did you not look for all your records related to
>         Cheshire?
>
> A.      I did not.

Ex. 1 (Cheshire Dep. Tr.) 205:7–17.

Mr. Nelson was likewise unprepared to answer even basic questions about Cheshire Ven-tures' financial operations and flow of funds (Topics 1, 7-11):

> Q:      Do you know if this bank account received funds related to Cheshire Ven-
>         tures?

A:      I don't.  It says, 7023 is the last four of the account number.  And I don't –
        let's see, the date on October 2019 to November, so I don't know. I don't
        remember. But, no, it shouldn't have taken any money from Cheshire, un-
        less I moved money into there, which is possible.

*Id.* at 173:13–173:21.

These questions related directly to the topics listed in Amazon's 30(b)(6)notice.  Ex. 3 at

5–7.  A designee's failure to review documents or information on the noticed topics reasonably

available to them is a violation of Rule 30(b)(6) obligations.  *See Power Home Solar, LLC*, 339

F.R.D. at 80 ("[i]n short Branch's deposition reveals that PHS simply did not meet its Rule 30(b)(6)

obligation," where the witness "conceded that the only thing [she] did to acquire knowledge about

the topics was meet with PHS's counsel.") (quotation marks and brackets omitted); *see also Hug-*

*gins v. Prince Georg's Cty.*, 2009 WL 10685429, at *12 (D. Md. June 8, 2009) (ordering sanctions

where witnesses' testimony revealed that the designees had not reviewed any documents and relied

solely on their personal knowledge).   Not only did Mr. Nelson admit he had not reviewed any

documents in preparation for the Cheshire Ventures deposition, he was also not knowledgeable

about documents he had produced in the litigation.  Cheshire Ventures Dep. Tr.  at 148:10–20.

This breached his obligations as Cheshire Venture's designated corporate representative.

### D.      Defense Counsel's Unilateral Restrictions On Cheshire Ventures' Second Deposition And Unwillingness to Refrain from Improper Instructions are Unreasonable and Present A Significant Risk of Rendering Yet Another Examination Futile.

After several meet and confer discussions and numerous emails over the past two months,

Cheshire Venture's counsel finally agreed to appear again for further examination, in apparent

acknowledge of the misconduct that obstructed the first Cheshire Ventures deposition.  Although

this misconduct undermined the entire examination, Amazon offered during these discussions to

limit its renewed examination to approximately half a day, in an effort to accommodate Cheshire

Ventures and avoid burdening the Court with this motion.  Ex. 16.  Cheshire Ventures' counsel

agreed to that parameter, but nonetheless repeatedly attempted to impose limitations on the scope of the examination, in addition to the time limitation. Amazon, however, was unable to agree to these limitations because Mr. Nelson and his counsel so extensively impeded the first deposition by imposing artificial boundaries on the testimony, that it did not want to run the risk of a second obstructed deposition. Nonetheless, in a further effort to accommodate Cheshire Ventures and assist its counsel to prepare, Amazon detailed several categories of question it intended to pursue. Amazon made clear that its list was not exhaustive and sought defense counsel's agreement that it not instruct Mr. Nelson not to answer questions that it contended exceeded the scope limitations it sought to impose. *Id.* Cheshire Ventures' counsel refused. *Id.*

Cheshire Ventures' scope limitations and implicit intention to enforce them through more instructions not to testify are unreasonable and contrary to the Federal Rules of Civil Procedure, *See* Fed. R. Civ. P. 30(b)(6), and Cheshire Ventures' position strongly suggests the possibility that the second deposition of Cheshire Ventures also will be impeded by gamesmanship, resulting in a further waste of the parties' resources and obstruction of Amazon's right to develop critical evidence.

Cheshire Ventures is right to acknowledge it must testify further. It is wrong to contend that it may testify on its terms. Cheshire Ventures should be ordered to appear to testify again without limitations other than those set forth in the federal rules, and its counsel should be admonished against any instruction not to testify unless it is properly grounded in the preservation of the privilege.

**II.    This Court Should Order Mr. Nelson to Appear Again as Cheshire Ventures' Corporate Representative, Require Him To Answer Fully Amazon's Questions, and Assess Fees.**

The Court should order Mr. Nelson to appear again as Cheshire Ventures' corporate representative and to answer all non-privileged questions based on the information reasonably available to him, including his personal knowledge and Cheshire Ventures' corporate records.  Where a deposing party is unable to develop a factual record on relevant issues because the Rule 30(b)(6) witness "refused to answer questions," courts typically order the parties to re-take the deposition. *See, e.g.*, *ComScore, Inc. v. Moat, Inc.*, 2013 WL 12147701, at *3 (E.D. Va. Sept. 25, 2013) (granting request to retake deposition, state any objections on the record, and allow the witness to answer).  As explained above, Mr. Nelson refused to testify based on his counsel's improper instructions and, sometimes, of his own volition, using a fabricated distinction between what he knew as Carl Nelson and what he knew as Cheshire Ventures.

Further, where, as here, "a Rule 30(b)(6) designee is unprepared or unknowledgeable of relevant facts," his "appearance is, for all practical purposes, no appearance at all." *NewMarket Corp.*, 2011 WL 1306008, at *6 (quotation marks omitted); *Taylor*, 166 F.R.D. at 363 ("[p]roducing an unprepared witness is tantamount to a failure to appear.").  Under these circumstances, where "unanswered information is significant enough the 30(b)(6) deposition may have to be reconvened." *Coryn Grp. II, LLC v. O.C. Seacrets, Inc.*, 265 F.R.D. 235, 240 (D. Md. 2010) (ordering party to "produce a fully prepared designee (or designee) capable of responding appropriately at a Rule 30(b)(6) deposition" on various topics); *Newmarket Corp.*, 2011 WL 1306008, at *6; *see also* Fed. R. Civ. P. 37(a)(3)(B)(ii), (a)(4).  Mr. Nelson was admittedly unprepared during the Cheshire Ventures deposition and his lack of answers essentially rendered the deposition futile.

Finally, although Mr. Nelson has stated he is willing to appear again, his attorneys will not confirm that they will not instruct Mr. Nelson not to answer any questions based on scope.  Such

instructions are improper. The Court should order the retaking of the Rule 30(b)(6) deposition; order Mr. Nelson to respond to the questions posed; admonish his counsel against improper instructions and speaking objections; and order Cheshire Ventures to pay the costs associated with bringing the instant motion.  *See* Fed. R. Civ. P. 30(d)(2), 37(a)(5).[5]

## CONCLUSION

The court should grant this motion to compel and order Cheshire Ventures to reappear for a Rule 30(b)(6) deposition.

Dated:  July 8, 2022

Respectfully submitted,

*/s/ Michael R. Dziuban*

Veronica S. Moyé (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
Telephone:  (214) 698-3100
Facsimile:  (214) 571-2900
vmoye@gibsondunn.com

Elizabeth P. Papez (*pro hac vice*)
Patrick F. Stokes (*pro hac vice*)
Jason J. Mendro (*pro hac vice*)
Claudia M. Barrett (*pro hac vice*)
David W. Casazza (*pro hac vice*)
Amanda Sterling (*pro hac vice*)
Michael R. Dziuban (Va. State Bar No. 89136)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
Telephone:  (202) 955-8500
Facsimile:  (202) 467-0539
epapez@gibsondunn.com
pstokes@gibsondunn.com
jmendro@gibsondunn.com
cbarrett@gibsondunn.com
dcasazza@gibsondunn.com
asterling@gibsondunn.com
mdziuban@gibsondunn.com

*Counsel for Plaintiffs Amazon.com, Inc. and Amazon Data Services, Inc.*

---

[5]  Amazon was provisionally willing to limit its examination to approximately half a day in order to avoid this dispute. But Cheshire Ventures necessitated this motion by imposing unreasonable restrictions that portended further obstruction.  Given that Cheshire Ventures and its counsel undermined the entirety of the last deposition and refused to appear for further examination on reasonable terms, Amazon now seeks to examine Cheshire Ventures for up to seven hours.

## CERTIFICATE OF SERVICE

I hereby certify that on July 8, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system.  I will then send the document and a notification of such filing (NEF) to the following parties via U.S. mail to their last-known address and by email, where noted:

CTBSRM, Inc.
6870 W 52nd Ave., Ste. 203
Arvada, CO 80002

Demetrius Von Lacey
2845 Des Moines Dr.,
Fort Collins, CO 80525

Casey Kirschner
635 N. Alvarado Lane
Plymouth, MN 55447
By email: casey.kirschner@gmail.com

2010 Irrevocable Trust
6870 W 52nd Ave., Ste. 203
Arvada, CO 80002

Sigma Regenerative Solutions, LLC
6870 W 52nd Ave., Ste. 203
Arvada, CO 80002

*s/ Michael R. Dziuban*
Michael R. Dziuban
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
Telephone:  (202) 955-8500
Facsimile:  (202) 467-0539
mdziuban@gibsondunn.com

*Counsel for Plaintiffs Amazon.com, Inc. and Amazon Data Services, Inc.*