# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF VIRGINIA
# ALEXANDRIA DIVISION

| | |
|---|---|
| AMAZON.COM, INC and AMAZON DATA SERVICES, INC., <br><br> Plaintiffs, <br><br> v. <br><br> WDC HOLDINGS LLC d/b/a NORTHSTAR COMMERCIAL PARTNERS, et al., <br><br> Defendants, <br><br> 800 HOYT LLC, <br><br> Intervening Interpleader Plaintiff, <br><br> v. <br><br> BRIAN WATSON, WDC HOLDING LLC, et al. <br><br> Interpleader Defendants. | Case No. 1:20cv484 <br><br> Hon. Rossie D. Alston, Jr. <br> Hon. Theresa Buchanan <br><br><br><br> **CHESHIRE VENTURES, LLC'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL ANSWERS AT 30(B)(6) DEPOSITION** |

Cheshire Ventures LLC ("Cheshire Ventures"), through undersigned counsel, files this response in opposition to Amazon's motion to compel. This motion is not brought in good faith and should be denied.

**A.  Mr. Nelson was prepared to testify and testified extensively on the areas of inquiry.**

Over two days of depositions, Mr. Nelson answered **1,600** questions asked by Amazon's counsel. On April 28, 2022, Amazon's counsel asked, and Mr. Nelson answered almost 600 questions (after preliminaries) at the Cheshire Ventures deposition. *See* Dkt. 862-1. The day before, at his individual deposition, he answered another 1,000 questions. *See* Ex. A to Smart

48268744 v1

Declaration. In all, Mr. Nelson sat through over 10 hours of questioning by counsel for Amazon, resulting in over 500 pages of deposition transcript. This testimony came after Mr. Nelson produced over 100,000 documents to Amazon. (By way of comparison, Amazon has produced less than 10,000.) Mr. Nelson also waived attorney client privilege and provided detailed interrogatory responses to eleven interrogatories concerning a variety of subjects, including the transactions as issue in this case and issues related to Cheshire Ventures.[1]

Mr. Nelson has done all this while in the shadow of a criminal investigation which began over two and a half years ago at Amazon's request *and* after a call with all parties in this case where the investigating prosecutors attempted to pressure the defendants into seeking a stay of this civil case by threatening perjury charges if they testified falsely in their depositions. Even in the face of those improper threats, Mr. Nelson sat and testified for hours and answered hundreds of questions by Amazon. Yet, Amazon says Mr. Nelson was unprepared to answer *approximately a dozen questions* and that this means the deposition was essentially no deposition at all. Doc. 861 at 24 of 29.[2] This claim is flatly false. In fact, when one actually looks at the dozen or so questions Amazon cites, most are not even failures to answer questions at all, meaning the real number is more like 4-5 of over 600 questions Mr. Nelson answered. The Court should reject Amazon's half-hearted attempt to claim that Mr. Nelson was wholly unprepared in an effort to get an entirely new deposition.

---

[1] It should be noted that Amazon never served any interrogatories on Cheshire Ventures, apparently deciding it did not need to do so given the fact that Cheshire Ventures did not even exist until Mr. Nelson left Amazon's employment.

[2] As shown below, the "dozen questions" appear to be what Amazon identified by doing a word search for the phrase "I don't know," and in many instances do not actually represent a failure of Mr. Nelson to testify on a matter. If Amazon had read the entirety of the testimony it cited instead of just including a cite to the phrase "I don't know," it could have seen that with only a little effort.

48268744 v1

> **B.     Amazon is attempting to use the 30(b)(6) of Cheshire to improperly extend Mr. Nelson's personal deposition.**

To understand the disconnect between Amazon's questioning of Cheshire Ventures and why this dispute arose in the first place, the Court needs to understand that Cheshire Ventures is an entity set up by Mr. Nelson to do development consulting work *after* he left the employment of Amazon. In other words, the entity *did not even exist* while he worked at Amazon. Nor did the entity have any role in the transactions at issue in this case. Rather, Cheshire Ventures had numerous consulting agreements (which have been produced to Amazon) with third-parties unrelated to the transactions at issue in this case through which Mr. Nelson attempted to earn a living after he left Amazon's employment. The company obviously fell on hard times when the FBI raided his house on April 2, 2020 following Amazon's pitch of the case and production of selective documents to the government. *See* Dkt 862-1 at 79-97

In this context, Amazon viewed the 30(b)(6) deposition of Cheshire Ventures as an opportunity to try  extend Mr. Nelson's personal deposition beyond the presumptive seven-hour limit without asking for any leave to do so. For example, several of the 30(b)(6) topics served on Cheshire Ventures asked about Cheshire Venture's role in the lease transactions (all of which except one were closed before the company was even formed) or the Whitepeaks and Blueridge Transactions. When asked, Mr. Nelson truthfully answered that Cheshire had no involvement in any of those transactions.

Apparently not having gotten the answers it wanted, Amazon then left Cheshire behind and began asking what Mr. Nelson's personal role was in various aspects of the transactions and what

personal moneys he obtained or had access to through *other* entities aside from Cheshire Ventures.[3] Counsel for Cheshire Ventures objected to using the 30(b)(6) of Cheshire Ventures as a *de facto* continuation of Mr. Nelson's personal deposition after counsel had a night to consider Mr. Nelson's answers and determine other areas he wished to follow up on with Mr. Nelson in his personal capacity. Amazon used two stalking horses to try and achieve this goal.

The first was to point to the Bates numbering on *all* documents produced by Mr. Nelson and Cheshire Ventures, which began "NELSON_CHESHIRE_*****", when Amazon served *a joint request* for production to Mr. Nelson and Cheshire Ventures. Amazon argued that any document of the over 100,000 produced by Mr. Nelson was a "Cheshire" document because of the stamping of its Bates numbering, and therefore a proper subject of the Cheshire Ventures deposition. This is preposterous. For example, many of those documents Mr. Nelson produced and stamped "NELSON_CHESHIRE_******" are actually Amazon's internal documents that Amazon sent to Mr. Nelson after he left employment there and clearly have nothing to do with Cheshire Ventures. In fact, most of the documents were created internally at Amazon before the company was even in existence.

The second method Amazon's counsel took to improperly extend Mr. Nelson's personal deposition was to argue that so long as an email was sent from or received by the outlook email address Cheshireventures@outlook.com, which was set up by Mr. Nelson after he left Amazon's employment, it meant that Cheshire Ventures had a role in whatever matter was discussed in the email. Mr. Nelson explained that, although he did primarily use the email in connection with Cheshire Ventures business, he also used it from time to time for non-Cheshire Ventures business.

---

[3] To be clear, Mr. Nelson answered numerous questions regarding both the Blueridge and Whitepeaks transaction at his personal deposition the day before—answering every single question Amazon asked about those transactions. *See, e.g.*, Ex. A to Smart Decl. at 272-296.

48268744 v1

Accordingly, when Amazon's counsel asked him about a specific email, he explained when that occurred, and further explained that that despite the email address being used, Cheshire Ventures had no involvement in a particular matter. This was not some attempt to frustrate Amazon's questioning; it was Mr. Nelson tetsifying truthfully whether or not a matter involved Cheshire Ventures business.[4] Of course, there are many emails from that address that *do* involve Cheshire Ventures business. When they did, Mr. Nelson was willing and able to answer these questions, including for example when Amazon asked about Cheshire sending a proposed land site to Amazon after he left its employ. *See* Dkt 862-1 at 79-80.

Even in the face of this improper attempt to extend Mr. Nelson's personal deposition, he and Cheshire Ventures sought to accommodate Amazon's counsel. Because everyone had traveled to Nashville for the depositions, to avoid wasting time and potentially requiring a motion just like the one before the Court now, Counsel for Cheshire Ventures and Mr. Nelson made clear that Amazon could ask whatever additional questions it wanted about Mr. Nelson's personal role in the Blueridge transaction (or any other transactions for that matter) so long as Amazon used the hour of time it had reserved in Mr. Nelson's individual deposition the day before. Inexplicably, Amazon refused to take this offer and continued to assert that it could use as much of the remaining time for Cheshire's 30(b)(6) deposition to ask Mr. Nelson about his personal role in matters in which Cheshire had no involvement—the day *after* Amazon asked Mr. Nelson questions about many of these same matters for over six hours. *See Kovich v. Nationwide Prop. & Cas. Ins. Co.*, No. 3:20-CV-00518, 2021 WL 5450455, at *3 (S.D.W. Va. Nov. 22, 2021) (declining to order a deponent to sit for a second Rule 30(b)(6) deposition where the thrust of the questions the moving

---

[4] For example, Mr. Nelson used that email for several other matters that were clearly of a personal nature. *See* Exs. B-C to Smart Decl. This is no different than anyone else who might use their work email from time to time to email about matters unrelated to that work, a not uncommon occurrence.

5

party wanted to ask was outside the scope of the notice); *E.E.O.C. v. Freeman*, 288 F.R.D. 92, 98 (D. Md. 2012) ("Regardless of the behavior of counsel during a deposition, a court need not compel the discovery of information that falls outside the scope of proper discovery under Federal Rule of Civil Procedure 26(b)(1). When the deposition was conducted pursuant to Rule 30(b)(6), the court may consider the scope of the notice of deposition in determining whether to compel answers.").

Even now, it is apparent that Amon has no real interest in Cheshire Ventures. In fact, it is using this motion to ask that *Mr. Nelson* be required to sit and answer whatever questions it has of him personally rather than the Company. See Dkt. 861 at 9 of 29 ("Order ***Mr. Nelson*** to appear again as Cheshire Ventures' rule 30(b)(6) corporate representative"); at 28 of 29 (requesting the Court to "order ***Mr. Nelson***" to sit for deposition). It is also telling where they claim the 30(b)(6) notices were issued to both Mr. Nelson and Cheshire Ventures. *See* Dkt. 862 ¶ 4 ("Exhibit 3 is a true and correct copy of an amended Rule 30(b)(6) deposition notice to Defendants Carleton Nelson and Cheshire Ventures issued by Amazon on April 12, 2022"). It is also telling that, as discussed below, the only area of dispute that remained between the parties when Amazon apparently threw out the entire agreement the parties had worked to reach to instead seek a whole new deposition of Cheshire Ventures, was how much Amazon could ask Mr. Nelson *in his personal capacity.* However, Rule 30(b)(6) only requires that the entity put for that represntative to answer question on designated topics, it does not allow a party seeking to compel further answers by an entity to pick the specific person who must appear. *See Joiner v. Choicepoint Servs., Inc.*, No. CIV 105CV321, 2006 WL 2669370, at *5 (W.D.N.C. Sept. 15, 2006) ("However, service upon a managing agent of a corporation does not automatically compel that agent to represent the corporation and/or produce the corporation's documents; nor can Plaintiff choose a representative for Defendant merely because the employee allegedly has access to certain documents Plaintiff

6

48268744 v1

desires to inspect. Only Defendant can designate its representative, and these portions of Plaintiff's subpoenas are invalid under Rule 30(b)(6)").

**C.  Amazon's extensive motion and request for costs was made in made in bad faith when almost everything it seeks a ruling on was resolved through the meet and confer process—which left only a single issue for the Court.**

Finally, it should be made clear to the Court that, although Cheshire Ventures and Mr. Nelson dispute Amazon's claims that he was unprepared and that it is proper to use the 30(b)(6) process as a *de facto* continuation of an individual deposition, in an effort to save time and expense and move past the issue, Cheshire Ventures and Mr. Nelson spent considerable time working on an arrangement to resolve this dispute with Amazon. In fact, the parties had reached an agreement on almost every aspect of this dispute: whether Cheshire would agree to sit for more questions (it would), the agreed length of the continued deposition (3.5 hours, per Amazon's request), the topics for which Cheshire Ventures would engage in further preparation (which were agreed), that Mr. Nelson would again make clear to Amazon (as he already had) where he had used his Cheshire Ventures outlook account for Cheshire Ventures business and where he had done so in a personal capacity, *and* that he would answer questions about the topics in those emails, whatever the capacity in which it was sent—one of the key areas of dispute from the initial Cheshire Ventures deposition. *See* Dkt. 826-16.

Pursuant to Local Rule 37, the parties are required to attempt to narrow their disputes as much as possible before coming to the Court—which the parties did, leaving the sole issue for the Court to decide: should there be some limitation on Amazon's ability to ask questions about Mr. Nelson's personal conduct or activities at this continued deposition when the dispute was arising from the 30(b)(6) deposition and Amazon had not raised a single complaint about Mr. Nelson's willingness to answer its questions during the six plus hours it deposed Mr. Nelson in his personal

7

48268744 v1

desires to inspect. Only Defendant can designate its representative, and these portions of Plaintiff's subpoenas are invalid under Rule 30(b)(6)").

**C.  Amazon's extensive motion and request for costs was made in made in bad faith when almost everything it seeks a ruling on was resolved through the meet and confer process—which left only a single issue for the Court.**

Finally, it should be made clear to the Court that, although Cheshire Ventures and Mr. Nelson dispute Amazon's claims that he was unprepared and that it is proper to use the 30(b)(6) process as a *de facto* continuation of an individual deposition, in an effort to save time and expense and move past the issue, Cheshire Ventures and Mr. Nelson spent considerable time working on an arrangement to resolve this dispute with Amazon. In fact, the parties had reached an agreement on almost every aspect of this dispute: whether Cheshire would agree to sit for more questions (it would), the agreed length of the continued deposition (3.5 hours, per Amazon's request), the topics for which Cheshire Ventures would engage in further preparation (which were agreed), that Mr. Nelson would again make clear to Amazon (as he already had) where he had used his Cheshire Ventures outlook account for Cheshire Ventures business and where he had done so in a personal capacity, *and* that he would answer questions about the topics in those emails, whatever the capacity in which it was sent—one of the key areas of dispute from the initial Cheshire Ventures deposition. *See* Dkt. 826-16.

Pursuant to Local Rule 37, the parties are required to attempt to narrow their disputes as much as possible before coming to the Court—which the parties did, leaving the sole issue for the Court to decide: should there be some limitation on Amazon's ability to ask questions about Mr. Nelson's personal conduct or activities at this continued deposition when the dispute was arising from the 30(b)(6) deposition and Amazon had not raised a single complaint about Mr. Nelson's willingness to answer its questions during the six plus hours it deposed Mr. Nelson in his personal

capacity. All that counsel for Mr. Nelson and Cheshire Ventures proposed by way of limitation is that such questions of Mr. Nelson in his personal capacity should not be allowed if they did not flow from Mr. Nelson's answers to the agreed areas of inquiry. Amazon refused to agree to this limitation, insisting that it be able to use the 30(b)(6) deposition to ask Mr. Nelson about any topic of its choosing, whether in his individual or representative capacity.

Despite this small dispute, Amazon filed a much broader motion. In effect, Amazon threw out weeks of negotiations—after which there was a single remaining issue for the Court to decide—and is now asking that the Court grant an entire new 30(b)(6) deposition of seven hours of Cheshire Ventures to ask about any topic Amazon chooses. This is in bad faith. As is its request for costs for its 20+ page motion when almost every area in the motion had already been resolved. To award fees and costs for a motion where 85% of it was unnecessary would make a mockery of the meet and confer process.

**D.      Amazon's "dozen" citations to the transcript to claim Mr. Nelson was not prepared do not hold water.**

Again, Amazon takes the position that the entire deposition was insufficient. *See* Doc. 861 at C. This strains credulity when Mr. Nelson testified for almost four hours across a variety of topics. *See generally* Dkt. 862-1. Amazon purports to identify approximately a dozen times where Mr. Nelson allegedly said he did not know an answer in an attempt to claim the entire deposition of every 600 answered questions should be thrown out. To come to this conclusion, however, it appears that Amazon's counsel simply did a word search for the phrase "I don't know." But when these phrases were used, the transcript makes clear they do not demonstrate a lack of preparation.

In one instance, for example, the answer was not that Mr. Nelson did not know something of substance. Rather, it was a statement that the technology Mr. Stokes was using to share exhibits was delayed and the exhibit had not even appeared on his screen yet so he could not answer the

deposing attorney's question. Dkt. 862-1 at 123:6-10. Another example was a series of questions where Mr. Nelson was asked about a document and how it related to Cheshire Ventures solely because the bates numbering on the document is "NELSON_CHESHIRE_******". Mr. Nelson did not say he didn't know the answer to the question. Instead he stated: "It had nothing to do in the creation of this document" and that other than the Bates Stamp on the document, which again was applied to the entirety of the production in response to Amazon's joint request for production, "I don't know that it had anything to do with Cheshire Ventures. In fact, I know it had nothing to do with Cheshire Ventures." Dkt 862-1 at 149.

Amazon also contends that Mr. Nelson was "not knowledgeable about documents he had produced in the litigation."[5] Doc. 861 at 25. First, Mr. Nelson actually testified about the document being discussed and explained the purpose of it, *see* Ex. A at 148:1-9, so Amazon's statement is false. Second, Amazon cites to the passage in the deposition where Mr. Nelson clarifies, again, that it was not a Cheshire Ventures document, but rather a personal document. Ex. A at 148:10-20. He was quite clear on whose document it was. It is only Amazon that appears to be confused and is again relying on the bates numbering issue.

While Amazon claims Mr. Nelson was unprepared to discuss "even basic questions about Cheshire Venture's financial operations and flow of funds," it cites only one question which pertains to whether Cheshire deposited money into his own personal savings account, an account which he stated was not associated with Cheshire Ventures. This is clear when one reads the entire line of questioning, not simply Amazon's out-of-context quote. *Id.* at 172-174. To the contrary,

---

[5] To be clear if Amazon contends that the standard for a 30(b)(6) deposition is that the corporate representative must be familiar with all documents the party has produced relating to the subject matter of the topics, then Nelson expects Amazon to hold itself to that standard when it prepares its own witnesses for its 30(b)(6) deposition next month.

9

Mr. Nelson explained a great deal about the financial operations and flow of funds from Cheshire Ventures and how those were structured, *see id.* at 135-144.

Another question was how much in draws Mr. Nelson personally took from Cheshire Ventures in 2019—to which he stated he did not know. *Id.* at 46-47. While at first blush this may appear to be a question he was not prepared to answer, it does not justify reopening the deposition because it was *not* a topic in the notice. Since, as Mr. Nelson testified, Cheshire Ventures did not receive payments from the Lease Transactions or the Whitepeaks or Blueridge Transactions, *see* Dkt. 862-4 (Topics 9-11), and the topics only asked about payments made to others *related to the Blueridge Transaction*, of which there were none, Mr. Nelson had no obligation to prepare for this specific question. Mr. Nelson *did* testify as to the source of payments made to Cheshire, satisfying these topics—here Amazon just tries to use an answer to a question that was not even covered by the topics it served to support its bad-faith motion.

The next question is whether Mr. Delcarpio, Mr. Nelson's accountant spoke to Mr. Atherton about his personal taxes. *Id.* at 171-172. Putting aside what relevance that line of questioning has to the case, Mr. Nelson's personal taxes are not a topic for the 30(b)(6) deposition and Amazon's citation this as an example of Cheshire Ventures' lack of preparation is ridiculous.[6]

Finally, they asked Mr. Nelson if he had copies of markups to consulting contracts that Mr. Atherton might have done. *Id.* at 205. While it is true that Mr. Nelson said he was not sure, it should be made clear that Mr. Nelson produced all such documents, whether finalized or draft versions, in his possession custody or control, and these were included in both Mr. Nelson's

---

[6] It should also be noted that only a few weeks after this line of questioning and a similar one at Mr. Nelson's personal deposition where Mr. Stokes repeatedly asked Mr. Nelson about his personal tax treatment of his finances as if he was trying to generate evidence for the U.S. Attorney's office through this civil case, Mr. Nelson's accountant—the very one discussed in this deposition—received a grand jury subpoena from the U.S. Attorney's Office that Amazon and Mr. Stokes have been in regular contact with since early 2020.

original production in the case of final versions, as well as Mr. Nelson's supplemental production on March 15, 2022 (in the case of draft versions marked up by Mr. Atherton, for example located at NELSON_CHESHIRE_00874711), when Mr. Nelson waived the attorney client privilege by asserting advice of counsel, and produced ninety documents that had previously been withheld on a claim of privilege.

At best, there were only a couple of isolated incidents of not knowing the answer to a substantive question that could be within the broad topics identified by Amazon. *See Runnels v. Norcold, Inc.*, No. 1:16-CV-713, 2017 WL 3026915, at *2 (E.D. Va. Mar. 30, 2017) (rejecting attempt to cite *100* instances of an I don't know answer as indicative of a lack of preparation where many of those I don't knows were either justified or did not actually demonstrate lack of preparation when examined in context). Perfect knowledge is not required of a corporate representative, rather what is required is that is the person designated "personal knowledge of the matters set out in the deposition notice" to adequately prepare to give knowledgeable testimony, which happened here, particularly given Mr. Nelson's extensive personal knowledge about Cheshire Ventures matters. *See Spicer v. Universal Forest Prod.,* E. Div., Inc., No. 7:07CV462, 2008 WL 4455854, at *4 (W.D. Va. Oct. 1, 2008); *see Runnels*, 2017 WL 3026915, at *3 (noting the witness answered substantive questions for six hours and the Plaintiffs could not point to any factual information that they were missing as a result of the purported lack of preparation).

Amazon's case citations do not support its requested relief. In *Power Home Solar, LLC v. Sigora Solar, LLC*, 339 F.R.D. 64, 76 (W.D. Va. 2021), the deponent admitted she did not even know she was designated to testify on topics on behalf of the company and admitted she was not prepared to testify about a single topic. That is far from the case here. The other case cited, *Huggins v. Prince George's Cnty.*, No. CV AW-07-825, 2009 WL 10685429, at *9 (D. Md. June 8, 2009),

11

is similarly distinguishable. In that case, the deponent was the county and information form numerous departments was required, which required multiple individuals to testify or at least relay information to the designees. The failure to have the correct individuals or consult the correct departments to respond to the notice is of course problematic in a situation like that. It is hardly applicable to a situation like the present with a single member LLC who himself appears to testify and does offer substantive testimony on a wide range of matters.

### E.     Conclusion

For the forgoing reasons, Cheshire Ventures requests that the Court deny Amazon's motion to compel Cheshire Ventures to continue its deposition, and specifically that Mr. Nelson be required to sit personally and answer even more questions in his personal capacity in the guise of a 30(b)(6) deposition when he sat already for over six hours to answer such questions.

July 13, 2022         **BURR & FORMAN LLP**

*/s/ Rachel Friedman*

Rachel Friedman (VA Bar #93898)
420 North 20th Street, Suite 3400
Birmingham, AL  35203
Telephone: (205) 251-3000
Facsimile: (205) 458-5100
rfriedma@burr.com


*/s/ J. Alex Little*
J. Alex Little, IV (TN Bar No. 29858) (*pro hac vice*)
Emily H. Mack (TN Bar No. 31217) (*pro hac vice*)
222 2nd Ave. S., Suite 2000
Nashville, TN 37201
Telephone: (615) 724-3200
alex.little@burr.com
emack@burr.com

Adam R. Smart (FL Bar No 1032572) (*pro hac vice*)
50 North Laura Street, Suite 3000
Jacksonville, Florida 32202
Telephone: (904) 232-7200
asmart@burr.com

*Attorneys for Carleton Nelson and Cheshire Ventures LLC*

13

## CERTIFICATE OF SERVICE

I hereby certify that on July 13, 2022, a true and correct copy of the foregoing has been served upon the following via email:

> Casey Kirschner
> 635 N. Alvarado Lane
> Plymouth, MN 55447
> casey.kirschner@gmail.com
> *Pro se*

Dated: July 13, 2022                                  */s/ Rachel Friedman*
                                                                         Rachel Friedman

48268744 v1