# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# ALEXANDRIA DIVISION

| | |
|---|---|
| AMAZON.COM, INC. and AMAZON DATA SERVICES, INC., <br><br> Plaintiffs, <br><br> v. <br><br> WDC HOLDINGS LLC dba NORTHSTAR COMMERCIAL PARTNERS; BRIAN WATSON; STERLING NCP FF, LLC; MANASSAS NCP FF, LLC; NSIPI ADMINISTRATIVE MANAGER; NOVA WPC LLC; WHITE PEAKS CAPITAL LLC; VILLANOVA TRUST; CARLETON NELSON; CASEY KIRSCHNER; ALLCORE DEVELOPMENT LLC; FINBRIT HOLDINGS LLC; CHESHIRE VENTURES LLC; 2010 IRREVOCABLE TRUST; SIGMA REGENERATIVE SOLUTIONS LLC; CTBSRM, INC.; RODNEY ATHERTON; DEMETRIUS VON LACEY; RENRETS; LLC, <br><br> Defendants. | Case No. 1:20-cv-00484-RDA-TCB <br><br> **PUBLIC VERSION** <br><br> **NON-PARTY IPI PARTNERS, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT BRIAN WATSON'S MOTION TO REMOVE "ATTORNEYS' EYES ONLY" DESIGNATION** |
| 800 HOYT LLC, <br><br> Intervening Interpleader Plaintiff, Intervening Interpleader Counter-Defendant, <br><br> v. <br><br> BRIAN WATSON; WDC HOLDINGS, LLC; BW HOLDINGS, LLC, <br><br> Interpleader Defendants, <br><br> and <br><br> AMAZON.COM, INC., and AMAZON DATA SERVICES, INC., <br><br> Interpleader Defendants, Interpleader Counter-Plaintiffs. | |

**TABLE OF CONTENTS**

I.    INTRODUCTION ..................................................................................................................1

II.   BACKGROUND ...................................................................................................................2
      A.   Non-Party IPI And The Underlying Action ...............................................................2
      B.   Scope Of This Action..................................................................................................4
      C.   The Designated Document..........................................................................................5
      D.   The Protective Order...................................................................................................6

III.  ARGUMENT..........................................................................................................................7
      A.   The Motion To Remove Should Be Denied Because The AEO Document
           Is Properly Designated Under The Protective Order And Watson Has Not
           Set Forth A Reasonable Basis To Overcome Such Designation ...............................8
           i.    The AEO Document Contains Confidential And Sensitive
                 Information ........................................................................................................8
           i.    IPI Reasonably Believes In Good Faith That Disclosure Of The
                 AEO Document Under The Confidential Designation Will Not
                 Adequately Protect IPI's Interests And Would Likely Cause Or
                 Create A Risk Of Economic Harm Or Competitive Disadvantage
                 To IPI ..................................................................................................................8
           ii.   Watson's Counsel Has Not Demonstrated That Disclosure Of The
                 AEO Document Is Necessary To Advise Watson On The Merits Of
                 *This* Action.......................................................................................................11
      B.   The Motion To Remove Should Independently Be Denied And The
           Subpoena Should Be Quashed Because The AEO Document Is Not
           Discoverable Under The Third Amended Complaint .............................................13

IV.   CONCLUSION....................................................................................................................15

Non-party IPI Partners, LLC ("IPI"), by and through its undersigned attorneys, respectfully files this opposition to Defendant Brian Watson's ("Defendant Watson" or "Watson") *Motion to Remove "Attorneys' Eyes Only" Designation* and memorandum in support of the same (Dkts. 918, 919) (respectively, the "Motion to Remove" and the "Memorandum").

## I. INTRODUCTION

Non-party IPI's involvement in this matter began on January 28, 2022 when Watson served on IPI's registered agent an extremely broad subpoena requesting "all documents and communications," from January 1, 2017 through the present, relating to *all* parties to the above-captioned matter (the "Action") and seven enumerated individuals, not limited by any subject matter. IPI proposed narrowing the subpoena to provide additional date restrictions, to limit the production of documents to the relevant transactions at issue in this Action, and to relieve IPI of the burden of producing materials in the possession of any party. Watson refused IPI's proposal and filed a motion to compel (the "Motion to Compel") (Dkt. 649). At a hearing before this Court on the Motion to Compel, the Court acknowledged that the subpoena was so broadly drafted that the Court could "just strike them and say, No you can't have any of this." 4/29/2022 Hr'g Tr. at 10:4–5. The Court subsequently denied Watson's Motion to Compel and agreed with IPI's proposal to narrow the scope of the document requests. *Id.* at 13:14-21. IPI fully complied with the modified subpoena, producing over 117,000 pages and a categorical privilege log. Two IPI employees sat for full-day depositions.

Now, Watson's counsel seeks the Court's intervention because it wishes to show Defendant Watson a single, confidential document containing sensitive and propriety information that IPI does not share with even its closest business partners, including Amazon, and that is entirely

1

irrelevant to any claim or defense in this Action.[1]  The document in question was produced in response to Watson's incredibly broad request for "all documents and communications relating to Defendants."  *See* Subpoena, Attachment A at 7; Memorandum at 3.  Now that Amazon has filed its Third Amended Complaint, ("Third Amended Complaint" or "Third Am. Compl.") (Dkt. 764), and removed its claim against Watson for breach of contract, the relevant document has no bearing on either Amazon's claims that Watson engaged in a series of fraudulent acts and a kickback scheme, or any defense that Watson has asserted or could assert in response to these claims.[2]

As discussed below, given the sensitivity of the designated document and IPI's competing interests in complying with the subpoena in this Action while protecting its confidential and proprietary information, IPI properly designated this document "Attorneys' Eyes Only."  Watson's counsel has not set forth any basis for this Court to conclude that this document was not properly designated, or that Watson must view this document to aid his counsel's advice.  The document is entirely irrelevant to the subject matter of this Action.  Accordingly, the "Attorney's Eyes Only" designation should be upheld and the Motion to Remove should be denied.

## II.  BACKGROUND

### A. Non-Party IPI And The Underlying Action

Non-party IPI is a SEC-registered investment adviser that manages a fund that makes real estate investments in technology and connectivity-related real estate assets.  *Declaration of Luke Gilpin in Support of Plaintiffs' Supplemental Memorandum in Support of Show Cause Order and*

---

[1] Watson previously challenged IPI's confidentiality designations with respect to five documents designated Attorneys' Eyes Only by IPI and two documents designated Attorneys' Eyes Only by both IPI and Amazon.  Following a series of meet and confers, IPI agreed to reproduce those seven documents with a confidential designation.

[2] Defendant Watson has not filed any counterclaims against Amazon in this suit, and the designated document certainly cannot bear upon speculative, unfiled claims.

*Motion for Preliminary Injunction* ¶ 2 (Dkt. 46) ("Gilpin Declaration"). IPI enters into joint ventures with various firms to combine resources on development projects. *Id.* ¶ 3. IPI typically serves as a capital provider in the joint ventures and partners with firms that serve primarily as real estate developers. *Id.*; Third Am. Compl. ¶ 121. IPI was introduced to Defendants Watson and WDC Holdings LLC dba Northstar Commercial Partners ("Northstar") in January of 2018 through third-party brokers who were helping Watson source capital for a real estate development project with Amazon. Gilpin Decl. ¶ 3; *see* Third Am. Compl. ¶ 123. Together, IPI and Northstar formed a joint venture called NSIPI Data Center Venture, LLC (the "Joint Venture"), which was governed by a joint venture agreement (the "Joint Venture Agreement"). The Joint Venture, through four subsidiaries, executed nine leases with Amazon for shell facilities to be developed and located on several real property sites in northern Virginia. Gilpin Decl. ¶¶ 3, 4; Third Am. Compl. ¶¶ 126, 127, 131.

In early 2020, the fraudulent scheme alleged in the Third Amended Complaint was independently disclosed to IPI and Amazon through separate Northstar-related sources. *See* Third Am. Compl. ¶¶ 63–72, 157–186; Gilpin Decl. ¶¶ 10–17. On April 2, 2020, Watson and all Northstar-affiliated entities were terminated from their involvement with the lease transactions and from the Joint Venture. Third Am. Compl. ¶¶ 130, 186.

IPI is not named as a defendant in this Action, and the Third Amended Complaint makes clear that IPI "is not known or suspected to have endorsed or engaged in any of the illicit conduct at issue in this suit." Third Am. Compl. ¶ 125. Although IPI is not a party to this Action, Watson-affiliated entities have filed two separate lawsuits against IPI in the Delaware Court of Chancery

3

relating to the terminations from the Joint Venture.³ IPI filed counterclaims against Northstar, Watson, and their affiliates in one of the Delaware actions for, among other claims, breach of contract, breach of fiduciary duties, fraud, and tortious interference with contractual and/or business relations, in connection with Northstar and Watson's kickback scheme, as well as Watson's efforts to use proprietary Joint Venture and IPI data to wrongfully market and sell the data center properties after he was terminated from the Joint Venture. Discovery in the Delaware litigation with Northstar and Watson is stayed pending resolution of this Action. *See* Order Staying Case, *W.D.C. Holdings, LLC d/b/a/ Northstar Commercial Partners, et al. v. IPI Partners, LLC, et al.*, C.A. No. 2020-1026-JTL (Del Ch. Aug. 10, 2022). Discovery in the lawsuit with Watson-affiliated investors is just beginning.

### B. Scope Of This Action

At the time IPI produced documents in response to Watson's subpoena, Amazon's Second Amended Complaint was the operative complaint ("Second Amended Complaint" or "Sec. Am. Compl.") (Dkt. 150). The Second Amended Complaint included, among other claims, a claim for breach of contract against Watson. *See* Sec. Am. Compl. ¶¶ 491–505, Dkt. 150. After IPI completed its production of documents in response to the subpoena, Amazon filed its Third Amended Complaint. Notably, Amazon's Third Amended Complaint does not assert a claim of breach of contract against Watson. *See* Third Am. Compl. at pp. 69–108. In seeking leave to amend its complaint, Amazon explained to the Court that it sought amendment, in part, because "Amazon does not intend to name Brian Watson and Northstar as defendants to its breach of contract claim because Amazon has now achieved a settlement with a third-party, IPI, that

---

³ These two cases are captioned *W.D.C. Holdings d/b/a/ Northstar Commercial Partners,* et al. *v. IPI Partners, LLC*, et al., C.A. No. 2020-1026-JTL (Del Ch.) and *Sterling NCP FF, LLC v. NSIPI Data Center Venture, LLC,* et al., C.A. No. 2021-0059-JTL. (Del. Ch.).

4

mitigates the damages it would have suffered as a result of the lease agreements Amazon had previously entered with those Defendants and entities they controlled." *Motion for Leave to File Third Amended Complaint* (Dkt. 608) ("Motion for Leave") at 3. The Motion for Leave, and the Third Amended Complaint, clarify that IPI's settlement with Amazon successfully mitigated contractual damages experienced by Amazon as a result of Watson's fraudulent conduct, thus limiting the relevance of documents produced by IPI in response to the subpoena.

### C. The Designated Document

The challenged document was produced by IPI on April 1, 2022, Bates stamped IPI_EDVA_0038930–IPI_EDVA_00038939 (the "AEO Document"), in response to Watson's request for "all documents and communications relating to Defendants." *See* Subpoena, Attachment A at 7 (capitalizations omitted). The AEO Document is entitled ▊▊▊▊▊ and dated February 2020. *See* AEO Document at IPI_EDVA_0038930. The AEO Document is a slide deck that was contemporaneously labeled by IPI as "Confidential – For IPI Internal Use Only." The AEO Document was not circulated outside of IPI.



The AEO Document contains ▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊

Additionally, ▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊ IPI first learned of the kickback scheme between Northstar, Watson, Nelson, and Kirschner on January 28, 2020 from Northstar's COO, Tim Lorman. Third Am. Compl. ¶¶ 162–63. IPI immediately informed Amazon of this fraudulent conduct. *See* Defendants' Counterclaims

and Third-Party Claims at ¶ 112, *W.D.C. Holdings d/b/a/ Northstar Commercial Partners, et al. v. IPI Partners, LLC, et al.*, C.A. No. 2020-1026-JTL (Del Ch. July 22, 2022) ("IPI's Counterclaims").  In February 2020, Lorman provided IPI with the kickback agreement between Northstar and Villanova, wire receipts showing payments from Northstar to Villanova, and a spreadsheet demonstrating that approximately $1.5 million was to be paid to Villanova.  Third Am. Compl. ¶¶ 164–175.  IPI then provided these to Amazon.  In turn, Amazon, through counsel, informed IPI that the development and lease agreements were in serious jeopardy as a result of Watson's fraudulent conduct.  IPI's Counterclaims ¶ 113.  On February 19, 2020, IPI and Amazon entered into a Lease Continuity Agreement, which contains a clause guaranteeing completion of the lease transaction sites by the Joint Venture and Amazon's right to "uninterrupted quiet enjoyment."  Third Am. Compl. ¶ 190.  On April 2, 2020, IPI, through its affiliate and the Joint Venture, terminated Watson and Watson-affiliated entities from the Joint Venture and related landlord entities for cause.  *Id.* ¶ 191.

 It is an internal document with no bearing on Amazon's claims against Watson and it contains ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ that IPI has not, and does not share, with its business partners, including both Amazon and former Joint Venture partner Northstar.

### D. The Protective Order

On June 4, 2020, this Court entered an *Agreed Protective Order* (Dkt. 55) ("Protective Order").  The Protective Order permits any Producing Party, defined to include non-party entities

that disclose or produce any Discovery Material in this Action, to designate the Discovery Material as "Confidential" or "Highly Confidential—Outside Attorneys' Eyes Only." Protective Order at ¶ 7(a). Discovery may be designated Highly Confidential—Outside Attorneys' Eyes Only ("Attorneys' Eyes Only"): (a) "if it contains or reflects information that is extremely confidential and/or sensitive in nature"; (b) if the Producing Party reasonably believes in good faith that the disclosure of such Discovery Material is likely to cause or create a risk of economic harm or competitive disadvantage to the Producing Party or a third party"; and (c) "if the Producing Party reasonably believes in good faith that disclosure, even for the purposes permitted with respect to materials designated 'CONFIDENTIAL,' will not provide adequate protection to the interests of the Producing Party." Protective Order at ¶ 9(a).

The Protective Order permits a Receiving Party to seek disclosure of Attorneys' Eyes Only material if such material "is necessary to adequately advise their client concerning the merits of the case." *Id.* at ¶ 9(d). In such instance, counsel for the Receiving Party may object to an Attorneys' Eyes Only designation by providing the Designating Party "written notice of, and the basis for, such objections." *Id.* at ¶ 10(b). The Designating and Receiving Party are then required to resolve such objections. *Id.* If the parties are "unable to resolve the objections, "the Receiving Party may seek a hearing before this Court with respect to the propriety of the designation." *Id.*

### III. ARGUMENT

The Court should deny Watson's Motion to Remove because the AEO Document is properly designated under the Protective Order and Watson has not set forth a basis to overcome that designation. Further, the Court should deny Watson's Motion to Remove because the substance of the AEO Document is beyond the scope of this litigation following the filing of Amazon's Third Amended Complaint.

A. **The Motion To Remove Should Be Denied Because The AEO Document Is Properly Designated Under The Protective Order And Watson Has Not Set Forth A Reasonable Basis To Overcome Such Designation**

i. **The AEO Document Contains Confidential And Sensitive Information**

The use of the Attorneys' Eyes Only designation is necessary and "not uncommon in cases involving the exchange of highly sensitive proprietary information." *Progress Solar Sols., LLC v. Fire Protec., Inc.*, No. 5:17-CV-152-D, 2018 WL 11281543, at *2 (E.D.N.C. Sept. 24, 2018).

The AEO Document is properly designated because it contains confidential and sensitive business information. Specifically, the AEO Document reflects  *See Parker Compound Bows, Inc. v. Hunter's Mfg. Co.*, No. 5:14cv4, 2014 WL 12462305 (W.D. Va. Dec. 8, 2014) (attorneys' eyes only designation appropriate for technical information and cost and sales information).

Additionally, the AEO document reflects  Because the AEO Document reflects confidential and sensitive information, it was properly designated and the Motion to Remove should be denied.

i. **IPI Reasonably Believes In Good Faith That Disclosure Of The AEO Document Under The Confidential Designation Will Not Adequately Protect IPI's Interests And Would Likely Cause Or Create A Risk Of Economic Harm Or Competitive Disadvantage To IPI**

Designation of the AEO Document as confidential would result in disclosure of the AEO Document to all parties, including Watson and Amazon. Such disclosure would not adequately

protect IPI's commercial interests and would likely create a risk of economic harm or competitive disadvantage to IPI.

IPI's belief that the disclosure of the AEO Document to Watson is likely to create a risk of economic harm or competitive disadvantage to IPI is reasonable and well-founded—Watson previously used proprietary information relating to the data centers to attempt to harm IPI. Following IPI's termination of Watson from the Joint Venture, IPI learned that Watson had fraudulently solicited buyers for the data center properties. *See* IPI's Counterclaims ¶ 199. Watson did not have an ownership interest in the Joint Venture at the time that he solicited buyers for the assets owned by the Joint Venture. Watson did not inform IPI of his efforts, and IPI learned of Watson's efforts from other individuals in the industry. Watson's prior misuse of Joint Venture and IPI proprietary data demonstrates that disclosure of additional confidential and proprietary information to Watson regarding the data center properties will subject IPI to additional risk of economic harm or competitive disadvantage.

IPI also reasonably believes that disclosure to Watson will affect IPI's rights in the ongoing Delaware litigations. "[I]t is very difficult for the human mind to compartmentalize and selectively suppress information once learned, no matter how well-intentioned the effort may be to do so." *FTC v. Exxon Corp.*, 636 F.2d 1336, 1350 (D.C. Cir. 1980). The Delaware lawsuits hinge on two issues: (a) whether there was cause justifying the termination of Watson-related entities from the Joint Venture, and (b) whether the Joint Venture properly compensated Watson-affiliated investors for their LLC membership interest in the Joint Venture. Thus, the AEO Document, which Watson's counsel describes as suggesting ███████████████████████████████████████

███████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████

9

███████████████, are potentially relevant to the pending claims in the Delaware matters. Memorandum at 8.

Watson is alleged to have defrauded multiple parties through intentional fraudulent acts, is alleged to have attempted to market and sell the underlying properties after he and Northstar were removed from the Joint Venture and he no longer had any interest in the properties, and is under investigation by the Department of Justice and the Securities and Exchange Commission for potential criminal and civil violations arising out of Northstar's Joint Venture with IPI. Under these circumstances, IPI believes in good faith that Watson will inappropriately use any information he obtains in discovery in this Action, including in connection with the two suits his related entities have initiated against non-party IPI in the Delaware Court of Chancery. Watson cannot usurp discovery in the Delaware litigations through non-party discovery in this Action. And at a minimum, allowing this information to be shared with Watson will provide Watson—certainly a central fact witness in the Delaware litigation—with historical facts about which he currently has no personal knowledge.

Separate and apart from the harm arising from disclosure to Watson, disclosure of the AEO Document to Amazon is also likely to create a risk of economic harm or competitive disadvantage to IPI in ██████████████████████████████████████████████████████████████████████████████████████████

Any potential harm to IPI by re-designating the AEO Document must be weighed against IPI's status as a non-party to this litigation. *See Va. Dept. of Corrections v. Jordan*, 921 F.3d 180, 192 (4th Cir. 2019) (articulating "confidentiality concerns" as a cognizable burden under Rule 45). Given Watson's prior misconduct, the AEO Document's irrelevance to this Action, and the fact that the information at issue has never been shared with any of the parties here due to the risks of

10

harm, IPI is likely to suffer economic harm and competitive disadvantage should the AEO Document be designated confidential or disclosed to Watson.

      ii.    **Watson's Counsel Has Not Demonstrated That Disclosure Of The AEO Document Is Necessary To Advise Watson On The Merits Of *This* Action**

Watson's counsel in this Action has not set forth any factual basis for this Court to conclude that the AEO Document is necessary to advise Watson on the merits of this Action. Watson's counsel argues that ███████████████████████████████████████

███████████████████████████████████ Memorandum at 8.

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████ *Id.* ███████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████ Watson's counsel also asserts that ███████████

███████████████████████████████████████

███████████████████████████████████████

*Id.* ████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████████████ Amended Verified Complaint at ¶ 120, *W.D.C. Holdings*

11

*d/b/a/ Northstar Commercial Partners,* et al. *v. IPI Partners, LLC*, et al., C.A. No. 2020-1026-JTL (Del. Ch. Apr. 19, 2021).

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████

████████████████████████  Memorandum at 8.  ████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████  ████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

---

[4] Should the Court conclude that disclosure of ████████████████████████ ████████████████ is necessary for Watson's counsel to properly advise him in this matter, IPI is prepared to offer a declaration or stipulation to this fact.

12

███████████ The AEO Document contains sensitive and detailed information regarding ███ ████████████████████████ IPI would be harmed by Watson possessing this information.

Watson's counsel has not set forth any legitimate justification for the AEO Document to be shown to Watson for use in this Action. To the contrary, counsel has made arguments that mimic those made in the pending Delaware litigation. But the Protective Order explicitly prevents the use of Protected Material in "any other litigation." Protective Order 6(a). And the Court should not allow Watson to do an end run around the Protective Order. The Court should deny Watson's Motion to Remove.

**B. The Motion To Remove Should Independently Be Denied And The Subpoena Should Be Quashed Because The AEO Document Is Not Discoverable Under The Third Amended Complaint**

The Motion to Remove should independently be denied and the subpoena should be quashed because the AEO Document is not relevant to the merits of this Action. The Second Amended Complaint included breach of contract claims and alleged that Watson breached the relevant lease agreements by engaging in an undisclosed kickback agreement. Sec. Am. Compl. ¶¶ 491–505. The now operative Third Amended Complaint does not include a breach of contract claim against Watson. *See* Third Am. Compl. ¶¶ 491–505. And Amazon's other filings indicate that Amazon has not pursued its breach of contract claim against Watson because "Amazon has now achieved a settlement with a third-party, IPI, that mitigates the damages it would have suffered as a result of the lease agreements Amazon had previously entered with those Defendants and entities they controlled." Motion for Leave at 3.

The AEO Document is entirely irrelevant to the Third Amended Complaint. Specifically, any discovery sought from IPI regarding the damage caused to Amazon as a result of Watson's breach of the applicable lease agreements is not relevant to Amazon's remaining claims. To that end, Amazon's Third Amended Complaint renders Watson's discovery requests to non-party IPI

13

for "all documents" related to the parties to the litigation overly broad and unduly burdensome. *See Cook v. Howard,* 484 F. App'x. 805, 812 n.7 (4th Cir. 2012) (a non-party is subject to undue burden where a "subpoena seeks information irrelevant to the case"); *In re Subpoena Duces Tecum to AOL, LLC*, 550 F. Supp. 2d 606, 612 (E.D. Va. 2008) (a party is subject to undue burden where a subpoena "does not limit the documents requested to subject matter relevant to the claims or defenses."). *See also In re Subpoenas for Documents Issued to ThompsonMcMullan, P.C.*, No. 3:16-MC-1, 2016 WL 1071016, at *5 (E.D. Va. Mar. 17, 2016) ("[A]ny subpoena that seeks evidence that is n[ot] relevant . . . creates an undue burden because it necessarily imposes greater hardship than is necessary to obtain proper discovery.").

The AEO Document was produced prior to Amazon filing its Third Amended Complaint. Had the subpoena been modified and negotiated in accordance with the Third Amended Complaint, the negotiated subpoena would have been far narrower, and the AEO Document likely would not have been produced because the AEO Document is not relevant to Amazon's remaining claims. The AEO Document contains ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Memorandum at 7 (admitting that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮). It has no bearing on Amazon's allegations that Watson engaged in a fraudulent kickback scheme nor any defense regarding the same. Thus, the Court should not order additional compliance with a subpoena that does not correspond with the relevant dispute, and should quash the subpoena. *See Jordan*, 921 F.3d at 190 n.4 ("Mere overbreadth, of course, usually warrants modifying a subpoena to narrow its scope . . . [W]here the recipient has already provided a substantial response, 'quashing' the subpoena effectively narrows it by limiting it to what has already been produced. A subpoena may be so sweepingly overbroad, however, that it should be quashed in its entirety.");

*LHF Prods. v. Doe*, No. 3:16cv284, 2016 WL 7423094 (E.D. Va. Dec. 22, 2016) (quashing subpoenas related to severed defendants and in anticipation of filing of amended complaint).

Because the information in the AEO Document sought is not discoverable under the newly-amended Third Amended Complaint, the Court should deny the Motion to Remove, or in the alternative, quash the subpoena to the extent it seeks such irrelevant information.

## IV.  CONCLUSION

For the reasons stated above, non-party IPI respectfully requests that the Court deny Defendant Watson's Motion to Remove "Attorneys' Eyes Only" Designation and memorandum in support of the same, and/or quash Watson's subpoena to the extent it seeks information that is irrelevant to the merits of this Action, and grant such further relief as the Court deems proper.


Dated:  August 17, 2022               Respectfully submitted,


                                      */s/ Charles F. Connolly*
                                      Charles F. Connolly
                                      AKIN GUMP STRAUSS HAUER & FELD LLP
                                      2001 K Street NW
                                      Washington, DC  20006
                                      telephone: (202) 887-4000
                                      cconnolly@akingump.com

                                      *Counsel for Non-Party IPI Partners, LLC*

## **CERTIFICATE OF SERVICE**

I certify that on August 17, 2022, I electronically filed this document through the ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ *Charles F. Connolly*
Charles F. Connolly