IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| AMAZON.COM, INC. and AMAZON DATA SERVICES, INC., <br><br> Plaintiffs, <br><br> v. <br><br> WDC HOLDINGS LLC dba NORTHSTAR COMMERCIAL PARTNERS; BRIAN WATSON; STERLING NCP FF, LLC; MANASSAS NCP FF, LLC; NSIPI ADMINISTRATIVE MANAGER; NOVA WPC LLC; WHITE PEAKS CAPITAL LLC; VILLANOVA TRUST; CASEY KIRSCHNER; ALLCORE DEVELOPMENT LLC; FINBRIT HOLDINGS LLC; CHESHIRE VENTURES LLC; CARLETON NELSON; JOHN DOES 1-20, <br><br> Defendants. | CASE NO. 1:20-CV-484-RDA-TCB |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO INTERVENE
FILED BY WILMINGTON TRUST, NATIONAL ASSOCIATION,
AS TRUSTEE FOR THE REGISTERED HOLDERS OF THE
BANCORP COMMERCIAL MORTGAGE 2019-CRE6
TRUST, COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES**

Wilmington Trust, National Association, as Trustee for the Registered Holders of the Bancorp Commercial Mortgage 2019-CRE6 Trust, Commercial Mortgage Pass-Through Certificates (the "Lender"), by and through CWCapital Asset Management LLC, solely in its capacity as Special Servicer, hereby moves pursuant to Fed. R. Civ. P. 24 for entry of an order authorizing it to intervene in the captioned lawsuit (the "Amazon Litigation") for the limited purpose of moving the Court to modify the Order Appointing Receiver and Ordering Turnover of Property to the Receiver entered by the Court on November 23, 2021 [Docket No. 443] (the "Receiver Order") and in support thereof would show this Court as follows:

55803430-v3

**Preliminary Statement**

The Lender, a commercial real estate loan securitization trust, holds a loan secured by an office building located in Sugarland, Texas that is owned by Sugar Creek DE, LLC, an entity ultimately controlled by Defendant Brian Watson. Sugar Creek DE, LLC is also an "Asset" subject to the Receivership Order entered by this Court. The loan at issue has matured and more than $21 million under the Loan is now due and owing. However, the Receivership Order contains an injunction that prohibits creditors from exercising remedies against any "Assets" absent further order of this Court.

Lender seeks authorization to intervene for the sole and limited purpose of moving for modification of the injunction provisions of the Receiver so that it can exercise the contractual remedies it has under its loan documents. Under the terms of the Receiver Order itself and in accordance with the Fourth Circuit's interpretation of Fed. R. Civ. P. 24 governing intervention, the Lender has a clear right to mandatory intervention so that it can request modification of the Receiver Order. The Court should grant this motion and allow the limited intervention that it seeks.

**Background**

**The Receiver Order**

The Amazon Litigation revolves around allegations of an elaborate scheme to defraud internet retailing juggernaut Amazon in connection with real estate projects in Virginia developed by defendant Brian Watson ("Watson" or "Guarantor"), his real estate development company, WDC Holdings, LLC ("WDC"), and others. In this connection, the Court entered the Receiver Order on November 23, 2021.

The Receiver Order appointed Mark Roberts of Alvarez & Marsal (the "Receiver") to serve as receiver for (i) Watson, (ii) WDC (collectively with Brian Watson, the "Defendants") and

(iii) the "Assets." Under the terms of paragraph 2 of the Receiver Order, the term "Assets" is defined as:

> **The "Assets" include all of the Defendants' assets**, including proceeds, wherever located, including but not limited to, all of Defendants': (a) property, real and personal, tangible and intangible, of whatever kind and description, wherever situated; (b) rights (including rights to payment and distributions), title, and interest, whether now owned or hereafter acquired in, under and to any entity (**including, but not limited to, the entities set forth in Exhibit A hereto**), including any rights of control, ownership, distribution, and participation ("Subject Entities")[1]. (Emphasis added.)

Among the "Assets" described in Exhibit A to the Receiver Order are two limited liability companies relevant to this motion: (i) 77 Sugar Creek DE, LLC, a Delaware limited liability company (the "Borrower"), and (ii) 77 Sugar Creek, LLC, a Colorado limited liability company.

In addition to appointing the Receiver, paragraph 11 of the Receiver Order contains an injunction prohibiting creditors from exercising remedies against an "Asset" without court approval by providing that:

> **All persons, including** employees, agents, **creditors,** banks, investors, or others, with notice of this Order, **are enjoined from in any way disturbing the Assets and from prosecuting any actions or proceedings designed to collect their debts** or which involve the Receiver or which affect the property of Defendants, to the extent that the same would interfere with or disturb these receivership proceedings**, without the permission of this Court; provided, however, that nothing herein shall preclude any party with standing from seeking relief from this Order on proper application and after notice and a hearing**. Any actions in violation of this Paragraph shall be null and void as acts in contravention of this Order.[2] (Emphasis added).

---

[1] Receiver Order [Docket No. 443], p. 3.

[2] See Receiver Order, ¶ 11.

**The Sugarland, Texas Office Building and Mortgage Loan**

The Borrower, one of the "Assets" within the purview of the Receiver Order, owns an office building located at 77 Sugar Creek Boulevard in Sugarland, Texas (the "Office Building"), which is in the suburbs west of downtown Houston. The Office Building is a six-story, suburban office building with approximately 143,000 square feet of rentable area, located on a 6.13-acre site. The Office Building is commercial office space, generating rents from a variety of commercial office tenants.

**The Mortgage**

On June 20, 2019, the Borrower took a loan (the "Loan") evidenced by a promissory note in the amount of $23,964,920.00 (the "Promissory Note") in favor of The Bankcorp Bank, a Delaware state chartered bank (the "Original Lender"). The Promissory Note, a copy of which is attached hereto as Exhibit A, is secured by a Deed of Trust, Assignment of Leases and Rents and Security Agreement of even date with the Promissory Note (the "Security Instrument") which encumbers the Office Building as collateral for the Loan. A copy of the Security Instrument is attached hereto as Exhibit B. The Loan is further governed by a loan agreement (the "Loan Agreement"), also of even date with the Promissory Note. A copy of the Loan Agreement is attached hereto as Exhibit C.

The obligations of the Borrower under the Note, Security Instrument and other related documents are guaranteed by the Guarantor pursuant to the terms of a Guaranty of Recourse Obligations dated of even date with the Promissory Note (the "Guaranty"), a copy of which is attached hereto as Exhibit D. The Promissory Note, Security Instrument, Loan Agreement and Guaranty, together with all other papers that document the Loan, are collectively referred to herein as the "Loan Documents."

The Promissory Note is currently held by the Lender pursuant to an allonge, a copy of which is attached to Exhibit A. The Lender further holds all rights under the Loan and the Loan Documents pursuant to a series of assignments.

### The Loan Defaults

Under the terms of the Loan Agreement, the appointment of a receiver for the Guarantor constitutes an event of default. Specifically, Section 9.1(g) of the Loan Agreement provides that an Event of Default[3] exists if: "a receiver, liquidator or trustee shall be appointed for Borrower, Sole Member or Guarantor."[4] The Loan Agreement also defines "Sole Member" as being "77 Sugar Creek, LLC."[5] The Receiver was appointed and serves as receiver not only for the Guarantor personally, but also for two of the Exhibit A "Assets," the Borrower, 77 Sugar Creek DE, LLC, and the Sole Member, 77 Sugar Creek, LLC. Accordingly, an Event of Default occurred upon the entry of the Receiver Order and the appointment of the Receiver on November 23, 2021.

Following the appointment of the Receiver, Lender's counsel served a notice of default (the "Notice of Default") dated February 1, 2022 upon the Borrower, with a copy to counsel to the Receiver. A copy of the Notice of Default is attached hereto as Exhibit E.

Further, under the terms of the Loan Agreement, the Loan itself has matured – under Section 1.1 of Loan Agreement, the "Stated Maturity Date" of the Loan is defined as July 9, 2022. Though Section 2.8 of the Loan Agreement does accord the Borrower the ability to extend the maturity of the Loan, that right is specifically conditioned on the absence of any ongoing Events of Default.[6]

---

[3] Capitalized words not otherwise defined in this Motion have the meaning ascribed to them in the Loan Agreement.

[4] See Loan Agreement, § 9.1(g).

[5] See Loan Agreement, § 1.1, definition of "Sole Member."

[6] The "Events of Default" for the Loan are defined in § 9.1 of the Loan Agreement.

Upon maturity of the Promissory Note, the full outstanding amount of the Loan became due and payable. Needless to say, July 9, 2022 came and went without full repayment of the Loan. Accordingly, a second event of default occurred upon the July 9, 2022 maturity default. On July 12, 2022, counsel for the Lender served a second notice of default upon the Borrower, with a copy to Receiver's counsel. A copy of the second notice of default is attached hereto as <u>Exhibit F</u>.

In addition to the Events of Default caused by the appointment of the Receiver and the maturity of the Promissory Note, a third event of default has also occurred. Specifically, upon maturity or the occurrence of any other Event of Default, the Loan Agreement requires the Loan to go into cash management – effectively a "lockbox" – whereby the rents paid by the various tenants are deposited directly into a Lender-controlled account. <u>See</u> Loan Agreement, § 4.1 <u>et seq</u>. Though the Lender has demanded that the Receiver comply with the cash management provisions of the Loan Agreement and the other Loan Documents, the Receiver has to date failed to comply with the Loan's lockbox requirements. <u>See</u> Third Notice of Default dated August 5, 2022, attached hereto as <u>Exhibit G</u>.

## **Argument and Relief Requested**

### **The Lender Has a Right to Intervene in the Amazon Litigation**

Fed. R. Civ. P. 24(a) provides the Lender a clear right to intervene in the Amazon Litigation. The Lender seeks to intervene for the sole and limited purpose of moving to modify the Receiver Order to allow it to exercise its legal rights and remedies. Rule 24(a) provides that:

On timely motion, the **court must permit anyone to intervene** who:

(1)     is given an unconditional right to intervene by a federal statute; or

(2)     **claims an interest relating to the property or transaction that is the subject of the action**, **and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.** (Emphasis added.)

In the Fourth Circuit, three elements must be shown by the movant to support mandatory intervention under Fed. R. Civ. P. 24(a); (i) the movant must have an interest in the underlying litigation; (ii) the movant's interest must be impaired by the litigation; and (iii) the movant's interests are not adequately protected by the existing litigants. Gould v. Alleco, Inc., 883 F.2d 281, 284 (4th Cir. 1989).

The Lender clearly has an interest in the Amazon Litigation – Exhibit A to the Receiver Order states that the Borrower is subject to the Receiver Order's provisions, including the injunction against exercise of creditor remedies. See Receiver Order ¶ 11. Accordingly, Lender meets the first element of the Fourth Circuit mandatory intervention analysis.

Because the appointment of the Receiver and the maturity of the Loan are both Events of Default under the Loan Agreement, the Lender has a clear right to exercise its remedies. The Receiver Order currently blocks Lender's exercise of its legal and equitable remedies without court permission, meaning that those interests are "impaired." This impairment meets the second element of the test imposed by the Fourth Circuit. Gould v. Alleco, Inc., 883 F.2d at 284.

Finally, the current parties to the litigation are obviously not positioned to adequately protect Lender's rights. The Lender's rights under the Loan Documents are a sideshow to the main dispute at issue – the allegedly fraudulent scheme to divert money from Amazon in connection with development of Virginia-based real estate projects. The Lender's collateral, located in Fort Bend County, Texas, is nowhere mentioned in the Receiver Order or the motions that led to its entry. Neither the Plaintiffs nor the various Defendants in the lawsuit have taken any steps to address the Loan or its various defaults nor do they have any motive to do so. Therefore, the third element of Gould v. Alleco has also been satisfied. Id.

Beyond the black-letter interpretation of Fed. R. Civ. P. 24 embodied in controlling Fourth Circuit case law such as Gould v. Alleco, Lender should also be allowed intervention to move for modification of the Receiver Order under the terms of the Receiver Order itself. The injunction against creditor collection efforts affecting an "Asset" is embodied in paragraph 11 of the Receiver Order. That very same provision of the Receiver Order provides that:

> [N]othing herein shall preclude any party with standing from seeking relief from this Order on proper application and after notice and a hearing.

Accordingly, the Receiver Order itself provides additional and sufficient basis for this Court to grant Lender the right to intervene in the Amazon Litigation and request relief from the injunction provisions of the Receiver Order.

### The Receiver Has Already Had Ample Time

The Receiver has already had ample time to address the Loan and seek to either sell the Office Building or refinance in advance of its maturity. The Receiver has had actual knowledge of the Loan since the first Notice of Default was served upon his counsel on February 1, 2022 at the latest. At the same time, Lender's counsel personally informed Receiver's counsel of the approaching maturity default, which was set to occur five months after the February 1, 2022 issuance of the Notice of Default. This knowledge notwithstanding, the Receiver's representatives only recently contacted the Lender to explore a transaction regarding the Loan and those efforts have failed to lead to any transaction that would resolve the maturity default of the Loan.

### The Court Should Allow Lender to Seek Relief

The Lender, having an undisputable right to intervene in the Amazon Litigation under Fed. R. Civ. P. 24, seeks to file a motion to modify the receiver order and memorandum of law, substantially in the form of Exhibit H hereto (the "Injunction Modification Motion"). The Injunction Modification Motion seeks to modify the injunction provisions of paragraph 11 of the

Receiver Order to allow the Lender to exercise its remedies under the Loan Documents, including receivership and foreclosure.

The Lender is under no contractual obligation whatsoever to modify the Loan in any way beyond its written terms. That said, the Lender may still negotiate with the Receiver and his representatives regarding the resolution of the Loan even if the Receiver Order is modified to allow the Lender to exercise remedies. Removing the Receiver Order as a barrier to exercising the Lender's long-ago-negotiated rights simply returns the parties to the relative bargaining positions occupied when the Loan originated.

## Conclusion

The Lender seeks nothing more than the ability to exercise remedies negotiated with its Borrower. The collateral that is at issue is far removed from the core disputes of the Amazon Litigation. Accordingly, the Lender should be allowed to intervene, file the Injunction Modification Motion, and proceed to take its Loan and the related legal remedies to their conclusion, consistent with the terms of the Loan Documents.

WHEREFORE, the Lender respectfully requests that the Court enter an order substantially in the form of Exhibit I granting the Lender the right to file the Injunction Modification Motion substantially in the form of Exhibit H. The Lender requests such other and further relief to which it may show itself to be entitled.

[Signatures on following page]

Dated: August 24, 2022

/s/ Michael W. Robinson
Michael W. Robinson, Esq.
(VSB No. 26522)
VENABLE LLP
8010 Towers Crescent Drive, Suite 300
Tysons, VA 22182
Phone: (703) 760-1988
Fax: (703) 821-8949
mwrobinson@venable.com

Frederick W. H. Carter, Esq.
(VSB No. 80204)
VENABLE LLP
600 Massachusetts Avenue, NW
Washington, DC 20001
Phone: (202) 344-8191
Fax: (202) 344-8300
fwhcarter@venable.com

*Attorneys for Wilmington Trust, National Association, as Trustee for the Registered Holders of the Bancorp Commercial Mortgage 2019-CRE6 Trust, Commercial Mortgage Pass-Through Certificates, by and through CWCapital Asset Management LLC, solely in its capacity as Special Service*

## CERTIFICATE OF SERVICE

I hereby certify that on August 24, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system and I served a copy the document upon the following party via U.S. mail to their last-known address:

77 Sugar Creek DE, LLC
c/o The Corporation Trust Company,
  Registered Agent
1209 Orange Street
Wilmington, DE 19801

/s/ Michael W. Robinson
Michael W. Robinson, Esq.
(VSB No. 26522)
VENABLE LLP
8010 Towers Crescent Drive, Suite 300
Tysons, VA 22182
Phone: (703) 760-1988
Fax: (703) 821-8949
mwrobinson@Venable.com

Frederick W. H. Carter, Esq.
(VSB No. 80204)
VENABLE LLP
600 Massachusetts Avenue, NW
Washington, DC 20001
Phone: (202) 344-8191
Fax: (202) 344-8300
fwhcarter@Venable.com

*Attorneys for Wilmington Trust, National Association, as Trustee for the Registered Holders of the Bancorp Commercial Mortgage 2019-CRE6 Trust, Commercial Mortgage Pass-Through Certificates, by and through CWCapital Asset Management LLC, solely in its capacity as Special Servicer*