# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# ALEXANDRIA DIVISION

| | |
|---|---|
| AMAZON.COM, INC. and AMAZON DATA SERVICES, INC., <br><br> Plaintiffs, <br><br> v. <br><br> WDC HOLDINGS LLC dba NORTHSTAR COMMERCIAL PARTNERS; BRIAN WATSON; STERLING NCP FF, LLC; MANASSAS NCP FF, LLC; NSIPI ADMINISTRATIVE MANAGER; NOVA WPC LLC; WHITE PEAKS CAPITAL LLC; VILLANOVA TRUST; CASEY KIRSCHNER; ALLCORE DEVELOPMENT LLC; FINBRIT HOLDINGS LLC; CHESHIRE VENTURES LLC; CARLETON NELSON; JOHN DOES 1-20, <br><br> Defendants. | CASE NO. 1:20-CV-484-RDA-TCB |
| 800 HOYT LLC, <br><br> Intervening Interpleader Plaintiff, <br><br> v. <br><br> BRIAN WATSON, WDC HOLDINGS, LLC, PLW CAPITAL I, LLC, BW HOLDINGS, LLC, AMAZON.COM, INC., and AMAZON DATA SERVICES, INC. <br><br> Interpleader Defendants. | |

**OPPOSITION OF RECEIVER TO WATSON DEFENDANTS' MOTION FOR LEAVE TO FILE SURREPLY TO MOTION TO VACATE PRELIMINARY INJUNCTION**

Mark A. Roberts (the "Receiver"), as receiver of WDC Holdings LLC dba Northstar Commercial Partners LLC ("WDC"), R. Brian Watson ("Mr. Watson" and collectively with WDC, the "Watson Defendants"), and their respective assets, appointed pursuant to this Court's *Order Appointing Receiver and Ordering Turnover of Property to the Receiver* [Dkt. 433] (the "Receivership Order"), files this opposition to the Watson Defendants' motion for leave to file a surreply [Dkt. 957] (the "Surreply Motion") in connection with the Watson Defendants' previously briefed *Motion to Vacate Preliminary Injunction* [Dkt. 695] (the "Motion to Vacate") and respectfully states as follows:

## Introduction

Having already had the benefit of one reply brief supporting the Motion to Vacate, the Watson Defendants ask this Court for a third bite of the apple through the Surreply Motion, which was ostensibly prompted by a motion to intervene in these proceedings filed by a lender to the owner of a suburban Houston office building located at 77 Sugar Creek Boulevard, Sugar Land, Texas (the "Sugar Creek Property"). [Dkt 941.] The lender requests permission to intervene for purposes of seeking relief from the Receivership Order to pursue certain state law remedies with respect to the Sugar Creek Property.[1]

The lender's intervention motion—a procedural request stemming from asserted underlying loan defaults that the Watson Defendants admit they have been aware of since the Receiver's appointment—does not constitute "new evidence" warranting a surreply in connection with the fully briefed Motion to Vacate. Instead, it is apparent that the Surreply Motion is merely an effort by the Watson Defendants to use the tangentially related intervention motion as an

---

[1] The owner of the property, 77 Sugar Creek DE, LLC ("Sugar Creek Owner"), is identified on Exhibit A to the Receivership Order. The Receiver, acting through an entity controlled by Mr. Watson (and thus subject to the Receivership Order), serves as manager for 77 Sugar Creek, LLC ("Sugar Creek Parent"), which is the sole member in Sugar Creek Owner.

2

opportunity to repeat all of Mr. Watson's unfounded grievances regarding the receivership process and to make other misleading and baseless claims of alleged harm. This is not an appropriate use of any pleading, much less a discretionary surreply.

The Court appointed a receiver after finding the Watson Defendants to be in contempt of the Court's prior orders, including the injunction that is the subject of the Motion to Vacate. The Receiver—an experienced restructuring professional who, as an officer of the Court, is required to carry out the terms of the Receivership Order independently from the parties to the litigation—was appointed for the express purpose of coercing compliance by the Watson Defendants with the Court's injunction and avoiding further irreparable harm to the above-captioned plaintiffs. [Dkt. 433 ¶ C.] In light of these circumstances leading up to the Court's appointment of the Receiver, any legal and practical consequences of a receivership process—including the alleged harms at the center of Mr. Watson's complaints—are necessarily the result of Mr. Watson's own prior failure and refusal to comply with this Court's orders, which led to findings of contempt and imposition of the receivership. Mr. Watson's repeated efforts to cast blame on the Receiver for certain aspects of the receivership process that he finds undesirable or burdensome are not reasonable or appropriate.

As detailed in the Receiver's Second Quarterly Report, Mr. Watson personally (separate from his business operations) collected and spent approximately three million dollars ($3,000,000) during the pendency of the Court's injunction before the Receiver's appointment, including substantial expenditures for luxury travel and high-end shopping, all without paying any amount toward the injunction. [Dkt. 702 ¶¶ 12-17 and Ex. C]. During this injunction period, Mr. Watson resided in a multimillion-dollar mansion while paying more to finish construction of a second multimillion-dollar mansion to be used as a mountain home (where he currently resides). Without

disclosure to the Court or the plaintiffs, Mr. Watson also used equity from these properties to prefer certain creditors—including his legal counsel in this action—by granting liens in violation of the injunction, and then, after the Receiver's appointment, Mr. Watson attempted to sell one of his residences and disburse proceeds to these creditors without the consent of the Receiver. [Dkt. 440, 446.] Despite Mr. Watson's extraordinary cash flow during the 19-month injunction period, by the time of the Receiver's appointment, Mr. Watson's personal bank account balance had been reduced to just $856. *Id.*

Mr. Watson routinely complains that the Receiver does not allocate sufficient funds to pay Mr. Watson's requested expenses. Considering Mr. Watson's previous financial mismanagement in violation of the Court's injunction, which resulted in the material dissipation of assets and ultimately the imposition of the receivership, the Receiver has undoubtedly sought to manage the limited remaining assets differently from how Mr. Watson would prefer. But that is precisely the purpose of the Receivership Order. The Watson Defendants' claims of financial harm are not tenable.

The Court should deny the Surreply Motion, which is not warranted by the filing of an intervention motion and was instead filed by the Watson Defendants for improper purposes. Alternatively, in the event the Court grants the Surreply Motion, the Receiver requests that the Court accept this opposition as the Receiver's response to the surreply.

**Watson Defendants' Assertions Regarding the Sugar Creek Property Are Misplaced**

The Surreply Motion vaguely asserts that the lender's intervention motion highlights the damages allegedly suffered by Mr. Watson resulting from the injunction and receivership, but the Watson Defendants fail to articulate what that damage is or how any specific actions of the Receiver have purportedly caused it.

As Mr. Watson is aware based on a valuation he obtained from a broker shortly before the Receiver's appointment, the Sugar Creek Property is presently worth substantially less than the premium purchase price paid in 2019 to acquire the property. Recent interest rate increases have only put further downward pressure on value. As such, contrary to the suggestion in the Surreply Motion, the decline in value of the Sugar Creek Property from its 2019 purchase price and its current distressed situation are not the result of some action or inaction of the Receiver, but rather are the culmination of prior events involving Mr. Watson along with external factors such as economic conditions, interest rates, and commercial real estate market trends nationwide—most of which predated the Receiver's appointment.[2]

Furthermore, like many of Mr. Watson's other real estate investments, the Sugar Creek Property was acquired using over $8 million in equity raised from outside investors, and those outside investors are generally entitled to payment from proceeds of the property *before* Mr. Watson can recover anything on his own interests. Given the diminished value of the property, the terms of the loan, the equity structure of the investment, and current real estate market conditions, it is extremely unlikely that Mr. Watson or his entities would receive any meaningful value from a disposition of the Sugar Creek Property.

Despite these circumstances, after his appointment, the Receiver sought to obtain value from the Sugar Creek Property while also seeking to preserve the outside investors' equity positions. In March 2022, the Receiver negotiated an agreement with one of the existing outside investors under which such investor would acquire Mr. Watson's management rights and other

---

[2] Like many other office properties, the Sugar Creek Property lost tenants during the course of the COVID-19 pandemic as a result of remote work trends and changing corporate real estate uses. Before the Receiver's appointment, occupancy in the Sugar Creek Property had decreased materially from the levels present at the time the building was acquired in 2019. Due to these reductions in occupancy, the Sugar Creek Property's value—which is generally a product of the rental income it produces—remains well below its 2019 level. Recent interest rate increases have further adversely affected market value.

interests in Sugar Creek Parent and pursue its own restructuring of the loan. This transaction was designed to allow the outside investors to retain their equity positions in Sugar Creek Parent, allow the Receiver to monetize Mr. Watson's management rights, and permit the lender to work out loan restructuring issues with the new manager. Mr. Watson was fully aware of—and indeed approved—the Receiver's entry into a letter of intent in March 2022 with such outside equity investor to memorialize this proposed transaction. Despite certain delays, the Receiver anticipated that the transaction under the letter of intent would ultimately proceed to closing. However, only within the last two weeks, the proposed purchaser has advised the Receiver that it would not consummate the proposed transaction. The Receiver is continuing to evaluate other potential means of obtaining value from the Sugar Creek Property and preserving the existing investors' equity positions (if possible), and discussions with the lender and other parties remain ongoing.

The Surreply Motion also suggests that the receivership has caused Mr. Watson reputational harm with his investors, but this assertion is not plausible given the context of such claim. As the Surreply Motion observes, the Securities and Exchange Commission recently filed a complaint ("SEC Complaint") against Mr. Watson and WDC Holdings, LLC, asserting that Mr. Watson made false and misleading representations to outside investors regarding whether he and his entities would co-invest to share the risks associated with various proposed investments. A copy of the SEC Complaint is attached as Exhibit A.

Several allegedly false and misleading statements made by Mr. Watson and his entities ***to potential outside investors in the Sugar Creek Property*** are among the grounds specifically cited in the SEC Complaint as forming the basis for the securities law violations and fraud claims asserted by the SEC against Mr. Watson. *See* Ex. A., SEC Complaint ¶¶ 123-130 (referring to Sugar Creek Property as the "Houston Property"). As the SEC Complaint describes, Mr. Watson

6

advised potential investors that he and his entities would "personally invest up to 5% of the equity," and Mr. Watson included this 5% co-investment amount ($407,394) as an assumption when modeling the value to outside investors. *Id.* at 124-25. However, instead of investing the stated 5% amount of $407,394, the SEC Complaint observes that Mr. Watson invested only $4,998.[3] *Id.* ¶ 128. Accordingly, the SEC Complaint alleges that "Northstar's and Watson's statements about their co-investment in the project were false and misleading." *Id*.

The Watson Defendants cannot credibly assert that they have suffered reputational harm as to the Sugar Creek Parent investors from some action of the Receiver, especially when the Sugar Creek Parent investors are the very same investors that the SEC has publicly accused the Watson Defendants of defrauding.

In short, the Watson Defendants' arguments regarding the Sugar Creek Property are misdirected. Prevailing market conditions and the investment structure at Sugar Creek Parent have resulted in Mr. Watson's lack of economic value, not actions of the Receiver, and any alleged reputational harm is necessarily the result of the Watson Defendants' own conduct. The lender's motion to intervene has nothing to do with the Motion to Vacate and does not warrant a surreply.

### The Unfounded Grievances and Unsupported Conspiracy Theories Set Forth in Mr. Watson's Letter Are Similarly Misplaced

The Watson Defendants also seek to include a letter from Mr. Watson to the Receiver as an exhibit to the proposed surreply, and the proposed surreply contains some discussion of this communication. As an initial matter, this May 16, 2022 letter was transmitted more than three months ago—before the date that the Watson Defendants filed their reply regarding the Motion to Vacate —and is not a new development or evidence that could suddenly warrant a surreply. Had

---

[3] While Mr. Watson and his entities invested only $4,998 in Sugar Creek Parent equity raise, Mr. Watson and his entities received in excess of $690,000 in fees at closing of the investment.

this letter contained any material information, it could have been filed with the Watson Defendants' reply on May 27, 2022. Plainly, the Watson Defendants concluded previously that it does not, as the letter merely reflects Mr. Watson's own groundless accusations and unsupported conspiracy theories that have no place in the briefing for the Motion to Vacate.

Mr. Watson's letter includes a number of false and misleading statements, many of which the Receiver previously addressed in his response letter to Mr. Watson dated May 24, 2022. Because the Receiver's response letter was omitted from the Watson Defendants' proposed surreply, a copy of the Receiver's response letter is attached hereto as Exhibit B.

As the Receiver's quarterly reports have made clear, Mr. Watson's present assets are insufficient to satisfy the payment obligation under the Court's injunction, the costs of the receivership process, and the preexisting debts incurred by Mr. Watson prior to the Receiver's appointment, including tax liabilities. [Dkts. 495, 702, 898.] Such liquidity shortfall, however, does not entitle Mr. Watson to dictate to the Receiver that Mr. Watson's preferred pre-receivership obligations be paid first from the funds available. Using the limited assets of the receivership to prefer certain pre-receivership obligations identified by Mr. Watson in his letter (and routinely demanded in other correspondence)—including credit card debts, luxury items, and unpaid business rents—is not consistent with the terms of the Receivership Order. The Receiver was appointed in part because Mr. Watson diverted funds to his preferred creditors over the one payment obligation that this Court expressly ordered him to satisfy: judgment security pursuant to the injunction. Upon appointment, the Receiver is required to comply with the Receivership Order, not follow Mr. Watson's subjective directions to pay such other creditors as he believes is

8

in his personal self-interest before paying the obligations he continues to ignore—those required by the injunction and Receivership Order.[4]

Finally, as to Mr. Watson's complaints regarding professional fee obligations, such fees are the consequence of the receivership proceeding caused by Mr. Watson's own failure to comply with this Court's prior orders. The Receiver and his professionals have endeavored at all times to focus their efforts efficiently on achieving the goals of the Receivership Order, though the complexity and urgency of the situation have inevitably required substantial activity by the Receiver and his professionals on various issues.[5] The Receiver has repeatedly reminded Mr. Watson that his own litigious and obstructive conduct and interactions with the Receiver are a primary cause of additional professional fees, and the Receiver's professional fees incurred in responding to the Surreply Motion—which contains various baseless personal attacks that require correction—is a prime example of this dynamic.

Thus, the Receiver respectfully requests that the Court deny the Surreply Motion. In the event the Court is inclined to grant the Surreply Motion, the Receiver requests the Court accept this opposition as a response to the surreply for purposes of consideration in connection with the Motion to Vacate.

---

[4] While the Receiver has declined Mr. Watson's frequent requests for payments inconsistent with the Receivership Order, the Receiver has regularly funded amounts outside of Mr. Watson's budget for: (i) litigation expenses, including travel to depositions and hearings, that Mr. Watson represents are necessary for his defense in this litigation, and (ii) reasonable expenses relating to Mr. Watson's family obligations, including educational and other support for his children.

[5] The Receiver and his professionals have to date received payment of $327,242, though additional fees remain accrued and outstanding. While the Watson Defendants' assert that the Receiver's fees are somehow improper, they are dwarfed by those of the Watson Defendants' own litigation and investigations counsel, who have already exhausted $5 million in legal fees and expenses under the Watson Defendants' primary D&O insurance policy and begun seeking recoveries from an additional excess policy.

9

Dated: September 7, 2022

Respectfully submitted,

  /s/  *Aaron G. McCollough*
Aaron G. McCollough (VSB 72146)
McGuireWoods LLP
77 West Wacker Drive, Suite 4100
Chicago, IL 60601-1818
Tel.: (312) 849-8256
Fax: (312) 698-4522
amccollough@mcguirewoods.com

-and-

Joseph S. Sheerin (VSB 47400)
McGuireWoods LLP
800 East Canal Street
Richmond, VA 23219-3916
Tel.: (804) 775-1135
Fax: (804) 698-2076
jsheerin@mcguirewoods.com

*Attorneys for the Receiver*

**Certificate of Service**

I HEREBY CERTIFY that, on September 7, 2022, I caused the OPPOSITION OF RECEIVER TO WATSON DEFENDANTS' MOTION FOR LEAVE TO FILE SURREPLY TO MOTION TO VACATE PRELIMINARY INJUNCTION to be electronically filed and served using the CM/ECF System, which will transmit a Notice of Electronic Filing to counsel of record. Additionally, the document and notification of filing will be sent by U.S. Mail to the following last-known address of the following parties:

Casey Kirschner
635 N. Alvarado Lane
Plymouth, MN 55447
By email: casey.kirschner@gmail.com

　　　　　　　　　　　　　　　　　　　　　　　/s/ *Aaron G. McCollough*
　　　　　　　　　　　　　　　　　　　　　　　Aaron G. McCollough