IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| AMAZON.COM, INC. and AMAZON DATA SERVICES, INC.,<br><br>   Plaintiffs,<br><br> v.<br><br>WDC HOLDINGS LLC dba NORTHSTAR COMMERCIAL PARTNERS, et al.<br><br>   Defendants.<br>_____<br>800 HOYT LLC,<br><br>   Intervening Interpleader Plaintiff / Intervening Interpleader Counter - Defendant,<br><br> v.<br><br>BRIAN WATSON; WDC HOLDINGS LLC; BW HOLDINGS, LLC,<br><br>   Interpleader Defendants,<br><br> and<br><br>AMAZON.COM, INC. and AMAZON DATA SERVICES, INC.,<br><br>   Interpleader Defendants / Interpleader Counter-Plaintiffs. | Civil Action No. 1:20-CV-484-RDA-TCB |

**WATSON DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE SUR-REPLY TO MOTION TO VACATE PRELIMINARY INJUNCTION**

Defendants WDC Holdings LLC d/b/a Northstar Commercial Partners; Brian Watson; Sterling NCP FF, LLC; Manassas NCP FF, LLC; NSIPI Administrative Manager; and BW Holdings, LLC (collectively, the "Watson Defendants"), by and through undersigned counsel,

hereby file their Reply in Support of their Motion for Leave to File Sur-Reply to Motion to Vacate Preliminary Injunction.

## INTRODUCTION

The Watson Defendants seek leave to file a short sur-reply in support of their Motion to Vacate the Preliminary Injunction to present the Court with new and relevant evidence that has arisen in the five months since the Motion was filed. Plaintiffs Amazon.com, Inc. and Amazon Data Services, Inc. (collectively, "Amazon") have not presented any valid reasons why the new and relevant information in the proposed sur-reply should not be presented to the Court but have instead used their Response to argue the merits of the injunction, propounding arguments that are both factually unfounded and misleading as well as inappropriate in response to a procedural motion.

## ARGUMENT

The information that the Watson Defendants seek to file in the requested sur-reply provides a basis for modifying the injunction entered on June 5, 2020, Dkt. 57 (the "Injunction"), because it presents the Court with new, relevant evidence relating to the factors required for a preliminary injunction as articulated by the Supreme Court in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 26 (2008). Preliminary injunctions are an extraordinary form of relief that can be granted only when equity requires. To determine whether a preliminary injunction is warranted, a court must examine the relative hardships imposed by the requested injunction and must deny an injunction where the harm resulting from the injunction outweighs any potential benefit. *Winter*, 555 U.S. at 24 ("A preliminary injunction is an extraordinary remedy never awarded as of right. In each case, courts must balance the competing claims of injury and must consider the effect on each party of granting of the requested relief." (internal citations omitted)). As such, new

information demonstrating the increased and continuing irreparable harm caused to the Watson Defendants by the Injunction as well as the futility of the Injunction is relevant to the determination of the Motion to Vacate.

The submitted sur-reply contains such evidence, including that: the cost of the Receiver has ballooned to nearly $2.3 million, Dkt. 898 at 10; the very appointment of the Receiver has resulted in the imminent turnover to creditors of one of the Watson Defendants' substantial assets (77 Sugar Creek Boulevard), Dkt. 942 at 4-5; and the Receiver has refused to take reasonable actions to mitigate or prevent this turnover, *id.* at 8. Perhaps even more significantly, evidence continues to mount that the Injunction does not serve any applicable purpose because of the Receiver's repeated findings that despite the Receiver's best efforts, the Watson Defendants simply do not have the resources to comply with the extraordinary escrow provision and likely never will. Dkt. 898 at 4 ("As of today, Defendants have insufficient cash or other liquid assets to begin satisfying the Court's Injunction. . . . [T]he Receiver consummated certain transactions and pursued collections in an effort to provide immediate liquidity, but cash generated during the Third Reporting Period remains substantially below levels needed to fund Defendants' various ongoing liabilities while also satisfying the Injunction."). Although Amazon's Response in Opposition makes much of the fact that the Receiver was appointed because the Watson Defendants were held to be in contempt of the Injunction, such an argument is irrelevant in the face of the undisputed fact that the Watson Defendant's simply *cannot comply* with escrow provision of the Injunction (notwithstanding the fact that the Watson Defendants have complied with all other provisions of the Injunction). A civil contempt order is coercive, and it is permissible only on the basis that it is "avoidable through obedience." *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827 (1994). Here, the facts, including the new information addressed in the submitted sur-

reply, show that the Watson Defendants cannot comply with the Injunction, and thus cannot, of their own volition, rid themselves of the Receiver and the harm that the Receiver is inflicting upon them. To make matters worse, each day that the Receiver is in place, it becomes less likely that the Watson Defendants will be able to comply with the Injunction given the exorbitant Receivership costs and poor management of the Watson Defendants' remaining assets.

Additionally, Amazon's Response attempts to deflect from the issue at hand—the Watson Defendants' request to file a short sur-reply to the Motion to Vacate to present the Court with new and relevant information—by making factually incorrect and irrelevant arguments regarding the merits of the underlying Motion to Vacate. First, Amazon misstates the grounds for vacating the Injunction by arguing that the Motion to Vacate simply reiterates arguments already litigated. Dkt. 1000 at 2. However, the Watson Defendants filed the Motion to Vacate because Amazon and its legal counsel at Gibson Dunn chose to withdraw the "verified" complaint and sworn affidavits that formed the very basis of the Injunction following an admission that three separate Gibson Dunn attorneys falsely claimed personal knowledge of the alleged kick-back scheme. *See* Dkt. 587. As such the "record evidence this Court described as 'extremely powerful'" is, for the most part, no longer a part of the record. Dkt. 1000 at 2.

Second, Amazon argues, without providing a single example or citation, that "subsequent discovery has substantiated this evidence." Dkt. 1000 at 2. This could not be further from the truth. After two years of investigation, over 30 depositions, and literally millions of pages of documentation produced, discovery has revealed that there is not a single witness who has personal knowledge of Mr. Watson's alleged participation in a kickback scheme, nor are there any written documents that confirm such involvement. Instead, the witnesses, such as Mr. Mulcahy ("Informant 1"), whom Amazon continues to erroneously allege to have personal knowledge of

Mr. Watson's participation, have testified under oath not only that they have no such knowledge but also that Amazon has misstated the extent of their knowledge in subsequent filings. *See, e.g*, Dkt. 696-6 (Mulcahy Deposition) ("Q: Generally speaking, is Paragraph 6 [of Mr. Doden's Declaration] consistent with your recollection of what you told Mr. Doden? A: No.").

The Watson Defendants have been subject to the extraordinarily oppressive Injunction for nearly two years with no end in sight. They simply desire a full and fair chance to prove their innocence in trial, and they believe that until that time, they should not be punished based on hearsay, speculation, and unproven allegations. Because the Injunction is an equitable matter, it is appropriate for the Court to have and consider new and relevant evidence of the irreparable harm caused by the Injunction.

## CONCLUSION

Setting aside Amazon's mischaracterizations and red herrings, Amazon has presented no real argument against the filing of the sur-reply. Mr. Watson seeks to provide the Court with relevant evidence and facts that have arisen or come to light in the time since the Motion to Vacate was filed nearly five months ago. Providing the Court with such information does not prejudice the Plaintiff, who may seek leave to file a response to the sur-reply, and the sur-reply will provide additional facts and information that will assist the Court in its determination of the merits of the Motion to Vacate.

WHEREFORE, the Watson Defendants request this Court to enter an order GRANTING the Watson Defendants' Motion to File Sur-Reply to Motion to Vacate Preliminary Injunction.

Dated: September 13, 2022                                  Respectfully submitted,

*/s/ Jeffrey R. Hamlin*
Jeffrey R. Hamlin (VA Bar No. 46932)
George R. Calhoun (*pro hac vice*)
James Trusty (*pro hac vice*)

5

Ifrah Law PLLC
1717 Pennsylvania Avenue NW, Suite 650
Washington, DC 20006
Telephone: (202) 524-4140
Facsimile: (202) 524-4141
jhamlin@ifrahlaw.com
george@ifrahlaw.com
jtrusty@ifrahlaw.com

Stanley L. Garnett (*pro hac vice*)
Amanda K. Houseal (*pro hac vice*)
Sara R. Bodner (*pro hac vice*)
Leah Regan-Smith (*pro hac vice*)
Brownstein Hyatt Farber Schreck, LLP
410 17th Street, Suite 2200
Denver, CO 80202
Telephone: (303) 223-1100
Facsimile: (303) 223-1111
sgarnett@bhfs.com
ahouseal@bhfs.com
sbodner@bhfs.com
lregan-smith@bhfs.com

*Counsel for WDC Holdings LLC, Brian Watson, Sterling NCP FF, LLC, Manassas NCP FF, LLC, NSIPI Administrative Manager, and BW Holdings LLC*