**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| AMAZON.COM, INC. and AMAZON DATA SERVICES, INC., <br><br>         Plaintiffs, <br><br>    v. <br><br> WDC HOLDINGS LLC dba NORTHSTAR COMMERCIAL PARTNERS; BRIAN WATSON; STERLING NCP FF, LLC; MANASSAS NCP FF, LLC; NSIPI ADMINISTRATIVE MANAGER; NOVA WPC LLC; WHITE PEAKS CAPITAL LLC; VILLANOVA TRUST; CARLETON NELSON; CASEY KIRSCHNER; ALLCORE DEVELOPMENT LLC; FINBRIT HOLDINGS LLC; CHESHIRE VENTURES LLC; 2010 IRREVOCABLE TRUST; SIGMA REGENERATIVE SOLUTIONS LLC; CTBSRM, INC.; RODNEY ATHERTON; DEMETRIUS VON LACEY; RENRETS LLC, <br><br>         Defendants. | CASE NO. 1:20-CV-484-RDA-TCB |
| 800 HOYT LLC, <br><br>         Intervening Interpleader Plaintiff, Intervening Interpleader Counter-Defendant, <br><br>    v. <br><br> BRIAN WATSON; WDC HOLDINGS, LLC; BW HOLDINGS, LLC, <br><br>         Interpleader Defendants, <br>    and <br> AMAZON.COM, INC., and AMAZON DATA SERVICES, INC., <br>         Interpleader Defendants, <br>         Interpleader Counter-Plaintiffs. | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION TO COMPEL PRODUCTION OF REVISED PRIVILEGE LOG
AND DOCUMENTS SUBJECT TO PRIVILEGE WAIVER**

## TABLE OF CONTENTS

<u>Page</u>

TABLE OF AUTHORITIES ................................................................................................. ii

BACKGROUND ................................................................................................................. 3

LEGAL STANDARD ......................................................................................................... 7

ARGUMENT ...................................................................................................................... 8

    I.    THE WATSON DEFENDANTS' PRIVILEGE ASSERTIONS ARE
        UNSUBSTANTIATED AND THEREFORE WAIVED. ............................................. 8

    II.   THE WATSON DEFENDANTS HAVE WAIVED PRIVILEGE BY
        ASSERTING AN ADVICE OF COUNSEL DEFENSE............................................. 10

    III.  WATSON DEFENDANTS' SELECTIVE DISCLOSURE OF PRIVILEGED
        INFORMATION LIKEWISE EFFECTS SUBJECT MATTER WAIVER ................. 14

CONCLUSION .................................................................................................................. 15

# TABLE OF AUTHORITIES

Page(s)

CASES

*Addax Energy SA v. M/V Yasa H. Mulla*,
2018 WL 10470917 (E.D. Va. Nov. 13, 2018)........................................................................8

*BASF Plant Sci., LP v. Commonwealth Sci. & Indus. Rsch. Org.*,
2019 WL 8108060 (E.D. Va. July 3, 2019)............................................................................7

*Byrnes v. Jetnet Corp.*,
111 F.R.D. 68 (M.D.N.C. 1986) .......................................................................................9, 10

*Cappetta v. GC Servs. Ltd. P'ship*,
2008 WL 5377934 (E.D. Va. Dec. 24, 2008) ........................................................................10

*Clark v. Trans Union, LLC*,
2017 WL 11504623 (E.D. Va. Mar. 1, 2017) ........................................................................10

*U.S. ex rel. Drakeford v. Tuomey*,
792 F.3d 364 (4th Cir. 2015) ...........................................................................................1, 15

*E.I. Dupont de Nemours & Co. v. Kolon Indus., Inc.*,
269 F.R.D. 600 (E.D. Va. 2010) ..........................................................................................11

*In re EchoStar Communications Corp.*,
448 F.3d 1294 (Fed. Cir. 2006)..............................................................................................8

*ePlus Inc. v. Lawson Software, Inc.*,
280 F.R.D. 247 (E.D. Va. 2012) ..........................................................................................15

*Glenmede Tr. Co. v. Thompson*,
56 F.3d 476 (3d Cir. 1995)...................................................................................................14

*In re Grand Jury Subpoena*,
341 F.3d 331 (4th Cir. 2003) .................................................................................................9

*LifeNet, Inc. v. Musculoskeletal Transplant Foundation, Inc.*,
490 F. Supp. 2d 681 (E.D. Va. 2007) ...................................................................................11

*United States ex rel. Lutz v. Berkeley Heartlab, Inc.*,
2017 WL 1282012 (D.S.C. Apr. 5, 2017)..............................................................................14

*Rambus, Inc. v. Infineon Techs. A.G.*,
220 F.R.D. 264 (E.D. Va. 2004) ..................................................................................7, 8, 10

## TABLE OF AUTHORITIES
*(continued)*

Page(s)

*RLI Ins. Co. v. Conseco, Inc.*,
   477 F. Supp. 2d 741 (E.D. Va. 2007) ..........................................................9

*Scalia v. Med. Staffing of Am., LLC*,
   2020 WL 1811344 (E.D. Va. Apr. 8, 2020) .........................7, 8, 12, 13, 14

*Sectek Inc. v. Diamond*,
   2016 WL 5897763 (E.D. Va. Oct. 6, 2016)...................................................9

*Teal Bay Alls., Inc. v. Southbound One, Inc.*,
   2014 WL 1630211 (D. Md. Apr. 21, 2014).........................8, 11, 13, 15

*United States v. Jones*,
   696 F.2d 1069 (4th Cir. 1982) ...............................................1, 7, 11, 14

*United States v. (Under Seal)*,
   852 F.2d 566 (4th Cir. 1988) ...................................................................15

*Williams v. Big Picture Loans, LLC*,
   2019 WL 1983048 (E.D. Va. May 3, 2019) ..................................10, 11

**OTHER AUTHORITIES**

1 McCormick On Evid. § 93 (7th ed. 2013) ...................................................1

**RULES**

Fed. R. Civ. P. 26(b)(1).......................................................................................7

Fed. R. Civ. P. 26(b)(5).....................................................................................10

Fed. R. Civ. P. 26(b)(5)(ii)..................................................................................9

Fed. R. Civ. P. 37(a) ...........................................................................................7

Local Civ. R. 37(A) .............................................................................................7

Plaintiffs Amazon.com, Inc. and Amazon Data Services, Inc. ("Amazon") respectfully move under Federal Rule of Civil Procedure 37(a) and Local Civil Rule 37(A) for an order compelling the Watson Defendants[1] to produce relevant documents and serve a revised privilege log that details all documents they continue to withhold notwithstanding the Court's July 2021 production order, Dkt. 304, and the subject matter waiver effected by the advice of counsel defense they raised for the first time just weeks before the close of fact discovery, Dkt. 843.

## INTRODUCTION

This motion concerns yet another instance where Amazon requires this Court's assistance to resolve issues that remain in dispute after extensive negotiations with the Watson Defendants. This summer, after more than two years of litigation, they filed a supplemental answer asserting for the first time that "Plaintiffs' claims are barred in whole or in part because of advice of counsel." Dkt. 843 at 62. The consequences of this defense are clear. "When a party raises an advice of counsel defense, . . . *all advice on the pertinent topic*," not just the specific communications disclosed or relied upon, "becomes fair game." *U.S. ex rel. Drakeford v. Tuomey*, 792 F.3d 364, 391 (4th Cir. 2015) (Wynn, J., concurring) (citing 1 McCormick On Evid. § 93 (7th ed. 2013)) (emphasis added). Further, unless otherwise agreed, "[s]elective disclosure" of privileged material "for tactical purposes waives the privilege" as to "all other communications relating to the same subject matter." *United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982).

Amazon has tried for weeks to ascertain the subject matter of the Watson Defendants' newly-minted advice of counsel defense in order to obtain non-privileged deposition and document discovery essential to this case. But these efforts have been complicated by the fact that the claimed advice, which apparently concerns central elements of the kickback scheme, was rendered

---

[1] Unless otherwise noted, references to "Defendants" or "Watson Defendants" include Brian Watson, WDC Holdings LLC d/b/a Northstar Commercial Partners ("Northstar"), Sterling NCP FF, LLC, Manassas NCP FF, LLC, and NSIPI Administrative Manager.

in late 2019 and early 2020 by the firm (Brownstein Hyatt Farber Schreck LLP, or "Brownstein") that serves as the Watson Defendants' lead trial counsel in this case. Ex. 1. Specifically, sworn interrogatory responses Brownstein served last week and supplemented today confirm that the subject matter of the advice the Watson Defendants have placed in issue includes:

- Watson's receipt of the $5 million "White Peaks" payment covered by this Court's preliminary injunction;

- The proceedings giving rise to this payment from former Northstar employee Kyle Ramstetter, who has invoked the Fifth Amendment in this case, *see* Dkt. 978-5, ███████████████████████████████████████████ ███████████████, *see* Ex. 2 at ¶ 10.

- Watson's recording of a September 2019 conversation with Ramstetter that Brownstein transcribed and eventually filed in this action, but the Court found was *not* accurate because it "omi[tted]" inculpatory language about Casey that was in the audio file, Dkt. 99 at 9 & n.6; and

- the review and "proposed renegotiation of" the 2018 Villanova Trust agreement that served as the main conduit for the kickbacks on the Watson Defendants' lease deals with Amazon.

Ex. 3 at 13–14.

Brownstein provided the interrogatory responses because the Watson Defendants stated in their August depositions that Amazon would "have to ask" the Brownstein lawyers about the scope and qualifications of their legal advice. *See, e.g.*, Ex. 4 (B. Watson Dep. Tr.) 358:17–22; *see also, e.g.*, *id.* at 361:11–17, 361:18–362:2, 362:8–21. These qualifications included one Brownstein partner's reference to a "big hole in our understanding of what's going on" after she "listened" to the Watson-Ramstetter "recording" the firm (inaccurately) "transcribed," *id.* at 361:2–17; Dkt. 99 at 9 & n.6, in which Ramstetter told Watson "we all know what we did." Dkt. 99 at 9 & n.6 (quoting transcript). Brownstein's interrogatory responses do not provide information sufficient to resolve these and other factual questions about the scope and validity of the Watson Defendants' advice of counsel defense. Accordingly, Brownstein has agreed to make lawyers with knowledge of the advice available for depositions in October. Ex. 5. But for these depositions to serve their

purpose under the rules, the Watson Defendants produce all documents covered by the defense *and* a revised privilege log with descriptions sufficient to assess how any remaining entries relate to the subject matter of the defense.

Despite several conferences, the Watson Defendants will not commit to these productions. Indeed, they refused to address even the discrete question whether three specific entries on its privilege log are covered by the advice of counsel defense asserted this summer.  Ex. 6.  This lack of cooperation is highly prejudicial to Amazon's right to explore the scope and basis for the defense, because many of the current log entries from the involved attorneys are too vague for Amazon to tell whether they relate to the subject matter over which the Watson Defendants have now waived privilege.  Accordingly, and consistent with Amazon's prior reservation of rights on the Watson Defendants' privilege assertions, *see, e.g.*, Dkt. 286, at 24–25; Dkt. 303, at 2, Amazon respectfully seeks an order compelling the Watson Defendants to produce within 11 days all documents within their possession, custody, or control related to their advice of counsel defense, as well as a revised privilege log with descriptions sufficient to assess the relationship between the withheld documents and the subject matter of the defense.

## BACKGROUND

On June 27, 2022, the Watson Defendants supplemented their answer to Plaintiffs' Third Amended Complaint.  Dkt. 843.  For the first time since this litigation began in 2020, they asserted that "Plaintiffs' claims are barred in whole or in part because of advice of counsel."  *Id.* at 62. Accordingly, in preparation for the depositions of Brian Watson in his personal capacity and as Northstar's 30(b)(6) corporate designee, Amazon requested clarification as to which claims and/or defenses were covered by the Watson Defendants' advice of counsel assertion.  Ex. 5.  Defendants' counsel responded that the advice of counsel defense was limited to advice provided by Lisa Hogan and Robert Kaufmann of the Brownstein Hyatt firm regarding the 2019 mediation and $5 million

settlement reached with former Northstar employees Kyle Ramstetter and Will Camenson, who orchestrated the White Peaks sale to Amazon at issue in this suit. *See* Dkt. 161-1; Dkts. 160-7 to -10; *see also* Dkt. 764 ¶¶ 220–243. But the Watson Defendants' deposition testimony, and Brownstein's ensuing interrogatory responses, have raised more questions than they answered on the scope and validity of their new advice of counsel defense.

Amazon first attempted to obtain the information needed to litigate the defense from the Watson Defendants during their mid-August depositions.[2] But the Watson Defendants answered several questions simply by referring Amazon to the Brownstein lawyers who provided the relevant advice. *See, e.g.*, Ex. 4 (B. Watson Dep. Tr.) 358:17–22, 361:2–17, 361:18–362:2, 362:8–21. Amazon then conferred with Brownstein about obtaining some or all of the relevant information through written interrogatories. Brownstein agreed, and on August 26, 2022, Amazon served the interrogatories along with protective deposition notices for Mr. Kaufmann, Ms. Hogan, and the Brownstein firm for which defense counsel agreed to accept service. Ex. 1.

Ms. Hogan and Mr. Kaufmann provided initial interrogatory responses on September 14, 2022. Ex. 3. But these responses purported to cover only information known to these partners in their "individual" capacities, not information known to the firm. The responses did, however, provided limited facts about attorney-client communications not specifically related to the White Peaks mediation and settlement. *See id.* In particular, the responses provided select information regarding advice that the attorneys provided to the Watson Defendants after Mr. Ramstetter and Mr. Camenson—then the Watson Defendants' employees, with responsibility for the Amazon

---

[2] As Amazon's counsel explained to counsel for the Watson Defendants, Amazon agreed to pursue the necessary discovery through Defendant Watson first given the privilege risks inherent in outside counsel depositions where privilege has *not* been waived. *See* Ex. 1. The attorneys whose advice have been placed in issue are colleagues of the Watson Defendants' trial counsel, although Amazon understands that neither one participated in the Watson Defendants' defense in this case.

deals at issue in this case—accused the Watson Defendants of paying kickbacks to Amazon employees, in violation of applicable laws and Amazon policies. *See, e.g.*, *id.* at 24–25. They also provided information about "proposed renegotiation of" the 2018 Villanova Trust agreement, which Amazon has identified as the agreement that governed the kickbacks on the Watson Defendants' lease deals with Amazon. *Id.* at 13–16, 20–22.

Watson likewise gave limited deposition testimony about broader advice that the Brownstein attorneys apparently provided as to the Watson Defendants' relationship with Amazon well beyond their advice on the White Peaks mediation and settlement. Watson testified as Northstar's company witness that after Mr. Ramstetter and Mr. Camenson "alleged that there were potential improper dealings with regards to the Amazon account," he "asked Lisa Hogan and Rob Kaufmann to review the Villanova agreement to make sure that there were no issues or improprieties on our end and that they were permissible." Ex. 7 (B. Watson (30(b)(6)) Dep. Tr. 50:7–51:2. He testified specifically that he asked the attorneys "to review [the agreement] from top to bottom," *id.* at 47:13–48:17, and that his request was to "button it down if it needs to be changed or addressed," *id.* at 51:3–51:7. He also testified in his individual capacity that the attorneys wanted to make certain changes to the agreement per his request that they "make sure that it's handled appropriately." Ex. 4, B. Watson Dep. Tr. 67:1–17. He also testified regarding the contents of Northstar's communications with Mr. Kaufmann and other counsel regarding concerns raised by Northstar's then-partner IPI about the propriety of the fees Northstar was receiving on the Amazon deals at issue in this case. Ex. 7, B. Watson (30(b)(6)) Dep. Tr. 297:21–304:23.

On September 20, Brownstein agreed to supplement their deficient responses by September 22, with the understanding that "if the supplemental interrogatory responses do not resolve the[] issues, Mr. Kaufmann, Ms. Hogan, and a 30 b 6[*sic*] representative of the firm will be made available for the limited purpose of examination on this [advice of counsel] defense." Ex. 5.

In the meantime, Amazon has sought discovery through other means from the Watson Defendants and the Brownstein firm.  Specifically, Amazon has asked that the Watson Defendants and Brownstein provide supplement productions with any previously withheld documents that have become discoverable by virtue of the advice of counsel assertion, as well as a revised privilege log that would allow Amazon to properly assess any continued claims of privilege.  *Id.*  They have refused to fully comply.  Counsel for the Watson Defendants instead have advised, in vague terms, that they are reviewing attorney emails that they *may* provide in a supplemental document production and that they will provide an updated privilege log only "if need[ed]" with that production.  Ex. 6.  That position is problematic because the Watson Defendants' existing privilege log dates back to December 2020, and is deficient for reasons Amazon first explained to Defendants more than a year ago.  *See* Dkt. 286, at 24–25.  The Watson Defendants sidestepped these problems in 2021 by agreeing at the last minute to simply produce documents predating April 1, 2020 from their log rather than timely correcting the deficiencies.  *See* Dkt. 286, at 24–25; Dkt. 303, at 2.  The Watson Defendants still have not corrected the deficiencies for the entries postdating April 1, 2020. Ex. 6.

The Watson Defendants have also refused to commit to a position on the discrete question whether three specific entries on its privilege log are covered by the advice of counsel defense asserted this summer.  *Id.*  The privilege log states that the three documents—which Amazon identified as exemplars of similar documents the Watson Defendants are withholding—are purportedly privileged because they are "[e]mail exchange[s] with counsel re VA deals."  *See* Dkt. 286-11 at lines 4056, 5173, 4102 (log entries for WDC0846032, WDC0861954, WDC0848342).  However,

based on what Plaintiffs can glean from the privilege log, the communications involve Mr. Kauf-mann, post-date April 1, 2020,[3] and concern Northstar's fraudulent deals with Amazon.  The par-ties accordingly are at an impasse with respect to the scope of the Watson Defendants' privilege waiver, as well as the materials to which Amazon is entitled as a threshold matter to develop the record on the advice they have placed in issue.

## LEGAL STANDARD

The Federal Rules of Civil Procedure entitle parties "to discover any material that is rele-vant to any party's claim or defense, is nonprivileged, and is proportional to the needs of the case." *BASF Plant Sci., LP v. Commonwealth Sci. & Indus. Rsch. Org.*, 2019 WL 8108060, at *2 (E.D. Va. July 3, 2019) (citing Fed. R. Civ. P. 26(b)(1)).  Rule 37(a) and Local Civil Rule 37(A) provide that a party may "move for an order compelling disclosure for discovery," Fed. R. Civ. P. 37(a), "[a]fter a discovery request is objected to, or not complied with, within time, and if not otherwise resolved," Local Civ. R. 37(A).  The burden rests on the party resisting discovery "to prove why the requested evidence is not discoverable."  *BASF Plant Sci.*, 2019 WL 8108060, at *2.

The disclosure of documents that have been improperly withheld on the basis of attorney-client privilege is a proper subject for a Rule 37 motion.  *See, e.g.*, *Scalia v. Med. Staffing of Am., LLC*, 2020 WL 1811344, at *6 (E.D. Va. Apr. 8, 2020).  In such cases, the party claiming privilege must show "not only that an attorney-client relationship existed, but also that the particular com-munications at issue are privileged and that the privilege was not waived."  *Jones*, 696 F.2d at 1072; *see also, e.g.*, *Rambus, Inc. v. Infineon Techs. A.G.*, 220 F.R.D. 264, 277 (E.D. Va. 2004) (noting that it is "the party asserting the privilege" that "has the burden to prove that the privilege

---

[3] Notably, the Watson Defendants' wholesale turnover of documents predating April 1, 2020 makes it impossible for Amazon to determine which documents reflect the basis for the asserted advice of counsel defense.  The Watson Defendants' simultaneous refusal to justify claims of priv-ilege for post-April 1, 2020 documents effectively ties Amazon's hands and prevents it from as-certaining the precise scope and validity of the Watson Defendants' remaining privilege claims.

applies").   "District courts generally have broad discretion in managing discovery, including whether to grant or deny a motion to compel." *Addax Energy SA v. M/V Yasa H. Mulla*, 2018 WL 10470917, at *3 (E.D. Va. Nov. 13, 2018) (citation omitted).  The Court may also "use its authority under Federal Rule of Civil Procedure 26(e)(1)(B) to order supplemental discovery disclosures and responses," including an order that the Watson Defendants "disclose all communications be-tween them and any of their attorneys regarding the subject matter at issue." *Med. Staffing of Am., LLC*, 2020 WL 1811344, at *6.

## ARGUMENT

The Watson Defendants have asserted an advice of counsel defense to Amazon's claims, but refuse to produce the information necessary to allow Amazon and this Court to assess the scope and validity of that defense.  *See* Dkt. 286-11.  The Watson Defendants cannot have their cake and eat it too.  "A party asserting the advice-of-counsel defense may not use the attorney-client privi-lege 'as both a sword and a shield' by selectively disclosing helpful privileged communications while asserting the privilege for damaging communications." *Teal Bay Alls., Inc. v. Southbound One, Inc.*, 2014 WL 1630211, at *2 (D. Md. Apr. 21, 2014) (quoting *In re EchoStar Communica-tions Corp.*, 448 F.3d 1294, 1301 (Fed. Cir. 2006)).  Accordingly, this Court should order the Watson Defendants to produce within 11 days:  (i) all documents and communications within their possession, custody or control related to the subject matter of their advice of counsel defense; *and* (ii) a revised privilege log with descriptions sufficient to assess the relationship between the with-held documents and the subject matter of the defense.

## I.   THE WATSON DEFENDANTS' PRIVILEGE ASSERTIONS ARE UNSUB-STANTIATED AND THEREFORE WAIVED.

The party seeking to withhold discoverable materials on the basis of attorney-client privi-lege bears the burden of demonstrating that the privilege applies. *Rambus*, 220 F.R.D. at 277.  To justify such withholding, the party "must establish not only that an attorney-client relationship

existed, but also that the particular communications at issue are privileged and that the privilege was not waived." *RLI Ins. Co. v. Conseco, Inc.*, 477 F. Supp. 2d 741, 750 (E.D. Va. 2007) (quoting *In re Grand Jury Subpoena*, 341 F.3d 331, 335 (4th Cir. 2003)) (internal quotation marks omitted). Because the attorney-client privilege and work product doctrine are narrowly construed under Fourth Circuit law, "[i]t is incumbent upon the proponent to specifically and factually support his claim of privilege," for "an improperly asserted privilege is the equivalent of no privilege at all." *Byrnes v. Jetnet Corp.*, 111 F.R.D. 68, 71 (M.D.N.C. 1986).  Federal Rule of Civil Procedure 26 similarly requires the party asserting privilege to support claims of privilege by "describ[ing] the nature of the documents, communications, or tangible things not produced or disclosed . . . in a manner that . . . will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(ii).  Failure to substantiate or "file a privilege log in a timely manner" means the "privilege claim . . . is waived." *Sectek Inc. v. Diamond*, 2016 WL 5897763, at *3 (E.D. Va. Oct. 6, 2016).

The Watson Defendants' privilege log is entirely deficient under Rule 26 and Fourth Circuit standards.  First, the log is inaccurate as it contains thousands of entries for documents that the Watson Defendants have purportedly produced.  Amazon has no way to confirm which of these documents have now been produced because the documents have not been Bates stamped.  *See, e.g.*, Dkt. 286-11 at lines 6172–6176, 6178–6181.  Next, the privilege log is outdated because it does not reflect any documents that the Watson Defendants may have withheld on privilege grounds after December 2020, notwithstanding that general discovery in this litigation only began several months later.  *See* Ex. 6.  Such delay effects waiver of the privilege as to any documents and communications that they have withheld since December 2020.  *See Sectek*, 2016 WL 5897763, at *3.

Finally, and most importantly, the Watson Defendants fail to "specifically and factually" support their claims of privilege in this log, a consequence of which is a waiver of privilege.  *See*

*Byrnes*, 111 F.R.D. at 71.  This is particularly true for entries referring to communications post-dating April 1, 2020.  Many, if not most, of these entries are deficient because Amazon is unable to determine whether any attorney advice was rendered at all, much less whether the communication may fall within the scope of the these documents are properly subject to assertions of privilege.  *See id.*; *see also* Fed. R. Civ. P. 26(b)(5); *Clark v. Trans Union, LLC*, 2017 WL 11504623, at *8–9 (E.D. Va. Mar. 1, 2017) ("[A]n adequate 'privilege log' should contain . . . a brief description or summary of the contents of the document.").[4]  The Watson Defendants' continued failure to address these deficiency risks even broader waiver of privilege as to the documents postdating April 1, 2020.  *Byrnes*, 111 F.R.D. at 71; *see also, e.g.*, *Rambus*, 220 F.R.D. at 277; *Cappetta v. GC Servs. Ltd. P'ship*, 2008 WL 5377934, at *4 (E.D. Va. Dec. 24, 2008) ("Improper assertion of a privilege may result in a waiver of that privilege.").  The Watson Defendants must produce a more detailed privilege log to allow Amazon to assess the privilege claims that actually remain and determine what further discovery may be necessary.[5]

## II.     THE WATSON DEFENDANTS HAVE WAIVED PRIVILEGE BY ASSERTING AN ADVICE OF COUNSEL DEFENSE.

There can be no dispute that the Watson Defendants have asserted an advice of counsel defense and thus effectuated a waiver of attorney-client privilege.  "The assertion of an advice of counsel defense has been described as a quintessential example of an implied waiver of the

---

[4] For example, a number of entries simply describe the communication as an "[e]mail exchange with counsel re VA deals" without more information that would allow Amazon to confirm with certainty their relationship to the advice of counsel defense.  "VA deals" could certainly refer to the fraudulent deals that were tainted by kickbacks pursuant to the Watson Defendants' agreement with the Villanova Trust, on which they apparently consulted with Mr. Kaufmann.  *See, e.g.*, Dkt. 286-11 at line 4056 (log entry for WDC0846032).  Other entries include explanations such as "email exchange with counsel re sterling."  *Id.* at line 5198 (log entry for WDC0863335).

[5] These deficiencies are especially egregious given Amazon's prior discussions with the Watson Defendants about the deficiencies in this exact privilege log.  *See, e.g.* Dkt. 284 (noting that the Watson Defendants promised to reexamine insufficient entries on their log); *see also* Dkt. 303.

privilege." *Williams v. Big Picture Loans, LLC*, 2019 WL 1983048, at *8 (E.D. Va. May 3, 2019) (citation omitted).  And in a supplement to their answer to Amazon's Third Amended Complaint, the Watson Defendants stated, in no uncertain terms, that Amazon's claims were "barred" "because of advice of counsel." Dkt. 843 at 63.  That assertion operated as a privilege waiver.  *LifeNet, Inc. v. Musculoskeletal Transplant Foundation, Inc.,* 490 F. Supp. 2d 681, 685 (E.D. Va. 2007).

Although the Watson Defendants have not clearly defined the outer boundaries of the attorney advice in question, the extent to which they have, or have not, explained the details of the defense is of no moment.  "Once the defendant has relied (*even in small part*) on privileged communications to make its case, fairness requires that the privilege be put aside in order for the plaintiff to test the defendant's contentions." *Big Picture Loans, LLC*, 2019 WL 1983048, at *10 (emphasis added) (citation omitted).  The scope of the waiver is not limited to the particular communications on which the Watson Defendants intend to rely.  Rather, the scope of the waiver "must of necessity" sweep broadly, *Teal Bay Alls., Inc.*, 2014 WL 1630211, at *2 (citation omitted), and the Watson Defendants must produce "all other communications relating to *the same subject matter*" as the advice they have placed in issue.  *E.I. Dupont de Nemours & Co. v. Kolon Indus., Inc.*, 269 F.R.D. 600, 605 (E.D. Va. 2010) (emphasis added) (quoting *Jones*, 696 F.2d at 1072).

Here, the subject matter of the Watson Defendants' defense extends to all documents and communications relating to the legal advice they received regarding the fraudulent kickbacks at issue in this case.  Notwithstanding the deficiencies in the Watson Defendants' privilege log, a fair reading of the log makes all but clear that the waiver extends to documents that the Watson Defendants are continuing to withhold, including those that Amazon identified.  Exs. 5, 6.  The relevant entries are vague, but suffice to show that the communications were with Mr. Kaufmann and his colleagues and that they related to the Amazon lease transactions that were tainted by kickbacks.  *See, e.g.*, Dkt. 286-11 at line 5173 (log entry for WDC0861954, with subject line referring

11

to the Quail Ridge transaction between Amazon and Northstar); *id.* at line 4101 (log entry for WDC0848342, with subject line referring to IPI, Northstar's then-partner on the Amazon deals). And even if these three particular documents are not certainly related to the same subject matter as the communications over which privilege has been waived, Amazon can have no confidence based on the parties' conferrals that either the Watson Defendants or the Brownstein firm are co-operating in good faith with their obligations to produce responsive documents that have become discoverable. Not a single such document has been produced since the waiver, nor have the Watson Defendants or Brownstein provided clear answers as to what responsive and unproduced documents, if any, even exist. Exs. 5, 6.

These documents and any others concerning Amazon deals relate to the same subject matter as the advice in issue because as Ms. Hogan and Mr. Kaufmann's interrogatory responses confirm, the defense relies on the advice they rendered as to both the "White Peaks Settlement" *and* the "structure" and "proposed renegotiation" of the Villanova Trust agreement. Ex. 3 at 13–14. And as Defendant Casey Kirschner has admitted, the Villanova Trust was the linchpin of the Defendants' kickback scheme. In his own words, the fraudulent "kickbacks" were executed by "Brian Watson of Northstar pa[ying] the Villanova Trust," which then "transferred" "the funds" to Defendants Kirschner and Nelson. Dkt. 978-1. The "subject matter" of any advice that the Watson Defendants received related to the structure of the Villanova Trust agreement therefore necessarily extends to the Amazon lease transactions that were tainted by kickbacks paid pursuant to that agreement. *See Med. Staffing of Am.*, 2020 WL 1811344, at *4.

Moreover, contemporaneous documentary evidence demonstrates that the issues relating to the broader kickback scheme were inextricably intertwined with the White Peaks settlement negotiations, such that advice on the latter necessarily would have encompassed the former. For example, ███████████████████████████████████████████████████████



Mr. Kaufmann, too, confirmed that he asked Brian Watson about the allegations and that Mr. Watson denied them—such that the advice Mr. Kaufmann provided was necessarily based in part on his understanding of the allegations.[6]  Ex. 3 at 24-25.

Amazon and this Court cannot assess the sufficiency of the Watson Defendants' advice of counsel defense without access to all of the legal advice they received regarding Northstar's transactions with Amazon, including any advice they received relating to their kickback payments to Nelson and Kirschner.  The legal advice rendered on these topics is plainly relevant to the structuring and renegotiation of the Villanova Trust agreement, since the Villanova Trust was the primary vehicle for executing the kickback payments.  Dkt. 978-1.  And it is also relevant to the White Peaks settlement negotiations, since allegations regarding the broader kickback scheme permeated those negotiations.  Exs. 2, 9.  To cabin the Watson Defendants' waiver of privilege to technical matters relating to the papering of the White Peaks settlement and reformed Villanova Trust agreement would allow the defense to be (improperly) used as "both a sword and a shield."

---

[6] Mr. Kaufmann also admitted in his interrogatory response that he reviewed one of the Amazon lease agreements at issue in this case in connection with the advice he provided.  Ex. 3 at 15–16. Amazon accordingly is entitled to discover other advice Mr. Kaufmann provided that may have been informed by his review.  *See Med. Staffing of Am.*, 2020 WL 1811344, at *4.

*Teal Bay Alls., Inc.*, 2014 WL 1630211, at *2 (citation omitted)

To the extent that the Watson Defendants argue that the scope of their advice of counsel defense is more narrow, this Court should still err on the side of disclosure.  This Court has recognized "inherent risk in permitting the party asserting a defense of its reliance on advice of counsel to define the parameters of the waiver of the attorney-client privilege as to that advice."  *Med. Staffing of Am., LLC*, 2020 WL 1811344, at *4 (quoting *Glenmede Tr. Co. v. Thompson*, 56 F.3d 476, 486 (3d Cir. 1995)).  As such, the party asserting privilege "should not be permitted to define selectively the subject matter of the advice of counsel on which it relied in order to limit the scope of the waiver of the attorney-client privilege and therefore the scope of discovery."  *Id.*  "Were the law otherwise, the client could selectively disclose fragments helpful to its cause, entomb other (unhelpful) fragments, and in that way kidnap the truth-seeking process."  *United States ex rel. Lutz v. Berkeley Heartlab, Inc.*, 2017 WL 1282012, at *3 (D.S.C. Apr. 5, 2017) (citation omitted).  Only *full* disclosure of the relevant documents and communications will allow Amazon and the Court to sufficiently "test" the defense.  *Med. Staffing of Am., LLC*, 2020 WL 1811344, at *4.

Additionally, the Watson Defendants' waiver is not limited to just the attorneys they identify.  "Even if a defendant *claims* to have relied on the legal advice of one attorney, *any* relevant advice he received from *other attorneys* is also discoverable because it bears on the issue of their reasonable reliance."  *Berkeley Heartlab, Inc.*, 2017 WL 1282012, at *3 (emphases added) (citation omitted).  Accordingly, to the extent that the Watson Defendants received legal advice on these issues from other attorneys, they must disclose those communications as well.

## III.    WATSON DEFENDANTS' SELECTIVE DISCLOSURE OF PRIVILEGED INFORMATION LIKEWISE EFFECTS SUBJECT MATTER WAIVER

The Watson Defendants have not only waived privilege by asserting an advice of counsel defense; they *also* waived privilege by selectively disclosing privileged communications in their deposition to support their case.  It is well-established that "[s]elective disclosure" of privileged

communications "for tactical purposes waives the privilege." *Jones*, 696 F.2d at 1072; *see also United States v. (Under Seal)*, 852 F.2d 566 (4th Cir. 1988) (holding that "a selective disclosure for tactical purposes" in a bankruptcy proceeding "waive[d] the privilege as to all communications between the attorney and client relating to his bankruptcy proceedings").  And as discussed above, *supra* at 4, at his deposition, Mr. Watson (repeatedly) testified about the legal advice he received from his attorneys at Brownstein regarding the Amazon transactions at issue in this case.  *See, e.g.*, Ex. 4 at 50:7–51:2; *see also id.* at 47:13–48:17, 51:3–51:7, 67:1–17, 297:21–304:23.

This is textbook selective disclosure.  *Cf. ePlus Inc. v. Lawson Software, Inc.*, 280 F.R.D. 247, 256 (E.D. Va. 2012) (holding that a party "waived the attorney-client privilege" "because it has allowed extensive, detailed questions" at a deposition "on that subject").  Mr. Watson's repeated references to the privileged advice he received from his attorneys is an obvious, tactical attempt to manufacture a record that he entered into Villanova Trust agreement—the linchpin of Defendants' kickback scheme—in good faith.  But if Mr. Watson wants to make this point (and he already has), then the *full content* of this legal advice is "fair game." *Tuomey*, 792 F.3d at 391.  In deposition, as with respect to his advice of counsel defense, Mr. Watson cannot use privilege as "both a sword and a shield." *Teal Bay Alls., Inc.*, 2014 WL 1630211, at *2.  This strategic disclosure of privileged communications independently justifies a finding of subject matter waiver and an order granting the relief Amazon seeks*. See id.*

## CONCLUSION

Amazon respectfully requests that this Court grant this Motion and order the Watson Defendants to produce within 11 days:  (i) all documents and communications within their possession, custody or control related to the subject matter of their advice of counsel defense; *and* (ii) a revised

privilege log with descriptions sufficient to assess the relationship between the withheld documents and the subject matter of the Watson Defendants' waiver.

Dated:  September 23, 2022

Veronica S. Moyé (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
Telephone:  (214) 698-3100
Facsimile:  (214) 571-2900
vmoye@gibsondunn.com

Respectfully submitted,

*/s/ Michael R. Dziuban*
Elizabeth P. Papez (*pro hac vice*)
Patrick F. Stokes (*pro hac vice*)
Jason J. Mendro (*pro hac vice*)
Claudia M. Barrett (*pro hac vice*)
David W. Casazza (*pro hac vice*)
Amanda Sterling (*pro hac vice*)
Michael R. Dziuban (Va. State Bar No. 89136)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
Telephone:  (202) 955-8500
Facsimile:  (202) 467-0539
epapez@gibsondunn.com
pstokes@gibsondunn.com
jmendro@gibsondunn.com
cbarrett@gibsondunn.com
dcasazza@gibsondunn.com
asterling@gibsondunn.com
mdziuban@gibsondunn.com

*Counsel for Plaintiffs Amazon.com, Inc. and Amazon Data Services, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on September 23, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system.  I will then send the document and a notification of such filing (NEF) to the following parties via U.S. mail to their last-known address and by email, where noted:

CTBSRM, Inc.
6870 W 52nd Ave., Ste. 203
Arvada, CO 80002

2010 Irrevocable Trust
6870 W 52nd Ave., Ste. 203
Arvada, CO 80002

Demetrius Von Lacey
2845 Des Moines Dr.
Fort Collins, CO 80525

Sigma Regenerative Solutions, LLC
6870 W 52nd Ave., Ste. 203
Arvada, CO 80002

*s/ Michael R. Dziuban*
Michael R. Dziuban
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
Telephone:  (202) 955-8500
Facsimile:  (202) 467-0539
mdziuban@gibsondunn.com

*Counsel for Plaintiffs Amazon.com, Inc. and Amazon Data Services, Inc.*

17