IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| AMAZON.COM, INC. and AMAZON DATA SERVICES, INC., <br><br> Plaintiffs, <br><br> v. <br><br> WDC HOLDINGS LLC dba NORTHSTAR COMMERCIAL PARTNERS, *et al.*, <br><br> Defendants. <br> ---  <br> 800 HOYT LLC, <br><br>   Intervening Interpleader Plaintiff / Intervening Interpleader Counter-Defendant, <br><br> v. <br><br> BRIAN WATSON; WDC HOLDINGS, LLC; BW HOLDINGS, LLC, <br><br>   Interpleader Defendants, and <br><br> AMAZON.COM, INC., and AMAZON DATA SERVICES, INC. <br><br>   Interpleader Defendants / Interpleader Counter-Plaintiffs. | CASE NO. 1:20-CV-484-RDA-IDD |

**REPLY OF RECEIVER TO WATSON DEFENDANTS' RESPONSE IN OPPOSITION
TO RECEIVER'S MOTION FOR ENTRY OF ORDER APPROVING SALE
OF INTEREST IN 1221 BROADWAY OFFICE CONDOMINIUM**

Mark A. Roberts (the "Receiver"), as receiver of WDC Holdings LLC dba Northstar Commercial Partners LLC ("WDC"), R. Brian Watson ("Mr. Watson" and collectively with WDC, the "Watson Defendants"), and their respective assets, appointed pursuant to this Court's *Order Appointing Receiver and Ordering Turnover of Property to the Receiver* [Dkt. 433] (the "Receivership Order"), files this reply to the Watson Defendants' response in opposition [Dkt.

1066] to the Receiver's motion [Dkt. 1034] (the "Motion") for entry of an order approving the Receiver's sale of a five percent (5%) tenant-in-common interest (the "Interest") in an office condominium located at 1221 Broadway, Denver, Colorado (the "Property"), and respectfully states as follows:

## **REPLY**

The Watson Defendants oppose the sale of the Interest in the Property, but in doing so, fail to acknowledge (much less offer an alternative solution to) the fundamental issues that are driving the sale. Namely, the loan on the Property is in default, and the value of the Interest may be reduced to zero if the lender exercises its remedies with respect to the Property. Moreover, other than the proposed purchaser—Ever Beauty, the existing 95% tenant-in-common owner of the Property—there is no ready market of potential buyers for a 5% tenant-in-common interest in an office condominium that is subject to a potential foreclosure. Further, Mr. Watson's personal guaranty in favor of the lender could give rise to substantial liability. Given these circumstances, the proposed transaction presents the best (and perhaps the only viable) option available.

Doing nothing, as the Watson Defendants seem to urge, is not a practicable solution and will only result in deterioration in (or destruction of) the value of the Interest. The transaction provides substantial value and is the product of the sound exercise of the Receiver's business judgment within the scope of his duties under the Receivership Order. This transaction also will cause Mr. Watson's guaranty liability to be released at closing. The Court should approve the sale.

Mr. Watson complains that—in 2018, when the Interest in the Property was acquired—Mr. Watson's own entity, WDC, projected $5.7 million in value from the Interest. Dkt 1066, p. 4. But this self-interested (and wholly unsubstantiated) valuation from several years ago cannot be compared directly to the current proposed purchase price of the Interest as a means of evaluating

2

the reasonableness of the transaction, as Mr. Watson's claimed value was premised on a long-term appreciation strategy that is not tenable under current circumstances. Notably, Mr. Watson's claimed valuation amount from 2018 does not reflect (i) the substantial fees already earned by Mr. Watson at closing and during the four-year period thereafter, (ii) the deterioration in value across the market for office real estate resulting from the COVID-19 pandemic and remote work trends that have depressed demand, (iii) recent increases in interest rates that adversely affect commercial real estate values, or (iv) the current circumstances of the Property itself, including the loan default. Mr. Watson's prior inflated value cannot plausibly be compared with the current purchase price on an apples-to-apples basis.

As set out in the Motion, the proposed transaction is the result of substantial arm's-length negotiations between the Receiver and Ever Beauty. The purchase price was calculated based on a recent appraisal of the Property, less the substantial amount of secured debt and projected costs of a hypothetical sale of the Property, to determine the reasonable value of a 5% interest in the equity of the Property in the event the Property were to be sold. Dkt. 1034 ¶ 10. The Receiver, exercising his professional judgment, concluded that the final terms of the proposed transaction are reasonable and fair. The Watson Defendants provide no basis to disregard the Receiver's business judgment, especially regarding the current value of the Property.

The Watson Defendants also assert that the Motion should be denied because certain management rights associated with the Interest generate certain monthly fees, which will no longer be collected after the sale. As indicated in the Motion, however, approximately $50,000 of the purchase price is allocable to the roughly $8,000/month management fee referenced by the Watson Defendants in their Response. Dkt. 1034 ¶ 11. The Receiver is thus obtaining appropriate value in exchange for the management fees, especially given that, if the lender elects to exercise its

remedies as to the Property, the ability to collect management fees would plainly cease. Likewise, upon any sale of the Interest—whether to Ever Beauty or some other theoretical buyer—these management rights would be terminable and thus management fees would cease. For these reasons, the Receiver concluded that $50,000, reflecting approximately six months of future management fees, constitutes a reasonable value allocation for the resolution of these management rights, particularly given the broader terms of the transaction.

Finally, the Watson Defendants assert that the proposed transaction should be denied because the Receiver proposes to use proceeds of the sale for reasons other than solely to fund the Court's injunction entered against the Watson Defendants. Dkt 1066, p. 3. The Watson Defendants are wrong on this point as well.

As an initial matter, the language in Paragraph 5(i) the Receivership Order cited by the Watson Defendants does not have the limiting effect the Watson Defendants assert. Paragraph 5(i) contemplates that the Receiver may sell Assets "to generate cash available to fund the escrow account." That is exactly what the Receiver is doing. The express purpose of appointing the Receiver was to coerce the Watson Defendants' compliance with the Court's Injunction, while also preventing further irreparable harm to Plaintiffs. Dkt. 433 ¶ C (citing contempt order). Accordingly, all available cash—whether from the sale of assets, collection of accounts, or ordinary business receipts—is always intended to fund the escrow account. The Receivership Order, however, does not require the Receiver to post every dollar received from the sale of an Asset to the escrow account, even if other financial obligations of the receivership are outstanding. Instead, the language in Paragraph 5(i) contemplates—consistent with the broader purpose of the Receivership Order—that "*available*" cash will be posted to satisfy the injunction. Thus, contrary to the Watson Defendants' suggestion, the reference to funding the escrow with "available" cash

is not a limitation on the Receiver's ability to sell an Asset, but a clarification that the Receiver is entitled to fund the escrow with such proceeds, if constituting available cash. Selling the Interest here to generate cash to fulfill the purpose of the Receivership Order is wholly consistent with this language.

Notably, in November 2021 when the Receiver was appointed, Mr. Watson's bank account held just $856, even though Mr. Watson personally spent approximately $3 million over the prior 18 months while the injunction was pending. Dkt. 702 ¶ 15. The Watson Defendants' business accounts held only slightly more, totaling $10,602 as of the Receiver's appointment. *Id.* at Ex C, p. 4. Despite the absence of any meaningful liquid assets, the Receivership Order imposes various financial obligations on the Receiver, including (i) payment of compensation and benefits for the remaining employee of WDC, (ii) funding Mr. Watson's substantial monthly personal budget, and (iii) payment of fees for the Receiver and his professionals. *See* Dkt. 898 Ex A (Receiver's cash flow statement showing quarterly receipts and disbursements). Cash from the sale of the Interest is critical to the Receiver's ability to fund the ongoing expenses of the receivership, including funding Mr. Watson's budget and other expenses.

The seller of the Interest in the proposed transaction is NCP 1221 Broadway, LLC ("NCP 1221 Broadway"). While the Receiver indirectly exercises management rights with respect to NCP 1221 Broadway, this entity is not itself subject to receivership.[1] Dkt. 433 ¶ 8 (vesting

---

[1] The Watson Defendants are the only parties that are subject to receivership under the Receivership Order. Dkt. 433 ¶ 1. The definition of "Assets" in the Receivership Order is thus necessarily limited to the Watson Defendants' interests in their assets, which include Mr. Watson's indirect ownership interests in NCP 1221 Broadway. *Id.* ¶ 2. Pursuant to Paragraph 8 of the Receivership Order, the Receiver is vested with all of the Watson Defendants' rights and powers to control these indirect interests, but the Receivership Order does not transfer title in assets owned by the affiliated entities such as NCP 1221 Broadway to the Watson Defendants. For that reason, the Interest in the Property owned by NCP 1221 Broadway may not constitute an "Asset" under the Receivership Order at all, as the Watson Defendants do not possess any direct rights of ownership of the Interest. Instead, the Watson Defendants' "Asset" relating to the Interest is the management rights associated with NCP 1221 Broadway and the indirect right to any distribution from this entity in accordance with the entity's governance documents. Nevertheless, in an abundance of

5

Receiver with all of the Watson Defendants rights and power to act on behalf of any other entity). NCP 1221 Broadway and other entities directly or indirectly controlled by the Receiver must comply with applicable corporate law, including distributing available cash to their members in accordance with their governing organizational documents. Here, Mr. Watson's ex-wife, Patricia Watson, indirectly owns 50% of NCP 1221 Broadway and is entitled to certain proceeds of the sale, as described in the Motion. Likewise, the Receiver is obligated to fund Mr. Watson's budget and other obligations, including professional fees. The Receivership Order cannot be read to require the Receiver to violate the governing corporate documents of entities under his control or to leave other valid obligations of the receivership unsatisfied as a condition of selling an asset. Indeed, the beneficiary of the Court's injunction—the Amazon plaintiffs—have expressed their support for the proposed sale of the Interest. Thus, the Court should overrule the objection raised by the Watson Defendants and grant the Motion.

---

caution, particularly given the objection raised by the Watson Defendants to the proposed transaction, the Receiver seeks approval from the Court to consummate the transaction.

WHEREFORE, the Receiver respectfully requests the Court grant the Motion and award the Receiver such other and further relief as the Court deems just and proper.

Dated: October 13, 2022						Respectfully submitted,

                                                          /s/   *Aaron G. McCollough*
Aaron G. McCollough (VSB 72146)
McGuireWoods LLP
77 West Wacker Drive, Suite 4100
Chicago, IL 60601-1818
Tel.: (312) 849-8256
Fax: (312) 698-4522
amccollough@mcguirewoods.com

-and-

Joseph S. Sheerin (VSB 47400)
McGuireWoods LLP
800 East Canal Street
Richmond, VA 23219-3916
Tel.: (804) 775-1135
Fax: (804) 698-2076
jsheerin@mcguirewoods.com

*Attorneys for the Receiver*

**Certificate of Service**

      I HEREBY CERTIFY that, on October 13, 2022, I caused the REPLY OF RECEIVER TO WATSON DEFENDANTS' RESPONSE TO MOTION FOR ENTRY OF ORDER APPROVING SALE OF INTEREST IN 1221 BROADWAY OFFICE CONDOMINIUM to be electronically filed and served using the CM/ECF System, which will transmit a Notice of Electronic Filing to counsel of record.

                                                  /s/ *Aaron G. McCollough*
                                                  Aaron G. McCollough