**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| AMAZON.COM, INC. and AMAZON DATA SERVICES, INC., <br><br>       Plaintiffs, <br><br>       v. <br><br> WDC HOLDINGS LLC dba NORTHSTAR COMMERCIAL PARTNERS et al., <br><br>       Defendants. | CASE NO. 1:20-CV-484-RDA-IDD |
| 800 HOYT LLC, <br><br>       Intervening Interpleader Plaintiff, <br>       Intervening Interpleader Counter-Defendant, <br><br>       v. <br><br> BRIAN WATSON, WDC HOLDINGS, LLC, BW HOLDINGS, LLC, <br><br>       Interpleader Defendants, <br><br> AMAZON.COM, INC., and AMAZON DATA SERVICES, INC., <br><br>       Interpleader Defendants, <br>       Interpleader Counter-Plaintiffs. | |

**RECEIVER'S FOURTH QUARTERLY REPORT**
**(QUARTER ENDING SEPTEMBER 30, 2022)**

Mark A. Roberts (the "Receiver"), as receiver of WDC Holdings LLC dba Northstar Commercial Partners LLC ("WDC"), R. Brian Watson ("Mr. Watson" and together with WDC, "Defendants"), and Defendants' respective assets, by and through undersigned counsel, hereby submits this fourth quarterly report (the "Fourth Quarterly Report") covering the period from July 1, 2022 through September 30, 2022 (the "Fourth Reporting Period").

## I. BACKGROUND

1.       On October 27, 2021, the Court entered its Order Granting Plaintiffs' Motion to Hold Defendants Brian Watson & WDC Holdings in Civil Contempt [Dkt. 413] (the "Contempt Order"). The Contempt Order provided that the Court would separately enter an order appointing a receiver pursuant to 28 U.S.C. § 754 and Fed. R. Civ. P. 66, with the full power of an equity receiver and at Defendants' expense, for the purpose of preventing further irreparable harm to Plaintiffs and coercing Defendants' compliance with the Court's Injunction. Dkt. 413 ¶ 2.

2.       On November 23, 2021, the Court entered its Order Appointing Receiver and Ordering Turnover of Property to the Receiver [Dkt. 433] (the "Receivership Order"), appointing Mark A. Roberts as Receiver of Defendants and the Assets.[1]

3.       The Receivership Order directs the Receiver to provide quarterly reports to Defendants, Plaintiffs, and the Court detailing (i) the Receiver's disbursements for costs incidental to the receivership activities, (ii) any payments to or for the expense of Defendants, and (iii) the Receiver's activities and the financial and operational status of Defendants. *See* Receivership Order ¶ 5(h). The Receivership Order further directs the Receiver to maintain accurate accounting and other records of his activities in connection with the receivership and file reports on a quarterly basis detailing the results from the Receiver's collections, operations, and distributions of the Assets. *Id.* ¶ 16.

4.       On January 18, 2022, the Receiver filed the Receiver's First Quarterly Report (Quarter Ending December 31, 2021) [Dkt. 495] (the "Receiver's First Report"). In the Receiver's First Report, the Receiver provided the Court and all parties with an update regarding his activity

---

[1] Capitalized terms used but not defined herein shall have the meanings assigned to them in the Receivership Order.

from the date of his appointment on November 23, 2021 through December 31, 2021 (the "Initial Reporting Period").

5.      On April 27, 2022, the Receiver filed the Receiver's Second Quarterly Report (Quarter Ending March 31, 2022) [Dkt. 702] (the "Receiver's Second Report"). In the Receiver's Second Report, the Receiver provided the Court and all parties with an update regarding his activity from January 1, 2022 through March 31, 2022 (the "Second Reporting Period").

6.      On July 29, 2022, the Receiver filed the Receiver's Third Quarterly Report (Quarter Ending June 30, 2022) [Dkt. 898] (the "Receiver's Third Report"). In the Receiver's Third Report, the Receiver provided the Court and all parties with an update regarding his activity from April 1, 2022 through June 30, 2022 (the "Third Reporting Period", and with the Initial Reporting Period and the Second Reporting Period, the "Prior Reporting Periods").

## II.  GENERAL OVERVIEW

7.      The Receiver's activity during the Fourth Reporting Period reflected a continued emphasis on monetizing existing Assets while limiting ongoing expenses, all with the ultimate goal of seeking Defendants' compliance with the Court's Injunction in accordance with the Receivership Order.  However, Asset monetization efforts have been complicated by current adverse market conditions and rising interest rates.  At this time, there are insufficient funds to meet the requirements of the Injunction.  Defendants' operations are complex, involving hundreds of different legal entities (many of which are now inactive or no longer affiliated with Defendants), numerous ongoing litigations and disputes, and various active real estate investment assets that typically involve separate capital, management, and ownership structures.  Accordingly, the Receiver's activity during the Fourth Reporting Period also involved managing, preserving, and maximizing the value of the current Assets.

### III.   RECEIVER'S ASSESSMENT OF DEFENDANTS' FINANCIAL CONDITION AND OPERATIONS

#### A.   Description of Near-Term Financial Situation

8.      As of today, Defendants have insufficient cash or other liquid assets to begin satisfying the Court's Injunction while also paying the costs of the receivership and the essential personal and business expenses of Defendants.  During the Fourth Reporting Period, the Receiver consummated certain transactions and pursued collections in an effort to provide immediate liquidity, but cash generated during the Fourth Reporting Period remains substantially below levels needed to fund Defendants' various ongoing liabilities while also satisfying the Injunction.

9.      Attached as Exhibit A is a chart reflecting the results of cash receipts and disbursements during the Fourth Reporting Period for Defendants and their wholly owned entities on a consolidated basis.[2]  Total receipts for the period were approximately $114,225, and total disbursements were approximately $1,135,000, for net cash flow for Defendants of approximately negative $1,020,775.  Receipts include fees earned for providing property management or other services. As reflected in Exhibit A, a substantial majority of disbursements by the Receiver during the Fourth Reporting Period represent "pass-through" payment of proceeds from the Debtors' D&O insurance policy to professionals representing Defendants in connection with this litigation, as well as related governmental investigations, in accordance with this Court's Order entered January 21, 2022, granting Defendants' Motion for Approval of Receivership Disbursement to Cover Legal Fees [Dkt. 502].  Disbursements in the Fourth Reporting Period also included partial payments for the costs of the Receiver and his advisors, funding of the monthly budget for Mr.

---

[2] The chart on Exhibit A does not reflect receipts and disbursements with respect to special purpose entities that own real estate assets where the Receiver acts as manager for the entity or property, as those cash activities are specific to the properties and do not reflect Defendants' financial condition.

Watson's personal expenses, and certain operating expenses of the businesses, such as payroll and accounting. As of September 30, 2022, the total cash balance for Defendants' wholly owned bank accounts managed by the Receiver was $339,153.

10.    In addition to Defendants' obligations under the Injunction, Defendants have substantial obligations owing to other third parties incurred before entry of the Receivership Order, including federal and state taxes, personal and business loans (certain of which are secured by collateral, including the C Lazy U Ranch property), and office lease termination damages or other routine accounts payable, as well as outstanding debt guarantees that Mr. Watson provided personally with respect to loan obligations of certain real estate investment entities, some of which have events of default implicated by the Receiver's appointment.[3]  These liabilities total tens of millions of dollars, including contingent and unmatured amounts.  These creditors are prohibited from pursuing collection actions against Defendants by operation of the stay in Paragraph 11 of the Receivership Order.

11.    During the Fourth Reporting Period, the Receiver completed and caused to be filed numerous federal and state 2021 corporate tax returns for entities controlled by Mr. Watson.  In addition, shortly after the conclusion of the Fourth Reporting Period, the Receiver caused to be filed Mr. Watson's personal federal and state 2021 tax returns.  These returns were prepared and filed timely (after extensions) based on the information available to the Receiver and Mr. Watson's accountants.  Based on these filed returns, the Watson Defendants' 2021 federal and state tax liability was determined to be approximately $489,062.  Considered together with Mr. Watson's outstanding 2020 tax obligations, Mr. Watson's total outstanding tax liabilities presently exceed

---

[3] One guarantor has commenced a collection action against Mr. Watson in the U.S. District Court for the Central District of California in violation of the stay in Paragraph 11 of the Receivership Order.

$1.3 million.

12.     During the Fourth Reporting Period, the U.S. Securities and Exchange Commission filed a complaint against the Watson Defendants, commencing Case No. 1:22-cv-02147-RMR-SKC in the U.S. District Court of Colorado, asserting five counts of securities fraud, and seeking injunctive relief, disgorgement, civil penalties, and other remedies.  This action remains pending.

### B.     Management of Mr. Watson's Personal Expense Budget

13.     Under the Receivership Order, the Receiver may "authorize and approve, in his sole discretion, a monthly budget of $10,000 for [Mr.] Watson's personal expenses, subject to the Receiver's authority to approve, in his sole discretion, advance written requests for specific personal expenditures in excess of this amount up to a monthly total of $50,000."  Receivership Order ¶ 5(c).  Any monthly expenditure for Mr. Watson's personal expenses in excess of $50,000 requires Court approval.  *Id*.

14.     Based on the Receiver's review of Defendants' financial activity and available assets, the Receiver developed a $12,000/month personal expense allocation for Mr. Watson (the "Budget").  In addition to the Budget amounts, which have been funded on a monthly basis, the Receiver has separately funded various other personal expenses upon request during the Fourth Reporting Period, including travel for Mr. Watson in connection with depositions and other litigation activities, health insurance benefits for Mr. Watson and his family, education expenses related to Mr. Watson's children, and other specific expenses that the Receiver determined would preserve Defendants' assets or otherwise further the purposes of the Receivership Order.  The Receiver, however, has rejected numerous requests from Mr. Watson for additional funding of matters the Receiver believes are not consistent with the Receivership Order.  Mr. Watson has routinely issued direct threats of litigation against the Receiver in an effort to persuade the Receiver

to pay additional personal items, including pre-Receivership debts and other expenses inconsistent with the Receivership Order. The Receiver will continue working with Mr. Watson on these issues and attempt to develop solutions where appropriate.

### C.      Description of Certain Transactions

15.     On September 23, 2022, intervenor Wilmington Trust, National Association, as Trustee for the Registered Holders of the Bancorp Commercial Mortgage 2019-CRE6 Trust, Commercial Mortgage Pass-Through Certificates (the "Sugar Creek Lender"), filed a motion [Dkt. 1024] and supporting memorandum of law [Dkt. 1025] (collectively, the "Lender Motion"), seeking to modify the Receivership Order to permit the Lender to exercise various remedies in connection with its loan secured by a suburban Houston office building located at 77 Sugar Creek Boulevard, Sugar Land, Texas.[4]   On October 7, 2022, the Receiver filed a response to the Lender Motion [Dkt. 1068], and the Sugar Creek Lender filed a reply in support of the Lender Motion [Dkt. 1073] on October 13, 2022.  The Lender Motion remains pending and discussions remain ongoing.  The SEC's complaint against the Defendants asserts that certain representations by Mr. Watson to potential outside investors in Sugar Creek Owner were false, misleading, and/or fraudulent.

16.     Also on September 23, 2022, the Receiver filed a motion [Dkt. 1034] (the "1221 Broadway Motion") for entry of an order approving the Receiver's sale of a five percent (5%) tenant-in-common interest (the "1221 Broadway Interest") in an office condominium located at 1221 Broadway, Denver, Colorado (the "1221 Broadway Property").  On October 7, 2022, the

---

[4] The owner of this property, 77 Sugar Creek DE, LLC ("Sugar Creek Owner"), is identified on Exhibit A to the Receivership Order.  The Receiver, acting through an entity controlled by Mr. Watson (and thus subject to the Receivership Order), serves as manager for 77 Sugar Creek, LLC, which is the sole owner and managing member of Sugar Creek Owner.

Watson Defendants filed their response in opposition to the 1221 Broadway Motion [Dkt. 1066], and the Receiver filed a reply in support of the 1221 Broadway Motion [Dkt. 1074] on October 13, 2022.  The Broadway Motion also remains pending.

### D.      Status of Escrowed Proceeds from Sale of Residence

17.      In the Receiver's First Report, the Receiver described Mr. Watson's attempt to consummate a sale of his primary residence (owned by his personal revocable trust) in December 2021 for $8.5 million without the approval of the Receiver.  As noted in the Receiver's First Report, in October 2021—while the Injunction was pending and just days before the Court's entry of the Contempt Order—Mr. Watson voluntarily executed deeds of trust to record liens on this residence in favor of certain beneficiaries, including a $500,000 lien in favor of Mr. Watson's legal counsel in this action, Brownstein Hyatt Farber Schreck, LLP ("Brownstein"), and a $1,350,949.62 lien in favor of FirsTier Bank ("FirsTier"), a lender to Mr. Watson and his entities, without disclosing such grants to the Court or the parties.

18.      After the Receiver obtained an emergency order from this Court confirming the Receiver's authority to control the disposition of the residence, the Receiver negotiated and executed escrow agreements with the second, third, and fourth lienholders to provide the Receiver sixty (60) days after closing of the sale to evaluate the validity and enforceability of the asserted liens.  The Receiver concluded that he had sufficient grounds to challenge the validity and/or enforceability of the liens asserted by Brownstein and FirsTier.  On September 13, 2022, the Receiver entered into an agreement with Brownstein generally providing for the release and disbursement of the escrowed proceeds of the Brownstein Lien as follows: $125,000.00 to Brownstein, and the remainder to the Receiver, with the Receiver depositing $16,691 into Mr. Watson's controlled bank account to be used by Mr. Watson to fund additional personal expenses.

19.   The amounts attributable to FirsTier's lien remain pending in escrow.  The Receiver has requested certain information from FirsTier in accordance with the Receivership Order to evaluate potential causes of action, but FirsTier has to date failed to comply with such requests. Absent resolution, the Receiver may pursue claims to avoid the improvidently granted liens and seek other relief in accordance with the authority provided in the Receivership Order.  *See* Receivership Order ¶ 5(j)(f) (authorizing Receiver to "institute, defend, settle and/or adjust disputes and claims respecting the Assets, including any claims to avoid transfers made with the purpose or effect of diminishing Defendants' capacity to comply with the Injunction and any claims to recover amounts that were both related to the Amazon transactions and disbursed in violation of the Injunction after it was entered on June 5, 2020").

### E.   Description of Receiver's Activities

20.   The Receiver's activities during the Fourth Reporting Period include:

- Managing Defendants' bank accounts, including accounts owned by legal entities under the direct and indirect control of Defendants;

- Acting as asset manager and/or property manager for certain real estate assets managed by Defendants;

- Funding amounts to Mr. Watson's current personal bank account in accordance with the Budget, and communicating with Mr. Watson regarding requests for additional funding;

- Managing real estate assets directly controlled by the Defendants, including marketing for sale the C Lazy U Ranch property owned by Mr. Watson;

- Preparing cash flow forecasts to evaluate projected cash needs and availability;

- Evaluating proposals for the purchase of Defendants' interest in certain assets and engaging in preliminary negotiations regarding such proposals;

- Reviewing and managing various current and past due expenses and liabilities incurred by Defendants prior to the Receiver's appointment;

- Coordinating with tax professionals to complete tax documents required for Mr. Watson and certain assets managed by the Defendants;

- Responding to investor inquiries, providing an investor update and reviewing information submitted by investors;

- Working with current partners in current investments to ensure Assets and partner relationships are preserved;

- Providing notice of the Receivership Order to third parties asserting an interest in or claim against Defendants or the Assets;

- Addressing ongoing litigation involving Defendants, including seeking to stay collection actions against Defendants while preserving and pursuing potential recoveries from third parties;

- Evaluating potential claims and causes of action by Defendants against third parties that may yield recovery for the receivership;

- Continuing a review of asset dispositions by Defendants during the period between the Court's imposition of the Injunction and the appointment of the Receiver; and

- Undertaking other duties to preserve the Assets and administer the receivership, including ensuring continuing of liability insurance, debt service obligations, and evaluating professional fee obligations.

20.     The Receiver also continued to address issues during the Fourth Reporting Period arising from the unexpected death of a frequent business/investment partner of Mr. Watson who managed or co-managed certain assets in which Defendants have direct or indirect interests.   The Receiver had previously been working with this individual to maintain certain assets and resolve prior disputes and potential claims. During the Fourth Reporting Period, the Receiver worked with a representative of the individual's estate to address these issues, including executing various documents to effectuate the appointment of a replacement manager at certain entities as appropriate to ensure continuity.

## IV.  RECEIVER'S RECOMMENDATIONS

21.     The Receiver remains concerned by the administrative costs necessary to execute his duties as set forth in the Receivership Order given the value of the Assets that have been identified to date.  Through the Fourth Reporting Period, the fees and expenses incurred by the

Receiver and his professionals have been substantial given the volume of activity necessary to maintain and pursue monetization of the Assets, address disputes with Mr. Watson regarding personal expenses and other matters and complete the Receiver's historical review of financial activity during the Injunction Period.  The Receiver previously sought payment of receivership costs from the D&O insurer that is funding Defendants' defense of the litigation, but, as of the date hereof, the insurer has not agreed to pay the receivership costs under the D&O policy.

22.     The Receiver and his professionals are endeavoring to complete the substantial activity required by the Receivership Order as efficiently as possible.  During the Fourth Reporting Period, the Receiver disbursed: (i) approximately $10,000 for the fees and expenses of the Receiver and his team at Alvarez & Marsal North America, LLC, and (ii) approximately $10,000 in legal fees and expenses for legal counsel at McGuireWoods LLP.  While the Receiver's ongoing processes associated with the Assets have largely stabilized and the Receiver anticipates that monthly receivership fees and costs will continue to decline going forward, accrued but unpaid fees of the Receiver and his professionals as of the close of the Fourth Reporting Period were substantial.  Total fees and expenses accrued but unpaid as of the end of the Fourth Reporting Period (including unpaid amounts incurred in the Prior Reporting Periods) totaled approximately $1,753,205 for the Receiver and his team at Alvarez & Marsal North America, LLC (reflecting $375,408 in fees and expenses incurred during the Fourth Reporting Period), and approximately $1,122,790 in legal fees and expenses for legal counsel at McGuireWoods LLP (reflecting $328,811.97 in fees and expenses incurred during the Fourth Reporting Period).

23.     The Receiver has engaged with the Amazon plaintiffs to address the substantial fees outstanding to the Receiver and his professionals.  Further information regarding developments

that occurred after the Fourth Reporting Period on these professional fee issues will be addressed separately or in subsequent reports.

24.     The Receiver presently recommends that the receivership continue in place to allow the Receiver further opportunity to pursue value from potentially forthcoming transactions for purposes of the Receivership Order, while also managing Defendants' expenses to avoid dissipation of such assets that are subject to the Injunction.

Dated: November 1, 2022                          Respectfully submitted,

                                                  /s/  *Aaron G. McCollough*
                                                 Aaron G. McCollough (VSB 72146)
                                                 McGuireWoods LLP
                                                 77 West Wacker Drive, Suite 4100
                                                 Chicago, IL 60601-1818
                                                 Tel.: (312) 849-8256
                                                 Fax: (312) 698-4522
                                                 amccollough@mcguirewoods.com

                                                 Joseph S. Sheerin (VSB 47400)
                                                 McGuireWoods LLP
                                                 800 East Canal Street
                                                 Richmond, VA 23219-3916
                                                 Tel.: (804) 775-1135
                                                 Fax: (804) 698-2076
                                                 jsheerin@mcguirewoods.com

                                                 *Attorneys for the Receiver*

**<u>Certificate of Service</u>**

I HEREBY CERTIFY that, on November 1, 2022, I caused the RECEIVER'S FOURTH

QUARTERLY REPORT to be electronically filed and served using the CM/ECF System, which

will transmit a Notice of Electronic Filing to counsel of record.

 /s/ *Aaron G. McCollough*
Aaron G. McCollough