**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| AMAZON.COM and AMAZON DATA SERVICES, INC., <br><br> Plaintiffs, <br><br> v. <br><br> WDC HOLDINGS LLC dba NORTHSTAR COMMERCIAL PARTNERS, et al. <br><br> Defendants. <br> ———————————————— <br> 800 HOYT LLC, <br><br> Intervening Interpleader Plaintiff / Intervening Interpleader Counter - Defendant, <br><br> v. <br><br> BRIAN WATSON; WDC HOLDINGS LLC; BW HOLDINGS, LLC, <br><br> Interpleader Defendants, <br><br> and <br><br> AMAZON.COM, et al. <br><br> Interpleader Defendants / Interpleader Counter-Plaintiffs. | Civil Action No. 1:20-CV-484-RDA-IDD |

**WATSON DEFENDANTS' MOTION TO CLARIFY ORDER APPOINTING RECEIVER AND ORDERING TURNOVER OF PROPERTY TO RECEIVER**

Defendants Brian Watson ("Mr. Watson"), WDC Holdings LLC d/b/a Northstar Commercial Partners ("Northstar"), Sterling NCP FF, LLC, Manassas NCP FF, LLC, NSIPI Administrative Manager, and BW Holdings, LLC (collectively, the "Watson Defendants"),

1

respectfully move for clarification of the Order Appointing Receiver and Ordering Turnover of Property to the Receiver (the "Order").

## I. CONFERRAL

Mr. Watson and his counsel have been in ongoing communication with the Receiver and his counsel about these issues and have repeatedly discussed the need for modification, clarification, or vacation of the Receivership with Amazon's counsel, but neither party has agreed to the relief requested. The Watson Defendants anticipate that the remaining parties have no objection to the clarification relief requested in this motion.

## II. BACKGROUND

On November 24, 2021, almost one year ago, the Court entered the Order permitting the Receiver to take control of the Watson Defendants' personal and business assets. Dkt. 413; 433. The Watson Defendants have complied with the Receiver's requests and given the Receiver and his team full access to their accounts and assets. Dkt. 495 ¶ 6. Recent events, including the Court setting the trial for May 1, 2023, an additional 6 months from now, require that the Watson Defendants seek clarification from the Court regarding several important pending matters.

**A. The Receiver's appointment provoked additional demands and suits against the Watson Defendants.**

As the Watson Defendants repeatedly warned Plaintiffs, their legal counsel, and the Court, the mere appointment of the Receiver triggered a default on many investment deals managed by the Watson Defendants. The Order generated a snowball effect for the Watson Defendants, which has caused, and will continue to cause, the Watson Defendants irreparable damage regardless of the outcome of trial. The Watson Defendants, in addition to the present litigation, are now facing several lawsuits for millions of dollars related to events of default of several loans concerning properties not at issue in this case because of the Receiver's appointment. Additional demands and

2

claims have also been asserted against the Watson Defendants. For example, Northstar's prior landlord sued the Watson Defendants for approximately $1.6 million in outstanding rent owed after Northstar was forced to vacate its office space and lay off most of its 40-person staff upon commencement of Amazon's lawsuit. Mountain Aviation has demanded approximately $300,000 in outstanding debt from Northstar. Mr. Watson further faces a suit filed by the lender of Vista Gardens, a senior living care facility in California that Northstar sponsored and Mr. Watson co-managed and personally guaranteed, a motion pending before this Court by the lender of the 77 Sugar Creek office building in Texas requesting the asset be released from the Receiver (Mr. Watson managed this property and personally guaranteed this debt, as well), and a suit related to the Colfax and Sable property in Colorado brought by the mortgage broker. The Receiver has purportedly requested stays in each of these actions, but such a limited step only results in avoidable mounting costs that the Watson Defendants will have to address at the close of the present litigation or upon the removal of the Receiver.

**B.    The Receiver has made misleading statements regarding Mr. Watson's funds while simultaneously ignoring Mr. Watson's request for certain clarification.**

Recent claims made by the Receiver are also cause for concern. In the Receiver's October 13, 2022, Reply to Watson Defendant's Response in Opposition to Receiver's Motion for Entry of Order Approving Sale of Interest in 1221 Broadway Office Condominium, a controversy over a 100% leased property now in default due to the appointment of the Receiver, the Receiver stated that in the 18 months preceding the Receiver's appointment, Mr. Watson inappropriately spent approximately $3 million during the pendency of the injunction. Dkt. 1074. However, approximately $2,843,308 of that $3 million was paid to Mr. Stephen Tebo, a secured creditor, as a required loan repayment for a $5 million loan provided to the Watson Defendants prior to Amazon's present suit. In fact, this money was never even in the Watson Defendants' possession

...

as it was paid directly to Mr. Tebo by each of the title companies upon the sale of several assets. Thus, the Watson Defendants only received approximately $156,691 of the $3 million. Indeed, the net $156,691 that the Watson Defendants received during that 18-month period amounted to less per month than the current $12,000 monthly stipend the Receiver approved for Mr. Watson's living expenses when he was appointed in November 2021.

On the other hand, the lack of communication from the Receiver has also disadvantaged Mr. Watson. Mr. Watson has repeatedly sought clarification from the Receiver regarding Mr. Watson's ability to start operating as a ride share driver at night in order supplement his monthly stipend to buy Christmas presents for his family, particularly his young children. However, the Receiver has thus far refused to provide a defined budget for a replacement vehicle or clarify his restrictions on the type of vehicle Mr. Watson is permitted to purchase and/or lease to use for this work. Mr. Watson's current vehicle is a 16-year-old used vehicle with almost 200,000 miles that the Receiver authorized him to purchase for $7,800. Unfortunately, the vehicle is unsuitable for ride share work and currently needs new brakes, shocks, and struts—valued at approximately $5,500—which Mr. Watson cannot afford. The Receiver has failed to address Mr. Watson's multiple requests for funding to repair his only vehicle and has not allowed Mr. Watson to purchase or lease a more suitable vehicle. Left unaddressed, these problems with the vehicle pose a safety and potentially significant financial risk to Mr. Watson and others.

**C.     Mr. Watson was not consulted during the preparation of his tax returns nor given sufficient time to review them.**

And finally, on October 14, 2022, the Receiver sent Mr. Watson a draft of his personal tax returns that the Receiver had compiled. Not only was Mr. Watson not consulted in the preparation of his tax returns, but the timing of the returns was troubling. Mr. Watson received the draft returns just one day before the October 15, 2022, filing deadline, leaving him with insufficient time to

review the draft returns. Moreover, it remains unclear to Mr. Watson, despite repeated inquiries, whether the Receiver executed the returns, or a related finalizing document, on his behalf. It is also disquietingly unclear whether the Receiver has the responsibility to pay the Watson Defendants' tax liabilities since his appointment. The amount due for Mr. Watson's 2020 federal and state tax obligations is approximately $900,000, which the Receiver has elected not to pay during the almost one year of his appointment. And according to the Receiver, Mr. Watson's federal and state tax obligations for 2021 amount to $500,000, for a total of approximately $1.4 million, plus accrued penalties, fees, and interest.

Because the Receiver's actions and inaction threaten long term consequences for the Watson Defendants, the Watson Defendants now seek clarification of the Receiver's responsibilities from the Court.

### III. ARGUMENT

"The general purpose of a motion for clarification is to explain or clarify something ambiguous or vague, not to alter or amend." *United States v. Philip Morris USA, Inc.*, 793 F. Supp. 2d 164, 168 (D.D.C. 2011) (citation and internal quotation omitted). Clarification regarding language used in the Court's order appointing the Receiver and where the parties' duties are unclear is a permissible ground for such a motion. *Id.* at 168–69; *cf. Regal Knitwear Co. v. Nat'l Labor Relations Bd.*, 324 U.S. 9, 15 (1945) ("we think courts would not be apt to withhold a clarification in the light of a concrete situation that left parties . . . in the dark as to their duty toward the court."). Clarification is necessary here because the Receiver has made inaccurate and misleading claims regarding the Watson Defendants' finances and because substantial financial consequences may accrue to the detriment of the Watson Defendants if the Receiver's responsibilities are not made clear. The Watson Defendants now ask this Court to clarify that it is

the Receiver's responsibility to properly address legal actions brought against Watson Defendants, rather than simply requesting a stay in each proceeding; that payment of Mr. Watson's federal and state taxes takes priority over the Receiver paying himself and his attorneys fees; and that Mr. Watson's monthly stipend and the other bills the Receiver has been paying, will continue as long as the Receiver is in place.

**A.     Matters brought against Watson Defendants demand the Receiver's proper attention.**

Some of the various lawsuits brought against the Watson Defendants are due to the very appointment of the Receiver and are a direct consequence of the present litigation brought forth by Plaintiffs and their counsel. Because these suits stem from the Order, these matters demand proper attention from the Receiver. For example, rather than simply seeking a stay, the Receiver could likely settle the $1.6 million claim arising out of Northstar's obligation to its prior landlord for approximately $125,000—a solution which the Watson Defendants had potentially negotiated just prior to the appointment of the Receiver in November 2021. The Receiver's continued inaction in these matters only exacerbates the Watson Defendants' situation, as fees, interest, and penalties continue to accrue in each of these matters. The Court should therefore clarify that it is the responsibility of the Receiver to take meaningful action on these matters immediately, not simply seek stays.

**B.     Payment of Mr. Watson's tax obligations should take priority.**

Additionally, rather than permit the Receiver to incur further financial penalties for Mr. Watson related to unpaid taxes, the Court should clarify that payment of Mr. Watson's federal and state taxes takes priority over the Receiver's fees and his counsel's fees, which currently total over

$3 million of unpaid fees and continue to drain the Watson Defendants' estate.[1] With trial set to begin in six more months, the Receiver is poised to continue to accrue an enormous amount of fees and costs, which the Receiver admits the estate cannot afford. Indeed, it is estimated that the Receiver and his counsel's unpaid fees may reach upwards of $5,000,000 by the start of trial based on historical Receivership costs – all with no money attributed towards the injunction.

However, Mr. Watson owes approximately $1.4 million in 2020 and 2021 federal and state taxes. As recognized by the Receiver himself, the Watson Defendants do not have the financial resources to cover both what they owe in taxes and the Receiver's fees, let alone all the other outstanding obligations incurred by the Watson Defendants due to Plaintiffs' unsubstantiated allegations against them. *See, e.g.*, Dkt. 898 Ex. A (noting that the Watson Defendants' account's beginning cash balance on April 1, 2022, was $125,821 and expressly stating that "Defendants have insufficient cash or other liquid assets to begin satisfying the Court's Injunction while also paying the costs of the receivership and the essential personal and business expenses of the Defendants."). The Watson Defendants certainly cannot afford to pay these federal and state tax liabilities on Mr. Watson's $12,000 per month stipend. Therefore, clarification regarding the prioritization of payment of Mr. Watson's federal and state taxes out of their limited and dwindling resources is necessary.

---

[1] The Receiver filed his Fourth Quarterly Report on November 1, 2022 (the "Report"). *See* Docket 1082. In the Report, the Receiver notes that the estate saw a negative cash flow of $1,020,775 in the most recent quarter, has liabilities of "tens of millions of dollars," accrued over $2,850,000 in unpaid fees and legal costs, and contains "insufficient funds to meet the requirements of the Injunction," among other things. *Id*.

**C.     Mr. Watson is owed assurances that his stipend from the Receiver will continue, and that the Receiver will facilitate Mr. Watson's desire to work.**

The Court should also clarify that the Receiver is obligated to continue providing Mr. Watson his monthly stipend and covering additional bills as required by the Order because it is his only form of income. If the Receivership cannot afford to continue to make these basic payments, the Receivership should be vacated. Any amounts earned by Mr. Watson's ride share efforts should not be deposited into the Receivership estate or have any impact on his monthly stipend. Mr. Watson wants to supplement his living expenses and afford Christmas gifts for his family, and he should not be disincentivized from or penalized for taking on additional work to support his family.

Finally, due to the age, condition, and current safety issues with Mr. Watson's vehicle, Mr. Watson's vehicle will not qualify him to drive for a ride share application. Mr. Watson now asks this Court to clarify whether the Receiver must provide Mr. Watson with funds to purchase or lease a vehicle that meets the requirements of a ride share application so he may travel safely with his family and supplement his income.

## IV.     CONCLUSION

WHEREFORE, the Watson Defendants respectfully ask that the Court clarify the Receiver's responsibilities with regards to (1) properly addressing pending lawsuits and demands brought against the Watson Defendants, (2) assuring and prioritizing the payment of Mr. Watson's federal and state taxes, (3) the Receiver's obligation to continue to timely pay Mr. Watson's monthly stipend and additional expenses the Receiver has been paying, and (4) the Receiver's obligation to provide Mr. Watson with funds necessary to purchase or lease a safe vehicle that meets the requirements of the various ride share applications on the market.

Dated: November 4, 2022

BROWNSTEIN HYATT FARBER SCHRECK, LLP

By: */s/ Stanley L. Garnett*
Stanley L. Garnett (*pro hac vice*)
Amanda K. Houseal (*pro hac vice*)
Sara R. Bodner (*pro hac vice*)
Leah Regan-Smith (*pro hac vice*)
Rosa L. Baum (*pro hac vice*)
Brownstein Hyatt Farber Schreck, LLP
410 17th Street, Suite 2200
Denver, CO 80202
Telephone: (303) 223-1100
Facsimile: (303) 223-1111
sgarnett@bhfs.com
ahouseal@bhfs.com
sbodner@bhfs.com
lregan-smith@bhfs.com
rbaum@bhfs.com

*/s/ Jeffrey R. Hamlin*
Jeffrey R. Hamlin (VA Bar No. 46932)
George R. Calhoun (*pro hac vice*)
James Trusty (*pro hac vice*)
IFRAH PLLC
1717 Pennsylvania Avenue NW, Suite 650
Washington, DC 20006
Telephone: (202) 524-4140
Facsimile: (202) 524-4141
jhamlin@ifrahlaw.com
george@ifrahlaw.com
jtrusty@ifrahlaw.com

*Counsel for WDC Holdings LLC, Brian Watson, Sterling NCP FF, LLC, Manassas NCP FF, LLC, NSIPI Administrative Manager, and BW Holdings LLC*