# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# ALEXANDRIA DIVISION

| | |
|---|---|
| AMAZON.COM and AMAZON DATA SERVICES, INC., <br><br> Plaintiffs, <br><br> v. <br><br> WDC HOLDINGS LLC dba NORTHSTAR COMMERCIAL PARTNERS, et al. <br><br> Defendants. | Civil Action No. 1:20-CV-484-RDA-IDD |
| 800 HOYT LLC, <br><br> Intervening Interpleader Plaintiff / Intervening Interpleader Counter - Defendant, <br><br> v. <br><br> BRIAN WATSON; WDC HOLDINGS LLC; BW HOLDINGS, LLC, <br><br> Interpleader Defendants, <br><br> and <br><br> AMAZON.COM, et al. <br><br> Interpleader Defendants / Interpleader Counter-Plaintiffs. | |

## WATSON DEFENDANTS' REPLY TO AMAZON'S RESPONSE TO MOTION TO CLARIFY RECEIVERSHIP ORDER

Defendants Brian Watson ("Mr. Watson"), WDC Holdings LLC d/b/a Northstar Commercial Partners ("Northstar"), Sterling NCP FF, LLC, Manassas NCP FF, LLC, NSIPI Administrative Manager, and BW Holdings, LLC (collectively, the "Watson Defendants"),

1

respectfully submit their Reply in support of their Motion to Clarify the Order Appointing Receiver and Ordering Turnover of Property to the Receiver (the "Order").

## I.     CONFERRAL

Not unlike the continuous communications with the Receiver on the relevant points to this motion, any claim by Plaintiffs Amazon.com Inc. and Amazon Data Services, Inc. (collectively, "Amazon") that they are surprised by the current motion lacks support from the ongoing developments in this matter. Mr. Watson and his counsel have been in ongoing communication with Amazon and its counsel and have repeatedly discussed the need for modification, clarification, or vacation of the Receivership. Furthermore, Amazon and its counsel have been made aware of the discussions between the Watson Defendants and the Receiver regarding the same points. Unfortunately, none of these conferrals among the parties have reached any solution as to the relief requested and thus the Watson Defendants request clarification from the Court.

## II.     INTRODUCTION

Seemingly an echo of the Receiver's response, Amazon also attempts to frame the Watson Defendants' request for clarification as a re-hashing of the Court's denial of the Motion to Vacate the Preliminary Injunction. And yet again, Amazon overlooks the critical fact that since the Court denied the Watson Defendants' Motion to Vacate the Preliminary Injunction, the Court has set a date for trial. Therefore, the Watson Defendants must live with the Receivership for another six months to their detriment, all while the Receiver fails to comply with the same provisions of the Order with which the Watson Defendants insisted they could never comply, namely, depositing any amount of funds in the Court's registry. This narrow motion seeks limited relief: clarification of the Order regarding the Receiver's responsibilities pending trial. Moreover, assertions in Amazon's Response stress the need for clarification from the Court. The Receiver was appointed

by the Court to *preserve* the assets of the Watson Defendants' estate. If, as Amazon alleges, the Order establishes the Receiver's fees and expenses as "priority payments," Dkt. 1095—fees that have accumulated to over $3 million—such would seem to run contrary to the aim and purpose of the Receivership. Thus, clarification of the Receiver's responsibilities is appropriate and critical.

      Amazon blatantly mischaracterizes the trajectory of these proceedings and the revelations of recent discovery. As the Watson Defendants presented to the Court in their Reply to the Receiver's Response, the parties here find themselves approximately two-and-a-half years into litigation—and a year into the imposition of the Receivership—and the Watson Defendants have yet to have their day in Court. In spite of this fact, and contrary to Amazon's unfounded assertions, developments in the case have favored the Watson Defendants' position, not Amazon's. For example, the affidavits on which the Injunction were based were withdrawn by Amazon's counsel for being false. Moreover, the deposition testimony of Danny Mulcahy revealed that the declaration of Matthew Doden, which Amazon submitted in support of the Injunction, contained misleading and false statements. Then there is the fact that witness after witness has confirmed that there was no "kickback scheme" involving Mr. Watson or Northstar, which is the position the Watson Defendants have taken since the start of this litigation years ago. In addition, there is the fact that Amazon's own expert report on damages makes plain that the $25 million Injunction is not justifiable. However, all of this can wait for trial—a trial which the Watson Defendants eagerly await. Ultimately, the scope of the current motion is not the merits of the case. Rather, with six months remaining under the Receivership, the Watson Defendants merely request the Court clarify aspects of the Order given the Watson Defendants' estate's limited assets and competing financial demands on those resources.

As the Watson Defendants have already noted, clarification from the Court as to the Receiver's responsibilities may require that the Receiver act in a manner that he has not up to this point. But such does not require an amendment of the Order. The Court may simply find that the Receiver has not acted pursuant to his responsibilities as determined by the Order. And while Amazon summarily states that no new factual developments require the Court to act, Amazon conveniently does not address that since the litigation surrounding the imposition of the Receivership, trial in the matter has been set and concrete scenarios, such as the delinquency of Mr. Watson's tax liabilities (of which he recently received notice from the State of Colorado), have raised reasonable cause for concern regarding the Receiver's actions and inaction. *See* Dkt. 1083; *see also See United States v. Philip Morris USA, Inc.*, 793 F. Supp. 2d 164, 168–69 (D.D.C. 2011) (recognizing the legitimate need for motions for clarification in light of concrete scenarios where parties are unsure of their responsibilities). Thus, in complying with his duty to the Court to protect the Watson Defendants' assets, the Receiver would seemingly logically invite clarification from the Court in the face of risking improperly administering the Court's Order. *Cf. Regal Knitwear Co. v. Nat'l Labor Relations Bd.*, 324 U.S. 9, 15 (1945) ("we think Courts would not be apt to withhold a clarification in the light of a concrete situation that left parties . . . in the dark as to their duty toward the Court.").

Finally, Amazon admits that the Watson Defendants' estate has limited assets, as the Watson Defendants have always maintained. Clarification of the prioritization of payments is critical because of these limited resources and the significant competing demands on the Watson Defendants' assets.

### III. ARGUMENT

**A. Contrary to Amazon's assertion, the Order is not clear as to the Receiver's payment priorities.**

Amazon's Response invites further confusion as to the directives in the Order. Amazon plainly states that the Order "*prohibits* the Motion's proposed payment priorities." Dkt. 1094 (emphasis in original). The Watson Defendants can find no support in the Order for the conclusion that the Receiver is barred from paying Mr. Watson's tax liabilities or that the Receiver's fees and/or the Injunction take precedence over paying Mr. Watson's tax liabilities. If that were the case, the Court would be subjecting Mr. Watson to civil and criminal liability. And even while Amazon quotes the language from the Order noting that the Receiver must act to advance "the proper and lawful discharge of his responsibilities," Dkt. 433; *see also* Dkt. 1094, they do not seem to give that mandate from the Court any teeth. The Order clearly *authorizes* the Receiver to act, but also hints at his *responsibilities*. The latter's scope and extent necessitate clarification.

Amazon again grafts their understanding onto the Order in stating that the Receiver's fees and expenses are "priority payments." Dkt. 1094. This assertion is unsupported by the plain language of the Order. Furthermore, the Order—as drafted by Amazon—expressly provides for payment of the Receiver's fees by Amazon should the Watson Defendants' estate be depleted. Dkt. 433. And, as Amazon notes, but comes as disquieting news to the Watson Defendants, the Receiver has already received payment from Amazon, assumedly pursuant to this provision in the order.[1] What is more, this point undercuts Amazon's concern that the Receiver would be unfairly treated if the Court were to clarify the Receiver's responsibilities and require, for example, that the Receiver pay Mr. Watson's delinquent tax liabilities. *See* Dkt. 1095. Mere clarification from the

---

[1] The Watson Defendants learned of this payment to the Receiver through Amazon's Response, and the lack of notice further raises concerns on the Watson Defendants' part about the continuing cozy relationship between Amazon and the Receiver.

5

Court as to the Receiver's responsibilities is thus necessary and would not inequitably impact the parties to the current litigation. Amazon drafted the Order and thus it is a reasonable inference that they agree to its terms. However, a lack of clarification would prejudice the Watson Defendants and even risk exposing Mr. Watson to civil and criminal liability for unpaid tax liabilities.

The Order's provisions as to the Receiver's responsibilities in the face of demands and claims against the Watson Defendants are similarly unclear. As a threshold matter, that liabilities were incurred prior to the appointment of the Receivership does not excuse the Receiver from having to address such issues. The Order plainly states that the Receiver is to "[e]xercise, subject to the limits of this Order . . . the full authority, with power of attorney on behalf of and in the name of defendants, to . . . pay *prior* obligations incurred by the Defendants." Dkt. 433 (emphasis added). That same paragraph further states that the Receiver is to make such payments "if such obligations are deemed by the Receiver to be reasonably necessary or advisable, subject in all respects to this Order and the Injunction." *Id.* The Watson Defendants have never argued that the Receiver retains no discretion. However, as evidenced by the plain language of this provision, the propriety of the Receiver's actions is *subject to* the guardrails of the Order. It is those guardrails—meaning the duties and responsibilities of the Receiver—that require clarification. Similarly, the Order authorizes the Receiver to act "to the proper and lawful discharge of his responsibilities under this order" to "institute, defend, settle and/or adjust disputes and claims respecting [the Watson Defendants'] Assets." Dkt. 433. This directive includes both a delegation of authority and of responsibility, with the latter left unclear.

As already laid out in the Watson Defendants' Reply to the Receiver's Response, several of the pending matters could potentially be settled without litigation and at vastly reduced prices. The Receiver's decision to merely seek stays in the pending matters only postpones resolution of

these matters and does not further the Receiver's stated purpose of preserving the Watson Defendants' assets. The Watson Defendants, therefore, echo their request for the Court to clarify the extent of the Receiver's responsibilities as to prioritization of payments and pending claims against the Watson Defendants.

**B.    Amazon's characterization of the record and recent revelations through discovery misleads this Court.**

As a threshold matter, Amazon's dive into what the Response describes as the "current record" is plainly outside the scope of this motion. While the Watson Defendants look forward to presenting their case to the Court, the Court need not consider the merits of the case as submitted by Amazon here. Contrary to Amazon's contention, the Watson Defendants seek only to clarify the responsibilities *under* the Order, not amend the Order or the Injunction.

However, since Amazon has presented these assertions to the Court, it bears noting that these mischaracterizations lack support when viewing the Record as a whole. For example, Amazon claims that Mr. Nelson and Mr. Kirschner admitted to receiving kickbacks.[2] In support, Amazon cites a statement made by Mr. Kirschner. However, during his deposition, Mr. Kirschner explained the circumstances of this statement. Mr. Kirschner testified that this very statement was written by an FBI agent, that it was a summary of a three-and-a-half hour meeting with the FBI, and that nowhere in the statement did he admit to any illegal activity whatsoever. Dep. Tr. 286:24-287:14; 288:20-289:18 attached hereto as Exhibit A. He further testified that Mr. Watson or Northstar did not pay any funds to any of the entities set up by Mr. Atherton other than the Villanova Trust, *Id.* 312:9–14, and that to his knowledge, Mr. Watson did not have any control over the Villanova Trust and did not know what the Villanova Trust did with funds that it received.

---

[2] Amazon previously made this claim and Mr. Nelson vigorously disputed it, arguing that the assertion was false. Dkts. 960, 986.

7

*Id.* 311:2-3:11-7. At most, Amazon's characterization is a truncated, self-serving presentation of disputed pieces of evidence in this matter.

Additionally, Amazon relies, with minimal support, on adverse inferences from nonparties to this litigation who have invoked their Fifth Amendment rights. The propriety of this reliance remains up for debate and will be the subject of pretrial motions. Adverse inferences must be determined by the Court on a case-by-case basis—they cannot be unilaterally declared by a party. *See United States v. Mallory*, 988 F.3d 730, 740 (4th Cir. 2021). Such an inference, particularly in the case of a third party witness, requires a substantial showing of connectedness between the third party and the defendant, and should spur Courts to consider matters by which such inferences can be limited. *See id.* (allowing an inference against a third party co-conspirator but confining the inference to apply only after a finding that the underlying conspiracy actually existed). Ultimately, "the overarching concern is fundamentally whether the adverse inference is trustworthy." *LiButti v. United States*, 107 F.3d 110, 124 (2d Cir. 1997). While the Watson Defendants have not invoked their Fifth Amendment right, have submitted a sworn declaration denying the key allegations in full, and have participated in over 14 hours of depositions, Amazon continues to attempt to turn attention to the individuals curiously not named as defendants in the complaint—Christian Kirschner, Will Camenson, and Kyle Ramstetter—who all took the Fifth. And there are genuine questions about the character of the individuals on whom Amazon hopes to rely for an adverse inference, including Mr. Ramstetter and Mr. Camenson, both of whom usurped a corporate opportunity from their former employer, Northstar. Moreover, Amazon neglects to note that the recording on which it relies in this section of its Response remains *unauthenticated*.

As noted above, the Watson Defendants find it unnecessary for the Court to consider these arguments on the merits as submitted by Amazon. These are the precise arguments the parties will

present at trial next May. Rather, the Watson Defendants' current motion simply seeks clarification of the Receiver's responsibilities for the six months remaining before trial.

## IV.     CONCLUSION

Amazon has presented no real argument against the Court clarifying the Receiver's obligations and responsibilities, where, through action or inaction on the Receiver's part, the Watson Defendants risk the accrual of irreparable civil and criminal liability. In fact, Amazon's assertions as to their interpretation of the Order further underscore the need for clarification of the Order. And contrary to Amazon's assertions, the Watson Defendants provide ample basis for the need for the Court to clarify the Order, thus making assessment of costs and the entertainment of preclusion remedies against the Watson Defendants unfounded and gratuitous.

Therefore, the Watson Defendants respectfully request the Court clarify the Receiver's responsibilities with regards to (1) properly addressing pending and threatened litigation against the Watson Defendants; (2) the prioritization of payments of Mr. Watson's outstanding tax liabilities; and (3) assuring the continued payment of Mr. Watson's monthly stipend and coverage of other necessary expenses historically paid by the Receiver, all in the face of the estate's limited and dwindling resources.

Dated: November 28, 2022

By: s/ *Jeffrey R. Hamlin*
Stanley L. Garnett (*pro hac vice*)
Amanda K. Houseal (*pro hac vice*)
Sara R. Bodner (*pro hac vice*)
Leah Regan-Smith (*pro hac vice*)
Rosa L. Baum (*pro hac vice*)
Brownstein Hyatt Farber Schreck, LLP
410 17th Street, Suite 2200
Denver, CO 80202
Telephone: (303) 223-1100
Facsimile: (303) 223-1111
sgarnett@bhfs.com
ahouseal@bhfs.com
sbodner@bhfs.com
lregan-smith@bhfs.com
rbaum@bhfs.com

Jeffrey R. Hamlin (VA Bar No. 46932)
George R. Calhoun (*pro hac vice*)
James Trusty (*pro hac vice*)
IFRAH PLLC
1717 Pennsylvania Avenue NW, Suite 650
Washington, DC 20006
Telephone: (202) 524-4140
Facsimile: (202) 524-4141
jhamlin@ifrahlaw.com
george@ifrahlaw.com
jtrusty@ifrahlaw.com

*Counsel for WDC Holdings LLC, Brian Watson, Sterling NCP FF, LLC, Manassas NCP FF, LLC, NSIPI Administrative Manager, and BW Holdings LLC*