```
                                                              1
 1              UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF VIRGINIA
 2                   ALEXANDRIA DIVISION

 3  -------------------------------x
                                   :
 4  AMAZON.COM, INC., et al.,      : Civil Action No.:
                                   : 1:20-cv-484
 5                   Plaintiffs,   :
           v.                      :
 6                                 :
    WDC HOLDINGS LLC, et al.,      : October 20, 2022
 7                                 :
                     Defendants.   :
 8  -------------------------------x

 9        TRANSCRIPT OF FINAL PRETRIAL CONFERENCE
        BEFORE THE HONORABLE ROSSIE D. ALSTON, JR.
10          UNITED STATES DISTRICT COURT JUDGE

11                  A P P E A R A N C E S

12   FOR THE PLAINTIFFS:   PATRICK F. STOKES, Esq.
                           MICHAEL R. DZIUBAN, Esq.
13                         ELIZABETH PAPEZ, Esq.
                           CLAUDIA BARRETT, Esq.
14                         Gibson Dunn & Crutcher LLP
                           1050 Connecticut Ave NW, Suite 300
15                         Washington, DC 20036-5306

16   FOR THE DEFENDANT:    STAN GARNETT, Esq.
     (Watson)              Brownstein Hyatt Farber Schreck,
17                         LLP
                           410 17th Street, Suite 2200
18                         Denver, Colorado 80202

19                         JEFFREY R. HAMLIN, Esq.
                           LEAH REGAN-SMITH, Esq.
20                         Ifrah Law
                           1717 Pennsylvania Avenue, NW
21                         Suite 650
                           Washington, DC 20006
22
     FOR THE DEFENDANT:    ADAM R. SMART, Esq.
23   (Carleton Nelson)     Burr & Forman LLP
                           50 North Laura Street
24                         Suite 3000
                           Jacksonville, FL 32202
25
```

2

```
 1                          RACHEL R. FRIEDMAN, Esq.
                            Burr & Forman LLP
 2                          420 North 20th Street
                            Suite 3400
 3                          Birmingham, AL 35203

 4   FOR THE DEFENDANT:     JARED J. ROBERTS, Esq.
     (Renrets)              Binnall Law Group, PLLC
 5                          717 King Street
                            Suite 200
 6                          Alexandria, VA 22314

 7   FOR THE DEFENDANT:     CAROLINE CALLAHAN, Esq.
     (Atherton)             Harman Claytor Corrigan &
 8                          Wellman
                            P.O. Box 70280
 9                          Richmond, VA 23255

10

11

12   OFFICIAL U.S. COURT REPORTER:    MS. TONIA M. HARRIS, RPR
                                      United States District Court
13                                    401 Courthouse Square
                                      Fifth Floor
14                                    Alexandria, VA 22314

15

16

17

18

19

20

21

22

23

24

25
```

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

3

**P R O C E E D I N G S**

10:18:09  1

10:18:09  2  (Court proceedings commenced at 10:18 a.m.)

10:18:14  3

10:18:14  4          THE COURTROOM CLERK:  Civil action 2020-484.

10:18:29  5  Amazon.com Incorporated, et al. versus WDC Holdings, LLC, et

10:18:29  6  al.

10:18:29  7          Counsel, please note your appearances for the

10:18:37  8  record.

10:18:37  9          THE COURT:  We have the entire federal bar here with

10:18:39  10  us today.

10:18:42  11              (Laughter.)

10:18:50  12          THE COURT:  Some people can sit in the jury box too,

10:18:52  13  if you're comfortable.  You don't all need to crowd in.  If

10:18:55  14  you're comfortable sitting in the jury box, you won't bother

10:18:58  15  me if you want to direct something to me from the box.

10:19:05  16          MR. STOKES:  Good morning, Your Honor.  Patrick

10:19:09  17  Stokes on behalf of Amazon, the plaintiffs, with Elizabeth

10:19:12  18  Papez, Jason Mendro, Claudia Barrett, Michael Dziuban and

10:19:19  19  Amanda Sterling.

10:19:21  20          THE COURT:  All right.  Good morning.

10:19:23  21          MR. GARNETT:  Good morning, Your Honor.  Stan

10:19:26  22  Garnett on behalf of the Watson defendants.  With me is Amanda

10:19:32  23  Houseal, Leah Regan-Smith, Sarah Bodner, and Jeff Hamlin, and

10:19:38  24  also at counsel table, Your Honor, is our client, Brian

10:19:42  25  Watson.

4

| | | |
|---|---|---|
| 10:19:43 | 1 | THE COURT:  Good morning. |
| 10:19:46 | 2 | MR. LITTLE:  Good morning, Your Honor.  Alex Little |
| 10:19:47 | 3 | on behalf of the Nelson defendants.  I have with me Adam Smart |
| 10:19:50 | 4 | and Rachel Friedman as well.  Thank you. |
| 10:19:54 | 5 | THE COURT:  I'm sorry, sir, can I get your name |
| 10:19:55 | 6 | again? |
| 10:19:55 | 7 | MR. LITTLE:  Yes.  It's Alex Little. |
| 10:20:00 | 8 | THE COURT:  Good morning, sir. |
| 10:20:00 | 9 | MR. THOMAS:  Good morning, Your Honor.  John David |
| 10:20:04 | 10 | Thomas on behalf of the defendant, Casey Kirschner, and I'm |
| 10:20:10 | 11 | all by myself this morning. |
| 10:20:20 | 12 | THE COURT:  Who are you here on behalf of, sir.  I'm |
| 10:20:23 | 13 | sorry. |
| 10:20:23 | 14 | MR. THOMAS:  Oh, I'm sorry, Your Honor.  Defendant |
| 10:20:24 | 15 | Casey Kirschner. |
| 10:20:26 | 16 | THE COURT:  Okay.  Very good.  Thank you, sir. |
| 10:20:29 | 17 | MS. CALLAHAN:  Good morning, Your Honor.  Caroline |
| 10:20:32 | 18 | Callahan for Mr. Atherton. |
| 10:20:39 | 19 | MR. ROBERTS:  Good morning, Your Honor.  Jared |
| 10:20:39 | 20 | Roberts on behalf of Renrets, LLC. |
| 10:20:43 | 21 | THE COURT:  All right. |
| 10:20:47 | 22 | MR. HAMLIN:  I'm Jeff Hamlin with Brian Watson and |
| 10:20:52 | 23 | WDC Holdings. |
| 10:20:53 | 24 | THE COURT:  Very good. |
| 10:20:55 | 25 | All right.  Being the only judge, apparently, in |

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

5

10:21:06  1  this entire courthouse that doesn't have stock in Amazon, I

10:21:08  2  have your case.

10:21:12  3      All right.  This matter comes on today for a final

10:21:15  4  pretrial conference.  And Counsel, as I said to the last

10:21:19  5  parties that appeared before the Court, if I misstate anything

10:21:23  6  or you have confusion, just feel free to chime in and you

10:21:26  7  won't hurt my feelings at all.  It's my understanding that the

10:21:28  8  discovery period closed on October 14th of this year.

10:21:34  9      Is that correct?

10:21:34  10      MR. STOKES:  Your Honor, that's -- there is ongoing

10:21:37  11  discovery beyond discovery deadline by agreement between the

10:21:40  12  parties.  I believe discovery actually closed in the -- in

10:21:45  13  September.  But there is ongoing expert discovery as well as

10:21:49  14  other fact discovery.  For example, one of the defendants'

10:21:53  15  depositions is coming up soon.

10:21:55  16      THE COURT:  If I can say going forward, it's great

10:21:58  17  that we have agreements between the parties, but get

10:22:01  18  authorization from the Court to do that.

10:22:03  19      MR. STOKES:  We will.

10:22:05  20      THE COURT:  Again, I have no problem with you coming

10:22:06  21  up with ideas as to how you might better facilitate the case,

10:22:09  22  but make sure that you at least inquire of the Court if that's

10:22:12  23  appropriate.

10:22:13  24      MR. STOKES:  Yes, Your Honor.  And in the past we

10:22:16  25  have been in close coordination with Judge Buchanan, but we'll

6

10:22:20  1  certainly bring it to the attention of this Court.

10:22:22  2          THE COURT:  Do we agree that expert disclosures are

10:22:25  3  due November 11th?

10:22:27  4          MR. STOKES:  That's right, Your Honor.

10:22:28  5          THE COURT:  Okay.  Do we agree that rebuttal expert

10:22:32  6  reports are due December 2nd?

10:22:34  7          MR. STOKES:  We do.

10:22:36  8          THE COURT:  Do we agree that expert depositions are

10:22:40  9  to be completed by December 16th?

10:22:42  10         MR. STOKES:  Yes, Your Honor.

10:22:43  11         THE COURT:  Okay.  Do we agree that summary judgment

10:22:46  12  motions are due January 11th of next year?

10:22:49  13         MR. STOKES:  Yes, Your Honor.  I do think that's an

10:22:51  14  area where the parties may, in light of ongoing depositions,

10:22:55  15  fact depositions, may be talking about that schedule, but that

10:22:59  16  is the schedule we've agreed to.

10:23:01  17         THE COURT:  As the schedule is currently set,

10:23:03  18  summary judgment response would then be due January 25th, two

10:23:07  19  weeks later?

10:23:07  20         MR. GARNETT:  That's right.

10:23:08  21         THE COURT:  And then summary judgment replies would

10:23:10  22  be due the next week, February 1, 2023; and then, if we need

10:23:15  23  to have a hearing on it, we will schedule a date.

10:23:17  24         Do we agree that pretrial disclosures will be due

10:23:21  25  60 days before trial whenever we set the trial for?

10:23:24  1          MR. GARNETT:  Yes, Your Honor.

10:23:26  2          THE COURT:  Let's do this, let's go ahead and work

10:23:29  3  around the schedules of all these fine professionals that we

10:23:32  4  have here and see if we can come up with a trial date.

10:23:35  5          How long does plaintiff think it will take to

10:23:38  6  present its case in chief?

10:23:39  7          MR. STOKES:  Your Honor, we would anticipate for our

10:23:41  8  case in chief approximately three weeks.

10:23:45  9          THE COURT:  All right.  How much for defendants'

10:23:47 10  case?

10:23:48 11          MR. GARNETT:  Well, Your Honor, we chatted with

10:23:50 12  plaintiff's counsel about this.  The defense has concluded

10:23:55 13  that we think the entire case could be tried in 12 days, which

10:23:58 14  I think is three weeks.  And it was our understanding the

10:24:03 15  plaintiff was saying they thought it was more like four weeks,

10:24:06 16  16 days.  If they're going to take three weeks to present

10:24:09 17  their case, we would need a week to 10 days, at least, to

10:24:13 18  respond to that.

10:24:13 19          I think the question for the Court is how much time

10:24:16 20  do we need to set.  We thought it could be under three weeks.

10:24:18 21  There's a lot that could be agreed to.  Certainly a four-week

10:24:22 22  setting, I think, would be sufficient to get the case tried.

10:24:25 23  There's really not that much -- the basic factual outline, I

10:24:29 24  think, can be agreed to between the parties, and the jury is

10:24:32 25  going to have to decide everything about the parties' intent,

8

10:24:36  1   et cetera, but I think we can streamline the case.

10:24:38  2         THE COURT:  It seems to the Court from the

10:24:40  3   background that it has regarding the case, that much of the

10:24:44  4   factual predicate for the case, and that's what I'm talking

10:24:47  5   about, not specific things where we disagree on and the like.

10:24:51  6   The factual predicate for the case probably could be resolved

10:24:55  7   by a lot of stipulations.

10:24:56  8         MR. GARNETT:  That's certainly the defense

10:24:59  9   perspective, Your Honor.  We do believe -- for example, who

10:25:00  10  paid money to whom and how much was paid and when was it paid.

10:25:04  11  Those are not going to be issues in dispute.

10:25:04  12        THE COURT:  Right.

10:25:07  13        MR. GARNETT:  The plaintiffs has one version of what

10:25:09  14  was going on.  The defense strongly denies that.  That's what

10:25:12  15  the jury is going to have to figure out.  But we won't need to

10:25:13  16  take a lot of time, Your Honor.  I think laying out how these

10:25:15  17  agreements were negotiated and what they say, I think, we can

10:25:19  18  agree to most of that by stipulations, so that the jury has a

10:25:22  19  manageable set of issues they have to resolve.

10:25:24  20        THE COURT:  It's been my experience that juries love

10:25:28  21  stipulations, because --

10:25:28  22        MR. GARNETT:  Yes.

10:25:29  23        THE COURT:  -- I can look at them and say, This is

10:25:31  24  what the parties have agreed on, and you're to give it

10:25:35  25  whatever weight you decide to give it.  And then the jury

9

| | | |
|---|---|---|
| 10:25:38 | 1 | always --  I always get the nice nod when I provide a |
| 10:25:40 | 2 | stipulation because I preface the statement by saying "this is |
| 10:25:44 | 3 | what would have been testified to as if the person had |
| 10:25:47 | 4 | actually gotten on the stand and you would have been entitled |
| 10:25:49 | 5 | to hear them."  And they all love that. |
| 10:25:51 | 6 | So if you all could work hard towards coming up with |
| 10:25:55 | 7 | whatever factual predicate stipulations, I think that that |
| 10:25:58 | 8 | would go a long way towards streamlining the case |
| 10:26:00 | 9 | significantly. |
| 10:26:01 | 10 | MR. GARNETT:  We certainly will do our absolute best |
| 10:26:01 | 11 | from the defense, Your Honor. |
| 10:26:05 | 12 | THE COURT:  Okay. |
| 10:26:05 | 13 | MR. STOKES:  Your Honor, we will as well.  There's |
| 10:26:07 | 14 | been extreme disagreement on all aspects of the case between |
| 10:26:11 | 15 | the parties.  And so, we'll certainly work towards that and |
| 10:26:14 | 16 | certainly recognize the Court's point that jurors prefer |
| 10:26:18 | 17 | stipulations, and we will work towards that.  We think there |
| 10:26:21 | 18 | will be extensive expert testimony.  There's substantial |
| 10:26:24 | 19 | number of fact witnesses.  And so, we do think that with four |
| 10:26:29 | 20 | defendants one entity appearing separately, the three |
| 10:26:36 | 21 | different facets of the fraud scheme that we've identified in |
| 10:26:40 | 22 | these substantial amount of witnesses -- |
| 10:26:42 | 23 | THE COURT:  Do you anticipate anybody essentially |
| 10:26:44 | 24 | testifying by way of *de bene esse* deposition?  Do you |
| 10:26:46 | 25 | anticipate any of that? |

10

| | |
|---|---|
| 10:26:47 | 1 |

10:26:47   1        MR. STOKES:  We do expect some testimony.

10:26:50   2        THE COURT:  Okay.  I bring that up because that

10:26:53   3   requires taking advantage of the technical expertise of people

10:26:57   4   who work in this courthouse.  And even though they won't say

10:27:00   5   it to me, they don't like when they find out a day before that

10:27:04   6   they're going to have to do all of this extra stuff.

10:27:07   7        MR. STOKES:  We will certainly coordinate on that.

10:27:10   8   We're actually expecting for plaintiff's witnesses that quite

10:27:13   9   a few of them will be live, so --

10:27:15  10        MR. GARNETT:  And, Your Honor.

10:27:16  11        THE COURT:  All right.  Yes, sir.

10:27:19  12        MR. GARNETT:  Sorry, Your Honor.  One thing I was

10:27:18  13   going to mention, obviously, the Court is well aware of the

10:27:21  14   fact that the injunction is in place against the Watson

10:27:24  15   defendants and the receivership, et cetera.  We've raised

10:27:28  16   concerns about that, the Court has ruled, and we understand

10:27:31  17   that.  But we are interested in as prompt a trial setting as

10:27:33  18   can occur, because Brian Watson really wants to resolve this

10:27:37  19   case.  We think we're going to win it and move on.  But I

10:27:40  20   understand the issues of the Court's calendar.  I just want to

10:27:43  21   make sure it was clear that we would try this case tomorrow if

10:27:45  22   we could, and we're ready to do that.  It's a case where he

10:27:49  23   really looks, after two-and-a-half years, for an opportunity

10:27:52  24   to clear his name.

10:27:53  25        THE COURT:  I understand.  I understand.

11

10:27:55  1              And sir, we in the rocket docket here in the Eastern

10:28:00  2    District of Virginia pride ourselves on efficiently and

10:28:02  3    expeditiously taking care of matters.  I will say to you that

10:28:06  4    the pandemic has put a burden on the Court because we're

10:28:11  5    trying to schedule as many things as we can.  And because of

10:28:15  6    the constitution, we have to prioritize criminal cases over

10:28:18  7    civil cases because there are constitutional implications

10:28:21  8    involved in criminal cases that are not typically involved in

10:28:24  9    civil cases.  So we have to prioritize those.  But we're not

10:28:28  10   New York and I'm not going to say on December 2027.  I'm going

10:28:32  11   to say something a whole lot earlier than that.  Not to cast

10:28:36  12   any aspersions on my friends in New York, but we typically do

10:28:39  13   handle things a little bit more efficiently and expeditiously

10:28:42  14   here than we do in other jurisdictions.

10:28:46  15              All right.

10:29:23  16              (A pause in the proceedings.)

10:29:24  17              THE COURT:  How about March 13th through March --

10:29:56  18   excuse me, March 13th through --

10:30:19  19              MR. STOKES:  Your Honor, if I may, one of our trial

10:30:22  20   counsel has a conflict the week of March 27th, a multiday

10:30:28  21   conflict.

10:30:29  22              THE COURT:  Okay.

10:30:34  23              MR. THOMAS:  Your Honor, if I may, I have a

10:30:36  24   three-week criminal jury trial beginning on March 20th running

10:30:41  25   through April 5th.  I do expect to go to trial.

                                                                    12

10:30:41   1              THE COURT:  Okay.  That's fine.

10:30:47   2              (Court reporter clarification.)

10:30:47   3              MR. THOMAS:  I'm sorry.  John David Thomas on behalf

10:30:50   4    of Mr. Kirschner.

10:31:00   5              THE COURT:  How about April 10.  How about

10:31:07   6    April 10th -- all right, Counsel, get your schedules out.

10:31:46   7              How about May 1st through May 22nd?

10:32:04   8              MR. GARNETT:  It's fine for the Watson defendants,

10:32:07   9    Your Honor.

10:32:07  10              MR. LITTLE:  It's fine for the Nelson defendants.

10:32:09  11              MR. THOMAS:  That works for Mr. Kirschner as well,

10:32:11  12    Your Honor.

10:32:12  13              THE COURT:  Okay.

10:32:12  14              MR. STOKES:  Your Honor, we do think the case will

10:32:16  15    likely be closer to 20 trial days, so I don't know if the

10:32:21  16    Court has --

10:32:24  17              THE COURT:  I don't have anything except grand jury

10:32:27  18    after that, but I like to provide the jury a shorter

10:32:31  19    perspective and then ask them to stay a little longer.  I

10:32:36  20    believe -- it's like when you put a house on the real estate

10:32:40  21    market and you say it's $701,000 and you don't get as many

10:32:44  22    buyers as when you have 699,999.  It's something about being a

10:32:48  23    little bit below the market that encourages people to want to

10:32:52  24    buy.

10:32:53  25              MR. STOKES:  Understood.  Okay.  So let's go with

13

10:32:57  1   that gentlemen, ladies.

10:33:05  2           THE COURT:  May 1st, that's a Monday, and then we go

10:33:08  3   to May 22nd.

10:33:19  4           Ladies and gentlemen, what we'll do is on the very

10:33:22  5   first day, which is typically set aside for voir dire and

10:33:26  6   opening statements, we'll start at 9 o'clock, and we'll

10:33:30  7   typically go until about 4:00 every day.  I try to get the

10:33:35  8   jurors out because some of them have childcare issues and the

10:33:36  9   like, and so, I try to get them available for that.

10:33:39  10          And then, subsequent to that, depending on the

10:33:42  11  jury's perspective, we'll typically start at 10 o'clock on the

10:33:45  12  days subsequent to that.  Sometimes the jury, if I ask them,

10:33:48  13  will say let's start at 9:00.  I let them be a part of that

10:33:52  14  process.  So that will, essentially, with the rate we're

10:33:55  15  going, if they agree to go at 9 o'clock on those days, allow

10:33:57  16  us to pick up a day or two as we go.  So that will take care

10:34:00  17  of the concern that you have.  Okay.

10:34:04  18          MR. GARNETT:  And --

10:34:05  19          THE COURT:  Yes, sir.

10:34:06  20          MR. GARNETT:  Your Honor, I'm sorry.  Is it a

10:34:07  21  four-day trial week or a five-day trial week?

10:34:10  22          THE COURT:  I usually go five days.  Now, I will let

10:34:12  23  you know this that because of the criminal docket there may be

10:34:16  24  intervening matters that I need to take care of and I might

10:34:19  25  say I have a sentencing at 10 o'clock, you all can show up at

14

| | | |
|---|---|---|
| 10:34:23 | 1 | 11:00.  Obviously, I have other cases that I have to deal with |
| 10:34:26 | 2 | and we sort of work them into the docket, but typically it's a |
| 10:34:30 | 3 | five day.  I go Monday through Friday, particularly, that time |
| 10:34:34 | 4 | of the year, it's easier. |
| 10:34:36 | 5 | MR. GARNETT:  That's okay. |
| 10:34:38 | 6 | THE COURT:  That would also address your concern too |
| 10:34:40 | 7 | that we're looking at a five-day trial schedule as opposed to |
| 10:34:41 | 8 | a four-day trial schedule. |
| 10:34:44 | 9 | MR. STOKES:  Thank you, Your Honor. |
| 10:34:44 | 10 | THE COURT:  Have you all talked settlement at all? |
| 10:34:47 | 11 | MR. GARNETT:  We've had -- |
| 10:34:48 | 12 | THE COURT:  I always get the look when I say, "Have |
| 10:34:50 | 13 | you talked settlement?"  There's always a smile and then a |
| 10:34:53 | 14 | well, you know, here we go. |
| 10:34:55 | 15 | MR. GARNETT:  Your Honor, I think, as the Court |
| 10:34:56 | 16 | knows, we filed a motion seeking to compel a settlement |
| 10:35:00 | 17 | conference several months ago, which the Court denied and said |
| 10:35:04 | 18 | we would take up today.  We do think settlement discussions |
| 10:35:07 | 19 | could be very fruitful.  It's been my experience, Your Honor, |
| 10:35:10 | 20 | doing this for 40 years, that a case like this you get into a |
| 10:35:13 | 21 | settlement conference, it kind of takes on a life of its own |
| 10:35:16 | 22 | and there might be a settlement that none of us can think of |
| 10:35:19 | 23 | right now.  So the Watson defendants would very much like to |
| 10:35:22 | 24 | see a settlement process.  Having said that, I don't want to |
| 10:35:25 | 25 | misrepresent.  The plaintiffs have been very clear that |

15

10:35:28  1   they're not interested in settlement and they haven't made a

10:35:32  2   demand.  So it's up to the Court on how you want to handle

10:35:34  3   that.  We think it would be helpful.

10:35:36  4          MR. STOKES:  And, Your Honor, that is actually not

10:35:38  5   all accurate as to the plaintiff's position.  We've been very

10:35:41  6   clear throughout that we are open to entertaining a reasonable

10:35:44  7   settlement -- reasonable settlement discussions at any time.

10:35:49  8   We have not made a settlement offer.  The defendants have not

10:35:52  9   made a settlement offer that is reasonable.  Mr. Watson made a

10:35:56  10  settlement offer that we rejected and we have asked other

10:36:00  11  defendants whether they want to make a settlement offer.  They

10:36:04  12  have not.  The parties are very far apart.

10:36:06  13         THE COURT:  Well, let's go ahead and enhance the

10:36:08  14  process a little bit.

10:36:10  15         The summary judgment replies are due February 1st,

10:36:15  16  2023.  If we're going to have a hearing that will probably be

10:36:19  17  on February the 8th.  It's been my experience that the parties

10:36:25  18  are more amenable to potential resolution of the case after

10:36:29  19  the Court has issued an opinion on summary judgment, one way

10:36:31  20  or the other.  That's typically been my experience.

10:36:34  21         So what I'm going to do is I'm going to direct that

10:36:37  22  no later than March 1st that you contact Judge Davis's

10:36:42  23  chambers.  Judge Davis is the magistrate judge assigned to the

10:36:45  24  case.  And I'm going to direct that hearing take place or that

10:36:49  25  settlement conference takes place no later than March 15th.

16

| | | |
|---|---|---|
| 10:36:53 | 1 | And the reason why I want to do that is because you all have |
| 10:36:57 | 2 | taken, basically, a month of the Court's calendar, and if |
| 10:37:00 | 3 | there's a possibility that the case can settle or some |
| 10:37:04 | 4 | defendants settle, or the case can be streamlined, that can |
| 10:37:06 | 5 | open up some additional dates for the Court to take on other |
| 10:37:08 | 6 | matters.  So I'm going to direct that you get in touch with |
| 10:37:11 | 7 | Judge Davis's office. |
| 10:37:12 | 8 | If you choose to sort of get ahead of the power |
| 10:37:17 | 9 | curve, to a degree, and want to have a settlement conference |
| 10:37:20 | 10 | or initial settlement conference with Judge Davis prior to the |
| 10:37:23 | 11 | Court's issuance of its decisions on the summary judgment |
| 10:37:26 | 12 | matters that might help too.  So, again, Judge Davis is very |
| 10:37:29 | 13 | amenable to it. |
| 10:37:30 | 14 | Also I would suggest that there are other options |
| 10:37:35 | 15 | for resolution and that is in a case such as this, as big as |
| 10:37:38 | 16 | this, that mediation might not be a bad course scenario. |
| 10:37:44 | 17 | There are several good mediators who are experienced in |
| 10:37:47 | 18 | matters particular to this.  And that might save everybody a |
| 10:37:50 | 19 | whole lot of money if you can take advantage of one of the |
| 10:37:53 | 20 | mediation groups.  I'm not going to direct, but I'm going to |
| 10:37:56 | 21 | encourage that you consider mediation prior to the Court's |
| 10:37:59 | 22 | determinations on its motions for summary judgment.  And if |
| 10:38:02 | 23 | you want some mediators, I can come up with some or you can |
| 10:38:07 | 24 | submit three names and I can choose one out of a hat or |
| 10:38:11 | 25 | however you want to do it.  But again, I think that's a good |

17

| | |
|---|---|
| 10:38:14 | 1 | incentive, particularly in a case such as this.  And |
| 10:38:18 | 2 | particularly when we have, at least, one gentleman who is |
| 10:38:21 | 3 | concerned about how long the case is taking.  So that might be |
| 10:38:23 | 4 | another incentive to settlement. |
| 10:38:26 | 5 | MR. STOKES:  Your Honor is absolutely -- we'll |
| 10:38:30 | 6 | certainly talk with defense counsel about settlement.  Again, |
| 10:38:33 | 7 | we've communicated numerous times now.  We're open to |
| 10:38:36 | 8 | reasonable settlement discussions and it hasn't borne fruit. |
| 10:38:39 | 9 | But we will work with Judge Davis, as you suggest, and talk |
| 10:38:44 | 10 | with defense counsel. |
| 10:38:45 | 11 | THE COURT:  And consider mediation too, because the |
| 10:38:48 | 12 | mediators -- we've been blessed in the Commonwealth of |
| 10:38:52 | 13 | Virginia over the last 20 years with the success and the |
| 10:38:58 | 14 | intelligence of the mediators that are available in Virginia |
| 10:39:02 | 15 | through the various groups McCammon Group Judicial Solutions, |
| 10:39:06 | 16 | all of those real good groups with real good mediators.  And |
| 10:39:09 | 17 | again, I've had cases, similar to this, where the parties gave |
| 10:39:12 | 18 | me three names, I picked one out of a hat, we send it to that |
| 10:39:14 | 19 | mediator and the case was resolved.  And everyone said, wow, |
| 10:39:16 | 20 | that was a really good idea Judge Alston.  And so, maybe this |
| 10:39:22 | 21 | can work again. |
| 10:39:24 | 22 | MR. STOKES:  Yes. |
| 10:39:25 | 23 | THE COURT:  All right.  Anything else we need to |
| 10:39:29 | 24 | take care of? |
| 10:39:29 | 25 | MR. GARNETT:  Your Honor. |

18

10:39:32  1          MR. LITTLE:  I do want to raise my issue.  I let

10:39:33  2   Stan do all the heavy lifting.  I appreciate it.

10:39:35  3          I represent Carl Nelson, he's one of the individual

10:39:37  4   defendants.  He's also the sole owner of Cheshire Ventures.

10:39:42  5   We represent Cheshire Ventures as well.  He adopts all the

10:39:45  6   statements about wanting to go to trial as soon as possible.

10:39:47  7   We appreciate the trial date being set.  He has a separate

10:39:50  8   consideration and request.  My client doesn't really have any

10:39:53  9   money.  He's not been working for Amazon since it started.

10:39:56  10  This is a litigation and a huge burden going against a company

10:40:00  11  the size of Amazon.  We would ask the Court, and I'm happy to

10:40:02  12  do this in a paper motion to excuse the Rule under 83(d)(1)(b)

10:40:07  13  where our local counsel has to be present.  It's just --

10:40:10  14  especially if we're going to have a month long trial.  It's

10:40:13  15  the extra expense of another lawyer for those hours.

10:40:15  16         THE COURT:  For the court reporter, can you state

10:40:15  17  your name, sir?

10:40:17  18         MR. LITTLE:  Yes, it's Alex Little.

10:40:19  19         THE COURT:  Okay.  I understand where you're coming

10:40:24  20  from and I appreciate the cost associated with having local

10:40:27  21  counsel, but there are rules.  Maybe, I'm suggesting that --

10:40:31  22  who is the person -- you're the person who --

10:40:34  23         MR. LITTLE:  No.  My colleague, Rachel Friedman, is

10:40:37  24  here.  She's local counsel for us for our firm for the Nelson

10:40:41  25  defendants.  In a normal case, I would understand.  Here, we

19

| | |
|---|---|
| 10:40:42 | 1 |
| 10:40:46 | 2 |
| 10:40:50 | 3 |
| 10:40:53 | 4 |
| 10:40:57 | 5 |

10:40:42  1  have multiple parties each with local counsel.  The defense,

10:40:46  2  as you'll see, has a fairly concerted and cooperative effort.

10:40:50  3  And so, obviously, if the Court wants her here, she can be

10:40:53  4  here every time, but my clients wanted to make the request.

10:40:57  5  And it's purely an economic issue.

10:40:57  6          THE COURT:  And you're a member of other district

10:40:59  7  courts.

10:40:59  8          MR. LITTLE:  Oh, yes, Your Honor.

10:41:00  9          THE COURT:  Why don't we do this.  Why don't you

10:41:02  10  make a motion pro hac vice and that will suffice, as far as

10:41:07  11  this Court is concerned.

10:41:08  12          MR. LITTLE:  Okay.  We'll do that as well.

10:41:09  13          THE COURT:  And, Counsel, you can support the motion

10:41:11  14  pro hac vice and it's likely, unless there's some serious

10:41:15  15  objection from someone, it will be granted, and that would

10:41:17  16  relieve you from responsibility from showing up in court.

10:41:22  17          MR. LITTLE:  Thank you, Your Honor.

10:41:23  18          MR. GARNETT:  Your Honor, one last pragmatic

10:41:25  19  question.  Particularly as to trial and May 1st.  The defense

10:41:29  20  has already talked to some trial presentation firms to help us

10:41:33  21  with demonstrative exhibits, et cetera.  In the past, and

10:41:38  22  certainly in Colorado, we try to get all of that together 30,

10:41:43  23  60 days prior to trial, and, of course, work with your staff.

10:41:45  24  My question is whether there's a particular person on your

10:41:48  25  staff that you would want us to communicate with about ideas

20

```
10:41:52   1    for presentation, that kind of thing.  What's possible in the

10:41:55   2    Court.

10:41:55   3            THE COURT:  The law clerk that's assigned this case

10:41:58   4    is Ms. Drill.  She's the law clerk assigned to this case and

10:42:07   5    she will coordinate with you the people who will be involved

10:42:11   6    in the technical aspects.  We do have a person who is very

10:42:13   7    good.  And by that time, I'll tell you, it won't be tried in

10:42:16   8    this courtroom.  I'm actually moving to another courtroom.

10:42:20   9    I'm moving to the 10th floor.  Like the Jefferson's, I'm

10:42:21  10    moving on up.  So you'll be able to have advantage of the, I

10:42:25  11    guess, most technologically advanced courtroom in the

10:42:29  12    courthouse.  So that will be an advantage to you.

10:42:33  13            MR. GARNETT:  That's great.  Thank you, Your Honor.

10:42:36  14            THE COURT:  Anything else from anybody?

10:42:37  15            MR. STOKES:  Nothing from the plaintiff, Your Honor.

10:42:39  16            THE COURT:  Wow!  I dealt with 22 lawyers in

10:42:42  17    15 minutes.  That's pretty good.

10:42:44  18            Very good.  Thank you for your presentation.  Stay

10:42:48  19    safe.

10:42:48  20

10:42:52  21            (Proceedings adjourned at 10:42 a.m.)

          22

          23

          24

          25
```

1          CERTIFICATE OF REPORTER

2

3          I, Tonia Harris, an Official Court Reporter for

4     the Eastern District of Virginia, do hereby certify that I

5     reported by machine shorthand, in my official capacity, the

6     proceedings had and testimony adduced upon the Final

7     pretrial conference the case of the **AMAZON.COM, INC., et**

8     **al. versus WDC HOLDINGS LLC, et al**. Civil Action No.:

9     1:20-cv-484, in said court on the 20th day of October,

10    2022.

11          I further certify that the foregoing 21 pages

12    constitute the official transcript of said proceedings.

13          In witness whereof, I have hereto subscribed my

14    name, this October 27, 2022.

15

16

17

18

19

20

21

22          ____/s/_____
              Tonia M. Harris, RPR
23            Official Court Reporter

24

25

                                                                21