IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

AMAZON.COM, INC., *et al*,

    Plaintiffs,

v.                               Case No. 1:20-CV-484-RDA-IDD

WDC HOLDINGS LLC D/B/A NORTHSTAR
COMMERCIAL PARTNERS, *et al*.,

    Defendants.

800 HOYT LLC,

Intervening Interpleader
Plaintiff, Intervening
Interpleader Counter-Defendant,

v.

BRIAN WATSON, *et al.*,

Interpleader Defendants,

And

AMAZON.COM, INC., *et al*.,
Interpleader Defendants,
Interpleader Counter-Plaintiffs.

**<u>MEMORANDUM IN SUPPORT OF</u>**
**<u>DEFENDANT RODNEY ATHERTON'S MOTION FOR SUMMARY JUDGMENT</u>**

    Defendant Rodney Atherton ("Atherton"), by counsel, states as follows in support of his

Motion for Summary Judgment pursuant to Rule 56(a) of the Federal Rules of Civil Procedure

and Local Rule 56:

## INTRODUCTION

For purposes of the present motion, it should be noted that this case has been pending since April 27, 2020. Yet, plaintiffs, Amazon.com, Inc. and Amazon Data Services, Inc ("Plaintiffs" or "Amazon"), did not name Atherton as a defendant in this matter until they filed their Third Amended Complaint and Demand for Jury Trial, ECF no. 765, hereinafter referred to as the "Complaint," on May 6, 2022 – over two years after Plaintiffs first filed suit [Compare ECF 1 and ECF 765]. Much of the prior procedural underpinning of the present action can be found detailed in *Amazon.com, Inc. v. WDC Holdings LLC*, No. 20-1743, 2021 WL 3878403 (4th Cir. Aug. 31, 2021).

Plaintiffs' Complaint alleges the following five claims against Atherton: Count I (RICO), Count II (Detinue), Count V (Civil Conspiracy), Count VII (Unjust Enrichment and Constructive Trust), and Count VIII (Conversion and Constructive Trust). The other claims in the Complaint, Count III (Fraud), Count IV (Tortious Interference with Contractual and/or Business Relations), and Count VI (Breach of Contract), are asserted only against defendants other than Atherton. *See Compl.*, ¶¶ 467, 503, and 521

Plaintiffs' claims here boil down to a dispute between Amazon and two of its former employees, Defendants Carleton Nelson and Casey Kirschner. This is not a case in which the defendants were part of an enterprise that carried out numerous criminal acts against multiple victims. Rather, the Defendants' alleged conduct here was limited to carrying out an alleged "scheme" purportedly "orchestrated" by the two former Amazon employees, with a single "victim" and a discrete goal – allegedly "profiting" from certain Amazon real estate lease and purchase transactions in this District. *See Complaint* at ¶¶ 300, 352, 381; ▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮

This case presents a classic example of a "civil RICO plaintiff[] persist[ing] in trying to fit a square peg in a round hole by squeezing garden-variety business disputes into civil RICO actions."  *Oceanside Lauderdale, Inc. v. Ocean 4660, LLC*, 2010 WL 2044893, *1 (S.D. Fla. May 24, 2010) (quoting *Midwest Grinding Co., Inc. v. Spitz,* 976 F.2d 1016, 1025 (7th Cir. 1992)).  This case does not rise to the level of a RICO violation as a matter of law.  RICO "was never intended to be applied to commonplace commercial controversies" such as these.  *Baker v. Sturdy Built Mfg., Inc.*, 2007 WL 3124881, *4 (E.D. Va. 2007); *see also Flip Mortgage Corp. v. McElhone,* 841 F.2d 531, 538 (4th Cir. 1988) ("[T]his circuit will not lightly permit ordinary business contract or fraud disputes to be transformed into federal RICO claims . . . ." (internal quotation omitted)).

RICO is reserved for "ongoing unlawful activities whose scope and purpose pose a special threat to social well-being." *Baker*, 2007 WL 3124881, at *4 (citing *Menasco, Inc. v. Wasserman,* 886 F.2d 681, 684 (4th Cir.1989)).  The present case "falls squarely within the heartland of [alleged] fraud cases best resolved by state courts."  *Baker*, 2007 WL 3124881, at *4.  Therefore, and for all the reasons set forth below, summary judgment is appropriate and should be granted in favor of Atherton on all of Plaintiffs' claims.

## STATEMENT OF MATERIAL FACTS WITHOUT GENUINE DISPUTE RELEVANT TO ATHERTON'S MOTION FOR SUMMARY JUDGMENT

This statement is submitted pursuant to Rule 56(a) of the Federal Rules of Civil Procedure.  Atherton does not "concede the truth of the allegations of his adversary [Amazon] other than for purposes of [this] motion." *Cram v. Sun. Ins. Office, Ltd.*, 375 F.2d 670, 674 (4th Cir. 1967).

***The Parties:***

1.     Plaintiffs Amazon.com, Inc. and Amazon Data Services, Inc. are Delaware corporations headquartered in Seattle, Washington. Amazon operates many large facilities in Virginia and other parts of the United States. *Compl.* (ECF no. 765), ¶¶ 8-9.

2.     Defendants Carleton Nelson and Casey Kirschner are former real estate transaction managers for Amazon. *Compl.* (ECF no. 765), ¶ 1. Amazon terminated Casey Kirschner's employment in April 2020. *Compl.* (ECF no. 765), ¶ 17. Amazon terminated Carleton Nelson's employment on June 11, 2019. *Compl.* (ECF no. 765), ¶ 20; ███████████
████████████████████████

3.     Defendant Brian Watson is the founder and Chief Executive Officer of Northstar, a full-service real estate and asset management company. *Compl.* (ECF no. 765), ¶ 10. Defendants Sterling NCP, Manassas NCP, and NSIPI Administrative Manager are entities formed and controlled by Watson and Northstar for purposes of executing the Virginia lease transactions at issue in this suit. *Compl.* (ECF no. 765), ¶ 11.

4.     Defendants White Peaks Capital LLC and NOVA WPC LLC are Delaware limited liability companies located in Parker, Colorado and were formed and controlled by non-parties Kyle Ramstetter and William Camenson for the purpose of executing the White Peaks Purchase Transaction at issue in this suit. *Compl.* (ECF no. 765), ¶¶ 49-50.

5.     Defendant Rodney Atherton is a Colorado-licensed attorney who operated the firm Ergo Law, LLC during all relevant times, ████████████. *Compl.* (ECF no. 765), ¶ 21; ██████████████████████████

6.     ███████████████████████████████
████████████████

*Facts Related to Plaintiffs' Claims Against Atherton:*

7. ███████████████████████████████████████████
███████████████████████████████████

8. ███████████████████████████████████████████
█████████████████████████████████████████████
█████████████████████████████████████████████
███████████████████████████

9. ███████████████████████████████████████████
█████████████████████████████████████████████
█████████████████████████████████████████████
█████████████

10. ██████████████████████████████████████████
█████████████████████████████████████████████
█████████████

11.     In July 2017, Amazon, through Casey Kirschner, sent Watson/Northstar a Request for Proposal pertaining to the development of build-to-suit constructions for Amazon in Northern Virginia. *Compl.* (ECF no. 765), ¶ 104.

12.     In September 2017, Northstar responded to the RFP. *Compl.* (ECF no. 765), ¶ 106.

13.     Amazon subsequently selected Northstar as a development partner for a total of nine lease transactions (the "Lease Transactions"), pursuant to which Northstar and its joint venture partner would purchase and develop four properties, consisting of nine buildings, over a

two-year period and lease them to Amazon. *Compl.* (ECF no. 765), ¶ 111; █████████████

████

    14.   ████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████

    ██   ████████████████████████████████████

████████████████████████████████████████████████

████████

    ██   ████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████  ██████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████

    ██   ████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████

    ██   ████████████████████████████████████

████████████████████████████████████████████████

26.



████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████████

██    ████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████

37.    **Atherton adopts and incorporates herein by reference the subsection of the Watson Defendants' Statement of Undisputed Facts entitled "The Lease Transactions" and the supporting documents referenced therein and attached thereto.**

38.    **Atherton adopts and incorporates herein by reference the subsection of the Nelson Defendants' Statement of Undisputed Facts entitled "Facts related to purported damages" and the supporting documents referenced therein and attached thereto.**

## STANDARD OF REVIEW

The "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).  A motion for summary judgment may be granted if the pleadings, depositions, answers to interrogatories and admission, together with any affidavits, if any, show that there is no genuine issue as to any material fact.  *See Powers v. Sims & Levin Realtors*, 396 F. Supp. 12 (E.D. Va. 1975), *rev'd in part on other grounds*, 542 F.2d 1216 (4th Cir. 1976).

"[U]nsubstantiated allegations and bald assertions" are not adequate to defeat summary judgment.  *See Evans v. Tech. Application & Serv. Co.*, 80 F.3d 954, 960 (4th Cir. 1996). "Summary judgment is to avoid a useless trial.  It is a device to make possible the prompt disposition of controversies on their merits without a trial, if in essence there is no real dispute as to the salient facts."  *Bland v. Norfolk & Southern Ry. Co*., 406 F.2d 863, 866 (4th Cir. 1969) (citing 6 *Moore's Federal Practice*, ¶ 56.15[1]; 3 Barron & Holtzoff, *Federal Practice and Procedure* (Wright's ed. 1958) § 1231)).

## ARGUMENT

### I.     Atherton is Not an Insurer of His Clients' Actions.

An attorney is not liable to a non-client for professional malpractice.  *Wong v. Aragona*, 61 F.3d 902 (4th Cir. 1995) (quoting *Flaherty v. Weinberg,* 492 A.2d 618 (Md. Ct. Spec. App. 1985)). The case law is clear that in order to establish liability for negligence against an attorney, the plaintiff must show the existence of a duty owed to the plaintiff by the attorney, a breach of that duty, and damages arising from the breach.  *Allen v. Steele* 252 P.3d 476 (Colo. 2011); *see also In re Hanes*, 214 B.R. 786, 823 (Bankr. E.D. Va. 1997).

Even as to trust beneficiaries (which Plaintiffs here do not claim to be), the courts recognize the general rule that beneficiaries have no attorney–client relationship with the executor's lawyer. *Id.; see e.g., Weingarten v. Warren,* 753 F. Supp. 491, 496–97 (S.D.N.Y.1990) (court dismissed claim for malpractice brought by a trust beneficiary against counsel for the trustee on the basis of no privity); *Copenhaver v. Rogers*, 384 S.E.2d 593 (Va. 1989) (grandchildren, remaindermen under grandparents' testamentary trust, were precluded from bringing a legal malpractice action in tort for negligent performance of legal services, absent privity, or an intended third-party beneficiary claim absent allegations that they were the intended beneficiaries of contract); *accord* Ronald E. Mallen & Jeffrey M. Smith, *Legal Malpractice* § 31.4 (4th ed. 1996) ("An attorney for a trustee owes no legal duty to the beneficiaries of a trust.").

Plaintiffs' arguments, if accepted, would make legal counsel a defendant in every case brought by an aggrieved third party against a client who utilized legal entities constructed by the attorney. In short, Plaintiffs seek to make Atherton an insurer of his clients' actions regardless of the lack of duty owed to the Plaintiffs by attorney Atherton, the lack of any breach of that duty, and the lack of any damages arising from the alleged breach. Plaintiffs' position is untenable under Virginia law and summary judgment should be granted in Atherton's favor.

## II.   The Undisputed Material Facts Do Not Establish Any Violation of the RICO Statute (Count I).

RICO was enacted to "seek the eradication of organized crime in the United States . . . by providing enhanced sanctions and new remedies to deal with the unlawful activities of those engaged in organized crime." Pub. L. No. 91–452, 84 Stat. 922 (1970). Although RICO is "essentially a criminal statute, [it] provides for civil penalties by private parties who have been

injured 'by reason of' a RICO violation." *Katzman v. Victoria's Secret Catalogue,* 167 F.R.D. 649, 654–55 (S.D.N.Y.1996) (quoting 19 U.S.C. § 1964(c)).

"The showing required to succeed on a RICO charge in the Fourth Circuit is both demanding and well-established." *Baker v. Sturdy Built Mfg., Inc.*, 2007 WL 3124881, *3 (E.D. Va. Oct. 23, 2007).  To state a claim, Plaintiffs must allege: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *D'Addario v. Geller*, 264 F. Supp. 2d 367, 388 (E.D. Va. 2003) (citing *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)).  Plaintiffs must also show (5) they were injured in their business or property (6) by reason of the RICO violation. *Id.*

The injury and causation elements of RICO claims are considered standing requirements. *See, e.g., Gallant v. Deutsche Bank Nat. Trust Co.,* 766 F. Supp. 2d 714, 722 (W.D. Va. 2011). "Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court . . ." 18 U.S.C. § 1964(c). A person who is not injured in his business or property by reason of the RICO violation does not have standing to assert a RICO claim.  *See Sedima*, 473 U.S. at 496.

A. **Plaintiffs' RICO Claim Does Not Allege the Type of Organized Criminal Activity RICO was Designed to Remedy. Plaintiffs' Allegations Fail Globally But Also Specifically As To Atherton.**

Although Plaintiffs attempt to frame the facts in terms of a prolonged, sophisticated embezzlement scheme, this dispute actually involves the alleged actions of two employees against a single corporation.  That the purported scheme may have extended over the course of a number of years and involved a substantial amount of money does not place it in the category of cases Congress intended to address through RICO.  As the Fourth Circuit noted in *McElhone*: "[A] great many ordinary business disputes arising out of dishonest business practices or

doubtful accounting methods ... could be described as multiple individual instances of fraud, if one chose to do so.  But to adopt such a characterization would transform 'every such dispute ... [into] a cause of action under RICO.'"  *Id.* (quoting *HMK,* 828 F.2d at 1074); *Biggs v. Eaglewood Mortg. LLC*, 636 F. Supp. 2d 477, 479–80 (D. Md.), *aff'd,* 353 F. App'x 864 (4th Cir. 2009).

Summary judgment should also be granted in Atherton's favor as to Plaintiffs' RICO claim because Atherton's conduct specifically does not rise to the level of organized criminal activity that RICO was designed to remedy.  For attorney conduct to give rise to RICO liability, the attorneys must go "well beyond their capacities as legal representatives." *Morrow v. Blessing,* 2004 WL 2223311, *4–*5 (E.D. Pa. 2004) (finding that attaching allegedly false letters to legal documents in state court proceedings "by a lawyer in the context of representing clients in litigation simply cannot constitute mail fraud under RICO and, therefore, cannot constitute a RICO predicate act").[1]

Critically, "a scheme or artifice to defraud under the mail or wire fraud statutes is not satisfied by merely alleging unethical conduct by a lawyer." *Meier v. Musburger,* 588 F. Supp. 2d 883, 902 (N.D. Ill. 2008); *see also Lockwood v. Sheppard, Mullin, Richter & Hampton, LLP*,

---

[1] Similarly, breach of contract and breach of fiduciary duty are not among the crimes recognized as racketeering under RICO. *See LaVay Corp. v. Dominion Fed. Savings & Loan,* 830 F.2d 522, 529 (4th Cir. 1987) ("under no circumstances could a breach of fiduciary duty constitute a pattern of racketeering activity"); *Manion v. Freund,* 967 F.2d 1183, 1186 (8th Cir. 1992) ("breach of fiduciary duty is not one of the specified state crimes listed in the definition of 'racketeering activity,' 18 U.S.C. § 1961(1), and thus could not have supported a civil RICO claim"), *Selman v. Am. Sports Underwriters, Inc.,* 697 F. Supp. 225, 232 (W.D. Va. 1988) (breach of employment contract does not satisfy RICO's pattern requirement), *McEvoy Travel Bureau, Inc. v. Heritage Travel, Inc.,* 904 F.2d 786, 791 (1st Cir. 1990), *cert. denied,* 498 U.S. 992 (1990) (breach of contract does not constitute a scheme to defraud).

2009 WL 9419499, *5-*7 (C.D. Cal. 2009) (cited in "Inequitable conduct generally will not support a RICO violation" § 27:112, 4 *Annotated Patent Digest* § 27:112).

In this case, Plaintiffs do not allege that Atherton suborned perjury or falsified evidence; instead, Plaintiffs merely allege that Atherton created and organized legal business entities that Plaintiffs allege were ultimately used in violation of RICO. ██████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████Setting aside that attorneys owe the duties of competence and diligence to their clients, not to outside parties such as Amazon, alleged unethical conduct is insufficient as a matter of law to support a RICO claim, as explained above.

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████

Relatedly, the provision of traditional legal services does not constitute the "operation or management" of an enterprise for purposes of RICO liability.  *See e.g., Azrielli v. Cohen Law Offices,* 21 F.3d 512, 521–522 (2d Cir. 1994) (dismissing RICO claim against attorney who "acted as no more than [an] attorney"); *Rolfes v. MBNA Am. Bank N.A.,* 416 F. Supp. 2d 745, 752 (D.S.D. 2005) (dismissing plaintiff's RICO claim against attorneys who provided "ordinary

professional assistance"); *Petri v. Gatlin,* 997 F. Supp. 956, 986 (N.D. Ill. 1997) (although an accountant, like an attorney, "manages" several aspects of its client's matters, that type of "management" is not synonymous with the "operation or management" of an enterprise required to sustain a RICO claim; collecting cases); *Menuskin v. Williams,* 940 F. Supp. 1199, 1210 (E.D. Tenn. 1996), *aff'd in part & rev'd in part on other grounds*, 145 F.3d 755 (6th Cir. 1998) (dismissing RICO claim against attorney who did not do "anything more than provide standard, routine services for [plaintiff]"); *Bailey v. Trenam Simmons, Kemker, Scharf, Barkin, Frye & O'Neill, P.A.,* 938 F. Supp. 825, 827 (S.D. Fla. 1996) ("[P]roviding standard legal services does not create RICO liability under the operation and management standard."); *Gilmore v. Berg,* 820 F. Supp. 179, 183 (D.N.J. 1993) (lawyer's preparation of allegedly misleading tax opinion letter merely constituted the rendition of legal services, not participation in the direction of the affairs of the enterprise).

This Court recognizes that "[p]roviding services that benefit an enterprise, even if those services are important and indispensable, is not sufficient to support RICO liability because it does not amount to operation or management." *Goodweather v. Parekh*, 2021 WL 4149030, at *10 (E.D. Va. Sept. 10, 2021) (citing *Univ. of Maryland v. Peat, Marwick, Main & Co.*, 996 F.2d 1534, 1538-39 (3d Cir. 1993); and *Handeen v. Lemaire*, 112 F.3d 1339, 1348 (8th Cir. 1997) ("Furnishing a client with ordinary professional assistance, even when the client happens to be a RICO enterprise, will not normally rise to the level of participation sufficient to satisfy the Supreme Court's pronouncements in *Reves*.")).

As to Atherton, the undisputed facts fail to establish the operation or management of an enterprise.  The undisputed material facts establish that only Atherton provided traditional legal services, which do not constitute the "operation or management" of an enterprise for purposes of

RICO liability.  In short, "[s]imply because one provides goods or services that ultimately benefit the enterprise does not mean that one becomes liable under RICO." *Univ. of Md. at Baltimore v. Peat, Marwick, Main & Co.*, 996 F.2d 1534, 1539 (3d Cir. 1993), *abrogated on other grounds*, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

Summary judgment should be granted in Atherton's favor on Count I because neither the global facts of the purported "scheme" nor the facts of Atherton's conduct specifically are sufficient as a matter of law to support the finding of a RICO violation.

### B.  Plaintiffs' Speculative Theory Fails to Establish Requisite Causation or Injury.

There are additional fatal deficiencies in Amazon's attempted RICO claim. The Supreme Court has stated that "under civil RICO [claims], the plaintiff is required to show that a RICO predicate offense not only was a 'but for' cause of his injury, but was the proximate cause as well." *Hemi Group, LLC v. City of New York,* 559 U.S. 1, 2 (2010) (internal quotation marks omitted).  To ultimately carry this burden, a plaintiff must demonstrate "some direct relation between the injury asserted and the injurious conduct alleged.'  A link that is 'too remote,' 'purely contingent,' or 'indirec[t]' is insufficient." *Id.* (quoting *Holmes v. Sec. Investor Prot. Corp.,* 503 U.S. 258, 271 (1992)); *Anza v. Ideal Steel Supply Corp*., 547 U.S. 451, 461 (2006) ("When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries.").

Here, Plaintiffs do not have standing to assert a claim for civil damages under 18 U.S.C. § 1964(c) because they fail as a matter of law to establish that the alleged RICO violation led to any injury. 18 U.S.C. § 1964(c); *Bast v. Cohen, Dunn & Sinclair, PC*, 59 F.3d 492, 495 (4th Cir. 1995) (citing *Brandenburg v. Seidel,* 859 F.2d 1179, 1187 (4th Cir. 1988)).  Amazon bears the burden of proving that it has been damaged, and it has not done so.

Virginia law, and federal civil law, follow the "actual loss" rule for fraud and require damages as an element of the fraud. *ITT Hartford Grp., Inc. v. Va. Fin. Assocs., Inc.*, 520 S.E.2d 355, 361 (Va. 1999) (to support a claim of fraud, the plaintiff must prove resulting damage to the complaining party); *Lloyd v. Smith*, 142 S.E. 363, 367 (Va. 1928) ("[T]he facts showing the fraud and the resulting damage must be alleged."); *Brown v. Gilner*, 2012 WL 4473086 (E.D. Va. Sept. 25, 2012) (unpublished). Plaintiffs' damages theory here rests solely upon supposition and conjecture.

Plaintiffs cannot and have not established that the payments by Northstar to Villanova Trust, some of which ultimately trickled down to loans made to Nelson and Casey Kirschner (or entities associated with them), resulted in higher payments to Amazon in the Lease Transactions. Because Amazon is keeping the properties at issue, its actual loss must be measured by the value of the properties versus the price it paid for the properties. Amazon conspicuously does not allege that the leased properties were at above-market rents or that it paid more than it should have for the property.  Nor does it contend that it does not want the properties. Amazon specifically has chosen to affirm its leases on the properties and is not seeking rescission of any purchase.

Amazon has made no attempt to prove that it paid above-market prices or the Lease Transactions or Direct Purchase Transactions. Plaintiffs are reduced to vague assertions and speculation in order to bridge this critical causal gap.



As such, **and for the reasons set forth in Argument A of the Watson Defendants' Brief in Support of Summary Judgment, which is adopted and incorporated by reference herein**, Amazon has no viable claim for compensable damages. Atherton's Motion for Summary Judgment should be granted on this basis as well.

### C. The Undisputed Facts Fail to Establish a Distinct RICO "Enterprise."

RICO defines an "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).   "'The enterprise is an entity, for present purposes a group of persons associated together for a common purpose of engaging in a course of conduct[,]'" and 'is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit.'"   *United States v. Turkette,* 452 U.S. 576, 583 (1981).

The Supreme Court has made clear that "the existence of an enterprise is an element distinct from the pattern of racketeering activity." *Boyle v. United States*, 556 U.S. 938, 947 (2009) (citing *Turkette*, 452 U.S. at 583).   Accordingly, where the enterprise allegedly exists solely for the purpose of carrying out the fraudulent predicate acts at issue—and thus does not exist to facilitate any other ongoing criminal activity—this "distinctness" requirement is not met.

The alleged purpose of the enterprise alleged in this case was to carry out an alleged "kick back" scheme involving real estate purchases and leases made by Amazon.  However, the alleged "scheme" was a single, discrete scheme that was completed upon the termination of the two former employees' employment with Amazon.  *See, e.g., Millette v. DEK Techs., Inc.*, No. 08-60639-CV, 2008 WL 5054741, at *5 (S.D. Fla. Nov. 25, 2008) (internal citation omitted) ("While the Amended Complaint alleges with specificity the actors in the fraud…Plaintiff has not sufficiently alleged a RICO enterprise because…this group of individuals and entities associated only for this project. As a result, the alleged 'enterprise' was a group simply conspiring to commit a fraud and not functioning as a racketeering organization.").

Count I must therefore be dismissed on the additional and independently sufficient ground that the alleged "enterprise" does not have a separate existence distinct from the "pattern" of racketeering acts it is alleged to have carried out.  *See Montoya v. PNC Bank, N.A.*, 94 F. Supp. 3d 1293, 1312-14 (S.D. Fla. 2015) (collecting cases); *Marshall v. City of Atlanta*, 195 B.R. 156, 168 (N.D. Ga. 1996) (citing *inter alia Turkette,* 452 U.S. at 583 ("Racketeering acts may be used to establish an enterprise, but the separate existence of an enterprise consisting of an association with a common purpose and continuity of structure, distinct from the pattern of racketeering activity in which it allegedly has engaged, must be alleged.").

**D.  One Alleged "Scheme" with One "Victim" Cannot Sustain a RICO Claim.**

RICO does not target sporadic activity – such as alleged activity involving a single victim or scheme – where the threat of continued criminal activity is unlikely.  *See Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 497 n.14 (1985).  Courts commonly dismiss RICO claims when only a single scheme with few victims is alleged.  *See Bivens v. Roberts*, No. 208CV026, 2009 WL 891859, at *9–10 (S.D. Ga. Mar. 31, 2009) ("[I]t is common for courts to dismiss RICO claims when only a single scheme with few victims is alleged.").[2]

Courts are especially wary of RICO claims based on disputes between one or a few parties that arise out of a contract between the parties.  *E.g., Vild v. Visconsi*, 956 F.2d 560, 569 (6th Cir. 1992) (dismissing RICO claim for lack of continuity where "the acts alleged amount at best to a breach of contract with a single customer"); *Revlon, Inc. v. S. Rauch Mktg., Inc.*, 661 F. Supp. 262, 265 (S.D.N.Y. 1987) (citations omitted) ("Simply put, the violation of a single contract, or breaching the same promise more than once is not an act 'sufficiently unrelated to pose a threat of continuing criminal activity.'").

To meet this so-called "continuity" requirement, a "plaintiff in a RICO action must allege either an open-ended pattern of racketeering activity (*i.e.*, past criminal conduct coupled with a threat of future criminal conduct) or a closed-ended pattern of racketeering activity (*i.e.*, past

---

[2] Circuits across the country have held accordingly. *Efron v. Embassy Suites (Puerto Rico), Inc.*, 223 F.3d 12, 21 (1st Cir .2000) ("Taken together, the acts as alleged comprise a single effort, over a finite period of time, to wrest control of a particular partnership from a limited number of its partners.  This cannot be a RICO violation."); *Edmondson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260, 1265 (D.C. Cir. 1995) (combination of "single scheme, single injury, and few victims...makes it virtually impossible for plaintiffs to state a RICO claim"); *Sil-Flo, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1516 (10th Cir. 1990) (affirming dismissal of RICO claim where a "closed-ended series of predicate acts...constituted a single scheme to accomplish 'one discrete goal,' directed at one individual with no potential to extend to other persons or entities") (citation omitted)).

criminal conduct extending over a substantial period of time).”  *Grace Int'l Assembly of God v. Festa*, 797 Fed. Appx. 603, 605, 2019 U.S. App. LEXIS 38777, *3-4, 2019 WL 729387.

Courts have also cautioned against finding continuity arising from commercial disputes where the scheme is based on alleged predicate acts of mail and/or wire fraud.  *See, e.g., U.S. Textiles, Inc. v. Anheuser-Busch Companies, Inc.*, 911 F.2d 1261 (7th Cir. 1990),   Indeed, “[v]irtually every garden-variety fraud is accomplished through a series of wire or mail fraud acts that are 'related' by purpose and spread over a period of at least several months.”  *Id.* (citation omitted); *see also Al–Abood ex rel. Al–Abood v. El–Shamari,* 217 F.3d 225, 238 (4th Cir. 2000) (citation omitted) (“[i]t will be the unusual fraud that does not enlist the mails and wires in its service at least twice.”).

The limited real estate transactions involved here do not support continuity under RICO as a matter of law. Summary judgment in favor of Atherton is appropriate for this additional reason.

### III.     The Undisputed Material Facts Do Not Establish A Claim for Detinue (Count II).

As noted above, Plaintiffs' RICO claim presents a classic example of a “civil RICO plaintiff[] persist[ing] in trying to fit a square peg in a round hole by squeezing garden-variety business disputes into civil RICO actions.”  *Oceanside Lauderdale, Inc.,* 2010 WL 2044893, at *1 (citation omitted).  Similarly, Plaintiffs' detinue claim is an example of attempting to force a business dispute into a particularized state remedy in which it does not fit.

An action for detinue under Virginia law is a particularized remedy specific to the unlawful detainer of the specific property sued for, not any other property, and not a money obligation due from the defendant to the plaintiff.  *See, e.g., Virginia Land Immigr. Bureau v. Perrow,* 119 Va. 831, 836, 89 S.E. 891, 892 (1916).  As described by the Supreme Court:

> a "[s]uit for a sum of money is to be distinguished from *suit for specific currency or coins in which the plaintiff claims a present possessory interest. Specific relief is available for that, through a suit at law for replevin or detinue*, *see generally*, D. Dobbs, *Law of Remedies* § 5.13, p. 399 (1973); J. Cribbett, *Cases and Materials on Judicial Remedies* § 3, pp. 94–116 (1954), or through a suit in equity for injunctive relief, if the currency or coins in question (for example, a collection of rare coins) are "unique" or have an incalculable value. That is obviously not the case here. Respondent seeks fungible funds, not any particular notes in the United States Treasury.

*Bowen v. Massachusetts*, 487 U.S. 879, 919 (1988) (emphasis added).

As Virginia courts have recognized: "[M]ore certainty is required in a detinue action than in other cases because the specific property sued for is sought to be recovered, and it is therefore necessary for that the property be specifically identified or clearly distinguishable from other property." *Eung Hee Lee v. Moon Sik Park*, 73 Va. Cir. 219, 2007 WL 6013571 (Fairfax Co. Cir. Ct. 2007) (citing 66 Am.Jur.2d REPLEVIN, § 138, 580). "The importance of specifically identifying personal property sought in a detinue action is confirmed by the following statement from Judge Burks' treatise:

> As the [detinue] action is to recover specific personal property, it must be described with reasonable certainty, so that possession may be given of it if recovered. Such a general description as "one horse," or so much money not marked in any way, would not be sufficient.

*Id*. at *15 (citing *Burks' Pleading and Practice,* 4th edition, § 128, 242).

In the present case, Plaintiffs do not allege that any specific property has been detained. Indeed, Plaintiffs' Complaint does not seek to recover specific property at all, but rather alleged "money obligation[s allegedly] due from defendant[s] to the plaintiffs" – fungible funds – and the very antithesis of a detinue action. *Virginia Land Immigr. Bureau*, 119 Va. at 836, 89 S.E. at 892.

As to defendant Atherton, Plaintiffs' Complaint seeks to bring a detinue action against him, not to recover any specific personal property whatsoever, but rather for his role in forming trusts and corporate structures that may have received certain fungible funds. *See Compl.* (ECF no. 765), ¶¶ 298-303, 461. This claim could not be further from a cognizable detinue action under Virginia law and, accordingly, summary judgment should be granted in Atherton's favor on Plaintiffs' detinue claim.

**IV.    The Undisputed Material Facts Do Not Establish Any Civil Conspiracy (Count V).**

This Court has held that "[c]ivil conspiracy is not an independent cause of action, but requires an underlying wrong which would be actionable absent the conspiracy." *Xia Bi v. McAuliffe*, 2018 WL 4224850, at *2 (E.D. Va. Sept. 5, 2018), *aff'd*, 927 F.3d 177 (4th Cir. 2019), *as amended* (July 9, 2019); *see also Jackson v. BellSouth Telecoms.*, 372 F.3d 1250, 1269 (11th Cir. 2004) (citing *United States v. Vaghela,* 169 F.3d 729, 732 (11th Cir. 1999) ("To be guilty of conspiracy,…parties must have agreed to commit an act that is itself illegal—parties cannot be found guilty of conspiring to commit an act that is not itself against the law."). "Thus, where a plaintiff fails to state a RICO claim and the conspiracy count does not contain additional allegations, the conspiracy claim necessarily fails." *Rogers v. Nacchio*, 241 F. App'x 602, 609 (11th Cir. 2007) (per curiam) (citing *Jackson*, 372 F.3d at 1269) (dismissing RICO conspiracy claim where the court "found that the complaint failed to state a substantive RICO claim, and the RICO conspiracy adds nothing."); *see also GE Inv. Private Placement Partners II v. Parker*, 247 F.3d 543, 551 n.2 (4th Cir. 2001) ("Because the pleadings do not state a substantive RICO claim under § 1962(c), Plaintiffs' RICO conspiracy claim fails as well.").

Here, Count V of the Complaint for "Civil Conspiracy" adds no new factual allegations, but instead generally alleges as to all Defendants: "As alleged herein, the Defendants have

conspired to induce breach of contract and engage in fraud, tortious interference with contractual and business relationships, and unlawful racketeering and enterprise activities against Plaintiffs and others." Complaint at ¶ 515. But with the exception of the RICO count, none of the other referenced claims even purport to name defendant Atherton. Specifically, Counts III (Fraud), Count IV (Tortious Interference with Contractual and/or Business Relations), and Count VI (Breach of Contract) do not name Atherton. Because Plaintiffs do not bring these claims against Atherton, the claims cannot be the basis of a civil conspiracy claim against Atherton.

With regard to Plaintiffs' RICO claim, the lack of causation and damages is as fatal to Plaintiffs' conspiracy claim as it is to Plaintiffs' substantive RICO claim. A common law claim for civil conspiracy requires Plaintiffs to prove that they sustained "damages as a result of an act that is itself wrongful or tortious" which was done under the conspiracy. *Dunlap v. Cottman Transmission Sys., LLC*, 754 S.E.2d 313, 316-17 (Va. 2014); *CaterCorp., Inc. v. Catering Concepts*, Inc., 246 Va. 22, 28, 431 S.E.2d 277 (1993). Similarly, because the undisputed facts fail to support a claim under RICO, as detailed above, then Plaintiffs' civil conspiracy claim also necessarily fails. *GE Investment Private Placement Partners II v. Parker,* 247 F.3d 543, 551 n. 2 (4th Cir.2001) (*citing Efron v. Embassy Suites (Puerto Rico), Inc.,* 223 F.3d 12, 21 (1st Cir.2000), *cert. denied,* 532 U.S. 905 (2001)); *Jackson,* 372 F.3d at 1269 (dismissing RICO conspiracy claim that "simply conclude[d] that the defendants 'conspired and confederated' to commit conduct which in itself does not constitute a RICO violation").

Moreover, as a well-established principle of Virginia law, an agent cannot conspire with its principal. *See Fox v. Deese,* 234 Va. 412, 362 S.E.2d 699, 708 (1987). As counsel for defendants Carleton Nelson, Casey Kirschner, Allcore, CTBSRM, and the 2010 Irrevocable Trust, Atherton is their agent. Summary judgment of the conspiracy claim against Atherton is

accordingly appropriate both for all the reasons stated above and because an agent cannot conspire with his principal. *See, e.g., Michigan Mut. Ins. Co. v. Smoot*, 128 F. Supp. 2d 917, 925 (E.D. Va. 2000).

### V.     The Undisputed Material Facts Do Not Establish A Claim for Unjust Enrichment and Constructive Trust (Count VII).

To prove unjust enrichment under Virginia law, Plaintiffs must satisfy the three-part test adopted in *Schmidt v. Household Fin. Corp., II*, 276 Va. 108, 116, 661 S.E.2d 834 (2008). The three elements are:

> (1) the plaintiffs conferred a benefit on the defendant,
>
> (2) the defendant knew of the benefit and should reasonably have expected to repay the Plaintiffs, and
>
> (3) the defendant accepted or retained the benefit without paying for its value.

*NorthStar Aviation, LLC v. Alberto*, 332 F. Supp. 3d 1007, 1021 (E.D. Va. 2018) (*citing Firestone v. Wiley,* 485 F. Supp. 2d 694, 704 (2007)); *James G. Davis Center Constr. Corp. v. FTJ, Inc*., 298 Va. 582, 597, 841 S.E. 2d 642, 650 (Va. 2020); *Schmidt v. Household Fin. Corp., II*, 276 Va. 108, 116, 661 S.E.2d 834 (2008).

Here, Plaintiffs' unjust enrichment claim fails because Plaintiffs' Complaint and the undisputed facts fail to establish a "benefit" conferred upon Atherton by Plaintiffs. Plaintiffs' Complaint clearly states that defendants "Nelson and Kirschner paid Atherton." *Compl.* (ECF no. 765), ¶ 294. Atherton was paid for legal services rendered to his clients. Nowhere does the Complaint allege Amazon conferred a benefit upon Atherton. Summary judgment in favor of Atherton on Plaintiffs' unjust enrichment claim is therefore appropriate.

**VI.** **The Undisputed Material Facts Do Not Establish Any Claim for Conversion and Constructive Trust (Count VII).**

To prove conversion under Virginia law, Plaintiffs must prove the following elements by preponderance of evidence:

> (1) The ownership or right to possession of the property at issue at the time of the conversion, and

> (2) The defendant's wrongful exercise of dominion or control over the Plaintiffs' property depriving Plaintiffs of possession (or inconsistent with the Plaintiffs' rights).

*Fed. Ins. Co. v. Smith*, 144 F. Supp. 2d 507, 517-18 (E.D. Va. 2001); *Economopoulos v. Kolaitis*, 259 Va. 806, 528 S.E.2d 714, 719 (2000); *Bader v. Central Fid. Bank*, 245 Va. 286, 427 S.E.2d 184, 186 (1993).

Under Virginia law, "money can only be the subject of a conversion claim in limited circumstances, including when it is part of a segregated or identifiable fund." *Stallard v. Bank of Am., N.A.*, 2015 WL 5579904, at *8 (E.D. Va. Sept. 22, 2015) (quoting *Jones v. Bank of Am. Corp.,* 2010 WL 6605789, at *5 (E.D. Va. Aug. 24, 2010)); *see also Opportunities Dev. Grp., LLC v. Andruss*, 2015 WL 2089841, at *9 (E.D. Va. 2015) (quoting *McNamara v. Picken,* 950 F. Supp. 2d 193, 194 (D.D.C. 2013)) ("Money can be the subject of a conversion claim. . . if the plaintiff has the right to a specific identifiable fund of money."). A segregated or identifiable fund is one separate from the defendant's general funds and one to which plaintiff is entitled. *See, e.g. Opportunities Development Group*, 2015 WL 2089841, at *9 (holding that the plaintiff had alleged sufficient facts to support a conversion claim when the defendant, a corporate officer, made unauthorized transactions for personal use with a company credit card that accessed a specific corporate bank account); *Stallard,* 2015 WL 5579904, at *8 (holding, under District of Columbia law, that the allegedly converted funds were not segregated or specifically

27

identifiable because the money the plaintiff allegedly overpaid was not in any way separated from the other amounts he paid).

Amazon's conversion claim is for money from co-mingled bank accounts. Plaintiffs admit that Atherton, acting as a lawyer, formed and organized legal trusts and business entities for his clients. Plaintiffs' Complaint admits that Atherton was paid legal fees directly by his clients. *Compl.* (ECF no. 765), ¶ 294. The money paid is intangible.

Plaintiffs seek to recover an undefined amount of money from payments made by Atherton's clients to him as counsel. This is not the type of property that courts have recognized may form the basis for a conversion claim. Plaintiffs have never differentiated between payments of fees that Atherton received for legal services rendered, nor can they. The undisputed facts show that the money Plaintiffs seek is not specific or capable of identification and Plaintiffs have not shown ownership or the right to possess specific, identifiable money. As neither Virginia case law nor basic principles of tort law support Plaintiffs' theory of conversion, summary judgment should be granted in Atherton's favor on Count VII.

### VII.   Plaintiffs' Claims Against Atherton Are Barred In Part By The Statutes Of Limitations.

Plaintiffs' Complaint did not name Atherton as a defendant in this matter until May 6, 2022 – five years after many of the alleged predicate acts occurred and over two years after Plaintiffs first filed suit against other defendants [Compare ECF 1 and ECF 764]. Although RICO does not say what limitations period governs the filing of civil RICO claims, the Supreme Court has held that civil RICO actions are subject to a four-year limitations period. *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 183 (1997); *see also Potomac Electric Power Co. v. Electric Motor and Supply, Inc.,* 262 F.3d 260 (4th Cir. 2001). Accordingly, all alleged predicate acts before May 6, 2018 are time barred as to Atherton.

Many if not most of the predicate acts alleged by Plaintiffs' Complaint occurred before May 6, 2018. *See, e.g., Compl.* (ECF no. 765), ¶¶ 35, 41, 45, 48, 64, 92, 96, 98, 101, 103, 106, 123, 129, 131, fn 2-5, 133, 136, 137, 152, 163, 181, 185, 196, 198, 205, 364, 387, and 400. By Plaintiffs' allegation, "[t]he predicate acts in the RICO Enterprise . . . [began] with the scheme beginning in or before September 2017 . . ." *Compl.* (ECF no. 765), ¶ 387. Plaintiffs' Complaint alleges predicate facts dating back to May 8, 2017, when defendant Renrets, LLC ("Renrets") was formed and organized. *Id.* at ¶ 45. Plaintiffs' Complaint alleges that "Nelson, Kirschner, Atherton, and Von Lacey conspired to use Renrets to facilitate the kickback scheme and conceal their illicit gains" and that "the monetary benefits provided to Nelson and Kirschner were facilitated and concealed by various trusts: [including] Renrets . . . ." *Id.* at ¶¶ 48, 198. Plaintiffs admit that Amazon "began its relationship with Northstar in or around September 2017." *Id.* at ¶ 96. Likewise, Plaintiffs state that "Nelson and Kirschner's engagement with Watson and Northstar for the Lease Transactions dates back to at least July 2017." *Id.* at ¶ 101.

A civil RICO action accrues as soon as the plaintiff discovers, or should have discovered, the injury. *Potomac Elec. Power Co. v. Elec. Motor & Supply, Inc.*, 262 F.3d 260, 266 (4th Cir. 2001) (quoting *Klehr,* 521 U.S. at 183). A plaintiff "may not 'bootstrap' time-barred claims by linking them to later, non-time-barred claims." *Id.* In *Klehr*, the Supreme Court granted summary judgment in favor of defendants, finding RICO claims untimely and refused to apply a "last predicate act" rule for determining when a civil RICO action accrues, reasoning:

> Because a series of predicate acts . . . can continue indefinitely, such an interpretation, in principle, lengthens the limitations period dramatically. It thereby conflicts with a basic objective—repose—that underlies limitations periods. Indeed, the rule would permit plaintiffs who know of the defendant's pattern of activity simply to wait, sleeping on their rights, as the pattern continues and treble damages accumulate, perhaps bringing suit only long after the memories of witnesses have faded or evidence is lost.

*Klehr,* 521 U.S. at 187 (1997) (internal cites omitted).

This Court should not allow Amazon's attempt to sleep on its rights for five years before adding Atherton over two years into this pending litigation.  The fact that there were 763 docket entries in this Court's docket between the filing of Plaintiffs' initial complaint and the present Complaint joining Atherton is evidence of the detriment to Atherton caused by Plaintiffs' unjustified delay. [Compare ECF 1 and ECF 764].

Just as summary judgment based on the statute of limitations is appropriate on Plaintiffs' RICO claim as to defendant Atherton, so too is it appropriate as to Count II (Detinue), Count V (Civil Conspiracy), Count VII (Unjust Enrichment and Constructive Trust), and Count VIII (Conversion and Constructive Trust).[3]

### VIII.   Adoption of Co-Defendants' Summary Judgment Arguments

Atherton adopts and incorporates herein by reference all arguments made by the Watson Defendants and the Nelson Defendants that also apply to the claims against Atherton.

### CONCLUSION

WHEREFORE, for the reasons outlined above and to be stated in oral argument, Defendant Rodney Atherton, by counsel, respectfully requests that this Court enter an Order granting summary judgment as to all claims against him and dismissing Plaintiffs' Complaint against him with prejudice.

---

[3] Under Virginia law, the statute of limitations as to conversion and detinue is five years, still excluding many of Plaintiffs' alleged predicate acts.

**RODNEY ATHERTON**

By Counsel

/s/ Julie S. Palmer
Julie S. Palmer (VSB No. 65800)
Angela MacFarlane (VSB No. 87776)
Counsel for Rodney Atherton
Harman, Claytor, Corrigan & Wellman
P.O. Box 70280
Richmond, Virginia  23255
804-747-5200 - Phone
804-747-6085 - Fax
jpalmer@hccw.com
amacfarlane@hccw.com

# **C E R T I F I C A T E**

I hereby certify that on 11th day of January, 2023, a true and correct copy of the foregoing has been served upon all parties of record via the ECF system and via email.

/s/ Julie S. Palmer
Julie S. Palmer