# EXHIBIT A

# AMAZON.COM, INC.

## CONFIDENTIALITY, NONCOMPETITION AND
## INVENTION ASSIGNMENT AGREEMENT

AGREEMENT dated as of ___APRL 2ND___, 20__12__, by and between Amazon.com, Inc., a Delaware corporation, and ___CARLETON NELSON___ (the "Employee").  As used herein, the "Company" shall mean Amazon.com, Inc. and any affiliate of Amazon.com, Inc., meaning any entity that controls, is controlled by, or under common control with, Amazon.com, Inc.

### RECITALS

Employee is entering into this Agreement in connection with his or her acceptance of employment with the Company and as a condition of such employment.

### AGREEMENTS

NOW, THEREFORE, in consideration of the foregoing and in consideration of their mutual promises and agreements contained herein, the parties hereto agree as follows:

1.    **Disclosure and Delivery to the Company**

(a)    Disclosure of Information to the Company.  During the course of employment and at the termination thereof, the Employee shall promptly disclose and deliver over to the Company, without additional compensation, to the extent that such disclosure could reasonably be expected to be of interest to the Company, in writing, or in such form and manner as the Company may reasonably require, the following ("Disclosure Information"):

(i)    any and all algorithms, procedures or techniques related to the Company's business activities or to the Employee's work with the Company, and the essential ideas and principles underlying such algorithms, procedures or techniques, conceived, originated, adapted, discovered, developed, acquired, evaluated, tested, or applied by the Employee while employed by the Company, whether or not such algorithms, procedures or techniques are embodied in a computer program;

(ii)    any and all pricing or marketing strategies, the essential ideas and principles on which such strategies are based, and any information that might reasonably be expected to lead to the development of such strategies, conceived, originated, adapted, discovered, developed, acquired, evaluated, tested, or applied by the Employee while employed by the Company;

(iii)    any and all products and services, and the essential ideas and principles underlying such products and services, conceived, originated, adapted, discovered, developed, acquired, evaluated, tested, or applied by the Employee while employed by the Company, whether or not such products or services are marketed, sold, or provided by the Company; and

(iv)    any other ideas or information conceived, originated, adapted, discovered, developed, acquired, evaluated, tested, or applied by the Employee while employed by the Company if the idea or information could reasonably be expected to prove useful or valuable to the Company.

(b)    Certain Qualifications and Recognitions.  The Employee recognizes that he or she will hold an important position at the Company, and that, as one of his or her important job duties, he or she will be expected to conceive, originate, adapt, discover, develop, acquire, evaluate, test, and/or apply ("Conceive and/or Originate") products, services, techniques, algorithms, strategies, procedures and/or ideas ("Products and/or Services"), even when, in order to do so, the Employee must help lead the Company in new directions,

CONFIDENTIAL

or into activities and business areas which are new to the Company. However, the Company recognizes that the Employee may Conceive and/or Originate certain Products and/or Services which are unrelated to the activities of the Company, unrelated to the planned activities of the Company, and unrelated to any reasonable extension of the activities or planned activities of the Company ("Unrelated Products and/or Services"). The parties therefore agree, the other provisions of this Section 1 notwithstanding, that:

(i)     any Unrelated Products and/or Services Conceived and/or Originated by the Employee, even while employed by the Company, shall not be considered Disclosure Information;

(ii)     the fact that the Employee used modest amounts of Company equipment or facilities (for example, by sending e-mail messages using Company computers and network connections) in the course of Conceiving and/or Originating an Unrelated Product and/or Service shall not cause an Unrelated Product and/or Service to be considered Disclosure Information;

(iii)     the fact that the Employee Conceived and/or Originated a Product and/or Service during the Company's normal operating hours or on the Company's premises shall not cause an Unrelated Product and/or Service to be considered Disclosure Information;

(iv)     the fact that the Employee Conceived and/or Originated a Product and/or Service outside of the Company's normal operating hours or off of the Company's premises shall not, in and of itself, prevent a Product and/or Service from being considered Disclosure Information.

(c)     Information Obtained from Third Parties.  For purposes of this Section 1, information "acquired" shall be deemed to include information relayed to the Employee by third parties, whether or not such third parties were compensated by the Company in connection with such acquisition.

**NOTICE:**  Notwithstanding any other provision of this Agreement to the contrary, this Agreement does not obligate Employee to assign or offer to assign to the Company any of Employee's rights in an invention for which no equipment, supplies, facilities or trade secret information of the Company was used and which was developed entirely on Employee's own time, unless (a) the invention relates (i) directly to the business of the Company or (ii) to the Company's actual or demonstrably anticipated research or development, or (b) the invention results from any work performed by Employee for the Company.  This satisfies the written notice and other requirements of RCW 49.44.140.

2.     **Confidential Information**

(a)     Definition of Confidential Information.  The parties acknowledge that, in order to permit the Employee to successfully perform and/or continue to perform the duties associated with his or her employment with the Company, it is necessary for the Company to provide the Employee with access to certain valuable proprietary information and knowledge of certain modes of business operation ("Confidential Information") which are essential to the effective operation of the Company, and which give the Company a competitive advantage over other firms pursuing related business activities.  In the context of this Agreement, the term "Confidential Information" shall be deemed to include:

(i)     the identity of the Company's business partners, customers, investors, or joint venturers, vendors, or suppliers;

(ii)     computer software developed by the Company;

(iii)     data of any sort compiled by the Company, including, but not limited to, data on the effectiveness of any particular marketing campaign or advertising venue or method, or demographic or other data related to the Company's customers or prospective customers;

-2-

CONFIDENTIAL

NELSON_CHESHIRE_00874043

(iv)     the fact that the Company uses, has used, or has evaluated for potential use a particular computer program or system, or any particular database or source of data, supplied by a party other than the Company;

(v)     algorithms, procedures or techniques, or the essential ideas and principles underlying such algorithms, procedures or techniques, developed by, or whose workings are otherwise known to, the Company (but excluding any public domain algorithms, procedures, or techniques, and excluding any algorithms, procedures, or techniques licensed by the Company from a third party on a non-exclusive basis), whether or not such algorithms, procedures or techniques are embodied in a computer program, including, but not limited to, techniques for identifying prospective customers, communicating effectively with prospective or current customers, reducing operating costs, or increasing system reliability;

(vi)     the fact that the Company uses, has used, or has evaluated for potential use any particular algorithm, procedure or technique, or the essential ideas and principles underlying such algorithm, procedure or technique, developed by a party other than the Company (including any algorithms, procedures or techniques in the public domain), whether or not such algorithms, procedures or techniques are embodied in a computer program;

(vii)     pricing or marketing strategies developed, investigated, acquired, evaluated, modified, tested or employed by the Company, or any information related to, or that might reasonably be expected to lead to, the development of such strategies;

(viii)     information about the Company's future plans, including, but not limited to, plans for expanding into new products or services;

(ix)     any information that would typically be included in the Company's financial statements, including, but not limited to, the amount of the Company's assets, liabilities, net worth, revenues, expenses, or net income;

(x)     information related to, or that might reasonably be expected to lead to, understanding the viability of selling any particular product or service via any particular vehicle such as interactive, computer-based shopping;

(xi)     any other information gained in the course of the Employee's employment with the Company that could reasonably be expected to prove deleterious to the Company if disclosed to third parties, including without limitation any information that could reasonably be expected to aid a competitor or potential competitor of the Company  (a "Competitor") in making inferences regarding the nature of the Company's business activities, where such inferences could reasonably be expected to allow such a Competitor to compete more effectively with the Company.

(b)     <u>Use and Disclosure of Confidential Information</u>.

(i)     The Employee acknowledges that he or she has acquired and/or will acquire Confidential Information in the course of or incident to his or her employment with the Company, and that the ability of the Company to continue in business could be seriously jeopardized if such Confidential Information were to be used by the Employee or by other persons or firms to compete with the Company. Accordingly, the Employee agrees that he or she shall not, directly or indirectly, at any time, during the term of his or her employment with the Company or at any time thereafter, and without regard to when or for what reason, if any, such employment shall terminate, use or cause to be used any such Confidential Information in connection with any activity or business except the business of the Company, and shall not disclose such Confidential Information to any individual, partnership, corporation, or other entity unless such disclosure has been specifically authorized in writing by the Company, or except as may be required by any applicable law or by order of a court of competent jurisdiction, a regulatory or governmental body.

-3-

<span style="color:red">CONFIDENTIAL</span>

NELSON_CHESHIRE_00874044

(ii)     The provisions of Section 2(b)(i) notwithstanding, the Employee shall be free to disclose or use any information which is in or which enters the public domain prior to the time of such disclosure or use except where such information enters the public domain as a result of unauthorized actions of the Employee.

(iii)     The provisions of Sections 2(b)(i) and 2(b)(ii) notwithstanding, the Employee shall be free to disclose or use any information which was obtained by the Employee prior to his or her employment with the Company other than information obtained by the Employee from the Company, and shall be free to disclose or use any information which is obtained by the Employee subsequent to and independent of his or her relationship with the Company.

(c)      No Waiver of Trade Secret Protection.  Nothing contained in this Agreement shall be deemed to weaken or waive any rights related to the protection of trade secrets that the Company may have under common law or any applicable statutes.

(d)      Patents.

(i)     All patents, copyrights, trade secrets and other proprietary rights relating to the Confidential Information or to the Disclosure Information as defined in Section 1 shall be owned by the Company, including but not limited to any and/or all of the Confidential Information and/or Disclosure Information that does not qualify as "Works-Made-For-Hire," if any.  The Employee hereby irrevocably sells, assigns, transfers and conveys to the Company and its successors the Employee's entire right, title and interest in the Confidential Information and/or Disclosure Information and any improvements throughout the world, including, without limitation:

(A)     all patents, copyrights, trade secrets and other proprietary rights in the Confidential Information and/or the Disclosure Information and all rights to secure registrations, renewals and extensions of the same;

(B)     all rights to make use, practice, import, export and otherwise fully exploit the Confidential Information and/or the Disclosure Information and any and all improvements that the Employee or Company may hereafter make or develop;

(C)     all rights to file and prosecute applications for patent protection covering the Confidential Information and/or the Disclosure information and improvements thereon, and the processes and designs embodied therein, in the United States and in every other country throughout the world;

(D)     all rights under any patent which may be issued on the Confidential Information and/or the Disclosure Information or the improvements thereon, and any processes and designs therein, and all rights to enjoy the same; and

(E)     all documents, notes, notebooks, drawings, schematics, prototypes, magnetically encoded media, or other materials related to the Confidential Information or to the Disclosure Information.

(ii)     During the period of his or her employment with the Company, the Employee agrees to provide the Company with such information and know-how in the Employee's possession or control as may be necessary to use, market and/or develop the Confidential Information and the Disclosure Information and improvements.

(iii)     During the period of his or her employment with the Company and as may be reasonably necessary subsequent to the Employee's employment, the Employee agrees to cooperate with the Company as may be necessary to obtain patent protection for the Confidential Information and the Disclosure Information and improvements and agrees to do such further acts and execute and deliver to Company such

-4-

CONFIDENTIAL

NELSON_CHESHIRE_00874045

instruments as may be required to perfect, register or enforce the Company's ownership of the rights conveyed under this Agreement. If the Employee fails or refuses to execute any such instruments (without regard to whether or not the Employee is at that time employed by the Company), the Employee hereby appoints the Company as the Employee's attorney-in-fact to act on the Employee's behalf and to execute such instruments. This appointment shall be irrevocable and deemed to be a power coupled with an interest.

(e)     For purposes of this Section 2, the term Company shall be deemed to include the Company as well as any subsidiaries or affiliates of the Company that may, from time to time, become associated with the Company.

3.     **Competitive Activities**

(a)     During the period of his or her employment with the Company, the Employee will not, directly or indirectly, and whether or not for compensation, either on his or her own behalf or as an employee, officer, agent, consultant, director, owner, partner, joint venturer, shareholder, investor, or in any other capacity (except in the capacity of an employee of the Company acting for the benefit of the Company), knowingly engage in any activity or business which is of the same nature as, or substantively similar to, an activity or business of the Company or an activity or business which the Company is developing and of which the Employee has knowledge.

(b)     While employed by the Company and for a period of twelve (12) months after the date the Employee ceases to be employed by the Company, without regard to when or for what reason if any, such employment shall terminate (the "Termination Date"), the Employee will not, directly or indirectly, and whether or not for compensation, either on his or her own behalf or as an employee, officer, agent, consultant, director, owner, partner, joint venturer, shareholder, investor, or in any other capacity (except in the capacity of an employee of the Company acting for the benefit of the Company), knowingly employ, or retain as a consultant or contractor, or cause to be so employed or retained, or enter into a business relationship with any person who:

(i)     is an employee of the Company or has been employed by the Company at any time within the twelve (12) months prior to the date of such act; or

(ii)     is a consultant, sales agent, contract programmer, or other independent agent retained by the Company; or

(iii)     has been retained by the Company as a consultant, sales agent, contract programmer, or other independent agent at any time within the twelve (12) months prior to the date of such an act.

(c)     While employed by the Company and for a period of 18 months after the date the Employee ceases to be employed by the Company, without regard to when or for what reason, if any, such employment shall terminate, the Employee will not, directly or indirectly, and whether or not for compensation, either on his or her own behalf or as an employee, officer, agent, consultant, director, owner, partner, joint venturer, shareholder, investor, or in any other capacity (except in the capacity of an employee of the Company acting for the benefit of the Company), knowingly:

(i)     accept or solicit employment with, or accept or solicit a consulting assignment with, or accept or solicit investment capital, directly or indirectly, from any individual or entity, or from an officer, partner, or principal of any entity, from which the Company has accepted investment capital, or with which, prior to the Termination Date, the Company has held serious discussions regarding the possibility of securing investment capital ("Investors or Prospective Investors"), provided, however, that this Section 3(c)(i) shall not apply to Investors or Prospective Investors that are introduced to the Company through the efforts of the Employee; or

(ii)     accept or solicit employment with, or accept or solicit a consulting assignment with, or accept or solicit business from any individual or entity that was a customer or client of the Company prior to

-5-

CONFIDENTIAL

NELSON_CHESHIRE_00874046

the Termination Date, or with which the Company had engaged in serious discussions prior to the Termination Date related to the possibility that such individual or entity might become a customer or client of the company (a "Current or Prospective Customer"), if the product or service provided by the Employee to such Current or Prospective Customer is substantially the same as a product or service offered by the Company to such Current or Prospective Customer, and such acceptance or solicitation would be competitive with or otherwise deleterious to the Company's own business relationship or anticipated business relationship with such Current or Prospective Customer; or

        (iii)    accept or solicit business from any retail market sector, segment, or group that the Company has solicited, targeted, or accepted business from prior to the Termination Date, or has actively planned, prior to the Termination Date, to solicit, target, or accept business from (the "Target Market"), if the product or service provided or offered by the Employee to such Target Market is substantially the same as a product or service provided or offered by the Company to the Target Market, and such acceptance or solicitation would be competitive with or otherwise deleterious to the Company's own business activities, or anticipated business activities, related to the Target Market; or

        (iv)    enter into or propose to enter into any business arrangement with any entity with which, prior to the Termination Date, the Company was involved in substantially the same business arrangement, or with which, prior to the Termination Date, the Company had held discussions regarding the possibility of entering into such an arrangement, if such arrangement would be competitive with or otherwise deleterious to the interests of the Company.

        (d)    A clarifying example.  The following example is intended to reflect the intent of the parties in Section 3(c)(iii).  Assume for the sake of this example that the Company is selling a variety of books, CD-ROMS, and shrinkwrapped computer software to a particular target market on the Internet via an online interactive catalog, and is actively planning to sell video tapes to the same target market.  In addition, the Company has had internal discussions regarding the possibility of selling music CD's, but, so far as the Employee is aware, the Company has not, as of the Employee's Termination Date, made any concrete plans to sell music CD's (for example, the Company has not investigated the size of the music CD market, has not investigated the competition in that market, and has not contacted any prospective music CD suppliers).  Under these assumptions, Section 3(c)(iii) would in no way restrict the Employee from selling music CD's, or working for a Company which sells music CD's, to that same target market via an online interactive catalog on the Internet.

        (e)    Further Clarification on Sections 3(c)(ii) and 3(c)(iii).  For purposes of Sections 3(c)(ii) and 3(c)(iii), the fact that two services (where one is being compared to the other) both involve software development shall not, in and of itself, be enough to cause the two services being compared to be deemed "substantially the same."

        (f)    For purposes of this Section 3, the term Company shall be deemed to include the Company as well as any subsidiaries or affiliates of the Company that may, from time to time, become associated with the Company.

**4.**    **Reasonableness of Covenants**

        (a)    Certain Recognitions.  The Employee recognizes that the restrictions set forth in Sections 2 and 3 of this Agreement may seriously limit his or her future flexibility in many ways.  For example (this example is not to limit in any way the restrictions specified in this Agreement), the provisions set forth in Section 3 will make it impossible for the Employee to seek or accept certain opportunities for a period of 18 months after the Termination Date, despite the fact that such opportunities might be highly attractive to the Employee and provide greater compensation than any other available opportunities, and despite the fact that after the 18 month period has elapsed such highly attractive opportunities may no longer be available to the Employee.  The Employee acknowledges that the restrictions specified in Sections 2 and 3 are reasonable in view of the nature of the business in which the Company is engaged, the Employee's position with the

CONFIDENTIAL

NELSON_CHESHIRE_00874047

Company, and the Employee's knowledge of the Company's business.  The Employee recognizes that his or her compensation (cash, equity and otherwise) reflects his or her agreement in Sections 2 and 3, and acknowledges that he or she will not be subject to undue hardship by reason of his or her agreement to Sections 2 and 3.

(b)  <u>Modification of Restriction</u>.  Notwithstanding anything contained in Sections 2 or 3 of this Agreement to the contrary, if a court of competent jurisdiction should hold any restriction specified in Sections 2 or 3 to be unreasonable, unenforceable, illegal or invalid, then that restriction shall be limited to the extent necessary to be enforceable, and only to that extent.  In particular, and without limitation on the foregoing, if any provision of Sections 2 or 3 should be held to be unenforceable as to scope or length of time or geographical area involved, such provision shall be deemed to be enforceable as to, and shall be deemed to be amended to cover, the maximum scope, maximum length of time, or broadest area, as the case may be, which is then lawful.

(c)  <u>Survival of Covenants</u>.  The obligations of the Employee under Sections 2 and 3 of this Agreement shall survive the termination of this Agreement and of his or her employment with the Company.

5.  **Employee Representations**

Employee represents and certifies as follows:  (a) Employee is not in possession or control of any document(s) that in any way constitute confidential, proprietary or trade secret information of a third party (including any former employer); (b) Employee is not subject to a non-competition agreement that would preclude his or her employment with the Company; (c) Employee has identified all confidentiality, proprietary information, non-solicitation or similar agreements or obligations that it has with any third party and that, in the course of his or her work for the Company, he or she shall not violate any such agreements or obligations; and (d) Employee, in the course of his or her work for the Company will not use or disclose any tangible or intangible information that constitutes a trade secret of a third party (including a former employer) except pursuant to written authorization to do so (e.g. a technology license between the Company and any third party).

6.  **Remedies**

The Employee acknowledges that any breach of this Agreement may cause the Company irreparable harm for which there is no adequate remedy at law, and as a result of this, the Company shall be entitled to the issuance by a court of competent jurisdiction of an injunction, restraining order, or other equitable relief in favor of itself, without the necessity of posting a bond, restraining the Employee from committing or continuing to commit any such violation.  Any right to obtain an injunction, restraining order, or other equitable relief hereunder shall not be deemed a waiver of any right to assert any other remedy the Company may have at law or in equity.

7.  **Relationship of the Parties; Attention and Effort**

The relationship between the Company and the Employee hereunder is agreed to be solely that of employee and employer. Nothing contained herein and no modification of responsibility or compensation made hereafter shall be construed so as to constitute the parties as partners or joint venturers or so as to constitute the Employee as an independent contractor.  During the term of Employee's employment with the Company, and without limiting the provisions of Section 3 of this Agreement or any other provision hereof, Employee will devote all of his or her entire productive time, ability, attention and effort to the Company's business and will skillfully serve its interests and will not carry on any professional or other gainful employment.

8.  **Amendment or Alteration.**

No amendment or alteration of the terms of this Agreement shall be valid unless made in writing and signed by both of the parties hereto.

CONFIDENTIAL

_a_

NELSON_CHESHIRE_00874048

**9.** **Governing Law and Jurisdiction**

This Agreement, and any disputes which may arise under, out of or in connection with this Agreement, shall be governed by and construed in accordance with the laws of the State of Washington. Jurisdiction over and venue of any suit arising out of or related to this agreement shall be exclusively in the state and federal courts of King County, Washington.

**10.** **Severability**

The holding of any provision of this Agreement to be illegal, invalid, or unenforceable by a court of competent jurisdiction shall not affect any other provision of this Agreement, which shall remain in full force and effect.

**11.** **Waiver**

The failure of a party to insist upon strict adherence to any term of this Agreement on any occasion or occasions shall not be considered a waiver thereof or deprive that party of the right thereafter to insist upon strict adherence to that term or any other term of this Agreement.

**12.** **Entire Agreement**

This Agreement contains the entire agreement of the parties and shall supersede any and all existing agreements between the Employee and the Company or any of its affiliates or subsidiaries relating to the subject matter hereof.

**13.** **Assignment**

Except as otherwise provided in this paragraph, this Agreement shall inure to the benefit of and be binding upon the parties hereto and their respective heirs, representatives, successors and assigns. Neither this Agreement nor any right or interest hereunder shall be assignable by the Employee, his or her beneficiaries, or legal representatives without the Company's prior written consent; provided, however, that nothing in this Section 13 shall preclude the Employee from designating a beneficiary to receive any benefit payable hereunder upon his or her death, or the executors, administrators, or other legal representatives of the Employee or his or her estate from assigning any rights hereunder to the person or persons entitled thereunto. This Agreement shall be assignable by the Company only to a subsidiary or affiliate of the Company; or to any corporation, partnership, or other entity that may be organized by the Company, or by its owners, as a separate business unit in connection with the business activities of the Company or of its owners; or to any corporation, partnership, or other entity resulting from the reorganization, merger or consolidation of the Company with any other corporation, partnership or other entity, or any corporation, partnership, or other entity to or with which all or any portion of the Company's business or assets may be sold, exchanged or transferred.

**14.** **No Attachment**

Except as required by law, no right to receive payments under this Agreement shall be subject to anticipation, commutation, alienation, sale, assignment, encumbrance, charge, pledge, or hypothecation, or to execution, attachment, levy, or similar process or assignment by operation of law, and any attempt, voluntary or involuntary, to effect any such action shall be null, void and of no effect.

**15.** **Headings**

The Section headings appearing in this Agreement are used for convenience of reference only and shall not be considered a part of this Agreement or in any way modify, amend or affect the meaning of any of its provisions.

-8-

CONFIDENTIAL

NELSON_CHESHIRE_00874049

16.     **Rules of Construction**

Whenever the context so requires, the use of the masculine gender shall be deemed to include the feminine and vice versa, and the use of the singular shall be deemed to include the plural and vice versa.

IN WITNESS, WHEREOF, the parties have executed this Agreement on the date first written above.

**AMAZON.COM, INC.**

Signature:

Name:          Anthony        J. Galbato

Title:           VP,          Human Resources

**EMPLOYEE**

Signature:

Name:          CARLETON   NELSON

Title:          TRANSACTION MANAGER - INFRASTRUCTURE

-9-

CONFIDENTIAL

NELSON_CHESHIRE_00874050