**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| AMAZON.COM, INC. and AMAZON DATA SERVICES, INC., | |
| Plaintiffs, | |
| v. | |
| WDC HOLDINGS LLC dba NORTHSTAR COMMERCIAL PARTNERS, et al., | |
| Defendants. | CASE NO. 1:20-CV-484-RDA-IDD |
| 800 HOYT LLC, | |
| Intervening Interpleader Plaintiff / Intervening Interpleader Counter-Defendant, | |
| v. | |
| BRIAN WATSON, WDC HOLDINGS, LLC, and BW HOLDINGS, LLC, | **REPLY OF DEFENDANTS BRIAN WATSON, WDC HOLDINGS LLC, STERLING NCP FF, LLC, MANASSAS NCP FF, LLC, AND NSIPI ADMINISTRATIVE MANAGER IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| Interpleader Defendants, | |
| and | |
| AMAZON.COM, INC., and AMAZON DATA SERVICES, INC., | |
| Interpleader Defendants / Interpleader Counter-Plaintiffs. | **[PUBLIC VERSION]** |

Defendants Brian Watson ("Watson"); WDC Holdings LLC, dba Northstar Commercial Partners ("Northstar"); Sterling NCP FF, LLC; Manassas NCP FF, LLC; and NSIPI Administrative Manager (collectively, the "Watson Defendants") respectfully submit the following reply in support of their motion for summary judgment on the claims brought against them by Amazon.com, Inc. and Amazon Data Services, Inc. (collectively, "Amazon").

## TABLE OF CONTENTS

Introduction...................................................................................................................... 1

Response to Factual Contentions ....................................................................................... 2

Argument .......................................................................................................................... 4

A.    Plaintiffs Have Not Suffered Damages and Have No RICO Injury ..................................... 4

B.    The Watson Defendants Were Not Part of Any Direct Purchase Transaction, which Precludes Amazon's RICO Claim .................................................................................. 14

    1.    The Lack of Association Precludes a Finding That an Enterprise Existed........... 16

    2.    The Lack of Connectedness Also Shows the Absence of Continuity.................. 19

C.    The Watson Defendants Are Entitled to Summary Judgment on Amazon's Fraud Claim 20

D.    Amazon's Unjust Enrichment and Constructive Trust Is Subject to Summary Judgment 21

E.    Defendants Are Entitled to Summary Judgment on Amazon's Detinue and Conversion Claims .......................................................................................................................... 25

F.    Amazon's Tortious Interference Claim Fails ................................................................. 29

G.    The Watson Defendants Should Be Granted Judgment on Amazon's Civil Conspiracy Claim ........................................................................................................................... 30

Conclusion ..................................................................................................................... 31

Annex A: Response to Alleged Disputes of Fact............................................................... 33

# TABLE OF AUTHORITIES

## Cases

*Al-Abood v. Elshamari*,
   217 F.3d 225 (4th Cir. 2000) ............................................................................ 19

*Amazon.com Inc. v. WDC Holdings, LLC*,
   No. 20-1743, 2021 WL 3878403 (4th Cir. Aug. 31, 2021) .................................. 7, 24, 27, 28

*American Canoe Association v. Murphy Farms, Inc.*,
   326 F.3d 505 (4th Cir. 2003) ............................................................................ 22

*Ameur v. Gates*,
   950 F. Supp. 2d 905 (E.D. Va. 2013) .............................................................. 15, 26

*Amtruck Factors v. International Forest Products*,
   795 P.2d 742 (Wash. 1990) ................................................................................ 5, 6

*Anderson v. Foundation for Advancement, Education & Employment of American Indians*,
   155 F.3d 500 (4th Cir. 1998) ............................................................................ 19

*Augusta Mutual Insurance Co. v. Mason*,
   274 Va. 199, 645 S.E.2d 290 (2007) ................................................................ 15

*Baehr v. Creig Northrop Team, P.C.*,
   953 F.3d 244 (4th Cir. 2020) ............................................................................ 11

*Bartley v. Merrifield Town Center Ltd. Partnership*,
   580 F. Supp. 2d 495 (E.D. Va. 2008) .............................................................. 16

*Beck v. Prupis*,
   529 U.S. 494 (2000)............................................................................................ 17

*Billups v. City of Charleston, South Carolina*,
   961 F.3d 673 (4th Cir. 2020) ............................................................................ 21

*Bowe v. Public Storage*,
   106 F.Supp.3d 1252 (S.D. Fla. May 19, 2015).................................................. 11

*Boyle v. United States*,
   556 U.S. 938 (2009)............................................................................................ 18

*Carstensen v. Chrisland Corp.*,
   247 Va. 433 S.E.2d 660 (1994) ........................................................................ 9

*CGI Federal Inc. v. FCi Federal, Inc.*,
   295 Va. 506, 814 S.E.2d 183 (2018) ................................................................ 24

*City of Norfolk v. Norfolk County*,
   120 Va. 356, 91 S.E.2d 820 (1917) .................................................................. 24

*Community Bank v. Wright*,
   221 Va. 172, 267 S.E.2d 158, (1980) .............................................................. 9

*Collelo v. Geographic Services, Inc.*,

283 Va. 56, 727 S.E.2d 55 (2012) ........................................................................ 29

*Cooper v. Wesco Builders, Inc.*,
    76 Idaho 278, 281 P.2d 669 (1955) ................................................................. 9

*Culpeper National Bank v. Tidewater Improvement Co.*,
    119 Va. 73, 89 S.E. 118 (1916) ...................................................................... 14

*D'Addario v. Geller*,
    F.Supp.2d 367 (E.D. Va. 2003) ....................................................................... 5

*Dickerson v. TLC Laser Eye Center Institute, Inc.*,
    493 Fed.Appx. 390 (4th Cir. 2012) .................................................................. 5

*Doe by and Through Doe v. Baker*,
    299 Va. 628, 857 S.E.2d 573 (2021) ............................................................. 11

*Doe v. Burton Parish Church*,
    No. 7977, 1997 WL 33575565 (Va. Cir. Ct. July 10, 1997) ............................ 20

*Dunlap v. Cottman Transmission Systems, LLC*,
    287 Va. 207, 754 S.E.2d 313 (2014) ............................................................. 31

*Evaluation Research Corp. v. Alequin*,
    247 Va. 172, 439 S.E.2d 387 (1994) ............................................................. 19

*Everett v. Pitt County Board of Education*,
    788 F.3d 132 (4th Cir. 2015) ........................................................................ 23

*Foreign Mission Board of Southern Baptist Convention v. Wade*,
    242 Va. 234, 409 S.E.2d 144 (1991) ............................................................. 15

*Gallop v. Sharp*,
    179 Va. 335, 19 S.E.2d 84 (1942) ................................................................. 31

*General Assurance of America, Inc. v. Overby-Seawell Co.*,
    893 F.Supp.2d 761 (E.D. Va. 2012) ............................................................... 29

*Graves v. Lioi*,
    930 F.3d 307 (4th Cir. 2019) ........................................................................ 21

*Hino Motors Manufacturing U.S.A., Inc. v. Hetman*,
    2022 WL 16709717 (E.D. Mich. Aug. 4, 2022) ................................................ 5

*In re Rescue Rangers, LLC*,
    582 B.R. 669 (Bankr. E.D. Va. 2018) ............................................................ 27

*Intercarrier Commcations, LLC v. Kik Interactive, Inc.*,
    No. 3:12-cv-771, 2013 WL 4061259 (E.D. Va. Aug. 9, 2013) ............... 16, 26, 29

*James G. Davis Construction Corp., v. FTJ, Inc.*,
    298 Va. 582, 841 S.E.2d 642 (2020) ............................................................. 24

*Jared and Donna Murayama 1997 Trust v. NICS Holdings, LLC*,
    284 Va. 234, 727 S.E.2d 80 (2012) ............................................................... 14

*Klaiber v. Freemason Associates, Inc.*,

266 Va. 478, 587 S.E.2d 555 (2003) ........................................................................ 9

*Lake Wright Hospital, LLC v. Holiday Hospital Franchising, Inc.*,
    No. CIV.A 2:07-cv-530, 2009 WL 2606254 (E.D. Va. Aug. 20, 2009) ................................... 4

*Lloyd v. Smith*,
    150 Va. 132, 142 S.E. 363 (1921) ........................................................................ 20

*Long & Foster Real Estate, Inc. v. Clay*,
    231 Va. 170, 343 S.E.2d 297 (1986) ........................................................................ 9

*MacPherson v. Green*,
    197 Va. 27, 197 S.E.2d 785 (1955) ........................................................................ 26

*Marsteller v. ECS Federal, Inc.*,
    No. 1:13-cv-593, 2013 WL 4781786 (E.D. Va., Sept. 5, 2013) ........................................... 27

*Morley v. Cohen.*,
    888 F.2d 1006 (4th Cir. 1989) ........................................................................ 12, 13

*Norview Cars, Inc. v. Crews*,
    208 Va. 148, 156 S.E.2d 603 (1967) ........................................................................ 9

*Patel v. Anand, L.L.C.*,
    264 Va. 81, 564 S.E.2d 140 (2002) ........................................................................ 10

*Patterson v. NewRez LLC*,
    No. 1:21-cv-126, 2022 WL 218985 (N.D.W. Va. Jan. 25, 2022) ........................................... 22

*Potomac Electric Power Co. v. Electric Motor & Supply, Inc.*,
    262 F.3d 260 (4th Cir. 2001) ........................................................................ 8

*Prospect Development Co., Inc. v. Bershader*,
    258 Va. 75, 91, 515 S.E.2d 291 (1999) ........................................................................ 9

*Richmond Metropolitan Authority v. McDevitt St. Bovis, Inc.*,
    256 Va. 553, 507 S.E.2d 344 (1998) ........................................................................ 19

*Ross v. Kirner*,
    172 P.3d 701 (Wash. 2007) ........................................................................ 5

*Ruddy v. Bluestream Professional Services, LLC*,
    444 F. Supp. 3d 697 (E.D. Va. 2020) ........................................................................ 15, 25, 29, 31

*Schaecher v. Bouffault*,
    290 Va. 83, 772 S.E.2d 589 (2015) ........................................................................ 29

*Sedima v. Imrex Co.*,
    473 U.S. 479 (1985) ........................................................................ 4, 11

*Serpanok Construction, Inc. v. Point Ruston, LLC*,
    495 P.3d 271 (Wash. App. 2021) ........................................................................ 6

*Sharma v. USA International, LLC*,
    851 F.3d 308 (4th Cir. 2017) ........................................................................ 10

*Shirvinski v. U.S. Coast Guard*,

673 F.3d 308 (4th Cir. 2012) ............................................................................ 30, 31

*Simmons v. Miller*,
  261 Va. 561, 544 S.E.2d 666 (2001) ........................................................... 25, 26

*Steele v. Hospital Corp. of America*,
  36 F.3d 69 (9th Cir. 1994) ................................................................................ 11

*Straley v. Fisher*,
  176 Va. 163, 10 S.E.2d 551 (1940) ................................................................... 28

*Studco Building System, U.S., LLC v. 1st Advantage Federal Credit Union*,
  509 F.Supp.3d 560 (E.D. Va. 2020) .................................................................. 14

*United States v. Cornell*,
  780 F.3d 616 (4th Cir. 2015) ............................................................................ 17

*United States v. Mallory*,
  988 F.3d 730 (4th Cir. 2021) .............................................................................. 3

*United States v. Pinson*,
  860 F.3d 152 (4th Cir. 2017) ............................................................................ 17

*United States v. Vinyard*,
  266 F.3d 320 (4th Cir. 2001) .............................................................................. 5

*Wells Fargo Bank, National Association v. Worldwide Shrimp Co.*,
  No. 17-c-4723, 2017 WL 7689635 (N.D. Ill. Dec. 29, 2017) ................................ 22

*White v. Potocska*,
  589 F. Supp. 631 (E.D. Va. 2008) ..................................................................... 14

*York v. Jones*,
  717 F. Supp. 421 (E.D. Va. 1989) ............................................................... 25, 26

**Statutes**

18 U.S.C. § 1964(c) .............................................................................................. 5

Va. Code § 8.01-114(A)(1) ............................................................................ 25, 26

Va. Code Annotated § 8.01-121 .......................................................................... 27

**Other**

F.R.C.P. 56(c)(1) ................................................................................................... 3

Restatement (Second) of Torts § 549 (1992) ..................................................... 9, 10

## INTRODUCTION

Amazon's opposition brief demonstrates that several core issues are undisputed and that summary judgment in favor of the Watson Defendants is warranted. In attempting to manufacture fact disputes, Amazon mostly quibbles with word choices and the "implications" of facts that it does not dispute. Similarly, its legal arguments take aim at straw men arguments rather than the arguments and facts advanced by the Watson Defendants. This is for a good reason: The controlling law supports the Watson Defendants' positions, not Amazon's. Indeed, Amazon seems to believe that the fact that it won an injunction before discovery is somehow dispositive at summary judgment. Rather than marshal evidence to counter the Watson Defendants' specific factual arguments, Amazon resorts to generalities and unsupported, but strident, statements of its own distorted view of the case, practically ignoring the dispositive issues raised by Defendants. Regardless of whether the Court thought an injunction was appropriate two years ago, it is now Amazon's burden to come forward with admissible evidence to support its claims. It has not done so and cannot do so.

The most bizarre element of Amazon's opposition is its effort to manufacture some sort of "damages" to support its claims. Despite having failed to disclose any such damages in its disclosures or discovery responses, Amazon makes unsupported claims that it has produced evidence of damages, referencing its own unsupported contentions that "it should have gotten a lower price" and the alleged "economic harm" calculation of its hired expert, Richard Lee, even though Mr. Lee expressly did not consider all of the pertinent facts (including Amazon's settlement agreement with IPI Partners, LLC ("IPI")) and expressly disavowed offering any opinion as to Amazon's damages. Even worse, Amazon attempts to import an inapplicable measure of damages, relying on a single Washington state case and effectively ignoring controlling Virginia and Fourth

Circuit law that require Amazon to show that it paid an above-market price for any of the properties as to which it claims damages. Amazon's failure to show damages or any injury to its property or business warrants summary judgment based on Amazon's inability to prove elements of its state law claims and its lack of standing to pursue a RICO claim.

Amazon's opposition also highlights that Amazon has no evidence to link the Watson Defendants to the White Peaks or Blueridge transactions. Although it contends that the Watson Defendants were in a conspiracy with all of the other Defendants, the actual, unrebutted evidence submitted by the Watson Defendants totally contradicts that assertion. Amazon's sole argument is that the Watson Defendants settled with an employment dispute with Kyle Ramstetter and Will Camenson after the White Peaks transaction closed, and Amazon implies that the Watson Defendants could somehow be liable for fraudulent concealment. This new argument also fails, however, because the White Peaks transaction closed well before Watson ever learned of it, and no one (not even at Amazon) believes the Watson Defendants were involved in the Blue Ridge transaction. There is no way that Amazon relied on any concealment by the Watson Defendants.

With respect to many of the Watson Defendants' arguments, Amazon simply fails to address them at all. In doing so, it has conceded them. For this reason alone, summary judgment is appropriate on the tortious interference, conversion, detinue, and unjust enrichment claims. And even if the Court reaches the merits of those claims, the Watson Defendants have amply demonstrated that summary judgment is appropriate as to each of them.

### RESPONSE TO FACTUAL CONTENTIONS

Amazon spends a lot of space quibbling about language and disputing *implications* of undisputed facts. But quibbling and concerns about the meanings of facts do not create factual disputes that preclude summary judgment. It is not sufficient for Amazon to issue general

denials—*i.e.*, by writing "Disputed"—as if summary judgment pleadings were akin to an answer. *See* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . or . . . showing that the materials cited do not establish the absence or presence of a genuine dispute . . . ."). Amazon was obligated to come forward with evidence contradicting the core evidence relied upon by the Watson Defendants.[1]   It has not.  Each of the critical facts set out by the Watson Defendants, particularly the lack of injury to Amazon and the Watson Defendants' lack of knowledge and participation in the Direct Purchase Transactions, is undisputed. Amazon just wishes to rely on different, unspecified facts that have nothing to do with the pending motions or are relevant only to incorrect legal theories.  As to Amazon's responses to the Watson Defendants' Statement of Undisputed Material Facts, Amazon fails to substantively address almost all of them, with the bulk of its responses constituting legal argument and not factual disputes.  The Watson Defendants have responded to each alleged "dispute" in Annex A, *infra* at 33.

Instead, Amazon has offered a volume of immaterial exhibits and its own "Statement of Facts" despite not having moved for summary judgment. There is no provision in the rules for such a fact statement.[2] *See* Local Rule 56(B) ("A brief in response to [a motion for summary

---

[1] In some places, Amazon seeks to leverage the silence of third parties who Amazon chose not to name in this case against the Watson Defendants (e.g., Opp. at 12, 50). But the circumstances of this case do not justify adverse inferences against the Watson Defendants based on third parties' invocation of the Fifth Amendment.  *See United States v. Mallory*, 988 F.3d 730, 740 (4th Cir. 2021) (requiring analysis of (1) the nature of the parties' relationships, (2) the party's control over the third-party witness, (3) the alignment of the parties' interests, and (4) the role of the third party in the litigation).

[2] The bulk of Amazon's statement is immaterial to the Watson Defendants' motion, but because many of the referenced exhibits are inadmissible, and many of the statements/arguments are false, the Watson Defendants object to the consideration of this extraneous statement and reserve all rights to object to the proffered exhibits. The Watson Defendants further join the other defendants' evidentiary objections and the Nelson Defendants' objections concerning Amazon's failure to

judgment] shall include a specifically captioned section listing all material facts as to which it is contended that there exists a genuine issue necessary to be litigated and citing the parts of the record relied on to support the facts alleged to be in dispute."); *see also Lake Wright Hosp., LLC v. Holiday Hosp. Franchising, Inc.*, No. CIV.A 2:07cv530, 2009 WL 2606254, at *43 (E.D. Va. Aug. 20, 2009) (sanctioning plaintiff that filed an inappropriate "counterstatement of facts with (a) argument, (b) unsupported facts, (c) misleading statements, and (d) misrepresentations of fact."). Because the undisputed facts highlighted by the Defendants are dispositive, Amazon appears to be attempting to create the appearance of disputes through mere volume.  No matter how stridently Amazon repeats its own theories and incorrect conclusions, its burden is to present proof to rebut the evidence supporting the defendants' motions.  It has not done so and cannot do so. The Court should therefore address the dispositive issues on which the Watson Defendants moved for judgment and either grant judgment to the Watson Defendants entirely or narrow the issues for trial.

## ARGUMENT

### A. Plaintiffs Have Not Suffered Damages and Have No RICO Injury

Amazon contends that it is not obligated to show a "compensable injury."  Opp. at 43 (citing *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 495 (1985)).  That contention should tell the Court all that it needs to know about Amazon's damages: It doesn't have any.  But Amazon's contention is also wrong.  Damages are an element of each of Amazon's state law claims and an "injury" to Amazon's property or business is a prerequisite to standing on Amazon's RICO claim.

---

demonstrate that it reasonably relied on any material misrepresentation by any defendant and Amazon's failure to assert any right to rebate payments from KBC.

As the U.S. Supreme Court clarified in *Sedima*, a plaintiff must prove an injury to its property or business to prevail on a RICO claim. *Sedima*, 473 U.S. at 495-96 ("[A] plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation."); *see also* 18 U.S.C. § 1964(c); *Dickerson v. TLC The Laser Eye Ctr. Inst., Inc.,* 493 Fed. App'x 390, 394 (4th Cir. 2012). The plaintiff must then show that "he was injured in his business or property . . . by reason of the RICO violations. The injury and causation components are viewed as standing requirements." *D'Addario v. Geller*, 264 F. Supp. 2d 367, 396 (E.D. Va. 2003).

Despite contending that it need not show an injury, Amazon nonetheless attempts to manufacture RICO standing through several novel arguments. Amazon's first response is to say that its "injury" consists of the alleged kickbacks. Opp. at 43 ("[T]he amount of kickbacks paid . . . is a proper measure of Amazon's injury."). Amazon seeks to supplant the controlling law with a single decision from Washington state.[3] That case, *Amtruck Factors v. Int'l Forest Prods.*, 795 P.2d 742, 746 (Wash. 1990), contradicts the law of Virginia and the Fourth Circuit and is not even good law in Washington. The Supreme Court of Washington recognized the abrogation of *Amtruck* and the requirement that a plaintiff alleging fraud must show damages as one of six elements of a fraud claim in that state. *See Ross v. Kirner*, 172 P.3d 701 (Wash. 2007) (en banc). If Amazon's

---

[3] Amazon also cites to *United States v. Vinyard*, 266 F.3d 320 (4th Cir. 2001), for the proposition that a plaintiff may recover kickbacks as monetary damages. Opp. at 38. That case contains no such holding and is a criminal case in any event. *See Vinyard*, 266 F.3d at 326. Amazon also cites an unpublished Eastern District of Michigan case that allowed recovery of kickbacks in a default judgment where the defendant had engaged in serial misconduct and there was admitted evidence that the kickbacks actually inflated the price the plaintiff paid. Opp. at 38 (citing *Hino Motors Mfg. U.S.A., Inc. v. Hetman*, 2022 WL 16709717, at *3 (E.D. Mich. Aug. 4, 2022)). That ruling is both non-precedential and inapplicable to a situation such as this, where Amazon must show the inflated price by reference to the *actual* value of the property.

effort to supplant Virginia law with *Amtruck* fails, Amazon's entire damages theory as to the Watson Defendants also fails.  It has no *evidence* to support any other theory of liability.

Even if *Amtruck* supplied the measure of damages on Amazon's state law fraud claim, however, it would not suffice to create RICO standing because RICO requires an "injury to business or property" and the *Amtruck* court allowed recovery of an alternate amount where the plaintiff could not prove such an injury. *See Serpanok Constr., Inc. v. Point Ruston, LLC,* 495 P.3d 271, 282 (Wash. App. 2021) ("*Amtruck*'s actual holding—that kickback payments could define the measure of damages if the defendants could not otherwise show harm—was narrower than the [respondents] contend.").  Thus, even if it were an appropriate measure of damages, application of *Amtruck* would preclude Amazon from pursuing a RICO claim under federal law because that case was predicated on an inability to prove a compensable injury, which is a prerequisite for RICO standing.

Second, Amazon contends that there may be evidence that it "overpaid for the properties and leases."  Opp. at 44. To the contrary, Amazon cannot prove that it overpaid, because there is no evidence in the record establishing the *actual value* of the properties, and Amazon cites to none. To the extent there is evidence of value, the evidence suggests the prices were at, or below, market prices.  *See, e.g.,* Decl. of Jeffrey R. Hamlin ("Hamlin Decl."),[4] Ex. 16 (Klein Tr.) at 345:11-16 (noting the view that the leases were not above the market rate); Ex. 1 (Davenport Tr) at 124:7-17 (quoting internal correspondence concluding that IAG156 and IAD170 were worthwhile in light of market conditions); Ex. 33 at 1 (███████████████████████████████

████████████████████████████████████████████████████████████

---

[4] Exhibit numbers will hereinafter refer to the exhibits to the Declaration of Jeffrey R. Hamlin in support of the Watson Defendants' Motion for Summary Judgment, except as otherwise noted.

███████████ .[5]  Amazon nonetheless claims that it has offered evidence of inflated prices. Opp. at 46.  Where is it?  All that is offered is one statement by an Amazon employee, who is not a real estate expert, that Amazon should have paid less on some of the transactions, Opp. at 31-32, but that employee never gave any support or evidence for his personal, unfounded belief.[6]  It is also undisputed that Amazon has retained and continues to operate all the properties.  In every instance when it was asked about the value of the property, Amazon demurred.  Its expert expressly denied having done any market analysis.  Ex. 20 (Lee Tr.) at 75:7-25.  Simply put, there is no evidence that Amazon overpaid for any property, and considerable evidence shows that Amazon paid less than market value.  Amazon cites only to (i) alleged kickbacks on two Direct Purchase Transactions in which the Watson Defendants were not involved and (ii) a rebate issue that was not disclosed as damages, is unrelated to the lease values, and to which Amazon has shown neither its own entitlement nor any linkage to any alleged claim. Opp. at 44.  Amazon offers no evidence of the actual value of any of the properties or leases and instead offers only its own subjective opinion, offered in hindsight, that it may have somehow overpaid.

This argument also contradicts Amazon's discovery responses.  In its Supplemented Initial Disclosures, Amazon responded that it calculated damages as "at least $16,000,000" attributable to the White Peaks and Blueridge transactions but disclosed that it did not currently have any compensable damages on the Lease Transactions, the only transactions that involved the Watson

---

[5] Amazon suggests that reference to actual value or market prices is an impossible standard and would lead to problems.  Amazon's contention in this regard is thin gruel.  Courts in this district and around the country routinely hear and decide real property and business valuation issues.  The fact that Amazon expressly told its "damages" expert not to look at market value does not mean that it could not have been done.

[6] Indeed, Mr. Vonderhaar also admitted that his opinion that Amazon could have gotten a lower yield rate was "speculat[ion]."  Decl. of George R. Calhoun ("Calhoun Decl."), Ex. 1 (Vonderhaar 30(b)(6) Tr.) at 136:16-137:7.

Defendants.   Ex. 28 (Amazon Supplemented Initial Disclosures) at 2; *see also* Ex. 17 (Amazon.com, Inc.'s and Amazon Data Services, Inc.'s Responses to WDC Holdings, LLC's First Set of Interrogatories to Plaintiffs) at 11.   Amazon did not disclose *any* damages based on overpayment in its interrogatory responses or in its initial disclosures.   Similarly, none of Amazon's disclosures or discovery responses identified any rebate payment as damages either. No allegation concerning any rebate is included in any version of the Complaint.   Moreover, that contention involves separate contracts from the Leases and Direct Purchase Transactions. Simply put, that damages argument is not properly before the Court and cannot be used at the eleventh hour to rescue Amazon's RICO and other claims.[7]

In another implicit admission that it has no actual damages or injury to its business or property, Amazon contends that even though it received the properties and leases that it desired, that it did not receive what it bargained for because the transaction was not "free of corruption." Opp. at 46.   That argument is entirely circular and assumes that Amazon prevails on all its claims. Moreover, it leads to absurd results. If, as Amazon argues, the mere allegation of fraud in a transaction constitutes a concrete injury, then every single complaint alleging fraud would satisfy the damages element. That can't be true. Here, Amazon contracted for various real property developments. It received exactly those properties and developments as specified.   Amazon bases its argument that it need not show compensable injury on *Potomac Elec. Power Co. v. Elec. Motor & Supply, Inc.*, 262 F.3d 260, 265 (4th Cir. 2001) ("*PEPCO*").   But the Fourth Circuit's decision

---

[7] As set forth in the Nelson motion, KBC offered to pay Amazon and Amazon apparently refused. ECF 1205 at 12-13 ("Todd Meldahl of KBC . . . offered to pay rebates to Amazon on these transactions . . . . However, Amazon ultimately did not accept payments from KBC for those transactions.").   That evidence is undisputed and would itself preclude the alleged KBC rebate from constituting damages. In any case, the rebate by KBC Advisors was always paid to the buyer of the land parcel, and as Amazon was not the buyer of the land parcel, it had no right to receive any such rebate.

8

in *PEPCO* did not supersede the RICO standing requirements established by the Supreme Court. Nor is it at all applicable to the facts of this case. *PEPCO* dealt with the technical specifications for a product repair, which the Defendants had changed and then concealed from the plaintiff. An analogous context here would be if the Defendants had provided data centers that were similar to those specified by Amazon (*i.e.*, with the same size, capacity, and cost), but on different real property. That is not what Amazon alleges or what the evidence shows. Amazon has made no contention that the properties it received failed to meet contract specifications. Its argument is that the alleged fraud itself is its injury, but that argument has no support in the law and would read the damages element out of its state law claims altogether and nullify the RICO standing requirements.

Finally, Amazon also contends that the Defendants did not offer authority that Amazon's injury could or must be measured by reference to a single "market price," denigrating the controlling law governing injury as a "canard." Virginia's "actual loss" rule, the Restatement of Torts, and the cases examining kickback allegations all require proof of the market price. In Virginia, "'the rule as to what constitutes damage [for fraud], in any case, may broadly be stated to be that there is no damage where the position of the complaining party is no worse than it would be had the alleged fraud not been committed.'" *Cmty. Bank v. Wright*, 221 Va. 172, 175, 267 S.E.2d 158, 160 (1980) (quoting *Cooper v. Wesco Builders, Inc.*, 76 Idaho 278, 281 P.2d 669, 672 (1955)).[8] Thus, "a person who acquired property by virtue of a commercial transaction and who has been defrauded by false representations is entitled to recover as damages the difference

---

[8] The Virginia Supreme Court has distinguished this definition of injury from damages in the trespass context, "where the measure of damages can be either the difference in *market value* of the property before and after the trespass or the cost of restoring the property to its former condition, but only if the cost measure of damages is less than the market value measure of damages." *Klaiber v. Freemason Assocs., Inc.*, 266 Va. 478, 486 n.2, 587 S.E.2d 555, 559 n.2 (2003) (emphasis added) (citing *Norview Cars, Inc. v. Crews*, 208 Va. 148, 149 n.1, 156 S.E.2d 603, 605 n.1 (1967)).

between the *actual value* of the property at the time the contract was made and the *value that the property would have possessed had the representation been true*." *Prospect Dev. Co., Inc. v. Bershader*, 258 Va. 75, 91, 515 S.E.2d 291, 300 (1999) (emphasis added) (citing *Carstensen v. Chrisland Corp.*, 247 Va. 433, 444–45, 442 S.E.2d 660, 666–67 (1994); *Long & Foster Real Estate, Inc. v. Clay*, 231 Va. 170, 176, 343 S.E.2d 297, 301 (1986); *see also Klaiber*, 266 Va. at 487 (no damages as a matter of law where plaintiffs sold condominiums for more than their purchase price despite alleged fraud); Restatement (Second) of Torts § 549 (1992)). The actual value of the real property at issue is the market value, not the price that Amazon thinks it could have obtained in a hypothetical scenario that has no basis in fact.

The Fourth Circuit subsequently recognized and applied this rule in *Sharma v. USA Int'l, LLC*, 851 F.3d 308, 312 (4th Cir. 2017). In that case, the Fourth Circuit considered whether a plaintiff had provided sufficient evidence of the market value of property to survive summary judgment. *Id.* at 314 ("[T]he question is whether the plaintiffs provided enough evidence for a factfinder to make 'an intelligent and probable estimate' of the restaurants' actual value."). In doing so, the Fourth Circuit contrasted the evidence in that case to the total lack of evidence of "actual value" in *Patel v. Anand, L.L.C.*, 264 Va. 81, 564 S.E.2d 140 (2002), in which the seller of a ground lease had misrepresented that the lease had clear title. *Id.* As in *Patel*, Amazon has supplied no evidence of the "actual value" of any of the properties that it acquired (whether by lease or purchase). It easily could have done so. Real estate appraisals are commonplace. Its own records, produced in this case, show repeated references to market value. *See, e.g.*, Ex. 33. Amazon has chosen to run from this standard because it cannot meet it. Amazon has failed to provide any evidence of actual injury, which necessarily precludes many of its claims, including under RICO.

As set forth in the Watson Defendants' moving papers, courts consistently have found that no RICO injury exists in similar alleged kickback cases and barred plaintiffs from proceeding to trial on those claims. *See* Mot. at 21. Amazon's efforts to distinguish those cases are baseless. Amazon primarily distinguishes the type of property transferred in those cases but ignores the controlling issue: the necessity of establishing damages that satisfy the RICO injury requirements. In each case where there was no evidence that a plaintiff paid a price above the actual value of a good or service, the court found that there was no injury. Mot. at 21-22.

Similarly, Amazon attempts to distinguish *Baehr v. Creig Northrop Team, P.C.*, 953 F.3d 244 (4th Cir. 2020), because it was decided in the context of RESPA. But the Fourth Circuit in that case was addressing the exact same issue presented here: the necessity to show a concrete injury. *Cf. Sedima v. Imrex Co.*, 473 U.S. 479, 496 (1985) ("[T]he plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation."); *Steele v. Hosp. Corp. of Am.*, 36 F.3d 69, 70 (9th Cir. 1994) (noting that a "'showing of injury' requires proof of concrete financial loss, and not mere injury to a valuable intangible property interest"). In *Baehr*, contrary to the Washington state case relied upon by Amazon, the Fourth Circuit held that alleged kickbacks could not satisfy an injury requirement, stating:

> [T]he deprivation of impartial and fair competition between settlement services providers—untethered from any evidence that the deprivation thereof increased settlement costs—is not a concrete injury under RESPA.

953 F.3d at 254.

The same is true here. Amazon has no evidence that the alleged kickbacks increased the costs of the Leases; it simply insists that this is so despite ample evidence that the lease fees were highly negotiated and fully transparent to both Amazon and IPI. In fact, they were clearly outlined

in each Lease Agreement, which each party reviewed. Indeed, Amazon is so brazen as to attempt to distinguish one representative case, *Bowe v. Public Storage*, 106 F. Supp. 3d 1252 (S.D. Fla. 2015), by claiming that unlike the plaintiff in that case, it did introduce evidence of inflated prices. Opp. at 46; *Bowe*, 106 F.Supp.3d at 1265 ("Plaintiffs must now show at summary judgment that there is evidence establishing a genuine issue of material fact that they in fact paid inflated prices for the PSTIP."). But Amazon not only did not claim damages in its discovery responses and disclosures; it can and does not point to a shred of admissible evidence that the Lease prices exceeded market rates. Amazon ignores the reality (or even the possibility) that the Villanova Trust Agreement had the effect of reducing the Watson Defendants' profits, not increasing Amazon's costs.

Finally, Amazon contends that even though it does not have any compensable damages, it has a RICO injury because it mitigated its alleged damages by settling with IPI. Opp. at 48. Therefore, Amazon asserts that it is entitled to treble its claimed damages before accounting for any mitigation. *Id. (citing Morley v. Cohen*, 888 F.2d 1006, 1013 (4th Cir. 1989)).[9] There are two significant problems with Amazon's position.

First, Amazon's damages theory still fails to account for the controlling law discussed above. Its "economic harm" contentions are divorced from the proper standard and thus no evidence of an injury at all. Its calculation of damages (which it then attempts to treble) is the same effort to obtain the alleged "kickback" payment as damages, but reduced to account for the fact that it did not actually pay that amount in rent. Trebling Amazon's actual damages—zero— still results in zero damages.

---

[9] This argument does nothing, of course, to save Amazon's state law claims, which could not benefit from trebling to satisfy the required elements of actual damages.

Second, IPI was never a co-defendant with the Watson Defendants, and Amazon has repeatedly acknowledged that Amazon had no claim against IPI.  In its Third Amended Complaint, Amazon writes, "IPI is not named as a defendant in this action, and is not known or suspected to have endorsed or engaged in any of the illicit conduct at issue in this suit." ECF 765 ¶ 125.  That was not a new position; each of its complaints contained similar statements. ████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████   Calhoun Decl., Ex. 2 (Estoppel Certificate). Amazon cannot now claim that IPI was a joint tortfeasor and attempt to shelter under the rule of *Morley*.[10]  For *Morley* to be applicable, Amazon would have to have settled with one of the alleged co-conspirators, which it has not done. All that Amazon did was to exercise contract rights and enter into contract revisions with its counterparty.  That puts its actions squarely within the types of actions required by the line of authority cited by the Watson Defendants as prerequisites to a RICO action.  *See* Mot. at 20-21.

Because Amazon has no injury to its property or business, it lacks RICO standing and summary judgment in favor of the Watson Defendants is mandated.  Similarly, because Amazon has failed to show any compensable damages, it has failed to establish the necessary elements of its state law claims as set forth below.

**B.**    **The Watson Defendants Were Not Part of Any Direct Purchase Transaction, which Precludes Amazon's RICO Claim**

Despite the significant, undisputed evidence that the Watson Defendants did not know about, and were not involved in, the White Peaks or Blueridge transactions, Amazon refuses to

---

[10] ████████████████████████████████████████████████████████████████████
Ex. 15 (Lee Report) at 10-11, Fig. 1.  Trebling that "harm" results in a number far less than the rent adjustment Amazon concedes that it already has received.  See Opp. at 49, n. 10.

concede those facts and insists that Watson was conspiring with others despite all evidence to the contrary.  In its effort to escape the undisputed evidence on this issue, Amazon goes so far as to argue that the sworn testimony of its own employees is not binding on it.  Opp. at 31. But Amazon does not offer any alternative evidence—rather, it simply insists that its view of things must be so. Vehemence will not carry the day at summary judgment.  Amazon's refusal to concede, just like its alleged lack of knowledge, is irrelevant to the fact that there is *no* evidence (not one email, document, or piece of testimony) that the Watson Defendants knew about or participated in the White Peaks or Blueridge transactions.

In its effort to tie the Watson Defendants to White Peaks, Amazon contends that Virginia law recognizes fraud by concealment.  Opp. at 66.  While Virginia does recognize concealment as a possible element of a fraud claim, the concealment must occur in connection with the transaction itself.  Later failure to report something does not rise to the level of fraud.

In this case, Watson became aware of the White Peaks transaction only after it was finalized and closed—a fact that Amazon does not dispute.  Whatever alleged harm Amazon had suffered (in reality, none) had already occurred.  Because Watson was not involved in the transaction itself, he could not (and in fact did not) engage in any affirmative acts of misrepresentation upon which Amazon relied when carrying out the transaction. *Cf. Studoco Bldg. Sys., U.S., LLC v. 1st Advantage Federal Credit Union*, 509 F.Supp.3d 560, 572 (E.D. Va. 2020) (under Virginia law, fraudulent concealment "must consist of affirmative acts of misrepresentation" (quoting *Culpeper Nat'l Bank v. Tidewater Improvement Co.*, 119 Va. 73, 83-84, 89 S.E. 118, 121 (1916))). Given these circumstances, Amazon's claim that Watson "conspired" with Ramstetter and Camenson to fraudulently conceal the nature of the White Peaks transaction is without merit. *See Jared and Donna Murayama 1997 Trust v. NICS Holdings, LLC*, 284 Va. 234, 246, 727 S.E.2d 80, 86 (2012)

(absent a showing of reliance, no cause of action for fraud can survive); *White v. Potocska*, 589 F. Supp. 631, 642 (E.D. V.A. 2008) ("Where one person seeks to hold another person liable for fraud, he must show that he relied upon the representations of that person."). That the after-the-fact settlement between the Watson Defendants and Ramstetter and Camenson was confidential does not alter this. It is routine for settlement agreements to be kept confidential.

Further, even after Watson became aware of the White Peaks transaction, he was under no obligation to disclose any information to Amazon about it. Since Amazon was a party to the White Peaks deal, and the price of that transaction was fully disclosed to Amazon, which is a sophisticated and knowledgeable buyer of land in the Virginia area, Ex. 35 (White Peaks Purchase Agreement), it is unclear what any disclosure would have accomplished. Because he was not a party to the transaction, Watson owed no duty of disclosure to Amazon with regard to the White Peaks direct purchase. *See, e.g.*, *Doe by and Through Doe v. Baker*, 299 Va. 628, 655, 857 S.E.2d 573, 656 (2021) (disclaiming duty to disclose third parties' prior misconduct).[11] In any case, an alleged lack of disclosure by Watson with relation to the White Peaks transaction is not actionable under Virginia law. *White*, 589 F. Supp. at 642 ("[W]here there is no duty to disclose, silence does not constitute concealment."). This is particularly the case where the alleged concealment emerges from alleged contractual obligations, as in this case. *See Augusta Mut. Ins. Co. v. Mason*, 274 Va. 199, 205, 645 S.E.2d 290, 293 (2007) ("[T]he duty tortiously or negligently breached must be a common law duty, not one existing between the parties solely by virtue of the contract." (quoting *Foreign Mission Bd. of Southern Baptist Convention v. Wade*, 242 Va. 234, 241, 409 S.E.2d 144, 148 (1991))).

---

[11] Moreover, the Watson Defendants themselves were not party to any contract directly with Amazon. But even if they were, none of the Leases made the Watson Defendants fiduciaries of Amazon or obligated to inform Amazon of their business or dealings or suspicions.

Moreover, Amazon does not respond to the Watson Defendants' factual assertions or arguments concerning the inapplicability of respondeat superior in this context. In failing to respond to that argument, Amazon has conceded it. *Ruddy v. Bluestream Pro.Serv., LLC,* 444 F. Supp. 3d 697, 714 n.34 (E.D. Va. 2020) ("[A] failure to respond is 'grounds for the Court to deem . . . arguments conceded.'" (quoting *Ameur v. Gates*, 950 F. Supp. 2d 905, 918 n.4 (E.D. Va. 2013))); *see also Intercarrier Commc'ns, LLC v. Kik Interactive, Inc.*, No. 3:12-cv-771, 2013 WL 4061259, at *1 (E.D. Va. Aug. 9, 2013) (concluding that where a party fails to respond to an argument it is "effectively conceding" the argument); *Bartley v. Merrifield Town Ctr. Ltd. Partnership*, 580 F. Supp. 2d 495, 502 n.3 (E.D. Va. 2008) (illustrating this principle); *see also* Fed. R. Civ. P. 56(e)(3) (permitting the court to grant summary judgment where asserted facts go unaddressed and the movant is entitled to the requested relief). There is no basis for Amazon to argue that Ramstetter and Camenson were acting for Northstar when they engaged in the White Peaks transaction. As a result, Amazon lacks any basis to contend that the Watson Defendants are liable for the Direct Purchase Transactions under any claim or theory.

### 1.     The Lack of Association Precludes a Finding That an Enterprise Existed

The Watson Defendants' lack of association with the parties to the White Peaks and Blueridge transactions also entirely undercuts Amazon's contentions that those disparate groups constituted an enterprise. Amazon contends that these groups had a common purpose of defrauding Amazon. Even if they had the same purpose, there was no evidence that they were working together—that they shared a "common" purpose. The reality is that Amazon has offered evidence that, at most and taken in the light most favorable to Amazon, shows three different, unrelated, sets of transactions. Those transactions have different parties, purposes, and economic structures. *See* Watson Defendants' Statement of Undisputed Material Facts ("SUMF") ¶¶ 19-30,

61-81.  Amazon has offered zero evidence that the Watson Defendants participated in, knew about, or somehow conspired with others in connection with the Direct Purchase Transactions.  The only evidence connecting the Watson Defendants is an after-the-fact settlement based on a colorable breach of Colorado law.  That is insufficient as a matter of law to lump the Watson Defendants in with unrelated parties on other transactions.  Amazon has chosen to plead this case as a single conspiracy, but the undisputed evidence shows that no such enterprise ever existed.

Amazon contends that "Section 1962(d) allows a plaintiff to "sue co-conspirators who might not themselves have violated one of the substantive provisions of § 1962." Opp. at 50-51 (quoting *Beck v. Prupis*, 529 U.S. 494, 506-07 (2000).  In Amazon's view, it is sufficient that Defendants all "agree[d] to pursue the same criminal objective." *Id.* at 51 (quoting *United States v. Cornell*, 780 F.3d 616, 624 (4th Cir. 2015)).  But Amazon makes no effort to offer evidence that the Watson Defendants were part of an enterprise with the parties to the Blueridge and White Peaks transactions.  Instead, Amazon relies on self-serving and circular logic that everyone is liable for everything because Amazon has characterized the parties as an enterprise.  The law does not support Amazon's approach.  To the contrary, Amazon's attempts to distinguish *Pinson* only prove the Watson Defendants' point.  Amazon claims, "Here, each deal was fundamentally the same with substantially the same participants . . . ."  Opp. at 54.  But the evidence in this case is undisputed that the Watson Defendants were not parties to the separate transactions, which involved different types of transactions (leases versus purchases, development of data centers versus acquisition of land), different financial structures and partners, and different parties.  Generally, Amazon's conspiracy "evidence" is remarkably silent as to the Watson Defendants, *see* Opp. at 55, 58, with good reason.  Watson was involved in only one type of transaction and had no knowledge of or involvement with any of the other transactions or entities created by Atherton.

17

SUMF ¶¶ 10-15, 17, 71-74, 81.  The evidence here tracks *Pinson,* which precludes an enterprise finding.  *United States v. Pinson*, 860 F.3d 152, 158 (4th Cir. 2017).

Amazon attempts to paper over its inability to show a common purpose or single enterprise by claiming that the Defendants "ignore their conspiracy liability."  Opp. at 55-56.  A RICO claim under § 1962(d) still requires a plaintiff to show all of the other elements of RICO, including an enterprise.  Amazon has not done so.  It cannot create an enterprise out of thin air by claiming, contrary to the evidence, that unrelated persons were involved in a conspiracy.  That is especially so when the Watson Defendants, indisputably, did not know about and did not participate in the Direct Purchase Transactions.  There is no basis here to find a conspiracy in the first instance, let alone an enterprise.  All that Amazon has done is list a series of unconnected allegations and attempted to tie them to all defendants without any evidence of such a fact.  Indeed, its inability in this regard is highlighted by its shifting efforts to identify an enterprise in the various versions of its complaints.  As the Supreme Court stated in *Boyle*, which Amazon quotes, "[A]n association-in-fact enterprise is simply a continuing unit . . . with a common purpose . . . ."  Opp. at 59 (*citing Boyle v. United States*, 556 U.S. 938, 948 (2009)).  Amazon can show neither a continuing unit nor a common purpose between the Direct Purchase Transactions and the Lease Transactions. There is no evidence that the Watson Defendants had anything to do with the later Direct Purchase Transactions or that they involved the same people.  It is further undisputed that there were no referral payments from the Watson Defendants to Villanova Trust related to the White Peaks deal, that the Watson Defendants received no compensation from the Blue Ridge Transaction, and no payments were made from Northstar to Villanova Trust on that transaction either.  *See generally* Ex. 15 (Lee Report).  There simply is no evidence of any "continuing unit."  The lack of evidence on this issue is dispositive in favor of Defendants.

## 2.     The Lack of Connectedness Also Shows the Absence of Continuity

This evidence also shows the lack of continuity.  Amazon makes several legal arguments concerning continuity, but its arguments only highlight that the Court has all the information it needs to determine the lack of continuity.

There is no dispute about the limited number of transactions, their duration, or the parties involved.  It also is undisputed that one of the purposes of the White Peaks transaction was for Ramstetter and Camenson to move away from Northstar.  SUMF ¶ 72.  That evidence also shows that there was no likelihood of future transactions with Northstar, and thus no continuity.  Amazon asks that the Court recognize that there is no "per se" rule against single victim continuity, implicitly recognizing that courts in this circuit disfavor continuity in such circumstances.  *See Al-Abood v. Elshamari,* 217 F.3d 225, 238–39 (4th Cir. 2000) (concluding that RICO treatment was not appropriate where the main predicate acts, those being mail and wire fraud, involved one victim, even though there was more than one scheme over a period of several years); *Anderson v. Found. For Advancement, Educ. & Emp't of Am. Indians*, 155 F.3d 500, 506 (4th Cir. 1998) (continuity element of RICO's pattern requirement not satisfied where telephone and mail services used to defraud one party). This case is exactly the type of commercial dispute where the typical rule should apply.  The Court should grant summary judgment for the Watson Defendants on Amazon's RICO claim.

## C.     The Watson Defendants Are Entitled to Summary Judgment on Amazon's Fraud Claim

To prevail on its fraud claim (Count III), Amazon must prove by clear and convincing evidence the following elements: "(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting in damage to the party misled." *Richmond Metro. Auth. v. McDevitt St. Bovis, Inc.*, 256

Va. 553, 557-58, 507 S.E.2d 344, 346 (1998) (quoting *Evaluation Research Corp. v. Alequin*, 247 Va. 172, 175, 439 S.E.2d 387, 390 (1994)).  To maintain a fraud claim, the plaintiff must allege and prove injury.  *See Lloyd v. Smith*, 150 Va. 132, 152, 142 S.E. 363, 367 (1921) ("As a general rule, a fraud which causes no injury is not legally cognizable; and it is an essential part of the definition of fraud . . . .").  Amazon's fraud claim essentially states a fraudulent inducement claim related to the Lease Transactions and the White Peaks Transaction.

In its Opposition, Amazon claims that its claim against the Watson Defendants (on White Peaks, at least) is one of fraudulent concealment.  Opp. at 66.  That claim fails for the reasons stated above.  The Watson Defendants are entitled to summary judgment on Count III with respect to the White Peaks Transaction.  Amazon has not created a dispute as to the facts that: (i) the Watson Defendants were unaware of the White Peaks Transaction, (ii) Camenson and Ramstetter were not acting on behalf of the Watson Defendants in executing the White Peaks Transaction, and (iii) the Watson Defendants made no representations to Amazon.  *See supra* at 26-30.  Nor has Amazon shown that the Watson Defendants concealed anything from Amazon before the White Peaks transaction closed.  Amazon's complaint is that the Watson Defendants did not do what Amazon wanted after they learned about it.  But that is insufficient to support a fraud claim.  *See, e.g.*, *Doe v. Burton Parish Church*, No. 7977, 1997 WL 33575565, at *13 (Va. Cir. Ct. July 10, 1997) (rejecting plaintiff's claim of fraudulent concealment when defendants disclosed the information but "plaintiffs [were] dissatisfied with the nature, method, and content of the communications.").  Accordingly, the Watson Defendants are entitled to summary judgment as to the White Peaks portion of Amazon's fraud claim.  Amazon has not contested this argument and has thus conceded it.

Similarly, Amazon has not contested that it does not have damages based on fraud. The law applicable to fraud damages in Virginia is set out in the Motion and above. Amazon has totally failed to address it, and thus has conceded it.

**D.     Amazon's Unjust Enrichment and Constructive Trust Is Subject to Summary Judgment**

Amazon responds only partially to the Watson Defendants' arguments pertaining to unjust enrichment. Its arguments do not take issue with any of the facts stated in the Watson Defendants statement of undisputed material facts. Instead, Amazon primarily contends that its claims are proper because it prevailed in obtaining a preliminary injunction and the Fourth Circuit affirmed that order. First, Amazon has mischaracterized what the Fourth Circuit ruled. In any case, Amazon's reliance on the "mandate rule" is misplaced because the current motion arises in a different context, under a different standard, against a different operative complaint, and after almost two years of discovery. In this context, Amazon must present evidence to support its claims. It has not.

Amazon contends that this Court, in deciding the instant Motion for Summary Judgment, is bound by the determinations made by the Fourth Circuit when it considered Amazon's request for a preliminary injunction. But the Fourth Circuit recognizes that the law of the case "poses no bar to the assessment of past holdings based on a different procedural posture," when "later review expands the court's inquiry based on development of actual facts underlying a plaintiff's claims." *Graves v. Lioi*, 930 F.3d 307, 318 (4th Cir. 2019) (holding that a prior ruling based on the facts alleged did not prohibit revisiting those rulings on summary judgment after development of the record). Simply put, "when a court is presented with a different record at a new stage of the case, the law-of-the-case doctrine will no longer constrain the court's review." *Id.*; *see also Billups v. City of Charleston, South Carolina*, 961 F.3d 673, 688 n.8 (4th Cir. 2020) (remarking that

inconsistencies in the court's legal rulings between earlier and later stages of the case were "not []

remarkable" given that the court's view of the legal principles and evidence "could certainly

change at each successive stage of the litigation").  In short, this Court's analysis should not be

precluded by the Fourth Circuit's findings, which were (1) based on a limited factual record, (2)

made at a different procedural stage of the case, and (3) premised on an entirely different legal

standard. *American Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 515 (4th Cir. 2003) ("Law

of the case . . . does not and cannot limit the power of a court to reconsider an earlier ruling. The

ultimate responsibility of the federal courts, at all levels, is to reach the correct judgment under the

law."). This limiting principle also applies to decisions rendered by a court at the preliminary

injunction stage. *See Patterson v. NewRez LLC*, No. 1:21-cv-126, 2022 WL 218985, at *10

(N.D.W. Va. Jan. 25, 2022) (citing *Wells Fargo Bank, Nat'l Ass'n v. Worldwide Shrimp Co.*, No.

17-c-4723, 2017 WL 7689635, at *6 (N.D. Ill. Dec. 29, 2017) ("[C]ourts have 'refuse[d] to apply

the law-of-the-case-doctrine to a ruling at the preliminary injunction stage unless the ruling was

based on a pure issue of law.'").

Amazon admits that the Watson Defendants discussed the Fourth Circuit's ruling but

mischaracterizes the Watson Defendants' argument to claim that the Watson Defendants contend

that the Fourth Circuit erred.  Regardless of whether the Watson Defendants agree with the Court's

prior opinion, the critical point is that the Fourth Circuit did not say what Amazon says it did.

Amazon contends, based on the earlier circuit ruling, that it may continue to seek unjust enrichment

despite having affirmed the underlying contracts.  Opp. at 77.  The Fourth Circuit did not make

any such holding—indeed, it could not have. The Fourth Circuit's Mandate was entered September

22, 2021, and Amazon entered into the Lease Continuity Agreement affirming the contracts in

February 2022. *See* SUMF ¶ 45.  Rather, the Fourth Circuit held only that it was appropriate for

Amazon to plead in the alternative at the pleading stage. *See* Mot. at 41, n.10. The Watson Defendants point out the context in which a party may maintain a contract and unjust enrichment claim. Amazon has not actually contested that law.

Moreover, the facts and context have changed significantly since the Fourth Circuit heard the injunction appeal in August 2021. The mandate relied upon by Amazon was issued nearly two years ago, before any discovery had been conducted in the case. Since the Fourth Circuit ruled on Amazon's preliminary injunction, the factual record of the case has been extensively developed through depositions, interrogatories, document exchange, and expert opinion testimony. The development of evidence through these discovery tools has revealed new factual information, not previously available during the Fourth Circuit's consideration of the preliminary injunction, and many of the affidavits that were in front of the court were subsequently withdrawn. ECF 587, 647. For example, discovery has revealed the extent to which Watson was excluded from the White Peaks Transaction, a fact relevant to the Court's consideration of the viability of Amazon's conversion claim. *See* Calhoun Decl., Ex. 3 (Kuhn Tr.) at 40:19-22; 47:6-13; *see also* Ex. 19 (Vonderhaar 30(b)(6) Tr.) at 393:21-394:5. Similarly, ████████████████████████ ███████████████████████████████████████████████████████████████ ████████████████████████ a fact relevant to the Court's consideration of Amazon's constructive trust and unjust enrichment claims. *See* Ex. 24 (Lease Continuity Agreement). Given these instructive factual developments, the Court's analysis need not be constrained. *Everett v. Pitt Cty. Bd. of Educ.*, 788 F.3d 132, 142 (4th Cir. 2015) ("Once the district court took evidence on the question, it was no longer bound by the law of the case, but instead free" to make its own factual and legal determinations).

Amazon further contends that it need not make its election of contract or unjust enrichment until judgment. Opp. at 76. But Amazon **already** has made that election. Amazon is attempting to do one thing and say another. It is undisputed that Amazon has expressly affirmed the contracts and opted to keep the properties at issue.[12] That fact is critical. The Fourth Circuit's ruling allowing pleading in the alternative was based, in large part, on the contention that the Watson Defendants contested liability under the contracts. *Amazon.com, Inc. v. WDC Holdings, LLC*, No. 20-1743, 2021 WL 3878403, at *6 (4th Cir. Aug. 31, 2021). By taking that issue out of the case, Amazon has precluded any possibility of an unjust enrichment recovery. Amazon has accepted the properties (both purchased and leased) and is enjoying them (having even purchased four of them). The case law leaves no doubt that when a party accepts the benefits of a contract, it cannot **also** obtain damages for unjust enrichment. That is exactly what Amazon is attempting to do.

Finally, Amazon contends that the Watson Defendants cannot have a bona fide claim to payments under the Northstar/IPI JV Agreements. Amazon contends that the alleged fraud contaminates the entirety of the transactions and that therefore Northstar cannot have any bona fide claim. Opp. at 78. But in doing so, Amazon misinterprets the "bona fide claim" standard. If a party has a contract right to a payment, it has a bona fide claim. *James G. Davis Constr. Corp., v. FTJ, Inc.*, 298 Va. 582, 602, 841 S.E.2d 642, 653 (2020) (Kelsey, J., dissenting) ("As a matter of law, an enrichment cannot be unjust if the defendant has 'a bona fide hostile claim of right' to whatever benefit was allegedly bestowed on him." (quoting *City of Norfolk v. Norfolk Cty.*, 120 Va. 356, 374, 91 S.E.2d 820, 820 (1917))); *see also CGI Federal Inc. v. FCi Federal, Inc.*, 295

---

[12] Amazon contends that because the Northstar entities are no longer parties to the IPI JV, that the lease agreements are irrelevant and that Amazon entered into "new leases". Opp. at 75. That contention is false. Amazon did not enter new leases. Amazon has not produced any and ███ ████████████████████████████████████████████████████████ Ex. 11 at 3.

Va. 506, 519, 814 S.E.2d 183, 190 (2018) (holding that "[[t]he existence of an express contract covering the same subject matter of the parties' dispute precludes a claim for unjust enrichment," particularly when the plaintiff affirms the contract at issue). It does not matter that the plaintiff might challenge the contract. Here, the Watson Defendants were parties to contracts with IPI, a third party, that governed the fees Northstar was to be paid from the joint venture. Amazon has since affirmed its own contracts (the Leases). The existence of these contracts demonstrates the bona fide interest. For Amazon to recover in that situation, it must pursue some other remedy (such as setting aside the contracts).

Finally, Amazon does not address the Watson Defendants' arguments that Amazon has failed to show that the Watson Defendants were enriched at Plaintiff's expense. Mot. at 44. As a result, it has conceded that argument.

## E.   Defendants Are Entitled to Summary Judgment on Amazon's Detinue and Conversion Claims

The Watson Defendants have demonstrated that summary judgment is appropriate as to Amazon's detinue and conversion claims. *See* Mot. for Summary Judgment at 37-39, 45-47. To maintain a claim for detinue, a plaintiff must show that it has a property interest in specific personal property, capable of identification, in the defendant's possession. Va. Code § 8.01-114(A)(1); *York v. Jones*, 717 F. Supp. 421, 427 (E.D. Va. 1989). And to support a claim of conversion, a plaintiff must show (i) ownership or right to possession of certain property at the time of the conversion and (ii) the wrongful exercise of dominion or control by the defendant over the plaintiff's property, thus depriving the plaintiff of possession. *Simmons v. Miller*, 261 Va. 561, 582, 544 S.E.2d 666, 679 (2001).

As an initial matter, Amazon has ignored the Watson Defendants' arguments on detinue and conversion, and it has thus conceded those arguments. *See, e.g.*, *Ruddy*, 444 F. Supp. 3d at 714

n.34 (noting that "a failure to respond is 'grounds for the Court to deem . . . arguments conceded'" (quoting *Ameur*, 950 F. Supp.2d at 918 n.4)); *see also Intercarrier Commc'ns, LLC*, 2013 WL 4061259, at *1 (concluding that where a party fails to respond to an argument raised in a dispositive motion, it is "effectively conceding" the argument).

The evidence also amply supports the Watson Defendants' position. Amazon made several rent payments to the landlord entities, and it is undisputed that this is all that Amazon has ever paid. *See* Ex. 15 (Lee Report) at 39, Ex. 5 (███████████████████████; Ex. 19 (Vonderhaar 30(b)(6) Tr.) at 107:7-22. Amazon does not contend that those rent payments were improperly paid but argues that they were inflated by the "kickbacks." The allegedly inflated portion of the rent payments are all that it could hope to recover under a conversion or detinue theory. But it also is undisputed that Amazon already has recouped those payments through its agreement with IPI (even if its measure of damages is entirely erroneous, which it is). Any additional recovery would be a double recovery. As such, the Court should grant summary judgment in favor of the Watson Defendants.

In any case, Amazon's opposition makes clear, for the first time, that what Amazon actually is seeking on those claims is disgorgement. Opp. at 78. Disgorgement is not a proper remedy for conversion or detinue. As set forth in the motion, those claims are to address specific property (whether cash or otherwise). *See, e.g.,* Va. Code § 8.01-114(A)(1); *see also York v. Jones*, 717 F. Supp. 421, 427 (E.D. Va. 1989); *MacPherson v. Green*, 197 Va. 27, 32, 197 S.E.2d 785, 789 (1955) (stating that detinue is "a possessory action having for its object the recovery of specific personal property"); *Simmons v. Miller*, 261 Va. 561, 582, 544 S.E.2d 666, 679 (2001). Amazon's responses concede that it is not seeking specific property, mandating judgment for the Defendants.

Amazon's law-of-the-case arguments as to conversion and detinue fail for the same reasons discussed above. Indeed, at the time that the Fourth Circuit heard those issues on a preliminary basis, the Watson Defendants presented only a legal defense, and the only issue before the Circuit Court was whether those equitable claims could possibly justify the preliminary injunction. Development of the facts has shown that the factual contentions that Amazon pressed before this Court and the Circuit Court had no basis, were supported by affidavits from persons without knowledge, and were flatly wrong. For example, Amazon contended that it had been harmed by at least $21.25 million when it was pursuing an Injunction and subsequent Receivership against the Watson Defendants, contending that it had paid this money. *E.g.*, *Amazon.com, Inc. v. WDC Holdings LLC*, No. 20-1743 (4th Cir. 2020), Dkt. 29 (Amazon Br.) at 1. Now, ████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████ *See* Ex. 15 (Lee Report) at Fig. 1; Ex. 28 (Supplemented Initial Disclosures). In a just world, the injunction and receivership order would have been dropped and the bond released to Watson when these facts came to light. But Amazon brazenly pushes forward and, despite having failed to identify any of its property in the hands of the Watson Defendants, contends for the first time that it is entitled not to the return of specific funds, but to disgorgement on its conversion and detinue claims. Opp. at 79. Contrary to Amazon's suggestion, the Fourth Circuit absolutely did not say that disgorgement is an appropriate remedy for conversion. Under Virginia law, the standard remedy for conversion is return of the property in question or damages for the fair market value of the property.[13] *In re Rescue Rangers,*

---

[13] In Virginia, detinue is a statutory cause of action, and disgorgement is not an available remedy. *See*. Va. Code. Ann. § 8.01-121.

*LLC*, 582 B.R. 669, 682 (Bankr. E.D. Va. 2018) (citing *Marsteller v. ECS Fed., Inc.*, No. 1:13cv593 (JCC/JFA), 2013 WL 4781786, at *8 (E.D. Va., Sept. 5, 2013) (*quoting Straley v. Fisher*, 176 Va. 163, 10 S.E.2d 551 (1940))).   Amazon has nothing to say to this governing standard.   The undisputed evidence shows that Watson is not in possession of the property in question, and Amazon has not even attempted to show the fair market value of the leased properties.

What the Fourth Circuit actually did say illustrates the difference between a pleading stage remedy and summary judgment after discovery. For example, the Court observed, "[a]s regards constructive trust, Amazon requested it be imposed over *various accounts and assets identified throughout its pleadings . . . .*" *Amazon.com, Inc. v. WDC Holdings LLC*, No. 20-1743, 2021 WL 3878403, *7 (4th Cir. Aug. 31, 2021) (emphasis added).   It similarly noted, "Amazon pleaded numerous examples of specific funds that Northstar received through unjust enrichment or conversion.   It is enough at this point that Amazon alleges that the unjust gains and converted funds passed through Northstar's possession and "an amount equal to the amount held [in trust] was in its hand." *Id*.   Although the courts accepted Amazon's allegations (which were supported only by lawyer affidavits that were subsequently withdrawn for lack of personal knowledge), Amazon's allegations have now proven to have been made up from whole cloth.   Rather than tens of millions of dollars it allegedly paid to the Watson Defendants, █████████████████ ███████████████████████████████████████████   *See* Ex. 15 (Lee Report) at Ex. 2.   The alleged funds and accounts that it allegedly identified largely do not exist, were not paid by Amazon, and will never be paid by Amazon. Amazon cannot seek conversion or detinue over funds that never left its hands, nor can it seek disgorgement on these claims.   That it insists to the contrary is nothing short of bad faith.

**F.     Amazon's Tortious Interference Claim Fails**

The Watson Defendants have also demonstrated that summary judgment is appropriate with respect to Amazon's tortious interference claim.

First, as set forth in the Motion, the Watson Defendants could not have interfered with Nelson's or Kirschner's contracts as alleged.  Again, Amazon has not objected to the Watson Defendants' arguments in favor of summary judgment on this matter, and they have therefore conceded the matter. *See, e.g.*, *Ruddy*, 444 F. Supp. 3d at 714 n.34; *Intercarrier Commc'ns, LLC*, 2013 WL 4061259, at \*1.  Among those concessions was the fact that the Watson Defendants did not communicate with Nelson or Kirschner concerning the Direct Purchase Transactions, so any evidence of injury necessarily must involve the Lease Transactions.  Mot. at 40.

Because Amazon has subsequently conceded that it has no compensable damages on the Lease Transactions, *see supra* at 6-10, Amazon cannot prove the damage element of its tortious interference claim and it is subject to summary judgment. *Collelo v. Geographic Servs., Inc.*, 283 Va. 56, 54, 727 S.E.2d 55, 76 (2012) (striking claim for tortious interference when plaintiff failed to prove that incurred damages as a result of defendant's alleged tortious interference with a contract). Amazon's contention that it has suffered some nebulous harm as a result of unfaithful employees is unavailing. It has not, and cannot, allege monetary damages resulting from the alleged interference—an essential element of the claim.  *Schaecher v. Bouffault*, 290 Va. 83, 106, 772 S.E.3d 589, 602 (2015) (requiring proof of resultant damage to the party whose contractual relationship has been disrupted); *Gen. Assur. of Am., Inc. v. Overby-Seawell Co.*, 893 F.Supp.2d 761 (E.D. Va. 2012) (same).  Amazon's arguments seeking to preserve its RICO claims are of no help in the tortious interference context.  As such, Amazon's claim for tortious interference is ripe for summary judgment.

**G.      The Watson Defendants Should Be Granted Judgment on Amazon's Civil Conspiracy Claim**

Amazon does not challenge any of the Watson Defendants' facts or arguments as to civil conspiracy, instead only tangentially addressing Atherton's arguments.   Even there, Amazon makes conclusory allegations that parties to a conspiracy are liable for the acts of the conspiracy. Opp. at 73-74.  First, however, it is obligated to **prove** a conspiracy. It has not done so.

In *Shirvinski v. U.S. Coast Guard*, the Fourth Circuit considered a similarly lacking claim of civil conspiracy. 673 F.3d 308 (4th Cir. 2012). In that case, the plaintiff alleged that two of his coworkers conspired to defame him by sending emails falsely accusing him of violating the employer's policies. *Id.* at 312-13. The Court rejected this argument, finding that the plaintiff offered "nothing more than sheer speculation" that the coworkers had agreed to send the defamatory email. *Id.* at 320.  In reaching this conclusion, the Court highlighted that the plaintiff had "no direct evidence," that one of the coworkers, Singh, either "played [a] role in the drafting of or had seen the . . . email prior to receiving it." *Id.* The mere fact that Singh was aware of the other coworker's intent to send an email regarding the plaintiff's job performance did not suffice to establish the formation of a conspiracy. *Id.* To hold otherwise, the Court concluded, would "strain Virginia law to the breaking point." *Id.* at 321.

Here, there is even less evidence that the Watson defendants engaged in any conspiracy with others with respect to White Peaks or Blueridge. As an initial matter, Amazon does not seriously dispute that the Watson Defendants were not a party to the direct purchase transactions. Amazon has never alleged that the Watson Defendants took part in or had knowledge of the Blueridge Transaction.  Indeed, discovery has shown that Watson was not even aware of the White Peaks transaction until after it was closed and did not learn about the Blueridge transaction until discovery in this case was provided. It strains credulity to argue that the Watson Defendants formed

a conspiracy with regard to a transaction they knew nothing about in the first place. Thus, like the plaintiff in *Shirvinski*, Amazon has failed to show that the Watson defendants played any role in carrying out the White Peaks and Blueridge transactions. In the absence of any such evidence, the Watson Defendants cannot be liable on a conspiracy basis.

Moreover, Amazon has totally ignored the damages element of a conspiracy, thus waiving that argument. See *Ruddy*, 444 F. Supp. 3d at 714 n.34. Even when considered on the merits, Amazon's civil conspiracy claim must fail. The Supreme Court of Virginia has recognized that the "gist" of the civil action of conspiracy is "the damage caused by the acts committed in pursuance of the formed conspiracy and not the mere combination of two or more persons," working together. *Dunlap v. Cottman Transmission Sys., LLC*, 287 Va. 207, 214,754 S.E.2d 313, 316 (2014) (internal quotation marks omitted) (quoting *Gallop v. Sharp*, 179 Va. 335, 338, 19 S.E.2d 84, 86 (1942)). Thus, "[no] cause of action exists without the resulting injury, and the damage produced must arise as the effective result of the conspiracy." *Id.* Here, Amazon has no compensable damages with respect to its conspiracy claim. *See supra* at 4-13. Given this fatal flaw, summary judgment in favor of the Defendants must be granted.

## CONCLUSION

For the foregoing reasons, the Watson Defendants respectfully request summary judgment on Counts I through V, VII and VIII.

DATED: February 8, 2023                     Respectfully submitted,


                                            */s/ Jeffrey R. Hamlin*
                                            Jeffrey R. Hamlin (VA Bar No. 46932)
                                            George R. Calhoun (*pro hac vice*)
                                            James Trusty (*pro hac vice*)
                                            IFRAH PLLC
                                            1717 Pennsylvania Avenue NW, Suite 650

Washington, DC 20006
Telephone: (202) 524-4140
Facsimile: (202) 524-4141
jhamlin@ifrahlaw.com
george@ifrahlaw.com
jtrusty@ifrahlaw.com

Stanley L. Garnett (*pro hac vice*)
Amanda K. Houseal (*pro hac vice*)
Sara R. Bodner (*pro hac vice*)
Leah M. Regan-Smith (*pro hac vice*)
Brownstein Hyatt Farber Schreck, LLP
410 17th Street, Suite 2200
Denver, CO 80202
Telephone: (303) 223-1100
Facsimile: (303) 223-1111
sgarnett@bhfs.com
ahouseal@bhfs.com
sbodner@bhfs.com
lregansmith@bhfs.com

*Counsel for WDC Holdings LLC, Brian Watson,
Sterling NCP FF, LLC, Manassas NCP FF, LLC,
NSIPI Administrative Manager, and BW Holdings
LLC*

**ANNEX A**

**RESPONSE TO ALLEGED DISPUTES OF FACT**

**Watson Def. Facts Nos. 10-15, 17, 18, 20, 21, 22, 31, 33, 44, 53-55, 63, 65, 70, 76, and 78:** Amazon disputes the "implications" of the factual statements set forth in each of these paragraphs. But disputing implications does not equate to a dispute over the substance of a factual assertion.  Amazon's responses as to each of these paragraphs are essentially legal arguments.

**Watson Def. Fact No. 2:** Amazon disputes the assertion that Northstar is a "full-service real estate investment, development, and asset management company." This alleged dispute is immaterial.

**Watson Def. Fact No. 21:** In responding to the factual assertion that "Amazon . . . selected Northstar as the developer for . . . nine buildings," Amazon "[d]ispute[s] the implication that 'Amazon' made an informed decision to select Northstar as a developer for all nine Lease Transactions." Opp. at 27. Amazon's objection amounts to a legal argument concerning the motives of its employees.

**Watson Def. Fact No. 22:** Amazon seeks to dispute factual statements concerning its internal review policies; however, Amazon's contentions are irrelevant (even if disputed) to the Watson Defendants' Motion.

**Watson Def. Fact No. 23:** The Watson Defendants' factual statements concerning the organization of the joint venture between Northstar and IPI are not in dispute. The Watson Defendants have specifically alleged the date of the agreement.

**Watson Def. Fact No. 24:** The Watson Defendants assert that the joint venture "subsequently created and wholly owned a series of corporate entities through which they purchased the properties and which acted as landlords in the Lease Transactions." Amazon appears

33

to be disputing the word "subsequently." While the Watson Defendants agree that Dulles NCP LLC was created prior to Northstar's formal joint venture agreement with IPI, that fact is immaterial.

**Watson Def. Facts Nos. 25-29:** Amazon quibbles over the names of the joint venture landlord entities, which the Watson Defendants named in Paragraph 24 of the Statement of Undisputed Material Facts. Those disputes are immaterial.  With regard to Paragraph 29, Amazon also makes legal arguments but does not deny the prior initiation of its internal investigation.

**Watson Def. Fact No. 31:** Amazon objects to the factual statement that the "fees actually received by Northstar were paid out by the Special Purpose Ownership Entities," disputing "the implication that *all* fees that Northstar received were paid out by the Special Purpose Ownership Entities." Opp. at 31. But the record materials cited by Amazon do not contradict the conclusion that the *fees* received by Northstar were paid by the Special Purpose Ownership Entities.

**Watson Def. Fact No. 34:** Amazon disputes only whether the statements of its employees are binding on Amazon.  It does not dispute the substance of the statements.

**Watson Def. Fact No. 35:** Amazon contests the Watson Defendants' characterization of deposition testimony on the part of Amazon personnel. Amazon's response is legal argument concerning Mr. Klein's testimony and the implications thereof.

**Watson Def. Fact No. 36:** Amazon does not present a legitimate dispute.  It simply points to other self-serving testimony from its own witness that is unsupported by any evidence.  To the extent it disputes implications of the facts set forth in Paragraph 36, Amazon's response is legal argument.

**Watson Def. Fact No. 37:** Amazon does not dispute the statements of any of its personnel but instead seeks to characterize its internal review process.

**Watson Def. Fact No. 38:** Amazon seeks to dispute the factual assertion that "the work that Northstar was obligated to perform pursuant to the Lease Agreements was complete and timely." But it does not deny that it received the buildings for which it bargained.  It cites no evidence to the contrary, citing only the legal arguments made within its interrogatory responses.

**Watson Def. Fact No. 40:** Amazon seeks to dispute the factual assertion that "[s]everal of the projects were also delivered under budget." But Amazon does not actually dispute the factual contention.  It seeks to quibble with the testimony from an IPI witness, but provides no contradictory evidence.

**Watson Def. Fact No. 41:** Amazon provides no contrary evidence that it paid any fees directly to the Watson Defendants.  Its response is nothing but legal argument.  The transcript clearly admits that Amazon paid nothing but "rent."  Moreover, the Lee Report submitted by Amazon shows that Amazon made no payments to the Watson Defendants.

**Watson Def. Fact No. 42:** Amazon quibbles with the word "determined" but otherwise does not contradict the stated facts.

**Watson Def. Fact No. 43:** This objection concerns a purported "characterization" by the Watson Defendants, not the stated facts.

**Watson Def. Fact No. 45:** Amazon quibbles with the term "agree" but not the underlying stated facts. The Court can, of course, reference the agreement itself, which reflects the parties' agreement and which specifically provides that the parties will enter into the referenced sale transaction.

**Watson Def. Fact No. 46:** Amazon contends that the Watson Defendants have raised "legal conclusions" by setting forth details of the Confidential Settlement Agreement between Amazon and IPI. But the Watson Defendants' factual allegations simply recite the parties'

obligations under that agreement, and Amazon does not deny those obligations (*i.e.* that it is obligated to make rent payment under the Leases).

**Watson Def. Fact No. 48:** Amazon disputes that "Amazon 'did not *consider*' property market values" (emphasis added) but provides no evidence to the contrary, simply pointing out that it admitted that its "focus" was not market rates.  This is a distinction without a difference.

**Watson Def. Facts No. 51:** Amazon's dispute constitutes legal argument.

**Watson Def. Fact No. 52:** Amazon refers to its own SOF ¶¶ 13-14 and SOF ¶¶ 38-39, but those paragraphs do not actually provide evidence that the Lease Transactions or yield rates were above market rates.  Indeed, Amazon refused to produce any evidence on these issues in discovery. Its own conclusory and self-serving statements do not actually address those contentions and are not supported in its own discovery responses. Accordingly, Amazon's attempt to manufacture a dispute of fact is unavailing.

**Watson Def. Facts Nos. 56-57:** The Watson Defendants assert factual allegations concerning payments to the Villanova Trust and Brian Watson's lack of involvement in creating or controlling the Trust. Amazon offers no evidence to dispute these factual assertions. Its bald denial of these facts is deficient under Rule 56(c) of the Federal Rules of Civil Procedure.

**Watson Def. Fact No. 58:** The Watson Defendants assert that "[a]ll referral fees paid to the Villanova Trust were paid by Northstar from its bank account" and no payments were made by Amazon, the joint venture, or any Special Purpose Ownership Entities. In response, Amazon does not actually dispute this assertion; instead, it makes an unsupported (and incorrect) statement concerning the source of funds from Northstar.

**Watson Def. Fact No. 59:** The Watson Defendants assert that Nelson and Casey Kirschner did not have an agreement with Watson under which they would receive money from the Watson

Defendants. Amazon does not directly refute this fact, contending only that circumstantial evidence is sufficient to create a dispute.  In any event, this fact is not essential to resolution of the Motion.

**Watson Def. Fact No. 60:** Amazon does not dispute the statement that "[t]he Watson Defendants never paid Nelson or Casey Kirschner."  Instead, Amazon is making an argument about tracing and indirect transfers that is not contained in the statement.

**Watson Def. Fact No. 62:** Amazon does not dispute the statement that "Amazon determined that the White Peaks transaction was in Amazon's best interest given the parcel's location and competitive price."  It further seeks to dispute inferences, which is essentially legal argument.

**Def. Facts Nos. 66, 72-73:** Amazon does not actually dispute the Watson Defendants' statements that Kyle Ramstetter and Will Camenson "did not pursue the [White Peaks] transaction on behalf of Northstar," that "Northstar played no part in the White Peaks transaction," and that "Mr. Watson also played no part in the White Peaks transaction."  It makes legal argument about the fact that Ramstetter and Camenson were employees of Northstar (a fact contained in the statement itself).

**Watson Def. Fact No. 68:** Amazon disputes that the White Peaks purchase price "was a competitive price for the area" and claims that the cited materials do not support this. ██████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████

**Watson Def. Fact No. 69:** Amazon refers to testimony of its corporate representative, who was unable to draw any market comparisons (*see contra*, Ex. 33 referenced above) and provides no other evidence to dispute Mr. Kuhn's testimony.

**Watson Def. Fact No. 75** Amazon admits the statements but contends that "none of the materials suggest that any such understanding was shared within Amazon," despite one of the citations being to their own witness. In any case, that statement is immaterial to the stated fact, which Amazon has not actually contradicted.