# Exhibit 1

```
        IN THE UNITED STATES DISTRICT COURT
        FOR THE EASTERN DISTRICT OF VIRGINIA
                ALEXANDRIA DIVISION
                CASE NO. 1:20CV484
_____

AMAZON.COM, INC and AMAZON DATA SERVICES, INC.,

        Plaintiffs,

vs.

WDC HOLDINGS LLC d/b/a NORTHSTAR COMMERCIAL
PARTNERS, et al.,

        Defendants.
_____

800 HOYT LLC,

        Intervening Interpleader Plaintiff,

vs.

BRIAN WATSON, WDC HOLDING LLC, PLW CAPITAL I,
LLC, AMAZON.COM, INC., and AMAZON DATA SERVICES,
INC.,

        Interpleader Defendants.
_____

             30(b)(6) VIDEO DEPOSITION OF
                   CHRIS VONDERHAAR
                   Conducted Remotely

          Wednesday, September 14, 2022

                    8:07 a.m. PST
_____

Reported by:  Elisabeth A. Lorenz:  RMR, CRR
Job No. 417380
```

**Page 134**

1  somewhere between 6.5 and above, right.
2         What I -- what I conclude from that
3  is the floor was below 6.5, and we should have
4  been paying 6.5 or lower.  And we ended up north
5  of 6.5, I believe around 6.7 percent yield, in
6  one specific example.
7         BY MR. LITTLE:
8     Q   Okay.
9     A   And so that's my rationale and
10 evidence that would say we should have -- we
11 should have been able to do better.  Amazon
12 should have got a better deal and a lower yield
13 on that deal.
14    Q   Do you have any specific evidence
15 external to those communications that that is
16 true?
17        MS. PAPEZ:  Objection, form.
18        THE WITNESS:  No, I don't have -- I
19 can't point to other comparables that we've been
20 able to pull in that time frame that would have
21 suggested that.  We only know what comparables
22 that were provided as part of that transaction,

**Page 135**

1  provided by Casey and his team, which, at this
2  point, I question because they would have been
3  selecting comparables that would have made the
4  case for 6.5 or greater percent yield in that
5  example.
6         BY MR. LITTLE:
7     Q   And so the conclusion that you're
8  drawing about the harm to Amazon comes from
9  those pieces of information you have related to
10 those communications; is that fair?
11        MS. PAPEZ:  Objection, form.
12        THE WITNESS:  Yeah, I think it's --
13 that evidence supports the assertion that we
14 could have done better.
15        BY MR. LITTLE:
16    Q   Is that speculation?
17        MS. PAPEZ:  Objection, form.
18        THE WITNESS:  No.  No, I don't
19 think it's speculation.  I think it's reasonable
20 because -- in fact, Casey -- I believe in the
21 correspondence it starts at 6.5, and we end up
22 at 6.7 so that we can put more money into the

**Page 136**

1  deal for somebody else that we shouldn't have
2  actually paid.
3         And so I don't think it's
4  speculation to say we could have done better.
5         BY MR. LITTLE:
6     Q   But you have no evidence besides
7  that communication to that effect, correct?
8         MS. PAPEZ:  Objection, form,
9  misstates testimony.
10        THE WITNESS:  I can only point to
11 the comparables that we have that justified that
12 deal, which included a markup effectively, that
13 we shouldn't have had to pay.
14        BY MR. LITTLE:
15    Q   Do you have any evidence to believe
16 that Northstar would have agreed to 6.5 percent
17 yield on that deal?
18        MS. PAPEZ:  Objection.
19        (Stenographer requested
20 clarification due to audio
21 distortion/malfunction.)
22        MR. LITTLE:  That Northstar would

**Page 137**

1  have agreed to a 6.5-degree yield on that
2  property or that deal.
3         MS. PAPEZ:  Objection.  Objection,
4  form.
5         THE WITNESS:  I'm not going to
6  speculate on what they would or wouldn't agree
7  to.
8         BY MR. LITTLE:
9     Q   What's the difference between your
10 refusal to come to a reasonable conclusion there
11 versus the conclusions you draw as to your
12 previous answer?
13        MS. PAPEZ:  Objection, form.
14        THE WITNESS:  The -- the contrast I
15 would drive -- draw, Alex, is, based on the
16 evidence we have reviewed, there was clearly a
17 dialogue and a collusion about what yield to pay
18 and what Casey and Northstar thought that they
19 could push through our approval process, given
20 Casey's position of trust and knowledge of our
21 process and the comparables he had to access.
22        That -- that is data, if you