IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| AMAZON.COM and AMAZON DATA SERVICES, INC., <br>     Plaintiffs, <br> v. <br> WDC HOLDINGS LLC dba NORTHSTAR COMMERCIAL PARTNERS, et al. <br>     Defendants. | Civil Action No. 1:20-CV-484-RDA-IDD |
| 800 HOYT LLC, <br><br>     Intervening Interpleader Plaintiff / Intervening Interpleader Counter-Defendant, <br><br> v. <br><br> BRIAN WATSON; WDC HOLDINGS LLC; BW HOLDINGS, LLC, <br><br>     Interpleader Defendants, <br><br> and <br><br> AMAZON.COM, et al. <br><br>     Interpleader Defendants / Interpleader Counter-Plaintiffs. | **WATSON DEFENDANTS' OPPOSITION TO PACIFIC PREMIER'S MOTION TO INTERVENE** |

    Defendants Brian Watson, WDC Holdings LLC, Sterling NCP FF, LLC, Manassas NCP FF, LLC, and NSIPI Administrative Manager (collectively, the "Watson Defendants"), through counsel, submit the following response in opposition to Pacific Premier Bank's ("Pacific Premier") motion to intervene (Dkt. 1268) and motion to modify Receiver Order (Dkt. 1268-2.)

1

## INTRODUCTION

Pacific Premier should not be permitted to intervene in this litigation, even for the limited purpose of modifying the Receivership order (the "Order"), for two reasons. First, Pacific Premier has failed to establish that it has an interest in this litigation, or that that interest will be substantially harmed if the requested intervention and modification is denied. Pacific Premier is seeking only an award of monetary damages against Mr. Watson, and thus has not established a sufficient interest in the underlying litigation. Second, intervention and modification should not be granted because doing so would undermine the purpose of the Receivership, disturb the status quo and cause delay in the instant case, and be fundamentally unfair to Mr. Watson, who, as the subject of the Receivership, has a very limited ability to defend himself against Pacific Premier's proposed lawsuit. For these reasons, the Watson Defendants request that the Court deny Pacific Premier's motions.

## ARGUMENT

The Order enjoins all persons, including creditors and banks, from "in any way disturbing the Assets and from prosecuting any actions or proceedings designed to collect their debts or which involve the Receiver or which affect the property of Defendants, to the extent that the same would interfere with or disturb these Receivership proceedings." (Dkt. 433§ 11). This includes Pacific Premier's proposed creditor action in California. Although the Order provides that a party may seek relief from the Order on proper application, it does not require this Court to automatically grant any application for such relief. (*Id.*) Here, the Court should deny the requested relief as it will undermine the Order, complicate the proceedings, and prejudice the parties.

    A.    <u>Pacific Premier does not have a right to intervene in this action.</u>

In order to intervene as of right, the intervenor must first submit a timely motion to intervene in the adversary proceeding. Second, he must demonstrate a direct and substantial

2

interest in the property or transaction. Third, he has to prove that the interest would be impaired if intervention was not allowed. Finally, he must establish that the interest is inadequately represented by existing parties. *United States. v. B.C. Enter., Inc.*, 667 F. Supp. 2d 650, 655 (E.D. Va. 2009). Pacific Premier has not established any of these factors.

      i.      *Timeliness*

Pacific Premier's motion is not timely. In determining the timeliness of a motion to intervene, "[a] reviewing court should look at how far the suit has progressed, the prejudice which delay might cause other parties, and the reason for the tardiness in moving to intervene." *Gould v. Alleco, Inc.*, 883 F.2d 281, 286 (4th Cir.1989). "The Supreme Court has held that this timeliness requirement is determined by a court in the exercise of its discretion and that a ruling will not be disturbed on appeal unless this discretion is abused." *Id*. (citing *NAACP v. New York*, 413 U.S. 345, 365–66 (1973)). Here, discovery has closed, summary judgment motions were submitted, and trial is set to start in less than two months. Pacific Premier admits that it knew of Mr. Watson's alleged default as of July 1, 2022, and was notified of the Receivership stay at the end of September 2022 at the latest. (Dkt. 1268 ¶ 22.) However, Pacific Premier chose to wait until the present—the eve of trial—to take action to intervene. At this juncture, intervention is an unnecessary and prejudicial distraction from the underlying case, as discovery has closed and trial rapidly approaches.

      ii.      *Interest in the Litigation*

Pacific Premier has failed to show that it has an interest in this litigation that would warrant mandatory intervention. "While Rule 24(a) does not specify the nature of the interest required for a party to intervene as a matter of right, the Supreme Court has recognized that '[w]hat is obviously meant ... is a significantly protectable interest.'" *Teague v. Bakker*, 931 F.2d 259, 260–61 (4th

3

Cir.1991) (quoting *Donaldson v. United States*, 400 U.S. 517, 531 (1971)). Pacific Premiere argues that it has an interest in the outcome of the case because it "is currently prohibited from pursing any claim against Watson due to the Receivership Order." (¶ 23.) However, this alone does not create a cognizable interest—if it did any time one case was stayed pending resolution of another, the party in the stayed case would have a right to intervene. Rather, it is common for litigation to be stayed pending other matters, and the fact of that stay does not automatically grant an interest in the ongoing litigation.

This is particularly true where, as is the case here, the proposed intervener is seeking a monetary judgment rather than specific property or an identifiable account.[1] While Pacific Premier may have an interest in pursuing litigation in order to obtain a monetary judgment against Mr. Watson, such a judgment is entirely unrelated to the underlying litigation, and will not be affected by the outcome of this litigation. *See Gould v. Alleco, Inc*, 883 F. 2d 281, 285 (4th Cir. 1989) ("Merely claiming a general interest in [defendant's] assets based on a speculative recovery in an unrelated civil action does not, however, satisfy Rule 24's requirement that the claim be 'relating to the property or transaction which is the subject of the action.'"). This is not a bankruptcy proceeding, and this Court should not be tasked with sorting out *pro rata* payment of any and all creditor claims against Mr. Watson. Accordingly, Pacific Premier has not stated a cognizable interest in this action.

---

[1] This stands in contrast to prior intervenors in this action. 800 Hoyt asserted a claim to a specific account, and the Wilmington Trust sought to foreclose on a specific building. (Dkts. 334, 941) Here, Pacific Premier seeks to obtain a general judgment against Mr. Watson of the amount of his guaranty.

### iii. *Impairment of Interest*

Disposition of this action will not impair or impede Pacific Premier's stated interest in pursuing its claim against Mr. Watson. No matter the outcome of the current litigation, upon resolution the Order will be dissolved, allowing Pacific Premier to bring its claim. In California, the statute of limitations on an action in an obligation, liability, or contract is four years, and the statute of limitations for an action to enforce a promissory note is six years. Cal. Com. Code § 3118(a). Pacific Premier's claim arose just six months ago, and thus is not in danger of expiring if intervention is denied. Additionally, because Pacific Premier does not assert a claim to any specific property, there is no danger that such a property will be otherwise disposed of in this litigation, either by the Receiver or otherwise. Additionally, Pacific Premier's claim is against Mr. Watson personally, rather than against Northstar, so there is no danger that the claim will be lost upon any potential wind up of Northstar.[2] Accordingly, Pacific Premier's interest in obtaining a judgment against Mr. Watson will not be impaired by the outcome of this case.

### iv. *Adequate Protection of Interest*

Finally, Pacific Premier argues that its interests are not adequately protected because it will be "deprived an opportunity to place itself on equal footing with other creditors." (Dkt. 1268 ¶ 24.) In fact, here the opposite is true—the stay imposed by the Receivership Order places all creditors on equal footing by preventing any of them from filing suit during the pendency of the litigation. (Order ¶ 11.) Following Pacific Premier's logic, any creditor would have the right to

---

[2] Per the terms of the guaranty, Pacific Premier can only claim amounts outstanding on its loan, to the maximum guaranty by each guarantor. As Pacific Premier may now own the Vista Gardens Senior Care Facility due to Default by the Borrower, Pacific Premier has a duty to sell the asset, and then attempt to collect any amounts remaining under the guaranty, that were not paid off from the sale. Mr. Watson has not received any information regarding Vista Gardens from the Receiver, and so does not know to what extent Pacific Premier has followed these procedures such that it is entitled to pursue the entire guaranty amount against Mr. Watson.

intervene in litigation where the outcome could affect their chance of recovery on a later claim. Maintaining the Order as written protects all creditors, including Pacific Premier by preserving Mr. Watson's estate.

Pacific Premier, like other creditors, may instead (and as others have done) protect its interests by negotiating a resolution with the Receiver, or simply waiting until the Order, including the stay, is lifted to assert its unrelated claims. However, Pacific Premier is not entitled to join this action for the sole purpose of protecting its remote interest in obtaining an unrelated judgment against Mr. Watson.

### B. Permissive intervention is not appropriate.

To the extent Pacific Premier responds that it has a permissive right to intervene, such argument fails. Where a proposed intervenor cannot demonstrate an entitlement to intervene as a matter of right, a court may also permit intervention by anyone who brings a timely motion and "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). In exercising its discretion to allow permissive intervention, the Court "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). It is apparent from the face of the motion to intervene that Pacific Premier does not share common questions of law or fact with the underlying litigation. Pacific Premier's allegations apparently relate to an outstanding loan guaranteed by Mr. Watson that is in no way related to Amazon's allegations.

Additionally, allowing intervention as requested would delay this litigation and prejudice Mr. Watson by complicating and potentially extending the litigation. Because of this litigation and the management of the Watson Defendant's assets by the Receiver, Mr. Watson now has many creditors who could potentially seek the same relief as Pacific Premier. Allowing numerous

additional interventions and tangential lawsuits would both delay this proceeding, on the eve of trial, and prejudice the Watson Defendants.

To make matters worse, although Mr. Watson does not have access to resources to defend his own defense or negotiate a settlement due to the Receivership, it is also not clear that the Receiver intends to do so. The Watson Defendants file this objection in part because the Receiver has failed to keep Mr. Watson apprised on this impending litigation, and has not communicated to Mr. Watson if it intends to oppose intervention. It is also not clear from the Order if the Receiver even has the power to defend the independent California lawsuit proposed by Pacific Premier. While the Order grants the Receiver a general power of attorney for Mr. Watson, it only explicitly authorizes the Receiver to "defend, compromise and adjust any actions or proceedings in state and federal courts. . . *now pending or here after instituted by Defendants or their agents*. (Dkt. 433 ¶12.) (emphasis added). Pacific Premier's anticipated lawsuit was not pending at the time the Order was entered, nor was it instituted by the Watson Defendants or their agents. It is thus unclear how Mr. Watson could possibly mount an adequate defense to the proposed action while the Order remains in place.

More importantly, as a result of the Injunction and Order, Mr. Watson has lost the ability to control or maintain his own accounts which would impede his ability to effectively defend himself in the proposed litigation, particularly if that litigation ran concurrent to this lawsuit. The Receiver has not provided Mr. Watson with detailed specific investment updates for any of his business or estate in approximately nine months, even though Mr. Watson has requested an update weekly for the same period of time, and has generally kept him in the dark about this (and other) obligations, liabilities, and developments with the assets. Mr. Watson assumed that the Receiver would handle this obligation in his best interest, taking actions such as selling the asset, making a

capital call, securing replacement debt, or negotiating a release of the guaranty, as they have done with other assets during their appointment. However, it appears that the Receiver has not done so. This leaves Mr. Watson in a poor position to take on defense of the threatened lawsuit, particularly at the same time that he is actively litigating the underlying lawsuit.

Accordingly, granting intervention for the sole purpose of allowing Pacific Premier to sue Mr. Watson for over $9,200,000.00 while the Receivership is in place would be highly prejudicial to Mr. Watson, and would not only subject him to litigation that he is unable to effectively defend, but also divert time and resources in a way that would prevent him from adequately litigating the present case. This prejudice will be increased if and when additional creditors follow the example of Pacific Premier, and attempt to intervene in order to obtain judgments.[3] This prejudice to Mr. Watson, combined with the fact that Pacific Premier has not made any compelling argument as to why it will be prejudiced by delaying its litigation until the underlying litigation is resolved, heavily weighs against permissive intervention.

      C.     <u>The Order should not be amended to allow Pacific Premier to Litigate its Claims.</u>

Even if this Court finds that Pacific Premier has established a right to intervene in this matter, it should not allow modification of the Order to allow Pacific Premier to file and prosecute its claims in the United States District Court for the Central District of California. "In order to decide whether to lift a receivership litigation stay, courts generally consider three factors: (1) whether maintaining the stay will genuinely preserve the status quo or whether the moving party

---

[3] For example, the Receiver has elected not to pay Mr. Watson's federal and state income taxes for the past two years (an obligation approaching $2,000,000) and the state of Colorado has sent recent correspondence stating that they will soon begin enforcement actions, even though such action would, like Pacific Premier's proposed action, be stayed under the Order. There are no doubt numerous other similar instances of obligations which have come due in the course of the Receivership that creditors may seek to liquidate in separate actions in the same form as proposed by Pacific Premier.

will suffer substantial injury if not permitted to proceed; (2) the timing of the motion relative to the status of the receivership; and (3) the merits of the moving party's claims." *BMO Harris Bank, N.A. v. Truland Sys. Corp.*, 2017 WL 1511869, at *2 (E.D. Va. Apr. 27, 2017) (citing *SEC v. Wencke*, 622 F.2d 1363, 1373 (9th Cir. 1980).) "The moving party "bears the burden of proving that the receivership stay should be lifted." *Id.* (citing *United States v. ESIC Capital, Inc.*, 685 F. Supp. 483, 485 (D. Md. 1988). Again, each of these factors weighs against modification of the stay.

### i. *Status Quo*

Modification of the Order to allow Pacific Premier to sue Mr. Watson in California would undercut its purpose and disturb the status quo. The Purpose of the Receiver Order was to ensure that Mr. Watson had adequate assets to satisfy a judgment by Amazon if they prevail in this litigation. As each of the Receiver's reports has confirmed, Mr. Watson has nowhere near sufficient funds to do so. His assets cannot even meet the cost of the Receivership itself. Nevertheless, Pacific Premier requests to modify the Order to allow it to obtain a judgment of over $9,200,000.00, and then proposes that it would bring this judgment to this Court, to enforce *pro rata* with any potential judgment won by Amazon. Pacific Premier even suggests that it's potential future judgment would have priority over any claim by Amazon because the guarantee was signed prior to the Injunction. (1268-2 ¶¶ 12-13.)

Additionally, the Order seeks to preserve the status quo for Mr. Watson. Yet allowing additional litigation against him at a time when he is unable to defend himself because of the Order and Amazon's aggressive lawsuit would be fundamentally unjust. As would allowing an unrelated creditor to use this case and Receivership as a vehicle to collect on such a judgment. As discussed

above, Pacific Premier has not established that it will suffer substantial injury because they may still obtain an enforceable judgment after the Receivership has dissolved.

### ii. *Timing*

This factor also weighs against modification. Pacific Premier asserts that the timing is appropriate because of the "relative simplicity of the Receivership" and the fact that the Receivership has been in place for over a year. (Dkt. 942-2 ¶ 10.) However, the Receivership is anything but simple. As the Receiver has noted in numerous reports, Mr. Watson and Northstar's assets involve a complex web of hundreds of entities with thousands of investors and stakeholders. The Receiver has repeatedly pointed to the complexity of the estate to justify his enormous fees, which have been as high as $450,000 per month. Adding additional unrelated litigation that must be supervised by the Receiver (who is being unilaterally compensated by Amazon as the Plaintiff) at this juncture is not in the interest of the Receivership.

### iii. *Merits*

It is not possible to assess the merits of Pacific Premier's claims, because they have not provided a proposed complaint or the documents underlying the claims. However, Mr. Watson believes that there are serious issues with the case against him. For example, Pacific Premier states that it has foreclosed on the building securing the loan, yet is seeking recovery of the entire guaranty. Additionally, there is a question as to the continued validity of the guaranty, as Mr. Watson was required to resign as a Manager from the Borrower, Vista Gardens Property, LLC, at the insistence of Mr. Marcotte, who remained the sole Manager, in the summer of 2020. Thus, Mr. Marcotte should have removed Mr. Watson from the personal guaranty. Accordingly, this factor does not weigh in favor of amending the Order.

## CONCLUSION

For the reasons stated above, the Watson Defendant's object to Pacific Premier's Motion to Intervene, and ask that this Court decline to allow intervention and modification of the Order.

Dated: March 9, 2023

/s/ Jeffrey R. Hamlin
Jeffrey R. Hamlin (VA Bar No. 46932)
George R. Calhoun (*pro hac vice*)
James Trusty (*pro hac vice*)
IFRAH PLLC
1717 Pennsylvania Avenue NW, Suite 650
Washington, DC 20006
Telephone: (202) 524-4140
Facsimile: (202) 524-4141
jhamlin@ifrahlaw.com
george@ifrahlaw.com
jtrusty@ifrahlaw.com

Stanley L. Garnett (*pro hac vice*)
Amanda K. Houseal (*pro hac vice*)
Sara R. Bodner (*pro hac vice*)
Leah Regan-Smith (*pro hac vice*)
Rosa L. Baum (*pro hac vice*)
Brownstein Hyatt Farber Schreck, LLP
410 17th Street, Suite 2200
Denver, CO 80202
Telephone: (303) 223-1100
Facsimile: (303) 223-1111
sgarnett@bhfs.com
ahouseal@bhfs.com
sbodner@bhfs.com
lregan-smith@bhfs.com
rbaum@bhfs.com

*Counsel for WDC Holdings LLC, Brian Watson, Sterling NCP FF, LLC, Manassas NCP FF, LLC, NSIPI Administrative Manager, and BW Holdings LLC*