**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

AMAZON.COM and AMAZON DATA SERVICES, INC.,

Plaintiffs,

v.

WDC HOLDINGS LLC dba NORTHSTAR COMMERCIAL PARTNERS, et al.

Defendants.

Civil Action No. 1:20-CV-484-RDA-IDD

800 HOYT LLC,

Intervening Interpleader Plaintiff / Intervening Interpleader Counter - Defendant,

v.

BRIAN WATSON; WDC HOLDINGS LLC; BW HOLDINGS, LLC,

Interpleader Defendants,

and

AMAZON.COM, et al.

Interpleader Defendants / Interpleader Counter-Plaintiffs.

**WATSON DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION *IN LIMINE* TO DISALLOW THE IMPUTATION OF AN ADVERSE INFERENCE**

Defendants Brian Watson ("Mr. Watson"); WDC Holdings LLC, dba Northstar Commercial Partners ("Northstar"); Sterling NCP FF, LLC; Manassas NCP FF, LLC; and NSIPI Administrative Manager (collectively, the "Watson Defendants"), respectfully file this

memorandum in support of their Motion *in Limine* to Disallow the Imputation of an Adverse Inference (the "Motion") from witnesses' invocation of their Fifth Amendment right.[1] The Watson Defendants respectfully request that the Court exclude from evidence the testimony, whether live or from depositions, of third parties Christian Kirschner, Kyle Ramstetter, Will Camenson, and Johnny Lim (collectively, the "Witnesses") asserting their Fifth Amendment privilege against compulsory self-incrimination. Fed. R. Evid. 403. In support of the Motion, the Watson Defendants state as follows:

## I. INTRODUCTION

Amazon has been unable to support the vast array of claims it has hurled at the Watson Defendants. *See* Dkt. 1160 (Watson Defendants' Motion for Summary Judgment). To compensate for this glaring deficiency, the Watson Defendants anticipate that Amazon will attempt to introduce these Witnesses' testimony invoking their Fifth Amendment right, whether live at trial or from their depositions, in order to secure an adverse inference against the Watson Defendants. *See* Dkt. 1304 (Plaintiffs claiming that an adverse inference is appropriate here). Any attempt by Amazon to utilize these Witnesses' silence as supporting an inference that the parties to this matter participated in the alleged kickback scheme—an inference that is unsupported by the evidence—

[1] The Watson Defendants maintain that the defendants' Joint Motion *in Limine* to Exclude Witness Testimony remains a pressing matter for this Court to address. While the Court has reopened discovery, Messrs. Ramstetter and Christian Kirschner have not yet been deposed and the Watson Defendants do not know whether they will provide complete, substantive testimony; whether they will make selective invocations of their Fifth Amendment right and provide substantive testimony beyond the testimony they provided at their depositions; or whether they will invoke their Fifth Amendment right in a manner consistent with their deposition testimony. All of these are a possibility. Furthermore, Messrs. Camenson and Lim remain as "will call, live" witnesses for Amazon, even though Mr. Camenson is outside this Court's subpoena power. Therefore, the recent developments in the proceedings do not address the defendants' prior motion, and the Court is therefore likely to be required to address the propriety of adverse inferences as noted in the present Motion.

would be overly prejudicial to the Watson Defendants and thus should be prohibited.

The factors of the established test for allowing an adverse inference from a third-party weigh strongly against allowing Amazon to secure an adverse inference against the Watson Defendants: none of the Witnesses has a relationship with the Watson Defendants so as to make them loyal to the Watson Defendants; none of the Witnesses was controlled by the Watson Defendants at the time they asserted their Fifth Amendment right; the Witnesses' interests do not align with those of the Watson Defendants; and the Witnesses were not so in control of the underlying developments initiating this litigation that they hold information others cannot provide.

Ultimately, there is no admissible evidence to corroborate an inference that any of the Witnesses would confirm the existence of the alleged kick-back scheme if they were not asserting their Fifth Amendment right.[2] Absent this corroboration, any such inference would be wildly speculative and would fail baseline tests for admissibility under Federal Rules of Evidence 402, 403, and 602.

## II. BACKGROUND

Each of these Witnesses extensively invoked their Fifth Amendment right against compulsory self-incrimination during their depositions. Mr. Christian Kirschner, a former

[2] Of course, the adverse inference is not a broad inference, but rather can only be obtained on the basis of specific questions. *See In re Neves*, 638 B.R. 220, 231 (Bankr. S.D. Fla. 2014) ("However, none of this means, as the Plaintiffs argue, that all of the evidence and all of Neves' unanswered questions can be lumped together without more precise reference to the independent evidence and to the relationship of that evidence to particular unanswered questions."). This motion sets forth reasons why the inference should not be permitted on a global basis for these witnesses, but does not address specific questions, because doing so would be premature given that (1) Amazon has indicated they intend to call these witnesses to testify live at trial and thus there are no specific questions to address at this time; and (2) even if Amazon intended to present testimony by way of deposition they have not designated any specific questions at this time for which a ruling on a question-by-question basis could be made. Accordingly, the Watson Defendants reserve the right to raise further objections to an adverse inference as to any specific question that may be asked, whether live at trial, or via subsequent deposition designation.

Northstar referral partner, was first deposed on February 18, 2022, and invoked his Fifth Amendment right in response to every question asked relating to the defendants and underlying factual allegations in this matter. Mr. Ramstetter and Mr. Camenson, both former Northstar employees, were deposed on February 17, 2022, and February 28, 2022, respectively, and similarly invoked their Fifth Amendment privilege in response to every question asked relating to the defendants and underlying factual allegations in this matter. Finally, Mr. Lim, a civil engineer who has performed work for Amazon, was deposed on March 31, 2022, and among other topics, refused to answer questions relating to his employment—both current and past—as well as all questions regarding the defendants in these proceedings and allegations at issue.

Amazon took these opportunities to substitute its own testimony for that of these Witnesses. Amazon asked these Witnesses leading questions tailored to suggest that the answer was in the affirmative. For example, during Mr. Christian Kirschner's deposition, counsel for Amazon asked: "And at the time that …Villanova Trust and Northstar entered into this agreement, you had already told Brian Watson that some of the money that would be paid pursuant to this agreement would then be given to Casey Kirschner and Carleton Nelson; is that right?" Christian Kirschner Dep. 67:19-25. And during Mr. Ramstetter's deposition, Amazon's counsel asked whether he and Mr. Lim "ever discuss[ed] the fact that Carleton Nelson [and Casey Kirschner were] benefiting personally from Northstar deals with Amazon?" Kyle Ramstetter Dep. 140:9-16. Counsel went on to ask: "Casey Kirschner and Carleton Nelson facilitated the approval of deals at Amazon in return [for] payments from Northstar passed through Villanova Trust, correct?" *Id.* at 152:2-5. Mr. Camenson invoked his Fifth Amendment right to Amazon's question, "You understood that Northstar was paying these fees so Carleton Nelson and Casey Krischner would ensure Amazon conducted business with Northstar, did you not?" Will Camenson Dep. 165:17-

20. Amazon's counsel asked equally leading questions of Mr. Lim, to which he responded by invoking the Fifth Amendment.

Allowing the Witnesses' invocation of their Fifth Amendment right in response to these questions to support adverse inferences against the Watson Defendants is misleading at best. Any adverse inferences would be highly prejudicial to the Watson Defendants and should not be permitted.

## III. ARGUMENT

The Court should not allow Amazon to in effect fabricate testimony uncorroborated by other evidence by utilizing witnesses' assertions of their Fifth Amendment right. Fundamentally, an adverse inference must be determined by the Court on a case-by-case basis, it cannot be unilaterally declared by a party. *See United States v. Mallory*, 988 F.3d 730, 740 (4th Cir. 2021). And even if an adverse inference is "constitutionally permissible" in a civil action, "it is not always appropriate." *United States ex rel. DRC Inc., v. Custer Battles, LLC*, 415 F. Supp. 2d 628, 633 (E.D. Va. 2006). The proceedings here should cause particular concern, as "a non-party who stands in no special relationship to the party at the time of trial may purposefully invoke the privilege solely to discredit the party. The classic example would be a disgruntled former employee who invokes the privilege to hurt his former employer." *FDIC v. Fidelity & Deposit Co. of Maryland*, 45 F.3d 969, 978 (5th Cir. 1995).

### A. An Adverse Inference is Not Justified Here.

As recognized by the Fourth Circuit and used broadly, in determining whether to permit an adverse inference, courts follow a four-factor test, looking to: "(1) the nature of the relevant relationships; (2) the degree of control of the party over the non-party witness; (3) the compatibility of interests of the party and non-party witness in the outcome of the litigation; and (4) the role of

the non-party witness in the litigation." *Mallory*, 988 F.3d at 740 (citing *LiButti v. United States*, 107 F.3d 110, 123–24 (2d Cir. 1997)). Critically, adverse inferences may be allowed from a non-party's assertion of their Fifth Amendment right when the adverse inference is "trustworthy under all of the circumstances and will advance the search for the truth." *LiButti*, 107 F.3d at 124. But courts must still weigh these considerations against the prohibition of allowing evidence that risks unfair prejudice. Fed. R. Evid. 403; *Brink's Inc. v. City of New York*, 717 F.2d 700, 710 (2d Cir. 1983).

The factors courts consider weigh against allowing the jury to draw adverse inferences from the Witnesses' invocation of the Fifth Amendment. Moreover, any adverse inference based on these Witnesses' testimony would be overly prejudicial to the Watson Defendants.

**1. The Watson Defendants Have No Relationship with the Witnesses.**

No relationship exists between the Watson Defendants and the Witnesses that would make it less likely for the Witnesses to provide testimony that would damage the Watson Defendants. In other words, the Witnesses did not invoke their Fifth Amendment right in order to protect the Watson Defendants. *See LiButti*, 107 F.3d at 123. The Second Circuit described this factor as the "most significant" *Id.* "The key in applying this factor is the degree of loyalty that may be expected between the nonparty witness and the party, in light of their relationship." *In re Urethane Antitrust Litigation*, No. 04-1616-JWL, 2013 WL 100250, at *2 (D. Kan. Jan. 8, 2013). Plainly stated, the Witnesses show no loyalty to the Watson Defendants. In fact, Messrs. Ramstetter and Camenson usurped a corporate opportunity from Northstar, for which Mr. Watson threatened to commence legal action. The matter was resolved in a settlement among the parties, mediated by a former Colorado Supreme Court Justice.

Thus, there "is no reason to believe that these witnesses would feel any particular loyalty"

to the Watson Defendants after their separation from Northstar. *Id*. It is quite the opposite. The Witnesses and the Watson Defendants have a strained history that should give no one the impression that the Witnesses would be inclined to protect the Watson Defendants in the face of any allegations.

**2. The Watson Defendants have No Control Over the Witnesses.**

The Watson Defendants do not exercise control over the Witnesses that would support an adverse inference from the Witnesses' invocations of their Fifth Amendment right. As an initial matter, Messrs. Christian Kirschner and Mr. Lim were never Northstar employees. There is no question as to whether the Watson Defendants asserted any measure of control over them. *In re Urethane Antitrust Litigation*, 2013 WL 100250, at *2 (looking to the control exercised over the witnesses at the time at which the witnesses invoked their Fifth Amendment right outside the context of a current or former employment relationship). Secondly, Messrs. Ramstetter and Camenson are former Northstar employees with no remaining ties to the Watson Defendants. *See Miller v. Pilgrim's Pride Corp.*, No. 5:05CV00064, 2008 WL 178473, at *9 (W.D. Va. January 16, 2008) (finding insufficient support for an adverse inference, in part, where even though the witness had been in upper level management, she was no longer employed by the defendant at the time of her testimony). And compared to instances where courts have allowed adverse inferences off the testimony of former employees, again, there is no indication here that Messrs. Ramstetter and Camenson retain any loyalty to the Watson Defendants. *Cf. Coquina Investments v. TD Bank, N.A.*, 760 F.3d 1300, 1311 (11th Cir. 2014) (crediting an adverse inference where there was reason to believe that a former employee remained loyal to their former employer, as the former employer paid their legal fees and because the former employee had offered to cooperate with the employer's internal investigations); *Cerro Gordo Charity v. Fireman's Fund American Life Ins. Co.*, 819 F.2d

1471, 1481 (8th Cir. 1987) (allowing an adverse inference off a former member's testimony where that member "still retain[ed] some loyalty to [the party]" and where there was "no evidence that would lead one to believe that [the former member] would assert the privilege sole to harm [the party's] chances of success").

Moreover, even if the Court were to look at the time of Messrs. Ramstetter's and Camenson's employment at Northstar, the Watson Defendants did not wield control over the two. As noted above, Messrs. Ramstetter and Camenson began their own company while still employed at Northstar and usurped a corporate opportunity from Northstar. *Cf. Iantosca v. Benistar Administrative Services, Inc.*, 567 Fed. Appx. 1, 7 (1st Cir. 2014) (imputing an ex-employee's silence to their former employer where "there was more than a simple employment relationship" because the "corporations to which [the non-party's] silence was permitted to be imputed far from merely employing him, were in fact deemed to be his alter egos."). Therefore, the Watson Defendants clearly did not exercise the kind of control necessary to support an adverse inference from the Witnesses' invocation of their Fifth Amendment right. This is precisely the scenario about which the Fifth Circuit warned. *See Fidelity & Deposit*, 45 F.3d at 978.

**3. The Watson Defendants' Interests and those of the Witnesses Do Not Align.**

Plainly stated, there is no overlap between the Watson Defendants' interests and those of the Witnesses. Indeed, their interests are likely quite opposed to one another. Again, as noted above, Messrs. Ramstetter and Camenson were already in adversarial proceedings against the Watson Defendants. Furthermore, Amazon has—and has had since before these Witnesses were first deposed—leverage over these Witnesses. Amazon secured a default judgment against entities owned by several of these Witnesses. *See* Dkt. 447 (dated December 8, 2021). For the time being, Amazon has requested that the default judgment be held in abeyance pending resolution of the

litigation against the appearing parties. Amazon can therefore still enforce this default judgment against the entities owned by several of the Witnesses. Thus, it is not unfounded for the Defendants to worry that the Witnesses may have seen—and continue to see—a personal benefit in cooperating with Amazon. If they did not, it is hard to imagine why they might voluntarily appear at trial when the Court's subpoena power does not reach any of them. Clearly, the Watson Defendants' interests and those of the Witnesses are at odds. And the Watson Defendants are therefore justified in their concerns regarding the prejudicial nature of allowing adverse inferences to be made off the testimony, whether live or from their depositions, of these Witnesses.

**4. The Witnesses Did Not Have Substantial Control over the Allegations Against the Watson Defendants.**

Amazon has alleged a complex scheme of fraudulent conduct of which the Witnesses did not have unique control, when compared to other individuals. These Witnesses do not possess any particular information and other individuals alleged to have also been part of this scheme have provided sworn testimony on the record, including Mr. Watson, Northstar, defendant Casey Kirschner, defendant Carl Nelson, and defendant Rodney Atherton. *See In re Urethane Antitrust Litigation*, 2013 WL 100250, at *2 (reasoning that "while these witnesses may have been important players in the alleged conspiracy, that conspiracy allegedly included a great number of other important players as well, and the Court cannot say that these witnesses played the controlling roles"); *cf. Cerro Gordo*, 819 F.2d at 1482 (determining a non-party was a "key figure" because "if anyone knew whether there was an intent to commit fraud" it was that non-party). Furthermore, the record does not contain corroborating evidence for the adverse inferences Amazon has attempted to draw from these Witnesses' invocation of their Fifth Amendment right. Therefore, "[a]t best" the Court should view "this factor as neutral." *Id.* These Witnesses' positions within the alleged scheme do not provide any unique information that others have not already

provided.

Thus, when each of the *LiButti* factors is considered in the context of the present matter, this Court should not allow adverse inferences based on these Witnesses' testimony. *See U.S. ex rel. Hockett v. Columbia/HCA Healthcare Corp.*, 498 F. Supp. 2d 25, 61 n.25 (D.D.C. 2007) (refusing to draw an adverse inference from the former employee's invocation where no control was exercised at the time of the invocation and the former employee's interests in the litigation had diverged from the employer). Moreover, the dearth of corroborating evidence for these adverse inference makes their admission improper. *See Custer Battles*, 415 F. Supp. 2d at 635 (quoting *Doe v. Glanzer*, 232 F.3d 1258, 1264 (9th Cir. 2000) ("[T]he key to the *Baxter* holding is that such adverse inference can only be drawn when independent evidence exists of the fact to which the party refuses to answer."); *Cf. Coquina*, 760 F.3d at 1312 (finding support for adverse inferences where "the record [was] replete with evidence" validating the adverse inferences).

**B. The Witnesses' Invocation of their Fifth Amendment Right Should Be Excluded Entirely as Irrelevant and Prejudicial under Fed. R. Evid. 402 and 403.**

Admitting evidence of the Witnesses' Fifth Amendment assertions would also be highly prejudicial and irrelevant. A party's invocation of the Fifth Amendment is not exempt from the rules of evidence. *See Brink's*, 717 F.2d at 710 ("But our inquiry is not ended. We still must determine whether the trial court was correct in concluding that the probative value of the evidence was not 'substantially outweighed by the danger of unfair prejudice' under Fed. R. Evid. 403."); The evidence here of the Witnesses' invocation of their Fifth Amendment right fails to meet the requirements of Fed. R. Evid. 402 and 403 and should therefore be excluded.

As the party seeking to admit a witness's testimony, Amazon "bear[s] the burden of demonstrating [the] relevance" of that testimony. *Wechsler v. Hunt Health Sys., Ltd.*, No. 94 CIV. 8294 (PKL), 2003 WL 21998980, at *3 (S.D.N.Y. Aug. 22, 2003). And as is the case here, an

attorney's "broad-based questions and [a witness's] sweeping invocation of his Fifth Amendment privilege provide no instruction as to the potential relevance of [his] testimony." *Wechsler v. Hunt Health Systems, Ltd.*, No. 94 Civ. 8294(PKL), 2003 WL 21998980, at *3 (S.D.N.Y August 22, 2003); *see also United States v. Philip Morris USA Inc.*, No. Civ. A. 99-2496 (GK), 2004 WL 5916865, at *1 (D.D.C. July 23, 2004) (granting motion in limine to exclude witness's Fifth Amendment testimony, finding its probative value "very doubtful" due to the witness's "very broad invocation"). Furthermore, the lengthy discovery period parties have had in these proceedings weighs against allowing these adverse inferences. *See Hawkins v. St. Clair Cnty.*, No. 07-142 (DRH), 2009 WL 839272, at *1 (S.D. Ill. Jan. 30, 2009) (quoting *Harris v. City of Chicago*, 266 F.3d 750, 753–54 (7th Cir. 2001) (precluding plaintiffs from referencing a party's "prior assertions of his Fifth Amendment privilege, mentioning his invocation of his Fifth Amendment right, or calling any witness to testify in this regard" and finding that "the assertion of the Fifth Amendment has low probative value when, as here, the opposing party 'had sufficient opportunity to obtain discovery . . . on all issues relevant to the trial'").

And finally, a review of the questions Amazon asked the Witnesses during their depositions demonstrates the risk of undue prejudice to the Watson Defendants, should the Court allow an adverse inference. "Courts have discretion not to admit evidence of the invocation because of the potential for 'lawyer abuse'—where an examining attorney, once determining that the privilege will be invoked, poses damaging questions, safe from contradiction by the witness." *In re WorldCom, Inc.*, 377 B.R. 77, 109 (Bankr. S.D.N.Y. 2007). Amazon's construction of its questions clearly risks undue prejudice to the Watson Defendants. Amazon molded its questions to lead to the conclusion that any substantive answer, as opposed to an answer in which the witness asserted their Fifth Amendment right, damaged the Watson Defendants. *In re WorldCom, Inc. Sec. Litig.*,

No. 02 CIV 3288 DLC, 2005 WL 375315, at *5 (S.D.N.Y. Feb. 17, 2005) (observing "that the practice of posing fact-specific questions designed to suggest that the answer would be yes invites jurors 'to give evidentiary weight to *questions* rather than answers.'") (citing *Brink's*, 717 F.2d at 716 (Winter, J. dissenting)). Therefore, allowing the Witnesses' invocations of their Fifth Amendment right to support adverse inferences provides no probative value and is highly prejudicial. Any such inferences should be prohibited.

## IV.    CONCLUSION

WHEREFORE, the Watson Defendants respectfully ask that the Court enter an Order granting the Watson Defendants' Motion *in Limine* to prohibit adverse inferences from the testimony or depositions of Christian Kirschner, Kyle Ramstetter, Will Camenson, and Johnny Lim.

Dated: March 31, 2023

BROWNSTEIN HYATT FARBER SCHRECK, LLP

By: s/ *Jeffrey R. Hamlin*
Stanley L. Garnett (*pro hac vice*)
Amanda K. Houseal (*pro hac vice*)
Sara R. Bodner (*pro hac vice*)
Leah Regan-Smith (*pro hac vice*)
Rosa L. Baum (*pro hac vice*)
Brownstein Hyatt Farber Schreck, LLP
410 17th Street, Suite 2200
Denver, CO 80202
Telephone: (303) 223-1100
Facsimile: (303) 223-1111
sgarnett@bhfs.com
ahouseal@bhfs.com
sbodner@bhfs.com
lregan-smith@bhfs.com
rbaum@bhfs.com

Jeffrey R. Hamlin (VA Bar No. 46932)
George R. Calhoun (*pro hac vice*)
James Trusty (*pro hac vice*)
IFRAH PLLC
1717 Pennsylvania Avenue NW, Suite 650
Washington, DC 20006
Telephone: (202) 524-4140
Facsimile: (202) 524-4141
jhamlin@ifrahlaw.com
george@ifrahlaw.com
jtrusty@ifrahlaw.com

*Counsel for WDC Holdings LLC, Brian Watson, Sterling NCP FF, LLC, Manassas NCP FF, LLC, NSIPI Administrative Manager*

**CERTIFICATE**

I hereby certify that on 31st day of March, 2023, a true and correct copy of the foregoing has been served upon all parties of record via the ECF system and via email.

/s/*Jeffrey R. Hamlin*
Jeffrey R. Hamlin