IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

AMAZON.COM, INC. AND AMAZON
DATA SERVICES, INC,

  Plaintiffs,

v.                                                     Case No. 1:20-CV-484-RDA-IDD

WDC HOLDINGS LLC D/B/A NORTHSTAR
COMMERCIAL PARTNERS, et al.,

  Defendants.

800 HOYT LLC,

Intervening Interpleader
Plaintiff, Intervening
Interpleader Counter-Defendant,

v.

BRIAN WATSON, WDC HOLDINGS, LLC,
BW HOLDINGS, LLC,

Interpleader Defendants,

And

AMAZON.COM, INC. and AMAZON DATA
SERVICES, INC.,
Interpleader Defendants,
Interpleader Counter-Plaintiffs.

**DEFENDANT RODNEY ATHERTON'S MEMORANDUM IN SUPPORT OF MOTION
*IN LIMINE* TO DISALLOW THE IMPUTATION OF AN ADVERSE INFERENCE**

      Defendant Rodney Atherton states as follows in support of his Motion in Limine to

Disallow the Imputation of an Adverse Inference (the "Motion") from certain witnesses'

invocation of their Fifth Amendment right.[1] Atherton respectfully requests that the Court exclude

---

[1] Atherton maintains that the defendants' Joint Motion in Limine to Exclude Witness Testimony
remains a pressing matter for this Court to address. While the Court has reopened discovery,

1

from evidence testimony, whether live or from depositions, of third parties Christian Kirschner, Kyle Ramstetter, Will Camenson, and Johnny Lim (collectively, the "Witnesses") asserting their Fifth Amendment privilege against compulsory self-incrimination pursuant to Federal Rule of Evidence 403. In support of his Motion, Atherton states as follows:

## I. INTRODUCTION

Atherton anticipates that Amazon will seek to introduce the Witnesses' testimony invoking their Fifth Amendment right, whether live at trial or from their depositions, in order to secure various adverse inferences against Atherton. Any attempt by Amazon to utilize these Witnesses' silence as supporting an inference that the parties to this matter, including Atherton, participated in the alleged kickback scheme—an inference that is unsupported by the evidence—would be overly prejudicial to Atherton and thus should be prohibited.

The factors of the established test for allowing an adverse inference from a third-party weigh strongly against allowing Amazon to secure an adverse inference against Atherton here. None of the Witnesses have a relationship with Atherton so as to make them loyal to him; none of the Witnesses were controlled by Atherton at the time they asserted their Fifth Amendment right; the Witnesses' interests do not align with Atherton's; and the Witnesses were not so in control of the underlying developments initiating this litigation that they hold information others cannot provide.

---

Messrs. Ramstetter and Christian Kirschner have not yet been deposed and Atherton does not know whether they will provide complete, substantive testimony; whether they will make selective invocations of their Fifth Amendment rights and provide substantive testimony beyond the testimony they provided at their depositions; or whether they will invoke their Fifth Amendment rights in a manner consistent with their deposition testimony. Furthermore, Messrs. Camenson and Lim remain as "will call, live" witnesses on Amazon's Witness List, even though Mr. Camenson is outside this Court's subpoena power. Therefore, the recent developments in the proceedings do not address the defendants' prior motion, and the Court is therefore likely to be required to address the propriety of adverse inferences as noted in the present Motion.

Ultimately, there is no admissible evidence to corroborate an inference that any of the Witnesses would confirm the existence of the alleged kick-back scheme if they were not asserting their Fifth Amendment rights. Absent this corroboration, any such inference would be wildly speculative and would fail baseline tests for admissibility under Federal Rules of Evidence 602 and 403.

## II.   BACKGROUND

Each of these Witnesses extensively invoked their Fifth Amendment right against compulsory self-incrimination during their depositions. Christian Kirschner, a former Northstar referral partner and former client of Atherton, was first deposed on February 18, 2022, and invoked his Fifth Amendment right in response to every question asked relating to the defendants and underlying factual allegations in this matter. Mr. Ramstetter and Mr. Camenson, both former Northstar employees, were deposed on February 17, 2022 and February 28, 2022, respectively, and similarly invoked their Fifth Amendment privilege in response to every question asked relating to the defendants and underlying factual allegations in this matter. Finally, Mr. Lim, a civil engineer who has performed work for Amazon, was deposed on March 31, 2022, and among other topics, refused to answer questions relating to his employment—both current and past—as well as all questions regarding the defendants in these proceedings and allegations at issue.

Amazon took these opportunities to substitute its own testimony for that of these Witnesses. Amazon asked these Witnesses improper leading questions tailored to suggest that the answer was in the affirmative. For example, during Christian Kirschner's deposition, counsel for Amazon asked: "And at the time that …Villanova Trust and Northstar entered into this agreement, you had already told Brian Watson that some of the money that would be paid

pursuant to this agreement would then be given to Casey Kirschner and Carleton Nelson; is that right?" *Christian Kirschner Dep.*, 67:19-25. During Mr. Ramstetter's deposition, Amazon's counsel asked whether he and Mr. Lim "ever discuss[ed] the fact that Carleton Nelson [and Casey Kirschner were] benefiting personally from Northstar deals with Amazon?" *Ramstetter Dep.*, 140:9-16. Counsel went on to ask: "Casey Kirschner and Carleton Nelson facilitated the approval of deals at Amazon in return [for] payments from Northstar passed through Villanova Trust, correct?" *Id.* at 152:2-5.

Allowing the Witnesses' invocation of their Fifth Amendment rights to these questions to support adverse inferences against Atherton would be highly prejudicial and should not be permitted.

### III. ARGUMENT

The Court should not allow Amazon to, in effect, fabricate testimony uncorroborated by other evidence by utilizing witnesses' assertions of their Fifth Amendment right. Fundamentally, an adverse inference must be determined by the Court on a case-by-case basis; it cannot be unilaterally declared by a party. *See United States v. Mallory*, 988 F.3d 730, 740 (4th Cir. 2021). And even if an adverse inference is "constitutionally permissible" in a civil action, "it is not always appropriate." *United States ex rel. DRC Inc., v. Custer Battles, LLC*, 415 F. Supp. 2d 628, 633 (E.D. Va. 2006). The proceedings here should cause particular concern, as "a non-party who stands in no special relationship to the party at the time of trial may purposefully invoke the privilege solely to discredit the party. The classic example would be a disgruntled former employee who invokes the privilege to hurt his former employer." *FDIC v. Fidelity & Deposit Co. of Maryland*, 45 F.3d 969, 978 (5th Cir. 1995).

4

A.     **An adverse inference against Atherton is not justified here.**

As recognized by the Fourth Circuit and used broadly, in determining whether to permit an adverse inference, courts follow a four-factor test, looking to: "(1) the nature of the relevant relationships; (2) the degree of control of the party over the non-party witness; (3) the compatibility of interests of the party and non-party witness in the outcome of the litigation; and (4) the role of the non-party witness in the litigation." *Mallory*, 988 F.3d at 740 (citing *LiButti v. United States*, 107 F.3d 110, 123–24 (2d Cir. 1997)). Adverse inferences may be allowed from a non-party's assertion of their Fifth Amendment right when the adverse inference is "trustworthy under all of the circumstances and will advance the search for the truth." *LiButti*, 107 F.3d at 124. But courts must still weigh these considerations against the prohibition of allowing evidence that risks unfair prejudice. Fed. R. Evid. 403; *Brink's Inc. v. City of New York*, 717 F.2d 700, 710 (2d Cir. 1983).

These factors weigh against allowing the jury to draw adverse inferences from the Witnesses' invocation of the Fifth Amendment in this case. Moreover, any adverse inference based on these Witnesses' testimony would be overly prejudicial to Rodney Atherton.

1.     **Atherton Has No Relationship with the Witnesses.**

No relationship exists between Atherton and the Witnesses that would make it less likely for the Witnesses to provide testimony that would damage Atherton. In other words, the Witnesses did not invoke their Fifth Amendment rights in order to protect Atherton. *See LiButti*, 107 F.3d at 123. The Second Circuit described this factor as the "most significant" *Id.* "The key in applying this factor is the degree of loyalty that may be expected between the nonparty witness and the party, in light of their relationship." *In re Urethane Antitrust Litigation*, No. 04-1616-JWL, 2013 WL 100250, at *2 (D. Kan. Jan. 8, 2013). The Witnesses show no loyalty to

Atherton or any other Defendant in this case. Christian Kirschner is a former client and one-time friend of Atherton's, but they have no ongoing relationship. Atherton has and had no relationship with Mr. Lim other than making a wire transfer to Mr. Lim's company on one occasion at the direction of Carl Nelson. Atherton has and had no relationship whatsoever Will Camenson, a former employee of Northstar whom Atherton has never met or spoken to. Atherton also has and had no relationship with Kyle Ramstetter, another former employee of Northstar, other than speaking with him on one or two occasions and sending him a draft agreement, at the direction of Mr. Nelson.

Also relevant to the analysis under this factor is the fact that the Witnesses did not just assert the Fifth in response to questions concerning specific issues related to the alleged scheme; rather, they regularly refused to answer even innocuous questions that had no bearing on the alleged scheme. *See, e.g., Christian Kirschner Dep.*, 15:23-16:6*; Ramstetter Dep.*, 101:3-13*; see also In re Urethane Antitrust Litig.*, No. 04-1616-JWL, 2013 WL 100250, at *3 (D. Kan. Jan. 8, 2013) (finding an adverse inference to be not trustworthy, noting the "witnesses did not merely refuse to answer questions related to pricing discussions and agreements with Bayer's competitors; rather, they invoked the Fifth Amendment in response to virtually every question, including seemingly innocuous questions such as those seeking to confirm their employment by Bayer during the alleged conspiracy period"). Further, where, as here, the Witnesses also invoked the privilege in response to questions Defendants asked to *support* their positions, the adverse inference is particularly inappropriate. *See id.* at *4 ("The weakness of the inference sought is also demonstrated in this case by the fact that the witnesses also invoked the privilege in response to questions from Dow seeking to establish facts supporting its position."). In short, there is no indication that these Witnesses would feel any particular loyalty to Atherton or be

6

inclined to protect him in the face of any allegations.

### 2. Atherton has No Control Over the Witnesses.

Atherton does not exercise control over the Witnesses that would support an adverse inference from the Witnesses' invocations of their Fifth Amendment rights. As an initial matter, Atherton has never spoken to Camenson and rarely spoken to Ramstetter, much less exercised any control over these former Northstar employees. Similarly, Atherton has never exercised control over Christian Kirschner or Mr. Lim, and does not now. As a former client, Christian Kirschner had the ability to control Atherton's actions on matters in which he represented Christian, not vice versa. Upon information and belief, Mr. Lim was a vendor (civil engineer) for Amazon and had no relationship with Atherton, as noted above.

### 3. Atherton's Interests and those of the Witnesses Do Not Align.

There is no overlap between Atherton's interests and those of the Witnesses. Indeed, their interests are likely quite opposed to one another. None of the Witnesses have been named Defendants in this action, despite Amazon's claims that Ramstetter, Camenson and Christian engaged in conduct similar to the alleged conduct sued upon here, and despite Amazon's own expert identifying them as individuals who purportedly caused substantial "economic harm" to Amazon. In fact, these Witnesses' interests appear to align with Amazon, not Atherton or the other defendants.

Amazon has—and has had since before these Witnesses were first deposed—significant leverage over these Witnesses. Amazon secured a default judgment against entities owned by several of these Witnesses. *See* Dkt. 447 (dated December 8, 2021). For the time being, Amazon has requested that the default judgment be held in abeyance pending resolution of the litigation against the appearing parties. Amazon can therefore still enforce this default judgment against

the entities owned by several of the Witnesses. Further, once that judgment is enforced there is nothing stopping Amazon from seeking to pierce the veil or seek alter ego treatment of those entities (as it previously alleged was the case in its original complaint).

Recently Amazon has indicated that it has had continued discussions with counsel for the Witnesses about appearing to testify at the trial of this matter.  When asked to supplement its discovery responses under Fed. R. Civ. P. 26(e) to provide these communications so that the potential bias of these witnesses could be evaluated—i.e. whether they were given any representations or promised anything if they testified voluntarily—Amazon refused to do so. Thus, it is not unfounded for the Defendants to worry that the Witnesses may have seen—and continue to see—a personal benefit in cooperating with Amazon. If they did not, it is hard to imagine why they might voluntarily appear at trial when the Court's subpoena power does not reach them. Clearly, then, Atherton's interests and those of the Witnesses are at odds, and this factor also weighs against permitting an averse inference from their testimony, whether live or by deposition.

### 4. The Witnesses Did Not Have Substantial Control over the Allegations Against Atherton.

Amazon has alleged a complex scheme of fraudulent conduct over which the Witnesses did not have unique control, when compared to other individuals. These Witnesses do not possess any particular information and all other individuals appearing in this action alleged to have also been part of this scheme have provided sworn testimony for the record, including defendant Brian Watson, Northstar, defendant Casey Kirschner, defendant Carl Nelson, and Atherton. *See In re Urethane Antitrust Litigation*, 2013 WL 100250, at *2 (reasoning that "while these witnesses may have been important players in the alleged conspiracy, that conspiracy allegedly included a great number of other important players as well, and the Court cannot say

8

that these witnesses played the controlling roles"); *cf. Cerro Gordo*, 819 F.2d at 1482 (determining a non-party was a "key figure" because "if anyone knew whether there was an intent to commit fraud" it was that non-party). Furthermore, the record does not contain corroborating evidence for the adverse inferences Amazon has attempted to draw from these Witnesses' invocation of their Fifth Amendment rights. Therefore, "[a]t best" the Court should view "this factor as neutral."[2] *Id.* These Witnesses' positions within the alleged scheme do not provide any unique information that others have not already provided.

Thus, when each of the *LiButti* factors is considered in the context of the present matter, this Court should not allow adverse inferences based on these Witnesses' testimony. Moreover, the dearth of corroborating evidence for these adverse inference makes their admission improper. *See Custer Battles*, 415 F. Supp. 2d at 635 (quoting *Doe v. Glanzer*, 232 F.3d 1258, 1264 (9th Cir. 2000) ("[T]he key to the *Baxter* holding is that such adverse inference can only be drawn when independent evidence exists of the fact to which the party refuses to answer."); *Cf. Coquina*, 760 F.3d at 1312 (finding support for adverse inferences where "the record [was] replete with evidence" validating the adverse inferences).

---

[2] Of course, the adverse inference is not a broad inference, but rather can only be quested on the basis of specific questions. *See In re Neves*, 638 B.R. 220, 231 (Bankr. S.D. Fla. 2014) ("However, none of this means, as the Plaintiffs argue, that all of the evidence and all of Neves' unanswered questions can be lumped together without more precise reference to the independent evidence and to the relationship of that evidence to particular unanswered questions."). This motion sets forth reasons why the inference should not be permitted on a global basis for these witnesses, but does not address any specific questions as to do so would be premature given (1) Amazon has indicated they intend to call these witnesses to testify live at trial and thus there are no specific questions to address at this time; and (2) even if Amazon intended to present testimony by way of deposition they have not designated any specific questions at this time for which a ruling on a question by question basis could be made. Accordingly, Atherton reserves the right to raise further objections to an adverse inference as to any specific question that may be asked, whether live at trial or via subsequent deposition designation.

B.  **Evidence of the Witnesses' Assertion of the Fifth Amendment Should Be Excluded Entirely as Irrelevant and Prejudicial under Fed. R. Evid. 402 and 403.**

Admitting any evidence of the Witnesses' Fifth Amendment assertions would also be highly prejudicial and irrelevant. This evidence fails to meet the requirements of Fed. R. Evid. 402 and 403 and should therefore be excluded.

A party's invocation of the Fifth Amendment is not exempt from the rules of evidence; the Court must determine whether the invocation is relevant and whether it would be unduly prejudicial when compared to its probative value. *Hawkins v. St. Clair Cnty.*, No. 07-142 (DRH), 2009 WL 839272, at *1 (S.D. Ill. Jan. 30, 2009) (precluding plaintiffs from referencing a party's "prior assertions of his Fifth Amendment privilege, mentioning his invocation of his Fifth Amendment right, or calling any witness to testify in this regard" and finding that "the assertion of the Fifth Amendment has low probative value when, as here, the opposing party had sufficient opportunity to obtain discovery . . . on all issues relevant to the trial" (quotation omitted)). *See also Brink's*, 717 F.2d at 710 ("But our inquiry is not ended. We still must determine whether the trial court was correct in concluding that the probative value of the evidence was not 'substantially outweighed by the danger of unfair prejudice' under Fed. R. Evid. 403.").

The party seeking to admit a witness's testimony "bear[s] the burden of demonstrating [the] relevance" of that testimony. *Wechsler v. Hunt Health Sys., Ltd.*, No. 94 CIV. 8294(PKL), 2003 WL 21998980, at *3 (S.D.N.Y. Aug. 22, 2003). This is not an easy task. An attorney's "broad-based questions and [a witness's] sweeping invocation of his Fifth Amendment privilege provide no instruction as to the potential relevance of [his] testimony." *Id.* at *3; *In re WorldCom, Inc. Sec. Litig.*, No. 02 CIV 3288 DLC, 2005 WL 375315, at *5 (S.D.N.Y. Feb. 17, 2005) (observing "that the practice of posing fact-specific questions designed to suggest that the answer would be yes invites jurors 'to give evidentiary weight to questions rather than

answers.'") (citing *Brink's*, 717 F.2d at 716 (Winter, J. dissenting)); *United States v. Philip Morris USA Inc.*, No. CIV.A. 99-2496 GK, 2004 WL 5916865, at *1 (D.D.C. July 23, 2004) (granting motion in limine to exclude witness's Fifth Amendment testimony and finding its probative value "very doubtful" due to the witness's "very broad invocation").

"[C]ourts have discretion not to admit evidence of the invocation because of the potential for 'lawyer abuse'—where an examining attorney, once determining that the privilege will be invoked, poses damaging questions, safe from contradiction by the witness." *In re WorldCom, Inc.*, 377 B.R. 77, 109 (Bankr. S.D.N.Y. 2007). The limited probative value of such evidence is further diminished when a witness invokes the privilege on the advice of counsel. *Farace v. Indep. Fire Ins. Co.*, 699 F.2d 204, 210-11 (5th Cir. 1983). *See also Bean v. Alcorta*, No. 14 Civ. 604 (DAE), 2015 WL 4164787, at *10 (W.D. Tex. July 9, 2015) (invocation was "of little probative value" where "Defendant invoked her right on the advice of counsel in light of an ongoing criminal investigation").

Evidence of the Witnesses asserting the Fifth Amendment is inadmissible under Rule 402. The broad questions at the depositions of the Witnesses, in conjunction with the Witnesses' blanket assertions of the Fifth Amendment, are probative of nothing. *See Wechsler*, 2003 WL 21998980, at *3; *In re WorldCom, Inc.*, 377 B.R. at 109; *Philip Morris*, 2004 WL 5916865, at *1. The Witnesses invoked the Fifth Amendment in response to every single substantive question, and many times for assertions much broader than would conceivably be protected, including whether they had reached a plea agreement with the government, current residential addresses, ages of children, whether they were familiar with the general concept of a built-to-suit lease transaction. *See, e.g. Ramstetter Dep.*, 76:20 – 80:25, 101:3-13; *Christian Kirschner Dep.*, 15:23-16:6. Their indiscriminate use of the privilege obliterates any potential relevance. Nothing

can be inferred about Defendants' culpability if the Witnesses invoke the Fifth Amendment in response to questions about Defendants when the Witnesses also invoke the Fifth Amendment in response to questions about innocuous matters.

This evidence is also inadmissible under Rule 403. A jury would hear inflammatory and damaging questions about Defendants and would see a stone-faced Ramstetter, Christian Kirschner, Camenson or Lim repeatedly refusing to provide substantive answers. Amazon's prejudicial questions at the Witnesses' depositions already demonstrate the "potential for 'lawyer abuse'—where an examining attorney, once determining that the privilege will be invoked, poses damaging questions, safe from contradiction by the witness," *In re Worldcom, Inc.*, 377 B.R. at 109. *See also In re Urethane*, 2013 WL 100250, at *4 (excluding evidence of Fifth Amendment invocations). *See, e.g., Christian Kirschner Dep.*, 67:19-68:4 ("And at the time that you entered into this agreement, Villanova Trust and Northstar entered into this agreement, you had already told Brian Watson that some of the money that would be paid pursuant to this agreement would then be given to Casey Kirschner and Carleton Nelson; is that correct?"), 139:21-140:4 ("And these funds were paid in part for Casey's role - Casey Kirschner's role in ensuring that Northstar was awarded the deals; correct?"); *Ramstetter Dep.*, 148:9-16 ("The leasing and development fees that were paid to Villanova Trust would – were for the benefit of Casey Kirschner and Carleton Nelson, correct?"); 148:22-149:2 ("Did you understand that Northstar was specifically paying this fee as an incentive to Amazon transaction managers Carleton Nelson and Casey Kirschner to obtain these deals?"); 155:12-17 ("You were aware that Brian Watson knew that the fee payments were provided to Casey Kirschner and Carleton Nelson in exchange for the Amazon deals going to Northstar, correct?"); *Camenson Dep.*, 156:23-25 ("Your understanding was that Casey Kirschner would give preferential treatment to Northstar for deals with Amazon;

is that not correct?"), 165:18-165:20 ("You understood that Northstar was paying these fees so Carleton Nelson and Casey Kirschner would ensure Amazon conducted business with Northstar, did you not?"). The value of this testimony is further diminished by the Witnesses' admissions that they invoked the Fifth Amendment on the advice of counsel. *Farace*, 699 F.2d at 210-11; *Bean*, 2015 WL 4164787, at *10. (*See, e.g., Ramstetter Dep.*, 25:13 – 33:18; *Christian Dep.*, 36:10-23; *Camenson Dep.*, 20:17-21:4). Nor is there any need to admit this evidence given the substantial record in this litigation (there are over 1500 trial exhibits identified among the parties and numerous other fact witnesses in the case). *Hawkins*, 2009 WL 839272, at *1. Thus, the evidence has no probative value, but is highly prejudicial and should therefore be excluded.

## IV. CONCLUSION

WHEREFORE, Defendant Rodney Atherton, by counsel, respectfully asks that the Court enter an Order granting his Motion to prohibit adverse inferences from the testimony or depositions of Christian Kirschner, Kyle Ramstetter, Will Camenson, and Johnny Lim, or in the alternative to exclude it under Fed. R. Evid. 402 and 403.

**RODNEY ATHERTON**

By Counsel

/s/ Julie S. Palmer
Julie S. Palmer (VSB No. 65800)
Angela MacFarlane (VSB No. 87776)
Counsel for Rodney Atherton
Harman, Claytor, Corrigan & Wellman
P.O. Box 70280
Richmond, Virginia 23255
804-747-5200 - Phone
804-747-6085 - Fax
jpalmer@hccw.com
amacfarlane@hccw.com

## C E R T I F I C A T E

I hereby certify that on 31st day of March, 2023, a true and correct copy of the foregoing has been served upon all parties of record via the ECF system and via email.

/s/ Julie S. Palmer
Julie S. Palmer