IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| AMAZON.COM, INC. and AMAZON DATA SERVICES, INC., | |
| Plaintiffs, | |
| v. | |
| WDC HOLDINGS LLC dba NORTHSTAR COMMERCIAL PARTNERS; BRIAN WATSON; STERLING NCP FF, LLC; MANASSAS NCP FF, LLC; NSIPI ADMINISTRATIVE MANAGER; NOVA WPC LLC; WHITE PEAKS CAPITAL LLC; VILLANOVA TRUST; CARLETON NELSON; CASEY KIRSCHNER; ALLCORE DEVELOPMENT LLC; FINBRIT HOLDINGS LLC; CHESHIRE VENTURES LLC; 2010 IRREVOCABLE TRUST; SIGMA REGENERATIVE SOLUTIONS LLC; CTBSRM, INC.; RODNEY ATHERTON; DEMETRIUS VON LACEY, | CASE NO. 1:20-CV-484-RDA-IDD |
| Defendants. | |
| 800 HOYT LLC, | |
| Intervening Interpleader Plaintiff, Intervening Interpleader Counter-Defendant, | |
| v. | |
| BRIAN WATSON; WDC HOLDINGS, LLC; BW HOLDINGS, LLC, | |
| Interpleader Defendants, | |
| and | |
| AMAZON.COM, INC., and AMAZON DATA SERVICES, INC., | |
| Interpleader Defendants, Interpleader Counter-Plaintiffs. | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' OMNIBUS MOTION IN LIMINE**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................................................... iii

LEGAL STANDARD ................................................................................................................1

ARGUMENT ............................................................................................................................1

    I.   MIL No. 1 To Preclude Defendants From Asserting Advice Of Counsel
        Defenses. ...........................................................................................................................1

        A.   The Court Should Preclude Nelson And Kirschner From Asserting An
               Advice Of Counsel Defense. .................................................................................2

        B.   The Court Should Preclude Watson From Asserting An Advice of Counsel
               Defense. ...............................................................................................................6

    II.   MIL No. 2 To Exclude Evidence Relating To Unfounded Theories About
        Amazon's Real Estate Acquisitions in Northern Virginia. ..........................................12

    III.  MIL No. 3 To Preclude Certain Arguments Regarding the Ongoing Criminal
        Government Investigation. .........................................................................................13

    IV.  MIL No. 4 To Exclude Evidence Of Amazon's Enforcement Or Non-
        enforcement Of Non-compete Agreements Executed With Other Personnel. .............16

    V.   MIL No. 5 To Preclude References To Amazon's Size Or Financial Condition..........17

    VI.  MIL No. 6 To Preclude References To Size, Location, Prior Experience, Or
        Specialization Of Plaintiffs' Counsel. ........................................................................18

    VII. MIL No. 7 To Preclude Commentary On The Absence Or Presence Of Any
        Witness Or Amazon's Corporate Representatives. ....................................................19

    VIII.MIL No. 8 To Preclude Defendants From Engaging In Personal Attacks And
        Conspiracy Theories Relating To Amazon Employees And Gibson Dunn
        Attorneys. ...................................................................................................................20

    IX.  MIL No. 9 To Preclude Argument That Amazon Did Not Mitigate More
        Damages. ....................................................................................................................22

    X.   MIL No. 10 To Preclude References To Confidentiality Designations. ......................23

    XI.  MIL No. 11 To Preclude References To Past Discovery Disputes.............................23

    XII. MIL No. 12 To Preclude Defendants From Calling Plaintiffs' Attorneys And
        Amazon Executives As Witnesses. ...........................................................................24

i

XIII. MIL No. 13 To Preclude Defendants From Offering Certain Testimony By Deposition. ....................................................................................................26

XIV.       MIL No. 14 To Preclude Experts From Offering Opinions That Were Not Disclosed In Their Reports. .......................................................................27

XV. MIL No. 15 To Exclude Evidence And Argument About "Market Rates."................28

XVI.       MIL No. 16 To Exclude Evidence And Argument About IPI's Ownership.........28

XVII.      MIL No. 17 To Exclude Evidence And Argument About The Unintentional Destruction Of Casey Kirschner's Laptop. ...........................................29

CONCLUSION..................................................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Affordable Care, LLC v. JNM Off. Prop., LLC*,
   2022 WL 291716 (S.D. Miss. Jan. 31, 2022) ............................................................. 23, 24

*Am. Water Heater Co. v. Taylor Winfield Corp.*,
   2019 WL 11648764 (E.D. Tenn. Sept. 3, 2019) ............................................................. 19

*Aubrey Rogers Agency, Inc. v. AIG Life Ins. Co.*,
   2000 WL 135129 (D. Del. Jan. 13, 2000) ...................................................................... 26

*Bank of Montreal v. Signet Bank*,
   193 F.3d 818 (4th Cir. 1999) .......................................................................................... 22

*Barron v. Univ. of Notre Dame Du Lac*,
   2016 WL 3129475 (N.D. Ind. Apr. 13, 2016) ................................................................ 19

*Baxter v. Comm'r*,
   910 F.3d 150 (4th Cir. 2018) ........................................................................................ 4, 5

*Beard v. Schneider*,
   2017 WL 4585705 (E.D. Mich. Oct. 16, 2017) .............................................................. 15

*Bellew v. Ethicon, Inc.*,
   2014 WL 6680356 (S.D.W. Va. Nov. 25, 2014) ............................................................ 23

*Bethea v. Merchants Com. Bank*,
   2015 WL 1577976 (D.V.I. Apr. 2, 2015) ....................................................................... 23

*BNJ Leasing, Inc. v. Portabull Fuel Serv., LLC*,
   2022 WL 892747 (S.D. Miss. Mar. 25, 2022) ............................................................... 29

*Boughton v. Cotter Corp.*,
   65 F.3d 823 (10th Cir. 1995) .......................................................................................... 24

*Carnell Constr. Corp. v. Danville Redev. & Hous. Auth*,
   745 F.3d 703 (4th Cir. 2014) ..................................................................................... 18, 21

*Carter–Wallace, Inc. v. Otte*,
   474 F.2d 529 (2d Cir. 1972) ........................................................................................... 26

*Changzhou Kaidi Elec. Co. v. Okin Am., Inc.*,
   112 F. Supp. 3d 330 (D. Md. 2015) ............................................................................... 27

*Columbia Pictures Television v. Krypton Broad. of Birmingham, Inc.*,
106 F.3d 284 (9th Cir. 1997)..........................................................................11

*Covey v. Wal-Mart Stores E., L.P.*,
2017 WL 6459811 (W.D. Mo. Dec. 18, 2017)................................................29

*Cross by & Through Steele v. XPO Express, Inc.*,
2018 WL 6071132 (D.S.C. Apr. 20, 2018)......................................................25

*Dailey v. Hecht*,
757 F. App'x 664 (10th Cir. 2018)............................................................18, 21

*Diviney v. Vantrease*,
2012 WL 2368976 (N.D.W. Va. June 4, 2012)...............................................22

*Empire Gas Corp. v. Am. Bakeries Co.*,
646 F. Supp. 269 (N.D. Ill. 1986)..................................................................24

*Ervine v. Desert View Reg'l Med. Ctr. Holdings, LLC*,
2017 WL 4038858 (D. Nev. Sept. 13, 2017)...................................................19

*In re Ethicon, Inc. Pelvic Repair Sys. Prods. Liab. Litig.*,
2014 WL 505234 (S.D.W. Va. Feb. 5, 2014)..................................................23

*F.H. Paschen, S.N Nielsen & Assocs. LLC v. Hiscox, Inc.*,
2015 WL 13532830 (E.D. La. Nov. 25, 2015).................................................19

*Florilli Transp., LLC v. W. Express, Inc.*,
2016 WL 7043030 (W.D. Mo. Feb. 19, 2016).................................................29

*Ford Motor Co. v. Nat'l Indem. Co.*,
2013 WL 3831438 (E.D. Va. July 23, 2013)...................................................24

*In re Gen. Motors LLC Ignition Switch Litig.*,
2015 WL 8130449 (S.D.N.Y. Dec. 3, 2015)...................................................23

*Harner v. USAA Gen. Indem. Co.*,
590 F. Supp. 3d 1217 (S.D. Cal. 2022)...........................................................19

*Harvey-Buschel v. Univ. of Washington*,
2023 WL 2242066 (W.D. Wash. Feb. 27, 2023)..............................................25

*Hino Motors Mfg. U.S.A., Inc. v. Hetman*,
2022 WL 16709717 (E.D. Mich. Aug. 4, 2022)..............................................28

*Hirschkop v. Snead*,
594 F.2d 356 (4th Cir. 1979).........................................................................22

*Holbrook v. Woodham*,
   2009 WL 8536746 (W.D. Pa. June 17, 2009) ....................................................................27

*Howmedica Osteonics Corp. v. Zimmer, Inc.*,
   2013 WL 5286189 (D.N.J. Sept. 16, 2013).......................................................................17

*Hurley v. VendTech-SGI, LLC*,
   2018 WL 1077316 (W.D. Mo. Feb. 26, 2018) ........................................................... 18, 29

*Jacobs v. Alexander*,
   2016 WL 4440957 (E.D. Cal. Aug. 22, 2016)........................................................ 12, 13, 14

*Jones v. Cargill, Inc.*,
   490 F. Supp. 2d 978 (N.D. Iowa 2007)..............................................................................18

*Kakkis v. Provident Mut. Life Ins. Co. of Phila.*,
   2002 WL 34357203 (C.D. Cal. Oct. 7, 2002) ...................................................................23

*Kamara v. United States*,
   2005 WL 2298176 (S.D.N.Y. Sept. 20, 2005) ..................................................................26

*La Plante v. Am. Honda Motor Co.*,
   27 F.3d 731 (1st Cir. 1994)................................................................................................18

*Livers v. Schenck*,
   2013 WL 5676881 (D. Neb. Oct. 18, 2013).......................................................................26

*Markowski v. S.E.C.*,
   34 F.3d 99 (2d Cir. 1994) ....................................................................................................4

*Maseru v. Univ. of Cincinnati*,
   2022 WL 7506368 (S.D. Ohio Oct. 13, 2022) ..................................................................23

*McNally v. Riis*,
   2020 WL 209141 (S.D. Cal. Jan. 14, 2020) ......................................................................27

*NAACP v. City of Myrtle Beach*,
   2020 WL 6976887 (D.S.C. Nov. 26, 2020) .......................................................................24

*Nelson v. Amazon*,
   Case No. 20-2-15535-7 (Sup. Ct. Cty. of King, Wash.)......................................................16

*Ortho-McNeil Pharm., Inc. v. Mylan Lab'ys, Inc.*,
   2003 WL 25685004 (N.D.W. Va. Oct. 31, 2003)...............................................................26

*Ostrow v. GlobeCast Am. Inc.*,
   825 F. Supp. 2d 1267 (S.D. Fla. 2011) ..............................................................................17

*Performance Sales & Mktg. LLC v. Lowe's Cos. Inc.*,
   2012 WL 4061680 (W.D.N.C. Sept. 14, 2012)................................................................26

*Potomac Elec. Power Co. v. Elec. Motor & Supply, Inc.*,
   262 F.3d 260 (4th Cir. 2001).........................................................................................28

*Rawcar Grp., LLC v. Grace Med., Inc.*,
   2014 WL 12199979 (S.D. Cal. Oct. 21, 2014)...............................................................11

*RCHFU, LLC v. Marriott Vacations Worldwide Corp.*,
   445 F. Supp. 3d 1327 (D. Colo. 2020)..........................................................................18

*Riggs v. Peschong*,
   2009 WL 604369 (D.N.H. Mar. 5, 2009)........................................................................24

*Riley v. Ford Motor Co.*,
   2011 WL 3273592 (S.D. Miss. July 29, 2011)...............................................................20

*Robinson v. Worley*,
   849 F.3d 577 (4th Cir. 2017)................................................................................2, 4, 10

*S.S. v. Leatt Corp.*,
   2014 WL 356938 (N.D. Ohio Jan. 31, 2014)..................................................................18

*Sanford v. Ektelon/Prince Sports Grp.*,
   1999 WL 33544436 (D. Neb. Nov. 5, 1999)...................................................................24

*Santos v. Buckingham Mfg. Co.*,
   2003 WL 25666708 (S.D. Fla. June 2, 2003).................................................................24

*SEC v. ITT Educ. Servs.*,
   303 F. Supp. 3d 746 (S.D. Ind. 2018)..............................................................................1

*Shelton v. American Motors Corp.*,
   805 F.2d 1323 (8th Cir. 1986).......................................................................................24

*Skilling v. United States*,
   561 U.S. 358 (2010) .........................................................................................................3

*Sutphin v. Ethicon*,
   2020 WL 5079170 (S.D.W. Va. Aug. 27, 2020).............................................................23

*In re Testosterone Replacement Therapy Prods. Liab. Litig. Coordinated Pretrial Proc.*,
   2017 WL 5029601 (N.D. Ill. Nov. 3, 2017)....................................................................20

*Thompson v. Polaris Indus. Inc.*,
   2019 WL 2173965 (D. Ariz. May 17, 2019)...................................................................19

*Torkie-Tork v. Wyeth*,
    2010 WL 11431846 (E.D. Va. Nov. 17, 2010).................................................................19

*United States v. Bannon*,
    2022 WL 2900620 (D.D.C. Apr. 6, 2022) ...........................................................................11

*United States v. Bush*,
    626 F.3d 527 (9th Cir. 2010).................................................................................................6

*United States v. Camenson*,
    1:23-cr-37 (E.D. Va.)..........................................................................................................14

*United States v. Fogle*,
    1:23-cr-44 (E.D. Va.)..........................................................................................................14

*United States v. Gaines*,
    170 F.3d 72 (1st Cir. 1999).................................................................................................19

*United States v. Kahrig*,
    2022 WL 2703945 (S.D. Ill. July 12, 2022)...................................................................1, 11

*United States v. Kirschner*,
    No. 1:23-cr-36 (E.D. Va.)...................................................................................................14

*United States v. Narang*,
    2019 WL 3949308 (E.D. Va. Aug. 21, 2019) .......................................................4, 5, 6, 12

*United States v. Newport News Shipbuilding, Inc.*,
    276 F. Supp. 2d 539 (E.D. Va. 2003) ................................................................................10

*United States v. O'Connor*,
    158 F. Supp. 2d 697 (E.D. Va. 2001) .......................................................1, 2, 4, 5, 9, 10, 11

*United States v. Polytarides*,
    584 F.2d 1350 (4th Cir. 1978)........................................................................................2, 10

*United States v. Ramstetter*,
    No. 1:23-cr-27 (E.D. Va.)...................................................................................................14

*United States v. Tokash*,
    282 F.3d 962 (7th Cir. 2002)................................................................................................1

*United States v. Wolfe*,
    781 F. App'x 566 (8th Cir. 2019).........................................................................................1

*Velos Grp. v. Centocor, Inc.*,
    1997 WL 893863 (D. Md. Sept. 12, 1997)........................................................................18

*W.L. Gore & Assocs., Inc. v. C.R. Bard, Inc.*,
   2017 WL 525668 (D. Del. Feb. 8, 2017) .............................................................24

*Williams v. Steglinski*,
   2016 WL 1183134 (E.D. Cal. Mar. 28, 2016) ......................................................16

*Woodward v. Babicz*,
   2022 WL 14838011 (D.N.J. Oct. 25, 2022) ...................................................26, 27

*Woulard v. Greenwood Motor Lines, Inc.*,
   2019 WL 3318467 (S.D. Miss. Feb. 4, 2019) ......................................................20

## RULES

Fed. R. Civ. P. 26(a)....................................................................................................27

Fed. R. Evid. 401 ...............................................................1, 12, 13, 14, 16, 17, 19, 20, 28, 29

Fed. R. Evid. 402 .........................................................................1, 12, 14, 16, 20, 28, 29

Fed. R. Evid. 403 .........................................................1, 13, 14, 15, 16, 17, 19, 20, 24, 28, 29

## OTHER AUTHORITIES

Harry McCracken, *Meet the woman behind Amaozn's explosive growth*, Fast Company (Apr. 11, 2019), https://bit.ly/2USOOK3 .............................................................................25

Amazon.com, Inc. and Amazon Data Services, Inc. (collectively "Amazon") respectfully submit this Memorandum of Law in Support of Plaintiffs' Omnibus Motion in Limine.

## LEGAL STANDARD

The proponent of evidence has the burden of establishing that the evidence is relevant and admissible.  Fed. R. Evid. 402.  Evidence is relevant only if it (1) has a "tendency to make a fact more or less probable than it would be without the evidence," and (2) "the fact is of consequence in determining the action."  Fed. R. Evid. 401.  Courts must exclude "relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.

## ARGUMENT

### I.    MIL No. 1 To Preclude Defendants From Asserting Advice Of Counsel Defenses.

Defendants Carleton Nelson, Casey Kirschner, and Brian Watson (and related entity-Defendants) have asserted two distinct advice of counsel defenses to Plaintiffs' claims.  *See, e.g.*, Dkts. 843 at 62 (Watson Defendants), 819 at 131 (Nelson), 1217-1 (Casey Kirschner 8/31/22 Dep. Tr.) at 51:3–16.  Both defenses are frivolous, however, and the Court should preclude Defendants from asserting them at trial, either formally as affirmative defenses or informally by arguing to the jury that Defendants' reliance on advice of counsel relieves them of liability.

It is well-established that "evidence regarding [a party's] reliance on advice of counsel" is the proper subject of "a motion in limine in advance of trial."  *SEC v. ITT Educ. Servs.*, 303 F. Supp. 3d 746, 763 (S.D. Ind. 2018); *see also United States v. Wolfe*, 781 F. App'x 566, 569 (8th Cir. 2019).  "In order for a 'defendant to present an affirmative defense to the jury,'" Defendants "must 'meet the minimum standard as to each element of the defense.'"  *United States v. Kahrig*, 2022 WL 2703945, at *1 (S.D. Ill. July 12, 2022) (quoting *United States v. Tokash*, 282 F.3d 962, 968 (7th Cir. 2002)); *United States v. O'Connor*, 158 F. Supp. 2d 697, 728 (E.D. Va. 2001) (holding

1

that "[t]o establish the defense of reliance on professional advice, defendants must produce some evidence—more than a scintilla—showing" the elements of the defense). Here, Defendants must show that: "(i) the advice was sought and received before taking action, (ii) [the defendants] in good faith sought the advice of [attorneys] whom they considered competent, (iii) the purpose of securing advice was to determine the lawfulness of future conduct, (iv) a full and accurate report was made to the [attorneys] of all material facts which the defendants knew and (v) they acted strictly in accordance with the advice of the [attorneys] who had been given a full report." *O'Connor*, 158 F. Supp. 2d at 728 (citing *United States v. Polytarides*, 584 F.2d 1350, 1352 (4th Cir. 1978)). Nelson, Kirschner, and Watson cannot meet this burden for either advice of counsel defense.

### A.   The Court Should Preclude Nelson And Kirschner From Asserting An Advice Of Counsel Defense.

Nelson and Kirschner claim that they relied on the legal advice of their attorney, Defendant Rodney Atherton, in receiving payments in the form of loans in connection with Amazon transactions on which they worked, without Amazon's knowledge. *See, e.g.*, Dkt. 1217-1 (Casey Kirschner 8/31/22 Dep. Tr.) at 51:3–16; Dkt. 1214-1 (Nelson Dep. Tr.) at 52:13–55:1. This defense is meritless and should be excluded at trial for at least five reasons.

*First*, the Court should preclude Nelson and Kirschner from asserting this defense because a defendant cannot invoke advice of counsel as a shield against liability where the defendant failed to disclose "material facts" to his attorney, *O'Connor*, 158 F. Supp. 2d at 728, or the attorney's advice ignores or contradicts facts known to the client, *Robinson v. Worley*, 849 F.3d 577, 582, 586 (4th Cir. 2017). As Atherton stated in his sworn interrogatory responses, ███████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ████████████████████████████████████████████ Dkt. 1238-5 (Atherton Supp. Rog.

Resps.) at 3–4 (emphasis added).  That understanding was inaccurate, however, as both Nelson and Kirschner knew.  As real estate transaction managers at Amazon, it is undisputed that Nelson and Kirschner had significant influence over (i) which real estate deals to negotiate, (ii) which real estate deals to submit to Amazon leadership for approval, and (ii) what information to provide Amazon leadership as part of the decision-making process.  Dkt. 1232-1 (Nelson Dep. Tr.) at 24:19-25, 246:17-247:5, 296:22-297:7; Dkt. 1232-2 (Kirschner Dep. Tr.) 17:3-16, 245:7-20.  Indeed, Nelson admitted that a deal "could not move forward" if he decided to "not let [it] move into the official approval process."  Dkt. 1232-1 (Nelson Dep. Tr.) at 301:4–11; *see also* Dkt. 1232-2 (Kirschner Dep. Tr.) at 248:4–249:6.  Nelson and Kirschner either failed to disclose this information to Atherton or he simply ignored it.  Either way, given Nelson and Kirschner's central role in the real estate acquisition process, Atherton's factual assumption that they could not influence Amazon's decision-making—which formed the basis for his legal advice—was inaccurate, thus defeating Nelson and Kirschner's advice of counsel defense.

*Second*, Atherton did not in fact advise Nelson or Kirschner that their kickback scheme was legal.  The only written advice Atherton rendered is memorialized in an engagement letter ████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ██████████████████████████████████████████ Dkt. 1238-19 (Atherton Engagement Ltr.) at 4; *but see Skilling v. United States*, 561 U.S. 358, 368, 408 (2010) (describing "bribes" and "kickbacks" as "clear-cut" honest services fraud and the "only" conduct covered by the honest services fraud statute).  Later in that same letter, Atherton purports to counsel that the loans to Nelson and Casey Kirschner ██████████████████████████████████████████ ███████████████████ Dkt. 1238-19 (Atherton Engagement Ltr.) at 4, but he provided no basis for those unsupported assertions and no attempt to reconcile them with ████████████

████████████████████████████████   Because that letter expresses

"uncertainty" about the legality of the payments, it cannot be deemed "advice that [defendants']

conduct was legal," much less evidence that Defendants relied on in "good faith" when accepting

kickbacks from Northstar and others.  *See O'Connor*, 158 F. Supp. 2d at 728*; United States v.*

*Narang*, 2019 WL 3949308, at *14 (E.D. Va. Aug. 21, 2019), aff'd, 2021 WL 3484683 (4th Cir.

Aug. 9, 2021); *see also Markowski v. S.E.C*., 34 F.3d 99, 105 (2d Cir. 1994).  Nor did Atherton

provide more definitive legal advice, orally or otherwise, after sending that letter.  *See, e.g.*, Dkt.

1218-1 (Atherton Dep. Tr.) at 146:10-147:2 (addressing engagement letter and confirming that he

"couldn't find law that was black and white" as to whether loans would constitute occupational

fraud), 148:22-149:1 (Atherton instructed Nelson and Kirschner that they could not profit from the

development of real estate in Amazon deals).  Absent any actual advice from Atherton that the

payments they were receiving were legal, Nelson and Kirschner cannot invoke an advice of

counsel defense.

    *Third*, even if Atherton had advised Nelson and Kirschner that their kickback scheme was

legal, that advice could not support an advice of counsel defense because it is facially

unreasonable.  *Worley*, 849 F.3d at 586 (4th Cir. 2017) (advice of counsel defense unavailable

where the lawyer's advice was obviously incorrect or incomplete); *see also Baxter v. Comm'r,* 910

F.3d 150, 166 (4th Cir. 2018) (defendant cannot rely on advice that fails to address obvious sources

of liability to reach conclusions that seem "too good to be true").  As the Fourth Circuit has

emphasized, "advice of counsel … [is] no defense when it should have been obvious … that [the]

attorney was mistaken" about issues of fact or law, and the client simply chose to "'play[] ostrich

and bury[] his head deeply in the sand.'"  *Worley*, 849 F.3d at 586.  Atherton admits to knowing

crucial facts about Nelson and Kirschner that would have indicated to any reasonable attorney that

they were engaged in illegal conduct, including that (i) Northstar was paying Kirschner's brother

4

in connection with deals that Nelson and/or Kirschner were negotiating and submitting for approval as part of their employment at Amazon, (ii) Kirschner's brother was distributing, or intended to distribute, a majority of the payments to Nelson and Kirschner, and (iii) Nelson and Kirschner had not disclosed the payments to Amazon and intended to keep them secret using the entities Atherton set up.  Dkt. 1218-1 (Atherton Dep. Tr.) at 44:1–52:1, 152:3–152:9.  These facts establish the *sine qua non* of a kickback scheme, so even if Atherton had advised Nelson and Kirschner that their conduct was legal, such advice would plainly have been "too good to be true." *Baxter*, 910 F.3d at 166.

*Fourth*, the record forecloses Nelson and Kirschner's advice-of-counsel defense because the undisputed evidence shows that they did not, in fact, act "strictly in accordance" with Atherton's advice.  *O'Connor*, 158 F. Supp. 2d at 728.  Atherton advised Nelson and Kirschner ██████████████████████████████████████████████████████████ Dkt. 1238-5 at 4, and ████████████████████ Dkt. 1238-19 (Atherton Engagement Ltr.) at 4, otherwise it "might be—might be considered occupational fraud," Dkt. 1218-1 (Atherton Dep. Tr.) at 160:13-21.  It is undisputed, however, that the so-called loans were never collateralized, and that neither Nelson nor Kirschner repaid them.  In fact, the loans were not even documented in signed contracts (only unsigned drafts).  Worse, Nelson indicated in a recorded conversation that he had no intent of repaying them because he essentially owed the money to himself and no one was going to complain.  Dkt. 1225-5 at 33.  Thus, the evidence shows that Nelson and Kirschner did not follow Atherton's advice by collateralizing the loans or treating them as bona fide financial obligations.

*Finally*, there can be no advice of counsel defense where the attorney "actively participated" in the scheme.  *Narang*, 2019 WL 3949308, at *14.  Here, Atherton was "aware of" the "true nature" of the challenged payments, *id.*—he knew the funds were flowing to Nelson and

Kirschner from Amazon business partners on deals Nelson and Kirschner recommended to Amazon in the scope of their employment, *see, e.g.*, Dkt.1238-5 (Atherton Supp. Rog Resps.) at 2–4; Dkt. 1218-1 (Atherton Dep. Tr.) at 50:2–51:14, 101:14–105:9; Dkt. 1232-2 (Casey Kirschner 5/10/22 Dep. Tr.) at 134:4–136:1.  In fact, Atherton told Nelson and Kirschner ████████████

████████████████████████████████████ Dkt. 1238-19 (Atherton Engagement Ltr.).

████████████████████████████████████████████████

████████████████████████████████████████████████ *Id.*

████████████████████████████████████████████████

████████████████ Dkt. 1238-5 (Atherton Supp. Rog Resps.) at 6.  Accordingly, Atherton's advice, both as an outside attorney and as "General Counsel" of AllCore, cannot support an advice of counsel defense because it was rendered by an attorney who "was 'up to his eyeballs' in the fraudulent scheme," rather than by a competent, diligent, and unconflicted legal adviser.  *United States v. Bush*, 626 F.3d 527, 539 (9th Cir. 2010); *accord Narang*, 2019 WL 3949308, at *14.

**B.     The Court Should Preclude Watson From Asserting An Advice of Counsel Defense.**

The Watson Defendants have also indicated that they may assert an advice of counsel defense relating to the 2019 "White Peaks mediation" and their ensuing efforts to "reform" the Villanova Referral Agreement with Rodney Atherton and Christian Kirschner.  *See, e.g.*, Dkt. 1214-4 (Watson Dep. Tr.) at 358:3–22.  The Watson Defendants and their attorneys at Brownstein have provided few details on this defense, but the evidence produced suggests that they could rely on two categories of advice.  Neither should be admitted into evidence, and the Watson Defendants should be precluded from asserting a formal advice of counsel defense or arguing to the jury that

their reliance on Brownstein's advice relieves them of liability.[1]

  **White Peaks Advice.** Brownstein purportedly offered advice in connection with the Watson Defendants' 2019 dispute with the two former Northstar employees (Ramstetter and Camenson) who controlled the entity (White Peaks Capital) that orchestrated the $116 million "flip sale" to Amazon.  White Peaks realized a $16 million same-day profit and diverted a portion of that profit to Nelson, Kirschner, and Atherton.  When Watson learned that his employees were behind the sale, he demanded that they pay him the $16 million profit they realized, and hired Brownstein to pursue duty of loyalty and usurpation of corporate opportunity claims against them. Brownstein represented Watson and Northstar in settling these claims *and* "whistleblower" counterclaims that Ramstetter and Camenson raised regarding Watson and Northstar's payment of kickbacks through Villanova to Nelson and Kirschner.  *See* Dkt. 1042-3; Dkt. 1238-8 (Brownstein 30(b)(6) Dep.) at 122:7–125:17.

  Brownstein purportedly offered the following legal opinions:



-   . Dkt. 1238-8 (Brownstein 30(b)(6) Dep.) at 105:21–106:7.

-   , *id.* at 131:6–134:1;

-   *id.*;

-   , Ex. 1 (Brownstein Dep. Tr.) at 222:10–226:2;

-

---

[1] In addition to relying on Brownstein for his advice of counsel defense, Watson is also represented by Brownstein in this litigation.  *See* Dkts. 27, 28, 313 (pro hac applications for Brownstein attorneys).

██████████████████████████████ Dkt. 1238-8 (Brownstein 30(b)(6) Dep.) at 123:25–124:4, 212:10–213:1; and

- Watson did not need to disclose the claims, counterclaims, or settlement terms associated with the White Peaks dispute to anyone at Amazon after he discussed them with Casey Kirschner, *id.* at 127:11–128:1, nor did he need to disclose his Villanova referral agreement with Christian Kirschner.

Critically, neither Watson nor Brownstein claims that Brownstein provided legal advice about the formation of the kickback scheme structure.  Dkt. 1042-3 at 16–17.

**Villanova Reformation Advice.**  The second category consists of advice Brownstein provided about potentially "cancelling" or "reforming" the Villanova Referral Agreement after the White Peaks settlement with Ramstetter and Camenson.  The Villanova Referral Agreement was initially executed by Watson and Christian Kirschner in January of 2018 and required Northstar to pay the Villanova Trust specific percentages of the fees and other proceeds Northstar received on all Amazon leases. ██████████████████████████████████████

███████████████████████████████████████████ Ex. 1 (Brownstein Dep. Tr.) at 308:5–12. ████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████ *Id.* at 301:19–24. ████████████████████████████████████████

████████████████████ *Id.* at 306:7–307:10.

Brownstein purportedly provided the following written advice:

- In October 19, 2019, shortly after Ramstetter and Camenson asserted bribery allegations relating to White Peaks, ██████████████████████████████████████████████████████████████ Ex. 1 (Brownstein Dep. Tr.) at 278:4–25 & Ex. 34, 279:7–11 ██████████████████████████

- Thereafter, Rob Kaufmann proposed ████████████████████████████████ ████████████████████████████████████████████ *id.* at 287:19–288:11;

- Kaufmann then testified "for the record" that ████████████████████████ ████████████████████████████████████████ *id.*

**Grounds for Excluding This Defense**.  There are several independent reasons to preclude the Watson Defendants from asserting an advice of counsel defense at trial based on either category of advice.

*First*, Brownstein has admitted that its legal advice about the White Peaks settlement and the proposed reformation of the Villanova Referral Agreement was not informed by "all material facts that" its clients "knew" about the allegations.  *O'Connor*, 158 F. Supp. 2d at 728.  And advice that "in no way addresse[s] the legality of the overall scheme," including advice that overlooks material facts, is not a valid basis for an advice of counsel defense.  *Id.*  Brownstein admitted, for example, that it did not discuss Ramstetter and Camenson's bribery and kickback allegations with any of the Northstar employees who had previously raised bribery concerns, even though Brownstein had direct access to them.  *See, e.g.*, Dkt. 1238-8 (Brownstein Dep. Tr.) at 196:5–197:2; Ex. 1 (Brownstein Dep. Tr.) at 164:9–165:23.  Those employees included Josh Richards, the Northstar executive who made the same bribery claims against Watson two months before the White Peaks mediation.  Ex. 1 (Brownstein Dep. Tr.) at 74:7–16.  And they included Brent Grey, Tim Lorman, Danny Mulcahy, and Patricia Watson, all of whom raised concerns that the Villanova payments violated anti-bribery laws.  *Id.* at 73:12–75:4.  Worse, after learning that Ramstetter claimed to have a recording of Watson discussing the kickback payments to Nelson and Kirschner, Brownstein never asked for a copy of that recording from Ramstetter's counsel.  *Id.*; *see also id.* at 174:13–19.  Nor did Brownstein contact anyone else to investigate what its own documents described as a "big hole" in its understanding of Ramstetter's kickback allegations.  *Id.* at 97:6–101:7 & Ex. 7; Dkt. 1042-3 at 20.  Instead,  Brownstein testified during its deposition tha ██

9

████████████████████████████████████████████ Ex. 1

(Brownstein Dep. Tr.) at 65:19–25, 170:16–173:17.  Thus, the Brownstein lawyers simply stuck their heads "deep[er] in the sand" as the claims and corroborating evidence of Watson's misconduct continued to mount.  *Worley*, 849 F.3d at 586.[2]  As such, none of the advice they provided in connection with the White Peaks settlement or the potential reformation of the Villanova Referral Agreement can support an advice of counsel defense.

*Second*, Brownstein's advice about the White Peaks settlement and reforming the Villanova Referral Agreement cannot be a defense for misconduct by the Watson Defendants that took place *before* that advice was given.  Attorney advice can serve as a defense to scienter-based offenses only if the advice clearly and competently addressed the legality of "*future*" conduct. *O'Connor*, 158 F. Supp. 2d at 728 (citing *United States v. Polytarides*, 584 F.2d 1350, 1352 (4th Cir. 1978)); *see also United States v. Newport News Shipbuilding, Inc.*, 276 F. Supp. 2d 539, 565 (E.D. Va. 2003) (similar).  Having an attorney back-date or rubber stamp questionable conduct after it occurs does not show that the client acted with the sort of good faith that the advice of counsel defense requires. *See O'Connor*, 158 F. Supp. 2d at 729.

Accordingly, Brownstein's late *2019* statements that ████████████████████████ ████ the *2018* Villanova Referral Agreement, Ex. 1 (Brownstein Dep. Tr.) at 278:4–25, cannot serve as a defense to Watson's role in the pre-existing fraud and kickback scheme that agreement facilitated.  Likewise, Watson cannot rely on opinions that Brownstein offered in late 2019 about the credibility of Ramstetter and Camenson's "whistleblower" counterclaim, ████████████ ████████████████████████████████████████

---

[2] Moreover, the overwhelming evidence at trial will show that Watson did know the payments to Villanova were being used to influence Casey Kirschner's and Nelson's actions at Amazon. Brownstein's unawareness of this material fact provides a further basis to reject the Watson Defendants' attempted advice of counsel defense.

█████████████████████████████████ Dkt. 1238-11 at ¶ 10.  As discussed above, ████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████ *See supra* at 8–9.  Because the kickback

counterclaims alleged conduct that predated Brownstein's engagement on the employment

dispute, Brownstein's opinions on the kickbacks did not address the legality of "*future*" conduct

as an advice-of-counsel defense requires.  *O'Connor*, 158 F. Supp. 2d at 728.

Nor did Brownstein have any informed or competent basis for concluding that the

allegations about past Northstar payments to Villanova flowing through Christian Kirschner to

Nelson and Casey Kirschner were "inaccurate" and "not credible," and that Watson and Northstar

did nothing "illegal," Ex. 1 (Brownstein Dep.) at 67:5–68:6, 123:25–124:4, 212:10–213:1, 227:8–

228:1.  These opinions referenced conduct that had already occurred, *see* Dkt. 1217-2 (Villanova

Referral Agreement, dated January 2018), and that *did* in fact involve the flow of financial benefits

to Nelson and Casey, Dkt. 1219-2 (WDC Holdings Dep. Tr.) at 330:13-331:21 (documenting

money flows to Villanova between March 2018 and August 2019).

\*      \*      \*

There is ample precedent for a court to preclude a defendant from asserting an advice of

counsel defense at trial—whether as an affirmative defense or an assertion of good faith—where,

as here, the defense is legally deficient.  *See United States v. Bannon*, 2022 WL 2900620, at \*3

(D.D.C. Apr. 6, 2022); *United States v. Kahrig*, 2022 WL 2703945, at \*1 (S.D. Ill. July 12, 2022);

*Rawcar Grp., LLC v. Grace Med., Inc.*, 2014 WL 12199979, at \*2 (S.D. Cal. Oct. 21, 2014);

*Columbia Pictures Television v. Krypton Broad. of Birmingham, Inc.*, 106 F.3d 284, 294 (9th Cir.

1997).  Specifically, the Court should:

- Preclude Defendants from asserting the advice of counsel defense, including by refusing a separate jury instruction on advice of counsel;

- Preclude Defendants from arguing that their purported reliance on advice of counsel relieves them of liability for their conduct;

- Preclude Defendants from making "vague statement[s]" about their reliance on advice of counsel, *Narang*, 2019 WL 3949308, at *14; and

- Although Watson may testify as to his conversations, preclude Defendants from presenting Brownstein attorneys as witnesses in any capacity.

## II.   MIL No. 2 To Exclude Evidence Relating To Unfounded Theories About Amazon's Real Estate Acquisitions in Northern Virginia.

Amazon anticipates that Defendants may seek to introduce evidence and argument advancing unfounded theories as to why Amazon pursued the real estate transactions in this litigation, including their recurring theme that Amazon engaged in these transactions to bolster its bid on the Joint Enterprise Defense Infrastructure ("JEDI") contract with the Department of Justice or to "bank" land in Northern Virginia. *See, e.g.*, Dkt. 902-4 (Defs.' Proposed 30(b)(6) Topics) at ¶ 105 (seeking to depose Amazon's corporate designee on whether Amazon's "bid on the [JEDI] cloud procurement contract with the U.S. Department of Defense had any impact on any of the Subject Transactions"); Dkt. 1232-4 (3/23/2022 Chris Vonderhaar Dep. Tr.) at 76:13–77:13 (Defendants' counsel questioning about JEDI); Dkt. 566 at 4 (alleging that "Amazon's desire to bid for the JEDI cloud computing contract" is "relevant to the demand aspects of the pricing at issue in this case"); *see also, e.g.*, Dkt. 1294 (Exs. 368, 442, 515–516).

There is no evidence whatsoever to support these theories. "Without an offer of proof that some evidence supports his theory, the Court should exclude evidence" of these supposed reasons for Amazon's decision to pursue the transactions. *Jacobs v. Alexander*, 2016 WL 4440957, at *10 (E.D. Cal. Aug. 22, 2016). Moreover, Amazon's reason for pursuing these real estate transactions is irrelevant to any claim or defense in this action. Fed. R. Evid. 401, 402. That Defendants accepted, paid, or facilitated kickbacks in connection with the real estate transactions suffices to

establish Defendants' unlawful conduct no matter why Amazon pursued them.  Finally, the Court

should preclude Defendants from advancing these theories under Rule 403.  Allowing them to do

so would distract and confuse the jury and open up an evidentiary sideshow unrelated to the

disputes in this case concerning the very complex and sensitive subject of the JEDI contract,

mislead the jury, and confuse the issues that are relevant to this case.

### III.   MIL No. 3 To Preclude Certain Arguments Regarding the Ongoing Criminal Government Investigation.

Amazon anticipates that Defendants may introduce numerous unfounded and irrelevant

theories about the ongoing criminal investigation into their conduct.  These theories fall into three

buckets, and the Court should exclude evidence and argument relating to each, or any related

theory, under Rules 401 to 403.

*First*, the Court should preclude Defendants from introducing evidence and argument that

Amazon has "colluded" with, or "lobbied," the government to bring criminal charges against

Defendants or anyone else.  *See, e.g.*, Dkt. 908 at 2 (claiming that "key executives" at Amazon

"were integrally involved in . . . coordinating with the government in an effort to convince federal

prosecutors to pursue criminal charges against some or all of the Defendants in this action"); Dkt.

559 at 2-3 n.2 (arguing that one of Amazon's attorneys in this case "lobbied the government for

criminal charges against Defendants"); *see also, e.g.*, Dkt. 1239-7 (Doden (30(b)(6)) Dep. Tr.) at

179:3–187:14, 418:21–419:15.  This includes any theory that Amazon or its counsel, Gibson Dunn,

has "used" law enforcements as "tools" or improperly caused the federal government to initiate

civil forfeiture actions against Defendants.  *See, e.g.*, Amy Nelson (@amy_k_nelson), TikTok

(Feb. 7, 2023), https://bit.ly/3ZXEGhv (post titled "Amazon *USED* Federal Prosecutors as

Tools to Avoid Contract Damages.  This is on Amazon's Lawyers").

To begin, "there is not a scintilla of evidence to support" this "conspiracy theory." *Jacobs*,

2016 WL 4440957, at *10.  To be sure, the Department of Justice is conducting an ongoing

criminal investigation concerning the same conduct that is at issue in this civil suit.  To date, that investigation has resulted in guilty pleas from two of Defendants' co-conspirators, *see* Plea Agreement, Dkt. 10, *United States v. Kirschner*, No. 1:23-cr-36 (E.D. Va.); Plea Agreement, Dkt. 10, *United States v. Ramstetter*, No. 1:23-cr-27 (E.D. Va.), and a criminal case has been opened against, and plea hearings scheduled for, two other co-conspirators, *see United States v. Camenson*, 1:23-cr-37 (E.D. Va.); *United States v. Fogle*, 1:23-cr-44 (E.D. Va.).  Amazon, as the victim of the fraud, has fully cooperated with the Department of Justice's investigation.  But this sort of routine cooperation between a fraud victim and government investigators is a far cry from Defendants' wild accusations that Amazon has paid former federal prosecutors to "lobby" the Department of Justice or is somehow "using" the government as a tool to further their own interests.  Amy Nelson (@amy_k_nelson), TikTok (Jan. 10, 2023), https://bit.ly/3YWuqoj (claiming that "Amazon Secretly Paid Millions to Try to Imprison my Husband – to Avoid a $100 Million Penalty," and claiming that Amazon "hired a former federal prosecutor" and "paid him millions of dollars to lobby his former colleagues" at the Department of Justice to bring criminal charges).  "Without an offer of proof that some evidence supports his theory, the Court should exclude evidence of any purported conspiracy" between Amazon and government prosecutors. *Jacobs*, 2016 WL 4440957, at *10.

In addition to being completely baseless, these allegations are also irrelevant and highly prejudicial.  Fed. R. Evid. 401–403.  They would only serve to inflame the passions of the jury and impugn the criminal justice system.  The Court should therefore exclude any evidence and argument in furtherance of this theory, including evidence about the number and substance of Amazon's meetings with government investigators.

*Second*, Defendants should be precluded from offering evidence or argument that they have not been charged with a crime.  *See, e.g.*, Amy Nelson (@amy_k_nelson), TikTok (Dec. 21, 2022),

https://bit.ly/3ZZsD32 ("No one was ever charged.").  True, criminal *convictions* are often relevant in related civil cases, as "the fact that a jury ha[s]" reached certain factual conclusions "beyond a reasonable doubt" is "relevant evidence" in a civil case with a lower standard of proof.  *Beard v. Schneider*, 2017 WL 4585705, at *2 (E.D. Mich. Oct. 16, 2017).  But a "a *non-conviction*" or a *non-indictment* "comes with no such conclusions," and thus "typically is not used as evidence in a civil matter."  *Id.* (emphasis added).  Furthermore, arguments that Defendants have not been criminally charged should be precluded under Rule 403 because they would falsely imply that Defendants have been exonerated when, in fact, the criminal investigation appears to be ongoing.  Likewise, evidence and argument concerning the federal government's return of certain funds that were seized from Defendants in the course of civil forfeiture proceedings are irrelevant and should be excluded.

*Third*, Defendants should be precluded from introducing evidence or argument to support their false narrative that Amazon needed Watson to be criminally indicted to avoid owing Northstar $100 million.[3]  Defendants have peddled this conspiracy theory primarily through social media posts rather than court filings.  And for good reason: it is completely baseless.

After Amazon uncovered Defendants' fraudulent scheme, Northstar's business partner in the Lease Transactions, IPI, exercised its rights under the Operating Agreements for the relevant leases to remove the Watson Defendants and affiliated entities from their roles in the Lease Transactions.[4]  *See* Dkt. 764 ¶ 187–196.  These Agreements ████████████████████

---

[3]  *See, e.g.*, Amy Nelson (@amy_k_nelson), TikTok (Jan. 8, 2023), https://bit.ly/3ZZgDyv ("If they cannot prove that that real estate developer is a felon, they're gonna owe him 9- figures, over $100,000,000."); Amy Nelson (@Amy_K_Nelson), Twitter (Jan. 25, 2023), https://bit.ly/3YWfvdW ("[T]hey broke a contract with a developer & unless developer is found guilty of a felony, Amazon will owe $100M in damages.").

[4]  Defendants' joint exhibit list includes a significant volume of documents relating to Watson's removal and/or surrounding events, though they should have very little significance for

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████  Dkts. 1165-3 at 4, 1165-4 at 4.  Accordingly,

contrary to social media posts, IPI did not need Watson to be convicted of a crime in order to

establish a Cause Event necessary to remove him and Northstar from the relevant leases.  Even if

it were true, though, Amazon's alleged desire to see Watson criminally indicted would have no

bearing on the claims or defenses at issue in this civil case.  In sum, a baseless conspiracy theory

such as this has no relevance to the case and would only serve to confuse the jury.  *See Williams

v. Steglinski*, 2016 WL 1183134, at *3 (E.D. Cal. Mar. 28, 2016) (granting "motion in limine" to

preclude "testimony regarding" "conspiracy theories because such" theories "are unfairly

prejudicial"); Fed. R. Evid. 401–403.

**IV.   MIL No. 4 To Exclude Evidence Of Amazon's Enforcement Or Non-enforcement Of Non-compete Agreements Executed With Other Personnel.**

Defendants may also seek to introduce evidence and argument regarding the enforcement

or non-enforcement of non-compete agreements Amazon has with other Amazon personnel

unconnected to Defendants.  *See, e.g.*, Dkt. 968 (Defs.' Resp. to Amazon Protective Order); *see

also* Dkt. 196-1 ¶ 12 (Complaint, *Nelson v. Amazon*, Case No. 20-2-15535-7 (Sup. Ct. Cty. of

King, Wash.)) (claiming "Amazon's endorsement of outside business activities during

employment was a feature of the CNIAA utilized regularly by Amazon employees," and citing

"AWS CEO Andy Jassy['s] work[] with" the "the Seattle Kraken" as an example).

---

purposes of Amazon's case in chief or any cognizable defense that Defendants have asserted
thereto.  *See* Dkt. 1294 (Exs. 58–64, 243, 366, 415, 416, 419, 420, 689).

Such evidence is irrelevant.  Fed. R. Evid. 401.  This case is about, among other things, whether *Defendants* violated their contractual and policy commitments by receiving kickbacks relating to Amazon real estate transactions.  The only Amazon agreements that are relevant to this case, therefore, are those between *Defendants* Nelson and Kirschner and *Amazon*.  In other cases involving employee misconduct, courts frequently exclude evidence relating to the company's actions vis-à-vis other employees as being "not even arguably relevant under Rule 401."  *Ostrow v. GlobeCast Am. Inc.*, 825 F. Supp. 2d 1267, 1271 (S.D. Fla. 2011).  For example, in *Howmedica Osteonics Corp. v. Zimmer, Inc.*, 2013 WL 5286189 (D.N.J. Sept. 16, 2013), the court held that "evidence relating to Stryker's enforcement or non-enforcement of restrictive covenant agreements other than those that are at issue in the present case" was "irrelevant and must be excluded under Federal Rule of Evidence 401."  *Id.* at *5.

Introduction of other, irrelevant agreements would also lead to jury confusion and prejudice to Plaintiffs.  Fed. R. Evid. 403.  Defendants clearly hope to portray Amazon as singling out Defendants where other employees have gotten a pass.  But this is neither true nor relevant.  Defendants have identified no circumstance in which Amazon condoned or ignored the type of criminal conduct they undertook, nor would any such situation excuse the Defendants from the legal consequences of their own acts.

V.      **MIL No. 5 To Preclude References To Amazon's Size Or Financial Condition.**

Defendants have made frequent reference—in court filings, at hearings, and in social media posts through family members—to Amazon's size and financial resources.  *See, e.g.*, Amy Nelson (@amy_k_nelson), TikTok (Mar. 14, 2023), https://bit.ly/405D45u (stating that "Amazon is so big … that it is now using the Department of Justice and the federal courts as its proxy for a human resources department," and stating that "it's good to be Jeff Bezos in these United States of Amazon").  This type of "'David and Goliath' evidence" has no place before the jury and should

be excluded for two reasons. *Hurley v. VendTech-SGI, LLC,* 2018 WL 1077316, at *1 (W.D. Mo. Feb. 26, 2018).

*First*, this evidence has no relevance to this case. To be sure, evidence of a *defendant's* financial resources may be relevant in certain circumstances, such as where the plaintiff seeks punitive damages. *See S.S. v. Leatt Corp.*, 2014 WL 356938, at *1 (N.D. Ohio Jan. 31, 2014). But because Amazon is the plaintiff, there is no argument that its financial condition bears on Defendants' liability or the harm to Amazon.

*Second*, the "danger" that evidence about profits or wealth "would unfairly prejudice the jury" is "overwhelming." *La Plante v. Am. Honda Motor Co.*, 27 F.3d 731, 740 (1st Cir. 1994). Courts routinely exclude this type of evidence regarding "financial status" due to its capacity to "improperly prejudice the jury's determination of liability." *Jones v. Cargill, Inc.*, 490 F. Supp. 2d 978, 988 (N.D. Iowa 2007); *see also RCHFU, LLC v. Marriott Vacations Worldwide Corp.*, 445 F. Supp. 3d 1327, 1342 (D. Colo. 2020) (same).

This order should also cover any unnecessary references to Jeff Bezos or "Big Tech." *Cf. Velos Grp. v. Centocor, Inc.*, 1997 WL 893863, at *5 (D. Md. Sept. 12, 1997) (admonishing counsel from making "blatant appeal[s] to prejudice" by referring to "big drug companies"). Such statements would only serve to "influence [the] jury to make a decision for reasons unrelated to the probative value of the evidence." *Carnell Constr. Corp. v. Danville Redev. & Hous. Auth*, 745 F.3d 703, 719 (4th Cir. 2014). "Demagoguery" such as this "has no place in the courtroom." *Velos Grp.*, 1997 WL 893863, at *5; *see also Dailey v. Hecht*, 757 F. App'x 664, 668 (10th Cir. 2018) (collecting cases).

## VI.    MIL No. 6 To Preclude References To Size, Location, Prior Experience, Or Specialization Of Plaintiffs' Counsel.

Defendants may make reference to the size, location, prior experience, or specialization of Amazon's outside counsel, as they have done at various times throughout this litigation. *See, e.g.*,

Dkt. 908 at 2 n.1 ("It should be noted that based on filings, emails, calls, and appearances at depositions, it appears that over twenty different attorneys at Gibson Dunn have been assigned to this case so far."); Amy Nelson (@amy_k_nelson), TikTok (Jan. 14, 2023), https://bit.ly/3Z1Jwc1 (stating that Amazon "[is] continuing to spend tens of millions on lawyers at Gibson Dunn.  Like, why?  Is this really just Jeff Bezos being like, spend whatever it takes to destroy these people?"). These references should be precluded under Rules 401 to 403.

Evidence concerning Amazon's attorneys is "irrelevant" and would "needlessly inject[]" the lawyers "into the factual fabric of the case." *United States v. Gaines*, 170 F.3d 72, 82 (1st Cir. 1999).  Courts routinely exclude this type of evidence as irrelevant.  *See Am. Water Heater Co. v. Taylor Winfield Corp.*, 2019 WL 11648764, at *1 (E.D. Tenn. Sept. 3, 2019) ("any evidence related to the size or reputation of the law firm representing Plaintiffs," as well as "the amount of attorney fees, costs, and expenses incurred," is "irrelevant"); *see also Harner v. USAA Gen. Indem. Co.*, 590 F. Supp. 3d 1217, 1223 (S.D. Cal. 2022) (similar); *Thompson v. Polaris Indus. Inc.*, 2019 WL 2173965, at *12 (D. Ariz. May 17, 2019) (similar); *Barron v. Univ. of Notre Dame Du Lac*, 2016 WL 3129475, at *3 (N.D. Ind. Apr. 13, 2016) (similar).

These arguments should also be precluded under Rule 403 as being "unfairly prejudicial." *Am. Water Heater Co.*, 2019 WL 11648764, at *1; *see also Ervine v. Desert View Reg'l Med. Ctr. Holdings, LLC*, 2017 WL 4038858, at *5 (D. Nev. Sept. 13, 2017) (similar); *F.H. Paschen, S.N Nielsen & Assocs. LLC v. Hiscox, Inc.*, 2015 WL 13532830, at *2 (E.D. La. Nov. 25, 2015) (similar).

## VII.   MIL No. 7 To Preclude Commentary On The Absence Or Presence Of Any Witness Or Amazon's Corporate Representatives.

It is well-established that any "[m]ention of the corporate representative's presence has virtually no probative value, and in any event, to the extent such an observation has any probative value, that value is substantially outweighed by the danger of unfair prejudice." *Torkie-Tork v.*

*Wyeth*, 2010 WL 11431846, at *2 (E.D. Va. Nov. 17, 2010) (citing Fed. R. Evid. 403)).  Courts

therefore routinely preclude such references due to their lack of relevance, *see Riley v. Ford Motor

Co.*, 2011 WL 3273592, at *3 (S.D. Miss. July 29, 2011); *In re Testosterone Replacement Therapy

Prods. Liab. Litig. Coordinated Pretrial Proc.*, 2017 WL 5029601, at *3 (N.D. Ill. Nov. 3, 2017),

and because "[e]ven if" such evidence were "marginally relevant, the probative value of any"

reference relating to corporate-representatives "would be substantially outweighed by the dangers

of unfair prejudice, confusing the issues, misleading the jury, and wasting time," *Woulard v.

Greenwood Motor Lines, Inc.*, 2019 WL 3318467, at *6 (S.D. Miss. Feb. 4, 2019).  Accordingly,

pursuant to Rules 401 to 403, the Court should preclude Defendants from commenting on the

presence or absence of corporate representatives or witnesses in the courtroom.

### VIII.   MIL No. 8 To Preclude Defendants From Engaging In Personal Attacks And Conspiracy Theories Relating To Amazon Employees And Gibson Dunn Attorneys.

In addition to general references to Amazon corporate representatives, witnesses, and

Amazon's counsel, Amazon also anticipates that Defendants may engage in personal attacks on

Amazon employees and Gibson Dunn attorneys.  The Court should preclude such attacks as highly

irrelevant and highly prejudicial.  Fed. R. Evid. 401–403.

Throughout this litigation, Defendants and their family have made abusive and unfounded

allegations concerning Amazon employees, including that specific individuals are "hunting"

Defendants and their families.  *See* Amy Nelson (@amy_k_nelson), TikTok (Feb. 2, 2023),

https://bit.ly/3mSYOCD ("Amazon Lawyers Dennis Wallace, Yousri Omar and Patrick Stokes

Deliberately Misled Federal Prosecutors to Obtain Civil Forfeiture."); Amy Nelson

(@amy_k_nelson), TikTok (Jan. 14, 2023), https://bit.ly/3Z1xsYy (post titled "Why is Amazon

Spending $35 Million Hunting My Family – When They Claim NO Damages.  How Is This Not

Fraud On Amazon Shareholders"); Ex. 4 (TikTok of Amy Nelson disclosing Amazon' executive's

address).  Defendants have also peddled the false theory that "key executives" at Amazon "were integrally involved in . . . coordinating with the government in an effort to convince federal prosecutors to pursue criminal charges against some or all of the Defendants in this action." Dkt. 908 at 2.  These attacks on Amazon employees are irrelevant, unfounded, and potentially dangerous.  They should be precluded because they serve no purpose other than to inflame the passions of the jury, induce bias, and "influence [the] jury to make a decision for reasons unrelated to the probative value of the evidence."  *Carnell*, 745 F.3d at 719.

Defendants and their family members have engaged in frequent personal attacks on Amazon's lawyers, including spinning conspiracy theories about these lawyers allegedly "hunting" or attempting to bankrupt Defendants and their family.  Amy Nelson (@amy_k_nelson), TikTok (Jan. 8, 2023), https://bit.ly/3Lyy7gW (describing "Gibson Dunn" as the "law firm hunting [her] family").  These attacks include allegations that Amazon's attorneys are "us[ing] federal prosecutors as tools."  Amy Nelson (@amy_k_nelson), TikTok (Feb. 7, 2023), https://bit.ly/3yRuZVG ("Amazon *USED* Federal Prosecutors as Tools to Avoid Contract Damages.  This is on Amazon's Lawyers").  And they are often targeted at specific attorneys, including junior attorneys.  *See* Amy Nelson (@amy_k_nelson), TikTok (Jan. 2, 2023), https://bit.ly/42k8shQ (post titled, "The Men at Amazon, IPI and Gibson Dunn in Year 4 of Trying to Imprison Numerous People to Avoid a $100 Million Fine for Breaking A Contract," and showing the pictures and other information for numerous Amazon employees and Gibson Dunn lawyers); Amy Nelson (@Amy_K_Nelson), Twitter (Jan. 16, 2023), https://bit.ly/3TwfUTi (listing names of Amazon executives and Gibson Dunn lawyers, including junior attorneys, and urging her followers to "[c]all [them] if you know them").  This heated rhetoric is not only likely to "provoke[] an emotional response in the jury," *Dailey*, 757 F. App'x at 668, but it also poses a threat to the attorneys and Amazon employees who are the targets of these attacks.  The Court

should foreclose these irrelevant, prejudicial lines of argument.[5]

### IX.    MIL No. 9 To Preclude Argument That Amazon Did Not Mitigate More Damages.

Amazon anticipates that Defendants may seek to introduce evidence and argument concerning Amazon's alleged failure to mitigate damages further than it did by renegotiating lease terms that had been tainted by fraud.  Specifically, Nelson and Watson have argued that Amazon should not have entered into the IAD 175 Lease Transaction and the Blueridge Purchase Transaction because those deals closed several weeks after Amazon first received notice of Defendants' fraudulent scheme in early December 2019.  Dkt. 1199 at 22; Dkt. 1213 at 66; Dkt. 1174 at 35; *see also* Dkt. 902-4 (Defs.' Proposed 30(b)(6) Topics) at ¶ 108 (seeking to depose Amazon's corporate designee on Amazon's efforts to mitigate damages); Dkt. 1294 (Exs. 378, 380, 381).  This argument, however, falsely implies that Amazon had full knowledge of Defendants' fraud the instant they received the first whistleblower communication.  In fact, although Amazon had initiated an investigation when the Blueridge and IAD175 deals closed, it had not yet had a "full opportunity of complete investigation" and had not yet uncovered the fraud. *Bank of Montreal v. Signet Bank*, 193 F.3d 818, 827 (4th Cir. 1999).  Amazon could not possibly have mitigated the damage caused by Defendants' fraud in late December of 2019 and early January of 2020, therefore, because it did not have anything close to complete knowledge of the fraud at that time.  Accordingly, Defendants should be precluded from arguing that Amazon had an opportunity to decline to enter the IAD 175 or Blueridge transactions.

---

[5] If Defendants' family continue to issues threatening social media posts, Amazon reserves the right to request a protective order precluding them from making these types of public statements prior to and during trial.  A protective order may very well be warranted pursuant to the Fourth Circuit's longstanding recognition "that prejudicial publicity threatens the fairness of trials." *Hirschkop v. Snead*, 594 F.2d 356, 362 (4th Cir. 1979); *see also Diviney v. Vantrease*, 2012 WL 2368976, at *5 (N.D.W. Va. June 4, 2012), *report and recommendation adopted,* 2012 WL 2368911 (N.D.W. Va. June 21, 2012) (ordering that counsel "be admonished to control his clients' postings on the internet lest the court be forced to do so as the trial of this case moves closer").

### X.      MIL No. 10 To Preclude References To Confidentiality Designations.

The Court should "preclude [Defendants] from referring to a document's confidential" or privileged "status." *In re Ethicon, Inc. Pelvic Repair Sys. Prods. Liab. Litig.*, 2014 WL 505234, at *7 (S.D.W. Va. Feb. 5, 2014). "Whether a party designates a document as confidential" or privileged "is absolutely irrelevant" to the issues before the jury. *Id.* Any probative value is "outweighed by the danger of unfair prejudice and confus[ion]." *Id.* at *7; *see also Kakkis v. Provident Mut. Life Ins. Co. of Phila.*, 2002 WL 34357203, at *1 (C.D. Cal. Oct. 7, 2002) (similar).[6]

### XI.      MIL No. 11 To Preclude References To Past Discovery Disputes.

Defendants may seek to offer evidence and argument concerning past discovery disputes in this case, possibly in an attempt to insinuate to the jury that Amazon and the Court have precluded Defendants from discovering relevant information or for other falsely alleged improper reasons. Dkt. 1294 (Exs. 10–23, 25–28, 123). "References to discovery disputes and the Court's rulings on pretrial motions are not relevant or probative." *Affordable Care, LLC v. JNM Off. Prop., LLC*, 2022 WL 291716, at *3 (S.D. Miss. Jan. 31, 2022). Even a "reference to the fact that [a party] filed a motion" is "irrelevant to the issues to be decided at trial." *Maseru v. Univ. of Cincinnati*, 2022 WL 7506368, at *4 (S.D. Ohio Oct. 13, 2022). This Court should follow the example of numerous other federal district courts and exclude this evidence and argument on relevancy grounds. *See Bethea v. Merchants Com. Bank*, 2015 WL 1577976, at *9 (D.V.I. Apr.

---

[6] Because "there is no reason" for these markings "to appear in exhibits," Amazon also reserves the right to seek further relief on this issue, including an order allowing those markings to be "redact[ed]" from documents introduced at trial, *In re Gen. Motors LLC Ignition Switch Litig.*, 2015 WL 8130449, at *3 (S.D.N.Y. Dec. 3, 2015), or an instruction directing the jury to "disregard the confidential marking on documents," *Bellew v. Ethicon, Inc.*, 2014 WL 6680356, at *6 (S.D.W. Va. Nov. 25, 2014); *see also Sutphin v. Ethicon*, 2020 WL 5079170, at *5 (S.D.W. Va. Aug. 27, 2020) ("The court will, as always, instruct the jury to disregard the confidentiality markings on documents presented at trial.").

2, 2015); *Riggs v. Peschong*, 2009 WL 604369, at *6 (D.N.H. Mar. 5, 2009); *Santos v. Buckingham Mfg. Co.*, 2003 WL 25666708, at *1 (S.D. Fla. June 2, 2003).

This evidence should also be "excluded under Rule 403." *Affordable Care*, 2022 WL 291716, at *3. Such evidence could easily "take the jury away from the case" by tempting it to make its decision based on *hypothetical evidence* that is not presented at trial, rather than the *actual evidence* that is offered by the parties. *Sanford v. Ektelon/Prince Sports Grp.*, 1999 WL 33544436, at *4 (D. Neb. Nov. 5, 1999). As another federal court recognized, "jurors do not know, nor are they expected to appreciate the rules of discovery." *Empire Gas Corp. v. Am. Bakeries Co.*, 646 F. Supp. 269, 276 (N.D. Ill. 1986). It would thus "be improper, irrelevant, unfairly prejudicial, and confusing to the jury for the parties to refer to or re-fight discovery disputes at trial." *W.L. Gore & Assocs., Inc. v. C.R. Bard, Inc.*, 2017 WL 525668, at *1 (D. Del. Feb. 8, 2017); *see also NAACP v. City of Myrtle Beach*, 2020 WL 6976887, at *4 (D.S.C. Nov. 26, 2020) (similar).

## XII.   MIL No. 12 To Preclude Defendants From Calling Plaintiffs' Attorneys And Amazon Executives As Witnesses.

During discovery, Amazon sought and obtained protective orders preventing Defendants from deposing Amazon's in-house and outside counsel pursuant to the well-established *Shelton*/*Ford* test, which precludes depositions of opposing counsel unless: "(1) no other means exist to obtain the information [requested]; (2) the information sought is relevant and non-privileged; and (3) the information is crucial to the preparation of the case." *Ford Motor Co. v. Nat'l Indem. Co.*, 2013 WL 3831438, at *2 (E.D. Va. July 23, 2013) (quoting *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986)); *See* Dkt. 577 (order precluding the deposition of Amazon's in-house counsel); Dkt. 648 (protective order precluding the deposition of Amazon's outside counsel). These very same considerations apply to attempts by a party to call opposing counsel as a witness at trial. *See, e.g.*, *Boughton v. Cotter Corp.*, 65 F.3d 823, 831 n.12 (10th Cir. 1995) ("[W]here the *Shelton* criteria are not all met during trial it will ordinarily be permissible to

24

protect opposing counsel from being compelled to testify at trial as well."). For the same reasons the Court previously precluded depositions of Amazon's lawyers, it should again preclude Defendants from calling Amazon's current and former in-house counsel (Dennis Wallace, Yousri Omar, Kelly Struhs, and Sarah Tyerman) as well as its current and former outside counsel (Lora MacDonald and Travis Andrews) as witnesses at trial. *See Cross by & Through Steele v. XPO Express, Inc.*, 2018 WL 6071132, at *1 (D.S.C. Apr. 20, 2018) (granting motion "to Preclude Plaintiffs From Calling Defendants' Attorneys as Witnesses at Trial" because Plaintiffs "failed to satisfy" the *Shelton* test).

The Court should also preclude Defendants from calling Beth Galetti as a witness at trial. Ms. Galleti is the head of human resources for all of Amazon's one-million-plus employees and is thus considered an "apex" executive. She is a Senior Vice President at Amazon and one of only a few executives who reports directly to Amazon's CEO. *See* Harry McCracken, *Meet the woman behind Amazon's explosive growth*, Fast Company (Apr. 11, 2019), https://bit.ly/2USOOK3. Ms. Galetti also has no personal knowledge of any of the events involved in this lawsuit. If past is prologue, Defendants are likely seeking testimony about the compliance and employment histories of some unspecified number of Amazon personnel unrelated to this suit. *See* Dkt. 968. As discussed above, *supra* § IV, any evidence and argument on this issue is irrelevant to Plaintiffs' claims and should be exclude at trial. And the Court has already ruled as much in granting Amazon's motion for a protective order, raising both relevance and apex grounds, Dkt. 954 at 8, 13 n.3, precluding Ms. Galetti's deposition on both relevance and apex grounds, Dkt. 1003 (protective order).

The same considerations that led the Court to preclude Defendants from deposing Ms. Galetti warrant an order precluding Defendants from calling her to testify at trial. *See, e.g.*, *Harvey-Buschel v. Univ. of Washington*, 2023 WL 2242066, at *3 (W.D. Wash. Feb. 27, 2023)

25

(holding that Plaintiff "will not be permitted to call at trial  an 'apex' witness who had no role in the acts of which plaintiff complains, has very limited knowledge regarding those acts, and whose information is wholly duplicative of that found elsewhere").  Defendants cannot meet the high bar for calling Ms. Galetti at trial, particularly given that she has no personal or unique knowledge relevant to this case.  *E.g.*, *Performance Sales & Mktg. LLC v. Lowe's Cos. Inc.*, 2012 WL 4061680, at *4 (W.D.N.C. Sept. 14, 2012).

### XIII.   MIL No. 13 To Preclude Defendants From Offering Certain Testimony By Deposition.

Inexplicably, Defendants intend to call several of their *own* experts at trial via deposition testimony.  *See* Dkts. 1283, 1281 (listing experts John Culbertson and Jonathan Sheffz as testifying by deposition).  Expert testimony by deposition is highly disfavored and should be precluded here.

Where a party seeks to offer its *own* expert through deposition testimony, "an even greater showing than mere unavailability" than is required for a fact witness "is required to excuse his attendance at trial." *Kamara v. United States*, 2005 WL 2298176, at *6 (S.D.N.Y. Sept. 20, 2005); *see also Livers v. Schenck*, 2013 WL 5676881, at *3 (D. Neb. Oct. 18, 2013); *see also Woodward v. Babicz*, 2022 WL 14838011, at *1–2 (D.N.J. Oct. 25, 2022) ("The value of in-person expert testimony, and the risks attendant to a paid witness, are simply too great to permit [an] expert witness[] to provide expert testimony" by "prerecorded testimony.").  This is partly because that party "is responsible for selecting its own expert witnesses and presumably has control over them." *Aubrey Rogers Agency, Inc. v. AIG Life Ins. Co.*, 2000 WL 135129, at *3 (D. Del. Jan. 13, 2000); *see also  Carter–Wallace, Inc. v. Otte*, 474 F.2d 529, 536 (2d Cir. 1972); *Livers*, 2013 WL 5676881, at *3 ("[P]arties are expected to use other reasonable means to procure the attendance of their experts because the parties select their experts and arrange for their appearance at trial.") (collecting cases). Accordingly, Courts routinely require parties to arrange for their own experts to be available for live testimony, and this Court should do the same here. *Ortho-McNeil Pharm.*,

*Inc. v. Mylan Lab'ys, Inc.*, 2003 WL 25685004, at *1 (N.D.W. Va. Oct. 31, 2003) (motion to preclude use of expert deposition); *Holbrook v. Woodham*, 2009 WL 8536746, at *1 (W.D. Pa. June 17, 2009) (same).

For similar reasons, to the extent the Court does not preclude the Watson Defendants from asserting an advice of counsel defense, the Court should at least preclude them from offering their Brownstein attorneys' testimony by deposition.  Just as parties are expected to be able to produce their own experts to testify live at trial, the Watson Defendants should have no problem arranging for their own lawyers to testify live.  Moreover, this issue is "too important" to be "hindered by remote access or prerecorded testimony." *Woodward*, 2022 WL 14838011, at *1–2.

## XIV.   MIL No. 14 To Preclude Experts From Offering Opinions That Were Not Disclosed In Their Reports.

During the depositions of Defendants' experts, those experts frequently testified on matters that were not disclosed in their reports.  *Compare* Ex. 2 (J. Culbertson Dep. Tr.) at 185:23–187:8 (testifying that Watson's trips to New Zealand and the Everglades were "reasonable" "expenses") *with* Ex. 3 (Expert Report of J. Culbertson) at 3–5 (stating, as a general matter, that "[e]ntertainment to mark a deal's completion is a routine and acceptable practice"); *see also* Ex. 2 (J. Culbertson Dep. Tr.) at 195:1–16 (testifying that his report "didn't mention [Watson's trips] specifically").  It is well established that experts "may not opine at trial on matters not specifically discussed in [their] report[s]." *Changzhou Kaidi Elec. Co. v. Okin Am., Inc.*, 112 F. Supp. 3d 330, 339 (D. Md. 2015).  This is because "to allow Defendant[s'] expert to offer opinions he did not include in his report and that Plaintiff[s] had no chance to review and possibly rebut would be contrary to Federal Rule of Civil Procedure 26(a)(2)(B)(i) and highly prejudicial to Plaintiff." *McNally v. Riis*, 2020 WL 209141, at *5 (S.D. Cal. Jan. 14, 2020).  Accordingly, the Court should issue an order limiting all expert testimony to the subjects disclosed in each expert's report.

**XV.    MIL No. 15 To Exclude Evidence And Argument About "Market Rates."**

The Court should preclude Defendants from introducing evidence and argument concerning "market rates" for real estate in Northern Virginia, including all exhibits concerning unrelated transactions.  *See, e.g.*, Dkt. 1294 (Exs. 178, 181–84, 208–215, 311, 313–16, 334, 433, 464, 519–531, 535–41, 593, 746–800).

Defendants argument that Amazon must prove that it paid "above-market rates for the Lease Transactions" in order to establish damages for its claims, Dkt. 1174 at 21; *see also* Dkt. 1162 at 18, is wrong as a matter of law.  As Amazon has previously explained, *see* Dkt. 1213 at 45–48 (rebutting Defendants' market rate canard), there is no requirement that the measure of harm must lie in the payment of "above-market" lease rates, *see Potomac Elec. Power Co. v. Elec. Motor & Supply, Inc.*, 262 F.3d 260, 265 (4th Cir. 2001).  A plaintiff may recover "kickback payments" as damages when it shows, as Amazon has done here, that "the total purchase price was inflated by the amount of the commission payments" *whether or not* the plaintiff introduces "evidence about the fair market value of the goods." *Hino Motors Mfg. U.S.A., Inc. v. Hetman*, 2022 WL 16709717, at *3 (E.D. Mich. Aug. 4, 2022).  Permitting Defendants to argue that Amazon must submit evidence of "market rates" to prove its injury—when in fact Amazon has no obligation to do so—would misstate the law and needlessly confuse and mislead the jury.  Fed. R. Evid. 403.

This evidence is also irrelevant.  Fed. R. Evid. 401–402.  Amazon is not pursuing damages based on the difference between the amounts it paid and "market rates," so any evidence about "market rates," including evidence concerning transactions that are unrelated to this case, is plainly irrelevant.  While Defendants may contend that evidence of "market rates" is relevant to showing that Amazon suffered no harm, that is wrong as a matter of law, as discussed above.

**XVI.   MIL No. 16 To Exclude Evidence And Argument About IPI's Ownership.**

Defendants may seek to draw attention to Mark Zuckerberg's financial stake in non-party

IPI, or to payments that are unrelated to the kickbacks at issue in this litigation and were paid to other IPI partners. *See, e.g.*, Amy Nelson (@amy_k_nelson), TikTok (Mar. 16, 2023), https://bit.ly/3n5Vc0n (referencing "Zuckerberg & IPI"); Dkt. 1294 (Exs. 113, 143, 233, 244, 245). Evidence concerning a *party's* "corporate structure" or investors "is not relevant" to this case. *BNJ Leasing, Inc. v. Portabull Fuel Serv., LLC*, 2022 WL 892747, at *7 (S.D. Miss. Mar. 25, 2022); *see also Covey v. Wal-Mart Stores E., L.P.*, 2017 WL 6459811, at *1 (W.D. Mo. Dec. 18, 2017) (similar); *Florilli Transp., LLC v. W. Express, Inc.*, 2016 WL 7043030, at *3 (W.D. Mo. Feb. 19, 2016) (similar). The same type of evidence about a *non-party* is even less relevant. Like evidence and argument concerning Amazon's financial status, this category of evidence would only serve to prejudice Plaintiffs by advancing an improper "David [vs.] Goliath" narrative. *Hurley*, 2018 WL 1077316, at *1. The Court should exclude this evidence under Rules 401 to 403.

## XVII. MIL No. 17 To Exclude Evidence And Argument About The Unintentional Destruction Of Casey Kirschner's Laptop.

The Court should preclude Defendants from referring to the inadvertent destruction of Casey Kirschner's laptop. Fed. R. Evid. 401–403. When Amazon uncovered Defendants' scheme in December 2019, it engaged its information security team, AWS Enterprise Protection ("EP"), to assist in conducting an internal investigation. As part of the investigation, ▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ *See* Dkt. 1169-1. ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ *Id.* ▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬ *Id.* Accordingly, evidence concerning the inadvertent destruction of Kirschner's laptop is completely irrelevant; moreover, it would also

unduly prejudice Amazon if put before the jury, as Defendants may falsely claim that Amazon intended to destroy this laptop or that doing so was part of some sort of attempt to hide relevant materials, despite the fact that Defendants have no evidence to support either unfounded theory. *See e.g.*, Dkt. 1294 (Exs. 586, 588, 589).

## CONCLUSION

The Court should grant Plaintiffs' motions in limine.


Dated:  March 31, 2023                          Respectfully submitted,

                                                */s/ Michael R. Dziuban*
Veronica S. Moyé (*pro hac vice*)               Elizabeth P. Papez (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP                     Patrick F. Stokes (*pro hac vice*)
2001 Ross Avenue, Suite 2100                    Jason J. Mendro (*pro hac vice*)
Dallas, TX 75201                                Claudia M. Barrett (*pro hac vice*)
Telephone:  (214) 698-3100                      David W. Casazza (*pro hac vice*)
Facsimile:  (214) 571-2900                      Amanda Sterling (*pro hac vice*)
vmoye@gibsondunn.com                            Michael R. Dziuban (Va. State Bar No. 89136)
                                                GIBSON, DUNN & CRUTCHER LLP
                                                1050 Connecticut Avenue, N.W.
                                                Washington, D.C. 20036-5306
                                                Telephone:  (202) 955-8500
                                                Facsimile:  (202) 467-0539
                                                epapez@gibsondunn.com
                                                pstokes@gibsondunn.com
                                                jmendro@gibsondunn.com
                                                cbarrett@gibsondunn.com
                                                dcasazza@gibsondunn.com
                                                asterling@gibsondunn.com
                                                mdziuban@gibsondunn.com

*Counsel for Plaintiffs Amazon.com, Inc. and Amazon Data Services, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 31, 2023, I electronically filed the foregoing with the Clerk

of Court using the CM/ECF system.  I will then send the document and a notification of such filing

(NEF) to the following parties via U.S. mail to their last-known address and by email, where noted:

CTBSRM, Inc.
6870 W 52nd Ave., Ste. 203
Arvada, CO 80002

Demetrius Von Lacey
2845 Des Moines Dr.
Fort Collins, CO 80525

2010 Irrevocable Trust
6870 W 52nd Ave., Ste. 203
Arvada, CO 80002

Sigma Regenerative Solutions, LLC
6870 W 52nd Ave., Ste. 203
Arvada, CO 80002

*s/ Michael R. Dziuban*
Michael R. Dziuban
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
Telephone:  (202) 955-8500
Facsimile:  (202) 467-0539
mdziuban@gibsondunn.com

*Counsel for Plaintiffs Amazon.com, Inc. and
Amazon Data Services, Inc.*