IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| AMAZON.COM and AMAZON DATA SERVICES, INC., <br>     Plaintiffs, <br> v. <br> WDC HOLDINGS LLC dba NORTHSTAR COMMERCIAL PARTNERS, et al. <br>     Defendants. <br><br> 800 HOYT LLC, <br><br>     Intervening Interpleader Plaintiff / Intervening Interpleader Counter - Defendant, <br><br> v. <br><br> BRIAN WATSON; WDC HOLDINGS LLC; BW HOLDINGS, LLC, <br><br>     Interpleader Defendants, <br><br> and <br><br> AMAZON.COM, et al. <br><br>     Interpleader Defendants / Interpleader Counter-Plaintiffs. | Civil Action No. 1:20-CV-484-RDA-IDD |

**WATSON DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION *IN LIMINE* TO EXCLUDE INADMISSIBLE, IRRELEVANT AND/OR UNDULY PREJUDICIAL EVIDENCE**

Defendants Brian Watson ("Mr. Watson"); WDC Holdings LLC, dba Northstar Commercial Partners ("Northstar"); Sterling NCP FF, LLC; Manassas NCP FF, LLC; and NSIPI Administrative Manager (collectively, the "Watson Defendants") respectfully submit this memorandum in support of their Motion *in Limine* to Exclude Inadmissible, Irrelevant, and/or

1

Unduly Prejudicial Evidence.

## I.  INTRODUCTION

Plaintiffs Amazon.com, Inc. and Amazon Data Services, Inc. (collectively, "Plaintiffs" or "Amazon") have alleged a widespread kickback scheme in connection with certain data center transactions in Northern Virginia. Pursuant to this Court's Order (Dkt. 1280), Plaintiffs recently disclosed the exhibits that they expect to or may use at trial to support these claims. Upon review of Plaintiffs' exhibit list, the Watson Defendants have identified several proposed exhibits that are inadmissible, irrelevant, and/or unduly prejudicial under the Federal Rules of Evidence, and thus should not be introduced into evidence as exhibits or, in some instances, through argument or testimony.[1]

## II.  ARGUMENT

A party may file a motion *in limine* seeking to exclude evidence prior to the commencement of trial. *See Luce v. United States*, 469 U.S. 38, 41 n.4 (1984) (recognizing that district courts have inherent authority to issue rulings "to manage the course of trials"). "The purpose of a motion *in limine* is to allow a court to rule on evidentiary issues in advance of trial in order to avoid delay, ensure an even-handed and expeditious trial, and focus the issues the jury will consider." *Intelligent Verification Sys., LLC v. Microsoft Corp.*, No. 2:12-CV-525, 2015 WL 1518099, at *9 (E.D. Va. Mar. 31, 2015). The evidence identified below is inadmissible, irrelevant, and/or unduly prejudicial, and should be excluded prior to trial in order to facilitate a fair and efficient proceeding.

### A.  Christian Kirshner's Post-Hoc Email to Himself

Plaintiff's exhibit P-0127 is highly unreliable inadmissible hearsay. *See* Ex. 1 (P-0129).

---

[1] The Watson Defendants do not concede that the remaining documents and exhibits identified by Amazon are admissible and do not waive the right to object to their admission or reference at a later time.

The document is an email from Christian Kirschner ("Christian") to himself, sent on April 26, 2020. The email contains a screenshot of a portion of a text exchange between Christian and Mr. Watson which occurred on October 20, 2019.[2] More importantly, the email contains what appears to be Christian's post-hoc recollection of the circumstances surrounding the exchange. *Id*. In the email, Christian makes several self-serving statements, stating, for example, that, "Brian was afraid and shaken up about the situation with Kyle" and "pulled me aside with Casey and said. [sic] we are brothers and need to protect each other." Ex. 1. Certain of these statements, such as the first quoted excerpt, are particularly problematic because there is nothing in the document to indicate that Christian had personal knowledge of how Mr. Watson was feeling or what he was thinking. Fed. R. Evid. 602. Plaintiffs have no legitimate or proper need to introduce this exhibit given that they have identified Christian as a witness who they intend to call live at trial, and they believe he plans to testify substantively. *See* Dkt. 1304. He can therefore be asked the matters he purports to describe in his email, and be cross-examined under oath.

      The April 2020 email is exactly the type of unreliable out-of-court statement that the rule against hearsay is intended to prohibit. Fed. R. Evid. 802. The email was authored months after the text exchange and alleged interaction it references. Notably, Christian appears to have composed and sent this email to himself only after Plaintiffs' case was filed and after Mr. Watson, Christian, and several other individuals had received target letters from the FBI. Such self-serving hearsay does not qualify as an exception to the rule against hearsay. *See United States v. Lentz*, 282 F. Supp. 2d 399, 410 (E.D. Va. 2002), aff'd, 58 F. App'x 961 (4th Cir. 2003) (to be admissible as a present sense impression "[l]ittle time or no time must exist between the occurrence and the

---

[2] The date of the message is not shown in this exhibit, but can be seen in other exhibits identified by Plaintiffs that contain the same text exchange, for example P-0024 (CK00100).

3

statement, which operates to negate the likelihood of a deliberate or conscious misrepresentation.")

Additionally, inclusion of the screenshot of the text messages is unnecessarily cumulative as these exact messages are contained in at least two of Plaintiffs' exhibits that the Watson Defendants do not seek to exclude at this time. Thus, a finding that this exhibit is inadmissible not only excludes inadmissible hearsay, but also streamlines the evidence in the case by removing superfluous and incomplete duplicate documents.

### B. Draft White Peaks Counterclaim

Plaintiff's exhibit P-0386 is an email and two attachments. One particular attachment, a draft counterclaim prepared by counsel for Will Camenson and Kyle Ramstetter, should be excluded from trial since it is inadmissible hearsay and unduly prejudicial. *See* Ex. 2 (P-0386, BHFS Dep. Ex. 23).[3] It was sent to counsel for Mr. Watson in the midst of settlement negotiations to resolve Mr. Watson's claims against Mr. Camenson and Mr. Ramstetter for usurpation of a corporate opportunity. *See* Dkt. 1160 (SUMF ¶ 61-79). The counterclaim was never filed. However, it is drafted in the form of an official complaint, signed by an attorney, and contains numerous unsupported and hearsay allegations of fraud against the Watson Defendants. Not only is the document as a whole hearsay, but it also contains numerous hearsay statements within its allegations. For example, the draft counterclaim asserts that, "Mr. Ramstetter and Mr. Camenson both confronted Mr. Watson with this information and reminded him that Amazon has strict policies against kick-backs." Ex. 2 ¶ 11.

Even if this document was used for a reason other than the truth of the allegations it contains, it should still be excluded pursuant to FRE 403 to avoid misleading the jury, confusion,

---

[3] The Watson Defendants reserve the right to object to the remainder of P-0386 on similar or other grounds.

and undue prejudice. *See Holmes v. South Carolina*, 547 U.S. 319, 326, (2006) (evidence may be excluded "if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury."). Here, any probative value of the draft is far outweighed by the confusion that this document will create due to the fact that it is styled as a complaint. The allegations in the counterclaim were not filed in a court, but made in the context of a contested negotiation involving a multi-million dollar claim against the contemplated counterclaim plaintiffs—individuals who had every motivation to leverage threats and false accusations for their own financial benefit. However, a jury viewing this document will not understand the context of such a settlement, and will only see an official court document. Because the counterclaim appears identical to a complaint which would be filed in court, and is even signed by a lawyer, the jury will undoubtedly give the statements contained within it undue weight. This danger is particularly salient because the allegations made in this document are similar to those at issue in the case. Admission of this document will cause the jury to overestimate the weight that should be given to the allegations in the counterclaim, and create confusion over whether these issues have been previously adjudicated. Accordingly, the Court should find that the draft counterclaim is inadmissible.[4] Moreover, Plaintiffs have indicated that they intend to call Mr. Ramstetter and Mr. Camenson to testify at trial. They will have the opportunity to ask them about the substance of the claims they purport to make in the draft counterclaim, thereby rendering the draft counterclaim unnecessarily cumulative.

---

[4] At this time, the Watson Defendants do not ask the Court to exclude reference to the counterclaim or testimony or other documents related to them. This request is limited only to the specific document identified. The Watson Defendants however reserve the right to object at a later time, including at trial, to documents and testimony relating to, referencing, or involving the counterclaim.

### C. <u>Watson Communications with Potential Investors</u>

The Court should preclude Plaintiffs from introducing into evidence Plaintiffs' exhibits P-0602 and P-0603, which are duplicate copies of communications between Mr. Watson and potential Chinese investors, because these documents are irrelevant. *See* Exs. 3 (P-0602); 4 (P-0603). Plaintiffs asked Mr. Watson about this document during his deposition. Based on these questions, the Watson Defendants tentatively believe that Plaintiffs will use these documents to suggest to the jury that Mr. Watson did something improper by seeking Chinese investment or by sharing information about the potential Amazon lease transactions with foreign investors. *See* Ex. 5 (B. Watson Dep. Excerpts, at 235:19-239:23).

These issues are unrelated to the claims asserted by Plaintiffs in their Third Amended Complaint. Plaintiffs do not have any claims alleging that the Watson Defendants breached any contracts with Amazon by seeking foreign investment or by disclosing certain information to potential investors, nor do they allege that these investors had any connection with the alleged kickback scheme. Therefore, these documents and any arguments relating to the documents do not have a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Fed. R. Evid. 401. Moreover, these documents and any arguments relating to the documents do not have any legitimate probative value; rather, their only use is as improper character evidence to argue that Mr. Watson committed other bad acts in relation to its dealings with Amazon, and is thus more likely to have engaged in the alleged kickback scheme. *See* Fed. R. Evid. 404.

Any minor legitimate probative value that Amazon may argue is outweighed by the danger of unfair prejudice, misleading the jury and confusing the issues. Fed. R. Evid. 403. If Plaintiffs are allowed to introduce these documents and make arguments relating to foreign investment and

alleged improper sharing of information, the result will be a sideshow of irrelevant arguments relating to the interpretation of contract provisions which are not at issue in this case and have no relation to the allegations of fraud or kickbacks. Such arguments will confuse the jury, waste time, and create improper inferences regarding the Watson Defendants' character.

### D. Mr. Watson's Suicide Attempt

The Court should exclude all evidence concerning, or references to, Mr. Watson's suicide attempt, including the email that Brian Watson sent on April 2, 2020 titled "Last Words" and a follow-up email he sent the next day. *See* Exs. 6 (P-0168); 7 (P-0259). Mr. Watson sent the "Last Words" email at 9:13 PM on April 2, 2020, and identified it as his "last communication." Counsel for Amazon asked Mr. Watson questions about this document during his deposition. Mr. Watson described the email as a "suicide note" and said that he had not looked at it since the day he wrote it because doing so would not be healthy for him. Despite this acknowledgement, counsel for Amazon proceeded to extensively, and insensitively, question Mr. Watson about it. *See* Ex. 5 (B. Watson Dep. Excerpts, at 347:7-356:6). An example of such an exchange is below at 348:4-7:

```
4          Q.    But you did not, in fact, take your own
5     life; correct?
6          A.    Well, sitting here today, I would say no,
7     I did not take my own life.
```

In response to counsel for Gibson Dunn asking if Mr. Watson had a "message" for everyone copied on the email, Mr. Watson testified at 350:20-351:11:

> 4      A.   As stated, it was probably the darkest day
> 5   of my life or one of the darkest days of my life. And so
> 6   when someone is sitting along a mountain road and writes
> 7   a Last Words email, I was just copying people or sending
> 8   it to people that I thought should know that I put a
> 9   shell in a chamber and trudged through 3 feet of snow and
> 10  put a cold barrel in my mouth and was about ready to do
> 11  that.

Admission of the email, and any other documents and testimony that reference the email or the fact that Mr. Watson contemplated suicide, would be unfairly prejudicial under FRE 403. Such unfair prejudice would substantially outweigh the probative value of the evidence. The email holds limited probative value—it was a suicide note sent at the darkest moment of Mr. Watson's life. It does not assist in establishing any of the elements of Amazon's claims—the email was sent after the events at issue in the complaint took place, and in the email Mr. Watson vehemently denies any wrongdoing. Based on the questioning at Mr. Watson's deposition, it is clear that Amazon may use it and his suicide attempt to harass and embarrass Mr. Watson, or to create an improper inference that him contemplating suicide is an indication of a guilty conscience or irrational behavior. Should this occur, it will confuse the issues and cause improper inferences and judgments about Mr. Watson's character and actions. Such uses are forbidden under FRE 403 and 404.

### E. SEC Investigation and Complaint

The Court should preclude Plaintiffs from asking any questions or eliciting any testimony

about or introducing any evidence regarding the ongoing Securities Exchange Commission ("SEC") investigation into Mr. Watson and the complaint that was filed. *See* Ex. 8 (SEC Press Release). The Watson Defendants anticipate that Plaintiffs may question Mr. Watson or other witnesses about this matter because they asked Mr. Watson about it at his deposition. *See* Ex. 5 (B. Watson Dep. Excerpts, at 39:14-40:25). The SEC matter is wholly unrelated to the claims asserted by Plaintiffs in their Third Amended Complaint. More specifically, the SEC complaint does not allege any facts relating to or involving the Amazon data center transactions at issue in the instant litigation, nor does it involve allegations of kickbacks. Therefore, the SEC's allegations, and the fact of the SEC investigation and complaint, do not have a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Fed. R. Evid. 401.

Furthermore, Plaintiffs cannot use Mr. Watson's allegedly false and misleading statements to investors to create an inference that Mr. Watson engaged in a fraudulent kickback scheme in the instant litigation or as evidence that Mr. Watson is not a credible witness. *See* Fed. R. Evid. 404(b) ("Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.").

Any probative value of the SEC's investigation and complaint is outweighed by the danger of unfair prejudice, misleading the jury and confusing the issues. Fed. R. Evid. 403; *United States v. Basham*, 561 F.3d 302, 327 (4th Cir. 2009) ("Unfair prejudice speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged."). Mr. Watson is vigorously defending against the SEC's allegations, but that matter is not before this Court. Should Plaintiffs be allowed to raise the SEC's allegations, it will certainly create a sideshow and confuse the issues the jury has to decide.

### F. Accusations Made By Patricia Watson

Finally, this Court should also exclude all documents, testimony, and other evidence that describes, references, or involves claims or accusations made by Patricia Watson, ex-wife of Brian Watson, relating to personal or professional behavior or conduct by Mr. Watson. Mr. Watson was married to Patricia Watson for 21 years. They share three children together. Ms. Watson had a 5% interest in Northstar from its founding in 2000 until her divorce from Mr. Watson was finalized. Ms. Watson also worked for a period of about 18 months as general counsel for Northstar, resigning in late 2017. Mr. Watson and Ms. Watson began the divorce process in late 2017, with the divorce being filed in January 2018. Ms. Watson admitted at her deposition that 2018 was a "contentious" year and that there was "a lot of distrust in [their] marriage" at the end, with Mr. Watson and Ms. Watson finalizing their divorce in November 2018. P. Watson Dep. Tr. 52:21-53:6; 205:8-19.

Plaintiffs have identified several documents as potential exhibits as well as designated excerpts of Ms. Watson's deposition (and listed her deposition as an exhibit) that involve, describe, or refer to claims made by Ms. Watson relating to improper spending, incorrect financial statements, campaign finance fraud, unrelated litigation involving Mr. Watson, and other behavior and conduct of Mr. Watson. For example, P-0548; P-0604; P-0605; P-0606; P-0607; P-0609; P-0626. First, this evidence should be excluded because it is not relevant to any of the claims Plaintiffs have alleged in their Third Amended Complaint.[5] Fed. R. Evid. 402. Many of these

---

[5] Many of the documents referenced are also inadmissible hearsay. For example P-0626 is a March 2020 email from Patricia Watson to Robyn Kirschner asserting that, "Brian was sued last week for gross neglect and mismanagement of an investment, including claims of bad faith, accounting issues and possible loan fraud. I just received the below and attached from another investor." Ex. 17. To the extent that any of Mrs. Watson's allegations are admissible at trial, they cannot be presented through inadmissible hearsay documents.

unsubstantiated accusations were made during or shortly after a contentious divorce process, during which matters such as the division of joint marital assets were being worked out. They have no bearing on the issues in this case, and have no tendency to prove the existence of a kickback scheme involving Mr. Watson. Second, evidence of allegedly bad behavior and conduct by Mr. Watson is inadmissible under FRE 404(b). Any attempts by Plaintiffs to introduce this evidence will be nothing more than thinly-vailed attempts to prejudice the jury by parading alleged additional bad acts into evidence. Third, any probative value is significantly outweighed by the danger of unfair prejudice, misleading the jury and confusing the issues. Fed. R. Evid. 403. Ms. Watson's opinions and accusations will create a sideshow and result in mini-trials regarding each of her claims. This would distract the Court, delay the proceedings, confuse the issues, and cause Mr. Watson to suffer unfair prejudice. These factors therefore substantially outweigh the limited probative value (if any) of this evidence.

### III.   CONCLUSION

For the reasons stated above, the Watson Defendants request that this Court grant the Watson Defendants' Motion *in Limine* to Exclude Inadmissible, Irrelevant, and/or Unduly Prejudicial Evidence.

|  |  |
|---|---|
| Dated: March 31, 2023 | BROWNSTEIN HYATT FARBER SCHRECK, LLP |

 By: s/ *Jeffrey R. Hamlin*
   Stanley L. Garnett (*pro hac vice*)
   Amanda K. Houseal (*pro hac vice*)
   Sara R. Bodner (*pro hac vice*)
   Leah Regan-Smith (*pro hac vice*)
   Rosa L. Baum (*pro hac vice*)
   Brownstein Hyatt Farber Schreck, LLP
   410 17th Street, Suite 2200
   Denver, CO 80202
   Telephone: (303) 223-1100
   Facsimile: (303) 223-1111
   sgarnett@bhfs.com
   ahouseal@bhfs.com
   sbodner@bhfs.com
   lregan-smith@bhfs.com
   rbaum@bhfs.com

   Jeffrey R. Hamlin (VA Bar No. 46932)
   George R. Calhoun (*pro hac vice*)
   James Trusty (*pro hac vice*)
   IFRAH PLLC
   1717 Pennsylvania Avenue NW, Suite 650
   Washington, DC 20006
   Telephone: (202) 524-4140
   Facsimile: (202) 524-4141
   jhamlin@ifrahlaw.com
   george@ifrahlaw.com
   jtrusty@ifrahlaw.com

   *Counsel for WDC Holdings LLC, Brian Watson, Sterling NCP FF, LLC, Manassas NCP FF, LLC, NSIPI Administrative Manager*

## **C E R T I F I C A T E**

      I hereby certify that on 31st day of March, 2023, a true and correct copy of the foregoing has been served upon all parties of record via the ECF system and via email.

/s/*Jeffrey R. Hamlin*
Jeffrey R. Hamlin