**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| AMAZON.COM and AMAZON DATA SERVICES, INC., | |
| Plaintiffs, | |
| v. | Civil Action No. 1:20-CV-484-RDA-IDD |
| WDC HOLDINGS LLC dba NORTHSTAR COMMERCIAL PARTNERS, et al. | |
| Defendants. | |
| 800 HOYT LLC, | |
| Intervening Interpleader Plaintiff / Intervening Interpleader Counter - Defendant, | |
| v. | |
| BRIAN WATSON; WDC HOLDINGS LLC; BW HOLDINGS, LLC, | |
| Interpleader Defendants, | |
| and | |
| AMAZON.COM, et al. | |
| Interpleader Defendants / Interpleader Counter-Plaintiffs. | |

**THE DEFENDANTS' JOINT MOTION IN LIMINE TO**
**EXCLUDE THE TESTIMONY OF AMAZON EXPERT RICHARD LEE**
**ON DAMAGES AND ECONOMIC HARM**

# TABLE OF CONTENTS

I.    Background ................................................................................................... 1

II.    Argument ................................................................................................... 4

       A.    Legal Standard ................................................................................ 4

       B.    Lee's Opinions on Economic Harm Should Be Excluded at Trial ....................... 5

            1.    Lee's Testimony Lacks Relevance ............................................ 6

            2.    Richard Lee's Expert Testimony Is Unreliable ....................................... 10

            3.    Lee's Report Contains Inadmissible Hearsay ........................................... 15

III.    Conclusion ................................................................................................... 15

## TABLE OF AUTHORITIES

**Cases**

*Baehr v. Creig Northrop Team, P.C.*,
   953 F.3d 244 (4th Cir. 2020) ................................................................... 8

*Bianco v. Globus Med., Inc.*,
   30 F. Supp. 3d 565 (E.D. Tex. 2014) ...................................................... 15

*Bowe v. Public Storage*,
   106 F.Supp.3d 1252 (S.D. Fla. 2015) ....................................................... 6

*Brown v. Gilner*,
   No. 1:10-cv-980, 2012 WL 4473086 (E.D. Va. Sept. 25, 2012) ............... 8

*Carstensen v. Chrisland Corp.*,
   442 S.E.2d 660 (Va. 1994) ....................................................................... 8

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
   509 U.S. 579 (1993)......................................................................... 4, 5, 9

*Dickerson V. TLC Laser Eye Ctr. Inst., Inc.*,
   493 Fed. App'x. 390 (4th Cir. 2012) ........................................................ 6

*Engebretsen v. Fairchild Aircraft Corp.*,
   21 F.3d 721 (6th Cir. 1994) .................................................................... 15

*Heinold v. Perlstein*,
   651 F. Supp. 1410 (E.D. Pa. 1987) ..................................................... 7, 10

*Hunt v. City of Portland*,
   599 Fed. App'x. 620 (9th Cir. 2013) ...................................................... 15

*Impress Commc'ns v. Unumprovident Corp.*,
   335 F.Supp.2d 1053 (C.D. Cal. 2003) ...................................................... 7

*ITT Hartford Grp., Inc. v. Va. Fin. Assocs., Inc.*,
   258 Va. 193, 520 S.E.2d 355, (1999)........................................................ 8

*Ivar v. Elk River Partners, LLC*,
   705 F.Supp.2d 1220 (D. Colo. 2010)........................................................ 7

*Klaiber v. Freemason Assocs., Inc.*,
   587 S.E.2d 555 (Va. 2003)........................................................................ 8

*Kumho Tire Co., Ltd. v. Carmichael*,
   526 U.S. 137 (1999)................................................................................. 4

*Lemberger v. Union Pac. R.R. Co.*,
   463 F. Supp. 3d 954 (D. Neb. May 29, 2020)........................................... 8

*Lloyd v. Smith*,
   150 Va. 132, 142 S.E. 363 (1928)............................................................ 8

*Long & Foster Real Estate, Inc. v. Clay*,
   343 S.E.2d 297 (Va. 1986)........................................................................ 8

*Lovato v. Burlington Northern and Santa Fe Ry. Co.*,
No. CIV.A. 00-RB-2584CBS, 2002 WL 1424599 (D. Colo. June 24, 2002) ...................... 14

*Maio v. Aetna, Inc.*,
221 F.3d 472 (3d Cir. 2000) ...................................................................................................6, 7

*McLaughlin v. Am. Tobacco Co.*,
522 F.3d 215 (2d Cir. 2008) ...................................................................................................... 6

*Nahigian v. Juno-Loudon, LLC*,
No. 1:09-cv-725 JCC, 2010 WL 3418179 (E.D. Va. Aug. 23, 2010) .................................... 8

*Oglesby v. Gen. Motors Corp.*,
190 F.3d 244 (4th Cir. 1999) .................................................................................................5, 10

*Pacific Coast Marine Windshields Ltd. V. Malibu Boats, LLC*,
No. 6:12-cv-33-Orl-28DAB, 2013 WL 12156465 (M.D. Fla., Jan. 4, 2013) ......................... 9

*Patel v. Anand, L.L.C.*,
564 S.E.2d 140 (Va. 2002) ........................................................................................................ 8

*Persinger v. Norfolk & W. Ry. Co.*,
920 F.2d 1185 (4th Cir. 1990) ................................................................................................... 4

*Prospect Development Co. v. Bershader*,
515 S.E.2d 291 (Va. 1999) ........................................................................................................ 8

*Riddick v. Norfolk S. Ry. Co.*,
No. 2:21-cv-297, 2022 WL 1180018 (E.D. Va. Apr. 20, 2022) .............................................. 4

*Robroy Industries–Texas, LLC v. Thomas & Betts Corp.*,
No. 2:15-cv-512-WCB, 2017 WL 1319553 (E.D. Tex. Apr. 10, 2017) ................................. 15

*Sedima v. Imrex Co.*,
473 U.S. 479 (1985) ................................................................................................................... 6

*Sommerfield v. City of Chicago*,
254 F.R.D. 317 (N.D. Ill. 2008) .............................................................................................. 15

*Sowell v. Butcher Singer, Inc.*,
926 F.2d 289 (3d Cir. 1991) ..................................................................................................7, 10

*State of W. Va. v. Moore*,
895 F. Supp. 864 (S.D. W. VA. 1995) ...................................................................................... 7

*Steele v. Hosp. Corp. of Am.*,
36 F.3d 69 (9th Cir. 1994) ......................................................................................................... 6

*Township of Marlboro v. Scannapieco*,
545 F.Supp.2d 452 (D.N.J. 2008) ............................................................................................. 7

*United States v. Forrest*,
429 F.3d 80 (4th Cir. 2005) ....................................................................................................... 4

Defendants Brian Watson ("Mr. Watson"); WDC Holdings LLC, dba Northstar Commercial Partners ("Northstar"); Sterling NCP FF, LLC; Manassas NCP FF, LLC; and NSIPI Administrative Manager (collectively, the "Watson Defendants"); Defendants Carleton Nelson and Cheshire Ventures, LLC (the "Nelson Defendants"); Defendant Casey Kirschner; and Defendant Rodney Atherton (collectively, "Defendants"), respectfully file Defendants' Joint Motion in Limine to Exclude the Testimony of Amazon Expert Richard Lee on Damages and Economic Harm. In support of their Motion, Defendants state as follows:

## I.     BACKGROUND

The centerpiece of Amazon's Third Amended Complaint is that the Defendants' alleged acts in connection with certain real-estate transactions in Northern Virginia violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–68, making Defendants liable for up to three times the quantum of alleged harm to Amazon. To recover on the RICO claims as well as various contract and tort claims Amazon alleges under state law, Amazon must prove that Defendants caused Amazon to incur some cost it otherwise would not have incurred or to suffer some financial loss it otherwise would not have suffered. To do so, Amazon plans to call Richard Lee as a trial witness with expertise in forensic accounting and valuation and to proffer his amended report as a trial exhibit. Dkt. 1293-1 (referencing Lee Report as Ex. P-0773). *See also* Dkt. 1259-1 (Expert Report of Richard Lee, CPA, CFF, ABV, ASA (Nov, 16, 2022)) (hereinafter, "Lee Report"); Ex. 1 (Amendment to the Expert Report of Richard Lee, CPA, CFF, ABV, ASA (Mar. 14, 2023)).

Lee's report addresses eleven real-estate transactions alleged in the complaint: nine build-to-suit deals otherwise known as Lease Transactions and two purchase transactions ("Purchase Transactions")—the White Peaks Transaction and the Blueridge Transaction. Lee's 348-page

1

report concludes that Amazon suffered $17.3 million in "economic harm" as a result of Defendants' alleged acts, a total that includes roughly $1.3 million related to the Lease Transactions and $16 million related to the Purchase Transactions. Lee Report ¶ 7.A.

Lee's analysis proceeds by identifying the transaction price for a specific property and deducting from that price the portion that Amazon alleges to be improper. In doing so, Lee admits that he did not apply his own judgment as to the value of the Lease Transactions, instead admitting that he carried out Amazon's instructions. Lee nonetheless calculated "economic harm" untethered from the properties Amazon obtained and the amounts Amazon paid for them, but by reference to amounts paid to various Defendants. Lee compounds this problem further by including additional and wholly irrelevant calculations: the purported "economic harm" and purported unjust enrichment through the date of litigation and into the future (Sections VI.B, VI.I, VI.J, Figure 2 (Total Potential Economic Harm) and Figure 12 (Total Economic Benefits likely to have been received but for discovery of the scheme)), even though he admits that there is no possibility that such future "economic harm" or future "unjust enrichment" will occur.

Lee further admits that he did not consider the actual value of the Lease Transactions or the Purchase Transactions. Lee's report and testimony is utterly silent as to property values and developer yield on cost rates in Northern Virginia during the time period in question and, thus, provides no support for finding that Defendants' alleged acts imposed a cost on Amazon that Amazon otherwise would not have incurred.

Amazon has admitted that it did not consider the market values of the properties and leases in its claims. Lee similarly admits that he did not consider the market values of the properties or rents at issue. *See* Depo. of Richard Lee, Dec. 19, 2022, Tr. at 75:22–25. With respect to the Lease Transactions, he admitted:

Q. But nowhere in those opinions do you give an opinion about whether the leases were at market; is that correct?

A. I have not been asked to analyze that.

With respect to White Peaks, he admitted:

Q. And did you do a market analysis of that property as part of your engagement?

A. No. That wasn't within the scope of my work.

*Id.* at 146:47.   Similarly, he testified:

Q. … I'm asking if you have any understanding of the market value of the property on the date it closed?

A. I do not.

Q. Okay.  And are you offering an opinion that the price was inflated for the White Peaks purchase?

A. I'm not offering an opinion around market values. What I am offering opinion on is that 6 million of the 15.6 million went to Mr. Watson and the 2010 Trust.

Q. Okay. But are you offering an opinion that there was -- that the price that Amazon paid was above market rate?

A. I am not offering any opinions around the market value of the property.

*Id.* at 148:19–149:9.

Finally, Lee admits that he has no knowledge of the market value of the Blueridge property.

*Id.* at 166:17–167:19. Nor does he purport to rely on the admissible opinion of any other expert who might have such knowledge or expertise.

Although Lee claimed repeatedly in his deposition that his report only addresses economic harm—and not Amazon's damages—Amazon has put the lie to this claim by relying on Lee's report for its damages claims against defaulting defendants. *See* Dkt. No. 1291 at 2.

3

## II.   ARGUMENT

### A.   Legal Standard

District courts have a duty to exclude irrelevant evidence, Fed. R. Evid. 402, and the discretion to exclude relevant evidence when its probative value is substantially outweighed by a danger that it will be unfairly prejudicial, confuse the issues, mislead the jury, cause undue delay, waste time, or be unnecessarily cumulative. Fed. R. Evid. 403.  Expert testimony, whether oral or written, is governed by Rule 702 of the Federal Rules of Evidence and the line of cases flowing from *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589–93 (1993). Under Rule 702, "[a] witness who is qualified as an expert by knowledge, skill, experience, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case."

Application of Rule 702 involves two primary inquiries: whether the proposed testimony is relevant and whether it is reliable. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999); *United States v. Forrest*, 429 F.3d 80 (4th Cir. 2005). In assessing relevance, the Court must decide whether the expert testimony is sufficiently tied to the facts of the case and whether it will help the jury resolve a factual dispute. *Daubert*, 509 U.S. at 591. Testimony on issues within the jury's knowledge and experience is unhelpful and, therefore, must be barred. *Persinger v. Norfolk & W. Ry. Co.*, 920 F.2d 1185, 1188 (4th Cir. 1990). To assist the trier of fact, expert testimony must "fit" the facts of the case by relating to the inquiry the jury must address. *Riddick v. Norfolk S. Ry. Co.*, Action No. 2:21cv297, 2022 WL 1180018, at *2 (E.D. Va. Apr. 20, 2022)

(slip copy) (citing *Daubert*, 509 U.S. at 591). Expert evidence is deemed to be reliable if grounded in "scientific, technical, or other specialized knowledge and not on belief or speculation" and "derived [from the use of] scientific or other valid methods." *Id.* at *2 (quoting *Oglesby v. Gen. Motors Corp.*, 190 F.3d 244, 250 (4th Cir. 1999)).

### B.  Lee's Opinions on Economic Harm Should Be Excluded at Trial.

The Court should not allow Lee's testimony on the quantum of damages—whether couched as economic harm or otherwise—because his conclusions are irrelevant and his methodology unreliable.

Lee's conclusions on damages are not relevant—that is, they will not aid the factfinder—because his analysis fails to account for certain material facts, is premised on assumptions that have no evidentiary support, and applies the incorrect legal standard. To the extent his analysis relies on simple math rather than the proper application of reliable methods and principles, Lee's analysis and resulting conclusions invade the province of the jury. As such, the testimony is inadmissible, regardless of whether the Court deems it to be lay opinion under Fed. R. Evid. 701 or expert opinion under Fed. R. Evid. 702.

Lee's testimony on damages is unreliable because (i) it fails to consider the applicable legal standard for damages on Amazon's claims, (ii) it is based on improper assumptions, and (iii) Lee is unqualified to give opinion evidence concerning the market value of the properties and leases in question. Further, allowing legally irrelevant testimony regarding economic harm would be highly prejudicial as it will be difficult for a jury to distinguish the proffered "harm" from what Amazon must actually prove—damages. Finally, Lee opines about what "economic harm" or unjust enrichment might have occurred if Amazon had not "discovered the scheme," but that testimony should be disregarded as irrelevant due to the complete lack of fit with the facts of this case. Lee

5

projects the harm and unjust enrichment that would accrue to Amazon and Defendants, respectively, through the term of the underlying contracts if Amazon had not intervened. And he employs those assumptions in the absence of *any* chance that the alleged harms and unjust enrichment will continue unabated until the contracts terminate. Given these circumstances, Lee's projections will be useless to the jury.

### 1. Lee's Testimony Lacks Relevance

Lee's report asserts that Amazon was harmed by the inclusion of various fees in the Lease Transactions, by allegedly inflated sale prices, and the payment of a rebate by KBC to Northstar. Because such testimony is irrelevant, and likely to be confusing, it must be excluded from trial.

The basis for Amazon's contention of harm is the amounts paid to Defendants.  There is no factual basis, however, to conclude that the market value of the rent would have fallen below the rents set forth in actual leases; Lee simply assumes that it would have fallen. Lee's report totally ignores the market-based approach to damages mandated by controlling federal and Virginia law.

A RICO plaintiff can only recover by showing that his or her property or business was damaged by the RICO violation. *Sedima v. Imrex Co.*, 473 U.S. 479, 496 (1985). *See also*, 18 U.S.C. § 1964(c); *Dickerson v. TLC Laser Eye Ctr. Inst., Inc.,* 493 Fed. App'x. 390, 394 (4th Cir. 2012). To prevail at trial, Amazon must prove that it suffered some concrete, particularized harm as a result of Defendants' alleged acts. A "'showing of injury' [under the RICO statute] requires proof of concrete financial loss, and not mere injury to a valuable intangible property interest." *Steele v. Hosp. Corp. of Am.*, 36 F.3d 69, 70 (9th Cir. 1994) (internal quotations omitted); *see also Maio v. Aetna, Inc.*, 221 F.3d 472, 483 (3d Cir. 2000); *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 227 (2d Cir. 2008) ("A plaintiff asserting a claim under 18 U.S.C. § 1964(c) must allege *actual*, quantifiable injury."). To show such a concrete financial loss, Amazon must provide

6

evidence that it paid above-market rates for the leases or purchases at issue.[1]  *See Bowe v. Pub. Storage*, 106 F. Supp. 3d 1252, 1265 (S.D. Fla. 2015) ("Plaintiffs must now show at summary judgment that there is evidence establishing a genuine issue of material fact that they in fact paid inflated prices for the [Public Storage tenant insurance program].").  As the court discussed in *Bowe*, a plaintiff in a real estate dispute could show a RICO injury by providing evidence of the extent to which the rents exceeded market value. 106 F. Supp. 3d at 1264. Because they did not do so in that case, the court granted summary judgment.  Other courts are in accord. *See Sowell v. Butcher Singer, Inc.*, 926 F.2d 289, 297–302 (3d Cir. 1991) (affirming directed verdict where plaintiff failed to show the difference between the price paid for a security and the security's true value where plaintiff had simply asserted that the stock was worthless); *Maio*, 221 F.3d at 494 (affirming dismissal of complaint where plaintiffs had not shown that they "paid too much for the health insurance they received"); *Ivar v. Elk River Partners, LLC*, 705 F. Supp. 2d 1220, 1235 (D. Colo. 2010) (finding no RICO injury because the amount plaintiffs paid for property was the value of the property); *Impress Commc'ns v. Unumprovident Corp.*, 335 F. Supp. 2d 1053, 1064–65 (C.D. Cal. 2003) (dismissing complaint where plaintiffs failed to demonstrate that paying insurance premiums constituted a RICO injury where there was no proof that "the benefits given were less than those purchased with the premiums"); *Heinold v. Perlstein*, 651 F. Supp. 1410, 1412 (E.D. Pa. 1987) (finding no RICO injury where plaintiff conceded that he did not pay more than fair market value for a diamond ring, but was told that the ring could be resold for a higher amount).

Courts consistently have found that no RICO injury exists in similar alleged kickback cases and barred plaintiffs from proceeding to trial on those claims.  *See, e.g.*, *State of W. Va. v. Moore*,

---

[1] Though it could have, Amazon did not show a RICO injury based on evidence that the Lease Transactions and Purchase Transactions were inflated based on the value of the property or that comparable properties were available at lower prices. *Bowe*, 106 F. Supp. 3d at 1265.

895 F. Supp. 864 (S.D.W. Va. 1995) (rejecting civil RICO claim based on kickbacks for lack of RICO injury); *Twp of Marlboro v. Scannapieco*, 545 F. Supp. 2d 452, 459 (D.N.J. 2008) (finding plaintiff lacked standing in RICO case predicated on alleged bribery because "amorphous injuries to a right to its employees' honest services are *not* 'concrete financial loss[es]' recoverable under RICO.") (emphasis in original). In a comparable context, the Fourth Circuit has concluded that alleged kickbacks and deprivation of honest services did not constitute concrete injury under the Real Estate Settlement Procedures Act (RESPA). *See Baehr v. Creig Northrop Team, P.C.*, 953 F.3d 244, 254 (4th Cir. 2020) ("[T]he deprivation of impartial and fair competition between settlement services providers—untethered from any evidence that the deprivation thereof increased settlement costs above market rates—is not a concrete injury under RESPA.").

The same is true as to Amazon's state law claims. Virginia law and federal civil law follow the "actual loss" rule for fraud and require damages as an element of the fraud. *ITT Hartford Grp., Inc. v. Va. Fin. Assocs., Inc.*, 258 Va. 193, 203, 520 S.E.2d 355, 361 (1999) (to support a claim of fraud, the plaintiff must prove resulting damage to the complaining party); *Lloyd v. Smith*, 150 Va. 132, 149, 142 S.E. 363, 367 (1928) ("the facts showing the fraud and the resulting damage must be alleged"); *Brown v. Gilner*, No. 1:10-cv-00980 (AJT/IDD), 2012 WL 4473086, at *4 (E.D. Va. Sept. 25, 2012). In Virginia common-law fraud cases, "[w]here the alleged fraud occurs in a commercial transaction involving the transfer of real property, [the Virginia Supreme Court has] defined the measure of damages as 'the difference between the actual value of the property at the time the contract was made and the value that the property would have possessed had the [fraudulent] representation been true." *Klaiber v. Freemason Assocs., Inc*, 587 S.E.2d 555, 558–59 (Va. 2003); *Nahigian v. Juno-Loudon, LLC*, No. 1:09CV725 JCC, 2010 WL 3418179, at *12 (E.D. Va. Aug. 23, 2010). Virginia courts follow this rule consistently. *See, e.g., Carstensen v.*

8

*Chrisland Corp.*, 442 S.E.2d 660, 666–67 (Va. 1994); *Patel v. Anand, L.L.C.*, 564 S.E.2d 140, 143 (Va. 2002); *Long & Foster Real Estate, Inc. v. Clay*, 343 S.E.2d 297, 300–01 (Va. 1986); *Prospect Dev. Co. v. Bershader*, 515 S.E.2d 291, 300 (Va. 1999). Lee, however, has chosen to ignore it.

"Testimony is relevant if it is 'sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute.'" *Lemberger v. Union Pac. R.R. Co.*, 463 F. Supp. 3d 954, 961–62 (D. Neb. May 29, 2020) (quoting *Daubert*, 509 U.S. at 591). Here, Lee's report lacks legal relevance because it is not tied to the facts and does not address the legal standards set out above. Expert testimony that addresses an incorrect legal standard is subject to exclusion. *See, e.g., Pac. Coast Marine Windshields Ltd. v. Malibu Boats, LLC,* 2013 WL 12156465 (M.D. Fla., Jan. 4, 2013) (excluding expert testimony based on incorrect legal standard).

Lee further contends that Amazon suffered harm from a broker rebate that was paid to Northstar. Lee Report at 40. Amazon did not claim this rebate as damages or even make any reference at all to the rebates in any of its multiple complaints or in any disclosure provided to the Defendants. The only evidence tying this alleged "harm" to the Complaint is Lee's report itself. Because Lee's analysis and conclusions fail to account for material facts just as they assume other facts for which there is little or no factual support, Lee's expert testimony on damages will be of little use to the jury.

Finally, Lee's testimony concerning alleged "economic harm" that would have occurred but for Amazon's alleged discovery of the scheme (Lee Report § VI.B, VI.J) is entirely irrelevant and divorced from the facts of the case. No one disputes that Amazon already has amended the leases at issue. The testimony of Lee pertaining to hypothetical future harm has no bearing on this case and could only serve to confuse the jury.

Indeed, Lee's testimony is not only irrelevant, but confusing and prejudicial in general.

The difference between damages and economic harm, while legally significant, is not readily apparent or easily explained to a lay person. Allowing testimony on an irrelevant measure of harm will serve to confuse the jury on the issue of damages and leads to the danger that the jury will improperly rely on this irrelevant measure.

### 2. Richard Lee's Expert Testimony Is Unreliable

Lee's expert testimony should be excluded for the additional, independent reason that it is unreliable. "A reliable expert opinion must be based on scientific, technical, or other specialized *knowledge* and not on belief or speculation." *Oglesby v. Gen. Motors Corp.,* 190 F.3d 244, 250 (4th Cir. 1999). Courts look to several factors as indicia of reliability, including "testing, peer review, evaluation of rates of error, and general acceptability" in the expert's field. *Id.* Here, Lee's opinions are not the product of any particularized knowledge or expertise, but upon acceptance of Amazon's belief as to what it should have paid in the underlying transactions. In simply assuming that any sums paid to the Defendants constitute "harm," Lee essentially assumes the ultimate issues in the case and then performs simple calculations that easily could be performed by the jury. Lee offers no scientific basis on which the jury could determine what amount Amazon might have paid for the same or similar properties in Virginia. Nor does Lee provide any such basis to conclude which, if any, portion of the fees paid to the various Defendants was improper. Lee's testimony is therefore likely to significantly confuse the jury and is unreliable because it is not based on actual scientific or technical standards.

To establish particularized, concrete harm caused by the acts alleged in the complaint, Amazon theoretically could proffer expert evidence that it paid above-market rates in connection with the Lease Transactions and Purchase Transactions. *See, e.g.*, *id.* at 1264; *see also Sowell v. Butch Singer, Inc.*, 926 F.2d 289, 297–302 (3d Cir. 1991) (affirming directed verdict for defendant

despite plaintiff's allegation that stock was worthless because plaintiff failed to establish the difference between the stock price and its true value); *Heinold v. Perlstein*, 651 F. Supp. 1410, 1412 (E.D. Pa. 1987) (finding no RICO injury where the plaintiff conceded that he did not pay more than fair market value for a diamond ring, but was told the ring could be re-sold for a higher amount). To make that showing, Amazon would have to establish market values as the plumbline against which Amazon's transaction payments may be measured. Without reliable market data, there is no scientific basis on which Amazon's expert could conclude that Amazon was harmed by excessive rents.

Lee admits, however, that he is not qualified to offer testimony as to real estate market value:

> Q. Okay. And are you offering an opinion on what the market value of the property was at the date of the closing?
>
> A. What do you mean by "market value"?
>
> Q. Sure. What a willing buyer and seller at arm's-length transaction would pay for the property on the date of the closing?
>
> A. Yeah, to reach an opinion on that, you'd need to perform a real estate appraisal and I'm not a real estate appraiser, so, yeah, no, I haven't done that.

*Id*. at 167:9–19. Rather than addressing the governing standards, Lee's opinions pertain to issues that are simply not before the Court. Indeed, Lee admits that his testimony is not based on "harm" to Amazon but on amounts paid to Defendants:

> In terms of the harm, I focused on the amounts that were -- are alleged to be ill-gotten gains by Mr. Watson and the 2010 Trust related to the transaction and Amazon's testimony and view that they would not have entered into the transaction had they known about the arrangement between the defendants.

Lee Tr. at 150:10–16. As a result, despite the governing standard, Lee's testimony is devoid of any market analysis or of any valuation whatsoever. Rather, his "economic harm" postulation is

driven by his assumption that: "Amazon, had it known the circumstances of the fee and who was going to receive a portion of it, … my understanding is Amazon would not have entered into this transaction." *Id*. at 165:5–11. From there, he essentially picks numbers out of a hat to conclude that some portion of the sales or lease proceeds constitute "economic harm." That "opinion" is not relevant or admissible—it merely parrots Amazon's allegations and offers Lee's take on what Amazon may have done if it had known of its allegations. In short, Lee's testimony based on his calculation does not implicate his specialized knowledge, but is within the jury's ken.

Lee's analysis and conclusions are unreliable because they rest on unsupported factual and legal assumptions supplied by Amazon. For example, Lee completely ignores the impact of Amazon's settlement with IPI and the renegotiation of the leases at issue. Similarly, without a shred of objective support, Lee implicitly assumes that, if the alleged wrongdoing had not occurred, Amazon would have been able to negotiate more favorable real-estate deals in Northern Virginia (a subject on which Lee has no expertise whatsoever). Lee similarly assumes that Amazon would not have entered into these transactions even though Amazon has chosen to retain the properties at issue and entered into one of the leases at issue after learning of the alleged "scheme." *See* Pls.' Mem. of Law in Opp'n at 24 ¶ 32. Similarly, Lee fails to consider or address the fact that the purchase prices paid in the sale transactions were all fully disclosed to Amazon and that it went forward anyway. Nor did Lee consider Amazon's internal approval process or any comparison to the actual value of the property retained by Amazon. Lee's failure to consider these facts renders his opinions unreliable.

There is no scientific or technical methodology supporting Lee's opinions on economic harm. With respect to "economic harm," Lee admits that his calculations were focused on the "amounts that were -- are alleged to be ill-gotten gains . . . ." How did Lee measure the harm to

Amazon from those ill-gotten gains?  He offers no guidance on that question.  Essentially, he picked the numbers out of a hat, crediting some but not others, and simply declaring that amounts paid to one of the Defendants constituted "economic harm." There is no sound scientific, technical, or legal basis for his doing so, and he offers none.

Similarly, with respect to his calculations of "unjust enrichment" or "disgorgement" amounts, Lee did not consider the sums expended by any of the Defendants or the work that they performed.  Rather, citing an inapplicable legal treatise, Lee contends that Amazon is entitled to some amount of "restitution," "disgorgement" or "unjust enrichment" all of which he treats interchangeably and without reference to any particular claim.   Lee Report at 87.  In calculating any such amount, Lee focused on "on the net funds received by each Defendant in connection with the Scheme…"  *Id.* This analysis is unreliable because it does not focus on a claim-by-claim basis and because Lee failed to consider the services provided and sum expended by the Defendants, which would be necessary for an analysis of unjust enrichment and disgorgement respectively.

As set forth in the Watson Defendants' motion for summary judgment, Amazon is not entitled to those equitable forms of relief in any case. With respect to unjust enrichment, Lee does not consider whether Defendants conferred a benefit on Amazon and provides no calculation of any such benefit. *See* Ex. 2 (Lee Tr. at 79:9–21). Under Virginia law, an unjust-enrichment plaintiff must satisfy a threshold requirement—proving that the defendant was "enriched" at the plaintiff's "expense." *See Hamm v. Scott*, 258 Va. 35, 38–39, 515 S.E.2d 773 (1999); *Kern v. Freed Co.*, 224 Va. 678, 680–81, 299 S.E.2d 363 (1983).  "One may not recover under a theory of implied [in law] contract simply by showing a benefit to the defendant ...." *Nedrich v. Jones*, 245 Va. 465, 476, 429 S.E.2d 201 (1993). An "enrichment of the defendant" does not alone "suffice since the defendant

will be deprived of the enrichment only if its retention is regarded as unjust." 1 George E. Palmer, The Law of Restitution § 1.7, at 41 (1978).  Lee's report totally fails to address the required second prong of the unjust enrichment analysis and is thus entirely unreliable and likely to confuse the jury.

Similarly, with respect to disgorgement, Lee did not address the Defendants' alleged "profits" as required, but the amount of proceeds received by them.  *See Liu v. SEC*, 140 S. Ct. 1936, 1943 (2020); *Cisneros v. Cost Control Mktg & Sales Mgmt of Va., Inc.,* 862 F. Supp. 1531, 1535 (W.D. Va. 1994) ("The plaintiff also bore the burden of proving a reasonable approximation of the amount of CCMV's profits passed through to the defendants.") (citing *SEC v. First City Fin. Corp., Ltd*., 890 F.2d 1215 (D.C. Cir. 1989)).  Lee did not, however, consider the costs to the Watson Defendants or other defendants or their actual profits, instead focusing only on the gross amounts of money transferred to them.  Because that is not the relevant test for disgorgement, his testimony is unreliable even if the Court were to determine that disgorgement is an appropriate remedy.

Rule 702 provides that an expert witness may give opinion testimony within his area of expertise so long as it will help the trier of fact to understand the evidence or determine a fact in issue. Fed. R. Evid. 702(a). Expert testimony will not aid the jury if based on speculation. *See, e.g.*, *Lovato v. Burlington N. and Santa Fe Ry. Co.*, Civ. A. 00-RB-2584CBS, 2002 WL 1424599 (D. Colo. June 24, 2002).  Because the proper measure of damages requires an analysis of market value, Lee's testimony as to economic harm is of no value to the jury.  Nor does such testimony have any scientific or technical basis.  Lee has nothing to say—and no expertise—on the relevant issue.  Rather, his testimony amounts to a summary of Amazon's preferred opinions and simple math.  Indeed, Lee offers no particular expertise to aid the jury in determining what damages or

harm Amazon suffered.  He simply assumes that any amount paid to certain Defendants damaged Amazon. Similarly, his testimony concerning unjust enrichment/disgorgement is not broken out by claim and fails to consider the benefits conferred on Amazon or the costs incurred by Defendants. For these reasons, his testimony should be excluded.

### 3.  Lee's Report Contains Inadmissible Hearsay

Lee's report should be excluded as hearsay. While Rule 703 of the Federal Rules of Evidence authorizes experts to present opinions based on inadmissible facts or data, the inadmissible information contained in expert reports is not automatically admissible by extension. *See* Fed. R. Evid. 703 advisory committee's note to 2000 amendments; *Hunt v. City of Portland*, 599 Fed. App'x. 620, 621 (9th Cir. 2013) (expert's written report "is hearsay to which no hearsay exception applies"); *Engebretsen v. Fairchild Aircraft Corp.*, 21 F.3d 721, 728 (6th Cir. 1994) (same); *Robroy Indus.-Texas, LLC v. Thomas & Betts Corp.*, Case Nos. 2:15-CV-512-WCB & 2:16-CV-198-WCB, 2017 WL 1319553, at *3 (E.D. Tex. Apr. 10, 2017) ("[T]he reports themselves are plainly hearsay and will not be admitted into evidence absent stipulation by the parties…"); *Worldwide Sorbent Prods., Inc. v. Invensys Sys., Inc.*, Civil Action No. 1:13-cv-252, 2014 WL 12596585, at *4 (E.D. Tex. Oct. 29, 2014) ); *Bianco v. Globus Med., Inc.*, 30 F. Supp. 3d 565, 570 (E.D. Tex. 2014) (citing cases); *Sommerfield v. City of Chicago*, 254 F.R.D. 317, 329 (N.D. Ill. 2008) (citing cases).  Lee's report, in addition, is full of double hearsay concerning Amazon's views and conclusions with respect to the merits.  Lee's opinions assume the truth of these out-of-court statements, then packages those statements as truth for his readers. This is exactly what the hearsay rules are intended to prevent. Thus, even if Lee is permitted to testify, his report is inadmissible and should be excluded.

### III.    CONCLUSION

WHEREFORE, Defendants respectfully ask the Court to enter an Order granting their

motion to exclude Richard Lee's oral and written testimony concerning damages and economic

harm.

*    *    *    *    *    *

Dated: March 31, 2023

BROWNSTEIN HYATT FARBER
SCHRECK, LLP

By: s/ *Jeffrey R. Hamlin*
\u2014\u2014\u2014\u2014\u2014\u2014\u2014\u2014\u2014\u2014\u2014\u2014\u2014\u2014\u2014\u2014\u2014\u2014\u2014\u2014\u2014
Stanley L. Garnett (*pro hac vice*)
Amanda K. Houseal (*pro hac vice*)
Sara R. Bodner (*pro hac vice*)
Leah Regan-Smith (*pro hac vice*)
Rosa L. Baum (*pro hac vice*)
Brownstein Hyatt Farber Schreck, LLP
410 17th Street, Suite 2200
Denver, CO 80202
Telephone: (303) 223-1100
Facsimile: (303) 223-1111
sgarnett@bhfs.com
ahouseal@bhfs.com
sbodner@bhfs.com
lregan-smith@bhfs.com
rbaum@bhfs.com

Jeffrey R. Hamlin (VA Bar No. 46932)
George R. Calhoun (*pro hac vice*)
James Trusty (*pro hac vice*)
IFRAH PLLC
1717 Pennsylvania Avenue NW, Suite 650
Washington, DC 20006
Telephone: (202) 524-4140
Facsimile: (202) 524-4141
jhamlin@ifrahlaw.com
george@ifrahlaw.com
jtrusty@ifrahlaw.com

*Counsel for WDC Holdings LLC, Brian
Watson, Sterling NCP FF, LLC, Manassas
NCP FF, LLC, NSIPI Administrative
Manager, and BW Holdings LLC*

17

**BURR & FORMAN LLP**

*/s/Rachel Friedman*
Rachel Friedman (VA Bar #93898)
420 North 20th Street, Suite 3400
Birmingham, AL 35203
Telephone: (205) 251-3000
Facsimile: (205) 458-5100
rfriedma@burr.com

J. Alex Little, IV (TN BPR No. #29858) (*pro hac vice*
222 2nd Ave. S., Suite 2000
Nashville, TN 37201
Telephone: (615) 724-3200
Facsimile: (615) 724-3290
alex.little@burr.com

*Attorneys for Carleton Nelson and Cheshire Ventures LLC*

*/s/ JD Thomas*
John-David H. Thomas (*Lead Attorney*) (Va. Bar No. 68714)
Andrew F. Solinger (*Pro Hac Vice*) (Tenn. Bar No. 036943)
HOLLAND & KNIGHT, LLP
511 Union St., Suite 2700
Nashville, TN 37219
Telephone: (615) 850-8596
Facsimile: (615) 244-6804
JD.Thomas@hklaw.com
Andrew.Solinger@hklaw.com

*Attorneys for Casey Kirschner*

*/s/ Julie S Palmer*
Julie S. Palmer
Harman, Claytor, Corrigan & Wellman
P.O. Box 70280
Richmond, VA 23255
Tel: (804) 762-8027
Fax: (804) 747-6085
jpalmer@hccw.com

*Counsel for Rodney Atherton*

18