# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF VIRGINIA
# ALEXANDRIA DIVISION

| | |
|---|---|
| AMAZON.COM, INC and AMAZON DATA SERVICES, INC., <br><br> Plaintiffs, <br><br> v. <br><br> WDC HOLDINGS LLC d/b/a NORTHSTAR COMMERCIAL PARTNERS, et al, <br><br> Defendants, <br><br>―――――――――――――――――― <br><br> 800 HOYT LLC, <br><br> Intervening Interpleader Plaintiff, <br><br> v. <br><br> BRIAN WATSON, et al., <br><br> Interpleader Defendants. | Case No. 1:20cv484 <br><br> **Hon. Rossie D. Alston, Jr.** <br> **Hon. Ivan D. Davis** <br><br><br><br> **DEFENDANTS' MOTION IN LIMINE TO PRECLUDE AMAZON FROM ADMITTING OR REFERENCING ITS CODE OF CONDUCT AT TRIAL** |

Defendants Carleton Nelson, Cheshire Ventures, LLC and Casey Kirschner (the filing "Defendants"), through undersigned counsel, state as follows in support of their Motion *in Limine* to exclude from trial any reference, evidence, or argument concerning Amazon's Code of Business Conduct and Ethics ("Code of Conduct") under both Fed. R. Evid. 402 and 403. Alternatively, Amazon should be judicially estopped from arguing the Code of Conduct gives rise to any enforceable obligations against Amazon employees such as Nelson and Kirschner.

50565183 v1

## I.     INTRODUCTION

Amazon has alleged a breach of contract as one of its claims in this case. And the company does have valid, enforceable contracts with some—but not all[all FN re Rod, Cheshire, etc]—of the Defendants. At the same time, Amazon (like many large corporations) has innumerable internal policy documents that communicate its preferences, expectations, and basic guiding principles to its employees and business partners. One of these is its Code of Conduct. Dkt. 156-8. The Code of Conduct is not a contract. It does not create any rights or obligations on Amazon's part, and it does not create any rights or obligations on the part of Amazon's employees. Although some employees and the company's board must "certify" compliance with the Code of Conduct, most do not—and none of the Defendants in this case fall in that category.

The fact that the Code of Conduct is *not* a contract shouldn't be controversial. Amazon has asserted in other litigation that its policies, including the Code of Conduct specifically, do not "**as a matter of law**," constitute "specific promises"—such promises, of course, being the *sin qua non* of contracts. In this case, because Amazon's evidence is weak, its views have changed, and it now suggests to this Court—and certainly will suggest to the jury—that the Code of Conduct *is* like a contract and *does* create legal obligations.

This motion seeks to bar these arguments—and evidence in support of them, including the Code of Conduct itself—because they are not relevant to any claim in this case. Because neither the Code nor evidence of its violation could support a cause of action at issue in this trial, there is no basis for their admission. And any marginal relevance would be substantially outweighed by the likelihood that such evidence would confuse the jury. Perhaps more importantly, such evidence and argument would violate basis principles of judicial fairness. For this reason, they should be barred by the doctrine of judicial estoppel. Amazon cannot tell one court that the Code of Conduct

is nothing but advisory guidance that creates no rights and contains no promises, and then turn around and tell another court that the opposite is true. The law prohibits such gamesmanship.

## II. BACKGROUND

Amazon has implemented a Code of Conduct. Dkt. 156-8. The Code of Conduct states, in part, that it "sets out basic guiding principles." *Id.* at 2 of 4. The Code of Conduct contains the following language:

> In performing their job duties, employees are expected to use their judgment to act, at all times and in all ways, in the best interests of Amazon.com.
>
> Employees should attempt to avoid conflicts of interest and employees who believe a conflict of interest may exist should promptly notify the Legal Department.
>
> Employees who violate the Code of Conduct will be subject to disciplinary action up to and including discharge.

*Id.* at 2-4. In contrast to this permissive language as to employees, the Code of Conduct states, in part, that "Amazon.com's Board of Directors *must* comply with the relevant provisions of this Code of Conduct, including conflicts of interest, insider trading and compliance with all applicable laws, rules and regulations." *Id.* at 4 of 4 (emphasis added).

On May 14, 2012, Nelson who was hired at Amazon on or about April 2, 2012, Dkt. 1178-2, signed a certification regarding both Amazon's Owner's Manual and Guide to Employment and the Code of Conduct, Dkt. 1178-3. Amazon did not sign this certification. *Id.* The Code of Conduct provides that the Legal Department will designate certain employees who, based on their level of responsibility or the nature of their work, will be required to certify periodically that they have read, understand, and complied with the Code of Conduct. Dkt. 156-8 at 4 of 4. Neither Nelson, nor Kirschner were ever so designated or required to do so. Dkt. 1178 ¶ 8.

In contrast, as a "condition of his employment," both Nelson and Kirschner were required at the commencement of their employment to enter into agreements with Amazon entitled

"Confidentiality, Noncompetition and Invention Assignment Agreement" (the "CNIAA"). Dkt. *See, e.g.,* 765 ¶ 327; Dkt. 1178-1, -2 at 3 (only identifying the CNIAA as such a condition).[1] Nelson's CNIAA acknowledged that it was the entire agreement of the parties relating to its subject matter, that it superseded any other agreements, and that it could not be amended or altered without a further signed writing of the parties. Dkt. 1178-1 ¶¶ 8, 12. Kirschner's contains the same language. No such amendment or alteration exists for either. *See, e.g.,* Dkt. 1178 ¶ 4. Nelson's letter confirming the terms of his employment also contains a provision requiring signatures by both parties to modify the terms of the CNIAA. Dkt. 1178-2 at 3. The Code of Conduct (or any other such policy that Amazon references) is not signed by both parties. Dkt. 156-8.

Both Nelson and Kirschner's CNIAA contain confidentiality provisions, *see* Dkt. 1178-2 ¶ 2(b)(i), and competition restrictions, *see* id. ¶ 3. For example, section 3 of Nelson's CNIAA contains the competitive restrictions found in the agreement, which Amazon described as being "designed to prevent a competitor from using Amazon's competitively sensitive confidential information against it." *Id.* ¶ 3; Case No. 2:12-cv-01911 (W.D. Wash.), Dkt. 11 at p. 4, ln. 16-17. These CNIAAs were form agreements created by Amazon management, and Amazon demanded that other employees joining the company around the same time period likewise sign it. *Amazon.com, Inc. v. Powers*, No. C12-1911RAJ, 2012 WL 6726538, at *8 (W.D. Wash. Dec. 27, 2012). The CNIAA provides that the obligations under Sections 2 and 3 of the CNIAA survive the agreement. Dkt. 1178-1 ¶ 4(c).

Amazon has asserted a variety of claims in this action against Defendants, including breach of contract claims against Nelson and Kirschner, Dkt. 765 ¶¶ 520-529, and a civil RICO claim

---

[1] Casey Kirschner was also required to enter into a similar agreement at the commencement of his employment with Amazon, although the terms of his CNIAA are different than those contained in the one signed by Nelson.

against all Defendants, for which one of the predicate offenses Amazon alleges is honest services fraud, *id.* ¶¶ 396-408. Amazon previously asserted a claim for breach of the relevant lease agreements against the Watson Defendants, *see* Dkt. 153 ¶¶ 491-499; however, Amazon dropped this claim when it last amended its complaint. *See* generally Dkt. 765. Amazon has *not* asserted a claim for breach of fiduciary duty under state law against Nelson or Kirschner. *See generally id.*

## II.  ARGUMENT

Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action. *See* Fed. R. Evid. 401. If the evidence is not relevant, it is inadmissible. *See* Fed. R. Evid. 402. Even if evidence is relevant, the Court may exclude such evidence if "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

### A. The Code of Conduct is not relevant to Amazon's breach of contract claim and references to it are likely to mislead and confuse the jury.

To prove a breach of contract claim a party must identify what provision in the contract was breached. *See Hard 2 Find Accessories, Inc. v. Amazon.com, Inc.*, 58 F. Supp. 3d 1166, 1171 (W.D. Wash. 2014). The only contracts Amazon identifies in its breach of contract count are Nelson and Kirschner's respective CNIAA's. *See* Dkt 765 ¶ 527. Amazon identifies three purported breaches in Paragraph 527 of its complaint: (1) "steer[ing] proprietary and competitively sensitive business information to co-conspirators"; (2) "[becoming] involved with the Blueridge Transaction, serving as a consultant for a counterparty on a transaction for Amazon . . .; and (3) "us[ing] the Atherton Trusts and Atherton Entities to co-opt business opportunities, interfere with the performance of Amazon personnel, or otherwise engage in conduct competitive with or

deleterious to the interests of the company." Dkt 765 ¶ 527. While Nelson and Kirschner dispute that Amazon will be able to prove they breached their respective CNIAA's the fact remains that they are the only contractual agreements Amazon can identify to establish any breach of contract. The Code of Conduct and its various terms play no role into the outcome of such a claim. When Nelson asserted the Code of Conduct was not a binding contract at summary judgment, Amazon did not actually dispute that fact. Rather Amazon equivocated stating only "Whether it forms a contract or not, the Code indicates (along with the fact of his employment) that Nelson owed duties of loyalty and honest services." Dkt. 1213 p. 85 of 94. At this point there is simply no dispute that the Code of Conduct is not an enforceable contract under which Amazon may recover in this action. Thus, it is not relevant to Amazon's breach of contract claims against Nelson and Kirschner, and unless there is another claim for which it is relevant, its admission is highly likely to confuse or mislead the jury.

**B.     Amazon's Code of Conduct does not create a fiduciary duty sufficient to serve as a basis for liability on an honest services fraud claim.**

Amazon clearly seeks to introduce its Code of Conduct in an effort to establish that Nelson and Kirschner owed Amazon some ethereal duty; the violation of which forms the basis for honest services fraud, which in turn can serve as a predicate act of Amazon's RICO claim.

Specifically, Amazon asserts as a predicate claim, that Nelson and Kirschner purportedly committed honest services fraud. As a basis for this claim they rely on purported "undisclosed conflicts of interest," *e.g.*, Dkt. 765 ¶ 90. However, under *Skilling v. United States*, 561 U.S. 358 (2010), an undisclosed conflict of interest does not result in honest-services fraud. 561 U.S. at 409-10. Similarly, Amazon's allegations about conflicts of interest do not support its wire-fraud theory. "[S]ilence as to a material fact (nondisclosure), without an independent disclosure duty, usually

does not give rise to an action for fraud." *Colton*, 231 F.3d at 899; see also *Rojas v. Delta Airlines, Inc.*, 425 F. Supp. 3d 524, 541-42 (D. Md. 2019) ("Nondisclosure and concealment cannot constitute mail or wire fraud unless the defendant has a duty to disclose and is silent or suppresses a material truth with the intent to deceive."). ."). In short, for Amazon to establish that Nelson and Kirschner had some duty to disclose the financial transactions at issue—and for Amazon's RICO claim to survive—it must shoehorn in its Code of Conduct.

However, Amazon's Code of Conduct does not transform silence into a federal crime. First, as noted above, the Code of Conduct is not a contract. Further, codes of conduct generally "express[] opinions as to what actions are preferable, as opposed to implying that all staff, directors, and officers always adhere to its aspirations." *Retail Wholesale & Dep't Store Union Local 338 Ret. Fund v. Hewlett-Packard Co.*, 845 F.3d 1268, 1276 (9th Cir. 2017).

Amazon cites to *United States v. Napout*, 963 F.3d 163 (2d Cir. 2020) to assert that a code of conduct does provide a basis for an honest services fraud claim. However, the circumstances here are quite unlike those in *Napout*. As explained in *Napout*, there are significant concerns of vagueness issues with respect to the honest services fraud statute. *Id.* at 182-83. The Second Circuit thus hung its hat on the fact that the code of ethics there "expressly provided that persons bound by those codes . . . had 'a fiduciary duty to FIFA [and] the confederations [such as CONMEBOL],' and were required to 'act with absolute loyalty' to them." *Id.* at 171, 185.

Here, however Amazon's Code of Conduct is different. It "sets out basic guiding principles." Dkt. 156-8 at 2. For example, it states that employees "should attempt to avoid conflicts of interest" and "are expected to use their *judgment*." *Id.* at 2-3 (emphasis added). When an employee errs, the consequences are "disciplinary," not legal, and progress "*up to and including discharge*." *Id.* at 4 (emphasis added). Such language does not impose a legal duty to disclose

facts, much less one punishable criminally. *See United States v. Safavian*, 528 F.3d 957, 964-65 (D.C. Cir. 2008) (overturning conviction under 18 U.S.C. § 1001 where "government failed to identify a legal disclosure duty except by reference to vague standards of conduct for government employees"). Indeed, such an interpretation of the wire-fraud statute would render it unconstitutionally vague. *See id.* at 964. And it would allow corporations to displace Congress as the drafter of the federal criminal code. *Cf. id.* (distinguishing "disciplinary action" from "criminal liability"); *U.S. ex rel. O'Donnell v. Countrywide Home Loans, Inc.*, 822 F.3d 650, 661 (2d Cir. 2016) (refusing to "convert" "breach of contract" into "criminal fraud").

As explained below, Amazon fully recognizes this about its Code of Conduct, having explicitly argued in other cases where the Code of Conduct is specifically at issue—and where it was beneficial for Amazon to so argue that "Amazon's policies . . . may foster a 'general atmosphere of fair treatment . . . [b]ut such atmosphere is not enough to modify the at-will relationship.' Amazon . . . intended its policies 'to guide the employment relationships, not create a binding process through a set of promises.'" *See Varghese v. Amazon.com, Inc. et al.*, Case No. 12-2-39303 (King County Superior Court, Oct. 10, 2014) (Defs. Motion for Summary Judgment at 13) (Attached as Exhibit A).

The express and mandatory language in *Napout* is not present in this case. And without such language, admission of Amazon's Code of Conduct, is irrelevant and highly likely to confuse and mislead the jury. Again, codes of conduct generally "express[ ] opinions as to what actions are preferable, as opposed to implying that all staff, directors, and officers always adhere to its aspirations." *Retail Wholesale & Dep't Store Union Local 338 Ret. Fund v. Hewlett-Packard Co.*, 845 F.3d 1268, 1276 (9th Cir. 2017). That is what Amazon's does. Such "business's ethics codes have been held to be nonactionable when they are inherently aspirational or do not imply

compliance." *See Flynn v. Exelon Corp.*, No. 19 C 8209, 2021 WL 1561712, at *9 (N.D. Ill. Apr. 21, 2021), *motion to certify appeal denied*, No. 19 C 8209, 2022 WL 267915 (N.D. Ill. Jan. 28, 2022). The difference between Amazon's Code of Conduct language and that of other employers in the tech space (and the one in *Napout* for that matter) who do in fact impose certain obligations is well documented. *See* Boles, *et. al.*, Whistleblowing in the Compliance Era, 55 Ga. L. Rev. 147, 180 (2020) (contrasting Apple and Facebook's codes of conduct that mandate reporting, with Amazon's which does not mandate it, only proving "internal guidelines for 'employees who wish to report violations of the Code of Conduct.'"). In *Hard 2 Find Accessories, Inc.*, Amazon made this very point to the district court, which the district court accepted, arguing that its' Seller's Code of Conduct, which used similar language to that at issue in the Employee Code of Conduct, was aspirational and merely encouraged, but did not require, reporting of certain conduct and did not require investigations by Amazon. 58 F. Supp. 3d at 1173; Case No. C14–0950 RSM (W.D. Wash.), Dkt. 15 at pp. 15-16, 17 of 33.

Because the portions of the Code of Conduct upon which Amazon relies to argue there are definitive obligations by Nelson are not mandatory, but rather aspirational and provide discretion to the employee, they cannot serve as the basis for an honest services fraud claim, and thus the Code of Conduct is inadmissible and their admission would confuse the jury.

**C.      Amazon should be judicially estopped from admitting the Code of Conduct and arguing it as a basis for liability in this case.**

Aside from the evidentiary reasons for excluding the Code of Conduct under FRE 402 and 403, there is another reason to exclude it and prevent Amazon from arguing it forms a binding obligation on it employees to act in a certain manner—it has argued the exact opposite in other cases to avoid liability and succeeded in those arguments.

Judicial estoppel precludes a party from adopting a position that is inconsistent with a stance taken in prior litigation." *John S. Clark Co. v. Faggert & Frieden, P.C.*, 65 F. 3d 26, 28 (4th Cir. 1995). The doctrine of judicial estoppel exists to "prevent litigants from playing 'fast and loose' with the courts—to deter improper manipulation of the judiciary." *Folio v. City of Clarksburg, W. Va.*, 134 F.3d 1211, 1217 (4th Cir. 1998) (citing *John S. Clark Co.*, 65 F.3d at 28-29). The Fourth Circuit uses a four-prong test:

> (1) [T]he party to be estopped must be advancing an assertion that is inconsistent with a position taken during previous litigation; (2) the position must be one of fact instead of law; (3) the prior position must have been accepted by the court in the first proceeding; and (4) the party to be estopped must have acted intentionally, not inadvertently.

*Id*. at 1217-18. Here all elements of judicial estoppel are satisfied. Amazon has asserted in other litigation matters when it is favorable to its interests that its internal employment policies, including explicitly the Code of Conduct, are binding obligations, certifications thereof notwithstanding, a factual not legal position. *See Missouri v. Amazon.com, Inc*., No. CV 19-13525(RMB/JS), 2020 WL 401842, at *3 (D.N.J. Jan. 24, 2020); *Varghese v. Amazon.com, Inc. et al*., Case No. 12-2-39303 (King County Superior Court, Oct. 10, 2014) (Defs. Motion for Summary Judgment, at 2). It has prevailed on this assertion in these cases. *Id.* Given the frequency Amazon makes this assertion in court, it is impossible that Amazon acted inadvertently. Thus, Amazon is judicially estopped from asserting that the Code of Conduct is a legally enforceable agreement, giving rise to legally enforceable duties, between Amazon and its employees, including Nelson.

Turning specifically to the *Varghese* matter, in 2014, Amazon employee Kivin Varghese filed a complaint against Amazon in King County Superior Court. Among other claims, Varghese claimed wrongful discharge (breach of specific treatment) when he was terminated following a dispute about a patent he filed during his tenure with the company. Amazon filed for summary

judgment "because Amazon's policies do not contain any such promises" but instead "contain language that Washington courts have repeatedly held constitutes general statements of company policy that are not actionable." *Varghese v. Amazon.com, Inc. et al.*, Case No. 12-2-39303 (King County Superior Court, Oct. 10, 2014), Defs. Motion for Summary Judgment, at 2 (attached as Exhibit A). One of the policies that Amazon states is not actionable in *Varghese* is its Code of Business Conduct and Ethics. *Id.* at 10.

In *Varghese* Amazon explained:

> Varghese alleges that Amazon violated the Code of Business Conduct and Ethics ("Code of Conduct"), the Anti-Harrassment Policy, and the Open Door Policy by retaliating against him . . . . Each of these policies at issue is stated or referenced in the Amazon Owner's Manual and Guide to Employment ("Manual"). Vargehese cannot establish that these policies contain any promise of specific treatment in specific situations.
>
> ***First***, Amazon's policies do not contain *any actionable promises*. Although the Code of Conduct . . . bar[s] retaliation . . . *general statements that an employee will not be retaliated against for bringing forth concerns do not constitute specific promises as a matter of law*. . . . Varghese relies heavily on the introductory paragraph of the Code of Conduct, which states that 'Amazon.com employees *should* always act lawfully, ethically, and in the best interests of Amazon.com." The Washington Supreme Court has held that "should" is discretionary and too indefinite to create any promise of specific treatment. Similarly, requirements that employees comply with laws and regulations 'can be read only as a general promise that fits squarely within what the *Thompson* court called 'merely . . . general statements of company policy and, thus, not binding' . . .
>
> * * *
>
> ***Finally***, Amazon conspicuously disclaimed any promise of specific treatment in specific situations. An employer is not bound by statements in an employee handbook or policy if the policies conspicuously state that they are 'general statements of company policy' and are not intended to modify the at-will relationship. Here, the Manual specifically states that it is 'not intended as a contract' and that employment is at will. Varghese also signed the New Employee Mandatory Certification, which provides: 'I agree that the Manual is not intended to be an express or implied contract; rather it is a general statement of Amazon.com personnel policies. I understand and agree that my employment is at will"

*Id.* at 10-12. Amazon continued to say:

> "Amazon did not breach any specific promise of specific treatment because no promise was made. Amazon's policies . . . may foster a 'general atmosphere of fair treatment . . . [b]ut such atmosphere is not enough to modify the at-will relationship.' Amazon . . . intended its policies 'to guide the employment relationships, not create a binding process through a set of promises.' Varghese's claim for breach of a specific promise of specific treatment must be dismissed." (Citations omitted.)

*Id.* at 13.

In sum, Amazon plainly argued in *Varghese* that the case must be dismissed because *no* policy contained or referenced in its Owner's Manual contains a "specific promise" that can be enforced via litigation. This is critical because Amazon argues here that Nelson and Kirschner's alleged violation of *various* policies – including the Code of Conduct and the Spending and Transaction policy - give rise to both *civil* and *criminal* liability. Specifically here, to plead a violation of the honest services fraud statute, Amazon stated that Nelson and Kirschner "owed fiduciary duties to Amazon . . . through their employment relationship (as contemplated by their CNIAAs, the Code of Conduct, and the Spending and Transaction Policy)." Dkt. 765 ¶ 404. Amazon has made numerous other similar allegations throughout this litigation:

> Casey and Carl should have been prompted to comply with their common law obligation in light of their CNIAA agreements, Amazon's Code of Conduct, and Amazon's Spending & Transaction Policy, *which prohibited the conduct at issue and required Amazon personnel to log conflicts of interest*."

*Id.* at ¶ 480 (emphasis added).

> Amazon had a right to rely on the representations made by its own employees and to assume that the concealed facts did not exist. Pursuant to their employment agreements and Amazon's policies, including Amazon's Code of Conduct and Spending and Transaction Policy, Nelson and Kirschner had an obligation to act, and were expected to be acting, in Amazon's best interests and to refrain from the unlawful conduct they committed."

*Id.* at ¶ 497 (emphasis added).

Nowhere is Amazon's attempt to convert these non-binding polices into legally enforceable obligations when it suits them more apparent than in response to Nelson's motion for summary

judgment. Amazon explicitly asserts that "the Code [of Conduct] indicates (along with the fact of his employment) that Nelson owed duties of loyalty and honest service." Dkt. 1213 at p. 69. Amazon rejected Nelson's undisputed statement of fact that "Nelson was not required to comply with the Code of Conduct or provide related certifications." *Id.* at p. 22. This is a critical statement with respect to honest services fraud because Amazon roots so much in polices, that per its explicit statements in *Verghese*, the basis for purported "trust" is rooted in "permissive" policies that do not impose any legally enforceable obligations of Nelson or Kirschner.

Amazon continued this reliance on the Code of Conduct at its 30(b)(6) deposition, stating things like: "We sign a code of conduct, and we are legally bound, duty-bound, ethically bound to honor that code of conduct" and that the Code of Conduct is "an enforceable obligation." Ex. A at 530-15-531:20. When pressed as to what other documents at Amazon created this purported legally enforceable conflict, Amazon's 30(b)(6) witness reiterated: "because the code of conduct says that employees or their family members cannot receive payments as part of their - their doing business on behalf of Amazon. That's what creates the conflict." *Id.* at 436:3-15. When asked if any other document creates this purported legally enforceable conflict, Amazon said: "In terms of defining what code of conduct or a conflict is, no."[2] *Id.* at 436:3-15.

As the above referenced discussion demonstrates, it is quite clear that Amazon's honest services fraud claim here is rooted entirely in the existence of and alleged enforceable obligations imposed by its Code of Conduct.

However, because "[j]udicial estoppel precludes a party from adopting a position that is inconsistent with a stance taken in prior litigation," *John S. Clark Co.*, 65 F. 3d at 28, and

---

[2] When asked a similar line of questioning at his individual deposition, Mr. Vonderhaar similarly stated that the "███████████████████████████████████" and ███████████████████████████. *Id.* at 48:21-42:20.

Amazon's present position is directly contrary to that taken in *Varghase* and other litigation when it is beneficial to Amazon, Amazon cannot do so. Thus, the Code of Conduct should be excluded and Amazon should be barred from arguing that the Code of Conduct gives rise to mandatory enforceable obligations on the part of Nelson, Kirschner, or any other Defendants in this action.

March 31, 2023   **BURR & FORMAN LLP**

/s/ Rachel Friedman
Rachel Friedman (VA Bar #93898)
420 North 20th Street, Suite 3400
Birmingham, AL  35203
Telephone: (205) 251-3000
Facsimile: (205) 458-5100
rfriedma@burr.com

J. Alex Little, IV (TN Bar No. 29858) (*pro hac vice*)
Emily H. Mack (TN Bar No. 31217) (*pro hac vice*)
222 2nd Ave. S., Suite 2000
Nashville, TN 37201
Telephone: (615) 724-3200
alex.little@burr.com
emack@burr.com

/s/ Adam R. Smart
Adam R. Smart (FL Bar No 1032572) (*pro hac vice*)
50 North Laura Street, Suite 3000
Jacksonville, Florida 32202
Telephone: (904) 232-7200
asmart@burr.com

*Attorneys for Carleton Nelson and Cheshire Ventures, LLC*

s/ John David Thomas
John-David H. Thomas
(Lead Attorney) (Va. Bar No. 68714)
Andrew F. Solinger (Pro Hac Vice) (Tenn. Bar No. 036943)
HOLLAND & KNIGHT, LLP
511 Union St., Suite 2700
Nashville, TN 37219
Telephone: (615) 850-8596
Facsimile: (615) 244-6804
JD.Thomas@hklaw.com

Andrew.Solinger@hklaw.com

*Counsel for Casey Kirschner*