UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| AMAZON.COM, INC. and AMAZON DATA SERVICES, INC., <br><br> Plaintiffs, <br><br> v. <br><br> WDC HOLDINGS LLC dba NORTHSTAR COMMERCIAL PARTNERS, et al., <br><br> Defendants. | CASE NO. 1:20-CV-484-LO-TCB |
| 800 HOYT LLC, <br><br> Intervening Interpleader Plaintiff / Intervening Interpleader Counter-Defendant, <br><br> v. <br><br> BRIAN WATSON, WDC HOLDINGS, LLC, and BW HOLDINGS, LLC, <br><br> Interpleader Defendants, <br><br> and <br><br> AMAZON.COM, INC., and AMAZON DATA SERVICES, INC., <br><br> Interpleader Defendants / Interpleader Counter-Plaintiffs. | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO VACATE PRELIMINARY INJUNCTION AND APPOINTMENT OF MARK A. ROBERTS AS RECEIVER**

**TABLE OF CONTENTS**

I.   Introduction ................................................................................................................. 1

II.  Factual and Procedural Background ........................................................................... 2

III. Discussion .................................................................................................................... 6

   a.   The Preliminary Injunction Must be Vacated because the Facts and Law Underlying its Imposition Have Significantly Changed .................................................. 6

   b.   The Injunction must be Vacated Because Amazon Can No Longer Meet the High Bar Imposed on Parties Seeking Injunctive Relief ....................................................... 8

      i.    Amazon is No Longer Likely to Succeed on the Merits ............................. 9

      ii.   Amazon Cannot Show that it Will Suffer Irreparable Harm Absent the Preliminary Injunction ................................................................................................. 10

      iii.  The Balance of Equities Weigh in Favor of Vacatur of the Injunction .... 12

      iv.   There is no Public Interest to be Served by Keeping the Injunction in Place ............................................................................................................................ 13

   c.   The Court Should Vacate the Receivership Order ................................................ 13

   d.   The Court Should Order Payment of the Injunction Bond ................................... 14

IV.  Conclusion ................................................................................................................ 15

## TABLE OF AUTHORITIES

**Cases**

*Agostini v. Felton*,
  521 U.S. 203 (1997) ................................................................................................................ 6

*Amazon.com Inc. v. WDC Holdings, LLC*,
  No. 20-1743, 2021 WL 3878403 (4th Cir. Aug. 31, 2021) ................................................. 3, 8

*Amoco Production Co. v. Village of Gambell, Alaska*,
  480 U.S. 531 (1987) .............................................................................................................. 12

*Diretto v. Country Inn & Suites by Carlson*,
  No. 1:16-CV-1037 (JCC/IDD), 2016 WL 4400498 (E.D. Va. Aug. 18, 2016) ...................... 11

*Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*,
  527 U.S. 308 (1999) ................................................................................................................ 7

*In re Microsoft Corp.*,
  333 F.3d 517, 525 (4th Cir. 2003) .......................................................................................... 8

*Munaf v. Geren*,
  553 U.S. 674 (2008) ................................................................................................................ 6

*Real Truth About Obama, Inc. v. Fed. Election Comm'n*,
  559 U.S. 1089 (2010) ......................................................................................................... 9, 11

*Real Truth About Obama, Inc. v. Fed. Election Comm'n*,
  575 F.3d 342 (4th Cir. 2009) ............................................................................................. 9, 11

*Rockwell Graphic Sys., Inc. v. DEV Indus., Inc.*,
  91 F.3d 914 (7th Cir. 1996) .................................................................................................... 6

*Sweeton v. Brown*,
  27 F.3d 1162 (6th Cir. 1994) .................................................................................................. 6

*Thompson v. U.S. Dep't of Housing & Urban Dev.*,
  404 F.3d 821 (4th Cir. 2005) .................................................................................................. 6

*Tigges v. Northam*,
  473 F. Supp. 3d 559 (E.D. Va. 2020) ..................................................................................... 9

*U.S. v. Swift & Co.*,
  286 U.S. 106 (1932) ................................................................................................................ 6

*Variable Annuity Life Insurance Company v. Coreth*,
  535 F.Supp.3d 488 (E.D. Va. 2021) ..................................................................................... 10

*Weinberger v. Romero-Barcelo*,
  456 U.S. 305 (1982) .............................................................................................................. 13

*Williams v. Branch Banking & Tr. Co.*,
  No. 3:16-CV-00843-JAG, 2017 WL 2999973 (E.D. Va. Mar. 8, 2017) .............................. 6, 8

*Winter v. Natural Resources Defense Council, Inc.*,

555 U.S. 7 (2008) ............................................................................................................... 19

**Rules**

Fed. R. Civ. Pro. 60(b) ........................................................................................................... 6

Fed. R. Civ. Pro. 65(c) ......................................................................................................... 14

**Other Authorities**

Security for Interlocutory Injunctions under Rule 65(c): Exception to the Rule Gone Awry
   46 Hastings L. J. 1863, 1864 (1995) ............................................................................ 14

Defendants Brian Watson ("Watson"), WDC Holdings LLC, dba Northstar Commercial Partners ("Northstar"), Sterling NCP FF, LLC, Manassas NCP FF, LLC, and NSIPI Administrative Manager (collectively, the "Watson Defendants"), by and through undersigned counsel, hereby move the Court to vacate the preliminary injunction set forth in it order entered on June 6, 2020 (Dkt. 57) and its order appointing Mark A. Roberts (the "Receiver") as Receiver, entered on November 23, 2021 (Dkt. 433).

In accordance with this Court's local rules, counsel for the Watson Defendants contacted opposing counsel on April 10, 2023, to meet and confer regarding the instant motion. Counsel for the Watson Defendants communicated with counsel for Plaintiffs, who stated that Plaintiffs oppose the requested brief.

I.   **Introduction**

For the past three years the Watson Defendants have been subject to a preliminary injunction requiring, among other things, that they escrow over $22.25 million. In addition to the restrictions imposed by the preliminary injunction, the Court appointed a Receiver, requiring Defendant Brian Watson ("Mr. Watson") to relinquish control of his assets. The Court's appointment of the Receiver has dramatically disrupted Mr. Watson's life. Mr. Watson has been entirely deprived of access to his finances for approximately one year and five months. As a result, Mr. Watson's personal and professional life have been held hostage by the extraordinary injunction issued against him.

Since its imposition, the facts and circumstances underlying the preliminary injunction have dramatically shifted, revealing that Amazon's allegations were both over-stated and factually unsupported. This Court recently granted summary judgment to the Watson Defendants on Counts I-III, VII and VIII, of Amazon's Complaint (leaving only a tortious interference and a civil

1

conspiracy related to the tortious interference claim).  The injunction issued by the Court was ancillary to Amazon's equitable claims, which are no longer in the case. Given these circumstances, there is no longer a basis for the continued imposition of the preliminary injunction or the receiver granted to enforce it.

Accordingly, the Watson Defendants respectfully request the Court (1) immediately terminate the Preliminary Injunction; (2) lift the receivership in a controlled fashion so as to minimize the harm that the receivership has imposed already; and (3) pay the injunction bond to the Watson Defendants without prejudice to any potential future claims that may be brought.

## II. Factual and Procedural Background

On April 27, 2020, Plaintiffs Amazon.com, Inc. and Amazon Data Services, Inc. (collectively "Amazon") filed a motion requesting an *ex parte* temporary restraining order and preliminary injunction against the Watson Defendants. Dkt. 9. Amazon sought eight forms of relief, including requiring the Watson Defendants to escrow assets totaling over $25 million. *Id.* at 4. Relying on the declaration and Verified Complaint submitted by Amazon, the Court granted the *ex parte* TRO against the Watson Defendants on April 27, 2020. Dkt. 16. On May 18, 2020, Plaintiffs submitted several supplemental declarations in support of preliminary injunction. Dkt. 41-44. The Court set a show cause hearing on the preliminary injunction for May 21, 2020. Dot. 48.

In the preliminary injunction hearing, Plaintiffs' counsel repeatedly emphasized that the Complaint was verified and that all declarations submitted were made under oath and on personal knowledge. *See* Dkt. 48. Based on these representations, the Court granted the preliminary injunction, requiring, among other things, that the Watson Defendants escrow $25 million. Dkt.

57.[1]  A portion of this order was appealed to the Fourth Circuit, who affirmed the injunction on the basis that "the district court had authority to preserve the status quo pending judgment if Amazon asserted a cognizable claim to specific Northstar assets." *Amazon.com, Inc. v. WDC Holdings LLC*, No. 20-1743, 2021 WL 3878403 at * 5 (4th Cir. Aug. 31, 2021) (unpublished).

Because the Watson Defendants did not have the funds to comply with the escrow requirement imposed by the preliminary injunction, the Court held them in contempt. Dkt. 413, and appointed the Receiver to take control of all Mr. Watson's personal and business assets. Dkt. 433. Mr. Watson has complied with the receiver's requests and given the receiver and his team full access to his accounts and assets. Dkt. 495 ¶ 6. Reports filed by the Receiver have confirmed

---

[1] The preliminary injunction ordered that:
1. Defendants Sterling NCP FF LLC, Manassas NCP FF LLC, NSIPI Administrative Manager LLC, WDC Holdings LLC dba Northstar Commercial Partners, and Brian Watson promptly place $3,845,009.00 USD in an escrow account;
2. Defendants Sterling NCP FF LLC, Manassas NCP FF LLC, NSIPI Administrative Manager LLC, WDC Holdings LLC dba Northstar Commercial Partners, and Brian Watson secure funds totaling $21,250,000.00 and promptly place those funds in an escrow account;
3. Defendants White Peaks Capital LLC and NOVA WPC LLC shall place in an escrow account $12,730,000.00 USD;
4. Defendant Villanova Trust shall place in an escrow account $5,112,983.84 USD;
5. Defendants immediately return any and all Amazon confidential or otherwise non-proprietary information in their possession except as necessary for use in the pending case;
6. Defendants are enjoined from disclosing, selling, transferring, publishing or otherwise using any Amazon confidential or otherwise non-public proprietary information, except where Defendants deem the disclosure, publication, or use of such information necessary to litigate;
7. Defendants are enjoined from spoliating, concealing, wasting, transferring, or otherwise disposing of documents, records, communications, files or other evidence or assets used in, or obtained from, any activities relating to Defendants' real property transactions in Virginia since 2018; and
8. Defendants are enjoined from disrupting, through unauthorized access to premises, accounts, or other property, personnel, or deliveries associated with Plaintiffs' real estate developments in this District and ongoing business activities at such developments.

what the Watson Defendants were not hiding millions of dollars and did not have anywhere near enough funds to comply with the escrow requirement.

On July 31, 2020, Plaintiffs filed an Amended Complaint. Dkt. 100. This Complaint was corrected shortly thereafter to include the verification on personal knowledge of Gibson Dunn attorney, Travis Andrews. Dkt. 115. The First Amended Corrected Verified Complaint was accompanied by the Declaration on personal knowledge of Gibson Dunn attorney Lora E. MacDonald in Support of Plaintiffs' Verified First Amended Complaint. Dkt. 106-11. The Complaint was then amended a second time on September 18, 2020. Dkt. 150. The Second Amended Verified Complaint was verified on personal knowledge by Gibson Dunn attorney, Luke Sullivan, and accompanied by a Declaration made on personal knowledge of Lora E. MacDonald. Dkt. 150; 155-163. With the discovery deadline looming, Plaintiffs filed a motion on April 2, 2022, to yet again amend the operative complaint. Dkt. 618. Among other things, the proposed Amended Complaint no longer seeks prejudgment attachment, and drops the claim for preliminary injunctive relief. Dkt. 617 at 11

On March 25, 2022, Plaintiffs filed a motion to withdraw the verifications of the Verified Complaint, First Amended Corrected Complaint, and Second Amended Complaint as well as Lora MacDonald's Declarations in support of each of those complaints. Dkt. 587. Additionally, Plaintiffs moved to withdraw the Declaration of Lora MacDonald in support of the Motion for *ex parte* TRO and the two additional Declarations of Lora MacDonald submitted in the application for preliminary injunction. *Id.* Plaintiffs admitted that these verifications and declarations were false when made, and that the declarants never had personal knowledge of the facts within. Dkt. 588. The Court granted this motion at a hearing held on April 8, 2022. Dkt. 648.

Following extensive discovery and briefing by the parties, on April 6, 2023, the Court issued an order addressing the Defendants' Motions for Summary Judgment. Dkt. 1376. The Court dismissed Amazon's RICO Claim (Count I), concluding that (1) Amazon failed to provide any evidence that it suffered any cognizable injury to its business or property as a result of the alleged kickback scheme. *Id.* at 19; and (2) the undisputed material facts failed to establish that the actions of the various Defendants constituted an enterprise – a requisite element of Amazon's RICO claim. *Id.* at 19-21.

Next, the Court dismissed Amazon's fraud claim (Count III) finding that Amazon failed to put forth sufficient evidence to establish either that the "market value of the properties involved in the White Peaks Transaction and Blue Ridge Transaction was anything other than what it paid for those properties." *Id.* at 22. Similarly, the Court found that Amazon had failed to put forth "any evidence of market value with respect to the nine lease transactions." *Id.* The Court concluded that Amazon's failure to put forth "any evidence concerning the value of the properties at the time each transaction closed [was] fatal to its fraud claim." *Id.* at 23.

Finally, the Court turned to Amazon's claims for equitable relief – unjust enrichment (Count VII) and Conversion (Count VIII). The Court began its analysis by recognizing that under Virginia law, equitable remedies are not available if a plaintiff has an adequate remedy at law. *Id.* at 36 (quoting *Williams v. Branch Banking & Tr. Co.*, No. 3:16-Cv-00843-JAG, 2017 WL 2999973, at *1 (E.D. Va. Mar. 8, 2017)). With regard to Amazon's claim for conversion, the Court noted that the property at the center of the claim was money, for which damages were an adequate and available remedy. *Id.* at 36. With regard to Amazon's claim for unjust enrichment, the Court concluded that Amazon's equitable claim for relief was precluded by the existence of enforceable contracts covering the same subject matter – specifically, the lease agreements that Amazon

5

affirmed in February of 2022. *Id.* at 37.  Because Amazon had an adequate remedy at law for both equitable claims, the Court concluded that dismissal was warranted.

### III.  Discussion

The imposition of a preliminary injunction is an "extraordinary and drastic" measure that may never be awarded as of right. *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008).  Rather, the party seeking the injunction bears the heavy burden of providing a clear showing that (1) it will succeed on the merits; (2) it is likely to be harmed absent preliminary relief; (3) the balance of equities tips in the party's favor; and (4) a preliminary injunction is in the public interest. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). Courts are vested with "inherent power to modify injunctions they have issued." *Thompson v. U.S. Dep't of Housing & Urban Dev.*, 404 F.3d 821, 825 (4th Cir. 2005).  Modification is appropriate when "in light of changes in the law or the circumstances," *Id.* (quoting *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994)), the court's order is no longer equitable. *See Agostini v. Felton*, 521 U.S. 203 (1997); *see also U.S. v. Swift & Co.*, 286 U.S. 106, 114 (1932) ("We are not doubtful of the power of a court of equity to modify an injunction in adaption to changed conditions.");  *Rockwell Graphic Sys., Inc. v. DEV Indus., Inc.,* 91 F.3d 914, 920 (7th Cir. 1996) ("[A] court may modify an injunction to adapt to changed circumstances."); Fed. R. Civ. Pro. 60(b).

### a. The Preliminary Injunction Must be Vacated because the Facts and Law Underlying its Imposition Have Significantly Changed.

This Court has previously considered, and denied, a Motion to Vacate the preliminary injunction filed by the Watson Defendants. In doing so, this Court found that vacatur was not warranted given that (1) the evidence relied upon in the Watson Defendants' Motion was not the same evidence that formed the basis of the injunction; and (2) the mandate of the Appellate Court

required denial of the Motion to Vacate. Dkt. 1075 at 6-7. However, given the factual and legal changes that have occurred since the issuance of that decision, a different result must occur here.

This Court's prior reasoning should not apply to the instant Motion to Vacate for two reasons. First, the factual findings underlying the imposition of the preliminary injunction have been overturned by this Court's order granting summary judgment on the majority of Amazon's claims. Second, vacatur directly complies with the mandate of the Fourth Circuit that the issuance of an injunction is proper only when the plaintiff is asserting a cognizable claim for equitable relief involving the defendant's assets.

The Court's Injunction was largely based on allegations that the Watson Defendants engaged in a kickback scheme that caused significant financial harm to Amazon and violated the RICO Act. Neither allegation has proven to be true. To the contrary, Amazon's claims have since been dismissed on summary judgment. When considered in light of the fact that Amazon's original petition for injunction was largely based on questionable, now-withdrawn declarations, the factual findings upon which the preliminary injunction was premised no longer suffice for the imposition of such an extraordinary remedy.

Further, vacatur of the injunction is necessary in order to uphold the mandate of the Fourth Circuit. Following the imposition of the preliminary injunction, the Defendants filed an appeal in the Fourth Circuit, arguing that the District Court lacked equitable authority to issue the injunction. The Watson Defendants relied on the Supreme Court's decision in *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999), for the proposition that a district court lacks equitable authority to issue a preliminary injunction freezing assets in an action for money damages where no lien or equitable interest in the assets is claimed. This argument was rejected by the Fourth Circuit which opined that in cases in which the plaintiff seeks money damages, the

7

district court retains authority to issue an injunction if the plaintiff asserts a cognizable cause of action for equitable relief involving assets of the defendant. *Amazon.com, Inc. v. WDC Holdings LLC*, No. 20-1743, 2021 WL 3878403, at *5 (4th Cir. Aug. 31, 2021). Applying this principle to the preliminary injunction rendered by this Court, the Fourth Circuit concluded that there was equitable authority to issue the injunction given that Amazon asserted cognizable claims for equitable relief: (1) unjust enrichment; and (2) conversion. *Id.* at *7.

Amazon's claims for unjust enrichment and conversion were dismissed pursuant to this Court's order. Dkt. 1376 at 38. Among other things, this Court determined that Amazon was not seeking relief pertaining to any specific property. Accordingly, the equitable authority underlying the imposition of the injunction no longer exists. Under these circumstances, vacatur of the preliminary injunction is required to ensure compliance with the mandate of the Fourth Circuit – i.e., the principle that the authority to issue the injunction was premised on Amazon's cognizable claims for equitable relief. Without the prerequisite claims for equitable relief, the injunction cannot stand.

  **b. The Injunction must be Vacated Because Amazon Can No Longer Meet the High Bar Imposed on Parties Seeking Injunctive Relief.**

In *Winter v. Natural Resources Defense Council, Inc.*, the Supreme Court discussed the high standard a movant must satisfy when seeking a preliminary injunction: (1) the plaintiff is likely to succeed on the merits; (2) the plaintiff will suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in the plaintiff's favor; and (3) an injunction is in the public interest. 555 U.S. at 20. If any one of these factors is no longer satisfied, the injunction must be vacated. *See id.* The standard is even more exacting when the relief sought is mandatory rather than a preservation of the status quo. *In re Microsoft Corp.*, 333 F.3d 517, 525 (4th Cir. 2003). Given the changes in circumstances that have occurred since the Watson Defendants' prior

Motion to Vacate, the preliminary injunction no longer satisfies the high bar imposed by the Court in *Winter*.

    **i.    Amazon is No Longer Likely to Succeed on the Merits.**

In order to uphold the injunction, the plaintiff must make a "clear showing" that its case will likely succeed on the merits at trial." *Tigges v. Northam*, 473 F. Supp. 3d 559, 568 (E.D. Va. 2020) (quoting *Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 347 (4th Cir. 2009), vacated on other grounds, 559 U.S. 1089 (2010)) (emphasis added). This is a high bar which "requires the plaintiff to show *more* than 'a grave or serious question for litigation.'" *Id.*

Here, success on the merits is impossible for the equitable claims underlying the issuance of the injunction – specifically Amazon's claims for unjust enrichment and conversion. This Court has already dismissed these causes of action, holding that equitable remedies were not available to Amazon given the existence of adequate remedies at law. Dkt. 1376 at 38.

Further, Amazon's RICO and Fraud claims have also been dismissed by this Court. The factual allegations underlying these now-dismissed claims *also* formed the factual basis of the Preliminary injunction. For example, in its order granting Amazon's request for preliminary injunction, the Court found good cause to believe that "Defendants have engaged in, and are likely to engage in, acts or practices that violate the RICO Act," and good cause to believe that the Defendants participated in the direct purchase of certain real estate that resulted in an inflated sale price to the detriment of Plaintiffs. Dkt. 57 at 2-3. The allegations underlying the Court's factual findings have since been disproven.

In its order on the Defendants' Motion for Summary Judgment, the Court overturned many of the factual findings underlying the preliminary injunction – specifically the finding that the Defendants' behavior violated the RICO Act. By way of example, the Court concluded that

9

Amazon failed to establish that the alleged "kickback payments from NorthStar to Nelson and Casey Kirschner led to increased costs to Amazon on the lease transactions or the direct purchase transactions." Dkt. 1376 at 19. In other words, this Court concluded that Amazon alleged insufficient facts to establish that either the direct-purchase transactions or the lease transactions resulted in inflated prices resulting in harm to Amazon – an essential element of both Count I and Count III of its Complaint. *Id*. at 18-19 ("While Amazon contends that there may be evidence that it 'overpaid for the properties and leases' it cannot prove that it overpaid."). This finding directly undermines the Court's prior "good cause" to believe that the direct-purchase transaction "resulted in an inflated sale price to the detriment of Plaintiffs." Similarly, the Court found that it was undisputed that the Watson Defendants were in no way involved in the direct purchase transactions. Dkt. 1376 at 6-7. This conclusion undermines the Court's factual finding that the Watson Defendants participated in the direct purchase of certain real estate that resulted in an inflated sale price to the detriment of Plaintiffs.

The remaining claims are legal and do not support the continuance of the injunction. As the Fourth Court determined, the prejudgment remedy sought by Amazon was available only in connection with Amazon's now-dismissed equitable claims. With respect to Amazon's tortious interference claim, Amazon is unlikely to succeed (even if such a legal claim could possibly support an injunction) because Amazon cannot prove a tortious interference of a contract that has not been breached and because Amazon has provided no proof of any damages based on any alleged breach.

    **ii.**    **Amazon Cannot Show that it Will Suffer Irreparable Harm Absent the Preliminary Injunction**

A showing of "[i]rreparable harm must be 'neither remote nor speculative, but actual and imminent.'" *Variable Annuity Life Insurance Company v. Coreth*, 535 F.Supp.3d 488, 517 (E.D.

Va. 2021). The mere possibility of irreparable harm is insufficient. *Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 346 (4th Cir. 2009), *vacated on other grounds*, 559 U.S. 1089 (2010).

Amazon's original arguments of irreparable harm have now been proven to be unsupportable. Amazon claimed that it had evidence that it had been harmed in excess of $22 million. But when it came time for proof, it could not do so. At this juncture, there is no possibility of irreparable harm given that Amazon has failed to show evidence of *any* harm from the alleged kickback scheme – a finding made explicitly by this Court. *See* Dkt. 1376 at 19. Indeed, Amazon has not claimed, and cannot prove, that the alleged kickback payments from Northstar to Nelson and Casey Kirschner led to increased costs to Amazon on the lease transactions or the direct purchase transactions. Rather than suffering harm, Amazon has benefitted from the transactions – entering into a Lease Continuity Agreement and continuing to occupy and benefit from the data centers developed by Northstar. The absence of evidence of any harm – let alone irreparable harm – requires vacatur of the injunction.

Amazon also alleged that absent injunctive relief, irreparable harm would result from ongoing violations of law and inequitable conduct by Defendants, including "the spoliation of evidence and/or dissipation of assets relevant to this action." See Dkt. 57 at 3. Any alleged concern that evidence or assets will be destroyed is no longer relevant. Discovery has closed, and the parties are set to go to trial in nineteen days. Under these circumstances, any risk that material evidence would be destroyed is minimal. The parties have already had the opportunity to request and collect the evidence necessary to support their remaining claims. Even assuming there is still evidence to be discovered (there is not) the Watson Defendants are already under a duty to preserve material evidence during the course of litigation. *Diretto v. Country Inn & Suites*, 1:16cv1037(JCC/IDD),

2016 WL 4400498, at *3 (E.D. Va. 2016) (finding TRO unnecessary to protect against destruction of evidence when the defendants were already "under an obligation to preserve material evidence, the unjustified breach of which [could] be readily remedied with sanctions.").

> **iii.    The Balance of Equities Weigh in Favor of Vacatur of the Injunction.**

In considering the imposition of injunctive relief, the court must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief. *Amoco Production Co. v. Village of Gambell, Alaska*, 480 U.S. 531, 542 (1987). The minimal risk of irreparable harm to Amazon, when balanced against the harm caused to Mr. Watson and the Watson Defendants, requires vacatur of the injunction and release of the Receiver.

The harm imposed on Mr. Watson and the other Watson Defendants by the preliminary injunction is not merely hypothetical – it has been realized over the last three years. Mr. Watson's life has been completely turned upside down by the imposition of the preliminary injunction and the appointment of the Receiver. His business has been dismantled, his assets were placed under total control of the Receiver, his family home was sold, his personal and corporate credit have been decimated, and his personal and professional life have been placed on hold. Simply put, for the last three years Mr. Watson has been held hostage by a preliminary injunction premised on factual allegations that no longer hold water.

Mr. Watson's lack of access to his own assets has also resulted in several debilitating financial obligations. Because of the Receivership, federal and state taxes have not been paid on Mr. Watson's assets in nearly two years – creating a $1.4 million outstanding tax obligation. Mr. Watson has reason to believe that the state of Colorado has already sent notices for collection of these tax obligations. Collection efforts have also been instituted with regard to an outstanding $45,000 American Express corporate bill, left unpaid by the Receiver. Without access to his assets,

Mr. Watson's financial obligations will remain unpaid, resulting in further harm in the form of accumulating interest, collection efforts, tax liability, and damage to his credit.

Meanwhile, on the other side of the scale, is Amazon's non-existent harm. As previously discussed, Amazon has failed to establish any evidence that it has suffered financially from the alleged kickback scheme. Further, following summary judgment, only two of Amazon's claims remain. It is patently inequitable to allow the injunction to remain when nearly all the underlying claims have been dismissed.

    iv.    **There is no Public Interest to be Served by Keeping the Injunction in Place.**

"In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24 (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)). Here, there is no clear public interest in retaining the injunction, the public does not receive any benefit from the fact that the Watson Defendants' assets are subject to total control by a receiver. Rather, the continued imposition of the injunction wastes the time and resources of both the parties and this Court. Accordingly, because it has become clear that the Watson Defendants cannot satisfy the injunction, keeping it in place no longer serves any public interest.

    c.    **The Court Should Vacate the Receivership Order**

The summary judgment order granted by the Court similarly compels the Court to vacate the receivership order. The receivership was imposed to enforce compliance with a now unsupportable preliminary injunction. Since the injunction cannot stand, the receivership should fall away with it.

Unfortunately, the receiver is currently in control of all of the Watson Defendants' assets and business. Simply lifting the order likely would lead to significant additional harm. The Watson Defendants therefore request that the receivership be lifted in a controlled fashion so that

13

Mr. Watson can review the Receiver's records and get up to speed on the operations controlled by the Receiver for the last year. Thus, the Watson Defendants propose that the receivership stay in place nominally for a limited period. During that time, the Receiver will have no power to make any decisions without Mr. Watson's approval, but the stay put in place by the receivership order will remain operative. Mr. Watson will have the ultimate power to approve any disposition or use of assets during the interim period. Moreover, the Receiver will no longer take control of any insurance proceeds being used to pay the Watson Defendants' counsel, which should instead be payable directly to counsel in the ordinary course of business. The receivership should otherwise remain in force until a hearing can be held where the court can consider evidence and argument from the parties, and the Receiver regarding the best process to wind down the Receivership.

### d. The Court Should Order Payment of the Injunction Bond.

Pursuant to Federal Rule of Civil Procedure 65(c), "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in amount the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The bond requirement is premised on the notion that because the court has a "greater chance of being wrong in a preliminary hearing as opposed to a full trial on the merits," the defendant is entitled to a "source of compensation . . . if the court later determines that the defendant was wrongfully enjoined." Erin Connors Morton, *Security for Interlocutory Injunctions under Rule 65(c): Exception to the Rule Gone Awry*, 46 HASTINGS L. J. 1863, 1864 (1995). Here, the Watson Defendants have been wrongly enjoined and as discussed above, have suffered significant personal, social, and economic harm as a result.[2] The

---

[2] If the Court deems it necessary, the Watson Defendants request an evidentiary hearing to confirm that the amount of harm suffered by the Watson Defendants exceeds the bond amount.

14

damages incurred by the Watson Defendants are precisely the type of harm contemplated and addressed by the bond requirement.

IV. **Conclusion**

For the reasons outlined above, the Watson Defendants respectfully request that the Court:

1. Immediately vacate, in its entirety, the preliminary injunction against the Watson Defendants;
2. Remove the receivership in a controlled fashion so as to minimize the liability the receivership has already imposed; and
3. Allow the Watson Defendants to recover the entirety of the injunction bond.

Dated: April 13, 2023    Respectfully submitted,

/s/ Jeffrey R. Hamlin
Jeffrey R. Hamlin (Va. Bar No. 46932)
George R. Calhoun V (*pro hac vice*)
James Trusty (pro hac vice)

IFRAH PLLC
1717 Pennsylvania Avenue NW
Suite 650
Washington, DC 20006-2004
(202) 524-4140 – Tel.
(202) 524-4141 – Fax
jhamlin@ifrahlaw.com
george@ifrahlaw.com
wfore@ifrahlaw.com

Stanley L. Garnett (*pro hac vice*)
Garnett Powell Maximon Barlow
1512 Larimer St. Suite 950
Denver, CO 80202
Telephone: (303) 991-3344
Stan.garnett@garnettlegalgroup.com

Amanda K. Houseal (*pro hac vice*)
Sara R. Bodner (*pro hac vice*)
Leah Regan-Smith (*pro hac vice*)
Rosa L. Baum (*pro hac vice*)

        Brownstein Hyatt Farber Schreck, LLP
410 17th Street, Suite 2200
Denver, CO 80202
Telephone: (303) 223-1100
Facsimile: (303) 223-1111
sgarnett@bhfs.com
ahouseal@bhfs.com
sbodner@bhfs.com
lregansmith@bhfs.com
rbaum@bhfs.com

*Counsel for the Watson Defendants*