**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| AMAZON.COM, INC. and AMAZON DATA SERVICES, INC., | |
| Plaintiffs, | |
| v. | |
| WDC HOLDINGS LLC dba NORTHSTAR COMMERCIAL PARTNERS; BRIAN WATSON; STERLING NCP FF, LLC; MANASSAS NCP FF, LLC; NSIPI ADMINISTRATIVE MANAGER; NOVA WPC LLC; WHITE PEAKS CAPITAL LLC; VILLANOVA TRUST; CARLETON NELSON; CASEY KIRSCHNER; ALLCORE DEVELOPMENT LLC; FINBRIT HOLDINGS LLC; CHESHIRE VENTURES LLC; 2010 IRREVOCABLE TRUST; SIGMA REGENERATIVE SOLUTIONS LLC; CTBSRM, INC.; RODNEY ATHERTON; DEMETRIUS VON LACEY; RENRETS LLC, | CASE NO. 1:20-CV-484-RDA-IDD |
| Defendants. | |
| 800 HOYT LLC, | |
| Intervening Interpleader Plaintiff, Intervening Interpleader Counter-Defendant, | |
| v. | |
| BRIAN WATSON; WDC HOLDINGS, LLC; BW HOLDINGS, LLC, | |
| Interpleader Defendants, | |
| and | |
| AMAZON.COM, INC., and AMAZON DATA SERVICES, INC., | |
| Interpleader Defendants, Interpleader Counter-Plaintiffs. | |

**PLAINTIFFS' RESPONSE TO DEFENDANTS'**
**MOTION TO VACATE PRELIMINARY INJUNCTION**
**<u>AND APPOINTMENT OF MARK A. ROBERTS AS RECEIVER</u>**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................. iii

PRELIMINARY STATEMENT ............................................................................................ 1

BACKGROUND .................................................................................................................... 4

ARGUMENT .......................................................................................................................... 9

I.   The Court's Preliminary Injunction Should Remain In Place.................................. 9

    A.   The Four *Winter* Factors Do Not Support Watson's Motion. ............................... 10

    B.   The Injunction Should Remain in Place Because Amazon Can Obtain Equitable Relief For Tortious Interference And Conspiracy. ............................... 12

II.   Recovery On The Injunction Bond Is Not Warranted. .............................................. 15

    A.   Recovery On An Injunction Bond Is Premature Before The Litigation Has Reached A Final Judgment........................................................................................ 16

    B.   Recovery Is Also Barred Because Watson Has Not Been Harmed By The Injunction as Distinct from His Own Contempt and Other Malfeasance.............. 17

CONCLUSION....................................................................................................................... 19

## TABLE OF AUTHORITIES

**CASES**

*Advante Designs, Inc. v. McGinnis*,
    61 Va. Cir. 134 (2003) ................................................................................................2, 14

*Am. Bible Soc'y. v. Blount*,
    446 F.2d 588 (3d Cir. 1971)........................................................................................3, 16

*Amazon.com, Inc. v. WDC Holdings LLC*,
    2021 WL 3878403 (4th Cir. Aug. 31, 2021)...........................................................4, 5, 12

*Ameritox, Ltd. v. Millennium Labs., Inc.*,
    2014 WL 1456347 (M.D. Fla. Apr. 14, 2014).................................................................13

*Apple v. Samsung*,
    2012 WL 4490558 (N.D. Cal. Oct. 1, 2012)....................................................................17

*Brightview Grp., LP v. Teeters*,
    441 F. Supp. 3d 115 (D. Md. 2020) .................................................................................19

*Centennial Broad., LLC v. Burns*,
    433 F. Supp. 2d 730 (W.D. Va. 2006) .............................................................................10

*Consumer Fin. Prot. Bureau v. Klopp*,
    957 F.3d 454 (4th Cir. 2020) ...........................................................................................13

*CVI/Beta Ventures, Inc. v. Custom Optical Frames, Inc.*,
    893 F. Supp. 508 (D. Md. 1995)......................................................................................18

*Ecolaire, Inc. v. Crissman, et al.*,
    542 F. Supp. 196 (E.D. Pa. 1982) ...................................................................................13

*Erickson v. Horing*,
    2000 WL 35500986 (D. Minn. Oct. 23, 2000) ................................................................17

*Favia v. Indiana University of Pennsylvania*,
    7 F.3d 332 (3d Cir. 1993) ................................................................................................10

*Fern v. Thorp Pub. Sch.*,
    532 F.2d 1120 (7th Cir. 1976) .........................................................................................10

*First-Citizens Bank & Trust Co. v. Camp*,
    432 F.2d 481 (4th Cir. 1970) .......................................................................................3, 19

*Glob. Naps, Inc. v. Verizon New England, Inc.*,
    489 F.3d 13 (1st Cir. 2007)........................................................................................16, 17

*Instant Air Freight Co. v. C.F. Air Freight, Inc.*,
   882 F.2d 797 (3d Cir. 1989) ................................................................. 19

*Int'l Bhd. of Teamsters, Local Union No. 639 v. Airgas, Inc.*,
   885 F.3d 230 (4th Cir. 2018) ............................................................... 16

*Johnson v. Rowan Helping Ministries*,
   2019 WL 13297609 (M.D.N.C. Oct. 23, 2019) ....................................... 3

*Lever Bros. Co. v. Int'l Chem. Workers Union*,
   554 F.2d 115 (4th Cir. 1976) ..................................................... 3, 18, 19

*Meeker v. Stuart*,
   188 F. Supp. 272 (D.D.C. 1960) .......................................................... 16

*Miller v. Prince George's Cty., MD*,
   475 F.3d 621 (4th Cir. 2007) ................................................................. 3

*Momenta Pharms., Inc. v. Amphastar Pharms., Inc.*,
   323 F. Supp. 3d 142 (D. Mass. 2018) .................................................. 17

*Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*,
   60 F.3d 823 (4th Cir. 1995) ........................................................... 1, 10

*NCAA v. Governor of New Jersey*,
   939 F.3d 597 (3d Cir. 2019) .......................................................... 16, 17

*Network Int'l L.C. v. Worldcom Techs., Inc.*,
   133 F. Supp. 2d 713 (D. Md. 2001) ..................................................... 18

*Nintendo of Am., Inc. v. Lewis Galoob Toys, Inc.*,
   16 F.3d 1032 (9th Cir. 1994) ......................................................... 16, 17

*Pittman v. Nelms*,
   87 F.3d 116 (4th Cir. 1996) ................................................................... 3

*Preferred Sys. Sols., Inc. v. GP Consulting, LLC*,
   284 Va. 382 (2012) ....................................................................... 2, 13

*United States ex rel. Rahman v. Oncology Assocs.*,
   198 F.3d 489 (4th Cir. 1999) ............................................................... 12

*S.E.C. v. Robert Brian Watson et al.*,
   No. 1:22-cv-2147 (D. Colo. Aug. 22, 2022) ......................................... 19

*Sandare Chem. Co., Inc. v. WAKO International, Inc.*,
   820 S.W.2d 21 (Tex. Ct. App. 1991) ................................................... 13

*Synthes (USA) v. Globus Med., Inc.*,
  2007 WL 2043184 (E.D. Pa. July 12, 2007) .........................................................13

*Thompson v. U.S. Dep't of Hous. & Urb. Dev.*,
  404 F.3d 821 (4th Cir. 2005) ...............................................................................1, 9

*United States v. Kirschner*,
  No. 1:23-cr-36 (E.D. Va. Mar. 8, 2023), Dkt. 10 ..................................................8

*Virginia Vermiculite, Ltd. v. W.R. Grace & Co.--Conn.*,
  144 F. Supp. 2d 558 (W.D. Va. 2001) ..................................................................14

*Volvo Trademark Holding Akitebolaget v. Clark Mach. Co.*,
  510 F.3d 474 (4th Cir. 2007) ............................................................................9, 11

*Williams Elecs. Games, Inc. v. Garrity*,
  366 F.3d 569 (7th Cir. 2004) ...............................................................................13

*Winter v. Nat. Res. Def. Council, Inc.*,
  555 U.S. 7 (2008) ...................................................................................................1

**STATUTES**

Va. Code Ann. § 18.2-500(B) ..................................................................................14

**RULES**

Fed. R. Civ. P. 60 .....................................................................................................9

Fed. R. Civ. P. 65 .........................................................................................4, 15, 16

**TREATISES**

11A Charles A. Wright & Arthur R. Miller, *Fed. Prac. & Proc. Civ.* § 2973 (3d ed.)...........17, 18

Plaintiffs Amazon.com Inc. and Amazon Data Services, Inc. (collectively "Amazon") hereby respectfully oppose the Watson Defendants'[1] ("Watson") Motion to Vacate Preliminary Injunction and Appointment of Mark A. Roberts as Receiver, Dkt. 1385.[2]

## PRELIMINARY STATEMENT

Watson does not satisfy the "extraordinary," "high bar" for *vacating* an injunction that is "covered by the Fourth Circuit's appellate mandate." Dkt. 1075 at 6–9. Nor does he properly engage with it. He focuses his motion on the four *Winter* factors for *issuing* a preliminary injunction, as if Amazon were seeking the injunction in the first instance, and suggests that Amazon bears the burden of establishing them. Mot. 6 (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008)). Although the *Winter* factors are relevant here, the Court's review is limited only to those "aspects of the present case" that are affected by "changed circumstances." *Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 60 F.3d 823, at *2 (4th Cir. 1995) (unpublished) (internal quotation marks omitted). Here, these circumstances are not confined to the Court's recent summary judgment rulings. They also include recent criminal pleas and post-summary judgment deposition testimony in this case from Watson's co-conspirators. Contrary to Watson's suggestion, *see* Mot. 6, he "bear[s] the burden of proving equitable grounds for vacatur" of the injunction in light of the Fourth Circuit's appellate mandate and all of the new record evidence, Dkt. 1075 at 7 (ordering denying Watson's first motion to vacate the preliminary injunction) (citing *Thompson v. U.S. Dep't of Hous. & Urb. Dev.*, 404 F.3d 821, 826 (4th Cir. 2005)).

---

[1] Brian Watson, WDC Holdings LLC, dba Northstar Commercial Partners, Sterling NCP FF, LLC, Manassas NCP FF, LLC, NSIPI Administrative Manager.

[2] Citations to "Mot." refer to Watson's memorandum in support of his motion, Dkt. 1386.

1

Watson has failed to carry his burden. The summary judgment rulings changed Amazon's likelihood of success on only some of its claims. And the other factors relevant to the need for preliminary relief—namely, irreparable harm, balance of harms, and public interest—have not changed in any way that would permit relief from the Fourth Circuit's appellate mandate. Notably, the summary judgment ruling did not affect Amazon's likelihood-of-success on the tortious interference and conspiracy claims. The Court held that these claims remain viable and must proceed to trial because the "record" in this case would permit "a reasonable juror [to] conclude that the Watson Defendants interfered with Nelson's and Casey Kirschner's employment relationships by bribing them and thereby depriving Amazon of its employees' honest services." Dkt. 1376 at 24. That is the same "record" that underlies the Fourth Circuit's mandate. The record is even stronger now than it was when the mandate issued. And the two claims the Court has designated for trial would support the same relief on final judgment the injunction was entered to protect, and still requires protection.

Watson contends that is incorrect, because the Court's partial grant of summary judgment for Defendants on Amazon's equitable *claims* forecloses the equitable *relief* the injunction protects, but that is plainly wrong. Amazon does not need causes of action for unjust enrichment and conversion to obtain the equitable relief covered by the injunction. That is because Amazon is entitled to such *relief*, including restitution in the amount of Defendants' unlawful gains and the imposition of a constructive trust, for the tortious interference and conspiracy claims the Court has designated for trial. *See Advante Designs, Inc. v. McGinnis*, 61 Va. Cir. 134 (2003) (imposing "a constructive trust" on funds acquired where a party has "tortiously interfer[ed] with [a] contract"); *Preferred Sys. Sols., Inc. v. GP Consulting, LLC*, 284 Va. 382, 400 (2012) (approving of the "use of subsequent profits from the [defendant]" in determining the remedy for tortious interference

claims).  These claims—which the Fourth Circuit held are likely to succeed on the merits—fully support the asset security provisions of the preliminary injunction.

Watson next argues that the Court's "factual findings" on summary judgment warrant vacating the injunction.  Mot. 7.  But Courts do "not make factual findings" on "summary judgment"—and any findings made in violation of Rule 56 would be grounds for appellate relief. *Pittman v. Nelms*, 87 F.3d 116, 119 (4th Cir. 1996); *see also Miller v. Prince George's Cty., MD*, 475 F.3d 621, 628 (4th Cir. 2007) ("on summary judgment," "we do not find facts"); *Johnson v. Rowan Helping Ministries*, 2019 WL 13297609, at *2 (M.D.N.C. Oct. 23, 2019) ("[C]ourts do not make findings of fact at summary judgment.").  In any event, the facts supporting Amazon's claims have only grown stronger since the Court denied Watson's last motion to vacate the injunction, and even since the summary judgment record closed.  This spring, two of Watson's co-conspirators pled guilty to criminal charges on the same transactions at issue in this suit.  And just weeks ago (and long after the parties closed the record underlying the Court's Rule 56 rulings), *Defendants* reopened the record to allow these co-conspirators to testify substantively in depositions about Watson's role in the unlawful scheme and the harm it caused Amazon.  *See infra* 8–9.  These facts bolster Amazon's remaining claims and confirm that the injunction should remain in effect.

Finally, Watson's request to recover on the injunction bond is at best premature.  *E.g.*, *Am. Bible Soc'y. v. Blount*, 446 F.2d 588, 594–95 (3d Cir. 1971) ("No liability can arise on an injunction bond unless there is a final judgment in favor of the party enjoined.").  The amount that Watson could hypothetically recover is also limited to his actual damages proximately caused by the injunction—*not* his contempt of it—and is capped at the amount of the bond.  *Lever Bros. Co. v. Int'l Chem. Workers Union*, 554 F.2d 115, 120 (4th Cir. 1976); *First-Citizens Bank & Trust Co. v. Camp*, 432 F.2d 481, 484 (4th Cir. 1970).  Because there is currently no final judgment on any of the claims in this case, and because Watson has not provided any evidence of harm caused by

3

the injunction as distinct from his contempt for it (and many other rulings), he cannot recover on the injunction bond now even if the Court were to grant his request to modify the injunction itself.

In sum, although the record has changed since the Court last denied Watson's request to alter the injunction, Watson's latest request fares no better than his numerous prior attempts and should be denied. *See, e.g.*, Dkt. 1075 at 6–9 (denying Watson's motion to vacate preliminary injunction).

## BACKGROUND

The Court is now well familiar with the background of this case. What follows is a brief outline the facts that are relevant to this Motion, as well as those that are necessary to correct certain misrepresentations in Watson's motion.

***This Court's Injunction***. Amazon filed its complaint and request for preliminary injunctive relief in April 2020. Amazon alleged a kickback scheme that Defendants and their co-conspirators used to obtain tens of millions of dollars in illicit proceeds on more than $500 million of Amazon development projects in this District. After the parties completed their voluminous record submissions, *see* Dkts. 30, 39, 40, 41–46, the Court held a hearing at which it granted the injunction based on Amazon's documentary evidence and the "declarations now in place" from Messrs. Doden, Lorman, and Gilpin. Dkt. 69-5 at 49–50. The Court then issued a detailed opinion relating it to the record evidence on each of the Rule 65 and *Winter* factors. Dkt. 99.

***Fourth Circuit Appeal***. On appeal, the Fourth Circuit unanimously affirmed the injunction. *Amazon.com, Inc. v. WDC Holdings LLC*, 2021 WL 3878403, at *9 (4th Cir. Aug. 31, 2021) (Dkt. 318). In particular, the Fourth Circuit affirmed this Court's findings on all of the *Winter* factors, agreeing that "Amazon is likely to succeed on all its claims" and that the injunction was necessary to prevent "irreparable harm" from the "'dissipation of assets' and Northstar's conceded 'likelihood of insolvency.'" *Id.* at *8. In so doing, the Fourth Circuit rejected Watson's balance-

of-harm arguments as "illogical" and contrary to the record, admonished them for impugning the integrity of this Court, and expressly held that the public interest would be served by the injunction and specifically its $21.25 million security provision. *Id.* at *9. The Fourth Circuit also rejected Watson's claim that "Amazon has [not] pleaded a viable claim for equitable relief" under its "unjust enrichment and conversion" claims. *Id.* at *5. Watson did not argue, however, that such relief was not available under Amazon's tortious interference and conspiracy claims. The mandate on this order was issued on September 22, 2021. *See* Dkt. 333.

***Unauthorized Asset Dissipation and Discovery Violations***. This Court denied Watson's motion to stay the injunction pending appeal. Dkt. 137 at 3–5 (finding that a stay would "risk any award being payable" on final judgment because Watson would dispose of "significant assets" in the interim). But Watson defied the anti-dissipation and security provisions anyway. In July 2020, Amazon moved for an order to show cause why Watson should not be held in contempt. Dkts. 67, 68, 84. He opposed on the ground that they "made all reasonable efforts to comply and/or compliance is impossible" because the injunction is "baseless" and "manifestly unfair." Dkt. 82 at 9, 1 n.1, 2. The Court responded by giving Watson over a year to substantiate these defenses in discovery. *See* Dkt. 122 at 26:10–28:4; Dkt. 95. But he failed to do so, and was repeatedly sanctioned under Rule 37 for violating the Court's discovery orders. Dkts. 190, 193-9, 231. In the meantime, Watson continued surreptitiously disposing of assets he admits were worth over $140 million. Dkts. 284 at 9; 286-13 at 2; 310-2; 310-3. This misconduct led to further Rule 37 sanctions in July and September of last year, Dkts. 302, 330, and Watson's belated (and unsuccessful) motion to "clarify" that their asset dispositions were outside the scope of the injunction's anti-dissipation provisions. *See* Dkts. 343, 361, 412.

***Contempt Proceedings***. In October 2021, Amazon opposed Watson's meritless "clarification" request and moved to hold Defendants in civil contempt of the injunction. Dkts. 348, 412.

5

The Court granted Amazon's motion based on extensive record evidence of Watson's "willful and knowing failure to comply with" the judgment security and anti-dissipation provisions.  Dkt. 413 at 1–2.  Indeed, the record shows that from the time the injunction was entered until the Receiver was appointed, Watson spent "approximately $3 million" on personal expenses, including a Range Rover and Mercedes S-class, high-end shopping, artwork, trips to Hawaii and Aspen, and preferential payments to personal creditors.  Dkts. 702, 702-3, 992 at 3, 992-2 at 2.  The Court appointed a receiver to "prevent[] further irreparable harm to Plaintiffs and coerc[e] Defendants' compliance with the Court's Injunction."  Dkt. 413 at 1–2.  The Court appointed the Receiver on November 23, 2021.  Dkt. 433.

*Watson's Conduct Under The Receivership*.  Watson's contempt of this Court's orders continued throughout the receivership.  As detailed in the Receiver's filings, Watson has tried to dispose of multi-million-dollar assets behind the Receiver's back. Dkts. 446, 1087 at 4–5. And he has demanded his approval of many improper "personal expenses" beyond the parameters in the Order. Dkt. 433 ¶ 5(c); Dkt. 702 ¶ 19. The Receiver's filings provide countless examples of these abuses, *see* Dkts. 702 ¶ 19; 768; 898 ¶ 10; 992 at 8; 1000; 1082; 1087, which have "resulted in a substantial drain of time and resources of the Receiver and his professionals," and increased the receivership costs that must be paid from the injunction assets. Dkt. 702 ¶ 20. The current record thus confirms that the concerns over asset dissipation that motivated the injunction and receivership orders are still very much live concerns. *See* Dkts. 433 ¶ 9; 768 ¶ 6; 992-2 at 1–2; 898 ¶ 10. In fact, in April of last year, the Receiver reported that Watson had "sent more than 1,200 emails to the Receiver and his professionals during the First and Second Reporting Periods (averaging more than one dozen emails each business day), a substantial portion of which include demands for payment and/or express or implied threats" that Watson "will pursue damages from the Receiver." Dkt. 702 ¶ 19.

***Watson's Prior Motions***.   In April of last year, Watson filed a motion to dissolve the injunction and receivership as futile because his affected assets had lost value.  *See* Dkt. 696.  Amazon and the Receiver rebutted these arguments, Dkts. 702; 786; 898; 1000, and took steps to protect the assets while Watson's motion was pending.  On October 14, the Court denied Watson's motion and held that the law and "injunction record as it stands continues to support" the Court's prior orders. Dkt. 1075 at 8.  The Court has also rejected Watson's argument (Dkt. 606) that Amazon's withdrawal and substitutions of certain verifications and declarations filed in the initial stages of the litigation removed the basis for the Court's injunction.  Dkt. 648 (granting Amazon's motion).

Watson has also repeatedly sought orders "clarifying" the injunction and/or receivership order, many of which were simply motions to vacate these orders in thinly-veiled disguise.  Dkt. 1083; 1240.  The Court has denied these motion at every turn.  *See* Dkt. 1153 at 2 (denying Watson's motion at Dkt. 1083 and holding that the Court's receivership order "is neither vague nor ambiguous, and thus concludes that no clarification is warranted"); Dkt. 1297 (denying Watson's motion at Dkt. 1240).  Indeed, in its Order on Watson's most recent request for "clarification," the Court noted that his "Motion does not actually seek any clarification of the Receivership Order, but instead aims to impose additional obligations on the Receiver and Plaintiffs."  Dkt. 1297 at 2.

***Summary Judgment***.   Although the Court granted summary judgment for Defendants on several of Amazon's claims, it ruled that Amazon's tortious interference and conspiracy claims require a trial.  Specifically, the Court held that the "record" in this case would permit "a reasonable juror [to] conclude that the Watson Defendants interfered with Nelson's and Casey Kirschner's employment relationships by bribing them and thereby depriving Amazon of its employees' honest services," and that this claim "can serve as a basis for the civil conspiracy count," which should

also "proceed to trial as to the Watson Defendants, the Nelson Defendants, and Defendant Casey Kirschner."  Dkt. 1376 at 24, 32–33.

***The Current Record***.  The factual record that supports the claims that remain for trial is the same record that underlies the injunction.  And that record is now even stronger than when the Court issued its summary judgment opinion.  At the time of the summary judgment briefing, two key participants in Defendants' scheme had not provided any substantive testimony:  Kyle Ramstetter, a former employee of Watson's, and Christian Kirschner, the brother of Defendant Casey Kirschner.  Both witnesses had extensively invoked their Fifth Amendment right to remain silent when they were first deposed in February 2022.  But in March 2023, both Ramstetter and Christian Kirschner pled guilty to conspiracy to commit honest services wire fraud.  Plea Agreement, *United States v. Kirschner*, No. 1:23-cr-36 (E.D. Va. Mar. 8, 2023), Dkt. 10; Plea Agreement, *United States v. Ramstetter*, No. 1:23-cr-27 (E.D. Va. Mar. 8, 2023), Dkt. 10.  Following those pleas, Defendants filed an unopposed request for supplemental depositions of Ramstetter and Christian Kirschner, which this Court granted.  Those depositions took place on April 6 and April 8, 2023, the day of and two days after this Court's summary judgment ruling.  Both witnesses provided further evidence about Amazon's injury, including how Casey Kirschner engineered the increase in fees Amazon paid on the leases in connection with the kickback scheme, as well as Watson's knowledge of and role in it.

Ramstetter, for example, confirmed that the "leasing fee was increased" in order to cover "payments that went indirectly to Carl and Casey," and that this "*increase[d] costs to Amazon* in the project."  Ex. 1 (K. Ramstetter Dep. Tr.) at 457:16–21; *see also id.* at 459:24–460:5 (agreeing that "if Casey was able to increase the yield rate," "that [would] increase Casey's haul").  Christian Kirschner likewise testified to the financial harm to Amazon caused by Defendants' actions.  *See,*

*e.g.*, Ex. 2 (Christian Kirschner Dep. Tr.) at 373:12–374:13 ("Did I think the lease fee would increase Amazon's cost?  Yes.").  And both individuals testified directly to Watson's knowledge of and involvement in the kickback scheme, including the quid-pro-quo nature of his payments to Nelson and Casey Kirschner.  *See, e.g.*, Ex. 1 at 295:6–11 ("Brian and I had conversations if we continue to pay [Casey and Carl], take care of them, whether it was real payment at the time or future payments that are coming with the buy-out of whatever it was.  But yes, we agreed there was a value we had to pay Carl and Casey because other deals will continue[] to come."); *id.* at 293:12–23 (testifying about his "discuss[ions] with Brian" about "the quid pro quo or direct correlation of continuing to pay Carl and Casey, that . . . another deal would come"); Ex. 2 at 227:14–16 (testifying that he "told Brian" in December of 2017 "that [he] would be sharing the fees" that Watson paid to the Villanova Trust "with Casey and Carl"); *see id.* at 353:11–354:8 (recalling "around five different specific conversations" between him "and Mr. Watson that Casey and Carl were receiving a portion of the fees").

## ARGUMENT

### I.    The Court's Preliminary Injunction Should Remain In Place.

As this Court explained, because Watson "seek[s] to undo an operative injunction the Fourth Circuit has already affirmed on appeal," he "bear[s] the burden of proving equitable grounds for vacatur that satisfy Federal Rule of Civil Procedure 60(b)."  Dkt. 1075 (denying Watson Defendants' first motion to vacate the preliminary injunction) (citing *Thompson*, 404 F.3d at 826); *contra* Mot. 6 (suggesting that Amazon bears the burden).  "What is more, [he] must satisfy the extraordinary test for revisiting issues covered by the Fourth Circuit's appellate mandate."  *Id.* (citing *Volvo Trademark Holding Akitebolaget v. Clark Mach. Co.*, 510 F.3d 474, 481 (4th Cir. 2007)).

This standard "sets a high bar, and it 'precludes the Court from considering old issues—whether or not they have been amplified by new 'facts' or refashioned arguments—that [were or] could have been presented before the injunction issued.'" *Id.* (quoting *Centennial Broad., LLC v. Burns*, 433 F. Supp. 2d 730, 734-35 (W.D. Va. 2006)). Rather, a court's role is to review only those "aspects of the present case" that are affected by the "change in circumstances." *Multi-Channel TV Cable Co.*, 60 F.3d 823 (quoting *Favia v. Indiana University of Pennsylvania*, 7 F.3d 332 (3d Cir. 1993); *Fern v. Thorp Pub. Sch.*, 532 F.2d 1120, 1128 (7th Cir. 1976)).

Further development of the same factual record that already supports the injunction is not a "change in circumstances" that supports Watson's motion. Since the Court denied Watson's first attempt to vacate the preliminary injunction, the factual record supporting Amazon's claims has only strengthened. As summarized above, the record in this case now includes new sworn testimony from two of Defendants' co-conspirators who recently entered public guilty pleas in the ongoing criminal investigation of Defendants' scheme. Both testified to new and confirmatory facts about Watson's role in the scheme and the harm it inflicted on Amazon. *Supra* at 8–9.

Watson's motion does not contest this. The "changed circumstances" it cites relate solely to the Court's summary judgment order, which is directed at claims that do not prevent Amazon from obtaining the final judgment and equitable relief the injunction and Fourth Circuit mandate were entered to protect. *See* Mot. 7 (citing "two reasons" for a change in circumstances, both of which relate to the Court's summary judgment ruling). But for the reasons explained below, this ruling does not justify vacating the Court's injunction.

### A.    The Four *Winter* Factors Do Not Support Watson's Motion.

Watson's motion is based on the premise that the Court's summary judgment ruling addresses the *merits* of claims necessary for the injunction, and thus affects the *Winter* factor addressed to likelihood of success on the merits. But that premise is incorrect. The summary

judgment ruling is addressed to claims that are not necessary to the injunction, and leaves for trial other claims that support the relief the injunction was entered to protect on a factual record that is stronger for Amazon now than ever before.  The inclusion of the remaining claims as grounds for the injunction is clear from the Fourth Circuit's opinion.  It affirmed the injunction that this Court "determined at th[e] preliminary stage that Amazon is likely to succeed on *all* its claims."  Dkt. 318 at 19 (emphasis added); *see also* Dkt. 99 (holding that Amazon established a likelihood of success on the merits of its tortious interference and conspiracy claims).  These claims include Amazon's tortious interference and civil conspiracy claims, with respect to which this Court denied summary judgment.  Watson asserts, without any explanation, that "Amazon is unlikely to succeed" on its tortious interference claim.  But the Court expressed no such view in its summary judgment opinion, stating instead that the "record" in this case would permit "a reasonable juror [to] conclude that the Watson Defendants interfered with Nelson's and Casey Kirschner's employment relationships by bribing them and thereby depriving Amazon of its employees' honest services."  Dkt. 1376 at 24.

The Fourth Circuit opinion affirming this Court's findings on each of the other *Winter* factors—irreparable harm, balance of harms, and public interest—also weighs in favor of preserving the preliminary injunction under the appellate mandate rule.  *See Volvo Trademark Holding Akitebolaget*, 510 F.3d at 481 (the appellate mandate rule "forecloses litigation of issues decided by the district court but [lost or] foregone on appeal or otherwise waived") (internal quotation marks omitted).  The facts this Court previously found in Amazon's favor on each of these, and the Fourth Circuit affirmed, have not changed as a result of the summary judgment order.  And Watson fails to raise any change in circumstances that would warrant circumventing the mandate rule.

Watson's own motion confirms this. It spends pages recycling old arguments about Amazon's initial verifications, the alleged lack of support for Amazon's damages, and the alleged harm to Watson and his business. Mot. 4, 10–13. Because these arguments are not new, and the Court has already rejected them, they provide no basis for relief now. He also claims that "[a]ny alleged concern that evidence or assets will be destroyed is no longer relevant." Mot. 11. But he fails to explain how proximity to trial mitigates—rather than exacerbates—these concerns (particularly since the trial has since been rescheduled for October 2023). Amazon is just six months away from a chance to obtain the final judgment, including the equitable relief, the injunction and receivership were entered to protect. And the long record of Watson's obstruction and contempt strongly suggests that the moment the injunction or receivership is lifted, Watson is highly likely to dispose of assets and evidence in ways that would further irreparably harm exactly the interests the injunction and receivership exist to "preserve": "Amazon's interests in Northstar's assets and the court's ability to render a meaningful judgment on the merits." Dkt. 318 at 20–21.

**B.    The Injunction Should Remain in Place Because Amazon Can Obtain Equitable Relief For Tortious Interference And Conspiracy.**

Watson argues that the Court's dismissal of Amazon's conversion and unjust enrichment claims justifies vacating the preliminary injunction. But Amazon does not need these equitable *claims* to support the equitable *relief* provided under the injunction. The Supreme Court and the Fourth Circuit have made clear that the question is not whether a *claim* is equitable in nature, but rather whether a litigant has a valid basis for seeking equitable *relief*. In this very case, the Fourth Circuit reiterated that "the Supreme Court has long endorsed preliminary injunctions 'to preserve the status quo pending final determination of the questions raised' in cases that state a cause of action *for equitable relief.*" *Amazon.com, Inc.*, 2021 WL 3878403, at *4 (quoting *United States ex rel. Rahman v. Oncology Assocs.*, 198 F.3d 489, 496 (4th Cir. 1999)) (emphasis added). Thus,

any claim that can result in the award of equitable relief is a proper basis for maintaining the injunction.

Significantly, Amazon can obtain equitable relief based on its tortious interference and conspiracy claims.  It is blackletter law that "[r]estitution is available in any intentional-tort case," such as tortious interference, "in which the tortfeasor has made a profit that exceeds the victim's damages."  *Williams Elecs. Games, Inc. v. Garrity*, 366 F.3d 569, 576 (7th Cir. 2004) (collecting authorities).  The Virginia Supreme Court has agreed, aligning itself with "several of [its] sister states" in approving the "use of subsequent profits from the [defendant]" in determining the remedy for tortious interference claims.  *Preferred Sys. Sols., Inc.*, 284 Va. at 400.

As the Fourth Circuit recognized in its preliminary injunction opinion, this is essentially "[d]isgorgement," which "is 'the payment of profits arising from improper conduct' and 'is commonly understood as *a form of restitution*, limited to restoring the status quo.'"  Dkt. 318 at 15 (quoting *Consumer Fin. Prot. Bureau v. Klopp*, 957 F.3d 454, 467 (4th Cir. 2020)) (emphasis added).  That is why several of Virginia's sister states have expressly recognized disgorgement of profits as an available remedy for tortious interference claims.  *See, e.g.*, *Ameritox, Ltd. v. Millennium Labs., Inc.*, 2014 WL 1456347, at *12 (M.D. Fla. Apr. 14, 2014) ("[T]he Court concludes that disgorgement of profits is an available remedy for a tortious interference claim under Texas law.") (citing *Sandare Chem. Co., Inc. v. WAKO International, Inc.*, 820 S.W.2d 21, 23 (Tex. Ct. App. 1991)); *Synthes (USA) v. Globus Med., Inc.*, 2007 WL 2043184, at *8 (E.D. Pa. July 12, 2007) ("plaintiff was entitled to disgorgement of the defendants' wrongful profits" through "tortious interference with a non-disclosure agreement" (citing *Ecolaire, Inc. v. Crissman, et al.*, 542 F. Supp. 196 (E.D. Pa. 1982)).

Amazon may also seek equitable relief on its tortious interference claim in the form of a constructive trust.  In *Rash v. Hilb, Rogal & Hamilton Co. of Richmond,* the Virginia Supreme

13

Court held that a "common law conspiracy" based on an underlying tortious interference claim "justifies the imposition of the constructive trust." 251 Va. 281, 288 (1996). As lower courts in Virginia have recognized, *Rash* stands for the proposition that a "court can impose a constructive trust on property acquired through improper means," such as where a party has "tortiously interfer[ed] with [a] contract." *Advante Designs, Inc.*, 61 Va. Cir. 134 (citing *Rash*, 251 Va. at 287).

Amazon's statutory conspiracy claim also expressly authorizes courts to issue injunctive relief. Specifically, Va. Code Ann. § 18.2-500(B) provides that courts addressing conspiracy claims "shall have jurisdiction . . . to issue injunctions pendente lite and permanent injunctions." *See also Virginia Vermiculite, Ltd. v. W.R. Grace & Co.--Conn.*, 144 F. Supp. 2d 558, 609 (W.D. Va. 2001) ("Under the Virginia Conspiracy Act, the plaintiff must show the defendants' concerted action caused it injury in order to be entitled either to damages under § 18.2–500(a) or to injunctive relief under § 18.2–500(b)."). In his motion, Watson fails to engage with any of the law regarding the remedies available for Amazon's tortious interference and conspiracy claims.

Lastly, Watson makes no argument for vacating the receivership order that is independent of his argument to vacate the injunction. Rather, he argues only that it "should fall away with [the injunction]." Mot. 13. Accordingly, the Court should deny Watson's request to vacate the receivership order for the same reasons it should deny his motion to vacate the injunction. Moreover, the receiver was appointed as a sanction because Watson failed to comply with the injunction. Even if a preliminary injunction is later vacated, that does not excuse the enjoined party's failure to comply with the injunction when it was in effect. Therefore, the appointment of the receiver as a sanction for Watson's failure to comply with the injunction while it was in place cannot be vacated. The Receiver has relied on the appointment order. Third party buyers from

14

the Receiver have relied on the Receivership Order.  Even if the injunction were to be vacated prospectively, that would not excuse Watson's past contempt.[3]

## II.      Recovery On The Injunction Bond Is Not Warranted.

No matter how the Court resolves the rest of Watson's motion, it cannot grant recovery on the injunction bond now for two reasons.  First, the Court cannot determine that Watson was "wrongfully enjoined" under Rule 65 until there has been a final judgment on the merits of all of Amazon's claims that the Court previously recognized as supporting the injunction.  Second, Watson fails to cite any evidence that supports his conclusory assertion that he has been harmed by the injunction, as distinct from his contempt of it.  Amazon and this Court offered long ago to reach a compromise with Watson on a partial bond, or some cash escrow, or other means of judgment security.  But at every turn, Watson refused and obstructed these efforts and the Court's rulings on the grounds that the underlying claims against him were baseless.  And at every turn, the record against him has swelled with further evidence of his participation in the scheme, including and most recently through the post-summary judgment deposition testimony of his co-conspirators.  These record developments are documented in Amazon filings last year, see Dkts. 787 and 1094, that the Court credited in its prior orders denying Watson's requests for injunction relief.  These filings specifically document Watson's sworn false statement to this Court that Christian Kirschner, one of the plea defendants who just testified to Watson's complicity in the bribery scheme, was *not involved* in the negotiation of Amazon's leases.  Dkt. 1094 at 15–16.  Watson's own documents proved that statement false last year.  *See id.*  And now Christian's sworn deposition testimony confirms it.  *See supra* at 8–9.  This record does not support giving Watson any

---

[3]    If this Court were to consider the possibility of terminating the receivership prospectively, even though vacating the injunction does not excuse Watson's prior violations of the injunction, that would require careful consideration of how to pay the cost of the receivership and transition remaining assets back to Watson in an orderly manner.

equitable relief on existing Court and Fourth Circuit orders, much less allow him to make a premature pass at Amazon's bond.

### A. Recovery On An Injunction Bond Is Premature Before The Litigation Has Reached A Final Judgment.

In a single paragraph, Watson argues that he is entitled to payment on Amazon's injunction bond. Mot. 14–15. Although he cites one law review article discussing the purpose of Rule 65, he completely ignores the mountain of case law showing that execution on the bond is premature where, as here, the litigation has not reached a final judgment.

Under Rule 65, a party may execute on an injunction bond for damages sustained by the injunction only if that party is "found to have been *wrongfully enjoined* or restrained." Fed. R. Civ. P. 65(c) (emphasis added). It is well established that Rule 65's "wrongfully enjoined" standard means that "[a] party may recover damages for a preliminary injunction wrongfully entered if and only if the injunction prevented it from doing something that it had the legal right to do." *Int'l Bhd. of Teamsters, Local Union No. 639 v. Airgas, Inc.*, 885 F.3d 230, 236 (4th Cir. 2018); *see also NCAA v. Governor of New Jersey*, 939 F.3d 597, 602, 605 (3d Cir. 2019) (similar); *Glob. Naps, Inc. v. Verizon New England, Inc.*, 489 F.3d 13, 20 (1st Cir. 2007) (similar); *Nintendo of Am., Inc. v. Lewis Galoob Toys, Inc.*, 16 F.3d 1032, 1036 (9th Cir. 1994) (similar).

A court cannot make this determination, however, until there has been "final judgment after trial [that] is in favor of the party that has been enjoined." *Meeker v. Stuart*, 188 F. Supp. 272, 276 (D.D.C. 1960), *aff'd*, 289 F.2d 902 (D.C. Cir. 1961); *see also Am. Bible Soc'y.*, 446 F.2d at 594–95 ("No liability can arise on an injunction bond unless there is a final judgment in favor of the party enjoined."). So "[e]ven if the Court were to dissolve the injunction," "a determination whether plaintiffs may recover against the bond would appear to be premature" until the litigation

has reached a final judgment. *Erickson v. Horing*, 2000 WL 35500986, at *3 (D. Minn. Oct. 23, 2000).

Should either party appeal the judgment in this Court, moreover, a final judgment would not be reached until any and all appeals have been resolved. In *NCAA v. Governor of New Jersey*, for example, the Third Circuit explained that "[t]he entire concept of 'wrongfully enjoined' envisions a look back from the *ultimate* conclusion of the case," which in that case was "the time of the Supreme Court's final judgment." 939 F.3d at 602, 605 (emphasis added). Other courts have taken the same approach, and "defer[red] consideration of [an] enforcement motion pending the appeal" of the district court's judgment in favor of the enjoined party. *Momenta Pharms., Inc. v. Amphastar Pharms., Inc.*, 323 F. Supp. 3d 142, 147 (D. Mass. 2018); *see also Glob. Naps, Inc.*, 489 F.3d at 20 (holding that party was wrongfully enjoined after summary judgment was entered for the enjoined party and upheld on appeal); *Nintendo of Am., Inc.*, 16 F.3d at 1036 (holding that defendant was wrongfully enjoined after "[it] prevailed in the underlying litigation" and the Ninth Circuit "affirmed on appeal"); *cf. Apple v. Samsung*, 2012 WL 4490558, at *2 (N.D. Cal. Oct. 1, 2012) (deferring execution on injunction bond where jury had ruled in favor of the enjoined party but post-trial motions were pending; holding that the "question of whether Samsung was wrongfully enjoined is inextricably intertwined with the Court's resolution of the post-trial motions").

This authority, which Watson fails to mention in his motion, forecloses any collection on the injunction bond at this time.

**B.    Recovery Is Also Barred Because Watson Has Not Been Harmed By The Injunction as Distinct from His Own Contempt and Other Malfeasance.**

Even if the injunction were vacated, Watson "cannot demand damages on the bond simply because the court erred in granting the injunction." 11A Charles A. Wright & Arthur R. Miller,

17

*Fed. Prac. & Proc. Civ.* § 2973 (3d ed.).  Rather, he "must show injury as a consequence of the injunction."  *Id.*  As the Fourth Circuit explained, "the recoverable damages under [an injunction] bond are those that arise from the operation of the injunction itself and not from damages occasioned by the suit independently of the injunction."  *Lever Bros.*, 554 F.2d at 120 (collecting authorities).  Put another way, the damages asserted "must be such as naturally, actually and proximately result from the injunction; speculative damages are not recognized."  *Network Int'l L.C. v. Worldcom Techs., Inc.*, 133 F. Supp. 2d 713, 719 (D. Md. 2001).

Watson has not made this showing here, nor can he.  As an initial matter, Watson cannot claim *any* harm from the period when this Court issued the injunction until the Receivership order because Watson did not comply with the injunction.  Between April 2020 and November 2021, he never placed so much as one dollar in the bond or escrow that the Court ordered.  *See* Dkt. 433 (ordering appointment of receiver for non-compliance).  Nor does Watson offer evidence that the Receivership caused harm, or that any such harm (triggered by his own contempt rather than the underlying injunction) would be recoverable against the injunction bond.  If anything, the Receiver's activities have *preserved* Watson's assets.  *See* Dkt. 1208 ¶ 6 ("The Receiver's activity during the Fifth Reporting Period also involved managing, *preserving*, and maximizing the value of these current Assets.") (emphasis added).

Lacking a coherent explanation of the harm caused by the injunction, the damages he alleges are "based [instead] upon speculation or conjecture."  *CVI/Beta Ventures, Inc. v. Custom Optical Frames, Inc.*, 893 F. Supp. 508, 525 (D. Md. 1995), *aff'd,* 92 F.3d 1203 (Fed. Cir. 1996).  In the section of his motion requesting payment on the injunction bond, Watson states that he has "suffered significant personal, social, and economic harm as a result" of being allegedly "wrongly enjoined."  Mot. 14.  But this conclusory statement falls well short of constituting admissible evidence proving damages that "proximately result from the injunction."  *Network Int'l L.C.*, 133

18

F. Supp. 2d at 719.  Moreover, Watson would need to show that any injury resulted "from the operation of the injunction itself and not from damages occasioned by the suit independently of the injunction," or from other contemporaneous litigation involving Northstar, *see, e.g.*, *S.E.C. v. Robert Brian Watson et al.*, No. 1:22-cv-2147 (D. Colo. Aug. 22, 2022); *Lever Bros.*, 554 F.2d at 120.[4]  Nowhere in Watson's motion does he cite any *evidence* of harm caused by the injunction.[5]  Indeed, Watson appears to acknowledge this complete lack of evidence, and suggests in a footnote that "an evidentiary hearing" may be necessary "to confirm . . . the amount of harm suffered." Mot. 14 n.2.  Watson's request for a hearing, however, does not excuse his failure to provide any evidence of harm in his motion; where, as here, a party has submitted "no evidence" of "harm," recovery on an injunction bond is not warranted.  *Brightview Grp., LP v. Teeters*, 441 F. Supp. 3d 115, 145 (D. Md. 2020).

Finally, even if Watson were entitled to some damages, he cannot recover damages in excess of the bond amount.  Mot. 14 n.2.  The Fourth Circuit has foreclosed this argument, holding that "the amount of the bond provided by [the movant] limits the amount of recovery." *First-Citizens Bank & Trust Co.*, 432 F.2d at 484 (collecting cases); *see also Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 804 (3d Cir. 1989) ("It is generally settled that, with rare exceptions, a defendant wrongfully enjoined has recourse only against the bond.").

## CONCLUSION

Watson's motion should be denied.

---

[4]   Watson has not argued that subsequent developments in the case, including this Court's summary judgment ruling, may justify an alteration in the *amount* of judgment security required by the injunction.  Should he seek such an adjustment, that would not be a basis to seek damages as he has never complied with *any* of the judgment security protection.

[5]   As discussed above, if anything, the injunction and receivership have only preserved Watson's assets, such as by limiting Watson's requested monthly budget of over $40,000 to $12,000. *See* Dkt. 702 ¶ 19.

Dated:  April 21, 2023                    Respectfully submitted,

                                          */s/ Michael R. Dziuban*
                                          Elizabeth P. Papez (*pro hac vice*)
                                          Patrick F. Stokes (*pro hac vice*)
                                          Jason J. Mendro (*pro hac vice*)
                                          Claudia M. Barrett (*pro hac vice*)
                                          David W. Casazza (*pro hac vice*)
                                          Amanda Sterling (*pro hac vice*)
                                          Michael R. Dziuban (Va. State Bar No. 89136)
                                          GIBSON, DUNN & CRUTCHER LLP
                                          1050 Connecticut Avenue, N.W.
                                          Washington, D.C. 20036-5306
                                          Telephone:  (202) 955-8500
                                          Facsimile:  (202) 467-0539
                                          epapez@gibsondunn.com
                                          pstokes@gibsondunn.com
                                          jmendro@gibsondunn.com
                                          cbarrett@gibsondunn.com
                                          dcasazza@gibsondunn.com
                                          asterling@gibsondunn.com
                                          mdziuban@gibsondunn.com

          *Counsel for Plaintiffs Amazon.com, Inc. and Amazon Data Services, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on April 21, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system.  I will then send the document and a notification of such filing (NEF) to the following parties via U.S. mail to their last-known address and by email, where noted:

CTBSRM, Inc.
6870 W 52nd Ave., Ste. 203
Arvada, CO 80002

2010 Irrevocable Trust
6870 W 52nd Ave., Ste. 203
Arvada, CO 80002

Demetrius Von Lacey
2845 Des Moines Dr.,
Fort Collins, CO 80525

Sigma Regenerative Solutions, LLC
6870 W 52nd Ave., Ste. 203
Arvada, CO 80002

*s/ Michael R. Dziuban*
Michael R. Dziuban
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
Telephone:  (202) 955-8500
Facsimile:  (202) 467-0539
mdziuban@gibsondunn.com

*Counsel for Plaintiffs Amazon.com, Inc. and Amazon Data Services, Inc.*