**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| AMAZON.COM, INC. and AMAZON DATA SERVICES, INC., | |
| Plaintiffs, | |
| v. | |
| WDC HOLDINGS LLC dba NORTHSTAR COMMERCIAL PARTNERS, et al., | |
| Defendants. | CASE NO. 1:20-CV-484-RDA-IDD |
| 800 HOYT LLC, | |
| Intervening Interpleader Plaintiff / Intervening Interpleader Counter-Defendant, | |
| v. | |
| BRIAN WATSON, WDC HOLDINGS, LLC, and BW HOLDINGS, LLC, | |
| Interpleader Defendants, | |
| and | |
| AMAZON.COM, INC., and AMAZON DATA SERVICES, INC., | |
| Interpleader Defendants / Interpleader Counter-Plaintiffs. | |

## <u>WATSON DEFENDANTS' REPLY IN SUPPORT OF MOTION TO VACATE PRELIMINARY INJUNCTION AND APPOINTMENT OF MARK A. ROBERTS AS RECEIVER</u>

## TABLE OF CONTENTS

INTRODUCTION _____ 1

FACTUAL AND PROCEDURAL BACKGROUND _____ 2

DISCUSSION _____ 5

   I.  Legal Standard _____ 5
   II.  The Preliminary Injunction Was and Is No Longer Justified. _____ 6

     A.  The Original Basis for the Preliminary Injunction No Longer Exists. _____ 7
     B.  Amazon Cannot Satisfy the *Winter* Standard for the Remaining Claims. _____ 10

   III.   To the Extent the Preliminary Injunction Continues, this Court Should Order Amazon to Post a Bond of $50 Million. _____ 18

CONCLUSION_____ 19

## TABLE OF AUTHORITIES

**CASES**

*Amazon.com, Inc. v. WDC Holdings LLC,*
    No. 20-1743, 2021 WL 3878403 (4th Cir. Aug. 31, 2021) ..................................................... 4

*Appalachian Power Co. v. John Stewart Walker, Inc.,*
    201 S.E.2d 758 (Va. 1974) .................................................................................................... 15

*ATCS Int'l LLC v. Jefferson Contracting Corp.,*
    807 F. Supp. 2d 516 (E.D. Va. 2011) .................................................................................... 14

*Autopartsource, LLC v. Bruton,*
    No. 3:13CV54-HEH, 2013 WL 3766524 (E.D. Va. July 16, 2013) ...................................... 15

*Burniac v. Wells Fargo Bank, N.A.,*
    810 F.3d 429 (6th Cir. 2016) ................................................................................................... 6

*Calvary Christian Ctr. v. City of Fredericksburg,*
    800 F. Supp. 2d 760 (E.D. Va. 2011) .................................................................................... 10

*Cooke v. Lancelotta,*
    No. CV SAG-22-297, 2022 WL 622229 (D. Md. Mar. 3, 2022) .......................................... 16

*Dore & Assocs. Contracting, Inc. v. Am. Druggists' Ins. Co.,*
    54 B.R. 353 (Bankr. W.D. Wis. 1985) .................................................................................... 6

*E.E. Maxwell Co. v. Arti Decor, Ltd.,*
    638 F. Supp. 749 (N.D. Tex. 1986) ....................................................................................... 13

*Firestone v. Wiley,*
    485 F. Supp. 2d 694 (E.D. Va. 2007) ..................................................................................... 7

*Hughes Network Sys., Inc. v. Interdigital Commc'ns Corp.,*
    17 F.3d 691 (4th Cir. 1994) ............................................................................................. 14, 16

*JTH Tax, LLC v. Shahabuddin,*
    477 F. Supp. 3d 477 (E.D. Va. 2020) .................................................................................... 14

*Lehigh Portland Cement Co. v. Virginia Steamship Co.,*
    111 S.E. 104 (Va. 1922) ........................................................................................................ 15

*Lindy v. Lynn*
    395 F. Supp. 769 (E.D. Pa. 1974), aff'd, 515 F.2d 507 (3d Cir. 1975) ................................... 6

*McAfee v. Cauthorne,*
    No. 2:21CV00033, 2022 WL 2118982 (W.D. Va. June 13, 2022) ....................................... 13

*Munaf v. Geren,*

553 U.S. 674 (2008)....................................................................................... 19

*Network Int'l L.C. v. Worldcom Techs., Inc.*,

    133 F. Supp. 2d 713 (D. Md. 2001) ........................................................... 18

*Patel v. Anand, L.L.C.,*

    564 S.E.2d 140 (Va. 2002) ......................................................................... 15

*Perry v. Judd,*

    471 Fed. App'x 219 (4th Cir. 2012)........................................................... 10

*Philips Med. Sys. v. Tec Holdings, Inc.*,

    No. 3:19-CV-373-MOC-DCK, 2022 WL 10208557 (W.D.N.C. Oct. 17, 2022) .................. 16

*Pro-Edge, L.P. v. Gue,*

    419 F. Supp. 2d 1064 (N.D. Iowa 2006) .................................................... 6

*Robins v. The Southland Corp.*,

    20 Va. Cir. 80 (1990)................................................................................. 15

*Thompson v. U.S. Dep't Of Hous. & Urb. Dev.*,

    404 F.3d 821 (4th Cir. 2005) ................................................................. 5, 6

*United States v. Swift & Co.*,

    286 U.S. 106 (1932) ................................................................................... 6

*W. Virginia Highlands Conservancy, Inc. v. ERP Env't Fund, Inc.*,

    No. CV 3:11-0115, 2021 WL 6050599 (S.D.W. Va. Dec. 21, 2021)....................... 5

*Williams v. Branch Banking & Tr. Co.*,

    No. 3:16-CV-00843-JAG, 2017 WL 2999973 (E.D. Va. Mar. 8, 2017) ................ 15

*Winter v. Natural Resources Defense Council, Inc.*,

    555 U.S. 7 (2008) ............................................................................... 5, 17

**RULES**

Fed. R. Civ. Pro. 65(c) ...................................................................................... 18

Defendants Brian Watson ("Mr. Watson"), WDC Holdings LLC, dba Northstar Commercial Partners ("Northstar"), Sterling NCP FF, LLC, Manassas NCP FF, LLC, and NSIPI Administrative Manager (collectively, the "Watson Defendants"), by and through undersigned counsel, hereby submit this Reply (the "Reply") in Support of Motion to Vacate Preliminary Injunction and Appointment of Mark. A. Roberts as Receiver (the "Motion"). Dkts. 1385; 1386.

## INTRODUCTION

The landscape has dramatically shifted since Judge O'Grady granted Plaintiffs Amazon.com, Inc. and Amazon Data Services, Inc.'s (collectively, "Amazon") motion for an *ex parte* temporary restraining order ("TRO") on April 28, 2020 and ordered the preliminary injunction on June 5, 2020, found Mr. Watson and Northstar in civil contempt on October 27, 2021, and ordered the imposition of the receivership on November 23, 2021. Dkts. 16; 57; 412; 413; 433. The extensive fact and expert discovery conducted by the parties to this matter were not kind to Amazon's ever-evolving and shifting theories of liability and damages. Earlier this month, this Court recognized this reality. On April 6, 2023, the Court issued a final judgment on the merits on six of eight of Amazon's claims in its Third Amended Complaint, dismissing them entirely. Dkt. 1376.

Rather than acknowledge these changed circumstances, Amazon digs its heels in, arguing in its Response that the preliminary injunction should remain in place in part because Amazon is "just six months away from a chance to obtain" a final judgment on the remaining claims. Dkt 1395. But six months away is an eternity to the Watson Defendants, who are effectively being held hostage by a preliminary injunction that was ordered when Amazon claimed it had "more than satisfied the *Winter* standard," a likelihood of success on <u>all</u> 11 of its claims, and that it had been damaged in an amount totaling at least $50 million. Dkts. 1 at ¶ 195; 69-5 at 6. None of

which turned out to be true.  Behind Amazon's false bravado and its attempts to smear Mr. Watson personally and professionally, there is no longer a basis for the continued imposition of the preliminary injunction or the receivership to enforce it.  The remaining two claims have been amended so significantly that they cannot be said to be the same claims that formed the basis for the injunction.  Simply put, the legal basis for the injunction no longer exists. It is manifestly unjust to continue to impose an onerous mandatory injunction when it has been fully and finally established that Amazon cannot maintain the claims upon which the injunction was based.  If Amazon wants to maintain the injunction, then it is Amazon's burden to meet the standard for a preliminary injunction on the two remaining claims.  Amazon has failed to do so.  The Watson Defendants therefore respectfully request that the Court vacate the preliminary injunction and allow them, the Receiver, and the Court to develop a process for unwinding the receivership in an appropriate fashion.  If this Court does not vacate the preliminary injunction, the Watson Defendants request that the Court order Amazon to post a bond of $50 million.

## FACTUAL AND PROCEDURAL BACKGROUND

This case has a lengthy history that has been well-documented in the Watson Defendants' prior submissions.  The factual and procedural background most relevant to the instant Motion are outlined in the Watson Defendants' first attempt to vacate the injunction, the Watson Defendants' Memorandum of Support of their Motion for Summary Judgment, the Court's Memorandum Opinion and Order, and the Watson Defendants' Memorandum of Support of the instant Motion to Vacate.  Dkts. 696; 1160; 1376; 1386.  Given Amazon's steadfast commitment to maintaining the preliminary injunction and receivership, while failing to acknowledge what has changed since April, May, and June of 2020, some of that background bears repeating.

Amazon filed a motion requesting an *ex parte* TRO and preliminary injunction against the

Watson Defendants on April 27, 2020.  Dkt. 9.  In support of this application, Amazon submitted a Verified Complaint, verified upon purported personal knowledge by former Gibson Dunn attorney Travis Andrews, multiple declarations from Gibson Dunn attorney Lora MacDonald averring personal knowledge, and certain documents.  Dkts. 1; 12; 12-40; 12-43.  The Verified Complaint contained 11 claims for relief, including Tortious Interference with Contractual and/or Business Relations (Count V) and Civil Conspiracy (Count VI).  Dkt. 1.  The Court granted the *ex parte* TRO against the Watson Defendants on April 28, 2020, and set a show cause hearing on the preliminary injunction.  Dkt. 16.  Amazon thereafter submitted supplemental declarations in support of its motion for a preliminary injunction, including a declaration purportedly made based on personal knowledge from Ms. MacDonald.  Dkt. 42. [1]

The show cause hearing on the preliminary injunction was held on May 21, 2020.  Judge O'Grady ultimately granted the motion for a preliminary injunction, explaining that the amount to be placed into escrow, $21.25 million, was "narrowly tailored to the circumstances of this case" and "represent[ed] the fees that the defendants received on the Shaw Road, Quail Ridge, and Manassas lease transactions, as well as the $5 million payment" from the White Peaks transaction.  Dkt. 69-5 at 50-51.  Judge O'Grady subsequently entered the Order Granting Preliminary Injunction.  Dkt. 57.

A portion of the order was appealed by the Watson Defendants to the Fourth Circuit, which affirmed the injunction on the basis that the district court had "retained its equitable authority to preserve the status quo pending judgment if Amazon asserted a cognizable claim to specific

---

[1] After the issuance of the injunction, Amazon was forced to withdraw the verification of the Verified Complaint and these declarations, along with others filed in support of subsequent verified versions of Amazon's complaints, because the signatories (Mr. Andrews, Ms. MacDonald, and former Gibson Dunn attorney Luke Sullivan) did not have first-hand knowledge of any facts as they had claimed therein.  Dkts. 587; 588; 648.

Northstar assets or sought a remedy involving those assets." *Amazon.com, Inc. v. WDC Holdings LLC*, No. 20-1743, 2021 WL 3878403, at \*5 (4th Cir. Aug. 31, 2021).  The Watson Defendants thereafter complied with all of the requirements of the injunction except for the mandatory portions requiring the escrow of funds.  Because the Watson Defendants did not have the funds to escrow, and were unable to secure funds of anywhere near the amount ordered, the Watson Defendants were found to be in contempt.  Dkt. 413.  The Court appointed a receiver (hereinafter, the "Receiver") on November 24, 2021 to take control of the Watson Defendants' assets.  Dkt. 433.  The Receiver has since filed five quarterly reports.  Dkts. 495; 702; 898; 1082; 1208.  These reports have confirmed what the Watson Defendants have maintained since the very beginning—they are not hiding millions of fraudulently obtained dollars, and they do not have (and never had) anywhere near enough funds to comply with the mandatory escrow requirement.  The Receiver's most recent report states that the Watson Defendants "have insufficient cash or other liquid assets to begin satisfying the Court's Injunction while also paying the costs of the receivership and the essential personal and business expenses" of the Watson Defendants, and that "the total unrestricted cash balance for Defendants' wholly owned bank accounts managed by the Receiver was $72,405."[2]  Dkt. 1208 at 4-5.

Amazon amended its complaint three separate times since first initiating the litigation with the Verified Complaint in April 2020.  Its latest iteration was filed on May 6, 2022.  Dkt. 765.  On April 6, 2023, the Court issued a Memorandum Opinion and Order addressing the Defendants' motions for summary judgment (the "Summary Judgment Order").  Dkt. 1376.  The Court granted

---

[2] In fact, the Receiver revealed in his Fifth Quarterly Report that Amazon agreed to pay the ongoing fees and costs of the receivership given that the Watson Defendants' estate lacks sufficient assets. As of December 31, 2022, Amazon has paid the Receiver $2,238,166.89 for fees and costs accrued through November 30, 2022.  Dkt. 1208 at ¶¶ 23-24.

summary judgment to the Watson Defendants on Counts I-III, VI, and VIII of Amazon's Third Amended Complaint, leaving only tortious interference and civil conspiracy related to the tortious interference claim.  Given the Court's Summary Judgment Order, all that is plausibly left is a claim that the Watson Defendants interfered with Carl Nelson ("Mr. Nelson") and Casey Kirschner's ("Mr. Kirschner") employment contracts with Amazon with respect to the Lease Transactions,[3] and also conspired with Mr. Nelson and Mr. Kirschner to do so.  The Court allowed this claim to proceed in part because the Watson Defendants did not cite any case law regarding whether the same standard that governs damages in the context of a civil RICO or fraud claim also applies to a claim for tortious interference.  Dkt. 1376 at 24.

On April 13, 2023, the Watson Defendants filed their Motion respectfully asking the Court to vacate the preliminary injunction.  Dkts. 1385; 1386.

## DISCUSSION

### I.       Legal Standard

A party seeking a preliminary injunction bears the heavy burden of establishing that (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm absent preliminary relief; (3) the balance of the equities tips in the party's favor; and (4) a preliminary injunction is in the public interest.  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  "It has long been recognized that courts are vested with the inherent power to modify injunctions they have issued." *Thompson v. U.S. Dep't of Hous. & Urb. Dev.*, 404 F.3d 821, 825 (4th Cir. 2005).  "That inherent power has been formalized in Rule 60(b)(5) of the Federal Rules of Civil Procedure." *W. Va. Highlands Conservancy, Inc. v. ERP Env't Fund, Inc.*, No. CV 3:11-0115, 2021 WL 6050599, at

---

[3] The capitalized phrases "Lease Transactions" and "Direct Purchase Transactions" used herein refer to and have the same definitions as the identical phrases used in the Summary Judgment Order.

*2 (S.D.W. Va. Dec. 21, 2021). Modification is appropriate when there are changed circumstances or conditions. *See Thompson*, 404 F.3d at 825-27; *Pro-Edge, L.P. v. Gue*, 419 F. Supp. 2d 1064, 1088–89 (N.D. Iowa 2006) (dissolving preliminary injunction); *see also United States v. Swift & Co.*, 286 U.S. 106, 114 (1932). "[A] preliminary injunction is frequently issued before any meaningful decision has been made on the merits of the case. The purpose and sole function of a preliminary injunction is to preserve the status quo, and if for any reason a court changes its estimation of the merits of the case it may dissolve the preliminary injunction." *Dore & Assocs. Contracting, Inc. v. Am. Druggists' Ins. Co.*, 54 B.R. 353, 360 (Bankr. W.D. Wis. 1985). A final order on the merits, such as summary judgment, "extinguishes a preliminary injunction." *Burniac v. Wells Fargo Bank, N.A.*, 810 F.3d 429, 435 (6th Cir. 2016); *Lindy v. Lynn*, 395 F. Supp. 769, 773 (E.D. Pa. 1974), aff'd, 515 F.2d 507 (3d Cir. 1975).

## II.       The Preliminary Injunction Was and Is No Longer Justified.

Since the very beginning, the Watson Defendants have asserted that the preliminary injunction was not justified for numerous reasons. The Court disagreed at the time—a time at which Amazon's extensive claims were untested. None of Amazon's original claims survived Amazon's many revisions or the Court's Summary Judgment Order. The Watson Defendants also maintained that they did not have the ability to place such a large amount of funds into escrow. The Receiver's reports have repeatedly confirmed this to be true.

In its Response, Amazon ignores the binding judgment against them, and pretends that not much, if anything, has changed since April, May, and June 2020. To maintain the façade, Amazon completely ignores this Court's conclusions as to harm and damages in the Summary Judgment Order. Amazon instead treats the preliminary injunction like a post-trial judgment that the Watson Defendants are trying to weasel their way out of. In reality, the positions and arguments that

Amazon relied on when seeking the *ex parte* TRO and preliminary injunction have been dramatically undermined.  First, the basis that Amazon espoused when seeking the preliminary injunction no longer exists.  Second, Amazon cannot satisfy the *Winter* standard for its remaining claims—claims that were not pled at the time the injunction was issued.

### A.   The Original Basis for the Preliminary Injunction No Longer Exists.

The claims upon which Amazon obtained the preliminary injunction requiring the Watson Defendants to escrow funds totaling approximately $21.25 million no longer exist—they have been dismissed by this Court in the Summary Judgment Order.  Amazon may argue that its Verified Complaint had both tortious interference and civil conspiracy claims.  But those claims as pled in the Verified Complaint had nothing to do with Mr. Nelson's and Mr. Kirschner's employment contracts or relationships with Amazon—the basis for Amazon's current tortious interference claim.[4]  The Amazon Plaintiffs' Memorandum in Support of their Application for an *ex parte* TRO and Order to Show Cause describes their tortious interference claim as the following: "The Verified Complaint pleads that Defendants intentionally caused a breach or termination of the lease contracts by charging and paying prohibited kickbacks and fees.  Compl. ¶¶ 173-86.  Defendants also tortiously interfered with business relations on the White Peaks Purchase by engaging in undisclosed self dealing and coming between Amazon and the site's then-owner." Dkt. 10 at 21.  Similarly, while Amazon did assert a civil conspiracy claim in the Verified Complaint, to succeed that claim had to be based on an alleged wrong.  *See, e.g., Firestone v. Wiley*, 485 F. Supp. 2d 694, 703 (E.D. Va. 2007) (explaining that civil conspiracy requires proof that the underlying tort was committed).   Accordingly, because tortious

---

[4] This is true of all of the various iterations of Amazon's complaints before the Third Amended Complaint.

interference with Mr. Nelson and Mr. Kirschner's employment contracts was not alleged in the Verified Complaint, the original civil conspiracy claim no longer exists. Amazon never pursued these claims but they would have been precluded by the Summary Judgment Order.[5] If they did still exist, they would suffer the same fatal flaw as the rest of Amazon's claims based on the Lease Transactions and Direct Purchase Transactions: Amazon cannot prove damages, and Mr. Watson was not involved in either of the two Direct Purchase Transactions.

Additionally, the specific amount that Amazon sought to have the Watson Defendants escrow—$21.25 million—never had any basis and certainly has no basis in the remaining claims. At the May 21, 2020 hearing, counsel for Amazon described this figure as "narrow and tailored and appropriate." Dkt. 69-5 at 13. This figure supposedly represented:

> [T]he sum of certain Amazon real estate development fees to the[] [Watson] Defendants in the amounts of $4,150,000, $8,500,000, and $3,600,000 for the Shaw Rd., Quail Ridge, and Manassas Lease Transactions, respectively, that were expressly designated for prohibited payments to a former Amazon employee and his affiliates, and the $5,000,000 these [Watson] Defendants received from Defendants White Peaks Capital LLC and/or NOVA WPC LLC in October 2019 from proceeds on the White Peaks Defendants' July 30, 2019 sale of a Virginia real estate parcel to Amazon.

Dkt. 57 at 4. At the hearing, Amazon's counsel explained that "the only money we're claiming in escrow" is the "kickbacks." Dkt. 69-5 at 47.[6] Not once in any of its submissions or at the *ex parte*

---

[5] Amazon's reference to the Fourth Circuit's prior opinion to the extent it addressed tortious interference or conspiracy is irrelevant, because the claims as they now exist *did not exist* at the time the Fourth Circuit ruled. Amazon obscures this critical fact when it makes the sweeping statement that the Fourth Circuit ruled Amazon was likely to succeed on all its claims, including Amazon's tortious interference and civil conspiracy claims. Dkt. 1395 at 11. The Fourth Circuit has never addressed the particular tortious interference claim now before the Court, nor has it addressed a civil conspiracy claim based on the newly pled tortious interference claim.

[6] When required to submit actual evidence of damages on the Lease Transactions, Amazon produced no such evidence. Instead, it contended that it had suffered "economic harm" of $1,330,360, an amount far less than the mitigation that Amazon admits it received. Dkts. 1259-1; 1356-3; 1356-4. Stated differently, Amazon's evidence proved that it had no damages on the Lease Transactions, flatly contradicting its representations to the Court which formed the basis for the injunction.

TRO or preliminary injunction hearings did Amazon or its counsel tie the figure to be escrowed to the tortious interference claim, or more specifically to Mr. Nelson or Mr. Kirschner's employment contracts.  Nor did Judge O'Grady ever do so.  Given this, the record is clear that the specific sum that the Watson Defendants were ordered to escrow never had any support or basis in Amazon's remaining claims.

Finally, several representations made in Amazon's prior submissions and at the hearing for the preliminary injunction have since been disproven or dramatically undermined.  For example, Amazon's counsel argued that Amazon had "11 separate claims against the opposing defendants" and they had "established likelihood of success on the merits on all of them."  Dkt. 69-5 at 6.  Yet as of today, **none** of those claims remain, despite Amazon being able to amend its complaint several times.   The two claims that remain were added *after* the injunction. Additionally, Amazon claimed in its Verified Complaint that it had been damaged in amounts totaling "at least $50 million as a result of Defendants' knowing breach of their contract provisions and warranties."  Dkt. 1 at ¶ 195.  This is not the case.  Amazon has not presented any evidence of actual damages with respect to the Lease Transactions.  Dkt. 1259-1 at 12, n. 5 ("The economic harm calculations in this report do not include mitigation via the Confidential Settlement Agreement, which is addressed in Paragraphs 37 and 45.  I was not asked to opine on Amazon's recoverable damages.").  Amazon's counsel claimed at the preliminary injunction hearing that "[d]iscovery will show that there's much more that we could recover from the defendants" than the "*very* narrow and *very* tailored relief" they were seeking.  Dkt. 69-5 at 15 (emphasis added).  This too has not borne out given Amazon's inability to identify any recoverable damages.  This Court even noted in footnote 18 in the Summary Judgment Order that Amazon may have deliberately chosen not to conduct a market analysis as to the leases given that there is

evidence indicating that the values of the leased properties exceeded the prices Amazon paid, *and* that Amazon itself chose to affirm the leases.  Dkt. 1376 at 19.

Amazon's counsel relied on a deleted file on Mr. Kirschner's laptop that supposedly contained a spreadsheet identifying certain improper fees.  Dkt. 69-5 at 13-14.  Amazon's prior reliance on this deleted file is problematic for a host of reasons, including that Amazon liquidated Mr. Kirschner's laptop on December 3, 2021, while this litigation was pending.  Amazon's failure to preserve Mr. Kirschner's laptop has resulted in a loss of information that could establish key facts surrounding this document.  In fact, before the upcoming trial was rescheduled, counsel for Mr. Kirschner sought a spoliation instruction due to this issue. Dkt. 1338.  Discovery also revealed that the Watson Defendants have no involvement in or knowledge of this particular document.

### B.    Amazon Cannot Satisfy the *Winter* Standard for the Remaining Claims.

Amazon asserts that it can satisfy the *Winter* standard for its remaining claims and therefore the preliminary injunction should continue.  But as the thin substance of Amazon's Response reveals, it is unable to make the required clear showing.  This is particularly true because the demanding *Winter* standard becomes even more exacting when a plaintiff seeks a preliminary injunction that mandates action.  *See Calvary Christian Ctr. v. City of Fredericksburg*, 800 F. Supp. 2d 760, 765 (E.D. Va. 2011) (explaining that a motion seeking mandatory relief requires "more caution"); *Perry v. Judd*, 471 Fed. App'x 219, 223-24 (4th Cir. 2012) (unpublished).  The Watson Defendants already addressed the *Winter* factors in their Motion, but elaborate upon certain of them below.

*Likelihood of Success*.  Amazon argues that further developments of the factual record have strengthened Amazon's remaining claims.   In support of this point, Amazon relies almost exclusively on testimony from the recent depositions of two individuals—Kyle Ramstetter ("Mr.

10

Ramstetter") and Christian Kirschner ("Christian"). This is unsurprising. These are individuals that Amazon relied heavily on in crafting its various complaints, yet conspicuously did not include them as parties. Mr. Ramstetter and Christian pled the Fifth Amendment during their original depositions last year. The Watson Defendants and other defendants sought to re-open discovery for the limited purpose of re-taking their depositions only after Amazon listed both Mr. Ramstetter and Christian as "live, will call" witnesses. In describing the history behind the re-opening of these depositions, Amazon conveniently omits any mention of the fact that just a few weeks ago, Mr. Ramstetter and Christian entered settlement agreements with Amazon.[7]  *See* Exs. A (Christian Settlement Agreement) and B (Ramstetter Settlement Agreement) to Bodner Decl. Unsurprisingly, Amazon was not forthcoming with this development. The Watson Defendants learned of the existence of these agreements only after this Court granted the Defendants' request to issue a single new Request for Production. Dkt. 1372. The settlement agreements reveal that Amazon released any and all actual or potential actions, claims, causes of action, or damages that Amazon could have against Mr. Ramstetter and Christian arising out of their involvement in the transactions at issue in this litigation. "In consideration of the restitution and forfeiture provisions in [Christian's] plea agreement with the U.S. Attorney's Office for the Eastern District of Virginia, and other consideration as set forth" in the Amazon settlement agreement, Amazon agreed not to seek a payment from Christian. Mr. Ramstetter agreed to pay Amazon $450,000.00, but Amazon agreed that if Mr. Ramstetter pays that sum in restitution to victims in connection with the U.S. Attorney's Office, Amazon "shall consider [Mr.] Ramstetter's] payment" to Amazon satisfied. In return, Mr. Ramstetter and Christian agreed to "promptly" and "fully" cooperate with Amazon in any

---

[7] The Watson Defendants note that so far as they are aware, Amazon has not notified the Court of the existence of these settlement agreements, despite the fact that they impact the default judgments that Amazon obtained against entities affiliated with Mr. Ramstetter and Christian. Dkts. 1285; 1291.

proceedings involving matters relating to the instant litigation.  Pursuant to these settlement agreements, Mr. Ramstetter and Christian made themselves available for hours of deposition prep with Amazon before their April depositions, during which they reviewed documents and topics that came up at their depositions.[8]  (Amazon's counsel has refused to produce the documents to date, claiming an amorphous "work product" privilege over these communications with third parties.) Amazon wants to treat the testimony as gospel that substantiates Amazon's remaining claims.  That is misleading.  Both Mr. Ramstetter and Christian have significant credibility issues due to their settlement agreements with Amazon[9] and numerous inconsistencies in their testimony.  Mr. Watson has, of course, denied from the very beginning of this litigation (including at his approximately 14 hours of sworn deposition in August 2022 where he fully answered every question) being part of any "kickback" scheme, and maintained that payments to the Villanova Trust were made as legal and customary referral fees pursuant to a fully vetted written contract.  Mr. Watson's assertions are, in fact, corroborated by Mr. Ramstetter and Christian's testimony that Mr. Ramstetter was paid $150,000.00 specifically to keep an eye on Mr. Watson to make sure he made the payments to the Villanova Trust.  *See, e.g.,* Ex. C to Bodner Decl. (Ramstetter Tr. 86:7-86:25).  Of course, if Mr. Watson were truly part of an illegal conspiracy from which he was benefiting, there would be no need for those who hatched the plan to pay a "mole" to make sure Mr. Watson made payments to

---

[8] Mr. Ramstetter testified that he was prepped by counsel for Amazon for five to six hours the day before his deposition. Ex. C to Bodner Decl. (Ramstetter Tr. 11:14-12:13).  Christian testified that he prepped with counsel for Amazon on two occasions—the week before his deposition for approximately two hours, and the day before his deposition for seven hours.  The day before his deposition, he reviewed approximately 80 to 100 documents with Amazon's counsel.  Ex. D to Bodner Decl. (Christian Tr. 16:17-25; 24:16-25:20).
[9] For example, in addition to the fact that the settlements included releases of Amazon's default judgments against entities that Mr. Ramstetter and Christian were affiliated with and/or controlled, Mr. Ramstetter testified that part of the reason he agreed to enter a settlement agreement with Amazon was because he believed that helping Amazon would help him in the criminal case.  Ex. C to Bodner Decl. (Ramstetter Tr. 69:13-17; 304:15-305:8).

the Villanova Trust.  *Id.* at 109:19-25.[10]  Amazon's remaining claims are therefore hardly any stronger (if at all) by this recent testimony, and it is certainly not entitled to a preliminary injunction based on said testimony.  *See E.E. Maxwell Co. v. Arti Decor, Ltd.*, 638 F. Supp. 749, 754 (N.D. Tex. 1986) ("The claims presented here are hotly disputed and are not such that the court can say plaintiff has a substantial likelihood of success.").

Moreover, Amazon is unlikely to be able to prove essential elements of its remaining claims.  For example, the only employment "contracts" that Amazon has ever pointed to are the Confidentiality, Noncompetition, and Invention Assignment Agreement ("CNIAA") and the Code of Conduct.  Dkt. 765 at ¶¶ 505, 524, 525.  This Court found however that Mr. Nelson and Mr. Kirschner did not breach the CNIAA.  Dkt. 1376 at 25-32.  It also found that Amazon was precluded from arguing that the Code of Conduct is a legally enforceable agreement.  *Id.*  In fact, the Court dismissed Amazon's breach of contract claim against Mr. Nelson and Mr. Kirschner.  *Id.*  No breach of contract claim remains.  Amazon did not identify any other employment contracts in its Third Amended Complaint.  Dkt. 765.  Therefore, Amazon is unlikely to be able to establish certain elements of a tortious interference claim—the existence of a valid contract and the breach of said contract.  *See, e.g., McAfee v. Cauthorne*, No. 2:21CV00033, 2022 WL 2118982, at *7 (W.D. Va. June 13, 2022) (dismissing tortious interference with contract claim because "[defendant] could not have induced or caused a breach that did not occur").

Amazon also completely ignores another glaring weakness in its remaining claim: damages.  Amazon's other claims were dismissed in large part because the record demonstrated that Amazon failed to identify any damages.  This was not surprising to the Watson Defendants,

---

[10] Mr. Ramstetter also testified that he did not believe he was doing anything illegal until he received a call from the FBI.  Ex. C to Bodner Decl. (Ramstetter Tr. 225:12-19).

who have maintained since the beginning of this litigation that Amazon has significantly benefited financially from its dealings with the Watson Defendants on the Lease Transactions.  Amazon did not identify any damages in its Rule 26 disclosures from any alleged tortious interference with Mr. Nelson and Mr. Kirschner's employment contracts or relations.  Dkts. 1356-2 through 1356-6. Moreover, outside of describing his qualifications, Amazon's damages expert Richard Lee did not mention tortious interference a single time in his expert report.  Dkt. 1259-1.   To the extent that Amazon crafts a belated theory of damages for its remaining claims[11], Amazon is unlikely to succeed given the mitigation and offset defenses that the Watson Defendants can assert relating to Amazon's settlement agreement with IPI (Northstar's equity partner on the Lease Transactions) and Amazon's settlement agreements with Mr. Ramstetter and Christian.  In sum, Amazon is unlikely to succeed on its remaining claims.

   ***Irreparable Harm.***  Amazon tries to draw some sort of distinction between equitable *claims* and equitable *relief*, and asserts that it is also seeking the latter for its remaining claims.  This is nothing but a distraction.  A plaintiff must overcome the presumption that a preliminary injunction will not issue when the harm suffered can be remedied by money damages at the time of judgment. *Hughes Network Sys., Inc. v. Interdigital Commc'ns Corp.*, 17 F.3d 691, 693 (4th Cir. 1994). Amazon has not demonstrated that damages would be an inadequate form of relief.[12]   *JTH Tax, LLC v. Shahabuddin*, 477 F. Supp. 3d 477, 485 (E.D. Va. 2020) ("[H]arm is not 'irreparable' if it can be compensated by money damages."); *ATCS Int'l LLC v. Jefferson Contracting Corp.*, 807 F. Supp. 2d 516, 519 (E.D. Va. 2011) (where money damages are the "traditional remedy", plaintiff

---

[11] The Watson Defendants would vigorously oppose any such attempts, including but not limited to by filing a motion *in limine* to exclude all evidence of such damages.
[12] Amazon terminated Nelson's employment in June 2019 based on matters unrelated to the present litigation.  Dkt. 765 at ¶ 20.  Mr. Kirschner was terminated by Amazon in April 2020. Dkt. 765 at ¶ 17.

must demonstrate that such damages are not an adequate form of relief); *Williams v. Branch Banking & Tr. Co.*, No. 3:16-CV-00843-JAG, 2017 WL 2999973, at *1 (E.D. Va. Mar. 8, 2017) ("Under Virginia law, equitable remedies are not available if a plaintiff has an adequate remedy at law."); *see also Robins v. The Southland Corp.*, 20 Va. Cir. 80 (1990) ("The Court is not convinced plaintiffs are without an adequate remedy at law because there are means and methods of proving damages to a reasonable degree of certainty should a breach be shown by the evidence.").

Regardless, what matters is whether any "harm" was suffered, whether the alleged harm will be "irreparable" if the injunction does not remain and, if so, if there is something specific that the court can "enjoin" to prevent the harm. As explained above, Amazon has failed to identify any damages stemming from the remaining claims.[13] Indeed, as to the Lease Transactions, Amazon identified some amount of economic harm, which has been more than mitigated. Amazon has not, however, identified a shred of evidence of any damages regarding the employment contracts. All of Amazon's evidence was with respect to the Lease Transactions and that showed no damages (especially after mitigation). Even if Amazon has damages or harm

---

[13] Under Virginia law, assuming it applies, a plaintiff may be entitled to damages reflecting the benefit of its bargain. *Autopartsource, LLC v. Bruton*, No. 3:13CV54-HEH, 2013 WL 3766524, at *5 (E.D. Va. July 16, 2013). "[T]he object of the law in awarding damages is to make amends or reparations by putting the party injured in the same position, as far as money can do it, as he would have been if the contract had been performed." *Appalachian Power Co. v. John Stewart Walker, Inc.*, 201 S.E.2d 758, 767 (Va. 1974) (quoting *Lehigh Portland Cement Co. v. Virginia Steamship Co.*, 111 S.E. 104, 109 (Va. 1922)). Moreover, where an alleged interference causes a fiduciary not to reveal information that allegedly would have caused the rejection of a transaction, Virginia law is that "the measure of damages is the difference between the value of the item bargained for and the value of the item actually received." *Patel v. Anand, L.L.C.*, 564 S.E.2d 140, 143 (Va. 2002) (internal quotation marks and citations omitted). Amazon's fundamental damages argument is that the Watson Defendants conspired with Mr. Nelson and Mr. Kirschner to breach (unspecified) contracts to cause Amazon to enter transactions that it would not have. But the Court already has conclusively determined that those transactions did not harm Amazon. Amazon has offered no other evidence of damages. Therefore, Amazon similarly cannot prevail on its tortious interference claim.

relating to the employment contracts (there is none), they are certainly nothing warranting an injunction of any sort.

Amazon also points to the likelihood of dissipation of assets to support its arguments.  First, Amazon grossly exaggerates the risk of dissipation.  The Watson Defendants were held in contempt because they could not afford to place $21.25 million into escrow (which was confirmed by the Receiver's first report).  The other various spending events that Amazon points to occurred several years ago.  *See, e.g., Cooke v. Lancelotta*, No. CV SAG-22-297, 2022 WL 622229, at *5-6 (D. Md. Mar. 3, 2022) ("especially when it comes to monetary harm, merely pointing to past financial wrongdoing does not assure this Court that further wrongdoing is imminent").  The Watson Defendants provided a response to the Receiver's Second Quarterly Report identifying legitimate explanations for such activity.  Dkt. 726.  Moreover, the Receiver has confirmed that there are hardly any assets to dissipate.  Indeed, during the receivership, several of the Watson Defendants' assets have been lost due to foreclosure or sold.  More importantly, given the lack of damages, Amazon needs to *at a minimum* show why a preliminary injunction requiring the Watson Defendants to escrow a specific sum of money is warranted, rather than simply enjoin the Watson Defendants from transferring or disposing of assets beyond the ordinary course.  *See Hughes Network Sys., Inc*, 17 F.3d at 694 (explaining that when a defendant may become insolvent before a final judgment is reached, preliminary injunctions "are carefully tailored, generally operating simply to preserve the plaintiff's opportunity to receive an award of money damages at judgment").  Amazon has failed to demonstrate how and why it currently faces actual and imminent harm.  *See Philips Med. Sys. v. Tec Holdings, Inc.*, No. 3:19-CV-373-MOC-DCK, 2022 WL 10208557, at *19 (W.D.N.C. Oct. 17, 2022) (finding no irreparable harm where plaintiff's claimed damages were likely highly inflated).

***Balance of the Equities.*** The balance of the equities also falls against Amazon. *Winter*, 555 U.S. at 51. When a preliminary injunction requires a party to perform an act, as is the case here, extra caution is required. If Amazon can prove its case and damages (which is unlikely), it will be entitled to a judgment and all of the collection rights that go with it. Amazon should not be entitled to continue to paralyze the Watson Defendants with an enormous prejudgment order it obtained when it claimed it had $50 million in damages, that was entered without full due process, and is now in an amount that no longer has any basis. The purpose of a preliminary injunction is to preserve the status quo—not to be punitive. The preliminary injunction will certainly fall into the latter camp if it is allowed to continue. The receivership is also incredibly expensive—the fees and expenses of the Receiver and his professionals, and the Receiver's counsel, are significant. Amazon has elected to pay these unpaid fees, but has purportedly reserved the right to seek recovery of said fees from the Watson Defendants. It is a significant hardship that the Receiver and his team and counsel continue to rack up millions of dollars in fees and costs that the Watson Defendants are supposedly responsible for (they disagree).

The Watson Defendants have been significantly harmed since the imposition of the preliminary injunction and the receivership. These harms will only be exacerbated should the preliminary injunction not be vacated and the receivership lifted in an orderly and timely fashion. Certain of these harms were outlined in the Watson Defendants' Motion. Dkt. 1386 at 12. Mr. Watson identifies additional harms that he has suffered specifically during the period of the receivership in the declaration attached as Exhibit E to the Bodner Declaration.[14] These are all

---

[14] The Watson Defendants do not concede that they are not allowed to recover damages suffered during the time between the preliminary injunction and the receivership. The Watson Defendants also do not agree that any potential recovery for the harms they have suffered is limited to the amount of the bond posted by Amazon.

17

harms that he suffered as the actual and proximate result from the injunction.  *See Network Int'l L.C. v. Worldcom Techs., Inc.*, 133 F. Supp. 2d 713, 719 (D. Md. 2001).  The Watson Defendants are more than willing and able to provide additional information regarding such harms at a hearing if the Court believes it would be helpful.

### III.   To the Extent the Preliminary Injunction Continues, this Court Should Order Amazon to Post a Bond of $50 Million.

The Watson Defendants hope and expect that this Court will grant its Motion.  If this Court does not, the Watson Defendants request that the Court order Amazon to post a bond of $50 million that could be promptly released to the Watson Defendants if the remaining claims are resolved in favor of the Watson Defendants.  Pursuant to Federal Rule 65(c), a court may issue a preliminary injunction "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  Fed. R. Civ. Pro. 65(c).  During the April 28, 2020 *ex parte* motion hearing, Judge O'Grady ordered Amazon to post a bond.  Ex. F to Bodner Decl.  In doing so, Judge O'Grady noted that the amount of the bond was "certainly something that can be revisited if necessary as the case progresses, but, as an initial matter, I think a $2 million bond is appropriate."  *Id.* at 15.  The Watson Defendants were not present for that *ex parte* hearing.  But to the extent the preliminary injunction is allowed to continue, the amount of the bond must now be revisited.  Given that nearly all of Amazon's claims have been dismissed, the likelihood that Amazon is exaggerating or inflating any damages it may have suffered from the remaining claims, and the harms that the Watson Defendants have experienced throughout the duration of the injunction and receivership, a significantly larger bond is appropriate to protect the Watson Defendants from the significant risk of being wrongfully enjoined.

## **CONCLUSION**

In sum, this Court should vacate the preliminary injunction.  The original basis for the preliminary injunction no longer exists, and Amazon has failed to demonstrate that it is entitled to the "extraordinary and drastic remedy" of a preliminary injunction for its remaining claims.  *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008).  In the event this Court disagrees, given the heightened risk that the Watson Defendants are being wrongfully enjoined, Amazon should be required to post a bond of $50 million.

\*   \*   \*   \*   \*

Dated: April 24, 2023

Respectfully submitted,

*/s/ Jeffrey R. Hamlin*
Jeffrey R. Hamlin (Va. Bar No. 46932)
George R. Calhoun V (*pro hac vice*)
James Trusty (*pro hac vice*)
IFRAH PLLC
1717 Pennsylvania Avenue NW Suite 650
Washington, DC 20006-2004
(202) 524-4140 – Tel.
(202) 524-4141 – Fax
jhamlin@ifrahlaw.com
george@ifrahlaw.com
jtrusty@ifrahlaw.com

Stanley L. Garnett (*pro hac vice*)
Sara R. Bodner (*pro hac vice*)
Garnett Powell Maximon Barlow
1512 Larimer St. Suite 950
Denver, CO 80202
(303) 991-3344 – Tel.
stan.garnett@garnettlegalgroup.com
sara.bodner@garnettlegalgroup.com

Amanda K. Houseal (*pro hac vice*)
Leah Regan-Smith (*pro hac vice*)
Rosa L. Baum (*pro hac vice*)
Brownstein Hyatt Farber Schreck, LLP
410 17th Street, Suite 2200
Denver, CO 80202
Telephone: (303) 223-1100
Facsimile: (303) 223-1111
ahouseal@bhfs.com
lregansmith@bhfs.com
rbaum@bhfs.com

*Counsel for the Watson Defendants*

1