**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| AMAZON.COM, INC. and AMAZON DATA SERVICES, INC., <br><br> Plaintiffs, <br><br> v. <br><br> WDC HOLDINGS LLC dba NORTHSTAR COMMERCIAL PARTNERS et al., <br><br> Defendants. <hr> 800 HOYT LLC, <br><br> Intervening Interpleader Plaintiff, Intervening Interpleader Counter-Defendant, <br><br> v. <br><br> BRIAN WATSON, WDC HOLDINGS, LLC, BW HOLDINGS, LLC, <br><br> Interpleader Defendants, <br><br> AMAZON.COM, INC., and AMAZON DATA SERVICES, INC., <br><br> Interpleader Defendants, Interpleader Counter-Plaintiffs. | CASE NO. 1:20-CV-484-RDA-IDD |

**RECEIVER'S SIXTH QUARTERLY REPORT
(QUARTER ENDING MARCH 31, 2023)**

Mark A. Roberts (the "Receiver"), as receiver of WDC Holdings LLC dba Northstar Commercial Partners LLC ("WDC"), R. Brian Watson ("Mr. Watson" and together with WDC, "Defendants"), and Defendants' respective assets, by and through undersigned counsel, hereby submits this sixth quarterly report (the "Sixth Quarterly Report") covering the period from January 1, 2023 through March 31, 2023 (the "Sixth Reporting Period").

## I. BACKGROUND

1.      On October 27, 2021, the Court entered its Order Granting Plaintiffs' Motion to Hold Defendants Brian Watson & WDC Holdings in Civil Contempt [Dkt. 413] (the "Contempt Order").  The Contempt Order provided that the Court would separately enter an order appointing a receiver pursuant to 28 U.S.C. § 754 and Fed. R. Civ. P. 66, with the full power of an equity receiver and at Defendants' expense, for the purpose of preventing further irreparable harm to Plaintiffs and coercing Defendants' compliance with the Court's Injunction. Dkt. 413 ¶ 2.

2.      On November 23, 2021, the Court entered its Order Appointing Receiver and Ordering Turnover of Property to the Receiver [Dkt. 433] (the "Receivership Order"), appointing Mark A. Roberts as Receiver of Defendants and the Assets.[1]

3.      The Receivership Order directs the Receiver to provide quarterly reports to Defendants, Plaintiffs, and the Court detailing (i) the Receiver's disbursements for costs incidental to the receivership activities, (ii) any payments to or for the expense of Defendants, and (iii) the Receiver's activities and the financial and operational status of Defendants. *See* Receivership Order ¶ 5(h). The Receivership Order further directs the Receiver to maintain accurate accounting and other records of his activities in connection with the receivership and file reports on a quarterly basis detailing the results from the Receiver's collections, operations, and distributions of the Assets.  *Id.* ¶ 16.

4.      During the Sixth Reporting Period, the Court addressed multiple requests made by the Defendants to terminate and/or modify the receivership proceeding.  On January 11, 2023, the Court entered its Order [Dkt. 1153] denying the *Motion to Clarify Order Appointing Receiver and*

---

[1]  Capitalized terms used but not defined herein shall have the meanings assigned to them in the Receivership Order.

*Ordering Turnover of Property* [Dkt. 1083], asking the Court to direct payment by the Receiver of certain obligations.  Three weeks later, the Defendants filed their *Motion to Clarify Order Appointing Receiver and Ordering Turnover of Property to Receiver Regarding Amazon's Undisclosed Payments to Receiver* [Dkt. 1240], asking the Court for various forms of relief regarding payments to the Receiver or his counsel.  After substantial briefing during the Sixth Reporting Period, the Court denied this motion in its entirety by Order dated March 24, 2023. [Dkt. 1297].  After the Sixth Reporting Period, on April 13, 2023, the Defendants again asked the Court to vacate the Injunction and terminate the receivership.  [Dkt. 1385].  The Receiver responded on April 21, 2023 [Dkt. 1394], and the Defendants' motion remains under advisement with the Court.

5.     The Receiver previously filed quarterly reports with the Court on January 18, 2022 [Dkt. 495], April 27, 2022 [Dkt. 702], July 29, 2022, [Dkt. 898], November 1, 2022 [Dkt. 1082], and January 26, 2023 [Dkt. 1208], respectively, regarding the Receiver's activities during the applicable quarterly periods through December 31, 2022.

## II.  GENERAL OVERVIEW

6.     The Receiver's activity during the Sixth Reporting Period focused on maintaining the Assets while limiting ongoing expenses with the ultimate goal of seeking Defendants' compliance with the Court's Injunction in accordance with the Receivership Order.  Efforts to monetize the Assets in furtherance of the Injunction were complicated by adverse market conditions and rising interest rates.  At this time, there are insufficient funds to meet the requirements of the Injunction.  Defendants' operations are complex, involving hundreds of different legal entities (many of which are now inactive or no longer affiliated with Defendants), numerous ongoing litigations and disputes, and various active real estate investment assets that typically involve separate capital, management, and ownership structures.  The Receiver's activity

3

during the Sixth Reporting Period also involved managing, preserving, and maximizing the value of these current Assets.

### III.   RECEIVER'S ASSESSMENT OF DEFENDANTS' FINANCIAL CONDITION AND OPERATIONS

#### A.   Description of Near-Term Financial Situation

7.      Defendants have insufficient cash or other liquid assets to begin satisfying the Court's Injunction while also paying the costs of the receivership and the essential personal and business expenses of Defendants.  Cash generated during the Sixth Reporting Period remains substantially below levels needed to fund Defendants' various ongoing liabilities while also satisfying the Injunction.

8.      Attached as Exhibit A is a cash flow statement reflecting the results of cash receipts and disbursements during the Sixth Reporting Period for Defendants and their wholly owned entities on a consolidated basis.[2]  Total receipts for the period were approximately $635,219, and total disbursements were approximately $1,340,544, for net cash flow for Defendants of approximately negative $705,326.   As reflected in Exhibit A, a substantial portion of disbursements by the Receiver during the Sixth Reporting Period represent "pass-through" payment of proceeds from the Debtors' D&O insurance policy to professionals representing Defendants in connection with this litigation, as well as in related governmental investigations, in accordance with this Court's Order entered January 21, 2022, granting Defendants' Motion for Approval of Receivership Disbursement to Cover Legal Fees [Dkt. 502, as modified by Dkts. 1069 and 1075].  Excluding the "pass-through" amounts, receipts were $297,713 during the period,

---

[2] The chart on Exhibit A does not reflect receipts and disbursements with respect to special purpose entities that own real estate assets where the Receiver acts as manager for the entity or property, as those cash activities are specific to the properties and do not reflect Defendants' financial condition.

disbursements were $183,743, and net cash flow was positive $113,970. Disbursements in the Sixth Reporting Period also included funding of the monthly budget for Mr. Watson's personal expenses and certain operating expenses of the businesses, such as payroll and accounting. To date, the Receiver has paid current all expenses incurred during the receivership necessary to operate the businesses and maintain the Assets. As of March 31, 2023, the total unrestricted cash balance for Defendants' wholly owned bank accounts managed by the Receiver was $186,375.

9.      In addition to Defendants' obligations under the Injunction, Defendants have substantial obligations owing to other third parties incurred before entry of the Receivership Order, including federal and state taxes, personal and business loans (certain of which are secured by collateral, including the C Lazy U Ranch property), and office lease termination damages or other routine accounts payable, as well as outstanding debt guarantees that Mr. Watson executed personally with respect to loan obligations of certain real estate investment entities, some of which have events of default implicated by the Receiver's appointment. These liabilities total tens of millions of dollars, including contingent and unmatured amounts. These creditors are prohibited from pursuing collection actions against Defendants by operation of the stay in Paragraph 11 of the Receivership Order.

10.      On February 23, 2023, Pacific Premier Bank ("Pacific Premier") filed a motion [Dkt. 1267] and supporting memorandum of law [Dkt. 1268] seeking to intervene in this Action for purposes of requesting modification of the Receivership Order to permit Pacific Premier to commence an action to enforce Mr. Watson's alleged obligations under a personal guaranty. On March 9, 2023, the Receiver filed a response to Pacific Premier's Motion [Dkt. 1289], and Pacific Premier filed a reply in support of the Pacific Premier Motion [Dkt. 1292] on March 15, 2023.[3]

---

[3] Also on March 9, 2023, the Defendants filed two oppositions to the Pacific Premier Motion [Dkts. 1288 and 1290.]

**B.      Management of Mr. Watson's Personal Expense Budget**

11.     Under the Receivership Order, the Receiver may "authorize and approve, in his sole discretion, a monthly budget of $10,000 for Watson's personal expenses, subject to the Receiver's authority to approve, in his sole discretion, advance written requests for specific personal expenditures in excess of this amount up to a monthly total of $50,000."  Receivership Order ¶ 5(c).  Any monthly expenditure for Mr. Watson's personal expenses in excess of $50,000 requires Court approval.  *Id*.

12.     Based on the Receiver's review of Defendants' financial activity and available assets, the Receiver funded a $13,000/month personal expense allocation for Mr. Watson (the "Budget"), which reflects an increase of $1,000/month effective as of January 1, 2023. In addition to the Budget amounts, which have been funded on a monthly basis, the Receiver has separately funded various other personal expenses upon request during the Sixth Reporting Period, including travel for Mr. Watson in connection with depositions and other litigation activities, life insurance premiums, health insurance benefits for Mr. Watson and his family, education expenses related to Mr. Watson's children, and other specific expenses that the Receiver determined would preserve Defendants' assets or otherwise further the purposes of the Receivership Order.  The Receiver, however, has rejected certain requests from Mr. Watson for additional funding of matters the Receiver believes are not consistent with the Receivership Order.  During the course of the receivership, Mr. Watson has routinely issued threats of litigation against the Receiver in an effort to persuade the Receiver to pay additional personal items, including pre-receivership debts and other expenses inconsistent with the Receivership Order. The Receiver will continue working with Mr. Watson on these issues and attempt to develop solutions where appropriate.

## C.      Description of Certain Activities

13.      On September 23, 2022, the Receiver filed a motion [Dkt. 1034] (the "1221 Broadway Sale Motion") for entry of an order approving the Receiver's sale of a five percent (5%) tenant-in-common interest (the "1221 Broadway Interest") in an office condominium located at 1221 Broadway, Denver, Colorado.  On October 7, 2022, the Defendants filed their response in opposition to the 1221 Broadway Sale Motion [Dkt. 1066], and the Receiver subsequently filed a reply in support of the 1221 Broadway Sale Motion [Dkt. 1074] on October 13, 2022.  The 1221 Sale Broadway Motion is fully briefed and remains pending, and the sale of the 1221 Broadway Interest is conditioned upon entry of an order granting the 1221 Broadway Sale Motion.  The Receiver continues to believe that consummation of the transaction described in the 1221 Broadway Sale Motion remains warranted and in the best interests of the receivership, as it would result in gross proceeds of approximately $700,000.  Given that the proposed purchaser of the 1221 Broadway Interest has expressed concerns regarding the delay in closing the sale, the Receiver stands ready to attend a status conference or provide any additional material should the Court find it helpful as it considers the 1221 Broadway Sale Motion.

14.      Also on September 23, 2022, intervenor Wilmington Trust, National Association, as Trustee for the Registered Holders of the Bancorp Commercial Mortgage 2019-CRE6 Trust, Commercial Mortgage Pass-Through Certificates (the "Sugar Creek Lender"), filed a motion [Dkt. 1024] and supporting memorandum of law [Dkt. 1025] (collectively, the "Lender Motion"), seeking to modify the Receivership Order to permit the Lender to exercise various remedies in connection with its loan secured by a suburban Houston office building located at 77 Sugar Creek Boulevard, Sugar Land, Texas (the "Sugar Creek Property").  On October 7, 2022, the Receiver filed a response to the Lender Motion [Dkt. 1068, the "Receiver Response"], and the Sugar Creek

Lender filed a reply in support of the Lender Motion [Dkt. 1073] on October 13, 2022.[4]  After discussion, the Lender and the Receiver reached agreement regarding the relief requested in the Lender Motion, resulting in this Court's entry of a stipulated order granting the Lender Motion based on the terms set forth therein [Dkt. 1152] on January 11, 2023.  Through a trustee's sale conducted on February 7, 2023, the Sugar Creek Property was sold to a designee of the Sugar Creek Lender for a purchase price of $19,000,000, paid via partial credit against amounts owed to the Sugar Creek Lender.  The Sugar Creek Lender had asserted a loan payoff amount of $23,708,139, less certain credits.  Under the terms of the stipulated order, upon such sale, the Sugar Creek Lender released Mr. Watson from any liability in connection with his personal guaranty of the loan.  The Receiver also negotiated with the Sugar Creek Lender to allow cash of approximately $465,802, net of costs, to be returned to the outside equity investors in the Sugar Creek Property, which distribution remains forthcoming.

### D.    Tax Liabilities

15.    When the Receiver was appointed on November 23, 2021, Mr. Watson's 2020 federal and state tax liabilities—approximately $880,000 at the time—were already past due.  As

---

[4] As described in the Receiver Response, after his appointment, the Receiver determined that the Sugar Creek Property was worth substantially less than the premium purchase price paid by the Sugar Creek Owner in 2019 to acquire the Sugar Creek Property and that other recent developments, including interest rate increases and the broader deterioration of the suburban office real property market, put further downward pressure on the value of the Sugar Creek Property.  Shortly after his appointment, the Receiver—acting as manager of the applicable entity on behalf of Mr. Watson—negotiated an agreement with one of the existing outside investors under which such investor would acquire Mr. Watson's management rights and other interests in Sugar Creek Parent and pursue its own restructuring of the loan, which was substantially underwater.  Several months later, however, the proposed purchaser advised the Receiver that it could not obtain the financing necessary to consummate the proposed transaction.  During the Fourth Reporting Period, the Securities and Exchange Commission filed a complaint against Mr. Watson asserting that certain representations by Mr. Watson to potential outside investors for various transactions, including in connection with the Sugar Creek Property prior to the Receiver's appointment, were false, misleading, and/or fraudulent.  Dkt. 1082 ¶ 12.  Notwithstanding these challenging circumstances, which were compounded by a loan default, a loan maturity, and a personal guaranty by Mr. Watson of certain loan obligations, the Receiver was able to obtain to reach resolution with the Sugar Creek Lender [Dkt. 1152] to enable a return by the Receiver of certain funds to outside investors who invested equity in the property, as well as a release by the Sugar Creek Lender of the loan guaranty executed by Mr. Watson.

of the Receiver's appointment, Mr. Watson had made no provision for paying taxes in 2020 or 2021, as he had made no estimated payments and had reserved no cash for such obligations. Upon the Receiver's appointment, Mr. Watson's personal bank accounts held less than $1,000. Dkt. 702 ¶ 15. As detailed in the Receiver's Second Quarterly Report, during the Injunction Period from April 2020 to November 2021, Mr. Watson collected approximately $3.0 million in cash deposits into his bank accounts (separate from amounts he directed to third parties from the disposition of certain assets). *Id.* ¶ 15 and Ex C. Mr. Watson also spent approximately $3.0 million during that time from his cash accounts, including substantial amounts for luxury travel, shopping, furnishings, and artwork for his multiple residences, while reserving no cash or assets to satisfy 2020 and 2021 tax liabilities. *Id.* Mr. Watson's 2021 federal and state tax liability was determined to be $489,062. Due to the limited resources left available to the Receiver as of his appointment, the Receiver has been unable to pay these tax liabilities, as well as certain other material liabilities that were incurred by Defendants prior to the Receiver's appointment.

16.     With respect to 2022 taxes—which covered the period in which the Receiver controlled the Assets—the Receiver has obtained tax return extensions for all required entities. In addition, the Receiver has made payments of $10,000 to the State of Colorado and $25,000 to the IRS on account of Mr. Watson's estimated 2022 taxes. Of the $10,000 paid to the State of Colorado, $5,000 was paid during the Sixth Reporting Period. The remaining $5,000 to the State of Colorado and $25,000 to the IRS was paid shortly after the Sixth Reporting Period on April 17, 2023, when extensions were filed. No tax liens or enforcement actions have been recorded or commenced. The Receiver continues to work with the taxing authorities to address the continued outstanding tax liabilities.

## E.      Status of Escrowed Proceeds from Sale of Residence

17.      In the Receiver's first quarterly report, the Receiver described Mr. Watson's attempt to consummate a sale of his primary residence (owned by his personal revocable trust) in December 2021 for $8.5 million without the approval of the Receiver.  Dkt. 495 ¶ 8.  The Receiver learned that in October 2021—while the Injunction was pending and just days before the Court's entry of the Contempt Order—Mr. Watson voluntarily executed deeds of trust to record liens on this residence in favor of certain beneficiaries, including a $500,000 lien in favor of Mr. Watson's legal counsel in this action, Brownstein Hyatt Farber Schreck, LLP ("Brownstein"), and a $1,350,949.62 lien in favor of FirsTier Bank ("FirsTier"), a lender to Mr. Watson and his entities, without disclosing such grants to the Court or the parties.  *Id*.

18.      After the Receiver obtained an emergency order from this Court confirming the Receiver's authority to control the disposition of the residence and negotiating post-closing escrow agreements with certain lienholders to provide the Receiver an opportunity to evaluate the validity and enforceability of the asserted liens, the Receiver concluded that he had sufficient grounds to challenge the validity and/or enforceability of the liens asserted by Brownstein and FirsTier.  The Receiver previously entered into a settlement agreement with Brownstein to resolve the dispute regarding the escrowed proceeds attributable to Brownstein's lien.  Dkt. 1082 ¶ 18.  The amounts attributable to FirsTier's lien remain pending in escrow.  The Receiver previously requested certain information from FirsTier in accordance with Receivership Order to evaluate potential causes of action, but FirsTier failed to comply with such requests.  Absent resolution, the Receiver may pursue claims to avoid the improvidently granted liens and seek other relief in accordance with the authority provided in the Receivership Order.  *See* Receivership Order ¶ 5(j)(f) (authorizing Receiver to "institute, defend, settle and/or adjust disputes and claims respecting the Assets,

10

including any claims to avoid transfers made with the purpose or effect of diminishing Defendants' capacity to comply with the Injunction and any claims to recover amounts that were both related to the Amazon transactions and disbursed in violation of the Injunction after it was entered on June 5, 2020").

### F.   Description of Receiver's Activities

19.   The Receiver's activities during the Sixth Reporting Period include:

- Managing Defendants' bank accounts, including accounts owned by legal entities under the direct and indirect control of Defendants;

- Acting as asset manager and/or property manager for certain real estate assets managed by Defendants;

- Funding amounts to Mr. Watson's current personal bank account in accordance with the Budget, and communicating with Mr. Watson regarding requests for additional funding;

- Managing real estate assets directly controlled by the Defendants, including marketing for sale the C Lazy U Ranch property owned by Mr. Watson (purchase offer received but no sale agreement reached);

- Paying the first half of property taxes that were due on the C Lazy U Ranch property;

- Addressing payment demands from American Express relating to charges incurred in a legal settlement that Mr. Watson funded with a business credit card prior to the Receiver's appointment;

- Making multiple attempts since the inception of the receivership to return two copy machines leased to the Defendants, with the leasing company refusing to accept such machines;

- Providing investor updates regarding the Sugar Creek Property;

- Responding to investor inquiries concerning tax matters and the status of investments;

- Paying premiums for multiple personal life insurance policies on behalf of Mr. Watson and communicating with an insurance broker to ensure policies are renewed;

- Inquiring with multiple auction companies and estate sale companies about

options for selling furniture and art and estimating potential proceeds;

- Preparing cash flow forecasts to evaluate projected cash needs and availability;

- Evaluating proposals for the purchase of Defendants' interest in certain assets and engaging in preliminary negotiations regarding such proposals;

- Reviewing and managing various current and past due expenses and liabilities incurred by Defendants prior to the Receiver's appointment;

- Coordinating with tax professionals to complete tax documents required for Mr. Watson and certain assets managed by the Defendants;

- Responding to investor inquiries, providing an investor update, and reviewing information submitted by investors;

- Working with current partners in current investments to ensure Assets and partner relationships are preserved;

- Working with partners to ensure collection of contractual fees, such as debt guarantee fees, property management fees, etc.;

- Providing notice of the Receivership Order to third parties asserting an interest in or claim against Defendants or the Assets;

- Addressing ongoing litigation involving Defendants, including seeking to stay collection actions against Defendants while preserving and pursuing potential recoveries from third parties;

- Evaluating potential claims and causes of action by Defendants against third parties that may yield recovery for the receivership;

- Continuing a review of asset dispositions by Defendants during the period between the Court's imposition of the Injunction and the appointment of the Receiver; and

- Undertaking other duties to preserve the Assets and administer the receivership, including ensuring continuation of liability insurance, debt service obligations, and evaluating professional fee obligations.

### G.    Professional Fees and Receivership Costs

21.    As described in the prior reporting periods, the Receiver remains concerned by the administrative costs necessary to execute his duties as set forth in the Receivership Order given the value of the Assets that have been identified to date.  Through the Sixth Reporting Period, the

fees and expenses incurred by the Receiver and his professionals have been substantial given the volume of activity necessary to maintain and pursue monetization of the Assets, address disputes with Mr. Watson regarding personal expenses and the scope of the Receivership Order, and the Receiver's historical review of financial activity during the Injunction Period. The Receiver previously sought payment of receivership costs from the D&O insurer that is funding Defendants' defense of the litigation, but, as of the date hereof, the insurer has not agreed to pay the receivership costs under the D&O policy.

22. The Receiver and his professionals are endeavoring to complete the substantial activity required by the Receivership Order as efficiently as possible. While the Receiver's ongoing processes associated with the Assets have largely stabilized and the Receiver anticipates that monthly receivership fees and costs will remain at reduced levels, accrued but unpaid fees of the Receiver and his professionals were substantial as of the end of the Sixth Reporting Period.

23. Under the Receivership Order, the fees and expenses of the Receiver and his professionals are to be borne by the Defendants, though Amazon is responsible for payment of receivership costs in the event immediately available funds are not available to pay such amounts upon resignation of the Receiver. Dkt 433 ¶18.

24. Professional fees and expenses incurred during the Sixth Reporting Period are as follows:

|  | Alvarez & Marsal | McGuireWoods LLP |
|---|---|---|
| January 2023 | $68,499.81 | $69,969.50 |
| February 2023 | $61,136.04 | $77,214.01 |
| March 2023 | $79,656.03 | $76,172.00 |
| Total: | $209,291.88 | $223,355.51 |

25. On March 27, 2023, the Receiver requested payment by Amazon of professional fees and expenses incurred in connection with the receivership during the monthly periods of

December 2022, January 2023, and February 2023 in the aggregate amounts of $170,496.82 for Alvarez & Marsal North America LLC and $181,293.01 for McGuireWoods LLP.  These amounts remain unpaid.  Additional professional fees and expenses, including the March 2023 fees and expenses identified in the chart above, as well as certain unpaid amounts totaling $293,539.55 that remain outstanding from prior to the Sixth Reporting Period, also remain outstanding.

### III.   RECEIVER'S RECOMMENDATIONS

26.    The Receiver recommends that the receivership continue in place through judgment to allow the Receiver further opportunity to pursue value from potentially forthcoming transactions, while also managing Defendants' expenses to avoid dissipation of such assets that are subject to the Injunction.  Upon entry of judgment, the Receiver should be discharged, subject to payment of outstanding professional fees, with such discharge to include customary findings and protections to ensure the Receiver, as a duly appointed officer of the Court, and his professionals are not subject to further litigation in these matters.  *See* Dkt. 1394.

27.    The Receiver recommends that any process to address termination of the receivership and discharge of the Receiver, whether in connection with entry of judgment or upon any earlier dissolution of the Injunction, should be conducted via separate motion to ensure all parties can be heard regarding the terms of any discharge.

Dated: April 28, 2023

Respectfully submitted,

_/s/ Aaron G. McCollough_
Aaron G. McCollough (VSB 72146)
McGuireWoods LLP
77 West Wacker Drive, Suite 4100
Chicago, IL 60601-1818
Tel.: (312) 849-8256
Fax: (312) 698-4522
amccollough@mcguirewoods.com

Joseph S. Sheerin (VSB 47400)
McGuireWoods LLP
800 East Canal Street
Richmond, VA 23219-3916
Tel.: (804) 775-1135
Fax: (804) 698-2076
jsheerin@mcguirewoods.com

_Attorneys for the Receiver_

**Certificate of Service**

I HEREBY CERTIFY that, on April 28, 2023, I caused the RECEIVER'S SIXTH QUARTERLY REPORT to be electronically filed and served using the CM/ECF System, which will transmit a Notice of Electronic Filing to counsel of record.

　　　　　　　　　　　　　　　　　　　　　　 /s/ *Aaron G. McCollough*　
　　　　　　　　　　　　　　　　　　　　　　Aaron G. McCollough

**Exhibit A - Cash Flow for Wholly-Owned Operating Entities[1]**

| | November 23 to December 31, 2021 | January 1 to March 31, 2022 | April 1 to June 30, 2022 | July 1 to September 30, 2022 | October 1 to December 31, 2022 | January 1 to March 31, 2023 | Total |
|---|---|---|---|---|---|---|---|
| Beginning Cash Balance (Restricted & Unrestricted) | $ 11,457 | $ 2,439,991 | $ 1,976,771 | $ 2,710,878 | $ 1,690,103 | $ 2,242,650 | $ 11,457 |
| **Receipts** | | | | | | | |
| Income | 32,917 | 347,890 | 124,077 | 114,225 | 232,942 | 297,713 [2] | 1,149,765 |
| Insurance Proceeds for Legal Costs | - | 617,070 | 1,757,670 | - | 1,540,745 | 337,506 [3] | 4,252,991 |
| Asset Sales: | | | | | | | |
| Gross Proceeds | 8,565,215 | 530,000 | 83,117 | - | - | - | 9,178,332 |
| Less: Cost of Sale | (546,475) | (37,120) | - | - | - | - | (583,595) |
| **Total Net Receipts** | $ 8,051,657 | $ 1,457,840 | $ 1,964,864 | $ 114,225 | $ 1,773,687 | $ 635,219 | $ 13,997,493 |
| **Disbursements** | | | | | | | |
| Payroll | $ (5,865) | $ (30,885) | $ (31,292) | $ (31,582) | $ (44,917) | $ (30,262) | $ (174,803) |
| Mr. Watson Personal Expenses | (22,333) | (50,228) | (106,748) | (98,358) | (64,780) | (88,816) [4] | (431,264) |
| Professional Fees and Expenses of Receiver and Legal Counsel | - | (207,940) | (89,302) | (20,000) | (348,893) | - [5] | (666,135) |
| Other Professional Fees | - | (11,205) | - | (125,000) | - | - | (136,205) |
| Other Operating Costs and Costs to Maintain Assets | (7,669) | (69,499) | (45,379) | (60,426) | (41,101) | (64,665) | (288,738) |
| Payment of Legal Costs from Insurance Proceeds | - | (617,070) | (958,036) | (799,634) | (721,450) | (1,156,801) [3] | (4,252,991) |
| Asset Sales: | | | | | | | |
| Mortgage Payoff | (5,587,256) | (418,698) | - | - | - | - | (6,005,955) |
| UMB Bank escrow payoff | - | (515,534) | - | - | - | - | (515,534) |
| **Total Disbursements** | $ (5,623,123) | $ (1,921,060) | $ (1,230,758) | $ (1,135,000) | $ (1,221,140) | $ (1,340,544) | $(12,471,625) |
| Net Cash Flow | 2,428,534 | (463,220) | 734,107 | (1,020,775) | 552,547 | (705,326) | 1,525,868 |
| **Ending Cash Balance (Restricted & Unrestricted)** | $ 2,439,991 | $ 1,976,771 | $ 2,710,878 | $ 1,690,103 | $ 2,242,650 | $ 1,537,325 | $ 1,537,325 |
| Personal Residence Lien Escrow Cash Balance (Restricted) | 2,366,484 | 1,850,950 | 1,850,950 | 1,350,950 | 1,350,950 | 1,350,950 [6] | 1,350,950 |
| Insurance Proceeds Escrow Cash Balance (Restricted) | - | - | 799,634 | - | 819,296 | - [3] | - |
| **Unrestricted Cash Balance** | $ 73,507 | $ 125,821 | $ 60,294 | $ 339,153 | $ 72,405 | $ 186,375 | $ 186,375 |

**Notes:**

1. Wholly-owned operating entities include WDC Holdings, Northstar Commercial Partners Management and Mr. Watson's personal bank accounts, as well escrow accounts managed by the Receiver.
2. Income during the Sixth Reporting Period primarily consisted of property management fees, asset management fees, distributions from investments and receipt of an Employee Retention Tax Credit that had been previously submitted to the IRS.
3. Insurance proceeds totaling $337k were received during the period from the Company's D&O insurance carrier. $1.1 million in insurance proceeds were paid out during the period to law firms, including amounts which had been received in the prior period.
4. Includes amounts paid to Mr. Watson for personal expenses, such as the $13k monthly budget amount, tuition and personal expenses for Mr. Watson's children, life insurance premium payments, healthcare benefits for Mr. Watson and his family, etc.
5. No payments were made during the period for fees related to the Receiver and his professionals.
6. Personal Residence Restricted Cash represents amounts held in escrow in connection with the 8 Churchill property sale proceeds relating to the following beneficiaries:
   a. UMB Bank, $515,534.26, dated 5/26/21. Amount was released from escrow in Q1 2022.
   b. Brownstein Hyatt, $500,000, dated 10/14/21. Amount was released from escrow in Q3 2022.
   c. FirsTier Bank, $1,350,949.62, dated 10/18/21. Amount remains in escrow as of 3/31/23.