IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| AMAZON.COM, INC. and AMAZON DATA SERVICES, INC., <br><br> Plaintiffs, <br><br> v. <br><br> WDC HOLDINGS LLC dba NORTHSTAR COMMERCIAL PARTNERS et al., <br><br> Defendants. | CASE NO. 1:20-CV-484-RDA-IDD |
| 800 HOYT LLC, <br><br>   Intervening Interpleader Plaintiff, <br>   Intervening Interpleader Counter-Defendant, <br><br> v. <br><br> BRIAN WATSON, WDC HOLDINGS, LLC, BW HOLDINGS, LLC, <br><br>   Interpleader Defendants, <br><br> AMAZON.COM, INC., and AMAZON DATA SERVICES, INC., <br><br>   Interpleader Defendants, <br>   Interpleader Counter-Plaintiffs. | |

**RECEIVER'S SEVENTH QUARTERLY REPORT**
**(QUARTER ENDING JUNE 30, 2023)**

Mark A. Roberts (the "Receiver"), as receiver of WDC Holdings LLC dba Northstar Commercial Partners LLC ("WDC"), R. Brian Watson ("Mr. Watson" and together with WDC, "Defendants"), and Defendants' respective assets, by and through undersigned counsel, hereby submits this seventh quarterly report (the "Seventh Quarterly Report") covering the period from April 1, 2023 through June 30, 2023 (the "Seventh Reporting Period").

## I. BACKGROUND

1.       On October 27, 2021, the Court entered its Order Granting Plaintiffs' Motion to Hold Defendants Brian Watson & WDC Holdings in Civil Contempt [Dkt. 413] (the "<u>Contempt Order</u>"). The Contempt Order provided that the Court would separately enter an order appointing a receiver pursuant to 28 U.S.C. § 754 and Fed. R. Civ. P. 66, with the full power of an equity receiver and at Defendants' expense, for the purpose of preventing further irreparable harm to Plaintiffs and coercing Defendants' compliance with the Court's Injunction. Dkt. 413 ¶ 2.

2.       On November 23, 2021, the Court entered its Order Appointing Receiver and Ordering Turnover of Property to the Receiver [Dkt. 433] (the "<u>Receivership Order</u>"), appointing Mark A. Roberts as Receiver of Defendants and the Assets.[1]

3.       The Receivership Order directs the Receiver to provide quarterly reports to Defendants, Plaintiffs, and the Court detailing (i) the Receiver's disbursements for costs incidental to the receivership activities, (ii) any payments to or for the expense of Defendants, and (iii) the Receiver's activities and the financial and operation status of Defendants. *See* Receivership Order ¶ 5(h). The Receivership Order further directs the Receiver to maintain accurate accounting and other records of his activities in connection with the receivership and file reports on a quarterly basis detailing the results from the Receiver's collections, operations, and distributions of the Assets. *Id.* ¶ 16.

4.       During the Seventh Reporting Period, the Court addressed another request made by the Defendants to terminate and/or modify the receivership proceeding. On March 24, 2023, the Court entered its Order [Dkt. 1297] denying the *Motion to Clarify Order Appointing Receiver and*

---

[1] Capitalized terms used but not defined herein shall have the meanings assigned to them in the Receivership Order.

*Ordering Turnover of Property to Receiver Regarding Amazon's Undisclosed Payments to Receiver* [Dkt. 1240], asking the Court for various forms of relief regarding payments to the Receiver and his counsel.  On April 13, 2023, the Defendants filed their *Motion to Vacate Preliminary Injunction and Appointment of Mark A. Roberts as Receiver* [Dkt. 1385] again asking the Court to vacate the Injunction and terminate the receivership.  On June 7, 2023, the Court entered its Order [Dkt 1412] denying the motion and ordering that the Preliminary Injunction and the Receivership Order remain in effect.

5. The Receiver previously filed quarterly reports with the Court on January 18, 2022 [Dkt. 495], April 27, 2022 [Dkt. 702], July 29, 2022 [Dkt. 898], November 1, 2022 [Dkt. 1082], January 26, 2023 [Dkt. 1208], and April 28, 2023 [Dkt. 1401], respectively, regarding the Receiver's activities during the applicable quarterly periods through March 31, 2023.

## II.  GENERAL OVERVIEW

6. The Receiver's activity during the Seventh Reporting Period focused on maintaining the Assets while limiting ongoing expenses with the ultimate goal of seeking Defendants' compliance with the Court's Injunction in accordance with the Receivership Order. Efforts to monetize the Assets in furtherance of the Injunction continue to be complicated by adverse market conditions and unfavorable interest rates.  At this time, there are insufficient funds to meet the requirements of the Injunction.  Defendants' operations are complex, involving hundreds of different legal entities (many of which are now inactive or no longer affiliated with Defendants), numerous ongoing litigations and disputes, and various active real estate investment assets that typically involve separate capital, management, and ownership structures.  The Receiver's activity during the Seventh Reporting Period also involved managing, preserving, and maximizing the value of these current Assets.

### III. RECEIVER'S ASSESSMENT OF DEFENDANTS' FINANCIAL CONDITION AND OPERATIONS

#### A. Description of Near-Term Financial Situation

7. Defendants have insufficient cash or other liquid assets to begin satisfying the Court's Injunction while also paying the costs of the receivership and the essential personal and business expenses of Defendants. Cash generated during the Seventh Reporting Period remains substantially below levels needed to fund Defendants' various ongoing liabilities while also satisfying the Injunction.

8. Attached as Exhibit A is a cash flow statement reflecting the results of cash receipts and disbursements during the Seventh Reporting Period for Defendants and their wholly owned entities on a consolidated basis.[2] Total receipts for the period were approximately $476,908, and total disbursements were approximately $561,427, for net cash flow for Defendants of approximately negative $84,519. As reflected in Exhibit A, a substantial portion of disbursements by the Receiver during the Seventh Reporting Period represent "pass-through" payment of proceeds from the Debtors' D&O insurance policy to professionals representing Defendants in connection with this litigation, as well as in related governmental investigations, in accordance with this Court's Order entered January 21, 2022, granting Defendants' Motion for Approval of Receivership Disbursement to Cover Legal Fees [Dkt. 502, as modified by Dkts. 1069 and 1075]. Excluding the "pass-through" amounts, receipts were $104,044 during the period, disbursements were $188,563, and net cash flow was negative $84,519. Disbursements in the Seventh Reporting Period also included funding of the monthly budget for Mr. Watson's personal expenses and

---

[2] The chart on Exhibit A does not reflect receipts and disbursements with respect to special purpose entities that own real estate assets where the Receiver acts as manager for the entity or property, as those cash activities are specific to the properties and do not reflect Defendants' financial condition.

4

certain operating expenses of the businesses, such as payroll and accounting. To date, the Receiver has paid current all expenses incurred during the receivership necessary to operate the businesses and maintain the Assets. As of June 30, 2023, the total unrestricted cash balance for Defendants' wholly owned bank accounts managed by the Receiver was $101,857.

9. In addition to Defendants' obligations under the Injunction, Defendants have substantial obligations owing to other third parties incurred before entry of the Receivership Order, including federal and state taxes, personal and business loans (certain of which are secured by collateral, including the C Lazy U Ranch property), and office lease termination damages or other routine accounts payable, as well as outstanding debt guarantees that Mr. Watson executed personally with respect to loan obligations of certain real estate investment entities, some of which have events of default implicated by the Receiver's appointment. These liabilities total tens of millions of dollars, including contingent and unmatured amounts. These creditors are prohibited from pursuing collection actions against Defendants by operation of the stay in Paragraph 11 of the Receivership Order.[3]

### B.  Management of Mr. Watson's Personal Expense Budget

10. Under the Receivership Order, the Receiver may "authorize and approve, in his sole discretion, a monthly budget of $10,000 for Watson's personal expenses, subject to the Receiver's authority to approve, in his sole discretion, advance written requests for specific personal expenditures in excess of this amount up to a monthly total of $50,000." Receivership Order ¶ 5(c). Any monthly expenditure for Mr. Watson's personal expenses in excess of $50,000 requires

---

[3] On February 23, 2023, Pacific Premier Bank ("Pacific Premier") filed a motion [Dkt. 1267] and supporting memorandum of law [Dkt. 1268] seeking to intervene in this Action for purposes of requesting modification of the Receivership Order to permit Pacific Premier to commence an action to enforce Mr. Watson's alleged obligations under a personal guaranty. On March 9, 2023, the Receiver filed a response to Pacific Premier's Motion [Dkt. 1289], and Pacific Premier filed a reply in support of the Pacific Premier Motion [Dkt. 1292] on March 15, 2023.

Court approval. *Id*.

11.     Based on the Receiver's review of Defendants' financial activity and available assets, the Receiver funded a $13,000/month personal expense allocation for Mr. Watson (the "Budget") each month during the Seventh Reporting Period. In addition to the Budget amounts, which have been funded on a monthly basis, the Receiver has separately funded various other personal expenses upon request during the Seventh Reporting Period, including litigation-related travel, life insurance premiums, health insurance benefits for Mr. Watson and his family, education and living expenses related to Mr. Watson's children, and other specific expenses that the Receiver determined would preserve Defendants' assets or otherwise further the purposes of the Receivership Order.  The Receiver, however, has rejected certain requests from Mr. Watson for additional funding of matters the Receiver believes are not consistent with the Receivership Order. During the course of the receivership, Mr. Watson has routinely issued threats of litigation against the Receiver in an effort to persuade the Receiver to pay additional personal items, including pre-receivership debts and other expenses inconsistent with the Receivership Order. The Receiver will continue working with Mr. Watson on these issues and attempt to develop solutions where appropriate.

### C.     Description of Certain Activities

12.     On September 23, 2022, the Receiver filed a motion [Dkt. 1034] (the "1221 Broadway Sale Motion") for entry of an order approving the Receiver's sale of a five percent (5%) tenant-in-common interest (the "1221 Broadway Interest") in an office condominium located at 1221 Broadway, Denver, Colorado.  On October 7, 2022, the Defendants filed their response in opposition to the 1221 Broadway Sale Motion [Dkt. 1066], and the Receiver subsequently filed a reply in support of the 1221 Broadway Sale Motion [Dkt. 1074] on October 13, 2022.  The 1221

Sale Broadway Motion is fully briefed and remains pending, and the sale of the 1221 Broadway Interest is conditioned upon entry of an order granting the 1221 Broadway Sale Motion. The Receiver continues to believe that consummation of the transaction described in the 1221 Broadway Sale Motion remains warranted and in the best interests of the receivership, as it would result in gross proceeds of approximately $700,000. Given that the proposed purchaser of the 1221 Broadway Interest has expressed concerns regarding the delay in closing the sale, the Receiver stands ready to attend a status conference or provide any additional material should the Court find it helpful as it considers the 1221 Broadway Sale Motion.

13. As described in previous quarterly reports [Dkt. 1208 ¶ 13, Dkt. 1401 ¶14], the Receiver, acting as manager on behalf of certain entities controlled by the Defendants, reached an agreement with the applicable lender in connection with a loan relating to an office property at 77 Sugar Creek Boulevard, Sugar Land, Texas (the "Sugar Creek Property"), resulting in this Court's entry of a stipulated order granting the Lender Motion based on the terms set forth therein [Dkt. 1152] on January 11, 2023. Through a trustee's sale conducted on February 7, 2023, the Sugar Creek Property was sold to a designee of the Sugar Creek Lender for a purchase price of $19,000,000, paid via partial credit against amounts owed to the Sugar Creek Lender. The Sugar Creek Lender had asserted a loan payoff amount of $23,708,139, less certain credits. Under the terms of the stipulated order, upon such sale, the Sugar Creek Lender released Mr. Watson from any liability in connection with his personal guaranty of the loan. The Receiver also successfully negotiated with the Sugar Creek Lender to allow certain cash to be returned to the outside equity investors in the Sugar Creek Property. To date, $450,000 has been distributed to investors. The Receiver is continuing to evaluate final winddown issues to close out the Receiver's activities in connection with the Sugar Creek Property investment.

### D. Tax Liabilities

14. When the Receiver was appointed on November 23, 2021, Mr. Watson's 2020 federal and state tax liabilities—approximately $880,000 at the time—were already past due. As of the Receiver's appointment, Mr. Watson had made no provision for paying taxes in 2020 or 2021, as he had made no estimated payments and had reserved no cash for such obligations. Upon the Receiver's appointment, Mr. Watson's personal bank accounts held less than $1,000. Dkt. 702 ¶ 15. As detailed in the Receiver's Second Quarterly Report, during the Injunction Period from April 2020 to November 2021, Mr. Watson collected approximately $3.0 million in cash deposits into his bank accounts (separate from amounts he directed to third parties from disposition of certain assets). *Id.* ¶ 15 and Ex C. Mr. Watson also spent approximately $3.0 million during that time from his cash accounts, including substantial amounts for luxury travel, shopping, furnishings, and artwork for his multiple residences, while reserving no cash or assets to satisfy 2020 and 2021 tax liabilities. *Id.* Mr. Watson's 2021 federal and state tax liability was determined to be $489,062. Due to the limited resources left available to the Receiver as of his appointment, the Receiver has been unable to pay these tax liabilities, as well as certain other material liabilities that were incurred by Defendants prior to the Receiver's appointment.

15. With respect to 2022 taxes—which covered the period in which the Receiver controlled the Assets—the Receiver completed and caused to be filed more than twenty federal and state 2022 tax returns for entities controlled by Mr. Watson during the Seventh Reporting Period. These returns were prepared and filed timely (after extensions) based on the information available to the Receiver. The Receiver is continuing to work with tax professionals to have Mr. Watson's personal federal and state 2022 tax returns filed in a timely manner. In addition, the Receiver has made payments of $10,000 to the State of Colorado (inclusive of $5,000 paid in the

Sixth Reporting Period) and $25,000 to the IRS on account of Mr. Watson's estimated 2022 taxes.

16. In June 2023, the Receiver received notice that, on May 31, 2023, the Internal Revenue Service ("IRS") recorded federal tax liens against Mr. Watson in the amount of $773,892.32 for tax year 2020 and $442,449.61 for tax year 2021. The Receiver has discussed the tax liens with an IRS representative who indicated no further enforcement activity would be taken at this time in light of the receivership process. The Receiver has reserved all rights regarding the validity of the tax liens in light of the Receivership Order's stay on creditor enforcement actions that renders certain actions void, and the Receiver continues to work productively with the taxing authorities to address the continued outstanding tax liabilities.

### E. Status of Escrowed Proceeds from Sale of Residence

17. In the Receiver's first quarterly report, the Receiver described Mr. Watson's attempt to consummate a sale of his primary residence (owned by his personal revocable trust) in December 2021 for $8.5 million without the approval of the Receiver. Dkt. 495 ¶ 8. The Receiver learned that in October 2021—while the Injunction was pending and just days before the Court's entry of the Contempt Order—Mr. Watson voluntarily executed deeds of trust to record liens on this residence in favor of certain beneficiaries, including a $500,000 lien in favor of Mr. Watson's legal counsel in this action, Brownstein Hyatt Farber Schreck, LLP ("Brownstein"), and a $1,350,949.62 lien in favor of FirsTier Bank ("FirsTier"), a lender to Mr. Watson and his entities, without disclosing such grants to the Court or the parties. *Id*.

18. After the Receiver obtained an emergency order from this Court confirming the Receiver's authority to control the disposition of the residence and negotiating post-closing escrow agreements with certain lienholders to provide the Receiver an opportunity to evaluate the validity and enforceability of the asserted liens, the Receiver concluded that he had sufficient grounds to

9

challenge the validity and/or enforceability of the liens asserted by Brownstein and FirsTier. The Receiver previously entered into a settlement agreement with Brownstein to resolve the dispute regarding the escrowed proceeds attributable to Brownstein's lien. Dkt. 1082 ¶ 18. The amounts attributable to FirsTier's lien remain pending in escrow. The Receiver previously requested certain information from FirsTier in accordance with Receivership Order to evaluate potential causes of action, but FirsTier failed to comply with such requests. Absent resolution, the Receiver may pursue claims to avoid the improvidently granted liens and seek other relief in accordance with the authority provided in the Receivership Order. *See* Receivership Order ¶ 5(j)(f) (authorizing Receiver to "institute, defend, settle and/or adjust disputes and claims respecting the Assets, including any claims to avoid transfers made with the purpose or effect of diminishing Defendants' capacity to comply with the Injunction and any claims to recover amounts that were both related to the Amazon transactions and disbursed in violation of the Injunction after it was entered on June 5, 2020").

### F.     Description of Receiver's Activities

19.    The Receiver's activities during the Seventh Reporting Period include:

- Managing Defendants' bank accounts, including accounts owned by legal entities under the direct and indirect control of Defendants;

- Acting as asset manager and/or property manager for certain real estate assets managed by Defendants;

- Funding amounts to Mr. Watson's current personal bank account in accordance with the Budget, and communicating with Mr. Watson regarding requests for additional funding;

- Managing real estate assets directly controlled by the Defendants, including marketing for sale and paying property taxes for the C Lazy U Ranch property owned by Mr. Watson, for which the Receiver has extended the listing agreement and received interest from multiple potential buyers;

- Extending the loan maturity for an entity managed by the Receiver on behalf of the Defendants in connection with a retail property in Wisconsin.

- Addressing purchase offer from tenant in connection with property in Illinois owned by entity managed by the Receiver on behalf of the Defendants.

- Addressing payment demands from American Express relating to charges incurred in a legal settlement that Mr. Watson funded with a business credit card prior to the Receiver's appointment;

- Making multiple attempts since the inception of the receivership to return two copy machines leased to the Defendants, with the leasing company refusing to accept such machines;

- Providing investor updates regarding the Sugar Creek Property;

- Responding to investor inquiries as it pertains to tax matters and status of investments;

- Paying premiums for multiple personal life insurance policies on behalf of Mr. Watson and communicating with an insurance broker to ensure policies are renewed;

- Inquiring with multiple auction companies and estate sale companies about options for selling furniture and art and estimating potential proceeds;

- Preparing cash flow forecasts to evaluate projected cash needs and availability;

- Evaluating proposals for the purchase of Defendants' interest in certain assets and engaging in preliminary negotiations regarding such proposals;

- Reviewing and managing various current and past due expenses and liabilities incurred by Defendants prior to the Receiver's appointment;

- Coordinating with tax professionals to complete tax documents required for Mr. Watson and certain assets managed by the Defendants;

- Responding to investor inquiries, providing an investor update and reviewing information submitted by investors;

- Working with current partners in current investments to ensure Assets and partner relationships are preserved;

- Working with partners to ensure collection of contractual fees, such as debt guarantee fees, property management fees, etc.;

- Providing notice of the Receivership Order to third parties asserting an interest in or claim against Defendants or the Assets;

- Addressing ongoing litigation involving Defendants, including seeking to stay

- collection actions against Defendants while preserving and pursuing potential recoveries from third parties;

- Evaluating potential claims and causes of action by Defendants against third parties that may yield recovery for the receivership;

- Continuing a review of asset dispositions by Defendants during the period between the Court's imposition of the Injunction and the appointment of the Receiver; and

- Undertaking other duties to preserve the Assets and administer the receivership, including ensuring continuing of liability insurance, debt service obligations, and evaluating professional fee obligations.

### G.     Professional Fees and Receivership Costs

21.     As described in the prior reporting periods, the Receiver remains concerned by the administrative costs necessary to execute his duties as set forth in the Receivership Order given the value of the Assets that have been identified to date.  Through the Seventh Reporting Period, the fees and expenses incurred by the Receiver and his professionals have been substantial given the volume of activity necessary to maintain and pursue monetization of the Assets, address disputes with Mr. Watson regarding personal expenses and the scope of the Receivership Order, and the Receiver's historical review of financial activity during the Injunction Period.  The Receiver previously sought payment of receivership costs from the D&O insurer that is funding Defendants' defense of the litigation, but, as of the date hereof, the insurer has not agreed to pay the receivership costs under the D&O policy.

22.     The Receiver and his professionals are endeavoring to complete the substantial activity required by the Receivership Order as efficiently as possible.  While the Receiver's ongoing processes associated with the Assets have largely stabilized and the Receiver anticipates that monthly receivership fees and costs will remain at current reduced levels, accrued but unpaid fees of the Receiver and his professionals were substantial as of the end of the Seventh Reporting Period.

23. Under the Receivership Order, the fees and expenses of the Receiver and his professionals are to be borne by the Defendants, though Plaintiffs are responsible for payment of receivership costs in the event immediately available funds are not available to pay such amounts upon resignation of the Receiver. Dkt 433 ¶18.

24. Professional fees and expenses incurred during the Seventh Reporting Period are as follows:

|  | Alvarez & Marsal | McGuireWoods LLP |
|---|---|---|
| April 2023 | $77,511.65 | $93,393.93 |
| May 2023 | $90,417.24 | $24,647.96 |
| June 2023 | $51,670.78 | $41,151.54 |
| Total: | $219,599.67 | $159,193.43 |

25. On March 27, 2023, the Receiver requested payment from Plaintiffs of professional fees and expenses incurred in connection with the receivership during the monthly periods of December 2022, January 2023, and February 2023. These amounts remain unpaid. Throughout the Seventh Reporting Period, the Receiver has renewed requests to Plaintiffs for payments of the receivership expenses, which continue to accrue. Through the end of June 2023, the total amount of $469,752.52 remains outstanding to Alvarez & Marsal North America LLC and $710,197.99 remains outstanding to McGuireWoods LLP.

### III.   RECEIVER'S RECOMMENDATIONS

26. Subject to resolution of the outstanding and continuing professional fee amounts, the Receiver recommends that the receivership continue in place through judgment to allow the Receiver further opportunity to pursue value from potentially forthcoming transactions, while also managing Defendants' expenses to avoid dissipation of such assets that are subject to the Injunction. Upon entry of judgment, the Receiver should be discharged, subject to payment of any outstanding professional fees, with such discharge to include customary findings and protections

to ensure the Receiver, as a duly appointed officer of the Court, and his professionals are not subject to further litigation in these matters. *See* Dkt. 1394.

27. The Receiver recommends that any process to address termination of the receivership and discharge of the Receiver, whether prior to or in connection with entry of judgment, should be conducted via separate motion to ensure all parties can be heard regarding the terms of any discharge.

Dated: July 31, 2023

Respectfully submitted,

 /s/   *Aaron G. McCollough*
Aaron G. McCollough (VSB 72146)
McGuireWoods LLP
77 West Wacker Drive, Suite 4100
Chicago, IL 60601-1818
Tel.: (312) 849-8256
Fax: (312) 698-4522
amccollough@mcguirewoods.com

Joseph S. Sheerin (VSB 47400)
McGuireWoods LLP
800 East Canal Street
Richmond, VA 23219-3916
Tel.: (804) 775-1135
Fax: (804) 698-2076
jsheerin@mcguirewoods.com

*Attorneys for the Receiver*

## Certificate of Service

I HEREBY CERTIFY that, on July 31, 2023, I caused the RECEIVER'S SEVENTH QUARTERLY REPORT to be electronically filed and served using the CM/ECF System, which will transmit a Notice of Electronic Filing to counsel of record.

    /s/ *Aaron G. McCollough*
Aaron G. McCollough