IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| AMAZON.COM and AMAZON DATA SERVICES, INC., <br><br> Plaintiffs, <br><br> v. <br><br> WDC HOLDINGS LLC dba NORTHSTAR COMMERCIAL PARTNERS, et al. <br><br> Defendants. | Civil Action No. 1:20-CV-484-RDA-IDD |
| 800 HOYT LLC, <br><br> Intervening Interpleader Plaintiff / Intervening Interpleader Counter - Defendant, <br><br> v. <br><br> BRIAN WATSON; WDC HOLDINGS LLC; BW HOLDINGS, LLC, <br><br> Interpleader Defendants, <br><br> and <br><br> AMAZON.COM, et al. <br><br> Interpleader Defendants / Interpleader Counter-Plaintiffs. | |

## **WATSON DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO STAY**

Defendants WDC Holdings LLC, dba Northstar Commercial Partners, Brian Watson, Sterling NCP FF, LLC, Manassas NCP FF, LLC, and NSIPI Administrative Manager (collectively, the "Watson Defendants"), through undersigned counsel, submit this response in opposition to

1

Plaintiffs Amazon.com, Inc. and Amazon Data Services, Inc.'s (collectively, "Amazon" or "Plaintiffs") Motion for a Stay Pending Appeal (Dkt. 1438) (the "Motion").

## INTRODUCTION

This never-ending civil litigation continues to be a living nightmare for Brian Watson, the Watson family, and the Watson Defendants. After almost 41 months, Brian Watson is only 47 days away from a long-anticipated trial and judgment, which is a jury determination on the facts and evidence. Now, without even acknowledging the draconian impact of the preliminary injunction and the receivership in place to enforce it, Amazon seeks in its latest Motion to prolong the Watson Defendants' suffering and delay trial and judgment. This once again confirms that Amazon's strategy is a war of attrition. This is a strategy uniquely available to Amazon, a multi-billion-dollar Goliath, and designed to crush the Watson Defendants. It is astonishing that Amazon's Motion acknowledges only once the injunction to which the Watson Defendants are subject, and even then, only in passing (in a footnote), and entirely ignores the receivership. *See* Dkt. 1439 at 7, n.4. Accordingly, because Amazon fails to acknowledge the very tangible, irreparable harm that an indefinite extension of the injunction and receivership will wreak on the Watson Defendants, Amazon does not satisfy its burden in seeking a stay. If the Court is inclined to grant Amazon's Motion, then the Watson Defendants request that the Court also vacate the injunction and terminate the receivership, or alternatively, terminate the receivership and stay enforcement of the injunction pending resolution of Amazon's appeal.

## BACKGROUND

As this Court is aware, this case has a lengthy history dating back to April 2020. On April 27, 2020, Amazon filed a motion requesting an *ex parte* TRO and preliminary injunction against

2

the Watson Defendants. Dkt. 9. In support of this application, Amazon submitted a Verified Complaint, multiple false declarations (that were later withdrawn), and certain documents. Dkts. 1; 12; 12-40; 12-43. The Verified Complaint contained 11 claims for relief. Dkt. 1. The Court granted the *ex parte* TRO against the Watson Defendants on April 28, 2020, and set a show cause hearing on the preliminary injunction. Dkt. 16. The show cause hearing on the preliminary injunction was held remotely by conference call (due to COVID-19) on May 21, 2020. The Court ultimately granted the motion for a preliminary injunction, explaining that the amount to be placed into escrow was "narrowly tailored to the circumstances of this case." Dkt. 69-5 at 51. The Court subsequently entered the Order Granting Preliminary Injunction. Dkt. 57. The Watson Defendants appealed a portion of that order to the Fourth Circuit, which affirmed the injunction on the basis that the district court had "retained its equitable authority to preserve the status quo pending judgment if Amazon asserted a cognizable claim to specific Northstar assets or sought a remedy involving those assets." *Amazon.com, Inc. v. WDC Holdings LLC*, No. 20-1743, 2021 WL 3878403, at *5 (4th Cir. Aug. 31, 2021).

The Watson Defendants thereafter complied with all of the requirements of the injunction except for the mandatory portion requiring the escrow of approximately $25 million. Because the Watson Defendants did not have the funds to escrow and were unable to secure funds of anywhere near the amount ordered, the Watson Defendants were found to be in contempt. Dkt. 413. The Court appointed a receiver (hereinafter, the "Receiver") on November 24, 2021, the day before Thanksgiving, to take total control of the Watson Defendants' assets, including the complete operation of Northstar Commercial Partners ("Northstar"), which is the primary business that Brian Watson founded 23 years ago and owns solely. Dkt. 433. The Receiver has since filed seven quarterly reports. Dkts. 495; 702; 898; 1082; 1208; 1401; 1428. These reports have

confirmed that the Watson Defendants are not hiding millions of dollars, and they do not have anywhere near enough funds to comply with the mandatory escrow requirement—as the Watson Defendants stated all along. The reports also confirm that the only party conceivably benefiting from the receivership is the Receiver and his counsel—they have incurred several millions of dollars in fees and costs to date. Given that the Watson Defendants' assets could not pay such exorbitant fees and costs, the Receiver and his counsel arrived at an agreement with Amazon without the knowledge or involvement of the Watson Defendants, whereby Amazon agreed to pay the fees and costs of the receivership. The Watson Defendants are not aware of the status of that agreement but the Receiver's latest report indicated that the Receiver has "renewed requests to Plaintiffs for payments of the receivership expenses, which continue to accrue." Dkt. 1428 at 13. According to the Receiver, "[t]hrough the end of June 2023, the total amount of $469,752.52 remains outstanding to Alvarez & Marsal North America LLC and $710,197.99 remains outstanding to McGuireWoods LLP." *Id.* It is reasonable to assume that these fees and expenses have only grown since the Receiver's latest report, and may exceed $10 million if the injunction and receivership status quo continue pending appeal.

Amazon delayed progress and resolution of this case by amending its complaint three separate times since first initiating the litigation with the Verified Complaint in April 2020. Its latest iteration was filed over two years later on May 6, 2022. Dkt. 765. Following extensive fact and expert discovery, the Watson Defendants and other defendants filed various summary judgment motions. Dkts. 1162; 1167; 1172; 1175. On April 6, 2023, the Court issued its April 6, 2023 Memorandum Opinion and Order (the "Summary Judgment Order"). Dkt. 1376. The Court granted summary judgment to the Watson Defendants on Counts I, II, III, VII, and VIII of Amazon's Third Amended Complaint, leaving only two straightforward state law claims of

4


tortious interference and civil conspiracy related to the tortious interference claim. Thereafter, Amazon filed a motion requesting the Court to certify the Summary Judgment Order for interlocutory appeal or enter final judgment as to each of the dismissed claims under Rule 54(b). Dkt. 1402. The Watson Defendants and other defendants opposed Amazon's motion. Dkt. 1407.

To date, the Watson Defendants have filed two motions respectfully asking the Court to vacate the preliminary injunction and receivership. Dkts. 695; 1385. Amazon vigorously opposed both motions, and the Court ultimately denied the requested relief. Dkts. 1075; 1412.[1] This was disappointing and disheartening to the Watson Defendants, but they held out hope as they were just months away from resolving the litigation at trial in October 2023.[2] Since then, the Watson Defendants have spent significant time and tremendous expense on trial preparation, including retaining experts and trial presentation staff and meeting the trial deadlines outlined in the Court's Order regarding the same (Dkt. 1421). Trial is set to begin on October 16, 2023, just 47 days from today, and continue through October 27, 2023. Dkt. 1391. The Watson Defendants have been

---

[1] The Watson Defendants do not rehash the arguments they raised in their motions to vacate here, but respectfully disagree with the Court's denials and continue to believe that there is no longer a basis for the continued imposition of the preliminary injunction or receivership to enforce it. Notably, in rejecting the Watson Defendants' most recent motion to vacate, the Court erred in relying on *Preferred Systems Solutions, Inc. v. GP Consulting, LLC*, 284 Va. 382, 400 (2012) pertaining to tortious interference damages. That case involved the defendant's breach of an enforceable non-compete provision and the court's quantification of compensatory damages based on the defendant's post-breach profits (on the same contract) in lieu of evidence as to the plaintiff's lost profits. The court in that case held, however, that there was *no* tortious interference. Even if it had, the court's methodology for estimating damages has no application here because the Watson Defendants did not take any contract of Amazon's and Amazon has offered no evidence of lost profits.

[2] In denying Defendants' Motion to Decline Exercise of Supplemental Jurisdiction Under 28 U.S.C. 1367(c), the Court found that the interest of comity weighed in favor of retaining jurisdiction, and further explained that "burdening a state court with what could be *years* of litigation, when this Court *may just be months from [] resolving the instant case*, would frustrate rather than promote comity." Dkt. 1422 at 3 (emphasis added).

eagerly counting down the days for the October trial to commence, as they have been looking forward to finally having their day in court—after years of offensive and unfounded accusations by Amazon—so that at long last Brian Watson and his family can begin to rebuild their lives.

On August 23, 2023, the Court granted Amazon's motion seeking Rule 54(b) certification. Dkt. 1437.  Amazon thereafter filed the instant Motion seeking a stay of the instant litigation.  Dkt. 1438.  Amazon represented in its Motion that the Watson Defendants oppose the Motion, when in reality (and as conveyed to Amazon) the Watson Defendants' position is more nuanced—they oppose the Motion so long as the injunction and receivership remain in place while the proceedings are stayed.  In the never-ending nightmare that this case has become for Brian Watson and the Watson family, he is the only defendant who is laboring under the continuing crushing financial burden of the injunction and receivership, which, among other things, do not allow him to operate his own company which he founded 23 years ago, nor any of his investments or personal finances.

Amazon's Motion acknowledges the injunction and receivership only in footnote 4 of its Motion, stating perfunctorily that the "grant of a stay requires no change to this Court's injunction." Dkt. 1439.  In reality, Amazon is proposing that it continue to have outsized control over Brian Watson's personal and professional life and Northstar's business endeavors for the foreseeable future through the indefinite imposition of a supposedly temporary remedy that Amazon obtained years ago, before the facts of this case were fully developed.  In a case that has had the majority of claims thrown out by the Summary Judgment Order, had most of the several million dollars seized by the federal government returned to the various defendants and investors (discovery has shown that the federal government admits that it "seized the money too early"), recently had two guilty pleas "terminated" by the Department of Justice, had IPI (the majority equity investor) settle and dismiss its Delaware lawsuit last week with the minority investors who

6

had sued them, as well as many other positive developments for the defendants, it is appropriate for this Court to address both the injunction and receivership when evaluating Amazon's request to stay the proceedings indefinitely.

## ARGUMENT

### I. Legal Standard.

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936). When considering a request to stay proceedings, courts should consider three factors: "(1) the interests of judicial economy; (2) hardship and equity to the moving party if the action is not stayed; [and] (3) potential prejudice to the non-moving party." *Hooker v. Sirius XM Radio, Inc.*, No. 4:13CV3, 2015 WL 10937407, at *2 (E.D. Va. Sept. 25, 2015) (quoting *Buzzell v. JP Morgan Chase Bank*, No. 3:13-CV-668, 2015 WL 5254768, at *2 (E.D. Va. Sept. 9, 2015)). Judicial economy alone is "insufficient to justify . . . an indefinite stay." *Holloway v. City of Virginia Beach*, No. 2:18-CV-69, 2021 WL 3037410, at *10 (E.D. Va. July 19, 2021) (quoting *Ortega Trujillo v. Conover&Co. Commc'ns, Inc.*, 221 F.3d 1262, 1265 (11th Cir. 2000)). Likewise, "the near-certainty of re-litigating complex matters does not alone justify a stay." *Gibbs v. Plain Green, LLC*, 331 F. Supp. 3d 518, 527 (E.D. Va. 2018); *see also Sunbeam Prod., Inc. v. Hamilton Beach Brands, Inc.*, No. 3:09CV791, 2010 WL 1946262, at *4 (E.D. Va. May 10, 2010) ("The mere fact that this action will go forward, and that litigating it will cost money, is an insufficient reason to warrant a stay.").

7

"The party seeking a stay must justify it by clear and convincing circumstances outweighing potential harm to the party against whom it is operative." *Grimm v. Gloucester Cnty. Sch. Bd.*, No. 4:15CV54, 2019 WL 13184819, at *1 (E.D. Va. June 21, 2019) (quoting *Williford v. Armstrong World Indus., Inc.*, 715 F.2d 124, 127 (4th Cir. 1983)); *see also Mountain Valley Pipeline, LLC v. 0.15 Acres of Land by Hale*, No. 7:19-CV-00181, 2020 WL 365506, at *2 (W.D. Va. Jan. 22, 2020), *aff'd*, 827 F. App'x 346 (4th Cir. 2020) ("The court must be satisfied that a 'pressing need' exists, and that 'the need for a stay outweighs any possible harm to the nonmovant.'"). "In the event that there is a 'fair possibility' that granting a stay would 'work damage to someone else,' the moving party must 'make out a clear case of hardship or inequity in being required to go forward.'" *Simpson v. LLAB Trucking, Inc.*, No. 121CV00333RDAIDD, 2022 WL 2614876, at *1 (E.D. Va. Jan. 26, 2022) (quoting *Landis*, 299 U.S. at 255).

## II. Granting an Indefinite Stay Would Significantly Prejudice the Watson Defendants' Interests.

A stay of the proceedings, and the continued imposition of the injunction and receivership, would impose severe hardship and immense damage on the Watson Defendants. This case has been dragging on for almost four years in a jurisdiction known for its rocket docket. The Watson Defendants have been subject to the preliminary injunction for over three years, and the receivership for almost two years. Preliminary relief is extraordinary relief granted pre-trial until the parties can litigate the merits of a plaintiff's claims. Since the very beginning, the Watson Defendants have sought their day in court to defend themselves. And now, approximately one and half months from trial, Amazon is again trying to postpone that day indefinitely, yet at the same

time, claiming that the injunction should remain in place.[3]  There is no light at the end of the tunnel for the Watson Defendants.  That is manifestly unfair.[4]

It was Amazon's burden to demonstrate in its Motion that clear and convincing circumstances outweigh the potential harm to the Watson Defendants.  Yet tellingly, Amazon's Motion entirely ignores the harm from the indefinite extension of the injunction and receivership due to a stay.[5]  A stay pending appeal has the potential to delay the instant proceedings for an indeterminate period of time.  It is unlikely that an appellate decision would be issued until mid-2024, and possibly much later,[6] which would then likely be followed by a trial at the end of the year or first half of 2025 during which Amazon would finally be required to litigate the merits of any of its remaining claims.  A stay, while allowing the injunction and receivership to remain in place, would permit Amazon to continue to control and hamstring Brian Watson and Northstar.  Essentially, by leaving the injunction and receivership in place, Amazon gets the benefit of winning through destroying Brian Watson, his companies, and investments, even though it lost most of its claims on summary judgment and is 47 days away from losing the remaining two claims in a jury trial.  Equity should not be used to transform litigation losers into winners through delay

---

[3] Amazon's Motion states that the injunction should remain but is silent on the receivership.
[4] This is particularly so because when required to produce actual evidence of damages on the Lease Transactions, Amazon produced no such evidence. Instead, it contended that it had suffered "economic harm" of $1,330,360, an amount far less than the mitigation that Amazon admits it received. Dkts. 1259-1; 1356-3; 1356-4. Stated differently, Amazon's evidence proved that it had no damages on the Lease Transactions, flatly contradicting its representations to the Court which formed the basis for the injunction.  The evidence has also proved that the Watson Defendants had no involvement in the White Peaks and Blueridge Transactions.
[5] Several of Amazon's cited cases involve little to no discussion of prejudice to the non-moving party.  And the cases where a stay was granted are not analogous to the present circumstances.  For example, in *Creekmore v. Maryview Hospital*, 2008 WL 5100110 (E.D. Va. Dec. 2, 2008), a stay was granted in part because the length of the stay would "be for a definite and relatively short duration."  *Id.* at *6.
[6] The Fourth Circuit opinion in the partial appeal filed by the Watson Defendants regarding the injunction was issued 15 months after the appeal was filed.

9

and attrition alone.[7] Courts have found stays of many months to a year, to an indeterminate length, to cause potential prejudice. *See Simpson*, 2022 WL 2614876, at *3 ("[T]his court has found potential delays of four to six months to be 'significant' and therefore prejudicial to a non-moving party as well as instances where the expected delay is not entirely concrete."); *Gibbs*, 331 F. Supp. 3d at 528 (denying a stay due to concern about its length); *Sehler v. Prospect Mortg., LLC*, No. 1:13CV473 JCC/TRJ, 2013 WL 5184216, at *3 (E.D. Va. Sept. 16, 2013) (finding a delay of four to six months to be a "significant period of delay").

The Watson Defendants have already extensively briefed the negative impacts of the injunction and receivership in their previous motions to vacate and in the Defendants' Response in Opposition to Amazon's Motion for Final Judgment or Leave to Appeal. *See* Dkts. 1386 at 12-13; 1398 at 17-18; Dkt. 1407 at 7-8. Brian Watson even submitted a declaration attesting to harms that he and Northstar have suffered, which have only grown and been exacerbated since that time. Dkt. 1398-6. It is not an exaggeration to say that living under the preliminary injunction and receivership have made every single day a nightmare for Brian Watson and his family, while the Receiver and his counsel have incurred millions of dollars in fees and expenses to date. Amazon's onslaught against Brian Watson started when he was 48 years old, and in the prime of his earning years. He will soon turn 52 years of age. He has a wife, a baby son of 20 months old, a nine-year-old daughter, and three older children, and has had his life savings, personal and corporate credit, companies, and investments utterly destroyed by the injunction and receivership. At this point,

---

[7] The Watson Defendants are the only defendants subject to the preliminary injunction. The other defendants were subject to civil forfeiture actions with the government relating to the transactions at issue in the instant litigation, but both Casey Kirschner and Carl Nelson settled with the government and received the majority of their funds back. Thus, unlike the Watson Defendants, the other defendants are able to carry on with rebuilding their lives during the pendency of the appeal.

Brian Watson may never be able to retire, conduct business in commercial real estate again, or build back any sort of wealth. The Receiver's own reports confirm that Brian Watson's life and the state of Northstar's affairs are a far cry from what they used to be[8], and that the Watson Defendants never had sufficient assets to pay the Receiver and his counsel for their services, let alone deposit any money with the Court in an attempt to satisfy the mandatory escrow requirement of the injunction.

The Watson Defendants anticipate that Amazon may argue in response that they are considering terminating the receivership, but that the injunction should remain in place. Brian Watson is of course eager to try to regain control of his finances, businesses, and investments, and attempt to rebuild. But if the receivership is terminated, the existence of the injunction for an indefinite period of time will still cause severe hardship to Watson Defendants. As both the Plaintiffs' Memorandum in Support of Plaintiffs' Motion To Hold Defendants Brian Watson & WDC Holdings LLC In Civil Contempt (Dkt. 348) and the Court's Order on the Watson Defendants' Motion for a Preliminary Injunction Clarification (Dkt. 412) illustrate, it will be impossible for the Watson Defendants to abide by an injunction in this case and may set up the Watson Defendants for another contempt proceeding.

By example, Plaintiffs' Memorandum cites to Brian Watson's use of monies to fund his personal expenses as proof of contempt, and the Court's holding that the assets subject to the injunction are any of the Watson Defendants' "assets used in or obtained from any

---

[8] The Watson Defendants note that courts have been "reluctant to grant injunctive relief when the defendant's business could not survive the resulting costs." *Dynamic Aviation Grp. Inc. v. Dynamic Int'l Airways, LLC*, No. 5:15-CV-00058, 2016 WL 1247220, at *30 (W.D. Va. Mar. 24, 2016); *Wilson-Cook Med., Inc. v. Wiltek Med., Inc.*, 927 F.2d 598 (4th Cir. 1991) (affirming denial of injunction where preliminary relief would have a "death penalty effect" on defendant).

activities…relating to Defendants' real property transactions with Amazon" (Dkt. 412 at 4) means that virtually anything the Watson Defendants do with regard to expending funds may result in the Watson Defendants again being held in contempt of Court. This is an untenable situation and one that under no circumstances should be considered fair or just for defendants who have not even had their day in court—and will not have their day for the foreseeable future.

## CONCLUSION

In sum, granting a stay for an indefinite period of time, while allowing the preliminary injunction and receivership to remain in place for an equally indefinite time, will certainly cause damage to the Watson Defendants. Amazon did not acknowledge this very real harm, nor did it "make out a clear case of hardship or inequity in being required to go forward," in its Motion. *Simpson*, 2022 WL 2614876, at *1 (quoting *Landis*, 299 U.S. at 255). Accordingly, because Amazon has failed to establish that clear and convincing circumstances outweigh the potential harm that the stay would cause the Watson Defendants, Amazon's Motion should be denied. If the Court is inclined to grant Amazon's Motion, then the Watson Defendants request that the Court also vacate the injunction and terminate the receivership, or alternatively, terminate the receivership and stay enforcement of the injunction pending resolution of Amazon's appeal.

Dated: August 30, 2023

/s/ Jeffrey R. Hamlin
Jeffrey R. Hamlin (Va. Bar No. 46932)
George R. Calhoun (*pro hac vice*)
IFRAH PLLC
1717 Penn, Ave. NW, Suite 650
Washington, DC 20006-2004
(202) 524-4140 – Tel.
(202) 524-4141 – Fax
jhamlin@ifrahlaw.com
george@ifrahlaw.com

Stanley L. Garnett (*pro hac vice*)
Sara R. Bodner (*pro hac vice*)
Garnett Powell Maximon Barlow
1512 Larimer St., Suite 950
Denver, CO 80202
Telephone: (303) 991-3344
Stan.garnett@garnettlegalgroup.com
Sara.bodner@garnettlegalgroup.com