**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| AMAZON.COM and AMAZON DATA SERVICES, INC., | |
| Plaintiffs, | Civil Action No. 1:20-CV-484-RDA-IDD |
| v. | **Public Version** |
| WDC HOLDINGS LLC dba NORTHSTAR COMMERCIAL PARTNERS, et al. | |
| Defendants. | |
| 800 HOYT LLC, | |
| Intervening Interpleader Plaintiff / Intervening Interpleader Counter - Defendant, | |
| v. | |
| BRIAN WATSON; WDC HOLDINGS LLC; BW HOLDINGS, LLC, | |
| Interpleader Defendants, | |
| and | |
| AMAZON.COM, et al. | |
| Interpleader Defendants / Interpleader Counter-Plaintiffs. | |

## WATSON DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO TERMINATE RECEIVERSHIP

Defendants WDC Holdings LLC dba Northstar Commercial Partners ("Northstar") and

Brian Watson (collectively, the "Watson Defendants"), through undersigned counsel, submit this

1

response to Plaintiffs Amazon.com, Inc. and Amazon Data Services, Inc.'s (collectively, "Amazon" or "Plaintiffs") Motion to Temporarily Lift Stay of Proceedings in this Action for the Limited Purpose of Terminating the Receivership (Dkt. 1451) (the "Motion").

## INTRODUCTION

Amazon goes out of its way to excoriate Mr. Watson for irrelevant and incorrect matters when the central thrust of its Motion is exactly what Mr. Watson has been telling this Court for the past few years. Behind the noise, Amazon is finally seeking to terminate the receivership because the Receiver's fees and expenses are substantial, and the Watson Defendants' lack the assets sufficient to pay for those costs or to even begin to satisfy the preliminary injunction's escrow requirement. During the receivership, according to both Amazon's and the Receiver's filings, the Receiver and his counsel have racked up, and been paid, bills totaling at least $4.3 million. *See* Dkts. 1452 at 6 n.4 (identifying approximately $3.3 million in payments by Amazon); 1454-1 (identifying $982,834 in disbursements from the Watson Defendants' assets). The Receiver's and his counsel's fees from the Third Quarterly Report through the Seventh Quarterly Report all total over $300,000 and in some cases, more than double that amount. Fees and expenses went down during the most recent reporting period, but still totaled over $200,000. This is staggering given the Watson Defendants' unrestricted cash balance has rarely exceeded $200,000, and is often less than $100,000, and the total net receipts have primarily been between approximately $100,000 and $300,000 when "pass-through" insurance proceeds are excluded. The Receiver and his counsel are seemingly the only parties who have benefited from the receivership. Accordingly, the Watson Defendants do not oppose terminating the receivership, provided such termination occurs according to a fair and orderly procedure—not a framework

2

cherry-picked by Amazon to its further advantage.  But the Watson Defendants cannot help but question: *why now*?

The preliminary injunction and receivership were ordered at an early stage of the case based on Amazon's assumptions (many of which were unfounded) and limited evidence.  Since the outset, the Watson Defendants have asserted that they were not hiding millions of dollars, and that they lacked the funds sufficient to comply with the preliminary injunction's mandatory escrow requirement.  Amazon chose to disregard this.  Since the First Quarterly Report filed on January 18, 2022, Amazon and the Receiver have known that there was "relatively little cash or other liquid assets currently available to begin satisfying the Court's Injunction while also paying the costs of the receivership and the essential personal and business expenses of Defendants."  Dkt. 495 at ¶ 7. In that same report, the Receiver expressed concern about the administrative costs of the receivership given the value of the assets.  *Id.* at ¶ 15.  The Receiver's Second Quarterly Report filed on April 27, 2022, reported the same, as did all subsequent reports, yet during every period the Receiver and his counsel accrued substantial fees and expenses.  Given these public filings, it is implausible for Amazon to assert that only now has the receivership "reached a point of diminishing returns."  Dkt. 1452 at 4.

Rather, it seems that now, having paid the Receiver approximately $3.3 million in fees and no closer to recovering millions of dollars from the Watson Defendants[1], Amazon is trying to do an end-run around the language it drafted in the operative receivership order to avoid responsibility for some or all of the Receiver's outstanding fees.[2]  In doing so, Amazon ignores the harm the

---

[1] In addition to the fact that the Watson Defendants' estate does not possess millions of dollars, the Court granted summary judgment to the Watson Defendants on Counts I-III, VII and VIII, of Amazon's Complaint.  Dkt. 1376.  Amazon is now appealing the summary judgment opinion.

[2] Amazon incorrectly claims that it has authority to seek this relief pursuant to Paragraph 18 of the Order Appointing Receiver and Ordering Turnover of Property to the Receiver.  Dkt. 433 (the

receivership has wreaked on Mr. Watson and the company he founded over twenty three years ago, Northstar.   Moreover, Amazon identifies purported terms for the termination of the receivership that will only exacerbate said harms.   Ultimately, given that the Watson Defendants agree that the receivership should be terminated, the question for this Court is how to transition and terminate the receivership in a manner that is fair and orderly.

## **BACKGROUND**

This case has a lengthy history that the Watson Defendants will not repeat.   Still, it is important to put Amazon's request into context.   On April 27, 2020, Amazon filed a motion requesting an *ex parte* TRO and preliminary injunction against the Watson Defendants.   Dkt. 9. In support of this application, Amazon submitted a Verified Complaint, multiple false declarations (that were later withdrawn), and certain documents.   Dkts. 1; 12.   The Verified Complaint contained 11 claims for relief.   Dkt. 1.   The Court granted the *ex parte* TRO against the Watson Defendants on April 28, 2020, and set a hearing on the preliminary injunction.   Dkt. 16.   The hearing on the preliminary injunction was held remotely by conference call (due to COVID-19) on May 21, 2020.   The Court ultimately granted the motion for a preliminary injunction, explaining that the amount to be placed into escrow—$21.25 million—was "narrowly tailored to the circumstances of this case."[3]   Dkt. 69-5 at 50.   The Court subsequently entered the Order Granting

---

"Receivership Order").   But that provision provides the Receiver the right to resign upon 30 days' written notice and explains that in the event there are no immediately available funds from the Assets available to pay such amounts, Amazon is responsible upon written request.   *Id.*

[3] Discovery has revealed that this specific amount never had any basis, and certainly no longer has any basis.   For example, this figure was calculated in part based on a deleted file on co-defendant Casey Kirschner's laptop that supposedly contained a spreadsheet identifying certain improper fees.   Dkt. 69-5 at 13-15.   Amazon's prior reliance on this deleted file is problematic for a host of reasons, including that Amazon improperly liquidated Mr. Kirschner's laptop on December 3, 2021, while this litigation was pending.   Dkts. 1169-2; 1338.   Moreover, this figure is based on fees that Amazon alleged the Watson Defendants received directly, when in actuality fees were paid to and distributed by Northstar's joint venture with IPI Partners.   Dkts. 1165-3; 1165-4.   And

4

Preliminary Injunction.  Dkt. 57 (the "Preliminary Injunction Order").  The Watson Defendants appealed a portion of that order to the Fourth Circuit, which affirmed the injunction.

The Watson Defendants thereafter complied with all of the requirements of the injunction except for the mandatory portion requiring the escrow of approximately $21.25 million.  Because the Watson Defendants did not have the funds to escrow and were unable to secure funds of anywhere near the amount ordered, the Watson Defendants were found to be in willful civil contempt of the Preliminary Injunction Order.  Dkt. 413.  The Court ordered that "[a]n independent receiver shall be appointed pursuant to 28 U.S.C. § 754 and Fed. R. Civ. 66, with the full power of an equity receiver and at Defendants' expense."  *Id.* at 2.  Amazon thereafter filed a proposed order appointing a receiver and an exhibit with the qualifications of the proposed receiver, Mark A. Roberts of Alvarez & Marshal (hereinafter, the "Receiver").  Dkts. 416; 416-1; 416-2.  On November 23, 2021, the Court appointed the Receiver to "[t]ake possession of, preserve, insure, protect and manage" the Watson Defendants' assets.  Dkt. 433 at 4.

The Receiver has filed eight quarterly reports to date, with the most recent report filed on November 1, 2023.  Dkts. 495; 702; 898; 1082; 1208; 1401; 1428; 1454.  The Receiver's reports include high-level descriptions of the activities that the Receiver engaged in during the reporting periods.  The Receiver's reports also reveal the Watson Defendants have had an unrestricted cash balance of less than $200,000 for six of the eight reporting periods.  Dkt. 1451-1.  The unrestricted cash balance increased in the eighth reporting period because of confidential settlements that the Receiver was uninvolved with, other than to receive the proceeds.  The net cash flow has been

---

finally, the figure includes $5 million that was paid to Mr. Watson relating to the White Peaks Transaction—an amount that Mr. Watson received as part of a mediation relating to an employment dispute.  This Court has acknowledged that Mr. Watson was not involved with the White Peaks Transaction.  Dkt. 1376 at 6-8.

negative for four of the eight reporting periods. *Id*. The total net receipts for the Watson Defendants' estate from November 23, 2021, to the present is $16,072,315. *Id*. However, $5,424,017 of that amount is the "pass-through" payment of the D&O insurance proceeds (*i.e.*, money dedicated solely to the payment of fees incurred in litigation, not money that the Watson Defendants ever had in their pockets). Furthermore, approximately $8 million of the $16 million was from the sale of Mr. Watson's personal residence in December 2021; the Receiver had minimal involvement in the sale, other than to manage the proceeds, of which approximately $5.5 million went towards paying off the mortgage on that property. This means that during the entirety of the receivership, the Receiver managed a total of approximately $5 million in net receipts. Excluding the first quarterly period when Mr. Watson's residence was sold and excluding D&O insurance proceeds for all periods, the total net receipts that the Receiver managed on a quarterly basis ranged between approximately $104,000 and $840,000; the total net receipts were less than $300,000 for five of the eight quarters.

To date, the Watson Defendants have filed two motions respectfully asking the Court to vacate the preliminary injunction and receivership. Dkts. 695; 1385. The Watson Defendants also requested that the receivership be terminated in its Opposition to Amazon's Motion to Stay. Dkt. 1445. In these filings and others, the Watson Defendants repeatedly raised concerns that the Watson Defendants' assets are limited and cannot cover the injunction, much less the substantial fees incurred by the Receiver and his counsel. *See, e.g.*, Dkts. 696; 1083; 1240 at 2-3; 1398; 1445. Amazon vigorously opposed the Watson Defendants' requests. *See* Dkts. 786 (claiming that the Watson Defendants manufactured the low cash balances); 1395 (acknowledging receivership costs only once in order to criticize Mr. Watson for his allegedly improper personal expenses). On

October 31, 2023, Amazon filed the instant Motion seeking to temporarily lift the stay and terminate the receivership.  Dkt. 1451.

**ARGUMENT**

## I.      Legal Standard.

District courts have the equitable power to appoint a receiver.  Fed. R. Civ. P. 66; *Chesapeake Bank v. Berger*, No. 4:14CV66, 2014 WL 5500872, at *4 (E.D. Va. Oct. 30, 2014). However, "[r]eceiverships are extraordinary remed[ies] and increasingly rare." *SS Richmond LLC v. Harrison*, No. 3:22CV405 (DJN), 2023 WL 1499574, at *1-2 (E.D. Va. Jan. 20, 2023) (internal quotation marks omitted) (rejecting request for receiver where plaintiffs' proposed receivership did not deal "with secured creditors, mortgagees, and lienholders, or with the preservation of assets post-judgment" and plaintiffs had no interest "apart from *potential* future judgment interests should they win on their claims").  District courts "possess[] a broad range of discretion in deciding whether or not to terminate an equity receivership."  *SEC v. An-Car Oil Co.*, 604 F.2d 114, 119 (1st Cir. 1979); *Baliga v. Link Motion Inc.*, No. 18CV11642 (VM) (DF), 2022 WL 2531535, at *16 (S.D.N.Y. Mar. 9, 2022), *adopted*, 2022 WL 3699339 (S.D.N.Y. Aug. 25, 2022). Receiverships should be terminated when the reasons that justified their appointment no longer exist.  *See, e.g., ABM Janitorial Servs.-N. Cent., Inc. v. Pami Ryan Town Ctr. LLC*, No. 08-CV-100-LRR, 2009 WL 4506548, at *2-3 (N.D. Iowa Dec. 3, 2009*); United States Dep't of Agric. v. Hous. Auth. of City of Sterling, Colorado*, No. 18-CV-01472-PAB-KLM, 2021 WL 4197441, at *1 (D. Colo. Sept. 15, 2021) ("A court should not continue a receiver if the receiver's services are no longer needed.").

Here, the Watson Defendants agree that the receivership should be terminated and that this Court has the power to do so.  They also maintain that if the receivership is terminated then the

7

preliminary injunction should be vacated as well.  But the Court must ensure that the receivership is terminated in a manner that does not leave the Watson Defendants more vulnerable than they already are due to the receivership.  The Watson Defendants have already extensively briefed the negative impacts of the receivership.  *See* Dkts. 1386 at 12-13; 1398 at 17-18; 1407 at 7-8.  Mr. Watson even previously submitted a declaration attesting to harms that he and Northstar have suffered, which have only increased since that time.  Dkt. 1398-6.  Mr. Watson has had his life savings, personal and corporate credit, companies, and investments destroyed by the receivership.  Therefore, the framework proposed by Amazon is not appropriate for reasons discussed in further detail below.

## II.       Receivership Fees and Expenses.

### a.    The Watson Defendants should not be responsible for any outstanding fees and expenses.

Curiously, the Watson Defendants do not know the total fees and expenses accrued by the Receiver and his counsel to date, nor do they know what amount is outstanding.  The Watson Defendants know that the Receiver and his counsel have accrued fees and expenses totaling at least approximately $4.3 million because according to Amazon and the Receiver, Amazon paid the Receiver $2,238,166.89 on one occasion and approximately $1.1 million on a second occasion, and the Receiver disbursed $982,834[4] to himself and his counsel from the Watson Defendants' estate.  *See* Dkts. 1208 at ¶¶ 23-24; 1452 at 6 n.4; 1454 at 13 n. 4; 1454-1.  However, because the Receiver and Amazon agreed to a 10% discount pursuant to an undisclosed agreement for at least some of the Receiver's and his counsel's invoices (*see* Dkt. 1208 at ¶¶ 23-24), a lack of

---

[4] This number comes from Exhibit A to the Receiver's Eighth Quarterly Report.  Dkt. 1454-1.  However, the Watson Defendants note that there appears to be a discrepancy between the total of the amounts identified in the body of the Receiver's eight reports and this exhibit.

transparency regarding the recent $1.1 million payment by Amazon to the Receiver (specifically, the exact amount, when it was paid, and what reporting period it was intended to cover) (*see* Dkt. 1454 at 13 n.4)[5], and because the Receiver and his counsel have likely accrued fees since the last reporting period, the Watson Defendants are unclear as to the exact amount of fees and expenses incurred by the Receiver and his counsel and the amount paid so far, and thus the amount outstanding.  This is concerning, and therefore any termination must include a requirement for a detailed accounting regarding the fees and expenses incurred by the Receiver and his counsel, payments by Amazon to the Receiver and his counsel, and any disbursements from the Watson Defendants' estate for such fees and expenses.

Setting aside this uncertainty, one thing is clear:  the fees and expenses that the Receiver and his counsel have accrued are excessive, unreasonable, and not justified.  The fees and expenses are grossly disproportionate given the Receiver's failure to make any contributions at all toward the injunction amount, especially since that was the primary purpose of his appointment.  Therefore, the Watson Defendants should not be responsible for any outstanding fees and expenses.[6]  The Receiver's reports reveal that the Watson Defendants never had sufficient assets to pay the Receiver and his counsel for their services, let alone deposit any money with the Court to satisfy the mandatory escrow requirement of the injunction.  Significantly, *every single one of the Receiver's reports state that the Watson Defendants lack assets to satisfy the preliminary*

---

[5] The Receiver states in his most report that he and his counsel have outstanding fees and expenses as of the close of the reporting period, but then subsequently acknowledges that after the reporting period, Amazon paid him and his counsel approximately $1.1 million.  Given this, the Watson Defendants are unclear exactly what, if anything, is still owed to the Receiver.  Dkt. 1454 at ¶¶ 24-25.

[6] Nor should they be responsible for reimbursing Amazon for its approximately $3.3 million in payments to the Receiver.  Amazon has repeatedly described these payments as "advances"— terminology that the Watson Defendants have rejected.  Nonetheless, because Amazon does not raise the matter of reimbursement, the Watson Defendants do not address it further here.

*injunction and express concern about the administrative costs of the receivership given the value*

*of the assets.* Dkts. 495 at ¶¶ 7, 15; 702 at ¶¶ 7, 8, 24; 898 at ¶¶ 6, 7, 16; 1082 at ¶¶ 7, 8, 21; 1208

at ¶¶ 6, 7, 21; 1401 at ¶¶ 6, 7, 21; 1428 at ¶¶ 6, 7, 21; 1454 at ¶¶ 5, 6, 20.

The Watson Defendants have attempted to aggregate some of the key numbers from

various filings given how cumbersome it is to review each individual report.

| Quarterly Report | Receiver Fees and Expenses[7] | Unrestricted Cash Balance[8] | Total Net Receipts (excluding D&O insurance)[9] | Disbursements to Receiver from Watson Defendants' Estate[10] | Payments to Receiver by Amazon |
|---|---|---|---|---|---|
| First Quarterly Report (11/23/21 – 12/31/21) | $300,000 for Receiver; $300,000 for Receiver's counsel | $73,507 | $8,051,657 | N/A | N/A |
| Second Quarterly Report (1/1/22 – 3/31/22) | $125,181 for Receiver; $70,445 for Receiver's counsel; $1,080 for Receiver's local counsel | $125,821 | $840,770 | $207,940 | N/A |
| Third Quarterly Report (4/1/22 – 6/30/22) | $531,379.09 for Receiver; $211,209.45 for Receiver's counsel | $60,294 | $207,194 | $89,302 | N/A |
| Fourth Quarterly Report (7/1/22 – 9/30/22) | $375,408 for Receiver; $328,811.97 for Receiver's counsel | $339,153 | $114,225 | $20,000 | N/A (but notes that Receiver has engaged with Amazon regarding outstanding fees) |

---

[7] Pulled from each Quarterly Report. *See* Dkts. 495; 702; 898; 1082; 1208; 1401; 1428; 1454.
[8] Dkt. 1454-1.
[9] Dkt. 1454-1.
[10] Dkt. 1451-1.

| Quarterly Report | Receiver Fees and Expenses[7] | Unrestricted Cash Balance[8] | Total Net Receipts (excluding D&O insurance)[9] | Disbursements to Receiver from Watson Defendants' Estate[10] | Payments to Receiver by Amazon |
|---|---|---|---|---|---|
| Fifth Quarterly Report (10/1/22 – 12/31/22) | $127,558.75 for Receiver (10/1/22 – 11/30/22)*; $141,629.90 for Receiver's counsel (10/1/22 – 11/30/22)*<br><br>*Reflects a 10% discount<br><br>$40,860.97 for Receiver (12/2022); $34,109.50 for Receiver's counsel (12/2022) | $72,405 | $232,942 | $348,893 | $2,238,166.89 |
| Sixth Quarterly Report (1/1/23 – 3/31/23) | $209,291.88 for Receiver; $223,355.51 for Receiver's counsel | $186,375 | $297,713 | N/A | N/A (but notes that Receiver requested payment by Amazon) |
| Seventh Quarterly Report (4/1/23 – 6/30/23) | $219,599.67 for Receiver; $159,193.43 for Receiver's counsel | $101,857 | $104,044 | N/A | N/A (but notes that Receiver requested payment by Amazon) |
| Eighth Quarterly Report (7/1/23 – 9/30/23) | $138,800.22 for Receiver; $100,125.72 for Receiver's counsel | $429,881 | $799,753 | $316,699 | After this reporting period, Amazon paid approximately $1.1 million (Dkt. 1452 at 6 n.4) |

As previously noted, the Receiver expressed concerns after the very first reporting period about the Watson Defendants' ability to pay the administrative costs associated with the receivership.  Dkt. 495 at ¶ 15.  Notably, the Receiver stated in his First and Second Quarterly Reports that he anticipated that monthly receivership fees and costs would be "*substantially reduced* going forward." Dkt. 495 at ¶ 16; Dkt. 702 at ¶ 25 (emphasis added).  That, however, was not what transpired.  Instead, fully aware of the risks associated with it, the Receiver and his counsel proceeded to accrue millions of dollars in fees and expenses while managing an estate with significantly less in unrestricted cash balances and total net receipts per quarter.  *See SEC v. Cobalt Multifamily Inv. I, LLC*, No. 06 CIV 2360 KMW MHD, 2009 WL 1808980, at *5 (S.D.N.Y. June 24, 2009) (the receivership professionals "bore a risk of which they most assuredly should have been aware at the time that they would receive only partial payment").

Because the Receiver's reports are all publicly filed, Amazon was on notice that the estate lacked sufficient funds to pay the Receiver and his counsel's fees and expenses *and* to satisfy the mandatory escrow requirement.  Because every single one of the Receiver's reports state that the Watson Defendants lack assets to satisfy the preliminary injunction, it is implausible that Amazon has only now realized that the Receiver is "at a point . . . where he is unable to realize sufficient value from Watson's assets to deposit money into escrow to comply with the Injunction."  Dkt. 1452 at 5.  Amazon has known this for almost two years, and certainly when it opposed both of the Watson Defendants' prior attempts to terminate.  *See, e.g.,* Dkt. 702 at ¶ 8 (Receiver's report filed before Amazon's opposition identified potential sources of future cash recoveries and noted that "the Receiver does not expect such amounts to be sufficient to satisfy the full amount of the Injunction").

Amazon suggests that the Receiver and his counsel's fees have been substantial because of disputes with Mr. Watson regarding personal expenses, as well as "multiple unfounded motions to modify, clarify and vacate the order appointing the Receiver and Injunction." Dkt. 1452 at 3 n.3, 4-5. This is a preposterous suggestion, and easy for Amazon to make as the party not living under the oppressive daily burden of the injunction and receivership. But more importantly, the Receiver has never taken a position on the Watson Defendants' request to vacate the preliminary injunction. The Receiver's response to the Watson Defendants' first request was four pages long and not substantive. Dkt. 768. The Receiver's response to the Watson Defendants' second request, as well as to the various motions to clarify filed by the Watson Defendants, have been more substantive, but could not have under any circumstances warranted the number of hours required to incur such significant legal fees. Moreover, the Receiver could not have accrued significant fees for time spent engaging with Mr. Watson regarding his personal expenses. The Receiver has not had any substantive communication with Mr. Watson since May 2022. The extent of the Receiver's communications with Mr. Watson at this time are a one-word response to Mr. Watson every month— "funded" in response to Mr. Watson's request that the Receiver fund his monthly stipend or other expenses.[11] Mr. Watson is not the only individual or entity that the Receiver is not engaging with. Over the past two years, Mr. Watson has forwarded the Receiver numerous emails from insurance companies, lenders, partners, vendors, investors, and/or financial institutions expressing frustration at the lack of communication or action from the Receiver. *See* Ex. A to Ex. 1 (Bodner Decl.) (example of an investor stating that he "has not received ANYTHING" from the Receiver). Recently, Stream Realty Partners-Houston, L.P. filed a

---

[11] Given this, it is disheartening that the Receiver tries to embarrass Mr. Watson in his latest report by describing a detailed proposal he provided to the Receiver regarding living accommodations. The Receiver did not even bother to respond to Mr. Watson's proposal.

declaration in support of a filing stating that, "Stream has been unable to obtain responses to its communications to the Receiver, which has necessitated legal action by Stream and caused it to unfairly incur additional expenses and fees." Dkt. 1450-1 at ¶ 17. Given the lack of communication with Mr. Watson as well as others associated with the Watson Defendants' estate, the Watson Defendants do not understand how or why the Receiver accrued such substantial fees. This is a further reason why a detailed accounting of the Receiver's time and activities and a final report addressing each asset and/or investment is necessary.

The Watson Defendants also have significant concerns about the Receiver's fees and expenses because it has appeared to the Watson Defendants that the Receiver and Amazon have been closely aligned since his appointment.[12] For example, the day the Receiver was appointed, counsel for Amazon forwarded the ECF notification regarding the appointment to Mr. Roberts (the newly appointed Receiver) and wrote, REDACTED

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████   *See* Ex. B to Bodner Decl.  Nearly a year later, the Watson Defendants learned from a filing that the Receiver and Amazon came to some type of agreement whereby Amazon agreed to pay certain funds to the Receiver and his counsel. Dkt. 1094 at 12. The Watson Defendants do not know when, how, or why this agreement was struck, nor do they

---

[12] This has been distressing to the Watson Defendants, given that the Receiver is a neutral officer appointed by the Court and assigned specific duties as defined in the Receivership Order. *See Sterling v. Stewart*, 158 F.3d 1199, 1201 n.3 (11th Cir. 1998); *SEC. v. Schooler*, No. 3:12-CV-2164-GPC-JMA, 2015 WL 1510949, at *3 (S.D. Cal. Mar. 4, 2015) (a "receiver should be impartial between the parties and avoid the appearance of impropriety"). The Receiver himself acknowledged this in a filing, describing himself as an officer of the Court and "not an agent for Plaintiffs or the Watson Defendants." Dkt. 1394 at 3.

know the terms of the agreement.  And now, Amazon files the instant motion apparently at least partially on behalf of the Receiver, rather than the Receiver resigning pursuant to the procedure outlined in Paragraph 18 of the Receivership Order and seeking payment from Amazon for any outstanding fees and expenses.

   b. <u>Amazon should not be allowed to allocate proceeds from the Watson Defendants' estate or cherry pick priorities.</u>

  Amazon requests that the separate order submitted by the Receiver in connection with his motion for authority to sell the 1221 Broadway interest (*see* Dkt. 1034) shall be entered and the net proceeds from that sale after any payments permitted under that order be used to pay the fees of the Receiver and his professionals.  But Amazon is not the Receiver appointed by this Court, and its opinion on what income-producing assets should be sold holds no value.[13]  The Watson Defendants previously filed an opposition to the proposed sale of this asset, arguing that it severely undervalues the asset and would remove a vital income stream from the Watson Defendants.  Dkt. 1066.  To reiterate, if the 1221 Broadway asset is sold, it would eliminate virtually all of Northstar's remaining recurring monthly revenue from property management and asset management fees, further crippling the company and potentially forcing it to lay off its last remaining employee.

  Furthermore, Amazon provides no support for the proposition that the Receiver's and his counsel's outstanding fees take priority over any of the Watson Defendants' other obligations

---

[13] The Receiver previously noted that Amazon and Patricia Watson, ex-wife of Mr. Watson, did not oppose the Receiver's motion seeking approval of the proposed sale. Dkt. 1034 at 6.  But the Watson Defendants have concerns that such positions were possibly the result of an agreement between Ms. Watson, Amazon, and/or the Receiver regarding Ms. Watson's REDACTED ███████ which is the entity that owns the 1221 Broadway asset.  *See* Ex. C to Bodner Decl.  Ms. Watson and Mr. Watson are each 50% members of PLW Capital I, LLC.

and/or liabilities.  Amazon's proposal appears to be an attempt to avoid being on the hook for outstanding fees or expenses pursuant to the Receivership Order that Amazon's counsel drafted. Dkt. 433 at ¶ 18 (if any fees or expenses of the Receiver are unpaid upon resignation, and there are no immediately available funds from the Assets available, then the outstanding fees or expenses of the Receiver "shall be payable promptly by Amazon upon written request").  Notably, in the Receiver's Response in Opposition to the Watson Defendants' Motion to Vacate, the Receiver included proposed terms for a potential termination—his proposed terms did *not* include anything about the sale of 1221 Broadway but did state that if the Watson Defendants' estate could not satisfy the fees and expenses as of the termination, then such fees and expenses shall be payable by Amazon within 10 business dates.  Dkt. 1394 at 7-8.

  c. <u>The Court should order a detailed accounting, and the Watson Defendants should not be responsible for any outstanding fees or expenses.</u>

   In sum, as part of any transition and termination of the receivership and before awarding the Receiver any outstanding fees and expenses, the Receiver should be required to prepare a detailed accounting that will allow the parties and the Court to understand the time and effort that the Receiver and his professionals expended in managing the estate.  *See Baliga*, 2022 WL 2531535, at *19-20 (receiver must submit a full and final accounting showing the activities performed during the receivership and the costs therefore before being discharged).  This final accounting should include detailed invoices and hourly billing entries evidencing the fees and expenses incurred through the receivership.  It should also include detailed records regarding payments made by Amazon to the Receiver and his professionals, as well as disbursements by the Watson Defendants' estate.  This sort of detailed information is vital because a receiver and his professionals "must exercise proper billing judgment in seeking fees from the receivership estate,

and should limit their work to that which is reasonable and necessary.  After all, no receivership is intended to generously reward court-appointed officers." *FTC v. Green Savers, LLC*, No. 6:12-CV-1588-ORL-28, 2014 WL 978311, at *2 (M.D. Fla. Mar. 12, 2014) (internal quotation marks and citations omitted).  Notably, courts generally will not entertain a motion for termination until the Receiver prepares a final accounting.  *See, e.g., Baliga*, 2022 WL 2531535, at *19.

Moreover, the Watson Defendants should not be required to pay any additional outstanding fees and expenses.  The Watson Defendants' position is that all of the fees and expenses accrued by the Receiver and his counsel following the filing of the Second Quarterly Report are presumptively unreasonable (particularly since some of those fees and expenses *increased* from previous periods), and therefore they should not be responsible for any of them.  To the extent that this Court determines the Receiver is entitled to payment of any outstanding fees and expenses, then Amazon, as the party who invoked the receivership and repeatedly fought against its termination, should be responsible.

### III.    Protection of Receiver from Liabilities.

Amazon also requests that effective as of the termination date, the Receiver and his employees, agents, attorneys, consultants, and representatives be released and discharged from any and all claims, obligations, causes of action, and liabilities relating to management of the assets, administration of the receivership, or otherwise in connection with the Receivership Order.  Dkt. 1452 at 8-9.  Amazon is parroting the Receiver's request in his response to the Watson Defendants' motion to vacate.  Dkt. 1394 at 8.  Such a release is unnecessary here.  First, the Receivership Order provides that "[t]he Receiver shall have no liability to any party, unless the Receiver has been found by this Court or another court of competent jurisdiction (after the conclusion of any appeals and further rights of appeal) to have engaged in willful misconduct, fraud, gross

17

negligence, or conversion." Dkt. 433 at ¶ 9.  Given this language, the Court should retain jurisdiction over any and all future claims that may be asserted against the Receiver and his professionals relating to willful misconduct, fraud, gross negligence, or conversion. *See, e.g., Fed. Trade Comm'n v. Hite Media Grp., LLC*, No. CV-18-02221-PHX-SPL, 2019 WL 13163240, at *3 (D. Ariz. Dec. 23, 2019) (court retaining jurisdiction over "any and all claims" that may be asserted against the receiver and his professionals for their services).

Such a broad release at this time is inappropriate even if there is no indication to date that the Receiver has engaged in willful misconduct, fraud, gross negligence, or conversion.  The Court "cannot know that for a fact without a case or controversy before it."  *FTC v. 3R Bancorp*, No. 04 C 7177, 2006 WL 2191317, at *2 (N.D. Ill. July 28, 2006) (rejecting Receiver's request for a broad release from liability).  The two cases cited by Amazon and the Receiver are not analogous to the present circumstances—for example, the government is the plaintiff in both and they involve consent judgments and claims and distribution processes.  Rather, what is happening here is what the Watson Defendants have repeatedly stated the past few years.  It is the result of a lack of money to cover the injunction, a lack of money to pay the costs of the receivership, and Amazon itself having paid over $3.3 million to the Receiver, including $1.1 million after most of Amazon's claims were dismissed by the Court's summary judgment opinion and despite no money being placed into escrow.  The estate that is going to exist when the receivership is terminated is one in an unstable condition and with an uncertain future, in part due to the disbursements made to pay the Receiver's fees.  The Watson Defendants' estate is barely afloat, and will be beset by significant challenges, including state and federal tax liabilities that the Receiver has not resolved, for years to come.  The Watson Defendants will also inevitably face challenges trying to comply

with the Preliminary Injunction Order, which they continue to maintain should be vacated.  This is why a carefully crafted transition procedure is necessary to ensure order and fairness.

## IV.    Other Termination Terms.

In addition to the above, the Watson Defendants request terms along the lines of the following:

1.  The Receiver must file a final report that includes detailed information regarding the Receiver's activities during the pendency of the receivership and the financial and operational status of each investment and/or asset.  The Receiver's quarterly reports to date have included only high-level bullet points describing the Receiver's activities.  Given the general nature of these bullet points, and the lack of substantive communication between the Receiver and Mr. Watson, this detailed information is necessary to ensure an orderly transition and to allow Mr. Watson to resume managing investments and/or assets that have investors and lenders clamoring for updates.

2.  The Receiver and his counsel should be required to provide Mr. Watson with all financial records, documents, and communications relating to the Watson Defendants' estate during the receivership (excluding privileged communications with counsel), including all communications with Amazon and Amazon's counsel. This should include all of the non-privileged accounting and other records that the Receiver was directed to maintain in the Receivership Order.  Dkt. 433 at ¶ 16.

3.  After the Termination Date, if further information from or action by the Receiver is reasonably necessary to effectuate the transition of the Assets, the Receiver (or his agents, attorneys, or representatives) shall provide reasonable cooperation upon

written request, provided, however, that if any requested cooperation requires a material investment of time or the incurrence of out-of-pocket expense, the Receiver shall have no obligation to provide such cooperation unless the Receiver (or his agents, attorneys, or representatives, if applicable) is compensated for such services at standard rates (with advancement of out-of-pocket expenses).  (This term was previously proposed by the Receiver in Dkt. 1394.)

4. The bond posted by the Receiver should be provided to Mr. Watson upon termination of the receivership.

The Watson Defendants also reiterate that if the receivership is terminated, the preliminary injunction should be vacated and the $2 million bond posted by Amazon should be provided to Mr. Watson to enable him and Northstar to begin to rebuild and operate in the short term.

## V.      Request for Hearing.

Given the lack of substantive communication between the Receiver and the Watson Defendants over the past year, the substantial harm that the Watson Defendants have suffered due to the receivership, and the significant challenges that the Watson Defendants will face upon termination of the receivership, the Watson Defendants request a hearing to further discuss developing a framework for the transition and termination of the receivership.

## CONCLUSION

The Watson Defendants do not oppose termination of the receivership, provided that such termination occurs according to terms and a procedure that are fair to them.  For the reasons described above, the framework proposed by Amazon must be rejected.  The Watson Defendants request a hearing to discuss developing a framework for a fair and orderly transition and termination of the receivership.

20

Dated: November 14, 2023

/s/

Jeffrey R. Hamlin (Va. Bar No. 46932)
George R. Calhoun V (*pro hac vice*)
James Trusty (*pro hac vice*)
IFRAH PLLC
1717 Pennsylvania Avenue NW
Suite 650
Washington, DC 20006-2004
(202) 524-4140 – Tel.
(202) 524-4141 – Fax
jhamlin@ifrahlaw.com
george@ifrahlaw.com

Stanley L. Garnett (*pro hac vice*)
Sara R. Bodner (*pro hac vice*)
Garnett Powell Maximon Barlow
1512 Larimer St. Suite 950
Denver, CO 80202
Telephone: (303) 991-3344
Stan.garnett@garnettlegalgroup.com
Sara.bodner@garnettlegalgroup.com