**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| AMAZON.COM, INC. and AMAZON DATA SERVICES, INC.,<br><br>       Plaintiffs,<br><br>   v.<br><br>WDC HOLDINGS LLC dba NORTHSTAR COMMERCIAL PARTNERS; BRIAN WATSON; STERLING NCP FF, LLC; MANASSAS NCP FF, LLC; NSIPI ADMINISTRATIVE MANAGER; NOVA WPC LLC; WHITE PEAKS CAPITAL LLC; VILLANOVA TRUST; CARLETON NELSON; CASEY KIRSCHNER; ALLCORE DEVELOPMENT LLC; FINBRIT HOLDINGS LLC; CHESHIRE VENTURES LLC; 2010 IRREVOCABLE TRUST; SIGMA REGENERATIVE SOLUTIONS LLC; CTBSRM, INC.; RODNEY ATHERTON; DEMETRIUS VON LACEY; RENRETS LLC,<br><br>       Defendants. | CASE NO. 1:20-CV-484-RDA-IDD |
| 800 HOYT LLC,<br><br>       Intervening Interpleader Plaintiff, Intervening Interpleader Counter-Defendant,<br><br>   v.<br><br>BRIAN WATSON; WDC HOLDINGS, LLC; BW HOLDINGS, LLC,<br><br>       Interpleader Defendants,<br><br>  and<br><br>AMAZON.COM, INC., and AMAZON DATA SERVICES, INC.,<br><br>       Interpleader Defendants, Interpleader Counter-Plaintiffs. | |

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION TO**
**TEMPORARILY LIFT STAY OF PROCEEDINGS IN THIS ACTION FOR**
**THE LIMITED PURPOSE OF TERMINATING THE RECEIVERSHIP**

Plaintiffs Amazon.com, Inc. and Amazon Data Services, Inc. (collectively "Amazon" or "Plaintiffs") respectfully submit this reply brief in support of their Motion to Temporarily Lift Stay of Proceedings in this Action for the Limited Purpose of Terminating the Receivership (the "Motion"). *See* Dkts. 1451, 1452.[1]  Watson agrees that the Receivership should be terminated, but his proposed changes to the terms of the proposed order should be rejected as unwarranted and inconsistent with the Receivership Order.

## INTRODUCTION

Watson devotes much of his Response to painting himself as a victim.  But he disregards that the Receivership is the result of his own misconduct; namely, his dissipation of assets in willful violation of the Court's injunction.  He also disregards that his contempt and abuse of the Receiver over the past two years—as described in the Receiver's Response, *see* Dkt. 1459—has vastly increased the Receiver's work and costs.  Ultimately, however, Watson's grievances are irrelevant. As his Response makes clear, the parties agree "that the receivership should be terminated and that this Court has the power to do so." Opp. 7.   The only dispute, therefore, is the terms under which this should occur.

Amazon's Motion and proposed order laid out several straightforward terms governing the orderly termination of the Receivership that largely reiterate, reinforce, and complement the terms of this Court's Receivership Order.  These proposed terms carry out, among other things, the Order's determination that the Receiver's fees will be paid for from the Assets, to the extent they are available, and that the Receiver should not be subjected to baseless litigation for carrying out his Court-appointed work.  Amazon's requested terms are also consistent with the practice in this

---

[1] Citations to Amazon's memorandum in support of the Motion, Dkt. 1452, are referred to as "Mot."  Capitalized terms have the same meaning as defined in the Receivership Order, Dkt. 433, and the Motion.

district when terminating a receivership.  Watson's proposed terms, however, are contrary to the Order itself, unsupported by fact or law, and likely to deter others from accepting receivership appointments in future cases.

## DISCUSSION

Watson raises several objections to the terms proposed in Amazon's motion, and offers several of his own additional terms.  Amazon addresses these items point-by-point below.  But one theme runs through Watson's arguments—he'd like the Court to ignore the express terms of the Receivership Order.  The Court should reject Watson's invitation to disregard the Receivership Order, for two reasons.

First, as Watson's own cases acknowledge, matters arising on the termination of a receivership should be resolved "*pursuant to the Order of appointment*."  *FTC v. Green Savers, LLC*, 2014 WL 978311, at *2 (M.D. Fla. Mar. 12, 2014) (emphasis added).  Watson has offered no reason to depart from that rule here, and his requested terms are thinly veiled efforts to seek reconsideration of his multiple prior unsuccessful attacks on the Receivership and the injunction that the Receivership helps enforce.  Watson does not even try to meet the standards for revisiting those prior rulings, and there is no other reason to disregard or rewrite the Receivership Order in the course of terminating the Receivership.

Second, disregarding the Receivership Order's terms would be both unfair to the Receiver and set a troubling precedent for future court-appointed receivers.  The Receiver performed his duties based on his reliance on the terms of his appointment.  Were the Court to disregard terms of the Receivership Order now, it would unfairly prejudice the Receiver and may well deter others from taking on court appointments in this district.

Watson's specific complaints regarding the terms of the proposed order are unfounded for the reasons set forth below.

*The Receiver's fees*.  Watson devotes the majority of his argument to the issue of who should pay the Receiver's fees.  *See* Opp. 8–15.  This issue, however, is squarely resolved by the Receivership Order.  Paragraph 17 specifically provides that the Receiver's "fees and expenses shall be payable from the Assets," which is defined as Watson's assets.  Dkt. 433 ¶¶ 2, 17.  Amazon is required to pay the Receiver's fees only as a backstop if the available funds from the Assets are insufficient.  *Id.* ¶ 17, 18.  Paragraph 5 of Amazon's proposed order simply confirms this point.  *See* Dkt. 1451-1 ¶ 5.  The Receivership Order is binding on Watson.

Watson argues that he "should not be responsible for any outstanding fees and expenses" since the Receiver's fees are "excessive, unreasonable, and not justified."  Opp. 9.  This argument, unsupported by evidence, is meritless for four separate reasons.

First, the Receivership Order expressly provides that the Receiver's fees shall be paid from the Assets.  *See* Dkt. 433 ¶ 17.  The Court included that requirement because the Receiver was appointed as a contempt sanction after Watson repeatedly violated the preliminary injunction.  It would be inequitable to require the party injured by contempt to pay the costs of the resulting remedial measures.

Second, as the Receiver reiterated in his Response, Watson is responsible for the Receiver's larger fees because the Receiver "has been subjected to near-constant abuse and harassment by Mr. Watson," including threats of litigation and "*thousands* of threatening emails," "merely for fulfilling the Receiver's Court-ordered duties."  Receiver Resp. 2.  Watson's "adversarial conduct" has "necessarily driven up the cost of this receivership."  *Id.*

Third, Watson has put forth no proof that the Receiver's fees were unreasonable, especially when measured against the number of entities being administered and Watson's repeated harassment tactics.

3

And fourth, Watson has not shown that he will end up paying the portion of fees that he claims is excessive.  Because there have been insufficient Assets to pay the Receiver's fees, Amazon has, in fact, paid the bulk of them.  Watson has not alleged, much less shown, that liquidated Assets will be sufficient to repay Amazon's advances to the point where Watson will be paying more than he claims was a reasonable amount.[2]  In fact, given the size of Amazon's advances and the low value of the remaining Assets, Watson will likely pay only a small fraction of the Receiver's overall fees and expenses.

The cases Watson cites in support of his effort to re-open the Receivership Order are inapposite.  In *SEC v. Cobalt Multifamily Investor I, LLC*, the court appointed a receiver "to marshal the assets of defunct entities" being sued by the SEC.  2009 WL 1808980, at *1 (S.D.N.Y. June 24, 2009).  Unlike here, the receiver took the appointment without any "promis[e]" of full payment, thus bearing "a risk of which they most assuredly should have been aware at the time that they would receive only partial payment."  *Id.* at *4.  Here, the Receivership Order specifically provides that the Receiver fee's shall be paid from the Assets, with payment by Amazon only if the Assets are insufficient.  Unlike in *Cobalt*, the Receiver assumed no risk that his fees would remain unpaid from available Assets.  Watson also cites *FTC v. Green Savers, LLC*, which in turn cites a Southern District of Texas case from 1974 for the proposition that receiverships are not intended to "generously reward court-appointed officers."  2014 WL 978311, at *2 (quoting *SEC v. W.L. Moody & Co.*, 374 F. Supp. 465, 483 (S.D. Tex. 1974)).  But this doesn't mean that

---

[2] Watson also claims that he "never had sufficient assets to . . . deposit any money with the Court to satisfy the mandatory escrow requirement for the injunction."  Opp. 9.  But this ignores that he surreptitiously dissipated millions of dollars in assets after the injunction went into effect.  *See, e.g.*, Dkt. 702 at 7 ("During the Injunction Period, Mr. Watson personally collected approximately $3.0 million from various sources, and spent $3.0 million, leaving a final balance in his personal accounts of $856 on the date of the Receivership Order.").  Had Watson not violated the injunction, these substantial assets would have been available to satisfy at least part of the escrow requirement.

receivers should be denied compensation for their fees and expenses.  Indeed, *Green Savers* acknowledges the "the Receiver is entitled to reasonable compensation and expenses, *pursuant to the Order of appointment*." *Id.* (emphasis added).  Here, the order of appointment specifically lays out how the Receiver is to be compensated.

Lastly, contrary to Watson's suggestion, *see* Opp. 9 n.6, Amazon merely provided advances to the Receiver, not final payments.  Under the terms of the Receivership Order, the Receiver is still owed that money from the Assets, to the extent Assets are available to liquidate.

*Final report*.  Watson argues that the Receiver should be required to conduct "a detailed accounting regarding the fees and expenses incurred" during the Receivership.  Opp. 9.  But Amazon's proposed order already provides that "[t]he Receiver shall file a final report summarizing the Receiver's material activities during the pendency of the Receivership and detailing the results from collections, operations, and distributions of the Assets."  Dkt. 1451-1 ¶ 4.  This provision satisfies the Receiver's obligation under the Receivership Order to "file reports detailing the results from collections, operations, and distributions of the Assets on a quarterly basis or as subsequently ordered by the Court."  Dkt. 433 ¶ 16.  The Receivership Order therefore resolves the question.  Moreover, *Baliga v. Link Motion Inc.* merely observes that "a final accounting by a receiver . . . ordinarily," but not always, "precedes the receiver's discharge."  2022 WL 2531535, at *19 (S.D.N.Y. Mar. 9, 2022), *report and recommendation adopted*, 2022 WL 3699339 (S.D.N.Y. Aug. 25, 2022).  Amazon's proposed order properly provides for a final accounting as part of the Receivership's termination.

*1221 Broadway*.  Watson also takes issue with Amazon's request that the Court act on the Receiver's motion to sell Watson's interest in the 1221 Broadway property. *See* Opp. 15–16.  The Receiver negotiated this sale over a year ago and the Receiver's motion seeking approval of the sale is fully briefed and has been pending with the Court since last October.  *See* Dkt. 1034

(Receiver's Motion); Dkt. 1066 (Watson's Response Br.); Dkt. 1073 (Receiver's Reply Brief).  It is also the only Asset identified by the Receiver that can produce significant cash for the Receivership.  Amazon seeks only a ruling by the Court approving this sale and granting the Receiver's pending motion, Dkt. 1034, as part of its order terminating the Receivership.  If the sale were consummated, the cash proceeds available to the Receiver would be part of the "Assets" from which the Receiver's fees are to be paid and should be used for that purpose.

*Liability release*.  Watson argues that the proposed release of the Receiver's liability is "unnecessary here."  Opp. 17.  But this term is drawn from the Receivership Order itself.  *See* Dkt. 433 ¶ 9 ("The Receiver shall have no liability to any party, unless the Receiver has been found by this Court or another court of competent jurisdiction . . . to have engaged in willful misconduct, fraud, gross negligence, or conversion," and "[a]ll who are acting, or have acted, on behalf of the Receiver at the request of the Receiver, are protected and privileged with the same protections of this Court as the Receiver enjoys.").  Watson points to this very language when contending that a release of liability provision is "unnecessary," Opp. 17-18, and he has brought no claim alleging that the Receiver engaged in conduct that could trigger liability, *id*. at 18 (arguing there should be no release "even if there is no indication to date that the Receiver has engaged in willful misconduct, fraud, gross negligence, or conversion").  But his objection to including a liability release in the termination order strongly suggests that Watson intends to bring baseless litigation against the Receiver anyway.  The discharge and release in the proposed termination order will further the Receivership Order's goal of protecting the Receiver and his professionals from Watson's "direct threats of litigation against the Receiver" based on "wildly inaccurate assertions of damages."  Receiver Resp. 5, 8.  As the Receiver explained:

> [I]n the absence of a fulsome court-ordered discharge, the Watson Defendants may
> pursue baseless claims against the Receiver in disregard of this Court's appointment
> of the Receiver as an officer of the Court with an obligation to fulfill the Court's

Receivership Order, thus requiring needless and wasteful expense that may further require the involvement of this Court and potentially making future receivers less likely to accept receivership appointments.

*Id.* at 8-9.

Amazon cited two recent cases in this district where the court approved of releases containing similar language.  *See* Final Order Approving and Confirming the Receiver's Final Report, Terminating the Receivership and Discharging the Receiver ¶ 6, *United States v. Waterside Cap. Corp.*, No. 2:13-cv-653-MSD-LRL (E.D. Va. June 28, 2017), Dkt. 52 (terminating receivership and releasing receiver from any claims "arising from or relating in any way to the Receivership"); Order Granting Receiver's Motion to Terminate Receivership and Discharge Receiver at 2, *SEC v. Hitt*, No. 1:18-cv-1262-LMB-TCB (E.D. Va. Sept. 3, 2021), Dkt. 167 (terminating receivership and releasing receiver "from all claims and liabilities arising out of and/or pertaining to the Receivership").  Watson argues that they are inapposite because the "government is the plaintiff" and the receivers were appointed in another procedural posture, Opp. 18, but he doesn't explain why these distinctions matter.  In truth, these are distinctions without a difference.  The principle that receivers should not be subject to liability for their court-appointed work pertains regardless who is the plaintiff and the circumstances of the receiver's appointment.

Watson instead points to two out-of-circuit cases to justify his opposition to the release provision.  *See* Opp. 18 (citing *FTC v. 3R Bancorp*, 2006 WL 2191317, at *2 (N.D. Ill. July 28, 2006); *Fed. Trade Comm'n v. Hite Media Grp., LLC*, 2019 WL 13163240, at *3 (D. Ariz. Dec. 23, 2019)).[3]  Watson cites *Hite Media Group* to argue that this Court should retain jurisdiction over any future dispute.  Amazon's Motion, however, does not seek to abrogate the separate provision of the Receivership Order establishing jurisdiction in this Court for "any disagreement

---

[3] Under Watson's logic, these cases would be inapposite since a government agency was the plaintiff in both.  He can't have it both ways.

arising between the Receiver and Amazon or Defendants in connection with the matters relating to this receivership." Dkt. 433 ¶ 10; *see* Opp. 18 ("the Court should retain jurisdiction over any and all future claims that may be asserted against the Receiver"). Nothing—save for the professional duties prohibiting the filing of meritless claims—can stop Watson from *filing* a claim against the Receiver in this Court. This Court would then decide, however, whether that claim is barred by the termination order and Receivership Order.

Watson also cites *3R Bancorp* as an example of a court denying a receiver's request for a "broad" (yet undefined) release. But despite declining to enter this "broad" release, the court still precluded "any defendant in th[e] litigation . . . from filing . . . any . . . action" "against the Receiver" "arising out of or in any way relating to . . . the Receiver's performance of her duties . . ., unless the filing party shall beforehand show good cause in this proceeding why the claim has colorable merit." Order Terminating Receivership and Releasing and Discharging the Receiver ¶ 13, *FTC v. 3R Bancorp*, No. 1:04-cv-7177 (N.D. Ill. July 28, 2006), Dkt. 425; *see also 3R Bancorp*, 2006 WL 2191317, at *3 ("The court denies . . .the Receiver's request for a broad release from liability . . . , but in the alternative imposes the protections contained in Paragraph 13 of the draft order accompanying this decision."). In other words, even though the court declined to impose the specific release requested by the receiver, it still made sure that the receiver would not be subject to baseless litigation simply for carrying out her duties.

***Records of the Receivership***. Watson requests that the Receiver be required to provide certain records upon the termination of the Receivership, including "all communications with Amazon and Amazon's counsel." Opp. 19. These records appear to be sought in search of evidence of Watson's baseless theory that Amazon, Amazon's counsel, and the Receiver have "been working together for the intentional demise of [his] companies." Receiver Resp. 7. The Court should not indulge such conspiracy theories. Amazon's proposed order requires that the

8

Receiver "provid[e] Watson with copies of the financial records maintained during the Receivership (not including any communications with counsel for the Receiver, documents that are work product or subject to any privilege, or any emails of the Receiver or his counsel)." Dkt. 1451-1 ¶ 3. This term is consistent with the provisions of the Receivership Order that requires the Receiver to "maintain accurate accounting and other records of its activities" and to "make available to Amazon and the Defendants" these records. Dkt. 433 ¶¶ 14, 16.

Watson's proposal, moreover, is unduly burdensome. The Receiver has administered dozens of entities and communicated extensively with multiple parties, so reviewing "all communications," Opp. 19, sent and received by the Receiver for privilege would be expensive and time consuming. Watson has the underlying operative agreements and the Receiver will provide the accounting records. This is consistent with the accounting requirements imposed by the Receivership Order and sufficient to enable transition of administration of any remaining assets and accounts to Watson. Accordingly, because Amazon's proposed order adequately effectuates the terms of the Receivership Order, the Court should enter it without Watson's onerous additions.

*Cooperation after the termination date*. Watson argues that the Receiver should provide "reasonable cooperation" "[a]fter the Termination Date." Opp. 19. But this provision is unnecessary. The Receivership Order and Amazon's proposed order provide adequate procedures for the Receiver's winding down of the Receivership and the return of Watson's assets and records. Amazon trusts that the Receiver will "reasonably cooperate" in this endeavor, and Watson's proposed term only risks litigation over the meaning of that phrase.

*Bond*. Watson's Response includes his "request" for "terms along the lines of the following": that "[t]he bond posted by the Receiver should be provided to Mr. Watson upon termination of the receivership." Opp. 20. But he does not even attempt to justify that extraordinary request with facts, argument, or supporting authority. The bond is not cash. There

is no authority for ordering the bonding company to pay the amount of the bond to anyone simply because the Receivership is terminated.  This request is wholly without merit.

***The injunction***.  Once again, Watson "seek[s] to undo an operative injunction the Fourth Circuit has already affirmed on appeal."  Dkt. 1412 at 2; *see also* Opp. 20 ("the preliminary injunction should be vacated").  This request, which he does not even properly make in a motion or cross-motion, should meet the same fate as his ***five*** previous requests to vacate or modify the injunction and Receivership.  *See* Dkts. 695; 1083; 1240; 1385; 1445.[4]  Absolutely nothing has changed since the Court most recently upheld the injunction in June, and again in August, that would warrant this Court departing for the Fourth Circuit's appellate mandate.  *See* Dkt. 1412. The Receivership was imposed to help effectuate the injunction.  Even if the benefits of the *Receivership* no longer outweigh the costs, the *injunction* still serves a valuable purpose in preventing Watson from dissipating assets, which he has done previously.  *See* Dkt. 1395 at 5-7 (detailing Watson's dissipation of assets and contempt proceedings).  Terminating the Receivership—which wasn't even in place when the Fourth Circuit affirmed the injunction—does nothing to undercut the validity of the injunction.  The preliminary injunction therefore should— and under the Fourth Circuit's appellate mandate rule, must—remain in place.  *See Volvo Trademark Holding Aktiebolaget v. Clark Mach. Co.*, 510 F.3d 474, 481 (4th Cir. 2007) ("[T]he mandate rule 'compels compliance on remand with the dictates of a superior court and forecloses

---

[4] Three of these requests were explicitly to vacate the injunction and Receivership.  *See* Dkts. 695; 1385; 1445.  Watson couched the other two as merely seeking "clarification" of the injunction. *See* Dkts. 1083; 1240.  But for the most recent clarification request, at least, this Court noted that the "Motion does not actually seek any clarification of the Receivership Order, but instead aims to impose additional obligations on the Receiver and Plaintiffs." Dkt. 1297 at 2.

relitigation of issues expressly or impliedly decided by the appellate court.'" (quoting *United States v. Bell*, 5 F.3d 64, 66 (4th Cir. 1993)).[5]

## CONCLUSION

For the reasons discussed above and in Amazon's memorandum in support of the Motion, the Court should terminate the Receivership pursuant to the terms laid out in the Motion and proposed order. *See* Dkts. 1451, 1451-1.

Dated:  November 20, 2023                  Respectfully submitted,

                                           */s/ Michael R. Dziuban*
                                           Elizabeth P. Papez (*pro hac vice*)
                                           Patrick F. Stokes (*pro hac vice*)
                                           Jason J. Mendro (*pro hac vice*)
                                           Claudia M. Barrett (*pro hac vice*)
                                           David W. Casazza (*pro hac vice*)
                                           Amanda Sterling (*pro hac vice*)
                                           Michael R. Dziuban (Va. State Bar No. 89136)
                                           GIBSON, DUNN & CRUTCHER LLP
                                           1050 Connecticut Avenue, N.W.
                                           Washington, D.C. 20036-5306
                                           Telephone:  (202) 955-8500
                                           Facsimile:  (202) 467-0539
                                           epapez@gibsondunn.com
                                           pstokes@gibsondunn.com
                                           jmendro@gibsondunn.com
                                           cbarrett@gibsondunn.com
                                           dcasazza@gibsondunn.com
                                           asterling@gibsondunn.com
                                           mdziuban@gibsondunn.com

                                           *Counsel for Plaintiffs Amazon.com, Inc. and Amazon Data Services, Inc.*

---

[5] Amazon has endeavored to address the points in Watson's brief that actually relate to the instant Motion.  To be sure, however, Watson makes numerous other irrelevant and false assertions in his brief, including, but not limited to: "[t]he preliminary injunction [was] . . . based on Amazon's assumptions (many of which were unfounded) and limited evidence," Opp. 3; "Amazon submitted . . . multiple false declarations," Opp. 4; and "[d]iscovery has revealed that th[e] specific amount" of damages alleged by Amazon "never had any basis," Opp. 4 n.3.  These statements are all false, but because they have no bearing on this Motion they need not be refuted here.

11

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 20, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system.  I will then send the document and a notification of such filing (NEF) to the following parties via U.S. mail to their last-known address and by email, where noted:

CTBSRM, Inc.
6870 W 52nd Ave., Ste. 203
Arvada, CO 80002

2010 Irrevocable Trust
6870 W 52nd Ave., Ste. 203
Arvada, CO 80002

Demetrius Von Lacey
2845 Des Moines Dr.,
Fort Collins, CO 80525

Sigma Regenerative Solutions, LLC
6870 W 52nd Ave., Ste. 203
Arvada, CO 80002

*s/ Michael R. Dziuban*
Michael R. Dziuban
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
Telephone:  (202) 955-8500
Facsimile:  (202) 467-0539
mdziuban@gibsondunn.com

*Counsel for Plaintiffs Amazon.com, Inc. and Amazon Data Services, Inc.*